**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re:** Highland Capital Management, L.P<br>Highland Capital Management Fund Advisors, L.P.<br>et al | § | Case No. 19-34054-SGJ-11 |
| Appellant | § | |
| vs. | § | |
| Highland Capital Management, L.P., | § | |
| | § | 3:21-CV-00538-N |
| Appellee | § | |

[1943] **Order confirming the fifth amended chapter 11 plan,** Entered on 2/22/2021.

# APPELLANT RECORD
# VOLUME 2

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ11) |
| Debtor. | |

INDEX

## AMENDED DESIGNATION BY NEXPOINT ADVISORS, L.P. AND HIGHLAND
## CAPITAL MANAGEMENT FUND ADVISORS, L.P.
## OF ITEMS FOR THE RECORD ON APPEAL

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,

L.P. (the "Appellants"), creditors and parties-in-interest in the above styled and numbered

bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"),

and, with respect to their *Notice of Appeal* [docket no. 1957], hereby file their *Amended

Designation of Items for the Record on Appeal* (the "Designation") as follows:

| | Item | Bankruptcy Docket Number | Description |
|---|---|---|---|
| | | | **Pleadings and Items on Docket** |
| Vol. 1 000001 | 1 | 1957 | Notice of Appeal |
| 000165 000326 | 2 | 1943 | Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief |
| | 3 | | Docket Sheet of Bankruptcy Case No. 19-34054 |
| Vol. 2 000639 | 4 | 1606 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000666 | 5 | 1648 | Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000675 | 6 | 1656 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000820 | 7 | 1670 | Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000870 | 8 | 1719 | Second Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| Vol. 3 000880 | 9 | 1749 | Third Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000886 | 10 | 1772 | Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000901 | 11 | 1791 | Notice of Withdrawal of Certain Executory Contracts and Unexpired Leases from List of Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan |
| 000906 | 12 | 1807 | Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management |
| 001031 | 13 | 1808 | Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) |
| Vol. 4 001097 | 14 | 1811 | Notice of Filing Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications) |
| Vol. 5 001346 | 15 | 1814 | Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |

| | | | |
|---|---|---|---|
| *Vol 5*<br>*0014/14* | 16 | 1847 | Fourth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| *001421* | 17 | 1873 | Fifth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| *001427* | 18 | 1875 | Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland of Highland Capital Management, L.P. (As Modified) |
| *001475* | 19 | 1887 | Supplemental Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| *001482* | 20 | 1671 | United States Trustee's Limited Objection to Confirmation of Debtors' Fifth Amended Plan of Reorganization |
| | | **Evidence and Transcripts** | |
| *001488*<br>*001783* | 21 | 1894 | Transcript of February 2, 2021 Confirmation Hearing |
| *002040* | 22 | 1905 | Transcript of February 3, 2021 Confirmation Hearing |
| | 23 | 1917 | Transcript of February 8, 2021 Bench Ruling |
| *002091*<br>*002108*<br>*Vol 12 - 002931*<br>*Vol 50 - 013295*<br>*-013297*<br>*Vol. 51-013373*<br>*Vol. 54-014182*<br>*Vol 55-014506* | 24 | 1794<br>1795<br>1822✗<br>1863<br>1866<br>1877<br>1895<br>1915 | All exhibits admitted into evidence during February 2 and February 3, 2021 Confirmation Hearing |

*✗ 1822 - Vol. 12 — 50 (39 Volumes)*

RESPECTFULLY SUBMITTED this 22d day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email:   drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 22d day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Debtor.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## DEBTOR'S NOTICE OF FILING OF PLAN SUPPLEMENT TO THE
## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P.

**PLEASE TAKE NOTICE** that Highland Capital Management, L.P., the above-

captioned debtor and debtor-in-possession (the "Debtor"), filed the *Debtor's Notice of Filing of*

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

000639

*Supplement to Third Amended Plan of Reorganization of Highland Capital Management, L.P.*, on November 13, 2020 [Docket No. 1389] (the "Initial Supplement"). The Initial Supplement included Exhibits A-H to the *Third Amended Plan of Reorganization of Highland Capital Management*, *L.P.*, dated November 13, 2020 [Docket No. 1383] (the "Third Amended Plan").

**PLEASE TAKE NOTICE** that on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (the "Plan").

**PLEASE TAKE NOTICE** that Exhibits A-H to the Third Amended Plan are Exhibits A-H to the Plan (as such exhibits may be amended as set forth herein).

**PLEASE TAKE NOTICE** that the Debtor hereby files the documents included herewith as **Exhibits I-K** (collectively, the "Plan Supplement") supplementing the Plan.

> **Exhibit I**: Schedule of Contracts and Leases to Be Assumed
>
> **Exhibit J**: Amended Form of Senior Employee Stipulation
>
> **Exhibit K**: Redline of Form of Senior Employee Stipulation

**PLEASE TAKE FURTHER NOTICE** that the Debtor anticipates filing amended versions of certain of the Exhibits to the Plan, including amendments to the Form of Claimant Trust Agreement (Exhibit A) and the Form of Litigation Sub-Trust Agreement (Exhibit D).

**PLEASE TAKE FURTHER NOTICE** that this *Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Notice of Plan Supplement") is being served on parties-in-interest without the Plan Supplement attached. Any party-in-interest wishing to obtain copies of the Plan or the Plan Supplement may do so by (i) contacting the Debtor's Solicitation Agent, KCC, at (i) 1-877-573-3984 (toll free) or 1-310-751-1829 (if international) or by email at HighlandInfo@kccllc.com, or (ii) viewing such

000640

documents by accessing them online at https://kccllc.net/HCMLP. The documents are also available on the Court's website: www.txnb.uscourts.gov. Please note that a PACER password and login are needed to access documents on the Court's website.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DOCS_NY:41792.2 36027/002

000641

Dated: December 18, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

DOCS_NY:41792.2 36027/002

000642

# EXHIBIT I

## Schedule of Contracts and Leases to Be Assumed

1. Advisory Services Agreement, dated November 21, 2011, effective June 20, 2011, by and between Carey International, Inc., and Highland Capital Management, L.P.

2. Amended and Restated Advisory Services Agreement, dated March 4, 2013, by and between Trussway Holdings, Inc., and Highland Capital Management, L.P.

3. Reference Portfolio Management Agreement, dated March 4, 2004, by and between Highland Capital Management, L.P., and Citibank N.A.

4. Advisory Services Agreement, dated May 25, 2011, by and between CCS Medical, Inc., and Highland Capital Management, L.P.

5. Amended and Restated Advisory Services Agreement, dated February 28, 2013, by and between Cornerstone Healthcare Group Holding, Inc., and Highland Capital Management, L.P.

6. Prime Brokerage Agreement by and between Jefferies LLC and Highland Capital Management, L.P., dated May 24, 2013.

7. Amended and Restated Shared Services Agreement, dated August 21, 2015, by and between Highland Capital Management, L.P., and Falcon E&P Opportunities GP, LLC.

8. Amended and Restated Administrative Services Agreement, effective as of August 21, 2015, by and between Highland Capital Management, L.P., and Petrocap Partners II GP, LLC.

9. Office Lease, between Crescent Investors, L.P., and Highland Capital Management, L.P.

10. Paylocity Corporation Services Agreement, between Highland Capital Management, L.P., and Paylocity Corporation, dated November 19, 2012.

11. Electronic Trading Services Agreement, between SunTrust Robinson Humphrey Inc., and Highland Capital Management, L.P., dated February 6, 2019.

12. Letter Agreement, between FTI Consulting, Inc., and Highland Capital Management, L.P., dated November 19, 2018.

13. Administrative Services Agreement, dated January 1, 2018, between Highland Capital Management, L.P., and Liberty Life Assurance Company of Boston.

14. Electronic Communications: Customer Authorization & Indemnification, between Highland Capital Management, L.P., and The Bank of New York Mellon Corporation, dated August 9, 2016.

15. Letter Agreement, dated August 9, 2016, Electronic Access Terms and Conditions, by and between The Bank of New York Mellon Trust Company, N.A., and Highland Capital Management, L.P.

16. Shared Services Agreement by and between Highland HCF Advisor, Ltd., and Highland Capital Management, L.P., dated effective October 27, 2017.

17. Sub-Advisory Agreement, by and between Highland HCF Advisors, Ltd., and Highland Capital Management, dated effective October 27, 2017.

18.     Collateral Management Agreement, dated November 2, 2006, by and between Highland Credit Opportunities CDO Ltd. and Highland Capital Management, L.P.

19.     Management Agreement, dated November 15, 2007, between Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Restoration Capital Partners Master L.P., Highland Restoration Capital Partners GP, LLC, and Highland Capital Management, L.P.

20.     Investment Management Agreement, between Highland Capital Multi-Strategy Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

21.     Investment Management Agreement, between Highland Capital Multi-Strategy Master Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

22.     Management Agreement, dated August 22, 2007, between and among Highland Capital Management, L.P., and Walkers Fund Services Limited, as trustee of Highland Credit Opportunities Japanese Unit Trust.

23.     Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P., dated November 1, 2013.

24.     Investment Management Agreement, dated March 31, 2015, by and among Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., and Highland Capital Management, L.P.

25.     Amended and Restated Investment Management Agreement, dated February 27, 2017, by and among Highland Prometheus Master Fund L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland SunBridge GP, LLC, and Highland Capital Management, L.P.

26.     Servicing Agreement, dated December 20, 2007, by and among Greenbriar CLO, Ltd., and Highland Capital Management, L.P.

27.     Investment Management Agreement, dated November 1, 2007, by and between Longhorn Credit Funding, LLC, and Highland Capital Management, L.P. (as amended)

28.     Reference Portfolio Management Agreement, dated August 1, 2016, by and between Highland Capital Management, L.P., and Valhalla CLO, Ltd.

29.     Collateral Servicing Agreement, dated December 20, 2006, by and among Highland Park CDO I, Ltd., and Highland Capital Management, L.P.

30.     Portfolio Management Agreement, dated March 15, 2005, by and among Southfork CLO Ltd., and Highland Capital Management, L.P.

31.     Amended and Restated Portfolio Management Agreement, dated November 30, 2005, by and among Jaspar CLO Ltd., and Highland Capital Management, L.P.

32.     Servicing Agreement, dated May 31, 2007, by and among Westchester CLO, Ltd., and Highland Capital Management, L.P.

33.     Servicing Agreement, dated May 10, 2006, by and among Rockwall CDO Ltd. and Highland Capital Management, L.P. (as amended)

000645

34.     Portfolio Management Agreement, dated December 8, 2005, by and between Liberty CLO, Ltd., and Highland Capital Management, L.P.

35.     Servicing Agreement, dated March 27, 2008, by and among Aberdeen Loan Funding, Ltd., and Highland Capital Management, L.P.

36.     Servicing Agreement, dated May 9, 2007, by and among Rockwall CDO II Ltd. and Highland Capital Management, L.P.

37.     Collateral Management Agreement, by and between, Highland Loan Funding V Ltd. and Highland Capital Management, L.P., dated August 1, 2001.

38.     Collateral Management Agreement, dated August 18, 1999, by and between Highland Legacy Limited and Highland Capital Management, L.P.

39.     Servicing Agreement, dated November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. (as amended)

40.     Servicing Agreement, dated October 25, 2007, by and among Stratford CLO Ltd., and Highland Capital Management, L.P.

41.     Servicing Agreement, dated August 3, 2006, by and among Red River CLO Ltd., and Highland Capital Management, L.P. (as amended)

42.     Servicing Agreement, dated December 21, 2006, by and among Brentwood CLO, Ltd., and Highland Capital Management, L.P.

43.     Servicing Agreement, dated March 13, 2007, by and among Eastland CLO Ltd., and Highland Capital Management, L.P.

44.     Portfolio Management, Agreement, dated October 13, 2005, by and among Gleneagles CLO, Ltd., and Highland Capital Management, L.P.

45.     AT&T Managed Internet Service, between Highland Capital Management, L.P. and AT&T Corp., dated February 24, 2015.

46.     ViaWest, Master Service Agreement, dated October 3, 2011, between Highland Capital Management, L.P. and ViaWest

000646

# EXHIBIT J

## SENIOR EMPLOYEE STIPULATION AND TOLLING
## AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of [_____], by and between **[EMPLOYEE NAME]** (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (the "Chapter 11 Case"):

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"):[1]

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its [_____] and in such role provided services to the Debtor;

WHEREAS, the Senior Employee is owed for his services (i) certain amounts that were due to be paid to the Senior Employee for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 ((i) and (ii), collectively, the "Earned Amounts"):

WHEREAS, the Committee objected to the Senior Employee receiving the Earned Amounts during the Chapter 11 Case and the Earned Amounts, although earned, was not paid;

WHEREAS, as of the date hereof, the total Earned Amounts through and including the date hereof owed to the Senior Employee is $ [_____];

WHEREAS, the Senior Employee may have other prepetition and postpetition Claims against the Debtor in addition to the Earned Amounts (the "Other Employee Claims")[2]:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2] For the avoidance of doubt, the "Other Employee Claims" shall include all prepetition and postpetition Claims of the Senior Employee except for the Earned Amounts.

000648

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been retained pursuant to the Plan (the "Causes of Action"):

WHEREAS, the Plan provides for the release of such Causes of Action against the Senior Employee (the "Employee Release"):

WHEREAS, the Employee Release is conditioned on the Senior Employee executing this Stipulation on or prior to the Effective Date of the Plan and reducing his Earned Amounts as set forth herein;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1.      Covenant Not to Sue. In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the Earned Amounts otherwise due to the Senior Employee, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties") agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date"). This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the Earned Amounts set forth in Section 5 hereof or in the Plan.

2.      Non-Compliance: Vesting.

a.      As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1)      sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

(2)      has taken any action that, impairs or harms the value of the

000649

Claimant Trust Assets or the Reorganized Debtor Assets,

(3) has violated the confidentiality provisions of Section 4 below, or

(4) (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee. Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

b. Notwithstanding anything herein to the contrary, Employee Release will vest and all Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

c. Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation; provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims. Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

3. Tolling of Statutes of Limitation. In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitation applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee. The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

4. Confidentiality. In further consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "Confidential Information") relating to the activities or

000650

planned activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

5. <u>Earned Amounts</u>.

    a.    The Senior Employee has agreed to forfeit a percentage of his in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the Earned Amounts will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his Earned Amounts as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the Earned Amounts will be further reduced by 40% (the "<u>Reduced Amount</u>"), and (iv) the Reduced Amount will be forever waived and released. Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting, pursuing, or enforcing any Other Employee Claim.

    b.    For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section 2, any such nullification will have no effect on the treatment of the Senior Employee's Earned Amounts pursuant to this Section 5.

6. <u>Effective Date</u>. The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan. If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

7. <u>Plan Support</u>. The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan and vote any Claims in favor of the Plan.

8. <u>Miscellaneous</u>.

    a.    <u>Counterparts</u>. This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

    b.    <u>Binding Effect</u>. This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

    c.    <u>Authority</u>. Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

    d.    <u>Entire Agreement</u>. This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions. This Stipulation may only be amended by an agreement in writing signed by the Parties.

000651

e.    <u>No Waiver and Reservation of Rights</u>. Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties. Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

f.    <u>No Admission of Liability</u>. The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action. Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

g.    <u>No Waiver If Breach</u>. The Parties agree that no breach of any provision hereof can be waived except in writing. The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

h.    <u>Notice</u>. Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

**Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

With a copy to:

**Attorneys for Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

**HCMLP**

Highland Capital Management, L.P
[_____]
[_____]
Attention: James P. Seery, Jr.

000652

Telephone No.: [_____]
Email: [_____]

With a copy to:

**Attorneys for HCMLP**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

       i.     <u>Advice of Counsel</u>. Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

       j.     <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

       k.     <u>Governing Law: Venue</u>. The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles. Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

000653

**IT IS HEREBY AGREED.**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____

Name: _____

Its: _____

**SENIOR EMPLOYEE**

By: _____

Name: _____

Its: _____

000654

# EXHIBIT K

### SENIOR EMPLOYEE STIPULATION AND TOLLING
### AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of [_____], by and between **[EMPLOYEE NAME]** (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

### RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");[1]

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its [_____] and in such role provided services to the Debtor;

WHEREAS, the Senior Employee was compensatedis owed for his services in part through(i) certain deferred compensationamounts that was requiredwere due to be paid to the Senior Employee on [_____] (the "Deferred Compensation");for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 ((i) and (ii), collectively, the "Earned Amounts"):

WHEREAS, the Committee objected to the Senior Employee receiving the Deferred CompensationEarned Amounts during the Chapter 11 Case and the Deferred CompensationEarned Amounts, although earned, was not paid;

WHEREAS, as of the date hereof, the total Deferred CompensationEarned Amounts through and including the date hereof owed to the Senior Employee is $ [_____];

WHEREAS, the Senior Employee may have other prepetition and postpetition Claims against the Debtor in addition to the Deferred CompensationEarned Amounts (the "Other

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Employee Claims”)~.2~

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been retained pursuant to the Plan (the "Causes of Action")~;~.

WHEREAS, the Plan provides for the release of such Causes of Action against the Senior Employee (the "Employee Release")~;~.

WHEREAS, the Employee Release is conditioned on the Senior Employee executing this Stipulation on or prior to the Effective Date of the Plan and reducing his ~Deferred Compensation~Earned Amounts as set forth herein;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1. <u>Covenant Not to Sue</u>. In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the ~Deferred Compensation~Earned Amounts otherwise due to the Senior Employee, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties") agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date"). This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the ~Deferred Compensation~Earned Amounts set forth in Section 5 hereof or in the Plan.

2. <u>Non-Compliance~;~: Vesting</u>.

a. As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1) sues, attempts to sue, or threatens or works with or assists

---

[2] For the avoidance of doubt, the "Other Employee Claims" shall include all prepetition and postpetition Claims of the Senior Employee except for the Earned Amounts.

any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

    (2)  has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets, or

    (3)  has violated the confidentiality provisions of Section 4 below, or

    (4)  (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee. Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

    b.  Notwithstanding anything herein to the contrary, Employee Release will vest and all Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

    c.  Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation; provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims. Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

    3.  Tolling of Statutes of Limitation. In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitation applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee. The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

    4.  Confidentiality. In further consideration of the HCMLP Parties'

"Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "Confidential Information") relating to the activities or planned activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

5.      ~~Deferred Compensation.~~ Earned Amounts.

a.      The Senior Employee has agreed to forfeit a percentage of his ~~Deferred Compensation~~ in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the ~~Deferred Compensation~~Earned Amounts will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his ~~Deferred Compensation~~Earned Amounts as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the ~~Deferred Compensation~~Earned Amounts will be further reduced by 40% (the "Reduced Amount"), and (iv) the Reduced Amount will be forever waived and released.  Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting ~~or,~~ pursuing, or enforcing any Other Employee Claim.

b.      For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section ~~2,~~2, any such nullification will have no effect on the treatment of the Senior Employee's ~~Deferred Compensation~~Earned Amounts pursuant to this Section ~~5.~~5.

6.      Effective Date.  The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan.  If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

7.      Plan Support.  The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan and vote any Claims in favor of the Plan.

8.      Miscellaneous.

a.      Counterparts.  This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

b.      Binding Effect.  This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

c.      Authority.  Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that

he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

d. <u>Entire Agreement</u>. This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions. This Stipulation may only be amended by an agreement in writing signed by the Parties.

e. <u>No Waiver and Reservation of Rights</u>. Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties. Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

f. <u>No Admission of Liability</u>. The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action. Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

g. <u>No Waiver If Breach</u>. The Parties agree that no breach of any provision hereof can be waived except in writing. The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

h. <u>Notice</u>. Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:



| ~~Senior Employee~~ | ~~HCMLP~~ |
|---|---|
| ~~[_____]~~ | ~~Highland Capital Management, L.P.~~ ~~[_____]~~ |
| ~~[_____]~~ | |
| ~~[_____]~~ | ~~[_____]~~ ~~Attention: James P. Seery, Jr.~~ |
| ~~Email: [_____]~~ | ~~Telephone No.: [_____]~~ ~~E-mail: [_____]~~ |

i.

**Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

With a copy to:

**Attorneys for Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

**HCMLP**

Highland Capital Management, L.P
[_____]
[_____]
Attention: James P. Seery, Jr.
Telephone No.: [_____]
Email: [_____]

With a copy to:

**Attorneys for HCMLP**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

   j. Advice of Counsel.  Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

   k. Severability.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any

000661

such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

l.     <u>Governing Law</u>: Venue.  The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles.  Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

000662

**IT IS HEREBY AGREED.**

                                        **HIGHLAND CAPITAL MANAGEMENT, L.P.**

                                        By:      _____
                                        Name:    _____
                                        Its:     _____


                                        **SENIOR EMPLOYEE**

                                        By:      _____
                                        Name:    _____
                                        Its:     _____

Document comparison by Workshare 9.5 on Friday, December 18, 2020 6:30:29 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41454/6 |
| Description | DOCS_NY-#41454-v6-Highland_-_Senior_Employee_Stipulation |
| Document 2 ID | PowerDocs://DOCS_NY/41454/10 |
| Description | DOCS_NY-#41454-v10-Highland_-_Senior_Employee_Stipulation |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 71 |
| Deletions | 44 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 115 |

000665

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## NOTICE OF (I) EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES TO BE ASSUMED BY THE
## DEBTOR PURSUANT TO THE FIFTH AMENDED PLAN, (II) CURE AMOUNTS,
## IF ANY, AND (III) RELATED PROCEDURES IN CONNECTION THEREWITH

**PLEASE TAKE NOTICE THAT** on November 24, 2020, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an order [Docket No. 1476] (the "Disclosure Statement Order") that, among other things: (a) approved the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

000666

(the "Disclosure Statement") as containing "adequate information" pursuant to section 1125(a) of the title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"); and (b) authorized the above-captioned debtor and debtor-in-possession (the "Debtor") to solicit acceptances of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (the "Plan").[2]

PLEASE TAKE FURTHER NOTICE THAT the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on January 13, 2021 at 9:30 a.m. prevailing Central Time, before The Honorable Stacey G. C. Jernigan in the United States Bankruptcy Court for the Northern District of Texas (Dallas Division), located at Earle Cabell Federal Building, 1100 Commerce Street, 14th Floor, Courtroom No. 1, Dallas, TX 75242-1496.  The deadline for filing objections to the Plan is January 5, 2021, at 5:00 p.m., prevailing Central Time (the "Confirmation Objection Deadline").  Any objection to the Plan must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Northern District of Texas; (c) state, with particularity, the name and address of the objecting party, the basis and nature of any objection to the Plan, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the Confirmation Objection Deadline.

PLEASE TAKE FURTHER NOTICE THAT you are receiving this notice because the Debtor's records reflect that you are a party to a contract to be assumed by the Debtor pursuant to the Plan Supplement [Docket No. 1606] filed on December 18, 2020.  Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan.

PLEASE TAKE FURTHER NOTICE THAT the Debtor is proposing to assume your Executory Contract(s) and Unexpired Lease(s), listed in **Schedule A** attached hereto, to which you are a party.[3]

PLEASE TAKE FURTHER NOTICE THAT section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtor has conducted a thorough review of its books and records and has determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in the table on **Schedule A** attached hereto.  Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtor believes that there is no cure amount outstanding for such contract or lease.

PLEASE TAKE FURTHER NOTICE THAT, absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s)

---

[2]  Capitalized terms not defined herein shall have the same meaning as ascribed in the Plan.

[3]  Nothing contained in the Plan or the Debtor's schedule of assets and liabilities shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption that the Debtor or the Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement.  Further, the Debtor expressly reserves the right to remove any Executory Contract or Unexpired Lease from assumption by the Debtor and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan.

000667

and Unexpired Lease(s) identified on **Schedule A** attached hereto will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtor in Cash on the Effective Date or as soon as reasonably practicable thereafter. In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and approving the assumption. If an objection to the proposed assumption or related cure amount is sustained by the Court, however, the Debtor may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the assumption of an Executory Contract or Unexpired Lease is **January 11, 2021, at 5:00 p.m.**, prevailing Central Time. Any objection to the assumption of your Executory Contract or Unexpired Lease must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Northern District of Texas; (c) state, with particularity, the name and address of the objecting party, the basis and nature of any objection the assumption of the Executory Contract or Unexpired Lease, and, if practicable, a proposed modification such proposed assumption that would resolve such objection; (d) be served on counsel for the Debtor set forth in the signatory block below; and (e) be filed with the Court on or before January 11, 2021 at 5:00 p.m. prevailing Central Time.

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption of the Executory Contract(s) and Unexpired Lease(s) proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the first omnibus hearing following the Confirmation Hearing (or such other date as fixed by the Court).

> **PLEASE TAKE FURTHER NOTICE THAT ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT FAILS TO OBJECT TIMELY TO EITHER THE PROPOSED ASSUMPTION OF SUCH CONTRACT OR LEASE OR THE CURE AMOUNT WILL BE DEEMED TO HAVE ASSENTED TO SUCH ASSUMPTION AND CURE AMOUNT.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE THE DEBTOR OR REORGANIZED DEBTOR ASSUMES SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the

000668

Disclosure Statement Order, Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may: (a) access the Debtor's restructuring website at http://www.kccllc.net/hcmlp; (b) write to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (c) call toll free: (877) 573-3984 or international: (310) 751-1829 and request to speak with a member of the Solicitation Group; or (d) email HighlandInfo@kccllc.com and reference "Highland" in the subject line. You may also obtain copies of any pleadings filed in this case for a fee via PACER at: pacer.uscourts.gov.

Alternatively, you can obtain a copy of these documents by contacting counsel for the Debtor (a) by e-mail, at gdemo@pszjlaw.com, (b) by telephone, by contacting Gregory Demo at (212) 561-7700, or (c) by mail, at Pachulski Stang Ziehl & Jones LLP, Attn: Gregory Demo, 780 Third Avenue, 34th Floor, New York, NY 10017. Please specify whether you would like to receive copies of these documents by (i) **e-mail transmission** (in which case, please include your e-mail address), (ii) on a **CD-ROM or flash drive** delivered by return mail, or (iii) in **paper copies** delivered by return mail.

> **THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

000669

Dated: December 30, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:      jpomerantz@pszjlaw.com
             ikharasch@pszjlaw.com
             gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

000670

## Schedule A

**Schedule of Assumed Contracts and Leases and Proposed Cure**

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure |
|---|---|---|---|
| Highland Capital Management, L.P. | Aberdeen Loan Funding Ltd. Attn: The Directors | Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | AT&T Corp. Attn: Peter Davis | Managed Internet Service | 927.16 |
| Highland Capital Management, L.P. | Bank of New York Mellon Trust Company Attn: Corporate Trust | Letter Agreement | 0.00 |
| Highland Capital Management, L.P. | Bank of New York Mellon Trust Company | Electronic Communications | 0.00 |
| Highland Capital Management, L.P. | Brentwood CLO Ltd. Attn: The Directors | Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Carey International, Inc. Attn: Gary Kessler | Advisory Services Agreement | 0.00 |
| Highland Capital Management, L.P. | CCS Medical, Inc. Attn: Steve Saft | Advisory Services Agreement | 0.00 |
| Highland Capital Management, L.P. | Citibank N.A. Attn: Doug Warren | Reference Portfolio Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Cornerstone Healthcare Group Holding, Inc. Attn: David Smith | Amended and Restated Advisory Services Agreement | 0.00 |
| Highland Capital Management, L.P. | Crescent Investors LP Attn: Property Manager | Office Lease | 0.00 |
| Highland Capital Management, L.P. | Eastland CLO Ltd. Attn: The Directors | Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Falcon E&P Opportunities GP, LLC Attn: Marc Manzo | Amended and Restated Shared Services Agreement | 0.00 |
| Highland Capital Management, L.P. | FTI Consulting Inc. Attn: Ronald Greenspan | Letter Agreement | 0.00 |
| Highland Capital Management, L.P. | Gleneagles CLO, Ltd. Attn: The Directors | Portfolio Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Grayson CLO Ltd. Attn: The Directors | Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Greenbriar CLO, Ltd. Attn: The Directors | Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland Capital Multi-Strategy Fund LP | Investment Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland Capital Multi-Strategy Master Fund LP | Investment Management Agreement | 0.00 |

000672

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure |
|---|---|---|---|
| Highland Capital Management, L.P. | Highland Credit Opportunities CDO Ltd. | Collateral Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland HCF Advisors, Ltd. | Shared Services Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland HCF Advisors, Ltd. | Sub-advisory Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland Legacy Limited Attn: Suzanne St. Thomas | Collateral Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland Loan Funding V Ltd. Attn: The Directors | Collateral Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland Multi Strategy Credit Fund Ltd., Highland Multi Strategy Credit Fund LP | Third Amended & Restated Investment Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland Park CDO I, Ltd. Attn: The Directors | Collateral Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland Prometheus Master Fund LP, Highland Prometheus Feeder Fund I LP, Highland Prometheus Feeder Fund II LP, Highland SumBridge GP LLC | Amended & Restated Investment Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland Restoration Capital Partners LP, Highland Restoration Capital Partners Offshore LP, Highland Restoration Captial Partners Master LP, Highland Capital Parters GP LLC | Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland Select Equity Master Fund LP, High Select Equity Fund GP LP | Investment Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Jaspar CLO Ltd. Attn: The Directors | Amended & Restated Portfolio Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Jefferies LLC Attn: Chris Bianchi | Prime Brokerage Agreement | 0.00 |
| Highland Capital Management, L.P. | Liberty CLO, Ltd. Attn: The Directors | Portfolio Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Liberty Life Assurance Company of Boston | Administrative Services Agreement | 0.00 |
| Highland Capital Management, L.P. | Longhorn Credit Funding, LLC Attn: Secretary | Investment Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Paylocity Corporation | Corporation Services Agreement | 0.00 |

000673

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure |
|---|---|---|---|
| Highland Capital Management, L.P. | Petrocap Partners II GP LLC Attn: William L. Britain | Amended and Restated Administrative Services Agreement | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd. Attn: The Directors | Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Rockwall CDO II Ltd. Attn: The Directors | Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Rockwall CDO II Ltd. Attn: The Directors | Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Southfork CLO Ltd. Attn: The Directors | Portfolio Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Stratford CLO Ltd. Attn: The Directors | Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | SunTrust Robinson Humphrey Inc. Attn: Documentation | Electronic Trading Services Agreement | 0.00 |
| Highland Capital Management, L.P. | Trussway Holdings, Inc. Attn: Kendall Hoyd | Amended and Restated Advisory Services Agreement | 0.00 |
| Highland Capital Management, L.P. | Valhalla CLO, Ltd. Attn: The Directors | Reference Portfolio Management Agreement | 0.00 |
| Highland Capital Management, L.P. | ViaWest Attn: | Master Service Agreement | 0.00 |
| Highland Capital Management, L.P. | ViaWest Attn: John Greenwood | Master Service Agreement | 0.00 |
| Highland Capital Management, L.P. | Walkers Fund Services Limited | Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Westchester CLO, Ltd. Attn: The Directors | Servicing Agreement | 0.00 |

000674

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**DEBTOR'S NOTICE OF FILING OF PLAN SUPPLEMENT TO THE
FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
<u>CAPITAL MANAGEMENT, L.P.</u>**

 **PLEASE TAKE NOTICE** that, on November 13, 2020, Highland Capital Management,

L.P., the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>"), filed the *Debtor's*

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service
address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

000675

*Notice of Filing of Supplement to Third Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1389] (the "Initial Supplement").   The Initial Supplement included Exhibits A-H to the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.*, dated November 13, 2020 [Docket No. 1383] (the "Third Amended Plan").

**PLEASE TAKE NOTICE** that, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (the "Plan").

**PLEASE TAKE NOTICE** that Exhibits A-H to the Third Amended Plan are Exhibits A-H to the Plan (as such exhibits may be amended as set forth herein).

**PLEASE TAKE NOTICE** that, on December 18, 2020, the Debtor filed the *Debtor's Notice of Filing of Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*, [Docket No. 1606] (the "Second Supplement").   The Second Supplement included Exhibits I-K to the Plan.

**PLEASE TAKE NOTICE** that the Debtor hereby files the documents included herewith as **Exhibits L-P** (collectively, the "Plan Supplement") supplementing the Plan.

>    **Exhibit L**:    Amended Schedule of Retained Causes of Action
>
>    **Exhibit M**:    Amended Form of Claimant Trust Agreement
>
>    **Exhibit N**:    Redline of Form of Claimant Trust Agreement
>
>    **Exhibit O**:    Amended Form of Litigation Trust Agreement
>
>    **Exhibit P**:    Redline of Form of Litigation Trust Agreement

**PLEASE TAKE FURTHER NOTICE** that this *Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Notice of Plan Supplement") is being served on parties-in-interest without the Plan Supplement

DOCS_NY:41894.1 36027/002

000676

attached.  Any party-in-interest wishing to obtain copies of the Plan or the Plan Supplement may do so by contacting the Debtor's Solicitation Agent, KCC, at (i) 1-877-573-3984 (toll free) or 1-310-751-1829 (if international) or by email at HighlandInfo@kccllc.com, or (ii) viewing such documents by accessing them online at https://kccllc.net/HCMLP.  The documents are also available on the Court's website: www.txnb.uscourts.gov.  Please note that a PACER password and login are needed to access documents on the Court's website.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DOCS_NY:41894.1 36027/002

Dated: January 4, 2021.    **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

DOCS_NY:41894.1 36027/002

000678

# EXHIBIT L

000679

Schedule of Causes of Action

The Causes of Action shall include, *without limitation*, any cause of action based on the following:

breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, misappropriation of assets, misappropriation of trade secrets, unfair competition, breach of contract, breach of warranty, fraud, constructive fraud, negligence, gross negligence, fraudulent conveyance, fraudulent transfer, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, *quantum meruit*, unjust enrichment, abuse of process, alter ego, substantive consolidation, recharacterization, business disparagement, indemnity, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel, quasi-contract claims, any counterclaims, equitable subordination, avoidance actions provided for under sections 544 or 547 of the Bankruptcy Code, claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

The Causes of Action shall include, *without limitation*, any cause of action against the following persons and entities:

James Dondero, Mark Okada, Grant Scott, John Honis, any current or former insider of the Debtor, the Dugaboy Investment Trust, Charitable DAF Holdco, Ltd, Hunter Mountain Investment Trust, Nexbank Capital, Inc. Highland Capital Management Services, Inc., NexPoint Advisors GP, LLC, NexPoint Advisors, L.P., Strand Advisors XVI, Inc., Highland Capital Management Fund Advisors, L.P., NexAnnuity Holdings, Inc., the entities listed on the attached **Annex 1** hereto, any current or former employee of the Debtor, and any entity directly or indirectly owned, controlled, or operated for the benefit of the foregoing persons or entities.

The Causes of Action shall include, *without limitation*, any cause of action arising from the following transactions:

The transfer of ownership interests in the Debtor to Hunter Mountain Investment Trust, the creation or transfer of any notes receivable from the Debtor or from any entity related to the Debtor, the creation or transfer of assets to or from any charitable foundation or trust, the formation, performance, or breach of any contract for the Debtor to provide investment management, support services, or any other services, and the distribution of assets or cash from the Debtor to partners of the Debtor.

## Annex 1

11 Estates Lane, LLC
1110 Waters, LLC
140 Albany, LLC
1525 Dragon, LLC
17720 Dickerson, LLC
1905 Wylie LLC
2006 Milam East Partners GP, LLC
2006 Milam East Partners, L.P.
201 Tarrant Partners, LLC
2014 Corpus Weber Road LLC
2325 Stemmons HoldCo, LLC
2325 Stemmons Hotel Partners, LLC
2325 Stemmons TRS, Inc.
300 Lamar, LLC
3409 Rosedale, LLC
3801 Maplewood, LLC
3801 Shenandoah, L.P.
3820 Goar Park LLC
400 Seaman, LLC
401 Ame, L.P.
4201 Locust, L.P.
4312 Belclaire, LLC
5833 Woodland, L.P.
5906 DeLoache, LLC
5950 DeLoache, LLC
7758 Ronnie, LLC
7759 Ronnie, LLC
AA Shotguns, LLC
Aberdeen Loan Funding, Ltd.
Acis CLO 2017-7 Ltd
Acis CLO Management GP, LLC
Acis CLO Management GP, LLC *(fka Acis CLO Opportunity Funds GP, LLC)*
Acis CLO Management Holdings, L.P.
Acis CLO Management Intermediate Holdings I, LLC
Acis CLO Management Intermediate Holdings II, LLC
Acis CLO Management, LLC *(fka Acis CLO Opportunity Funds SLP, LLC)*
Acis CLO Trust

Acis CLO Value Fund II Charitable DAF Ltd.
Acis CMOA Trust
Advisors Equity Group LLC
Alamo Manhattan Hotel I, LLC (Third Party)
Allenby, LLC
Allisonville RE Holdings, LLC
AM Uptown Hotel, LLC
Apex Care, L.P
Asbury Holdings, LLC *(fka HCSLR Camelback Investors (Delaware), LLC)*
Ascendant Advisors
Atlas IDF GP, LLC
Atlas IDF, LP
BB Votorantim Highland Infrastructure, LLC
BDC Toys Holdco, LLC
Beacon Mountain, LLC
Bedell Trust Ireland Limited (Charitable trust account)
Ben Roby (third party)
BH Equities, LLC
BH Heron Pointe, LLC
BH Hollister, LLC
BH Willowdale Manager, LLC
Big Spring Partners, LLC
Blair Investment Partners, LLC
Bloomdale, LLC
Brave Holdings III Inc.
Brentwood CLO, Ltd.
Brentwood Investors Corp.
Brian Mitts
Bristol Bay Funding Ltd.
Bristol Bay Funding, Ltd.
BVP Property, LLC
C-1 Arbors, Inc.
C-1 Cutter's Point, Inc.
C-1 Eaglecrest, Inc.
C-1 Silverbrook, Inc.
Cabi Holdco GP, LLC
Cabi Holdco I, Ltd
Cabi Holdco I, Ltd.

Cabi Holdco, L.P.

California Public Employees' Retirement System

Camelback Residential Investors, LLC

Camelback Residential Investors, LLC *(fka Sevilla Residential Partners, LLC)*

Camelback Residential Partners, LLC

Capital Real Estate - Latitude, LLC

Castle Bio Manager, LLC

Castle Bio, LLC

CG Works, Inc.

CG Works, Inc. *(fka Common Grace Ventures, Inc.)*

Charitable DAF Fund, L.P.

Charitable DAF GP, LLC

Charitable DAF HoldCo, Ltd

Charitable DAF HoldCo, Ltd.

Claymore Holdings, LLC

CLO HoldCo, Ltd

CLO Holdco, Ltd.

Corbusier, Ltd.

Cornerstone Healthcare Group Holding, Inc.

Corpus Weber Road Member LLC

CP Equity Hotel Owner, LLC

CP Equity Land Owner, LLC

CP Equity Owner, LLC

CP Hotel TRS, LLC

CP Land Owner, LLC

CP Tower Owner, LLC

CRE - Lat, LLC

Credit Suisse, Cayman Islands Branch

Crossings 2017 LLC

Crown Global Insurance Company (third party)

Dallas Cityplace MF SPE Owner LLC

Dallas Lease and Finance, L.P.

Dana Scott Breault
James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Dana Sprong (Third Party)

David c. Hopson

De Kooning, Ltd.

deKooning, Ltd.

DFA/BH Autumn Ridge, LLC

Dolomiti, LLC

DrugCrafters, L.P.

Dugaboy Investment Trust

Dugaboy Management, LLC

Dugaboy Project Management GP, LLC

Eagle Equity Advisors, LLC

Eames, Ltd.

Eastland CLO, Ltd.

Eastland Investors Corp.

EDS Legacy Heliport, LLC

EDS Legacy Partners Owner, LLC

EDS Legacy Partners, LLC

Empower Dallas Foundation, Inc.

ENA 41, LLC

Entegra Strat Superholdco, LLC

Entegra-FRO Holdco, LLC

Entegra-FRO Superholdco, LLC

Entegra-HOCF Holdco, LLC

Entegra-NHF Holdco, LLC

Entegra-NHF Superholdco, LLC

Entegra-RCP Holdco, LLC

Estates on Maryland Holdco, LLC

Estates on Maryland Owners SM, Inc.

Estates on Maryland Owners, LLC

Estates on Maryland, LLC

Falcon E&P Four Holdings, LLC

Falcon E&P One, LLC

Falcon E&P Opportunities Fund, L.P.

Falcon E&P Opportunities GP, LLC

Falcon E&P Royalty Holdings, LLC

Falcon E&P Six, LLC

Falcon E&P Two, LLC

Falcon Four Midstream, LLC

Falcon Four Upstream, LLC

Falcon Incentive Partners GP, LLC

Falcon Incentive Partners, LP

Falcon Six Midstream, LLC

Flamingo Vegas Holdco, LLC *(fka Cabi Holdco, LLC)*

Four Rivers Co-Invest GP, LLC

Four Rivers Co-Invest, L.P.

FRBH Abbington SM, Inc.

FRBH Abbington, LLC

FRBH Arbors, LLC

FRBH Beechwood SM, Inc.

FRBH Beechwood, LLC

FRBH C1 Residential, LLC

FRBH Courtney Cove SM, Inc.

FRBH Courtney Cove, LLC

FRBH CP, LLC

FRBH Duck Creek, LLC

FRBH Eaglecrest, LLC

FRBH Edgewater JV, LLC

FRBH Edgewater Owner, LLC

FRBH Edgewater SM, Inc.

FRBH JAX-TPA, LLC

FRBH Nashville Residential, LLC

FRBH Regatta Bay, LLC

FRBH Sabal Park SM, Inc.

FRBH Sabal Park, LLC

FRBH Silverbrook, LLC

FRBH Timberglen, LLC

FRBH Willow Grove SM, Inc.

FRBH Willow Grove, LLC

FRBH Woodbridge SM, Inc.

FRBH Woodbridge, LLC

Freedom C1 Residential, LLC

Freedom Duck Creek, LLC

Freedom Edgewater, LLC

Freedom JAX-TPA Residential, LLC

Freedom La Mirage, LLC

Freedom LHV LLC

Freedom Lubbock LLC

Freedom Miramar Apartments, LLC

Freedom Sandstone, LLC

Freedom Willowdale, LLC

Fundo de Investimento em Direitos Creditorios BB Votorantim Highland Infraestrutura

G&E Apartment REIT The Heights at Olde Towne, LLC

G&E Apartment REIT The Myrtles at Olde Towne, LLC

GAF REIT, LLC

GAF Toys Holdco, LLC

Gardens of Denton II, L.P.

Gardens of Denton III, L.P.

Gleneagles CLO, Ltd.

Goverannce RE, Ltd.

Governance Re, Ltd.

Governance, Ltd.

Grant Scott

Grant Scott, Trustee of The SLHC Trust

Grayson CLO, Ltd.

Grayson Investors Corp.

Greater Kansas City Community Foundation (third party)

Greenbriar CLO, Ltd.

Greg Busseyt

Gunwale LLC

Gunwale, LLC

Hakusan, LLC

Hammark Holdings LLC

Hampton Ridge Partners, LLC

Harbourvest Entities

Harko, LLC

Harry Bookey/Pam Bookey (third party)

Haverhill Acquisition Co., LLC

Haygood, LLC

HB 2015 Family LP (third party)

HCBH 11611 Ferguson, LLC

HCBH Buffalo Pointe II, LLC

HCBH Buffalo Pointe III, LLC

HCBH Buffalo Pointe, LLC

HCBH Hampton Woods SM, Inc.

HCBH Hampton Woods, LLC

HCBH Overlook SM, Inc.

HCBH Overlook, LLC

HCBH Rent Investors, LLC

HCMS Falcon GP, LLC

HCMS Falcon, L.P.

HCO Holdings, LLC

HCOF Preferred Holdings, L.P.

HCOF Preferred Holdings, LP

HCOF Preferred Holdings, Ltd.

HCRE 1775 James Ave, LLC

HCRE Addison TRS, LLC

HCRE Addison, LLC *(fka HWS Addison, LLC)*

HCRE Hotel Partner, LLC *(fka HCRE HWS Partner, LLC)*

HCRE Las Colinas TRS, LLC

HCRE Las Colinas, LLC *(fka HWS Las Colinas, LLC)*

HCRE Plano TRS, LLC

HCRE Plano, LLC *(fka HWS Plano, LLC)*

HCREF-I Holding Corp.

HCREF-II Holding Corp.

HCREF-III Holding Corp.

HCREF-IV Holding Corp.

HCREF-IX Holding Corp.

HCREF-V Holding Corp.

HCREF-VI Holding Corp.

HCREF-VII Holding Corp.

HCREF-VIII Holding Corp.

HCREF-XI Holding Corp.

HCREF-XII Holding Corp.

HCREF-XIII Holding Corp.

HCREF-XIV Holding Corp.

HCREF-XV Holding Corp.

HCSLR Camelback Investors (Cayman), Ltd.

HCSLR Camelback, LLC

HCT Holdco 2 Ltd.

HCT Holdco 2, Ltd.

HE 41, LLC

HE Capital 232 Phase I Property, LLC

HE Capital 232 Phase I, LLC

HE Capital Asante, LLC

HE Capital Fox Trails, LLC

HE Capital KR, LLC

HE Capital, LLC

HE CLO Holdco, LLC

HE Mezz Fox Trails, LLC

HE Mezz KR, LLC

HE Peoria Place Property, LLC

HE Peoria Place, LLC

Heron Pointe Investors, LLC

Hewett's Island CLO I-R, Ltd.

HFP Asset Funding II, Ltd.

HFP Asset Funding III, Ltd.

HFP CDO Construction Corp.

HFP GP, LLC

HFRO Sub, LLC

Hibiscus HoldCo, LLC

Highland - First Foundation Income Fund

Highland 401(k) Plan

Highland 401K Plan

Highland Argentina Regional Opportunity Fund GP, LLC

Highland Argentina Regional Opportunity Fund, L.P.

Highland Argentina Regional Opportunity Fund, Ltd.

Highland Argentina Regional Opportunity Master Fund, L.P.

Highland Brasil, LLC

Highland Capital Brasil Gestora de Recursos *(fka Highland Brasilinvest Gestora de Recursos, LTDA; fka HBI Consultoria Empresarial, LTDA)*

Highland Capital Management (Singapore) Pte Ltd

Highland Capital Management AG

Highland Capital Management AG (Highland Capital Management SA) (Highland Capital Management Ltd)

Highland Capital Management Fund Advisors, L.P.

Highland Capital Management Fund Advisors, L.P. *(fka Pyxis Capital, L.P.)*

Highland Capital Management Korea Limited

Highland Capital Management Latin America, L.P.

Highland Capital Management LP Retirement Plan and Trust

Highland Capital Management Multi-Strategy Insurance Dedicated Fund, L.P.

Highland Capital Management Real Estate Holdings I, LLC

Highland Capital Management Real Estate Holdings II, LLC

Highland Capital Management Services, Inc.

Highland Capital Management, L.P.

Highland Capital Management, L.P. Charitable Fund

Highland Capital Management, L.P. Retirement Plan and Trust

Highland Capital Management, L.P., as trustee of Acis CMOA Trust and nominiee for and on behalf of Highland CLO Assets Holdings Limited

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominiee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, LP

Highland Capital Management, LP Charitable Fund

Highland Capital Multi-Strategy Fund, LP

Highland Capital of New York, Inc.

Highland Capital Special Allocation, LLC

Highland CDO Holding Company

Highland CDO Opportunity Fund GP, L.P.

Highland CDO Opportunity Fund, L.P.

Highland CDO Opportunity Fund, Ltd.

Highland CDO Opportunity GP, LLC

Highland CDO Opportunity Master Fund, L.P.

Highland CDO Trust

Highland CLO 2018-1, Ltd.

Highland CLO Assets Holdings Limited

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd. *(fka Acis Loan Funding, Ltd.)*

Highland CLO Gaming Holdings, LLC

Highland CLO Holdings Ltd.

Highland CLO Holdings, Ltd. (as of 12.19.17)

Highland CLO Management Ltd.

Highland CLO Trust

Highland Credit Opportunities CDO Asset Holdings GP, Ltd.

Highland Credit Opportunities CDO Asset Holdings, L.P.

Highland Credit Opportunities CDO Financing, LLC

Highland Credit Opportunities CDO, Ltd.

Highland Credit Opportunities Holding Corporation

Highland Credit Opportunities Japanese Feeder Sub-Trust

Highland Credit Opportunities Japanese Unit Trust (Third Party)

Highland Credit Strategies Fund, L.P.

Highland Credit Strategies Fund, Ltd.

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Master Fund, L.P.

Highland Dallas Foundation, Inc.

Highland Dynamic Income Fund GP, LLC

Highland Dynamic Income Fund GP, LLC *(fka Highland Capital Loan GP, LLC)*

Highland Dynamic Income Fund, L.P.

Highland Dynamic Income Fund, L.P. *(fka Highland Capital Loan Fund, L.P.)*

Highland Dynamic Income Fund, Ltd.

Highland Dynamic Income Fund, Ltd. *(fka Highland Loan Fund, Ltd.)*

Highland Dynamic Income Master Fund, L.P.

Highland Dynamic Income Master Fund, L.P. *(fka Highland Loan Master Fund, L.P.)*

Highland Employee Retention Assets LLC

Highland Energy Holdings, LLC

Highland Energy MLP Fund *(fka Highland Energy and Materials Fund)*

Highland Equity Focus Fund, L.P.

Highland ERA Management, LLC

Highland eSports Private Equity Fund

Highland Financial Corp.

Highland Financial Partners, L.P.

Highland Fixed Income Fund

Highland Flexible Income UCITS Fund

Highland Floating Rate Fund

Highland Floating Rate Opportunites Fund

Highland Floating Rate Opportunities Fund

Highland Fund Holdings, LLC

Highland Funds I

Highland Funds II

Highland Funds III

Highland GAF Chemical Holdings, LLC

Highland General Partner, LP

Highland Global Allocation Fund

Highland Global Allocation Fund
*(fka Highland Global Allocation Fund II)*

Highland GP Holdings, LLC

Highland HCF Advisor Ltd.

Highland HCF Advisor, Ltd., as Trustee for
and on behalf of Acis CLO Trust, as nominee
for and on behalf of Highland CLO Funding,
Ltd. (as of 3.29.18)

Highland Healthcare Equity Income and
Growth Fund

Highland iBoxx Senior Loan ETF

Highland Income Fund

Highland Income Fund  *(fka Highland
Floating Rate Opportunities Fund)*

Highland Kansas City Foundation, Inc.

Highland Latin America Consulting, Ltd.

Highland Latin America GP, Ltd.

Highland Latin America LP, Ltd.

Highland Latin America Trust

Highland Legacy Limited

Highland LF Chemical Holdings, LLC

Highland Loan Funding V, LLC

Highland Loan Funding V, Ltd.

Highland Long/Short Equity Fund

Highland Long/Short Healthcare Fund

Highland Marcal Holding, Inc.

Highland Merger Arbitrage Fund

Highland Multi Strategy Credit Fund GP, L.P.

Highland Multi Strategy Credit Fund GP, L.P.
*(fka Highland Credit Opportunities CDO GP,
L.P.)*

Highland Multi Strategy Credit Fund, L.P.

Highland Multi Strategy Credit Fund, L.P. *(fka
Highland Credit Opportunities Fund, L.P., fka
Highland Credit Opportunities CDO, L.P.)*

Highland Multi Strategy Credit Fund, Ltd.

Highland Multi Strategy Credit Fund, Ltd. *(fka
Highland Credit Opportunities Fund, Ltd.)*

Highland Multi Strategy Credit GP, LLC

Highland Multi Strategy Credit GP, LLC *(fka
Highland Credit Opportunities CDO GP, LLC)*

Highland Multi-Strategy Fund GP, LLC

Highland Multi-Strategy Fund GP, LP

Highland Multi-Strategy IDF GP, LLC

Highland Multi-Strategy Master Fund, L.P.

Highland Multi-Strategy Master Fund, LP

Highland Multi-Strategy Onshore Master
SubFund II, LLC

Highland Multi-Strategy Onshore Master
Subfund, LLC

Highland Opportunistic Credit Fund

Highland Park CDO 1, Ltd.

Highland Park CDO I, Ltd.

Highland Premier Growth Equity Fund

Highland Premium Energy & Materials Fund

Highland Prometheus Feeder Fund I, L.P.

Highland Prometheus Feeder Fund I, LP

Highland Prometheus Feeder Fund II, L.P.

Highland Prometheus Feeder Fund II, LP

Highland Prometheus Master Fund, L.P.

Highland Receivables Finance I, LLC

Highland Restoration Capital Partners GP,
LLC

Highland Restoration Capital Partners Master,
L.P.

Highland Restoration Capital Partners
Offshore, L.P.

Highland Restoration Capital Partners, L.P.

Highland Santa Barbara Foundation, Inc.

Highland Select Equity Fund GP, L.P.

Highland Select Equity Fund, L.P.

Highland Select Equity GP, LLC

Highland Select Equity Master Fund, L.P.

Highland Small-Cap Equity Fund

Highland Socially Responsible Equity Fund

Highland Socially Responsible Equity Fund
*(fka Highland Premier Growth Equity Fund)*

Highland Special Opportunities Holding Company

Highland SunBridge GP, LLC

Highland Tax-Exempt Fund

Highland TCI Holding Company, LLC

Highland Total Return Fund

Highland's Roads Land Holding Company, LLC

Hirst, Ltd.

HMCF PB Investors, LLC

HMx2 Investment Trust
(Matt McGraner)

Hockney, Ltd.

HRT North Atlanta, LLC

HRT Timber Creek, LLC

HRTBH North Atlanta, LLC

HRTBH Timber Creek, LLC

Huber Funding LLC

Hunter Mountain Investment Trust

HWS Investors Holdco, LLC

Internal Investors

Intertrust

James D. Dondero
Reese Avry Dondero
Jameson Drue Dondero

James Dondero

James Dondero and Mark Okada

James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Japan Trustee Services Bank, Ltd.

Jasper CLO, Ltd.

Jewelry Ventures I, LLC

JMIJM, LLC

Joanna E. Milne Irrevocable Trust dated Nov 25 1998 (third party)

John Honis

John L. Holt, Jr.

John R. Sears, Jr.

Karisopolis, LLC

Keelhaul LLC

KHM Interests, LLC (third party)

Kuilima Montalban Holdings, LLC

Kuilima Resort Holdco, LLC

KV Cameron Creek Owner, LLC

Lakes at Renaissance Park Apartments Investors, L.P.

Lakeside Lane, LLC

Landmark Battleground Park II, LLC

Lane Britain

Larry K. Anders

LAT Battleground Park, LLC

LAT Briley Parkway, LLC

Lautner, Ltd.

Leawood RE Holdings, LLC

Liberty Cayman Holdings, Ltd.

Liberty CLO Holdco, Ltd.

Liberty CLO, Ltd.

Liberty Sub, Ltd.

Long Short Equity Sub, LLC

Longhorn Credit Funding LLC

Longhorn Credit Funding LLC - A

Longhorn Credit Funding LLC - B

Longhorn Credit Funding LLC (LHB)

Longhorn Credit Funding, LLC

Lurin Real Estate Holdings V, LLC

Maple Avenue Holdings, LLC

MaplesFS Limited

Marc C. Manzo

Mark and Pam Okada Family Trust - Exempt Descendants' Trust

Mark and Pam Okada Family Trust - Exempt Trust #2

Mark and Pamela Okada Family Trust - Exempt Descendants' Trust

Mark and Pamela Okada Family Trust - Exempt Descendants' Trust #2

Mark and Pamela Okada Family Trust - Exempt Trust #2

Mark K. Okada

Mark Okada

Mark Okada and Pam Okada

Mark Okada and Pam Okada, as joint owners

Mark Okada/Pamela Okada

Markham Fine Jewelers, L.P.

Markham Fine Jewelers, LP

Matt McGraner

Meritage Residential Partners, LLC

MGM Studios HoldCo, Ltd.

Michael Rossi

ML CLO XIX Sterling (Cayman), Ltd.

N/A

Nancy Dondero

NCI Apache Trail LLC

NCI Assets Holding Company LLC

NCI Country Club LLC

NCI Fort Worth Land LLC

NCI Front Beach Road LLC

NCI Minerals LLC

NCI Royse City Land LLC

NCI Stewart Creek LLC

NCI Storage, LLC

Neil Labatte

Neutra, Ltd.

New Jersey Tissue Company Holdco, LLC
*(fka Marcal Paper Mills Holding Company, LLC)*

NexAnnuity Holdings, Inc.

NexBank Capital Trust I

NexBank Capital, Inc.

NexBank Land Advisors, Inc.

NexBank Securities Inc.

NexBank Securities, Inc.

NexBank SSB

NexBank Title, Inc.
(dba NexVantage Title Services)

NexBank, SSB

NexPoint Advisors GP, LLC

NexPoint Advisors, L.P.

NexPoint Capital REIT, LLC

NexPoint Capital, Inc.

NexPoint Capital, Inc. *(fka NexPoint Capital, LLC)*

NexPoint CR F/H DST, LLC

NexPoint Credit Strategies Fund

NexPoint Discount Strategies Fund
*(fka NexPoint Discount Yield Fund)*

NexPoint DRIP

NexPoint Energy and Materials Opportunities Fund *(fka NexPoint Energy Opportunities Fund)*

NexPoint Event-Driven Fund
*(fkaNexPoint Merger Arbitrage Fund)*

NexPoint Flamingo DST

NexPoint Flamingo Investment Co, LLC

NexPoint Flamingo Leaseco, LLC

NexPoint Flamingo Manager, LlC

NexPoint Flamingo Property Manager, LlC

NexPoint Healthcare Opportunities Fund

NexPoint Hospitality Trust

NexPoint Hospitality, Inc.

NexPoint Hospitality, LLC

NexPoint Insurance Distributors, LLC

NexPoint Insurance Solutions GP, LLC

NexPoint Insurance Solutions GP, LLC
*(fka Highland Capital Insurance Solutions GP, LLC)*

NexPoint Insurance Solutions, L.P.
*(fka Highland Capital Insurance Solutions, L.P.)*

NexPoint Latin American Opportunities Fund

NexPoint Legacy 22, LLC

NexPoint Lincoln Porte Equity, LLC

NexPoint Lincoln Porte Manager, LLC

NexPoint Lincoln Porte, LLC
*(fka NREA Lincoln Porte, LLC)*

NexPoint Multifamily Capital Trust, Inc.

NexPoint Multifamily Capital Trust, Inc.
*(fka NexPoint Multifamily Realty Trust, Inc., fka Highland Capital Realty Trust, Inc.)*

NexPoint Multifamily Operating Partnership, L.P.

NexPoint Peoria, LLC

NexPoint Polo Glen DST

NexPoint Polo Glen Holdings, LLC

NexPoint Polo Glen Investment Co, LLC

NexPoint Polo Glen Leaseco, LLC

NexPoint Polo Glen Manager, LLC

NexPoint RE Finance Advisor GP, LLC

NexPoint RE Finance Advisor, L.P.

NexPoint Real Estate Advisors GP, LLC

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors III, L.P.

NexPoint Real Estate Advisors IV, L.P.

NexPoint Real Estate Advisors V, L.P.

NexPoint Real Estate Advisors VI, L.P.

NexPoint Real Estate Advisors VII GP, LLC

NexPoint Real Estate Advisors VII, L.P.

NexPoint Real Estate Advisors VIII, L.P.

NexPoint Real Estate Advisors, L.P.

NexPoint Real Estate Capital, LLC

NexPoint Real Estate Capital, LLC *(fka Highland Real Estate Capital, LLC, fka Highland Multifamily Credit Fund, LLC)*

NexPoint Real Estate Finance OP GP, LLC

NexPoint Real Estate Finance Operating Partnership, L.P.

NexPoint Real Estate Finance, Inc.

NexPoint Real Estate Opportunities, LLC

NexPoint Real Estate Opportunities, LLC *(fka Freedom REIT LLC)*

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Strategies Fund

NexPoint Residential Trust Inc.

NexPoint Residential Trust Operating Partnership GP, LLC

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust, Inc.

NexPoint Securities, Inc.
*(fka Highland Capital Funds Distributor, Inc.)
(fka Pyxis Distributors, Inc.)*

NexPoint Strategic Income Fund
*(fka NexPoint Opportunistic Credit Fund, fka NexPoint Distressed Strategies Fund)*

NexPoint Strategic Opportunities Fund

NexPoint Strategic Opportunities Fund
*(fka NexPoint Credit Strategies Fund)*

NexPoint Texas Multifamily Portfolio DST
*(fka NREA Southeast Portfolio Two, DST)*

NexPoint WLIF I Borrower, LLC

NexPoint WLIF I, LLC

NexPoint WLIF II Borrower, LLC

NexPoint WLIF II, LLC

NexPoint WLIF III Borrower, LLC

NexPoint WLIF III, LLC

NexPoint WLIF, LLC (Series I)

NexPoint WLIF, LLC (Series II)

NexPoint WLIF, LLC (Series III)

NexStrat LLC

NexVest, LLC

NexWash LLC

NFRO REIT Sub, LLC

NFRO TRS, LLC

NHF CCD, Inc.

NHT 2325 Stemmons, LLC

NHT Beaverton TRS, LLC
*(fka NREA Hotel TRS, Inc.)*

NHT Beaverton, LLC

NHT Bend TRS, LLC

NHT Bend, LLC

NHT Destin TRS, LLC

NHT Destin, LLC

NHT DFW Portfolio, LLC

NHT Holdco, LLC

NHT Holdings, LLC

NHT Intermediary, LLC

NHT Nashville TRS, LLC

NHT Nashville, LLC

NHT Olympia TRS, LLC

NHT Olympia, LLC

NHT Operating Partnership GP, LLC

NHT Operating Partnership II, LLC

NHT Operating Partnership, LLC

NHT Salem, LLC

NHT SP Parent, LLC

NHT SP TRS, LLC

NHT SP, LLC

NHT Tigard TRS, LLC

NHT Tigard, LLC

NHT TRS, Inc.

NHT Uptown, LLC

NHT Vancouver TRS, LLC

NHT Vancouver, LLC

NLA Assets LLC

NMRT TRS, Inc.

NREA Adair DST Manager, LLC

NREA Adair Investment Co, LLC

NREA Adair Joint Venture, LLC

NREA Adair Leaseco Manager, LLC

NREA Adair Leaseco, LLC

NREA Adair Property Manager LLC

NREA Adair, DST

NREA Ashley Village Investors, LLC

NREA Cameron Creek Investors, LLC

NREA Cityplace Hue Investors, LLC

NREA Crossing Investors LLC

NREA Crossings Investors, LLC

NREA Crossings Ridgewood Coinvestment, LLC *(fka NREA Crossings Ridgewood Investors, LLC)*

NREA DST Holdings, LLC

NREA El Camino Investors, LLC

NREA Estates Inc.

NREA Estates Investment Co, LLC

NREA Estates Leaseco, LLC

NREA Estates Manager, LLC

NREA Estates Property Manager, LLC

NREA Estates, DST

NREA Gardens DST Manager LLC

NREA Gardens DST Manager, LLC

NREA Gardens Investment Co, LLC

NREA Gardens Leaseco Manager, LLC

NREA Gardens Leaseco, LLC

NREA Gardens Property Manager, LLC

NREA Gardens Springing LLC

NREA Gardens Springing Manager, LLC

NREA Gardens, DST

NREA Hidden Lake Investment Co, LLC

NREA Hue Investors, LLC

NREA Keystone Investors, LLC

NREA Meritage Inc.

NREA Meritage Investment Co, LLC

NREA Meritage Leaseco, LLC

NREA Meritage Manager, LLC

NREA Meritage Property Manager, LLC

NREA Meritage, DST

NREA Oaks Investors, LLC

NREA Retreat Investment Co, LLC

NREA Retreat Leaseco, LLC

NREA Retreat Manager, LLC

NREA Retreat Property Manager, LLC

NREA Retreat, DST

NREA SE MF Holdings LLC

NREA SE MF Holdings, LLC

NREA SE MF Investment Co, LLC

NREA SE MF Investment Co, LLC

NREA SE Multifamily LLC

NREA SE Multifamily, LLC

NREA SE One Property Manager, LLC

NREA SE Three Property Manager, LLC

NREA SE Two  Property Manager, LLC

NREA SE1 Andros Isles Leaseco, LLC

NREA SE1 Andros Isles Manager, LLC

NREA SE1 Andros Isles, DST (Converted from DK Gateway Andros, LLC)

NREA SE1 Arborwalk Leaseco, LLC

NREA SE1 Arborwalk Manager, LLC

NREA SE1 Arborwalk, DST (Converted from MAR Arborwalk, LLC)

NREA SE1 Towne Crossing Leaseco, LLC

NREA SE1 Towne Crossing Manager, LLC

NREA SE1 Towne Crossing, DST (Converted from Apartment REIT Towne Crossing, LP)

NREA SE1 Walker Ranch Leaseco, LLC

NREA SE1 Walker Ranch Manager, LLC

NREA SE1 Walker Ranch, DST (Converted from SOF Walker Ranch Owner, L.P.)

NREA SE2 Hidden Lake Leaseco, LLC

NREA SE2 Hidden Lake Manager, LLC
NREA SE2 Hidden Lake, DST
NREA SE2 Hidden Lake, DST
(Converted from SOF Hidden Lake SA Owner, L.P.)

NREA SE2 Vista Ridge Leaseco, LLC
NREA SE2 Vista Ridge Manager, LLC
NREA SE2 Vista Ridge, DST
NREA SE2 Vista Ridge, DST
(Converted from MAR Vista Ridge, L.P.)

NREA SE2 West Place Leaseco, LLC
NREA SE2 West Place Manager, LLC
NREA SE2 West Place, DST
(Converted from Landmark at West Place, LLC)

NREA SE3 Arboleda Leaseco, LLC
NREA SE3 Arboleda Manager, LLC
NREA SE3 Arboleda, DST
(Converted from G&E Apartment REIT Arboleda, LLC)

NREA SE3 Fairways Leaseco, LLC
NREA SE3 Fairways Manager, LLC
NREA SE3 Fairways, DST
(Converted from MAR Fairways, LLC)

NREA SE3 Grand Oasis Leaseco, LLC
NREA SE3 Grand Oasis Manager, LLC
NREA SE3 Grand Oasis, DST
(Converted from Landmark at Grand Oasis, LP)

NREA Southeast Portfolio One Manager, LLC
NREA Southeast Portfolio One, DST
NREA Southeast Portfolio One, DST
NREA Southeast Portfolio Three Manager, LLC
NREA Southeast Portfolio Three, DST
NREA Southeast Portfolio Three, DST
NREA Southeast Portfolio Two Manager, LLC
NREA Southeast Portfolio Two, DST
NREA Southeast Portfolio Two, LLC
NREA SOV Investors, LLC
NREA Uptown TRS, LLC
NREA VB I LLC
NREA VB II LLC

NREA VB III LLC
NREA VB IV LLC
NREA VB Pledgor I LLC
NREA VB Pledgor I, LLC
NREA VB Pledgor II LLC
NREA VB Pledgor II, LLC
NREA VB Pledgor III LLC
NREA VB Pledgor III, LLC
NREA VB Pledgor IV LLC
NREA VB Pledgor IV, LLC
NREA VB Pledgor V LLC
NREA VB Pledgor V, LLC
NREA VB Pledgor VI LLC
NREA VB Pledgor VI, LLC
NREA VB Pledgor VII LLC
NREA VB Pledgor VII, LLC
NREA VB SM, Inc.
NREA VB V LLC
NREA VB VI LLC
NREA VB VII LLC
NREA Vista Ridge Investment Co, LLC
NREC AR Investors, LLC
NREC BM Investors, LLC
NREC BP Investors, LLC
NREC Latitude Investors, LLC
NREC REIT Sub, Inc.
NREC TRS, Inc.
NREC WW Investors, LLC
NREF OP I Holdco, LLC
NREF OP I SubHoldco, LLC
NREF OP I, L.P.
NREF OP II Holdco, LLC
NREF OP II SubHoldco, LLC
NREF OP II, L.P.
NREF OP IV REIT Sub TRS, LLC
NREF OP IV REIT Sub, LLC
NREF OP IV, L.P.
NREO NW Hospitality Mezz, LLC
NREO NW Hospitality, LLC
NREO Perilune, LLC
NREO SAFStor Investors, LLC
NREO TRS, Inc.
NRESF REIT Sub, LLC

NXRT Abbington, LLC

NXRT Atera II, LLC

NXRT Atera, LLC

NXRT AZ2, LLC

NXRT Barrington Mill, LLC

NXRT Bayberry, LLC

NXRT Bella Solara, LLC

NXRT Bella Vista, LLC

NXRT Bloom, LLC

NXRT Brandywine GP I, LLC

NXRT Brandywine GP I, LLC

NXRT Brandywine GP II, LLC

NXRT Brandywine GP II, LLC

NXRT Brandywine LP, LLC

NXRT Brandywine LP, LLC

NXRT Brentwood Owner, LLC

NXRT Brentwood, LLC

NXRT Cedar Pointe Tenant, LLC

NXRT Cedar Pointe, LLC

NXRT Cityview, LLC

NXRT Cornerstone, LLC

NXRT Crestmont, LLC

NXRT Crestmont, LLC

NXRT Enclave, LLC

NXRT Glenview, LLC

NXRT H2 TRS, LLC

NXRT Heritage, LLC

NXRT Hollister TRS LLC

NXRT Hollister, LLC

NXRT LAS 3, LLC

NXRT Master Tenant, LLC

NXRT Nashville Residential, LLC

NXRT Nashville Residential, LLC *(fka Freedom Nashville Residential, LLC)*

NXRT North Dallas 3, LLC

NXRT Old Farm, LLC

NXRT Pembroke Owner, LLC

NXRT Pembroke, LLC

NXRT PHX 3, LLC

NXRT Radbourne Lake, LLC

NXRT Rockledge, LLC

NXRT Sabal Palms, LLC

NXRT SM, Inc.

NXRT Steeplechase, LLC

NXRT Stone Creek, LLC

NXRT Summers Landing GP, LLC

NXRT Summers Landing LP, LLC

NXRT Torreyana, LLC

NXRT Vanderbilt, LLC

NXRT West Place, LLC

NXRTBH AZ2, LLC

NXRTBH Barrington Mill Owner, LLC

NXRTBH Barrington Mill SM, Inc.

NXRTBH Barrington Mill, LLC

NXRTBH Bayberry, LLC

NXRTBH Cityview, LLC

NXRTBH Colonnade, LLC

NXRTBH Cornerstone Owner, LLC

NXRTBH Cornerstone SM, Inc.

NXRTBH Cornerstone, LLC

NXRTBH Dana Point SM, Inc.

NXRTBH Dana Point, LLC

NXRTBH Foothill SM, Inc.

NXRTBH Foothill, LLC

NXRTBH Heatherstone SM, Inc.

NXRTBH Heatherstone, LLC

NXRTBH Hollister Tenant, LLC

NXRTBH Hollister, LLC

NXRTBH Madera SM, Inc.

NXRTBH Madera, LLC

NXRTBH McMillan, LLC

NXRTBH North Dallas 3, LLC

NXRTBH Old Farm II, LLC

NXRTBH Old Farm Tenant, LLC

NXRTBH Old Farm, LLC

NXRTBH Radbourne Lake, LLC

NXRTBH Rockledge, LLC

NXRTBH Sabal Palms, LLC

NXRTBH Steeplechase, LLC (dba Southpoint Reserve at Stoney Creek)-VA

NXRTBH Stone Creek, LLC

NXRTBH Vanderbilt, LLC

NXRTBH Versailles SM, Inc.

NXRTBH Versailles, LLC

Oak Holdco, LLC

Oaks CGC, LLC

Okada Family Revocable Trust

Oldenburg, Ltd.

Pam Capital Funding GP Co. Ltd.

Pam Capital Funding, L.P.

PamCo Cayman Ltd.

Park West 1700 Valley View Holdco, LLC

Park West 2021 Valley View Holdco, LLC

Park West Holdco, LLC

Park West Portfolio Holdco, LLC

Participants of Highland 401K Plan

Patrick Willoughby-McCabe

PCMG Trading Partners XXIII, L.P.

PCMG Trading Partners XXIII, LP

PDK Toys Holdco, LLC

Pear Ridge Partners, LLC

Penant Management GP, LLC

Penant Management LP

PensionDanmark Holding A/S

PensionDanmark Pensionsforsikringsaktieselskab

Peoria Place Development, LLC (30% cash contributions - profit participation only)

Perilune Aero Equity Holdings One, LLC

Perilune Aviation LLC

PetroCap Incentive Holdings III. L.P.

PetroCap Incentive Partners II GP, LLC

PetroCap Incentive Partners II, L.P.

PetroCap Incentive Partners III GP, LLC

PetroCap Incentive Partners III, LP

PetroCap Management Company LLC

PetroCap Partners II GP, LLC

PetroCap Partners II, L.P.

PetroCap Partners III GP, LLC

PetroCap Partners III, L.P.

Pharmacy Ventures I, LLC

Pharmacy Ventures II, LLC

Pollack, Ltd.

Powderhorn, LLC

PWM1 Holdings, LLC

PWM1, LLC

Quest IRA, Inc FBO Jennifer G. Terry, IRA #1467511

Quest, IRA, Inc. FBO Joshua N. Terry, IRA #1467711

RADCO - Bay Meadows, LLLP

RADCO - Bay Park, LLLP

RADCO NREC Bay Meadows Holdings, LLC

RADCO NREC Bay Park Holdings, LLC

Ramarim, LLC

Rand Advisors Series I Insurance Fund

Rand Advisors Series II Insurance Fund

Rand Advisors, LLC

Rand PE Fund I, L.P.

Rand PE Fund I, L.P. - Series 1

Rand PE Fund Management, LLC

Rand PE Holdco, LLC

Realdania

Red River CLO, Ltd.

Red River Investors Corp.

Riverview Partners SC, LLC

Rockwall CDO II Ltd.

Rockwall CDO II, Ltd.

Rockwall CDO, Ltd.

Rockwall Investors Corp.

Rothko, Ltd.

RTT Bella Solara, LLC

RTT Bloom, LLC

RTT Financial, Inc.

RTT Hollister, LLC

RTT Rockledge, LLC

RTT Torreyana, LLC

SALI Fund Partners, LLC

San Diego County Employees Retirement Association

Sandstone Pasadena Apartments, LLC

Sandstone Pasadena, LLC

Santa Barbara Foundation (third party)

Saturn Oil & Gas LLC

SBC Master Pension Trust

Scott Matthew Siekielski

SE Battleground Park, LLC

SE Battleground Park, LLC

SE Glenview, LLC

SE Governors Green Holdings, L.L.C.

SE Governors Green Holdings, L.L.C.
*(fka SCG Atlas Governors Green Holdings, L.L.C.)*

SE Governors Green I, LLC

SE Governors Green II, LLC

SE Governors Green II, LLC

SE Governors Green REIT, L.L.C.

SE Governors Green REIT, L.L.C.
*(fka SCG Atlas Governors Green REIT, L.L.C.)*

SE Governors Green, LLC
*(fka SCG Atlas Governors Green, L.L.C.)*

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles LP, LLC

SE Gulfstream Isles LP, LLC

SE Heights at Olde Towne, LLC

SE Heights at Olde Towne, LLC

SE Lakes at Renaissance Park GP I, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park LP, LLC

SE Lakes at Renaissance Park LP, LLC

SE Multifamily Holdings LLC

SE Multifamily Holdings, LLC

SE Multifamily REIT Holdings LLC

SE Myrtles at Olde Towne, LLC

SE Myrtles at Olde Towne, LLC

SE Oak Mill I Holdings, LLC

SE Oak Mill I Holdings, LLC *(fka SCG Atlas Oak Mill I Holdings, L.L.C.)*

SE Oak Mill I Owner, LLC *(fka SCG Atlas Oak Mill I, L.L.C.)*

SE Oak Mill I REIT, LLC

SE Oak Mill I REIT, LLC *(fka SCG Atlas Oak Mill I REIT, L.L.C.)*

SE Oak Mill I, LLC

SE Oak Mill I, LLC

SE Oak Mill II Holdings, LLC

SE Oak Mill II Holdings, LLC *(fka SCG Atlas Oak Mill II Holdings, L.L.C.)*

SE Oak Mill II Owner, LLC *(fka SCG Atlas Oak Mill II, L.L.C.)*

SE Oak Mill II REIT, LLC

SE Oak Mill II REIT, LLC *(fka SCG Atlas Oak Mill II REIT, L.L.C.)*

SE Oak Mill II, LLC

SE Oak Mill II, LLC

SE Quail Landing, LLC

SE River Walk, LLC

SE Riverwalk, LLC

SE SM, Inc.

SE Stoney Ridge Holdings, L.L.C. *(fka SCG Atlas Stoney Ridge Holdings, L.L.C.)*

SE Stoney Ridge Holdings, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge REIT, L.L.C. *(fka SCG Atlas Stoney Ridge REIT, L.L.C.)*

SE Stoney Ridge REIT, LLC

SE Stoney Ridge, LLC *(fka SCG Atlas Stoney Ridge, L.L.C.)*

SE Victoria Park, LLC

SE Victoria Park, LLC

Sentinel Re Holdings, Ltd.

Sentinel Reinsurance Ltd.

SFH1, LLC

SFR WLIF I, LLC
*(fka NexPoint WLIF I, LLC)*

SFR WLIF II, LLC
*(NexPoint WLIF II, LLC)*

SFR WLIF III, LLC
*(NexPoint WLIF III, LLC)*

SFR WLIF Manager, LLC
*(NexPoint WLIF Manager, LLC)*

SFR WLIF, LLC
*(NexPoint WLIF, LLC)*

SFR WLIF, LLC Series I

SFR WLIF, LLC Series II

SFR WLIF, LLC Series III

SH Castle BioSciences, LLC

Small Cap Equity Sub, LLC

Socially Responsible Equity Sub, LLC

SOF Brandywine I Owner, L.P.

SOF Brandywine II Owner, L.P.

SOF-X GS Owner, L.P.

Southfork Cayman Holdings, Ltd.

Southfork CLO, Ltd.

Specialty Financial Products Designated
Activity Company *(fka Specialty Financial
Products Limited)*

Spiritus Life, Inc.

SRL Sponsor LLC

SRL Whisperwod LLC

SRL Whisperwood Member LLC

SRL Whisperwood Venture LLC

SSB Assets LLC

Starck, Ltd.

Stemmons Hospitality, LLC

Steve Shin

Stonebridge Capital, Inc.

Stonebridge-Highland Healthcare Private
Equity Fund

Strand Advisors III, Inc.

Strand Advisors IV, LLC

Strand Advisors IX, LLC

Strand Advisors V, LLC

Strand Advisors XIII, LLC

Strand Advisors XVI, Inc.

Strand Advisors, Inc.

Stratford CLO, Ltd.

Summers Landing Apartment Investors, L.P.

Term Loan B
(10% cash contributions - profit participation
only)

The Dallas Foundation

The Dallas Foundation (third party)

The Dondero Insurance Rabbi Trust

The Dugaboy Investment Trust

The Dugaboy Investment Trust U/T/A Dated
Nov 15, 2010

The Get Good Non-Exempt Trust No. 1

The Get Good Non-Exempt Trust No. 2

The Get Good Trust

The Mark and Pamela Okada Family Trust -
Exempt Descendants' Trust

The Mark and Pamela Okada Family Trust -
Exempt Trust #2

The Ohio State Life Insurance Company

The Okada Family Foundation, Inc.

The Okada Insurance Rabbi Trust

The SLHC Trust

The Trustees of Columbia University in the
City of New York

The Twentysix Investment Trust
(Third Party Investor)

Thomas A. Neville

Thread 55, LLC

Tihany, Ltd.

Todd Travers

Tranquility Lake Apartments Investors, L.P.

Tuscany Acquisition, LLC

Uptown at Cityplace Condominium
Association, Inc.

US Gaming OpCo, LLC

US Gaming SPV, LLC

US Gaming, LLC

Valhalla CLO, Ltd.

VB GP LLC

VB Holding, LLC

VB One, LLC

VB OP Holdings LLC

VBAnnex C GP, LLC

VBAnnex C Ohio, LLC

VBAnnex C, LP

Ventoux Capital, LLC
(Matt Goetz)

VineBrook Annex B, L.P.

VineBrook Annex I, L.P.

VineBrook Homes Merger Sub II LLC

VineBrook Homes Merger Sub LLC

VineBrook Homes OP GP, LLC

VineBrook Homes Operating Partnership, L.P.

VineBrook Homes Trust, Inc.

VineBrook Partners I, L.P.

VineBrook Partners II, L.P.

VineBrook Properties, LLC

Virginia Retirement System

Vizcaya Investment, LLC

Wake LV Holdings II, Ltd.

Wake LV Holdings, Ltd.

Walter Holdco GP, LLC

Walter Holdco I, Ltd.

Walter Holdco, L.P.

Warhol, Ltd.

Warren Chang

Westchester CLO, Ltd.

William L. Britain

Wright Ltd.

Wright, Ltd.

Yellow Metal Merchants, Inc.

# EXHIBIT M

000697

Case 19-34054-sgj11 Doc 1656-2 Filed 01/04/21 Entered 01/04/21 18:21:37 Page 2 of 38
Case 3:21-cv-00538-N Document 26-2 Filed 06/09/21 Page 65 of 246 PageID 3400

*DRAFT*

# CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of _____ , 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "Debtor"), as settlor, and James P. Seery, Jr., as trustee (the "Claimant Trustee"), and [____] as Delaware trustee (the "Delaware Trustee," and together with the Debtor and the Claimant Trustee, the "Parties") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____ , 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve Disputed Claims as set forth herein and in the Plan; and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2] For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

(vi) administrative services relating to the activities of the Claimant Trust and relating to the implementation of the Plan can be performed by the Claimant Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor, the Claimant Trustee, and the Delaware Trustee have executed this Agreement for the benefit of the Claimant Trust Beneficiaries entitled to share in the Claimant Trust Assets and, at the direction of such Claimant Trust Beneficiaries as provided for in the Plan.

TO HAVE AND TO HOLD unto the Claimant Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust Beneficiaries, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Claimant Trust in accordance with Article IX hereof, this Claimant Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Claimant Trust Assets are to be strictly held and applied by the Claimant Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1    Certain Definitions.  Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)    "Acis" means collectively, Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

(b)    "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(c)    "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, with respect to a Member, or to the extent applicable, the Claimant Trustee, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

2

000699

(d)   "Claimant Trust Agreement" means this Agreement.

(e)   "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" hereunder and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of this Agreement.

(f)   "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(g)   "Claimant Trust Assets" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

(h)   "Claimant Trust Beneficiaries" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

(i)   "Claimant Trust Expense Cash Reserve" means $[•] million in Cash to be funded pursuant to the Plan into a bank account of the Claimant Trust on or before the Effective Date for the purpose of paying Claimant Trust Expenses in accordance herewith.

(j)   "Claimant Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust, and the fees and expenses of the Claimant Trustee and professional persons retained by the Claimant Trust or Claimant Trustee in accordance with this Agreement.

(k)   "Committee Member" means a Member who is/was also a member of the Creditors' Committee.

(l)   "Conflicted Member" has the meaning set forth in Section 4.6(c) hereof.

(m)   "Contingent Trust Interests" means the contingent interests in the Claimant Trust to be distributed to Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests in accordance with the Plan.

3

000700

(n)  "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, comprised of Acis, Meta-e Discovery, the Redeemer Committee and UBS.

(o)  "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(p)  "Delaware Trustee" has the meaning set forth in the introduction hereof.

(q)  "Disability" means as a result of the Claimant Trustee's or a Member's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Claimant Trustee or the Member, as applicable, the Claimant Trustee or such Member has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(r)  "Disinterested Members" has the meaning set forth in Section 4.1 hereof.

(s)  "Disputed Claims Reserve" means the reserve account to be opened by the Claimant Trust on or after the Effective Date and funded in an initial amount determined by the Claimant Trustee [[in a manner consistent with the Plan and with the consent of a simple majority of the Oversight Board]] to be sufficient to pay Disputed Claims under the Plan.

(t)  "Employees" means the employees of the Debtor set forth in the Plan Supplement.

(u)  "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(v)  "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(w)  "Equity Trust Interests" has the meaning given to it in Section 5.1(c) hereof.

(x)  "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(y)  "General Unsecured Claim Trust Interests" means interests in the Claimant Trust to be distributed to Holders of Allowed Class 8 General Unsecured Claims (including Disputed General Unsecured Claims that are subsequently Allowed) in accordance with the Plan.

(z)  "GUC Beneficiaries" means the Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests.

(aa)  "GUC Payment Certification" has the meaning given to it in Section 5.1(c) hereof.

000701

(bb)    "HarbourVest" means, collectively, HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P.

(cc)    "Investment Advisers Act" means the Investment Advisers Act of 1940, as amended.

(dd)    "Investment Company Act" means the Investment Company Act of 1940, as amended.

(ee)    "Litigation Sub-Trust" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(ff)    "Litigation Sub-Trust Agreement" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(gg)    "Litigation Trustee" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(hh)    "Managed Funds" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to the Plan; *provided, however,* that the Highland Select Equity Fund, L.P. (and its direct and indirect subsidiaries) will not be considered a Managed Fund for purposes hereof.

(ii)    "Material Claims" means the Claims asserted by UBS, Patrick Hagaman Daugherty, Integrated Financial Associates, Inc., and the Employees.

(jj)    "Member" means a Person that is member of the Oversight Board.

(kk)    "New GP LLC" means the general partner of the Reorganized Debtor.

(ll)    "Oversight Board" means the board comprised of five (5) Members established pursuant to the Plan and Article III of this Agreement to oversee the Claimant Trustee's performance of his duties and otherwise serve the functions set forth in this Agreement and those of the "Claimant Trust Oversight Committee" described in the Plan. Subject to the terms of this Agreement, the initial Members of the Oversight Board shall be: (i) Eric Felton, as representative of the Redeemer Committee; (ii) Josh Terry, as representative of Acis; (iii) Elizabeth Kozlowski, as representative of UBS; (iv) Paul McVoy, as representative of Meta-e Discovery; and (v) David Pauker.

5

(mm)  "Plan" has the meaning set forth in the Recitals hereof.

(nn)  "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(oo)  "PSZJ" means Pachulski Stang Ziehl & Jones LLP.

(pp)  "Redeemer Committee" means the Redeemer Committee of the Highland Crusader Fund.

(qq)  "Registrar" has the meaning given to it in Section 5.3(a) hereof.

(rr)  "Reorganized Debtor Assets" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

(ss)  "Securities Act" means the Securities Act of 1933, as amended.

(tt)  "Subordinated Beneficiaries" means the Claimant Trust Beneficiaries who hold Subordinated Claim Trust Interests.

(uu)  "Subordinated Claim Trust Interests" means the subordinated interests in the Claimant Trust to be distributed to Holders of Allowed Class 9 Subordinated Claims in accordance with the Plan.

(vv)  "TIA" means the Trust Indenture Act of 1939, as amended.

(ww)  "Trust Interests" means collectively the General Unsecured Claim Trust Interests, Subordinated Claim Trust Interests, and Equity Trust Interests.

(xx)  "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

(yy)  "Trustees" means collectively the Claimant Trustee and Delaware Trustee.

(zz)  "UBS" means collectively UBS Securities LLC and UBS AG London Branch.

(aaa)  "WilmerHale" Wilmer Cutler Pickering Hale & Dorr LLP.

000703

1.2    <u>General Construction</u>.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3    <u>Incorporation of the Plan</u>.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

## ARTICLE II.
## ESTABLISHMENT OF THE CLAIMANT TRUST

2.1    <u>Creation of Name of Trust</u>.

(a)    The Claimant Trust is hereby created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Claimant Trust."  The Claimant Trustee shall be empowered to conduct all business and hold all property constituting the Claimant Trust Assets in such name in accordance with the terms and conditions set forth herein.

(b)    The Trustees shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in their capacity as Trustees, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

000704

2.2    Objectives.

(a)    The Claimant Trust is established for the purpose of satisfying Allowed General Unsecured Claims and Allowed Subordinated Claims (and only to the extent provided herein, Allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests) under the Plan, by monetizing the Claimant Trust Assets transferred to it and making distributions to the Claimant Trust Beneficiaries. The Claimant Trust shall not continue or engage in any trade or business except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets consistent with this Agreement and the Plan and act as sole member and manager of New GP LLC. The Claimant Trust shall provide a mechanism for (i) the monetization of the Claimant Trust Assets and (ii) the distribution of the proceeds thereof, net of all claims, expenses, charges, liabilities, and obligations of the Claimant Trust, to the Claimant Trust Beneficiaries in accordance with the Plan. In furtherance of this distribution objective, the Claimant Trust will, from time to time, prosecute and resolve objections to certain Claims and Interests as provided herein and in the Plan.

(b)    It is intended that the Claimant Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. In furtherance of this objective, the Claimant Trustee shall, in his business judgment, make continuing best efforts to (i) dispose of or monetize the Claimant Trust Assets and resolve Claims, (ii) make timely distributions, and (iii) not unduly prolong the duration of the Claimant Trust, in each case in accordance with this Agreement.

2.3    Nature and Purposes of the Claimant Trust.

(a)    The Claimant Trust is organized and established as a trust for the purpose of monetizing the Claimant Trust Assets and making distributions to Claimant Trust Beneficiaries in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets, if any, which shall be commenced and pursued by the Reorganized Debtor at the direction of the Claimant Trust as sole member of New GP LLC pursuant to the terms of the Reorganized Limited Partnership Agreement. The Claimant Trust and Claimant Trustee shall have and retain, and, as applicable, assign and transfer to the Litigation Sub-Trust and Litigation Trustee, any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Claim as of the Petition Date. On and after the date hereof, in accordance with and subject to the Plan, the Claimant Trustee shall have the authority to (i) compromise, settle or otherwise resolve, or withdraw any objections to Claims against the Debtor, provided, however, the Claimant Trustee shall only have the authority to compromise or settle any Employee Claim with the unanimous consent of the Oversight Board and in the absence of unanimous consent, any such Employee Claim shall be transferred to the Litigation Sub-Trust and be litigated, comprised, settled, or otherwise resolved exclusively by the Litigation Trustee and (ii) compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, which authority may be shared with or transferred to the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement. For the avoidance of doubt, the Claimant Trust,

000705

pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Claims other than Estate Claims, the Employee Claims, and those Claims constituting Reorganized Debtor Assets.

(b)     The Claimant Trust shall be administered by the Claimant Trustee, in accordance with this Agreement, for the following purposes:

(i)     to manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period;

(ii)     to litigate and settle Claims in Class 8 and Class 9 (other than the Employee Claims, which shall be litigated and/or settled by the Litigation Trustee if the Oversight Board does not unanimously approve of any proposed settlement of such Employee Claim by the Claimant Trustee) and any of the Causes of Action included in the Claimant Trust Assets (including any cross-claims and counter-claims); provided, however, that Estate Claims transferred to the Litigation Sub-Trust shall be litigated and settled by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement;

(iii)     to distribute net proceeds of the Claimant Trust Assets to the Claimant Trust Beneficiaries;

(iv)     to distribute funds from the Disputed Claims Reserve to Holders of Trust Interests or to the Reorganized Debtor for distribution to Holders of Disputed Claims in each case in accordance with the Plan from time to time as any such Holder's Disputed Claim becomes an Allowed Claim under the Plan;

(v)     to distribute funds to the Litigation Sub-Trust at the direction the Oversight Board;

(vi)     to serve as the limited partner of, and to hold the limited partnership interests in, the Reorganized Debtor;

(vii)     to serve as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner;

(viii)     to oversee the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement, in its capacity as the sole member and manager of New GP LLC pursuant to the terms of the New GP LLC Documents, all with a view toward maximizing value in a reasonable time in a manner consistent with the Reorganized Debtor's fiduciary duties as investment adviser to the Managed Funds; and

(ix)     to perform any other functions and take any other actions provided for or permitted by this Agreement and the Plan, and in any other agreement executed by the Claimant Trustee.

000706

2.4     <u>Transfer of Assets and Rights to the Claimant Trust; Litigation Sub-Trust</u>.

(a)     On the Effective Date, pursuant to the Plan, the Debtor shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Claimant Trust Assets and related Privileges held by the Debtor to the Claimant Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan and this Agreement.  To the extent certain assets comprising the Claimant Trust Assets, because of their nature or because such assets will accrue or become transferable subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Claimant Trust on such date, such assets shall be considered Reorganized Debtor Assets, which may be subsequently transferred to the Claimant Trust by the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement after such date.

(b)     On or as soon as practicable after the Effective Date, the Claimant Trust shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims and related Privileges held by the Claimant Trust to the Litigation Sub-Trust Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan, this Agreement, and the Litigation Sub-Trust Agreement.  Following the transfer of such Privileges, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(c)     On or before the Effective Date, and continuing thereafter, the Debtor or Reorganized Debtor, as applicable, shall provide (i) for the Claimant Trustee's and Litigation Trustee's reasonable access to all records and information in the Debtor's and Reorganized Debtor's possession, custody or control, (ii) that all Privileges related to the Claimant Trust Assets shall transfer to and vest exclusively in the Claimant Trust (except for those Privileges that will be transferred and assigned to the Litigation Sub-Trust in respect of the Estate Claims), and (iii) subject to Section 3.12(c), the Debtor and Reorganized Debtor shall preserve all records and documents (including all electronic records or documents), including, but not limited to, the Debtor's file server, email server, email archiving system, master journal, SharePoint, Oracle E-Business Suite, Advent Geneva, Siepe database, Bloomberg chat data, and any backups of the foregoing, until such time as the Claimant Trustee, with the consent of the Oversight Board and, if pertaining to any of the Estate Claims, the Litigation Trustee, directs the Reorganized Debtor, as sole member of its general partner, that such records are no longer required to be preserved. For the purposes of transfer of documents, the Claimant Trust or Litigation Sub-Trust, as applicable, is an assignee and successor to the Debtor in respect of the Claimant Trust Assets and Estate Claims, respectively, and shall be treated as such in any review of confidentiality restrictions in requested documents.

(d)     Until the Claimant Trust terminates pursuant to the terms hereof, legal title to the Claimant Trust Assets (other than Estate Claims) and all property contained therein shall be vested at all times in the Claimant Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Claimant Trust Assets to be vested in the Claimant Trustee, in which case title shall be deemed to be vested in the Claimant Trustee, solely in his capacity as Claimant Trustee.  For purposes of such jurisdictions, the term Claimant Trust, as used herein, shall be read to mean the Claimant Trustee.

000707

2.5     Principal Office.  The principal office of the Claimant Trust shall be maintained by the Claimant Trustee at the following address:[_____].

2.6     Acceptance.  The Claimant Trustee accepts the Claimant Trust imposed by this Agreement and agrees to observe and perform that Claimant Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.7     Further Assurances.  The Debtor, Reorganized Debtor, and any successors thereof will, upon reasonable request of the Claimant Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Claimant Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Claimant Trustee the powers, instruments or funds in trust hereunder.

2.8     Incidents of Ownership.  The Claimant Trust Beneficiaries shall be the sole beneficiaries of the Claimant Trust and the Claimant Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## ARTICLE III.
## THE TRUSTEES

3.1     Role.  In furtherance of and consistent with the purpose of the Claimant Trust, the Plan, and this Agreement, the Claimant Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Claimant Trustee with respect to the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries and maintain, manage, and take action on behalf of the Claimant Trust.

3.2     Authority.

(a)     In connection with the administration of the Claimant Trust, in addition to any and all of the powers enumerated elsewhere herein, the Claimant Trustee shall, in an expeditious but orderly manner, monetize the Claimant Trust Assets, make timely distributions and not unduly prolong the duration of the Claimant Trust.  The Claimant Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Claimant Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.  The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value in a reasonable time.

(b)     The Claimant Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Claims and Causes of Action that are part of the Claimant Trust Assets, other than the Estate Claims transferred to the Litigation Sub-Trust, as the Claimant Trustee determines is in the best interests of the Claimant Trust; provided, however, that if the Claimant Trustee proposes a settlement of an Employee Claim and does not obtain unanimous consent of the Oversight Board of such settlement, such Employee Claim shall be transferred to the Litigation Sub-Trust for the Litigation Trustee to litigate.  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or

000708

otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

(c) Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

(i) solely as required by Section 2.4(c), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii) open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

(iii) as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

(iv) settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

(v) sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $3,000,000 (over a thirty-day period);

(vi) upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

(vii) exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

(viii) protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(ix) obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board solely in their capacities as such, in the form of fiduciary liability insurance, a directors and

000709

officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Claimant Trust Expense and paid by the Claimant Trustee from the Claimant Trust Assets;

(x)     without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Claimant Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Claimant Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Claimant Trustee shall be Claimant Trust Expenses and paid by the Claimant Trustee from the Claimant Trust Assets;

(xi)    retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Claimant Trust as may be required by this Agreement, the Plan, the Confirmation Order, and applicable laws and as may be reasonably and appropriate in Claimant Trustee's discretion. Subject to the foregoing, the Claimant Trustee may commit the Claimant Trust to, and shall pay, such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid by the Claimant Trustee from Claimant Trust Assets;

(xii)   prepare and file (A) tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (B) an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity, or (C) any periodic or current reports that may be required under applicable law;

(xiii)  prepare and send annually to the Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Claimant Trust and its share of the Claimant Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

(xiv)   to the extent applicable, assert, enforce, release, or waive any attorney-client communication, attorney work product or other Privilege or defense on behalf of the Claimant Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Claimant Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xv)    subject to Section 3.4, invest the proceeds of the Claimant Trust Assets and all income earned by the Claimant Trust, pending any distributions in short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills;

000710

(xvi)  request any appropriate tax determination with respect to the Claimant Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xvii)  take or refrain from taking any and all actions the Claimant Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Claimant Trust Assets consistent with purposes hereof;

(xviii)  take all steps and execute all instruments and documents necessary to effectuate the purpose of the Claimant Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder;

(xix)  exercise such other powers and authority as may be vested in or assumed by the Claimant Trustee by any Final Order;

(xx)  evaluate and determine strategy with respect to the Claimant Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Claimant Trust Assets on behalf of the Claimant Trust; and

(xxi)  with respect to the Claimant Trust Beneficiaries, perform all duties and functions of the Distribution Agent as set forth in the Plan, including distributing Cash from the Disputed Claims Reserve, solely on account of Disputed Class 1 through Class 7 Claims that were Disputed as of the Effective Date, but become Allowed, to the Reorganization Debtor such that the Reorganized Debtor can satisfy its duties and functions as Distribution Agent with respect to Claims in Class 1 through Class 7 (the foregoing subparagraphs (i)-(xxi) being collectively, the "Authorized Acts").

(d)  The Claimant Trustee and the Oversight Committee will enter into an agreement as soon as practicable after the Effective Date concerning the Claimant Trustee's authority with respect to certain other assets, including certain portfolio company assets (the "Other Assets").

(e)  The Claimant Trustee has the power and authority to act as trustee of the Claimant Trust and perform the Authorized Acts through the date such Claimant Trustee resigns, is removed, or is otherwise unable to serve for any reason.

3.3  Limitation of Authority.

(a)  Notwithstanding anything herein to the contrary, the Claimant Trust and the Claimant Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Claimant Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement, or (iv) cause New GP LLC to cause the Reorganized Debtor to take any action in contravention of the Plan, Plan Documents or the Confirmation Order.

(b)  Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Claimant Trustee must receive the consent by vote of a simple majority

000711

of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 herein, in order to:

    (i)  terminate or extend the term of the Claimant Trust;

    (ii)  prosecute, litigate, settle or otherwise resolve any of the Material Claims;

    (iii)  except otherwise set forth herein, sell or otherwise monetize any assets that are not Other Assets, including Reorganized Debtor Assets (other than with respect to the Managed Funds), that are valued greater than $3,000,000 (over a thirty-day period);

    (iv)  except for cash distributions made in accordance with the terms of this Agreement, make any cash distributions to Claimant Trust Beneficiaries in accordance with Article IV of the Plan;

    (v)  except for any distributions made in accordance with the terms of this Agreement, make any distributions from the Disputed Claims Reserve to Holders of Disputed Claims after such time that such Holder's Claim becomes an Allowed Claim under the Plan;

    (vi)  reserve or retain any cash or cash equivalents in an amount reasonably necessary to meet claims and contingent liabilities (including Disputed Claims and any indemnification obligations that may arise under Section 8.2 of this Agreement), to maintain the value of the Claimant Trust Assets, or to fund ongoing operations and administration of the Litigation Sub-Trust;

    (vii)  borrow as may be necessary to fund activities of the Claimant Trust;

    (viii)  determine whether the conditions under Section 5.1(c) of this Agreement have been satisfied such that a certification should be filed with the Bankruptcy Court;

    (ix)  invest the Claimant Trust Assets, proceeds thereof, or any income earned by the Claimant Trust (for the avoidance of doubt, this shall not apply to investment decisions made by the Reorganized Debtor or its subsidiaries solely with respect to Managed Funds);

    (x)  change the compensation of the Claimant Trustee;

    (xi)  subject to ARTICLE X, make structural changes to the Claimant Trust or take other actions to minimize any tax on the Claimant Trust Assets; and

    (xii)  retain counsel, experts, advisors, or any other professionals; provided, however, the Claimant Trustee shall not be required to obtain the consent of the Oversight Board for the retention of (i) PSZJ, WilmerHale, or Development Specialists, Inc. and

15

(ii) any other professional whose expected fees and expenses are estimated at less than or equal to $200,000.

    (c)    [Reserved.]

    3.4   <u>Investment of Cash</u>.  The right and power of the Claimant Trustee to invest the Claimant Trust Assets, the proceeds thereof, or any income earned by the Claimant Trust, with majority approval of the Oversight Board, shall be limited to the right and power to invest in such Claimant Trust Assets only in Cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; <u>provided</u>, <u>however</u> that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("<u>IRS</u>") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (b) the Claimant Trustee may retain any Claimant Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly monetization or other disposition of such assets, and (c) the Claimant Trustee may expend the assets of the Claimant Trust (i) as reasonably necessary to meet contingent liabilities (including indemnification and similar obligations) and maintain the value of the assets of the Claimant Trust during the pendency of this Claimant Trust, (ii) to pay Claimant Trust Expenses (including, but not limited to, any taxes imposed on the Claimant Trust and reasonable attorneys' fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Claimant Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement).

    3.5   <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Claimant Trustee in accordance with the provisions of this Agreement shall be final and binding upon any and all Beneficiaries.

    3.6   <u>Term of Service</u>.  The Claimant Trustee shall serve as the Claimant Trustee for the duration of the Claimant Trust, subject to death, resignation or removal.

    3.7   <u>Resignation</u>.  The Claimant Trustee may resign as Claimant Trustee of the Claimant Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Claimant Trustee shall continue to serve as Claimant Trustee after delivery of the Claimant Trustee's resignation until the proposed effective date of such resignation, unless the Claimant Trustee and a simple majority of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Claimant Trustee in accordance with Section 3.9 hereof becomes effective.

    3.8   <u>Removal</u>.

    (a)    The Claimant Trustee may be removed by a simple majority vote of the Oversight Board for Cause for Cause immediately upon notice thereof, or without Cause upon 60 days' prior written notice.  Upon the removal of the Claimant Trustee pursuant hereto, the Claimant Trustee will resign, or be deemed to have resigned, from any role or position he or she

000713

may have at New GP LLC or the Reorganized Debtor effective upon the expiration of the foregoing 60 day period unless the Claimant Trustee and a simple majority of the Oversight Board agree otherwise.

(b)     To the extent there is any dispute regarding the removal of a Claimant Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Claimant Trustee will continue to serve as the Claimant Trustee after his removal until the earlier of (i) the time when a successor Claimant Trustee will become effective in accordance with Section 3.9 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.9     Appointment of Successor.

(a)     Appointment of Successor.  In the event of a vacancy by reason of the death or Disability (in the case of a Claimant Trustee that is a natural person), dissolution (in the case of a Claimant Trustee that is not a natural person), or removal of the Claimant Trustee, or prospective vacancy by reason of resignation, a successor Claimant Trustee shall be selected by a simple majority vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Claimant Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Claimant Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Claimant Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Claimant Trust.  The successor Claimant Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Claimant Trustee.

(b)     Vesting or Rights in Successor Claimant Trustee.  Every successor Claimant Trustee appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trust, the exiting Claimant Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Claimant Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Claimant Trustee, except that the successor Claimant Trustee shall not be liable for the acts or omissions of the retiring Claimant Trustee.  In no event shall the retiring Claimant Trustee be liable for the acts or omissions of the successor Claimant Trustee.

(c)     Interim Claimant Trustee.  During any period in which there is a vacancy in the position of Claimant Trustee, the Oversight Board shall appoint one of its Members to serve as the interim Claimant Trustee (the "Interim Trustee") until a successor Claimant Trustee is appointed pursuant to Section 3.9(a).  The Interim Trustee shall be subject to all the terms and conditions applicable to a Claimant Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board merely by such Person's appointment as Interim Trustee.

000714

3.10   Continuance of Claimant Trust.   The death, resignation, or removal of the Claimant Trustee shall not operate to terminate the Claimant Trust created by this Agreement or to revoke any existing agency (other than any agency of the Claimant Trustee as the Claimant Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Claimant Trustee.   In the event of the resignation or removal of the Claimant Trustee, the Claimant Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Claimant Trustee's capacity under this Agreement and the conveyance of the Claimant Trust Assets then held by the exiting Claimant Trustee to the successor Claimant Trustee; (ii) deliver to the successor Claimant Trustee all non-privileged documents, instruments, records, and other writings relating to the Claimant Trust as may be in the possession or under the control of the exiting Claimant Trustee, provided, the exiting Claimant Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Claimant Trustee and the cost of making such copies shall be a Claimant Trust Expense to be paid by the Claimant Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Claimant Trustee's obligations and functions by his successor, provided the fees and expenses of such assistance and cooperation shall be paid to the exiting Claimant Trustee by the Claimant Trust. The exiting Claimant Trustee shall irrevocably appoint the successor Claimant Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Claimant Trustee is obligated to perform under this Section 3.10.

3.11   Claimant Trustee as "Estate Representative".   The Claimant Trustee will be the exclusive trustee of the Claimant Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Claimant Trust Assets, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement; provided that all rights and powers as representative of the Estate pursuant to section 1123(b)(3)(B) shall be transferred to the Litigation Trustee in respect of the Estate Claims and the Employee Claims.   The Claimant Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Claimant Trust Assets, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order.   All actions, claims, rights or interest constituting Claimant Trust Assets are preserved and retained and may be enforced, or assignable to the Litigation Sub-Trust, by the Claimant Trustee as an Estate Representative.

3.12   Books and Records.

(a)   The Claimant Trustee shall maintain in respect of the Claimant Trust and the Claimant Trust Beneficiaries books and records reflecting Claimant Trust Assets in its possession and the income of the Claimant Trust and payment of expenses, liabilities, and claims against or assumed by the Claimant Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.   Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Claimant Trust and the requirements of Article VII herein.   Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any

18

000715

accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

(b)     The Claimant Trustee shall provide quarterly reporting to the Oversight Board and Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

(c)     The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; provided, however, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims or Employee Claims without the consent of the Litigation Trustee. Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

3.13    Compensation and Reimbursement; Engagement of Professionals.

(a)     Compensation and Expenses.

(i)     Compensation.  As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation, including any severance, as agreed to by the Claimant Trustee and the Committee, if agreed upon prior to the Effective Date, or the Oversight Board if agreed upon on or after the Effective Date.

(ii)     Expense Reimbursements.  All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

(b)     Professionals.

(i)     Engagement of Professionals.  The Claimant Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The

000716

Claimant Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

                (ii)   <u>Fees and Expenses of Professionals</u>.  The Claimant Trustee shall pay the reasonable fees and expenses of any retained professionals as Claimant Trust Expenses.

      3.14   <u>Reliance by Claimant Trustee</u>.  Except as otherwise provided herein, the Claimant Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Claimant Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Claimant Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Claimant Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning the Claimant Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

      3.15   <u>Commingling of Claimant Trust Assets</u>.  The Claimant Trustee shall not commingle any of the Claimant Trust Assets with his or her own property or the property of any other Person.

      3.16   <u>Delaware Trustee</u>.  The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Claimant Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Claimant Trustee; <u>provided</u>, <u>however</u>, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law.  The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law.  Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Claimant Trust.

000717

## ARTICLE IV.
## THE OVERSIGHT BOARD

4.1 <u>Oversight Board Members</u>. The Oversight Board will be comprised of five (5) Members appointed to serve as the board of managers of the Claimant Trust, at least two (2) of which shall be disinterested Members selected by the Creditors' Committee (such disinterested members, the "<u>Disinterested Members</u>"). The initial Members of the Oversight Board will be representatives of Acis, the Redeemer Committee, Meta-e Discovery, UBS, and David Pauker. David Pauker and Paul McVoy, the representative of Meta-e Discovery, shall serve as the initial Disinterested Board Members; <u>provided</u>, <u>however</u>, that if the Plan is confirmed with the Convenience Class or any other convenience class supported by the Creditors' Committee, Meta-E Discovery and its representative will resign on the Effective Date or as soon as practicable thereafter and be replaced in accordance with Section 4.10 hereof..

4.2 <u>Authority and Responsibilities</u>.

(a) The Oversight Board shall, as and when requested by either of the Claimant Trustee and Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Claimant Trustee and Litigation Trustee as to the administration and management of the Claimant Trust and the Litigation Sub-Trust, as applicable, in accordance with the Plan, the Confirmation Order, this Agreement, and Litigation Sub-Trust Agreement (as applicable) and shall have the other responsibilities and powers as set forth herein. As set forth in the Plan, the Confirmation Order, and herein, the Oversight Board shall have the authority and responsibility to oversee, review, and govern the activities of the Claimant Trust, including the Litigation Sub-Trust, and the performance of the Claimant Trustee and Litigation Trustee, and shall have the authority to remove the Claimant Trustee in accordance with Section 3.7 hereof or the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; <u>provided</u>, <u>however</u>, that the Oversight Board may not direct either Claimant Trustee and Litigation Trustee to act inconsistently with their respective duties under this Agreement (including without limitation as set in Section 4.2(e) below), the Litigation Sub-Trust Agreement, the Plan, the Confirmation Order, or applicable law.

(b) The Oversight Board shall also (i) monitor and oversee the administration of the Claimant Trust and the Claimant Trustee's performance of his or her responsibilities under this Agreement, (ii) as more fully set forth in the Litigation Sub-Trust Agreement, approve funding to the Litigation Sub-Trust, monitor and oversee the administration of the Litigation Sub-Trust and the Litigation Trustee's performance of his responsibilities under the Litigation Sub-Trust Agreement, and (iii) perform such other tasks as are set forth herein, in the Litigation Sub-Trust Agreement, and in the Plan.

(c) The Claimant Trustee shall consult with and provide information to the Oversight Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Oversight Board to meet its obligations hereunder.

(d) Notwithstanding any provision of this Agreement to the contrary, the Claimant Trustee shall not be required to (i) obtain the approval of any action by the Oversight

000718

Board to the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is required to be taken by applicable law, the Plan, the Confirmation Order, or this Agreement or (ii) follow the directions of the Oversight Board to take any action the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is prohibited by applicable law the Plan, the Confirmation Order, or this Agreement.

(e)     Notwithstanding provision of this Agreement to the contrary, with respect to the activities of the Reorganized Debtor in its capacity as an investment adviser (and subsidiaries of the Reorganized Debtor that serve as general partner or in an equivalent capacity) to any Managed Funds, the Oversight Board shall not make investment decisions or otherwise participate in the investment decision making process relating to any such Managed Funds, nor shall the Oversight Board or any member thereof serve as a fiduciary to any such Managed Funds.  It is agreed and understood that investment decisions made by the Reorganized Debtor (or its subsidiary entities) with respect to Managed Funds shall be made by the Claimant Trustee in his capacity as an officer of the Reorganized Debtor and New GP LLC and/or such persons who serve as investment personnel of the Reorganized Debtor from time to time, and shall be subject to the fiduciary duties applicable to such entities and persons as investment adviser to such Managed Funds.

4.3     <u>Fiduciary Duties</u>.  The Oversight Board (and each Member in its capacity as such) shall have fiduciary duties to the Claimant Trust Beneficiaries consistent with the fiduciary duties that the members of the Creditors' Committee have to unsecured creditors and shall exercise its responsibilities accordingly; <u>provided</u>, <u>however</u>, that the Oversight Board shall not owe fiduciary obligations to any Holders of Class A Limited Partnership Interests or Class B/C Limited Partnership Interests until such Holders become Claimant Trust Beneficiaries in accordance with Section 5.1(c) hereof; <u>provided</u>, <u>further</u>, that the Oversight Board shall not owe fiduciary obligations to a Holder of an Equity Trust Interest if such Holder is named as a defendant in any of the Causes of Action, including Estate Claims, in their capacities as such, it being the intent that the Oversight Board's fiduciary duties are to maximize the value of the Claimant Trust Assets, including the Causes of Action.  In all circumstances, the Oversight Board shall act in the best interests of the Claimant Trust Beneficiaries and in furtherance of the purpose of the Claimant Trust.  Notwithstanding anything to the contrary contained in this Agreement, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.

4.4     <u>Meetings of the Oversight Board</u>.  Meetings of the Oversight Board are to be held as necessary to ensure the operation of the Claimant Trust but in no event less often than quarterly.  Special meetings of the Oversight Board may be held whenever and wherever called for by the Claimant Trustee or any Member; <u>provided</u>, <u>however</u>, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice requirement being subject to any waiver by the Members in the minutes, if any, or other transcript, if any, of proceedings of the Oversight Board).  Unless the Oversight Board decides otherwise (which decision shall rest in the reasonable discretion of the Oversight Board), the Claimant Trustee, and each of the Claimant Trustee's designated advisors may, but are not required to, attend meetings of the Oversight Board.

000719

4.5     Unanimous Written Consent.  Any action required or permitted to be taken by the Oversight Board in a meeting may be taken without a meeting if the action is taken by unanimous written consents describing the actions taken, signed by all Members and recorded. If any Member informs the Claimant Trustee (via e-mail or otherwise) that he or she objects to the decision, determination, action, or inaction proposed to be made by unanimous written consent, the Claimant Trustee must use reasonable good faith efforts to schedule a meeting on the issue to be set within 48 hours of the request or as soon thereafter as possible on which all members of the Oversight Board are available in person or by telephone.  Such decision, determination, action, or inaction must then be made pursuant to the meeting protocols set forth herein.

4.6     Manner of Acting.

(a)     A quorum for the transaction of business at any meeting of the Oversight Board shall consist of at least three Members (including no less than one (1) Disinterested Member); provided that if the transaction of business at a meeting would constitute a direct or indirect conflict of interest for the Redeemer Committee, Acis, and/or UBS, at least two Disinterested Members must be present for there to be a quorum.  Except as set forth in Sections 3.3(c), 4.9(a), 5.2, 5.4, 6.1, 9.1, and 10, herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Oversight Board except as otherwise required by law or as provided in this Agreement.  Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition of the place) for the holding hereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the applicable Trustee and each Member.

(b)     Any Member who is present and entitled to vote at a meeting of the Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Board, unless (i) such Member objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Board before its adjournment.  The right of dissent or abstention is not available to any Member of the Oversight Board who votes in favor of the action taken.

(c)     Prior to a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Oversight Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Trust Interests).  A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Claimant Trust shall be

000720

deemed a "Conflicted Member" who shall not be entitled to vote or take part in any action with respect to such matter or issue. In the event of a Conflicted Member, the vote or action with respect to such matter or issue giving rise to such conflict shall be undertaken only by Members who are not Conflicted Members and, notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Oversight Board.

(d)     Each of Acis, the Redeemer Committee, and UBS shall be deemed "Conflicted Members" with respect to any matter or issue related to or otherwise affecting any of their respective Claim(s) (a "Committee Member Claim Matter"). A unanimous vote of the Disinterested Members shall be required to approve of or otherwise take action with respect to any Committee Member Claim Matter and, notwithstanding anything herein to the contrary, the same shall be the act of the Oversight Board.

4.7     Tenure of the Members of the Oversight Board. The authority of the Members of the Oversight Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Claimant Trust is terminated in accordance with Article X hereof. The Members of the Oversight Board will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 4.7 below, or removal pursuant to Section 4.8 below.

4.8     Resignation. A Member of the Oversight Board may resign by giving not less than 90 days prior written notice thereof to the Claimant Trustee and other Members. Such resignation shall become effective on the earlier to occur of (i) the day specified in such notice and (ii) the appointment of a successor in accordance with Section 4.9 below.

4.9     Removal. A majority of the Oversight Board may remove any Member for Cause or Disability. If any Committee Member has its Claim disallowed in its entirety the representative of such entity will immediately be removed as a Member without the requirement for a vote and a successor will be appointed in the manner set forth herein. Notwithstanding the foregoing, upon the termination of the Claimant Trust, any or all of the Members shall be deemed to have resigned.

4.10     Appointment of a Successor Member.

(a)     In the event of a vacancy on the Oversight Board (whether by removal, death, or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously; provided, however, that any vacancy resulting from the removal, resignation, or death of a Disinterested Member may only be filled by a disinterested Person unaffiliated with any Claimant or constituency in the Chapter 11 Case; provided, further, that if an individual serving as the representative of a Committee Member resigns from its role as representative, such resignation shall not be deemed resignation of the Committee Member itself and such Committee Member shall have the exclusive right to designate its replacement representative for the Oversight Board. The appointment of a successor Member will be further evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of

appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

(b)     Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act.  A successor Member will not be liable personally for any act or omission of a predecessor Member.

(c)     Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11     <u>Compensation and Reimbursement of Expenses</u>.  Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; <u>provided</u>, <u>however</u>, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member.  Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12     <u>Confidentiality</u>.  Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("<u>Confidential Trust Information</u>"), except as otherwise required by law.  For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "<u>Member Affiliates</u>") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.11.

## <u>ARTICLE V.</u>
## <u>TRUST INTERESTS</u>

5.1     <u>Claimant Trust Interests</u>.

000722

(a)     General Unsecured Claim Trust Interests. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "GUC Beneficiaries"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims. The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

(b)     Subordinated Claim Trust Interests. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "Subordinated Beneficiaries"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9. The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests. The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, and all Disputed General Unsecured Claims have been resolved, in accordance with the terms of the Plan and this Agreement.

(c)     Contingent Trust Interests. On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "Equity Holders"). The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan. Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the "GUC Payment Certification"). Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "Equity Trust Interests." The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

5.2     Interests Beneficial Only. The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant

Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets or to require an accounting. No Claimant Trust Beneficiary shall have any governance right or other wright to direct Claimant Trust activities.

5.3    Transferability of Trust Interests. No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected until (i) such action is unanimously approved by the Oversight Board, (ii) the Claimant Trustee and Oversight Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Claimant Trust to be subject to entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Claimant Trustee and Oversight Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not (a) require the Claimant Trust to comply with the registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act or (b) cause any adverse effect under the Investment Advisers Act, or (y) the Oversight Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Claimant Trust to become a public reporting company and/or make periodic reports under the Exchange Act (provided that it is not required to register under the Investment Company Act or register its securities under the Securities Act) to enable such disposition to be made. In the event that any such disposition is allowed, the Oversight Board and the Claimant Trustee may add such restrictions upon such disposition and other terms of this Agreement as are deemed necessary or appropriate by the Claimant Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

5.4    Registry of Trust Interests.

(a)    Registrar. The Claimant Trustee shall appoint a registrar, which may be the Claimant Trustee (the "Registrar"), for the purpose of recording ownership of the Trust Interests as provided herein. The Registrar, if other than the Claimant Trustee, shall be an institution or person acceptable to the Oversight Board. For its services hereunder, the Registrar, unless it is the Claimant Trustee, shall be entitled to receive reasonable compensation from the Claimant Trust as a Claimant Trust Expense.

(b)    Trust Register. The Claimant Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time, a registry of the Claimant Trust Beneficiaries and the Equity Holders (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Claimant Trustee and the Registrar may prescribe.

(c)    Access to Register by Beneficiaries. The Claimant Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Claimant Trustee, and in accordance with reasonable regulations prescribed by the Claimant Trustee, to inspect and, at the expense of the Claimant Trust Beneficiary make copies of the Trust Register, in each case for a purpose reasonable and related to such Claimant Trust Beneficiary's Trust Interest.

000724

5.5     Exemption from Registration.  The Parties hereto intend that the rights of the Claimant Trust Beneficiaries arising under this Claimant Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Claimant Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Claimant Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Claimant Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Claimant Trustee under this Agreement.

5.6     Absolute Owners.  The Claimant Trustee may deem and treat the Claimant Trust Beneficiary of record as determined pursuant to this Article 5 as the absolute owner of such Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

5.7     Effect of Death, Incapacity, or Bankruptcy.  The death, incapacity, or bankruptcy of any Claimant Trust Beneficiary during the term of the Claimant Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Claimant Trust Beneficiary under this Agreement.

5.8     Change of Address.  Any Claimant Trust Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Claimant Trustee identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Claimant Trustee.  Absent actual receipt of such notice by the Claimant Trustee, the Claimant Trustee shall not recognize any such change of distribution address.

5.9     Standing.  No Claimant Trust Beneficiary shall have standing to direct the Claimant Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Claimant Trust Assets.  No Claimant Trust Beneficiary shall have any direct interest in or to any of the Claimant Trust Assets.

5.10    Limitations on Rights of Claimant Trust Beneficiaries.

(a)     The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein).

(b)     In any action taken by a Claimant Trust Beneficiary against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, the prevailing party will be entitled to reimbursement of attorneys' fees and other costs; provided, however, that any fees and costs shall be borne by the Claimant Trust on behalf of any such Trustee or Member, as set forth herein.

000725

(c)     A Claimant Trust Beneficiary who brings any action against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, may be required by order of the Bankruptcy Court to post a bond ensuring that the full costs of a legal defense can be reimbursed.  A request for such bond can be made by the Claimant Trust or by Claimant Trust Beneficiaries constituting in the aggregate at least 50% of the most senior class of Claimant Trust Interests.

(d)     Any action brought by a Claimant Trust Beneficiary must be brought in the United States Bankruptcy Court for the Northern District of Texas.  Claimant Trust Beneficiaries are deemed to have waived any right to a trial by jury

(e)     The rights of Claimant Trust Beneficiaries to bring any action against the Claimant Trust, a current or former Trustee, or current or former Member, in their capacity as such, shall not survive the final distribution by the Claimant Trust.

## ARTICLE VI.
## DISTRIBUTIONS

6.1     <u>Distributions</u>.

(a)     Notwithstanding anything to the contrary contained herein, the Claimant Trustee shall distribute to holders of Trust Interests at least annually the Cash on hand net of any amounts that (a) are reasonably necessary to maintain the value of the Claimant Trust Assets pending their monetization or other disposition during the term of the Claimant Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust (including, but not limited to, any taxes imposed on or payable by the Claimant Trustee with respect to the Claimant Trust Assets), (c) are necessary to pay or reserve for the anticipated costs and expenses of the Litigation Sub-Trust, (d) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Claimant Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses), (e) are necessary to maintain the Disputed Claims Reserve, and (f) are necessary to pay Allowed Claims in Class 1 through Class 7. Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within six months of the Effective Date, and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board.  The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board.

(b)     At the request of the Reorganized Debtor, subject in all respects to the provisions of this Agreement, the Claimant Trustee shall distribute Cash to the Reorganized Debtor, as Distribution Agent with respect to Claims in Class 1 through 7, sufficient to satisfy Allowed Claims in Class 1 through Class 7.

(c)     All proceeds of Claimant Trust Assets shall be distributed in accordance with the Plan and this Agreement.

000726

6.2     Manner of Payment or Distribution.   All distributions made by the Claimant Trustee on behalf of the Claimant Trust to the Claimant Trust Beneficiaries shall be payable by the Claimant Trustee directly to the Claimant Trust Beneficiaries of record as of the twentieth (20th) day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3     Delivery of Distributions.   All distributions under this Agreement to any Claimant Trust Beneficiary shall be made, as applicable, at the address of such Claimant Trust Beneficiary (a) as set forth on the Schedules filed with the Bankruptcy Court or (b) on the books and records of the Debtor or their agents, as applicable, unless the Claimant Trustee has been notified in writing of a change of address pursuant to Section 5.6 hereof.

6.4     Disputed Claims Reserves.   There will be no distributions under this Agreement or the Plan on account of Disputed Claims pending Allowance.   The Claimant Trustee will maintain a Disputed Claims Reserve as set forth in the Plan and will make distributions from the Disputed Claims Reserve as set forth in the Plan.

6.5     Undeliverable Distributions and Unclaimed Property.   All undeliverable distributions and unclaimed property shall be treated in the manner set forth in the Plan.

6.6     De Minimis Distributions.   Distributions with a value of less than $100 will be treated in accordance with the Plan.

6.7     United States Claimant Trustee Fees and Reports.   **After the Effective Date, the Claimant Trust shall pay as a Claimant Trust Expense, all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Claimant Trust's disbursements until the Chapter 11 Case is closed.  After the Effective Date, the Claimant Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Claimant Trust as required by the Office of the United States Trustee Office for as long as the Chapter 11 Case remains open.**

## ARTICLE VII.
## TAX MATTERS

7.1     Tax Treatment and Tax Returns.

(a)     It is intended for the initial transfer of the Claimant Trust Assets to the Claimant Trust to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) as if the Debtor transferred the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described below) to the Claimant Trust Beneficiaries and then, immediately thereafter, the Claimant Trust Beneficiaries transferred the Claimant Trust Assets to the Claimant Trust.  Consistent with such treatment, (i) it is intended that the Claimant Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Claimant Trust Beneficiaries will be treated as the grantors of the Claimant Trust and owners of their respective share of the Claimant Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where

000727

applicable). The Claimant Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

(b) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Beneficiaries of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(c) The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

7.2 <u>Withholding</u>. The Claimant Trustee may withhold from any amount distributed from the Claimant Trust to any Claimant Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable Beneficiary. As a condition to receiving any distribution from the Claimant Trust, the Claimant Trustee may require that the Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Claimant Trustee to comply with applicable tax reporting and withholding laws. If a Beneficiary fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section 6.5(b) of this Agreement.

<u>**ARTICLE VIII.**</u>
<u>**STANDARD OF CARE AND INDEMNIFICATION**</u>

8.1 <u>Standard of Care</u>. None of the Claimant Trustee, acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any current or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Claimant Trust or to any Person (including any Claimant Trust Beneficiary) in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the acts or omissions of any such Claimant Trustee, Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Claimant Trust, the Claimant Trustee, Delaware Trustee, Oversight Board, or individual Member shall not be personally liable to the Claimant Trust or any other Person in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Claimant Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Claimant Trust or to any Person for the acts or omissions of any employee, agent or professional of the Claimant Trust or Claimant Trustee taken or not taken in good faith reliance on the advice of professionals or, as applicable, with the

000728

approval of the Bankruptcy Court, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Claimant Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Claimant Trust.

8.2 <u>Indemnification</u>. The Claimant Trustee (including each former Claimant Trustee), Delaware Trustee, Oversight Board, and all past and present Members (collectively, in their capacities as such, the "<u>Indemnified Parties</u>") shall be indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence. If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Claimant Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Claimant Trustee and/or Oversight Board, as applicable; <u>provided</u>, <u>however</u>, that the failure of an Indemnified Party to promptly notify the Claimant Trustee and/or Oversight Board of an indemnification obligation will not excuse the Claimant Trust from indemnifying the Indemnified Party unless such delay has caused the Claimant Trust material harm. The Claimant Trust shall pay, advance or otherwise reimburse on demand of an Indemnified Party the Indemnified Party's reasonable legal and other defense expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith or in connection with enforcing his or her rights under this Section 8.2 as a Claimant Trust Expense, and the Claimant Trust shall not refuse to make any payments to the Indemnified Party on the assertion that the Indemnified Party engaged in willful misconduct or acted in bad faith; <u>provided</u> that the Indemnified Party shall be required to repay promptly to the Claimant Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Claimant Trust with respect to which such expenses were paid; <u>provided</u>, <u>further</u>, that any such repayment obligation shall be unsecured and interest free. The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties. For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Claimant Trustee, Delaware Trustee, or Member or the estate of any decedent Claimant Trustee or Member, solely in their capacities as such. The indemnification provided hereby shall be a Claimant Trust Expense and shall not be deemed exclusive of any other rights to which the Indemnified Party may now or in the future be entitled to under the Plan or any applicable insurance policy. The failure of the Claimant Trust to pay or reimburse an Indemnified Party as required under this Section 8.2 shall constitute irreparable harm to the Indemnified Party and such Indemnified Party shall be entitled to specific performance of the obligations herein.

000729

8.3     No Personal Liability.   Except as otherwise provided herein, neither of the Trustees nor Members of the Oversight Board shall be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any Person in connection with the affairs of the Claimant Trust to the fullest extent provided under Section 3803 of the Delaware Statutory Trust Act, and all Persons asserting claims against the Claimant Trustee, Litigation Trustee, or any Members, or otherwise asserting claims of any nature in connection with the affairs of the Claimant Trust, shall look solely to the Claimant Trust Assets for satisfaction of any such claims.

8.4     Other Protections.   To the extent applicable and not otherwise addressed herein, the provisions and protections set forth in Article IX of the Plan will apply to the Claimant Trust, the Claimant Trustee, the Litigation Trustee, and the Members.

## ARTICLE IX.
## TERMINATION

9.1     Duration.   The Trustees, the Claimant Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as:   (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets.

9.2     Distributions in Kind.   Upon dissolution of the Claimant Trust, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

9.3     Continuance of the Claimant Trustee for Winding Up.   After dissolution of the Claimant Trust and for purpose of liquidating and winding up the affairs of the Claimant Trust, the Claimant Trustee shall continue to act as such until the Claimant Trustee's duties have been fully performed.   Prior to the final distribution of all remaining Claimant Trust Assets, the Claimant Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Claimant Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Claimant Trust, until such time as the winding up of the Claimant Trust is completed.   Upon the dissolution of the Claimant Trust and completion of the winding up of the assets, liabilities and affairs of the Claimant Trust pursuant

000730

to the Delaware Statutory Trust Act, the Claimant Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Claimant Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date"). Upon the Termination date, the Claimant Trustee shall retain for a period of two (2) years, as a Claimant Trust Expense, the books, records, Claimant Trust Beneficiary lists, and certificated and other documents and files that have been delivered to or created by the Claimant Trustee. At the Claimant Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.4    Termination of Duties. Except as otherwise specifically provided herein, upon the Termination Date of the Claimant Trust, the Claimant Trustee, the Oversight Board and its Members shall have no further duties or obligations hereunder.

9.5    No Survival. The rights of Claimant Trust Beneficiaries hereunder shall not survive the Termination Date, provided that such Claimant Trust Beneficiaries are provided with notice of such Termination Date.

## ARTICLE X.
## AMENDMENTS AND WAIVER

The Claimant Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions. This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Claimant Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Claimant Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

## ARTICLE XI.
## MISCELLANEOUS

11.1    Trust Irrevocable. Except as set forth in this Agreement, establishment of the Claimant Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Claimant Trust Beneficiaries.

11.2    Bankruptcy of Claimant Trust Beneficiaries. The dissolution, termination, bankruptcy, insolvency or other similar incapacity of any Claimant Trust Beneficiary shall not permit any creditor, trustee, or any other Claimant Trust Beneficiary to obtain possession of, or exercise legal or equitable remedies with respect to, the Claimant Trust Assets.

11.3    Claimant Trust Beneficiaries have No Legal Title to Claimant Trust Assets. No Claimant Trust Beneficiary shall have legal title to any part of the Claimant Trust Assets.

11.4    Agreement for Benefit of Parties Only. Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Claimant Trustee, Oversight Board, and the Claimant Trust Beneficiaries any legal or equitable right, remedy or claim under or in

respect of this Agreement. The Claimant Trust Assets shall be held for the sole and exclusive benefit of the Claimant Trust Beneficiaries.

11.5 <u>Notices</u>. All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

> (a) If to the Claimant Trustee:

>> Claimant Trustee
>> c/o **[insert contact info for Claimant Trustee]**

> With a copy to:

>> Pachulski Stang Ziehl & Jones LLP
>> 10100 Santa Monica Blvd, 13th Floor
>> Los Angeles, CA 90067
>> Attn: Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
>>       Ira Kharasch (ikharasch@pszjlaw.com)
>>       Gregory Demo (gdemo@pszjlaw.com)

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.5 to the entity to be charged with knowledge of such change.

11.6 <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.7 <u>Counterparts</u>. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.8 <u>Binding Effect, etc.</u> All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Claimant Trust, the Claimant Trustee, and the Claimant Trust Beneficiaries, and their respective successors and assigns. Any notice, direction, consent, waiver or other instrument or action by any Claimant Trust Beneficiary shall bind its successors and assigns.

11.9 <u>Headings; References</u>. The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

000732

11.10 <u>Governing Law</u>. This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.11 <u>Consent to Jurisdiction</u>. Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan.

11.12 <u>Transferee Liabilities</u>. The Claimant Trust shall have no liability for, and the Claimant Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement. In no event shall the Claimant Trustee or the Claimant Trust Beneficiaries have any personal liability for such claims. If any liability shall be asserted against the Claimant Trust or the Claimant Trustee as the transferee of the Claimant Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Claimant Trustee may use such part of the Claimant Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Claimant Trustee as a Claimant Trust Expense.

[Remainder of Page Intentionally Blank]

000733

IN WITNESS HEREOF, the parties hereto have caused this Claimant Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Highland Capital Management, L.P.


By: _____
     James P. Seery, Jr.
     Chief Executive Officer and
     Chief Restructuring Officer


Claimant Trustee


By: _____
     James P. Seery, Jr., not individually but
solely in his capacity as the Claimant Trustee

000734

# EXHIBIT N

Case 19-34054-sgj11 Doc 1656-3 Filed 01/04/21 Entered 01/04/21 18:21:37 Page 2 of 39
Case 3:21-cv-00538-N Document 26-2 Filed 06/09/21 Page 103 of 246 PageID 3438
*DRAFT*

## CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of _____ , ~~2020~~2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "Debtor"), as settlor, and James P. Seery, Jr., as trustee (the "Claimant Trustee"), and [_____] as Delaware trustee (the "Delaware Trustee," and together with the Debtor and the Claimant Trustee, the "Parties") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November ~~13,~~24, 2020, the Debtor filed the *~~Third~~Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. ▴1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] [which was confirmed by the Bankruptcy Court on _____ , ~~2020~~2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order")];

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve Disputed Claims as set forth herein and in the Plan; and (vi) administrative services relating to the activities of the Claimant Trust and relating to the implementation of the Plan can be performed by the Claimant Trustee.

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2]  For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor, the Claimant Trustee, and the Delaware Trustee have executed this Agreement for the benefit of the Claimant Trust Beneficiaries entitled to share in the Claimant Trust Assets and, at the direction of such Claimant Trust Beneficiaries as provided for in the Plan.

TO HAVE AND TO HOLD unto the Claimant Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust Beneficiaries, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Claimant Trust in accordance with Article IX hereof, this Claimant Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Claimant Trust Assets are to be strictly held and applied by the Claimant Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     Certain Definitions. Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan. For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Acis" means collectively, Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

(b)     "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(c)     "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, with respect to a Member, or to the extent applicable, the Claimant Trustee, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(d)     "Claimant Trust Agreement" means this Agreement.

2

(e)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" hereunder and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of this Agreement.

(f)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(g)     "Claimant Trust Assets" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

(h)     "Claimant Trust Beneficiaries" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

(i)     "Claimant Trust Expense Cash Reserve" means $[•] million in Cash to be funded pursuant to the Plan into a bank account of the Claimant Trust on or before the Effective Date for the purpose of paying Claimant Trust Expenses in accordance herewith.

(j)     "Claimant Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust, and the fees and expenses of the Claimant Trustee and professional persons retained by the Claimant Trust or Claimant Trustee in accordance with ~~Article [3.13(b)] of~~ this Agreement.

(k)     "Committee Member" means a Member who is/was also a member of the Creditors' Committee.

(l)     "Conflicted Member" has the meaning set forth in Section 4.6(c) hereof.

(m)     "Contingent Trust Interests" means the contingent interests in the Claimant Trust to be distributed to Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests in accordance with the Plan.

3

(n)     "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, comprised of Acis, Meta-e Discovery, the Redeemer Committee and UBS.

(o)     "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(p)     "Delaware Trustee" has the meaning set forth in the introduction hereof.

(q)     "Disability" means as a result of the Claimant Trustee's or a Member's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Claimant Trustee or the Member, as applicable, the Claimant Trustee or such Member has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(r)     "Disinterested Members" has the meaning set forth in Section 4.1 hereof.

(s)     "Disputed Claims Reserve" means the reserve account to be opened by the Claimant Trust on or after the Effective Date and funded in an initial amount determined by the Claimant Trustee [(in a manner consistent with the Plan and with the consent of a simple majority of the Oversight Board)] to be sufficient to pay Disputed Claims under the Plan.

(t)     ["Employees" means the employees of the Debtor set forth in the Plan Supplement.]

(u)     ["Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by employeesany such Senior Employee of the Debtor prior to the Effective Date).]

(v)     "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(w)     "Equity Trust Interests" has the meaning given to it in Section 5.1(c) hereof.

(x)     "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(y)     "General Unsecured Claim Trust Interests" means interests in the Claimant Trust to be distributed to Holders of Allowed Class 8 General Unsecured Claims (including Disputed General Unsecured Claims that are subsequently Allowed) in accordance with the Plan.

(z)     "GUC Beneficiaries" means the Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests.

4

(aa)    "GUC Payment Certification" has the meaning given to it in Section 5.1(c) hereof.

(bb)    "HarbourVest" means, collectively, HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P.

(cc)    "Investment Advisers Act" means the Investment Advisers Act of 1940, as amended.

(dd)    "Investment Company Act" means the Investment Company Act of 1940, as amended.

(ee)    "Litigation Sub-Trust" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(ff)    "Litigation Sub-Trust Agreement" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(gg)    "Litigation Trustee" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(hh)    "Managed Funds" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to the Plan; *provided, however,* that the Highland Select Equity Fund, L.P. (and its direct and indirect subsidiaries) will not be considered a Managed Fund for purposes hereof.

(ii)    "Material Claims" means the Claims asserted by UBS, ~~HarbourVest,~~ Patrick Hagaman Daugherty, ~~and~~ Integrated Financial Associates, Inc., and the Employees. ~~[TBD: Employee Claims]~~

(jj)    "Member" means a Person that is member of the Oversight Board.

(kk)    "New GP LLC" means the general partner of the Reorganized Debtor.

(ll)    "Oversight Board" means the board comprised of five (5) Members established pursuant to the Plan and Article III of this Agreement to oversee the Claimant Trustee's performance of his duties and otherwise serve the functions set forth in this Agreement and those of the "Claimant Trust Oversight Committee" described in the Plan.  Subject to the

5

terms of this Agreement, the initial Members of the Oversight Board shall be: (i) Eric Felton, as representative of the Redeemer Committee; (ii) Josh Terry, as representative of Acis; (iii) Elizabeth Kozlowski, as representative of UBS; (iv) Paul McVoy, as representative of Meta-e Discovery; and (v) David Pauker.

(mm) (ll) "Plan" has the meaning set forth in the Recitals hereof.

(nn) (mm) "Privileges" means all of the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Causes of ActionEstate Claims or Employee Claims, including, but not limitedwithout limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence[; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product] so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(oo) "PSZJ" means Pachulski Stang Ziehl & Jones LLP.

(pp) (nn) "Redeemer Committee" means the Redeemer Committee of the Highland Crusader Fund.

(qq) (oo) "Registrar" has the meaning given to it in Section 5.3(a) hereof.

(rr) (pp) "Reorganized Debtor Assets" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust. For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

(ss) (qq) "Securities Act" means the Securities Act of 1933, as amended.

(tt) (rr) "Subordinated Beneficiaries" means the Claimant Trust Beneficiaries who hold Subordinated Claim Trust Interests.

(uu) (ss) "Subordinated Claim Trust Interests" means the subordinated interests in the Claimant Trust to be distributed to Holders of Allowed Class 9 Subordinated Claims in accordance with the Plan.

(vv) (tt) "TIA" means the Trust Indenture Act of 1939, as amended.

(ww) (uu) "Trust Interests" means collectively the General Unsecured Claim Trust Interests, Subordinated Claim Trust Interests, and Equity Trust Interests.

(xx) (vv) "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

6

(yy) ~~(ww)~~ "Trustees" means collectively the Claimant Trustee and Delaware Trustee.

(zz) ~~(xx)~~ "UBS" means collectively UBS Securities LLC and UBS AG London Branch.

(aaa) "WilmerHale" Wilmer Cutler Pickering Hale & Dorr LLP.

1.2 <u>General Construction</u>. As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply. "Includes" and "including" are not limiting and "or" is not exclusive. References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement. Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars. References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3 <u>Incorporation of the Plan</u>. The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

## ARTICLE II.
## ESTABLISHMENT OF THE CLAIMANT TRUST

2.1 <u>Creation of Name of Trust</u>.

(a) The Claimant Trust is hereby created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Claimant Trust." The Claimant Trustee shall be empowered to conduct all business and hold all property constituting the Claimant Trust Assets in such name in accordance with the terms and conditions set forth herein.

(b) The Trustees shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in their capacity as Trustees, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2 <u>Objectives</u>.

(a) The Claimant Trust is established for the purpose of satisfying Allowed General Unsecured Claims and Allowed Subordinated Claims (and only to the extent provided herein, Allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests) under the Plan, by monetizing the Claimant Trust Assets transferred to it and making distributions to the Claimant Trust Beneficiaries. The Claimant Trust shall not continue or engage in any trade or business except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets consistent with this Agreement and the Plan and act as sole

000742

member and manager of New GP LLC. The Claimant Trust shall provide a mechanism for (i) the monetization of the Claimant Trust Assets and (ii) the distribution of the proceeds thereof, net of all claims, expenses, charges, liabilities, and obligations of the Claimant Trust, to the Claimant Trust Beneficiaries in accordance with the Plan. In furtherance of this distribution objective, the Claimant Trust will, from time to time, prosecute and resolve objections to certain Claims and Interests as provided herein and in the Plan.

(b)   It is intended that the Claimant Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. In furtherance of this objective, the Claimant Trustee shall, in his business judgment, make continuing best efforts to (i) dispose of or monetize the Claimant Trust Assets and resolve Claims, (ii) make timely distributions, and (iii) not unduly prolong the duration of the Claimant Trust, in each case in accordance with this Agreement.

2.3   <u>Nature and Purposes of the Claimant Trust</u>.

(a)   The Claimant Trust is organized and established as a trust for the purpose of monetizing the Claimant Trust Assets and making distributions to Claimant Trust Beneficiaries in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets, if any, which shall be commenced and pursued by the Reorganized Debtor at the direction of the Claimant Trust as sole member of New GP LLC pursuant to the terms of the Reorganized Limited Partnership Agreement. The Claimant Trust and Claimant Trustee shall have and retain, and, as applicable, assign and transfer to the Litigation Sub-Trust and Litigation Trustee, any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Claim as of the Petition Date. On and after the date hereof, in accordance with and subject to the Plan, the Claimant Trustee shall have the authority to (i) compromise, settle or otherwise resolve, or withdraw any objections to Claims against the Debtor [(except for the Employee Claims, which shall], provided, however, the Claimant Trustee shall only have the authority to compromise or settle any Employee Claim with the unanimous consent of the Oversight Board and in the absence of unanimous consent, any such Employee Claim shall be transferred to the Litigation Sub-Trust and be litigated, comprised, settled, or otherwise resolved exclusively by the Litigation Trustee)] and to(ii) compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, which authority may be shared with or transferred to the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement. For the avoidance of doubt, the Claimant Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Claims other than Estate Claims[, the Employee Claims,] and those Claims constituting Reorganized Debtor Assets.

(b)   The Claimant Trust shall be administered by the Claimant Trustee, in accordance with this Agreement, for the following purposes:

8

(i) to manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period;

(ii) to litigate and settle Claims in Class 8 and Class 9 (other than the Employee Claims, which shall be litigated and/or settled by the Litigation Trustee if the Oversight Board does not unanimously approve of any proposed settlement of such Employee Claim by the Claimant Trustee) and any of the Causes of Action included in the Claimant Trust Assets (including any cross-claims and counter-claims); provided, however, that Estate Claims transferred to the Litigation Sub-Trust shall be litigated and settled by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement;

(iii) to distribute net proceeds of the Claimant Trust Assets to the Claimant Trust Beneficiaries;

(iv) to distribute funds from the Disputed Claims Reserve to Holders of Trust Interests or to the Reorganized Debtor for distribution to Holders of Disputed in Claims in each case in accordance with the Plan from time to time as any such Holder's Disputed Claim becomes an Allowed Claim under the Plan;

(v) to distribute funds to the Litigation Sub-Trust at the direction the Oversight Board;

(vi) to serve as the limited partner of, and to hold the limited partnership interests in, the Reorganized Debtor;

(vii) to serve as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner;

(viii) to oversee the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement, in its capacity as the sole member and manager of New GP LLC pursuant to the terms of the New GP LLC Documents, all with a view toward maximizing value in a reasonable time in a manner consistent with the Reorganized Debtor's fiduciary duties as investment adviser to the Managed Funds; and

(ix) to perform any other functions and take any other actions provided for or permitted by this Agreement and the Plan, and in any other agreement executed by the Claimant Trustee.

2.4     Transfer of Assets and Rights to the Claimant Trust; Litigation Sub-Trust.

(a) On the Effective Date, pursuant to the Plan, the Debtor shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Claimant Trust Assets and related Privileges held by the Debtor to the Claimant Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan and this Agreement.  To the extent certain assets comprising the Claimant Trust Assets, because of their nature or because such assets will accrue or become transferable

9

000744

subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Claimant Trust on such date, such assets shall be considered Reorganized Debtor Assets, which may be subsequently transferred to the Claimant Trust by the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement after such date.

(b)     On or as soon as practicable after the Effective Date, the Claimant Trust shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims and related Privileges held by the Claimant Trust to the Litigation Sub-Trust Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan, this Agreement, and the Litigation Sub-Trust Agreement.  Following the transfer of such Privileges, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(c)     On or before the Effective Date, and continuing thereafter, the Debtor or Reorganized Debtor, as applicable, shall provide (i) for the Claimant Trustee's and Litigation Trustee's reasonable access to all records and information in the Debtor's and Reorganized Debtor's possession that relate to the Claimant Trust Assets and Estate Claims, custody or control, (ii) that all Privileges related to the Claimant Trust Assets shall transfer to and vest exclusively in the Claimant Trust (except for those Privileges that will be transferred and assigned to the Litigation Sub-Trust in respect of the Estate Claims), and (iii) subject to Section 3.12(c), the Debtor and Reorganized Debtor shall preserve all records and documents (including all electronic records or documents) including, but not limited to, the Debtor's file server, email server, email archiving system, master journal, SharePoint, Oracle E-Business Suite, Advent Geneva, Siepe database, Bloomberg chat data, and any backups of the foregoing, until such time as the Claimant Trustee, [with the consent of the Oversight Board and, if pertaining to any of the Estate Claims, the Litigation Trustee,] directs the Reorganized Debtor, as sole member of its general partner, that such records are no longer required to be preserved.  For the purposes of transfer of documents, the Claimant Trust or Litigation Sub-Trust, as applicable, is an assignee and successor to the Debtor in respect of the Claimant Trust Assets and Estate Claims, respectively, and shall be treated as such in any review of confidentiality restrictions in requested documents.

(d)     Until the Claimant Trust terminates pursuant to the terms hereof, legal title to the Claimant Trust Assets (other than Estate Claims) and all property contained therein shall be vested at all times in the Claimant Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Claimant Trust Assets to be vested in the Claimant Trustee, in which case title shall be deemed to be vested in the Claimant Trustee, solely in his capacity as Claimant Trustee.  For purposes of such jurisdictions, the term Claimant Trust, as used herein, shall be read to mean the Claimant Trustee.

2.5     Principal Office.  The principal office of the Claimant Trust shall be maintained by the Claimant Trustee at the following address:[_____].

2.6     Acceptance.  The Claimant Trustee accepts the Claimant Trust imposed by this Agreement and agrees to observe and perform that Claimant Trust, on and subject to the terms and conditions set forth herein and in the Plan.

10

2.7     Further Assurances.  The Debtor, Reorganized Debtor, and any successors thereof will, upon reasonable request of the Claimant Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Claimant Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Claimant Trustee the powers, instruments or funds in trust hereunder.

2.8     Incidents of Ownership.  The Claimant Trust Beneficiaries shall be the sole beneficiaries of the Claimant Trust and the Claimant Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## ARTICLE III.
## THE TRUSTEES

3.1     Role.  In furtherance of and consistent with the purpose of the Claimant Trust, the Plan, and this Agreement, the Claimant Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Claimant Trustee with respect to the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries and maintain, manage, and take action on behalf of the Claimant Trust.

3.2     Authority.

(a)     In connection with the administration of the Claimant Trust, in addition to any and all of the powers enumerated elsewhere herein, the Claimant Trustee shall, in an expeditious but orderly manner, monetize the Claimant Trust Assets, make timely distributions and not unduly prolong the duration of the Claimant Trust.  The Claimant Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Claimant Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.  The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value in a reasonable time.

(b)     The Claimant Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Claims and Causes of Action that are part of the Claimant Trust Assets, other than the [Employee Claims and] Estate Claims transferred to the Litigation Sub-Trust, if any, as the Claimant Trustee determines is in the best interests of the Claimant Trust; provided, however, that if the Claimant Trustee proposes a settlement of an Employee Claim and does not obtain unanimous consent of the Oversight Board of such settlement, such Employee Claim shall be transferred to the Litigation Sub-Trust for the Litigation Trustee to litigate.  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following

11

"[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

(c)     Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

(i)     solely as required by Section 2.4(c), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii)     open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

(iii)     as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

(iv)     settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

(v)     sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $[3,000,000] (over a thirty-day period);

(vi)     upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

(vii)     exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

(viii)     protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(ix)     obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board solely in their capacities as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Claimant Trust Expense and paid by the Claimant Trustee from the Claimant Trust Assets;

12

000747

(x)     without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Claimant Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Claimant Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Claimant Trustee shall be Claimant Trust Expenses and paid by the Claimant Trustee from the Claimant Trust Assets;

(xi)     retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Claimant Trust as may be required by this Agreement, the Plan, the Confirmation Order, and applicable laws and as may be reasonably and appropriate in Claimant Trustee's discretion. Subject to the foregoing, the Claimant Trustee may commit the Claimant Trust to, and shall pay, such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid by the Claimant Trustee from Claimant Trust Assets;

(xii)     prepare and file (A) tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (B) an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity, or (C) any periodic or current reports that may be required under applicable law;

(xiii)     prepare and send annually to the Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Claimant Trust and its share of the Claimant Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

(xiv)     to the extent applicable, assert, enforce, release, or waive any attorney-client communication, attorney work product or other Privilege or defense on behalf of the Claimant Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Claimant Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xv)     subject to Section 3.4, invest the proceeds of the Claimant Trust Assets and all income earned by the Claimant Trust, pending any distributions in short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills;

(xvi)     request any appropriate tax determination with respect to the Claimant Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

13

(xvii) take or refrain from taking any and all actions the Claimant Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Claimant Trust Assets consistent with purposes hereof;

(xviii) take all steps and execute all instruments and documents necessary to effectuate the purpose of the Claimant Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder;

(xix) exercise such other powers and authority as may be vested in or assumed by the Claimant Trustee by any Final Order;

(xx) evaluate and determine strategy with respect to the Claimant Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Claimant Trust Assets on behalf of the Claimant Trust; and

(xxi) with respect to the Claimant Trust Beneficiaries, perform all duties and functions of the Distribution Agent as set forth in the Plan, including distributing Cash from the Disputed Claims Reserve, solely on account of Disputed Class 1 through Class 7 Claims that were Disputed as of the Effective Date, but become Allowed, to the Reorganization Debtor such that the Reorganized Debtor can satisfy its duties and functions as Distribution Agent with respect to Claims in Class 1 through Class 7 (the foregoing subparagraphs (i)-(xviixxi) being collectively, the "Authorized Acts").

(d)     The Claimant Trustee and the Oversight Committee will enter into an agreement as soon as practicable after the Effective Date concerning the Claimant Trustee's authority with respect to certain other assets, including certain portfolio company assets (the "Other Assets").

(e)     The Claimant Trustee has the power and authority to act as trustee of the Claimant Trust and perform the Authorized Acts through the date such Claimant Trustee resigns, is removed, or is otherwise unable to serve for any reason.

3.3     Limitation of Authority.

(a)     Notwithstanding anything herein to the contrary, the Claimant Trust and the Claimant Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Claimant Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement, or (iv) cause New GP LLC to cause the Reorganized Debtor to take any action in contravention of the Plan, Plan Documents or the Confirmation Order.

(b)     Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Claimant Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 herein, in order to:

14

(i)      terminate or extend the term of the Claimant Trust;

(ii)     prosecute, litigate, settle or otherwise resolve any of the Material Claims;

(iii)    except otherwise set forth herein, sell or otherwise monetize any assets that are not Other Assets, including Reorganized Debtor Assets (other than with respect to the Managed Funds), that are valued greater than $[3,000,000] (over a thirty-day period);

(iv)    except for cash distributions made in accordance with the terms of this Agreement, make any cash distributions to Claimant Trust Beneficiaries in accordance with Article IV of the Plan;

(v)     except for any distributions made in accordance with the terms of this Agreement, make any distributions from the Disputed Claims Reserve to Holders of Disputed Claims after such time that such Holder's Claim becomes an Allowed Claim under the Plan;

(vi)    reserve or retain any cash or cash equivalents in an amount reasonably necessary to meet claims and contingent liabilities, (including Disputed Claims and any indemnification obligations that may arise under Section 8.2 of this Agreement), to maintain the value of the Claimant Trust Assets, or to fund ongoing operations and administration of the Litigation Sub-Trust;

(vii)   borrow as may be necessary to fund activities of the Claimant Trust;

(viii)  determine whether the conditions under Section 5.1(c) of this Agreement have been satisfied such that a certification should be filed with the Bankruptcy Court;

(ix)    invest the Claimant Trust Assets, proceeds thereof, or any income earned by the Claimant Trust (for the avoidance of doubt, this shall not apply to investment decisions made by the Reorganized Debtor or its subsidiaries solely with respect to Managed Funds);

(x)     change the compensation of the Claimant Trustee;

(xi)    subject to ARTICLE X, make structural changes to the Claimant Trust or take other actions to minimize any tax on the Claimant Trust Assets; and

(xii)   retain counsel, experts, advisors, or any other professionals [TBD]; provided, however, the Claimant Trustee shall not be required to obtain the consent of the Oversight Board for the retention of (i) PSZJ, WilmerHale, or Development Specialists, Inc. and (ii) any other professional whose expected fees and expenses are estimated at less than or equal to $200,000.

(c)    [Reserved.]

15

3.4  Investment of Cash.  The right and power of the Claimant Trustee to invest the Claimant Trust Assets, the proceeds thereof, or any income earned by the Claimant Trust, with majority approval of the Oversight Board, shall be limited to the right and power to invest in such Claimant Trust Assets only in Cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; provided, however that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (b) the Claimant Trustee may retain any Claimant Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly monetization or other disposition of such assets, and (c) the Claimant Trustee may expend the assets of the Claimant Trust (i) as reasonably necessary to meet contingent liabilities (including indemnification and similar obligations) and maintain the value of the assets of the Claimant Trust during the pendency of this Claimant Trust, (ii) to pay Claimant Trust Expenses (including, but not limited to, any taxes imposed on the Claimant Trust and reasonable attorneys' fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Claimant Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement).

3.5  Binding Nature of Actions.  All actions taken and determinations made by the Claimant Trustee in accordance with the provisions of this Agreement shall be final and binding upon any and all Beneficiaries.

3.6  Term of Service.  The Claimant Trustee shall serve as the Claimant Trustee for the duration of the Claimant Trust, subject to death, resignation or removal.

3.7  Resignation.  The Claimant Trustee may resign as Claimant Trustee of the Claimant Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Claimant Trustee shall continue to serve as Claimant Trustee after delivery of the Claimant Trustee's resignation until the proposed effective date of such resignation, unless the Claimant Trustee and a simple majority of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Claimant Trustee in accordance with Section 3.9 hereof becomes effective.

3.8  Removal.

(a)  The Claimant Trustee may be removed by a simple majority vote of the Oversight Board for Cause for Cause immediately upon notice thereof, or without Cause upon 60 days' prior written notice.  Upon the removal of the Claimant Trustee pursuant hereto, the Claimant Trustee will resign, or be deemed to have resigned, from any role or position he or she may have at New GP LLC or the Reorganized Debtor effective upon the expiration of the foregoing 60 day period unless the Claimant Trustee and a simple majority of the Oversight Board agree otherwise.

16

(b)    To the extent there is any dispute regarding the removal of a Claimant Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Claimant Trustee will continue to serve as the Claimant Trustee after his removal until the earlier of (i) the time when a successor Claimant Trustee will become effective in accordance with Section 3.9 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.9    Appointment of Successor.

(a)    Appointment of Successor.  In the event of a vacancy by reason of the death or Disability (in the case of a Claimant Trustee that is a natural person), dissolution (in the case of a Claimant Trustee that is not a natural person), or removal of the Claimant Trustee, or prospective vacancy by reason of resignation, a successor Claimant Trustee shall be selected by a simple majority vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Claimant Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Claimant Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Claimant Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Claimant Trust.  The successor Claimant Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Claimant Trustee.

(b)    Vesting or Rights in Successor Claimant Trustee.  Every successor Claimant Trustee appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trust, the exiting Claimant Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Claimant Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Claimant Trustee, except that the successor Claimant Trustee shall not be liable for the acts or omissions of the retiring Claimant Trustee.  In no event shall the retiring Claimant Trustee be liable for the acts or omissions of the successor Claimant Trustee.

(c)    Interim Claimant Trustee.  During any period in which there is a vacancy in the position of Claimant Trustee, the Oversight Board shall appoint one of its Members to serve as the interim Claimant Trustee (the "Interim Trustee") until a successor Claimant Trustee is appointed pursuant to Section 3.9(a).  The Interim Trustee shall be subject to all the terms and conditions applicable to a Claimant Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board merely by such Person's appointment as Interim Trustee.

3.10    Continuance of Claimant Trust.  The death, resignation, or removal of the Claimant Trustee shall not operate to terminate the Claimant Trust created by this Agreement or to revoke any existing agency (other than any agency of the Claimant Trustee as the Claimant Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Claimant Trustee.  In the event of the resignation or removal of the Claimant Trustee, the

17

Claimant Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Claimant Trustee's capacity under this Agreement and the conveyance of the Claimant Trust Assets then held by the exiting Claimant Trustee to the successor Claimant Trustee; (ii) deliver to the successor Claimant Trustee all non-privileged documents, instruments, records, and other writings relating to the Claimant Trust as may be in the possession or under the control of the exiting Claimant Trustee, provided, the exiting Claimant Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Claimant Trustee and the cost of making such copies shall be a Claimant Trust Expense to be paid by the Claimant Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Claimant Trustee's obligations and functions by his successor, provided the fees and expenses of such assistance and cooperation shall be paid to the exiting Claimant Trustee by the Claimant Trust. The exiting Claimant Trustee shall irrevocably appoint the successor Claimant Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Claimant Trustee is obligated to perform under this Section 3.10.

3.11 Claimant Trustee as "Estate Representative". The Claimant Trustee will be the exclusive trustee of the Claimant Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Claimant Trust Assets, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement; provided that all rights and powers as representative of the Estate pursuant to section 1123(b)(3)(B) shall be transferred to the Litigation Trustee in respect of the Estate Claims[ and the Employee Claims]. The Claimant Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Claimant Trust Assets, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order. All actions, claims, rights or interest constituting Claimant Trust Assets are preserved and retained and may be enforced, or assignable to the Litigation Sub-Trust, by the Claimant Trustee as an Estate Representative.

3.12 Books and Records.

(a) The Claimant Trustee shall maintain in respect of the Claimant Trust and the Claimant Trust Beneficiaries books and records reflecting Claimant Trust Assets in its possession and the income of the Claimant Trust and payment of expenses, liabilities, and claims against or assumed by the Claimant Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Claimant Trust and the requirements of Article [VII] herein. Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

18

(b)     The Claimant Trustee shall provide [quarterly] reporting to the Oversight Board [and Claimant Trust Beneficiaries] of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

(c)     The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the [unanimous consent] of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; provided, however, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims or Employee Claims without the consent of the Litigation Trustee. Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

3.13    Compensation and Reimbursement; Engagement of Professionals.

(a)     Compensation and Expenses.

(i)     Compensation.  [As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation, including any severance, as agreed to by the Claimant Trustee and the Committee, if agreed upon prior to the Effective Date, or the Oversight Board if agreed upon on or after the Effective Date.]

(ii)     Expense Reimbursements.  All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

(b)     Professionals.

(i)     Engagement of Professionals.  The Claimant Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The Claimant Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii)    <u>Fees and Expenses of Professionals</u>.  The Claimant Trustee shall pay the reasonable fees and expenses of any retained professionals as Claimant Trust Expenses.

3.14    <u>Reliance by Claimant Trustee</u>.  Except as otherwise provided herein, the Claimant Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Claimant Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Claimant Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Claimant Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning the Claimant Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15    <u>Commingling of Claimant Trust Assets</u>.  The Claimant Trustee shall not commingle any of the Claimant Trust Assets with his or her own property or the property of any other Person.

3.16    <u>Delaware Trustee</u>.  The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Claimant Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Claimant Trustee; <u>provided, however</u>, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law.  The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law.  Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Claimant Trust.

<div align="center">

**ARTICLE IV.**
**THE OVERSIGHT BOARD**

</div>

4.1    <u>Oversight Board Members</u>.  The Oversight Board will be comprised of five (5) Members appointed to serve as the board of managers of the Claimant Trust, at least two (2) of

which shall be disinterested Members selected by the Creditors' Committee (such disinterested members, the "Disinterested Members"). The initial Members of the Oversight Board will be representatives of Acis, the Redeemer Committee, Meta-e Discovery, UBS, and David Pauker. David Pauker and Paul McVoy, the representative of Meta-e Discovery, shall serve as the initial Disinterested Board Members; provided, however, that if the Plan is confirmed with the Convenience Class or any other convenience class supported by the Creditors' Committee, Meta-E Discovery and its representative will resign on the Effective Date or as soon as practicable thereafter and be replaced in accordance with Section 4.10 hereof..

4.2     Authority and Responsibilities.

(a)     The Oversight Board shall, as and when requested by either of the Claimant Trustee and Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Claimant Trustee and Litigation Trustee as to the administration and management of the Claimant Trust and the Litigation Sub-Trust, as applicable, in accordance with the Plan, the Confirmation Order, this Agreement, and Litigation Sub-Trust Agreement (as applicable) and shall have the other responsibilities and powers as set forth herein. As set forth in the Plan, the Confirmation Order, and herein, the Oversight Board shall have the authority and responsibility to oversee, review, and govern the activities of the Claimant Trust, including the Litigation Sub-Trust, and the performance of the Claimant Trustee and Litigation Trustee, and shall have the authority to remove the Claimant Trustee in accordance with Section 3.7 hereof or the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; provided, however, that the Oversight Board may not direct either Claimant Trustee and Litigation Trustee to act inconsistently with their respective duties under this Agreement (including without limitation as set in Section 4.2(e) below), the Litigation Sub-Trust Agreement, the Plan, the Confirmation Order, or applicable law.

(b)     The Oversight Board shall also (i) monitor and oversee the administration of the Claimant Trust and the Claimant Trustee's performance of his or her responsibilities under this Agreement, (ii) as more fully set forth in the Litigation Sub-Trust Agreement, approve funding to the Litigation Sub-Trust, monitor and oversee the administration of the Litigation Sub-Trust and the Litigation Trustee's performance of his responsibilities under the Litigation Sub-Trust Agreement, and (iii) perform such other tasks as are set forth herein, in the Litigation Sub-Trust Agreement, and in the Plan.

(c)     The Claimant Trustee shall consult with and provide information to the Oversight Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Oversight Board to meet its obligations hereunder.

(d)     Notwithstanding any provision of this Agreement to the contrary, the Claimant Trustee shall not be required to (i) obtain the approval of any action by the Oversight Board to the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is required to be taken by applicable law, the Plan, the Confirmation Order, or this Agreement or (ii) follow the directions of the Oversight Board to take any action the extent that the Claimant Trustee, in good faith, reasonably determines, based

21

on the advice of legal counsel, that such action is prohibited by applicable law the Plan, the Confirmation Order, or this Agreement.

(e) Notwithstanding provision of this Agreement to the contrary, with respect to the activities of the Reorganized Debtor in its capacity as an investment adviser (and subsidiaries of the Reorganized Debtor that serve as general partner or in an equivalent capacity) to any Managed Funds, the Oversight Board shall not make investment decisions or otherwise participate in the investment decision making process relating to any such Managed Funds, nor shall the Oversight Board or any member thereof serve as a fiduciary to any such Managed Funds. It is agreed and understood that investment decisions made by the Reorganized Debtor (or its subsidiary entities) with respect to Managed Funds shall be made by the Claimant Trustee in his capacity as an officer of the Reorganized Debtor and New GP LLC and/or such persons who serve as investment personnel of the Reorganized Debtor from time to time, and shall be subject to the fiduciary duties applicable to such entities and persons as investment adviser to such Managed Funds.

4.3     Fiduciary Duties. The Oversight Board (and each Member in its capacity as such) shall have fiduciary duties to the Claimant Trust Beneficiaries consistent with the fiduciary duties that the members of the Creditors' Committee have to unsecured creditors and shall exercise its responsibilities accordingly; provided, however, that the Oversight Board shall not owe fiduciary obligations to any Holders of Class A Limited Partnership Interests or Class B/C Limited Partnership Interests until such Holders become Claimant Trust Beneficiaries in accordance with Section 5.1(c) hereof; provided, further, that the Oversight Board shall not owe fiduciary obligations to a Holder of an Equity Trust Interest if such Holder is named as a defendant in any of the Causes of Action, including Estate Claims, in their capacities as such, it being the intent that the Oversight Board's fiduciary duties are to maximize the value of the Claimant Trust Assets, including the Causes of Action. In all circumstances, the Oversight Board shall act in the best interests of the Claimant Trust Beneficiaries and in furtherance of the purpose of the Claimant Trust. Notwithstanding anything to the contrary contained in this Agreement, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.

4.4     Meetings of the Oversight Board. Meetings of the Oversight Board are to be held as necessary to ensure the operation of the Claimant Trust but in no event less often than quarterly. Special meetings of the Oversight Board may be held whenever and wherever called for by the Claimant Trustee or any Member; provided, however, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice requirement being subject to any waiver by the Members in the minutes, if any, or other transcript, if any, of proceedings of the Oversight Board). Unless the Oversight Board decides otherwise (which decision shall rest in the reasonable discretion of the Oversight Board), the Claimant Trustee, and each of the Claimant Trustee's designated advisors may, but are not required to, attend meetings of the Oversight Board.

4.5     Unanimous Written Consent. Any action required or permitted to be taken by the Oversight Board in a meeting may be taken without a meeting if the action is taken by unanimous written consents describing the actions taken, signed by all Members and recorded. If any Member informs the Claimant Trustee (via e-mail or otherwise) that he or she objects to the decision, determination, action, or inaction proposed to be made by unanimous written consent,

22

the Claimant Trustee must use reasonable good faith efforts to schedule a meeting on the issue to be set within 48 hours of the request or as soon thereafter as possible on which all members of the Oversight Board are available in person or by telephone. Such decision, determination, action, or inaction must then be made pursuant to the meeting protocols set forth herein.

      4.6    <u>Manner of Acting</u>.

      (a)    A quorum for the transaction of business at any meeting of the Oversight Board shall consist of at least three Members (including no less than one (1) Disinterested Member); <u>provided</u> that if the transaction of business at a meeting would constitute a direct or indirect conflict of interest for the Redeemer Committee, Acis, and/or UBS, at least two Disinterested Members must be present for there to be a quorum. Except as set forth in Sections 3.3(c), 4.9(a), 5.2, 5.4, 6.1, 9.1, and 10, herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Oversight Board except as otherwise required by law or as provided in this Agreement. Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding hereof. Any Member participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) may be conducted by electronic mail or individual communications by the applicable Trustee and each Member.

      (b)    Any Member who is present and entitled to vote at a meeting of the Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Board, unless (i) such Member objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Board before its adjournment. The right of dissent or abstention is not available to any Member of the Oversight Board who votes in favor of the action taken.

      (c)    Prior to a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Oversight Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Trust Interests). A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Claimant Trust shall be deemed a "<u>Conflicted Member</u>" who shall not be entitled to vote or take part in any action with respect to such matter or issue. In the event of a Conflicted Member, the vote or action with respect to such matter or issue giving rise to such conflict shall be undertaken only by Members who are not Conflicted Members and, notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Oversight Board.

23

(d)     Each of Acis, the Redeemer Committee, and UBS shall be deemed "Conflicted Members" with respect to any matter or issue related to or otherwise affecting any of their respective Claim(s) (a "Committee Member Claim Matter").  A unanimous vote of the Disinterested Members shall be required to approve of or otherwise take action with respect to any Committee Member Claim Matter and, notwithstanding anything herein to the contrary, the same shall be the act of the Oversight Board.

4.7     Tenure of the Members of the Oversight Board.  The authority of the Members of the Oversight Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Claimant Trust is terminated in accordance with Article X hereof. The Members of the Oversight Board will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 4.7 below, or removal pursuant to Section 4.8 below.

4.8     Resignation.  A Member of the Oversight Board may resign by giving not less than [90 days] prior written notice thereof to the Claimant Trustee and other Members.  Such resignation shall become effective on the earlier to occur of (i) the day specified in such notice and (ii) the appointment of a successor in accordance with Section 4.9 below.

4.9     Removal.  A majority of the Oversight Board may remove any Member for Cause or Disability.   If any Committee Member has its Claim disallowed in its entirety the representative of such entity will immediately be removed as a Member without the requirement for a vote and a successor will be appointed in the manner set forth herein.  Notwithstanding the foregoing, upon the termination of the Claimant Trust, any or all of the Members shall be deemed to have resigned.

4.10     Appointment of a Successor Member.

(a)     In the event of a vacancy on the Oversight Board (whether by removal, death, or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously; provided, however, that any vacancy resulting from the removal, resignation, or death of a Disinterested Member may only be filled by a disinterested Person unaffiliated with any Claimant or constituency in the Chapter 11 Case; provided, further, that if an individual serving as the representative of a Committee Member resigns from its role as representative, such resignation shall not be deemed resignation of the Committee Member itself and such Committee Member shall have the exclusive right to designate its replacement representative for the Oversight Board.  The appointment of a successor Member will be further evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

(b)     Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act.  A successor Member will not be liable personally for any act or omission of a predecessor Member.

24

(c)     Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11    <u>Compensation and Reimbursement of Expenses</u>.  [Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; <u>provided</u>, <u>however</u>, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member.]³  Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12    <u>Confidentiality</u>.  Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("<u>Confidential Trust Information</u>"), except as otherwise required by law.   For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "<u>Member Affiliates</u>") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.11.

<div align="center">

**ARTICLE V.**
**TRUST INTERESTS**

</div>

5.1    <u>Claimant Trust Interests</u>.

(a)     <u>General Unsecured Claim Trust Interests</u>. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "<u>GUC Beneficiaries</u>").  The Claimant Trustee shall allocate to each Holder of an Allowed Class 8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims.  The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

---

³   NTD: Compensation for Disinterested Member(s) to be discussed.

(b)    Subordinated Claim Trust Interests.  On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "Subordinated Beneficiaries"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9.  The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests.  The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, and all Disputed General Unsecured Claims have been resolved, in accordance with the terms of the Plan and this Agreement.

(c)    Contingent Trust Interests.  On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "Equity Holders").  The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan.  Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the "GUC Payment Certification").  Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "Equity Trust Interests."  The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's  Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

5.2    Interests Beneficial Only.  The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets or to require an accounting.  No Claimant Trust Beneficiary shall have any governance right or other wright to direct Claimant Trust activities.

5.3    Transferability of Trust Interests.  No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected until (i) such action is unanimously approved by the Oversight Board, (ii) the Claimant Trustee and Oversight Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Claimant Trust to be subject to

26

entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Claimant Trustee and Oversight Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not (a) require the Claimant Trust to comply with the registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act or (b) cause any adverse effect under the Investment Advisers Act, or (y) the Oversight Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Claimant Trust to become a public reporting company and/or make periodic reports under the Exchange Act (provided that it is not required to register under the Investment Company Act or register its securities under the Securities Act) to enable such disposition to be made. In the event that any such disposition is allowed, the Oversight Board and the Claimant Trustee may add such restrictions upon such disposition and other terms of this Agreement as are deemed necessary or appropriate by the Claimant Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

5.4     Registry of Trust Interests.

(a)     Registrar. The Claimant Trustee shall appoint a registrar, which may be the Claimant Trustee (the "Registrar"), for the purpose of recording ownership of the Trust Interests as provided herein. The Registrar, if other than the Claimant Trustee, shall be an institution or person acceptable to the Oversight Board. For its services hereunder, the Registrar, unless it is the Claimant Trustee, shall be entitled to receive reasonable compensation from the Claimant Trust as a Claimant Trust Expense.

(b)     Trust Register. The Claimant Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time, a registry of the Claimant Trust Beneficiaries and the Equity Holders (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Claimant Trustee and the Registrar may prescribe.

(c)     Access to Register by Beneficiaries. The Claimant Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Claimant Trustee, and in accordance with reasonable regulations prescribed by the Claimant Trustee, to inspect and, at the expense of the Claimant Trust Beneficiary make copies of the Trust Register, in each case for a purpose reasonable and related to such Claimant Trust Beneficiary's Trust Interest.

5.5     Exemption from Registration. The Parties hereto intend that the rights of the Claimant Trust Beneficiaries arising under this Claimant Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws. The Oversight Board, acting unanimously, and Claimant Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Claimant Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act. The Trust Interests shall not have consent or voting rights or otherwise confer on the Claimant Trust Beneficiaries any rights similar to the rights of a

27

shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Claimant Trustee under this Agreement.

5.6 <u>Absolute Owners</u>. The Claimant Trustee may deem and treat the Claimant Trust Beneficiary of record as determined pursuant to this Article 5 as the absolute owner of such Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

5.7 <u>Effect of Death, Incapacity, or Bankruptcy</u>. The death, incapacity, or bankruptcy of any Claimant Trust Beneficiary during the term of the Claimant Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Claimant Trust Beneficiary under this Agreement.

5.8 <u>Change of Address</u>. Any Claimant Trust Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Claimant Trustee identifying such alternative distribution address. Such notification shall be effective only upon receipt by the Claimant Trustee. Absent actual receipt of such notice by the Claimant Trustee, the Claimant Trustee shall not recognize any such change of distribution address.

5.9 <u>Standing</u>. No Claimant Trust Beneficiary shall have standing to direct the Claimant Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Claimant Trust Assets. No Claimant Trust Beneficiary shall have any direct interest in or to any of the Claimant Trust Assets.

5.10 [<u>Limitations on Rights of Claimant Trust Beneficiaries</u>.

(a) The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein).

(b) In any action taken by a Claimant Trust Beneficiary against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, the prevailing party will be entitled to reimbursement of attorneys' fees and other costs; provided, however, that any fees and costs required to shall be borne by the Claimant Trust on behalf of any such Trustee or Member, as set forth herein.

(c) A Claimant Trust Beneficiary who brings any action against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, may be required by order of the Bankruptcy Court to post a bond ensuring that the full costs of a legal defense can be reimbursed. A request for such bond can be made by the Claimant Trust or by Claimant Trust Beneficiaries constituting in the aggregate at least 50% of the most senior class of Claimant Trust Interests.

(d) Any action brought by a Claimant Trust Beneficiary must be brought in the United States Bankruptcy Court for the Northern District of Texas. Claimant Trust Beneficiaries are deemed to have waived any right to a trial by jury

28

(e)      The rights of Claimant Trust Beneficiaries to bring any action against the Claimant Trust, a current or former Trustee, or current or former Member, in their capacity as such, shall not survive the final distribution by the Claimant Trust.]

**ARTICLE VI.**
**DISTRIBUTIONS**

6.1      Distributions.

(a)      Notwithstanding anything to the contrary contained herein, the Claimant Trustee shall distribute to holders of Trust Interests at least annually the Cash on hand net of any amounts that (a) are reasonably necessary to maintain the value of the Claimant Trust Assets pending their monetization or other disposition during the term of the Claimant Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust (including, but not limited to, any taxes imposed on or payable by the Claimant Trustee with respect to the Claimant Trust Assets), (c) are necessary to pay or reserve for the anticipated costs and expenses of the Litigation Sub-Trust, (d) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Claimant Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses), (e) are necessary to maintain the Disputed Claims Reserve, and (f) are necessary to pay Allowed Claims in Class 1 through Class 7. Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within [six] months of the Effective Date, and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board.  The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board.

(b)      At the request of the Reorganized Debtor, subject in all respects to the provisions of this Agreement, the Claimant Trustee shall distribute Cash to the Reorganized Debtor, as Distribution Agent with respect to Claims in Class 1 through 7, sufficient to satisfy Allowed Claims in Class 1 through Class 7.

(c)      All proceeds of Claimant Trust Assets shall be distributed in accordance with the Plan and this Agreement.

6.2      Manner of Payment or Distribution.  All distributions made by the Claimant Trustee on behalf of the Claimant Trust to the Claimant Trust Beneficiaries shall be payable by the Claimant Trustee directly to the Claimant Trust Beneficiaries of record [as of the twentieth (20th) day prior] to the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3      Delivery of Distributions.  All distributions under this Agreement to any Claimant Trust Beneficiary shall be made, as applicable, at the address of such Claimant Trust Beneficiary (a) as set forth on the Schedules filed with the Bankruptcy Court or (b) on the books and records

29

of the Debtor or their agents, as applicable, unless the Claimant Trustee has been notified in writing of a change of address pursuant to Section 5.6 hereof.

6.4    Disputed Claims Reserves.  There will be no distributions under this Agreement or the Plan on account of Disputed Claims pending Allowance.  The Claimant Trustee will maintain a Disputed Claims Reserve as set forth in the Plan and will make distributions from the Disputed Claims Reserve as set forth in the Plan.

6.5    Undeliverable Distributions and Unclaimed Property.    All undeliverable distributions and unclaimed property shall be treated in the manner set forth in the Plan.

6.6    *De Minimis* Distributions.  Distributions with a value of less than $100 will be treated in accordance with the Plan.

6.7    United States Claimant Trustee Fees and Reports.  **After the Effective Date, the Claimant Trust shall pay as a Claimant Trust Expense, all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Claimant Trust's disbursements until the Chapter 11 Case is closed.  After the Effective Date, the Claimant Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Claimant Trust as required by the Office of the United States Trustee Office for as long as the Chapter 11 Case remains open.**

<div align="center">

**ARTICLE VII.
TAX MATTERS**

</div>

7.1    Tax Treatment and Tax Returns.

(a)    It is intended for the initial transfer of the Claimant Trust Assets to the Claimant Trust to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) as if the Debtor transferred the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described below) to the Claimant Trust Beneficiaries and then, immediately thereafter, the Claimant Trust Beneficiaries transferred the Claimant Trust Assets to the Claimant Trust.  Consistent with such treatment, (i) it is intended that the Claimant Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Claimant Trust Beneficiaries will be treated as the grantors of the Claimant Trust and owners of their respective share of the Claimant Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), and (iii) the  The Claimant Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).  The Claimant Trustee also will annually send to each Beneficiary, in accordance with the tax laws, a separate statement setting forth such holder's Beneficiary's interest in the Claimant Trust and share of items of income, gain, loss, deduction or credit as relevant for U.S. federal income tax purposes for such Beneficiaries to use in preparing their U.S. federal income tax returns.

(b)    The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Beneficiaries of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(c)    The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

7.2    Withholding.  The Claimant Trustee may withhold from any amount distributed from the Claimant Trust to any Claimant Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable Beneficiary.  As a condition to receiving any distribution from the Claimant Trust, the Claimant Trustee may require that the Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Claimant Trustee to comply with applicable tax reporting and withholding laws. If a Beneficiary fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section 6.5(b) of this Agreement.

### ARTICLE VIII.
### STANDARD OF CARE AND INDEMNIFICATION

8.1    Standard of Care.  None of the Claimant Trustee, acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any current or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Claimant Trust or to any Person (including any Claimant Trust Beneficiary) in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the acts or omissions of any such Claimant Trustee, Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence.  The employees, agents and professionals retained by the Claimant Trust, the Claimant Trustee, or Delaware Trustee, Oversight Board, or individual Member shall not be personally liable to the Claimant Trust or any other Person in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence.  None of the Claimant Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Claimant Trust or to any Person for the acts or omissions of any employee, agent or professional of the Claimant Trust or Claimant Trustee taken or not taken in good faith reliance on the advice of professionals or, as applicable, with the approval of the Bankruptcy Court, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Claimant Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Claimant Trust.

31

8.2    Indemnification.  The Claimant Trustee (including each former Claimant Trustee), Delaware Trustee, Oversight Board, and all past and present Members (collectively, in their capacities as such, the "Indemnified Parties") shall be indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence.  If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Claimant Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Claimant Trustee and/or Oversight Board, as applicable; provided,  however, that the failure of an Indemnified Party to promptly notify the Claimant Trustee and/or Oversight Board of an indemnification obligation will not excuse the Claimant Trust from indemnifying the Indemnified Party unless such delay has caused the Claimant Trust material harm.  The Claimant Trust shall pay, advance or otherwise reimburse on demand of an Indemnified Party the Indemnified Party's reasonable legal and other defense expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith or in connection with enforcing his or her rights under this Section 8.2 as a Claimant Trust Expense, butand the Claimant Trust shall not refuse to make any payments to the Indemnified Party on the assertion that the Indemnified Party engaged in willful misconduct or acted in bad faith; provided that the Indemnified Party shall be required to repay promptly to the Claimant Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Claimant Trust with respect to which such expenses were paid; provided, further, that any such repayment obligation shall be unsecured and interest free.  The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.  For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Claimant Trustee, Delaware Trustee, or Member or the estate of any decedent Claimant Trustee or Member, solely in their capacities as such.  The indemnification provided hereby shall be a Claimant Trust Expense. and shall not be deemed exclusive of any other rights to which the Indemnified Party may now or in the future be entitled to under the Plan or any applicable insurance policy.  The failure of the Claimant Trust to pay or reimburse an Indemnified Party as required under this Section 8.2 shall constitute irreparable harm to the Indemnified Party and such Indemnified Party shall be entitled to specific performance of the obligations herein.

8.3    No Personal Liability.  Except as otherwise provided herein, neither of the Trustees nor Members of the Oversight Board shall be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any Person in connection with the affairs of the Claimant Trust to the fullest extent provided under Section 3803 of the Delaware Statutory

Trust Act, and all Persons asserting claims against the Claimant Trustee, Litigation Trustee, or any Members, or otherwise asserting claims of any nature in connection with the affairs of the Claimant Trust, shall look solely to the Claimant Trust Assets for satisfaction of any such claims.

8.4     Other Protections.  To the extent applicable and not otherwise addressed herein, the provisions and protections set forth in Article IX of the Plan will apply to the Claimant Trust, the Claimant Trustee, the Litigation Trustee, and the Members.

## ARTICLE IX.
## TERMINATION

9.1     Duration.  The Trustees, the Claimant Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions~~, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes~~) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets~~[; provided, however, that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years [without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.]~~.

9.2     Distributions in Kind.  Upon dissolution of the Claimant Trust, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

9.3     Continuance of the Claimant Trustee for Winding Up.  After dissolution of the Claimant Trust and for purpose of liquidating and winding up the affairs of the Claimant Trust, the Claimant Trustee shall continue to act as such until the Claimant Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Claimant Trust Assets, the Claimant Trustee shall be entitled to reserve from such assets any and all amounts required to

33

provide for the Claimant Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Claimant Trust, until such time as the winding up of the Claimant Trust is completed. Upon the dissolution of the Claimant Trust and completion of the winding up of the assets, liabilities and affairs of the Claimant Trust pursuant to the Delaware Statutory Trust Act, the Claimant Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Claimant Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date"). Upon the Termination date, the Claimant Trustee shall retain for a period of two (2) years, as a Claimant Trust Expense, the books, records, Claimant Trust Beneficiary lists, and certificated and other documents and files that have been delivered to or created by the Claimant Trustee. At the Claimant Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.4     Termination of Duties. Except as otherwise specifically provided herein, upon the Termination Date of the Claimant Trust, the Claimant Trustee, the Oversight Board and its Members shall have no further duties or obligations hereunder.

9.5     No Survival. The rights of Claimant Trust Beneficiaries hereunder shall not survive the Termination Date, provided that such Claimant Trust Beneficiaries are provided with notice of such Termination Date.

<div align="center">

**ARTICLE X.**
**AMENDMENTS AND WAIVER**

</div>

The Claimant Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions. This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Claimant Trustee and with [the unanimous approval] of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Claimant Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

<div align="center">

**ARTICLE XI.**
**MISCELLANEOUS**

</div>

11.1     Trust Irrevocable. Except as set forth in this Agreement, establishment of the Claimant Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Claimant Trust Beneficiaries.

11.2     Bankruptcy of Claimant Trust Beneficiaries. The dissolution, termination, bankruptcy, insolvency or other similar incapacity of any Claimant Trust Beneficiary shall not permit any creditor, trustee, or any other Claimant Trust Beneficiary to obtain possession of, or exercise legal or equitable remedies with respect to, the Claimant Trust Assets.

11.3     Claimant Trust Beneficiaries have No Legal Title to Claimant Trust Assets. No Claimant Trust Beneficiary shall have legal title to any part of the Claimant Trust Assets.

34

11.4 <u>Agreement for Benefit of Parties Only</u>. Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Claimant Trustee, Oversight Board, and the Claimant Trust Beneficiaries any legal or equitable right, remedy or claim under or in respect of this Agreement. The Claimant Trust Assets shall be held for the sole and exclusive benefit of the Claimant Trust Beneficiaries.

11.5 <u>Notices</u>. All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

      (a)      If to the Claimant Trustee:

Claimant Trustee
c/o **[insert contact info for Claimant Trustee]**

With a copy to:

[insert contact for counsel to the Claimant Trustee].

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Attn:   Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
            Ira Kharasch (ikharasch@pszjlaw.com)
            Gregory Demo (gdemo@pszjlaw.com)

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.5 to the entity to be charged with knowledge of such change.

11.6 <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.7 <u>Counterparts</u>. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.8 <u>Binding Effect, etc.</u> All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Claimant Trust, the Claimant Trustee, and the Claimant Trust Beneficiaries, and their respective successors and assigns. Any notice, direction, consent, waiver or other instrument or action by any Claimant Trust Beneficiary shall bind its successors and assigns.

35

000770

11.9 <u>Headings; References</u>. The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.10 <u>Governing Law</u>. This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.11 <u>Consent to Jurisdiction</u>. Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan.

11.12 <u>Transferee Liabilities</u>. The Claimant Trust shall have no liability for, and the Claimant Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement. In no event shall the Claimant Trustee or the Claimant Trust Beneficiaries have any personal liability for such claims. If any liability shall be asserted against the Claimant Trust or the Claimant Trustee as the transferee of the Claimant Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Claimant Trustee may use such part of the Claimant Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Claimant Trustee as a Claimant Trust Expense.

<p style="text-align:center">[Remainder of Page Intentionally Blank]</p>

36

000771

IN WITNESS HEREOF, the parties hereto have caused this Claimant Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Highland Capital Management, L.P.

By: _____
     James P. Seery, Jr.
     Chief Executive Officer and
     Chief Restructuring Officer

Claimant Trustee

By: _____
     James P. Seery, Jr., not individually but
solely in his capacity as the Claimant Trustee

37

000772

Document comparison by Workshare 9.5 on Monday, January 04, 2021 6:47:25 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41280/5 |
| Description | DOCS_NY-#41280-v5-Highland_-_Claimant_Trust_Agreement |
| Document 2 ID | PowerDocs://DOCS_NY/41280/9 |
| Description | DOCS_NY-#41280-v9-Highland_-_Claimant_Trust_Agreement |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 85 |
| Deletions | 86 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 171 |

# EXHIBIT O

Case 19-34054-sgj11 Doc 1656-4 Filed 01/04/21 Entered 01/04/21 18:21:37 Page 2 of 22
Case 3:21-cv-00538-N Document 26-2 Filed 06/09/21 Page 142 of 246 PageID 3477
*Draft*

## LITIGATION SUB-TRUST AGREEMENT

This Litigation Sub-Trust Agreement, effective as of _____, 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among James P. Seery, Jr., as trustee of the Highland Claimant Trust (the "Claimant Trustee"), [_____] as Delaware Trustee, and Marc S. Kirschner as trustee (the "Litigation Trustee," and together with the Claimant Trustee [and Delaware Trustee], the "Parties") of the Litigation Sub-Trust for the benefit of the Claimant Trust as sole Litigation Sub-Trust Beneficiary.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____, 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Litigation Sub-Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Litigation Sub-Trust Assets are hereby to be transferred by the Claimant Trust to the Litigation Sub-Trust (each as defined herein) created and evidenced by this Agreement so that (i) Estate Claims can be investigated, prosecuted, settled, abandoned, resolved, and otherwise monetized as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; (ii) proceeds of Estate Claims can be remitted to the Claimant Trust as Claimant Trust Assets for distribution to the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) in accordance with the Plan and Claimant Trust Agreement; (iii) the Litigation Trustee can investigate, litigate, settle, or otherwise resolve any Filed Claims relating to the Estate Claims, including the Employee Claims; and (iv) administrative services relating to the activities of the Litigation Sub-Trust can be performed by the Litigation Trustee.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

### DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Litigation Trustee and the Claimant Trustee have executed this Agreement for the benefit of the Claimant Trust as provided for in the Plan.

TO HAVE AND TO HOLD unto the Litigation Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Litigation Sub-Trust in accordance with Article IX hereof, this Litigation Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Litigation Sub-Trust Assets are to be strictly held and applied by the Litigation Trustee subject to the specific terms set forth below.

### ARTICLE I.
### DEFINITION AND TERMS

1.1    Certain Definitions.  Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)    "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(b)    "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(c)    "Claimant Trust Agreement" means the Claimant Trust Agreement dated [____], 2021, by and between the Debtor, Claimant Trustee, and Delaware Trustee.

(d)    "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee who may be appointed pursuant to the terms of the Claimant Trust Agreement.

2

(e)  "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(f)  "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(g)  "Delaware Trustee" has the meaning set forth in the Claimant Trust Agreement.

(h)  "Disability" means as a result of the Litigation Trustee's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Litigation Trustee, the Litigation Trustee has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(i)  "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(j)  "Employee" means the employees of the Debtor set forth in the Plan Supplement.

(k)  "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(l)  "Litigation Sub-Trust" means the sub-trust created pursuant to this Agreement, and in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d).

(m)  "Litigation Sub-Trust Agreement" means this Agreement.

(n)  "Litigation Sub-Trust Assets" means the Estate Claims and the Litigation Sub-Trust Expense Cash Reserve.

(o)  "Litigation Sub-Trust Beneficiary" means the Claimant Trust.

(p)  "Litigation Sub-Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Litigation Sub-Trust and/or the Litigation Trustee in administering and conducting the affairs of the Litigation Sub-Trust, and otherwise carrying out the terms of the Litigation Sub-Trust and the Plan on behalf of the Litigation Sub-Trust, including without any limitation, any taxes owed by the Litigation Sub-Trust, and the fees and expenses of the Litigation Trustee and professional persons retained by the Litigation Sub-Trust or Litigation Trustee in accordance with Article 3.12(b) of this Agreement.

(q)  "Litigation Sub-Trust Expense Cash Reserve" means $[•] million in Cash to be funded by the Debtor or Reorganized Debtor, as applicable, pursuant to the Plan into a bank account of the Litigation Sub-Trust (or of the Claimant Trust for the benefit of the

Litigation Sub-Trust) on or before the Effective Date for the purpose of paying Litigation Sub-Trust Expenses in accordance herewith.

(r) "Litigation Trustee" means Marc S. Kirschner as the initial "Litigation Trustee" hereunder and under the Plan, and any successor Litigation Trustee who may be appointed pursuant to the terms of this Agreement.

(s) "Oversight Board" has the meaning set forth in the Claimant Trust Agreement.

(t) "Plan" has the meaning set forth in the Recitals hereof.

(u) "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(v) "Securities Act" means the Securities Act of 1933, as amended.

(w) "TIA" means the Trust Indenture Act of 1939, as amended.

(x) "Trust Interests" means the trust interest(s) to be distributed to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.

(y) "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

1.2    General Construction.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3    Incorporation of the Plan.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

000778

## ARTICLE II.
## ESTABLISHMENT OF THE LITIGATION SUB-TRUST

2.1     Establishment of Sub-Trust.

(a)     The Parties, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a statutory trust under the Delaware Statutory Trust Act on behalf of the Claimant Trust as the sole Litigation Sub-Trust Beneficiary, which shall be known as the "Highland Litigation Sub-Trust," on the terms set forth herein. The Litigation Trustee may use this name in accordance with the terms and conditions set forth herein as the Litigation Trustee sees fit.

(b)     The Litigation Trustee shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in his capacity as Litigation Trustee, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2     Nature and Purposes of the Litigation Sub-Trust.  The Litigation Sub-Trust is organized and established as a trust for the purpose of monetizing the Estate Claims and making distributions to Litigation Sub-Trust Beneficiary in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d).  The Litigation Sub-Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Estate Claims and distributing the proceeds of such Estate Claims to the Claimant Trust in a timely fashion in accordance with the Plan, the Confirmation Order, and this Agreement.  The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Estate Claim as of the Petition Date.  Except as otherwise provided herein, the Litigation Sub-Trust shall have the sole responsibility for the pursuit and settlement of the Estate Claims, and, subject to the terms of the Claimant Trustee Agreement, the sole power and authority to allow or settle and compromise any Claims related to the Estate Claims, including, without limitation, Employee Claims.  For the avoidance of doubt, the Litigation Sub-Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement).

2.3     Transfer of Assets and Rights to the Litigation Sub-Trust.

(a)     On or as soon as practicable after the Effective Date, the Claimant Trust shall automatically an irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims, Employee Claims, and Privileges.  For purposes of the transfer of documents, the Litigation Sub-Trust is an assignee and successor to the Debtor in respect of the Estate Claims and Employee Claims and shall be treated as such in any review of confidentiality restrictions in requested documents.  For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

000779

(b)     Until the Litigation Sub-Trust terminates pursuant to the terms hereof, legal title to the Estate Claims shall be vested at all times in the Litigation Sub-Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Estate Claims to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee.  For purposes of such jurisdictions, the term Litigation Sub-Trust, as used herein, shall be read to mean the Litigation Trustee.

(c)     In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Estate Claims after the Effective Date.  No Person or entity may rely on the absence of a specific reference in the Plan to any Estate Claim against them as any indication that the Litigation Trustee will not pursue any and all available Estate Claims or objections against them.  Unless any Estate Claim against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Estate Claims for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of the Confirmation Order.

2.4     Principal Office.   The principal office of the Litigation Sub-Trust shall be maintained by the Litigation Trustee at the following address: Goldin Associates, a Teneo Company, 350 Fifth Avenue, New York, New York 10118.

2.5     Acceptance.   The Litigation Trustee accepts the Litigation Sub-Trust imposed by this Agreement and agrees to observe and perform that Litigation Sub-Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.6     Further Assurances.   The Claimant Trustee and any successors thereof will, upon reasonable request of the Litigation Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Litigation Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Litigation Trustee the powers, instruments or funds in trust hereunder.

2.7     Incidents of Ownership.   The Claimant Trust shall be the sole beneficiary of the Litigation Sub-Trust and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## ARTICLE III.
## THE LITIGATION TRUSTEE

3.1     Role.   In furtherance of and consistent with the purpose of the Litigation Sub-Trust, the Plan, and this Agreement, the Litigation Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Litigation Trustee with respect to the Litigation Sub-Trust Assets for the benefit of the Litigation Sub-Trust Beneficiary and maintain, manage, and take action on behalf of the Litigation Sub-Trust.

6

000780

3.2     Authority.

(a)     In connection with the administration of the Litigation Sub-Trust, in addition to any and all of the powers enumerated elsewhere herein, the Litigation Trustee shall, in an expeditious but orderly manner, investigate, prosecute, settle, and otherwise resolve the Estate Claims.  The Litigation Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Litigation Sub-Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.

(b)     The Litigation Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement).  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Estate Claims or Employee Claims prior to the Effective Date, on the Effective Date the Litigation Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "Marc Kirschner, not individually but solely as Litigation Trustee for the Highland Litigation Sub-Trust, et al. v. [Defendant]".

(c)     Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Litigation Trustee shall have the power and authority to:

(i)     hold legal title to any and all rights in or arising from the Litigation Sub-Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Sub-Trust (including any proceeds of the Litigation Sub-Trust Assets);

(ii)     perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Sub-Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iii)     subject to any approval of the Oversight Board that may be required under Section 3.3(b), protect and enforce the rights of the Litigation Sub-Trust with respect to any Litigation Sub-Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(iv)     determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Sub-Trust;

(v)     subject to any approval of the Oversight Board that may be required under Section 3.3(b), investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, all

000781

Estate Claims, Employee Claims, or any other Causes of Action in favor of or against the Litigation Sub-Trust;

(vi)    with respect to any Estate Claim, avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code or applicable state law;

(vii)    subject to applicable law, seek the examination of any Entity or Person with respect to the Estate Claims;

(viii)    make all payments relating to the Litigation Sub-Trust Assets;

(ix)    assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Sub-Trust, the Litigation Sub-Trust Assets, or the Litigation Sub-Trust Beneficiary, if applicable;

(x)    prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Sub-Trust, and pay taxes properly payable by the Litigation Sub-Trust;

(xi)    if not otherwise covered by insurance coverage obtained by the Claimant Trust, obtain reasonable insurance coverage with respect to any liabilities and obligations of the Litigation Trustee, solely in his capacity as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Litigation Sub-Trust Expense and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Reserve;

(xii)    without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Sub-Trust Expenses and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Cash Reserve;

(xiii)    to the extent applicable, assert, enforce, release, or waive any Privilege or defense on behalf of the Litigation Sub-Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Litigation Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xiv)    take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Sub-Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the

Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder; and

(xv)    exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(xv) being collectively, the "Authorized Acts").

(d)    The Litigation Trustee has the power and authority to act as trustee of the Litigation Sub-Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(e)    Any determinations by the Liquidation Trustee, under the direction of the Oversight Board, with respect to the amount or timing of settlement or other disposition of any Estate Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Sub-Trust Beneficiary and all other parties of interest following the entry of an order of a court of competent jurisdiction approving such settlement or other disposition to the extent required or obtained.

3.3    Limitation of Authority.

(a)    Notwithstanding anything herein to the contrary, the Litigation Sub-Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Estate Claims as required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement.

(b)    Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Litigation Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 of the Claimant Trust Agreement, in order to:

(i)    terminate or extend the term of the Litigation Sub-Trust;

(ii)    commence litigation with respect to any Estate Claims and, if applicable under the terms of the Claimant Trust Agreement, the Employee Claims, including, without limitation, to (x) litigate, resolve, or settle coverage and/or the liability of any insurer under any insurance policy or legal action related thereto, or (y) pursue avoidance, recovery, or similar remedies that may be brought under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes or common law, including fraudulent transfer law;

(iii)    settle, dispose of, or abandon any Estate Claims (including any counterclaims to the extent such counterclaims are set off against the proceeds of any such Estate Claim);

(iv)    borrow funds as may be necessary to fund litigation or other costs of the Litigation Sub-Trust;

000783

(v)     reserve or retain any cash or cash equivalents in the Litigation Sub-Trust Cash Reserve in an amount reasonably necessary to meet claims and contingent liabilities;

(vi)     change the compensation of the Litigation Trustee; and

(vii)     retain counsel, experts, advisors, or any other professionals.

(c)     [Reserved]

3.4     Binding Nature of Actions.  All actions taken and determinations made by the Litigation Trustee in accordance with the provisions of this Agreement shall be final and binding upon the Litigation Sub-Trust Beneficiary.

3.5     Term of Service.  The Litigation Trustee shall serve as the Litigation Trustee for the duration of the Litigation Sub-Trust, subject to death, resignation or removal.

3.6     Resignation.  The Litigation Trustee may resign as trustee of the Litigation Sub-Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Litigation Trustee shall continue to serve as Litigation Trustee after delivery of the Litigation Trustee's resignation until the proposed effective date of such resignation, unless the Litigation Trustee and a [simple majority] of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Litigation Trustee in accordance with Section 3.8 hereof becomes effective.

3.7     Removal.

(a)     The Litigation Trustee may be removed by a [simple majority] vote of the Oversight Board for Cause, immediately upon notice thereof, or without Cause, upon [60 days'] prior written notice.

(b)     To the extent there is any dispute regarding the removal of a Litigation Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when a successor Litigation Trustee will become effective in accordance with Section 3.8 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.8     Appointment of Successor.

(a)     Appointment of Successor.  In the event of a vacancy by reason of the death, Disability, or removal of the Litigation Trustee, or prospective vacancy by reason of resignation, a successor Litigation Trustee shall be selected by a [simple majority] vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Litigation Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Litigation Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Litigation

000784

Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Litigation Sub-Trust, or the Claimant Trust on behalf of the Litigation Sub-Trust. The successor Litigation Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Litigation Trustee.

(b) <u>Vesting or Rights in Successor Litigation Trustee</u>. Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Sub-Trust, the Claimant Trustee, the exiting Litigation Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof. The successor Litigation Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Litigation Trustee except that the successor Litigation Trustee shall not be liable for the acts or omissions of the retiring Litigation Trustee. In no event shall the retiring Litigation Trustee be liable for the acts or omissions of the successor Litigation Trustee.

(c) <u>Interim Litigation Trustee</u>. During any period in which there is a vacancy in the position of Litigation Trustee, the Oversight Board shall appoint one of its Members or the Claimant Trustee to serve as the interim Litigation Trustee (the "<u>Interim Trustee</u>") until a successor Litigation Trustee is appointed pursuant to Section 3.8(a). The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board or Claimant Trustee, as applicable, merely by such Person's appointment as Interim Trustee.

3.9 <u>Continuance of Litigation Sub-Trust</u>. The death, resignation, or removal of the Litigation Trustee shall not operate to terminate the Litigation Sub-Trust created by this Agreement or to revoke any existing agency (other than any agency of the Litigation Trustee as the Litigation Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Litigation Trustee. In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Litigation Trustee's capacity under this Agreement and the conveyance of the Estate Claims then held by the exiting Litigation Trustee to the successor Litigation Trustee; (ii) deliver to the successor Litigation Trustee all non-privileged documents, instruments, records, and other writings relating to the Litigation Sub-Trust as may be in the possession or under the control of the exiting Litigation Trustee, <u>provided</u>, the exiting Litigation Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Litigation Trustee and the cost of making such copies shall be a Litigation Sub-Trust Expense to be paid by the Litigation Sub-Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Litigation Trustee's obligations and functions by his successor, <u>provided</u> the fees and expenses of such assistance and cooperation shall be paid to the exiting Litigation Trustee by the Litigation Sub-Trust. The exiting Litigation Trustee shall irrevocably appoint the successor Litigation Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Litigation Trustee is obligated to perform under this Section 3.9.

000785

3.10   Litigation Trustee as "Estate Representative".  The Litigation Trustee will be the exclusive trustee of the Litigation Sub-Trust Assets, for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Estate Claims, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement.  The Litigation Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Estate Claims, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order.  All actions, claims, rights or interests constituting or relating to Estate Claims are preserved and retained and may be enforced by the Litigation Trustee as an Estate Representative.

3.11   Books and Records.

(a)   The Litigation Trustee shall maintain, in respect of the Litigation Sub-Trust and the Claimant Trust, books and records pertinent to Estate Claims in its possession and the income of the Litigation Sub-Trust and payment of expenses, liabilities, and claims against or assumed by the Litigation Sub-Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Sub-Trust and the requirements of Article VII herein. Except as otherwise provided herein, nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Sub-Trust, or as a condition for managing any payment or distribution out of the Litigation Sub-Trust.  Notwithstanding the foregoing, the Litigation Trustee shall to retain such books and records, and for such periods, with respect to any Reorganized Debtor Assets as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

(b)   The Litigation Trustee may dispose some or all of the books and records maintained by the Litigation Trustee at the later of (i) such time as the Litigation Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Litigation Sub-Trust, including with respect to the Estate Claims, or (ii) upon the termination and winding up of the Litigation Sub-Trust under Article IX of this Agreement.

3.12   Reports.

(a)   Financial and Status Reports.  The fiscal year of the Litigation Sub-Trust shall be the calendar year.  Within 90 days after the end of each calendar year during the term of the Litigation Sub-Trust, and within 45 days after the end of each calendar quarter during (other than the fourth quarter) the term of the Litigation Sub-Trust and as soon as practicable upon termination of the Litigation Sub-Trust, the Litigation Trustee shall make available upon request to the Oversight Board or Litigation Sub-Trust Beneficiary appearing on its records as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the Litigation Sub-Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant

employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Sub-Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Sub-Trust that, in the judgment of the Litigation Trustee, materially affects the Litigation Sub-Trust and of which notice has not previously been given to the Oversight Board or Litigation Sub-Trust Beneficiary, underlined provided, that any such description shall not include any privileged or confidential information of the Litigation Trustee; and (iii) a description of the progress of liquidating the Litigation Sub-Trust Assets and making distributions to the Litigation Sub-Trust Beneficiary and any other material information relating to the Litigation Sub-Trust Assets and the administration of the Litigation Sub-Trust deemed appropriate to be disclosed by the Litigation Trustee, which description shall include a written report detailing, among other things, the litigation status of the Estate Claims transferred to the Litigation Sub-Trust, any settlements entered into by the Litigation Sub-Trust with respect to the Estate Claims, the proceeds recovered to date from Estate Claims, and the distributions made by the Litigation Sub-Trust.

(b)     Annual Plan and Budget.  If instructed by the Oversight Board, the Litigation Trustee shall prepare and submit to the Oversight Board for approval an annual plan and budget in such detail as reasonably requested.

3.13   Compensation and Reimbursement; Engagement of Professionals.

(a)     Compensation and Expenses.

(i)     Compensation.  As compensation for any services rendered by the Litigation Trustee in connection with this Agreement, the Litigation Trustee shall receive initial compensation in a manner and amount as agreed upon by the Committee. Any additional compensation or compensation of a Successor Litigation Trustee shall be determined by the Oversight Board.

(ii)     Expense Reimbursements.  All reasonable out-of-pocket expenses of the Litigation Trustee in the performance of his or her duties hereunder, shall be reimbursed as Litigation Sub-Trust Expenses paid by the Litigation Sub-Trust.

(b)     Professionals.

(i)     Engagement of Professionals.  The Litigation Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The Litigation Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii)     Fees and Expenses of Professionals.  The Litigation Trustee shall pay the reasonable fees and expenses of any retained professionals as Litigation Sub-Trust Expenses.

3.14   Reliance by Litigation Trustee.  Except as otherwise provided herein, the Litigation Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Litigation Trustee has no reason to believe to be other

000787

than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Litigation Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein. The Litigation Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning Estate Claims, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The Litigation Sub-Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15    <u>Commingling of Litigation Sub-Trust Assets</u>.  The Litigation Trustee shall not commingle any of the Litigation Sub-Trust Assets with his or her own property or the property of any other Person.

3.16    [<u>Delaware Trustee</u>.  The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Litigation Sub-Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Litigation Trustee; <u>provided</u>, <u>however</u>, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Litigation Sub-Trust.]

## ARTICLE IV.
## THE OVERSIGHT BOARD

The Oversight Board shall be governed by Article IV of the Claimant Trust Agreement.

## ARTICLE V.
## TRUST INTERESTS

5.1    <u>Litigation Sub-Trust Interests</u>.  On the date hereof, the Litigation Sub-Trust shall issue Trust Interests to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary. The Litigation Sub-Trust Beneficiary shall be entitled to distributions from the Litigation Sub-Trust Assets in accordance with the terms of the Plan and this Agreement.

000788

5.2 _Transferability of Trust Interests_. No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected.

5.3 _Exemption from Registration_. The Parties hereto intend that the rights of the Litigation Sub-Trust Beneficiary arising under this Litigation Sub-Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws. The Oversight Board, acting unanimously, and Litigation Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Litigation Sub-Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act. The Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Sub-Trust Beneficiary any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Litigation Trustee under this Agreement.

## ARTICLE VI.
## DISTRIBUTIONS

6.1 _Distributions_. The Litigation Trustee shall distribute Cash proceeds of the Estate Claims to the Claimant Trust within 30 days of receipt of such Cash proceeds, net of any amounts that (a) are reasonably necessary to maintain the value of the Litigation Sub-Trust Assets pending their monetization or other disposition during the term of the Litigation Sub-Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Litigation Sub-Trust Expenses and any other expenses incurred by the Litigation Sub-Trust (including, but not limited to, any taxes imposed on or payable by the Litigation Trustee with respect to the Litigation Sub-Trust Assets), and (c) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Litigation Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses).

6.2 _Manner of Payment or Distribution_. All distributions made by the Litigation Trustee on behalf of the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary shall be payable by the Litigation Trustee directly to the Claimant Trust, as sole Litigation Sub-Trust Beneficiary, on the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3 _Delivery of Distributions_. All distributions under this Agreement to the Claimant Trust shall be made pursuant to wire instructions provided by the Claimant Trustee to the Litigation Trustee.

## ARTICLE VII.
## TAX MATTERS

7.1 _Tax Treatment and Tax Returns_. It is intended that the Litigation Sub-Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) the sole beneficiary of which is the Claimant Trust. Consistent

with such treatment, it is intended that the transfer of the Litigation Sub Trust Assets from the Claimant Trust to the Litigation Sub Trust will be treated as a non-event for federal income tax purposes (and foreign, state, and local income tax purposes where applicable). Further, because the Claimant Trust is itself intended to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable),it is intended that the beneficiaries of the Claimant Trust will be treated as the grantor of the Litigation Sub-Trust and owner of the Litigation Sub-Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable). The Litigation Trustee shall cooperate with the Claimant Trustee in connection with the preparation and filing of any federal income tax returns (and foreign, state, and local income tax returns where applicable) or information statements relating to the Litigation Sub Trust Assets.

7.2 <u>Withholding</u>. The Litigation Trustee may withhold from any amount distributed from the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the Litigation Sub-Trust Beneficiary. As a condition to receiving any distribution from the Litigation Sub-Trust, the Litigation Trustee may require that the Litigation Sub-Trust Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Litigation Trustee to comply with applicable tax reporting and withholding laws.

## <u>ARTICLE VIII.</u>
## <u>STANDARD OF CARE AND INDEMNIFICATION</u>

8.1 <u>Standard of Care</u>. None of the Litigation Trustee, acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan, the Oversight Board, or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Litigation Sub-Trust or to any Person (including the Litigation Sub-Trust Beneficiary and Claimant Trust Beneficiaries) in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the acts or omissions of any such Litigation Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Litigation Sub-Trust, the Litigation Trustee, or Oversight Board shall not be personally liable to the Litigation Sub-Trust or any other Person in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Litigation Trustee, Oversight Board, or any Member shall be personally liable to the Litigation Sub-Trust or to any Person for the acts or omissions of any employee, agent or professional of the Litigation Sub-Trust or Litigation Trustee, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Litigation Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Litigation Sub-Trust.

000790

8.2 <u>Indemnification</u>. The Litigation Trustee (including each former Litigation Trustee), Oversight Board, and all past and present Members (collectively, the "<u>Indemnified Parties</u>") shall be indemnified by the Litigation Sub-Trust against and held harmless by the Litigation Sub-Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Litigation Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence. If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Litigation Sub-Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Litigation Trustee and/or Oversight Board, as applicable; <u>provided</u>, <u>however</u>, that the failure of an Indemnified Party to promptly notify the Litigation Trustee and/or Oversight Board of an indemnification obligation will not excuse the Litigation Sub-Trust from indemnifying the Indemnified Party unless such delay has caused the Litigation Sub-Trust material harm. The Litigation Sub-Trust shall periodically advance or otherwise reimburse on demand the Indemnified Party's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith as a Litigation Sub-Trust Expense, but the Indemnified Party shall be required to repay promptly to the Litigation Sub-Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Litigation Sub-Trust with respect to which such expenses were paid. The Litigation Sub-Trust shall indemnify and hold harmless the employees, agents and professionals of the Litigation Sub-Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties. For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Litigation Trustee or Member or the estate of any decedent Litigation Trustee or Member. The indemnification provided hereby shall be a Litigation Sub-Trust Expense.

8.3 To the extent applicable, the provisions and protections set forth in Article IX of the Plan will apply to the Litigation Sub-Trust, the Litigation Trustee, Oversight Board, and the Members.

<div align="center"><u>ARTICLE IX.</u><br><u>TERMINATION</u></div>

9.1 <u>Duration</u>. The Litigation Trustee, the Litigation Sub-Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as the Litigation Trustee determines that the Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate, and all Distributions required to be made by the Litigation Trustee to the Litigation Sub-Trust Beneficiary under the Plan and this Agreement have been made, but in no event shall the Litigation Sub-Trust be dissolved later than [three years] from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such

third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Sub-Trust Assets.

9.2     Continuance of the Litigation Trustee for Winding Up.  After dissolution of the Litigation Sub-Trust and for purpose of liquidating and winding up the affairs of the Litigation Sub-Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Litigation Sub-Trust Assets, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Litigation Sub-Trust, until such time as the winding up of the Litigation Sub-Trust is completed.  Upon the dissolution of the Litigation Sub-Trust and completion of the winding up of the assets, liabilities and affairs of the Litigation Sub-Trust pursuant to the Delaware Statutory Trust Act, the Litigation Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Litigation Sub-Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date").  Subject in all respects to 3.11, upon the Termination date, the Litigation Trustee shall retain for a period of two (2) years, as a Litigation Sub-Trust Expense, the books, records, and certificated and other documents and files that have been delivered to or created by the Litigation Trustee.  Subject in all respects to Section 3.11, at the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.3     Termination of Duties.  Except as otherwise specifically provided herein, upon the Termination Date of the Litigation Sub-Trust, the Litigation Trustee, the Oversight Board, and its Members shall have no further duties or obligations hereunder.

## ARTICLE X.
## AMENDMENTS AND WAIVER

The Litigation Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Litigation Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Litigation Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

## ARTICLE XI.
## MISCELLANEOUS

11.1     Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Litigation Sub-Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Litigation Sub-Trust Beneficiary.

000792

11.2 <u>Litigation Sub-Trust Beneficiary has No Legal Title to Litigation Sub-Trust Assets</u>. The Litigation Sub-Trust Beneficiary shall have no legal title to any part of the Litigation Sub-Trust Assets.

11.3 <u>Agreement for Benefit of Parties Only</u>. Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Litigation Trustee, Oversight Board, and the Litigation Sub-Trust Beneficiary any legal or equitable right, remedy or claim under or in respect of this Agreement. The Litigation Sub-Trust Assets shall be held for the sole and exclusive benefit of the Litigation Sub-Trust Beneficiary.

11.4 <u>Notices</u>. All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

      (a)    If to the Litigation Trustee:

           Marc S. Kirschner
           c/o Goldin Associates LLC, a Teneo Company
           350 Fifth Avenue
           New York, New York 10118

With a copy to:

           **[insert contact for counsel to the Litigation Trustee].**

      (b)    If to the Claimant Trustee:

           Claimant Trustee
           c/o **[insert contact info for Claimant Trustee]**

With a copy to:

           Pachulski Stang Ziehl & Jones LLP
           10100 Santa Monica Blvd, 13th Floor
           Los Angeles, CA 90067
           Attn: Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
                  Ira Kharasch (ikharasch@pszjlaw.com)
                  Gregory Demo (gdemo@pszjlaw.com)

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.4 to the entity to be charged with knowledge of such change.

11.5 <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition

000793

or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.6    Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.7    Binding Effect, etc.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Litigation Sub-Trust, the Litigation Trustee, and the Litigation Sub-Trust Beneficiary, and their respective successors and assigns.  Any notice, direction, consent, waiver or other instrument or action by any Litigation Sub-Trust Beneficiary shall bind its successors and assigns.

11.8    Headings; References.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.9    Governing Law.  This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.10   Consent to Jurisdiction.  Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan.

11.11   Transferee Liabilities.  The Litigation Sub-Trust shall have no liability for, and the Litigation Sub-Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement.  In no event shall the Litigation Trustee or the Litigation Sub-Trust Beneficiary have any personal liability for such claims.  If any liability shall be asserted against the Litigation Sub-Trust or the Litigation Trustee as the transferee of the Litigation Sub-Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Litigation Trustee may use such part of the Litigation Sub-Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Litigation Trustee as a Litigation Sub-Trust Expense.


[Remainder of Page Intentionally Blank]

000794

IN WITNESS HEREOF, the parties hereto have caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

Litigation Trustee

By: _____

Marc S. Kirschner, not individually but solely in his capacity as the Litigation Trustee

21

# EXHIBIT P

*Draft*

## LITIGATION SUB-TRUST AGREEMENT

This Litigation Sub-Trust Agreement, effective as of _____ , ~~2020~~2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among James P. Seery, Jr., as trustee of the Highland Claimant Trust (the "Claimant Trustee"), [____] as Delaware Trustee, and Marc S. Kirschner as trustee (the "Litigation Trustee," and together with the Claimant Trustee [and Delaware Trustee], the "Parties") of the Litigation Sub-Trust for the benefit of the Claimant Trust as sole Litigation Sub-Trust Beneficiary.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November ~~13,~~24, 2020, the Debtor filed the *~~Third~~Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. ▴1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] ~~[~~which was confirmed by the Bankruptcy Court on _____ , ~~2020,~~2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order")~~]~~;

WHEREAS, this Agreement, including all exhibits hereto, is the "Litigation Sub-Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Litigation Sub-Trust Assets are hereby to be transferred by the Claimant Trust to the Litigation Sub-Trust (each as defined herein) created and evidenced by this Agreement so that (i) Estate Claims can be investigated, prosecuted, settled, abandoned, resolved, and otherwise monetized as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; (ii) proceeds of Estate Claims can be remitted to the Claimant Trust as Claimant Trust Assets for distribution to the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) in accordance with the Plan and Claimant Trust Agreement~~[~~; (iii) the Litigation Trustee can investigate, litigate, settle, or otherwise resolve any Filed Claims relating to the Estate Claims, including the ~~Debtor~~ Employee Claims;~~]~~ and (iv) administrative services relating to the activities of the Litigation Sub-Trust can be performed by the Litigation Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Litigation Trustee and the Claimant Trustee have executed this Agreement for the benefit of the Claimant Trust as provided for in the Plan.

TO HAVE AND TO HOLD unto the Litigation Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Litigation Sub-Trust in accordance with Article IX hereof, this Litigation Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Litigation Sub-Trust Assets are to be strictly held and applied by the Litigation Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     Certain Definitions.  Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(b)     "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(c)     "Claimant Trust Agreement" means the Claimant Trust Agreement dated [____], 2020,2021, by and between the Debtor, Claimant Trustee, and Delaware Trustee.

(d)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee who may be appointed pursuant to the terms of the Claimant Trust Agreement.

(e)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(f)     ["Debtor Employee Claims" means any General Unsecured Claims filed by any Employee or former director, officer, or employee of the Debtor, other than the Claims of

2

~~the Senior Employees subject to stipulations executed by employees of the Debtor prior to the Effective Date.]~~

(f)    ~~(g)~~ "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(g)    ~~(h)~~ "Delaware Trustee" has the meaning set forth in the Claimant Trust Agreement.

(h)    ~~(i)~~ "Disability" means as a result of the Litigation Trustee's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Litigation Trustee, the Litigation Trustee has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(i)    ~~(j)~~ "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(j)    ~~(k)~~ ["Employee" means the employees of the Debtor set forth in the Plan Supplement.]

(k)    "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(l)    "Litigation Sub-Trust" means the sub-trust created pursuant to this Agreement, and in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d).

(m)    "Litigation Sub-Trust Agreement" means this Agreement.

(n)    "Litigation Sub-Trust Assets" means the Estate Claims and the Litigation Sub-Trust Expense Cash Reserve.

(o)    "Litigation Sub-Trust Beneficiary" means the Claimant Trust.

(p)    "Litigation Sub-Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Litigation Sub-Trust and/or the Litigation Trustee in administering and conducting the affairs of the Litigation Sub-Trust, and otherwise carrying out the terms of the Litigation Sub-Trust and the Plan on behalf of the Litigation Sub-Trust, including without limitation, any taxes owed by the Litigation Sub-Trust, and the fees and expenses of the Litigation Trustee and professional persons retained by the Litigation Sub-Trust or Litigation Trustee in accordance with Article 3.12(b) of this Agreement.

(q)    "Litigation Sub-Trust Expense Cash Reserve" means $[•] million in Cash to be funded by the Debtor or Reorganized Debtor, as applicable, pursuant to the Plan into a bank account of the Litigation Sub-Trust (or of the Claimant Trust for the benefit of the Litigation

3

Sub-Trust) on or before the Effective Date for the purpose of paying Litigation Sub-Trust Expenses in accordance herewith.

(r)     "Litigation Trustee" means Marc S. Kirschner as the initial "Litigation Trustee" hereunder and under the Plan, and any successor Litigation Trustee who may be appointed pursuant to the terms of this Agreement.

(s)     "Oversight Board" has the meaning set forth in the Claimant Trust Agreement.

(t)     "Plan" has the meaning set forth in the Recitals hereof.

(u)     "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Debtor Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence or any other privilege available under applicable law[; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.]

(v)     "Securities Act" means the Securities Act of 1933, as amended.

(w)     "TIA" means the Trust Indenture Act of 1939, as amended.

(x)     "Trust Interests" means the trust interest(s) to be distributed to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.

(y)     "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

1.2     General Construction.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3     Incorporation of the Plan.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

4

**ARTICLE II.**
**ESTABLISHMENT OF THE LITIGATION SUB-TRUST**

2.1     Establishment of Sub-Trust.

(a)     The Parties, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a statutory trust under the Delaware Statutory Trust Act on behalf of the Claimant Trust as the sole Litigation Sub-Trust Beneficiary, which shall be known as the "Highland Litigation Sub-Trust," on the terms set forth herein. The Litigation Trustee may use this name in accordance with the terms and conditions set forth herein as the Litigation Trustee sees fit.

(b)     The Litigation Trustee shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in his capacity as Litigation Trustee, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2     Nature and Purposes of the Litigation Sub-Trust.  The Litigation Sub-Trust is organized and established as a trust for the purpose of monetizing the Estate Claims and making distributions to Litigation Sub-Trust Beneficiary in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d).  The Litigation Sub-Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Estate Claims and distributing the proceeds of such Estate Claims to the Claimant Trust in a timely fashion in accordance with the Plan, the Confirmation Order, and this Agreement.  The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Estate Claim as of the Petition Date.  Except as otherwise provided herein, the Litigation Sub-Trust shall have the sole responsibility for the pursuit and settlement of the Estate Claims[,] and, subject to the terms of the Claimant Trustee Agreement, the sole power and authority to allow or settle and compromise any Claims related to the Estate Claims, including, without limitation, Debtor Employee Claims[.]  For the avoidance of doubt, the Litigation Sub-Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Estate Claims and Debtor Employee Claims, other than those Claims constituting Reorganized Debtor Assets; provided, however, that the Litigation Trustee may, as part of his investigation mandate, investigate Estate Claims that would constitute Reorganized Debtor Assets and make a recommendation to the Oversight Board and the Reorganized Debtor on how to proceed with respect to any such Causes of Action Employee Claims (in accordance with the terms of the Claimant Trust Agreement).

2.3     Transfer of Assets and Rights to the Litigation Sub-Trust.

(a)     On or as soon as practicable after the Effective Date, the Claimant Trust shall automatically an irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims, Debtor Employee Claims, and Privileges. For purposes of the transfer of documents, the Litigation Sub-Trust is an assignee and successor to the Debtor in respect of the Estate Claims and Debtor Employee Claims and shall be treated as

5

such in any review of confidentiality restrictions in requested documents. For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(b)     Until the Litigation Sub-Trust terminates pursuant to the terms hereof, legal title to the Estate Claims shall be vested at all times in the Litigation Sub-Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Estate Claims to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee. For purposes of such jurisdictions, the term Litigation Sub-Trust, as used herein, shall be read to mean the Litigation Trustee.

(c)     In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Estate Claims after the Effective Date. No Person or entity may rely on the absence of a specific reference in the Plan to any Estate Claim against them as any indication that the Litigation Trustee will not pursue any and all available Estate Claims or objections against them. Unless any Estate Claim against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Estate Claims for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of the Confirmation Order.

2.4     Principal Office.    The principal office of the Litigation Sub-Trust shall be maintained by the Litigation Trustee at the following address: Goldin Associates, a Teneo Company, 350 Fifth Avenue, New York, New York 10118.

2.5     Acceptance.    The Litigation Trustee accepts the Litigation Sub-Trust imposed by this Agreement and agrees to observe and perform that Litigation Sub-Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.6     Further Assurances.    The Claimant Trustee and any successors thereof will, upon reasonable request of the Litigation Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Litigation Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Litigation Trustee the powers, instruments or funds in trust hereunder.

2.7     Incidents of Ownership.    The Claimant Trust shall be the sole beneficiary of the Litigation Sub-Trust and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

6

## ARTICLE III.
## THE LITIGATION TRUSTEE

3.1 <u>Role</u>. In furtherance of and consistent with the purpose of the Litigation Sub-Trust, the Plan, and this Agreement, the Litigation Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Litigation Trustee with respect to the Litigation Sub-Trust Assets for the benefit of the Litigation Sub-Trust Beneficiary and maintain, manage, and take action on behalf of the Litigation Sub-Trust.

3.2 <u>Authority</u>.

(a) In connection with the administration of the Litigation Sub-Trust, in addition to any and all of the powers enumerated elsewhere herein, the Litigation Trustee shall, in an expeditious but orderly manner, investigate, prosecute, settle, and otherwise resolve the Estate Claims. The Litigation Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Litigation Sub-Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.

(b) The Litigation Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement). To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Estate Claims or Employee Claims prior to the Effective Date, on the Effective Date the Litigation Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "Marc Kirschner, not individually but solely as Litigation Trustee for the Highland Litigation Sub-Trust, et al. v. [Defendant]".

(c) Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Litigation Trustee shall have the power and authority to:

(i) hold legal title to any and all rights in or arising from the Litigation Sub-Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Sub-Trust (including any proceeds of the Litigation Sub-Trust Assets);

(ii) perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Sub-Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iii) subject to any approval of the Oversight Board that may be required under Section 3.3(b), protect and enforce the rights of the Litigation Sub-Trust with respect to any Litigation Sub-Trust Assets by any method deemed appropriate, including, without

7

000803

limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(iv)    determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Sub-Trust;

(v)    subject to any approval of the Oversight Board that may be required under Section 3.3(b), investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, all Estate Claims, Employee Claims, or any other Causes of Action in favor of or against the Litigation Sub-Trust;

(vi)    with respect to any Estate Claim, avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code or applicable state law;

(vii)    subject to applicable law, seek the examination of any Entity or Person with respect to the Estate Claims;

(viii)    make all payments relating to the Litigation Sub-Trust Assets;

(ix)    [assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Sub-Trust, the Litigation Sub-Trust Assets, or the Litigation Sub-Trust Beneficiary, if applicable;]

(x)    prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Sub-Trust, and pay taxes properly payable by the Litigation Sub-Trust;

(xi)    if not otherwise covered by insurance coverage obtained by the Claimant Trust, obtain reasonable insurance coverage with respect to any liabilities and obligations of the Litigation Trustee, solely in his capacity as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Litigation Sub-Trust Expense and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Reserve;

(xii)    without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Sub-Trust Expenses and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Cash Reserve;

8

(xiii)   to the extent applicable, assert, enforce, release, or waive any Privilege or defense on behalf of the Litigation Sub-Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Litigation Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xiv)   take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Sub-Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder; and

(xv)   exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(xv) being collectively, the "Authorized Acts").

(d)   The Litigation Trustee has the power and authority to act as trustee of the Litigation Sub-Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(e)   Any determinations by the Liquidation Trustee, under the direction of the Oversight Board, with respect to the amount or timing of settlement or other disposition of any Estate Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Sub-Trust Beneficiary and all other parties of interest following the entry of an order of a court of competent jurisdiction approving such settlement or other disposition to the extent required or obtained.

3.3   Limitation of Authority.

(a)   Notwithstanding anything herein to the contrary, the Litigation Sub-Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Estate Claims as required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement.

(b)   Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Litigation Trustee must receive the consent by vote of a [simple majority] of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 of the Claimant Trust Agreement, in order to:

(i)   terminate or extend the term of the Litigation Sub-Trust;

(ii)   commence litigation with respect to any Estate Claims and, if applicable under the terms of the Claimant Trust Agreement, the Employee Claims, including, without limitation, to (x) litigate, resolve, or settle coverage and/or the liability of any insurer under any insurance policy or legal action related thereto, or (y) pursue avoidance, recovery, or similar remedies that may be brought under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes or common law, including fraudulent transfer law;

9

        (iii)     settle, dispose of, or abandon any Estate Claims [(including any counterclaims to the extent such counterclaims are set off against the proceeds of any such Estate Claim)];

        (iv)     borrow funds as may be necessary to fund litigation or other costs of the Litigation Sub-Trust;

        (v)     reserve or retain any cash or cash equivalents in the Litigation Sub-Trust Cash Reserve in an amount reasonably necessary to meet claims and contingent liabilities;

        (vi)     change the compensation of the Litigation Trustee; and

        (vii)     retain counsel, experts, advisors, or any other professionals.

    (c)     [Reserved]

    3.4   <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Litigation Trustee in accordance with the provisions of this Agreement shall be final and binding upon the Litigation Sub-Trust Beneficiary.

    3.5   <u>Term of Service</u>.  The Litigation Trustee shall serve as the Litigation Trustee for the duration of the Litigation Sub-Trust, subject to death, resignation or removal.

    3.6   <u>Resignation</u>.  The Litigation Trustee may resign as trustee of the Litigation Sub-Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Litigation Trustee shall continue to serve as Litigation Trustee after delivery of the Litigation Trustee's resignation until the proposed effective date of such resignation, unless the Litigation Trustee and a [simple majority] of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Litigation Trustee in accordance with Section 3.8 hereof becomes effective.

    3.7   <u>Removal</u>.

        (a)     The Litigation Trustee may be removed by a [simple majority] vote of the Oversight Board for Cause, immediately upon notice thereof, or without Cause, upon [60 days'] prior written notice.

        (b)     To the extent there is any dispute regarding the removal of a Litigation Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when a successor Litigation Trustee will become effective in accordance with Section 3.8 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

10

3.8    <u>Appointment of Successor</u>.

(a)    <u>Appointment of Successor</u>.  In the event of a vacancy by reason of the death, Disability, or removal of the Litigation Trustee, or prospective vacancy by reason of resignation, a successor Litigation Trustee shall be selected by a [simple majority] vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Litigation Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Litigation Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Litigation Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Litigation Sub-Trust, or the Claimant Trust on behalf of the Litigation Sub-Trust.  The successor Litigation Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Litigation Trustee.

(b)    <u>Vesting or Rights in Successor Litigation Trustee</u>.  Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Sub-Trust, the Claimant Trustee, the exiting Litigation Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Litigation Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Litigation Trustee except that the successor Litigation Trustee shall not be liable for the acts or omissions of the retiring Litigation Trustee.  In no event shall the retiring Litigation Trustee be liable for the acts or omissions of the successor Litigation Trustee.

(c)    <u>Interim Litigation Trustee</u>.  During any period in which there is a vacancy in the position of Litigation Trustee, the Oversight Board shall appoint one of its Members or the Claimant Trustee to serve as the interim Litigation Trustee (the "<u>Interim Trustee</u>") until a successor Litigation Trustee is appointed pursuant to Section 3.8(a).  The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board or Claimant Trustee, as applicable, merely by such Person's appointment as Interim Trustee.

3.9    <u>Continuance of Litigation Sub-Trust</u>.  The death, resignation, or removal of the Litigation Trustee shall not operate to terminate the Litigation Sub-Trust created by this Agreement or to revoke any existing agency (other than any agency of the Litigation Trustee as the Litigation Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Litigation Trustee.  In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Litigation Trustee's capacity under this Agreement and the conveyance of the Estate Claims then held by the exiting Litigation Trustee to the successor Litigation Trustee; (ii) deliver to the successor Litigation Trustee all non-privileged documents, instruments, records, and other writings relating to the Litigation Sub-Trust as may be in the possession or under the control of the exiting Litigation Trustee, <u>provided</u>, the exiting Litigation Trustee shall have the right to make and retain copies of

11

such documents, instruments, records and other writings delivered to the successor Litigation Trustee and the cost of making such copies shall be a Litigation Sub-Trust Expense to be paid by the Litigation Sub-Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Litigation Trustee's obligations and functions by his successor, provided the fees and expenses of such assistance and cooperation shall be paid to the exiting Litigation Trustee by the Litigation Sub-Trust. The exiting Litigation Trustee shall irrevocably appoint the successor Litigation Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Litigation Trustee is obligated to perform under this Section 3.9.

3.10    Litigation Trustee as "Estate Representative". The Litigation Trustee will be the exclusive trustee of the Litigation Sub-Trust Assets, for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Estate Claims, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement. The Litigation Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Estate Claims, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order. All actions, claims, rights or interests constituting or relating to Estate Claims are preserved and retained and may be enforced by the Litigation Trustee as an Estate Representative.

3.11    Books and Records.

(a)    The Litigation Trustee shall maintain, in respect of the Litigation Sub-Trust and the Claimant Trust, books and records pertinent to Estate Claims in its possession and the income of the Litigation Sub-Trust and payment of expenses, liabilities, and claims against or assumed by the Litigation Sub-Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Sub-Trust and the requirements of Article VII herein. Except as otherwise provided herein, nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Sub-Trust, or as a condition for managing any payment or distribution out of the Litigation Sub-Trust. Notwithstanding the foregoing, the Litigation Trustee shall retain such books and records, and for such periods, with respect to any Reorganized Debtor Assets as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

(b)    The Litigation Trustee may dispose some or all of the books and records maintained by the Litigation Trustee at the later of (i) such time as the Litigation Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Litigation Sub-Trust, including with respect to the Estate Claims, or (ii) upon the termination and winding up of the Litigation Sub-Trust under Article IX of this Agreement.

12

3.12 <u>Reports</u>.

(a) <u>Financial and Status Reports</u>. The fiscal year of the Litigation Sub-Trust shall be the calendar year. Within 90 days after the end of each calendar year during the term of the Litigation Sub-Trust, and within 45 days after the end of each calendar quarter during (other than the fourth quarter) the term of the Litigation Sub-Trust and as soon as practicable upon termination of the Litigation Sub-Trust, the Litigation Trustee shall make available upon request to the Oversight Board or Litigation Sub-Trust Beneficiary appearing on its records as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the Litigation Sub-Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Sub-Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Sub-Trust that, in the judgment of the Litigation Trustee, materially affects the Litigation Sub-Trust and of which notice has not previously been given to the Oversight Board or Litigation Sub-Trust Beneficiary, <u>provided</u>, that any such description shall not include any privileged or confidential information of the Litigation Trustee; and (iii) a description of the progress of liquidating the Litigation Sub-Trust Assets and making distributions to the Litigation Sub-Trust Beneficiary and any other material information relating to the Litigation Sub-Trust Assets and the administration of the Litigation Sub-Trust deemed appropriate to be disclosed by the Litigation Trustee, which description shall include a written report detailing, among other things, the litigation status of the Estate Claims transferred to the Litigation Sub-Trust, any settlements entered into by the Litigation Sub-Trust with respect to the Estate Claims, the proceeds recovered to date from Estate Claims, and the distributions made by the Litigation Sub-Trust.

(b) <u>Annual Plan and Budget</u>. If instructed by the Oversight Board, the Litigation Trustee shall prepare and submit to the Oversight Board for approval an annual plan and budget in such detail as reasonably requested.

3.13 <u>Compensation and Reimbursement; Engagement of Professionals</u>.

(a) <u>Compensation and Expenses</u>.

(i) <u>Compensation</u>. As compensation for any services rendered by the Litigation Trustee in connection with this Agreement, the Litigation Trustee shall receive initial compensation in a manner and amount to as agreed upon by the Committee. Any additional compensation or compensation of a Successor Litigation Trustee shall be determined by the Oversight Board.

(ii) <u>Expense Reimbursements</u>. All reasonable out-of-pocket expenses of the Litigation Trustee in the performance of his or her duties hereunder, shall be reimbursed as Litigation Sub-Trust Expenses paid by the Litigation Sub-Trust.

13

        (b)      <u>Professionals</u>.

              (i)      <u>Engagement of Professionals</u>.  The Litigation Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The Litigation Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

              (ii)      <u>Fees and Expenses of Professionals</u>.  The Litigation Trustee shall pay the reasonable fees and expenses of any retained professionals as Litigation Sub-Trust Expenses.

        3.14    <u>Reliance by Litigation Trustee</u>.  Except as otherwise provided herein, the Litigation Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Litigation Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Litigation Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Litigation Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Litigation Trustee in accordance therewith.  The Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning Estate Claims, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Litigation Trustee in accordance therewith.  The Litigation Sub-Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

        3.15    <u>Commingling of Litigation Sub-Trust Assets</u>.  The Litigation Trustee shall not commingle any of the Litigation Sub-Trust Assets with his or her own property or the property of any other Person.

        3.16    [<u>Delaware Trustee</u>.  The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Litigation Sub-Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Litigation Trustee; <u>provided</u>, <u>however</u>, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law.  The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law.

14

Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Litigation Sub-Trust.]

<div align="center">

**ARTICLE IV.**
**THE OVERSIGHT BOARD**

</div>

The Oversight Board shall be governed by Article IV of the Claimant Trust Agreement.

<div align="center">

**ARTICLE V.**
**TRUST INTERESTS**

</div>

5.1     Litigation Sub-Trust Interests.  On the date hereof, the Litigation Sub-Trust shall issue Trust Interests to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.  The Litigation Sub-Trust Beneficiary shall be entitled to distributions from the Litigation Sub-Trust Assets in accordance with the terms of the Plan and this Agreement.

5.2     Transferability of Trust Interests.  No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected.

5.3     Exemption from Registration.  The Parties hereto intend that the rights of the Litigation Sub-Trust Beneficiary arising under this Litigation Sub-Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Litigation Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Litigation Sub-Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Sub-Trust Beneficiary any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Litigation Trustee under this Agreement.

000811

## ARTICLE VI.
## DISTRIBUTIONS

6.1     Distributions.  The Litigation Trustee shall distribute Cash proceeds of the Estate Claims to the Claimant Trust within [30 days] of receipt of such Cash proceeds, net of any amounts that (a) are reasonably necessary to maintain the value of the Litigation Sub-Trust Assets pending their monetization or other disposition during the term of the Litigation Sub-Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Litigation Sub-Trust Expenses and any other expenses incurred by the Litigation Sub-Trust (including, but not limited to, any taxes imposed on or payable by the Litigation Trustee with respect to the Litigation Sub-Trust Assets), and (c) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Litigation Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses).

6.2     Manner of Payment or Distribution.  All distributions made by the Litigation Trustee on behalf of the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary shall be payable by the Litigation Trustee directly to the Claimant Trust, as sole Litigation Sub-Trust Beneficiary, on the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3     Delivery of Distributions.  All distributions under this Agreement to the Claimant Trust shall be made pursuant to wire instructions provided by the Claimant Trustee to the Litigation Trustee.

## ARTICLE VII.
## TAX MATTERS

7.1     [Tax Treatment and Tax Returns.  (a)It is intended for the initial transfer ofthat the Litigation Sub-Trust Assets to the Litigation Sub-Trust towill be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) as if the Debtor transferred the Litigation Sub-Trust Assets to the Litigation Sub-Trust Beneficiary and then, immediately thereafter, the Litigation Sub-Trust Beneficiary transferred the Litigation Sub-Trust Assets to the Litigation Sub-the sole beneficiary of which is the Claimant Trust.  Consistent with such treatment, (i) it is intended that the Litigation Sub-Trust willit is intended that the transfer of the Litigation Sub Trust Assets from the Claimant Trust to the Litigation Sub Trust will be treated as a non-event for federal income tax purposes (and foreign, state, and local income tax purposes where applicable).  Further, because the Claimant Trust is itself intended to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable),(ii) it is intended that the Litigation Sub-Trust Beneficiarybeneficiaries of the Claimant Trust will be treated as the grantor of the Litigation Sub-Trust and owner of the Litigation Sub-Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), and (iii) the.  The Litigation Trustee shall file allcooperate with the Claimant Trustee in connection with the preparation and filing of any federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Litigation Sub-Trust Beneficiary as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).  The Litigation Trustee also will annually send to the Litigation

16

Sub-Trust Beneficiary, in accordance with the tax laws, a separate statement setting forth such holder's interest in the Litigation Sub-Trust and share of items of income, gain, loss, deduction or credit as relevant for U.S. federal income tax purposes for such Litigation Sub-Trust Beneficiary to use in preparing their U.S. federal income tax returns.(b) The Litigation Trustee shall determine the fair market value of or information statements relating to the Litigation Sub-Trust Assets as of the Effective Date and notify the Litigation Sub-Trust Beneficiary of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes. Trust Assets.

7.2     Withholding.  The Litigation Trustee may withhold from any amount distributed from the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the Litigation Sub-Trust Beneficiary.  As a condition to receiving any distribution from the Litigation Sub-Trust, the Litigation Trustee may require that the Litigation Sub-Trust Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Litigation Trustee to comply with applicable tax reporting and withholding laws.[2]

## ARTICLE VIII.
## STANDARD OF CARE AND INDEMNIFICATION

8.1     Standard of Care.  None of the Litigation Trustee, acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan, the Oversight Board, or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Litigation Sub-Trust or to any Person (including the Litigation Sub-Trust Beneficiary and Claimant Trust Beneficiaries) in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the acts or omissions of any such Litigation Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence.  The employees, agents and professionals retained by the Litigation Sub-Trust, the Litigation Trustee, or Oversight Board shall not be personally liable to the Litigation Sub-Trust or any other Person in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence.  None of the Litigation Trustee, Oversight Board, or any Member shall be personally liable to the Litigation Sub-Trust or to any Person for the acts or omissions of any employee, agent or professional of the Litigation Sub-Trust or Litigation Trustee, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Litigation Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Litigation Sub-Trust.

8.2     Indemnification.  The Litigation Trustee (including each former Litigation Trustee), Oversight Board, and all past and present Members (collectively, the "Indemnified Parties") shall be indemnified by the Litigation Sub-Trust against and held harmless by the

---

[2] NTD: Subject to review by tax counsel.

Litigation Sub-Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Litigation Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence.  If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Litigation Sub-Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Litigation Trustee and/or Oversight Board, as applicable; provided, however, that the failure of an Indemnified Party to promptly notify the Litigation Trustee and/or Oversight Board of an indemnification obligation will not excuse the Litigation Sub-Trust from indemnifying the Indemnified Party unless such delay has caused the Litigation Sub-Trust material harm.  The Litigation Sub-Trust shall periodically advance or otherwise reimburse on demand the Indemnified Party's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith as a Litigation Sub-Trust Expense, but the Indemnified Party shall be required to repay promptly to the Litigation Sub-Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Litigation Sub-Trust with respect to which such expenses were paid.  The Litigation Sub-Trust shall indemnify and hold harmless the employees, agents and professionals of the Litigation Sub-Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.  For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Litigation Trustee or Member or the estate of any decedent Litigation Trustee or Member.  The indemnification provided hereby shall be a Litigation Sub-Trust Expense.

8.3     To the extent applicable, the provisions and protections set forth in Article IX of the Plan will apply to the Litigation Sub-Trust, the Litigation Trustee, Oversight Board, and the Members.

**ARTICLE IX.**
**TERMINATION**

9.1     [Duration.  The Litigation Trustee, the Litigation Sub-Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as the Litigation Trustee determines that the Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate, and all Distributions required to be made by the Litigation Trustee to the Litigation Sub-Trust Beneficiary under the Plan and this Agreement have been made, but in no event shall the Litigation Sub-Trust be dissolved later than [three years] from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension ([not to exceed two years, together with any prior extensions, without a

18

favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Litigation Sub-Trust as a liquidating trust for federal income tax purposes]) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Sub-Trust Assets; provided, however, that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Litigation Sub-Trust Assets, by the Bankruptcy Court within six months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years [without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Litigation Sub-Trust as a liquidating trust for federal income tax purposes].

9.2     <u>Continuance of the Litigation Trustee for Winding Up</u>.  After dissolution of the Litigation Sub-Trust and for purpose of liquidating and winding up the affairs of the Litigation Sub-Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Litigation Sub-Trust Assets, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Litigation Sub-Trust, until such time as the winding up of the Litigation Sub-Trust is completed.  Upon the dissolution of the Litigation Sub-Trust and completion of the winding up of the assets, liabilities and affairs of the Litigation Sub-Trust pursuant to the Delaware Statutory Trust Act, the Litigation Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Litigation Sub-Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "<u>Termination Date</u>").  Subject in all respects to 3.11, upon the Termination date, the Litigation Trustee shall retain for a period of two (2) years, as a Litigation Sub-Trust Expense, the books, records, and certificated and other documents and files that have been delivered to or created by the Litigation Trustee.  Subject in all respects to Section 3.11, at the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.3     <u>Termination of Duties</u>.  Except as otherwise specifically provided herein, upon the Termination Date of the Litigation Sub-Trust, the Litigation Trustee, the Oversight Board, and its Members shall have no further duties or obligations hereunder.

<div align="center">

**ARTICLE X.**
**AMENDMENTS AND WAIVER**

</div>

The Litigation Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Litigation Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; <u>provided</u> that the Litigation Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

19

## ARTICLE XI.
## MISCELLANEOUS

11.1    _Trust Irrevocable_.  Except as set forth in this Agreement, establishment of the Litigation Sub-Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Litigation Sub-Trust Beneficiary.

11.2    _Litigation Sub-Trust Beneficiary has No Legal Title to Litigation Sub-Trust Assets_.  The Litigation Sub-Trust Beneficiary shall have no legal title to any part of the Litigation Sub-Trust Assets.

11.3    _Agreement for Benefit of Parties Only_.  Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Litigation Trustee, Oversight Board, and the Litigation Sub-Trust Beneficiary any legal or equitable right, remedy or claim under or in respect of this Agreement.  The Litigation Sub-Trust Assets shall be held for the sole and exclusive benefit of the Litigation Sub-Trust Beneficiary.

11.4    _Notices_.  All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

(a)    If to the Litigation Trustee:

Marc S. Kirschner
c/o Goldin Associates LLC, a Teneo Company
350 Fifth Avenue
New York, New York 10118

With a copy to:

**[insert contact for counsel to the Litigation Trustee].**

(b)    If to the Claimant Trustee:

Claimant Trustee
c/o **[insert contact info for Claimant Trustee]**

With a copy to:

[insert contact for counsel to the Claimant Trustee].

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Attn:  Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
        Ira Kharasch (ikharasch@pszjlaw.com)
        Gregory Demo (gdemo@pszjlaw.com)

20

000816

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.4 to the entity to be charged with knowledge of such change.

11.5     Severability.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.6     Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.7     Binding Effect, etc.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Litigation Sub-Trust, the Litigation Trustee, and the Litigation Sub-Trust Beneficiary, and their respective successors and assigns. Any notice, direction, consent, waiver or other instrument or action by any Litigation Sub-Trust Beneficiary shall bind its successors and assigns.

11.8     Headings; References.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.9     Governing Law.  This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.10    Consent to Jurisdiction.  Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan.

11.11    Transferee Liabilities.  The Litigation Sub-Trust shall have no liability for, and the Litigation Sub-Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement. In no event shall the Litigation Trustee or the Litigation Sub-Trust Beneficiary have any personal liability for such claims. If any liability shall be asserted against the Litigation Sub-Trust or the Litigation Trustee as the transferee of the Litigation Sub-Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Litigation Trustee may use such part of the Litigation Sub-Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Litigation Trustee as a Litigation Sub-Trust Expense.

[Remainder of Page Intentionally Blank]

21

IN WITNESS HEREOF, the parties hereto have caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Claimant Trustee

By: _____
James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

Litigation Trustee

By: _____
Marc S. Kirschner, not individually but solely in his capacity as the Litigation Trustee

22

000818

Document comparison by Workshare 9.5 on Monday, January 04, 2021 6:46:22 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41525/2 |
| Description | DOCS_NY-#41525-v2-Highland_-_Litigation_Trust_Agreement |
| Document 2 ID | PowerDocs://DOCS_NY/41525/8 |
| Description | DOCS_NY-#41525-v8-Highland_-_Litigation_Trust_Agreement |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 49 |
| Deletions | 59 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 116 |

| | |
|---|---|
| K&L GATES LLP<br>Artoush Varshosaz (TX Bar No. 24066234)<br>1717 Main Street, Suite 2800<br>Dallas, TX 75201<br>Tel: (214) 939-5659<br>artoush.varshosaz@klgates.com<br><br>Stephen G. Topetzes (*pro hac vice*)<br>1601 K Street, NW<br>Washington, DC 20006-1600<br>Tel: (202) 778-9328<br>stephen.topetzes@klgates.com<br><br>A. Lee Hogewood, III (*pro hac vice*)<br>4350 Lassiter at North Hills Ave., Suite 300<br>Raleigh, NC 27609<br>Tel: (919) 743-7306<br>Lee.hogewood@klgates.com<br><br>*Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Highland Funds I and its series Highland Healthcare Opportunities Fund, Highland/iBoxx Senior Loan ETF, Highland Opportunistic Credit Fund, and Highland Merger Arbitrage Fund, Highland Funds II and its series Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Fixed Income Fund, and Highland Total Return Fund, NexPoint Capital, Inc., NexPoint Strategic Opportunities Fund, Highland Income Fund, Highland Global Allocation Fund, and NexPoint Real Estate Strategies Fund, and NexPoint Latin America Opportunities Fund* | Davor Rukavina, Esq.<br>Texas Bar No. 24030781<br>Julian P. Vasek, Esq.<br>Texas Bar No. 24070790<br>MUNSCH HARDT KOPF & HARR, P.C.<br>3800 Ross Tower<br>500 N. Akard Street<br>Dallas, Texas 75202-2790<br>Telephone: (214) 855-7500<br>Facsimile: (214) 978-4375<br><br>*Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., Highland Funds I and its series Highland Healthcare Opportunities Fund, Highland/iBoxx Senior Loan ETF, Highland Opportunistic Credit Fund, and Highland Merger Arbitrage Fund, Highland Funds II and its series Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Fixed Income Fund, and Highland Total Return Fund, NexPoint Capital, Inc., NexPoint Strategic Opportunities Fund, Highland Income Fund, Highland Global Allocation Fund, and NexPoint Real Estate Strategies Fund, and NexPoint Latin America Opportunities Fund* |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

## OBJECTION TO CONFIRMATION OF FIFTH AMENDED PLAN OF
## REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.

Highland Capital Management Fund Advisors, L.P., and NexPoint Advisors, L.P. (each, an "**Advisor**," and collectively, the "**Advisors**") Highland Funds I and its series Highland Healthcare Opportunities Fund, Highland/iBoxx Senior Loan ETF, Highland Opportunistic Credit Fund, and Highland Merger Arbitrage Fund, Highland Funds II and its series Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Fixed Income Fund, and Highland Total Return Fund, NexPoint Capital, Inc., NexPoint Strategic Opportunities Fund, Highland Income Fund, Highland Global Allocation Fund, NexPoint Real Estate Strategies Fund, and NexPoint Latin America Opportunities Fund (each, a "**Fund**," and collectively, the "**Funds**," and together with the Advisors, the "**Funds and Advisors**" or "**Objectors**"), by and through their undersigned counsel, hereby submit this objection (the "**Objection**") to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. [Dkt. No. 1472], together with that certain Plan Supplement [Dkt. No. 1648] filed December 30, 2020 (the "**Fifth Amended Plan**").[1] In support of the Objection, the Funds[2] and Advisors respectfully submit to the Court as follows:

## SUMMARY OF OBJECTION

The Debtor owes strict statutory and contractual fiduciary obligations to manage the billions of dollars of other peoples' money that it manages. No actual or hypothetical conflict of interest is allowed. Yet, the Fifth Amended Plan, by purporting to assume various agreements pursuant to which the Debtor manages portfolios of assets, places the interests of the Debtor's creditors ahead of the interests of the beneficial interest holders in those portfolios,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2] The Funds are investment companies and a business development company registered under the Investment Company Act of 1940 as open-end or "mutual" funds, closed end funds or a business development company. None of the Funds are private or hedge funds.

000821

thereby representing a clear conflict of interest and breach of fiduciary duty in violation of the Advisers Act (defined below) and the 1940 Act (defined below).

This is because the Plan provides for the assumption of numerous management agreements in connection with, among other investments, interests in collateralized loan obligations ("**CLOs**") owned in part by the Funds and/or Advisors, together with other investors. In some cases, either the Funds, the Advisors or these entities in conjunction with other objecting creditor(s) own or manage a majority of the remaining beneficial interests in such CLOs. To be clear, the CLO -- not the Funds nor the Advisors nor the Debtor -- is the issuer of these interests. Nevertheless, it is the Funds and Advisors who hold the beneficial and economic interests and who, pursuant to the underlying agreements, in many instances have the ability to control who the servicer or manager of the portfolios is. However, the Plan reveals that the Debtor intends to dismiss its investment management employees by the end of January 2021 and to employ a subagent to perform its current portfolio manager/servicer role. The Debtor intends to effectively wind-down and liquidate the CLOs' assets within two years—an arbitrary proposition having nothing to do with what is in the best interests of the CLOs. The Debtor also intends to strip the Funds and the Advisors of their contractual and statutory rights, and to improperly insulate itself from potential future liabilities that it may incur on account of its portfolio management.

The Plan cannot be confirmed so long as it provides for the assumption of these agreements. First, these agreements cannot be assigned under the Advisers Act or the 1940 Act, meaning that they cannot be assumed pursuant to section 365(c) of the Bankruptcy Code. Second, these agreements cannot be assumed under section 365(b) of the Bankruptcy Code because the Debtor cannot adequately assure its future performance under the agreements.

000822

Third, these agreements cannot be assumed if the Plan purports to change their provisions or relieve the Debtor from its fiduciary obligations and resulting potential liabilities. Fourth, the Plan is not feasible and is illusory so long as it depends on future income from these non-assumable agreements. Fifth, the Plan fails to comply with applicable law by seeking to relieve the Debtor of the strict duties imposed on it by the Advisers Act and 1940 Act. Indeed, the Plan is an invitation for future litigation against the Debtor for future breaches by the Debtor of its contractual obligations and violations by the Debtor of federal law.

The Plan is not merely a disagreement between the Debtor, on the one hand, and the Funds and Advisers, on the other hand, as to how to manage the CLOs. The Plan instead represents an attempt by the Debtor to strip beneficial interest holders of their contractual and statutory rights, to improperly insulate itself against its future actions and liabilities, to avoid the dictates of the Advisers Act, and to use assets that it manages—assets that do not belong to the Debtor—to benefit the Debtor's creditors at the expense of the actual owners of those assets. It is one thing for the Debtor to liquidate and to seek to repay its creditors, but it is another thing entirely for the Debtor to do this on the backs, and at the expense, of those investors whose interests the Debtor is charged with serving first.

For these and other reasons argued below, the Objectors object to the confirmation of the Plan.

The purported contract assumption is also illusory in that the Debtor's plan is premised upon the liquidation of assets in which the Debtor has no interest and which a majority of the beneficial owners has expressed, and continue to express, a desire for a different portfolio management strategy than the one the Debtor intends to continue to employ. The contracts the Debtor proposes to assume contain provisions requiring the maximization of the return to or

000823

preservation of the value of the collateral for the preference shareholders; these parties prefer that the assets not be liquidated, but maximized or preserved. Moreover, the Advisers Act[3] requires the Debtor to comply with the portfolio management contracts for the protection of the investors in the Funds, CLOs and other products. The Debtor's purported assumption of these agreements, while other provisions of the Fifth Amended Plan make clear key provisions of the assumed contracts will be ignored and rejected in this context, is a similar form of "cherry picking" that section 365 does not countenance.[4]

## BACKGROUND

### A.    *General Background on Funds and Advisors*

1.    Each Advisor is registered with the U.S. Securities and Exchange Commission ("**SEC**") as an investment adviser under the Investment Advisers Act of 1940, as amended, 15 U.S.C. § 80b-1 *et. seq.* (the "**Advisers Act**").

2.    Each of the Funds is a registered investment company or business development company under the Investment Company Act of 1940, as amended, 15 U.S.C. § 80a-1, *et. seq.* (the "**1940 Act**") and is advised by one of the Advisors.

3.    As an investment company or business development company, each Fund is managed by an independent board of trustees subject to 1940 Act requirements. That board determines and contracts with one of the Advisors for each Fund. As is typical for nearly all

---

[3] The Advisers Act and the 1940 Act (defined in numbered paragraph 2 below) are two separate acts, both adopted in 1940, and provide the essential statutory and regulatory structure for the Debtor's business, as well as the Advisors and the Funds, to operate legally and transparently for the benefit of the public.

[4] The Funds and Advisors are aware that the Court has heard and rejected a form of this argument in a different context. By raising the point here, we mean no disrespect to the Court or the prior ruling. However, we contend that the issue is appropriately joined in connection with confirmation of a plan containing proposed contract assumptions that simply are not contract assumptions, fairly construed. Moreover, at the time of the Motion that was denied, only the Funds and Advisors took a position on the issues; now, other parties, on information and belief, will object or have objected on a similar basis.

000824

investment companies, the Funds do not have employees. Instead, pursuant to the 1940 Act, each Fund's board oversees the Advisor and the Advisor, acting pursuant to the advisory agreements, provides the services necessary to the Fund's operations.[5] The Funds are each managed by one of the two Advisors. The Advisors have some employees, but they also rely heavily on the Debtor to provide a variety of services. Further, certain individuals employed or affiliated with the Debtor also hold roles for the Advisors and/or the Funds, and some of these roles are fiduciary in nature (the "**Fiduciaries**"). The Fiduciaries are privy to confidential commercial information about the Funds and Advisors, including data relating to the Funds' investment holdings and investment strategies.

## B. *Shared Services and Payroll Reimbursement Agreements with the Debtor*

4. Each Advisor is party with the Debtor to a shared services agreement. Specifically, NexPoint Advisors, L.P. ("**NexPoint**") and the Debtor are parties to an Amended and Restated Shared Services Agreement dated January 1, 2018 (as amended, the "**NexPoint SSA**"), and Highland Capital Management Fund Advisors, L.P. ("**HCMFA**") and the Debtor are parties to a Second Amended and Restated Shared Services Agreement dated February 8, 2013 (as amended, the "**HCMFA SSA**," and collectively with the NexPoint SSA, the "**Shared Services Agreements**").[6]

5. Under the Shared Services Agreements, the Debtor provides a variety of services, including operational, financial and accounting, human resources, information technology, legal, tax, and compliance services, to the Advisors. As part of its provision of

---

[5] Each of the Funds' respective boards meets quarterly and, consistent with statutory requirements, each is advised by independent counsel.

[6] Copies of the Shared Services Agreements and the Payroll Reimbursement Agreements (as defined below) are attached to the proofs of claim filed by the Advisors at Claim Nos. 95, 104, 108 and 119.

000825

services, the Debtor maintains books and records (the "**Books and Records**") on behalf of the Advisors.

6. Under the HCMFA SSA, the costs of the Debtor's services are allocated on a percentage of use basis.  The Debtor submits quarterly expense statements to HCMFA to reconcile amounts due to the Debtor.  In addition, with respect to certain taxes related to the Shared Services, the Debtor collects those taxes from HCMFA on the same basis as with the Debtor's other customers.  To the extent of a related tax refund, the Debtor is obligated to submit the refund to HCMFA.

7. Under the NexPoint SSA, NexPoint pays the Debtor a fixed monthly fee for the provision of services.

8. The Advisors and the Debtor are also parties to separate payroll reimbursement agreements (as amended, the "**Payroll Reimbursement Agreements**").  The Payroll Reimbursement Agreements address the splitting of costs for certain employees that are "dual employees" of the Debtor and an Advisor and who provide advice to funds, such as the Funds, advised by the Advisors.  The Payroll Reimbursement Agreements provide for the subject Advisor to reimburse the Debtor at a set cost.

9. The Advisors also participate in the Debtor's self-insured healthcare plan (the "**Self-Insured Plan**"), which provides employee healthcare coverage.  Depending on the contributions made and the claims submitted to the Self-Insured Plan at any given time, an Advisor may be owed money by, or owe additional contributions to, the Self-Insured Plan.

10. The Plan proposes to reject those executory contracts [Fifth Am. Plan, Dkt. No. 1472 at p. 37] that are not otherwise listed for assumption in a plan supplement.  The Debtor has filed its Plan Supplement listing executory contracts to be assumed [Dkt. No. 1648], which

000826

Plan Supplement does not include the foregoing executory contracts. Accordingly, it appears that the Plan proposes to reject the Shared Services Agreements, the Payroll Reimbursement Agreements, and the Self-Insured Plan. The Advisors will therefore have potentially sizable rejection damages claims, on account of which they are preparing to file corresponding proofs of claim.

### C. *The CLOs*

11. The Funds also have economic interests in certain collateralized loan obligations (the "**CLOs**") (the Fifth Amended Plan refers to the CLOs as "Issuers"), for which the Debtor serves as portfolio manager.

12. The CLOs are Aberdeen Loan Funding, Ltd., Brentwood CLO, Ltd., Eastland CLO, Ltd., Gleneagles CLO, Ltd., Grayson CLO, Ltd., Greenbriar CLO, Ltd., Jasper CLO Ltd., Red River CLO, Ltd., Rockwall CDO, Ltd., Rockwall CDO II Ltd., Southfork CLO, Ltd., Stratford CLO Ltd., Loan Funding VII, LLC,[7] and Westchester CLO, Ltd.

13. The CLOs are securitization vehicles that were formed to acquire and hold pools of debt obligations. They also issued various tranches of notes and preferred shares, which are intended to be repaid from proceeds of the subject CLO's pool of debt obligations. The notes issued by the CLOs are paid according to a contractual priority of payments, or waterfall, with the value remaining in the CLO after the notes are fully paid flowing to the holders of the preferred shares.

14. The CLOs were created many years ago. Most of the CLOs have, at this point, paid off all the tranches of notes or all but the last tranche. Accordingly, most of the economic value remaining in the CLOs, and all of the upside, belongs to the holders of the preferred

---

[7] The portfolio management agreements with Loan Funding VII, LLC is not proposed to be assumed.

000827

shares.

15.     Further, such ownerships represent in many cases the total remaining outstanding interests in such CLOs, the noteholders otherwise having been paid. In others, the remaining noteholders represent a small percentage only of remaining interests. Thus, the economic ownership of the registered investment companies, business development company, and CLO Holdco represent a majority of the investors in the CLOs as follows:

        a. CLOs in which NexPoint or HCMFA manage owners of a majority of the preference shares: Stratford CLO, Ltd. 69.05%, Grayson CLO, Ltd. 60.47% and Greenbriar CLO, Ltd. 53.44%.

        b. CLOs in which a combination of NexPoint and HCMFA managed funds and CLO Holdco hold all, a supermajority or majority of preference shares: Liberty CLO, Ltd. 70.43%, Stratford CLO, Ltd. 69.05%*[8], Aberdeen Loan Funding, Ltd. 64.58%, Grayson CLO, Ltd. 61.65%*, Westchester CLO, Ltd. 58.13%, Rockwall CDO, Ltd. 55.75%, Brentwood CLO, Ltd. 55.74%, Greenbriar CLO, Ltd. 53.44%*

16.     The issuer of each CLO has separately contracted with the Debtor for the Debtor to serve as the CLO's portfolio manager or servicer (the "**Servicing Agreements**").[9]  In this capacity, the Debtor is responsible for, among other things, making decisions to buy or sell the CLOs' assets in accordance with the indenture and its obligations under the Servicing Agreements. Although the Servicing Agreements vary, they generally impose a duty on the

---

[8] CLOs marked with an asterisk (*) appear in the foregoing list as well.

[9] The title given to the Debtor by the CLOs varies from CLO to CLO based on the relevant agreements, but the Debtor has the same general rights and obligations for each CLO. In this Objection, the Funds and Advisors have used the term "portfolio manager" when referring to the Debtor's role for each CLO regardless of the precise title in the underlying documents.

000828

Debtor when acting as portfolio manager to maximize the value of the CLOs' assets for the benefit of the CLOs' noteholders and preferred shareholders. In particular, the Servicing Agreements contain language providing for the maximization or preservation of value for the benefit of the preference shares as shown in the following examples:

> In performing its duties hereunder, the Portfolio Manager shall seek to maximize the value of the Collateral for the benefit of the Noteholders and the Holders of the Preference Shares taking into account the investment criteria and limitations set forth herein and in the Indenture and the Portfolio Manager shall use reasonable efforts to manage the Collateral in such a way that will (i) permit a timely performance of all payment obligations by the Issuer under the Indenture and (ii) subject to such objective, maximize the return to the Holders of the Preference Shares; provided, that the Portfolio Manager shall not be responsible if such objectives are not achieved so long as the Portfolio Manager performs its duties under this Agreement in the manner provided for herein, and provided, further, that there shall be no recourse to the Portfolio Manager with respect to the Notes or the Preference Shares.

Liberty Portfolio Management Agreement, Sec. 2(b) containing language above.

> In performing its duties hereunder, the Servicer shall seek to preserve the value of the Collateral for the benefit of the Holders of the Securities taking into account the Collateral criteria and limitations set forth herein and in the Indenture and the Servicer shall use reasonable efforts to select and service the Collateral in such a way that will permit a timely performance of all payment obligations by the Issuer under the Indenture; provided, that the Servicer shall not be responsible if such objectives are not achieved so long as the Servicer performs its duties under this Agreement in the manner provided for herein, and provided, further, that there shall be no recourse to the Servicer with respect to the Notes or the Preference Shares. The Servicer and the Issuer shall take such other action, and furnish such certificates, opinions and other documents, as may be reasonably requested by the other party hereto in order to effectuate the purposes of this Agreement and to facilitate compliance with applicable laws and regulations and the terms of this Agreement.

Aberdeen Servicing Agreement, Sec. 2(b).

000829

17.      Moreover, each of the Servicing Agreements contain express language that the portfolio manager's obligations thereunder are for the benefit of and "shall be enforceable at the instance of the Issuer, the Trustee, on behalf of the Noteholders, or the requisite percentage of Noteholders or Holders of Preference Shares, as applicable, as provided in the Indenture of the Preference Share Paying Agency Agreement, as applicable." Servicing Agreement Sec. 9.

18.      The Servicing Agreements also generally allow the holders of preference shares to remove the portfolio manager for cause, while their affirmative consent is required to an assignment of the agreements. Cause includes the anticipated "ipso facto" provisions related to insolvency and bankruptcy, but cause is not so limited and includes material breach of the Servicing Agreement which would clearly include the failure to maximize value or the failure to preserve collateral. Servicing Agreement, Sec. 14.  However, certain Servicing Agreements provide for a certain percentage of holders of preference shares to remove the portfolio manager without cause. *See, e.g.*, Gleneagles CLO , Ltd., Portfolio Management Agreement, Sec. 12(c).

### E.      *The Fifth Amended Plan and Disclosure Statement*

19.      On November 24, 2020, the Debtor filed the Fifth Amended Plan and the Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. [Dkt. No. 1473] (the "**Disclosure Statement**").

000830

20.      The Fifth Amended Plan provides for the transfer of the majority of the Debtor's assets to a Claimant Trust that will be established for the benefit of the Claimant Trust Beneficiaries. The Debtor's rights to manage investment vehicles managed by the Debtor pursuant to executory contracts that are assumed pursuant to the Fifth Amended Plan, defined as the "Managed Funds," are to remain with the Reorganized Debtor, which, in turn, is to be managed by New GP LLC, a wholly-owned subsidiary of the Claimant Trust. The Disclosure Statement states that "[t]his structure will allow for continuity in the Managed Funds and an orderly and efficient monetization of the Debtor's Assets." Dkt. No. 1473 at 11. Ultimately, however, the Claimant Trust and the Reorganized Debtor will "sell, liquidate, or otherwise monetize all Claimant Trust Assets and Reorganized Debtor Assets." *Id.* More specifically, the Reorganized Debtor will manage the wind down of the Managed Funds in addition to any other remaining Assets. Moreover, the Financial Projections attached as Exhibit C to the Disclosure Statement make clear that, assuming confirmation of the Plan in its current form, the Debtor intends to liquidate its remaining assets and the assets within the Managed Funds over the next two years, concluding in December 2022.

21.      The Disclosure Statement further states that the Debtor does not anticipate either the Reorganized Debtor or the Claimant Trust assuming or assuming and assigning the contracts between the Debtor and certain of its Related Entities[10] pursuant to which the Debtor provides shared services and sub-advisory services relating to such Related Entities. Dkt. No. 1473 at 42. Accordingly, it appears that the Debtor's intent is to reject the Shared Services Agreements, the Payroll Reimbursement Agreements, and the Self-Insured Plan.

---

[10] Footnote 10 to the Disclosure Statement clarifies that the Debtor does not consider any of the Issuers to be a Related Entity.

000831

22.     With respect to the Shared Services Agreements, the Disclosure Statement provides that the cost of staffing to fulfil the agreements has historically resulted in a net loss to the Debtor and is not beneficial to the estate.  The Disclosure Statement further states that the agreements contain anti-assignment provisions which it believes to be enforceable under section 365(c) of the Bankruptcy Code, and moreover, are terminable at will by either party.  In light of these considerations, the Debtor apparently does not believe that the agreements may be assumed or assumed and assigned, and even if they could, there would not be any corresponding benefit to the estate.  Notwithstanding the foregoing, the Disclosure Statement indicates that the Debtor is still assessing whether to assume and assign the agreements with a Related Entity. Dkt. No. 1473 at 42.

23.     The Disclosure Statement also discusses the Debtor's role as portfolio manager for the CLOs (which the Disclosure Statement defines as "Issuers") in Article II(U) (pg. 32). After explaining the Debtor's role and noting some proofs of claim filed by the CLOs, the Disclosure Statement states as follows:

> The Issuers have taken the position that the rejection of the Portfolio Management Agreements (including any ancillary documents) would result in material rejection damages and have encouraged the Debtor to assume such agreements. Nonetheless, the Issuers and the Debtor are working in good faith to address any outstanding issues regarding such assumption. The Portfolio Management Agreements may be assumed either pursuant to the Plan or by separate motion filed with the Bankruptcy Court.

> The Debtor is still assessing its options with respect to the Portfolio Management Agreements, including whether to assume the Portfolio Management Agreements.

24.     The Debtor's Supplement to the Plan, filed on December 30, 2020 at Dkt. No. 1648, indicates that the Debtor intends to assume the Servicing Agreements with all of the CLOs except Loan Funding VII, LLC.  *See* Dkt. No. 1648, Sched. A.

000832

## OBJECTION

**A.** *The Debtor Cannot Assume the Servicing Agreements Pursuant to Section 365(c)(1) of the Bankruptcy Code*

25. The Objectors object to the assumption of the Servicing Agreements for the fundamental reason that the Debtor will not manage the CLOs' assets appropriately in order to maximize value for the CLOs and the Objectors, but will instead breach its fiduciary duties by managing a winding-down those CLOs and assets in order to provide a recovery for its creditors, in what is an obvious and irreconcilable conflict of interest.

26. As explained below, the Debtor and the Servicing Agreements which it seeks to assume are subject to the Advisers Act. As the Supreme Court has repeatedly held, it is a fundamental purpose of the Advisers Act to impose strict fiduciary duties on investment advisors and to "eliminate conflicts of interest between the investment adviser and the clients." *SEC v. Capital Gains Research Bureau Inc.*, 375 U.S. 180, 191 (1963). This extends to any "conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which was not disinterested." *Id*. "[T]he Act's legislative history leaves no doubt that Congress intended to impose enforceable fiduciary obligations." *Transamerica Mort. Advisors v. Lewis*, 444 U.S. 11, 17 (1979).

27. Under the Plan, the Debtor would be owned by its creditors. The Debtor and the Claimant Trust would be managed by a person holding fiduciary duties to the Debtor's creditors. The Debtor would manage and presumably wind-down and liquidate the assets of the CLOs within a span of two years, not for the benefit of the CLOs and their beneficial interest holders, but for the benefit of the Debtor's creditors. And, it would do this without employees or resources, or by impermissibly delegating its duties to yet a different party—something that it is not permitted to do under applicable law and the governing contracts. In sum, the Debtor

000833

would manage the CLOs and their assets for the benefit of the Debtor's creditors, which it is fundamentally impossible to do without simultaneously violating the Debtor's strict fiduciary duties to others and which represents a clear conflict of interest under the Advisers Act.

28. This inescapable conclusion is precisely why the Bankruptcy Code prohibits an assumption of personal service contracts like the Servicing Agreements. The Bankruptcy Code provides that:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> (1) (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

11 U.S.C. § 365(c)(1).

29. The first question is whether "applicable law" excuses the counterparties to the Servicing Agreements from accepting performance from the Debtor. In this respect, both the Advisers Act and the 1940 Act represent "applicable law" that provides for precisely that.

30. The Advisers Act governs "investment advisors." The Advisers Act defines an investment advisor as:

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2(a)(11).

31. There is no question that the Debtor receives compensation under the Servicing Agreements. The only question is whether, under the Servicing Agreements, and in connection

000834

with managing the investments and securities of the CLOs, the Debtor satisfies the remaining

element(s). Case law confirms that, in providing investment services and investment

management under the Servicing Agreements, is acting as an "investment advisor" under the

Advisers Act. The Second Circuit authoritatively considered and decided the issue of whether

a portfolio manager is an investment advisor in *Abrahamson v. Fleschner*, 568 F.2d 862 (2d

Cir. 1977). The case concerned general partners who managed various investments on behalf

of limited partners. *See id*. at 866. Regarding whether the general partners were investment

advisors on account of managing the investments, the court concluded that they were "on two

independent grounds":

> First, the monthly reports which contained the alleged fraudulent representations
> were reports which provided investment advice to the limited partners. The
> general partners' compensation depended in part upon the firm's net profits and
> capital gains. These in turn were affected by the size of the total funds under
> their control. The monthly reports were an integral part of the general partners'
> business of managing the limited partners' funds. In deciding whether or not to
> withdraw their funds from the pool, the limited partners necessarily relied
> heavily on the reports they received from the general partners.
>
> Second, wholly aside from the monthly reports, we believe that the general
> partners as persons who managed the funds of others for compensation are
> 'investment advisers' within the meaning of the statute. This is borne out by the
> plain language of Section 202(a)(11) and its related provisions, by evidence of
> legislative intent and by the broad remedial purposes of the Act.

*Id*. at 870. Thus, by virtue of managing the underlying investments and related activities, the

general partners were providing investment advice and were therefore investment advisors

subject to the Advisers Act.

32.     The court in *SEC v. Smith*, 1995 U.S. Dist. LEXIS 22352 (E.D. Mich. 1995),

considered a similar issue. In that case, the SEC sought summary judgment that the defendant

was an investment adviser under the Advisers Act. The defendant argued that he was not an

investment adviser merely by virtue of managing a portfolio of accounts on behalf of third

16

parties. *See id*. at \*12-\*13. Specifically, the defendant argued that he was not giving investment advice, but that he was instead "a professional trustee who exercises sole discretionary control over trust investments. . . I am the trustee. I have absolute full power and authority to make all buy, hold and sell decisions. And, therefore, I am the one that receives information and research and I make the decisions." *Id*. at \*13. In other words, because he had sole discretion and control over how to manage the invested assets, he was not giving "advice" within the meaning of the Advisers Act. The court rejected this argument: "Smith is clearly an investment advisor under the Advisers Act." *Id*. at \*15.

33.     The court in *SEC v. Saltzman*, 127 F. Supp. 2d 660 (E.D. Pa. 2000) reached the same conclusion with respect to a portfolio manager:

> Saltzman maintained exclusive control over the investment portfolio, brokerage accounts, and bank account of Saltzman Partners, L.P. He made all investment decisions for the portfolio. As the Act intended to embrace those who wield power over their clients' money, as Saltzman did over the investments of the limited partners, the facts alleged qualify Saltzman as an investment adviser.

*Id*. at 669. Therefore, the Debtor, by virtue of managing the CLO assets, and even though it has the sole control and authority over that management, is providing investment advice and is therefore an investment advisor with respect to the Servicing Agreement.

34.     More particularly, the Servicing Agreements, because they provide for investment advice, are "Investment Advisory Contracts" under the Advisers Act. This is further confirmed by the language of the Advisers Act with respect to the definition of Investment Advisory Contract:

> any contract or agreement whereby a person agrees to act as investment adviser to <u>or to manage any investment</u> or trading account <u>of another person</u> other than an investment company registered under title I of this Act.

15 U.S.C. § 80b-5(d) (emphasis added). Managing the investments of others is of course

000836

precisely what the Debtor does under the Servicing Agreements.

35.     There should therefore be no question that the Servicing Agreements are "investment advisory contracts" subject to the Advisers Act.  Should there be any doubt, the Servicing Agreements in multiple places reference the Advisers Act and subject the agreements to the requirements of the Advisers Act.

36.     The Advisers Act prohibits an assignment of an investment advisory contract without consent.  The Advisers Act defines "assignment" as including "any direct or indirect transfer or hypothecation of an investment advisory contract." 15 U.S.C. § 80b-2(a)(1).  With respect to an assignment, the Advisers Act provides as follows:

> No investment adviser registered or required to be registered with the Commission shall enter into, extend, or renew any investment advisory contract, or in any way perform any investment advisory contract entered into, extended, or renewed on or after the effective date of this title, if such contract—
>
> (2) fails to provide, in substance, that no assignment of such contract shall be made by the investment adviser without the consent of the other party to the contract.

15 U.S.C. § 80b-5(a)(2).

37.     Each of the Servicing Agreements contain substantially similar provisions related to any assignment:

> any assignment of this Agreement to any Person, in whole or in part, by the Servicer shall be deemed null and void unless (i) such assignment is consented to in writing by the Issuer, a Super Majority of the Controlling Class of Notes (excluding any Notes that are not Voting Notes) and a Majority of the Voting Preference Shares.

38.     Accordingly, the Advisers Act represents "applicable law" under section 365(c)(1) that excuses the counterparty to an investment advisory contract from accepting performance from an assignee.  As such, because the agreement cannot be assigned, it cannot

000837

be assumed by the Debtor without consent.

39.     It is true that courts in this District construe section 365(c)(1) such that, where the applicable law is merely a general prohibition on assignment, the section does not prevent an assumption. *See, e.g., In re Lil' Things*, 220 B.R. 583, 590-91 (Bankr. N.D. Tex. 1998). Here, however, the Advisers Act is not a general law that would prohibit an assignment; it is a very specific law, applicable to a very narrow set of persons, and one which prohibits only the assignment of an investment advisory agreement.

40.     Even so, this District recognizes that section 365(c)(1) becomes paramount "where the identity of the party rendering performance under the contract is material to the contract, and the contract is non-delegable under applicable non-bankruptcy law." *Id*. at 591. This is certainly true where, as here, a party has contracted with someone to manage that party's property and investments: that is a fiduciary relationship of the highest trust where the identity of the person providing the services is absolutely paramount. The Fifth Circuit recognized this fundamental principle the highly analogous situation of an attorney retention agreement: the contract was not assumable under otherwise applicable law because the contract was a highly personal one involving elements of trust, legal, and ethical considerations. *See In re Tonry*, 724 F.2d 467, 468-69 (5th Cir. 1984).

41.     In *In re Mirant Corp.*, 303 B.R. 319 (Bankr. N.D. Tex. 2003), this Court concluded that the debtor-in-possession may assume a contract even if section 365(c) would prevent a trustee from being able to assume the contract. In large part, the Court construed the addition, in 1984, of the term "debtor-in-possession" into the statute as evidence that Congress intended for a debtor-in-possession to be able to assume its contracts even if section 365(c) would otherwise prohibit a trustee from assuming the contract. *See id*. at 333. "The specific

000838

use of the words 'the debtor or the debtor in possession' leads the court to conclude that a contract to be performed by a debtor or debtor in possession (as opposed to a trustee) is subject to assumption whether or not applicable law limits its assignability. *Id*. However, the Fifth Circuit has not adopted this view and the logic of *In re Mirant Corp.* is not correct.

42.     The statute begins by providing that the "trustee may not assume or assign any executory contract . . ." 11 U.S.C. § 365(c)(1). That "trustee" must include a debtor-in-possession, for it is the same "trustee" as in section 365(a) which provides that a "trustee . . . may assume or reject any executory contract." *Id*. at § 365(a). Thus, the section 365(c)(1) prohibition on a trustee must also extend to a "debtor-in-possession," unless the Court concludes that the use of the word "trustee" in the same statute means two different things. Rather, what *In re Mirant Corp.* was referring to was the following language in section 365(c)(1):

> applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession.

*Id*. at § 365(c)(1).

43.     The addition of the term "debtor-in-possession" to this statute does not change the result; *i.e.* it does not mean that a debtor-in-possession, unlike a trustee, may assume, but not assign, its own contracts. The question is whether applicable law excuses a party from accepting performance from an entity other than the debtor-in-possession. The Debtor is a debtor-in-possession and, if the counterparty is excused by applicable law from accepting performance from anyone else, then the contract may not be assumed by the Debtor. *In re Mirant Corp.* was simply wrong in concluding that the 1984 amendment somehow excepted a debtor-in-possession's assumption of its own contracts from the operation of section 365(c)(1).

44.     The Fifth Circuit's opinion in *Strumpf v. McGee (In re O'Connor)*, 258 F.3d 392

000839

(5th Cir. 2001) is on point. That opinion was rendered after the 1984 amendment at issue in *Mirant*, and that opinion concerned a Chapter 11 debtor. The question was whether a non-assignable partnership agreement could be assumed under section 365(c)(1). The Fifth Circuit held that "the agreement was *not* assumable under § 365(c)(1)." *Id.* at 402 (emphasis in original). And, as here, the confirmed plan provided for a postconfirmation liquidating trust. *See id.* at 396. The only difference was that, in *In re O'Connor*, a Chapter 11 trustee proposed the confirmed plan. This difference does not matter because the Fifth Circuit held that the agreement itself was not assumable; not that one person may assume it while a second not. *See id.* at 402 and 404 (twice holding that the "agreement is *not* assumable" (emphasis in original)).[11] Only one person may assume an executory contract, and that person is the trustee, even if the debtor-in-possession is exercising the powers of a trustee. Thus, if the contract itself is not assumable, then it is not assumable period. This difference also does not matter because the identity of the plan proponent is immaterial: the question is still whether it is the debtor-in-possession, or the estate, that can assume the executory contract.

45. The Debtor will respond that the Fifth Circuit, in *In re Mirant Corp.*, 440 F.3d 238 (5th Cir. 2006), rejected the so-called "hypothetical test" and adopted instead the "actual test" regarding the assignment of an executory contract or lease. In *Mirant*, the issue concerned section 365(e)(2) of the Bankruptcy Code and whether an *ipso facto* clause was enforceable against a debtor-in-possession because the executory contract was not assignable. The

---

[11] In *Strumpf*, the Fifth Circuit held that, because the agreement was not assumable, it passed through the Chapter 11 unaffected. However, *Strumpf* itself concluded that this "pass-through" principle does not apply in a liquidating plan, as further confirmed by *In re Tex. Rangers Baseball Partners*, 521 B.R. 134,183 (Bankr. N.D. Tex. 2014). Even if the agreements could pass through unaffected to the reorganized debtor, even though it is liquidating, the Plan cannot limit the ability to terminate the agreements in the future based on the change in control and other facts that are present. Otherwise, the agreements would be affected by the Plan, meaning that they would have to first be assumed, as recognized in *Strumpf* by holding that a plan effect on the executory contract means that it cannot pass through bankruptcy unaffected. *Strumpf*, 258 F.3d at 405.

000840

"hypothetical test" required a court to review whether a hypothetical assignment was prohibited by applicable law; if it was, then the *ipso facto* clause could be enforced even though no assignment was proposed. *See id*. at 246-47. The Fifth Circuit rejected this approach and instead applied the "actual test," which looked at whether an assignment was actually being proposed. *See id*. at 249-50. The Debtor will argue that this same logic should apply to section 365(c)(1) such that, when no actual assignment is being proposed, the section is not implicated.

46. *Mirant* and its logic, however, do not apply to section 365(c)(1). First, and most obviously, the Fifth Circuit stated that "[a]lthough this Circuit has addressed § 365(c)(1), we have yet to address § 365(e)," and then it cited to its *In re O'Connor* and *In re Braniff Airways* precedent. *See id*. at 248-49. The circuit, in analysing this prior precedent, noted that it was the contract itself that was not assumable ("declaring the contract unassumable," *id*.) and reaffirmed the holdings of both prior opinions notwithstanding the change in the language of section 365(c)(1). Thus, and having been afforded the opportunity to revisit its prior precedent or to find that the added "debtor-in-possession" language to section 365(c)(1) compelled a different result, the circuit instead reaffirmed its prior precedent holding that the contract itself was not assumable. More precisely, the "actual test" cannot apply to section 365(c)(1) because that section provides that a trustee may not "assume <u>or</u> assign" an executory contract. If the test were an actual one, *i.e.* whether an actual assignment was being proposed, then the section would simply provide that the trustee may not "assume and assign" the executory contract. But, in preventing an assumption even without a proposed assignment, section 365(c)(1) necessarily applies the "hypothetical test" such that, even though no assignment is proposed, if assignment is prohibited then so is an assumption.

47. Thus, were the Fifth Circuit presented with the precise issue with respect to

000841

section 365(c)(1), to the extent it was not in *In re O'Connor*, the Objectors submit that the Fifth

Circuit would join its sister circuits in concluding that, so long as even a hypothetical

assignment would be prohibited, so too is an assumption, whether by a trustee, debtor, or debtor-

in-possession. *See In re Catapult Entertainment*, 165 F.3d 747, 750 (9th Cir. 1999) ("a debtor

in possession may not assume an executory contract . . . if applicable law would bar assignment

to a hypothetical third party, even where the debtor in possession has no intention of assigning

the contract in question to any such third party"); *In re James Cable Partners L.P.)*, 27 F.3d

534, 537 (11th Cir. 1994); (holding that debtor-in-possession may not assume executory

contract under section 365(c)(1) notwithstanding that no assignment was proposed); *In re

Catron*, 1994 U.S. App. LEXIS 14585 (4th Cir. 1994) (affirming holding that "agreement was

the type of executory contract that could not be assumed by Catron, a debtor-in-possession,

absent consent of the nondebtor parties as required by § 365(c)(1)(B)"); *In re West Electronics

Inc.*, 852 F.2d 79, 83 (3d Cir. 1988) ("the relevant inquiry is not whether [applicable law] would

preclude an assignment from West as a debtor to West as a debtor in possession, but whether it

would foreclose an assignment by West to another defense contractor");[12] *but see Institut

Pasteur v. Cambridge Biotech Corp.*, 104 F.3d 489 (1st Cir. 1997).

48.     The result may not be to the liking of the Debtor and, in other circumstances, the

result may be harsh on a debtor-in-possession. But this case aptly demonstrates why the section

---

[12] In fact, as recognized in *West*, the addition of the term "debtor-in-possession" into section 365(c)(1) demonstrates Congress's intent to prevent a debtor-in-possession from assuming its own personal services contracts:

> We think that by including the words "or the debtor in possession" in 11 U.S.C. § 365(c)(1) Congress anticipated an argument like the one here made and wanted that section to reflect its judgment that in the context of the assumption and assignment of executory contracts, a solvent contractor and an insolvent debtor in possession going through bankruptcy are materially distinct entities.

*In re West Electronics*, 852 F.2d at 83.

000842

exists and why the result is fair. Many innocent parties have entrusted billions of dollars of their property to the Debtor to manage, for their benefit. Now, the Debtor wants to manage that property for the benefit of its creditors, and with insufficient experience, resources, and employees at that. This is not a case where the debtor is a person, who holds investment management contracts. That person is the same before, during, and after a Chapter 11 case. But here the Debtor is the same entity in name only: no reasonable fund would contract with the postconfirmation Debtor here to manage a penny, let alone life savings and the investments of many. That is the whole point of why personal services contracts cannot be assumed without consent.

49. Moreover, the Court should not permit the Debtor to place form over substance, especially when the rights of innocent, third party funds and investors are concerned. While technically the post-confirmation Debtor will still be the same corporate shell, it will have been gutted of everything that made the Debtor the Debtor. It is in substance and in every real and practical consideration an assignment of the contracts. Indeed, it appears that the only reason why the Debtor will even maintain a corporate existence after confirmation is an attempt to obviate the prohibition on assumption under section 365(c)(1), as all other property of the Debtor is transferred to the Claimant Trust. On this point, the Plan expressly provides that the "Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees." Plan at p. 32-33. If the intent of this provision is to provide services required by the Servicing Agreements, then this is a blatant violation of the Servicing Agreements' and the Advisers Act's anti-assignment and anti-delegation provisions. In other words, this admission in the Plan may well be precisely the type of assignment, or subsequent assignment, that would be prohibited by section 365(c)(1) regardless of any

000843

discussion between the "hypothetical test" and the "actual test."

50.     Separate and apart from the above discussion, and understand that there is uncertainty in the law as to the interplay between sections 365(f) and 365(c)(1), it is clear that a "personal services contract" falls squarely within the protection of section 365(c)(1).  As the Fifth Circuit has held, a personal services contract is subject to section 365(c)(1): "Congress' enactment of § 365(c) was to preserve the pre-Code rule that 'applicable law' precluding assignment of personal service contracts is operative in bankruptcy."  *In re Braniff Airways Inc.*, 700 F.2d 935, 943 (5th Cir. 1983).  A personal services contract is one which "involves a matter of personal trust and confidence between the original contracting parties."  *In re Grove Rich Realty Corp.*, 200 B.R. 502, 510 (Bankr. E.D.N.Y. 1996).  "A personal services contract has been defined as a contract which contemplates the performance of personal services involving the exercise of special knowledge, judgment, taste, skill, or ability."  *In re Wofford*, 608 B.R. 494, 496 (Bankr. E.D. Tex. 2019) (internal quotation omitted).

> It is well settled that when an executory contract is of such a nature as to be based upon personal services or skills, or upon personal trust or confidence, the debtor-in-possession or trustee is unable to assume or assign the rights of the bankrupt in such contract.

*In re Grove Rich Realty Corp.*, 200 B.R. 502, 510 (Bankr. E.D.N.Y. 1996) (emphasis added).

51.     The Service Agreements are clearly personal service contracts: the Debtor's position is one of trust and that of a fiduciary, the Debtor's performance requires personal confidence and high skill and knowledge, the agreements provide that the Debtor's duties are not delegable, and no person entrusting another with managing billions of dollars in assets would want the underlying contract to be assumable by a trustee or a liquidating debtor.  Indeed, the Supreme Court has recognized the "personalized character of the services of investment advisors."  *SEC v. Capital Gains Research Bureau Inc.*, 375 U.S. 180, 191 (1963).  This Court

000844

has characterized financial advisory and brokerage contracts as personal services contracts. *See In re Consolidated Capital Equities Corp.*, 157 B.R. 280, 283 (Bankr. N.D. Tex. 1993). Other courts have held that the Investors Act imposes a trust relationship. *See e.g. In re Peterson*, 96 B.R. 314, 323 (Bankr. D. Colo. 1988). The strict fiduciary and anti-assignment provisions of the Advisor Act and the 1940 Act further confirm Congress' strong view that these contracts are in the nature of personal service contracts.

52.     Even if the Court is inclined to adopt the "actual test" under section 365(c)(1) such that an assumption is possible where there is no assignment, and recognizing that section 365(c)(1) is broader in application than to only personal services contracts, the law overwhelmingly confirms that a personal services contract is not assumable in the first instance. *See, e.g., In re Braniff Airways Inc.*, 700 F.2d 935, 943 (5th Cir. 1983).

53.     The final issue concerning section 365(c)(1) is consent. Assuming that the CLOs do not object to the assumption of the Servicing Agreements, the statute requires affirmative consent to the assumption. The statute prohibits the assumption if "such party does not consent to such assumption." 11 U.S.C. § 365(c)(1)(B). The plain meaning of this language is that consent is required, as opposed to merely the absence of an objection. In *Strumpf v. McGee (In re O'Connor)*, 258 F.3d 392 (5th Cir. 2001), the issue concerned an executory contract that was neither expressly assumed nor assigned under a Chapter 11 plan. The Fifth Circuit held that the contract was not assumable under section 365(c)(1) and concluded that the counterparty "did not consent" to an assumption. *See id*. at 402. If the absence of an objection was all that was required, then the Fifth Circuit would not have so held. In fact, the Fifth Circuit expressly rejected the argument that the "Appellees consented to the assumption by failing to object to the Plan." *Id*. at 400. This is in line with the case law, which requires affirmative, or actual,

000845

consent to the assumption. *See In re Allentown Ambassadors Inc.*, 361 B.R. 422, 448 n. 60 (Bankr. E.D. Pa. 2007).

54. Finally, there is the issue of the Objectors' standing to make the foregoing arguments. The Objectors have standing for at least four reasons. First, as creditors and parties in interest,[13] they have the right to object to the Plan. 11 U.S.C. § 1109(b). Insofar as it is the Fifth Amended Plan that provides for assumption of the Servicing Agreements, the Objectors may object to said assumption, especially because assumption of the Servicing Agreements and future performance thereunder affect the feasibility of the Plan as a whole. Second, the Objectors have standing and the right to object to confirmation of the Fifth Amended Plan under sections 1129(a)(1), (a)(2), and (a)(3) of the Bankruptcy Code. Insofar as the Fifth Amended Plan and the Debtor propose to impermissibly assume the Servicing Agreements in violation of the law, the Objectors may object to such assumption on those bases. Third, in several of the Servicing Agreements, the Objectors have the right to remove the Debtor or to control who the servicer under the agreements is. They have similar rights under the Indentures with respect to assignment or modification of the Servicing Agreements. Insofar as the Fifth Amended Plan purports to limit or to take those rights away from them, and to change their rights, the Objectors have standing to object to their rights being limited or eliminated. Likewise, under the 1940 Act, an investment adviser must be approved by a majority of the voting securities, and the Servicing Agreements cannot continue in effect for more than two years without the consent of either the CLOs' boards of directors or a majority of the outstanding voting securities--i.e., the Objectors. 15 U.S.C. § 80a-15(a)(2). Insofar as the Fifth Amended Plan purports to limit the

---

[13] "The term 'party in interest' is not defined in the Bankruptcy Code." *Khan v. Xenon Health, LLC (In re Xenon Anesthesia of Tex., PLLC)*, 698 Fed. Appx. 793, 794 (5th Cir. 2017) (quoting *In re Megrelis*, No. 13-35704-H3-7, 2014 Bankr. LEXIS 3905, at *2 (Bankr. S.D. Tex. Sept. 12, 2014)). "It generally 'means anyone who has a legally protected interest that could be affected by the bankruptcy case.'" *Id.*

000846

Objectors' right to withhold their consent or influence the CLOs' boards of directors, the Objectors have standing to challenge any modification of those rights. Fourth, in several of the Servicing Agreements, it is not just the CLO that must approve an assignment, but also the Objectors. The Objectors have similar rights under the Indentures. Insofar as the test under section 365(c)(1) is a hypothetical assignment, and the Objectors have the right to approve or not approve that assignment under applicable law and the agreements, that right should extend to consent under section 365(c)(1)(B) as well, as the CLOs' consent is not possible without a concurring consent by the Objectors.

55.     The Fifth Amended Plan does not comply with section 1129(a)(1) of the Bankruptcy Code because it violates a fundamental principal of contract assumption under section 365 of the Bankruptcy Code. Contracts must be assumed or rejected; there is no such thing as a partial assumption. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000) ("Where the debtor assumes an executory contract, it must assume the entire contract, *cum onere*--the debtor accepts both the obligations and the benefits of the executory contract."); *In re Rigg*, 198 B.R. 681, 685 (Bankr. N.D. Tex. 1996) ("An executory contract cannot be rejected in part and assumed in part; the debtor must assume both the benefits and the burdens on the contract.").

56.     The Fifth Amended Plan contravenes established law with respect to the proposed treatment of the CLOs and the Debtor's obligations under the portfolio management agreements.

57.     First, the Fifth Amended Plan reveals that the Debtor, while claiming to assume the various Servicing Agreements, also intends to deprive the counterparties to those agreements from exercising their rights to change management.

000847

58.     Under the Servicing Agreements at issue, either a majority, or in some cases, a supermajority of owners may initiate a change in management.  See attached Exhibit A.

59.     The Debtor's Plan makes clear, however, that it intends to engage a subagent to perform the management and servicing function and, implicitly to deprive the CLOs as issuers from exercising contractual rights with respect to making a change in management.

60.     Second, the Debtor's duties under the Servicing Agreements, which themselves have been adopted under the Advisers Act, subject to Rule 206(4)-8 thereunder as noted below, are owed to, and provide the rights of, the preference shareholders under the portfolio management agreements.  The Debtor's proposed liquidation of Managed Assets (which it does not own) is contrary to the performance of its contractual and statutory duties under the portfolio management agreements.

61.     The preference shareholders, as the only remaining owners of the Managed Assets of many of the CLOs, contend that the Debtor's (i) sales of  Managed Assets and  (ii) continued management of the Managed Assets, notwithstanding the Debtor's stated intention to wind down and liquidate all assets, violates the provisions of Section 2(b) of the portfolio management agreements.

62.     These violations are detrimental to the counterparties to the assumed contracts because:

> a.   liquidation sales of Managed Assets the Debtor does not own are unlikely to maximize the value of the Managed Assets when compared to the long term investment horizon of the beneficial owners of the Managed Assets;
>
> b.    liquidation sales of Managed Assets are likely to subtract value when duress sales occur based on the short term horizon and liquidation

000848

strategy of the Debtor;

    c.   the Debtor has announced the termination of its personnel, resulting in loss of knowledgeable portfolio managers; and

    d.   any potential consultant engaged by the Debtor in the absence of its terminated personnel will be subservient to the Debtor's short-term objective of liquidation in violation of the assumed contracts and applicable securities law.

63.    Manifestly, where the investors in a pooled vehicle state to the manager both that their objectives and desires differ from those of the portfolio manager, and that the portfolio manager's actions are contrary to the manager's duties to maximize returns for the benefit of the investors established under the agreement, that portfolio manager is not acting reasonably under or in accordance with its agreement.  The owners of the Managed Assets, in requisite majority or supermajority,[14] have expressly requested that the Managed Assets not be liquidated as contemplated by the Debtor's business plan.  In that context, the Debtor is unreasonably acting contrary to the required contractual objective and therefore statutory obligation to maximize value for the preference shareholders.   In implementing the Fifth Amended Plan, the Debtor is likely to violate its duty of reasonableness under Section 2(b) under these circumstances, because the Debtor is not "perform[ing] its duties under [the] Agreement in the manner provided for" in the Agreement.

64.    As the Debtor is an investment management firm familiar with established securities laws, the Fifth Amended Plan's violations of such laws is blatant and should not be permitted.

---

[14] Objectors acknowledge that they do not hold a majority in all of the CLOs, for example, Jasper.

000849

65.     Based upon the Fifth Amended Plan's attempt to assume contracts partially, and not fully, the Court should find that the Fifth Amended Plan fails to satisfy section 1129(a)(1) of the Bankruptcy Code and cannot be confirmed

66.     Moreover, as discussed below, with respect to the injunction and release provisions of the Fifth Amended Plan, the Plan purports to release the Debtor from its contractual and statutory obligations with respect to the Servicing Agreements.  As explained above, those agreements require the Debtor to preserve and to maximize the value of the CLOs assets, for the benefit of the CLOs and the holders of beneficial interests in them.  The Advisers Act requires the same.  The Fifth Amended Plan purports to enjoin parties from "taking any actions to interfere with the implementation or consummation of this Plan."  Plan at p. 50.  This is an unprecedented, overbroad injunction that does not comport with fundamental due process, as what "interference," "implementation," or "consummation" mean is not specified.  Are the Objectors to be enjoined from enforcing future rights under the Servicing Agreements even if the Debtor commits future malfeasance?

67.     The Fifth Amended Plan likewise enjoins all creditors and other parties, and their "Related Persons" (who may not even have notice of the injunction) from "commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Independent Directors, the Reorganized Debtor."  Plan at p. 51.  Read literally, this means that the Objectors and the CLOs will not be able to assert any claims, or seek any relief, against the Debtor or Reorganized Debtor for any present or future actionable wrongs under the Servicing Agreements and the Advisers Act.  Again, so broad an injunction, not limited in time, is unprecedented, legally impermissible, violates due

000850

process, and seeks to strip parties of their contractual and Advisers Act rights—even as the Debtor purports to assume the Servicing Agreements which, as is black letter law, means that the Debtor is requiring to provide full future performance (and suffer potential future obligations and liabilities).

68. The balance of the Plan injunction is equally fatally defective. If there are future obligations and defaults, and even if there are present ones, under the Servicing Agreements and applicable law, affected parties have to have the right to seek legal redress, enforce awards and injunctions, and assert setoff rights. On this last basis in particular, if there are setoff rights under the CLOs or other agreements, those rights cannot be permanently enjoined. And, the same injunction applies to any "successors" of the Debtor and its property interests, meaning that, if the Debtor assigns or delegates its duties under the Servicing Agreements, some future and unknown party may claim protections under these injunctions without any protection to the Objectors or the CLOs.

69. The Plan's channeling injunction is similarly improper and defective, at least with respect to post-confirmation actions. *See* Plan at p. 51. That injunction requires *anyone* with any complaint against a "Protected Party" that is "related to the Chapter 11 Case," or to the "wind down of the business of the Debtor or the Reorganized Debtor," to first seek relief from this Court, including by proving that a colourable claim exists and obtaining leave. The same section then purports to grant "sole jurisdiction" to this Court to "adjudicate" any such dispute. Read literally, this means that the Objectors and the CLOs will have to first seek leave from this Court before enforcing any right under the Servicing Agreements and the Advisers Act, which is unprecedented and is incompatible with respect to the assumption of those agreements for post-assumption claims, and then this Court would adjudicate the claims. This

000851

Court will have no jurisdiction to adjudicate such post-confirmation claims, however, and the channeling injunction is am impermissible attempt to confer such jurisdiction where none exists.

70.    All of the foregoing affects, limits, and eviscerates future rights under the assumed Servicing Agreements—something that defeats the whole purpose of an assumption of an executory contract and that contradicts the established law that an executory contract, and its future obligations, must be assumed *in toto*.

### B.    *Other objections to the Fifth Amended Plan*

The Debtor's Fifth Amended Plan is objectionable for other reasons as well.  Those Objections are discussed briefly below.  The Funds and Advisors reserve the right to object upon any appropriate basis under Sections 1129(a) and (b) and other applicable provisions of the Bankruptcy Code. The Funds and Advisors also reserve the right to join in and support the objections asserted by other parties at the Confirmation Hearing.

### *Section 1129(a)(5)*

71.    In order to be confirmed, the Debtor must satisfy the following non-waiveable requirements:

> (i) the proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

> (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy.

11 U.S.C. § 1129(a)(5).

72.    This is of particular importance here, where the Debtor proposes to manage billions of dollars of other entities' assets, and ties in as well to section 362(b)'s requirement of

000852

demonstrating adequate assurance of future performance. Yet, the Debtor fails completely with respect to even an attempt to satisfy these requirements.

73. In this respect, the sole disclosure in the Plan and Disclosure Statement with respect to who will manage these billions of dollars in assets is as follows:

> Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC. The initial officers and employees of the Reorganized Debtor shall be selected by the Claimant Trustee. The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

Plan at p. 32-33.

74. Neither the identity nor the compensation of the people who will control and manage the Reorganized Debtor is provided, much less as to who may be a Sub-Servicer. While Mr. Seery is disclosed as the Claimant Trustee who will be responsible for "winding down the Reorganized Debtor's business operations," this is insufficient. All the more so because, without additional disclosures and facts, not only can adequate assurance of future performance not be proven, but the Debtor cannot prove that the employment and compensation of these unnamed officers and managers of the Reorganized Debtor is "is consistent with the interests of creditors and equity security holders and with public policy." Public policy in particular, given the dictates of the Advisers Act, is implicated.

Accordingly, the Plan is fatally defective with respect to section 1129(a)(5) and cannot be confirmed on that basis alone.

### *The Fifth Amended Plan is not feasible*

75. Section 1129(a)(11) requires that confirmation of a plan not be likely to be followed by liquidation or the need for further reorganization. "Establishing a likelihood that a plan itself will be successful is a question of feasibility." *In re Dernick*, Case No. 18-32417,

000853

2020 WL 6833833, at *17 (Bankr. S.D. Tex. Nov. 20, 2020). Feasibility contemplates whether the plan is workable and offers a reasonable assurance of success. *Id.*; *see also In re Frascella Enters., Inc.*, 360 B.R. 435, 453 (Bankr. E.D. Pa. 2007). "An obvious illegality . . . exposes the plan on feasibility grounds." *In re Food City*, 110 B.R. at 813 n. 12; *see also In re McGinnis*, 453 B.R. at 773 (chapter 13 plan premised on illegal activity could not be confirmed); *In re Frascella*, 360 B.R. at 445, 456 (citing *Food City*, 110 B.R. at 812 n. 10) (debtor failed to establish plan was feasible where it rested on questionable legal basis).

76.     As discussed above, the proposed treatment with respect to the portfolio management agreements and the CLOs contravenes section 365 of the Bankruptcy Code and the Adviser Act. This illegality hampers the feasibility of the Fifth Amended Plan, and accordingly, the Court should find that it is not feasible and deny confirmation.

### *The Debtor's proposed assumption of the Servicing Agreements is improper under section 365 because there is no adequate assurance of future performance*

77.     Under section 365(b) of the Bankruptcy Code, an executory contract may only be assumed if the Debtor "provides adequate assurance of future performance under such contract[.]" 11 U.S.C. § 365(b)(1)(C).

78.     Although the Fifth Amended Plan provides for the assumption of the Servicing Agreements with many of the CLOs, it does not offer any assurance with respect to the Debtor's ability to perform under such agreements. Indeed, given the Debtor's plan to wind down and liquidate its remaining assets, and in light of the contractual and statutory breaches discussed above, the Debtor cannot possibly provide such assurance. Furthermore, it is uncertain whether sufficient employees will be retained by the Debtor to fulfil its obligations under the portfolio management agreements, even its most significant duties are delegated to a Sub-Advisor. Accordingly, assumption is improper and must be disallowed under section 365(b).

000854

79.     Equally important, the Debtor's failure to offer or provide adequate assurance is intensified because the purported assumption is, in reality, a *sub rosa* assumption *and assignment* to an as yet unnamed third party. This unidentified third party has also not offered adequate assurance of future performance as required in the context of such assignments.

### *The Release and Exculpation Provisions of the Fifth Amended Plan are overly broad and extend beyond the Effective Date*

80.     In the Fifth Circuit, permanent injunctions against nondebtors are not permissible. *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995). In fact, and quite to the contrary, the case law "seem[s] broadly to foreclose non-consensual non-debtor releases and permanent injunctions." *Bank of N.Y. Trust Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009). Such permanent injunctions would "improperly insulate nondebtors in violation of section 524(e)," and "without any countervailing justification of debtor protection." *Id.* at 760 (quoting *Landsing Diversified Props. v. First Nat'l Bank & Trust Co. (In re W. Real Estate Fund, Inc.)*, 922 F.2d 592, 601-02 (10th Cir. 1990)); *see also In re Pac. Lumber*, 584 F.2d at 252 (noting that costs that the released parties might incur defending against suits are unlikely to swamp such parties or the reorganization).

81.     Indeed, courts within this District have found that injunctions and release provisions substantively identical to that proposed in Fifth Amended Plan, and which purport to release causes of action against non-debtor third parties, violate Fifth Circuit precedent and are impermissible. *Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, Civil Action No. 3:17-CV-1958-G, 2018 WL 5113124, at *21 (N.D. Tex. Oct. 19, 2018) (finding that bankruptcy court erred by approving injunction that would have effectively discharged non-debtor third parties); *In re Pac. Lumber*, 584 F.3d at 251-53 (striking release provision purporting to release non-

000855

debtor third parties from liability relating to the proposal, implementation, and administration of the plan).

82.     The injunction contained in Article XI.F of the Fifth Amended Plan is almost identical to that struck down in *In re Thru*.  Like the injunction provision in *In re Thru*, the Debtor's proposed injunction would bar the Debtor's creditors "from pursuing causes of action against a number of non-debtor third parties, if those causes of action relate to the creditors' claims against the debtor."  2018 WL 5113124, at *21.  The Fifth Amended Plan purports to release creditors' claims against not only the Debtor, but also the Independent Directors.  Dkt. No. 1472 at 56-57.  Not only that, but the Fifth Amended Plan purports to release creditors' claims stemming from the bankruptcy case, as well as the negotiation, administration and implementation of the Plan, as against many of the specific third parties that the courts in this Circuit have found to be impermissible, including, but not limited to, employees, officers and directors, and professionals retained by the Debtor, among others.  *Id.*; *In re Thru*, 2018 WL 5113124, at *21 (concluding it was "clearly erroneous" for the bankruptcy court to approve an injunction covering causes of action against such parties); *In re Pac. Lumber*, 584 F.3d at 252-53.

83.     Furthermore, the exculpation provision contained in Article XI.C of the Fifth Amended Plan is incompatible with Fifth Circuit precedent, as explained by the court in *In re Thru*.  The court in *In re Thru* found that it was clear error for the bankruptcy court to approve an exculpation provision that exculpated non-debtor third parties, including the debtor's employees, officers, directors, advisors, affiliates and professionals, from liability in connection with formulating, implementing, and consummating the plan of reorganization.  2018 WL 5113124, at *22.  The exculpation provision in the Fifth Amended Plan provides the "same

000856

insulation" as the impermissible provision in the *In re Thru* plan, and as such, it cannot be approved. *See also In re Pac. Lumber*, 584 F.3d at 252 ("We see little equitable [sic] about protecting the released non-debtors from negligence suits arising out of the reorganization.").

84. In sum, the Fifth Amended Plan impermissibly seeks to exculpate certain non-debtor third parties from a broad array of claims relating to such entities' pre- and post-petition conduct. The Funds and Advisors submit there is no authority that would permit such broad exculpatory and/or injunctive language in favor of third parties.

### *The Fifth Amended Plan appears to eliminate the right of setoff*

85. The Funds and Advisors object to the extent that the Plan purports to divest them of their rights of setoff against the Debtor.

### *The Fifth Amended Plan violates section 365(d)(2) by impermissibly allowing the Debtor to assume or reject executory contracts and unexpired leases after confirmation*

86. Section 365(d)(2) of the Bankruptcy Code provides that, in a case under chapter 11, the debtor may assume or reject an executory contract or unexpired lease "at any time *before confirmation of a plan* . . . ." 11 U.S.C. § 365(d)(2) (emphasis added).

87. Notwithstanding this clear language, the Fifth Amended Plan authorizes the Debtor to amend the Plan Supplement by adding or removing a contract or lease from the list of contracts to be assumed, or assign an Executory Contract or Unexpired Lease, at any time up until the Effective Date. Dkt. No. 1472 at 43. Further, the Disclosure Statement indicates that the Debtor is still evaluating whether to assume and assign the Shared Services Agreements. This is contrary to the explicit language of the Bankruptcy Code.

88. Accordingly, the Advisors object to the Fifth Amended Plan to the extent that it purports to reserve the Debtor's right and ability to assume or assume and assign the Shared

000857

Services Agreements or the Payroll Reimbursement Agreements post-confirmation. Furthermore, the Funds object to the Fifth Amended Plan to the extent it purports to reserve the Debtor's right and ability to alter the proposed treatment of the Servicing Agreements.

### *The Debtor is not entitled to a discharge*

89.  Although section 1141(d) of the Bankruptcy Code discharges a debtor from most pre-confirmation debt, it expressly <u>does not</u> discharge a debtor if:

> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> (B) the debtor does not engage in business after consummation of the plan; and
> (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141(d)(3).

90.  Here, the Plan provides for liquidation of all of the Debtor's property over a period of time.  Although the Debtor may technically continue business for a brief period of time, its ultimate goal is liquidation.  Further, the Debtor would be denied a discharge under section 727(a)(1) because it is not an individual.  Accordingly, the Court should find that the Debtor is not entitled to a discharge under section 1141 of the Bankruptcy Code.

### *The Fifth Amended Plan may violate the absolute priority rule*

91.  Section 1129(b)(2)(B)(ii) provides that the holder of any claim or interest that is junior to the claims of unsecured creditors may not retain any property unless general unsecured creditors are paid in full.  11 U.S.C. § 1129(b)(2)(B)(ii).  The "absolute priority rule is a bedrock principle of chapter 11 practice."  *In re Texas Star Refreshments, LLC*, 494 B.R. 684, 703 (Bankr. N.D. Tex. 2013).  "Under this rule, unsecured creditors stand ahead of investors in the receiving line and their claims must be satisfied before any investment loss is compensated." *In re SeaQuest Diving, LP*, 579 F.3d 411, 420 n.5 (5th Cir. 2009) (comparing subordination

000858

under section 510 to absolute priority rule) (quoting *In re Geneva Steel Co.*, 281 F.3d 1173, 1180 n.4 (10th Cir. 2002)).

92.     In the event the unsecured creditor classes (Class 7 and 8) vote against the Fifth Amended Plan, the absolute priority rule prohibits the retention of equity in the Reorganized Debtor by existing equity holders in the absence of a new investment and opportunity for competitive bidding for that investment opportunity.

## **CONCLUSION**

93.     For the reasons set forth above, the Funds and Advisors respectfully request that the Court deny confirmation of the Fifth Amended Plan and grant such other and further relief as the Court deems just and proper.

Dated:     January 5, 2020

<div style="margin-left:40%">

**MUNSCH HARDT KOPF & HARR, P.C.**

By:  /s/ Davor Rukavina
     Davor Rukavina, Esq.
     Texas Bar No. 24030781
     Julian P. Vasek, Esq.
     Texas Bar No. 24070790
     3800 Ross Tower
     500 N. Akard Street
     Dallas, Texas  75201-6659
     Telephone: (214) 855-7500
     Facsimile: (214) 855-7584
     Email:     drukavina@munsch.com

     - and -

K&L GATES LLP

Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Tel: (214) 939-5659
artoush.varshosaz@klgates.com

Stephen G. Topetzes (*pro hac vice*)
1601 K Street, NW
Washington, DC 20006-1600

</div>

000859

Tel: (202) 778-9328
stephen.topetzes@klgates.com

A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Tel: (919) 743-7306
Lee.hogewood@klgates.com

*Counsel for Highland Capital Management
Fund Advisors, L.P., NexPoint Advisors,
L.P., Highland Funds I and its series
Highland Healthcare Opportunities Fund,
Highland/iBoxx Senior Loan ETF,
Highland Opportunistic Credit Fund, and
Highland Merger Arbitrage Fund,
Highland Funds II and its series Highland
Small-Cap Equity Fund, Highland Socially
Responsible Equity Fund, Highland Fixed
Income Fund, and Highland Total Return
Fund, NexPoint Capital, Inc., NexPoint
Strategic Opportunities Fund, Highland
Income Fund, Highland Global Allocation
Fund, and NexPoint Real Estate Strategies
Fund, and NexPoint Latin America
Opportunities Fund*

000860

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 5th day of January, 2021, and in addition to electronic service on parties entitled to notice thereon through the Court's ECF system, the undersigned caused the foregoing document to be served, by U.S. first class mail, postage prepaid, on the following:

Pachulski Stang Ziehl & Jones LLP
Attn: Jeffrey N. Pomerantz, Ira D. Kharasch, and Gregory V. Demo
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067

Hayward & Associates PLLC
Attn: Melissa S. Hayward and Zachery Z. Annable
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231

Sidley Austin LLP
Attn: Matthew A. Clemente and Alyssa Russell
One South Dearborn Street
Chicago, Illinois 60603

Office of the United States Trustee
U.S. Department of Justice, Region 6: Northern District of Texas
1100 Commerce Street, Room 976
Dallas, TX 75242

and, on the same day, by e-mail, on the following:

jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
gdemo@pszjlaw.com
MHayward@HaywardFirm.com
ZAnnable@HaywardFirm.com
mclemente@sidley.com
Alyssa.russell@sidley.com
Lisa.L.Lambert@usdoj.gov

*/s/ Davor Rukavina*
Davor Rukavina

000861

Highland Capital Management Fund Advisors, L.P.

CLOs Review

| CLO | Enforcement Rights | Obligation Regarding Collateral | Removal Rights | Requisite Threshold For Removal Rights |
|-----|--------------------|--------------------------------|----------------|---------------------------------------|
| **Aberdeen Loan Funding, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Servicing Agreement of Servicer, as provided in the Indenture or Preference Shares Paying Agency Agreement. SA § 9. | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders. SA § 2(b). | No removal without cause. Removal for cause permitted by Majority of Voting Preference Shares Holders directing the Trustee, upon 10 days' notice. SA § 14. For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral. SA § 2(b). | Majority of Voting Preference Share Holders. SA § 14. |
| **Brentwood CLO, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Servicing Agreement of Servicer, as provided in the Indenture or Preference Share Paying Agency Agreement. SA § 9. | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders. SA § 2(b). | No removal without cause. Removal for cause permitted by Majority of Voting Preference Shares Holders directing the Issuer, upon 10 days' notice. SA § 14. For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral. SA § 2(b). | Majority of Voting Preference Share Holders. SA § 14. |

308393059.4

(Exhibit A

| CLO | Enforcement Rights | Obligation Regarding Collateral | Removal Rights | Requisite Threshold For Removal Rights |
|---|---|---|---|---|
| **Eastland CLO, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Servicing Agreement of Servicer, as provided in the Indenture or Preference Share Paying Agency Agreement. SA § 9. | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders. SA § 2(b). | No removal without cause. Removal for cause permitted by Majority of Voting Preference Shares Holders directing the Issuer, upon 10 days' notice. SA § 14. For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral. SA § 2(b). | Majority of Voting Preference Share Holders. SA § 14. |
| **Gleneagles CLO, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Portfolio Management Agreement of Portfolio Manager, as provided in the Indenture or Preference Share Paying Agency Agreement. PMA § 9. | The Portfolio Manager must seek to maximize the value of the Collateral for the benefit of the Preference Shares holders. PMA § 2(b). | Removal without cause permitted by 66 2/3% of Preference Shares Holders (excluding Preference Shares held by the Portfolio Manager and affiliates, or for which they have discretionary voting authority) directing the Issuer, upon 90 days' notice. PMA § 12(c).<br><br>The Portfolio Manager may avoid removal by purchasing all Preference Shares voting for removal (and Preference Shares not voting for removal but seeking to sell) at the Buy-out Amount (i.e., 12% IRR since the Closing Date). PMA § 12(c).<br><br>For cause removal may be effected in connection with the Portfolio Manager | 66 2/3% of Preference Shares Holders. PMA § 12(c). |

000863

| CLO | Enforcement Rights | Obligation Regarding Collateral | Removal Rights | Requisite Threshold For Removal Rights |
|-----|--------------------|--------------------------------|----------------|----------------------------------------|
| | | | breaching the portfolio management agreement by not maximizing the value of the Collateral. PMA § 2(b). | |
| **Grayson CLO, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Servicing Agreement of Servicer, as provided in the Indenture or Preference Share Paying Agency Agreement. SA § 9. | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders. SA § 2(b). | No removal without cause. Removal for cause permitted by Majority of Voting Preference Shares Holders directing the Issuer, upon 10 days' notice. SA § 14. For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral. SA § 2(b). | Majority of Voting Preference Share Holders. SA § 14. |
| **Greenbriar CLO, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Servicing Agreement of Servicer, as provided in the Indenture. SA § 9. The Indenture references a Preference Shares Paying Agency Agreement. Indenture § 1.1 (Definitions-- Preference Share Documents). | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders. SA § 2(b). | No removal without cause. Removal for cause permitted by Majority of Voting Preference Shares Holders directing the Trustee, upon 10 days' notice. SA § 14. For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral. SA § 2(b). | Majority of Voting Preference Share Holders. SA § 14. |

3

308393059.4

000864

| CLO | Enforcement Rights | Obligation Regarding Collateral | Removal Rights | Requisite Threshold For Removal Rights |
|---|---|---|---|---|
| **Jasper CLO, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Portfolio Management Agreement of Portfolio Manager, as provided in the Indenture or Preference Share Paying Agency Agreement. PMA § 9. | The Portfolio Manager must seek to maximize the value of the Collateral for the benefit of the Preference Shares holders. PMA § 2(b). | Removal without cause permitted by 66 2/3% of Preference Shares Holders (excluding Preference Shares held by the Portfolio Manager and affiliates, or for which they have discretionary voting authority directing the Issuer, upon 90 days' notice. PMA § 12(a).<br><br>The Portfolio Manager may avoid removal by purchasing all Preference Shares voting for removal (and Preference Shares not voting for removal but seeking to sell) at the Buy-out Amount (i.e., 15% IRR since the Closing Date). PMA § 12(a).<br><br>For cause removal may be effected in connection with the Portfolio Manager breaching the portfolio management agreement by not maximizing the value of the Collateral. PMA § 2(b). | 66 2/3% of Preference Shares Holders. PMA § 12(a). |
| **Liberty CLO, Ltd.** | Requisite percentage of Class E Certificates Holders may enforce obligations under Portfolio Management Agreement of Portfolio Manager, as provided in the Indenture or Class E | The Portfolio Manager must seek to maximize the value of the Collateral for the benefit of the Class E Certificates holders. PMA § 2(b). | Removal without cause permitted by 66 2/3% of Class E Certificates Holders (excluding Class E Certificates held by the Portfolio Manager and affiliates, or for which they have discretionary voting authority) directing the Issuer, upon 90 days' notice. PMA § 12(c). | 66 2/3% of Class E Certificates Holders. PMA § 12(c). |

308393059.4

| CLO | Enforcement Rights | Obligation Regarding Collateral | Removal Rights | Requisite Threshold For Removal Rights |
|---|---|---|---|---|
| | Certificates Paying Agency Agreement. PMA § 9. | | The Portfolio Manager may avoid removal by purchasing all Class E Certificates voting for removal (and Class E Certificates not voting for removal but seeking to sell) at the Buy-out Amount (i.e., 12% IRR since the Closing Date). PMA § 12(c).  For cause removal may be effected in connection with the Portfolio Manager breaching the portfolio management agreement by not maximizing the value of the Collateral. PMA § 2(b). | |
| **Red River CLO, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Servicing Agreement of Servicer, as provided in the Indenture or Preference Share Paying Agency Agreement. SA § 9. | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders. SA § 2(b). | No removal without cause.  Removal for cause permitted by Majority of Voting Preference Shares Holders directing the Issuer, upon 10 days' notice. SA § 14.  For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral. SA § 2(b). | Majority of Voting Preference Share Holders. SA § 14. |

000866

308393059.4

| CLO | Enforcement Rights | Obligation Regarding Collateral | Removal Rights | Requisite Threshold For Removal Rights |
|---|---|---|---|---|
| **Rockwall CDO Ltd.** | Requisite percentage of Preferred Shares Holders may enforce obligations under Servicing Agreement of Servicer, as provided in the Indenture. SA § 9. | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders.  SA § 2(b). | No removal without cause.  Removal for cause permitted by 66 2/3% of Preferred Shares Holders (excluding Preferred Shares held by the Servicer and affiliates, or for which they have discretionary voting authority, but HFP may vote Preferred Shares it owns up to the Original HFP Share Amount) directing the Issuer, upon 10 days' notice.  SA § 14.  For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral.  SA § 2(b). | 66 2/3% of Voting Preference Share Holders. SA § 14. |
| **Rockwall CDO II Ltd.** | Requisite percentage of Preferred Shares Holders may enforce obligations under Servicing Agreement of Servicer, as provided in the Indenture. SA § 9. | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders.  SA § 2(b). | No removal without cause.  Removal for cause permitted by 66 2/3% of Preferred Shares Holders (excluding Preferred Shares held by the Servicer and affiliates, or for which they have discretionary voting authority, but HFP may vote Preferred Shares it owns up to the Original HFP Share Amount) directing the Issuer, upon 10 days' notice.  SA § 14.  For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral.  SA § 2(b). | 66 2/3% of Voting Preference Share Holders. SA § 14. |

000867

308393059.4

| CLO | Enforcement Rights | Obligation Regarding Collateral | Removal Rights | Requisite Threshold For Removal Rights |
|---|---|---|---|---|
| **Southfork CLO, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Portfolio Management Agreement of Portfolio Manager, as provided in the Indenture or Preference Share Paying Agency Agreement. PMA § 9. | The Portfolio Manager must seek to maximize the value of the Collateral for the benefit of the Preference Shares holders. PMA § 2(b). | Removal without cause permitted by 63% of Preference Shares Holders (excluding Preference Shares held by the Portfolio Manager and affiliates, or for which they have discretionary voting authority) directing the Issuer, upon 90 days' notice. PMA § 12(c).<br><br>The Portfolio Manager may avoid removal by purchasing all Preference Shares voting for removal (and Preference Shares not voting for removal but seeking to sell) at the Buy-out Amount (i.e., 12% IRR since the Closing Date). PMA § 12(c).<br><br>For cause removal may be effected upon the Portfolio Manager authorizing or filing a voluntary petition in connection with the Portfolio Manager breaching the portfolio management agreement by not maximizing the value of the Collateral. PMA § 2(b). | 63% of Preference Shares Holders. PMA § 12(c). |
| **Stratford CLO Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Servicing Agreement of | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders.  SA § 2(b). | No removal without cause.  Removal for cause permitted by 66 2/3% of Preference Shares Holders (excluding Preference Shares held by the Servicer | 66 2/3% of Preference Shares Holders. SA § 14. |

7

| CLO | Enforcement Rights | Obligation Regarding Collateral | Removal Rights | Requisite Threshold For Removal Rights |
|---|---|---|---|---|
| | Servicer, as provided in the Indenture. SA § 9. The Indenture references a Preference Shares Paying Agency Agreement. Indenture § 1.1 (Definitions-- Preference Share Documents). | | and affiliates, or for which they have discretionary voting authority, but HFP may vote Preference Shares it owns up to the Original HFP Share Amount) directing the Issuer, upon 10 days' notice. SA § 14. For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral. SA § 2(b). | |
| **Valhalla CLO, Ltd.** | [No Preference Shares or Class E Certificates.] | [No Preference Shares or Class E Certificates.] | [No Preference Shares or Class E Certificates.] | |
| **Westchester CLO, Ltd.** | Requisite percentage of Preference Shares Holders may enforce obligations under Servicing Agreement of Servicer, as provided in the Indenture or Preference Share Paying Agency Agreement. SA § 9. | The Servicer must seek to preserve the value of the Collateral for the benefit of the securities holders. SA § 2(b). | No removal without cause. Removal for cause permitted by Majority of Voting Preference Shares Holders directing the Issuer, upon 10 days' notice. SA § 14. For cause removal may be effected in connection with the Servicer breaching the servicing agreement by not preserving the value of the Collateral. SA § 2(b). | Majority of Voting Preference Share Holders. SA § 14. |

000869

308393059.4

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

</div>

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) ) ) | Case No. 19-34054-sgj11 |
| Debtor. | ) ) ) | |

<div align="center">

**SECOND[2] NOTICE OF (I) EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES TO BE ASSUMED BY THE**
**DEBTOR PURSUANT TO THE FIFTH AMENDED PLAN, (II) CURE AMOUNTS,**
**IF ANY, AND (III) RELATED PROCEDURES IN CONNECTION THEREWITH**

</div>

**PLEASE TAKE NOTICE THAT** on November 24, 2020, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an order [Docket No. 1476] (the "Disclosure Statement Order") that, among other things: (a) approved the *Disclosure*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] This Second Notice identifies executory contracts and unexpired leases to be assumed *in addition* to any executory contracts and unexpired leases identified previously in Docket No. 1648.

000870

*Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125(a) of the title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"); and (b) authorized the above-captioned debtor and debtor-in-possession (the "Debtor") to solicit acceptances of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (the "Plan").[3]

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence on January 26, 2021 at 9:30 a.m. prevailing Central Time, before The Honorable Stacey G. C. Jernigan, in the United States Bankruptcy Court for the Northern District of Texas (Dallas Division), located at Earle Cabell Federal Building, 1100 Commerce Street, 14th Floor, Courtroom No. 1, Dallas, TX 75242-1496. The deadline for filing objections to the Plan was January 5, 2021, at 5:00 p.m., prevailing Central Time.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtor's records reflect that you are a party to a contract to be assumed by the Debtor pursuant to the Plan Supplement [Docket No. 1606] filed on December 18, 2020. Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtor is proposing to assume your Executory Contract(s) and Unexpired Lease(s), listed in **Schedule A** attached hereto, to which you are a party.[4]

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtor has conducted a thorough review of its books and records and has determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in the table on **Schedule A** attached hereto. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtor believes that there is no cure amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT**, absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified on **Schedule A** attached hereto will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtor in Cash on the Effective Date or as soon as reasonably practicable thereafter. In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and approving the assumption. If an objection to the proposed assumption or related cure amount is sustained by the

---

[3] Capitalized terms not defined herein shall have the same meaning as ascribed in the Plan.

[4] Nothing contained in the Plan or the Debtor's schedule of assets and liabilities shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption that the Debtor or the Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement. Further, the Debtor expressly reserves the right to remove any Executory Contract or Unexpired Lease from assumption by the Debtor and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan.

000871

Court, however, the Debtor may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the assumption of an Executory Contract or Unexpired Lease is __January 20, 2021, at 5:00 p.m.,__ prevailing Central Time. Any objection to the assumption of your Executory Contract or Unexpired Lease must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Northern District of Texas; (c) state, with particularity, the name and address of the objecting party, the basis and nature of any objection the assumption of the Executory Contract or Unexpired Lease, and, if practicable, a proposed modification such proposed assumption that would resolve such objection; (d) be served on counsel for the Debtor set forth in the signatory block below; and (e) be filed with the Court on or before January 20, 2021 at 5:00 p.m. prevailing Central Time.

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption of the Executory Contract(s) and Unexpired Lease(s) proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the first omnibus hearing following the Confirmation Hearing (or such other date as fixed by the Court).

> **PLEASE TAKE FURTHER NOTICE THAT ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT FAILS TO OBJECT TIMELY TO EITHER THE PROPOSED ASSUMPTION OF SUCH CONTRACT OR LEASE OR THE CURE AMOUNT WILL BE DEEMED TO HAVE ASSENTED TO SUCH ASSUMPTION AND CURE AMOUNT.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE THE DEBTOR OR REORGANIZED DEBTOR ASSUMES SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement Order, Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may: (a) access the Debtor's restructuring website at http://www.kccllc.net/hcmlp; (b) write to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (c) call toll free: (877) 573-3984 or international: (310) 751-1829 and request to speak with a member of the Solicitation Group; or (d) email HighlandInfo@kccllc.com and reference "Highland" in the subject line. You may also obtain copies of any pleadings filed in this case for a fee via PACER at: pacer.uscourts.gov.

000872

Alternatively, you can obtain a copy of these documents by contacting counsel for the Debtor (a) by e-mail, at gdemo@pszjlaw.com, (b) by telephone, by contacting Gregory Demo at (212) 561-7700, or (c) by mail, at Pachulski Stang Ziehl & Jones LLP, Attn: Gregory Demo, 780 Third Avenue, 34th Floor, New York, NY 10017. Please specify whether you would like to receive copies of these documents by (i) **e-mail transmission** (in which case, please include your e-mail address), (ii) on a **CD-ROM or flash drive** delivered by return mail, or (iii) in **paper copies** delivered by return mail.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

---

Dated: January 11, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

000873

**Schedule A**

**Schedule of Assumed Contracts and Leases and Proposed Cure**

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure |
|---|---|---|---|
| Highland Capital Management, L.P. | American Banknote Corporation Attn: Patrick J. Gentile | Stockholders' Agreement | 0.00 |
| Highland Capital Management, L.P. | Carey Holdings, Inc. Attn: General Counsel | Stockholders' Agreement and Amendment No. 1 | 0.00 |
| Highland Capital Management, L.P. | Cornerstone Healthcare Group Holding, Inc. Attn: Michael Brohm | Stockholders' Agreement and Amendment | 0.00 |
| Highland Capital Management, L.P. | Highland CLO Funding, Ltd. | Members' Agreement and Amendment | 0.00 |
| Highland Capital Management, L.P. | Progenics Pharmaceuticals, Inc. Attn: CEO | Stock Purchase and Sale Agreement and Amendment | 0.00 |
| Highland Capital Management, L.P. | JHT Holdings, Inc. Attn: Christopher Reehl | Stockholders' Agreement and Amendments | 0.00 |
| Highland Capital Management, L.P. | Highland Dynamic Income Fund GP, LLC | Amended and Restated Limited Partnership Agreement of Highland Dynamic Income Fund, L.P. | 0.00 |
| Highland Capital Management, L.P. | Highland Multi-Strategy Fund GP, L.P. James Dondero | Highland Multi-Strategy Fund, L.P. Limited Partnership Agreement | 0.00 |
| Highland Capital Management, L.P. | ENA Capital, LLC Ellman Management Group, Inc. Attn: Steve Ellman and Bob Kauffman | Operating Agreement of HE Capital, LLC First Amendment Second Amendment | 0.00 |
| Highland Capital Management, L.P. | Highland Multi-Strategy Master Fund, L.P. | Limited Liability Company Agreement of Highland Multi-Strategy Onshore Master SubFund II, LLC | 0.00 |
| Highland Capital Management, L.P. | Highland Multi-Strategy Master Fund, L.P. | Limited Liability Company Agreement of Highland Multi-Strategy Onshore Master SubFund, LLC | 0.00 |
| Highland Capital Management, L.P. | Highland Capital Management, L.P. | Limited Liability Company Agreement of Highland Receivables Finance 1, LLC | 0.00 |
| Highland Capital Management, L.P. | Highland Restoration Capital Partners GP, LLC | Agreement of Limited Partnership of Highland Restoration Capital Partners, L.P. and Amendments | 0.00 |
| Highland Capital Management, L.P. | Highland Select Equity Fund GP, LLC | Agreement of Limited Partnership of Highland Select Equity Fund GP, L.P. | 0.00 |
| Highland Capital Management, L.P. | Penant Management GP, LLC | Agreement of Limited Partnership of Penant Management LP | 0.00 |

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure |
|---|---|---|---|
| Highland Capital Management, L.P. | Petrocap Incentive Partners III GP, LLC<br>Petrocap Incentive Holdings III, LP<br>Attn: Lee Britain | Agreement of Limited Partnership of Petrocap Incentive Partners III, LP | 0.00 |
| Highland Capital Management, L.P. | Petrocap Partners II GP, LLC<br>Petrocap Incentive Partners II, LP | Amended and Restated Agreement of Limited Partnership of Petrocap Partners II, LP | 0.00 |
| Highland Capital Management, L.P. | Highland Credit Opportunities CDO GP, LLC | Agreement of Limited Partnership of Highland Credit Opportunities CDO GP, L.P. | 0.00 |
| Highland Capital Management, L.P. | Highland Multi Strategy Credit Fund GP, L.P. | Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P. | 0.00 |
| Highland Capital Management, L.P. | DUO Security | 2 factor authentication | 0.00 |
| Highland Capital Management, L.P. | GoDaddy | Domain Registrations | 0.00 |
| Highland Capital Management, L.P. | Highland Loan Fund, Ltd. et al | Investment Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Mxtoolbox | E Mailflow Monitoring | 0.00 |
| Highland Capital Management, L.P. | Onelogin | Cloud single sign on for HR related employee login | 0.00 |
| Highland Capital Management, L.P. | Pam Capital Funding LP/Ranger Asset Mgt LP | Collateral Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Pamco Cayman Ltd./Ranger Asset Mgt LP | Collateral Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd. et al | Amendment No. 1 to Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Rockwall CDO Ltd. | Interim Collateral Management Agreement | 0.00 |
| Highland Capital Management, L.P. | Rockwall CDO Ltd. | Amendment No. 1 to Servicing Agreement | 0.00 |
| Highland Capital Management, L.P. | Strand Advisors Inc. | 4th Amended & Restated Agreement of Ltd Partnership of HCMLP | 0.00 |
| Highland Capital Management, L.P. | Highland Park CDO I, Ltd.<br>The Bank of New York Trust Company, National Association | Collateral Administration Agreement | 0.00 |

000876

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure |
|--------|-------------|-------------------------------------------|------|
| Highland Capital Management, L.P. | Highland Park CDO I, Ltd. | Representations and Warranties Agreement | 0.00 |
| Highland Capital Management, L.P. | Aberdeen Loan Funding, Ltd. and State Street Bank and Trust Company | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Greenbriar CLO, Ltd. and State Street Bank and Trust Company | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Eastland CLO, Ltd. | Collateral Acquisition Agreement | 0.00 |
| Highland Capital Management, L.P. | Eastland CLO, Ltd. and Investors Bank and Trust Company | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Gleneagles CLO, Ltd.; JPMorgan Chase Bank, National Association | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Grayson CLO, Ltd. | Collateral Acquisition Agreement | 0.00 |
| Highland Capital Management, L.P. | Grayson CLO, Ltd.; Investors Bank & Trust Company | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Red River CLO, Ltd. | Collateral Acquisition Agreement | 0.00 |
| Highland Capital Management, L.P. | Red River CLO, Ltd.; U.S. Bank National Association | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd.; Highland Special Opportunities Holding Company | Master Warehousing and Participation Agreement | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc. | Master Warehousing and Participation Agreement | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc. | Master Warehousing and Participation Agreement (Amendment No. 2) | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc. | Master Warehousing and Participation Agreement (Amendment No. 1) | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc. | Master Warehousing and Participation Agreement (Amendment No. 3) | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc. | Master Warehousing and Participation Agreement (Amendment No. 4) | 0.00 |

000877

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure |
|---|---|---|---|
| Highland Capital Management, L.P. | Red River CLO Ltd.; U.S. Bank National Association; IXIS Financial Products Inc. | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd.; Highland Special Opportunities Holding Company; U.S. Bank National Association | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Red River CLO Ltd.; Grand Central Asset Trust | Master Participation Agreement | 0.00 |
| Highland Capital Management, L.P. | Salomon Smith Barney Inc.; Highland Loan Funding V Ltd. | A&R Asset Acquisition Agreement | 0.00 |
| Highland Capital Management, L.P. | Salomon Brothers Holding Company, Highland Loan Funding V Ltd. | A&R Master Participation Agreement | 0.00 |
| Highland Capital Management, L.P. | Jasper CLO Ltd. | Collateral Acquisition Agreement | 0.00 |
| Highland Capital Management, L.P. | Jasper CLO Ltd.; JPMorgan Chase Bank, National Association | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc. | Master Warehousing and Participation Agreement | 0.00 |
| Highland Capital Management, L.P. | Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc. | Master Warehousing and Participation Agreement (Amendment No. 1) | 0.00 |
| Highland Capital Management, L.P. | Highland CDO Opportunity Fund, Ltd.; IXIS Financial Products Inc.; JPMorgan Chase Bank, National Association | Loan and Security Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland CDO Opportunity Fund, Ltd.; JPMorgan Chase Bank, National Association | Securities Account Control Agreement | 0.00 |
| Highland Capital Management, L.P. | Liberty CLO Ltd. | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Rockwall CDO Ltd; JPMorgan Chase Bank, National Association | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Rockwall CDO II, Ltd.; Investors Bank & Trust Company | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Southfork CLO Ltd.; JPMorgan Chase Bank, National Association | Collateral Administration Agreement | 0.00 |
| Highland Capital | Stratford CLO Ltd.; State Street | Collateral Administration Agreement | 0.00 |

000878

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure |
|---|---|---|---|
| Management, L.P. | Bank and Trust Company | | |
| Highland Capital Management, L.P. | Valhalla CLO, Ltd.; JPMorgan Chase Bank | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Citigroup Financial Products Inc.; Citigroup Global Markets Inc. | Extension/Buy-Out Agreement | 0.00 |
| Highland Capital Management, L.P. | Highland CDO and Structured Products Fund, Ltd.; Citigroup Financial Products Inc.; JPMorgan Chase Bank | Loan and Security Agreement | 0.00 |
| Highland Capital Management, L.P. | Westchester CLO, Ltd. | Collateral Acquisition Agreement | 0.00 |
| Highland Capital Management, L.P. | Westchester CLO, Ltd.; Investors Bank & Trust Company | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | Brentwood CLO, Ltd.; Investors Bank & Trust Company | Collateral Administration Agreement | 0.00 |
| Highland Capital Management, L.P. | CenturyLink Communications, LLC | Order Addenda | 0.00 |
| Highland Capital Management, L.P. | Intex Solutions, Inc. | Service Agreement (as amended) | 0.00 |

000879