**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re:** Highland Capital Management, L.P | § | Case No. 19-34054-SGJ-11 |
| Highland Capital Management Fund Advisors, L.P. | | |
| et al | § | |
| Appellant | § | |
| vs. | § | |
| Highland Capital Management, L.P., | | |
| | § | 3:21-CV-00538-N |
| Appellee | § | |

[1943] **Order confirming the fifth amended chapter 11 plan,** Entered on 2/22/2021.

# APPELLANT RECORD
# VOLUME 4

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

$INDEX$

## AMENDED DESIGNATION BY NEXPOINT ADVISORS, L.P. AND HIGHLAND
## CAPITAL MANAGEMENT FUND ADVISORS, L.P.
## OF ITEMS FOR THE RECORD ON APPEAL

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,

L.P. (the "Appellants"), creditors and parties-in-interest in the above styled and numbered

bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"),

and, with respect to their *Notice of Appeal* [docket no. 1957], hereby file their *Amended*

*Designation of Items for the Record on Appeal* (the "Designation") as follows:

| | Item | Bankruptcy Docket Number | Description |
|---|---|---|---|
| | | | **Pleadings and Items on Docket** |
| *Vol. 1* 000001 | 1 | 1957 | Notice of Appeal |
| 000165 000326 | 2 | 1943 | Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief |
| | 3 | | Docket Sheet of Bankruptcy Case No. 19-34054 |
| *Vol. 2* 000639 | 4 | 1606 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000666 | 5 | 1648 | Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000675 | 6 | 1656 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000820 | 7 | 1670 | Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000870 | 8 | 1719 | Second Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| *Vol. 3* 000880 | 9 | 1749 | Third Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000886 | 10 | 1772 | Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000901 | 11 | 1791 | Notice of Withdrawal of Certain Executory Contracts and Unexpired Leases from List of Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan |
| 000906 | 12 | 1807 | Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management |
| 001031 | 13 | 1808 | Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) |
| *Vol. 4* 001097 | 14 | 1811 | Notice of Filing Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications) |
| *Vol. 5* 001346 | 15 | 1814 | Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |

| | 16 | 1847 | Fourth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| | 17 | 1873 | Fifth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| | 18 | 1875 | Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland of Highland Capital Management, L.P. (As Modified) |
| | 19 | 1887 | Supplemental Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| | 20 | 1671 | United States Trustee's Limited Objection to Confirmation of Debtors' Fifth Amended Plan of Reorganization |
| **Evidence and Transcripts** | | | |
| | 21 | 1894 | Transcript of February 2, 2021 Confirmation Hearing |
| | 22 | 1905 | Transcript of February 3, 2021 Confirmation Hearing |
| | 23 | 1917 | Transcript of February 8, 2021 Bench Ruling |
| | 24 | 1794 1795 1822 1863 1866 1877 1895 1915 | All exhibits admitted into evidence during February 2 and February 3, 2021 Confirmation Hearing |

Handwritten annotations:
Vol 5
00 1414
00 1421
00 1427
00 1475
00 1482
00 1488
081783
002040
082091
002188
Vol 12 - 002931
Vol 50 - 013295
- 013297
Vol. 51 - 013373
Vol. 54 - 014182
Vol 55 - 014506

✱ 1822 - Vol. 12 — 50 (39 Volumes)

RESPECTFULLY SUBMITTED this 22d day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
   Davor Rukavina, Esq.
   Texas Bar No. 24030781
   3800 Ross Tower
   500 N. Akard Street
   Dallas, Texas 75201-6659
   Telephone: (214) 855-7500
   Facsimile: (214) 855-7584
   Email:    drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this the 22d day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Debtor.

By: /s/ Davor Rukavina
   Davor Rukavina, Esq.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S NOTICE OF FILING OF PLAN SUPPLEMENT TO THE FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P. (WITH TECHNICAL MODIFICATIONS)

**PLEASE TAKE NOTICE** that Highland Capital Management, L.P., the above-

captioned debtor and debtor-in-possession (the "Debtor"), filed the *Debtor's Notice of Filing of*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

*Supplement to Third Amended Plan of Reorganization of Highland Capital Management, L.P.*, on November 13, 2020 [Docket No. 1389] (the "Initial Supplement").  The Initial Supplement included Exhibits A-H to the Plan (as defined below).

PLEASE TAKE NOTICE that on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472].

PLEASE TAKE NOTICE that the Debtor filed the *Debtor's Notice of Filing of Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* on December 18, 2020 [Docket No. 1606] (the "Second Supplement").  The Second Supplement included Exhibits I-K to the Plan.

PLEASE TAKE NOTICE that the Debtor filed the *Debtor's Notice of Filing of Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* on January 4, 2021 [Docket No. 1656] (the "Third Supplement").  The Third Supplement included Exhibits L-P to the Plan.

PLEASE TAKE NOTICE that on January 22, 2021, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (as subsequently amended and/or modified, the "Plan").

PLEASE TAKE NOTICE that the Debtor hereby files the documents included herewith as **Exhibits Q-CC** (collectively, the "Fourth Plan Supplement") further supplementing the Plan:

| | |
|---|---|
| **Exhibit Q**: | Amended Schedule of Retained Causes of Action (supersedes Exhibits E and L); |
| **Exhibit R**: | Amended Form of Claimant Trust Agreement (supersedes Exhibits A and M); |
| **Exhibit S**: | Redline of Form of Claimant Trust Agreement (against Exhibit M); |
| **Exhibit T**: | Amended Form of Litigation Trust Agreement (supersedes Exhibits D and O); |

001098

**Exhibit U**:    Redline of Form of Litigation Trust Agreement (against Exhibit P)

**Exhibit V**:    Amended Form of Senior Employee Stipulation (supersedes Exhibit H and J);

**Exhibit W**:    Redline of Form of Senior Employee Stipulation (against Exhibit J);

**Exhibit X**:    Schedule of Contracts and Leases to Be Assumed (supersedes Exhibit H and I);

**Exhibit Y**:    Related Entity List;

**Exhibit Z**    Form of Reorganized Limited Partnership Agreement (supersedes Exhibit C);

**Exhibit AA**    Redline of Form of Reorganized Limited Partnership Agreement (against Exhibit C);

**Exhibit BB**    Senior Employee Stipulation (executed by Thomas Surgent);

**Exhibit CC**    Senior Employee Stipulation (executed by Frank Waterhouse); and

**Exhibit DD**    Schedule of Employees (supersedes Exhibit G).

**PLEASE TAKE FURTHER NOTICE** that this *Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with technical modifications)* (the "Notice of Plan Supplement") is being served on parties-in-interest without the Fourth Plan Supplement attached. Any party-in-interest wishing to obtain copies of the Plan or the Fourth Plan Supplement may do so by (i) contacting the Debtor's Solicitation Agent, KCC, at (i) 1-877-573-3984 (toll free) or 1-310-751-1829 (if international) or by email at HighlandInfo@kccllc.com, or (ii) viewing such documents by accessing them online at https://kccllc.net/HCMLP. The documents are also available on the Court's website: www.txnb.uscourts.gov. Please note that a PACER password and login are needed to access documents on the Court's website.

DOCS_NY:41894.1 36027/002

001099

Dated: January 22, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

DOCS_NY:41894.1 36027/002

001100

# EXHIBIT Q

Schedule of Causes of Action

The Causes of Action shall include, *without limitation*, any cause of action based on the following:

breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, misappropriation of assets, misappropriation of trade secrets, unfair competition, breach of contract, breach of warranty, fraud, constructive fraud, negligence, gross negligence, fraudulent conveyance, fraudulent transfer, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, *quantum meruit*, unjust enrichment, abuse of process, alter ego, substantive consolidation, recharacterization, business disparagement, indemnity, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel, quasi-contract claims, any counterclaims, equitable subordination, avoidance actions provided for under sections 544 or 547 of the Bankruptcy Code, claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

The Causes of Action shall include, *without limitation*, any cause of action against the following persons and entities:

James Dondero, Mark Okada, Grant Scott, John Honis, any current or former insider of the Debtor, the Dugaboy Investment Trust, Charitable DAF Holdco, Ltd, Hunter Mountain Investment Trust, Nexbank Capital, Inc. Highland Capital Management Services, Inc., NexPoint Advisors GP, LLC, NexPoint Advisors, L.P., Strand Advisors XVI, Inc., Highland Capital Management Fund Advisors, L.P., NexAnnuity Holdings, Inc., the entities listed on the attached **Annex 1** hereto, any current or former employee of the Debtor, and any entity directly or indirectly owned, controlled, or operated for the benefit of the foregoing persons or entities.

The Causes of Action shall include, *without limitation*, any cause of action arising from the following transactions:

The transfer of ownership interests in the Debtor to Hunter Mountain Investment Trust, the creation or transfer of any notes receivable from the Debtor or from any entity related to the Debtor, the creation or transfer of assets to or from any charitable foundation or trust, the formation, performance, or breach of any contract for the Debtor to provide investment management, support services, or any other services, and the distribution of assets or cash from the Debtor to partners of the Debtor.

**Annex 1**

11 Estates Lane, LLC
1110 Waters, LLC
140 Albany, LLC
1525 Dragon, LLC
17720 Dickerson, LLC
1905 Wylie LLC
2006 Milam East Partners GP, LLC
2006 Milam East Partners, L.P.
201 Tarrant Partners, LLC
2014 Corpus Weber Road LLC
2325 Stemmons HoldCo, LLC
2325 Stemmons Hotel Partners, LLC
2325 Stemmons TRS, Inc.
300 Lamar, LLC
3409 Rosedale, LLC
3801 Maplewood, LLC
3801 Shenandoah, L.P.
3820 Goar Park LLC
400 Seaman, LLC
401 Ame, L.P.
4201 Locust, L.P.
4312 Belclaire, LLC
5833 Woodland, L.P.
5906 DeLoache, LLC
5950 DeLoache, LLC
7758 Ronnie, LLC
7759 Ronnie, LLC
AA Shotguns, LLC
Aberdeen Loan Funding, Ltd.
Acis CLO 2017-7 Ltd
Acis CLO Management GP, LLC
Acis CLO Management GP, LLC *(fka Acis CLO Opportunity Funds GP, LLC)*
Acis CLO Management Holdings, L.P.
Acis CLO Management Intermediate Holdings I, LLC
Acis CLO Management Intermediate Holdings II, LLC
Acis CLO Management, LLC *(fka Acis CLO Opportunity Funds SLP, LLC)*
Acis CLO Trust

Acis CLO Value Fund II Charitable DAF Ltd.
Acis CMOA Trust
Advisors Equity Group LLC
Alamo Manhattan Hotel I, LLC (Third Party)
Allenby, LLC
Allisonville RE Holdings, LLC
AM Uptown Hotel, LLC
Apex Care, L.P
Asbury Holdings, LLC *(fka HCSLR Camelback Investors (Delaware), LLC)*
Ascendant Advisors
Atlas IDF GP, LLC
Atlas IDF, LP
BB Votorantim Highland Infrastructure, LLC
BDC Toys Holdco, LLC
Beacon Mountain, LLC
Bedell Trust Ireland Limited (Charitable trust account)
Ben Roby (third party)
BH Equities, LLC
BH Heron Pointe, LLC
BH Hollister, LLC
BH Willowdale Manager, LLC
Big Spring Partners, LLC
Blair Investment Partners, LLC
Bloomdale, LLC
Brave Holdings III Inc.
Brentwood CLO, Ltd.
Brentwood Investors Corp.
Brian Mitts
Bristol Bay Funding Ltd.
Bristol Bay Funding, Ltd.
BVP Property, LLC
C-1 Arbors, Inc.
C-1 Cutter's Point, Inc.
C-1 Eaglecrest, Inc.
C-1 Silverbrook, Inc.
Cabi Holdco GP, LLC
Cabi Holdco I, Ltd
Cabi Holdco I, Ltd.

Cabi Holdco, L.P.

California Public Employees' Retirement System

Camelback Residential Investors, LLC

Camelback Residential Investors, LLC *(fka Sevilla Residential Partners, LLC)*

Camelback Residential Partners, LLC

Capital Real Estate - Latitude, LLC

Castle Bio Manager, LLC

Castle Bio, LLC

CG Works, Inc.

CG Works, Inc. (fka Common Grace Ventures, Inc.)

Charitable DAF Fund, L.P.

Charitable DAF GP, LLC

Charitable DAF HoldCo, Ltd

Charitable DAF HoldCo, Ltd.

Claymore Holdings, LLC

CLO HoldCo, Ltd

CLO Holdco, Ltd.

Corbusier, Ltd.

Cornerstone Healthcare Group Holding, Inc.

Corpus Weber Road Member LLC

CP Equity Hotel Owner, LLC

CP Equity Land Owner, LLC

CP Equity Owner, LLC

CP Hotel TRS, LLC

CP Land Owner, LLC

CP Tower Owner, LLC

CRE - Lat, LLC

Credit Suisse, Cayman Islands Branch

Crossings 2017 LLC

Crown Global Insurance Company (third party)

Dallas Cityplace MF SPE Owner LLC

Dallas Lease and Finance, L.P.

Dana Scott Breault
James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Dana Sprong (Third Party)

David c. Hopson

De Kooning, Ltd.

deKooning, Ltd.

DFA/BH Autumn Ridge, LLC

Dolomiti, LLC

DrugCrafters, L.P.

Dugaboy Investment Trust

Dugaboy Management, LLC

Dugaboy Project Management GP, LLC

Eagle Equity Advisors, LLC

Eames, Ltd.

Eastland CLO, Ltd.

Eastland Investors Corp.

EDS Legacy Heliport, LLC

EDS Legacy Partners Owner, LLC

EDS Legacy Partners, LLC

Empower Dallas Foundation, Inc.

ENA 41, LLC

Entegra Strat Superholdco, LLC

Entegra-FRO Holdco, LLC

Entegra-FRO Superholdco, LLC

Entegra-HOCF Holdco, LLC

Entegra-NHF Holdco, LLC

Entegra-NHF Superholdco, LLC

Entegra-RCP Holdco, LLC

Estates on Maryland Holdco, LLC

Estates on Maryland Owners SM, Inc.

Estates on Maryland Owners, LLC

Estates on Maryland, LLC

Falcon E&P Four Holdings, LLC

Falcon E&P One, LLC

Falcon E&P Opportunities Fund, L.P.

Falcon E&P Opportunities GP, LLC

Falcon E&P Royalty Holdings, LLC

Falcon E&P Six, LLC

Falcon E&P Two, LLC

Falcon Four Midstream, LLC

Falcon Four Upstream, LLC

Falcon Incentive Partners GP, LLC

Falcon Incentive Partners, LP

Falcon Six Midstream, LLC

Flamingo Vegas Holdco, LLC *(fka Cabi Holdco, LLC)*

Four Rivers Co-Invest GP, LLC

Four Rivers Co-Invest, L.P.

FRBH Abbington SM, Inc.

FRBH Abbington, LLC

FRBH Arbors, LLC

FRBH Beechwood SM, Inc.

FRBH Beechwood, LLC

FRBH C1 Residential, LLC

FRBH Courtney Cove SM, Inc.

FRBH Courtney Cove, LLC

FRBH CP, LLC

FRBH Duck Creek, LLC

FRBH Eaglecrest, LLC

FRBH Edgewater JV, LLC

FRBH Edgewater Owner, LLC

FRBH Edgewater SM, Inc.

FRBH JAX-TPA, LLC

FRBH Nashville Residential, LLC

FRBH Regatta Bay, LLC

FRBH Sabal Park SM, Inc.

FRBH Sabal Park, LLC

FRBH Silverbrook, LLC

FRBH Timberglen, LLC

FRBH Willow Grove SM, Inc.

FRBH Willow Grove, LLC

FRBH Woodbridge SM, Inc.

FRBH Woodbridge, LLC

Freedom C1 Residential, LLC

Freedom Duck Creek, LLC

Freedom Edgewater, LLC

Freedom JAX-TPA Residential, LLC

Freedom La Mirage, LLC

Freedom LHV LLC

Freedom Lubbock LLC

Freedom Miramar Apartments, LLC

Freedom Sandstone, LLC

Freedom Willowdale, LLC

Fundo de Investimento em Direitos Creditorios BB Votorantim Highland Infraestrutura

G&E Apartment REIT The Heights at Olde Towne, LLC

G&E Apartment REIT The Myrtles at Olde Towne, LLC

GAF REIT, LLC

GAF Toys Holdco, LLC

Gardens of Denton II, L.P.

Gardens of Denton III, L.P.

Gleneagles CLO, Ltd.

Goverannce RE, Ltd.

Governance Re, Ltd.

Governance, Ltd.

Grant Scott

Grant Scott, Trustee of The SLHC Trust

Grayson CLO, Ltd.

Grayson Investors Corp.

Greater Kansas City Community Foundation (third party)

Greenbriar CLO, Ltd.

Greg Busseyt

Gunwale LLC

Gunwale, LLC

Hakusan, LLC

Hammark Holdings LLC

Hampton Ridge Partners, LLC

Harbourvest Entities

Harko, LLC

Harry Bookey/Pam Bookey (third party)

Haverhill Acquisition Co., LLC

Haygood, LLC

HB 2015 Family LP (third party)

HCBH 11611 Ferguson, LLC

HCBH Buffalo Pointe II, LLC

HCBH Buffalo Pointe III, LLC

HCBH Buffalo Pointe, LLC

HCBH Hampton Woods SM, Inc.

HCBH Hampton Woods, LLC

HCBH Overlook SM, Inc.

HCBH Overlook, LLC

HCBH Rent Investors, LLC

HCMS Falcon GP, LLC

HCMS Falcon, L.P.

HCO Holdings, LLC

HCOF Preferred Holdings, L.P.

HCOF Preferred Holdings, LP

HCOF Preferred Holdings, Ltd.

HCRE 1775 James Ave, LLC

HCRE Addison TRS, LLC

HCRE Addison, LLC *(fka HWS Addison, LLC)*

HCRE Hotel Partner, LLC *(fka HCRE HWS Partner, LLC)*

HCRE Las Colinas TRS, LLC

HCRE Las Colinas, LLC *(fka HWS Las Colinas, LLC)*

HCRE Plano TRS, LLC

HCRE Plano, LLC *(fka HWS Plano, LLC)*

HCREF-I Holding Corp.

HCREF-II Holding Corp.

HCREF-III Holding Corp.

HCREF-IV Holding Corp.

HCREF-IX Holding Corp.

HCREF-V Holding Corp.

HCREF-VI Holding Corp.

HCREF-VII Holding Corp.

HCREF-VIII Holding Corp.

HCREF-XI Holding Corp.

HCREF-XII Holding Corp.

HCREF-XIII Holding Corp.

HCREF-XIV Holding Corp.

HCREF-XV Holding Corp.

HCSLR Camelback Investors (Cayman), Ltd.

HCSLR Camelback, LLC

HCT Holdco 2 Ltd.

HCT Holdco 2, Ltd.

HE 41, LLC

HE Capital 232 Phase I Property, LLC

HE Capital 232 Phase I, LLC

HE Capital Asante, LLC

HE Capital Fox Trails, LLC

HE Capital KR, LLC

HE Capital, LLC

HE CLO Holdco, LLC

HE Mezz Fox Trails, LLC

HE Mezz KR, LLC

HE Peoria Place Property, LLC

HE Peoria Place, LLC

Heron Pointe Investors, LLC

Hewett's Island CLO I-R, Ltd.

HFP Asset Funding II, Ltd.

HFP Asset Funding III, Ltd.

HFP CDO Construction Corp.

HFP GP, LLC

HFRO Sub, LLC

Hibiscus HoldCo, LLC

Highland - First Foundation Income Fund

Highland 401(k) Plan

Highland 401K Plan

Highland Argentina Regional Opportunity Fund GP, LLC

Highland Argentina Regional Opportunity Fund, L.P.

Highland Argentina Regional Opportunity Fund, Ltd.

Highland Argentina Regional Opportunity Master Fund, L.P.

Highland Brasil, LLC

Highland Capital Brasil Gestora de Recursos *(fka Highland Brasilinvest Gestora de Recursos, LTDA; fka HBI Consultoria Empresarial, LTDA)*

Highland Capital Management (Singapore) Pte Ltd

Highland Capital Management AG

Highland Capital Management AG (Highland Capital Management SA) (Highland Capital Management Ltd)

Highland Capital Management Fund Advisors, L.P.

Highland Capital Management Fund Advisors, L.P. *(fka Pyxis Capital, L.P.)*

Highland Capital Management Korea Limited

Highland Capital Management Latin America, L.P.

Highland Capital Management LP Retirement Plan and Trust

Highland Capital Management Multi-Strategy Insurance Dedicated Fund, L.P.

Highland Capital Management Real Estate Holdings I, LLC

Highland Capital Management Real Estate Holdings II, LLC

Highland Capital Management Services, Inc.

Highland Capital Management, L.P.

Highland Capital Management, L.P. Charitable Fund

Highland Capital Management, L.P. Retirement Plan and Trust

Highland Capital Management, L.P., as trustee of Acis CMOA Trust and nominiee for and on behalf of Highland CLO Assets Holdings Limited

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominiee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, LP

Highland Capital Management, LP Charitable Fund

Highland Capital Multi-Strategy Fund, LP

Highland Capital of New York, Inc.

Highland Capital Special Allocation, LLC

Highland CDO Holding Company

Highland CDO Opportunity Fund GP, L.P.

Highland CDO Opportunity Fund, L.P.

Highland CDO Opportunity Fund, Ltd.

Highland CDO Opportunity GP, LLC

Highland CDO Opportunity Master Fund, L.P.

Highland CDO Trust

Highland CLO 2018-1, Ltd.

Highland CLO Assets Holdings Limited

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd. *(fka Acis Loan Funding, Ltd.)*

Highland CLO Gaming Holdings, LLC

Highland CLO Holdings Ltd.

Highland CLO Holdings, Ltd. (as of 12.19.17)

Highland CLO Management Ltd.

Highland CLO Trust

Highland Credit Opportunities CDO Asset Holdings GP, Ltd.

Highland Credit Opportunities CDO Asset Holdings, L.P.

Highland Credit Opportunities CDO Financing, LLC

Highland Credit Opportunities CDO, Ltd.

Highland Credit Opportunities Holding Corporation

Highland Credit Opportunities Japanese Feeder Sub-Trust

Highland Credit Opportunities Japanese Unit Trust (Third Party)

Highland Credit Strategies Fund, L.P.

Highland Credit Strategies Fund, Ltd.

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Master Fund, L.P.

Highland Dallas Foundation, Inc.

Highland Dynamic Income Fund GP, LLC

Highland Dynamic Income Fund GP, LLC *(fka Highland Capital Loan GP, LLC)*

Highland Dynamic Income Fund, L.P.

Highland Dynamic Income Fund, L.P. *(fka Highland Capital Loan Fund, L.P.)*

Highland Dynamic Income Fund, Ltd.

Highland Dynamic Income Fund, Ltd. *(fka Highland Loan Fund, Ltd.)*

Highland Dynamic Income Master Fund, L.P.

Highland Dynamic Income Master Fund, L.P. *(fka Highland Loan Master Fund, L.P.)*

Highland Employee Retention Assets LLC

Highland Energy Holdings, LLC

Highland Energy MLP Fund *(fka Highland Energy and Materials Fund)*

Highland Equity Focus Fund, L.P.

Highland ERA Management, LLC

Highland eSports Private Equity Fund

Highland Financial Corp.

Highland Financial Partners, L.P.

Highland Fixed Income Fund

Highland Flexible Income UCITS Fund

Highland Floating Rate Fund

Highland Floating Rate Opportunites Fund

Highland Floating Rate Opportunities Fund

Highland Fund Holdings, LLC

Highland Funds I

Highland Funds II

Highland Funds III

Highland GAF Chemical Holdings, LLC

Highland General Partner, LP

Highland Global Allocation Fund

Highland Global Allocation Fund *(fka Highland Global Allocation Fund II)*

Highland GP Holdings, LLC

Highland HCF Advisor Ltd.

Highland HCF Advisor, Ltd., as Trustee for and on behalf of Acis CLO Trust, as nominee for and on behalf of Highland CLO Funding, Ltd. (as of 3.29.18)

Highland Healthcare Equity Income and Growth Fund

Highland iBoxx Senior Loan ETF

Highland Income Fund

Highland Income Fund *(fka Highland Floating Rate Opportunities Fund)*

Highland Kansas City Foundation, Inc.

Highland Latin America Consulting, Ltd.

Highland Latin America Ltd.

Highland Latin America LP, Ltd.

Highland Latin America Trust

Highland Legacy Limited

Highland LF Chemical Holdings, LLC

Highland Loan Funding V, LLC

Highland Loan Funding V, Ltd.

Highland Long/Short Equity Fund

Highland Long/Short Healthcare Fund

Highland Marcal Holding, Inc.

Highland Merger Arbitrage Fund

Highland Multi Strategy Credit Fund GP, L.P.

Highland Multi Strategy Credit Fund GP, L.P. *(fka Highland Credit Opportunities CDO GP, L.P.)*

Highland Multi Strategy Credit Fund, L.P.

Highland Multi Strategy Credit Fund, L.P. *(fka Highland Credit Opportunities Fund, L.P., fka Highland Credit Opportunities CDO, L.P.)*

Highland Multi Strategy Credit Fund, Ltd.

Highland Multi Strategy Credit Fund, Ltd. *(fka Highland Credit Opportunities Fund, Ltd.)*

Highland Multi Strategy Credit GP, LLC

Highland Multi Strategy Credit GP, LLC *(fka Highland Credit Opportunities CDO GP, LLC)*

Highland Multi-Strategy Fund GP, LLC

Highland Multi-Strategy Fund GP, LP

Highland Multi-Strategy IDF GP, LLC

Highland Multi-Strategy Master Fund, L.P.

Highland Multi-Strategy Master Fund, LP

Highland Multi-Strategy Onshore Master SubFund II, LLC

Highland Multi-Strategy Onshore Master Subfund, LLC

Highland Opportunistic Credit Fund

Highland Park CDO 1, Ltd.

Highland Park CDO I, Ltd.

Highland Premier Growth Equity Fund

Highland Premium Energy & Materials Fund

Highland Prometheus Feeder Fund I, L.P.

Highland Prometheus Feeder Fund I, LP

Highland Prometheus Feeder Fund II, L.P.

Highland Prometheus Feeder Fund II, LP

Highland Prometheus Master Fund, L.P.

Highland Receivables Finance I, LLC

Highland Restoration Capital Partners GP, LLC

Highland Restoration Capital Partners Master, L.P.

Highland Restoration Capital Partners Offshore, L.P.

Highland Restoration Capital Partners, L.P.

Highland Santa Barbara Foundation, Inc.

Highland Select Equity Fund GP, L.P.

Highland Select Equity Fund, L.P.

Highland Select Equity GP, LLC

Highland Select Equity Master Fund, L.P.

Highland Small-Cap Equity Fund

Highland Socially Responsible Equity Fund

Highland Socially Responsible Equity Fund
*(fka Highland Premier Growth Equity Fund)*

Highland Special Opportunities Holding
Company

Highland SunBridge GP, LLC

Highland Tax-Exempt Fund

Highland TCI Holding Company, LLC

Highland Total Return Fund

Highland's Roads Land Holding Company,
LLC

Hirst, Ltd.

HMCF PB Investors, LLC

HMx2 Investment Trust
(Matt McGraner)

Hockney, Ltd.

HRT North Atlanta, LLC

HRT Timber Creek, LLC

HRTBH North Atlanta, LLC

HRTBH Timber Creek, LLC

Huber Funding LLC

Hunter Mountain Investment Trust

HWS Investors Holdco, LLC

Internal Investors

Intertrust

James D. Dondero
Reese Avry Dondero
Jameson Drue Dondero

James Dondero

James Dondero and Mark Okada

James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Japan Trustee Services Bank, Ltd.

Jasper CLO, Ltd.

Jewelry Ventures I, LLC

JMIJM, LLC

Joanna E. Milne Irrevocable Trust dated Nov
25 1998 (third party)

John Honis

John L. Holt, Jr.

John R. Sears, Jr.

Karisopolis, LLC

Keelhaul LLC

KHM Interests, LLC (third party)

Kuilima Montalban Holdings, LLC

Kuilima Resort Holdco, LLC

KV Cameron Creek Owner, LLC

Lakes at Renaissance Park Apartments
Investors, L.P.

Lakeside Lane, LLC

Landmark Battleground Park II, LLC

Lane Britain

Larry K. Anders

LAT Battleground Park, LLC

LAT Briley Parkway, LLC

Lautner, Ltd.

Leawood RE Holdings, LLC

Liberty Cayman Holdings, Ltd.

Liberty CLO Holdco, Ltd.

Liberty CLO, Ltd.

Liberty Sub, Ltd.

Long Short Equity Sub, LLC

Longhorn Credit Funding LLC

Longhorn Credit Funding LLC - A

Longhorn Credit Funding LLC - B

Longhorn Credit Funding LLC (LHB)

Longhorn Credit Funding, LLC

Lurin Real Estate Holdings V, LLC

Maple Avenue Holdings, LLC

MaplesFS Limited

Marc C. Manzo

Mark and Pam Okada Family Trust - Exempt
Descendants' Trust

Mark and Pam Okada Family Trust - Exempt
Trust #2

Mark and Pamela Okada Family Trust -
Exempt Descendants' Trust

Mark and Pamela Okada Family Trust -
Exempt Descendants' Trust #2

Mark and Pamela Okada Family Trust -
Exempt Trust #2

Mark K. Okada

Mark Okada

Mark Okada and Pam Okada
Mark Okada and Pam Okada, as joint owners
Mark Okada/Pamela Okada
Markham Fine Jewelers, L.P.
Markham Fine Jewelers, LP
Matt McGraner
Meritage Residential Partners, LLC
MGM Studios HoldCo, Ltd.
Michael Rossi
ML CLO XIX Sterling (Cayman), Ltd.
N/A
Nancy Dondero
NCI Apache Trail LLC
NCI Assets Holding Company LLC
NCI Country Club LLC
NCI Fort Worth Land LLC
NCI Front Beach Road LLC
NCI Minerals LLC
NCI Royse City Land LLC
NCI Stewart Creek LLC
NCI Storage, LLC
Neil Labatte
Neutra, Ltd.
New Jersey Tissue Company Holdco, LLC
*(fka Marcal Paper Mills Holding Company, LLC)*

NexAnnuity Holdings, Inc.
NexBank Capital Trust I
NexBank Capital, Inc.
NexBank Land Advisors, Inc.
NexBank Securities Inc.
NexBank Securities, Inc.

NexBank SSB
NexBank Title, Inc.
(dba NexVantage Title Services)
NexBank, SSB
NexPoint Advisors GP, LLC
NexPoint Advisors, L.P.
NexPoint Capital REIT, LLC
NexPoint Capital, Inc.
NexPoint Capital, Inc. *(fka NexPoint Capital, LLC)*

NexPoint CR F/H DST, LLC
NexPoint Credit Strategies Fund
NexPoint Discount Strategies Fund
*(fka NexPoint Discount Yield Fund)*

NexPoint DRIP
NexPoint Energy and Materials Opportunities
Fund *(fka NexPoint Energy Opportunities Fund)*

NexPoint Event-Driven Fund
*(fkaNexPoint Merger Arbitrage Fund)*

NexPoint Flamingo DST
NexPoint Flamingo Investment Co, LLC
NexPoint Flamingo Leaseco, LLC
NexPoint Flamingo Manager, LlC
NexPoint Flamingo Property Manager, LlC
NexPoint Healthcare Opportunities Fund
NexPoint Hospitality Trust
NexPoint Hospitality, Inc.
NexPoint Hospitality, LLC
NexPoint Insurance Distributors, LLC
NexPoint Insurance Solutions GP, LLC
NexPoint Insurance Solutions GP, LLC
*(fka Highland Capital Insurance Solutions GP, LLC)*

NexPoint Insurance Solutions, L.P.
*(fka Highland Capital Insurance Solutions, L.P.)*

NexPoint Latin American Opportunities Fund
NexPoint Legacy 22, LLC
NexPoint Lincoln Porte Equity, LLC
NexPoint Lincoln Porte Manager, LLC
NexPoint Lincoln Porte, LLC
*(fka NREA Lincoln Porte, LLC)*

NexPoint Multifamily Capital Trust, Inc.
NexPoint Multifamily Capital Trust, Inc.
*(fka NexPoint Multifamily Realty Trust, Inc., fka Highland Capital Realty Trust, Inc.)*

NexPoint Multifamily Operating Partnership, L.P.

NexPoint Peoria, LLC
NexPoint Polo Glen DST
NexPoint Polo Glen Holdings, LLC
NexPoint Polo Glen Investment Co, LLC

NexPoint Polo Glen Leaseco, LLC

NexPoint Polo Glen Manager, LLC

NexPoint RE Finance Advisor GP, LLC

NexPoint RE Finance Advisor, L.P.

NexPoint Real Estate Advisors GP, LLC

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors III, L.P.

NexPoint Real Estate Advisors IV, L.P.

NexPoint Real Estate Advisors V, L.P.

NexPoint Real Estate Advisors VI, L.P.

NexPoint Real Estate Advisors VII GP, LLC

NexPoint Real Estate Advisors VII, L.P.

NexPoint Real Estate Advisors VIII, L.P.

NexPoint Real Estate Advisors, L.P.

NexPoint Real Estate Capital, LLC

NexPoint Real Estate Capital, LLC *(fka Highland Real Estate Capital, LLC, fka Highland Multifamily Credit Fund, LLC)*

NexPoint Real Estate Finance OP GP, LLC

NexPoint Real Estate Finance Operating Partnership, L.P.

NexPoint Real Estate Finance, Inc.

NexPoint Real Estate Opportunities, LLC

NexPoint Real Estate Opportunities, LLC *(fka Freedom REIT LLC)*

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Strategies Fund

NexPoint Residential Trust Inc.

NexPoint Residential Trust Operating Partnership GP, LLC

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust, Inc.

NexPoint Securities, Inc. *(fka Highland Capital Funds Distributor, Inc.) (fka Pyxis Distributors, Inc.)*

NexPoint Strategic Income Fund *(fka NexPoint Opportunistic Credit Fund, fka NexPoint Distressed Strategies Fund)*

NexPoint Strategic Opportunities Fund

NexPoint Strategic Opportunities Fund *(fka NexPoint Credit Strategies Fund)*

NexPoint Texas Multifamily Portfolio DST *(fka NREA Southeast Portfolio Two, DST)*

NexPoint WLIF I Borrower, LLC

NexPoint WLIF I, LLC

NexPoint WLIF II Borrower, LLC

NexPoint WLIF II, LLC

NexPoint WLIF III Borrower, LLC

NexPoint WLIF III, LLC

NexPoint WLIF, LLC (Series I)

NexPoint WLIF, LLC (Series II)

NexPoint WLIF, LLC (Series III)

NexStrat LLC

NexVest, LLC

NexWash LLC

NFRO REIT Sub, LLC

NFRO TRS, LLC

NHF CCD, Inc.

NHT 2325 Stemmons, LLC

NHT Beaverton TRS, LLC *(fka NREA Hotel TRS, Inc.)*

NHT Beaverton, LLC

NHT Bend TRS, LLC

NHT Bend, LLC

NHT Destin TRS, LLC

NHT Destin, LLC

NHT DFW Portfolio, LLC

NHT Holdco, LLC

NHT Holdings, LLC

NHT Intermediary, LLC

NHT Nashville TRS, LLC

NHT Nashville, LLC

NHT Olympia TRS, LLC

NHT Olympia, LLC

NHT Operating Partnership GP, LLC

NHT Operating Partnership II, LLC

NHT Operating Partnership, LLC

NHT Salem, LLC

NHT SP Parent, LLC

NHT SP TRS, LLC

NHT SP, LLC

NHT Tigard TRS, LLC

NHT Tigard, LLC

NHT TRS, Inc.

NHT Uptown, LLC

NHT Vancouver TRS, LLC

NHT Vancouver, LLC

NLA Assets LLC

NMRT TRS, Inc.

NREA Adair DST Manager, LLC

NREA Adair Investment Co, LLC

NREA Adair Joint Venture, LLC

NREA Adair Leaseco Manager, LLC

NREA Adair Leaseco, LLC

NREA Adair Property Manager LLC

NREA Adair, DST

NREA Ashley Village Investors, LLC

NREA Cameron Creek Investors, LLC

NREA Cityplace Hue Investors, LLC

NREA Crossing Investors LLC

NREA Crossings Investors, LLC

NREA Crossings Ridgewood Coinvestment, LLC *(fka NREA Crossings Ridgewood Investors, LLC)*

NREA DST Holdings, LLC

NREA El Camino Investors, LLC

NREA Estates Inc.

NREA Estates Investment Co, LLC

NREA Estates Leaseco, LLC

NREA Estates Manager, LLC

NREA Estates Property Manager, LLC

NREA Estates, DST

NREA Gardens DST Manager LLC

NREA Gardens DST Manager, LLC

NREA Gardens Investment Co, LLC

NREA Gardens Leaseco Manager, LLC

NREA Gardens Leaseco, LLC

NREA Gardens Property Manager, LLC

NREA Gardens Springing LLC

NREA Gardens Springing Manager, LLC

NREA Gardens, DST

NREA Hidden Lake Investment Co, LLC

NREA Hue Investors, LLC

NREA Keystone Investors, LLC

NREA Meritage Inc.

NREA Meritage Investment Co, LLC

NREA Meritage Leaseco, LLC

NREA Meritage Manager, LLC

NREA Meritage Property Manager, LLC

NREA Meritage, DST

NREA Oaks Investors, LLC

NREA Retreat Investment Co, LLC

NREA Retreat Leaseco, LLC

NREA Retreat Manager, LLC

NREA Retreat Property Manager, LLC

NREA Retreat, DST

NREA SE MF Holdings LLC

NREA SE MF Holdings, LLC

NREA SE MF Investment Co, LLC

NREA SE MF Investment Co, LLC

NREA SE Multifamily LLC

NREA SE Multifamily, LLC

NREA SE One Property Manager, LLC

NREA SE Three Property Manager, LLC

NREA SE Two  Property Manager, LLC

NREA SE1 Andros Isles Leaseco, LLC

NREA SE1 Andros Isles Manager, LLC

NREA SE1 Andros Isles, DST
(Converted from DK Gateway Andros, LLC)

NREA SE1 Arborwalk Leaseco, LLC

NREA SE1 Arborwalk Manager, LLC

NREA SE1 Arborwalk, DST
(Converted from MAR Arborwalk, LLC)

NREA SE1 Towne Crossing Leaseco, LLC

NREA SE1 Towne Crossing Manager, LLC

NREA SE1 Towne Crossing, DST
(Converted from Apartment REIT Towne Crossing, LP)

NREA SE1 Walker Ranch Leaseco, LLC

NREA SE1 Walker Ranch Manager, LLC

NREA SE1 Walker Ranch, DST
(Converted from SOF Walker Ranch Owner, L.P.)

NREA SE2 Hidden Lake Leaseco, LLC

NREA SE2 Hidden Lake Manager, LLC
NREA SE2 Hidden Lake, DST
NREA SE2 Hidden Lake, DST
(Converted from SOF Hidden Lake SA Owner, L.P.)

NREA SE2 Vista Ridge Leaseco, LLC
NREA SE2 Vista Ridge Manager, LLC
NREA SE2 Vista Ridge, DST
NREA SE2 Vista Ridge, DST
(Converted from MAR Vista Ridge, L.P.)

NREA SE2 West Place Leaseco, LLC
NREA SE2 West Place Manager, LLC
NREA SE2 West Place, DST
(Converted from Landmark at West Place, LLC)

NREA SE3 Arboleda Leaseco, LLC
NREA SE3 Arboleda Manager, LLC
NREA SE3 Arboleda, DST
(Converted from G&E Apartment REIT Arboleda, LLC)

NREA SE3 Fairways Leaseco, LLC
NREA SE3 Fairways Manager, LLC
NREA SE3 Fairways, DST
(Converted from MAR Fairways, LLC)

NREA SE3 Grand Oasis Leaseco, LLC
NREA SE3 Grand Oasis Manager, LLC
NREA SE3 Grand Oasis, DST
(Converted from Landmark at Grand Oasis, LP)

NREA Southeast Portfolio One Manager, LLC
NREA Southeast Portfolio One, DST
NREA Southeast Portfolio One, DST
NREA Southeast Portfolio Three Manager, LLC
NREA Southeast Portfolio Three, DST
NREA Southeast Portfolio Three, DST
NREA Southeast Portfolio Two Manager, LLC
NREA Southeast Portfolio Two, DST
NREA Southeast Portfolio Two, LLC
NREA SOV Investors, LLC
NREA Uptown TRS, LLC
NREA VB I LLC
NREA VB II LLC

NREA VB III LLC
NREA VB IV LLC
NREA VB Pledgor I LLC
NREA VB Pledgor I, LLC
NREA VB Pledgor II LLC
NREA VB Pledgor II, LLC
NREA VB Pledgor III LLC
NREA VB Pledgor III, LLC
NREA VB Pledgor IV LLC
NREA VB Pledgor IV, LLC
NREA VB Pledgor V LLC
NREA VB Pledgor V, LLC
NREA VB Pledgor VI LLC
NREA VB Pledgor VI, LLC
NREA VB Pledgor VII LLC
NREA VB Pledgor VII, LLC
NREA VB SM, Inc.
NREA VB V LLC
NREA VB VI LLC
NREA VB VII LLC
NREA Vista Ridge Investment Co, LLC
NREC AR Investors, LLC
NREC BM Investors, LLC
NREC BP Investors, LLC
NREC Latitude Investors, LLC
NREC REIT Sub, Inc.
NREC TRS, Inc.
NREC WW Investors, LLC
NREF OP I Holdco, LLC
NREF OP I SubHoldco, LLC
NREF OP I, L.P.
NREF OP II Holdco, LLC
NREF OP II SubHoldco, LLC
NREF OP II, L.P.
NREF OP IV REIT Sub TRS, LLC
NREF OP IV REIT Sub, LLC
NREF OP IV, L.P.
NREO NW Hospitality Mezz, LLC
NREO NW Hospitality, LLC
NREO Perilune, LLC
NREO SAFStor Investors, LLC
NREO TRS, Inc.
NRESF REIT Sub, LLC

NXRT Abbington, LLC
NXRT Atera II, LLC
NXRT Atera, LLC
NXRT AZ2, LLC
NXRT Barrington Mill, LLC
NXRT Bayberry, LLC
NXRT Bella Solara, LLC
NXRT Bella Vista, LLC
NXRT Bloom, LLC
NXRT Brandywine GP I, LLC
NXRT Brandywine GP I, LLC
NXRT Brandywine GP II, LLC
NXRT Brandywine GP II, LLC
NXRT Brandywine LP, LLC
NXRT Brandywine LP, LLC
NXRT Brentwood Owner, LLC
NXRT Brentwood, LLC
NXRT Cedar Pointe Tenant, LLC
NXRT Cedar Pointe, LLC
NXRT Cityview, LLC
NXRT Cornerstone, LLC
NXRT Crestmont, LLC
NXRT Crestmont, LLC
NXRT Enclave, LLC
NXRT Glenview, LLC
NXRT H2 TRS, LLC
NXRT Heritage, LLC
NXRT Hollister TRS LLC
NXRT Hollister, LLC
NXRT LAS 3, LLC
NXRT Master Tenant, LLC
NXRT Nashville Residential, LLC
NXRT Nashville Residential, LLC *(fka Freedom Nashville Residential, LLC)*
NXRT North Dallas 3, LLC
NXRT Old Farm, LLC
NXRT Pembroke Owner, LLC
NXRT Pembroke, LLC
NXRT PHX 3, LLC
NXRT Radbourne Lake, LLC
NXRT Rockledge, LLC
NXRT Sabal Palms, LLC
NXRT SM, Inc.

NXRT Steeplechase, LLC
NXRT Stone Creek, LLC
NXRT Summers Landing GP, LLC
NXRT Summers Landing LP, LLC
NXRT Torreyana, LLC
NXRT Vanderbilt, LLC
NXRT West Place, LLC
NXRTBH AZ2, LLC
NXRTBH Barrington Mill Owner, LLC
NXRTBH Barrington Mill SM, Inc.
NXRTBH Barrington Mill, LLC
NXRTBH Bayberry, LLC
NXRTBH Cityview, LLC
NXRTBH Colonnade, LLC
NXRTBH Cornerstone Owner, LLC
NXRTBH Cornerstone SM, Inc.
NXRTBH Cornerstone, LLC
NXRTBH Dana Point SM, Inc.
NXRTBH Dana Point, LLC
NXRTBH Foothill SM, Inc.
NXRTBH Foothill, LLC
NXRTBH Heatherstone SM, Inc.
NXRTBH Heatherstone, LLC
NXRTBH Hollister Tenant, LLC
NXRTBH Hollister, LLC
NXRTBH Madera SM, Inc.
NXRTBH Madera, LLC
NXRTBH McMillan, LLC
NXRTBH North Dallas 3, LLC
NXRTBH Old Farm II, LLC
NXRTBH Old Farm Tenant, LLC
NXRTBH Old Farm, LLC
NXRTBH Radbourne Lake, LLC
NXRTBH Rockledge, LLC
NXRTBH Sabal Palms, LLC
NXRTBH Steeplechase, LLC
(dba Southpoint Reserve at Stoney Creek)-VA
NXRTBH Stone Creek, LLC
NXRTBH Vanderbilt, LLC
NXRTBH Versailles SM, Inc.
NXRTBH Versailles, LLC
Oak Holdco, LLC
Oaks CGC, LLC

Okada Family Revocable Trust
Oldenburg, Ltd.
Pam Capital Funding GP Co. Ltd.
Pam Capital Funding, L.P.
PamCo Cayman Ltd.
Park West 1700 Valley View Holdco, LLC
Park West 2021 Valley View Holdco, LLC
Park West Holdco, LLC
Park West Portfolio Holdco, LLC
Participants of Highland 401K Plan
Patrick Willoughby-McCabe
PCMG Trading Partners XXIII, L.P.
PCMG Trading Partners XXIII, LP
PDK Toys Holdco, LLC
Pear Ridge Partners, LLC
Penant Management GP, LLC
Penant Management LP
PensionDanmark Holding A/S
PensionDanmark
Pensionsforsikringsaktieselskab

Peoria Place Development, LLC
(30% cash contributions - profit participation
only)

Perilune Aero Equity Holdings One, LLC
Perilune Aviation LLC
PetroCap Incentive Holdings III. L.P.
PetroCap Incentive Partners II GP, LLC
PetroCap Incentive Partners II, L.P.
PetroCap Incentive Partners III GP, LLC
PetroCap Incentive Partners III, LP
PetroCap Management Company LLC
PetroCap Partners II GP, LLC
PetroCap Partners II, L.P.
PetroCap Partners III GP, LLC
PetroCap Partners III, L.P.
Pharmacy Ventures I, LLC
Pharmacy Ventures II, LLC
Pollack, Ltd.
Powderhorn, LLC
PWM1 Holdings, LLC
PWM1, LLC
RADCO - Bay Meadows, LLLP
RADCO - Bay Park, LLLP

RADCO NREC Bay Meadows Holdings, LLC
RADCO NREC Bay Park Holdings, LLC
Ramarim, LLC
Rand Advisors Series I Insurance Fund
Rand Advisors Series II Insurance Fund
Rand Advisors, LLC
Rand PE Fund I, L.P.
Rand PE Fund I, L.P. - Series 1
Rand PE Fund Management, LLC
Rand PE Holdco, LLC
Realdania
Red River CLO, Ltd.
Red River Investors Corp.
Riverview Partners SC, LLC
Rockwall CDO II Ltd.
Rockwall CDO II, Ltd.
Rockwall CDO, Ltd.
Rockwall Investors Corp.
Rothko, LLC
RTT Bella Solara, LLC
RTT Bloom, LLC
RTT Financial, Inc.
RTT Hollister, LLC
RTT Rockledge, LLC
RTT Torreyana, LLC
SALI Fund Partners, LLC
San Diego County Employees Retirement
Association

Sandstone Pasadena Apartments, LLC
Sandstone Pasadena, LLC
Santa Barbara Foundation (third party)
Saturn Oil & Gas LLC
SBC Master Pension Trust
Scott Matthew Siekielski
SE Battleground Park, LLC
SE Battleground Park, LLC
SE Glenview, LLC
SE Governors Green Holdings, L.L.C.
SE Governors Green Holdings, L.L.C.
*(fka SCG Atlas Governors Green Holdings,
L.L.C.)*

SE Governors Green I, LLC
SE Governors Green II, LLC

SE Governors Green II, LLC

SE Governors Green REIT, L.L.C.

SE Governors Green REIT, L.L.C.
*(fka SCG Atlas Governors Green REIT, L.L.C.)*

SE Governors Green, LLC
*(fka SCG Atlas Governors Green, L.L.C.)*

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles LP, LLC

SE Gulfstream Isles LP, LLC

SE Heights at Olde Towne, LLC

SE Heights at Olde Towne, LLC

SE Lakes at Renaissance Park GP I, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park LP, LLC

SE Lakes at Renaissance Park LP, LLC

SE Multifamily Holdings LLC

SE Multifamily Holdings, LLC

SE Multifamily REIT Holdings LLC

SE Myrtles at Olde Towne, LLC

SE Myrtles at Olde Towne, LLC

SE Oak Mill I Holdings, LLC

SE Oak Mill I Holdings, LLC *(fka SCG Atlas Oak Mill I Holdings, L.L.C.)*

SE Oak Mill I Owner, LLC *(fka SCG Atlas Oak Mill I, L.L.C.)*

SE Oak Mill I REIT, LLC

SE Oak Mill I REIT, LLC *(fka SCG Atlas Oak Mill I REIT, L.L.C.)*

SE Oak Mill I, LLC

SE Oak Mill I, LLC

SE Oak Mill II Holdings, LLC

SE Oak Mill II Holdings, LLC *(fka SCG Atlas Oak Mill II Holdings, L.L.C.)*

SE Oak Mill II Owner, LLC *(fka SCG Atlas Oak Mill II, L.L.C.)*

SE Oak Mill II REIT, LLC

SE Oak Mill II REIT, LLC *(fka SCG Atlas Oak Mill II REIT, L.L.C.)*

SE Oak Mill II, LLC

SE Oak Mill II, LLC

SE Quail Landing, LLC

SE River Walk, LLC

SE Riverwalk, LLC

SE SM, Inc.

SE Stoney Ridge Holdings, L.L.C. *(fka SCG Atlas Stoney Ridge Holdings, L.L.C.)*

SE Stoney Ridge Holdings, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge REIT, L.L.C. *(fka SCG Atlas Stoney Ridge REIT, L.L.C.)*

SE Stoney Ridge REIT, LLC

SE Stoney Ridge, LLC *(fka SCG Atlas Stoney Ridge, L.L.C.)*

SE Victoria Park, LLC

SE Victoria Park, LLC

Sentinel Re Holdings, Ltd.

Sentinel Reinsurance Ltd.

SFH1, LLC

SFR WLIF I, LLC
*(fka NexPoint WLIF I, LLC)*

SFR WLIF II, LLC
*(NexPoint WLIF II, LLC)*

SFR WLIF III, LLC
*(NexPoint WLIF III, LLC)*

SFR WLIF Manager, LLC
*(NexPoint WLIF Manager, LLC)*

SFR WLIF, LLC
*(NexPoint WLIF, LLC)*

SFR WLIF, LLC Series I

SFR WLIF, LLC Series II

SFR WLIF, LLC Series III

SH Castle BioSciences, LLC

Small Cap Equity Sub, LLC

Socially Responsible Equity Sub, LLC

SOF Brandywine I Owner, L.P.

SOF Brandywine II Owner, L.P.

SOF-X GS Owner, L.P.

Southfork Cayman Holdings, Ltd.

Southfork CLO, Ltd.

001116

Specialty Financial Products Designated
Activity Company (fka Specialty Financial
Products Limited)

Spiritus Life, Inc.

SRL Sponsor LLC

SRL Whisperwod LLC

SRL Whisperwood Member LLC

SRL Whisperwood Venture LLC

SSB Assets LLC

Starck, Ltd.

Stemmons Hospitality, LLC

Steve Shin

Stonebridge Capital, Inc.

Stonebridge-Highland Healthcare Private
Equity Fund

Strand Advisors III, Inc.

Strand Advisors IV, LLC

Strand Advisors IX, LLC

Strand Advisors V, LLC

Strand Advisors XIII, LLC

Strand Advisors XVI, Inc.

Strand Advisors, Inc.

Stratford CLO, Ltd.

Summers Landing Apartment Investors, L.P.

Term Loan B
(10% cash contributions - profit participation
only)

The Dallas Foundation

The Dallas Foundation (third party)

The Dondero Insurance Rabbi Trust

The Dugaboy Investment Trust

The Dugaboy Investment Trust U/T/A Dated
Nov 15, 2010

The Get Good Non-Exempt Trust No. 1

The Get Good Non-Exempt Trust No. 2

The Get Good Trust

The Mark and Pamela Okada Family Trust -
Exempt Descendants' Trust

The Mark and Pamela Okada Family Trust -
Exempt Trust #2

The Ohio State Life Insurance Company

The Okada Family Foundation, Inc.

The Okada Insurance Rabbi Trust

The SLHC Trust

The Trustees of Columbia University in the
City of New York

The Twentysix Investment Trust
(Third Party Investor)

Thomas A. Neville

Thread 55, LLC

Tihany, Ltd.

Todd Travers

Tranquility Lake Apartments Investors, L.P.

Tuscany Acquisition, LLC

Uptown at Cityplace Condominium
Association, Inc.

US Gaming OpCo, LLC

US Gaming SPV, LLC

US Gaming, LLC

Valhalla CLO, Ltd.

VB GP LLC

VB Holding, LLC

VB One, LLC

VB OP Holdings LLC

VBAnnex C GP, LLC

VBAnnex C Ohio, LLC

VBAnnex C, LP

Ventoux Capital, LLC
(Matt Goetz)

VineBrook Annex B, L.P.

VineBrook Annex I, L.P.

VineBrook Homes Merger Sub II LLC

VineBrook Homes Merger Sub LLC

VineBrook Homes OP GP, LLC

VineBrook Homes Operating Partnership, L.P.

VineBrook Homes Trust, Inc.

VineBrook Partners I, L.P.

VineBrook Partners II, L.P.

VineBrook Properties, LLC

Virginia Retirement System

Vizcaya Investment, LLC

Wake LV Holdings II, Ltd.

Wake LV Holdings, Ltd.

Walter Holdco GP, LLC

Walter Holdco I, Ltd.

Walter Holdco, L.P.

Warhol, Ltd.

Warren Chang

Westchester CLO, Ltd.

William L. Britain

Wright Ltd.

Wright, Ltd.

Yellow Metal Merchants, Inc.

# EXHIBIT R

## CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of _____ , 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "Debtor"), as settlor, and James P. Seery, Jr., as trustee (the "Claimant Trustee"), and [_____] as Delaware trustee (the "Delaware Trustee," and together with the Debtor and the Claimant Trustee, the "Parties") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____ , 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve Disputed Claims as set forth herein and in the Plan; and

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2]  For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

(vi) administrative services relating to the activities of the Claimant Trust and relating to the implementation of the Plan can be performed by the Claimant Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor, the Claimant Trustee, and the Delaware Trustee have executed this Agreement for the benefit of the Claimant Trust Beneficiaries entitled to share in the Claimant Trust Assets and, at the direction of such Claimant Trust Beneficiaries as provided for in the Plan.

TO HAVE AND TO HOLD unto the Claimant Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust Beneficiaries, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Claimant Trust in accordance with Article IX hereof, this Claimant Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Claimant Trust Assets are to be strictly held and applied by the Claimant Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     Certain Definitions.  Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Acis" means collectively, Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

(b)     "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(c)     "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, with respect to a Member, or to the extent applicable, the Claimant Trustee, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

001121

(d)     "Claimant Trust Agreement" means this Agreement.

(e)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" hereunder and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of this Agreement.

(f)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(g)     "Claimant Trust Assets" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

(h)     "Claimant Trust Beneficiaries" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

(i)     "Claimant Trust Expense Cash Reserve" means $[•] million in Cash to be funded pursuant to the Plan into a bank account of the Claimant Trust on or before the Effective Date for the purpose of paying Claimant Trust Expenses in accordance herewith.

(j)     "Claimant Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust, and the fees and expenses of the Claimant Trustee and professional persons retained by the Claimant Trust or Claimant Trustee in accordance with this Agreement.

(k)     "Committee Member" means a Member who is/was also a member of the Creditors' Committee.

(l)     "Conflicted Member" has the meaning set forth in Section 4.6(c) hereof.

(m)     "Contingent Trust Interests" means the contingent interests in the Claimant Trust to be distributed to Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests in accordance with the Plan.

001122

(n)　　"Creditors' Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, comprised of Acis, Meta-e Discovery, the Redeemer Committee and UBS.

(o)　　"Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(p)　　"Delaware Trustee" has the meaning set forth in the introduction hereof.

(q)　　"Disability" means as a result of the Claimant Trustee's or a Member's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Claimant Trustee or the Member, as applicable, the Claimant Trustee or such Member has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(r)　　"Disinterested Members" has the meaning set forth in Section 4.1 hereof.

(s)　　"Disputed Claims Reserve" means the reserve account to be opened by the Claimant Trust on or after the Effective Date and funded in an initial amount determined by the Claimant Trustee [[in a manner consistent with the Plan and with the consent of a simple majority of the Oversight Board]] to be sufficient to pay Disputed Claims under the Plan.

(t)　　"Employees" means the employees of the Debtor set forth in the Plan Supplement.

(u)　　"Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(v)　　"Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(w)　　"Equity Trust Interests" has the meaning given to it in Section 5.1(c) hereof.

(x)　　"Exchange Act" means the Securities Exchange Act of 1934, as amended.

(y)　　"General Unsecured Claim Trust Interests" means interests in the Claimant Trust to be distributed to Holders of Allowed Class 8 General Unsecured Claims (including Disputed General Unsecured Claims that are subsequently Allowed) in accordance with the Plan.

(z)　　"GUC Beneficiaries" means the Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests.

(aa)　　"GUC Payment Certification" has the meaning given to it in Section 5.1(c) hereof.

(bb)  "HarbourVest" means, collectively, HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P.

(cc)  "Investment Advisers Act" means the Investment Advisers Act of 1940, as amended.

(dd)  "Investment Company Act" means the Investment Company Act of 1940, as amended.

(ee)  "Litigation Sub-Trust" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(ff)  "Litigation Sub-Trust Agreement" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(gg)  "Litigation Trustee" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(hh)  "Managed Funds" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to the Plan; *provided, however,* that the Highland Select Equity Fund, L.P. (and its direct and indirect subsidiaries) will not be considered a Managed Fund for purposes hereof.

(ii)  "Material Claims" means the Claims asserted by UBS, Patrick Hagaman Daugherty, Integrated Financial Associates, Inc., and the Employees.

(jj)  "Member" means a Person that is member of the Oversight Board.

(kk)  "New GP LLC" means the general partner of the Reorganized Debtor.

(ll)  "Oversight Board" means the board comprised of five (5) Members established pursuant to the Plan and Article III of this Agreement to oversee the Claimant Trustee's performance of his duties and otherwise serve the functions set forth in this Agreement and those of the "Claimant Trust Oversight Committee" described in the Plan.  Subject to the terms of this Agreement, the initial Members of the Oversight Board shall be: (i) Eric Felton, as representative of the Redeemer Committee; (ii) Josh Terry, as representative of Acis; (iii) Elizabeth Kozlowski, as representative of UBS; (iv) Paul McVoy, as representative of Meta-e Discovery; and (v) David Pauker.

001124

(mm)   "<u>Plan</u>" has the meaning set forth in the Recitals hereof.

(nn)   "<u>Privileges</u>" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; <u>provided</u>, <u>however</u>, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(oo)   "<u>PSZJ</u>" means Pachulski Stang Ziehl & Jones LLP.

(pp)   "<u>Redeemer Committee</u>" means the Redeemer Committee of the Highland Crusader Fund.

(qq)   "<u>Registrar</u>" has the meaning given to it in Section 5.3(a) hereof.

(rr)   "<u>Reorganized Debtor Assets</u>" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

(ss)   "<u>Securities Act</u>" means the Securities Act of 1933, as amended.

(tt)   "<u>Subordinated Beneficiaries</u>" means the Claimant Trust Beneficiaries who hold Subordinated Claim Trust Interests.

(uu)   "<u>Subordinated Claim Trust Interests</u>" means the subordinated interests in the Claimant Trust to be distributed to Holders of Allowed Class 9 Subordinated Claims in accordance with the Plan.

(vv)   "<u>TIA</u>" means the Trust Indenture Act of 1939, as amended.

(ww)   "<u>Trust Interests</u>" means collectively the General Unsecured Claim Trust Interests, Subordinated Claim Trust Interests, and Equity Trust Interests.

(xx)   "<u>Trust Register</u>" has the meaning given to it in Section 5.3(b) hereof.

(yy)   "<u>Trustees</u>" means collectively the Claimant Trustee and Delaware Trustee.

(zz)   "<u>UBS</u>" means collectively UBS Securities LLC and UBS AG London Branch.

(aaa)   "<u>WilmerHale</u>" Wilmer Cutler Pickering Hale & Dorr LLP.

001125

    1.2   <u>General Construction</u>.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

    1.3   <u>Incorporation of the Plan</u>.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

## ARTICLE II.
## ESTABLISHMENT OF THE CLAIMANT TRUST

    2.1   <u>Creation of Name of Trust</u>.

    (a)   The Claimant Trust is hereby created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Claimant Trust."  The Claimant Trustee shall be empowered to conduct all business and hold all property constituting the Claimant Trust Assets in such name in accordance with the terms and conditions set forth herein.

    (b)   The Trustees shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in their capacity as Trustees, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

001126

2.2 <u>Objectives</u>.

(a) The Claimant Trust is established for the purpose of satisfying Allowed General Unsecured Claims and Allowed Subordinated Claims (and only to the extent provided herein, Allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests) under the Plan, by monetizing the Claimant Trust Assets transferred to it and making distributions to the Claimant Trust Beneficiaries. The Claimant Trust shall not continue or engage in any trade or business except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets consistent with this Agreement and the Plan and act as sole member and manager of New GP LLC. The Claimant Trust shall provide a mechanism for (i) the monetization of the Claimant Trust Assets and (ii) the distribution of the proceeds thereof, net of all claims, expenses, charges, liabilities, and obligations of the Claimant Trust, to the Claimant Trust Beneficiaries in accordance with the Plan. In furtherance of this distribution objective, the Claimant Trust will, from time to time, prosecute and resolve objections to certain Claims and Interests as provided herein and in the Plan.

(b) It is intended that the Claimant Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. In furtherance of this objective, the Claimant Trustee shall, in his business judgment, make continuing best efforts to (i) dispose of or monetize the Claimant Trust Assets and resolve Claims, (ii) make timely distributions, and (iii) not unduly prolong the duration of the Claimant Trust, in each case in accordance with this Agreement.

2.3 <u>Nature and Purposes of the Claimant Trust</u>.

(a) The Claimant Trust is organized and established as a trust for the purpose of monetizing the Claimant Trust Assets and making distributions to Claimant Trust Beneficiaries in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets, if any, which shall be commenced and pursued by the Reorganized Debtor at the direction of the Claimant Trust as sole member of New GP LLC pursuant to the terms of the Reorganized Limited Partnership Agreement. The Claimant Trust and Claimant Trustee shall have and retain, and, as applicable, assign and transfer to the Litigation Sub-Trust and Litigation Trustee, any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Claim as of the Petition Date. On and after the date hereof, in accordance with and subject to the Plan, the Claimant Trustee shall have the authority to (i) compromise, settle or otherwise resolve, or withdraw any objections to Claims against the Debtor, <u>provided</u>, <u>however</u>, the Claimant Trustee shall only have the authority to compromise or settle any Employee Claim with the unanimous consent of the Oversight Board and in the absence of unanimous consent, any such Employee Claim shall be transferred to the Litigation Sub-Trust and be litigated, comprised, settled, or otherwise resolved exclusively by the Litigation Trustee and (ii) compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, which authority may be shared with or transferred to the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement. For the avoidance of doubt, the Claimant Trust,

001127

pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Claims other than Estate Claims, the Employee Claims, and those Claims constituting Reorganized Debtor Assets.

(b)     The Claimant Trust shall be administered by the Claimant Trustee, in accordance with this Agreement, for the following purposes:

(i)     to manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period;

(ii)     to litigate and settle Claims in Class 8 and Class 9 (other than the Employee Claims, which shall be litigated and/or settled by the Litigation Trustee if the Oversight Board does not unanimously approve of any proposed settlement of such Employee Claim by the Claimant Trustee) and any of the Causes of Action included in the Claimant Trust Assets (including any cross-claims and counter-claims); provided, however, that Estate Claims transferred to the Litigation Sub-Trust shall be litigated and settled by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement;

(iii)     to distribute net proceeds of the Claimant Trust Assets to the Claimant Trust Beneficiaries;

(iv)     to distribute funds from the Disputed Claims Reserve to Holders of Trust Interests or to the Reorganized Debtor for distribution to Holders of Disputed Claims in each case in accordance with the Plan from time to time as any such Holder's Disputed Claim becomes an Allowed Claim under the Plan;

(v)     to distribute funds to the Litigation Sub-Trust at the direction the Oversight Board;

(vi)     to serve as the limited partner of, and to hold the limited partnership interests in, the Reorganized Debtor;

(vii)     to serve as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner;

(viii)     to oversee the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement, in its capacity as the sole member and manager of New GP LLC pursuant to the terms of the New GP LLC Documents, all with a view toward maximizing value in a reasonable time in a manner consistent with the Reorganized Debtor's fiduciary duties as investment adviser to the Managed Funds; and

(ix)     to perform any other functions and take any other actions provided for or permitted by this Agreement and the Plan, and in any other agreement executed by the Claimant Trustee.

2.4     <u>Transfer of Assets and Rights to the Claimant Trust; Litigation Sub-Trust</u>.

(a)     On the Effective Date, pursuant to the Plan, the Debtor shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Claimant Trust Assets and related Privileges held by the Debtor to the Claimant Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan and this Agreement.  To the extent certain assets comprising the Claimant Trust Assets, because of their nature or because such assets will accrue or become transferable subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Claimant Trust on such date, such assets shall be considered Reorganized Debtor Assets, which may be subsequently transferred to the Claimant Trust by the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement after such date.

(b)     On or as soon as practicable after the Effective Date, the Claimant Trust shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims and related Privileges held by the Claimant Trust to the Litigation Sub-Trust Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan, this Agreement, and the Litigation Sub-Trust Agreement.  Following the transfer of such Privileges, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(c)     On or before the Effective Date, and continuing thereafter, the Debtor or Reorganized Debtor, as applicable, shall provide (i) for the Claimant Trustee's and Litigation Trustee's reasonable access to all records and information in the Debtor's and Reorganized Debtor's possession, custody or control, (ii) that all Privileges related to the Claimant Trust Assets shall transfer to and vest exclusively in the Claimant Trust (except for those Privileges that will be transferred and assigned to the Litigation Sub-Trust in respect of the Estate Claims), and (iii) subject to Section 3.12(c), the Debtor and Reorganized Debtor shall preserve all records and documents (including all electronic records or documents), including, but not limited to, the Debtor's file server, email server, email archiving system, master journal, SharePoint, Oracle E-Business Suite, Advent Geneva, Siepe database, Bloomberg chat data, and any backups of the foregoing, until such time as the Claimant Trustee, with the consent of the Oversight Board and, if pertaining to any of the Estate Claims, the Litigation Trustee, directs the Reorganized Debtor, as sole member of its general partner, that such records are no longer required to be preserved. For the purposes of transfer of documents, the Claimant Trust or Litigation Sub-Trust, as applicable, is an assignee and successor to the Debtor in respect of the Claimant Trust Assets and Estate Claims, respectively, and shall be treated as such in any review of confidentiality restrictions in requested documents.

(d)     Until the Claimant Trust terminates pursuant to the terms hereof, legal title to the Claimant Trust Assets (other than Estate Claims) and all property contained therein shall be vested at all times in the Claimant Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Claimant Trust Assets to be vested in the Claimant Trustee, in which case title shall be deemed to be vested in the Claimant Trustee, solely in his capacity as Claimant Trustee.  For purposes of such jurisdictions, the term Claimant Trust, as used herein, shall be read to mean the Claimant Trustee.

001129

2.5  Principal Office.  The principal office of the Claimant Trust shall be maintained by the Claimant Trustee at the following address:[_____].

2.6  Acceptance.  The Claimant Trustee accepts the Claimant Trust imposed by this Agreement and agrees to observe and perform that Claimant Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.7  Further Assurances.  The Debtor, Reorganized Debtor, and any successors thereof will, upon reasonable request of the Claimant Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Claimant Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Claimant Trustee the powers, instruments or funds in trust hereunder.

2.8  Incidents of Ownership.  The Claimant Trust Beneficiaries shall be the sole beneficiaries of the Claimant Trust and the Claimant Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## ARTICLE III.
## THE TRUSTEES

3.1  Role.  In furtherance of and consistent with the purpose of the Claimant Trust, the Plan, and this Agreement, the Claimant Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Claimant Trustee with respect to the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries and maintain, manage, and take action on behalf of the Claimant Trust.

3.2  Authority.

(a)  In connection with the administration of the Claimant Trust, in addition to any and all of the powers enumerated elsewhere herein, the Claimant Trustee shall, in an expeditious but orderly manner, monetize the Claimant Trust Assets, make timely distributions and not unduly prolong the duration of the Claimant Trust.  The Claimant Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Claimant Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.  The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value in a reasonable time.

(b)  The Claimant Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Claims and Causes of Action that are part of the Claimant Trust Assets, other than the Estate Claims transferred to the Litigation Sub-Trust, as the Claimant Trustee determines is in the best interests of the Claimant Trust; provided, however, that if the Claimant Trustee proposes a settlement of an Employee Claim and does not obtain unanimous consent of the Oversight Board of such settlement, such Employee Claim shall be transferred to the Litigation Sub-Trust for the Litigation Trustee to litigate.  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or

11

001130

otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

(c)     Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

(i)     solely as required by Section 2.4(c), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii)     open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

(iii)     as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

(iv)     settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

(v)     sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $3,000,000 (over a thirty-day period);

(vi)     upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

(vii)     exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

(viii)     protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(ix)     obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board solely in their capacities as such, in the form of fiduciary liability insurance, a directors and

001131

officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Claimant Trust Expense and paid by the Claimant Trustee from the Claimant Trust Assets;

(x) without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Claimant Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Claimant Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Claimant Trustee shall be Claimant Trust Expenses and paid by the Claimant Trustee from the Claimant Trust Assets;

(xi) retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Claimant Trust as may be required by this Agreement, the Plan, the Confirmation Order, and applicable laws and as may be reasonably and appropriate in Claimant Trustee's discretion. Subject to the foregoing, the Claimant Trustee may commit the Claimant Trust to, and shall pay, such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid by the Claimant Trustee from Claimant Trust Assets;

(xii) prepare and file (A) tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (B) an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity, or (C) any periodic or current reports that may be required under applicable law;

(xiii) prepare and send annually to the Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Claimant Trust and its share of the Claimant Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

(xiv) to the extent applicable, assert, enforce, release, or waive any attorney-client communication, attorney work product or other Privilege or defense on behalf of the Claimant Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Claimant Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xv) subject to Section 3.4, invest the proceeds of the Claimant Trust Assets and all income earned by the Claimant Trust, pending any distributions in short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills;

001132

(xvi)   request any appropriate tax determination with respect to the Claimant Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xvii)   take or refrain from taking any and all actions the Claimant Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Claimant Trust Assets consistent with purposes hereof;

(xviii)   take all steps and execute all instruments and documents necessary to effectuate the purpose of the Claimant Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder;

(xix)   exercise such other powers and authority as may be vested in or assumed by the Claimant Trustee by any Final Order;

(xx)   evaluate and determine strategy with respect to the Claimant Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Claimant Trust Assets on behalf of the Claimant Trust; and

(xxi)   with respect to the Claimant Trust Beneficiaries, perform all duties and functions of the Distribution Agent as set forth in the Plan, including distributing Cash from the Disputed Claims Reserve, solely on account of Disputed Class 1 through Class 7 Claims that were Disputed as of the Effective Date, but become Allowed, to the Reorganization Debtor such that the Reorganized Debtor can satisfy its duties and functions as Distribution Agent with respect to Claims in Class 1 through Class 7 (the foregoing subparagraphs (i)-(xxi) being collectively, the "Authorized Acts").

(d)   The Claimant Trustee and the Oversight Committee will enter into an agreement as soon as practicable after the Effective Date concerning the Claimant Trustee's authority with respect to certain other assets, including certain portfolio company assets (the "Other Assets").

(e)   The Claimant Trustee has the power and authority to act as trustee of the Claimant Trust and perform the Authorized Acts through the date such Claimant Trustee resigns, is removed, or is otherwise unable to serve for any reason.

3.3   Limitation of Authority.

(a)   Notwithstanding anything herein to the contrary, the Claimant Trust and the Claimant Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Claimant Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement, or (iv) cause New GP LLC to cause the Reorganized Debtor to take any action in contravention of the Plan, Plan Documents or the Confirmation Order.

(b)   Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Claimant Trustee must receive the consent by vote of a simple majority

001133

of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 herein, in order to:

> (i)     terminate or extend the term of the Claimant Trust;

> (ii)     prosecute, litigate, settle or otherwise resolve any of the Material Claims;

> (iii)     except otherwise set forth herein, sell or otherwise monetize any assets that are not Other Assets, including Reorganized Debtor Assets (other than with respect to the Managed Funds), that are valued greater than $3,000,000 (over a thirty-day period);

> (iv)     except for cash distributions made in accordance with the terms of this Agreement, make any cash distributions to Claimant Trust Beneficiaries in accordance with Article IV of the Plan;

> (v)     except for any distributions made in accordance with the terms of this Agreement, make any distributions from the Disputed Claims Reserve to Holders of Disputed Claims after such time that such Holder's Claim becomes an Allowed Claim under the Plan;

> (vi)     reserve or retain any cash or cash equivalents in an amount reasonably necessary to meet claims and contingent liabilities (including Disputed Claims and any indemnification obligations that may arise under Section 8.2 of this Agreement), to maintain the value of the Claimant Trust Assets, or to fund ongoing operations and administration of the Litigation Sub-Trust;

> (vii)     borrow as may be necessary to fund activities of the Claimant Trust;

> (viii)     determine whether the conditions under Section 5.1(c) of this Agreement have been satisfied such that a certification should be filed with the Bankruptcy Court;

> (ix)     invest the Claimant Trust Assets, proceeds thereof, or any income earned by the Claimant Trust (for the avoidance of doubt, this shall not apply to investment decisions made by the Reorganized Debtor or its subsidiaries solely with respect to Managed Funds);

> (x)     change the compensation of the Claimant Trustee;

> (xi)     subject to ARTICLE X, make structural changes to the Claimant Trust or take other actions to minimize any tax on the Claimant Trust Assets; and

> (xii)     retain counsel, experts, advisors, or any other professionals; provided, however, the Claimant Trustee shall not be required to obtain the consent of the Oversight Board for the retention of (i) PSZJ, WilmerHale, or Development Specialists, Inc. and

001134

(ii) any other professional whose expected fees and expenses are estimated at less than or equal to $200,000.

        (c)    [Reserved.]

    3.4   <u>Investment of Cash</u>.  The right and power of the Claimant Trustee to invest the Claimant Trust Assets, the proceeds thereof, or any income earned by the Claimant Trust, with majority approval of the Oversight Board, shall be limited to the right and power to invest in such Claimant Trust Assets only in Cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; <u>provided</u>, <u>however</u> that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("<u>IRS</u>") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (b) the Claimant Trustee may retain any Claimant Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly monetization or other disposition of such assets, and (c) the Claimant Trustee may expend the assets of the Claimant Trust (i) as reasonably necessary to meet contingent liabilities (including indemnification and similar obligations) and maintain the value of the assets of the Claimant Trust during the pendency of this Claimant Trust, (ii) to pay Claimant Trust Expenses (including, but not limited to, any taxes imposed on the Claimant Trust and reasonable attorneys' fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Claimant Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement).

    3.5   <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Claimant Trustee in accordance with the provisions of this Agreement shall be final and binding upon any and all Beneficiaries.

    3.6   <u>Term of Service</u>.  The Claimant Trustee shall serve as the Claimant Trustee for the duration of the Claimant Trust, subject to death, resignation or removal.

    3.7   <u>Resignation</u>.  The Claimant Trustee may resign as Claimant Trustee of the Claimant Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Claimant Trustee shall continue to serve as Claimant Trustee after delivery of the Claimant Trustee's resignation until the proposed effective date of such resignation, unless the Claimant Trustee and a simple majority of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Claimant Trustee in accordance with Section 3.9 hereof becomes effective.

    3.8   <u>Removal</u>.

        (a)    The Claimant Trustee may be removed by a simple majority vote of the Oversight Board for Cause for Cause immediately upon notice thereof, or without Cause upon 60 days' prior written notice.  Upon the removal of the Claimant Trustee pursuant hereto, the Claimant Trustee will resign, or be deemed to have resigned, from any role or position he or she

001135

may have at New GP LLC or the Reorganized Debtor effective upon the expiration of the foregoing 60 day period unless the Claimant Trustee and a simple majority of the Oversight Board agree otherwise.

(b)     To the extent there is any dispute regarding the removal of a Claimant Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Claimant Trustee will continue to serve as the Claimant Trustee after his removal until the earlier of (i) the time when a successor Claimant Trustee will become effective in accordance with Section 3.9 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.9     Appointment of Successor.

(a)     Appointment of Successor.  In the event of a vacancy by reason of the death or Disability (in the case of a Claimant Trustee that is a natural person), dissolution (in the case of a Claimant Trustee that is not a natural person), or removal of the Claimant Trustee, or prospective vacancy by reason of resignation, a successor Claimant Trustee shall be selected by a simple majority vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Claimant Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Claimant Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Claimant Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Claimant Trust.  The successor Claimant Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Claimant Trustee.

(b)     Vesting or Rights in Successor Claimant Trustee.  Every successor Claimant Trustee appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trust, the exiting Claimant Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Claimant Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Claimant Trustee, except that the successor Claimant Trustee shall not be liable for the acts or omissions of the retiring Claimant Trustee.  In no event shall the retiring Claimant Trustee be liable for the acts or omissions of the successor Claimant Trustee.

(c)     Interim Claimant Trustee.  During any period in which there is a vacancy in the position of Claimant Trustee, the Oversight Board shall appoint one of its Members to serve as the interim Claimant Trustee (the "Interim Trustee") until a successor Claimant Trustee is appointed pursuant to Section 3.9(a).  The Interim Trustee shall be subject to all the terms and conditions applicable to a Claimant Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board merely by such Person's appointment as Interim Trustee.

001136

3.10    <u>Continuance of Claimant Trust</u>.    The death, resignation, or removal of the Claimant Trustee shall not operate to terminate the Claimant Trust created by this Agreement or to revoke any existing agency (other than any agency of the Claimant Trustee as the Claimant Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Claimant Trustee.   In the event of the resignation or removal of the Claimant Trustee, the Claimant Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Claimant Trustee's capacity under this Agreement and the conveyance of the Claimant Trust Assets then held by the exiting Claimant Trustee to the successor Claimant Trustee; (ii) deliver to the successor Claimant Trustee all non-privileged documents, instruments, records, and other writings relating to the Claimant Trust as may be in the possession or under the control of the exiting Claimant Trustee, provided, the exiting Claimant Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Claimant Trustee and the cost of making such copies shall be a Claimant Trust Expense to be paid by the Claimant Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Claimant Trustee's obligations and functions by his successor, <u>provided</u> the fees and expenses of such assistance and cooperation shall be paid to the exiting Claimant Trustee by the Claimant Trust. The exiting Claimant Trustee shall irrevocably appoint the successor Claimant Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Claimant Trustee is obligated to perform under this Section 3.10.

3.11    <u>Claimant Trustee as "Estate Representative"</u>.   The Claimant Trustee will be the exclusive trustee of the Claimant Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "<u>Estate Representative</u>") with respect to the Claimant Trust Assets, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement; <u>provided</u> that all rights and powers as representative of the Estate pursuant to section 1123(b)(3)(B) shall be transferred to the Litigation Trustee in respect of the Estate Claims and the Employee Claims.   The Claimant Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Claimant Trust Assets, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order.   All actions, claims, rights or interest constituting Claimant Trust Assets are preserved and retained and may be enforced, or assignable to the Litigation Sub-Trust, by the Claimant Trustee as an Estate Representative.

3.12    <u>Books and Records</u>.

(a)    The Claimant Trustee shall maintain in respect of the Claimant Trust and the Claimant Trust Beneficiaries books and records reflecting Claimant Trust Assets in its possession and the income of the Claimant Trust and payment of expenses, liabilities, and claims against or assumed by the Claimant Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.   Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Claimant Trust and the requirements of Article VII herein.   Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any

001137

accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

(b)    The Claimant Trustee shall provide quarterly reporting to the Oversight Board and Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

(c)    The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; provided, however, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims or Employee Claims without the consent of the Litigation Trustee. Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

3.13    Compensation and Reimbursement; Engagement of Professionals.

(a)    Compensation and Expenses.

(i)    Compensation. As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation of $150,000 per month (the "Base Salary"). Within the first forty-five days following the Confirmation Date, the Claimant Trustee, on the one hand, and the Committee, if prior to the Effective Date, or the Oversight Board, if on or after the Effective Date, on the other, will negotiate go-forward compensation for the Claimant Trustee which will include (a) the Base Salary, (b) a success fee, and (c) severance.

(ii)    Expense Reimbursements. All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

19

001138

      (b)    <u>Professionals</u>.

        (i)    <u>Engagement of Professionals</u>.  The Claimant Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The Claimant Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

        (ii)    <u>Fees and Expenses of Professionals</u>.  The Claimant Trustee shall pay the reasonable fees and expenses of any retained professionals as Claimant Trust Expenses.

    3.14    <u>Reliance by Claimant Trustee</u>.  Except as otherwise provided herein, the Claimant Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Claimant Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Claimant Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Claimant Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning the Claimant Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

    3.15    <u>Commingling of Claimant Trust Assets</u>.  The Claimant Trustee shall not commingle any of the Claimant Trust Assets with his or her own property or the property of any other Person.

    3.16    <u>Delaware Trustee</u>.  The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Claimant Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Claimant Trustee; <u>provided, however</u>, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law.  The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law.  Other than as

001139

expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Claimant Trust.

## ARTICLE IV.
## THE OVERSIGHT BOARD

4.1    <u>Oversight Board Members</u>.  The Oversight Board will be comprised of five (5) Members appointed to serve as the board of managers of the Claimant Trust, at least two (2) of which shall be disinterested Members selected by the Creditors' Committee (such disinterested members, the "<u>Disinterested Members</u>").  The initial Members of the Oversight Board will be representatives of Acis, the Redeemer Committee, Meta-e Discovery, UBS, and David Pauker. David Pauker and Paul McVoy, the representative of Meta-e Discovery, shall serve as the initial Disinterested Board Members; <u>provided</u>, <u>however</u>, that if the Plan is confirmed with the Convenience Class or any other convenience class supported by the Creditors' Committee, Meta-E Discovery and its representative will resign on the Effective Date or as soon as practicable thereafter and be replaced in accordance with Section 4.10 hereof..

4.2    <u>Authority and Responsibilities</u>.

(a)    The Oversight Board shall, as and when requested by either of the Claimant Trustee and Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Claimant Trustee and Litigation Trustee as to the administration and management of the Claimant Trust and the Litigation Sub-Trust, as applicable, in accordance with the Plan, the Confirmation Order, this Agreement, and Litigation Sub-Trust Agreement (as applicable) and shall have the other responsibilities and powers as set forth herein.  As set forth in the Plan, the Confirmation Order, and herein, the Oversight Board shall have the authority and responsibility to oversee, review, and govern the activities of the Claimant Trust, including the Litigation Sub-Trust, and the performance of the Claimant Trustee and Litigation Trustee, and shall have the authority to remove the Claimant Trustee in accordance with Section 3.7 hereof or the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; <u>provided</u>, <u>however</u>, that the Oversight Board may not direct either Claimant Trustee and Litigation Trustee to act inconsistently with their respective duties under this Agreement (including without limitation as set in Section 4.2(e) below), the Litigation Sub-Trust Agreement, the Plan, the Confirmation Order, or applicable law.

(b)    The Oversight Board shall also (i) monitor and oversee the administration of the Claimant Trust and the Claimant Trustee's performance of his or her responsibilities under this Agreement, (ii) as more fully set forth in the Litigation Sub-Trust Agreement, approve funding to the Litigation Sub-Trust, monitor and oversee the administration of the Litigation Sub-Trust and the Litigation Trustee's performance of his responsibilities under the Litigation Sub-Trust Agreement, and (iii) perform such other tasks as are set forth herein, in the Litigation Sub-Trust Agreement, and in the Plan.

(c)    The Claimant Trustee shall consult with and provide information to the Oversight Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Oversight Board to meet its obligations hereunder.

001140

(d)     Notwithstanding any provision of this Agreement to the contrary, the Claimant Trustee shall not be required to (i) obtain the approval of any action  by the Oversight Board to the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is required to be taken by applicable law, the Plan, the Confirmation Order, or this Agreement or (ii) follow the directions of the Oversight Board to take any action the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is prohibited by applicable law the Plan, the Confirmation Order, or this Agreement.

(e)     Notwithstanding provision of this Agreement to the contrary, with respect to the activities of the Reorganized Debtor in its capacity as an investment adviser (and subsidiaries of the Reorganized Debtor that serve as general partner or in an equivalent capacity) to any Managed Funds, the Oversight Board shall not make investment decisions or otherwise participate in the investment decision making process relating to any such Managed Funds, nor shall the Oversight Board or any member thereof serve as a fiduciary to any such Managed Funds.  It is agreed and understood that investment decisions made by the Reorganized Debtor (or its subsidiary entities) with respect to Managed Funds shall be made by the Claimant Trustee in his capacity as an officer of the Reorganized Debtor and New GP LLC and/or such persons who serve as investment personnel of the Reorganized Debtor from time to time, and shall be subject to the fiduciary duties applicable to such entities and persons as investment adviser to such Managed Funds.

4.3     Fiduciary Duties.  The Oversight Board (and each Member in its capacity as such) shall have fiduciary duties to the Claimant Trust Beneficiaries consistent with the fiduciary duties that the members of the Creditors' Committee have to unsecured creditors and shall exercise its responsibilities accordingly; provided, however, that the Oversight Board shall not owe fiduciary obligations to any Holders of Class A Limited Partnership Interests or Class B/C Limited Partnership Interests until such Holders become Claimant Trust Beneficiaries in accordance with Section 5.1(c) hereof; provided, further, that the Oversight Board shall not owe fiduciary obligations to a Holder of an Equity Trust Interest if such Holder is named as a defendant in any of the Causes of Action, including Estate Claims, in their capacities as such, it being the intent that the Oversight Board's fiduciary duties are to maximize the value of the Claimant Trust Assets, including the Causes of Action.  In all circumstances, the Oversight Board shall act in the best interests of the Claimant Trust Beneficiaries and in furtherance of the purpose of the Claimant Trust.  Notwithstanding anything to the contrary contained in this Agreement, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.

4.4     Meetings of the Oversight Board.  Meetings of the Oversight Board are to be held as necessary to ensure the operation of the Claimant Trust but in no event less often than quarterly.  Special meetings of the Oversight Board may be held whenever and wherever called for by the Claimant Trustee or any Member; provided, however, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice requirement being subject to any waiver by the Members in the minutes, if any, or other transcript, if any, of proceedings of the Oversight Board).  Unless the Oversight Board decides otherwise (which decision shall rest in the reasonable discretion of the Oversight Board), the

001141

Claimant Trustee, and each of the Claimant Trustee's designated advisors may, but are not required to, attend meetings of the Oversight Board.

4.5     Unanimous Written Consent.  Any action required or permitted to be taken by the Oversight Board in a meeting may be taken without a meeting if the action is taken by unanimous written consents describing the actions taken, signed by all Members and recorded. If any Member informs the Claimant Trustee (via e-mail or otherwise) that he or she objects to the decision, determination, action, or inaction proposed to be made by unanimous written consent, the Claimant Trustee must use reasonable good faith efforts to schedule a meeting on the issue to be set within 48 hours of the request or as soon thereafter as possible on which all members of the Oversight Board are available in person or by telephone.  Such decision, determination, action, or inaction must then be made pursuant to the meeting protocols set forth herein.

4.6     Manner of Acting.

(a)     A quorum for the transaction of business at any meeting of the Oversight Board shall consist of at least three Members (including no less than one (1) Disinterested Member); provided that if the transaction of business at a meeting would constitute a direct or indirect conflict of interest for the Redeemer Committee, Acis, and/or UBS, at least two Disinterested Members must be present for there to be a quorum.  Except as set forth in Sections 3.3(c), 4.9(a), 5.2, 5.4, 6.1, 9.1, and 10, herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Oversight Board except as otherwise required by law or as provided in this Agreement.  Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition of the place) for the holding hereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the applicable Trustee and each Member.

(b)     Any Member who is present and entitled to vote at a meeting of the Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Board, unless (i) such Member objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Board before its adjournment.  The right of dissent or abstention is not available to any Member of the Oversight Board who votes in favor of the action taken.

(c)     Prior to a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Oversight Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or

001142

in connection with such matter or issue, other than solely as a holder of Trust Interests). A
Member who, with respect to a matter or issue, has or who may have a conflict of interest
whereby such Member's interests are adverse to the interests of the Claimant Trust shall be
deemed a "Conflicted Member" who shall not be entitled to vote or take part in any action with
respect to such matter or issue. In the event of a Conflicted Member, the vote or action with
respect to such matter or issue giving rise to such conflict shall be undertaken only by Members
who are not Conflicted Members and, notwithstanding anything contained herein to the contrary,
the affirmative vote of only a majority of the Members who are not Conflicted Members shall be
required to approve of such matter or issue and the same shall be the act of the Oversight Board.

(d)     Each of Acis, the Redeemer Committee, and UBS shall be deemed
"Conflicted Members" with respect to any matter or issue related to or otherwise affecting any of
their respective Claim(s) (a "Committee Member Claim Matter"). A unanimous vote of the
Disinterested Members shall be required to approve of or otherwise take action with respect to
any Committee Member Claim Matter and, notwithstanding anything herein to the contrary, the
same shall be the act of the Oversight Board.

4.7     Tenure of the Members of the Oversight Board. The authority of the Members of
the Oversight Board will be effective as of the Effective Date and will remain and continue in
full force and effect until the Claimant Trust is terminated in accordance with Article X hereof.
The Members of the Oversight Board will serve until such Member's successor is duly appointed
or until such Member's earlier death or resignation pursuant to Section 4.7 below, or removal
pursuant to Section 4.8 below.

4.8     Resignation. A Member of the Oversight Board may resign by giving not less
than 90 days prior written notice thereof to the Claimant Trustee and other Members. Such
resignation shall become effective on the earlier to occur of (i) the day specified in such notice
and (ii) the appointment of a successor in accordance with Section 4.9 below.

4.9     Removal. A majority of the Oversight Board may remove any Member for Cause
or Disability. If any Committee Member has its Claim disallowed in its entirety the
representative of such entity will immediately be removed as a Member without the requirement
for a vote and a successor will be appointed in the manner set forth herein. Notwithstanding the
foregoing, upon the termination of the Claimant Trust, any or all of the Members shall be
deemed to have resigned.

4.10     Appointment of a Successor Member.

(a)     In the event of a vacancy on the Oversight Board (whether by removal,
death, or resignation), a new Member may be appointed to fill such position by the remaining
Members acting unanimously; provided, however, that any vacancy resulting from the removal,
resignation, or death of a Disinterested Member may only be filled by a disinterested Person
unaffiliated with any Claimant or constituency in the Chapter 11 Case; provided, further, that if
an individual serving as the representative of a Committee Member resigns from its role as
representative, such resignation shall not be deemed resignation of the Committee Member itself
and such Committee Member shall have the exclusive right to designate its replacement
representative for the Oversight Board. The appointment of a successor Member will be further

001143

evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

(b)    Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act.  A successor Member will not be liable personally for any act or omission of a predecessor Member.

(c)    Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11    Compensation and Reimbursement of Expenses.    Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; provided, however, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member.  Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12    Confidentiality.    Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("Confidential Trust Information"), except as otherwise required by law.  For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "Member Affiliates") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.11.

## ARTICLE V.
## TRUST INTERESTS

5.1    Claimant Trust Interests.

001144

(a)     General Unsecured Claim Trust Interests.  On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "GUC Beneficiaries").  The Claimant Trustee shall allocate to each Holder of an Allowed Class 8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims.  The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

(b)     Subordinated Claim Trust Interests.  On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "Subordinated Beneficiaries").  The Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9.  The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests.  The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, and all Disputed General Unsecured Claims have been resolved, in accordance with the terms of the Plan and this Agreement.

(c)     Contingent Trust Interests.  On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "Equity Holders").  The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan.  Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the "GUC Payment Certification").  Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "Equity Trust Interests."  The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's  Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

5.2     Interests Beneficial Only.  The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant

001145

Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets or to require an accounting. No Claimant Trust Beneficiary shall have any governance right or other wright to direct Claimant Trust activities.

5.3     Transferability of Trust Interests. No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected until (i) such action is unanimously approved by the Oversight Board, (ii) the Claimant Trustee and Oversight Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Claimant Trust to be subject to entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Claimant Trustee and Oversight Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not (a) require the Claimant Trust to comply with the registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act or (b) cause any adverse effect under the Investment Advisers Act, or (y) the Oversight Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Claimant Trust to become a public reporting company and/or make periodic reports under the Exchange Act (provided that it is not required to register under the Investment Company Act or register its securities under the Securities Act) to enable such disposition to be made. In the event that any such disposition is allowed, the Oversight Board and the Claimant Trustee may add such restrictions upon such disposition and other terms of this Agreement as are deemed necessary or appropriate by the Claimant Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

5.4     Registry of Trust Interests.

(a)     Registrar. The Claimant Trustee shall appoint a registrar, which may be the Claimant Trustee (the "Registrar"), for the purpose of recording ownership of the Trust Interests as provided herein. The Registrar, if other than the Claimant Trustee, shall be an institution or person acceptable to the Oversight Board. For its services hereunder, the Registrar, unless it is the Claimant Trustee, shall be entitled to receive reasonable compensation from the Claimant Trust as a Claimant Trust Expense.

(b)     Trust Register. The Claimant Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time, a registry of the Claimant Trust Beneficiaries and the Equity Holders (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Claimant Trustee and the Registrar may prescribe.

(c)     Access to Register by Beneficiaries. The Claimant Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Claimant Trustee, and in accordance with reasonable regulations prescribed by the Claimant Trustee, to inspect and, at the expense of the Claimant Trust Beneficiary make copies of the Trust Register, in each case for a purpose reasonable and related to such Claimant Trust Beneficiary's Trust Interest.

001146

5.5     Exemption from Registration.   The Parties hereto intend that the rights of the Claimant Trust Beneficiaries arising under this Claimant Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.   The Oversight Board, acting unanimously, and Claimant Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Claimant Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.   The Trust Interests shall not have consent or voting rights or otherwise confer on the Claimant Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Claimant Trustee under this Agreement.

5.6     Absolute Owners.   The Claimant Trustee may deem and treat the Claimant Trust Beneficiary of record as determined pursuant to this Article 5 as the absolute owner of such Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

5.7     Effect of Death, Incapacity, or Bankruptcy.   The death, incapacity, or bankruptcy of any Claimant Trust Beneficiary during the term of the Claimant Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Claimant Trust Beneficiary under this Agreement.

5.8     Change of Address.   Any Claimant Trust Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Claimant Trustee identifying such alternative distribution address.   Such notification shall be effective only upon receipt by the Claimant Trustee.   Absent actual receipt of such notice by the Claimant Trustee, the Claimant Trustee shall not recognize any such change of distribution address.

5.9     Standing.   No Claimant Trust Beneficiary shall have standing to direct the Claimant Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Claimant Trust Assets.   No Claimant Trust Beneficiary shall have any direct interest in or to any of the Claimant Trust Assets.

5.10     Limitations on Rights of Claimant Trust Beneficiaries.

(a)     The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein).

(b)     In any action taken by a Claimant Trust Beneficiary against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, the prevailing party will be entitled to reimbursement of attorneys' fees and other costs; provided, however, that any fees and costs shall be borne by the Claimant Trust on behalf of any such Trustee or Member, as set forth herein.

001147

(c)    A Claimant Trust Beneficiary who brings any action against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, may be required by order of the Bankruptcy Court to post a bond ensuring that the full costs of a legal defense can be reimbursed.  A request for such bond can be made by the Claimant Trust or by Claimant Trust Beneficiaries constituting in the aggregate at least 50% of the most senior class of Claimant Trust Interests.

(d)    Any action brought by a Claimant Trust Beneficiary must be brought in the United States Bankruptcy Court for the Northern District of Texas.  Claimant Trust Beneficiaries are deemed to have waived any right to a trial by jury

(e)    The rights of Claimant Trust Beneficiaries to bring any action against the Claimant Trust, a current or former Trustee, or current or former Member, in their capacity as such, shall not survive the final distribution by the Claimant Trust.

## ARTICLE VI.
## DISTRIBUTIONS

6.1    Distributions.

(a)    Notwithstanding anything to the contrary contained herein, the Claimant Trustee shall distribute to holders of Trust Interests at least annually the Cash on hand net of any amounts that (a) are reasonably necessary to maintain the value of the Claimant Trust Assets pending their monetization or other disposition during the term of the Claimant Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust (including, but not limited to, any taxes imposed on or payable by the Claimant Trustee with respect to the Claimant Trust Assets), (c) are necessary to pay or reserve for the anticipated costs and expenses of the Litigation Sub-Trust, (d) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Claimant Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses in such amounts and for such period of time as the Claimant Trustee determines, in good faith, may be necessary and appropriate, which determination shall not be subject to consent of the Oversight Board, may not be modified without the express written consent of the Claimant Trustee, and shall survive termination of the Claimant Trustee), (e) are necessary to maintain the Disputed Claims Reserve, and (f) are necessary to pay Allowed Claims in Class 1 through Class 7.  Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within six months of the Effective Date, and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board.  The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board.

(b)    At the request of the Reorganized Debtor, subject in all respects to the provisions of this Agreement, the Claimant Trustee shall distribute Cash to the Reorganized Debtor, as Distribution Agent with respect to Claims in Class 1 through 7, sufficient to satisfy Allowed Claims in Class 1 through Class 7.

001148

(c)     All proceeds of Claimant Trust Assets shall be distributed in accordance with the Plan and this Agreement.

6.2     <u>Manner of Payment or Distribution</u>.  All distributions made by the Claimant Trustee on behalf of the Claimant Trust to the Claimant Trust Beneficiaries shall be payable by the Claimant Trustee directly to the Claimant Trust Beneficiaries of record as of the twentieth (20th) day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3     <u>Delivery of Distributions</u>.  All distributions under this Agreement to any Claimant Trust Beneficiary shall be made, as applicable, at the address of such Claimant Trust Beneficiary (a) as set forth on the Schedules filed with the Bankruptcy Court or (b) on the books and records of the Debtor or their agents, as applicable, unless the Claimant Trustee has been notified in writing of a change of address pursuant to Section 5.6 hereof.

6.4     <u>Disputed Claims Reserves</u>.  There will be no distributions under this Agreement or the Plan on account of Disputed Claims pending Allowance.  The Claimant Trustee will maintain a Disputed Claims Reserve as set forth in the Plan and will make distributions from the Disputed Claims Reserve as set forth in the Plan.

6.5     <u>Undeliverable Distributions and Unclaimed Property</u>.  All undeliverable distributions and unclaimed property shall be treated in the manner set forth in the Plan.

6.6     <u>*De Minimis* Distributions</u>.  Distributions with a value of less than $100 will be treated in accordance with the Plan.

6.7     <u>United States Claimant Trustee Fees and Reports</u>.  **After the Effective Date, the Claimant Trust shall pay as a Claimant Trust Expense, all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Claimant Trust's disbursements until the Chapter 11 Case is closed.  After the Effective Date, the Claimant Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Claimant Trust as required by the Office of the United States Trustee Office for as long as the Chapter 11 Case remains open.**

<u>**ARTICLE VII.**</u>
<u>**TAX MATTERS**</u>

7.1     <u>Tax Treatment and Tax Returns</u>.

(a)     It is intended for the initial transfer of the Claimant Trust Assets to the Claimant Trust to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) as if the Debtor transferred the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described below) to the Claimant Trust Beneficiaries and then, immediately thereafter, the Claimant Trust Beneficiaries transferred the Claimant Trust Assets to the Claimant Trust.  Consistent with such treatment, (i) it is intended that the Claimant Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes

001149

where applicable), (ii) it is intended that the Claimant Trust Beneficiaries will be treated as the grantors of the Claimant Trust and owners of their respective share of the Claimant Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable). The Claimant Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

(b)     The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Beneficiaries of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(c)     The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

7.2     <u>Withholding</u>. The Claimant Trustee may withhold from any amount distributed from the Claimant Trust to any Claimant Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable Beneficiary. As a condition to receiving any distribution from the Claimant Trust, the Claimant Trustee may require that the Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Claimant Trustee to comply with applicable tax reporting and withholding laws. If a Beneficiary fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section 6.5(b) of this Agreement.

## <u>ARTICLE VIII.<br>STANDARD OF CARE AND INDEMNIFICATION</u>

8.1     <u>Standard of Care</u>. None of the Claimant Trustee, acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any current or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Claimant Trust or to any Person (including any Claimant Trust Beneficiary) in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the acts or omissions of any such Claimant Trustee, Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Claimant Trust, the Claimant Trustee, Delaware Trustee, Oversight Board, or individual Member shall not be personally liable to the Claimant Trust or any other Person in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise

001150

jurisdiction over such action, such other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Claimant Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Claimant Trust or to any Person for the acts or omissions of any employee, agent or professional of the Claimant Trust or Claimant Trustee taken or not taken in good faith reliance on the advice of professionals or, as applicable, with the approval of the Bankruptcy Court, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the Claimant Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Claimant Trust.

8.2 __Indemnification.__ The Claimant Trustee (including each former Claimant Trustee), Delaware Trustee, Oversight Board, and all past and present Members (collectively, in their capacities as such, the "Indemnified Parties") shall be indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence. If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Claimant Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Claimant Trustee and/or Oversight Board, as applicable; provided, however, that the failure of an Indemnified Party to promptly notify the Claimant Trustee and/or Oversight Board of an indemnification obligation will not excuse the Claimant Trust from indemnifying the Indemnified Party unless such delay has caused the Claimant Trust material harm. The Claimant Trust shall pay, advance or otherwise reimburse on demand of an Indemnified Party the Indemnified Party's reasonable legal and other defense expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith or in connection with enforcing his or her rights under this Section 8.2 as a Claimant Trust Expense, and the Claimant Trust shall not refuse to make any payments to the Indemnified Party on the assertion that the Indemnified Party engaged in willful misconduct or acted in bad faith; provided that the Indemnified Party shall be required to repay promptly to the Claimant Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Claimant Trust with respect to which such expenses were paid; provided, further, that any such repayment obligation shall be unsecured and interest free. The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.

001151

For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Claimant Trustee, Delaware Trustee, or Member or the estate of any decedent Claimant Trustee or Member, solely in their capacities as such. The indemnification provided hereby shall be a Claimant Trust Expense and shall not be deemed exclusive of any other rights to which the Indemnified Party may now or in the future be entitled to under the Plan or any applicable insurance policy. The failure of the Claimant Trust to pay or reimburse an Indemnified Party as required under this Section 8.2 shall constitute irreparable harm to the Indemnified Party and such Indemnified Party shall be entitled to specific performance of the obligations herein.

8.3     No Personal Liability.  Except as otherwise provided herein, neither of the Trustees nor Members of the Oversight Board shall be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any Person in connection with the affairs of the Claimant Trust to the fullest extent provided under Section 3803 of the Delaware Statutory Trust Act, and all Persons asserting claims against the Claimant Trustee, Litigation Trustee, or any Members, or otherwise asserting claims of any nature in connection with the affairs of the Claimant Trust, shall look solely to the Claimant Trust Assets for satisfaction of any such claims.

8.4     Other Protections.  To the extent applicable and not otherwise addressed herein, the provisions and protections set forth in Article IX of the Plan will apply to the Claimant Trust, the Claimant Trustee, the Litigation Trustee, and the Members.

## ARTICLE IX.
## TERMINATION

9.1     Duration.  The Trustees, the Claimant Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets.

9.2     Distributions in Kind.  Upon dissolution of the Claimant Trust, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

001152

9.3     Continuance of the Claimant Trustee for Winding Up.  After dissolution of the Claimant Trust and for purpose of liquidating and winding up the affairs of the Claimant Trust, the Claimant Trustee shall continue to act as such until the Claimant Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Claimant Trust Assets, the Claimant Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Claimant Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Claimant Trust, until such time as the winding up of the Claimant Trust is completed.  Upon the dissolution of the Claimant Trust and completion of the winding up of the assets, liabilities and affairs of the Claimant Trust pursuant to the Delaware Statutory Trust Act, the Claimant Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Claimant Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date").  Upon the Termination date, the Claimant Trustee shall retain for a period of two (2) years, as a Claimant Trust Expense, the books, records, Claimant Trust Beneficiary lists, and certificated and other documents and files that have been delivered to or created by the Claimant Trustee.  At the Claimant Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.4     Termination of Duties.  Except as otherwise specifically provided herein, upon the Termination Date of the Claimant Trust, the Claimant Trustee, the Oversight Board and its Members shall have no further duties or obligations hereunder.

9.5     No Survival.  The rights of Claimant Trust Beneficiaries hereunder shall not survive the Termination Date, provided that such Claimant Trust Beneficiaries are provided with notice of such Termination Date.

## ARTICLE X.
## AMENDMENTS AND WAIVER

The Claimant Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Claimant Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Claimant Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

## ARTICLE XI.
## MISCELLANEOUS

11.1     Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Claimant Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Claimant Trust Beneficiaries.

11.2     Bankruptcy of Claimant Trust Beneficiaries.  The dissolution, termination, bankruptcy, insolvency or other similar incapacity of any Claimant Trust Beneficiary shall not

001153

permit any creditor, trustee, or any other Claimant Trust Beneficiary to obtain possession of, or exercise legal or equitable remedies with respect to, the Claimant Trust Assets.

11.3     Claimant Trust Beneficiaries have No Legal Title to Claimant Trust Assets.  No Claimant Trust Beneficiary shall have legal title to any part of the Claimant Trust Assets.

11.4     Agreement for Benefit of Parties Only.  Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Claimant Trustee, Oversight Board, and the Claimant Trust Beneficiaries any legal or equitable right, remedy or claim under or in respect of this Agreement.  The Claimant Trust Assets shall be held for the sole and exclusive benefit of the Claimant Trust Beneficiaries.

11.5     Notices.  All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

> (a)     If to the Claimant Trustee:
>
> > Claimant Trustee
> > c/o **[insert contact info for Claimant Trustee]**
>
> With a copy to:
>
> > Pachulski Stang Ziehl & Jones LLP
> > 10100 Santa Monica Blvd, 13th Floor
> > Los Angeles, CA 90067
> > Attn:   Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
> >            Ira Kharasch (ikharasch@pszjlaw.com)
> >            Gregory Demo (gdemo@pszjlaw.com)

Notice mailed shall be effective on the date mailed or sent.  Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.5 to the entity to be charged with knowledge of such change.

11.6     Severability.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.7     Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.8     Binding Effect, etc.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Claimant Trust, the Claimant Trustee, and the

001154

Claimant Trust Beneficiaries, and their respective successors and assigns.  Any notice, direction, consent, waiver or other instrument or action by any Claimant Trust Beneficiary shall bind its successors and assigns.

11.9    Headings; References.    The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.10    Governing Law.    This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.11    Consent to Jurisdiction.    Each of the parties hereto, each Member (solely in their capacity as Members of the Oversight Board), and each Claimant Trust Beneficiary consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement, the Plan or any act or omission of the Claimant Trustee (acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan), Litigation Trustee (acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan), the Oversight Board. or any individual Member (solely in their capacity as Members of the Oversight Board); *provided, however*, that if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.

11.12    Transferee Liabilities.    The Claimant Trust shall have no liability for, and the Claimant Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement.  In no event shall the Claimant Trustee or the Claimant Trust Beneficiaries have any personal liability for such claims.  If any liability shall be asserted against the Claimant Trust or the Claimant Trustee as the transferee of the Claimant Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Claimant Trustee may use such part of the Claimant Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Claimant Trustee as a Claimant Trust Expense.

[Remainder of Page Intentionally Blank]

001155

IN WITNESS HEREOF, the parties hereto have caused this Claimant Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Highland Capital Management, L.P.

By: _____
      James P. Seery, Jr.
      Chief Executive Officer and
      Chief Restructuring Officer

Claimant Trustee

By: _____
      James P. Seery, Jr., not individually but
solely in his capacity as the Claimant Trustee

001156

# EXHIBIT S

Case 19-34054-sgj11 Doc 1811-3 Filed 01/22/21 Entered 01/22/21 19:14:23 Page 2 of 39
Case 3:21-cv-00538-N Document 26-4 Filed 06/09/21 Page 67 of 254 PageID 3870
*DRAFT*

## CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of _____ , 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "Debtor"), as settlor, and James P. Seery, Jr., as trustee (the "Claimant Trustee"), and [____] as Delaware trustee (the "Delaware Trustee," and together with the Debtor and the Claimant Trustee, the "Parties") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____, 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve Disputed Claims as set forth herein and in the Plan; and (vi) administrative services relating to the activities of the Claimant Trust and relating to the implementation of the Plan can be performed by the Claimant Trustee.

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2]   For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor, the Claimant Trustee, and the Delaware Trustee have executed this Agreement for the benefit of the Claimant Trust Beneficiaries entitled to share in the Claimant Trust Assets and, at the direction of such Claimant Trust Beneficiaries as provided for in the Plan.

TO HAVE AND TO HOLD unto the Claimant Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust Beneficiaries, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Claimant Trust in accordance with Article IX hereof, this Claimant Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Claimant Trust Assets are to be strictly held and applied by the Claimant Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     Certain Definitions.   Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Acis" means collectively, Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

(b)     "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(c)     "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, with respect to a Member, or to the extent applicable, the Claimant Trustee, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(d)     "Claimant Trust Agreement" means this Agreement.

2

001159

(e)    "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" hereunder and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of this Agreement.

(f)    "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(g)    "Claimant Trust Assets" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

(h)    "Claimant Trust Beneficiaries" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

(i)    "Claimant Trust Expense Cash Reserve" means $[•] million in Cash to be funded pursuant to the Plan into a bank account of the Claimant Trust on or before the Effective Date for the purpose of paying Claimant Trust Expenses in accordance herewith.

(j)    "Claimant Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust, and the fees and expenses of the Claimant Trustee and professional persons retained by the Claimant Trust or Claimant Trustee in accordance with this Agreement.

(k)    "Committee Member" means a Member who is/was also a member of the Creditors' Committee.

(l)    "Conflicted Member" has the meaning set forth in Section 4.6(c) hereof.

(m)    "Contingent Trust Interests" means the contingent interests in the Claimant Trust to be distributed to Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests in accordance with the Plan.

3

(n)     "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, comprised of Acis, Meta-e Discovery, the Redeemer Committee and UBS.

(o)     "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(p)     "Delaware Trustee" has the meaning set forth in the introduction hereof.

(q)     "Disability" means as a result of the Claimant Trustee's or a Member's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Claimant Trustee or the Member, as applicable, the Claimant Trustee or such Member has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(r)     "Disinterested Members" has the meaning set forth in Section 4.1 hereof.

(s)     "Disputed Claims Reserve" means the reserve account to be opened by the Claimant Trust on or after the Effective Date and funded in an initial amount determined by the Claimant Trustee [(in a manner consistent with the Plan and with the consent of a simple majority of the Oversight Board)] to be sufficient to pay Disputed Claims under the Plan.

(t)     "Employees" means the employees of the Debtor set forth in the Plan Supplement.

(u)     "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(v)     "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(w)     "Equity Trust Interests" has the meaning given to it in Section 5.1(c) hereof.

(x)     "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(y)     "General Unsecured Claim Trust Interests" means interests in the Claimant Trust to be distributed to Holders of Allowed Class 8 General Unsecured Claims (including Disputed General Unsecured Claims that are subsequently Allowed) in accordance with the Plan.

(z)     "GUC Beneficiaries" means the Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests.

(aa)    "GUC Payment Certification" has the meaning given to it in Section 5.1(c) hereof.

4

(bb)  "HarbourVest" means, collectively, HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P.

(cc)  "Investment Advisers Act" means the Investment Advisers Act of 1940, as amended.

(dd)  "Investment Company Act" means the Investment Company Act of 1940, as amended.

(ee)  "Litigation Sub-Trust" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(ff)  "Litigation Sub-Trust Agreement" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(gg)  "Litigation Trustee" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(hh)  "Managed Funds" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to the Plan; *provided, however,* that the Highland Select Equity Fund, L.P. (and its direct and indirect subsidiaries) will not be considered a Managed Fund for purposes hereof.

(ii)  "Material Claims" means the Claims asserted by UBS, Patrick Hagaman Daugherty, Integrated Financial Associates, Inc., and the Employees.

(jj)  "Member" means a Person that is member of the Oversight Board.

(kk)  "New GP LLC" means the general partner of the Reorganized Debtor.

(ll)  "Oversight Board" means the board comprised of five (5) Members established pursuant to the Plan and Article III of this Agreement to oversee the Claimant Trustee's performance of his duties and otherwise serve the functions set forth in this Agreement and those of the "Claimant Trust Oversight Committee" described in the Plan. Subject to the terms of this Agreement, the initial Members of the Oversight Board shall be: (i) Eric Felton, as representative of the Redeemer Committee; (ii) Josh Terry, as representative of Acis; (iii) Elizabeth Kozlowski, as representative of UBS; (iv) Paul McVoy, as representative of Meta-e Discovery; and (v) David Pauker.

5

(mm) "Plan" has the meaning set forth in the Recitals hereof.

(nn) "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(oo) "PSZJ" means Pachulski Stang Ziehl & Jones LLP.

(pp) "Redeemer Committee" means the Redeemer Committee of the Highland Crusader Fund.

(qq) "Registrar" has the meaning given to it in Section 5.3(a) hereof.

(rr) "Reorganized Debtor Assets" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust. For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

(ss) "Securities Act" means the Securities Act of 1933, as amended.

(tt) "Subordinated Beneficiaries" means the Claimant Trust Beneficiaries who hold Subordinated Claim Trust Interests.

(uu) "Subordinated Claim Trust Interests" means the subordinated interests in the Claimant Trust to be distributed to Holders of Allowed Class 9 Subordinated Claims in accordance with the Plan.

(vv) "TIA" means the Trust Indenture Act of 1939, as amended.

(ww) "Trust Interests" means collectively the General Unsecured Claim Trust Interests, Subordinated Claim Trust Interests, and Equity Trust Interests.

(xx) "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

(yy) "Trustees" means collectively the Claimant Trustee and Delaware Trustee.

(zz) "UBS" means collectively UBS Securities LLC and UBS AG London Branch.

(aaa) "WilmerHale" Wilmer Cutler Pickering Hale & Dorr LLP.

6

001163

   1.2 <u>General Construction</u>. As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply. "Includes" and "including" are not limiting and "or" is not exclusive. References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement. Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars. References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

   1.3 <u>Incorporation of the Plan</u>. The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

**ARTICLE II.**
**ESTABLISHMENT OF THE CLAIMANT TRUST**

  2.1 <u>Creation of Name of Trust</u>.

   (a) The Claimant Trust is hereby created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Claimant Trust." The Claimant Trustee shall be empowered to conduct all business and hold all property constituting the Claimant Trust Assets in such name in accordance with the terms and conditions set forth herein.

   (b) The Trustees shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in their capacity as Trustees, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

001164

2.2    Objectives.

(a)     The Claimant Trust is established for the purpose of satisfying Allowed General Unsecured Claims and Allowed Subordinated Claims (and only to the extent provided herein, Allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests) under the Plan, by monetizing the Claimant Trust Assets transferred to it and making distributions to the Claimant Trust Beneficiaries. The Claimant Trust shall not continue or engage in any trade or business except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets consistent with this Agreement and the Plan and act as sole member and manager of New GP LLC. The Claimant Trust shall provide a mechanism for (i) the monetization of the Claimant Trust Assets and (ii) the distribution of the proceeds thereof, net of all claims, expenses, charges, liabilities, and obligations of the Claimant Trust, to the Claimant Trust Beneficiaries in accordance with the Plan. In furtherance of this distribution objective, the Claimant Trust will, from time to time, prosecute and resolve objections to certain Claims and Interests as provided herein and in the Plan.

(b)     It is intended that the Claimant Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. In furtherance of this objective, the Claimant Trustee shall, in his business judgment, make continuing best efforts to (i) dispose of or monetize the Claimant Trust Assets and resolve Claims, (ii) make timely distributions, and (iii) not unduly prolong the duration of the Claimant Trust, in each case in accordance with this Agreement.

2.3    Nature and Purposes of the Claimant Trust.

(a)     The Claimant Trust is organized and established as a trust for the purpose of monetizing the Claimant Trust Assets and making distributions to Claimant Trust Beneficiaries in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets, if any, which shall be commenced and pursued by the Reorganized Debtor at the direction of the Claimant Trust as sole member of New GP LLC pursuant to the terms of the Reorganized Limited Partnership Agreement. The Claimant Trust and Claimant Trustee shall have and retain, and, as applicable, assign and transfer to the Litigation Sub-Trust and Litigation Trustee, any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Claim as of the Petition Date. On and after the date hereof, in accordance with and subject to the Plan, the Claimant Trustee shall have the authority to (i) compromise, settle or otherwise resolve, or withdraw any objections to Claims against the Debtor, provided, however, the Claimant Trustee shall only have the authority to compromise or settle any Employee Claim with the unanimous consent of the Oversight Board and in the absence of unanimous consent, any such Employee Claim shall be transferred to the Litigation Sub-Trust and be litigated, comprised, settled, or otherwise resolved exclusively by the Litigation Trustee and (ii) compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, which authority may be shared with or transferred to the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement. For the avoidance of doubt, the Claimant Trust, pursuant to section

8

1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Claims other than Estate Claims, the Employee Claims, and those Claims constituting Reorganized Debtor Assets.

(b)     The Claimant Trust shall be administered by the Claimant Trustee, in accordance with this Agreement, for the following purposes:

(i)     to manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period;

(ii)     to litigate and settle Claims in Class 8 and Class 9 (other than the Employee Claims, which shall be litigated and/or settled by the Litigation Trustee if the Oversight Board does not unanimously approve of any proposed settlement of such Employee Claim by the Claimant Trustee) and any of the Causes of Action included in the Claimant Trust Assets (including any cross-claims and counter-claims); provided, however, that Estate Claims transferred to the Litigation Sub-Trust shall be litigated and settled by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement;

(iii)     to distribute net proceeds of the Claimant Trust Assets to the Claimant Trust Beneficiaries;

(iv)     to distribute funds from the Disputed Claims Reserve to Holders of Trust Interests or to the Reorganized Debtor for distribution to Holders of Disputed Claims in each case in accordance with the Plan from time to time as any such Holder's Disputed Claim becomes an Allowed Claim under the Plan;

(v)     to distribute funds to the Litigation Sub-Trust at the direction the Oversight Board;

(vi)     to serve as the limited partner of, and to hold the limited partnership interests in, the Reorganized Debtor;

(vii)     to serve as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner;

(viii)     to oversee the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement, in its capacity as the sole member and manager of New GP LLC pursuant to the terms of the New GP LLC Documents, all with a view toward maximizing value in a reasonable time in a manner consistent with the Reorganized Debtor's fiduciary duties as investment adviser to the Managed Funds; and

(ix)     to perform any other functions and take any other actions provided for or permitted by this Agreement and the Plan, and in any other agreement executed by the Claimant Trustee.

9

001166

2.4    Transfer of Assets and Rights to the Claimant Trust; Litigation Sub-Trust.

(a)    On the Effective Date, pursuant to the Plan, the Debtor shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Claimant Trust Assets and related Privileges held by the Debtor to the Claimant Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan and this Agreement. To the extent certain assets comprising the Claimant Trust Assets, because of their nature or because such assets will accrue or become transferable subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Claimant Trust on such date, such assets shall be considered Reorganized Debtor Assets, which may be subsequently transferred to the Claimant Trust by the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement after such date.

(b)    On or as soon as practicable after the Effective Date, the Claimant Trust shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims and related Privileges held by the Claimant Trust to the Litigation Sub-Trust Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan, this Agreement, and the Litigation Sub-Trust Agreement. Following the transfer of such Privileges, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(c)    On or before the Effective Date, and continuing thereafter, the Debtor or Reorganized Debtor, as applicable, shall provide (i) for the Claimant Trustee's and Litigation Trustee's reasonable access to all records and information in the Debtor's and Reorganized Debtor's possession, custody or control, (ii) that all Privileges related to the Claimant Trust Assets shall transfer to and vest exclusively in the Claimant Trust (except for those Privileges that will be transferred and assigned to the Litigation Sub-Trust in respect of the Estate Claims), and (iii) subject to Section 3.12(c), the Debtor and Reorganized Debtor shall preserve all records and documents (including all electronic records or documents), including, but not limited to, the Debtor's file server, email server, email archiving system, master journal, SharePoint, Oracle E-Business Suite, Advent Geneva, Siepe database, Bloomberg chat data, and any backups of the foregoing, until such time as the Claimant Trustee, with the consent of the Oversight Board and, if pertaining to any of the Estate Claims, the Litigation Trustee, directs the Reorganized Debtor, as sole member of its general partner, that such records are no longer required to be preserved. For the purposes of transfer of documents, the Claimant Trust or Litigation Sub-Trust, as applicable, is an assignee and successor to the Debtor in respect of the Claimant Trust Assets and Estate Claims, respectively, and shall be treated as such in any review of confidentiality restrictions in requested documents.

(d)    Until the Claimant Trust terminates pursuant to the terms hereof, legal title to the Claimant Trust Assets (other than Estate Claims) and all property contained therein shall be vested at all times in the Claimant Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Claimant Trust Assets to be vested in the Claimant Trustee, in which case title shall be deemed to be vested in the Claimant Trustee, solely in his capacity as Claimant Trustee. For purposes of such jurisdictions, the term Claimant Trust, as used herein, shall be read to mean the Claimant Trustee.

2.5    <u>Principal Office</u>.  The principal office of the Claimant Trust shall be maintained by the Claimant Trustee at the following address:[_____].

2.6    <u>Acceptance</u>.  The Claimant Trustee accepts the Claimant Trust imposed by this Agreement and agrees to observe and perform that Claimant Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.7    <u>Further Assurances</u>.  The Debtor, Reorganized Debtor, and any successors thereof will, upon reasonable request of the Claimant Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Claimant Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Claimant Trustee the powers, instruments or funds in trust hereunder.

2.8    <u>Incidents of Ownership</u>.  The Claimant Trust Beneficiaries shall be the sole beneficiaries of the Claimant Trust and the Claimant Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

<b>ARTICLE III.<br>THE TRUSTEES</b>

3.1    <u>Role</u>.  In furtherance of and consistent with the purpose of the Claimant Trust, the Plan, and this Agreement, the Claimant Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Claimant Trustee with respect to the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries and maintain, manage, and take action on behalf of the Claimant Trust.

3.2    <u>Authority</u>.

(a)    In connection with the administration of the Claimant Trust, in addition to any and all of the powers enumerated elsewhere herein, the Claimant Trustee shall, in an expeditious but orderly manner, monetize the Claimant Trust Assets, make timely distributions and not unduly prolong the duration of the Claimant Trust.  The Claimant Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Claimant Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.  The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value in a reasonable time.

(b)    The Claimant Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Claims and Causes of Action that are part of the Claimant Trust Assets, other than the Estate Claims transferred to the Litigation Sub-Trust, as the Claimant Trustee determines is in the best interests of the Claimant Trust; <u>provided</u>, <u>however</u>, that if the Claimant Trustee proposes a settlement of an Employee Claim and does not obtain unanimous consent of the Oversight Board of such settlement, such Employee Claim shall be transferred to the Litigation Sub-Trust for the Litigation Trustee to litigate.  To the extent that

any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

        (c)     Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

        (i)     solely as required by Section 2.4(c), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

        (ii)     open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

        (iii)     as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

        (iv)     settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

        (v)     sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $3,000,000 (over a thirty-day period);

        (vi)     upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

        (vii)     exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

        (viii)     protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

        (ix)     obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board

12

solely in their capacities as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Claimant Trust Expense and paid by the Claimant Trustee from the Claimant Trust Assets;

(x) without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Claimant Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Claimant Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Claimant Trustee shall be Claimant Trust Expenses and paid by the Claimant Trustee from the Claimant Trust Assets;

(xi) retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Claimant Trust as may be required by this Agreement, the Plan, the Confirmation Order, and applicable laws and as may be reasonably and appropriate in Claimant Trustee's discretion. Subject to the foregoing, the Claimant Trustee may commit the Claimant Trust to, and shall pay, such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid by the Claimant Trustee from Claimant Trust Assets;

(xii) prepare and file (A) tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (B) an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity, or (C) any periodic or current reports that may be required under applicable law;

(xiii) prepare and send annually to the Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Claimant Trust and its share of the Claimant Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

(xiv) to the extent applicable, assert, enforce, release, or waive any attorney-client communication, attorney work product or other Privilege or defense on behalf of the Claimant Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Claimant Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xv) subject to Section 3.4, invest the proceeds of the Claimant Trust Assets and all income earned by the Claimant Trust, pending any distributions in short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills;

13

001170

(xvi) request any appropriate tax determination with respect to the Claimant Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xvii) take or refrain from taking any and all actions the Claimant Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Claimant Trust Assets consistent with purposes hereof;

(xviii) take all steps and execute all instruments and documents necessary to effectuate the purpose of the Claimant Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder;

(xix) exercise such other powers and authority as may be vested in or assumed by the Claimant Trustee by any Final Order;

(xx) evaluate and determine strategy with respect to the Claimant Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Claimant Trust Assets on behalf of the Claimant Trust; and

(xxi) with respect to the Claimant Trust Beneficiaries, perform all duties and functions of the Distribution Agent as set forth in the Plan, including distributing Cash from the Disputed Claims Reserve, solely on account of Disputed Class 1 through Class 7 Claims that were Disputed as of the Effective Date, but become Allowed, to the Reorganization Debtor such that the Reorganized Debtor can satisfy its duties and functions as Distribution Agent with respect to Claims in Class 1 through Class 7 (the foregoing subparagraphs (i)-(xxi) being collectively, the "Authorized Acts").

(d) The Claimant Trustee and the Oversight Committee will enter into an agreement as soon as practicable after the Effective Date concerning the Claimant Trustee's authority with respect to certain other assets, including certain portfolio company assets (the "Other Assets").

(e) The Claimant Trustee has the power and authority to act as trustee of the Claimant Trust and perform the Authorized Acts through the date such Claimant Trustee resigns, is removed, or is otherwise unable to serve for any reason.

3.3    Limitation of Authority.

(a) Notwithstanding anything herein to the contrary, the Claimant Trust and the Claimant Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Claimant Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement, or (iv) cause New GP LLC to cause the Reorganized Debtor to take any action in contravention of the Plan, Plan Documents or the Confirmation Order.

(b) Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Claimant Trustee must receive the consent by vote of a simple majority

14

of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 herein, in order to:

   (i) terminate or extend the term of the Claimant Trust;

   (ii) prosecute, litigate, settle or otherwise resolve any of the Material Claims;

   (iii) except otherwise set forth herein, sell or otherwise monetize any assets that are not Other Assets, including Reorganized Debtor Assets (other than with respect to the Managed Funds), that are valued greater than $3,000,000 (over a thirty-day period);

   (iv) except for cash distributions made in accordance with the terms of this Agreement, make any cash distributions to Claimant Trust Beneficiaries in accordance with Article IV of the Plan;

   (v) except for any distributions made in accordance with the terms of this Agreement, make any distributions from the Disputed Claims Reserve to Holders of Disputed Claims after such time that such Holder's Claim becomes an Allowed Claim under the Plan;

   (vi) reserve or retain any cash or cash equivalents in an amount reasonably necessary to meet claims and contingent liabilities (including Disputed Claims and any indemnification obligations that may arise under Section 8.2 of this Agreement), to maintain the value of the Claimant Trust Assets, or to fund ongoing operations and administration of the Litigation Sub-Trust;

   (vii) borrow as may be necessary to fund activities of the Claimant Trust;

   (viii) determine whether the conditions under Section 5.1(c) of this Agreement have been satisfied such that a certification should be filed with the Bankruptcy Court;

   (ix) invest the Claimant Trust Assets, proceeds thereof, or any income earned by the Claimant Trust (for the avoidance of doubt, this shall not apply to investment decisions made by the Reorganized Debtor or its subsidiaries solely with respect to Managed Funds);

   (x) change the compensation of the Claimant Trustee;

   (xi) subject to ARTICLE X, make structural changes to the Claimant Trust or take other actions to minimize any tax on the Claimant Trust Assets; and

   (xii) retain counsel, experts, advisors, or any other professionals; provided, however, the Claimant Trustee shall not be required to obtain the consent of the Oversight Board for the retention of (i) PSZJ, WilmerHale, or Development Specialists, Inc. and

15

001172

(ii) any other professional whose expected fees and expenses are estimated at less than or equal to $200,000.

        (c)     [Reserved.]

    3.4    <u>Investment of Cash</u>. The right and power of the Claimant Trustee to invest the Claimant Trust Assets, the proceeds thereof, or any income earned by the Claimant Trust, with majority approval of the Oversight Board, shall be limited to the right and power to invest in such Claimant Trust Assets only in Cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; <u>provided</u>, <u>however</u> that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("<u>IRS</u>") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (b) the Claimant Trustee may retain any Claimant Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly monetization or other disposition of such assets, and (c) the Claimant Trustee may expend the assets of the Claimant Trust (i) as reasonably necessary to meet contingent liabilities (including indemnification and similar obligations) and maintain the value of the assets of the Claimant Trust during the pendency of this Claimant Trust, (ii) to pay Claimant Trust Expenses (including, but not limited to, any taxes imposed on the Claimant Trust and reasonable attorneys' fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Claimant Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement).

    3.5    <u>Binding Nature of Actions</u>. All actions taken and determinations made by the Claimant Trustee in accordance with the provisions of this Agreement shall be final and binding upon any and all Beneficiaries.

    3.6    <u>Term of Service</u>. The Claimant Trustee shall serve as the Claimant Trustee for the duration of the Claimant Trust, subject to death, resignation or removal.

    3.7    <u>Resignation</u>. The Claimant Trustee may resign as Claimant Trustee of the Claimant Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation. The Claimant Trustee shall continue to serve as Claimant Trustee after delivery of the Claimant Trustee's resignation until the proposed effective date of such resignation, unless the Claimant Trustee and a simple majority of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Claimant Trustee in accordance with Section 3.9 hereof becomes effective.

    3.8    <u>Removal</u>.

        (a)    The Claimant Trustee may be removed by a simple majority vote of the Oversight Board for Cause for Cause immediately upon notice thereof, or without Cause upon 60 days' prior written notice. Upon the removal of the Claimant Trustee pursuant hereto, the Claimant Trustee will resign, or be deemed to have resigned, from any role or position he or she

16

may have at New GP LLC or the Reorganized Debtor effective upon the expiration of the foregoing 60 day period unless the Claimant Trustee and a simple majority of the Oversight Board agree otherwise.

(b)     To the extent there is any dispute regarding the removal of a Claimant Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Claimant Trustee will continue to serve as the Claimant Trustee after his removal until the earlier of (i) the time when a successor Claimant Trustee will become effective in accordance with Section 3.9 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.9     Appointment of Successor.

(a)     Appointment of Successor.  In the event of a vacancy by reason of the death or Disability (in the case of a Claimant Trustee that is a natural person), dissolution (in the case of a Claimant Trustee that is not a natural person), or removal of the Claimant Trustee, or prospective vacancy by reason of resignation, a successor Claimant Trustee shall be selected by a simple majority vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Claimant Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Claimant Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Claimant Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Claimant Trust.  The successor Claimant Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Claimant Trustee.

(b)     Vesting or Rights in Successor Claimant Trustee.  Every successor Claimant Trustee appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trust, the exiting Claimant Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Claimant Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Claimant Trustee, except that the successor Claimant Trustee shall not be liable for the acts or omissions of the retiring Claimant Trustee.  In no event shall the retiring Claimant Trustee be liable for the acts or omissions of the successor Claimant Trustee.

(c)     Interim Claimant Trustee.  During any period in which there is a vacancy in the position of Claimant Trustee, the Oversight Board shall appoint one of its Members to serve as the interim Claimant Trustee (the "Interim Trustee") until a successor Claimant Trustee is appointed pursuant to Section 3.9(a).  The Interim Trustee shall be subject to all the terms and conditions applicable to a Claimant Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board merely by such Person's appointment as Interim Trustee.

3.10    <u>Continuance of Claimant Trust</u>.    The death, resignation, or removal of the Claimant Trustee shall not operate to terminate the Claimant Trust created by this Agreement or to revoke any existing agency (other than any agency of the Claimant Trustee as the Claimant Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Claimant Trustee.    In the event of the resignation or removal of the Claimant Trustee, the Claimant Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Claimant Trustee's capacity under this Agreement and the conveyance of the Claimant Trust Assets then held by the exiting Claimant Trustee to the successor Claimant Trustee; (ii) deliver to the successor Claimant Trustee all non-privileged documents, instruments, records, and other writings relating to the Claimant Trust as may be in the possession or under the control of the exiting Claimant Trustee, provided, the exiting Claimant Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Claimant Trustee and the cost of making such copies shall be a Claimant Trust Expense to be paid by the Claimant Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Claimant Trustee's obligations and functions by his successor, <u>provided</u> the fees and expenses of such assistance and cooperation shall be paid to the exiting Claimant Trustee by the Claimant Trust. The exiting Claimant Trustee shall irrevocably appoint the successor Claimant Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Claimant Trustee is obligated to perform under this Section 3.10.

3.11    <u>Claimant Trustee as "Estate Representative"</u>.    The Claimant Trustee will be the exclusive trustee of the Claimant Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "<u>Estate Representative</u>") with respect to the Claimant Trust Assets, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement; <u>provided</u> that all rights and powers as representative of the Estate pursuant to section 1123(b)(3)(B) shall be transferred to the Litigation Trustee in respect of the Estate Claims and the Employee Claims.    The Claimant Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Claimant Trust Assets, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order.    All actions, claims, rights or interest constituting Claimant Trust Assets are preserved and retained and may be enforced, or assignable to the Litigation Sub-Trust, by the Claimant Trustee as an Estate Representative.

3.12    <u>Books and Records</u>.

(a)    The Claimant Trustee shall maintain in respect of the Claimant Trust and the Claimant Trust Beneficiaries books and records reflecting Claimant Trust Assets in its possession and the income of the Claimant Trust and payment of expenses, liabilities, and claims against or assumed by the Claimant Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.    Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Claimant Trust and the requirements of Article VII herein.    Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any

accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

(b)     The Claimant Trustee shall provide quarterly reporting to the Oversight Board and Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

(c)     The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; provided, however, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims or Employee Claims without the consent of the Litigation Trustee. Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

3.13    Compensation and Reimbursement; Engagement of Professionals.

(a)     Compensation and Expenses.

(i)     Compensation.  As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation of $150,000 per month (the "Base Salary").  Within the first forty-five days following the Confirmation Date, including any severance, as agreed to by the Claimant Trustee, on the one hand, and the Committee, if agreed upon prior to the Effective Date, or the Oversight Board, if agreed upon on or after the Effective Date, on the other, will negotiate go-forward compensation for the Claimant Trustee which will include (a) the Base Salary, (b) a success fee, and (c) severance.

(ii)     Expense Reimbursements.  All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

19

(b)     Professionals.

(i)     Engagement of Professionals.  The Claimant Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The Claimant Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii)     Fees and Expenses of Professionals.  The Claimant Trustee shall pay the reasonable fees and expenses of any retained professionals as Claimant Trust Expenses.

3.14     Reliance by Claimant Trustee.  Except as otherwise provided herein, the Claimant Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Claimant Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Claimant Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Claimant Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning the Claimant Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15     Commingling of Claimant Trust Assets.  The Claimant Trustee shall not commingle any of the Claimant Trust Assets with his or her own property or the property of any other Person.

3.16     Delaware Trustee.  The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Claimant Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Claimant Trustee; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law.  The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law.  Other than as

20

expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Claimant Trust.

**ARTICLE IV.**
**THE OVERSIGHT BOARD**

4.1     Oversight Board Members.  The Oversight Board will be comprised of five (5) Members appointed to serve as the board of managers of the Claimant Trust, at least two (2) of which shall be disinterested Members selected by the Creditors' Committee (such disinterested members, the "Disinterested Members").  The initial Members of the Oversight Board will be representatives of Acis, the Redeemer Committee, Meta-e Discovery, UBS, and David Pauker. David Pauker and Paul McVoy, the representative of Meta-e Discovery, shall serve as the initial Disinterested Board Members; provided, however, that if the Plan is confirmed with the Convenience Class or any other convenience class supported by the Creditors' Committee, Meta-E Discovery and its representative will resign on the Effective Date or as soon as practicable thereafter and be replaced in accordance with Section 4.10 hereof..

4.2     Authority and Responsibilities.

(a)     The Oversight Board shall, as and when requested by either of the Claimant Trustee and Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Claimant Trustee and Litigation Trustee as to the administration and management of the Claimant Trust and the Litigation Sub-Trust, as applicable, in accordance with the Plan, the Confirmation Order, this Agreement, and Litigation Sub-Trust Agreement (as applicable) and shall have the other responsibilities and powers as set forth herein.  As set forth in the Plan, the Confirmation Order, and herein, the Oversight Board shall have the authority and responsibility to oversee, review, and govern the activities of the Claimant Trust, including the Litigation Sub-Trust, and the performance of the Claimant Trustee and Litigation Trustee, and shall have the authority to remove the Claimant Trustee in accordance with Section 3.7 hereof or the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; provided, however, that the Oversight Board may not direct either Claimant Trustee and Litigation Trustee to act inconsistently with their respective duties under this Agreement (including without limitation as set in Section 4.2(e) below), the Litigation Sub-Trust Agreement, the Plan, the Confirmation Order, or applicable law.

(b)     The Oversight Board shall also (i) monitor and oversee the administration of the Claimant Trust and the Claimant Trustee's performance of his or her responsibilities under this Agreement, (ii) as more fully set forth in the Litigation Sub-Trust Agreement, approve funding to the Litigation Sub-Trust, monitor and oversee the administration of the Litigation Sub-Trust and the Litigation Trustee's performance of his responsibilities under the Litigation Sub-Trust Agreement, and (iii) perform such other tasks as are set forth herein, in the Litigation Sub-Trust Agreement, and in the Plan.

(c)     The Claimant Trustee shall consult with and provide information to the Oversight Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Oversight Board to meet its obligations hereunder.

21

(d) Notwithstanding any provision of this Agreement to the contrary, the Claimant Trustee shall not be required to (i) obtain the approval of any action by the Oversight Board to the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is required to be taken by applicable law, the Plan, the Confirmation Order, or this Agreement or (ii) follow the directions of the Oversight Board to take any action the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is prohibited by applicable law the Plan, the Confirmation Order, or this Agreement.

(e) Notwithstanding provision of this Agreement to the contrary, with respect to the activities of the Reorganized Debtor in its capacity as an investment adviser (and subsidiaries of the Reorganized Debtor that serve as general partner or in an equivalent capacity) to any Managed Funds, the Oversight Board shall not make investment decisions or otherwise participate in the investment decision making process relating to any such Managed Funds, nor shall the Oversight Board or any member thereof serve as a fiduciary to any such Managed Funds. It is agreed and understood that investment decisions made by the Reorganized Debtor (or its subsidiary entities) with respect to Managed Funds shall be made by the Claimant Trustee in his capacity as an officer of the Reorganized Debtor and New GP LLC and/or such persons who serve as investment personnel of the Reorganized Debtor from time to time, and shall be subject to the fiduciary duties applicable to such entities and persons as investment adviser to such Managed Funds.

4.3    Fiduciary Duties. The Oversight Board (and each Member in its capacity as such) shall have fiduciary duties to the Claimant Trust Beneficiaries consistent with the fiduciary duties that the members of the Creditors' Committee have to unsecured creditors and shall exercise its responsibilities accordingly; provided, however, that the Oversight Board shall not owe fiduciary obligations to any Holders of Class A Limited Partnership Interests or Class B/C Limited Partnership Interests until such Holders become Claimant Trust Beneficiaries in accordance with Section 5.1(c) hereof; provided, further, that the Oversight Board shall not owe fiduciary obligations to a Holder of an Equity Trust Interest if such Holder is named as a defendant in any of the Causes of Action, including Estate Claims, in their capacities as such, it being the intent that the Oversight Board's fiduciary duties are to maximize the value of the Claimant Trust Assets, including the Causes of Action. In all circumstances, the Oversight Board shall act in the best interests of the Claimant Trust Beneficiaries and in furtherance of the purpose of the Claimant Trust. Notwithstanding anything to the contrary contained in this Agreement, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.

4.4    Meetings of the Oversight Board. Meetings of the Oversight Board are to be held as necessary to ensure the operation of the Claimant Trust but in no event less often than quarterly. Special meetings of the Oversight Board may be held whenever and wherever called for by the Claimant Trustee or any Member; provided, however, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice requirement being subject to any waiver by the Members in the minutes, if any, or other transcript, if any, of proceedings of the Oversight Board). Unless the Oversight Board decides otherwise (which decision shall rest in the reasonable discretion of the Oversight Board), the Claimant Trustee, and each of the Claimant Trustee's designated advisors may, but are not required to, attend meetings of the Oversight Board.

4.5     Unanimous Written Consent.  Any action required or permitted to be taken by the Oversight Board in a meeting may be taken without a meeting if the action is taken by unanimous written consents describing the actions taken, signed by all Members and recorded.  If any Member informs the Claimant Trustee (via e-mail or otherwise) that he or she objects to the decision, determination, action, or inaction proposed to be made by unanimous written consent, the Claimant Trustee must use reasonable good faith efforts to schedule a meeting on the issue to be set within 48 hours of the request or as soon thereafter as possible on which all members of the Oversight Board are available in person or by telephone.  Such decision, determination, action, or inaction must then be made pursuant to the meeting protocols set forth herein.

4.6     Manner of Acting.

(a)     A quorum for the transaction of business at any meeting of the Oversight Board shall consist of at least three Members (including no less than one (1) Disinterested Member); provided that if the transaction of business at a meeting would constitute a direct or indirect conflict of interest for the Redeemer Committee, Acis, and/or UBS, at least two Disinterested Members must be present for there to be a quorum.  Except as set forth in Sections 3.3(c), 4.9(a), 5.2, 5.4, 6.1, 9.1, and 10, herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Oversight Board except as otherwise required by law or as provided in this Agreement.  Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition of the place) for the holding hereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the applicable Trustee and each Member.

(b)     Any Member who is present and entitled to vote at a meeting of the Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Board, unless (i) such Member objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Board before its adjournment.  The right of dissent or abstention is not available to any Member of the Oversight Board who votes in favor of the action taken.

(c)     Prior to a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Oversight Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Trust Interests).  A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Claimant Trust shall be deemed a "Conflicted Member" who shall not be entitled to vote or take part in any action with respect to

23

such matter or issue. In the event of a Conflicted Member, the vote or action with respect to such matter or issue giving rise to such conflict shall be undertaken only by Members who are not Conflicted Members and, notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Oversight Board.

(d) Each of Acis, the Redeemer Committee, and UBS shall be deemed "Conflicted Members" with respect to any matter or issue related to or otherwise affecting any of their respective Claim(s) (a "Committee Member Claim Matter"). A unanimous vote of the Disinterested Members shall be required to approve of or otherwise take action with respect to any Committee Member Claim Matter and, notwithstanding anything herein to the contrary, the same shall be the act of the Oversight Board.

4.7    Tenure of the Members of the Oversight Board. The authority of the Members of the Oversight Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Claimant Trust is terminated in accordance with Article X hereof. The Members of the Oversight Board will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 4.7 below, or removal pursuant to Section 4.8 below.

4.8    Resignation. A Member of the Oversight Board may resign by giving not less than 90 days prior written notice thereof to the Claimant Trustee and other Members. Such resignation shall become effective on the earlier to occur of (i) the day specified in such notice and (ii) the appointment of a successor in accordance with Section 4.9 below.

4.9    Removal. A majority of the Oversight Board may remove any Member for Cause or Disability. If any Committee Member has its Claim disallowed in its entirety the representative of such entity will immediately be removed as a Member without the requirement for a vote and a successor will be appointed in the manner set forth herein. Notwithstanding the foregoing, upon the termination of the Claimant Trust, any or all of the Members shall be deemed to have resigned.

4.10    Appointment of a Successor Member.

(a) In the event of a vacancy on the Oversight Board (whether by removal, death, or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously; provided, however, that any vacancy resulting from the removal, resignation, or death of a Disinterested Member may only be filled by a disinterested Person unaffiliated with any Claimant or constituency in the Chapter 11 Case; provided, further, that if an individual serving as the representative of a Committee Member resigns from its role as representative, such resignation shall not be deemed resignation of the Committee Member itself and such Committee Member shall have the exclusive right to designate its replacement representative for the Oversight Board. The appointment of a successor Member will be further evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

24

(b)     Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act.  A successor Member will not be liable personally for any act or omission of a predecessor Member.

(c)     Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11    <u>Compensation and Reimbursement of Expenses</u>.   Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; <u>provided</u>, <u>however</u>, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member.  Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12    <u>Confidentiality</u>.  Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("<u>Confidential Trust Information</u>"), except as otherwise required by law.   For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "<u>Member Affiliates</u>") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.11.

<b>ARTICLE V.<br>TRUST INTERESTS</b>

5.1     <u>Claimant Trust Interests</u>.

(a)     <u>General Unsecured Claim Trust Interests</u>. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "<u>GUC Beneficiaries</u>").  The Claimant Trustee shall allocate to each Holder of an Allowed Class

25

8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims. The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

(b)     Subordinated Claim Trust Interests.  On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "Subordinated Beneficiaries"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9.  The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests.  The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, and all Disputed General Unsecured Claims have been resolved, in accordance with the terms of the Plan and this Agreement.

(c)     Contingent Trust Interests.  On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "Equity Holders").  The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan.  Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the "GUC Payment Certification").  Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "Equity Trust Interests."  The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's  Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement.  The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

5.2     Interests Beneficial Only.  The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets or to require an accounting.  No Claimant Trust Beneficiary shall have any governance right or other wright to direct Claimant Trust activities.

26

001183

5.3    Transferability of Trust Interests.  No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected until (i) such action is unanimously approved by the Oversight Board, (ii) the Claimant Trustee and Oversight Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Claimant Trust to be subject to entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Claimant Trustee and Oversight Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not (a) require the Claimant Trust to comply with the registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act or (b) cause any adverse effect under the Investment Advisers Act, or (y) the Oversight Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Claimant Trust to become a public reporting company and/or make periodic reports under the Exchange Act (provided that it is not required to register under the Investment Company Act or register its securities under the Securities Act) to enable such disposition to be made.  In the event that any such disposition is allowed, the Oversight Board and the Claimant Trustee may add such restrictions upon such disposition and other terms of this Agreement as are deemed necessary or appropriate by the Claimant Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

5.4    Registry of Trust Interests.

(a)    Registrar.  The Claimant Trustee shall appoint a registrar, which may be the Claimant Trustee (the "Registrar"), for the purpose of recording ownership of the Trust Interests as provided herein.  The Registrar, if other than the Claimant Trustee, shall be an institution or person acceptable to the Oversight Board.  For its services hereunder, the Registrar, unless it is the Claimant Trustee, shall be entitled to receive reasonable compensation from the Claimant Trust as a Claimant Trust Expense.

(b)    Trust Register.  The Claimant Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time, a registry of the Claimant Trust Beneficiaries and the Equity Holders (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Claimant Trustee and the Registrar may prescribe.

(c)    Access to Register by Beneficiaries.  The Claimant Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Claimant Trustee, and in accordance with reasonable regulations prescribed by the Claimant Trustee, to inspect and, at the expense of the Claimant Trust Beneficiary make copies of the Trust Register, in each case for a purpose reasonable and related to such Claimant Trust Beneficiary's Trust Interest.

5.5    Exemption from Registration.  The Parties hereto intend that the rights of the Claimant Trust Beneficiaries arising under this Claimant Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Claimant Trustee may amend this

001184

Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Claimant Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act. The Trust Interests shall not have consent or voting rights or otherwise confer on the Claimant Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Claimant Trustee under this Agreement.

5.6    Absolute Owners.  The Claimant Trustee may deem and treat the Claimant Trust Beneficiary of record as determined pursuant to this Article 5 as the absolute owner of such Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

5.7    Effect of Death, Incapacity, or Bankruptcy.  The death, incapacity, or bankruptcy of any Claimant Trust Beneficiary during the term of the Claimant Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Claimant Trust Beneficiary under this Agreement.

5.8    Change of Address.  Any Claimant Trust Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Claimant Trustee identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Claimant Trustee.  Absent actual receipt of such notice by the Claimant Trustee, the Claimant Trustee shall not recognize any such change of distribution address.

5.9    Standing.  No Claimant Trust Beneficiary shall have standing to direct the Claimant Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Claimant Trust Assets.  No Claimant Trust Beneficiary shall have any direct interest in or to any of the Claimant Trust Assets.

5.10    Limitations on Rights of Claimant Trust Beneficiaries.

(a)    The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein).

(b)    In any action taken by a Claimant Trust Beneficiary against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, the prevailing party will be entitled to reimbursement of attorneys' fees and other costs; provided, however, that any fees and costs shall be borne by the Claimant Trust on behalf of any such Trustee or Member, as set forth herein.

(c)    A Claimant Trust Beneficiary who brings any action against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, may be required by order of the Bankruptcy Court to post a bond ensuring that the full costs of a legal defense can be reimbursed.  A request for such bond can be made by the Claimant Trust or by

28

Claimant Trust Beneficiaries constituting in the aggregate at least 50% of the most senior class of Claimant Trust Interests.

(d) Any action brought by a Claimant Trust Beneficiary must be brought in the United States Bankruptcy Court for the Northern District of Texas. Claimant Trust Beneficiaries are deemed to have waived any right to a trial by jury

(e) The rights of Claimant Trust Beneficiaries to bring any action against the Claimant Trust, a current or former Trustee, or current or former Member, in their capacity as such, shall not survive the final distribution by the Claimant Trust.

## ARTICLE VI.
## DISTRIBUTIONS

6.1 Distributions.

(a) Notwithstanding anything to the contrary contained herein, the Claimant Trustee shall distribute to holders of Trust Interests at least annually the Cash on hand net of any amounts that (a) are reasonably necessary to maintain the value of the Claimant Trust Assets pending their monetization or other disposition during the term of the Claimant Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust (including, but not limited to, any taxes imposed on or payable by the Claimant Trustee with respect to the Claimant Trust Assets), (c) are necessary to pay or reserve for the anticipated costs and expenses of the Litigation Sub-Trust, (d) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Claimant Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses in such amounts and for such period of time as the Claimant Trustee determines, in good faith, may be necessary and appropriate, which determination shall not be subject to consent of the Oversight Board, may not be modified without the express written consent of the Claimant Trustee, and shall survive termination of the Claimant Trustee), (e) are necessary to maintain the Disputed Claims Reserve, and (f) are necessary to pay Allowed Claims in Class 1 through Class 7. Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within six months of the Effective Date, and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board. The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board.

(b) At the request of the Reorganized Debtor, subject in all respects to the provisions of this Agreement, the Claimant Trustee shall distribute Cash to the Reorganized Debtor, as Distribution Agent with respect to Claims in Class 1 through 7, sufficient to satisfy Allowed Claims in Class 1 through Class 7.

(c) All proceeds of Claimant Trust Assets shall be distributed in accordance with the Plan and this Agreement.

29

6.2     Manner of Payment or Distribution.   All distributions made by the Claimant Trustee on behalf of the Claimant Trust to the Claimant Trust Beneficiaries shall be payable by the Claimant Trustee directly to the Claimant Trust Beneficiaries of record as of the twentieth (20th) day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3     Delivery of Distributions.   All distributions under this Agreement to any Claimant Trust Beneficiary shall be made, as applicable, at the address of such Claimant Trust Beneficiary (a) as set forth on the Schedules filed with the Bankruptcy Court or (b) on the books and records of the Debtor or their agents, as applicable, unless the Claimant Trustee has been notified in writing of a change of address pursuant to Section 5.6 hereof.

6.4     Disputed Claims Reserves.   There will be no distributions under this Agreement or the Plan on account of Disputed Claims pending Allowance.   The Claimant Trustee will maintain a Disputed Claims Reserve as set forth in the Plan and will make distributions from the Disputed Claims Reserve as set forth in the Plan.

6.5     Undeliverable Distributions and Unclaimed Property.   All undeliverable distributions and unclaimed property shall be treated in the manner set forth in the Plan.

6.6     De Minimis Distributions.   Distributions with a value of less than $100 will be treated in accordance with the Plan.

6.7     United States Claimant Trustee Fees and Reports.   **After the Effective Date, the Claimant Trust shall pay as a Claimant Trust Expense, all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Claimant Trust's disbursements until the Chapter 11 Case is closed.   After the Effective Date, the Claimant Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Claimant Trust as required by the Office of the United States Trustee Office for as long as the Chapter 11 Case remains open.**

## ARTICLE VII.
## TAX MATTERS

7.1     Tax Treatment and Tax Returns.

(a)     It is intended for the initial transfer of the Claimant Trust Assets to the Claimant Trust to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) as if the Debtor transferred the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described below) to the Claimant Trust Beneficiaries and then, immediately thereafter, the Claimant Trust Beneficiaries transferred the Claimant Trust Assets to the Claimant Trust.   Consistent with such treatment, (i) it is intended that the Claimant Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Claimant Trust Beneficiaries will be treated as the grantors of the Claimant Trust and owners of their respective share of the Claimant Trust Assets

30

for federal income tax purposes (and foreign, state, and local income tax purposes where applicable). The Claimant Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

(b)     The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Beneficiaries of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(c)     The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

7.2     Withholding.  The Claimant Trustee may withhold from any amount distributed from the Claimant Trust to any Claimant Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable Beneficiary.  As a condition to receiving any distribution from the Claimant Trust, the Claimant Trustee may require that the Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Claimant Trustee to comply with applicable tax reporting and withholding laws. If a Beneficiary fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section 6.5(b) of this Agreement.

**ARTICLE VIII.**
**STANDARD OF CARE AND INDEMNIFICATION**

8.1     Standard of Care.  None of the Claimant Trustee, acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any current or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Claimant Trust or to any Person (including any Claimant Trust Beneficiary) in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the acts or omissions of any such Claimant Trustee, Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Claimant Trust, the Claimant Trustee, Delaware Trustee, Oversight Board, or individual Member shall not be personally liable to the Claimant Trust or any other Person in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence.  None of

31

the Claimant Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Claimant Trust or to any Person for the acts or omissions of any employee, agent or professional of the Claimant Trust or Claimant Trustee taken or not taken in good faith reliance on the advice of professionals or, as applicable, with the approval of the Bankruptcy Court, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the Claimant Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Claimant Trust.

8.2     Indemnification.  The Claimant Trustee (including each former Claimant Trustee), Delaware Trustee, Oversight Board, and all past and present Members (collectively, in their capacities as such, the "Indemnified Parties") shall be indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence.  If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Claimant Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Claimant Trustee and/or Oversight Board, as applicable; provided, however, that the failure of an Indemnified Party to promptly notify the Claimant Trustee and/or Oversight Board of an indemnification obligation will not excuse the Claimant Trust from indemnifying the Indemnified Party unless such delay has caused the Claimant Trust material harm.  The Claimant Trust shall pay, advance or otherwise reimburse on demand of an Indemnified Party the Indemnified Party's reasonable legal and other defense expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith or in connection with enforcing his or her rights under this Section 8.2 as a Claimant Trust Expense, and the Claimant Trust shall not refuse to make any payments to the Indemnified Party on the assertion that the Indemnified Party engaged in willful misconduct or acted in bad faith; provided that the Indemnified Party shall be required to repay promptly to the Claimant Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Claimant Trust with respect to which such expenses were paid; provided, further, that any such repayment obligation shall be unsecured and interest free.  The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.  For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Claimant Trustee, Delaware Trustee, or Member or the estate of any decedent Claimant Trustee or Member, solely in their capacities as such.  The indemnification provided hereby shall be a Claimant Trust Expense and

shall not be deemed exclusive of any other rights to which the Indemnified Party may now or in the future be entitled to under the Plan or any applicable insurance policy. The failure of the Claimant Trust to pay or reimburse an Indemnified Party as required under this Section 8.2 shall constitute irreparable harm to the Indemnified Party and such Indemnified Party shall be entitled to specific performance of the obligations herein.

8.3     No Personal Liability.  Except as otherwise provided herein, neither of the Trustees nor Members of the Oversight Board shall be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any Person in connection with the affairs of the Claimant Trust to the fullest extent provided under Section 3803 of the Delaware Statutory Trust Act, and all Persons asserting claims against the Claimant Trustee, Litigation Trustee, or any Members, or otherwise asserting claims of any nature in connection with the affairs of the Claimant Trust, shall look solely to the Claimant Trust Assets for satisfaction of any such claims.

8.4     Other Protections.  To the extent applicable and not otherwise addressed herein, the provisions and protections set forth in Article IX of the Plan will apply to the Claimant Trust, the Claimant Trustee, the Litigation Trustee, and the Members.

## ARTICLE IX.
## TERMINATION

9.1     Duration.  The Trustees, the Claimant Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets.

9.2     Distributions in Kind.  Upon dissolution of the Claimant Trust, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

9.3     Continuance of the Claimant Trustee for Winding Up.  After dissolution of the Claimant Trust and for purpose of liquidating and winding up the affairs of the Claimant Trust, the Claimant Trustee shall continue to act as such until the Claimant Trustee's duties have been

33

fully performed. Prior to the final distribution of all remaining Claimant Trust Assets, the Claimant Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Claimant Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Claimant Trust, until such time as the winding up of the Claimant Trust is completed. Upon the dissolution of the Claimant Trust and completion of the winding up of the assets, liabilities and affairs of the Claimant Trust pursuant to the Delaware Statutory Trust Act, the Claimant Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Claimant Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date"). Upon the Termination date, the Claimant Trustee shall retain for a period of two (2) years, as a Claimant Trust Expense, the books, records, Claimant Trust Beneficiary lists, and certificated and other documents and files that have been delivered to or created by the Claimant Trustee. At the Claimant Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.4     Termination of Duties. Except as otherwise specifically provided herein, upon the Termination Date of the Claimant Trust, the Claimant Trustee, the Oversight Board and its Members shall have no further duties or obligations hereunder.

9.5     No Survival. The rights of Claimant Trust Beneficiaries hereunder shall not survive the Termination Date, provided that such Claimant Trust Beneficiaries are provided with notice of such Termination Date.

## ARTICLE X.
## AMENDMENTS AND WAIVER

The Claimant Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions. This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Claimant Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Claimant Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

## ARTICLE XI.
## MISCELLANEOUS

11.1     Trust Irrevocable. Except as set forth in this Agreement, establishment of the Claimant Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Claimant Trust Beneficiaries.

11.2     Bankruptcy of Claimant Trust Beneficiaries. The dissolution, termination, bankruptcy, insolvency or other similar incapacity of any Claimant Trust Beneficiary shall not permit any creditor, trustee, or any other Claimant Trust Beneficiary to obtain possession of, or exercise legal or equitable remedies with respect to, the Claimant Trust Assets.

34

11.3    Claimant Trust Beneficiaries have No Legal Title to Claimant Trust Assets. No Claimant Trust Beneficiary shall have legal title to any part of the Claimant Trust Assets.

11.4    Agreement for Benefit of Parties Only. Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Claimant Trustee, Oversight Board, and the Claimant Trust Beneficiaries any legal or equitable right, remedy or claim under or in respect of this Agreement. The Claimant Trust Assets shall be held for the sole and exclusive benefit of the Claimant Trust Beneficiaries.

11.5    Notices. All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

(a)     If to the Claimant Trustee:

Claimant Trustee
c/o **[insert contact info for Claimant Trustee]**

With a copy to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Attn:    Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
Ira Kharasch (ikharasch@pszjlaw.com)
Gregory Demo (gdemo@pszjlaw.com)

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.5 to the entity to be charged with knowledge of such change.

11.6    Severability. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.7    Counterparts. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.8    Binding Effect, etc. All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Claimant Trust, the Claimant Trustee, and the Claimant Trust Beneficiaries, and their respective successors and assigns. Any notice, direction, consent, waiver or other instrument or action by any Claimant Trust Beneficiary shall bind its successors and assigns.

35

11.9     Headings; References.   The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.10   Governing Law.   This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.11   Consent to Jurisdiction.   Each of the parties hereto, each Member (solely in their capacity as Members of the Oversight Board), and each Claimant Trust Beneficiary consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan, the Plan or any act or omission of the Claimant Trustee (acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan), Litigation Trustee (acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan), the Oversight Board, or any individual Member (solely in their capacity as Members of the Oversight Board); *provided, however*, that if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.

11.12   Transferee Liabilities.   The Claimant Trust shall have no liability for, and the Claimant Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement.  In no event shall the Claimant Trustee or the Claimant Trust Beneficiaries have any personal liability for such claims.  If any liability shall be asserted against the Claimant Trust or the Claimant Trustee as the transferee of the Claimant Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Claimant Trustee may use such part of the Claimant Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Claimant Trustee as a Claimant Trust Expense.

[Remainder of Page Intentionally Blank]

36

IN WITNESS HEREOF, the parties hereto have caused this Claimant Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Highland Capital Management, L.P.

By: _____

James P. Seery, Jr.
Chief Executive Officer and
Chief Restructuring Officer

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

37

001194

Document comparison by Workshare 9.5 on Friday, January 22, 2021 4:38:30 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41280/9 |
| Description | DOCS_NY-#41280-v9-Highland_-_Claimant_Trust_Agreement |
| Document 2 ID | PowerDocs://DOCS_NY/41280/10 |
| Description | DOCS_NY-#41280-v10-Highland_-_Claimant_Trust_Agreement |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 11 |
| Deletions | 5 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 16 |

# EXHIBIT T

*Draft*

## LITIGATION SUB-TRUST AGREEMENT

This Litigation Sub-Trust Agreement, effective as of _____, 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "<u>Agreement</u>"), by and among James P. Seery, Jr., as trustee of the Highland Claimant Trust (the "<u>Claimant Trustee</u>"), [____] as Delaware Trustee, and Marc S. Kirschner as trustee (the "<u>Litigation Trustee</u>," and together with the Claimant Trustee and Delaware Trustee, the "<u>Parties</u>") of the Litigation Sub-Trust for the benefit of the Claimant Trust as sole Litigation Sub-Trust Beneficiary.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "<u>Debtor</u>") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "<u>Bankruptcy Court</u>") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "<u>Chapter 11 Case</u>");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>"),[1] which was confirmed by the Bankruptcy Court on _____, 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "<u>Confirmation Order</u>");

WHEREAS, this Agreement, including all exhibits hereto, is the "Litigation Sub-Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Litigation Sub-Trust Assets are hereby to be transferred by the Claimant Trust to the Litigation Sub-Trust (each as defined herein) created and evidenced by this Agreement so that (i) Estate Claims can be investigated, prosecuted, settled, abandoned, resolved, and otherwise monetized as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; (ii) proceeds of Estate Claims can be remitted to the Claimant Trust as Claimant Trust Assets for distribution to the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) in accordance with the Plan and Claimant Trust Agreement; (iii) the Litigation Trustee can investigate, litigate, settle, or otherwise resolve any Filed Claims relating to the Estate Claims, including the Employee Claims; and (iv) administrative services relating to the activities of the Litigation Sub-Trust can be performed by the Litigation Trustee.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Litigation Trustee and the Claimant Trustee have executed this Agreement for the benefit of the Claimant Trust as provided for in the Plan.

TO HAVE AND TO HOLD unto the Litigation Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Litigation Sub-Trust in accordance with Article IX hereof, this Litigation Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Litigation Sub-Trust Assets are to be strictly held and applied by the Litigation Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1 Certain Definitions. Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan. For all purposes of this Agreement, the following terms shall have the following meanings:

(a) "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(b) "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(c) "Claimant Trust Agreement" means the Claimant Trust Agreement dated [____], 2021, by and between the Debtor, Claimant Trustee, and Delaware Trustee.

(d) "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee who may be appointed pursuant to the terms of the Claimant Trust Agreement.

2

001198

(e)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(f)     "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(g)     "Delaware Trustee" has the meaning set forth in the Claimant Trust Agreement.

(h)     "Disability" means as a result of the Litigation Trustee's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Litigation Trustee, the Litigation Trustee has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(i)     "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(j)     "Employee" means the employees of the Debtor set forth in the Plan Supplement.

(k)     "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(l)     "Litigation Sub-Trust" means the sub-trust created pursuant to this Agreement, and in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d).

(m)     "Litigation Sub-Trust Agreement" means this Agreement.

(n)     "Litigation Sub-Trust Assets" means the Estate Claims and the Litigation Sub-Trust Expense Cash Reserve.

(o)     "Litigation Sub-Trust Beneficiary" means the Claimant Trust.

(p)     "Litigation Sub-Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Litigation Sub-Trust and/or the Litigation Trustee in administering and conducting the affairs of the Litigation Sub-Trust, and otherwise carrying out the terms of the Litigation Sub-Trust and the Plan on behalf of the Litigation Sub-Trust, including without any limitation, any taxes owed by the Litigation Sub-Trust, and the fees and expenses of the Litigation Trustee and professional persons retained by the Litigation Sub-Trust or Litigation Trustee in accordance with Article 3.12(b) of this Agreement.

(q)     "Litigation Sub-Trust Expense Cash Reserve" means $[•] million in Cash to be funded by the Debtor or Reorganized Debtor, as applicable, pursuant to the Plan into a bank account of the Litigation Sub-Trust (or of the Claimant Trust for the benefit of the

001199

Litigation Sub-Trust) on or before the Effective Date for the purpose of paying Litigation Sub-Trust Expenses in accordance herewith.

(r) "Litigation Trustee" means Marc S. Kirschner as the initial "Litigation Trustee" hereunder and under the Plan, and any successor Litigation Trustee who may be appointed pursuant to the terms of this Agreement.

(s) "Oversight Board" has the meaning set forth in the Claimant Trust Agreement.

(t) "Plan" has the meaning set forth in the Recitals hereof.

(u) "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(v) "Securities Act" means the Securities Act of 1933, as amended.

(w) "TIA" means the Trust Indenture Act of 1939, as amended.

(x) "Trust Interests" means the trust interest(s) to be distributed to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.

(y) "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

1.2    General Construction.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3    Incorporation of the Plan.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

001200

## ARTICLE II.
## ESTABLISHMENT OF THE LITIGATION SUB-TRUST

2.1    Establishment of Sub-Trust.

(a)    The Parties, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a statutory trust under the Delaware Statutory Trust Act on behalf of the Claimant Trust as the sole Litigation Sub-Trust Beneficiary, which shall be known as the "Highland Litigation Sub-Trust," on the terms set forth herein. The Litigation Trustee may use this name in accordance with the terms and conditions set forth herein as the Litigation Trustee sees fit.

(b)    The Litigation Trustee shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in his capacity as Litigation Trustee, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2    Nature and Purposes of the Litigation Sub-Trust.  The Litigation Sub-Trust is organized and established as a trust for the purpose of monetizing the Estate Claims and making distributions to Litigation Sub-Trust Beneficiary in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d).  The Litigation Sub-Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Estate Claims and distributing the proceeds of such Estate Claims to the Claimant Trust in a timely fashion in accordance with the Plan, the Confirmation Order, and this Agreement.  The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Estate Claim as of the Petition Date.  Except as otherwise provided herein, the Litigation Sub-Trust shall have the sole responsibility for the pursuit and settlement of the Estate Claims, and, subject to the terms of the Claimant Trustee Agreement, the sole power and authority to allow or settle and compromise any Claims related to the Estate Claims, including, without limitation, Employee Claims. For the avoidance of doubt, the Litigation Sub-Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement).

2.3    Transfer of Assets and Rights to the Litigation Sub-Trust.

(a)    On or as soon as practicable after the Effective Date, the Claimant Trust shall automatically an irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims, Employee Claims, and Privileges.  For purposes of the transfer of documents, the Litigation Sub-Trust is an assignee and successor to the Debtor in respect of the Estate Claims and Employee Claims and shall be treated as such in any review of confidentiality restrictions in requested documents.  For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

5

(b)    Until the Litigation Sub-Trust terminates pursuant to the terms hereof, legal title to the Estate Claims shall be vested at all times in the Litigation Sub-Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Estate Claims to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee.  For purposes of such jurisdictions, the term Litigation Sub-Trust, as used herein, shall be read to mean the Litigation Trustee.

(c)    In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Estate Claims after the Effective Date.  No Person or entity may rely on the absence of a specific reference in the Plan to any Estate Claim against them as any indication that the Litigation Trustee will not pursue any and all available Estate Claims or objections against them.  Unless any Estate Claim against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Estate Claims for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of the Confirmation Order.

2.4    Principal Office.  The principal office of the Litigation Sub-Trust shall be maintained by the Litigation Trustee at the following address: Goldin Associates, a Teneo Company, 350 Fifth Avenue, New York, New York 10118.

2.5    Acceptance.  The Litigation Trustee accepts the Litigation Sub-Trust imposed by this Agreement and agrees to observe and perform that Litigation Sub-Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.6    Further Assurances.  The Claimant Trustee and any successors thereof will, upon reasonable request of the Litigation Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Litigation Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Litigation Trustee the powers, instruments or funds in trust hereunder.

2.7    Incidents of Ownership.  The Claimant Trust shall be the sole beneficiary of the Litigation Sub-Trust and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## ARTICLE III.
## THE LITIGATION TRUSTEE

3.1    Role.  In furtherance of and consistent with the purpose of the Litigation Sub-Trust, the Plan, and this Agreement, the Litigation Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Litigation Trustee with respect to the Litigation Sub-Trust Assets for the benefit of the Litigation Sub-Trust Beneficiary and maintain, manage, and take action on behalf of the Litigation Sub-Trust.

001202

3.2     Authority.

(a)     In connection with the administration of the Litigation Sub-Trust, in addition to any and all of the powers enumerated elsewhere herein, the Litigation Trustee shall, in an expeditious but orderly manner, investigate, prosecute, settle, and otherwise resolve the Estate Claims. The Litigation Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Litigation Sub-Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.

(b)     The Litigation Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement). To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Estate Claims or Employee Claims prior to the Effective Date, on the Effective Date the Litigation Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "Marc Kirschner, not individually but solely as Litigation Trustee for the Highland Litigation Sub-Trust, et al. v. [Defendant]".

(c)     Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Litigation Trustee shall have the power and authority to:

(i)     hold legal title to any and all rights in or arising from the Litigation Sub-Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Sub-Trust (including any proceeds of the Litigation Sub-Trust Assets);

(ii)     perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Sub-Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iii)     subject to any approval of the Oversight Board that may be required under Section 3.3(b), protect and enforce the rights of the Litigation Sub-Trust with respect to any Litigation Sub-Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(iv)     determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Sub-Trust;

(v)     subject to any approval of the Oversight Board that may be required under Section 3.3(b), investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, all

7

Estate Claims, Employee Claims, or any other Causes of Action in favor of or against the Litigation Sub-Trust;

        (vi)    with respect to any Estate Claim, avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code or applicable state law;

        (vii)    subject to applicable law, seek the examination of any Entity or Person with respect to the Estate Claims;

        (viii)   make all payments relating to the Litigation Sub-Trust Assets;

        (ix)    assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Sub-Trust, the Litigation Sub-Trust Assets, or the Litigation Sub-Trust Beneficiary, if applicable;

        (x)    prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Sub-Trust, and pay taxes properly payable by the Litigation Sub-Trust;

        (xi)    if not otherwise covered by insurance coverage obtained by the Claimant Trust, obtain reasonable insurance coverage with respect to any liabilities and obligations of the Litigation Trustee, solely in his capacity as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Litigation Sub-Trust Expense and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Reserve;

        (xii)   without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Sub-Trust Expenses and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Cash Reserve;

        (xiii)   to the extent applicable, assert, enforce, release, or waive any Privilege or defense on behalf of the Litigation Sub-Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Litigation Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

        (xiv)   take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Sub-Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the

001204

Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder; and

(xv)    exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(xv) being collectively, the "Authorized Acts").

(d)    The Litigation Trustee has the power and authority to act as trustee of the Litigation Sub-Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(e)    Any determinations by the Liquidation Trustee, under the direction of the Oversight Board, with respect to the amount or timing of settlement or other disposition of any Estate Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Sub-Trust Beneficiary and all other parties of interest following the entry of an order of a court of competent jurisdiction approving such settlement or other disposition to the extent required or obtained.

3.3    Limitation of Authority.

(a)    Notwithstanding anything herein to the contrary, the Litigation Sub-Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Estate Claims as required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement.

(b)    Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Litigation Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 of the Claimant Trust Agreement, in order to:

(i)    terminate or extend the term of the Litigation Sub-Trust;

(ii)    commence litigation with respect to any Estate Claims and, if applicable under the terms of the Claimant Trust Agreement, the Employee Claims, including, without limitation, to (x) litigate, resolve, or settle coverage and/or the liability of any insurer under any insurance policy or legal action related thereto, or (y) pursue avoidance, recovery, or similar remedies that may be brought under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes or common law, including fraudulent transfer law;

(iii)    settle, dispose of, or abandon any Estate Claims (including any counterclaims to the extent such counterclaims are set off against the proceeds of any such Estate Claim);

(iv)    borrow funds as may be necessary to fund litigation or other costs of the Litigation Sub-Trust;

001205

(v)      reserve or retain any cash or cash equivalents in the Litigation Sub-Trust Cash Reserve in an amount reasonably necessary to meet claims and contingent liabilities;

(vi)      change the compensation of the Litigation Trustee; and

(vii)      retain counsel, experts, advisors, or any other professionals.

(c)      [Reserved]

3.4    <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Litigation Trustee in accordance with the provisions of this Agreement shall be final and binding upon the Litigation Sub-Trust Beneficiary.

3.5    <u>Term of Service</u>.  The Litigation Trustee shall serve as the Litigation Trustee for the duration of the Litigation Sub-Trust, subject to death, resignation or removal.

3.6    <u>Resignation</u>.  The Litigation Trustee may resign as trustee of the Litigation Sub-Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Litigation Trustee shall continue to serve as Litigation Trustee after delivery of the Litigation Trustee's resignation until the proposed effective date of such resignation, unless the Litigation Trustee and a [simple majority] of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Litigation Trustee in accordance with Section 3.8 hereof becomes effective.

3.7    <u>Removal</u>.

(a)      The Litigation Trustee may be removed by a [simple majority] vote of the Oversight Board for Cause, immediately upon notice thereof, or without Cause, upon [60 days'] prior written notice.

(b)      To the extent there is any dispute regarding the removal of a Litigation Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when a successor Litigation Trustee will become effective in accordance with Section 3.8 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.8    <u>Appointment of Successor</u>.

(a)      <u>Appointment of Successor</u>.  In the event of a vacancy by reason of the death, Disability, or removal of the Litigation Trustee, or prospective vacancy by reason of resignation, a successor Litigation Trustee shall be selected by a [simple majority] vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Litigation Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Litigation Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Litigation

Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Litigation Sub-Trust, or the Claimant Trust on behalf of the Litigation Sub-Trust. The successor Litigation Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Litigation Trustee.

(b) <u>Vesting or Rights in Successor Litigation Trustee</u>. Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Sub-Trust, the Claimant Trustee, the exiting Litigation Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof. The successor Litigation Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Litigation Trustee except that the successor Litigation Trustee shall not be liable for the acts or omissions of the retiring Litigation Trustee. In no event shall the retiring Litigation Trustee be liable for the acts or omissions of the successor Litigation Trustee.

(c) <u>Interim Litigation Trustee</u>. During any period in which there is a vacancy in the position of Litigation Trustee, the Oversight Board shall appoint one of its Members or the Claimant Trustee to serve as the interim Litigation Trustee (the "<u>Interim Trustee</u>") until a successor Litigation Trustee is appointed pursuant to Section 3.8(a). The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board or Claimant Trustee, as applicable, merely by such Person's appointment as Interim Trustee.

3.9 <u>Continuance of Litigation Sub-Trust</u>. The death, resignation, or removal of the Litigation Trustee shall not operate to terminate the Litigation Sub-Trust created by this Agreement or to revoke any existing agency (other than any agency of the Litigation Trustee as the Litigation Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Litigation Trustee. In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Litigation Trustee's capacity under this Agreement and the conveyance of the Estate Claims then held by the exiting Litigation Trustee to the successor Litigation Trustee; (ii) deliver to the successor Litigation Trustee all non-privileged documents, instruments, records, and other writings relating to the Litigation Sub-Trust as may be in the possession or under the control of the exiting Litigation Trustee, <u>provided</u>, the exiting Litigation Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Litigation Trustee and the cost of making such copies shall be a Litigation Sub-Trust Expense to be paid by the Litigation Sub-Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Litigation Trustee's obligations and functions by his successor, <u>provided</u> the fees and expenses of such assistance and cooperation shall be paid to the exiting Litigation Trustee by the Litigation Sub-Trust. The exiting Litigation Trustee shall irrevocably appoint the successor Litigation Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Litigation Trustee is obligated to perform under this Section 3.9.

001207

3.10    Litigation Trustee as "Estate Representative". The Litigation Trustee will be the exclusive trustee of the Litigation Sub-Trust Assets, for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Estate Claims, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement. The Litigation Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Estate Claims, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order. All actions, claims, rights or interests constituting or relating to Estate Claims are preserved and retained and may be enforced by the Litigation Trustee as an Estate Representative.

3.11    Books and Records.

(a)    The Litigation Trustee shall maintain, in respect of the Litigation Sub-Trust and the Claimant Trust, books and records pertinent to Estate Claims in its possession and the income of the Litigation Sub-Trust and payment of expenses, liabilities, and claims against or assumed by the Litigation Sub-Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Sub-Trust and the requirements of Article VII herein. Except as otherwise provided herein, nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Sub-Trust, or as a condition for managing any payment or distribution out of the Litigation Sub-Trust. Notwithstanding the foregoing, the Litigation Trustee shall to retain such books and records, and for such periods, with respect to any Reorganized Debtor Assets as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

(b)    The Litigation Trustee may dispose some or all of the books and records maintained by the Litigation Trustee at the later of (i) such time as the Litigation Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Litigation Sub-Trust, including with respect to the Estate Claims, or (ii) upon the termination and winding up of the Litigation Sub-Trust under Article IX of this Agreement.

3.12    Reports.

(a)    Financial and Status Reports. The fiscal year of the Litigation Sub-Trust shall be the calendar year. Within 90 days after the end of each calendar year during the term of the Litigation Sub-Trust, and within 45 days after the end of each calendar quarter during (other than the fourth quarter) the term of the Litigation Sub-Trust and as soon as practicable upon termination of the Litigation Sub-Trust, the Litigation Trustee shall make available upon request to the Oversight Board or Litigation Sub-Trust Beneficiary appearing on its records as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the Litigation Sub-Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant

employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Sub-Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Sub-Trust that, in the judgment of the Litigation Trustee, materially affects the Litigation Sub-Trust and of which notice has not previously been given to the Oversight Board or Litigation Sub-Trust Beneficiary, <u>provided</u>, that any such description shall not include any privileged or confidential information of the Litigation Trustee; and (iii) a description of the progress of liquidating the Litigation Sub-Trust Assets and making distributions to the Litigation Sub-Trust Beneficiary and any other material information relating to the Litigation Sub-Trust Assets and the administration of the Litigation Sub-Trust deemed appropriate to be disclosed by the Litigation Trustee, which description shall include a written report detailing, among other things, the litigation status of the Estate Claims transferred to the Litigation Sub-Trust, any settlements entered into by the Litigation Sub-Trust with respect to the Estate Claims, the proceeds recovered to date from Estate Claims, and the distributions made by the Litigation Sub-Trust.

(b) <u>Annual Plan and Budget</u>. If instructed by the Oversight Board, the Litigation Trustee shall prepare and submit to the Oversight Board for approval an annual plan and budget in such detail as reasonably requested.

3.13 <u>Compensation and Reimbursement; Engagement of Professionals</u>.

(a) <u>Compensation and Expenses</u>.

(i) <u>Compensation</u>. As compensation for any services rendered by the Litigation Trustee in connection with this Agreement, the Litigation Trustee shall receive initial compensation in a manner and amount as agreed upon by the Committee. Any additional compensation or compensation of a Successor Litigation Trustee shall be determined by the Oversight Board.

(ii) <u>Expense Reimbursements</u>. All reasonable out-of-pocket expenses of the Litigation Trustee in the performance of his or her duties hereunder, shall be reimbursed as Litigation Sub-Trust Expenses paid by the Litigation Sub-Trust.

(b) <u>Professionals</u>.

(i) <u>Engagement of Professionals</u>. The Litigation Trustee shall engage professionals from time to time in conjunction with the services provided hereunder. The Litigation Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii) <u>Fees and Expenses of Professionals</u>. The Litigation Trustee shall pay the reasonable fees and expenses of any retained professionals as Litigation Sub-Trust Expenses.

3.14 <u>Reliance by Litigation Trustee</u>. Except as otherwise provided herein, the Litigation Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Litigation Trustee has no reason to believe to be other

than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Litigation Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein. The Litigation Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning Estate Claims, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The Litigation Sub-Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15    Commingling of Litigation Sub-Trust Assets. The Litigation Trustee shall not commingle any of the Litigation Sub-Trust Assets with his or her own property or the property of any other Person.

3.16    [Delaware Trustee. The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Litigation Sub-Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Litigation Trustee; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Litigation Sub-Trust.]

## ARTICLE IV.
## THE OVERSIGHT BOARD

The Oversight Board shall be governed by Article IV of the Claimant Trust Agreement.

## ARTICLE V.
## TRUST INTERESTS

5.1    Litigation Sub-Trust Interests. On the date hereof, the Litigation Sub-Trust shall issue Trust Interests to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary. The Litigation Sub-Trust Beneficiary shall be entitled to distributions from the Litigation Sub-Trust Assets in accordance with the terms of the Plan and this Agreement.

001210

5.2 <u>Transferability of Trust Interests</u>. No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected.

5.3 <u>Exemption from Registration</u>. The Parties hereto intend that the rights of the Litigation Sub-Trust Beneficiary arising under this Litigation Sub-Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws. The Oversight Board, acting unanimously, and Litigation Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Litigation Sub-Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act. The Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Sub-Trust Beneficiary any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Litigation Trustee under this Agreement.

**ARTICLE VI.**
**DISTRIBUTIONS**

6.1 <u>Distributions</u>. The Litigation Trustee shall distribute Cash proceeds of the Estate Claims to the Claimant Trust within 30 days of receipt of such Cash proceeds, net of any amounts that (a) are reasonably necessary to maintain the value of the Litigation Sub-Trust Assets pending their monetization or other disposition during the term of the Litigation Sub-Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Litigation Sub-Trust Expenses and any other expenses incurred by the Litigation Sub-Trust (including, but not limited to, any taxes imposed on or payable by the Litigation Trustee with respect to the Litigation Sub-Trust Assets), and (c) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Litigation Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses).

6.2 <u>Manner of Payment or Distribution</u>. All distributions made by the Litigation Trustee on behalf of the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary shall be payable by the Litigation Trustee directly to the Claimant Trust, as sole Litigation Sub-Trust Beneficiary, on the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3 <u>Delivery of Distributions</u>. All distributions under this Agreement to the Claimant Trust shall be made pursuant to wire instructions provided by the Claimant Trustee to the Litigation Trustee.

**ARTICLE VII.**
**TAX MATTERS**

7.1 <u>Tax Treatment and Tax Returns</u>. It is intended that the Litigation Sub-Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) the sole beneficiary of which is the Claimant Trust. Consistent

15

with such treatment, it is intended that the transfer of the Litigation Sub Trust Assets from the Claimant Trust to the Litigation Sub Trust will be treated as a non-event for federal income tax purposes (and foreign, state, and local income tax purposes where applicable). Further, because the Claimant Trust is itself intended to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable),it is intended that the beneficiaries of the Claimant Trust will be treated as the grantor of the Litigation Sub-Trust and owner of the Litigation Sub-Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable). The Litigation Trustee shall cooperate with the Claimant Trustee in connection with the preparation and filing of any federal income tax returns (and foreign, state, and local income tax returns where applicable) or information statements relating to the Litigation Sub Trust Assets.

7.2 <u>Withholding</u>. The Litigation Trustee may withhold from any amount distributed from the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the Litigation Sub-Trust Beneficiary. As a condition to receiving any distribution from the Litigation Sub-Trust, the Litigation Trustee may require that the Litigation Sub-Trust Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Litigation Trustee to comply with applicable tax reporting and withholding laws.

**ARTICLE VIII.**
**STANDARD OF CARE AND INDEMNIFICATION**

8.1 <u>Standard of Care</u>. None of the Litigation Trustee, acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan, the Oversight Board, or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Litigation Sub-Trust or to any Person (including the Litigation Sub-Trust Beneficiary and Claimant Trust Beneficiaries) in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the acts or omissions of any such Litigation Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Litigation Sub-Trust, the Litigation Trustee, or Oversight Board shall not be personally liable to the Litigation Sub-Trust or any other Person in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Litigation Trustee, Oversight Board, or any Member shall be personally liable to the Litigation Sub-Trust or to any Person for the acts or omissions of any employee, agent or professional of the Litigation Sub-Trust or Litigation Trustee, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the Litigation

16

Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Litigation Sub-Trust.

8.2 <u>Indemnification</u>. The Litigation Trustee (including each former Litigation Trustee), Oversight Board, and all past and present Members (collectively, the "<u>Indemnified Parties</u>") shall be indemnified by the Litigation Sub-Trust against and held harmless by the Litigation Sub-Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Litigation Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence. If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Litigation Sub-Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Litigation Trustee and/or Oversight Board, as applicable; <u>provided</u>, <u>however</u>, that the failure of an Indemnified Party to promptly notify the Litigation Trustee and/or Oversight Board of an indemnification obligation will not excuse the Litigation Sub-Trust from indemnifying the Indemnified Party unless such delay has caused the Litigation Sub-Trust material harm. The Litigation Sub-Trust shall periodically advance or otherwise reimburse on demand the Indemnified Party's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith as a Litigation Sub-Trust Expense, but the Indemnified Party shall be required to repay promptly to the Litigation Sub-Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Litigation Sub-Trust with respect to which such expenses were paid. The Litigation Sub-Trust shall indemnify and hold harmless the employees, agents and professionals of the Litigation Sub-Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties. For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Litigation Trustee or Member or the estate of any decedent Litigation Trustee or Member. The indemnification provided hereby shall be a Litigation Sub-Trust Expense.

8.3 To the extent applicable, the provisions and protections set forth in Article IX of the Plan will apply to the Litigation Sub-Trust, the Litigation Trustee, Oversight Board, and the Members.

**<u>ARTICLE IX.</u>**
**<u>TERMINATION</u>**

9.1 <u>Duration</u>. The Litigation Trustee, the Litigation Sub-Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as the Litigation Trustee determines that the Estate Claims is not likely to yield sufficient additional proceeds to justify

17

further pursuit of such Estate, and all Distributions required to be made by the Litigation Trustee to the Litigation Sub-Trust Beneficiary under the Plan and this Agreement have been made, but in no event shall the Litigation Sub-Trust be dissolved later than [three years] from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Sub-Trust Assets.

9.2     <u>Continuance of the Litigation Trustee for Winding Up</u>.  After dissolution of the Litigation Sub-Trust and for purpose of liquidating and winding up the affairs of the Litigation Sub-Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Litigation Sub-Trust Assets, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Litigation Sub-Trust, until such time as the winding up of the Litigation Sub-Trust is completed.  Upon the dissolution of the Litigation Sub-Trust and completion of the winding up of the assets, liabilities and affairs of the Litigation Sub-Trust pursuant to the Delaware Statutory Trust Act, the Litigation Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Litigation Sub-Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "<u>Termination Date</u>").  Subject in all respects to 3.11, upon the Termination date, the Litigation Trustee shall retain for a period of two (2) years, as a Litigation Sub-Trust Expense, the books, records, and certificated and other documents and files that have been delivered to or created by the Litigation Trustee.  Subject in all respects to Section 3.11, at the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.3     <u>Termination of Duties</u>.  Except as otherwise specifically provided herein, upon the Termination Date of the Litigation Sub-Trust, the Litigation Trustee, the Oversight Board, and its Members shall have no further duties or obligations hereunder.

**ARTICLE X.**
**AMENDMENTS AND WAIVER**

The Litigation Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Litigation Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; <u>provided</u> that the Litigation Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

001214

## ARTICLE XI.
## MISCELLANEOUS

11.1     Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Litigation Sub-Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Litigation Sub-Trust Beneficiary.

11.2     Litigation Sub-Trust Beneficiary has No Legal Title to Litigation Sub-Trust Assets.  The Litigation Sub-Trust Beneficiary shall have no legal title to any part of the Litigation Sub-Trust Assets.

11.3     Agreement for Benefit of Parties Only.  Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Litigation Trustee, Oversight Board, and the Litigation Sub-Trust Beneficiary any legal or equitable right, remedy or claim under or in respect of this Agreement.  The Litigation Sub-Trust Assets shall be held for the sole and exclusive benefit of the Litigation Sub-Trust Beneficiary.

11.4     Notices.  All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

      (a)     If to the Litigation Trustee:

           Marc S. Kirschner
           c/o Goldin Associates LLC, a Teneo Company
           350 Fifth Avenue
           New York, New York 10118

      With a copy to:

           **[insert contact for counsel to the Litigation Trustee].**

      (b)     If to the Claimant Trustee:

           Claimant Trustee
           c/o **[insert contact info for Claimant Trustee]**

      With a copy to:

           Pachulski Stang Ziehl & Jones LLP
           10100 Santa Monica Blvd, 13th Floor
           Los Angeles, CA 90067
           Attn:   Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
                   Ira Kharasch (ikharasch@pszjlaw.com)
                   Gregory Demo (gdemo@pszjlaw.com)

001215

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.4 to the entity to be charged with knowledge of such change.

11.5    Severability. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.6    Counterparts. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.7    Binding Effect, etc. All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Litigation Sub-Trust, the Litigation Trustee, and the Litigation Sub-Trust Beneficiary, and their respective successors and assigns. Any notice, direction, consent, waiver or other instrument or action by any Litigation Sub-Trust Beneficiary shall bind its successors and assigns.

11.8    Headings; References. The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.9    Governing Law. This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.10   Consent to Jurisdiction. Each of the parties hereto, each Member (solely in their capacity as Members of the Oversight Board), and each Claimant Trust Beneficiary consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement, the Plan or any act or omission of the Claimant Trustee (acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan), Litigation Trustee (acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan), the Oversight Board. or any individual Member (solely in their capacity as Members of the Oversight Board); *provided, however*, that if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.

11.11   Transferee Liabilities. The Litigation Sub-Trust shall have no liability for, and the Litigation Sub-Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement. In no event shall the Litigation Trustee or the Litigation Sub-Trust Beneficiary have any personal liability for such claims. If any liability shall be asserted against the Litigation Sub-Trust or the Litigation Trustee as the transferee of the Litigation Sub-Trust Assets on account of any claimed liability of,

001216

through or under the Debtor or Reorganized Debtor, the Litigation Trustee may use such part of the Litigation Sub-Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Litigation Trustee as a Litigation Sub-Trust Expense.

[Remainder of Page Intentionally Blank]

001217

IN WITNESS HEREOF, the parties hereto have caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

Litigation Trustee

By: _____

Marc S. Kirschner, not individually but solely in his capacity as the Litigation Trustee

001218

# **EXHIBIT U**

001219

*Draft*

## LITIGATION SUB-TRUST AGREEMENT

This Litigation Sub-Trust Agreement, effective as of _____, 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among James P. Seery, Jr., as trustee of the Highland Claimant Trust (the "Claimant Trustee"), [____] as Delaware Trustee, and Marc S. Kirschner as trustee the "Litigation Trustee," and together with the Claimant Trustee [and Delaware Trustee], the "Parties") of the Litigation Sub-Trust for the benefit of the Claimant Trust as sole Litigation Sub-Trust Beneficiary.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____, 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Litigation Sub-Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Litigation Sub-Trust Assets are hereby to be transferred by the Claimant Trust to the Litigation Sub-Trust (each as defined herein) created and evidenced by this Agreement so that (i) Estate Claims can be investigated, prosecuted, settled, abandoned, resolved, and otherwise monetized as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; (ii) proceeds of Estate Claims can be remitted to the Claimant Trust as Claimant Trust Assets for distribution to the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) in accordance with the Plan and Claimant Trust Agreement; (iii) the Litigation Trustee can investigate, litigate, settle, or otherwise resolve any Filed Claims relating to the Estate Claims, including the Employee Claims; and (iv) administrative services relating to the activities of the Litigation Sub-Trust can be performed by the Litigation Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Litigation Trustee and the Claimant Trustee have executed this Agreement for the benefit of the Claimant Trust as provided for in the Plan.

TO HAVE AND TO HOLD unto the Litigation Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Litigation Sub-Trust in accordance with Article IX hereof, this Litigation Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Litigation Sub-Trust Assets are to be strictly held and applied by the Litigation Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     Certain Definitions.  Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(b)     "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(c)     "Claimant Trust Agreement" means the Claimant Trust Agreement dated [____], 2021, by and between the Debtor, Claimant Trustee, and Delaware Trustee.

(d)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee who may be appointed pursuant to the terms of the Claimant Trust Agreement.

(e)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(f)     "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

2

(g) "Delaware Trustee" has the meaning set forth in the Claimant Trust Agreement.

(h) "Disability" means as a result of the Litigation Trustee's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Litigation Trustee, the Litigation Trustee has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(i) "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(j) "Employee" means the employees of the Debtor set forth in the Plan Supplement.

(k) "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(l) "Litigation Sub-Trust" means the sub-trust created pursuant to this Agreement, and in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d).

(m) "Litigation Sub-Trust Agreement" means this Agreement.

(n) "Litigation Sub-Trust Assets" means the Estate Claims and the Litigation Sub-Trust Expense Cash Reserve.

(o) "Litigation Sub-Trust Beneficiary" means the Claimant Trust.

(p) "Litigation Sub-Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Litigation Sub-Trust and/or the Litigation Trustee in administering and conducting the affairs of the Litigation Sub-Trust, and otherwise carrying out the terms of the Litigation Sub-Trust and the Plan on behalf of the Litigation Sub-Trust, including without any limitation, any taxes owed by the Litigation Sub-Trust, and the fees and expenses of the Litigation Trustee and professional persons retained by the Litigation Sub-Trust or Litigation Trustee in accordance with Article 3.12(b) of this Agreement.

(q) "Litigation Sub-Trust Expense Cash Reserve" means $[•] million in Cash to be funded by the Debtor or Reorganized Debtor, as applicable, pursuant to the Plan into a bank account of the Litigation Sub-Trust (or of the Claimant Trust for the benefit of the Litigation Sub-Trust) on or before the Effective Date for the purpose of paying Litigation Sub-Trust Expenses in accordance herewith.

(r) "Litigation Trustee" means Marc S. Kirschner as the initial "Litigation Trustee" hereunder and under the Plan, and any successor Litigation Trustee who may be appointed pursuant to the terms of this Agreement.

3

(s) "Oversight Board" has the meaning set forth in the Claimant Trust Agreement.

(t) "Plan" has the meaning set forth in the Recitals hereof.

(u) "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(v) "Securities Act" means the Securities Act of 1933, as amended.

(w) "TIA" means the Trust Indenture Act of 1939, as amended.

(x) "Trust Interests" means the trust interest(s) to be distributed to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.

(y) "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

1.2    General Construction.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3    Incorporation of the Plan.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

## ARTICLE II.
## ESTABLISHMENT OF THE LITIGATION SUB-TRUST

2.1    Establishment of Sub-Trust.

(a)    The Parties, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a statutory trust under the Delaware Statutory Trust Act on behalf of the Claimant Trust as the sole

4

Litigation Sub-Trust Beneficiary, which shall be known as the "Highland Litigation Sub-Trust," on the terms set forth herein. The Litigation Trustee may use this name in accordance with the terms and conditions set forth herein as the Litigation Trustee sees fit.

(b)     The Litigation Trustee shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in his capacity as Litigation Trustee, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2     <u>Nature and Purposes of the Litigation Sub-Trust</u>.  The Litigation Sub-Trust is organized and established as a trust for the purpose of monetizing the Estate Claims and making distributions to Litigation Sub-Trust Beneficiary in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d).  The Litigation Sub-Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Estate Claims and distributing the proceeds of such Estate Claims to the Claimant Trust in a timely fashion in accordance with the Plan, the Confirmation Order, and this Agreement.  The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Estate Claim as of the Petition Date.  Except as otherwise provided herein, the Litigation Sub-Trust shall have the sole responsibility for the pursuit and settlement of the Estate Claims, and, subject to the terms of the Claimant Trustee Agreement, the sole power and authority to allow or settle and compromise any Claims related to the Estate Claims, including, without limitation, Employee Claims.  For the avoidance of doubt, the Litigation Sub-Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement).

2.3     <u>Transfer of Assets and Rights to the Litigation Sub-Trust</u>.

(a)     On or as soon as practicable after the Effective Date, the Claimant Trust shall automatically an irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims, Employee Claims, and Privileges.  For purposes of the transfer of documents, the Litigation Sub-Trust is an assignee and successor to the Debtor in respect of the Estate Claims and Employee Claims and shall be treated as such in any review of confidentiality restrictions in requested documents.  For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(b)     Until the Litigation Sub-Trust terminates pursuant to the terms hereof, legal title to the Estate Claims shall be vested at all times in the Litigation Sub-Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Estate Claims to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee.  For purposes of such jurisdictions, the term Litigation Sub-Trust, as used herein, shall be read to mean the Litigation Trustee.

5

(c)     In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Estate Claims after the Effective Date.  No Person or entity may rely on the absence of a specific reference in the Plan to any Estate Claim against them as any indication that the Litigation Trustee will not pursue any and all available Estate Claims or objections against them.  Unless any Estate Claim against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Estate Claims for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of the Confirmation Order.

2.4     <u>Principal Office</u>.   The principal office of the Litigation Sub-Trust shall be maintained by the Litigation Trustee at the following address: Goldin Associates, a Teneo Company, 350 Fifth Avenue, New York, New York 10118.

2.5     <u>Acceptance</u>.   The Litigation Trustee accepts the Litigation Sub-Trust imposed by this Agreement and agrees to observe and perform that Litigation Sub-Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.6     <u>Further Assurances</u>.   The Claimant Trustee and any successors thereof will, upon reasonable request of the Litigation Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Litigation Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Litigation Trustee the powers, instruments or funds in trust hereunder.

2.7     <u>Incidents of Ownership</u>.   The Claimant Trust shall be the sole beneficiary of the Litigation Sub-Trust and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## ARTICLE III.
## THE LITIGATION TRUSTEE

3.1     <u>Role</u>.   In furtherance of and consistent with the purpose of the Litigation Sub-Trust, the Plan, and this Agreement, the Litigation Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Litigation Trustee with respect to the Litigation Sub-Trust Assets for the benefit of the Litigation Sub-Trust Beneficiary and maintain, manage, and take action on behalf of the Litigation Sub-Trust.

3.2     <u>Authority</u>.

(a)     In connection with the administration of the Litigation Sub-Trust, in addition to any and all of the powers enumerated elsewhere herein, the Litigation Trustee shall, in an expeditious but orderly manner, investigate, prosecute, settle, and otherwise resolve the Estate Claims.  The Litigation Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement

6

and the provisions of the Plan and the Confirmation Order relating to the Litigation Sub-Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.

(b) The Litigation Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement). To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Estate Claims or Employee Claims prior to the Effective Date, on the Effective Date the Litigation Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "Marc Kirschner, not individually but solely as Litigation Trustee for the Highland Litigation Sub-Trust, et al. v. [Defendant]".

(c) Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Litigation Trustee shall have the power and authority to:

(i) hold legal title to any and all rights in or arising from the Litigation Sub-Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Sub-Trust (including any proceeds of the Litigation Sub-Trust Assets);

(ii) perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Sub-Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iii) subject to any approval of the Oversight Board that may be required under Section 3.3(b), protect and enforce the rights of the Litigation Sub-Trust with respect to any Litigation Sub-Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(iv) determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Sub-Trust;

(v) subject to any approval of the Oversight Board that may be required under Section 3.3(b), investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, all Estate Claims, Employee Claims, or any other Causes of Action in favor of or against the Litigation Sub-Trust;

(vi) with respect to any Estate Claim, avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code or applicable state law;

(vii) subject to applicable law, seek the examination of any Entity or Person with respect to the Estate Claims;

7

(viii)    make all payments relating to the Litigation Sub-Trust Assets;

(ix)    assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Sub-Trust, the Litigation Sub-Trust Assets, or the Litigation Sub-Trust Beneficiary, if applicable;

(x)    prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Sub-Trust, and pay taxes properly payable by the Litigation Sub-Trust;

(xi)    if not otherwise covered by insurance coverage obtained by the Claimant Trust, obtain reasonable insurance coverage with respect to any liabilities and obligations of the Litigation Trustee, solely in his capacity as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Litigation Sub-Trust Expense and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Reserve;

(xii)    without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Sub-Trust Expenses and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Cash Reserve;

(xiii)    to the extent applicable, assert, enforce, release, or waive any Privilege or defense on behalf of the Litigation Sub-Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Litigation Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xiv)    take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Sub-Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder; and

(xv)    exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(xv) being collectively, the "Authorized Acts").

8

(d)     The Litigation Trustee has the power and authority to act as trustee of the Litigation Sub-Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(e)     Any determinations by the Liquidation Trustee, under the direction of the Oversight Board, with respect to the amount or timing of settlement or other disposition of any Estate Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Sub-Trust Beneficiary and all other parties of interest following the entry of an order of a court of competent jurisdiction approving such settlement or other disposition to the extent required or obtained.

3.3     <u>Limitation of Authority</u>.

(a)     Notwithstanding anything herein to the contrary, the Litigation Sub-Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Estate Claims as required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement.

(b)     Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Litigation Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 of the Claimant Trust Agreement, in order to:

(i)     terminate or extend the term of the Litigation Sub-Trust;

(ii)     commence litigation with respect to any Estate Claims and, if applicable under the terms of the Claimant Trust Agreement, the Employee Claims, including, without limitation, to (x) litigate, resolve, or settle coverage and/or the liability of any insurer under any insurance policy or legal action related thereto, or (y) pursue avoidance, recovery, or similar remedies that may be brought under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes or common law, including fraudulent transfer law;

(iii)     settle, dispose of, or abandon any Estate Claims (including any counterclaims to the extent such counterclaims are set off against the proceeds of any such Estate Claim);

(iv)     borrow funds as may be necessary to fund litigation or other costs of the Litigation Sub-Trust;

(v)     reserve or retain any cash or cash equivalents in the Litigation Sub-Trust Cash Reserve in an amount reasonably necessary to meet claims and contingent liabilities;

(vi)     change the compensation of the Litigation Trustee; and

(vii)     retain counsel, experts, advisors, or any other professionals.

9

(c)    [Reserved]

3.4    <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Litigation Trustee in accordance with the provisions of this Agreement shall be final and binding upon the Litigation Sub-Trust Beneficiary.

3.5    <u>Term of Service</u>.  The Litigation Trustee shall serve as the Litigation Trustee for the duration of the Litigation Sub-Trust, subject to death, resignation or removal.

3.6    <u>Resignation</u>.  The Litigation Trustee may resign as trustee of the Litigation Sub-Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Litigation Trustee shall continue to serve as Litigation Trustee after delivery of the Litigation Trustee's resignation until the proposed effective date of such resignation, unless the Litigation Trustee and a [simple majority] of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Litigation Trustee in accordance with Section 3.8 hereof becomes effective.

3.7    <u>Removal</u>.

(a)    The Litigation Trustee may be removed by a [simple majority] vote of the Oversight Board for Cause, immediately upon notice thereof, or without Cause, upon [60 days'] prior written notice.

(b)    To the extent there is any dispute regarding the removal of a Litigation Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when a successor Litigation Trustee will become effective in accordance with Section 3.8 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.8    <u>Appointment of Successor</u>.

(a)    <u>Appointment of Successor</u>.  In the event of a vacancy by reason of the death, Disability, or removal of the Litigation Trustee, or prospective vacancy by reason of resignation, a successor Litigation Trustee shall be selected by a [simple majority] vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Litigation Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Litigation Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Litigation Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Litigation Sub-Trust, or the Claimant Trust on behalf of the Litigation Sub-Trust. The successor Litigation Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Litigation Trustee.

10

(b) <u>Vesting or Rights in Successor Litigation Trustee</u>. Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Sub-Trust, the Claimant Trustee, the exiting Litigation Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof. The successor Litigation Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Litigation Trustee except that the successor Litigation Trustee shall not be liable for the acts or omissions of the retiring Litigation Trustee. In no event shall the retiring Litigation Trustee be liable for the acts or omissions of the successor Litigation Trustee.

(c) <u>Interim Litigation Trustee</u>. During any period in which there is a vacancy in the position of Litigation Trustee, the Oversight Board shall appoint one of its Members or the Claimant Trustee to serve as the interim Litigation Trustee (the "<u>Interim Trustee</u>") until a successor Litigation Trustee is appointed pursuant to Section 3.8(a). The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board or Claimant Trustee, as applicable, merely by such Person's appointment as Interim Trustee.

3.9 <u>Continuance of Litigation Sub-Trust</u>. The death, resignation, or removal of the Litigation Trustee shall not operate to terminate the Litigation Sub-Trust created by this Agreement or to revoke any existing agency (other than any agency of the Litigation Trustee as the Litigation Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Litigation Trustee. In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Litigation Trustee's capacity under this Agreement and the conveyance of the Estate Claims then held by the exiting Litigation Trustee to the successor Litigation Trustee; (ii) deliver to the successor Litigation Trustee all non-privileged documents, instruments, records, and other writings relating to the Litigation Sub-Trust as may be in the possession or under the control of the exiting Litigation Trustee, <u>provided</u>, the exiting Litigation Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Litigation Trustee and the cost of making such copies shall be a Litigation Sub-Trust Expense to be paid by the Litigation Sub-Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Litigation Trustee's obligations and functions by his successor, <u>provided</u> the fees and expenses of such assistance and cooperation shall be paid to the exiting Litigation Trustee by the Litigation Sub-Trust. The exiting Litigation Trustee shall irrevocably appoint the successor Litigation Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Litigation Trustee is obligated to perform under this Section 3.9.

3.10 <u>Litigation Trustee as "Estate Representative"</u>. The Litigation Trustee will be the exclusive trustee of the Litigation Sub-Trust Assets, for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "<u>Estate Representative</u>") with respect to the Estate Claims, with all rights and powers attendant thereto, in addition to all rights and powers granted

11

in the Plan and in this Agreement. The Litigation Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Estate Claims, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order. All actions, claims, rights or interests constituting or relating to Estate Claims are preserved and retained and may be enforced by the Litigation Trustee as an Estate Representative.

3.11    Books and Records.

(a)    The Litigation Trustee shall maintain, in respect of the Litigation Sub-Trust and the Claimant Trust, books and records pertinent to Estate Claims in its possession and the income of the Litigation Sub-Trust and payment of expenses, liabilities, and claims against or assumed by the Litigation Sub-Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Sub-Trust and the requirements of Article VII herein. Except as otherwise provided herein, nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Sub-Trust, or as a condition for managing any payment or distribution out of the Litigation Sub-Trust. Notwithstanding the foregoing, the Litigation Trustee shall to retain such books and records, and for such periods, with respect to any Reorganized Debtor Assets as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

(b)    The Litigation Trustee may dispose some or all of the books and records maintained by the Litigation Trustee at the later of (i) such time as the Litigation Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Litigation Sub-Trust, including with respect to the Estate Claims, or (ii) upon the termination and winding up of the Litigation Sub-Trust under Article IX of this Agreement.

3.12    Reports.

(a)    Financial and Status Reports. The fiscal year of the Litigation Sub-Trust shall be the calendar year. Within 90 days after the end of each calendar year during the term of the Litigation Sub-Trust, and within 45 days after the end of each calendar quarter during (other than the fourth quarter) the term of the Litigation Sub-Trust and as soon as practicable upon termination of the Litigation Sub-Trust, the Litigation Trustee shall make available upon request to the Oversight Board or Litigation Sub-Trust Beneficiary appearing on its records as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the Litigation Sub-Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Sub-Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Sub-Trust that, in the judgment of the Litigation Trustee, materially affects the Litigation Sub-Trust and of which notice has not previously been given to the Oversight Board or Litigation Sub-Trust

12

Beneficiary, provided, that any such description shall not include any privileged or confidential information of the Litigation Trustee; and (iii) a description of the progress of liquidating the Litigation Sub-Trust Assets and making distributions to the Litigation Sub-Trust Beneficiary and any other material information relating to the Litigation Sub-Trust Assets and the administration of the Litigation Sub-Trust deemed appropriate to be disclosed by the Litigation Trustee, which description shall include a written report detailing, among other things, the litigation status of the Estate Claims transferred to the Litigation Sub-Trust, any settlements entered into by the Litigation Sub-Trust with respect to the Estate Claims, the proceeds recovered to date from Estate Claims, and the distributions made by the Litigation Sub-Trust.

(b) <u>Annual Plan and Budget</u>. If instructed by the Oversight Board, the Litigation Trustee shall prepare and submit to the Oversight Board for approval an annual plan and budget in such detail as reasonably requested.

3.13 <u>Compensation and Reimbursement; Engagement of Professionals</u>.

(a) <u>Compensation and Expenses</u>.

(i) <u>Compensation</u>. As compensation for any services rendered by the Litigation Trustee in connection with this Agreement, the Litigation Trustee shall receive initial compensation in a manner and amount as agreed upon by the Committee. Any additional compensation or compensation of a Successor Litigation Trustee shall be determined by the Oversight Board.

(ii) <u>Expense Reimbursements</u>. All reasonable out-of-pocket expenses of the Litigation Trustee in the performance of his or her duties hereunder, shall be reimbursed as Litigation Sub-Trust Expenses paid by the Litigation Sub-Trust.

(b) <u>Professionals</u>.

(i) <u>Engagement of Professionals</u>. The Litigation Trustee shall engage professionals from time to time in conjunction with the services provided hereunder. The Litigation Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii) <u>Fees and Expenses of Professionals</u>. The Litigation Trustee shall pay the reasonable fees and expenses of any retained professionals as Litigation Sub-Trust Expenses.

3.14 <u>Reliance by Litigation Trustee</u>. Except as otherwise provided herein, the Litigation Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Litigation Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Litigation Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein. The Litigation Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization

13

and protection in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning Estate Claims, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The Litigation Sub-Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15    Commingling of Litigation Sub-Trust Assets. The Litigation Trustee shall not commingle any of the Litigation Sub-Trust Assets with his or her own property or the property of any other Person.

3.16    [Delaware Trustee. The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Litigation Sub-Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Litigation Trustee; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Litigation Sub-Trust.]

## ARTICLE IV.
## THE OVERSIGHT BOARD

The Oversight Board shall be governed by Article IV of the Claimant Trust Agreement.

## ARTICLE V.
## TRUST INTERESTS

5.1    Litigation Sub-Trust Interests. On the date hereof, the Litigation Sub-Trust shall issue Trust Interests to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary. The Litigation Sub-Trust Beneficiary shall be entitled to distributions from the Litigation Sub-Trust Assets in accordance with the terms of the Plan and this Agreement.

5.2    Transferability of Trust Interests. No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected.

14

001233

5.3     Exemption from Registration.  The Parties hereto intend that the rights of the Litigation Sub-Trust Beneficiary arising under this Litigation Sub-Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Litigation Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Litigation Sub-Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Sub-Trust Beneficiary any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Litigation Trustee under this Agreement.

## ARTICLE VI.
## DISTRIBUTIONS

6.1     Distributions.  The Litigation Trustee shall distribute Cash proceeds of the Estate Claims to the Claimant Trust within 30 days of receipt of such Cash proceeds, net of any amounts that (a) are reasonably necessary to maintain the value of the Litigation Sub-Trust Assets pending their monetization or other disposition during the term of the Litigation Sub-Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Litigation Sub-Trust Expenses and any other expenses incurred by the Litigation Sub-Trust (including, but not limited to, any taxes imposed on or payable by the Litigation Trustee with respect to the Litigation Sub-Trust Assets), and (c) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Litigation Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses).

6.2     Manner of Payment or Distribution.  All distributions made by the Litigation Trustee on behalf of the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary shall be payable by the Litigation Trustee directly to the Claimant Trust, as sole Litigation Sub-Trust Beneficiary, on the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3     Delivery of Distributions.  All distributions under this Agreement to the Claimant Trust shall be made pursuant to wire instructions provided by the Claimant Trustee to the Litigation Trustee.

## ARTICLE VII.
## TAX MATTERS

7.1     Tax Treatment and Tax Returns.  It is intended that the Litigation Sub-Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) the sole beneficiary of which is the Claimant Trust.  Consistent with such treatment, it is intended that the transfer of the Litigation Sub Trust Assets from the Claimant Trust to the Litigation Sub Trust will be treated as a non-event for federal income tax purposes (and foreign, state, and local income tax purposes where applicable).  Further, because

15

the Claimant Trust is itself intended to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable),it is intended that the beneficiaries of the Claimant Trust will be treated as the grantor of the Litigation Sub-Trust and owner of the Litigation Sub-Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable). The Litigation Trustee shall cooperate with the Claimant Trustee in connection with the preparation and filing of any federal income tax returns (and foreign, state, and local income tax returns where applicable) or information statements relating to the Litigation Sub Trust Assets.

7.2     Withholding. The Litigation Trustee may withhold from any amount distributed from the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the Litigation Sub-Trust Beneficiary. As a condition to receiving any distribution from the Litigation Sub-Trust, the Litigation Trustee may require that the Litigation Sub-Trust Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Litigation Trustee to comply with applicable tax reporting and withholding laws.

## ARTICLE VIII.
## STANDARD OF CARE AND INDEMNIFICATION

8.1     Standard of Care. None of the Litigation Trustee, acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan, the Oversight Board, or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Litigation Sub-Trust or to any Person (including the Litigation Sub-Trust Beneficiary and Claimant Trust Beneficiaries) in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the acts or omissions of any such Litigation Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Litigation Sub-Trust, the Litigation Trustee, or Oversight Board shall not be personally liable to the Litigation Sub-Trust or any other Person in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Litigation Trustee, Oversight Board, or any Member shall be personally liable to the Litigation Sub-Trust or to any Person for the acts or omissions of any employee, agent or professional of the Litigation Sub-Trust or Litigation Trustee, unless it is ultimately determined by order of the Bankruptcy Court or, if the Bankruptcy Court either declines to exercise jurisdiction over such action, or cannot exercise jurisdiction over such action, such other court of competent jurisdiction that the Litigation Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Litigation Sub-Trust.

16

8.2 <u>Indemnification</u>. The Litigation Trustee (including each former Litigation Trustee), Oversight Board, and all past and present Members (collectively, the "<u>Indemnified Parties</u>") shall be indemnified by the Litigation Sub-Trust against and held harmless by the Litigation Sub-Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Litigation Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence. If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Litigation Sub-Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Litigation Trustee and/or Oversight Board, as applicable; <u>provided, however</u>, that the failure of an Indemnified Party to promptly notify the Litigation Trustee and/or Oversight Board of an indemnification obligation will not excuse the Litigation Sub-Trust from indemnifying the Indemnified Party unless such delay has caused the Litigation Sub-Trust material harm. The Litigation Sub-Trust shall periodically advance or otherwise reimburse on demand the Indemnified Party's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith as a Litigation Sub-Trust Expense, but the Indemnified Party shall be required to repay promptly to the Litigation Sub-Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Litigation Sub-Trust with respect to which such expenses were paid. The Litigation Sub-Trust shall indemnify and hold harmless the employees, agents and professionals of the Litigation Sub-Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties. For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Litigation Trustee or Member or the estate of any decedent Litigation Trustee or Member. The indemnification provided hereby shall be a Litigation Sub-Trust Expense.

8.3 To the extent applicable, the provisions and protections set forth in Article IX of the Plan will apply to the Litigation Sub-Trust, the Litigation Trustee, Oversight Board, and the Members.

<b><u>ARTICLE IX.</u><br><u>TERMINATION</u></b>

9.1 <u>Duration</u>. The Litigation Trustee, the Litigation Sub-Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as the Litigation Trustee determines that the Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate, and all Distributions required to be made by the Litigation Trustee to the Litigation Sub-Trust Beneficiary under the Plan and this Agreement have been made, but in no event shall the Litigation Sub-Trust be dissolved later than [three years] from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such

17

third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Sub-Trust Assets.

9.2     Continuance of the Litigation Trustee for Winding Up.  After dissolution of the Litigation Sub-Trust and for purpose of liquidating and winding up the affairs of the Litigation Sub-Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Litigation Sub-Trust Assets, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Litigation Sub-Trust, until such time as the winding up of the Litigation Sub-Trust is completed.  Upon the dissolution of the Litigation Sub-Trust and completion of the winding up of the assets, liabilities and affairs of the Litigation Sub-Trust pursuant to the Delaware Statutory Trust Act, the Litigation Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Litigation Sub-Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date").  Subject in all respects to 3.11, upon the Termination date, the Litigation Trustee shall retain for a period of two (2) years, as a Litigation Sub-Trust Expense, the books, records, and certificated and other documents and files that have been delivered to or created by the Litigation Trustee.  Subject in all respects to Section 3.11, at the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.3     Termination of Duties.  Except as otherwise specifically provided herein, upon the Termination Date of the Litigation Sub-Trust, the Litigation Trustee, the Oversight Board, and its Members shall have no further duties or obligations hereunder.

## ARTICLE X.
## AMENDMENTS AND WAIVER

The Litigation Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Litigation Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Litigation Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

## ARTICLE XI.
## MISCELLANEOUS

11.1     Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Litigation Sub-Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Litigation Sub-Trust Beneficiary.

18

    11.2    <u>Litigation Sub-Trust Beneficiary has No Legal Title to Litigation Sub-Trust Assets</u>.  The Litigation Sub-Trust Beneficiary shall have no legal title to any part of the Litigation Sub-Trust Assets.

    11.3    <u>Agreement for Benefit of Parties Only</u>.  Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Litigation Trustee, Oversight Board, and the Litigation Sub-Trust Beneficiary any legal or equitable right, remedy or claim under or in respect of this Agreement.  The Litigation Sub-Trust Assets shall be held for the sole and exclusive benefit of the Litigation Sub-Trust Beneficiary.

    11.4    <u>Notices</u>.  All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

    (a)    If to the Litigation Trustee:

        Marc S. Kirschner
        c/o Goldin Associates LLC, a Teneo Company
        350 Fifth Avenue
        New York, New York 10118

With a copy to:

        **[insert contact for counsel to the Litigation Trustee].**

    (b)    If to the Claimant Trustee:

        Claimant Trustee
        c/o **[insert contact info for Claimant Trustee]**

With a copy to:

        Pachulski Stang Ziehl & Jones LLP
        10100 Santa Monica Blvd, 13th Floor
        Los Angeles, CA 90067
        Attn:  Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
              Ira Kharasch (ikharasch@pszjlaw.com)
              Gregory Demo (gdemo@pszjlaw.com)

    Notice mailed shall be effective on the date mailed or sent.  Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.4 to the entity to be charged with knowledge of such change.

    11.5    <u>Severability</u>.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition

19

or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.6    Counterparts.   This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.7    Binding Effect, etc.   All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Litigation Sub-Trust, the Litigation Trustee, and the Litigation Sub-Trust Beneficiary, and their respective successors and assigns.   Any notice, direction, consent, waiver or other instrument or action by any Litigation Sub-Trust Beneficiary shall bind its successors and assigns.

11.8    Headings; References.   The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.9    Governing Law.   This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.10    Consent to Jurisdiction.   Each of the parties hereto, each Member (solely in their capacity as Members of the Oversight Board), and each Claimant Trust Beneficiary consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan or any act or omission of the Claimant Trustee (acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan), Litigation Trustee (acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan), the Oversight Board, or any individual Member (solely in their capacity as Members of the Oversight Board); *provided, however,* that if the Bankruptcy Court either declines to exercise jurisdiction over such action or cannot exercise jurisdiction over such action, such action may be brought in the state or federal courts located in the Northern District of Texas.

11.11    Transferee Liabilities.   The Litigation Sub-Trust shall have no liability for, and the Litigation Sub-Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement.   In no event shall the Litigation Trustee or the Litigation Sub-Trust Beneficiary have any personal liability for such claims.  If any liability shall be asserted against the Litigation Sub-Trust or the Litigation Trustee as the transferee of the Litigation Sub-Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Litigation Trustee may use such part of the Litigation Sub-Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Litigation Trustee as a Litigation Sub-Trust Expense.

[Remainder of Page Intentionally Blank]

20

IN WITNESS HEREOF, the parties hereto have caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

Litigation Trustee

By: _____

Marc S. Kirschner, not individually but solely in his capacity as the Litigation Trustee

21

001240

Document comparison by Workshare 9.5 on Friday, January 22, 2021 4:39:24 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41525/8 |
| Description | DOCS_NY-#41525-v8-Highland_-_Litigation_Trust_Agreement |
| Document 2 ID | PowerDocs://DOCS_NY/41525/9 |
| Description | DOCS_NY-#41525-v9-Highland_-_Litigation_Trust_Agreement |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 6 |
| Deletions | 3 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 9 |

# EXHIBIT V

001242

## SENIOR EMPLOYEE STIPULATION AND TOLLING
## AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of [_____], by and between **[EMPLOYEE NAME]** (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (the "Chapter 11 Case"):

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be further amended or supplemented, the "Plan")[1] [Docket No. 1472]. A hearing to consider confirmation of the Plan is currently scheduled for January 26, 2021.

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its [_____] and in such role provided services to the Debtor;

WHEREAS, (i) certain amounts that were allegedly due to be paid to the Senior Employee for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 ((i) and (ii), collectively, the "Bonus Amount") were not paid because of objections raised by the Committee;

WHEREAS, as of the date hereof, the total Bonus Amount through and including the date hereof is $ [_____];

WHEREAS, on [____], the Senior Employee filed a proof of claim [Claim No. [_]] (the "Proof of Claim"), which included a claim for the Bonus Amount;

WHEREAS, as set forth in the Proof of Claim, the Senior Employee may have other Claims against the Debtor in addition to the Bonus Amount (the "Other Employee Claims" and together with the Bonus Amount, the "Senior Employee Claims")[2]:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2] For the avoidance of doubt, the "Other Employee Claims" shall include all prepetition and postpetition Claims of

1

001243

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been or will be retained pursuant to the Plan (the "Causes of Action"):

WHEREAS, the Plan provides for the release of certain of the Causes of Action (the "Released Causes of Action") against the Senior Employee as set forth in therein (the "Employee Release"):

WHEREAS, both the Employee Release and the payment of the Bonus Amount (as reduced pursuant to this Agreement) are conditioned on the Senior Employee executing this Stipulation on or prior to the Confirmation Date;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1.      Covenant Not to Sue. In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the Bonus Amount which would otherwise be part of the Senior Employee Claim, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties"), agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Released Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date"). This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the Bonus Amount set forth in Section 5 hereof or in the Plan.

2.      Non-Compliance: Vesting.

a.      As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1)      sues, attempts to sue, or threatens or works with or assists

_____

the Senior Employee, including paid time off claims, claims (if applicable) for severance amounts under applicable employment agreements, and administrative claims (if applicable) but shall not include the Bonus Amount.

001244

any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

(2)     has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets,

(3)     has violated the confidentiality provisions of Section 4 below, or

(4)     (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee. Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

b.     Notwithstanding anything herein to the contrary, Employee Release will vest and all Released Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

c.     Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation; provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims or limit the Senior Employee's obligations under Section 8 hereof.  Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

3.     Tolling of Statutes of Limitation. In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitations applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee. The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

001245

4. <u>Confidentiality</u>. In further consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "<u>Confidential Information</u>") relating to the activities or <u>planned</u> activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

5. <u>Bonus Amount.</u>

a. The Senior Employee has agreed to forfeit a percentage of his Bonus Amount in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the Bonus Amount will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his Bonus Amount as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the Allowed Class 7 distribution on the Bonus Amount will be further reduced by 5% (the "<u>Reduced Amount</u>"), and (iv) the Reduced Amount will be forever waived and released. Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting, pursuing, or enforcing any Other Employee Claim.

b. For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section 2, any such nullification will have no effect on the treatment of the Senior Employee's Bonus Amount pursuant to this Section 5.

6. <u>Other Employee Claims</u>. The Parties acknowledge and agree that the Senior Employee is not entitled to make the Convenience Class Election with respect to the Other Employee Claims.

7. <u>Effective Date</u>. The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan. If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

8. <u>Plan Support</u>. The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan, including, without limitation, filing a notice of such Senior Employee's withdrawal from the *Senior Employees' Limited Objection to Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1669], and vote, if applicable, the Bonus Amount, the Other Employee Claims, and any other Claims in favor of the Plan.

9. <u>Miscellaneous</u>.

a. <u>Counterparts</u>. This Stipulation may be signed in counterparts and

001246

such signatures may be delivered by facsimile or other electronic means.

     b.   <u>Binding Effect</u>. This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

     c.   <u>Authority</u>. Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

     d.   <u>Entire Agreement</u>. This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions. This Stipulation may only be amended by an agreement in writing signed by the Parties.

     e.   <u>No Waiver and Reservation of Rights</u>. Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties. Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

     f.   <u>No Admission of Liability</u>. The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action. Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

     g.   <u>No Waiver If Breach</u>. The Parties agree that no breach of any provision hereof can be waived except in writing. The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

     h.   <u>Notice</u>. Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

**Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

With a copy to:

001247

**Attorneys for Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

**HCMLP**

Highland Capital Management, L.P
[_____]
[_____]
Attention: James P. Seery, Jr.
Telephone No.: [_____]
Email: [_____]

With a copy to:

**Attorneys for HCMLP**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

   i. <u>Advice of Counsel</u>. Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

   j. <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

   k. <u>Governing Law: Venue</u>. The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles. Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

001248

*[Remainder of Page Blank]*

001249

**IT IS HEREBY AGREED.**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____

Name: _____

Its: _____

**SENIOR EMPLOYEE**

By: _____

Name: _____

Its: _____

001250

# EXHIBIT W

## SENIOR EMPLOYEE STIPULATION AND TOLLING
## AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of [_____], by and between **[EMPLOYEE NAME]** (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (the "Chapter 11 Case"):

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, on November ~~13,~~24, 2020, the Debtor filed the ~~*Third*~~*Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be further amended~~, or~~ supplemented~~, or otherwise modified from time to time~~, the "Plan")~~:~~[1] [Docket No. 1472]. A hearing to consider confirmation of the Plan is currently scheduled for January 26, 2021.

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its [_____] and in such role provided services to the Debtor;

WHEREAS, ~~the Senior Employee is owed for his services~~ (i) certain amounts that were allegedly due to be paid to the Senior Employee for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 ((i) and (ii), collectively, the "~~Earned Amounts"):WHEREAS, the Committee objected to the Senior Employee receiving the Earned Amounts during the Chapter 11 Case and the Earned Amounts, although earned, was not paid~~Bonus Amount") were not paid because of objections raised by the Committee;

WHEREAS, as of the date hereof, the total ~~Earned Amounts~~Bonus Amount through and including the date hereof ~~owed to the Senior Employee~~ is $ [_____];

WHEREAS, on [____], the Senior Employee filed a proof of claim [Claim No. [_]] (the "Proof of Claim"), which included a claim for the Bonus Amount;

WHEREAS, as set forth in the Proof of Claim, the Senior Employee may have other ~~prepetition and postpetition~~ Claims against the Debtor in addition to the ~~Earned Amounts~~Bonus Amount (the "Other Employee Claims" and together with the Bonus Amount, the "Senior

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

001252

Employee Claims")[2]:

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been or will be retained pursuant to the Plan (the "Causes of Action"):

WHEREAS, the Plan provides for the release of such certain of the Causes of Action (the "Released Causes of Action") against the Senior Employee as set forth in therein (the "Employee Release"):

WHEREAS, both the Employee Release is and the payment of the Bonus Amount (as reduced pursuant to this Agreement) are conditioned on the Senior Employee executing this Stipulation on or prior to the Effective Date of the Plan and reducing his Earned Amounts as set forth herein Confirmation Date;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1. Covenant Not to Sue. In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the Earned Amounts Bonus Amount which would otherwise due to be part of the Senior Employee Claim, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties"), agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Released Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date"). This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the Earned Amounts Bonus Amount set forth in Section 5 hereof or in the Plan.

2. Non-Compliance: Vesting.

a. As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC) that such Employee (regardless of whether the Employee is then

---

[2] For the avoidance of doubt, the "Other Employee Claims" shall include all prepetition and postpetition Claims of the Senior Employee except for the Earned Amounts, including paid time off claims, claims (if applicable) for severance amounts under applicable employment agreements, and administrative claims (if applicable) but shall not include the Bonus Amount.

currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1) sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

(2) has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets,

(3) has violated the confidentiality provisions of Section 4 below, or

(4) (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee. Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

b. Notwithstanding anything herein to the contrary, Employee Release will vest and all Released Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

c. Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation; provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims or limit the Senior Employee's obligations under Section 8 hereof. Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

3. Tolling of Statutes of Limitation. In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitationlimitations applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee. The Senior Employee acknowledges that he will be estopped from arguing that

this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

4. Confidentiality. In further consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "Confidential Information") relating to the activities or planned activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

5. ~~Earned Amounts~~ Bonus Amount.

a. The Senior Employee has agreed to forfeit a percentage of his Bonus Amount in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the ~~Earned Amounts~~ Bonus Amount will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his ~~Earned Amounts~~ Bonus Amount as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the ~~Earned Amounts~~ Allowed Class 7 distribution on the Bonus Amount will be further reduced by 40̶5% (the "Reduced Amount"), and (iv) the Reduced Amount will be forever waived and released. Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting, pursuing, or enforcing any Other Employee Claim.

b. For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section 2, any such nullification will have no effect on the treatment of the Senior Employee's ~~Earned Amounts~~ Bonus Amount pursuant to this Section 5.

6. Other Employee Claims. The Parties acknowledge and agree that the Senior Employee is not entitled to make the Convenience Class Election with respect to the Other Employee Claims.

7. ~~6.~~ Effective Date. The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan. If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

8. ~~7.~~ Plan Support. The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan ~~and vote any~~, including, without limitation, filing a notice of such Senior Employee's withdrawal from the *Senior Employees' Limited Objection to Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1669], and vote, if applicable, the Bonus Amount, the Other Employee Claims, and

any other Claims in favor of the Plan.

9. 8. Miscellaneous.

a.    Counterparts. This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

b.    Binding Effect. This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

c.    Authority. Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

d.    Entire Agreement. This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions. This Stipulation may only be amended by an agreement in writing signed by the Parties.

e.    No Waiver and Reservation of Rights. Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties. Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

f.    No Admission of Liability. The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action. Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

g.    No Waiver If Breach. The Parties agree that no breach of any provision hereof can be waived except in writing. The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

h.    Notice. Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

**Senior Employee**

[_____]
[_____]
[_____]

[_____]
Email: [_____]

With a copy to:

**Attorneys for Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

**HCMLP**

Highland Capital Management, L.P
[_____]
[_____]
Attention: James P. Seery, Jr.
Telephone No.: [_____]
Email: [_____]

With a copy to:

**Attorneys for HCMLP**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

        i.    <u>Advice of Counsel</u>. Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

        j.    <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

001257

      k.    <u>Governing Law: Venue</u>. The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles. Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

001258

**IT IS HEREBY AGREED.**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By:     _____
Name:   _____
Its:    _____

**SENIOR EMPLOYEE**

By:     _____
Name:   _____
Its:    _____

Document comparison by Workshare 9.5 on Thursday, January 21, 2021
4:39:21 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41454/10 |
| Description | DOCS_NY-#41454-v10-Highland_-_Senior_Employee_Stipulation |
| Document 2 ID | PowerDocs://DOCS_NY/41454/18 |
| Description | DOCS_NY-#41454-v18-Highland_-_Senior_Employee_Stipulation |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 44 |
| Deletions | 32 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 76 |

# EXHIBIT X

### Schedule of Contracts and Leases to Be Assumed

1.  Advisory Services Agreement, dated November 21, 2011, effective June 20, 2011, by and between Carey International, Inc., and Highland Capital Management, L.P.

2.  Amended and Restated Advisory Services Agreement, dated March 4, 2013, by and between Trussway Holdings, Inc., and Highland Capital Management, L.P.

3.  Reference Portfolio Management Agreement, dated March 4, 2004, by and between Highland Capital Management, L.P., and Citibank N.A.

4.  Advisory Services Agreement, dated May 25, 2011, by and between CCS Medical, Inc., and Highland Capital Management, L.P.

5.  Amended and Restated Advisory Services Agreement, dated February 28, 2013, by and between Cornerstone Healthcare Group Holding, Inc., and Highland Capital Management, L.P.

6.  Prime Brokerage Agreement by and between Jefferies LLC and Highland Capital Management, L.P., dated May 24, 2013.

7.  Amended and Restated Shared Services Agreement, dated August 21, 2015, by and between Highland Capital Management, L.P., and Falcon E&P Opportunities GP, LLC.

8.  Amended and Restated Administrative Services Agreement, effective as of August 21, 2015, by and between Highland Capital Management, L.P., and Petrocap Partners II GP, LLC.

9.  Office Lease, between Crescent Investors, L.P., and Highland Capital Management, L.P.

10. Paylocity Corporation Services Agreement, between Highland Capital Management, L.P., and Paylocity Corporation, dated November 19, 2012.

11. Electronic Trading Services Agreement, between SunTrust Robinson Humphrey Inc., and Highland Capital Management, L.P., dated February 6, 2019.

12. Letter Agreement, between FTI Consulting, Inc., and Highland Capital Management, L.P., dated November 19, 2018.

13. Administrative Services Agreement, dated January 1, 2018, between Highland Capital Management, L.P., and Liberty Life Assurance Company of Boston.

14. Electronic Communications: Customer Authorization & Indemnification, between Highland Capital Management, L.P., and The Bank of New York Mellon Corporation, dated August 9, 2016.

15. Letter Agreement, dated August 9, 2016, Electronic Access Terms and Conditions, by and between The Bank of New York Mellon Trust Company, N.A., and Highland Capital Management, L.P.

16. Shared Services Agreement by and between Highland HCF Advisor, Ltd., and Highland Capital Management, L.P., dated effective October 27, 2017.

17.  Sub-Advisory Agreement, by and between Highland HCF Advisors, Ltd., and Highland Capital Management, dated effective October 27, 2017.

18.  Collateral Management Agreement, dated November 2, 2006, by and between Highland Credit Opportunities CDO Ltd. and Highland Capital Management, L.P.

19.  Management Agreement, dated November 15, 2007, between Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Restoration Capital Partners Master L.P., Highland Restoration Capital Partners GP, LLC, and Highland Capital Management, L.P.

20.  Investment Management Agreement, between Highland Capital Multi-Strategy Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

21.  Investment Management Agreement, between Highland Capital Multi-Strategy Master Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

22.  Management Agreement, dated August 22, 2007, between and among Highland Capital Management, L.P., and Walkers Fund Services Limited, as trustee of Highland Credit Opportunities Japanese Unit Trust.

23.  Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P., dated November 1, 2013.

24.  Investment Management Agreement, dated March 31, 2015, by and among Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., and Highland Capital Management, L.P.

25.  Amended and Restated Investment Management Agreement, dated February 27, 2017, by and among Highland Prometheus Master Fund L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland SunBridge GP, LLC, and Highland Capital Management, L.P.

26.  Servicing Agreement, dated December 20, 2007, by and among Greenbriar CLO, Ltd., and Highland Capital Management, L.P.

27.  Investment Management Agreement, dated November 1, 2007, by and between Longhorn Credit Funding, LLC, and Highland Capital Management, L.P. (as amended)

28.  Reference Portfolio Management Agreement, dated August 1, 2016, by and between Highland Capital Management, L.P., and Valhalla CLO, Ltd.

29.  Collateral Servicing Agreement, dated December 20, 2006, by and among Highland Park CDO I, Ltd., and Highland Capital Management, L.P.

30.  Portfolio Management Agreement, dated March 15, 2005, by and among Southfork CLO Ltd., and Highland Capital Management, L.P.

31.  Amended and Restated Portfolio Management Agreement, dated November 30, 2005, by and among Jaspar CLO Ltd., and Highland Capital Management, L.P.

32.  Servicing Agreement, dated May 31, 2007, by and among Westchester CLO, Ltd., and Highland Capital Management, L.P.

33. Servicing Agreement, dated May 10, 2006, by and among Rockwall CDO Ltd. and Highland Capital Management, L.P. (as amended)

34. Portfolio Management Agreement, dated December 8, 2005, by and between Liberty CLO, Ltd., and Highland Capital Management, L.P.

35. Servicing Agreement, dated March 27, 2008, by and among Aberdeen Loan Funding, Ltd., and Highland Capital Management, L.P.

36. Servicing Agreement, dated May 9, 2007, by and among Rockwall CDO II Ltd. and Highland Capital Management, L.P.

37. Collateral Management Agreement, by and between, Highland Loan Funding V Ltd. and Highland Capital Management, L.P., dated August 1, 2001.

38. Collateral Management Agreement, dated August 18, 1999, by and between Highland Legacy Limited and Highland Capital Management, L.P.

39. Servicing Agreement, dated November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. (as amended)

40. Servicing Agreement, dated October 25, 2007, by and among Stratford CLO Ltd., and Highland Capital Management, L.P.

41. Servicing Agreement, dated August 3, 2006, by and among Red River CLO Ltd., and Highland Capital Management, L.P. (as amended)

42. Servicing Agreement, dated December 21, 2006, by and among Brentwood CLO, Ltd., and Highland Capital Management, L.P.

43. Servicing Agreement, dated March 13, 2007, by and among Eastland CLO Ltd., and Highland Capital Management, L.P.

44. Portfolio Management, Agreement, dated October 13, 2005, by and among Gleneagles CLO, Ltd., and Highland Capital Management, L.P.

45. AT&T Managed Internet Service, between Highland Capital Management, L.P. and AT&T Corp., dated February 24, 2015.

46. ViaWest, Master Service Agreement, dated October 3, 2011, between Highland Capital Management, L.P. and ViaWest

47. Stockholders' Agreement, dated April 15, 2005, by and between American Banknote Corporation and Highland Capital Management, L.P.

48. Stockholders' Agreement and Amendment No. 1, dated January 25, 2011, by and between Carey Holdings, Inc. and Highland Capital Management, L.P.

49. Stockholders' Agreement and Amendment, dated March 24, 2010, by and between Cornerstone Healthcare Group Holding, Inc. and Highland Capital Management, L.P.

50. Members' Agreement and Amendment, dated November 15, 2017, by and between Highland CLO Funding, Ltd. and Highland Capital Management, L.P.

51. Stock Purchase and Sale Agreement and Amendment, dated January 16, 2013, by and between Progenics Pharmaceuticals, Inc. and Highland Capital Management, L.P.

52. Stockholders' Agreement and Amendments, dated October 24, 2008, by and between JHT Holdings, Inc. and Highland Capital Management, L.P.

53. Amended and Restated Limited Partnership Agreement of Highland Dynamic Income Fund, L.P., dated February 25, 2013, by and between Highland Dynamic Income Fund GP, LLC and Highland Capital Management, L.P.

54. Highland Multi-Strategy Fund, L.P. Limited Partnership Agreement, dated July 6, 2006, by and between Highland Multi-Strategy Fund GP, L.P. and Highland Capital Management, L.P.

55. Operating Agreement of HE Capital, LLC (as amended), dated September 27, 2007, by and between ENA Capital, LLC Ellman Management Group, Inc. and Highland Capital Management, L.P.

56. Limited Liability Company Agreement of Highland Multi-Strategy Onshore Master SubFund II, LLC, dated February 27, 2007, by and between Highland Multi-Strategy Master Fund, L.P. and Highland Capital Management, L.P.

57. Limited Liability Company Agreement of Highland Multi-Strategy Onshore Master SubFund, LLC, dated July 19, 2006, by and between Highland Multi-Strategy Master Fund, L.P. and Highland Capital Management, L.P.

58. Highland Capital Management, L.P., Limited Liability Company Agreement of Highland Receivables Finance 1, LLC, by and between Highland Capital Management, L.P. and Highland Capital Management, L.P.

59. Agreement of Limited Partnership of Highland Restoration Capital Partners, L.P. and Amendments, dated November 6, 2007, by and between Highland Restoration Capital Partners GP, LLC and Highland Capital Management, L.P.

60. Agreement of Limited Partnership of Highland Select Equity Fund GP, L.P., dated October 2005, by and between Highland Select Equity Fund GP, LLC and Highland Capital Management, L.P.

61. Agreement of Limited Partnership of Penant Management LP, dated December 12, 2012, by and between Penant Management GP, LLC and Highland Capital Management, L.P.

62. Agreement of Limited Partnership of Petrocap Incentive Partners III, LP, dated April 12, 2018, by and between Petrocap Incentive Partners III GP, LLC, Petrocap Incentive Holdings III, LP and Highland Capital Management, L.P.

63. Amended and Restated Agreement of Limited Partnership of Petrocap Partners II, LP, dated October 30, 2014, by and between Petrocap Partners II GP, LLC, Petrocap Incentive Partners II, LP and Highland Capital Management, L.P.

64. Agreement of Limited Partnership of Highland Credit Opportunities CDO GP, L.P., dated December 29, 2005, by and between Highland Credit Opportunities CDO GP, LLC and Highland Capital Management, L.P.

65. Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P., dated November 1, 2014, by and between Highland Multi Strategy Credit Fund GP, L.P. and Highland Capital Management, L.P.

66. DUO Security, 2 factor authentication, by and between DUO Security and Highland Capital Management, L.P.

67. GoDaddy Domain Registrations, by and between GoDaddy and Highland Capital Management, L.P.

68. Highland Loan Fund, Ltd. et al, Investment Management Agreement, dated July 31, 2001, by and between Highland Loan Fund, Ltd. et al and Highland Capital Management, L.P.

69. E Mailflow Monitoring, by and between Mxtoolbox and Highland Capital Management, L.P.

70. Cloud single sign on for HR related employee login, by and between Onelogin and Highland Capital Management, L.P.

71. Collateral Management Agreement, dated May 19, 1998, by and between Pam Capital Funding LP, Ranger Asset Mgt LP and Highland Capital Management, L.P.

72. Collateral Management Agreement, dated August 6, 1997, by and between Pamco Cayman Ltd., Ranger Asset Mgt LP and Highland Capital Management, L.P.

73. Order Addenda, dated January 28, 2020, by and between CenturyLink Communications, LLC and Highland Capital Management, L.P.

74. Service Agreement (as amended), dated April 1, 2005, by and between Intex Solutions, Inc. and Highland Capital Management, L.P.

75. Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Red River CLO Ltd. et al

76. Interim Collateral Management Agreement, June 15, 2005, between Highland Capital Management, L.P. and Rockwall CDO Ltd

77. Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Rockwall CDO Ltd

78. Collateral Servicing Agreement dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.; The Bank of New York Trust Company, National Association

79. Representations and Warranties Agreement, dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.

80. Collateral Administration Agreement, dated March 27, 2008, between Highland Capital Management, L.P. and Aberdeen Loan Funding, Ltd.; State Street Bank and Trust Company

81. Collateral Administration Agreement, dated December 20, 2007, between Highland Capital Management, L.P. and Greenbriar CLO, Ltd.; State Street Bank and Trust Company

82. Collateral Acquisition Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd

83. Collateral Administration Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd. and Investors Bank and Trust Company

84. Collateral Administration Agreement, dated October 13, 2005, between Highland Capital Management, L.P. and Gleneagles CLO, Ltd.; JPMorgan Chase Bank, National Association

85. Collateral Acquisition Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.

86. Collateral Administration Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.; Investors Bank & Trust Company

87. Collateral Acquisition Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.

88. Collateral Administration Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.; U.S. Bank National Association

89. Master Warehousing and Participation Agreement, dated April 19, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company

90. Master Warehousing and Participation Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

91. Master Warehousing and Participation Agreement (Amendment No. 2), dated May 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

92. Master Warehousing and Participation Agreement (Amendment No. 1), dated April 12, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

93. Master Warehousing and Participation Agreement (Amendment No. 3), dated June 22, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

94. Master Warehousing and Participation Agreement (Amendment No. 4), dated July 17, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

95. Collateral Administration Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; U.S. Bank National Association; IXIS Financial Products Inc.

96. Collateral Administration Agreement, dated April 18, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company; U.S. Bank National Association

97. Master Participation Agreement, dated June 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Grand Central Asset Trust

98.    A&R Asset Acquisition Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Smith Barney Inc.; Highland Loan Funding V Ltd.

99.    A&R Master Participation Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Brothers Holding Company; Highland Loan Funding V Ltd.

100.    Collateral Acquisition Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.

101.    Collateral Administration Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.; JPMorgan Chase Bank, National Association

102.    Master Warehousing and Participation Agreement, dated March 24, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

103.    Master Warehousing and Participation Agreement (Amendment No. 1), dated May 16, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

104.    Securities Account Control Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Highland CDO Opportunity Fund, Ltd.; JPMorgan Chase Bank, National Association

105.    Collateral Administration Agreement, dated December 8, 2005, between Highland Capital Management, L.P. and Liberty CLO Ltd.

106.    Collateral Administration Agreement, dated May 10, 2006, between Highland Capital Management, L.P. and Rockwall CDO Ltd; JPMorgan Chase Bank, National Association

107.    Collateral Administration Agreement, dated May 9, 2007, between Highland Capital Management, L.P. and Rockwall CDO II, Ltd.; Investors Bank & Trust Company

108.    Collateral Administration Agreement, dated March 15, 2005, between Highland Capital Management, L.P. and Southfork CLO Ltd.; JPMorgan Chase Bank, National Association

109.    Collateral Administration Agreement, dated October 25, 2007, between Highland Capital Management, L.P. and Stratford CLO Ltd.; State Street

110.    Collateral Administration Agreement, dated August 18, 2004, between Highland Capital Management, L.P. and Valhalla CLO, Ltd.; JPMorgan Chase Bank

111.    Extension/Buy-Out Agreement, dated August 18, 2004, between Highland Capital Management, L.P. and Citigroup Financial Products Inc.; Citigroup Global Markets Inc.

112.    Collateral Acquisition Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.

113.    Collateral Administration Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.; Investors Bank & Trust Company

114.    Collateral Administration Agreement, dated December 21, 2006, between Highland Capital Management, L.P. and Brentwood CLO, Ltd.; Investors Bank & Trust Company

115. Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and James Seery

116. Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and John Dubel

117. Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and Russell Nelms

118. Colocation Service Order dated October 14, 2019 between Highland Capital Management and Dawn US Holdings, LLC d/b/a Evoque Date Center Solutions

119. Tradesuite Web Module Services/Agreement between Highland Capital Management and DTCC ITP LLC

# EXHIBIT Y

001270

1.  **Debtor**

Highland Capital Management, L.P.

2.  **Professionals**

Pachulski Stang Ziehl & Jones LLP
Development Specialists, Inc.
Bradley Sharp
Kurtzman Carson Consultants LLC
Jenner & Block
Morris, Nichols, Arsht & Tunnel LLP
Morrison Cohen LLP
Latham & Watkins LLP
Richards Layton & Finger
Winstead PC
Rogge Dunn Group, PC
Blank Rome LLP
FTI Consulting
Young Conaway Stargatt & Taylor
Reid Collins Tsai
Deloitte
Price Waterhouse Coopers
Maples (Cayman)
Bell Nunnally
Rowlett Hill Collins LLP
Anderson Mori & Tomotsune
Culhane Meadows PLLC
Kim & Chang
Willkie Farr & Gallagher LLP
Wilmer Hale
Carey Olsen
ASW Law
Eric Felton
Morris, Nichols, Arsht & Tunnell LLP
Morrison Cohen LLP
Latham & Watkins LLP
Richards Layton & Finger
Winstead PC
Rogge Dunn Group, PC
Blank Rome LLP

DOCS_DE:225885.7 36027/002

001271

**3. Top 20 Unsecured Creditors**

Acis Capital Management, L.P. and Acis Capital Management GP, LLC
American Arbitration Association
Andrews Kurth LLP
Bates White, LLC
Boies, Schiller & Flexner LLP
CLO Holdco, Ltd.
Connolly Gallagher LLP
Debevoise & Plimpton LLP
DLA Piper LLP (US)
Duff & Phelps, LLC
Foley Gardere
Joshua & Jennifer Terry
Lackey Hershman LLP
McKool Smith, P.C.
Meta-e Discovery LLC
NWCC, LLC
Patrick Daugherty
Redeemer Committee of The Highland Crusader Fund
Reid Collins & Tsai LLP
UBS AG, London Branch and UBS Securities LLC

**4. Equity Holders (Direct and Indirect)**

Atlas IDF GP LLC
Beacon Mountain LLC
Hunter Mountain Investment Trust
James Dondero
Mark K. Okada
Strand Advisors, Inc.
The Dugaboy Investment Trust
The Mark and Pamela Okada Family Trust – Exempt Trust #1
The Mark and Pamela Okada Family Trust – Exempt Trust #2

**5. Affiliated Parties**

Acis CLO Management GP, LLC
Acis CLO Management Holdings, L.P.
Acis CLO Management Intermediate Holdings I, LLC
Acis CLO Management Intermediate Holdings II, LLC
Acis CLO Management, LLC
Acis CMOA Trust
Advisors Equity Group LLC
Asbury Holdings, LLC
Castle Bio Manager, LLC
De Kooning, Ltd.
Eagle Equity Advisors, LLC
Eames, Ltd.
Gunwale LLC

HCREF-I Holding Corp.
HCREF-XI Holding Corp.
HCREF-XII Holding Corp.
HE Capital Fox Trails, LLC
HE Capital, LLC
HE Mezz Fox Trails, LLC
HE Peoria Place Property, LLC
HE Peoria Place, LLC
HFP CDO Construction Corp.
HFP GP, LLC
Highland Argentina Regional Opportunity Fund GP, LLC
Highland Brasil, LLC
Highland Capital Management (Singapore) Pte Ltd
Highland Capital Management Korea
Highland Capital Management Korea Limited
Highland Capital Management Korea Limited (Relying Advisor)
Highland Capital Multi-Strategy Fund, LP
Highland CDO Holding Company
Highland CDO Opportunity Fund GP, L.P.
Highland CDO Opportunity GP, LLC
Highland CLO Assets Holdings Limited
Highland CLO Holdings Ltd.
Highland CLO Management, Ltd.
Highland Dynamic Income Fund GP, LLC
Highland Employee Retention Assets LLC
Highland ERA Management, LLC
Highland Financial Corp.
Highland Financial Partners, L.P.
Highland Fund Holdings, LLC
Highland HCF Advisor Ltd. (Relying Advisor)
Highland HCF Advisors Ltd.
Highland Latin America Consulting, Ltd
Highland Latin America GP Ltd.
Highland Latin America GP, Ltd.
Highland Latin America LP, Ltd.
Highland Latin America Trust
Highland Multi Strategy Credit Fund GP, L.P.
Highland Multi Strategy Credit Fund, L.P.
Highland Multi Strategy Credit GP, LLC
Highland Multi-Strategy Fund GP, LLC
Highland Multi-Strategy Fund GP, LP
Highland Multi-Strategy Master Fund, L.P.
Highland Multi-Strategy Onshore Master SubFund II, LLC
Highland Multi-Strategy Onshore Master Subfund, LLC
Highland Receivables Finance I, LLC
Highland Restoration Capital Partners GP, LLC
Highland Select Equity GP, LLC
Highland Select Equity Master Fund, L.P.
Highland Special Opportunities Holding Company
Highland SunBridge GP, LLC
Hirst, Ltd.

DOCS_DE:225885.7 36027/002

Hockney, Ltd.
Lautner, Ltd.
Maple Avenue Holdings, LLC
Neutra, Ltd.
NexPoint Insurance Distributors, LLC
NexPoint Insurance Solutions GP, LLC
NexPoint Insurance Solutions, L.P.
NHT Holdco, LLC
NREA SE MF Holdings, LLC
NREA SE MF Investment Co, LLC
NREA SE Multifamily, LLC
NREA SE1 Andros Isles Leaseco, LLC
NREA SE1 Andros Isles Manager, LLC
NREA SE1 Arborwalk Leaseco, LLC
NREA SE1 Arborwalk Manager, LLC
NREA SE1 Towne Crossing Leaseco, LLC
NREA SE1 Towne Crossing Manager, LLC
NREA SE1 Walker Ranch Leaseco, LLC
NREA SE1 Walker Ranch Manager, LLC
NREA SE2 Hidden Lake Leaseco, LLC
NREA SE2 Hidden Lake Manager, LLC
NREA SE2 Vista Ridge Leaseco, LLC
NREA SE2 Vista Ridge Manager, LLC
NREA SE2 West Place Leaseco, LLC
NREA SE2 West Place Manager, LLC
NREA SE3 Arboleda Leaseco, LLC
NREA SE3 Arboleda Manager, LLC
NREA SE3 Fairways Leaseco, LLC
NREA SE3 Fairways Manager, LLC
NREA SE3 Grand Oasis Leaseco, LLC
NREA SE3 Grand Oasis Manager, LLC
NREA Southeast Portfolio One Manager, LLC
NREA Southeast Portfolio Three Manager, LLC
NREA Southeast Portfolio Two Manager, LLC
Oldenburg, Ltd.
Penant Management LP
Pershing LLC
PetroCap Incentive Partners III, LP
Pollack, Ltd.
SE Battleground Park, LLC
SE Glenview, LLC
SE Governors Green II, LLC
SE Gulfstream Isles GP, LLC
SE Gulfstream Isles LP, LLC
SE Heights at Olde Towne, LLC
SE Lakes at Renaissance Park GP I, LLC
SE Lakes at Renaissance Park GP II, LLC
SE Lakes at Renaissance Park LP, LLC
SE Multifamily Holdings LLC
SE Multifamily REIT Holdings LLC
SE Myrtles at Olde Towne, LLC

SE Quail Landing, LLC
SE River Walk, LLC
SE SM, Inc.
SE Stoney Ridge II, LLC
SE Victoria Park, LLC
SH Castle BioSciences, LLC
Starck, Ltd.
The Dondero Insurance Rabbi Trust
The Okada Insurance Rabbi Trust
Tihany, Ltd.
US Gaming SPV, LLC
US Gaming, LLC
Warhol, Ltd.
Wright, Ltd.

## 6.  **Other Parties**

11 Estates Lane, LLC
1110 Waters, LLC
140 Albany, LLC
1525 Dragon, LLC
17720 Dickerson, LLC
1905 Wylie LLC
2006 Milam East Partners GP, LLC
2006 Milam East Partners, L.P.
201 Tarrant Partners, LLC
2014 Corpus Weber Road LLC
2325 Stemmons HoldCo, LLC
2325 Stemmons Hotel Partners, LLC
2325 Stemmons TRS, Inc.
300 Lamar, LLC
3409 Rosedale, LLC
3801 Maplewood, LLC
3801 Shenandoah, L.P.
3820 Goar Park LLC
400 Seaman, LLC
401 Ame, L.P.
4201 Locust, L.P.
4312 Belclaire, LLC
5833 Woodland, L.P.
5906 DeLoache, LLC
5950 DeLoache, LLC
7758 Ronnie, LLC
7759 Ronnie, LLC
AA Shotguns, LLC
Aberdeen Loan Funding, Ltd.
Acis CLO 2017-7 Ltd
Acis CLO Trust
Allenby, LLC
Allisonville RE Holdings, LLC
AM Uptown Hotel, LLC

Apex Care, L.P
Ascendant Advisors
Asury Holdings, LLC (fka HCSLR Camelback Investors (Delaware), LLC)
Atlas IDF LP
Atlas IDF, LP
Baylor University
BB Votorantim Highland Infrastructure, LLC
BDC Toys Holdco, LLC
BH Willowdale Manager, LLC
Big Spring Partners, LLC
Bloomdale, LLC
Brentwood CLO, Ltd.
Brentwood Investors Corp.
Bristol Bay Funding Ltd.
C-1 Arbors, Inc.
C-1 Cutter's Point, Inc.
C-1 Eaglecrest, Inc.
C-1 Silverbrook, Inc.
Cabi Holdco GP, LLC
Cabi Holdco I, Ltd.
Cabi Holdco, L.P.
Camelback Residential Investors, LLC (fka Sevilla Residential Partners, LLC)
Camelback Residential Partners, LLC
Capital Real Estate - Latitude, LLC
Castle Bio, LLC
CG Works, Inc. (fka Common Grace Ventures, Inc.)
Claymore Holdings, LLC
Concord Management, LLC
Corbusier, Ltd.
CP Equity Hotel Owner, LLC
CP Equity Land Owner, LLC
CP Equity Owner, LLC
CP Hotel TRS, LLC
CP Land Owner, LLC
CP Tower Owner, LLC
Crossings 2017 LLC
Crown Global Insurance Company
Dallas Cityplace MF SPE Owner LLC
Dallas Lease and Finance, L.P.
DFA/BH Autumn Ridge, LLC
Dolomiti, LLC
DrugCrafters, L.P.
Dugaboy Management, LLC
Dugaboy Project Management GP, LLC
Dustin Norris
Eastland CLO, Ltd.
Eastland Investors Corp.
EDS Legacy Heliport, LLC
EDS Legacy Partners Owner, LLC
EDS Legacy Partners, LLC
Entegra Strat Superholdco, LLC

DOCS_DE:225885.7 36027/002

Entegra-FRO Holdco, LLC
Entegra-FRO Superholdco, LLC
Entegra-HOCF Holdco, LLC
Entegra-NHF Holdco, LLC
Entegra-NHF Superholdco, LLC
Entegra-RCP Holdco, LLC
Estates on Maryland Holdco, LLC
Estates on Maryland Owners SM, Inc.
Estates on Maryland Owners, LLC
Estates on Maryland, LLC
Falcon E&P Four Holdings, LLC
Falcon E&P One, LLC
Falcon E&P Opportunities Fund GP LLC
Falcon E&P Opportunities Fund, L.P.
Falcon E&P Opportunities GP, LLC
Falcon E&P Royalty Holdings, LLC
Falcon E&P Six, LLC
Falcon E&P Two, LLC
Falcon Four Midstream, LLC
Falcon Four Upstream, LLC
Falcon Incentive Partners GP, LLC
Falcon Incentive Partners, LP
Falcon Six Midstream, LLC
Fix Asset Management
Flamingo Vegas Holdco, LLC (fka Cabi Holdco, LLC)
Four Rivers Co-Invest, L.P.
Frank Waterhouse
FRBH Abbington SM, Inc.
FRBH Abbington, LLC
FRBH Arbors, LLC
FRBH Beechwood SM, Inc.
FRBH Beechwood, LLC
FRBH C1 Residential, LLC
FRBH Courtney Cove SM, Inc.
FRBH Courtney Cove, LLC
FRBH CP, LLC
FRBH Duck Creek, LLC
FRBH Eaglecrest, LLC
FRBH Edgewater JV, LLC
FRBH Edgewater Owner, LLC
FRBH Edgewater SM, Inc.
FRBH JAX-TPA, LLC
FRBH Nashville Residential, LLC
FRBH Regatta Bay, LLC
FRBH Sabal Park SM, Inc.
FRBH Sabal Park, LLC
FRBH Silverbrook, LLC
FRBH Timberglen, LLC
FRBH Willow Grove SM, Inc.
FRBH Willow Grove, LLC
FRBH Woodbridge SM, Inc.

DOCS_DE:225885.7 36027/002

FRBH Woodbridge, LLC
Freedom C1 Residential, LLC
Freedom Duck Creek, LLC
Freedom Edgewater, LLC
Freedom JAX-TPA Residential, LLC
Freedom La Mirage, LLC
Freedom LHV LLC
Freedom Lubbock LLC
Freedom Miramar Apartments, LLC
Freedom Sandstone, LLC
Freedom Willowdale, LLC
FRM Investment Management
Fundo de Investimento em Direitos Creditorios BB Votorantim Highland Infraestrutura
G&E Apartment REIT The Heights at Olde Towne, LLC
G&E Apartment REIT The Myrtles at Olde Towne, LLC
GAF REIT, LLC
GAF Toys Holdco, LLC
Gardens of Denton II, L.P.
Gardens of Denton III, L.P.
Gleneagles CLO, Ltd.
Governance Ltd.
Governance Re, Ltd.
Governance, Ltd.
Grayson CLO, Ltd.
Grayson Investors Corp.
Greenbriar CLO, Ltd.
Grosvenor Capital Management, L.P.
Hakusan, LLC
Hammark Holdings LLC
Hampton Ridge Partners, LLC
Harko, LLC
Haverhill Acquisition Co., LLC
Haygood, LLC
HCBH 11611 Ferguson, LLC
HCBH Buffalo Pointe II, LLC
HCBH Buffalo Pointe III, LLC
HCBH Buffalo Pointe, LLC
HCBH Hampton Woods SM, Inc.
HCBH Hampton Woods, LLC
HCBH Overlook SM, Inc.
HCBH Overlook, LLC
HCBH Rent Investors, LLC
HCF Funds
HCMS Falcon GP, LLC
HCMS Falcon, L.P.
HCO Holdings, LLC
HCOF Preferred Holdings, LP
HCOF Preferred Holdings, Ltd.
HCRE 1775 James Ave, LLC
HCRE Addison TRS, LLC
HCRE Addison, LLC (fka HWS Addison, LLC)

8

HCRE Hotel Partner, LLC (fka HCRE HWS Partner, LLC)
HCRE Las Colinas TRS, LLC
HCRE Las Colinas, LLC (fka HWS Las Colinas, LLC)
HCRE Partners, LLC
HCRE Plano TRS, LLC
HCRE Plano, LLC (fka HWS Plano, LLC)
HCREF-II Holding Corp.
HCREF-III Holding Corp.
HCREF-IV Holding Corp.
HCREF-IX Holding Corp.
HCREF-V Holding Corp.
HCREF-VI Holding Corp.
HCREF-VII Holding Corp.
HCREF-VIII Holding Corp.
HCREF-XIII Holding Corp.
HCREF-XIV Holding Corp.
HCREF-XV Holding Corp.
HCSLR Camelback Investors (Cayman), Ltd.
HCSLR Camelback, LLC
HE 41, LLC
HE Capital 232 Phase I Property, LLC
HE Capital 232 Phase I, LLC
HE Capital Asante, LLC
HE Capital KR, LLC
HE CLO Holdco, LLC
HE Mezz KR, LLC
Heron Pointe Investors, LLC
HFP Asset Funding II, Ltd.
HFP Asset Funding III, Ltd.
HFRO Sub, LLC
Hibiscus HoldCo, LLC
Highland - First Foundation Income Fund
Highland 401(k) Plan
Highland Argentina Regional Opportunity Fund, L.P.
Highland Argentina Regional Opportunity Fund, Ltd.
Highland Argentina Regional Opportunity Master Fund, L.P.
Highland Capital Brasil Gestora de Recursos (fka Highland Brasilinvest Gestora de Recursos, LTDA; fka
HBI Consultoria Empresarial, LTDA)
Highland Capital Insurance Solutions GP LLC
Highland Capital Insurance Solutions LP
Highland Capital Management AG (Highland Capital Management SA) (Highland Capital Management
Ltd)
Highland Capital Management Fund Advisors, L.P. (fka Pyxis Capital, L.P.)
Highland Capital Management Latin America, L.P.
Highland Capital Management Latin America, L.P. (Relying Advisor)
Highland Capital Management Multi-Strategy Insurance Dedicated Fund, L.P.
Highland Capital Management Services, Inc.
Highland Capital Management, L.P.
Highland Capital Management, L.P. Charitable Fund
Highland Capital Management, L.P. Retirement Plan and Trust
Highland Capital of New York

Highland Capital of New York, Inc.
Highland Capital Real Estate Fund GP, LLC
Highland Capital Special Allocation, LLC
Highland CDO Opportunity Fund, L.P.
Highland CDO Opportunity Fund, Ltd.
Highland CDO Opportunity Master Fund, L.P.
Highland CDO Trust
Highland CLO 2018-1, Ltd.
Highland CLO Assets Holdings Limited
Highland CLO Funding, Ltd. (fka Acis Loan Funding, Ltd.)
Highland CLO Gaming Holdings, LLC
Highland CLO Management Ltd.
Highland CLO Trust
Highland Credit Opportunities CDO Asset Holdings GP, Ltd.
Highland Credit Opportunities CDO Asset Holdings, L.P.
Highland Credit Opportunities CDO Financing, LLC
Highland Credit Opportunities CDO, Ltd.
Highland Credit Opportunities Holding Corporation
Highland Credit Opportunities Japanese Feeder Sub-Trust
Highland Credit Strategies Fund, L.P.
Highland Credit Strategies Fund, Ltd.
Highland Credit Strategies Holding Corporation
Highland Credit Strategies Master Fund, L.P.
Highland Crusader Fund
Highland Dynamic Income Fund, L.P. (fka Highland Capital Loan Fund, L.P.)
Highland Dynamic Income Fund, Ltd. (fka Highland Loan Fund, Ltd.)
Highland Dynamic Income Master Fund, L.P. (fka Highland Loan Master Fund, L.P.)
Highland Energy Holdings, LLC
Highland Energy MLP Fund (fka Highland Energy and Materials Fund)
Highland eSports Private Equity Fund
Highland Fixed Income Fund
Highland Flexible Income UCITS Fund
Highland Floating Rate Fund
Highland Floating Rate Opportunities Fund (fka Highland Floating Rate Opportunities Fund II)
Highland Fund Holdings, LLC
Highland Funds I
Highland Funds II
Highland Funds III
Highland GAF Chemical Holdings, LLC
Highland General Partner, LP
Highland Global Allocation Fund (fka Highland Global Allocation Fund II)
Highland GP Holdings, LLC
Highland Healthcare Equity Income and Growth Fund
Highland iBoxx Senior Loan ETF
Highland Income Fund (fka Highland Floating Rate Opportunities Fund)
Highland Legacy Limited
Highland LF Chemical Holdings, LLC
Highland Loan Funding V, Ltd.
Highland Long/Short Equity Fund
Highland Long/Short Healthcare Fund
Highland Marcal Holding, Inc.

10

Highland Merger Arbitrage Fund
Highland Multi Strategy Credit Fund, Ltd. (fka Highland Credit Opportunities Fund, Ltd.)
Highland Multi Strategy Credit Fund, Ltd. (fka Highland Credit Opportunities Fund, Ltd.)
Highland Multi-Strategy Fund GP, LLC
Highland Multi-Strategy Fund GP, LP
Highland Multi-Strategy IDF GP, LLC
Highland Opportunistic Credit Fund
Highland Park CDO 1, Ltd.
Highland Premium Energy & Materials Fund
Highland Prometheus Feeder Fund I, L.P.
Highland Prometheus Feeder Fund II, L.P.
Highland Prometheus Master Fund, L.P.
Highland RCP Fund II, L.P.
Highland RCP II GP, LLC
Highland RCP II SLP GP, LLC
Highland RCP II SLP, L.P.
Highland RCP Parallel Fund II, L.P.
Highland Restoration Capital Partners Master, L.P.
Highland Restoration Capital Partners Offshore, L.P.
Highland Restoration Capital Partners, L.P.
Highland Select Equity Fund GP, L.P.
Highland Select Equity Fund, L.P.
Highland Small-Cap Equity Fund
Highland Socially Responsible Equity Fund (fka Highland Premier Growth Equity Fund)
Highland Tax-Exempt Fund
Highland TCI Holding Company, LLC
Highland Total Return Fund
Highland's Roads Land Holding Company, LLC
HMCF PB Investors, LLC
HRT North Atlanta, LLC
HRT Timber Creek, LLC
HRTBH North Atlanta, LLC
HRTBH Timber Creek, LLC
Huber Funding LLC
HWS Investors Holdco, LLC
James Dondero
Jasper CLO, Ltd.
Jewelry Ventures I, LLC
JMIJM, LLC
John Honis
Karisopolis, LLC
Keelhaul LLC
Kuilima Montalban Holdings, LLC
Kuilima Resort Holdco, LLC
KV Cameron Creek Owner, LLC
Lakes at Renaissance Park Apartments Investors, L.P.
Lakeside Lane, LLC
Landmark Battleground Park II, LLC
LAT Battleground Park, LLC
LAT Briley Parkway, LLC
Lauren Thedford

11

001281

Leawood RE Holdings, LLC
Liberty Cayman Holdings, Ltd.
Liberty CLO, Ltd.
Long Short Equity Sub, LLC
Longhorn Credit Funding, LLC
Lurin Real Estate Holdings V, LLC
Mark and Pamela Okada Family Trust - Exempt Descendants' Trust
Mark and Pamela Okada Family Trust - Exempt Trust #2
Mark Okada
Markham Fine Jewelers, L.P.
Meritage Residential Partners, LLC
ML CLO XIX Sterling (Cayman), Ltd.
NCI Assets Holding Company LLC
New Jersey Tissue Company Holdco, LLC (fka Marcal Paper Mills Holding Company, LLC)
NexAnnuity Holdings, Inc.
NexBank Capital Inc.
NexBank Capital Trust I
NexBank Capital, Inc.
NexBank Land Advisors, Inc.
NexBank Securities, Inc.
NexBank SSB
NexBank Title, Inc. (dba NexVantage Title Services)
NexBank Wealth Advisors
NexPoint Advisors GP, LLC
NexPoint Advisors, L.P.
NexPoint Capital Inc.
NexPoint Capital REIT, LLC
NexPoint Capital, Inc. (fka NexPoint Capital, LLC)
NexPoint CR F/H DST, LLC
NexPoint Discount Strategies Fund (fka NexPoint Discount Yield Fund)
NexPoint Energy and Materials Opportunities Fund (fka NexPoint Energy Opportunities Fund)
NexPoint Event-Driven Fund (fkaNexPoint Merger Arbitrage Fund)
NexPoint Flamingo DST
NexPoint Flamingo Investment Co, LLC
NexPoint Flamingo Leaseco, LLC
NexPoint Flamingo Manager, LlC
NexPoint Funds
NexPoint Healthcare Opportunities Fund
NexPoint Hospitality Trust
NexPoint Hospitality, Inc.
NexPoint Hospitality, LLC
NexPoint Latin American Opportunities Fund
NexPoint Legacy 22, LLC
NexPoint Lincoln Porte Equity, LLC
NexPoint Lincoln Porte Manager, LLC
NexPoint Lincoln Porte, LLC (fka NREA Lincoln Porte, LLC)
NexPoint Multifamily Capital Trust, Inc. (fka NexPoint Multifamily Realty Trust, Inc., fka Highland Capital Realty Trust, Inc.)
NexPoint Multifamily Operating Partnership, L.P.
NexPoint Peoria, LLC
NexPoint RE Finance Advisor GP, LLC

DOCS_DE:225885.7 36027/002

001282

NexPoint RE Finance Advisor, L.P.
NexPoint Real Estate Advisors GP, LLC
NexPoint Real Estate Advisors II, L.P.
NexPoint Real Estate Advisors III, L.P.
NexPoint Real Estate Advisors IV, L.P.
NexPoint Real Estate Advisors V, L.P.
NexPoint Real Estate Advisors VI, L.P.
NexPoint Real Estate Advisors VII GP, LLC
NexPoint Real Estate Advisors VII, L.P.
NexPoint Real Estate Advisors VIII, L.P.
NexPoint Real Estate Advisors, L.P.
NexPoint Real Estate Capital, LLC (fka Highland Real Estate Capital, LLC, fka Highland Multifamily
Credit Fund, LLC)
NexPoint Real Estate Finance OP GP, LLC
NexPoint Real Estate Finance Operating Partnership, L.P.
NexPoint Real Estate Finance, Inc.
NexPoint Real Estate Opportunities, LLC (fka Freedom REIT LLC)
NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)
NexPoint Real Estate Strategies Fund
NexPoint Residential Trust Inc.
NexPoint Residential Trust Operating Partnership GP, LLC
NexPoint Residential Trust Operating Partnership, L.P.
NexPoint Securities, Inc. (fka Highland Capital Funds Distributor, Inc.) (fka Pyxis Distributors, Inc.)
NexPoint Strategic Income Fund (fka NexPoint Opportunistic Credit Fund, fka NexPoint Distressed
Strategies Fund)
NexPoint Strategic Opportunities Fund (fka NexPoint Credit Strategies Fund)
NexPoint Texas Multifamily Portfolio DST (fka NREA Southeast Portfolio Two, DST)
NexPoint WLIF I Borrower, LLC
NexPoint WLIF II Borrower, LLC
NexPoint WLIF III Borrower, LLC
NexStrat LLC
NexVest, LLC
NexWash LLC
NFRO REIT Sub, LLC
NFRO TRS, LLC
NHF CCD, Inc.
NHT 2325 Stemmons, LLC
NHT Beaverton TRS, LLC (fka NREA Hotel TRS, Inc.)
NHT Beaverton, LLC
NHT Bend TRS, LLC
NHT Bend, LLC
NHT Destin TRS, LLC
NHT Destin, LLC
NHT DFW Portfolio, LLC
NHT Holdings, LLC
NHT Intermediary, LLC
NHT Nashville TRS, LLC
NHT Nashville, LLC
NHT Olympia TRS, LLC
NHT Olympia, LLC
NHT Operating Partnership GP, LLC

13

NHT Operating Partnership II, LLC
NHT Operating Partnership, LLC
NHT Salem, LLC
NHT SP Parent, LLC
NHT SP TRS, LLC
NHT SP, LLC
NHT Tigard TRS, LLC
NHT Tigard, LLC
NHT TRS, Inc.
NHT Uptown, LLC
NHT Vancouver TRS, LLC
NHT Vancouver, LLC
NMRT TRS, Inc.
NREA Adair DST Manager, LLC
NREA Adair Investment Co, LLC
NREA Adair Joint Venture, LLC
NREA Adair Leaseco Manager, LLC
NREA Adair Leaseco, LLC
NREA Adair Property Manager LLC
NREA Adair, DST
NREA Ashley Village Investors, LLC
NREA Cameron Creek Investors, LLC
NREA Cityplace Hue Investors, LLC
NREA Crossings Investors, LLC
NREA Crossings Ridgewood Coinvestment, LLC (fka NREA Crossings Ridgewood Investors, LLC)
NREA DST Holdings, LLC
NREA El Camino Investors, LLC
NREA Estates Inc.
NREA Estates Investment Co, LLC
NREA Estates Leaseco, LLC
NREA Estates Manager, LLC
NREA Estates Property Manager, LLC
NREA Estates, DST
NREA Gardens DST Manager, LLC
NREA Gardens Investment Co, LLC
NREA Gardens Leaseco Manager, LLC
NREA Gardens Leaseco, LLC
NREA Gardens Property Manager, LLC
NREA Gardens Springing LLC
NREA Gardens Springing Manager, LLC
NREA Gardens, DST
NREA Hidden Lake Investment Co, LLC
NREA Hue Investors, LLC
NREA Keystone Investors, LLC
NREA Meritage Inc.
NREA Meritage Investment Co, LLC
NREA Meritage Leaseco, LLC
NREA Meritage Manager, LLC
NREA Meritage Property Manager, LLC
NREA Meritage, DST
NREA Oaks Investors, LLC

14

NREA Retreat Investment Co, LLC
NREA Retreat Leaseco, LLC
NREA Retreat Manager, LLC
NREA Retreat Property Manager, LLC
NREA Retreat, DST
NREA SE One Property Manager, LLC
NREA SE Three Property Manager, LLC
NREA SE Two  Property Manager, LLC
NREA SE1 Andros Isles, DST (Converted from DK Gateway Andros, LLC)
NREA SE1 Arborwalk, DST (Converted from MAR Arborwalk, LLC)
NREA SE1 Towne Crossing, DST (Converted from Apartment REIT Towne Crossing, LP)
NREA SE1 Walker Ranch, DST (Converted from SOF Walker Ranch Owner, L.P.)
NREA SE2 Hidden Lake, DST (Converted from SOF Hidden Lake SA Owner, L.P.)
NREA SE2 Vista Ridge, DST (Converted from MAR Vista Ridge, L.P.)
NREA SE2 West Place, DST (Converted from Landmark at West Place, LLC)
NREA SE3 Arboleda, DST (Converted from G&E Apartment REIT Arboleda, LLC)
NREA SE3 Fairways, DST (Converted from MAR Fairways, LLC)
NREA SE3 Grand Oasis, DST (Converted from Landmark at Grand Oasis, LP)
NREA Southeast Portfolio One, DST
NREA Southeast Portfolio Three, DST
NREA Southeast Portfolio Two, LLC
NREA SOV Investors, LLC
NREA Uptown TRS, LLC
NREA VB I LLC
NREA VB II LLC
NREA VB III LLC
NREA VB IV LLC
NREA VB Pledgor I LLC
NREA VB Pledgor II LLC
NREA VB Pledgor III LLC
NREA VB Pledgor IV LLC
NREA VB Pledgor V LLC
NREA VB Pledgor VI LLC
NREA VB Pledgor VII LLC
NREA VB SM, Inc.
NREA VB V LLC
NREA VB VI LLC
NREA VB VII LLC
NREA Vista Ridge Investment Co, LLC
NREC AR Investors, LLC
NREC Latitude Investors, LLC
NREC REIT Sub, Inc.
NREC TRS, Inc.
NREC WW Investors, LLC
NREF OP I Holdco, LLC
NREF OP I SubHoldco, LLC
NREF OP I, L.P.
NREF OP II Holdco, LLC
NREF OP II SubHoldco, LLC
NREF OP II, L.P.
NREF OP IV REIT Sub TRS, LLC

NREF OP IV REIT Sub, LLC
NREF OP IV, L.P.
NREO NW Hospitality Mezz, LLC
NREO NW Hospitality, LLC
NREO Perilune, LLC
NREO SAFStor Investors, LLC
NREO TRS, Inc.
NRESF REIT Sub, LLC
NXRT Abbington, LLC
NXRT Atera II, LLC
NXRT Atera, LLC
NXRT AZ2, LLC
NXRT Barrington Mill, LLC
NXRT Bayberry, LLC
NXRT Bella Solara, LLC
NXRT Bella Vista, LLC
NXRT Bloom, LLC
NXRT Brandywine GP I, LLC
NXRT Brandywine GP II, LLC
NXRT Brandywine LP, LLC
NXRT Brentwood Owner, LLC
NXRT Brentwood, LLC
NXRT Cedar Pointe Tenant, LLC
NXRT Cedar Pointe, LLC
NXRT Cityview, LLC
NXRT Cornerstone, LLC
NXRT Crestmont, LLC
NXRT Enclave, LLC
NXRT Glenview, LLC
NXRT H2 TRS, LLC
NXRT Heritage, LLC
NXRT Hollister TRS LLC
NXRT Hollister, LLC
NXRT LAS 3, LLC
NXRT Master Tenant, LLC
NXRT Nashville Residential, LLC (fka Freedom Nashville Residential, LLC)
NXRT North Dallas 3, LLC
NXRT Old Farm, LLC
NXRT Pembroke Owner, LLC
NXRT Pembroke, LLC
NXRT PHX 3, LLC
NXRT Radbourne Lake, LLC
NXRT Rockledge, LLC
NXRT Sabal Palms, LLC
NXRT SM, Inc.
NXRT Steeplechase, LLC
NXRT Stone Creek, LLC
NXRT Summers Landing GP, LLC
NXRT Summers Landing LP, LLC
NXRT Torreyana, LLC
NXRT Vanderbilt, LLC

DOCS_DE:225885.7 36027/002

001286

NXRT West Place, LLC
NXRTBH AZ2, LLC
NXRTBH Barrington Mill Owner, LLC
NXRTBH Barrington Mill SM, Inc.
NXRTBH Barrington Mill, LLC
NXRTBH Bayberry, LLC
NXRTBH Cityview, LLC
NXRTBH Colonnade, LLC
NXRTBH Cornerstone Owner, LLC
NXRTBH Cornerstone SM, Inc.
NXRTBH Cornerstone, LLC
NXRTBH Dana Point SM, Inc.
NXRTBH Dana Point, LLC
NXRTBH Foothill SM, Inc.
NXRTBH Foothill, LLC
NXRTBH Heatherstone SM, Inc.
NXRTBH Heatherstone, LLC
NXRTBH Hollister Tenant, LLC
NXRTBH Hollister, LLC
NXRTBH Madera SM, Inc.
NXRTBH Madera, LLC
NXRTBH McMillan, LLC
NXRTBH North Dallas 3, LLC
NXRTBH Old Farm II, LLC
NXRTBH Old Farm Tenant, LLC
NXRTBH Old Farm, LLC
NXRTBH Radbourne Lake, LLC
NXRTBH Rockledge, LLC
NXRTBH Sabal Palms, LLC
NXRTBH Steeplechase, LLC (dba Southpoint Reserve at Stoney Creek)-VA
NXRTBH Stone Creek, LLC
NXRTBH Vanderbilt, LLC
NXRTBH Versailles SM, Inc.
NXRTBH Versailles, LLC
Oak Holdco, LLC
Oaks CGC, LLC
Okada Family Revocable Trust
Pam Capital Funding GP Co. Ltd.
Pam Capital Funding, L.P.
PamCo Cayman Ltd.
Park West 1700 Valley View Holdco, LLC
Park West 2021 Valley View Holdco, LLC
Park West Holdco, LLC
Park West Portfolio Holdco, LLC
PCMG Trading Partners XXIII, L.P.
PDK Toys Holdco, LLC
Pear Ridge Partners, LLC
Penant Management GP, LLC
PensionDanmark Pensionsforsikringsaktieselskab
Perilune Aero Equity Holdings One, LLC
PetroCap Incentive Partners II, L.P.

PetroCap Partners II, L.P.
PetroCap Partners III, L.P.
Pharmacy Ventures I, LLC
Pharmacy Ventures II, LLC
Powderhorn, LLC
PWM1 Holdings, LLC
PWM1, LLC
RADCO NREC Bay Meadows Holdings, LLC
RADCO NREC Bay Park Holdings, LLC
Ramarim, LLC
Rand Advisors Series I Insurance Fund
Rand Advisors Series II Insurance Fund
Rand PE Fund I, L.P.
Rand PE Fund Management LLC
Red River CLO, Ltd.
Red River Investors Corp.
Riverview Partners SC, LLC
Rockwall CDO II Ltd.
Rockwall CDO, Ltd.
Rockwall Investors Corp.
Rothko, Ltd.
RTT Hollister, LLC
RTT Rockledge, LLC
Sandstone Pasadena Apartments, LLC
Scott Ellington
SE Governors Green Holdings, L.L.C. (fka SCG Atlas Governors Green Holdings, L.L.C.)
SE Governors Green I, LLC
SE Governors Green REIT, L.L.C. (fka SCG Atlas Governors Green REIT, L.L.C.)
SE Governors Green, LLC (fka SCG Atlas Governors Green, L.L.C.)
SE Oak Mill I Holdings, LLC (fka SCG Atlas Oak Mill I Holdings, L.L.C.)
SE Oak Mill I Owner, LLC (fka SCG Atlas Oak Mill I, L.L.C.)
SE Oak Mill I REIT, LLC (fka SCG Atlas Oak Mill I REIT, L.L.C.)
SE Oak Mill I, LLC
SE Oak Mill II Holdings, LLC (fka SCG Atlas Oak Mill II Holdings, L.L.C.)
SE Oak Mill II Owner, LLC (fka SCG Atlas Oak Mill II, L.L.C.)
SE Oak Mill II REIT, LLC (fka SCG Atlas Oak Mill II REIT, L.L.C.)
SE Oak Mill II, LLC
SE Stoney Ridge Holdings, L.L.C. (fka SCG Atlas Stoney Ridge Holdings, L.L.C.)
SE Stoney Ridge I, LLC
SE Stoney Ridge REIT, L.L.C. (fka SCG Atlas Stoney Ridge REIT, L.L.C.)
SE Stoney Ridge, LLC (fka SCG Atlas Stoney Ridge, L.L.C.)
SFH1, LLC
SFR WLIF I, LLC (fka NexPoint WLIF I, LLC)
SFR WLIF II, LLC (NexPoint WLIF II, LLC)
SFR WLIF III, LLC (NexPoint WLIF III, LLC)
SFR WLIF Manager, LLC (NexPoint WLIF Manager, LLC)
SFR WLIF, LLC (NexPoint WLIF, LLC)
SFR WLIF, LLC Series I
SFR WLIF, LLC Series II
SFR WLIF, LLC Series III
Small Cap Equity Sub, LLC

DOCS_DE:225885.7 36027/002

Socially Responsible Equity Sub, LLC
SOF Brandywine I Owner, L.P.
SOF Brandywine II Owner, L.P.
SOF-X GS Owner, L.P.
Southfork Cayman Holdings, Ltd.
Southfork CLO, Ltd.
Specialty Financial Products Designated Activity Company (fka Specialty Financial Products Limited)
Spiritus Life, Inc.
SRL Whisperwod LLC
SRL Whisperwood Member LLC
SRL Whisperwood Venture LLC
SSB Assets LLC
Stonebridge PEF
Stonebridge-Highland Healthcare Private Equity Fund
Strand Advisors III, Inc.
Strand Advisors IV, LLC
Strand Advisors IX, LLC
Strand Advisors V, LLC
Strand Advisors XIII, LLC
Strand Advisors XVI, Inc.
Strand Advisors, Inc.
Stratford CLO, Ltd.
Summers Landing Apartment Investors, L.P.
The Dugaboy Investment Trust
The Get Good Non-Exempt Trust No. 1
The Get Good Non-Exempt Trust No. 2
The Get Good Trust
The Ohio State Life Insurance Company
The Okada Family Foundation, Inc.
The SLHC Trust
Thread 55, LLC
Tranquility Lake Apartments Investors, L.P.
Trey Parker
Tricor Business Outsourcing
Turtle Bay Holdings, LLC
Tuscany Acquisition, LLC
United States Army Air Force Exchange Services
Uptown at Cityplace Condominium Association, Inc.
US Gaming OpCo, LLC
Valhalla CLO, Ltd.
VB GP LLC
VB Holding, LLC
VB One, LLC
VB OP Holdings LLC
VBAnnex C GP, LLC
VBAnnex C Ohio, LLC
VBAnnex C, LP
VineBrook Annex B, L.P.
VineBrook Annex I, L.P.
VineBrook Homes Merger Sub II LLC
VineBrook Homes Merger Sub LLC

19

VineBrook Homes OP GP, LLC
VineBrook Homes Operating Partnership, L.P.
VineBrook Homes Trust, Inc.
VineBrook Partners I, L.P.
VineBrook Partners II, L.P.
VineBrook Properties, LLC
Wake LV Holdings II, Ltd.
Wake LV Holdings, Ltd.
Walter Holdco GP, LLC
Walter Holdco I, Ltd.
Walter Holdco, L.P.
Westchester CLO, Ltd.
Yellow Metal Merchants, Inc.

**7.** **Taxing and Other Significant Governmental Authorities**

California Franchise Tax Board
Internal Revenue Service
Los Angeles County Tax Collector
Delaware Division of Revenue

**8.** **Banks and Secured Parties**

BBVA
KeyBank National Association
Jeffries, LLC Prime Brokerage Services
Frontier State Bank

**9.** **United States Bankruptcy Judges in the District of Delaware**

The Honorable Brendan L. Shannon
The Honorable Christopher S. Sontchi, Chief Judge
The Honorable John T. Dorsey
The Honorable Karen B. Owens
The Honorable Kevin Gross
The Honorable Laurie Selber Silverstein
The Honorable Mary F. Walrath

**10. United States Trustee for the District of Delaware (and Key Staff Members)**

| | |
|---|---|
| Andrew Vara, Acting US Trustee | James R. O'Malley, Bankruptcy Analyst |
| Benjamin Hackman, Trial Attorney | Jane Leamy, Trial Attorney |
| Christine Green, Paralegal Specialist | Jeffrey Heck, Bankruptcy Analyst |
| David Buchbinder, Trial Attorney | Juliet Sarkessian, Trial Attorney |
| Diane Giordano, Bankruptcy Analyst | Karen Starr, Bankruptcy Analyst |
| Dion Wynn, Paralegal Specialist | Linda Casey, Trial Attorney |
| Edith A. Serrano, Paralegal Specialist | Linda Richenderfer, Trial Attorney |
| Hannah M. McCollum, Trial Attorney | Lauren Attix, OA Assistant |
| Holly Dice, Auditor (Bankruptcy) | Michael Panacio, Bankruptcy Analyst |
| | Michael West, Bankruptcy Analyst |

DOCS_DE:225885.7 36027/002

001290

| | |
|---|---|
| Ramona Vinson, Paralegal Specialist | T. Patrick Tinker, Assistant U.S. Trustee |
| Richard Schepacarter, Trial Attorney | Timothy J. Fox, Jr., Trial Attorney |
| Shakima L. Dortch, Paralegal Specialist | |

**11. Clerk of Court and Deputy for the District of Delaware**

Stephen Grant, Chief Deputy Clerk
Una O'Boyle, Clerk of Court

**12. Notice Parties**

Alvarez & Marshal CF Management, LLC
Coleman County TAD
Fannin CAD
Allen ISD
Rockwall CAD
Kaufman County
Tarrant County
Dallas County
Upshur County
Grayson County
Irving ISD
Pension Benefit Guaranty Corporation
Patrick Daugherty
Hunter Mountain Trust
Integrated Financial Associates
BET Investments, II, L.P.
Crescent TC Investors, L.P.
Intertrust Entities
CLO Entities

DOCS_DE:225885.7 36027/002

# EXHIBIT Z

**FIFTH AMENDED AND RESTATED**

**AGREEMENT OF LIMITED PARTNERSHIP**

**OF**

# HIGHLAND CAPITAL MANAGEMENT, L.P.

(A Delaware Limited Partnership)

[                    ], 2021

ActiveUS 181752655

This FIFTH AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP (this "***Agreement***") of Highland Capital Management, L.P., (the "***Partnership***"), dated as of [_____], 2021 and entered into by and among the [*New GP Entity*] as general partner of the Partnership (the "***General Partner***") and the limited partner of the Partnership as set forth on Schedule A hereto (the "***Limited Partner***"), amends and restates in its entirety the Fourth Amended and Restated Agreement of Limited Partnership of the Partnership dated as of December 24, 2015 (as amended to date, the "***Prior Agreement***"), by and among Strand Advisors, Inc. (the "***Prior General Partner***") and the former limited partners of the Partnership who were limited partners of the Partnership (the "***Prior Limited Partners***"). The General Partner and Limited Partners are collectively referred to as the "***Partners***."

WHEREAS, the Prior Agreement, as amended pursuant to that certain amendment dated [_____], 2021, provides for the reconstitution and continuation of the Partnership if new limited partners are admitted to the partnership within 90 days after dissolution thereof and such new limited partners consent to the continuation of the Partnership.

WHEREAS, the Partnership was reorganized pursuant to the Plan of Reorganization of Highland Capital Management, L.P., that was approved by the United States Bankruptcy Court for Northern District of Texas, Dallas Division, on [_____] (the "***Plan***").

WHEREAS, pursuant to the Plan the limited partnership interests of the Prior Limited Partners and the Prior General Partner were canceled on [_____] and new limited partnership interests were issued to the Limited Partner and the General Partner under the Prior Agreement.

WHEREAS, the General Partner and the Limited Partner wish to ratify the admission to the Partnership of the General Partner and the Limited Partner and to amend and restate the terms of the Partnership as set forth in this Agreement.

NOW, THEREFORE, in consideration of the agreements and obligations set forth herein, the undersigned hereby agree as follows:

1.     <u>Continuation</u>.

(a)     Subject to the provisions of this Agreement, the Partners hereby continue the Partnership as a limited partnership pursuant to the provisions of the Delaware Revised Uniform Limited Partnership Act (6 *Del.C.* §17-101, *et seq.)*, as amended from time to time (the "***Act***"). This Agreement amends, restates, and supersedes the Prior Agreement and all other prior agreements or understandings with respect to the matters covered herein.

(b)     The Limited Partner, being the sole limited partner of the Partnership, hereby (i) consents to the continuation of the Partnership and (ii) ratifies and approves the appointment of the General Partner as general partner of the Partnership.

2.     <u>Organizational Matters</u>.

(a)     *Name; Certificate*. The name of the Partnership is Highland Capital Management, L.P. The Partnership was organized as a limited partnership pursuant to the Act and

ActiveUS 181752655

filed a Certificate of Limited Partnership (the "***Certificate***") with the Secretary of State of the State of Delaware. Any person authorized to act on behalf of the General Partner or the Partnership may, subject to Section 19 below, cause the Partnership to file such other certificates and documents as may be necessary or appropriate to comply with the Act and any other applicable requirements for the operation of a limited partnership in accordance with the laws of the State of Delaware and any other jurisdictions in which the Partnership shall conduct business, and to maintain such filings for so long as the Partnership conducts business therein.

(b) *Offices*. The name of the resident agent for service of process for the Partnership and the address of the registered office of the Partnership in the State of Delaware is Corporation Services Company, 2023 Centre Road, Wilmington Delaware 19805-1297. The General Partner may establish places of business of the Partnership within and without the State of Delaware, as and when required by the Partnership's business and in furtherance of its purposes set forth herein, and may appoint (or cause the appointment of) agents for service of process in all jurisdictions in which the Partnership shall conduct business. The General Partner may from time to time in its sole discretion change the Partnership's places of business, resident agent for service of process, and/or the location of its registered office in Delaware.

3. <u>Purpose; Powers</u>. The Partnership is formed for the purpose of engaging in any lawful act or activity for which limited partnerships may be formed under the Act. Without limiting the foregoing, the general character and purposes of the business of the Partnership are to (a) engage in the business, directly and/or through one or more subsidiaries, of liquidating assets of, and performing investment management and advisory services for, pooled investment vehicles, funds, investment holdings, accounts, and interests therein; and (b) engage in any lawful activities (including, subject to the other provisions of this Agreement, the borrowing of money and the issuance of guarantees of indebtedness of others) directly or indirectly related or incidental thereto and in which a Delaware limited partnership may lawfully engage. The Partnership shall have and exercise all of the powers and rights conferred upon limited partnerships formed pursuant to the Act.

4. <u>Management</u>.

(a) *Authority of the General Partner*. The business and affairs of the Partnership shall be managed exclusively by and under the direction of the General Partner, which shall have the right, power and authority to exercise all of the powers of the Partnership except as otherwise provided by law or this Agreement. Decisions or actions made or approved by the General Partner in accordance with this Agreement shall constitute decisions or actions by the Partnership and shall be binding upon the Partnership and each Limited Partner of the Partnership. The General Partner may not be removed or replaced by the Limited Partners. In the event of the withdrawal, resignation or dissolution of the General Partner, a new General Partner shall be designated in writing by a majority in interest of the Limited Partners, who shall provide written notice to the remaining Limited Partners of such designation.

(b) *Delegation of Powers; Officers*. Notwithstanding anything to the contrary herein, the General Partner may delegate any or all or any portion of its rights, powers, authority, duties and responsibilities with respect to the management of the Partnership to such officers of the Partnership with such titles as the General Partner may determine ("***Officers***"). The General Partner

ActiveUS 181752655

may authorize any such Officers to sign agreements, contracts, instruments, or other documents in the name of and on behalf of the Partnership, and such authority may be general or limited to specific instances. The power and authority of any Officer appointed by the General Partner under this Section 4(b) shall not exceed the power and authority possessed by the General Partner under this Agreement. The Officers shall hold office until their successors are duly appointed or their earlier death, resignation, or removal. Any Officer so appointed may be removed at any time, with or without cause, by the written consent of the General Partner. Any Officer may resign from his or her office upon prior written notice to the Partnership. If any office shall become vacant, a replacement Officer may be appointed by the written consent of the General Partner. Two or more offices may be held by the same person. The initial Officers of the Partnership are set forth on Schedule B.

(c) *Limited Partners*. No Limited Partner shall have any right to participate in the management of the Partnership as a Limited Partner. Moreover, no Limited Partner shall have any voting rights except with respect to consent to amendments as set forth in Section 19 below, or as otherwise required by the Act.

(d) *Transactions with Affiliates*. The General Partner or any person controlling, controlled by, or under common control with the General Partner (an "***Affiliate***") may engage in transactions with the Partnership from time to time, including without limitation for lending to or borrowing from the Partnership, engaging in the provision of services to the Partnership, or otherwise engaging in business transactions with the Partnership, provided that such transactions are entered into in good faith. Unless otherwise expressly provided in this Agreement or any other agreement contemplated herein, whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Act or any other applicable law, rule, or regulation.

5.     Partners.

(a) *General*. The name, address, and percentage interest ownership interest of the General Partner and each Limited Partner in the Partnership (the "***Percentage Interest***") are set forth on Schedule A hereto. Additional Limited Partners may be admitted to the Partnership, and Schedule A may be amended, only with the written consent of the General Partner (provided, that failure to update Schedule A shall not itself be conclusive of whether consent of the General Partner has been obtained). No Limited Partner shall have the right or power to resign, withdraw or retire from the Partnership, except upon (i) the occurrence of any event described in Section 17-801 of the Act (in which case the Limited Partner(s) with respect to which such event has occurred shall, automatically and with no further action necessary by any person, cease to be a Limited Partner, and shall be deemed to have solely the interest of an assignee (within the meaning of Section 17 of the Act) with respect to such Limited Partner's Limited Partnership Interest), or (ii) with the consent of the General Partner. For the avoidance of doubt, no action may be taken to reduce, directly or indirectly, the Percentage Interest of any Partner without the written consent of such Partner.

ActiveUS 181752655

(b)　　*Capital Contributions*.　The Partners may, in their sole discretion, make additional capital contribution to the Partnership if requested by the General Partner.　All capital, whenever contributed, shall be subject in all respects to the risks of the business and subordinate in right of payment to the claims of present or future creditors of the Partnership in accordance with this Agreement.

(c)　　*Capital Accounts*.　The Partnership shall maintain a capital account for each Partner in accordance with Section 704(b) and 704(c) of the Internal Revenue Code of 1986, as amended (the "***Code***"), and the principles of the Treasury Regulations promulgated thereunder.

(d)　　*Tax Representative*.　The General Partner shall serve as the "tax representative" to be the Partnership's designated representative within the meaning of Section 6223 of the Code with sole authority to act on behalf of the Partnership for purposes of subchapter C of Chapter 63 of the Code and any comparable provisions of state or local income tax laws (the "***Tax Representative***").　The Tax Representative is specifically directed and authorized to take whatever steps it deems necessary or desirable to perfect such designation, including, without limitation, filing any forms or documents with the Internal Revenue Service, properly designating a particular individual to act on its behalf of the Tax Representative and taking such other action as may from time to time be required under Treasury Regulations.　The Tax Representative is hereby authorized to and shall perform all duties of a "tax representative" and shall serve as Tax Representative until its resignation or until the designation of its successor, whichever occurs sooner.

6.　　<u>Allocation of Income and Losses</u>.

(a)　　*Definitions*.　For purposes of this Agreement, "***Income***" and "***Loss***" of the Partnership shall mean the taxable income and loss, respectively, of the Partnership computed with the adjustments set forth in Treasury Regulation under Code Section 704(b) including (A) adjustments pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(g), (B) the inclusion of the amount of any tax-exempt income as an item of income, (C) the inclusion of the amount of any nondeductible, noncapitalizable expense as an item of deduction and (D) the inclusion of the amount of unrealized gain or unrealized loss with respect to an asset of the Partnership as an item of income or gain (as applicable) upon distribution of such asset in kind or as required by Treasury Regulation Section 1.704-1(b)(2)(iv)(f).

(b)　　*Allocations Generally*.　The Income and Loss of the Partnership for each fiscal year or other applicable period shall be allocated to and among the Partners in proportion to their respective Percentage Interests.

(c)　　*Adjustments*.　Notwithstanding Section 6(b) (but subject to Section 6(c)),

(i)　　Items of income or gain for any taxable period shall be allocated to the Partner in the manner and to the extent required by the "qualified income offset" provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(d); and

(ii)　　In no event shall any Loss or item of deduction be allocated to a Partner if such allocation would cause or increase a negative balance

ActiveUS 181752655

in such Partner's capital account determined by increasing the Partner's capital account balance by any amount the Partner may be obligated to restore to the Partnership pursuant to Treasury Regulation Section 1.704-1(b)(2)(ii)(c) and by decreasing such capital account balance by the amounts specified in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6)).

(d)     *Nonrecourse Debt*.  If at any time the Partnership incurs any "nonrecourse debt" (*i.e.,* debt that is treated as nonrecourse for purposes of Treasury Regulation Section 1.1001-2), the following provisions will apply notwithstanding anything to the contrary expressed elsewhere in this Agreement:

(i)     "Nonrecourse deductions" (as defined in Treasury Regulation Sections 1.704-2(b) and (c)) shall be allocated to the Partners in proportion to their respective Percentage Interests.

(ii)    All other allocations relating to such nonrecourse debt shall be allocated in accordance with Treasury Regulation Section 1.704-2; and

(iii)   For purposes of Sections 6(b) and 6(c), each Partner's capital account balance shall be increased by the Partner's share of minimum gain and of partner nonrecourse debt minimum gain (as determined pursuant to Treasury Regulation Sections 1.704-2(g) and 1.704-2(i)(5), respectively).

(e)     *Deductions, Credits*.  Except as otherwise provided herein or as required by Code Section 704, for federal income tax purposes, all items of income, gain, loss, deduction or credit shall be allocated to the Partners in the same manner as are Income and Loss.

(f)     *Regulatory Allocations*.  Notwithstanding the provisions of Sections 6(a)-(e) above, allocations of Income and Loss shall be made in the order of priority set forth in Exhibit I to this Agreement.

(g)     *Withholding*.  To the extent that the Partnership is required to withhold and pay over any amounts to any Governmental Authority with respect to Distributions or allocations to any Limited Partner, the amount withheld shall be treated as a Distribution to that Limited Partner pursuant to Sections 4.02, 4.03 or 4.05, as applicable.  In the event of any claimed over-withholding, Limited Partners shall be limited to an action against the applicable jurisdiction and not against the Partnership (unless the Partnership has not yet paid such amounts over to such jurisdiction).  If any amount required to be withheld was not, in fact, actually withheld from one or more Distributions and the Partnership shall have been required to pay such amount to such Governmental Entity, the Partnership may, at its option, (i) require the affected Limited Partner to reimburse the Partnership for such withholding or (ii) reduce any subsequent Distributions to such Limited Partner by the amount of such withholding, in each case plus interest.  Each Limited Partner agrees to furnish the Partnership with such documentation as shall reasonably be requested by the Partnership to assist it in determining the extent of, and in fulfilling, its withholding

ActiveUS 181752655

obligations. Each Limited Partner will indemnify the General Partner and the Partnership against any losses and liabilities (including interest and penalties) related to any withholding obligations with respect to allocations or Distributions made to such Limited Partner by the Partnership.

(h) *Consistent Tax Reporting*. Except as otherwise unanimously agreed to in writing by the Limited Partners, for U.S. federal, state and local income tax purposes, the Limited Partners agree, as a condition to their admission to the Partnership, to report all taxable income, loss and items thereof (including the character and timing of such items) in a manner consistent with the manner in which such taxable income, loss or item thereof is reported by the Partnership on its tax returns and the Schedules K-1 (or any successor form) furnished by the Partnership to the Limited Partners.

7.     Distributions.   Distributions shall be made from the undistributed profit and loss account to the Partners at the times and in the aggregate amounts determined by the General Partner in its sole discretion; provided, that distributions shall be made to the Partners in accordance with their Percentage Interests.  Distributions may be in cash or in kind as determined by the General Partner in its sole discretion.   Notwithstanding any provision to the contrary contained in this Agreement, the Partnership shall not make a distribution to the Limited Partners on account of its interest in the Partnership if such distribution would violate Section 17-607 of the Act or other applicable law.

8.     Other Business.   The Partners and their affiliates may engage in or possess an interest in other business ventures (unconnected with the Partnership) of every kind and description, independently or with others.  The Partnership shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

9.     Limited Liability.   The debts, obligations, and liabilities of the Partnership, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Partnership and the General Partner.  No Limited Partner shall have any liability (personal or otherwise) for any such debt, obligation, or liability of the Partnership solely by reason of acting in such capacity.   For the avoidance of doubt, to the extent a Limited Partner is an Officer of the Partnership (regardless of title) and/or has authority to act on behalf of the General Partner of the Partnership, such Limited Partner shall remain a Limited Partner of the Partnership and shall not be subject to any liability (personal or otherwise) for any debt, obligation or liability of the Partnership.

10.     Exculpation; Indemnification.

(a) *Exculpation*.  Neither the General Partner nor any Covered Person (as defined below) shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts of omissions that do not constitute gross negligence, fraud, or willful misconduct.  The General Partner may exercise any of the powers granted to it by this Agreement and perform any of the duties imposed upon it hereunder either directly or by or through its officers, directors, agents, trustees, or representatives, and the General Partner shall not be responsible for any misconduct or negligence on the part of any agent or representative appointed by the General Partner.

(b) *Indemnification*.  To the fullest extent permitted by law, subject to Section 10(d) below, the Partnership shall indemnify each Covered Person for any and all losses, claims,

ActiveUS 181752655

demands, costs, damages, liabilities (joint and several), expenses of any nature (including attorneys' fees and disbursements), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which such Covered Person may be involved or threatened to be involved, as a party or otherwise, by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Partnership and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement. For the avoidance of doubt, the indemnification under this Section 10(b) shall apply even though at the time of such claim, demand, action, suit or proceeding such person is no longer a Covered Person (except as set forth in Section 10(c)(iii) below). Any indemnity under this Section 10(b) shall be provided out of and only to the extent of the Partnership's assets, and no Limited Partner shall have personal liability on account thereof. For the avoidance of doubt, any indemnification obligations of the Partnership under the Prior Agreement are null and void and are superseded in their entirety by this Section 10.

      (c)    *Covered Persons*. "***Covered Person***" means each of the following:

      (i)    the General Partner, and each member, partner, director, officer, and agent thereof,

      (ii)    each person who is or becomes an Officer of the Partnership on or after the date of this Agreement, and

      (iii)    each person who is or becomes an employee or agent of the Partnership on or after the date of this Agreement if the General Partner determines in its sole discretion that such employee or agent should be a Covered Person.

      "Covered Person" shall *not* include any former officer, former partner, former director, former employee, or former agent of the Partnership or the General Partner (unless such Person is a "Covered Person" as defined in clause (i) or (ii) above on or after the date of this Agreement), *unless* the General Partner in its sole discretion determines that such Person should be a Covered Person.

      (d)    *Limitations on Indemnification*. Notwithstanding anything to the contrary herein, no indemnification shall be provided for any Covered Person (i) with respect to any action brought by such Covered Person as a plaintiff against the Partnership or another Covered Person, or (ii) for any loss, damage or claim arising from such Covered Person's fraud, gross negligence or willful misconduct (in each case as determined by a final and binding judgment of a court or arbitrator).

      (e)    *Advancement of Expenses*. Expenses reasonably incurred in defending any claim, action, suit or proceeding of the character described in Section 10(b), to the extent available, shall be advanced by the Partnership prior to the final disposition of such claim, action, suit or proceeding upon receipt of a written undertaking by or on behalf of the recipient to repay all such advances if it is ultimately determined by the General Partner that such Covered Person is not entitled to indemnification pursuant to Section 10(d).

ActiveUS 181752655

      (f)    *Third Party Beneficiaries*. Covered Persons shall be deemed to be third-party beneficiaries solely for purposes of this Section 10. All rights of any Covered Person under this Section shall inure to the benefit of such Covered Person's heirs and assigns. Except as expressly provided in this Section 10(f), this Agreement is intended solely for the benefit of the parties hereto and, to the extent allowed by this Agreement, their respective permitted successors and assigns, and this Agreement is not for the benefit of, nor may any provision hereof be enforced by, any other person.

    11.    <u>Fiscal Year</u>. The fiscal year of the Partnership shall end on December 31st of each year.

    12.    <u>Transfers of Limited Partner Interests</u>. No Limited Partner may transfer, in whole or in part, whether by sale, exchange, lease, license, assignment, distribution, gift, transfer or other disposition or alienation in any way, its interest in the Partnership, without the prior consent of the General Partner, which consent may be given or withheld in the sole discretion of the General Partner and may include such terms and conditions as the General Partner shall deem appropriate in its sole discretion. In addition, it shall be a condition precedent to every transfer of all or any portion of a Limited Partner's interest permitted hereunder, the transferring Limited Partner shall demonstrate to the satisfaction of the General Partner that (i) the proposed transfer will not cause or result in a breach of any violation of law, including U.S. federal or state securities laws, and (ii) that the transfer would not adversely affect the classification of the Partnership as a partnership for U.S. federal tax purposes (including by causing the Partnership to be treated as a "publicly traded partnership" under Section 7704 of the Code), terminate it as a partnership under Code Section 708, or have a substantial adverse effect with respect to U.S. federal income taxes payable by the Partnership.

    13.    <u>Dissolution</u>. The Partnership shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the consent of the General Partner; (ii) at any time there are no Limited Partners of the Partnership, unless the business of the Partnership is continued in a manner permitted by the Act; or (iii) the entry of a decree of judicial dissolution under Section 17-802 of the Act. Following the foregoing event, the General Partner shall proceed diligently to liquidate the assets of the Partnership in a manner consistent with commercially reasonable business practices. In the event of dissolution, the Partnership shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Partnership in an orderly manner), and the assets of the Partnership shall be applied in the manner, and in the order of priority, set forth in Section 17-804 of the Act. Liquidating distributions to the Partners shall be made in in accordance with their Percentage Interests.

    14.    <u>Severability of Provisions</u>. Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

    15.    <u>Counterparts</u>. This Agreement may be executed in several counterparts and as so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all of the parties have not signed the same counterpart.

8

16.     Facsimile Signature Page.  This Agreement may be executed and delivered by the parties hereto by an executed signature page transmitted by facsimile, and any failure to deliver the originally executed signature page shall not affect the validity, legality or enforceability of this Agreement.

17.     Entire Agreement.   This Agreement embodies the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

18.     Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware (without regard to the conflicts of law principles), all rights and remedies being governed by said laws.

19.     Consent to Jurisdiction.  Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for the Northern District of Texas, Dallas Division, for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement.

20.     Amendments.  No amendment of this Agreement shall be valid or binding unless such amendment is made with the written consent of the General Partner.  Further, any amendment of this Agreement that reduces the Percentage Interest or economic rights of any Limited Partner in a manner that is disproportionate to other Limited Partners shall require the written consent of the affected Limited Partner.  For the avoidance of doubt, amendment includes any merger, combination or other reorganization or any amendment of the Certificate that has the effect of changing or superseding the terms of this Agreement.

*[Remainder of Page Intentionally Blank]*

ActiveUS 181752655

001302

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first set forth above.

**GENERAL PARTNER:**

*[NEW GP ENTITY]*

_____

By:
Its:

**LIMITED PARTNER:**

*[CLAIMANT TRUST]*

_____

By:
Its:  Trustee

*[Signature Page to Fifth Amended and  Restated
Agreement of Limited Partnership of Highland Capital Management, L.P.]*

10

<u>Schedule A</u>

<span style="font-variant:small-caps">**Schedule of Partners**</span>

**[Date], 2021**

**General Partner**

| Name | Address | Percentage Interest |
|------|---------|---------------------|
| *[New GP Entity]* | *[Insert Address]* | [1.00]% |

**Limited Partners**

| Name | Address | Percentage Interest |
|------|---------|---------------------|
| *[Claimant Trust]* | *[Insert Address]* | [99.00]% |

*Schedule A*

Schedule B

**SCHEDULE OF OFFICERS**

**[Date]**, 2021

| Name | Officer Title |
|------|---------------|
| James P. Seery, Jr. | Chief Executive Officer |
| *[Name]* | *[Title]* |
| *[Name]* | *[Title]* |

*Schedule B*

**Exhibit I**

### Regulatory Allocations

(i)     Items of income or gain (computed in accordance with Section 6(a), including the adjustments therein) for any taxable period shall be allocated to the Partners in the manner and to the minimum extent required by the "minimum gain chargeback" provisions of Treasury Regulation Section 1.704-2(f) and Treasury Regulation Section 1.704-2(i)(4).

(ii)     All "nonrecourse deductions" (as defined in Treasury Regulation Section 1.704-2(b)(1)) of the Partnership for any year shall be allocated to the Partners in accordance with their respective Percentage Interests; provided, however, that nonrecourse deductions attributable to "partner nonrecourse debt" (as defined in Treasury Regulation Section 1.704-2(b)(4)) shall be allocated to the Partners in accordance with the provisions of Treasury Regulation Section 1.704-2(i)(1).

(iii)     Items of income or gain (computed in accordance with Section 6(a), including the adjustments therein) for any taxable period shall be allocated to the Partners in the manner and to the extent required by the "qualified income offset" provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(d).

(iv)     In no event shall Loss of the Partnership be allocated to a Partner if such allocation would cause or increase a negative balance in such Partner's Adjusted Capital Account (determined for purposes of this Exhibit I only, by increasing the Partner's Adjusted Capital Account balance by the amount the Partner is obligated to restore to the Partnership pursuant to Treasury Regulation Section 1.704-1(b)(2)(ii)(c) and decreasing it by the amounts specified in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6)).

(v)     For tax purposes, except as otherwise provided herein or as required by Code Section 704, all items of income, gain, loss, deduction or credit shall be allocated to the Partners in the same manner as are Income and Loss; provided, however, that if the Book Value of any property of the Partnership differs from its adjusted basis for tax purposes, then items of income, gain, loss, deduction or credit related to such property for tax purposes shall be allocated among the Partners so as to take account of the variation between the adjusted basis of the property for tax purposes and its Book Value in the manner provided for under Code Section 704(c).

(vi)     For purposes hereof, the following terms have the meanings set forth below:

"***Adjusted Capital Account***" means, for each Partner, such Partner's capital account balance increased by such Partner's share of "minimum gain" and of "partner nonrecourse debt minimum gain" (as determined pursuant to Treasury Regulation Sections 1.704-2(g) and 1.704-2(i)(5), respectively).

"***Book Value***" means, with respect to any asset, the asset's adjusted basis for U.S. federal income tax purposes; provided, however, that (i) the initial Book Value of any asset contributed to the Partnership shall be adjusted to equal its fair market value as determined by the General Partner at the time of its contribution, and (ii) the Book Values of all assets held by the Partnership shall be

*Schedule B*

adjusted to equal their respective fair market values as determined by the General Partner (taking Code Section 7701(g) into account) upon an election by the Partnership to revalue its property in accordance with Regulation Section 1.704-1(b)(2)(iv)(*f*) and upon liquidation of the Partnership. The Book Value of any asset whose Book Value was adjusted pursuant to the preceding sentence shall thereafter be adjusted in accordance with the provisions of Regulation Section 1.704-1(b)(2)(iv)(*g*).

1

001307

# **EXHIBIT AA**

### FIFTH AMENDED AND RESTATED

### AGREEMENT OF LIMITED PARTNERSHIP

### OF

# HIGHLAND CAPITAL MANAGEMENT, L.P.

(A Delaware Limited Partnership)

 [_____], 2020 2021

ActiveUS 181752655

This FIFTH AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP (this "*Agreement*") of Highland Capital Management, L.P., (the "*Partnership*"), dated as of [_____], ~~2020~~2021 and entered into by and among the [*New GP Entity*] as general partner of the Partnership (the "*General Partner*") and the limited partner of the Partnership as set forth on Schedule A hereto (the "*Limited Partner*"), amends and restates in its entirety the Fourth Amended and Restated Agreement of Limited Partnership of the Partnership dated as of December 24, 2015 (as amended to date, the "*Prior Agreement*"), by among Strand Advisors, Inc. (the "*Prior General Partner*") and the former limited partners of the Partnership who were limited partners of the Partnership (the "*Prior Limited Partners*"). The General Partner and Limited Partners are collectively referred to as the "*Partners*."

WHEREAS, the Prior Agreement, as amended pursuant to that certain amendment dated [_____], ~~2020,~~2021, provides for the reconstitution and continuation of the Partnership if new limited partners are admitted to the partnership within 90 days after dissolution thereof and such new limited partners consent to the continuation of the Partnership.

WHEREAS, the Partnership was reorganized pursuant to the Plan of Reorganization of Highland Capital Management, L.P., that was approved by the United States Bankruptcy Court for Northern District of Texas, Dallas Division, on [_____] (the "*Plan*").

WHEREAS, pursuant to the Plan the limited partnership interests of the Prior Limited Partners and the Prior General Partner were canceled on [_____] and new limited partnership interests were issued to the Limited Partner and the General Partner under the Prior Agreement.

WHEREAS, the General Partner and the Limited Partner wish to ratify the admission to the Partnership of the General Partner and the Limited Partner and to amend and restate the terms of the Partnership as set forth in this Agreement.

NOW, THEREFORE, in consideration of the agreements and obligations set forth herein, the undersigned hereby agree as follows:

1.  Continuation.

    (a) Subject to the provisions of this Agreement, the Partners hereby continue the Partnership as a limited partnership pursuant to the provisions of the Delaware Revised Uniform Limited Partnership Act (6 *Del.C.* §17-101, *et seq.)*, as amended from time to time (the "*Act*"). This Agreement amends, restates, and supersedes the Prior Agreement and all other prior agreements or understandings with respect to the matters covered herein.

    (b) The Limited Partner, being the sole limited partner of the Partnership, hereby (i) consents to the continuation of the Partnership and (ii) ratifies and approves the appointment of the General Partner as general partner of the Partnership.

2.  Organizational Matters.

    (a) *Name; Certificate.* The name of the Partnership is Highland Capital Management, L.P. The Partnership was organized as a limited partnership pursuant to the Act and

ActiveUS 181752655

filed a Certificate of Limited Partnership (the "**Certificate**") with the Secretary of State of the State of Delaware. Any person authorized to act on behalf of the General Partner or the Partnership may, subject to Section 19 below, cause the Partnership to file such other certificates and documents as may be necessary or appropriate to comply with the Act and any other applicable requirements for the operation of a limited partnership in accordance with the laws of the State of Delaware and any other jurisdictions in which the Partnership shall conduct business, and to maintain such filings for so long as the Partnership conducts business therein.

(b) *Offices*. The name of the resident agent for service of process for the Partnership and the address of the registered office of the Partnership in the State of Delaware is Corporation Services Company, 2023 Centre Road, Wilmington Delaware 19805-1297. The General Partner may establish places of business of the Partnership within and without the State of Delaware, as and when required by the Partnership's business and in furtherance of its purposes set forth herein, and may appoint (or cause the appointment of) agents for service of process in all jurisdictions in which the Partnership shall conduct business. The General Partner may from time to time in its sole discretion change the Partnership's places of business, resident agent for service of process, and/or the location of its registered office in Delaware.

3. <u>Purpose; Powers</u>. The Partnership is formed for the purpose of engaging in any lawful act or activity for which limited partnerships may be formed under the Act. Without limiting the foregoing, the general character and purposes of the business of the Partnership are to (a) engage in the business, directly and/or through one or more subsidiaries, of liquidating assets of, and performing investment management and advisory services for, pooled investment vehicles, funds, investment holdings, accounts, and interests therein; and (b) engage in any lawful activities (including, subject to the other provisions of this Agreement, the borrowing of money and the issuance of guarantees of indebtedness of others) directly or indirectly related or incidental thereto and in which a Delaware limited partnership may lawfully engage. The Partnership shall have and exercise all of the powers and rights conferred upon limited partnerships formed pursuant to the Act.

4. <u>Management</u>.

(a) *Authority of the General Partner*. The business and affairs of the Partnership shall be managed exclusively by and under the direction of the General Partner, which shall have the right, power and authority to exercise all of the powers of the Partnership except as otherwise provided by law or this Agreement. Decisions or actions made or approved by the General Partner in accordance with this Agreement shall constitute decisions or actions by the Partnership and shall be binding upon the Partnership and each Limited Partner of the Partnership. The General Partner may not be removed or replaced by the Limited Partners. In the event of the withdrawal, resignation or dissolution of the General Partner, a new General Partner shall be designated in writing by a majority in interest of the Limited Partners, who shall provide written notice to the remaining Limited Partners of such designation.

(b) *Delegation of Powers; Officers*. Notwithstanding anything to the contrary herein, the General Partner may delegate any or all or any portion of its rights, powers, authority, duties and responsibilities with respect to the management of the Partnership to such officers of the Partnership with such titles as the General Partner may determine ("**Officers**"). The General Partner may authorize any such Officers to sign agreements, contracts, instruments, or other documents in

ActiveUS 181752655

the name of and on behalf of the Partnership, and such authority may be general or limited to specific instances. The power and authority of any Officer appointed by the General Partner under this Section 4(b) shall not exceed the power and authority possessed by the General Partner under this Agreement. The Officers shall hold office until their successors are duly appointed or their earlier death, resignation, or removal. Any Officer so appointed may be removed at any time, with or without cause, by the written consent of the General Partner. Any Officer may resign from his or her office upon prior written notice to the Partnership. If any office shall become vacant, a replacement Officer may be appointed by the written consent of the General Partner. Two or more offices may be held by the same person. The initial Officers of the Partnership are set forth on Schedule B.

(c) *Limited Partners*. No Limited Partner shall have any right to participate in the management of the Partnership as a Limited Partner. Moreover, no Limited Partner shall have any voting rights except with respect to consent to amendments as set forth in Section 19 below, or as otherwise required by the Act.

(d) *Transactions with Affiliates*. The General Partner or any person controlling, controlled by, or under common control with the General Partner (an "*Affiliate*") may engage in transactions with the Partnership from time to time, including without limitation for lending to or borrowing from the Partnership, engaging in the provision of services to the Partnership, or otherwise engaging in business transactions with the Partnership, provided that such transactions are entered into in good faith. Unless otherwise expressly provided in this Agreement or any other agreement contemplated herein, whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Act or any other applicable law, rule, or regulation.

5. Partners.

(a) *General*. The name, address, and percentage interest ownership interest of the General Partner and each Limited Partner in the Partnership (the "*Percentage Interest*") are set forth on Schedule A hereto. Additional Limited Partners may be admitted to the Partnership, and Schedule A may be amended, only with the written consent of the General Partner (provided, that failure to update Schedule A shall not itself be conclusive of whether consent of the General Partner has been obtained). No Limited Partner shall have the right or power to resign, withdraw or retire from the Partnership, except upon (i) the occurrence of any event described in Section 17-801 of the Act (in which case the Limited Partner(s) with respect to which such event has occurred shall, automatically and with no further action necessary by any person, cease to be a Limited Partner, and shall be deemed to have solely the interest of an assignee (within the meaning of Section 17 of the Act) with respect to such Limited Partner's Limited Partnership Interest), or (ii) with the consent of the General Partner. For the avoidance of doubt, no action may be taken to reduce, directly or indirectly, the Percentage Interest of any Partner without the written consent of such Partner.

(b) *Capital Contributions*. The Partners may, in their sole discretion, make additional capital contribution to the Partnership if requested by the General Partner. All capital,

ActiveUS 181752655

whenever contributed, shall be subject in all respects to the risks of the business and subordinate in right of payment to the claims of present or future creditors of the Partnership in accordance with this Agreement.

(c) *Capital Accounts*. The Partnership shall maintain a capital account for each Partner in accordance with Section 704(b) and 704(c) of the Internal Revenue Code of 1986, as amended (the "***Code***"), and the principles of the Treasury Regulations promulgated thereunder.

(d) *Tax Representative*. The General Partner shall serve as the "tax representative" to be the Partnership's designated representative within the meaning of Section 6223 of the Code with sole authority to act on behalf of the Partnership for purposes of subchapter C of Chapter 63 of the Code and any comparable provisions of state or local income tax laws (the "***Tax Representative***"). The Tax Representative is specifically directed and authorized to take whatever steps it deems necessary or desirable to perfect such designation, including, without limitation, filing any forms or documents with the Internal Revenue Service, properly designating a particular individual to act on its behalf of the Tax Representative and taking such other action as may from time to time be required under Treasury Regulations. The Tax Representative is hereby authorized to and shall perform all duties of a "tax representative" and shall serve as Tax Representative until its resignation or until the designation of its successor, whichever occurs sooner.

6. Allocation of Income and Losses.

(a) *Definitions*. For purposes of this Agreement, "***Income***" and "***Loss***" of the Partnership shall mean the taxable income and loss, respectively, of the Partnership computed with the adjustments set forth in Treasury Regulation under Code Section 704(b) including (A) adjustments pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(g), (B) the inclusion of the amount of any tax-exempt income as an item of income, (C) the inclusion of the amount of any nondeductible, noncapitalizable expense as an item of deduction and (D) the inclusion of the amount of unrealized gain or unrealized loss with respect to an asset of the Partnership as an item of income or gain (as applicable) upon distribution of such asset in kind or as required by Treasury Regulation Section 1.704-1(b)(2)(iv)(f).

(b) *Allocations Generally*. The Income and Loss of the Partnership for each fiscal year or other applicable period shall be allocated to and among the Partners in proportion to their respective Percentage Interests.

(c) *Adjustments*. Notwithstanding Section 6(b) (but subject to Section 6(c)),

(i) Items of income or gain for any taxable period shall be allocated to the Partner in the manner and to the extent required by the "qualified income offset" provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(d); and

(ii) In no event shall any Loss or item of deduction be allocated to a Partner if such allocation would cause or increase a negative balance in such Partner's capital account determined by increasing the Partner's capital account balance by any amount the Partner may be

ActiveUS 181752655

obligated to restore to the Partnership pursuant to Treasury Regulation Section 1.704-1(b)(2)(ii)(c) and by decreasing such capital account balance by the amounts specified in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6)).

(d)    *Nonrecourse Debt*.  If at any time the Partnership incurs any "nonrecourse debt" (*i.e.,* debt that is treated as nonrecourse for purposes of Treasury Regulation Section 1.1001-2), the following provisions will apply notwithstanding anything to the contrary expressed elsewhere in this Agreement:

(i)    "Nonrecourse deductions" (as defined in Treasury Regulation Sections 1.704-2(b) and (c)) shall be allocated to the Partners in proportion to their respective Percentage Interests.

(ii)    All other allocations relating to such nonrecourse debt shall be allocated in accordance with Treasury Regulation Section 1.704-2; and

(iii)    For purposes of Sections 6(b) and 6(c), each Partner's capital account balance shall be increased by the Partner's share of minimum gain and of partner nonrecourse debt minimum gain (as determined pursuant to Treasury Regulation Sections 1.704-2(g) and 1.704-2(i)(5), respectively).

(e)    *Deductions, Credits*.  Except as otherwise provided herein or as required by Code Section 704, for federal income tax purposes, all items of income, gain, loss, deduction or credit shall be allocated to the Partners in the same manner as are Income and Loss.

(f)    *Regulatory Allocations*.  Notwithstanding the provisions of Sections 6(a)-(e) above, allocations of Income and Loss shall be made in the order of priority set forth in Exhibit I to this Agreement.

(g)    *Withholding*.  To the extent that the Partnership is required to withhold and pay over any amounts to any Governmental Authority with respect to Distributions or allocations to any Limited Partner, the amount withheld shall be treated as a Distribution to that Limited Partner pursuant to Sections 4.02, 4.03 or 4.05, as applicable.  In the event of any claimed over-withholding, Limited Partners shall be limited to an action against the applicable jurisdiction and not against the Partnership (unless the Partnership has not yet paid such amounts over to such jurisdiction).  If any amount required to be withheld was not, in fact, actually withheld from one or more Distributions and the Partnership shall have been required to pay such amount to such Governmental Entity, the Partnership may, at its option, (i) require the affected Limited Partner to reimburse the Partnership for such withholding or (ii) reduce any subsequent Distributions to such Limited Partner by the amount of such withholding, in each case plus interest.  Each Limited Partner agrees to furnish the Partnership with such documentation as shall reasonably be requested by the Partnership to assist it in determining the extent of, and in fulfilling, its withholding obligations.  Each Limited Partner will indemnify the General Partner and the Partnership against any losses and liabilities (including

ActiveUS 181752655

interest and penalties) related to any withholding obligations with respect to allocations or Distributions made to such Limited Partner by the Partnership.

(h)  *Consistent Tax Reporting*.  Except as otherwise unanimously agreed to in writing by the Limited Partners, for U.S. federal, state and local income tax purposes, the Limited Partners agree, as a condition to their admission to the Partnership, to report all taxable income, loss and items thereof (including the character and timing of such items) in a manner consistent with the manner in which such taxable income, loss or item thereof is reported by the Partnership on its tax returns and the Schedules K-1 (or any successor form) furnished by the Partnership to the Limited Partners.

7.  <u>Distributions</u>.  Distributions shall be made from the undistributed profit and loss account to the Partners at the times and in the aggregate amounts determined by the General Partner in its sole discretion; provided, that distributions shall be made to the Partners in accordance with their Percentage Interests.  Distributions may be in cash or in kind as determined by the General Partner in its sole discretion.  Notwithstanding any provision to the contrary contained in this Agreement, the Partnership shall not make a distribution to the Limited Partners on account of its interest in the Partnership if such distribution would violate Section 17-607 of the Act or other applicable law.

8.  <u>Other Business</u>.  The Partners and their affiliates may engage in or possess an interest in other business ventures (unconnected with the Partnership) of every kind and description, independently or with others.  The Partnership shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

9.  <u>Limited Liability</u>.  The debts, obligations, and liabilities of the Partnership, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Partnership and the General Partner.  No Limited Partner shall have any liability (personal or otherwise) for any such debt, obligation, or liability of the Partnership solely by reason of acting in such capacity.  For the avoidance of doubt, to the extent a Limited Partner is an Officer of the Partnership (regardless of title) and/or has authority to act on behalf of the General Partner of the Partnership, such Limited Partner shall remain a Limited Partner of the Partnership and shall not be subject to any liability (personal or otherwise) for any debt, obligation or liability of the Partnership.

10.  <u>Exculpation; Indemnification</u>.

(a)  *Exculpation*.  Neither the General Partner nor any Covered Person (as defined below) shall be liable to the Partnership or any Limited Partner for errors in judgment or for any acts of omissions that do not constitute gross negligence, fraud, or willful misconduct.  The General Partner may exercise any of the powers granted to it by this Agreement and perform any of the duties imposed upon it hereunder either directly or by or through its officers, directors, agents, trustees, or representatives, and the General Partner shall not be responsible for any misconduct or negligence on the part of any agent or representative appointed by the General Partner.

(b)  ~~(a)~~ ~~*General*~~*Indemnification*.  To the fullest extent permitted by law, subject to Section 10(~~e~~d) below, the Partnership shall indemnify each Covered Person ~~(as defined below)~~ for any and all losses, claims, demands, costs, damages, liabilities (joint and several), expenses of any

7

nature (including attorneys' fees and disbursements), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which such Covered Person may be involved or threatened to be involved, as a party or otherwise, by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Partnership and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement. For the avoidance of doubt, the indemnification under this Section 10(ab) shall apply even though at the time of such claim, demand, action, suit or proceeding such person is no longer a Covered Person (except as set forth in Section 10(c)(iii) below). Any indemnity under this Section 10(ab) shall be provided out of and only to the extent of the Partnership's assets, and no Limited Partner shall have personal liability on account thereof. For the avoidance of doubt, any indemnification obligations of the Partnership under the Prior Agreement are null and void and are superseded in their entirety by this Section 10.

(c) (b) *Covered Persons*. "***Covered Person***" means each of the following:

(i) the General Partner, and each member, partner, director, officer, and agent thereof,

(ii) each person who is or becomes an Officer of the Partnership on or after the date hereofof this Agreement, and

(iii) each person who is or becomes an employee or agent of the Partnership on or after the date of this Agreement if the General Partner determines in its sole discretion that such employee or agent should be a Covered Person.

(iii) "Covered Person" shall *not* include any other current or former officer, former partner, former director, former employee, or former agent forof the Partnership or the General Partner, in each case to the extent determined by (unless such Person is a "Covered Person" as defined in clause (i) or (ii) above on or after the date of this Agreement), *unless* the General Partner in its sole discretion determines that such Person should be a Covered Person.

(d) (c) *Limitations on Indemnification*. Notwithstanding anything to the contrary herein, no indemnification shall be provided for any Covered Person (i) with respect to any action brought by such Covered Person as a plaintiff against the Partnership or another Covered Person, or (ii) for any loss, damage or claim arising from such Covered Person's fraud, gross negligence or willful misconduct (in each case as determined by a final and binding judgment of a court or arbitrator).

(e) (d) *Advancement of Expenses*. Expenses reasonably incurred in defending any claim, action, suit or proceeding of the character described in Section 10(ab), to the extent available, shall be advanced by the Partnership prior to the final disposition of such claim, action, suit or proceeding upon receipt of a written undertaking by or on behalf of the recipient to repay all such advances if it is ultimately determined by the General Partner that such Covered Person is not entitled to indemnification pursuant to Section 10(ed).

ActiveUS 181752655

001316

(f)   (e)—*Third Party Beneficiaries*.  Covered Persons shall be deemed to be third-party beneficiaries solely for purposes of this Section 10.  All rights of any Covered Person under this Section shall inure to the benefit of such Covered Person's heirs and assigns.  Except as expressly provided in this Section 10(f), this Agreement is intended solely for the benefit of the parties hereto and, to the extent allowed by this Agreement, their respective permitted successors and assigns, and this Agreement is not for the benefit of, nor may any provision hereof be enforced by, any other person.

11.   <u>Fiscal Year</u>.  The fiscal year of the Partnership shall end on December 31st of each year.

12.   <u>Transfers of Limited Partner Interests</u>.  No Limited Partner may transfer, in whole or in part, whether by sale, exchange, lease, license, assignment, distribution, gift, transfer or other disposition or alienation in any way, its interest in the Partnership, without the prior consent of the General Partner, which consent may be given or withheld in the sole discretion of the General Partner and may include such terms and conditions as the General Partner shall deem appropriate in its sole discretion.  In addition, it shall be a condition precedent to every transfer of all or any portion of a Limited Partner's interest permitted hereunder, the transferring Limited Partner shall demonstrate to the satisfaction of the General Partner that (i) the proposed transfer will not cause or result in a breach of any violation of law, including U.S. federal or state securities laws, and (ii) that the transfer would not adversely affect the classification of the Partnership as a partnership for U.S. federal tax purposes (including by causing the Partnership to be treated as a "publicly traded partnership" under Section 7704 of the Code), terminate it as a partnership under Code Section 708, or have a substantial adverse effect with respect to U.S. federal income taxes payable by the Partnership.

13.   <u>Dissolution</u>.  The Partnership shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the consent of the General Partner; (ii) at any time there are no Limited Partners of the Partnership, unless the business of the Partnership is continued in a manner permitted by the Act; or (iii) the entry of a decree of judicial dissolution under Section 17-302 of the Act.  Following the foregoing event, the General Partner shall proceed diligently to liquidate the assets of the Partnership in a manner consistent with commercially reasonable business practices.  In the event of dissolution, the Partnership shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Partnership in an orderly manner), and the assets of the Partnership shall be applied in the manner, and in the order of priority, set forth in Section 17-804 of the Act.  Liquidating distributions to the Partners shall be made in in accordance with their Percentage Interests.

14.   <u>Severability of Provisions</u>.  Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

15.   <u>Counterparts</u>.  This Agreement may be executed in several counterparts and as so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all of the parties have not signed the same counterpart.

ActiveUS 181752655

16. <u>Facsimile Signature Page</u>. This Agreement may be executed and delivered by the parties hereto by an executed signature page transmitted by facsimile, and any failure to deliver the originally executed signature page shall not affect the validity, legality or enforceability of this Agreement.

17. <u>Entire Agreement</u>. This Agreement embodies the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

18. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware (without regard to the conflicts of law principles), all rights and remedies being governed by said laws.

19. <u>Consent to Jurisdiction</u>. Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for the Northern District of Texas, Dallas Division, for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement.

20. ~~19.~~ <u>Amendments</u>. No amendment of this Agreement shall be valid or binding unless such amendment is made with the written consent of the General Partner. Further, any amendment of this Agreement that reduces the Percentage Interest or economic rights of any Limited Partner in a manner that is disproportionate to other Limited Partners shall require the written consent of the affected Limited Partner. For the avoidance of doubt, amendment includes any merger, combination or other reorganization or any amendment of the Certificate that has the effect of changing or superseding the terms of this Agreement.

*[Remainder of Page Intentionally Blank]*

ActiveUS 181752655

001318

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first set forth above.

**GENERAL PARTNER:**

*[NEW GP ENTITY]*


_____

By:
Its:


**LIMITED PARTNER:**

*[CLAIMANT TRUST]*


_____

By:
Its:  Trustee


*[Signature Page to Fifth Amended and  Restated*
*Agreement of Limited Partnership of Highland Capital Management, L.P.]*

11

Schedule A

## SCHEDULE OF PARTNERS

 [Date], ~~2020~~2021

### General Partner

| Name | Address | Percentage Interest |
|------|---------|---------------------|
| *[New GP Entity]* | *[Insert Address]* | [1.00]% |

### Limited Partners

| Name | Address | Percentage Interest |
|------|---------|---------------------|
| *[Claimant Trust]* | *[Insert Address]* | [99.00]% |

*Schedule A*

**Schedule B**

**SCHEDULE OF OFFICERS**

[Date], ~~2020~~2021

| Name | Officer Title |
|------|---------------|
| [James P. Seery], Jr. | [Chief Executive Officer] |
| *[Name]* | *[Title]* |
| *[Name]* | *[Title]* |

*Schedule B*

**Exhibit I**

### REGULATORY ALLOCATIONS

(i)     Items of income or gain (computed in accordance with Section 6(a), including the adjustments therein) for any taxable period shall be allocated to the Partners in the manner and to the minimum extent required by the "minimum gain chargeback" provisions of Treasury Regulation Section 1.704-2(f) and Treasury Regulation Section 1.704-2(i)(4).

(ii)     All "nonrecourse deductions" (as defined in Treasury Regulation Section 1.704-2(b)(1)) of the Partnership for any year shall be allocated to the Partners in accordance with their respective Percentage Interests; provided, however, that nonrecourse deductions attributable to "partner nonrecourse debt" (as defined in Treasury Regulation Section 1.704-2(b)(4)) shall be allocated to the Partners in accordance with the provisions of Treasury Regulation Section 1.704-2(i)(1).

(iii)     Items of income or gain (computed in accordance with Section 6(a), including the adjustments therein) for any taxable period shall be allocated to the Partners in the manner and to the extent required by the "qualified income offset" provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(*d*).

(iv)     In no event shall Loss of the Partnership be allocated to a Partner if such allocation would cause or increase a negative balance in such Partner's Adjusted Capital Account (determined for purposes of this Exhibit I only, by increasing the Partner's Adjusted Capital Account balance by the amount the Partner is obligated to restore to the Partnership pursuant to Treasury Regulation Section 1.704-1(b)(2)(ii)(*c*) and decreasing it by the amounts specified in Treasury Regulation Sections 1.704-1(b)(2)(ii)(*d*)(*4*), (*5*) and (*6*)).

(v)     For tax purposes, except as otherwise provided herein or as required by Code Section 704, all items of income, gain, loss, deduction or credit shall be allocated to the Partners in the same manner as are Income and Loss; provided, however, that if the Book Value of any property of the Partnership differs from its adjusted basis for tax purposes, then items of income, gain, loss, deduction or credit related to such property for tax purposes shall be allocated among the Partners so as to take account of the variation between the adjusted basis of the property for tax purposes and its Book Value in the manner provided for under Code Section 704(c).

(vi)     For purposes hereof, the following terms have the meanings set forth below:

"***Adjusted Capital Account***" means, for each Partner, such Partner's capital account balance increased by such Partner's share of "minimum gain" and of "partner nonrecourse debt minimum gain" (as determined pursuant to Treasury Regulation Sections 1.704-2(g) and 1.704-2(i)(5), respectively).

"***Book Value***" means, with respect to any asset, the asset's adjusted basis for U.S. federal income tax purposes; provided, however, that (i) the initial Book Value of any asset contributed to the Partnership shall be adjusted to equal its fair market value as determined by the General Partner

*Schedule B*

at the time of its contribution, and (ii) the Book Values of all assets held by the Partnership shall be adjusted to equal their respective fair market values as determined by the General Partner (taking Code Section 7701(g) into account) upon an election by the Partnership to revalue its property in accordance with Regulation Section 1.704-1(b)(2)(iv)(*f*) and upon liquidation of the Partnership. The Book Value of any asset whose Book Value was adjusted pursuant to the preceding sentence shall thereafter be adjusted in accordance with the provisions of Regulation Section 1.704-1(b)(2)(iv)(*g*).

ActiveUS 181752655

001323

Document comparison by Workshare 9.5 on Friday, January 22, 2021 3:40:54 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41106/3 |
| Description | DOCS_NY-#41106-v3-Highland_-_5th_A&R_LPA |
| Document 2 ID | PowerDocs://DOCS_NY/41106/6 |
| Description | DOCS_NY-#41106-v6-Highland_-_5th_A&R_LPA |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 38 |
| Deletions | 26 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 64 |

# EXHIBIT BB

## SENIOR EMPLOYEE STIPULATION AND TOLLING AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of January 20, 2021, by and between Thomas Surgent (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

### RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (the "Chapter 11 Case"):

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, On November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be further amended or supplemented, the "Plan")[1] [Docket No. 1472]. A hearing to consider confirmation of the Plan is currently scheduled for January 26, 2021.

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its Chief Compliance Officer and in such role provided services to the Debtor;

WHEREAS, (i) certain amounts that were allegedly due to be paid to the Senior Employee for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 ((i) and (ii), collectively, the "Bonus Amount") were not paid because of objections raised by the Committee;

WHEREAS, as of the date hereof, the total Bonus Amount through and including the date hereof is $█████████

WHEREAS, on May 26, 2020, the Senior Employee filed a proof of claim [Claim No. 183] (the "Proof of Claim"), which included a claim for the Bonus Amount;

WHEREAS, as set forth in the Proof of Claim, the Senior Employee may have other Claims against the Debtor in addition to the Bonus Amount (the "Other Employee

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

001326

Claims" and together with the Bonus Amount, the "Senior Employee Claims")[2]:

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been or will be retained pursuant to the Plan (the "Causes of Action"):

WHEREAS, the Plan provides for the release of certain of the Causes of Action (the "Released Causes of Action") against the Senior Employee as set forth in therein (the "Employee Release"):

WHEREAS, both the Employee Release and the payment of the Bonus Amount (as reduced pursuant to this Agreement) are conditioned on the Senior Employee executing this Stipulation on or prior to the Confirmation Date;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub- Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1.      Covenant Not to Sue. In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the Bonus Amount which would otherwise be part of the Senior Employee Claim, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties"), agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Released Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date"). This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the Bonus Amount set forth in Section 5 hereof or in the Plan.

2.      Non-Compliance: Vesting.

a.      As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant

---

[2] For the avoidance of doubt, the "Other Employee Claims" shall include all prepetition and postpetition Claims of the Senior Employee, including paid time off claims, claims (if applicable) for severance amounts under applicable employment agreements, and administrative claims (if applicable), but shall not include the Bonus Amount.

001327

Trustee, determines (in each case after discussing with the full CTOC) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1) sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

(2) has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets,

(3) has violated the confidentiality provisions of Section 4 below, or

(4) (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee. Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

b. Notwithstanding anything herein to the contrary, Employee Release will vest and all Released Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

c. Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation; provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims or limit the Senior Employee's obligations under Section 8 hereof. Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

3. Tolling of Statutes of Limitation. In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitations applicable to any Cause of Action is hereby tolled as of, and

001328

extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee. The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

4.    Confidentiality. In further consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "Confidential Information") relating to the activities or planned activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

5.    Bonus Amount.

a.    The Senior Employee has agreed to forfeit a percentage of his Bonus Amount in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the Bonus Amount will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his Bonus Amount as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the Allowed Class 7 distribution on the Bonus Amount will be further reduced by 5% (the "Reduced Amount"), and (iv) the Reduced Amount will be forever waived and released. Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting, pursuing, or enforcing any Other Employee Claim.

b.    For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section 2, any such nullification will have no effect on the treatment of the Senior Employee's Bonus Amount pursuant to this Section 5.

6.    Other Employee Claims. The Parties acknowledge and agree that the Senior Employee is not entitled to make the Convenience Class Election with respect to the Other Employee Claims.

7.    Effective Date. The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan. If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

001329

8.    Plan Support. The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan, including, without limitation, filing a notice of such Senior Employee's withdrawal from the *Senior Employees' Limited Objection to Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1669], and vote, if applicable, the Bonus Amount, the Other Employee Claims, and any other Claims in favor of the Plan.

9.    Miscellaneous.

a.    Counterparts. This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

b.    Binding Effect. This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

c.    Authority. Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

d.    Entire Agreement. This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions. This Stipulation may only be amended by an agreement in writing signed by the Parties.

e.    No Waiver and Reservation of Rights. Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties. Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

f.    No Admission of Liability. The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action. Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

g.    No Waiver If Breach. The Parties agree that no breach of any provision hereof can be waived except in writing. The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

h.    Notice. Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address

001330

as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

**Senior Employee**

Thomas Surgent



With a copy to:
**Attorneys for Senior Employee**

M. Michelle Hartmann
Baker McKenzie
1900 N. Pearl Street
Suite 1500
Dallas, Texas 75201
Email: michelle.hartmann@bakermckenzie.com

**HCMLP**

Highland Capital Management, L.P
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James P. Seery, Jr.
Telephone No.: (631) 804-2049
Email: jpseeryjr@gmail.com

With a copy to:

**Attorneys for HCMLP**

John A. Morris
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, New York 10017-2024
Telephone No.: (212) 561-7760
Email: jmorris@pszjlaw.com

    i.  Advice of Counsel. Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered

001331

any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

        j.     <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

        k.     <u>Governing Law: Venue</u>. The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles. Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

001332

**IT IS HEREBY AGREED.**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____
Name:_____
Its: _____

**SENIOR EMPLOYEE**

By: _____
Name: _Thomas Surgent_____
Its: _CCO_____

8

001333

# **EXHIBIT CC**

001334

## SENIOR EMPLOYEE STIPULATION AND TOLLING
## AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of January 20, 2021, by and between Frank Waterhouse (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, On November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be further amended or supplemented, the "Plan")[1] [Docket No. 1472]. A hearing to consider confirmation of the Plan is currently scheduled for January 26, 2021.

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its Chief Financial Officer and in such role provided services to the Debtor;

WHEREAS, (i) certain amounts that were allegedly due to be paid to the Senior Employee for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 ((i) and (ii), collectively, the "Bonus Amount") were not paid because of objections raised by the Committee;

WHEREAS, as of the date hereof, the total Bonus Amount through and including the date hereof is ▮▮▮▮▮▮▮

WHEREAS, on May 26, 2020, the Senior Employee filed a proof of claim [Claim No. 182] (the "Proof of Claim"), which included a claim for the Bonus Amount;

WHEREAS, as set forth in the Proof of Claim, the Senior Employee may have other Claims against the Debtor in addition to the Bonus Amount (the "Other Employee Claims" and together

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

001335

with the Bonus Amount, the "Senior Employee Claims")[2]:

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been or will be retained pursuant to the Plan (the "Causes of Action"):

WHEREAS, the Plan provides for the release of certain of the Causes of Action (the "Released Causes of Action") against the Senior Employee as set forth in therein (the "Employee Release"):

WHEREAS, both the Employee Release and the payment of the Bonus Amount (as reduced pursuant to this Agreement) are conditioned on the Senior Employee executing this Stipulation on or prior to the Confirmation Date:

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities:

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1. Covenant Not to Sue. In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the Bonus Amount which would otherwise be part of the Senior Employee Claim, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties"), agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Released Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date"). This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect: *provided, however*, that the termination of this Stipulation shall not affect the treatment of the Bonus Amount set forth in Section 5 hereof or in the Plan.

2. Non-Compliance: Vesting.

a. As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC) that such Employee (regardless of whether the Employee is then

---

[2] For the avoidance of doubt, the "Other Employee Claims" shall include all prepetition and postpetition Claims of the Senior Employee, including paid time off claims, claims (if applicable) for severance amounts under applicable employment agreements, and administrative claims (if applicable), but shall not include the Bonus Amount.

001336

currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

      (1)    sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

      (2)    has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets,

      (3)    has violated the confidentiality provisions of Section 4 below, or

      (4)    (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee. Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

      b.    Notwithstanding anything herein to the contrary, Employee Release will vest and all Released Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

      c.    Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation: provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims or limit the Senior Employee's obligations under Section 8 hereof. Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

      3.    Tolling of Statutes of Limitation. In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitations applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee. The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is

001337

ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

      4.    Confidentiality. In further consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "Confidential Information") relating to the activities or planned activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

      5.    Bonus Amount.

      a.    The Senior Employee has agreed to forfeit a percentage of his Bonus Amount in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the Bonus Amount will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his Bonus Amount as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the Allowed Class 7 distribution on the Bonus Amount will be further reduced by 5% (the "Reduced Amount"), and (iv) the Reduced Amount will be forever waived and released. Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting, pursuing, or enforcing any Other Employee Claim as a Class 8 Claim in accordance with the Plan.

      b.    For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section 2, any such nullification will have no effect on the treatment of the Senior Employee's Bonus Amount pursuant to this Section 5.

      6.    Other Employee Claims. The Parties acknowledge and agree that the Senior Employee is not entitled to make the Convenience Class Election with respect to the Other Employee Claims.

      7.    Effective Date. The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan. If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

      8.    Plan Support. The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan, including, without limitation, filing a notice of such Senior Employee's withdrawal from the *Senior Employees' Limited Objection to Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1669], and vote, if applicable, the Bonus Amount, the Other Employee Claims, and any other Claims in favor of the Plan.

001338

9.   Miscellaneous.

a.   Counterparts. This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

b.   Binding Effect. This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

c.   Authority. Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

d.   Entire Agreement. This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions. This Stipulation may only be amended by an agreement in writing signed by the Parties.

e.   No Waiver and Reservation of Rights. Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties. Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

f.   No Admission of Liability. The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action. Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

g.   No Waiver If Breach. The Parties agree that no breach of any provision hereof can be waived except in writing. The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

h.   Notice. Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

**Senior Employee**

Frank Waterhouse



001339

With a copy to:

**Attorneys for Senior Employee**

M. Michelle Hartmann
Baker McKenzie
1900 N. Pearl Street
Suite 1500
Dallas, Texas 75201
Email: michelle.hartmann@bakermckenzie.com

**HCMLP**

Highland Capital Management, L.P
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James P. Seery, Jr.
Telephone No.: (631) 804-2049
Email: jpseeryjr@gmail.com

With a copy to:

**Attorneys for HCMLP**

John A. Morris
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, New York 10017-2024
Telephone No.: (212) 561-7760
Email: jmorris@pszjlaw.com

      i.    Advice of Counsel. Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

      j.    Severability. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

001340

k.      Governing Law: Venue. The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles. Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

001341

IT IS HEREBY AGREED.

HIGHLAND CAPITAL MANAGEMENT, L.P.

By: _____

Name: _____

Its: _____CEO/CRO_____

**SENIOR EMPLOYEE**

By: _____

Name: _____FRANK WATERHOUSE_____

Its: _____

8

001342

# EXHIBIT DD

001343

**Released Employees**

| Name |
| --- |
| Abayarathna, Sahan |
| Bannon, Lucy |
| Baynard, Paul C. |
| Beispiel, Michael |
| Brewer, Brigid |
| Broaddus, Paul |
| Burns, Nathan |
| Carter, Jerome |
| Chisum, Naomi |
| Clark, Stetson |
| Collins, Brian |
| Cotton, Austin |
| Cournoyer, Timothy |
| Covitz, Hunter |
| Diorio, Matthew |
| Eftekhari, Cyrus |
| Eliason, Hayley |
| Flaherty, Brendan |
| Fox, Sean |
| Goldsmith, Sarah B. |
| Gosserand, William |
| Gray, Matthew |
| Groff, Scott |
| Haltom, Steven |
| Hendrix, Kristin |
| Hoedebeck, Charlie |
| Irving, Mary K. |
| Jain, Bhawika |
| Jeong, Sang K. |
| Jimenez, Sarah |
| Kim, Helen |
| Klos, David |
| Kovelan, Kari J. |
| Leuthner, Andrew |
| Loiben, Tara J. |
| Luu, Joye |
| Mabry, William |
| Mckay, Bradley |
| Mills Iv, James |
| Nikolayev, Yegor |

Owens, David

Park, Jun

Parker, Trey

Patel, Vishal

Patrick, Mark

Poglitsch, Jon

Post, Jason

Rice, Christopher

Richardson, Kellie

Rios, Heriberto

Roeber, Blair A.

Rothstein, Jason

Sachdev, Kunal

Schroth, Melissa

Sevilla, Jean-Paul

Short, Lauren

Staltari, Mauro

Stevens, Kellie

Stewart, Phoebe L.

Stoops, Clifford

Surgent, Thomas *

Swadley, Rick

Thedford, Lauren E.

Thomas, Kristen

Thottichira, Christina

Throckmorton, Michael

Vitiello, Stephanie

Waterhouse, Frank *

Yoo, Han Us


* Senior Employee - Required to execute Senior Employee Stipulation.

001345