**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re:** Highland Capital Management, L.P | § | Case No. 19-34054-SGJ-11 |
| Highland Capital Management Fund Advisors, L.P. et al | § | |
| Appellant | § | |
| vs. | § | |
| Highland Capital Management, L.P., | | |
| | § | 3:21-CV-00538-N |
| Appellee | § | |

[1943] **Order confirming the fifth amended chapter 11 plan,** Entered on 2/22/2021.

# APPELLANT RECORD
# VOLUME 8

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ11) |
| Debtor. | |

$\mathcal{I} \; \mathcal{N} \mathcal{D} \mathcal{E} \mathcal{X}$

## AMENDED DESIGNATION BY NEXPOINT ADVISORS, L.P. AND HIGHLAND
## CAPITAL MANAGEMENT FUND ADVISORS, L.P.
## OF ITEMS FOR THE RECORD ON APPEAL

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,

L.P. (the "Appellants"), creditors and parties-in-interest in the above styled and numbered

bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"),

and, with respect to their *Notice of Appeal* [docket no. 1957], hereby file their *Amended*

*Designation of Items for the Record on Appeal* (the "Designation") as follows:

AMENDED DESIGNATION BY NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P. OF ITEMS FOR THE RECORD ON APPEAL—Page 1

| | Item | Bankruptcy Docket Number | Description |
|---|---|---|---|
| | | **Pleadings and Items on Docket** | |
| *Vol. 1* 000001 | 1 | 1957 | Notice of Appeal |
| 000165 000326 | 2 | 1943 | Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief |
| | 3 | | Docket Sheet of Bankruptcy Case No. 19-34054 |
| *Vol. 2* 000639 | 4 | 1606 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000666 | 5 | 1648 | Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000675 | 6 | 1656 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000820 | 7 | 1670 | Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000870 | 8 | 1719 | Second Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| *Vol. 3* 000880 | 9 | 1749 | Third Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000886 | 10 | 1772 | Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000901 | 11 | 1791 | Notice of Withdrawal of Certain Executory Contracts and Unexpired Leases from List of Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan |
| 000906 | 12 | 1807 | Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management |
| 001031 | 13 | 1808 | Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) |
| *Vol. 4* 001097 | 14 | 1811 | Notice of Filing Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications) |
| *Vol. 5* 001346 | 15 | 1814 | Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |

| | | | |
|---|---|---|---|
| *Vol 5* *001414* | 16 | 1847 | Fourth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| *001421* | 17 | 1873 | Fifth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| *001427* | 18 | 1875 | Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland of Highland Capital Management, L.P. (As Modified) |
| *001475* | 19 | 1887 | Supplemental Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| *001482* | 20 | 1671 | United States Trustee's Limited Objection to Confirmation of Debtors' Fifth Amended Plan of Reorganization |
| | **Evidence and Transcripts** | | |
| *001485* *081763* | 21 | 1894 | Transcript of February 2, 2021 Confirmation Hearing |
| *002040* | 22 | 1905 | Transcript of February 3, 2021 Confirmation Hearing |
| *002091* | 23 | 1917 | Transcript of February 8, 2021 Bench Ruling |
| *002128* *vol 12 - 002931* *vol 50 - 013295* *-013297* *Vol. 51-013373* *vol. 54-014182* *vol 55 -014506* | 24 | 1794 1795 1822* 1863 1866 1877 1895 1915 | All exhibits admitted into evidence during February 2 and February 3, 2021 Confirmation Hearing |

*\* 1822 - Vol. 12 — 50 (39 Volumes)*

RESPECTFULLY SUBMITTED this 22d day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email:   drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 22d day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Debtor.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.

Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust and Get Good Trust*

UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | * | Chapter 11 |
| | * | |
| | * | Case No. 19-34054sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | * | |
| | * | |
| Debtor | * | |

### WITNESS AND EXHIBIT LIST

The Dugaboy Investment Trust and Get Good Trust (jointly, "<u>Plan Objectors</u>") hereby file

this Witness and Exhibit List for the hearing to consider the *Fifth Amended Plan of Reorganization*

*of Highland Capital Management, L.P.* [Dkt. No. 1472], currently set to commence on January 26,

2021 at 9:30 a.m. In support thereof, Plan Objectors respectfully show as follows:

**I.     Documents that the Plan Objectors May Use as Exhibits:**

| Plan Objectors Exhibit No. | Description | Offered | Objection | Admitted by Agreement | Admitted |
|---|---|---|---|---|---|
| 1. | Fifth Amended Plan of Reorganization [Docket No. 1472] | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 2. | Disclosure Statement for Fifth Amended Plan of Reorganization [Docket No. 1473] | | | | |
| 3. | Initial Plan Supplement [Docket No. 1389] | | | | |
| 4. | Second Plan Supplement [Docket No. 1606] | | | | |
| 5. | November 2020 Monthly Operating Report [Docket No. 1710] | | | | |
| 6. | Summary of Assets and Liabilities for Non-Individuals [Docket No. 247] | | | | |
| 7. | Any document or pleading filed in the above-captioned bankruptcy case | | | | |
| 8. | Any exhibit necessary for impeachment or rebuttal purposes | | | | |
| 9. | Any and all documents identified or offered by any other party | | | | |
| 10. | Rule 30(B) Deposition of the Debtor pursuant to Notices (to be supplied) | | | | |

The Plan Objectors reserve the right to supplement this Exhibit List should they determine that any other document may be helpful to the trier of fact, whether in their case in chief or rebuttal.

**II.     Witnesses that the Plan Objectors May Call to Testify:**

1.     James P. Seery, Jr.;

2.     A representative of Development Specialists, Inc.;

3.     Any and all other witnesses identified or called by any other party; and

4.     Any witness necessary for rebuttal.

Plan Objectors reserve the right to supplement this Witness List should they determine that any other witness may be helpful to the trier of fact, whether in their case in chief or rebuttal.

002092

January 22, 2021

Respectfully submitted,

*/s/Douglas S. Draper.*
Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com

Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
*Attorneys for The Dugaboy Investment Trust
and Get Good Trust*

## CERTIFICATE OF SERVICE

I do hereby certify that on January 22, 2021, a copy of the above and foregoing Witness and Exhibit List has been served electronically to all parties entitled to receive electronic notice in this matter through the Court's ECF system as follows:

- David G. Adams    david.g.adams@usdoj.gov, southwestern.taxcivil@usdoj.gov;dolores.c.lopez@usdoj.gov
- Amy K. Anderson    aanderson@joneswalker.com, lfields@joneswalker.com
- Zachery Z. Annable    zannable@haywardfirm.com
- Bryan C. Assink    bryan.assink@bondsellis.com
- Asif Attarwala    asif.attarwala@lw.com
- Joseph E. Bain    JBain@joneswalker.com, kvrana@joneswalker.com;joseph-bain-8368@ecf.pacerpro.com;msalinas@joneswalker.com
- Michael I. Baird    baird.michael@pbgc.gov, efile@pbgc.gov
- Sean M. Beach    bankfilings@ycst.com, sbeach@ycst.com
- Paul Richard Bessette    pbessette@KSLAW.com, ccisneros@kslaw.com;jworsham@kslaw.com;kbryan@kslaw.com;jcarvalho@kslaw.com;rmatsumura@kslaw.com
- John Y. Bonds    john@bondsellis.com, joyce.rehill@bondsellis.com
- Larry R. Boyd    lboyd@abernathy-law.com, ljameson@abernathy-law.com
- Jason S. Brookner    jbrookner@grayreed.com, lwebb@grayreed.com;acarson@grayreed.com;cpatterson@grayreed.com
- Greta M. Brouphy    gbrouphy@hellerdraper.com, dhepting@hellerdraper.com;vgamble@hellerdraper.com

002093

- M. David Bryant    dbryant@dykema.com, csmith@dykema.com
- Candice Marie Carson    Candice.Carson@butlersnow.com
- Annmarie Antoniette Chiarello    achiarello@winstead.com
- Shawn M. Christianson    schristianson@buchalter.com, cmcintire@buchalter.com
- James Robertson Clarke    robbie.clarke@bondsellis.com
- Matthew A. Clemente    mclemente@sidley.com, matthew-clemente-8764@ecf.pacerpro.com;efilingnotice@sidley.com;ebromagen@sidley.com;alyssa.russell@sidley.com;dtwomey@sidley.com
- Megan F. Clontz    mclontz@spencerfane.com, lvargas@spencerfane.com
- Andrew Clubok    andrew.clubok@lw.com
- Leslie A. Collins    lcollins@hellerdraper.com
- David Grant Crooks    dcrooks@foxrothschild.com, etaylor@foxrothschild.com,jsagui@foxrothschild.com,plabov@foxrothschild.com,jmanfrey@foxrothschild.com
- Gregory V. Demo    gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com
- Casey William Doherty    casey.doherty@dentons.com, dawn.brown@dentons.com;Docket.General.Lit.DAL@dentons.com;Melinda.sanchez@dentons.com
- Douglas S. Draper    ddraper@hellerdraper.com, dhepting@hellerdraper.com;vgamble@hellerdraper.com
- Lauren Kessler Drawhorn    lauren.drawhorn@wickphillips.com, samantha.tandy@wickphillips.com
- Vickie L. Driver    Vickie.Driver@crowedunlevy.com, crissie.stephenson@crowedunlevy.com;seth.sloan@crowedunlevy.com;elisa.weaver@crowedunlevy.com;ecf@crowedunlevy.com
- Jonathan T. Edwards    jonathan.edwards@alston.com
- Jason Alexander Enright    jenright@winstead.com
- Robert Joel Feinstein    rfeinstein@pszjlaw.com
- Matthew Gold    courts@argopartners.net
- Bojan Guzina    bguzina@sidley.com
- Thomas G. Haskins    thaskins@btlaw.com
- Melissa S. Hayward    MHayward@HaywardFirm.com, mholmes@HaywardFirm.com
- Michael Scott Held    mheld@jw.com, lcrumble@jw.com
- Gregory Getty Hesse    ghesse@HuntonAK.com, amckenzie@HuntonAK.com;tcanada@HuntonAK.com;creeves@HuntonAK.com
- Juliana Hoffman    jhoffman@sidley.com, txefilingnotice@sidley.com;julianna-hoffman-8287@ecf.pacerpro.com
- A. Lee Hogewood    lee.hogewood@klgates.com, haley.fields@klgates.com;matthew.houston@klgates.com;courtney.ritter@klgates.com;mary-beth.pearson@klgates.com;litigation.docketing@klgates.com;Emily.mather@klgates.com;Artoush.varshosaz@klgates.com

- Warren Horn whorn@hellerdraper.com, dhepting@hellerdraper.com;vgamble@hellerdraper.com
- John J. Kane jkane@krcl.com, ecf@krcl.com;jkane@ecf.courtdrive.com
- Jason Patrick Kathman jkathman@spencerfane.com, gpronske@spencerfane.com;mclontz@spencerfane.com;lvargas@spencerfane.com
- Edwin Paul Keiffer pkeiffer@romclaw.com, bwallace@romclaw.com
- Jeffrey Kurtzman kurtzman@kurtzmansteady.com
- Phillip L. Lamberson plamberson@winstead.com
- Lisa L. Lambert lisa.l.lambert@usdoj.gov
- Paul M. Lopez bankruptcy@abernathy-law.com
- Faheem A. Mahmooth mahmooth.faheem@pbgc.gov, efile@pbgc.gov
- Ryan E. Manns ryan.manns@nortonrosefulbright.com
- Thomas M. Melsheimer tmelsheimer@winston.com, tom-melsheimer-7823@ecf.pacerpro.com
- Paige Holden Montgomery pmontgomery@sidley.com, txefilingnotice@sidley.com;paige-montgomery-7756@ecf.pacerpro.com;crognes@sidley.com
- J. Seth Moore smoore@ctstlaw.com, jsteele@ctstlaw.com
- John A. Morris jmorris@pszjlaw.com
- Edmon L. Morton emorton@ycst.com
- David Neier dneier@winston.com, david-neier-0903@ecf.pacerpro.com
- Holland N. O'Neil honeil@foley.com, jcharrison@foley.com;acordero@foley.com
- Rakhee V. Patel rpatel@winstead.com, dgalindo@winstead.com;achiarello@winstead.com
- Charles Martin Persons cpersons@sidley.com
- Mark A. Platt mplatt@fbtlaw.com, aortiz@fbtlaw.com
- Jeffrey Nathan Pomerantz jpomerantz@pszjlaw.com
- Kimberly A. Posin kim.posin@lw.com, colleen.rico@lw.com
- Linda D. Reece lreece@pbfcm.com
- Penny Packard Reid preid@sidley.com, txefilingnotice@sidley.com;penny-reid-4098@ecf.pacerpro.com;ncade@sidley.com
- Davor Rukavina drukavina@munsch.com
- Amanda Melanie Rush asrush@jonesday.com
- Alyssa Russell alyssa.russell@sidley.com
- Douglas J. Schneller douglas.schneller@rimonlaw.com
- Brian Patrick Shaw shaw@roggedunngroup.com, cashion@roggedunngroup.com;jones@roggedunngroup.com
- Michelle E. Shriro mshriro@singerlevick.com, scotton@singerlevick.com;tguillory@singerlevick.com
- Nicole Skolnekovich nskolnekovich@hunton.com, plozano@huntonak.com;astowe@huntonak.com;creeves@huntonak.com
- Jared M. Slade jared.slade@alston.com
- Frances Anne Smith frances.smith@judithwross.com, michael.coulombe@judithwross.com
- Eric A. Soderlund eric.soderlund@judithwross.com

- Martin A. Sosland    martin.sosland@butlersnow.com,
  ecf.notices@butlersnow.com,velvet.johnson@butlersnow.com
- Laurie A. Spindler    Laurie.Spindler@lgbs.com, Dora.Casiano-Perez@lgbs.com
- Jonathan D. Sundheimer    jsundhimer@btlaw.com
- Kesha Tanabe    kesha@tanabelaw.com
- Chad D. Timmons    bankruptcy@abernathy-law.com
- Dennis M. Twomey    dtwomey@sidley.com
- Basil A. Umari    BUmari@dykema.com, pelliott@dykema.com
- United States Trustee    ustpregion06.da.ecf@usdoj.gov
- Artoush Varshosaz    artoush.varshosaz@klgates.com, Julie.garrett@klgates.com
- Donna K. Webb    donna.webb@usdoj.gov,
  brian.stoltz@usdoj.gov;CaseView.ECF@usdoj.gov;brooke.lewis@usdoj.gov
- Jaclyn C. Weissgerber    bankfilings@ycst.com, jweissgerber@ycst.com
- Elizabeth Weller    dallas.bankruptcy@publicans.com, dora.casiano-
  perez@lgbs.com;Melissa.palo@lgbs.com
- Daniel P. Winikka    danw@lfdslaw.com,
  craigs@lfdslaw.com,dawnw@lfdslaw.com,ivys@lfdslaw.com
- Hayley R. Winograd    hwinograd@pszjlaw.com
- Megan Young-John    myoung-john@porterhedges.com

*/s/Douglas S. Draper*
Douglas S. Draper, LA Bar No. 5073

002096

**Monthly C**
ACCRUAL

| **CASE NAME:** | Highland Capital Management |
|---|---|

| **CASE NUMBER:** | 19-34054 |
|---|---|

**JUDGE:** Stacey Jernigan

# UNITED  STATES  BANKRUPTCY  COURT

# NORTHERN & EASTERN DISTRICTS OF TEXAS

# REGION 6

# MONTHLY  OPERATING  REPORT

**MONTH  ENDING:**    November        2020

                                                          MONTH                      YEAR

**IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DE
PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERA
(ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHM
TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND C
DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON
INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.**

**RESPONSIBLE PARTY:**

_____          Chief Restructuring Officer/
ORIGINAL  SIGNATURE  OF  RESPONSIBLE  PARTY                                    TITL

James Seery
PRINTED NAME OF RESPONSIBLE PARTY                                             DAT

**PREPARER:**

_____          Chief Financial Officer
ORIGINAL  SIGNATURE  OF  PREPARER                                             TITL

Frank Waterhouse                                          1.07.21
PRINTED NAME OF PREPARER                                  002097             DAT

Case 19-34054-sgj11 Doc 1794-1 Filed 01/22/21    Entered 01/22/21 15:10:28 Desc Exhibit Page 12 of
Case 19-34054-sgj11 Doc 1072 Filed 01/08/21
Case 3:21-cv-00538-N   Document 26-8   Filed 06/09/21   Page 13 of 215   PageID 4830

| CASE NAME: | Highlan |
|---|---|
| CASE NUMBER: | 19-1223 |

**Comparative Balance Sheet**
(in thousands)

|  | 10/ |
|---|---|
| **Assets** | |
| Cash and cash equivalents | |
| Investments, at fair value [3] | |
| Equity method investees [3] | |
| Management and incentive fee receivable | |
| Fixed assets, net | |
| Due from affiliates [1] | |
| Reserve against notes recievable | |
| Other assets | |
| **Total assets** | $ |
| | |
| **Liabilities and Partners' Capital** | |
| Pre-petition accounts payable [4] | |
| Post-petition accounts payable [4] | |
| Secured debt: | |
|     Frontier | |
|     Jefferies | |
| Accrued expenses and other liabilities [4] | |
| Accrued re-organization related fees [5] | |
| Claim accrual [2] | |
| Partners' capital | |
| **Total liabilities and partners' capital** | $ |

002098

| CASE NAME: | Highland Capital Management, LP | |
| --- | --- | --- |
| | | |
| CASE  NUMBER: | 19-12239-CSS | |

## Income Statement [1]
(in thousands)

| | Date | Filing to Year Ended |
| --- | --- | --- |
| | 10/16/19 - 10/31/19 | 2019 |
| **Revenue:** | | |
| Management fees | 975 | 4,528 |
| Shared services fees | 283 | 1,588 |
| Other income | 99 | 1,582 |
| **Total operating revenue** | **1,357** | **7,697** |
| **Operating expenses:** | | |
| Compensation and benefits [5] | 997 | 1,498 |
| Professional services | 256 | 64 |
| Investment research and consulting | 10 | 266 |
| Marketing and advertising expense | - | 370 |
| Depreciation expense | 82 | 244 |
| Bad debt expense reserve | - | 8,410 |
| Other operating expenses | 201 | 1,265 |
| **Total operating expenses** | **1,545** | **12,118** |
| **Operating income/(loss)** | **(188)** | **(4,421)** |
| **Other income/expense:** | | |
| Interest income | 250 | 1,230 |
| Interest expense | (107) | (286) |
| Reserve against notes receivable | - | (57,963) |
| Re-org related expenses [2] | - | (5,547) |
| Independent director fees | - | - |
| Other income/expense | 32 | 32 |
| **Total other income/expense** | **175** | **(62,534)** |
| Net realized gains/(losses) on investments | 339 | 618 |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | (955) |
| | 2,993 | (337) |
| **Net earnings/(losses) from equity method investees** [3] | (20) | 14,918 |
| **Net income/(loss)** | $ 2,959 | $ (52,374) |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating ...
not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information ...
NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results ...

002099

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

| CASH RECEIPTS AND DISBURSEMENTS | | FILING TO YEAR END 2019 | | QU |
|---|---|---|---|---|
| 1. | CASH - BEGINNING OF MONTH | $ | 2,554,230 | $ |
| **RECEIPTS FROM OPERATIONS** | | | | |
| 2. | OTHER OPERATING RECEIPTS | $ | 1,862,757 | $ |
| 3 | MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ | 3,156,742 | $ |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | |
| 4 | PREPETITION | $ | 3,593,108 | $ |
| 5 | POSTPETITION [1] | $ | - | $ |
| 6 | TOTAL OPERATING RECEIPTS | $ | 8,612,608 | $ |
| **NON-OPERATING RECEIPTS** | | | | |
| 7 | THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ | 423,468 | $ |
| 8 | DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ | 1,338,069 | $ |
| 9 | OTHER (ATTACH LIST) | $ | 3,390,286 | $ |
| 10 | TOTAL NON-OPERATING RECEIPTS | $ | 5,151,822 | $ |
| 11 | TOTAL RECEIPTS | $ | 13,764,430 | $ |
| 12 | TOTAL CASH AVAILABLE | | | |
| **OPERATING DISBURSEMENTS** | | | | |
| 13 | PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ | 3,776,446 | $ |
| 14 | SINGAPORE SERVICE FEES | $ | 95,118 | $ |
| 15 | HCM LATIN AMERICA | $ | 200,000 | $ |
| 16 | THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ | 1,426,987 | $ |
| 17 | UTILITIES | $ | - | $ |
| 18 | INSURANCE | $ | - | $ |
| 19 | INVENTORY PURCHASES | $ | - | $ |
| 20 | VEHICLE EXPENSES | $ | - | $ |
| 21 | TRAVEL | $ | - | $ |
| 22 | ENTERTAINMENT | $ | - | $ |
| 23 | REPAIRS & MAINTENANCE | $ | - | $ |
| 24 | SUPPLIES | $ | - | $ |
| 25 | ADVERTISING | $ | | $ |

002100

| CASE NAME: | Highland Capital Management |
|---|---|
| | |
| CASE NUMBER: 19-34054 | |

## OPERATING RECEIPTS - OTHER

| Date | Amount | Type |
|---|---|---|
| 11/12/2020 | 2,623,121 | SSP Loan |

## OPERATING DISBURSMENTS - OTHER

| Date | Amount | Vendor |
|---|---|---|
| 11/2/2020 | 30,820 | Third Party |
| 11/2/2020 | 159,061 | Crescent T |
| 11/4/2020 | 46,292 | East West |
| 11/6/2020 | 471 | UPS Suppl |
| 11/6/2020 | 600 | Action Shr |
| 11/6/2020 | 1,019 | GRUBHUI |
| 11/6/2020 | 1,443 | S&P Globa |
| 11/6/2020 | 1,554 | Canteen Ve |
| 11/6/2020 | 2,466 | Thomson |
| 11/6/2020 | 4,074 | Concur Te |
| 11/6/2020 | 4,996 | Oak Cliff C |
| 11/6/2020 | 5,885 | ABM |
| 11/6/2020 | 14,520 | Third Party |
| 11/6/2020 | 18,042 | Siepe Softw |
| 11/6/2020 | 31,388 | Centroid |
| 11/6/2020 | 35,200 | Intex Solut |
| 11/6/2020 | 47,471 | Houlihan L |
| 11/6/2020 | 199,718 | Bloomberg |
| 11/6/2020 | 446 | Ace Parkin |
| 11/10/2020 | 6,190 | TW Teleco |
| 11/10/2020 | 53,123 | John R Am |
| 11/10/2020 | 2,669 | Iron Mount |
| 11/13/2020 | 4,591 | Third Party |
| 11/13/2020 | 95,940 | Bloomberg |
| 11/13/2020 | 6,271 | Intelligent |
| 11/16/2020 | 118 | Arkadin, In |
| 11/16/2020 | 224 | American S |
| 11/16/2020 | 273 | UPS Suppl |
| 11/16/2020 | 108 | Verity Grou |
| 11/16/2020 | 1,160 | Canteen Ve |

002101

| CASE NAME: | Highland Capital Management |
|---|---|
| | |
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | August [3] | September [3] | |
|---|---|---|---|---|
| 1. | 0-30 | | $1,768,818 | $2,577,696 |
| 2. | 31-60 | | $772,384 | |
| 3. | 61-90 | | | $772,384 |
| 4. | 91+ | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ | 2,541,202 | $ 3,350,080 | $ |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ | 2,541,202 | $ 3,350,080 | $ |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: ___ | |
|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | |
| 1. | FEDERAL | | | |
| 2. | STATE | | | |
| 3. | LOCAL | | | |
| 4. | OTHER (ATTACH LIST) | | | |
| 5. | TOTAL TAXES PAYABLE | $0 | $0 | $0 |
| 6. | ACCOUNTS PAYABLE | $625,935 | $6,277 | $17,276 |

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: ___ |
|---|---|---|---|
| FEDERAL | | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED |
| 1. | WITHHOLDING | | |
| 2. | FICA-EMPLOYEE | | |
| 3. | FICA-EMPLOYER | | |
| 4. | UNEMPLOYMENT | | |
| 5. | INCOME | | |
| 6. | OTHER (ATTACH LIST) | | |
| 7. | TOTAL FEDERAL TAXES | $0 | $0 |
| STATE AND LOCAL | | | |
| 8. | WITHHOLDING | | |
| 9. | SALES | | |
| 10. | EXCISE | | |

002102

| CASE NAME: | Highland Capital Management |
|---|---|
| | |
| CASE NUMBER: | 19-34054 |

**MONTH**

| BANK RECONCILIATIONS | | Account #1 | Account #2 |
|---|---|---|---|
| A. | BANK: | East West Bank | East West Bank |
| B. | ACCOUNT NUMBER: | x4686 | x4693 |
| C. | PURPOSE (TYPE): | Operating | Insurance |
| 1. | BALANCE PER BANK STATEMENT [1] | $          13,124,581 | $          3,842 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | |
| 4. | OTHER RECONCILING ITEMS | | |
| 5. | MONTH END BALANCE PER BOOKS | $          13,124,581 | $          3,842 |
| 6. | NUMBER OF LAST CHECK WRITTEN | **100510** | **n/a** |

| INVESTMENT ACCOUNTS | | | |
|---|---|---|---|
| BANK, ACCOUNT NAME & NUMBER | | DATE OF PURCHASE | TYPE OF INSTRUMENT |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |
| 11. | TOTAL INVESTMENTS | | |

| CASH | |
|---|---|
| 12. | CURRENCY ON HAND |
| 13. | **TOTAL CASH - END OF MONTH** |

1    Account x6342 is now closed.

002103

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

## PAYMENTS TO INSIDERS AND PROFESSIONALS

| | INSIDERS | | |
|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID |
| 1 | Frank Waterhouse | Salary | $33,333 |
| 2 | Frank Waterhouse | Expense Reimbursement | $384 |
| 3 | Scott Ellington | Salary | $37,500 |
| 4 | Scott Ellington | Expense Reimbursement | $260 |
| 5 | James Dondero | Salary | $0 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 |
| 7 | Thomas Surgent | Salary | $33,333 |
| 8 | Thomas Surgent | Expense Reimbursement | $400 |
| 9 | Trey Parker | Salary | $0 |
| 10 | Trey Parker | Expense Reimbursement | $0 |
| | TOTAL PAYMENTS TO INSIDERS | | $105,210 |

[1] The total amount of reimbursements during the reporting month also included $3,129 for use of the credit card and IT equipment/software.

| | PROFESSIONALS [2] | | |
|---|---|---|---|
| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED |
| 1. | Kurtzman Carson Consultants LLC | | 41,435 |
| 2. | Sidley Austin LLP | | 511,998 |
| 3. | Young Conaway Stargatt & Taylor LLP | | - |
| 4. | FTI Consulting, Inc. | | 382,499 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | 541,680 |
| 6. | Hayward & Associates PLLC | | 4,871 |
| 7. | Development Specialists, Inc. | | 249,129 |

002104

## Monthly Ope

### AC

| CASE NAME: | Highland Capital Management |
| --- | --- |

| CASE NUMBER: | 19-34054 |
| --- | --- |

**MONTH:**   Novembe

| QUESTIONNAIRE | | YES |
| --- | --- | --- |
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| 3 | Debtor generates fee income and other receipts from various related parties in normal course, see cash manag further discussion. |
| --- | --- |

| INSURANCE | | YES |
| --- | --- | --- |
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | |

**002105**

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE

**Fill in this information to identify the case:**

Debtor name      **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:      NORTHERN DISTRICT OF TEXAS

Case number (if known)      **19-34054-SGJ**

☐ Check if this is an
amended filing

# Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals                    12/15

| Part 1: | Summary of Assets |
| --- | --- |

1.  *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

   1a. **Real property:**
Copy line 88 from *Schedule A/B*...................................................................................... $        **523,970.00**

   1b. **Total personal property:**
Copy line 91A from *Schedule A/B*.................................................................................. $        **409,580,813.30**

   1c. **Total of all property:**
Copy line 92 from *Schedule A/B*.................................................................................... $        **410,104,783.30**

| Part 2: | Summary of Liabilities |
| --- | --- |

2.  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*................................... $        **34,862,225.94**

3.  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................................. $        **Unknown**

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*............................................... +$        **244,455,350.78**

4.  Total liabilities ..................................................................................................................................
Lines 2 + 3a + 3b                                                                                                                       $        **279,317,576.72**

**Fill in this information to identify the case:**

Debtor name __**Highland Capital Management, L.P.**__

United States Bankruptcy Court for the: __NORTHERN DISTRICT OF TEXAS__

Case number (if known) __**19-34054-SGJ**__

☐ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                  12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:**    Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

    ☐ No. Go to Part 2.
    ☑ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|

3.  **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **NexBank** | Checking Account | X735 | $1,453.40 |
| 3.2. | **NexBank** | Checking Account | X668 | $0.00 |
| 3.3. | **NexBank** | Checking Account | X513 | $291,309.27 |
| 3.4. | **NexBank** | Money Market Deposit Account | X130 | $190.82 |
| 3.5. | **BBVA Compass** | Checking Account | X342 | $2,125,975.28 |
| 3.6. | **Jefferies** | Brokerage Account | X932 | $0.00 |
| 3.7. | **Maxim Group** | Brokerage Account | X885 | $96.17 |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

002107

| Debtor | **Highland Capital Management, L.P.** | Case number *(If known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

**4.**    **Other cash equivalents** *(Identify all)*

**5.**    **Total of Part 1.**

| | |
|---|---|
| Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80. | **$2,419,024.94** |

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
☑ Yes Fill in the information below.

**7.**    **Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

| | | |
|---|---|---|
| 7.1. | **Certificate of Deposit (NexBank)** | $135,205.21 |
| 7.2. | **Security Deposit (200/300 Crescent Ct #700 Dallas, TX 75201) - Crescent TC Investors** | $118,397.05 |
| 7.3. | **Deposit for Maple Avenue Holdings (Equity Method Investment)** | $10,000.00 |
| 7.4. | **Deposit for expense reimbursement.** | $1,474.60 |

**8.**    **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
Description, including name of holder of prepayment

| | | |
|---|---|---|
| 8.1. | **Other Prepaid Expenses (Unreconciled Book Balance)** | $830,899.73 |
| 8.2. | **Prepaid Retainer - Development Specialists, Inc.** | $240,340.00 |
| 8.3. | **Prepaid Legal Retainer - Pachulski Stang Ziehl & Jones LLP (1)** | $500,000.00 |
| 8.4. | **Prepaid Retainers - Kurtzman Carson Consultants LLC (1)** | $50,000.00 |
| 8.5. | **Prepaid Rent (200/300 Crescent Ct #700 Dallas, TX 75201) - Crescent TC Investors** | $96,294.05 |

(1) Pre-petition balance was not applied.

**9.**    **Total of Part 2.**

| | |
|---|---|
| Add lines 7 through 8. Copy the total to line 81. | **$1,982,610.64** |

| Debtor | **Highland Capital Management, L.P.** | Case number *(If known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

## Part 3:  Accounts receivable

**10. Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
☑ Yes Fill in the information below.

11. **Accounts receivable Exhibit A**

11a. 90 days old or less:

| **3,482,893.80** | - | **0.00** | = .... | **$3,482,893.80** |
|---|---|---|---|---|
| face amount | | doubtful or uncollectible accounts | | |

11b. Over 90 days old:

| **32,304,511.36** | - | **22,380,459.81** | =.... | **$9,924,051.55** |
|---|---|---|---|---|
| face amount | | doubtful or uncollectible accounts | | |

12. **Total of Part 3.**
Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

| **$13,406,945.35** |
|---|

## Part 4:  Investments

**13. Does the debtor own any investments?**

☐ No.  Go to Part 5.
☑ Yes Fill in the information below.

| | | **Valuation method used for current value** | **Current value of debtor's interest** |
|---|---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**
Name of fund or stock:

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**
Name of entity:                                        % of ownership

| 15.1. | **Equity Method Investments (Exhibit B)** | **Multiple** % | **Book Value** | **$167,226,227.63** |
|---|---|---|---|---|

| 15.2. | **Investments at Fair Value (Exhibit C)** | **Multiple** % | **Fair Value** | **$224,267,777.21** |
|---|---|---|---|---|

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**
Describe:

| 16.1. | **Debtor owns defaulted corporate bonds.** | **N/A** | **$0.00** |
|---|---|---|---|

17. **Total of Part 4.**
Add lines 14 through 16.  Copy the total to line 83.

| **$391,494,004.84** |
|---|

## Part 5:  Inventory, excluding agriculture assets

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☑ No.  Go to Part 6.
☐ Yes Fill in the information below.

## Part 6:  Farming and fishing-related assets (other than titled motor vehicles and land)

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

002109

| Debtor | **Highland Capital Management, L.P.** | Case number *(If known)* **19-34054-SGJ** |
|---|---|---|
| | Name | |

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

- [✓] No.  Go to Part 7.
- [ ] Yes Fill in the information below.

**Part 7:**  Office furniture, fixtures, and equipment; and collectibles

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

- [ ] No.  Go to Part 8.
- [✓] Yes Fill in the information below.

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 39. | **Office furniture** <br> Desk, chairs and other office furniture. | $118,428.73 | N/A | Unknown |
| 40. | **Office fixtures** | | | |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software** <br> Computers, Software and Office Equipment | $382,803.25 | N/A | Unknown |
| 42. | **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles <br> 42.1.   **Artwork** | $0.00 | Original Cost | $231,657.53 |

| 43. | **Total of Part 7.** <br> Add lines 39 through 42.  Copy the total to line 86. | $231,657.53 |
|---|---|---|

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

- [ ] No
- [✓] Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

- [✓] No
- [ ] Yes

**Part 8:**  Machinery, equipment, and vehicles

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

- [ ] No.  Go to Part 9.
- [✓] Yes Fill in the information below.

| | General description <br> Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 47. | **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| | 47.1.   **2015 GMC Sierra 2500 HD** | $0.00 | Replacement | $46,570.00 |

48.   **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**002110**

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

**49.**     **Aircraft and accessories**

**50.**     **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

**51.**     **Total of Part 8.**        **$46,570.00**

Add lines 47 through 50.  Copy the total to line 87.

**52.**     **Is a depreciation schedule available for any of the property listed in Part 8?**
- ☑ No
- ☐ Yes

**53.**     **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

**Part 9:**     **Real property**

**54. Does the debtor own or lease any real property?**

- ☐ No.  Go to Part 10.
- ☑ Yes Fill in the information below.

**55.**     **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1. **30.433 Acres of raw land located at 14102 FM 986 Terrell, Texas 75160** | **100% Ownership** | **$398,450.00** | **Tax records** | **$523,970.00** |
| 55.2. **Leasehold Improvements (200/300 Crescent Ct #700 Dallas, TX 75201)** | **Tenant** | **$1,550,281.49** | **N/A** | **Unknown** |

**56.**     **Total of Part 9.**        **$523,970.00**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

**57.**     **Is a depreciation schedule available for any of the property listed in Part 9?**
- ☐ No
- ☑ Yes

**58.**     **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
- ☑ No
- ☐ Yes

**Part 10:**     **Intangibles and intellectual property**

**59. Does the debtor have any interests in intangibles or intellectual property?**

- ☐ No.  Go to Part 11.
- ☑ Yes Fill in the information below.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

002111

| Debtor | **Highland Capital Management, L.P.** | Case number *(If known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 60. | **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61. | **Internet domain names and websites** **139 Domain Names** | $0.00 | N/A | Unknown |
| 62. | **Licenses, franchises, and royalties** **3rd Party Private Equity Management Company** | $0.00 | N/A | Unknown |
| 63. | **Customer lists, mailing lists, or other compilations** | | | |
| 64. | **Other intangibles, or intellectual property** | | | |
| 65. | **Goodwill** | | | |

| 66. | **Total of Part 10.** | | Unknown |
|---|---|---|---|
| | Add lines 60 through 65. Copy the total to line 89. | | |

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107?
   ☐ No
   ☑ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
   ☑ No
   ☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
   ☑ No
   ☐ Yes

| Part 11: | **All other assets** |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
   Include all interests in executory contracts and unexpired leases not previously reported on this form.

   ☐ No.  Go to Part 12.
   ☑ Yes Fill in the information below.

| | | | Current value of debtor's interest |
|---|---|---|---|
| 71. | **Notes receivable** Description (include name of obligor) | | |
| | **Notes Receivable (Exhibit D)** | 150,331,222.61  -  Unknown  = | Unknown |
| | | Total face amount    doubtful or uncollectible amount | |
| 72. | **Tax refunds and unused net operating losses (NOLs)** Description (for example, federal, state, local) | | |
| 73. | **Interests in insurance policies or annuities** | | |
| 74. | **Causes of action against third parties (whether or not a lawsuit has been filed)** | | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

002112

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| | | | |
|---|---|---|---|
| | **Exhibit E** | | **Unknown** |
| | Nature of claim | | |
| | Amount requested | | |

| 75. | **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims** | |
|---|---|---|
| 76. | **Trusts, equitable or future interests in property** | |
| 77. | **Other property of any kind not already listed** *Examples:* Season tickets, country club membership | |
| | **Defined Benefit Plan (Overfunded 12/31/18 balance $323 thousand)** | **Unknown** |
| | **Estimated Deferred Fee Account value plus residual deferred fee accounts at NAV $13.0 million fully reserved due to uncertain collectibility** | **Unknown** |

| 78. | **Total of Part 11.** | **Unknown** |
|---|---|---|
| | Add lines 71 through 77. Copy the total to line 90. | |

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No
☐ Yes

| Debtor | **Highland Capital Management, L.P.** | | Case number *(If known)* | **19-34054-SGJ** |
|---|---|---|---|---|
| | Name | | | |

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $2,419,024.94 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $1,982,610.64 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $13,406,945.35 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $391,494,004.84 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $231,657.53 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $46,570.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*.......................................> | | $523,970.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + Unknown | |
| 91. **Total.** Add lines 80 through 90 for each column | $409,580,813.30 | + 91b. $523,970.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $410,104,783.30 |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                                                                    Best Case Bankruptcy

**002114**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit A - Schedule 11**

| Accounts Receivable | Less than 90 Days [1] | | | Greater than 90 days | | |
|---|---|---|---|---|---|---|
| | Face Amount | Doubtful or Uncollectible | Total | Face Amount | Doubtful or Uncollectible | Total |
| Reimbursable Fund Expense | $ 777,108.00 | $ - | $ 777,108.00 | $ 6,082,319.61 | $ (1,934,540.89) | $ 4,147,778.72 |
| Unpaid Crusader Distributions [3] | - | - | - | 6,324,234.00 | (2,034,161.00) | 4,290,073.00 |
| Management Fees Receivable [2][5] | 2,435,434.04 | - | 2,435,434.04 | 197,173.42 | - | 197,173.42 |
| Cash Interest Receivable [2] | - | - | - | 1,243,304.26 | - | 1,243,304.26 |
| Shared Services Fee Receivable [2] | 270,351.76 | - | 270,351.76 | - | - | - |
| Highland Capital Management Singapore Pte Ltd [2] | - | - | - | 35,158.50 | - | 35,158.50 |
| Miscellaneous Receivable [2] | - | - | - | 10,563.65 | - | 10,563.65 |
| Acis Capital Management, LP Subadvisory and Shared Services Fee Receivable | - | - | - | 5,350,931.62 | (5,350,931.62) | - |
| Highland Capital of New York, Inc. | - | - | - | 5,023,073.12 | (5,023,073.12) | - |
| HERA [4] | - | - | - | 7,231,103.00 | (7,231,103.00) | - |
| Reimbursements from multiple funds managed by Acis Capital Management, LP | - | - | - | 806,650.18 | (806,650.18) | - |
| **Total** | **$ 3,482,893.80** | **$ -** | **$ 3,482,893.80** | **$ 32,304,511.36** | **$ (22,380,459.81)** | **$ 9,924,051.55** |

[1] For shaded area, no aging analysis has been performed so entire amount is included in the greater than 90 days section.
[2] Doubtful or Uncollectible accounts are evaluated at year end.
[3] Represents distributions from all Crusader entities, including Highland Crusader Fund, Ltd., Highland Crusader Fund II, Ltd., and Highland Crusader Fund, L.P. and includes
  unpaid distributions due to a wholly owned subsidiary (Eames Ltd) as well as unpaid distributions with respect to deferred fees, which are reserved against as potentially uncollectible.
[4] Debtor has recorded $3.3mm of net receivable as of the Petition Date, representing 2019 activity.  This balance is normally evaluated for collectability as of year-end.
  However, the 2019 activity is likely not collectible and has therefore been fully reserved for purposes of this schedule.
[5] Amount greater than 90 days represents the entire receivable earned, but not yet payable per one of the Debtor's management agreements.
  For the receivable under this agreement, the entire $197k amount has been earned during 2019 and a portion has been earned within the last 90 days.

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - Schedule 15**

| Equity Method Investments [1] | Total [2] |
|---|---|
| Highland Select Equity Fund, L.P. | $ 130,213,244.86 |
| Wright, Ltd [3] | 22,303,199.33 |
| Starck, Ltd [3] | 6,960,671.89 |
| Eames, Ltd [3] | 3,704,338.16 |
| Maple Avenue Holdings LLC | 2,250,501.95 |
| Highland Capital Management Korea Ltd. | 1,011,300.61 |
| Highland Capital Management Singapore Pte Ltd | 457,809.57 |
| Penant Management LP | 302,358.21 |
| Eagle Equity Advisors, LLC | 22,803.05 |
| **Total** | **$ 167,226,227.63** |

*[1] Investments are based on the debtors pro rata net asset value.*
*[2] Values based on most recent available information as of the petition date.*
*[3] Owned indirectly through 100% owned subsidiaries.*

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - Schedule 15**

| Investments, at fair value [1] | Total [2][3] |
|---|---|
| Investment Securities - Cost | $  66,791,277.56 |
| Investment Securities - Mark To Market | (7,702,195.68) |
| Public Security - A | 49,648,257.65 |
| Private Security - A | 36,949,197.43 |
| Private Security - B | 20,244,908.67 |
| Public Security - B | 13,275,503.51 |
| Third Party Private Equity Fund - A | 12,065,754.32 |
| Public Security - C | 10,718,068.67 |
| Public Security - D | 5,427,536.32 |
| Private Security - C | 3,346,763.82 |
| Public Security - E | 2,752,533.87 |
| Private Portfolio Company - A | 2,525,873.00 |
| Public Security - F | 1,721,458.16 |
| Public Security - G | 1,573,054.32 |
| Public Security - H | 1,397,752.04 |
| Third Party Private Equity Fund - B | 1,254,168.41 |
| Public Security - I | 792,313.43 |
| Public Security - J | 533,357.32 |
| Private Security - D | 481,354.43 |
| Private Security - E | 261,889.71 |
| Private Security - F | 132,002.75 |
| Public Security - K | 67,639.33 |
| Public Security - L | 8,928.17 |
| Third Party Private Equity Fund - C [4] | 380.00 |
| **Total** | **$ 224,267,777.21** |

[1] Listing includes both publicly traded and private investments.  Public securities
   are denoted with the description "Public Security - [ ]".  Additionally, $28,651,800
   of the total balance of "Investment Securities - Cost" and "Investment Securities - Mark
   to Market" is comprised of public securities.
[2] Values based on most recent available information as of the petition date.
[3] For third party private equity funds and investments in managed private
   funds values are at estimated net asset value.
[4] For [Third party private equity fund - c] value presented equals cost basis.

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit D - Schedule 71A**

| Notes Receivable | Total Face Amount [1] |
|---|---:|
| Hunter Mountain Investment Trust | $ 56,873,209.22 |
| Affiliate Note Receivable - A | 24,534,644.03 |
| The Dugaboy Investment Trust | 18,286,268.16 |
| Affiliate Note Receivable - B | 10,413,539.53 |
| Affiliate Note Receivable - C | 10,394,680.47 |
| James Dondero | 9,334,012.00 |
| Highland Capital Management Services, Inc. | 7,482,480.88 |
| Siepe | 2,019,256.35 |
| Highland Mult Strategy Credit Fund, LP | 3,269,000.00 |
| Highland Capital Management Korea Ltd. [2] | 3,132,278.05 |
| Private Portfolio Company - A | 2,198,610.05 |
| Mark Okada | 1,336,287.84 |
| Private Portfolio Company - B | 1,056,956.03 |
| **Total** | **$ 150,331,222.61** |

*[1]Doubtful or Uncollectible accounts are evaluated at year end.*
*[2] Includes $72,278.05 of intercompany receivable.*

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit E - Schedule 74

| Case Style | Date Filed | Damages | Summary | Status |
|---|---|---|---|---|
| Highland Capital Management, L.P. and Highland CLO Funding, Ltd. v. Robin Phelan as Chapter 11 Trustee v. Highland HCF Advisor, Ltd., Highland CLO Management, Ltd., and Highland CLO Holdings, Ltd., Adversary No. 18-03078 in the United States Bankruptcy Court for the Northern District of Texas | 5/30/2018 | $4-$8 million | Highland entities sought to compel redemptions in the Acis CLOs; Trustee counterclaimed for alleged fraudulent transfers | Motion practice. |
| Highland Capital Management, L.P. v. Patrick Daugherty v. Sierra Verde, LLC, Highland Employee Retention Assets, LLC, James Dondero, Patrick Boyce, and William L. Britain, Cause No. 05-14-01215-CB pending in the Texas Fifth Court of Appeals, Dallas, Texas | 4/11/2012 | None | Highland has collected on its verdict for $2.8 million against Daugherty.  Daugherty obtained a judgment for $2.6 million against HERA. Daugherty has not appealed any of his affirmative claims against Highland, though he has appealed other claims. | Enforcement of Injunction versus Mr. Daugherty |
| NexBank, SSB and Highland Capital Management, L.P. v. Winstead, P.C., in the District Court of Dallas County, 193rd Judicial District | 3/16/15 | $3 million | Law firm committed malpractice by incorrectly handling foreclosure of Park West property | Appeal. |

**Fill in this information to identify the case:**

Debtor name **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF TEXAS

Case number (if known)   **19-34054-SGJ**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** |
|---|---|---|---|
| **2.1**  **Frontier State Bank**<br>Creditor's Name<br><br>**5100 South I-35 Service Road**<br>**Oklahoma City, OK 73129**<br>Creditor's mailing address<br><br>**selliott@frontier-ok.com**<br>Creditor's email address, if known<br><br>**Date debt was incurred**<br>**08/17/2015**<br>**Last 4 digits of account number**<br>**1100**<br>Do multiple creditors have an interest in the same property?<br>■ No<br>☐ Yes. Specify each creditor, including this creditor and its relative priority. | Describe debtor's property that is subject to a lien<br>**171,724 shares of voting common stock of privately held security.**<br><br>Describe the lien<br>**Held in lender's name**<br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$5,209,102.31** | **$10,103,038.09** |
| **2.2**  **Jefferies LLC**<br>Creditor's Name<br>**520 Madison Avenue, 12th Floor**<br>**New York, NY 10022**<br>Creditor's mailing address<br><br>**Cbianchi@jefferies.com**<br>Creditor's email address, if known<br><br>**Date debt was incurred**<br>**05/24/2013**<br>**Last 4 digits of account number**<br>**0932**<br>Do multiple creditors have an interest in the same property? | Describe debtor's property that is subject to a lien<br>**The assets held within the Jefferies Prime Brokerage Account**<br><br>Describe the lien<br>**Security interest in all collateral**<br>Is the creditor an insider or related party?<br>■ No<br>☐ Yes<br>Is anyone else liable on this claim?<br>■ No<br>☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)<br><br>As of the petition filing date, the claim is:<br>Check all that apply | **$29,653,123.63** | **$82,007,136.69** |

| Debtor | **Highland Capital Management, L.P.** | | Case number (if know) | **19-34054-SGJ** |
|---|---|---|---|---|
| | Name | | | |

- ■ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

| | | |
|---|---|---|
| 3. | Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | **$34,862,225. 94** |

**Part 2:** List Others to Be Notified for a Debt Already Listed in Part 1

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **Director of Compliance** **Re: Prime Brokerage Services - Jefferies** **520 Madison Ave** **New York, NY 10022** | Line **2.2** | |
| **Frontier State Bank** **Attn: Mr. Steve Elliot** **5100 South I-35 Service Road** **Oklahoma City, OK 73129** | Line **2.1** | |
| **Office of General Counsel** **RE: Prime Brokerage Services - Jefferies** **520 Madison Ave** **New York, NY 10022** | Line **2.2** | |
| **Prime Brokerage Services** **Attn: Jefferies LLC** **520 Madison Ave** **New York, NY 10020** | Line **2.2** | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

002121

**Fill in this information to identify the case:**

Debtor name __**Highland Capital Management, L.P.**__

United States Bankruptcy Court for the: __NORTHERN DISTRICT OF TEXAS__

Case number (if known) __**19-34054-SGJ**__

☐ Check if this is an amended filing

# Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1:    List All Creditors with PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).
   ☐ No. Go to Part 2.
   ☑ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | Total claim | Priority amount |
|---|---|---|---|

**2.1** Priority creditor's name and mailing address

**All Employees**
**300 Crescent Ct.**
**Suite 700**
**Dallas, TX 75201**

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☐ Disputed

Total claim: **Unknown**   Priority amount: **Unknown**

Date or dates debt was incurred
**2019**

Basis for the claim:
**Employee Wages & Bonuses**

Last 4 digits of account number ___

Is the claim subject to offset?
☑ No
☐ Yes

Specify Code subsection of PRIORITY
unsecured claim: 11 U.S.C. § 507(a) (4)

### Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3. **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  |  | Amount of claim |
|---|---|---|

**3.1** Nonpriority creditor's name and mailing address

**45 Employees**
**300 Crescent Ct.**
**Suite 700**
**Dallas, TX 75201**

As of the petition filing date, the claim is: *Check all that apply.*
☑ Contingent
☑ Unliquidated
☐ Disputed

Amount of claim: **Unknown**

Date(s) debt was incurred __**2017, 2018 & 2019**__

Basis for the claim: __**Deferred Awards**__

Last 4 digits of account number ___

Is the claim subject to offset? ☑ No ☐ Yes

**3.2** Nonpriority creditor's name and mailing address

**46 Employees**
**300 Crescent Ct.**
**Suite 700**
**Dallas, TX 75201**

As of the petition filing date, the claim is: *Check all that apply.*
☑ Contingent
☐ Unliquidated
☐ Disputed

Amount of claim: **$5,758,166.67**

Date(s) debt was incurred __**2018**__

Basis for the claim: __**Prior year employee bonuses**__

Last 4 digits of account number ___

Is the claim subject to offset? ☑ No ☐ Yes

002122

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $108,399.83 |
|---|---|---|---|

**Abrams & Bayliss**
**20 Montchanin Road, Suite 200**
**Wilmington, DE 19807**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No   ☐ Yes

---

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $26,324.25 |
|---|---|---|---|

**ACA Compliance Group**
**8403 Colesville Road**
**Suite 870**
**Silver Spring, MD 20910**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No   ☐ Yes

---

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Acis Capital Management**
**c/o Brian P. Shaw**
**Rogge Dunn Group PC**
**500 N. Akard Street Ste 1900**
**Dallas, TX 75201**

☑ Contingent
☑ Unliquidated
☑ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Litigation Claim**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No   ☐ Yes

---

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Acis Capital Management, L.P.**
**c/o Brian P. Shaw**
**Rogge Dunn Group, PC**
**500 N. Akard Street Ste 1900**
**Dallas, TX 75201**

☑ Contingent
☑ Unliquidated
☑ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Litigation Claim**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No   ☐ Yes

---

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $3,825.00 |
|---|---|---|---|

**Action Shred of Texas**
**1420 S. Barry Ave**
**Dallas, TX 75223**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No   ☐ Yes

---

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $113,947.86 |
|---|---|---|---|

**Akin Gump Strauss Hauer & Feld LLP**
**1700 Pacific Avenue**
**Suite 4100**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No   ☐ Yes

---

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**All Employees**
**300 Crescent Ct.**
**Suite 700**
**Dallas, TX 75201**

☑ Contingent
☑ Unliquidated
☐ Disputed

Date(s) debt was incurred  **2019**

Basis for the claim:  **Employee Bonuses**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No   ☐ Yes

---

002123

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.10 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$1,522.33** |
|---|---|---|---|

**Allen ISD**
**Attn: Elizabeth Weller**
**2777 N. Stemmons Freeway**
**Suite 1000**
**Dallas, TX 75207**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **2019**

Basis for the claim:  **Ad Valorem Taxes**

Last 4 digits of account number  **2301**

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.11 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$2,188.30** |
|---|---|---|---|

**Allen ISD**
**Attn: Elizabeth Weller**
**2777 N. Stemmons Freeway**
**Suite 1000**
**Dallas, TX 75207**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **2019**

Basis for the claim:  **Ad Valorem Taxes**

Last 4 digits of account number  **9351**

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.12 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$2,234.00** |
|---|---|---|---|

**Alston & Bird LLP**
**1201 W. Peachtree Street**
**Atlanta, GA 30309-3424**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number  _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.13 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$55,511.80** |
|---|---|---|---|

**American Arbitration Association**
**120 Broadway. 21st Floor**
**New York, NY 10271**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number  _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.14 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$7,470.04** |
|---|---|---|---|

**American Solutions for Business**
**NW#7794**
**PO Box 1450**
**Minneapolis, MN 55485-7794**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Trade Payable**

Last 4 digits of account number  _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.15 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$137,637.81** |
|---|---|---|---|

**Andrews Kurth**
**111 Congress Ave**
**Suite 1700**
**Attn: Scott Brister**
**Austin, TX 78701**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number  _

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.16 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$647.59** |
|---|---|---|---|

**Arkadin, Inc.**
**Lockbox #32726**
**Collection Center Dr**
**Chicago, IL 60693-0726**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Trade Payable**

Last 4 digits of account number  _

Is the claim subject to offset? ☑ No ☐ Yes

---

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.17 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $77,044.60 |
|---|---|---|---|

**ASW Law Limited**
**Crawford House**
**50 Cedar Avenue**
**Hamilton HM11 Bermuda**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| 3.18 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $927.16 |
|---|---|---|---|

**AT&T**
**PO BOX 5001**
**Carol Stream, IL 60197-5001**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| 3.19 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $6,728.59 |
|---|---|---|---|

**AT&T Mobility**
**PO Box 6444**
**Carol Stream, IL 60197-6444**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| 3.20 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $90,855.79 |
|---|---|---|---|

**Bates White, LLC**
**2001 K Street, NW**
**North Building, Suite 500**
**Washington, DC 20006**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| 3.21 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $6,934.79 |
|---|---|---|---|

**Bell Nunnally & Martin LLP**
**3232 MCKINNEY AVE**
**STE 1400**
**DALLAS, TX 75204**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| 3.22 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $25,384.89 |
|---|---|---|---|

**Bloomberg Finance LP**
**731 Lexington Ave.**
**New York, NY 10022**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| 3.23 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $115,714.80 |
|---|---|---|---|

**Boies, Schiller & Flexner LLP**
**5301 Wisconsin Ave NW**
**Washington, DC 20015-2015**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| 3.24 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $69.00 |
|---|---|---|---|

**Brandywine Process Servers, Ltd.**
**PO Box 1360**
**Wilmington, DE 19899**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

---

**3.25** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$325.00**

Caledonian Directors Limited
PO Box 1043
George Town
Grand Cayman KY1-1002

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Basis for the claim:** __See Exhibit A__

**Last 4 digits of account number** __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.26** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$4,233.60**

Canteen Vending Services
PO Box 417632
Boston, MA 02241-7632

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Basis for the claim:** __Trade Payable__

**Last 4 digits of account number** __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.27** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$2,059,337.01**

Carey International, Inc.
7445 New Technology Way
Frederick, MD 21703

☑ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Basis for the claim:** __Uncompleted Transaction__

**Last 4 digits of account number** __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.28** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$38,930.00**

Carey Olsen
PO Box 10008
Willow House, Cricket Square
Grand Cayman KY1-1001

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Basis for the claim:** __See Exhibit A__

**Last 4 digits of account number** __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.29** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$417.20**

Case Anywhere LLC
21860 Burbank Blvd.
Ste 125
Woodland Hills, CA 91367

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Basis for the claim:** __See Exhibit A__

**Last 4 digits of account number** __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.30** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$545.77**

CBIZ Valuation Group, LLC
ATTN: ACCOUNTS RECEIVABLE
PO BOX 849846
DALLAS, TX 75284-9846

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Basis for the claim:** __See Exhibit A__

**Last 4 digits of account number** __

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.31** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: Check all that apply. | **$4,998.70**

CDW Direct
PO Box 75723
Chicago, IL 60675-5723

☐ Contingent
☐ Unliquidated
☐ Disputed

**Date(s) debt was incurred** __

**Basis for the claim:** __Trade Payable__

**Last 4 digits of account number** __

Is the claim subject to offset? ☑ No ☐ Yes

---

| Debtor | **Highland Capital Management, L.P.** | | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|---|
| | Name | | | |

| 3.32 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $1,155.00 |
|---|---|---|---|

**Centroid**
**1050 Wilshire Dr.**
**Ste #170**
**Troy, MI 48084**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.33 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $155.81 |
|---|---|---|---|

**Chase Couriers, Inc**
**1220 Champion Circle**
**#114**
**Carrollton, TX 75006**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.34 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $11,340,751.26 |
|---|---|---|---|

**CLO Holdco, Ltd.**
**c/o Grant Scott, Esq**
**Myers Bigel Sibley & Sajovec, P.A.**
**4140 Park Lake Ave, Ste 600**
**Raleigh, NC 27612**

☑ Contingent
☑ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Contractual Obligation**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.35 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $198,760.29 |
|---|---|---|---|

**Cole Schotz**
**Court Plaza North**
**25 Main Street**
**P.O. Box 800**
**Hackensack, NJ 07602-0800**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.36 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $52,500.00 |
|---|---|---|---|

**Coleman Research Group, Inc.**
**120 West 45th St**
**25th Floor**
**New York, NY 10036**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.37 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $4,090.46 |
|---|---|---|---|

**Concur Technologies, Inc.**
**18400 NE Union Hill Road**
**Redmond, WA 98052**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.38 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $118,831.25 |
|---|---|---|---|

**Connolly Gallagher LLP**
**1201 North Market Street**
**20th Floor**
**Wilmington, DE 19801**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No ☐ Yes

---

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

---

| 3.39 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$1,200.00** |
|---|---|---|---|

**Crescent Research**
**PO Box 64-3622**
**Vero Beach, FL 32964**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
**Basis for the claim:** __Trade Payable__

Last 4 digits of account number __
Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.40 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$826.01** |
|---|---|---|---|

**CSI Global Deposition Services**
**Accounting Dept-972-719-5000**
**4950 N. O'Connor Rd, 1 st Fl**
**Irving, TX 75062-2778**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
**Basis for the claim:** __See Exhibit A__

Last 4 digits of account number __
Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.41 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$515.25** |
|---|---|---|---|

**CT Corp**
**PO Box 4349**
**Carol Stream, IL 60197-4349**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
**Basis for the claim:** __Trade Payable__

Last 4 digits of account number __
Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.42 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$1,500.00** |
|---|---|---|---|

**CVE Technologies Group Inc.**
**1414 S. Gustin Rd.**
**Salt Lake City, UT 84104**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
**Basis for the claim:** __Trade Payable__

Last 4 digits of account number __
Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.43 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$47,809.87** |
|---|---|---|---|

**Dallas County**
**Attn: Elizabeth Weller**
**2777 N. Stemmons Freeway**
**Suite 1000**
**Dallas, TX 75207**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __2019__
**Basis for the claim:** __Ad Valorem Taxes__

Last 4 digits of account number __3150__
Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.44 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$21,226.25** |
|---|---|---|---|

**Daniel Sheehan & Associates, PLLC**
**8150 N. Central Expressway**
**Suite 100**
**Dallas, TX 75206**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
**Basis for the claim:** __See Exhibit A__

Last 4 digits of account number __
Is the claim subject to offset? ☑ No ☐ Yes

---

| 3.45 | **Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** Check all that apply. | **$20,658.79** |
|---|---|---|---|

**Debevoise & Plimpton LLP**
**c/o Accounting Dept. 28th Floor**
**909 Third Ave**
**New York, NY 10022**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __
**Basis for the claim:** __See Exhibit A__

Last 4 digits of account number __
Is the claim subject to offset? ☑ No ☐ Yes

---

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.46 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $553.46 |
|---|---|---|---|

**Denton County**
**PO Box 90223**
**Denton, TX 76202**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **2019**
Last 4 digits of account number **0DEN**

Basis for the claim: **Ad Valorem Taxes**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.47 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $3.68 |
|---|---|---|---|

**Denton County**
**PO Box 90223**
**Denton, TX 76202**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **2019**
Last 4 digits of account number **5DEN**

Basis for the claim: **Ad Valorem Taxes**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.48 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $1,318,730.36 |
|---|---|---|---|

**DLA Piper LLP (US)**
**1900 N Pearl St, Suite 2200**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.49 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $1,038.26 |
|---|---|---|---|

**Dow Jones & Company, Inc.**
**1211 Avenue of the Americas**
**New York, NY 10036**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **Trade Payable**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.50 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $3.30 |
|---|---|---|---|

**DTCC ITP LLC**
**PO Box 27590**
**New York, NY 10087-7590**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **Trade Payable**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.51 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $350,000.00 |
|---|---|---|---|

**Duff & Phelps, LLC**
**c/o David Landman**
**Benesch, Friedlander, Coplan & Aronoff**
**200 Public Sq. Suite 2300**
**Cleveland, OH 44114-4000**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.52 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $5,837.30 |
|---|---|---|---|

**Elite Document Technology**
**403 North Stemmons Freeway Suite 100**
**Dallas, TX 75207**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.53 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | $9,972.65 |
|---|---|---|---|

**Epiq eDiscovery Solutions**
**Dept 2651**
**PO Box 122651**
**Dallas, TX 75312-2651**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☑ No ☐ Yes

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.54 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $11,430.14 |
|---|---|---|---|

**Eric Girard**
**312 Polo Trl**
**Colleyville, TX 76034**

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

Date(s) debt was incurred __10/14/2019__

Basis for the claim: __Consulting fee__

Last 4 digits of account number __

Is the claim subject to offset? [✓] No  [ ] Yes

---

| 3.55 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,546.65 |
|---|---|---|---|

**Felicity Toube QC**
**3-4 South Square**
**Gray's Inn**
**London, WC1R 5HP**

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

Date(s) debt was incurred __

Basis for the claim: __See Exhibit A__

Last 4 digits of account number __

Is the claim subject to offset? [✓] No  [ ] Yes

---

| 3.56 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $1,446,136.66 |
|---|---|---|---|

**Foley Gardere**
**2021 McKinney Ave**
**Suite 1600**
**Dallas, TX 75201**

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

Date(s) debt was incurred __

Basis for the claim: __See Exhibit A__

Last 4 digits of account number __

Is the claim subject to offset? [✓] No  [ ] Yes

---

| 3.57 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $108.95 |
|---|---|---|---|

**Four Seasons Plantscaping, LLC**
**139 Turtle Creek Blvd.**
**Dallas, TX 75207-6802**

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Payable__

Last 4 digits of account number __

Is the claim subject to offset? [✓] No  [ ] Yes

---

| 3.58 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $522.72 |
|---|---|---|---|

**Gardner Haas PLLC**
**2501 N. Harwood Street**
**Suite 1250**
**Dallas, TX 75201**

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

Date(s) debt was incurred __

Basis for the claim: __See Exhibit A__

Last 4 digits of account number __

Is the claim subject to offset? [✓] No  [ ] Yes

---

| 3.59 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $561.75 |
|---|---|---|---|

**Gold's Gym International**
**Attn: Corporate Billing**
**125 E John Carpenter Frwy**
**Suite 1300**
**Irving, TX 75062**

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Payable__

Last 4 digits of account number __

Is the claim subject to offset? [✓] No  [ ] Yes

---

| 3.60 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,371.07 |
|---|---|---|---|

**Greenwood Office Outfitters**
**2951 Suffolk Drive**
**Suite 640**
**Fort Worth, TX 76133-1149**

- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Payable__

Last 4 digits of account number __

Is the claim subject to offset? [✓] No  [ ] Yes

---

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.61 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$11,250.00** |
|---|---|---|---|

**Greyline Solutions**
**PO Box 733976**
**Dallas, TX 75373-3976**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Basis for the claim:  **See Exhibit A**

Last 4 digits of account number _
Is the claim subject to offset? ☑ No ☐ Yes

| 3.62 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$5,464.13** |
|---|---|---|---|

**Harder LLP**
**132 S. RODEO DRIVE**
**FOURTH FLOOR**
**BEVERLY HILLS, CA 90212**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Basis for the claim:  **See Exhibit A**

Last 4 digits of account number _
Is the claim subject to offset? ☑ No ☐ Yes

| 3.63 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$248,745.28** |
|---|---|---|---|

**Highland Capital Management (Singapore)**
**300 Crescent Ct.**
**Suite 700**
**Dallas, TX 75201**

☐ Contingent
☑ Unliquidated
☐ Disputed

Date(s) debt was incurred  **Prior to 12/31/2018**
Basis for the claim:  **The balance shown is updated annually for service fees and has not been updated since 12/31/2018**

Last 4 digits of account number _
Is the claim subject to offset? ☑ No ☐ Yes

| 3.64 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$599,187.26** |
|---|---|---|---|

**Highland CLO Holdco**
**300 Crescent Ct.**
**Suite 700**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Basis for the claim:  **Interest payable**

Last 4 digits of account number _
Is the claim subject to offset? ☑ No ☐ Yes

| 3.65 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$9,541,446.00** |
|---|---|---|---|

**Highland CLO Holdco**
**300 Crescent Ct.**
**Suite 700**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Basis for the claim:  **Notes Payable**

Last 4 digits of account number _
Is the claim subject to offset? ☑ No ☐ Yes

| 3.66 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$2,447,870.00** |
|---|---|---|---|

**Highland RCP Offshore, LP**
**300 Crescent Ct.**
**Suite 700**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Basis for the claim:  **Unearned Revenue**

Last 4 digits of account number _
Is the claim subject to offset? ☑ No ☐ Yes

| 3.67 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$1,945,067.00** |
|---|---|---|---|

**Highland RCP, LP**
**300 Crescent Ct.**
**Suite 700**
**Dallas, TX 75201**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Basis for the claim:  **Unearned Revenue**

Last 4 digits of account number _
Is the claim subject to offset? ☑ No ☐ Yes

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

---

**3.68** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$107,221.92**

Hunton Andrews Kurth LLP
1445 Ross Avenue
Suite 3700
Dallas, TX 75202-2799

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  See Exhibit A

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.69** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,565.23**

ICE Data Pricing & Reference Data, LLC
PO Box 98616
Chicago, IL 60693

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Payable

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.70** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$7,995.00**

Intralinks
P.O. Box 10259
New York, NY 10259

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  Trade Payable

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.71** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,352.27**

JAMS, Inc
PO Box 512850
Los Angelos, CA 90051-0850

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  See Exhibit A

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.72** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$425,000.00**

Joshua & Jennifer Terry
c/o Brian P. Shaw, Esq.
Rogge Dunn Group, PC
500 N. Akard Street, Suite 1900
Dallas, TX 75201

☑ Contingent
☑ Unliquidated
☑ Disputed

Date(s) debt was incurred _

Basis for the claim:  Litigation Claim

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.73** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$16,695.00**

Katten Muchin Rosenman LLP
525 W Monroe St
Chicago, IL 60661-3693

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim:  See Exhibit A

Last 4 digits of account number _

Is the claim subject to offset? ☑ No ☐ Yes

---

**3.74** | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$585.09**

Kaufman County
Attn: Elizabeth Weller
2777 N. Stemmons Freeway
Suite 1000
Dallas, TX 75207

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  2019

Basis for the claim:  Ad Valorem Taxes

Last 4 digits of account number  0606

Is the claim subject to offset? ☑ No ☐ Yes

---

002132

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.75 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,090.25 |
|---|---|---|---|

**Kaufman County**
Attn: Elizabeth Weller
2777 N. Stemmons Freeway
Suite 1000
Dallas, TX 75207

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **2019**
Last 4 digits of account number **0600**

Basis for the claim: **Ad Valorem Taxes**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.76 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $125.05 |
|---|---|---|---|

**Kaufman County**
Attn: Elizabeth Weller
2777 N. Stemmons Freeway
Suite 1000
Dallas, TX 75207

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **2019**
Last 4 digits of account number **0600**

Basis for the claim: **Ad Valorem Taxes**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.77 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $5,732.15 |
|---|---|---|---|

**Kaufman County**
Attn: Elizabeth Weller
2777 N. Stemmons Freeway
Suite 1000
Dallas, TX 75207

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred **2019**
Last 4 digits of account number **0600**

Basis for the claim: **Ad Valorem Taxes**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.78 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $34,425.72 |
|---|---|---|---|

**Legalpeople LLC**
134 N LaSalle Street
Suite 800
Chicago, IL 60602

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.79 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,778.01 |
|---|---|---|---|

**Levinger PC**
1445 Ross Avenue
Suite 2500
Dallas, TX 75202

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.80 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,583.66 |
|---|---|---|---|

**Lexitas**
PO Box 734298
Dept. 2012
Dallas, TX 75373-4298

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.81 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $57,628.65 |
|---|---|---|---|

**Loews Coronado Bay Resort**
4000 Coronado Bay Road
Coronado, CA 92118

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _
Last 4 digits of account number _

Basis for the claim: **Trade Payable**

Is the claim subject to offset? ☑ No ☐ Yes

| Debtor | **Highland Capital Management, L.P.** | Case number (if known) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.82 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $436,538.06 |
|---|---|---|---|
| | **Lynn Pinker Cox & Hurst, LLP** | ☐ Contingent | |
| | **2100 Ross Ave** | ☐ Unliquidated | |
| | **Suite 2700** | ☐ Disputed | |
| | **Dallas, TX 75201** | | |
| | Date(s) debt was incurred _ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.83 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $25,800.11 |
|---|---|---|---|
| | **Maples and Calder** | ☐ Contingent | |
| | **UGLAND HOUSE** | ☐ Unliquidated | |
| | **PO BOX 309GT; S CHURCH ST** | ☐ Disputed | |
| | **George Town Grand Cayman** | | |
| | Date(s) debt was incurred _ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.84 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $12,015.91 |
|---|---|---|---|
| | **MarkitWSO Corporation** | ☐ Contingent | |
| | **Three Lincoln Centre** | ☐ Unliquidated | |
| | **5430 LBJ Frwy; Ste 800** | ☐ Disputed | |
| | **Dallas, TX 75240** | | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Payable** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.85 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $2,163,976.00 |
|---|---|---|---|
| | **McKool Smith** | ☐ Contingent | |
| | **300 Crescent Court** | ☐ Unliquidated | |
| | **Suite 1500** | ☐ Disputed | |
| | **Dallas, TX 75201** | | |
| | Date(s) debt was incurred _ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.86 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $780,645.36 |
|---|---|---|---|
| | **Meta-e Discovery LLC** | ☐ Contingent | |
| | **Six Landmark Square** | ☐ Unliquidated | |
| | **Fourth Floor** | ☐ Disputed | |
| | **Stamford, CT 06901** | | |
| | Date(s) debt was incurred _ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.87 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $300.00 |
|---|---|---|---|
| | **Nick Meserve** | ☐ Contingent | |
| | **11835 Brandywine Ln** | ☐ Unliquidated | |
| | **Houston, TX 77024** | ☐ Disputed | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Trade Payable** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.88 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $375,000.00 |
|---|---|---|---|
| | **NWCC, LLC** | ☑ Contingent | |
| | **c/o of Michael A. Battle** | ☑ Unliquidated | |
| | **Barnes & Thornburg, LLP** | ☑ Disputed | |
| | **1717 Pennsylvania Ave N.W. Ste 500** | | |
| | **Washington, DC 20006** | | |
| | Date(s) debt was incurred _ | Basis for the claim:  **Litigation Claim** | |
| | Last 4 digits of account number _ | Is the claim subject to offset? ☑ No ☐ Yes | |

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| | | | |
|---|---|---|---|
| 3.89 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$15,669.86** |
| | **Opus 2 International, Inc.** | ☐ Contingent | |
| | **100 Pine Street** | ☐ Unliquidated | |
| | **Suite 560** | ☐ Disputed | |
| | **San Francisco, CA 94111** | | |
| | Date(s) debt was incurred __ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.90 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$435.30** |
| | **PACER Service Center** | ☐ Contingent | |
| | **P.O. Box 5208** | ☐ Unliquidated | |
| | **Portland, OR 97208-5208** | ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Trade Payable** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.91 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$11,700,000.00** |
| | **Patrick Daugherty** | ☑ Contingent | |
| | **c/o Thomas A. Uebler** | ☑ Unliquidated | |
| | **McCollom D'Emilio Smith** | ☑ Disputed | |
| | **2751 Centerville Rd #401** | | |
| | **Wilmington, DE 19808** | | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Litigation Claim** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.92 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,611.00** |
| | **Pitney Bowes- Purchase Power** | ☐ Contingent | |
| | **PO Box 371874** | ☐ Unliquidated | |
| | **Pittsburgh, PA 15250-2648** | ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Trade Payable** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.93 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$1,064.58** |
| | **ProStar Services, Inc** | ☐ Contingent | |
| | **PO Box 110209** | ☐ Unliquidated | |
| | **Carrollton, TX 75011** | ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Trade Payable** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.94 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$8,608.17** |
| | **Quintairos, Prieto Wood & Boyer** | ☐ Contingent | |
| | **865 S. Figueroa St** | ☐ Unliquidated | |
| | **10th FL** | ☐ Disputed | |
| | **Los Angeles, CA 90017** | | |
| | Date(s) debt was incurred __ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| | | | |
|---|---|---|---|
| 3.95 | **Nonpriority creditor's name and mailing address** | As of the petition filing date, the claim is: *Check all that apply.* | **$189,314,946.00** |
| | **Redeemer Committee - Highland Crusader** | ☑ Contingent | |
| | **Attn: Eric Felton** | ☑ Unliquidated | |
| | **731 Pleasant Ave.** | ☑ Disputed | |
| | **Glen Ellyn, IL 60137** | | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Litigation Claim** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☐ No ☑ Yes | |

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

---

| 3.96 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $258,526.25 |
|---|---|---|---|

**Reid Collins & Tsai**
**810 Seventh Ave Ste 410**
**New York, NY 10019**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.97 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $1,478.59 |
|---|---|---|---|

**Scott Douglass & McConnico LLP**
**303 Colorado St**
**Ste 2400**
**Austin, TX 78701**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.98 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $24.37 |
|---|---|---|---|

**Secured Access Systems, LLC**
**1913 Walden Court**
**Flower Mound, TX 75022**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.99 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $80,183.88 |
|---|---|---|---|

**Siepe Services, LLC**
**5440 Harvest Hill Road**
**Suite 100**
**Dallas, TX 75230**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.100 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $309.11 |
|---|---|---|---|

**Southland Property Tax Consultants, Inc**
**421 W. 3rd Street**
**Ste 920**
**Fort Worth, TX 76102**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **Trade Payable**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.101 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $5,208.40 |
|---|---|---|---|

**Squire Patton Boggs (US) LLP**
**PO Box 643051**
**Cincinnati, OH 45264**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No  ☐ Yes

---

| 3.102 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $10,000.00 |
|---|---|---|---|

**Stanton Advisors LLC**
**300 Coles Street**
**Apt. 802**
**Jersey City, NJ 07310**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred __

Basis for the claim:  **See Exhibit A**

Last 4 digits of account number __

Is the claim subject to offset? ☑ No  ☐ Yes

---

002136

| Debtor | **Highland Capital Management, L.P.** | | Case number *(if known)* | **19-34054-SGJ** |
|---|---|---|---|---|
| | Name | | | |

| 3.103 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$90,712.65** |
|---|---|---|---|
| | **Stanton LLP** | | |
| | **9400 N Central Expwy** | ☑ Contingent | |
| | **Ste 1304** | ☑ Unliquidated | |
| | **Dallas, TX 75231** | ☑ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.104 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$2,500.00** |
|---|---|---|---|
| | **State Street Global Exchange** | | |
| | **Elkins/McSherry, LLC** | ☐ Contingent | |
| | **One Lincoln Street** | ☐ Unliquidated | |
| | **Boston, MA 02111** | ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.105 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$246,802.54** |
|---|---|---|---|
| | **Stinson Leonard Street LLP** | | |
| | **PO Box 843052** | ☑ Contingent | |
| | **Kansas City, MO 64184** | ☑ Unliquidated | |
| | | ☑ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **See Exhibit A** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.106 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$1,158.52** |
|---|---|---|---|
| | **Thomson West** | | |
| | **PO Box 64833** | ☐ Contingent | |
| | **St. Paul, MN 55164-0833** | ☐ Unliquidated | |
| | | ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Trade Payable** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.107 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|
| | **UBS AG, London Branch** | | |
| | **c/o Andrew Clubock, Esq.** | | |
| | **Latham & Watkins LLP** | ☑ Contingent | |
| | **555 11th Street NW #1000** | ☑ Unliquidated | |
| | **Washington, DC 20004** | ☑ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Litigation Claim** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.108 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **Unknown** |
|---|---|---|---|
| | **UBS Securities LLC** | | |
| | **c/o Andrew Clubock** | | |
| | **Latham & Watkins LLP** | ☑ Contingent | |
| | **555 11th Street NW #1000** | ☑ Unliquidated | |
| | **Washington, DC 20004** | ☑ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Litigation Claim** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

| 3.109 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$90.45** |
|---|---|---|---|
| | **UPS Supply Chain Solutions** | | |
| | **28013 Network Place** | ☐ Contingent | |
| | **Chicago, IL 60673-1280** | ☐ Unliquidated | |
| | | ☐ Disputed | |
| | Date(s) debt was incurred __ | Basis for the claim:  **Trade Payable** | |
| | Last 4 digits of account number __ | Is the claim subject to offset? ☑ No ☐ Yes | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com | | Best Case Bankruptcy

002137

| Debtor | **Highland Capital Management, L.P.** | Case number (*if known*) | **19-34054-SGJ** |
|---|---|---|---|
| | Name | | |

| 3.110 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $2,334.80 |
|---|---|---|---|

**Wakefield Quin**
**Victoria Place**
**31 Victoria St**
**Hamilton, HM10 Bermuda**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **See Exhibit A**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.111 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $3,411.87 |
|---|---|---|---|

**Wilks, Lukoff & Bracegirdle, LLC**
**4250 Lancaster Pike**
**#200**
**Wilmington, DE 19805**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Payable**

Is the claim subject to offset? ☑ No ☐ Yes

| 3.112 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $2,348.31 |
|---|---|---|---|

**Xerox Corporation**
**PO Box 650361**
**Dallas, TX 75265**

Date(s) debt was incurred _

Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Trade Payable**

Is the claim subject to offset? ☑ No ☐ Yes

---

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |
|---|---|

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

---

| **Part 4:** | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

5. Add the amounts of priority and nonpriority unsecured claims.

| | | | Total of claim amounts |
|---|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ | **Unknown** |
| 5b. Total claims from Part 2 | 5b. + | $ | **244,617,627.33** |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ | **244,617,627.33** |

---

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Schedule F - Exhibit A**

| Law Firm | Gross Balance [1] | HCMLP Balance [2] | Other Balance [3] |
|---|---|---|---|
| McKool Smith | 2,163,976.00 | 2,163,976.00 | |
| Foley Gardere | 1,601,136.66 | 1,446,136.66 | 155,000.00 |
| DLA Piper LLP (US) | 1,318,730.36 | 1,318,730.36 | |
| Meta-e Discovery LLC | 1,378,061.34 | 780,645.36 | 597,415.98 |
| Lynn Pinker Cox & Hurst, LLP | 529,303.56 | 436,538.06 | 92,765.50 |
| Duff & Phelps, LLC | 350,000.00 | 350,000.00 | |
| Reid Collins & Tsai | 1,087,474.36 | 258,526.25 | 828,948.11 |
| Stinson Leonard Street LLP | 246,802.54 | 246,802.54 | - |
| Cole Schotz | 243,667.06 | 198,760.29 | 44,906.77 |
| Andrews Kurth | 771,467.89 | 137,637.81 | 633,830.08 |
| Connolly Gallagher LLP | 118,831.25 | 118,831.25 | - |
| Boies, Schiller & Flexner LLP | 115,714.80 | 115,714.80 | - |
| Akin Gump Strauss Hauer & Feld LLP | 1,739,149.45 | 113,947.86 | 1,625,201.59 |
| Abrams & Bayliss | 108,399.83 | 108,399.83 | - |
| Hunton Andrews Kurth LLP | 205,378.20 | 107,221.92 | 98,156.28 |
| Bates White, LLC | 90,855.79 | 90,855.79 | - |
| Stanton LLP | 90,712.65 | 90,712.65 | - |
| ASW Law Limited | 77,044.60 | 77,044.60 | - |
| American Arbitration Association | 55,511.80 | 55,511.80 | - |
| Carey Olsen | 38,930.00 | 38,930.00 | - |
| Legalpeople LLC | 34,425.72 | 34,425.72 | - |
| ACA Compliance Group | 48,526.43 | 26,324.25 | 22,202.18 |
| Maples and Calder | 200,758.82 | 25,800.11 | 174,958.71 |
| Daniel Sheehan & Associates, PLLC | 21,226.25 | 21,226.25 | - |
| Debevoise & Plimpton LLP | 48,300.79 | 20,658.79 | 27,642.00 |
| Katten Muchin Rosenman LLP | 16,695.00 | 16,695.00 | - |
| Opus 2 International, Inc. | 39,214.03 | 15,669.86 | 23,544.17 |
| MarkitWSO Corporation | 154,632.25 | 12,015.91 | 142,616.34 |
| Greyline Solutions | 11,250.00 | 11,250.00 | - |
| Stanton Advisors LLC | 10,000.00 | 10,000.00 | - |
| Epiq eDiscovery Solutions | 21,889.05 | 9,972.65 | 11,916.40 |
| Quintairos, Prieto Wood & Boyer | 12,897.42 | 8,608.17 | 4,289.25 |
| Bell Nunnally & Martin LLP | 6,934.79 | 6,934.79 | - |
| Elite Document Technology | 49,300.00 | 5,837.30 | 43,462.70 |
| Harder LLP | 5,464.13 | 5,464.13 | - |
| Squire Patton Boggs (US) LLP | 50,000.00 | 5,208.40 | 44,791.60 |
| Levinger PC | 12,884.21 | 3,778.01 | 9,106.20 |
| Lexitas | 2,583.66 | 2,583.66 | - |
| State Street Global Exchange | 2,500.00 | 2,500.00 | - |
| Wakefield Quin | 4,760.60 | 2,334.80 | 2,425.80 |
| Alston & Bird LLP | 2,234.00 | 2,234.00 | - |
| Felicity Toube QC | 6,208.22 | 1,546.65 | 4,661.57 |
| Scott Douglass & McConnico LLP | 4,983.50 | 1,478.59 | 3,504.91 |
| JAMS, Inc | 24,097.28 | 1,352.27 | 22,745.01 |
| CSI Global Deposition Services | 826.01 | 826.01 | - |
| CBIZ Valuation Group, LLC | 8,269.26 | 545.77 | 7,723.49 |
| Gardner Haas PLLC | 7,920.00 | 522.72 | 7,397.28 |
| Case Anywhere LLC | 417.20 | 417.20 | - |
| Caledonian Directors Limited | 325.00 | 325.00 | - |
| Winston & Strawn LLP | 1,770,877.30 | - | 1,770,877.30 |
| K&L Gates LLP | 160,228.40 | - | 160,228.40 |
| Davis Polk & Wardwell LLP | 105,140.83 | - | 105,140.83 |

Highland Capital Management LP
Case # 19-34054-SGJ
Schedule F - Exhibit A

| Law Firm | Gross Balance [1] | HCMLP Balance [2] | Other Balance [3] |
|---|---|---|---|
| Baker & McKenzie LLP | 131,938.68 | - | 131,938.68 |
| Zuckerman Spaeder LLP | 127,295.18 | - | 127,295.18 |
| Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP | 100,476.30 | - | 100,476.30 |
| Berkeley Research Group, LLC | 60,976.22 | - | 60,976.22 |
| Day Pitney LLP | 55,793.69 | - | 55,793.69 |
| Milbank, Tweed, Hadley | 52,993.21 | - | 52,993.21 |
| Garman Turner Gordon | 42,222.06 | - | 42,222.06 |
| Wick Phillips Gould & Martin, LLP - Operating Account | 27,749.45 | - | 27,749.45 |
| Pope, Hardwicke, Christie, Schell, Kelly & Taplett LLP | 27,102.33 | - | 27,102.33 |
| Ober Kaler Grimes & Shriver | 24,939.27 | - | 24,939.27 |
| ValueScope | 22,357.65 | - | 22,357.65 |
| Brian Lauten, PC | 16,650.00 | - | 16,650.00 |
| Hutchison & Steffen, PLLC | 15,156.95 | - | 15,156.95 |
| Counsel Press LLC | 14,926.01 | - | 14,926.01 |
| Integra FEC LLC | 13,409.52 | - | 13,409.52 |
| Rowlett Hill Collins LLP | 12,562.50 | - | 12,562.50 |
| Willkie Farr & Gallagher LLP | 9,640.00 | - | 9,640.00 |
| Flemming Zulack Williamson Zauderer | 8,356.25 | - | 8,356.25 |
| TSG Reporting, Inc | 6,589.70 | - | 6,589.70 |
| Todd Travers | 4,987.50 | - | 4,987.50 |
| Brownstein Hyatt Farber Schreck, LLP | 4,777.21 | - | 4,777.21 |
| Morris James LLP - Invoices | 4,313.10 | - | 4,313.10 |
| Wachtell, Lipton, Rosen & Katz | 3,752.48 | - | 3,752.48 |
| Lenz & Staehelin | 3,568.15 | - | 3,568.15 |
| Quinn Emanuel Trial Lawyers | 3,180.65 | - | 3,180.65 |
| Ogier | 2,794.97 | - | 2,794.97 |
| Lowenstein Sandler | 2,778.72 | - | 2,778.72 |
| J. Sagar Associates | 2,391.20 | - | 2,391.20 |
| Bifferato Gentilotti LLC | 1,931.41 | - | 1,931.41 |
| Bass, Berry & Sims PLC | 1,888.00 | - | 1,888.00 |
| TransPerfect Translations International Inc. | 1,646.59 | - | 1,646.59 |
| Kim & Chang | 1,487.11 | - | 1,487.11 |
| WilmerHale | 1,056.00 | - | 1,056.00 |
| Bailey Kennedy, LLP | 900.00 | - | 900.00 |
| CT Corporation | 899.00 | - | 899.00 |
| Cooke, Young & Keidan LLP | 804.40 | - | 804.40 |
| Elite Deposition Technologies | 783.61 | - | 783.61 |
| Gibson, Dunn & Crutcher LLP | 651.60 | - | 651.60 |
| US Legal Support | 507.06 | - | 507.06 |
| Esquire Deposition Solutions | 253.42 | - | 253.42 |
| Kim Leslie Shafer | 225.00 | - | 225.00 |
| Akerman LLP | 69.93 | - | 69.93 |
| **Total** | **15,993,700.38** | **8,511,459.84** | **7,482,240.53** |

*[1] Represents gross amount of invoices received where the Debtor is counterparty to the engagement letter.*

*[2] Represents allocated amount of invoices owing by Debtor.*

*[3] Represents allocated amount of invoices owing by non-Debtor party. Amount are not final amounts and may be subject to dispute.*

**Fill in this information to identify the case:**

Debtor name    **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF TEXAS

Case number (if known)    **19-34054-SGJ**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.    **Does the debtor have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
   ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1.** State what the contract or lease is for and the nature of the debtor's interest    **Subscription To 13D Global Strategy And Research Services** | |
| State the term remaining    **121 Days** | **13D Global Strategy and Research** |
| List the contract number of any government contract | **491 N Main Street** <br> **Ketchum, ID 83340** |
| **2.2.** State what the contract or lease is for and the nature of the debtor's interest    **Subscription Agreement** | |
| State the term remaining    **76 Days** | **4Cast Inc.** <br> **420 Lexington Avenue** |
| List the contract number of any government contract | **Suite 2147** <br> **New York, NY 10170** |
| **2.3.** State what the contract or lease is for and the nature of the debtor's interest    **Servicing Agreement** | |
| State the term remaining    **Termination Contingent** | **Aberdeen Loan Funding, Ltd.** <br> **190 Elgin Avenue** |
| List the contract number of any government contract | **George Town, Grand Cayman** <br> **KY1-9005, Cayman Islands** |
| **2.4.** State what the contract or lease is for and the nature of the debtor's interest    **Janitorial Service** | |
| State the term remaining    **198 Days** | **ABM Texas General Services, Inc.** <br> **2020 Westridge Drive** |
| List the contract number of any government contract | **Irving, TX 75038** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

002141

Debtor 1   **Highland Capital Management, L.P.**                                    Case number (*if known*)   **19-34054-SGJ**
           First Name          Middle Name          Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.5. | State what the contract or lease is for and the nature of the debtor's interest | **Compliance Services** | |
|---|---|---|---|
| | State the term remaining | **0 Days** | **ACA Compliance Group**<br>**8403 Colesville Road**<br>**Ste 870**<br>**Silver Spring, MD 20910** |
| | List the contract number of any government contract | | |

| 2.6. | State what the contract or lease is for and the nature of the debtor's interest | **Tamale Software** | |
|---|---|---|---|
| | State the term remaining | **351 Days** | **Advent Software, Inc.**<br>**600 Townsend Street**<br>**Ste 500**<br>**San Francisco, CA 94103** |
| | List the contract number of any government contract | | |

| 2.7. | State what the contract or lease is for and the nature of the debtor's interest | **Geneva Software** | |
|---|---|---|---|
| | State the term remaining | **207 Days** | **Advent Software, Inc.**<br>**Three Lincoln Centre**<br>**5430 LBJ Freeway Ste 800**<br>**Dallas, TX 75240** |
| | List the contract number of any government contract | | |

| 2.8. | State what the contract or lease is for and the nature of the debtor's interest | **Software License Global Strategy And China** | |
|---|---|---|---|
| | State the term remaining | **167 Days** | **Alpine Macro**<br>**1130 Sherbrooke St West PH1**<br>**Montreal, Quebec**<br>**Canada, H3A2M8** |
| | List the contract number of any government contract | | |

| 2.9. | State what the contract or lease is for and the nature of the debtor's interest | **Travel Account Purchase And Usage** | |
|---|---|---|---|
| | State the term remaining | **254 Days** | **American Airlines, Inc.**<br>**PO Box 619616 MD4106**<br>**Ft Worth, TX 76155** |
| | List the contract number of any government contract | | |

| 2.10. | State what the contract or lease is for and the nature of the debtor's interest | **Actuarial Services** | |
|---|---|---|---|
| | State the term remaining | **76 Days** | **Aon Consulting, Inc.**<br>**445 Hutchinson Ave**<br>**Ste 900**<br>**Columbus, OH 43235** |
| | List the contract number of any | | |

Debtor 1   **Highland Capital Management, L.P.**

First Name        Middle Name        Last Name

Case number (*if known*)   **19-34054-SGJ**

   **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

government contract

| 2.11. | State what the contract or lease is for and the nature of the debtor's interest | **Enterprise Technology Research** | |
|---|---|---|---|
| | State the term remaining | **746 Days** | **Aptiviti, Inc.**<br>**129 West 29th Street**<br>**3rd Floor**<br>**New York, NY 10001** |
| | List the contract number of any government contract | | |

| 2.12. | State what the contract or lease is for and the nature of the debtor's interest | **Employment Practices Insurance** | |
|---|---|---|---|
| | State the term remaining | **147 Days** | **Argonaut Insurance Company**<br>**225 W Washington Street**<br>**24th floor**<br>**Chicago, IL 60606** |
| | List the contract number of any government contract | | |

| 2.13. | State what the contract or lease is for and the nature of the debtor's interest | **Internet** | |
|---|---|---|---|
| | State the term remaining | **3 Years** | **AT&T**<br>**208 South Akard Street**<br>**Dallas, TX 75201** |
| | List the contract number of any government contract | | |

| 2.14. | State what the contract or lease is for and the nature of the debtor's interest | **Cell Phones** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | **AT&T Mobility**<br>**208 South Akard Street**<br>**Dallas, TX 75202** |
| | List the contract number of any government contract | | |

| 2.15. | State what the contract or lease is for and the nature of the debtor's interest | **Dev Server Hosting** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | **AWS**<br>**410 Terry Avenue North**<br>**Seattle, WA 98109** |
| | List the contract number of any government contract | | |

| 2.16. | State what the contract or lease is for and the nature of the debtor's interest | **Investment Research** | **BCA Research Inc.**<br>**1002 Sherbrooke Street West**<br>**Suite 1600**<br>**Montreal, Quebec, CA 3L6** |
|---|---|---|---|

Debtor 1   **Highland Capital Management, L.P.**

First Name          Middle Name          Last Name

Case number *(if known)*   **19-34054-SGJ**

---

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  | State the term remaining | **76 Days** |  |
|  | List the contract number of any government contract | | |

---

| 2.17. | State what the contract or lease is for and the nature of the debtor's interest | **Bloomberg** | |
|  | State the term remaining | **60 day termination; two year autorenewal; after initial term of 07/15/201** | **Bloomberg Finance, L.P.** **731 Lexington Ave** **New York, NY 10022** |
|  | List the contract number of any government contract | | |

---

| 2.18. | State what the contract or lease is for and the nature of the debtor's interest | **Erisa Group Health Plan** | |
|  | State the term remaining | **41 Days** | **Blue Cross Blue Shield of Texas** **1001 E. Lookout Dr.** **Richardson, TX 75082** |
|  | List the contract number of any government contract | | |

---

| 2.19. | State what the contract or lease is for and the nature of the debtor's interest | **Stop Loss Coverage** | |
|  | State the term remaining | **41 Days** | **Blue Cross Blue Shield of Texas** **1001 E. Lookout Dr.** **Richardson, TX 75082** |
|  | List the contract number of any government contract | | |

---

| 2.20. | State what the contract or lease is for and the nature of the debtor's interest | **Electronic Access** | |
|  | State the term remaining | **Perpetuity** | **BNY Mellon** **525 Penn Place** **Pittsburgh, PA 15219** |
|  | List the contract number of any government contract | | |

---

| 2.21. | State what the contract or lease is for and the nature of the debtor's interest | **Cloud Doc Hosting** | |
|  | State the term remaining | **Monthly** | **BOX.com** **900 Jefferson Ave** **Redwood City, CA 94063** |
|  | List the contract number of any government contract | | |

---

Debtor 1  **Highland Capital Management, L.P.**         Case number (*if known*)   **19-34054-SGJ**

First Name     Middle Name     Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.22. | State what the contract or lease is for and the nature of the debtor's interest | **Servicing Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Brentwood CLO, Ltd.**<br>**Maples Finance Limited, PO Box 1093GT**<br>**Queensgate House, South Church Street**<br>**George Town, Grand Cayman, Cayman Island** |
| | List the contract number of any government contract | | |

| 2.23. | State what the contract or lease is for and the nature of the debtor's interest | **E-Ballot And Meeting Information Services** | |
|---|---|---|---|
| | State the term remaining | **162 Days** | **Broadridge Investor Communication Solutions**<br>**One Park Ave**<br>**New York, NY 10016** |
| | List the contract number of any government contract | | |

| 2.24. | State what the contract or lease is for and the nature of the debtor's interest | **Advisory Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Carey International, Inc.**<br>**4530 Wisconsin Ave NW**<br>**Washington, DC 20016** |
| | List the contract number of any government contract | | |

| 2.25. | State what the contract or lease is for and the nature of the debtor's interest | **Advisory Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **CCS Medical, Inc.**<br>**14255 49th Street North**<br>**Suite 301**<br>**Clearwater, FL 33762** |
| | List the contract number of any government contract | | |

| 2.26. | State what the contract or lease is for and the nature of the debtor's interest | **Wan Line And Telephones** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | **CenturyLink**<br>**100 CenturyLink Drive**<br>**Monroe, LA 71203** |
| | List the contract number of any government contract | | |

| 2.27. | State what the contract or lease is for and the nature of the debtor's interest | **Second Amended And Restated Investment Advisory Agreement** | |
|---|---|---|---|
| | State the term remaining | **90 Day Termination Provision; Annual Autoextend Following** | **Charitable DAF Fund, L.P. / Charitable DAF GP , LLC**<br>**Attention: Grant Scott**<br>**4140 Park Lake Avenue**<br>**Suite 600**<br>**Raleigh, NC 27612** |

002145

Debtor 1  **Highland Capital Management, L.P.**                                           Case number *(if known)*   **19-34054-SGJ**
    First Name         Middle Name         Last Name

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  |  |  |
|---|---|---|
| List the contract number of any government contract | **Initial Term Ending 12/31/2017** |  |

| 2.28. | State what the contract or lease is for and the nature of the debtor's interest | **Second Amended And Restated Service Agreement** |  |
|---|---|---|---|
|  | State the term remaining | **60 Day Termination Provision; Annual Autoextend Following Initial Term 12/31/2017** | **Charitable DAF Fund, L.P. / Charitable DAF GP , LLC**<br>**Attention: Grant Scott**<br>**4140 Park Lake Avenue**<br>**Suite 600**<br>**Raleigh, NC 27612** |
|  | List the contract number of any government contract |  |  |

| 2.29. | State what the contract or lease is for and the nature of the debtor's interest | **Workers Comp** |  |
|---|---|---|---|
|  | State the term remaining | **254 Days** | **Chubb**<br>**2001 Bryan St.**<br>**Ste. 3600**<br>**Dallas, TX 75201** |
|  | List the contract number of any government contract |  |  |

| 2.30. | State what the contract or lease is for and the nature of the debtor's interest | **Cisco Hardware Support** |  |
|---|---|---|---|
|  | State the term remaining | **2 Years** | **Cisco**<br>**170 West Tasman Dr**<br>**San Jose, CA 95134** |
|  | List the contract number of any government contract |  |  |

| 2.31. | State what the contract or lease is for and the nature of the debtor's interest | **Conference Services** |  |
|---|---|---|---|
|  | State the term remaining | **Monthly** | **Cisco Webex**<br>**170 West Tasman Dr**<br>**San Jose, CA 95134** |
|  | List the contract number of any government contract |  |  |

| 2.32. | State what the contract or lease is for and the nature of the debtor's interest | **Webex Seminars** |  |
|---|---|---|---|
|  | State the term remaining | **Annual** | **Cisco Webex Events**<br>**170 West Tasman Dr**<br>**San Jose, CA 95134** |
|  | List the contract number of any government contract |  |  |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

002146

Debtor 1 **Highland Capital Management, L.P.**      Case number *(if known)* **19-34054-SGJ**

First Name       Middle Name       Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.33.** State what the contract or lease is for and the nature of the debtor's interest — **Pr Services**

    State the term remaining — **121 Days**

    List the contract number of any government contract

**Cision US Inc.**
**1 Prudential Plaza, 7th floor**
**130 E Randolph Street**
**Chicago, IL 60601**

**2.34.** State what the contract or lease is for and the nature of the debtor's interest — **Reference Portfolio Management Agreement**

    State the term remaining — **Termination Contingent**

    List the contract number of any government contract

**Citibank, N.A.**
**Attnetion: Doug Warren**
**390 Greenwich Street**
**Fourth Floor**
**New York, NY 10013**

**2.35.** State what the contract or lease is for and the nature of the debtor's interest — **Saas Solutions**

    State the term remaining — **295 Days**

    List the contract number of any government contract

**Clearwater Analytics LLC**
**777 W Main St**
**Ste 900**
**Boise, ID 83702**

**2.36.** State what the contract or lease is for and the nature of the debtor's interest — **Research**

    State the term remaining — **77 Days**

    List the contract number of any government contract

**Coleman Research**
**575 5th Ave 21st Floor**
**New York, NY 10017**

**2.37.** State what the contract or lease is for and the nature of the debtor's interest — **Research Service Credits**

    State the term remaining — **76 Days**

    List the contract number of any government contract

**Coleman Research Group, Inc.**
**575 5th Avenue**
**21st Floor**
**New York, NY 10017**

**2.38.** State what the contract or lease is for and the nature of the debtor's interest — **San Backup**

    State the term remaining — **Annual**

**Commvault Backup**
**1 Commvault Way**
**Tinton Falls, NJ 07724**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

002147

Debtor 1   **Highland Capital Management, L.P.**

First Name      Middle Name      Last Name

Case number *(if known)*   **19-34054-SGJ**

---

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any government contract: _____

---

| 2.39. | State what the contract or lease is for and the nature of the debtor's interest | **Avaya Maintenance** | |
|---|---|---|---|
| | State the term remaining | **Annual** | **Converge One** |
| | List the contract number of any government contract | _____ | **10900 Nesbitt Avenue South Bloomington, MN 55437** |

---

| 2.40. | State what the contract or lease is for and the nature of the debtor's interest | **Amended And Restated Advisory Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Cornerstone Healthcare Group Holding, Inc** |
| | List the contract number of any government contract | _____ | **2200 Ross Ave Ste. 5400 Dallas, TX 75201** |

---

| 2.41. | State what the contract or lease is for and the nature of the debtor's interest | **Office Lease** | |
|---|---|---|---|
| | State the term remaining | **927 Days** | **Crescent TC Investors, L.P.** |
| | List the contract number of any government contract | _____ | **200 Crescent Court Ste 250 Dallas, TX 75201** |

---

| 2.42. | State what the contract or lease is for and the nature of the debtor's interest | **Filing/Formation/Registered Agent** | |
|---|---|---|---|
| | State the term remaining | **N/A - As Needed** | **CT Corporation** |
| | List the contract number of any government contract | _____ | **1999 Bryan Street Ste 900 Dallas, TX 75201** |

---

| 2.43. | State what the contract or lease is for and the nature of the debtor's interest | **Emergency Backup It Support** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | **CVE technology** |
| | List the contract number of any government contract | _____ | **3000 E Plano Pkwy Plano, TX 75074** |

---

Debtor 1  **Highland Capital Management, L.P.**        Case number *(if known)*  **19-34054-SGJ**

First Name     Middle Name     Last Name

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.44. | State what the contract or lease is for and the nature of the debtor's interest | **Anti Virus Software** | |
|---|---|---|---|
| | State the term remaining | **Annual** | **Cylance**<br>**400 Spectrum Center Dr.**<br>**Suite 900**<br>**Irvine, CA 92618** |
| | List the contract number of any government contract | | |

| 2.45. | State what the contract or lease is for and the nature of the debtor's interest | **Compliance Information Service** | |
|---|---|---|---|
| | State the term remaining | **30 Day Termination** | **Debt Domain**<br>**295 Madison Ave**<br>**Ste 24**<br>**New York, NY 10017** |
| | List the contract number of any government contract | | |

| 2.46. | State what the contract or lease is for and the nature of the debtor's interest | **Cable News** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | **DirectTV**<br>**208 South Akard Street**<br>**Dallas, TX 75202** |
| | List the contract number of any government contract | | |

| 2.47. | State what the contract or lease is for and the nature of the debtor's interest | **Cobra Admin** | |
|---|---|---|---|
| | State the term remaining | **443 Days** | **Discovery Benefits Inc**<br>**4321 20th Ave. S.**<br>**Fargo, ND 58103** |
| | List the contract number of any government contract | | |

| 2.48. | State what the contract or lease is for and the nature of the debtor's interest | **2 Factor Authentication** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | **DUO Security**<br>**170 West Tasman Dr**<br>**San Jose, CA 95134** |
| | List the contract number of any government contract | | |

| 2.49. | State what the contract or lease is for and the nature of the debtor's interest | **Servicing Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Eastland CLO Ltd.**<br>**190 Elgin Avenue**<br>**George Town, Grand Cayman**<br>**KY1-9005, Cayman Islands** |
| | List the contract number of any | | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

002149

Debtor 1   **Highland Capital Management, L.P.**
      First Name     Middle Name     Last Name
      Case number *(if known)*   **19-34054-SGJ**

   **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  | | | |
|---|---|---|---|
| | | government contract | |

| 2.50. | State what the contract or lease is for and the nature of the debtor's interest | **Trading Cost Analytic Services** | |
| | State the term remaining | **30 Day Termination** | **Elkins McSherry**<br>**225 Liberty St**<br>**24th floor**<br>**New York, NY 10281** |
| | List the contract number of any government contract | | |

| 2.51. | State what the contract or lease is for and the nature of the debtor's interest | **Disaster Recovery Site** | |
| | State the term remaining | **3 Years** | **Evoque Data Center**<br>**250 Vesey Street 15th Floor**<br>**New York, NY 10281** |
| | List the contract number of any government contract | | |

| 2.52. | State what the contract or lease is for and the nature of the debtor's interest | **Load Balancers** | |
| | State the term remaining | **Annual** | **F5**<br>**801 5th Ave**<br>**Seattle, WA 98104** |
| | List the contract number of any government contract | | |

| 2.53. | State what the contract or lease is for and the nature of the debtor's interest | **Amended And Restated Shared Services Agreement** | |
| | State the term remaining | **Termination Contingent** | **Falcon E&P Opportunities GP, LLC**<br>**c/o PetroCap, LLC, Attention: Marc Manzo**<br>**2602 McKinney Avenue**<br>**Suite 400**<br>**Dallas, TX 75204** |
| | List the contract number of any government contract | | |

| 2.54. | State what the contract or lease is for and the nature of the debtor's interest | **Software** | |
| | State the term remaining | **169 Days** | **Financial Tracking**<br>**1111 East Putnam Ave**<br>**Ste 304**<br>**Riverside, CT 06878** |
| | List the contract number of any government contract | | |

| 2.55. | State what the contract or lease is for and the nature of the debtor's interest | **Pr Services** | **First Page Management LLC dba StatusLabs**<br>**151 South 1st**<br>**Ste 100**<br>**Austin, TX 78704** |

Debtor 1   **Highland Capital Management, L.P.**                                        Case number *(if known)*   **19-34054-SGJ**
           First Name          Middle Name          Last Name

**Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | State the term remaining | **16 Days** | |
| | List the contract number of any government contract | _____ | |

| 2.56. | State what the contract or lease is for and the nature of the debtor's interest | **Primary Data Center** | |
| | State the term remaining | **Monthly** | **Flexential** |
| | List the contract number of any government contract | _____ | **11900 East Cornell Avenue Building B, 3rd Floor Aurora, CO 80014** |

| 2.57. | State what the contract or lease is for and the nature of the debtor's interest | **Plant Maintenance** | |
| | State the term remaining | **166 Days** | **Four Seasons Plantscaping, LLC** |
| | List the contract number of any government contract | _____ | **PO Box 793429 Dallas, TX 75379** |

| 2.58. | State what the contract or lease is for and the nature of the debtor's interest | **Data Accessed Via Bloomberg Terminals** | |
| | State the term remaining | **290 Days** | **FT Interactive Date Corporation** |
| | List the contract number of any government contract | _____ | **22 Crosby Drive Bedford, MA 01730** |

| 2.59. | State what the contract or lease is for and the nature of the debtor's interest | **Expert Services** | |
| | State the term remaining | **N/A** | **FTI Consulting, Inc.** |
| | List the contract number of any government contract | _____ | **Three Times Square 10th floor NewYork, NY 10036** |

| 2.60. | State what the contract or lease is for and the nature of the debtor's interest | **Portfolio Management Agreement** | |
| | State the term remaining | **Termination Contingent** | **Gleneagles CLO, Ltd.** |
| | List the contract number of any government contract | _____ | **PO Box 1093 GT, Queensgate House South Church Street, George Town Grand Cayman, Cayman Islands** |

Debtor 1   **Highland Capital Management, L.P.**                                                    Case number *(if known)*   **19-34054-SGJ**
          First Name          Middle Name          Last Name

   **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.61. | State what the contract or lease is for and the nature of the debtor's interest | **Domain Registrations** | |
|---|---|---|---|
| | State the term remaining | **1 Year** | **GoDaddy**<br>**14455 N. Hayden Rd.**<br>**Ste. 219**<br>**Scottsdale, AZ 85260** |
| | List the contract number of any government contract | | |

| 2.62. | State what the contract or lease is for and the nature of the debtor's interest | **Corporate Wellness** | |
|---|---|---|---|
| | State the term remaining | **197 Days** | **Gold's Texas Holdings Group, Inc**<br>**4001 Maples Avenue**<br>**Ste 200**<br>**Dallas, TX 75219** |
| | List the contract number of any government contract | | |

| 2.63. | State what the contract or lease is for and the nature of the debtor's interest | **Investment Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **60 Day Termination Provision; Annual Autoextend Following Initial Term 12/31/2008** | **Governance Re Ltd.**<br>**Wellesley House North**<br>**2nd Floor, 90 Pitts Bay Road**<br>**Pembroke HM 08, Bermuda** |
| | List the contract number of any government contract | | |

| 2.64. | State what the contract or lease is for and the nature of the debtor's interest | **D&O policy** | |
|---|---|---|---|
| | State the term remaining | **75 days (to 12/31/2019)** | **Governance Re Ltd.**<br>**Wellesley House North,2nd Floor**<br>**90 Pitts Bay Road, Pembroke HM 08**<br>**Bermuda** |
| | List the contract number of any government contract | | |

| 2.65. | State what the contract or lease is for and the nature of the debtor's interest | **Amendment No. 1 To Servicing Agreement** | |
|---|---|---|---|
| | State the term remaining | **N/A** | **Grayson CLO Corp., et al**<br>**190 Elgin Avenue**<br>**George Town, Grand Cayman**<br>**KY1-9005, Cayman Islands** |
| | List the contract number of any government contract | | |

| 2.66. | State what the contract or lease is for and the nature of the debtor's interest | **Servicing Agreement** | **Grayson CLO Ltd.**<br>**190 Elgin Avenue**<br>**George Town, Grand Cayman**<br>**KY1-9005, Cayman Islands** |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

002152

Debtor 1   **Highland Capital Management, L.P.**

First Name          Middle Name          Last Name

Case number (*if known*)   **19-34054-SGJ**

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any government contract

| 2.67. | State what the contract or lease is for and the nature of the debtor's interest | **Servicing Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Greenbriar CLO, Ltd.**<br>**P.O. Box 1093GT, Queensgate House**<br>**South Church Street, George Town**<br>**Grand Cayman, Cayman Islands** |
| | List the contract number of any government contract | | |

| 2.68. | State what the contract or lease is for and the nature of the debtor's interest | **Compliance Testing** | |
|---|---|---|---|
| | State the term remaining | **95 Days** | **Greyline Solutions LLC**<br>**One Sansome Street**<br>**Suite 1895**<br>**San Francisco, CA 94104** |
| | List the contract number of any government contract | | |

| 2.69. | State what the contract or lease is for and the nature of the debtor's interest | **Food Ordering** | |
|---|---|---|---|
| | State the term remaining | **191 Days** | **GrubHub Holdings Inc.**<br>**111 W. Washington Street**<br>**Ste 2100**<br>**Chicago, IL 60602** |
| | List the contract number of any government contract | | |

| 2.70. | State what the contract or lease is for and the nature of the debtor's interest | **Gips Services** | |
|---|---|---|---|
| | State the term remaining | **43982** | **Guardian Performance Solutions, LLC**<br>**836 57th Street**<br>**Suite 408**<br>**Sacramento, CA 95819** |
| | List the contract number of any government contract | | |

| 2.71. | State what the contract or lease is for and the nature of the debtor's interest | **Data Sharing Platform** | |
|---|---|---|---|
| | State the term remaining | **306 Days** | **Harvest Exchange Corp**<br>**1200 Smith Street**<br>**Ste. 672**<br>**Houston, TX 77002** |
| | List the contract number of any government contract | | |

Debtor 1   **Highland Capital Management, L.P.**

First Name         Middle Name         Last Name

Case number *(if known)*   **19-34054-SGJ**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.72. | State what the contract or lease is for and the nature of the debtor's interest | **Online Research Portal** | |
|---|---|---|---|
| | State the term remaining | **5 business day termination; 3 month autorenewal after initial term of 03/31/2016** | **Hedgeye Risk Management, LLC**<br>**1 High Ridge Park**<br>**3rd Floor**<br>**Stamford, CT 06905** |
| | List the contract number of any government contract | | |

| 2.73. | State what the contract or lease is for and the nature of the debtor's interest | **Sub-Advisory Agreement** | |
|---|---|---|---|
| | State the term remaining | **30 Days With Additional Contingencies** | **Highland Capital Insurance Solutions, L.P.**<br>**Attention: General Counsel**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** |
| | List the contract number of any government contract | | |

| 2.74. | State what the contract or lease is for and the nature of the debtor's interest | **Shared Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **30 Day Termination Provision** | **Highland Capital Insurance Solutions, L.P.**<br>**Attention: General Counsel**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** |
| | List the contract number of any government contract | | |

| 2.75. | State what the contract or lease is for and the nature of the debtor's interest | **Second Amended And Restated Shared Service Agreement** | |
|---|---|---|---|
| | State the term remaining | **60 Day Termination Provision; Annual Autoextend Following Initial Term 2/8/2014** | **Highland Capital Management Fund Advisor LP**<br>**Attention: General Counsel**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** |
| | List the contract number of any government contract | | |

| 2.76. | State what the contract or lease is for and the nature of the debtor's interest | **Investment Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **60 Day Termination Provision; Annual Autoextend Following Initial Term 7/31/2007** | **Highland Capital Multi-Strategy Fund, L.P.**<br>**PO Box 309 Ugland House**<br>**Grand Cayman**<br>**KY1-1104, Cayman Islands** |
| | List the contract number of any government contract | | |

Debtor 1 **Highland Capital Management, L.P.**

First Name  Middle Name  Last Name

Case number *(if known)* **19-34054-SGJ**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.77. | State what the contract or lease is for and the nature of the debtor's interest | **Collateral Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Highland Credit Opportunities CDO Ltd.**<br>**190 Elgin Avenue**<br>**George Town, Grand Cayman**<br>**KY1-9005, Cayman Islands** |
| | List the contract number of any government contract | | |

| 2.78. | State what the contract or lease is for and the nature of the debtor's interest | **Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **90 Days With Additional Contingencies** | **Highland Credit Opportunities Japanese Feeder Sub-Trust**<br>**190 Elgin Avenue**<br>**George Town Grand Cayman**<br>**KY1-9005, Cayman Islands** |
| | List the contract number of any government contract | | |

| 2.79. | State what the contract or lease is for and the nature of the debtor's interest | **Service Agreement** | |
|---|---|---|---|
| | State the term remaining | **30 day termination notice** | **Paxstone Capital LLP**<br>**Attn: Kasper Kemp Hansen**<br>**483 Green Lane**<br>**London N13 4BS**<br>**UK** |
| | List the contract number of any government contract | | |

| 2.80. | State what the contract or lease is for and the nature of the debtor's interest | **Sub-Advisory Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Highland HCF Advisor, Ltd.**<br>**Attention: General Counsel**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** |
| | List the contract number of any government contract | | |

| 2.81. | State what the contract or lease is for and the nature of the debtor's interest | **Shared Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **30 Days** | **Highland HCF Advisor, Ltd.**<br>**Attention: General Counsel**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** |
| | List the contract number of any government contract | | |

| 2.82. | State what the contract or lease is for and the nature of the debtor's interest | **Collateral Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Highland Legacy Limited**<br>**c/o Maples and Calder, PO Box 309**<br>**Ugland House, South Church Street, Georg**<br>**Grand Cayman, Cayman Islands** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

002155

Debtor 1   **Highland Capital Management, L.P.**                                                    Case number *(if known)*   **19-34054-SGJ**
　　　　　First Name　　　Middle Name　　　Last Name

**Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

List the contract number of any
government contract _____

| | | |
|---|---|---|
| 2.83. | State what the contract or lease is for and the nature of the debtor's interest | **Investment Management Agreement** | |
| | State the term remaining | **Termination Contingent** | **Highland Loan Fund, Ltd., et al PO Box 309 Ugland House Grand Cayman KY1-1104, Cayman Islands** |
| | List the contract number of any government contract | _____ | |

| | | |
|---|---|---|
| 2.84. | State what the contract or lease is for and the nature of the debtor's interest | **Collateral Management Agreement** | |
| | State the term remaining | **Termination Contingent** | **Highland Loan Funding V Ltd. P.O. Box 1093GT, Queensgate House South Church Street, George Town Grand Cayman, Cayman Islands** |
| | List the contract number of any government contract | _____ | |

| | | |
|---|---|---|
| 2.85. | State what the contract or lease is for and the nature of the debtor's interest | **Third Amended And Restated Investment Management Agreement** | |
| | State the term remaining | **75 Day Termination; Annual Auto Renewal Following Initial Term 12/31/2014** | **Highland Multi Strategy Credit Fund, Ltd PO Box 309 Ugland House Grand Cayman KY1-1104, Cayman Islands** |
| | List the contract number of any government contract | _____ | |

| | | |
|---|---|---|
| 2.86. | State what the contract or lease is for and the nature of the debtor's interest | **Investment Management Agreement** | |
| | State the term remaining | **60  Day Termination; Annual Auto Renewal Following Initial Term 7/31/2007** | **Highland Multi Strategy Credit Fund, Ltd PO Box 309 Ugland House Grand Cayman KY1-1104, Cayman Islands** |
| | List the contract number of any government contract | _____ | |

| | | |
|---|---|---|
| 2.87. | State what the contract or lease is for and the nature of the debtor's interest | **Collateral Servicing Agreement** | |
| | State the term remaining | **Termination Contingent** | **Highland Park CDO I, Ltd. P.O. Box 1093GT, Queensgate House South Church Street, George Town Grand Cayman, Cayman Islands** |
| | List the contract number of any government contract | _____ | |

Debtor 1  **Highland Capital Management, L.P.**

    First Name            Middle Name           Last Name

Case number *(if known)*  **19-34054-SGJ**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.88. | State what the contract or lease is for and the nature of the debtor's interest | Amended And Restated Investment Management Agreement | |
|---|---|---|---|
| | State the term remaining | 90 Days With Additional Contingencies | Highland Prometheus Master Fund, L.P. c/o Maples and Calder, PO Box 309 Ugland House, South Church Street, Georg Grand Cayman, Cayman Islands |
| | List the contract number of any government contract | | |

| 2.89. | State what the contract or lease is for and the nature of the debtor's interest | Management Agreement | |
|---|---|---|---|
| | State the term remaining | Termination Contingent | Highland Restoration Capital Partners Offshore, L.P. PO Box 309 Ugland House Grand Cayman KY1-1104, Cayman Islands |
| | List the contract number of any government contract | | |

| 2.90. | State what the contract or lease is for and the nature of the debtor's interest | Investment Management Agreement | |
|---|---|---|---|
| | State the term remaining | 75 Days With Additional Contingencies | Highland Select Equity Master Fund, L.P. 31 Victoria Street Victoria House Hamilton HM10, Bermuda |
| | List the contract number of any government contract | | |

| 2.91. | State what the contract or lease is for and the nature of the debtor's interest | Oms Software | |
|---|---|---|---|
| | State the term remaining | Annual | IBM Websphere 1 New Orchard Road Armonk, NY 10504 |
| | List the contract number of any government contract | | |

| 2.92. | State what the contract or lease is for and the nature of the debtor's interest | Discovery Assistant | |
|---|---|---|---|
| | State the term remaining | 111 Days | ImageMAKER Development Inc Ste 102,416 - 6th Street New Westminster, BC, Canada V3L3B2 |
| | List the contract number of any government contract | | |

| 2.93. | State what the contract or lease is for and the nature of the debtor's interest | Software License Xto Zephyr | Informa Investment Solutions 4 Westchester Park Drive White Plain, NY 10604 |
|---|---|---|---|

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

002157

Debtor 1 **Highland Capital Management, L.P.**                                    Case number (*if known*)   **19-34054-SGJ**
　　　　　First Name　　　Middle Name　　　Last Name

| | |
|---|---|
| **Additional Page if You Have More Contracts or Leases** | |

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| State the term remaining **288 Days** | |
| List the contract number of any government contract _____ | |

| 2.94. | State what the contract or lease is for and the nature of the debtor's interest | **Style Advisor Software** | |
|---|---|---|---|
| | State the term remaining | **76 Days** | **Informa Investment Solutions** |
| | List the contract number of any government contract _____ | | **4 Westchester Park Drive** **White Plain, NY 10604** |

| 2.95. | State what the contract or lease is for and the nature of the debtor's interest | **Research Vendor** | |
|---|---|---|---|
| | State the term remaining | **228 Days** | **InsiderScore, LLC** **100 Thanet Circle** |
| | List the contract number of any government contract _____ | | **Suite 300** **Princeton, NJ 08540** |

| 2.96. | State what the contract or lease is for and the nature of the debtor's interest | **Data Warehouse Services** | |
|---|---|---|---|
| | State the term remaining | **Variable based on schedule** | **Interactive Data Pricing and Reference D** |
| | List the contract number of any government contract _____ | | **32 Crosby Drive** **Bedford, MA 01730** |

| 2.97. | State what the contract or lease is for and the nature of the debtor's interest | **License Deal Model Libraries** | |
|---|---|---|---|
| | State the term remaining | **350 Days** | **Intex Solutions, Inc.** **110 A Street** |
| | List the contract number of any government contract _____ | | **Needham, MA 02494** |

| 2.98. | State what the contract or lease is for and the nature of the debtor's interest | **Data Site** | |
|---|---|---|---|
| | State the term remaining | **Variable based on schedule** | **Intralinks Inc.** **150 East 42nd St** |
| | List the contract number of any government contract _____ | | **8th floor** **New York, NY 10017** |

Debtor 1  **Highland Capital Management, L.P.**                                    Case number *(if known)*   **19-34054-SGJ**
_____
First Name          Middle Name          Last Name

   **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.99. | State what the contract or lease is for and the nature of the debtor's interest | **Desktop Usb Monitoring** | |
|---|---|---|---|
| | State the term remaining | **Annual** | **Ivanti Security** |
| | List the contract number of any government contract | | **698 West 10000 South** |
| | | | **Jordan, UT 84095** |

| 2.100. | State what the contract or lease is for and the nature of the debtor's interest | **Amended And Restated Portfolio Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Jasper CLO Ltd.** |
| | List the contract number of any government contract | | **190 Elgin Avenue** |
| | | | **George Town, Grand Cayman** |
| | | | **KY1-9005, Cayman Islands** |

| 2.101. | State what the contract or lease is for and the nature of the debtor's interest | **Portfolio Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Liberty CLO Ltd.** |
| | List the contract number of any government contract | | **190 Elgin Avenue** |
| | | | **George Town, Grand Cayman** |
| | | | **KY1-9005, Cayman Islands** |

| 2.102. | State what the contract or lease is for and the nature of the debtor's interest | **Group Life Insurance** | |
|---|---|---|---|
| | State the term remaining | **406 Days** | **Liberty Life Assurance Company of Boston** |
| | List the contract number of any government contract | | **100 Liberty Way** |
| | | | **Dover, NH 03821** |

| 2.103. | State what the contract or lease is for and the nature of the debtor's interest | **Financial Institution Bond** | |
|---|---|---|---|
| | State the term remaining | **199 Days** | **Liberty Mutual Insurance Company** |
| | List the contract number of any government contract | | **175 Berkley St** |
| | | | **Boston, MA 02116** |

| 2.104. | State what the contract or lease is for and the nature of the debtor's interest | **Linkedin - Recruiting/Job Posting** | |
|---|---|---|---|
| | State the term remaining | **269 Days** | **LinkedIn Corporation** |
| | List the contract number of any | | **1000 West Maude Avenue** |
| | | | **Sunnyvale, CA 94085** |

Debtor 1   **Highland Capital Management, L.P.**                                    Case number *(if known)*   **19-34054-SGJ**

First Name          Middle Name          Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| government contract | |

| 2.105. | State what the contract or lease is for and the nature of the debtor's interest | **Investment Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Longhorn Credit Funding, LLC** |
| | List the contract number of any government contract | | **874 Walker Rd, Ste C** **Dover, DE 19904** |

| 2.106. | State what the contract or lease is for and the nature of the debtor's interest | **Amendment No. 1 To Investment Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **N/A** | **Longhorn Credit Funding, LLC** |
| | List the contract number of any government contract | | **874 Walker Rd, Ste C** **Dover, DE 19904** |

| 2.107. | State what the contract or lease is for and the nature of the debtor's interest | **Macroeconomic Research Services** | |
|---|---|---|---|
| | State the term remaining | **15 Days** | **MacroMavens** |
| | List the contract number of any government contract | | **180 W 20th Street** **Suite 1700** **New York, NY 10011** |

| 2.108. | State what the contract or lease is for and the nature of the debtor's interest | **Compliance Services** | |
|---|---|---|---|
| | State the term remaining | **One month termination** | **Maples Compliance Services (Cayman) Limit** **PO Box 1093, Queensgate House** |
| | List the contract number of any government contract | | **Grand Cayman, Cayman Islands** **KY1-1102** |

| 2.109. | State what the contract or lease is for and the nature of the debtor's interest | **Nav Calc And Distribution** | |
|---|---|---|---|
| | State the term remaining | **223 Days** | **Markit Equities Limited** **c.o Market Group Limited, Level 4** |
| | List the contract number of any government contract | | **Ropemaker Place, 25 Ropemaker Street** **London EC2Y9LY** |

| 2.110. | State what the contract or lease is for and the nature of the debtor's interest | **Data Services** | **Markit Group Limited / Markit North America** **2 More London Riverside** **London SE12AP** |
|---|---|---|---|

002160

Debtor 1   **Highland Capital Management, L.P.**          Case number *(if known)*   **19-34054-SGJ**

First Name        Middle Name        Last Name

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | | |
|---|---|---|
| State the term remaining | **60 day termination after initial term of 11/01/2021; variable based on schedules** | |
| List the contract number of any government contract | | |

| 2.111. | State what the contract or lease is for and the nature of the debtor's interest | **Software License** | |
|---|---|---|---|
| | State the term remaining | **746 Days** | **MarkitWSO Corporation**<br>**Three Lincoln Centre**<br>**5430 LBJ Freeway**<br>**Ste 800**<br>**Dallas, TX 75240** |
| | List the contract number of any government contract | | |

| 2.112. | State what the contract or lease is for and the nature of the debtor's interest | **Wso Software** | |
|---|---|---|---|
| | State the term remaining | **746 Days** | **MarkitWSO Corporation**<br>**Three Lincoln Centre**<br>**5430 LBJ Freeway Ste 800**<br>**Dallas, TX 75240** |
| | List the contract number of any government contract | | |

| 2.113. | State what the contract or lease is for and the nature of the debtor's interest | **401K Plan Admin** | |
|---|---|---|---|
| | State the term remaining | **47 Days** | **MBM Advisors, Inc.**<br>**440 Louisiana St**<br>**Suite 2500**<br>**Houston, TX 77002** |
| | List the contract number of any government contract | | |

| 2.114. | State what the contract or lease is for and the nature of the debtor's interest | **Comp Survey** | |
|---|---|---|---|
| | State the term remaining | **30 day termination** | **McLagan Partners Inc (Aon McLagan)**<br>**1600 Summer Street**<br>**Ste 601**<br>**Stamford, CT 06905** |
| | List the contract number of any government contract | | |

| 2.115. | State what the contract or lease is for and the nature of the debtor's interest | **Subscription To Creditflux News & Clo I-Data Services** | |
|---|---|---|---|
| | State the term remaining | **350 Days** | **Mergermarket (US) Limited**<br>**1501 Broadway**<br>**8th Floor**<br>**New York, NY 10036** |
| | List the contract number of any government contract | | |

002161

Debtor 1  **Highland Capital Management, L.P.**

First Name      Middle Name      Last Name               Case number (*if known*)   **19-34054-SGJ**

 **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

**2.116.** State what the contract or lease is for and the nature of the debtor's interest — **Subscription To Xtract Research**

State the term remaining — **45 Days**

List the contract number of any government contract

**Mergermarket (US) Limited**
**1501 Broadway**
**Suite 801**
**New York, NY 10036**

**2.117.** State what the contract or lease is for and the nature of the debtor's interest — **Term Life Insurance**

State the term remaining — **188 Days**

List the contract number of any government contract

**Metlife Investors USA Insurance Company**
**PO Box 13863**
**Philadelphia, PA 19101**

**2.118.** State what the contract or lease is for and the nature of the debtor's interest — **Ms Software Assurance**

State the term remaining — **3 Years**

List the contract number of any government contract

**Microsoft**
**One Microsoft Way**
**Redmond, WA 98052**

**2.119.** State what the contract or lease is for and the nature of the debtor's interest — **Creditview Corporate - Leveraged Finance (12 Users)**

State the term remaining — **74 Days**

List the contract number of any government contract

**Moody's Analytics, Inc.**
**7 World Trade Center**
**New York, NY 10007**

**2.120.** State what the contract or lease is for and the nature of the debtor's interest — **Software License**

State the term remaining — **259 Days**

List the contract number of any government contract

**Morningstar Inc.**
**22 W Washington St**
**Chicago, IL 60602**

**2.121.** State what the contract or lease is for and the nature of the debtor's interest — **Data License**

State the term remaining — **50 Days**

**MSCI Inc.**
**7 World Trade Center**
**250 Greenwich St, 49th floor**
**New York, NY 10007**

Debtor 1    **Highland Capital Management, L.P.**

First Name          Middle Name          Last Name

Case number (*if known*)    **19-34054-SGJ**

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

List the contract number of any government contract _____

| | | |
|---|---|---|
| 2.122. | State what the contract or lease is for and the nature of the debtor's interest | **Mailflow Monitoring** | |
| | State the term remaining | **Monthly** | **Mxtoolbox**<br>**12710 Research Blvd**<br>**Ste 225**<br>**Austin, TX 00225** |
| | List the contract number of any government contract _____ | | |
| 2.123. | State what the contract or lease is for and the nature of the debtor's interest | **San Maintenance** | |
| | State the term remaining | **3 Years** | **Netapp**<br>**1395 Crossman Ave**<br>**Sunnyvale, CA 94089** |
| | List the contract number of any government contract _____ | | |
| 2.124. | State what the contract or lease is for and the nature of the debtor's interest | **Third Amended And Restated Investment Advisory Agreement** | |
| | State the term remaining | **30 Day Termination; One Year Autoextend After Initial Term Of 8/31/2018** | **NexBank SSB**<br>**2515 McKinney Avenue**<br>**Suite 1100**<br>**Dallas, TX 75201** |
| | List the contract number of any government contract _____ | | |
| 2.125. | State what the contract or lease is for and the nature of the debtor's interest | **Sub-Servicing Agreement;Shared National Credit Program** | |
| | State the term remaining | **30 day termination; one year autorenwal after initial term of 1/1/2015, additional termination contingencies** | **NexBank, SSB**<br>**2515 McKinney Avenue**<br>**Suite 1100**<br>**Dallas, TX 75201** |
| | List the contract number of any government contract _____ | | |
| 2.126. | State what the contract or lease is for and the nature of the debtor's interest | **Sub-Advisory Agreement** | |
| | State the term remaining | **30 Days With Additional Contingencies** | **NexPoint Advisors, LP**<br>**200 Crescent Court**<br>**Ste. 700**<br>**Dallas, TX 75201** |
| | List the contract number of any | | |

002163

Debtor 1 **Highland Capital Management, L.P.**                                        Case number *(if known)* **19-34054-SGJ**

First Name          Middle Name          Last Name

<table>
<tr><td style="width:10%"></td><td></td></tr>
</table>

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| | | | |
|---|---|---|---|
| | government contract | | |
| **2.127.** | State what the contract or lease is for and the nature of the debtor's interest | **Amended And Restated Shared Services Agreement** | |
| | State the term remaining | **30 Days** | **NexPoint Advisors, LP<br>200 Crescent Court<br>Ste. 700<br>Dallas, TX 75201** |
| | List the contract number of any government contract | | |
| **2.128.** | State what the contract or lease is for and the nature of the debtor's interest | **Cloud Single Sign On** | |
| | State the term remaining | **Monthly** | **Onelogin<br>848 Battery Street<br>San Francisco, CA 94111** |
| | List the contract number of any government contract | | |
| **2.129.** | State what the contract or lease is for and the nature of the debtor's interest | **Rightfax Maintenance** | |
| | State the term remaining | **Annual** | **Opentext<br>275 Frank Tompa Drive<br>Waterloo, ON N2L 0A1<br>Canada** |
| | List the contract number of any government contract | | |
| **2.130.** | State what the contract or lease is for and the nature of the debtor's interest | **Oracle Owns Taleo Our Ats** | |
| | State the term remaining | **80 Days** | **Oracle America, Inc.<br>500 Oracle Parkway<br>Redwood Shores, CA 94065** |
| | List the contract number of any government contract | | |
| **2.131.** | State what the contract or lease is for and the nature of the debtor's interest | **Network Monitoring** | |
| | State the term remaining | **Annual** | **Paessler<br>Thurn-und-Taxis-Str. 14<br>90411 Nuremberg<br>Germany** |
| | List the contract number of any government contract | | |
| **2.132.** | State what the contract or lease is for and the nature of the debtor's interest | **Collateral Management Agreement** | **PAM Capital Funding, LP / Ranger Asset Management LP<br>c/o Maples and Calder, PO Box 309<br>Ugland House, South Church Street, Georg<br>Grand Cayman, Cayman Islands** |

002164

Debtor 1  **Highland Capital Management, L.P.**                               Case number (*if known*)   **19-34054-SGJ**

First Name          Middle Name          Last Name

| 2. List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| | State the term remaining | **Termination Contingent** | |
| | List the contract number of any government contract | | |

| | | |
|---|---|---|
| 2.133. | State what the contract or lease is for and the nature of the debtor's interest | **Collateral Management Agreement** |
| | State the term remaining | **Termination Contingent** |
| | List the contract number of any government contract | |

**PamCo Cayman Ltd. / Ranger Asset Management LP c/o Maples and Calder, PO Box 309 Ugland House, South Church Street, Georg Grand Cayman, Cayman Islands**

| | | |
|---|---|---|
| 2.134. | State what the contract or lease is for and the nature of the debtor's interest | **Payroll Services** |
| | State the term remaining | **N/A** |
| | List the contract number of any government contract | |

**Paylocity Corporation 3850 N. Wilke Rd. Arlington Heights, IL 60004**

| | | |
|---|---|---|
| 2.135. | State what the contract or lease is for and the nature of the debtor's interest | **401Kplan Auditor Erisa Cpa** |
| | State the term remaining | **Perpetuity** |
| | List the contract number of any government contract | |

**Payne & Smith, LLC 5952 Royal Lane Ste 158 Dallas, TX 75230**

| | | |
|---|---|---|
| 2.136. | State what the contract or lease is for and the nature of the debtor's interest | **Investment Management Agreement** |
| | State the term remaining | **75 Days With Additional Contingencies** |
| | List the contract number of any government contract | |

**PCMG Trading Partners XXIII, L.P. 1209 Orange Street Wilmington, DE 19801**

| | | |
|---|---|---|
| 2.137. | State what the contract or lease is for and the nature of the debtor's interest | **Investment Management Agreement** |
| | State the term remaining | **Termination Contingent** |
| | List the contract number of any government contract | |

**PensionDanmark Pensionsforsikringsakties Langelinie Alle 43 2100 Copenhagen Attention: Head of Legal Denmark**

Debtor 1  **Highland Capital Management, L.P.**
First Name | Middle Name | Last Name

Case number *(if known)*  **19-34054-SGJ**

  **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.138. | State what the contract or lease is for and the nature of the debtor's interest | **Amendment No. 1 To Investment Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **N/A** | **PensionDanmark Pensionsforsikringsakties**<br>**Langelinie Alle 43**<br>**2100 Copenhagen**<br>**Attention: Head of Legal**<br>**Denmark** |
| | List the contract number of any government contract | | |

| 2.139. | State what the contract or lease is for and the nature of the debtor's interest | **Amended And Restated Administrative Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **PetroCap Partners II GP, LLC**<br>**Attention: William L. Britain**<br>**2602 McKinney Avenue**<br>**Suite 400**<br>**Dallas, TX 75204** |
| | List the contract number of any government contract | | |

| 2.140. | State what the contract or lease is for and the nature of the debtor's interest | **Mail Meter** | |
|---|---|---|---|
| | State the term remaining | **60 day termination; one year autorenewal after intial term of 09/09/14** | **Pitney Bowes Global Financial Services**<br>**PO Box 371874**<br>**Pittsburgh, PA 15250** |
| | List the contract number of any government contract | | |

| 2.141. | State what the contract or lease is for and the nature of the debtor's interest | **Media Services** | |
|---|---|---|---|
| | State the term remaining | **106 Days** | **PR Newswire Association, LLC**<br>**602 Plaza**<br>**Three Harborside Financial Center**<br>**Jersey City, NJ 07311** |
| | List the contract number of any government contract | | |

| 2.142. | State what the contract or lease is for and the nature of the debtor's interest | **Actuarial Valuation Retirement Plan** | |
|---|---|---|---|
| | State the term remaining | **Project Based** | **PricewaterhouseCoopers LLP**<br>**One North Wacker**<br>**Chicago, IL 60606** |
| | List the contract number of any government contract | | |

| 2.143. | State what the contract or lease is for and the nature of the debtor's interest | **Second Amended And Restated Back Office Shared Services And Administration Agreement** | **Rand Advisors, LLC / Atlas IDF LP, et al**<br>**Attn John Honis**<br>**87 Railroad Place**<br>**Ste 403**<br>**Saratoga Springs, NY 12866** |
|---|---|---|---|
| | State the term remaining | **30 Day Termination;** | |

002166

Debtor 1  **Highland Capital Management, L.P.**                                      Case number *(if known)*  **19-34054-SGJ**

     First Name       Middle Name       Last Name

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

|  | **One Year Autorenwal After Initial Term Of 12/24/2016, Additional Termination Contingencies** | |
| List the contract number of any government contract | _____ | |

| 2.144. | State what the contract or lease is for and the nature of the debtor's interest | **Linux Maintenance** | |
| | State the term remaining | **Annual** | **Red Hat** |
| | List the contract number of any government contract | _____ | **100 East Davie Street**<br>**Raleigh, NC 27601** |

| 2.145. | State what the contract or lease is for and the nature of the debtor's interest | **Servicing Agreement** | |
| | State the term remaining | **Termination Contingent** | **Red River CLO Ltd.**<br>**190 Elgin Avenue**<br>**George Town Grand Cayman** |
| | List the contract number of any government contract | _____ | **KY1-9005, Cayman Islands** |

| 2.146. | State what the contract or lease is for and the nature of the debtor's interest | **Amendment No. 1 To Servicing Agreement** | |
| | State the term remaining | **N/A** | **Red River CLO Ltd., et al**<br>**190 Elgin Avenue**<br>**George Town, Grand Cayman** |
| | List the contract number of any government contract | _____ | **KY1-9005, Cayman Islands** |

| 2.147. | State what the contract or lease is for and the nature of the debtor's interest | **Subscription Services, Reorg Americas** | |
| | State the term remaining | **289 Days** | **Reorg Research, Inc.**<br>**11 East 26th Street**<br>**12th Floor** |
| | List the contract number of any government contract | _____ | **New York, NY 10010** |

| 2.148. | State what the contract or lease is for and the nature of the debtor's interest | **Servicing Agreement** | |
| | State the term remaining | **Termination Contingent** | **Rockwall CDO II Ltd.**<br>**P.O. Box 1093GT, Queensgate House**<br>**South Church Street, George Town** |
| | List the contract number of any government contract | _____ | **Grand Cayman, Cayman Islands** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com         Best Case Bankruptcy

002167

Debtor 1 **Highland Capital Management, L.P.**
First Name     Middle Name     Last Name

Case number *(if known)*    **19-34054-SGJ**

### Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.149. | State what the contract or lease is for and the nature of the debtor's interest | **Interim Collateral Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Rockwall CDO Ltd.**<br>**P.O. Box 1093GT, Queensgate House**<br>**South Church Street, George Town**<br>**Grand Cayman, Cayman Islands** |
| | List the contract number of any government contract | | |

| 2.150. | State what the contract or lease is for and the nature of the debtor's interest | **Servicing Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Rockwall CDO Ltd.**<br>**P.O. Box 1093GT, Queensgate House**<br>**South Church Street, George Town**<br>**Grand Cayman, Cayman Islands** |
| | List the contract number of any government contract | | |

| 2.151. | State what the contract or lease is for and the nature of the debtor's interest | **Amendment No. 1 To Servicing Agreement** | |
|---|---|---|---|
| | State the term remaining | **N/A** | **Rockwall CDO Ltd., et al**<br>**P.O. Box 1093GT, Queensgate House**<br>**South Church Street, George Town**<br>**Grand Cayman, Cayman Islands** |
| | List the contract number of any government contract | | |

| 2.152. | State what the contract or lease is for and the nature of the debtor's interest | **Advisory Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Romacorp, Inc.**<br>**1700 Alma Drive**<br>**Ste. 400**<br>**Plano, TX 75075** |
| | List the contract number of any government contract | | |

| 2.153. | State what the contract or lease is for and the nature of the debtor's interest | **Research Services** | |
|---|---|---|---|
| | State the term remaining | **442 Days** | **S&P Global Market Intelligence LLC**<br>**55 Water Street**<br>**New York, NY 10041** |
| | List the contract number of any government contract | | |

| 2.154. | State what the contract or lease is for and the nature of the debtor's interest | **Subadvisor Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **SALI Fund Management, LLC**<br>**6836 Austin Center Blvd**<br>**Ste. 320**<br>**Austin, TX 78731** |

002168

Debtor 1  **Highland Capital Management, L.P.**

First Name        Middle Name        Last Name

Case number (*if known*)   **19-34054-SGJ**

### Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

|  |  |  |
|---|---|---|
| | List the contract number of any government contract | |

| 2.155. | State what the contract or lease is for and the nature of the debtor's interest | **It Services** | |
|---|---|---|---|
| | State the term remaining | **717 Days** | **Siepe Services, LLC** |
| | List the contract number of any government contract | | **2200 Ross Ave, Ste 4700E** **Dallas, TX 75201** |

| 2.156. | State what the contract or lease is for and the nature of the debtor's interest | **Ftp Server Maintenance** | |
|---|---|---|---|
| | State the term remaining | **Annual** | **Solarwinds** |
| | List the contract number of any government contract | | **7171 Southwest Parkway** **Bldg 400** **Austin, TX 78735** |

| 2.157. | State what the contract or lease is for and the nature of the debtor's interest | **Portfolio Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Southfork CLO Ltd.** **P.O. Box 1093GT, Queensgate House** |
| | List the contract number of any government contract | | **South Church Street, George Town** **Grand Cayman, Cayman Islands** |

| 2.158. | State what the contract or lease is for and the nature of the debtor's interest | **Research Services** | |
|---|---|---|---|
| | State the term remaining | **320 Days** | **Spin-off Advisors, LLC** **1327 W. Washington Blvd** |
| | List the contract number of any government contract | | **Suite 4-G** **Chicago, IL 60607** |

| 2.159. | State what the contract or lease is for and the nature of the debtor's interest | **Finders Fee For Acquisitions/Investments** | |
|---|---|---|---|
| | State the term remaining | **Perpetuity** | **Springboard Network LLC** |
| | List the contract number of any government contract | | **9900 Spectrum Drive** **Austin, TX 78717** |

Debtor 1   **Highland Capital Management, L.P.**

First Name      Middle Name      Last Name          Case number *(if known)*   **19-34054-SGJ**

 **Additional Page if You Have More Contracts or Leases**

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

**2.160.** State what the contract or lease is for and the nature of the debtor's interest — **Fourth Admended And Restated Agreement Of Limited Partnership Of Highland Capital Management, L.P.**

State the term remaining — **Perpetuity**

List the contract number of any government contract

**Strand Advisors Inc.**
**1209 Orange Street**
**Wilmington, DE 19801**

---

**2.161.** State what the contract or lease is for and the nature of the debtor's interest — **Research Service**

State the term remaining — **442 Days**

List the contract number of any government contract

**Strategas Securities, LLC**
**52 Vanderbilt Ave**
**8th Floor**
**New York, NY 10017**

---

**2.162.** State what the contract or lease is for and the nature of the debtor's interest — **Servicing Agreement**

State the term remaining — **Termination Contingent**

List the contract number of any government contract

**Stratford CLO Ltd.**
**P.O. Box 1093GT, Queensgate House**
**South Church Street, George Town**
**Grand Cayman, Cayman Islands**

---

**2.163.** State what the contract or lease is for and the nature of the debtor's interest — **Management Services Agreement**

State the term remaining — **Contingent**

List the contract number of any government contract

**Structural and Steel Products, Inc**
**3001 W Pafford Street**
**Fort Worth, TX 76110**

---

**2.164.** State what the contract or lease is for and the nature of the debtor's interest — **Electronic Trading Services**

State the term remaining — **30 day termination**

List the contract number of any government contract

**SunTrust Robinson Humphrey Inc.**
**SunTrust Robinson Humphrey**
**Attn: Documentation**
**711 5th Avenue 14th Fl.**
**New York, NY 10022**

---

**2.165.** State what the contract or lease is for and the nature of the debtor's interest — **Symphony License**

State the term remaining — **205 Days**

**Symphony Communication Services LLC**
**1117 S California Ave**
**Palo Alto, CA 94304**

---

Debtor 1   **Highland Capital Management, L.P.**

First Name       Middle Name       Last Name

Case number (*if known*)   **19-34054-SGJ**

| | |
|---|---|
| ◼ | **Additional Page if You Have More Contracts or Leases** |

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

List the contract number of any government contract _____

| | | |
|---|---|---|
| 2.166. | State what the contract or lease is for and the nature of the debtor's interest | **Electronic Access** |
| | State the term remaining | **Perpetuity** |
| | List the contract number of any government contract _____ | **The Bank of New York Mellon Trust Company**<br>**601 Travis, 16th floor**<br>**Houston, TX 77002** |
| 2.167. | State what the contract or lease is for and the nature of the debtor's interest | **Tax Research Software** |
| | State the term remaining | **139 Days** |
| | List the contract number of any government contract _____ | **The Bureau of National Affairs, Inc**<br>**1801 South Bell Street**<br>**Arlington, VA 22202** |
| 2.168. | State what the contract or lease is for and the nature of the debtor's interest | **Disability Income Insurance** |
| | State the term remaining | **258 Days** |
| | List the contract number of any government contract _____ | **The Standard**<br>**1100 SW Sixth Ave**<br>**Portland, OR 97204** |
| 2.169. | State what the contract or lease is for and the nature of the debtor's interest | **Westlaw Services** |
| | State the term remaining | **60 day termination and one year autorenewal; after initial term of 11/29/2021** |
| | List the contract number of any government contract _____ | **Thompson Reuters**<br>**610 Opperman Drive**<br>**PO Box 64833**<br>**Eagan, MN 55123** |
| 2.170. | State what the contract or lease is for and the nature of the debtor's interest | **Tax Research Software** |
| | State the term remaining | **224 Days** |
| | List the contract number of any government contract _____ | **Thomson Reuters**<br>**PO Box 71687**<br>**Chicago, IL 60694** |

Debtor 1  **Highland Capital Management, L.P.**                                                     Case number *(if known)*  **19-34054-SGJ**

First Name                Middle Name              Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.171. | State what the contract or lease is for and the nature of the debtor's interest | **Dns Server Backup** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | |
| | List the contract number of any government contract | | **Total Uptime Tech**<br>**Post Office Box 2228**<br>**Skyland, NC 28776** |

| 2.172. | State what the contract or lease is for and the nature of the debtor's interest | **Amended And Restated Advisory Services Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | |
| | List the contract number of any government contract | | **Trussway Holdings, Inc.**<br>**9411 Alcorn**<br>**Houston, TX 77093** |

| 2.173. | State what the contract or lease is for and the nature of the debtor's interest | **Mail Gateway** | |
|---|---|---|---|
| | State the term remaining | **Annual** | |
| | List the contract number of any government contract | | **Trustwave**<br>**70 W Madison St**<br>**Ste. 1050**<br>**Chicago, IL 01050** |

| 2.174. | State what the contract or lease is for and the nature of the debtor's interest | **Mailing** | |
|---|---|---|---|
| | State the term remaining | **1007 Days** | |
| | List the contract number of any government contract | | **United Parcel Service, Inc**<br>**55 Glenlake Parkway**<br>**Atlanta, GA 30328** |

| 2.175. | State what the contract or lease is for and the nature of the debtor's interest | **Reference Portfolio Management Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | |
| | List the contract number of any government contract | | **Valhalla CLO, Ltd.**<br>**c/o Intertrust SPV Cayman Limited**<br>**190 Elgin Ave, George Town Grand Cayman**<br>**Cayman Islands** |

| 2.176. | State what the contract or lease is for and the nature of the debtor's interest | **Server Backups, Tape** | |
|---|---|---|---|
| | State the term remaining | **Annual** | |
| | List the contract number of any | | **Veritas Backup Exec**<br>**2625 Augustine Drive**<br>**Santa Clara, CA 95054** |

002172

Debtor 1  **Highland Capital Management, L.P.**

First Name    Middle Name    Last Name

Case number (if known)    **19-34054-SGJ**

---

<div style="background:#3b0a3b;"> </div> **Additional Page if You Have More Contracts or Leases**

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| | government contract | |
|---|---|---|

---

| 2.177. | State what the contract or lease is for and the nature of the debtor's interest | **Mail Archive Software** | |
|---|---|---|---|
| | State the term remaining | **Annual** | **Veritas Enterprise Vault** |
| | List the contract number of any government contract | | **2625 Augustine Drive** |
| | | | **Santa Clara, CA 95054** |

---

| 2.178. | State what the contract or lease is for and the nature of the debtor's interest | **Print Services** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | **Verity Group** |
| | List the contract number of any government contract | | **885 E Collins Blvd** |
| | | | **Ste. 102** |
| | | | **Richardson, TX 75081** |

---

| 2.179. | State what the contract or lease is for and the nature of the debtor's interest | **Servicing Agreement** | |
|---|---|---|---|
| | State the term remaining | **Termination Contingent** | **Westchester CLO Ltd.** |
| | List the contract number of any government contract | | **P.O. Box 1093GT, Queensgate House** |
| | | | **South Church Street, George Town** |
| | | | **Grand Cayman, Cayman Islands** |

---

| 2.180. | State what the contract or lease is for and the nature of the debtor's interest | **Tax Return Software; File Document Storage Software** | |
|---|---|---|---|
| | State the term remaining | **37 Days** | **Wolters Kluwer** |
| | List the contract number of any government contract | | **1999 Bryan Street** |
| | | | **Ste 900** |
| | | | **Dallas, TX 75201** |

---

| 2.181. | State what the contract or lease is for and the nature of the debtor's interest | **Public Website Hosting** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | **WP Engine** |
| | List the contract number of any government contract | | **504 Lavaca Street** |
| | | | **Suite 1000** |
| | | | **Austin, TX 78701** |

---

| 2.182. | State what the contract or lease is for and the nature of the debtor's interest | **Print Services** | **Xerox** |
|---|---|---|---|
| | | | **45 Glover Ave** |
| | | | **Norwalk, CT 06856** |

---

002173

Debtor 1  **Highland Capital Management, L.P.**     Case number *(if known)* **19-34054-SGJ**

First Name    Middle Name    Last Name

## Additional Page if You Have More Contracts or Leases

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| State the term remaining    **Monthly** | |
| List the contract number of any government contract | |

| 2.183. | State what the contract or lease is for and the nature of the debtor's interest | **Wan Line** | |
|---|---|---|---|
| | State the term remaining | **2 Years** | **Zayo Group**<br>1821 30th Street<br>Unit A<br>Boulder, CO 80301 |
| | List the contract number of any government contract | | |

| 2.184. | State what the contract or lease is for and the nature of the debtor's interest | **Helpdesk Platform** | |
|---|---|---|---|
| | State the term remaining | **Monthly** | **Zendesk**<br>1019 Market St<br>San Francisco, CA 94103 |
| | List the contract number of any government contract | | |

| 2.185. | State what the contract or lease is for and the nature of the debtor's interest | **Web Proxy** | |
|---|---|---|---|
| | State the term remaining | **Annual** | **Zscaler**<br>110 Rose Orchard Way<br>San Jose, CA 95134 |
| | List the contract number of any government contract | | |

002174

**Fill in this information to identify the case:**

Debtor name    **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF TEXAS

Case number (if known)    **19-34054-SGJ**

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| | *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|---|
| | **Name** | **Mailing Address** | **Name** | *Check all schedules that apply:* |
| 2.1 | **Acis CLO 2014-3 Ltd.** | **P.O. Box 1093, Boundary Hall, Cricket Sq George Town, Grand Cayman KY1-1102 Cayman Islands** | **Lynn Pinker Cox & Hurst, LLP** | ☐ D _____ <br> ■ E/F   **3.82** <br> ☐ G _____ |
| 2.2 | **Acis CLO 2014-3 Ltd.** | **P.O. Box 1093, Boundary Hall, Cricket Sq George Town, Grand Cayman KY1-1102 Cayman Islands** | **Foley Gardere** | ☐ D _____ <br> ■ E/F   **3.56** <br> ☐ G _____ |
| 2.3 | **Highland CLO 2014-3R LLC** | **300 Crescent Ct Suite 700 Dallas, TX 75201** | **Cole Schotz** | ☐ D _____ <br> ■ E/F   **3.35** <br> ☐ G _____ |
| 2.4 | **Highland CLO 2014-3R Ltd.** | **300 Crescent Ct. Suite 700 Dallas, TX 75201** | **Cole Schotz** | ☐ D _____ <br> ■ E/F   **3.35** <br> ☐ G _____ |

002175

| Debtor | **Highland Capital Management, L.P.** | | | Case number _(if known)_ | **19-34054-SGJ** |
|--------|----------------|--|--|--|--|

**Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | | |
|--|--|--|--|--|--|
| 2.5 | Highland CLO Funding, Ltd. | First Floor, Dorey Court, Admiral Park St. Peter Port, Guernsey GY1 6HJ Channel Islands | Foley Gardere | ☐ D _____  ■ E/F ___3.56___  ☐ G _____ | |
| 2.6 | Highland CLO Holding, Ltd. | PO Box 309 Ugland House S. Church St. George Town, Grand Cayman KY1-1004 Cayman Island | Foley Gardere | ☐ D _____  ■ E/F ___3.56___  ☐ G _____ | |
| 2.7 | Highland CLO Holding, Ltd. | PO Box 309 Ugland House S. Church St. George Town, Grand Cayman KY1-1004 Cayman Island | Lynn Pinker Cox & Hurst, LLP | ☐ D _____  ■ E/F ___3.82___  ☐ G _____ | |
| 2.8 | Highland CLO Management GP, LLC | 1209 Orange St Wilmington, DE 19801 | Cole Schotz | ☐ D _____  ■ E/F ___3.35___  ☐ G _____ | |
| 2.9 | Highland CLO Management Holdings, L.P. | PO Box 309 Ugland House Grand Cayman KY1-1104 Cayman Islands | Cole Schotz | ☐ D _____  ■ E/F ___3.35___  ☐ G _____ | |
| 2.10 | Highland CLO Management, LLC | 1209 Orange St. Wilmington, DE 19801 | Cole Schotz | ☐ D _____  ■ E/F ___3.35___  ☐ G _____ | |
| 2.11 | Highland CLO Management, Ltd. | PO Box 309 Ugland House, S. Church St. George Town, Grand Cayman KY1-1004 Cayman Islands | Foley Gardere | ☐ D _____  ■ E/F ___3.56___  ☐ G _____ | |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

002176

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |

▮ **Additional Page to List More Codebtors**

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| 2.12 | **Highland CLO Management, Ltd.** | PO Box 309 Ugland House, S. Church St. George Town, Grand Cayman KY1-1004 Cayman Islands | **Lynn Pinker Cox & Hurst, LLP** | ☐ D ____<br>▮ E/F  **3.82**<br>☐ G ____ |
| 2.13 | **Highland CLO Trust** | PO Box 309 Ugland House George Town, Grand Cayman KY1-1104 Cayman Islands | **Cole Schotz** | ☐ D ____<br>▮ E/F  **3.35**<br>☐ G ____ |
| 2.14 | **Highland Credit Opportunities CDO, LP** | 1209 Orange St Wilmington, DE 19801 | **Reid Collins & Tsai** | ☐ D ____<br>▮ E/F  **3.96**<br>☐ G ____ |
| 2.15 | **Highland Credit Strategies Master FundLP** | 31 Victoria St Hamilton HM10 | **Reid Collins & Tsai** | ☐ D ____<br>▮ E/F  **3.96**<br>☐ G ____ |
| 2.16 | **Highland Crusader Offshore Partners, L.P** | Magnolia House Building, 1st Floor 119 Front Street Hamilton HM 12 | **Reid Collins & Tsai** | ☐ D ____<br>▮ E/F  **3.96**<br>☐ G ____ |
| 2.17 | **Highland Employee Retention Assets, LLC** | 1209 Orange St Wilmington, DE 19801 | **DLA Piper LLP (US)** | ☐ D ____<br>▮ E/F  **3.48**<br>☐ G ____ |
| 2.18 | **Highland ERA Management, LLC** | 1209 Orange St. Wilmington, DE 19801 | **DLA Piper LLP (US)** | ☐ D ____<br>▮ E/F  **3.48**<br>☐ G ____ |

| Debtor | **Highland Capital Management, L.P.** | | Case number *(if known)* | **19-34054-SGJ** |

---

**Additional Page to List More Codebtors**

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| | Column 1: **Codebtor** | | Column 2: **Creditor** | |
|---|---|---|---|---|
| 2.19 | Highland HCF Advisor, Ltd. | PO Box 309 Ugland House S. Church St. George Town, Grand Cayman KY1-1004 Cayman Island | Cole Schotz | ☐ D _____ ■ E/F ___3.35___ ☐ G _____ |
| 2.20 | Highland HCF Advisor, Ltd. | PO Box 309 Ugland House S. Church St. George Town, Grand Cayman KY1-1004 Cayman Island | Foley Gardere | ☐ D _____ ■ E/F ___3.56___ ☐ G _____ |
| 2.21 | Highland HCF Advisor, Ltd. | PO Box 309 Ugland House S. Church St. George Town, Grand Cayman KY1-1004 Cayman Island | Lynn Pinker Cox & Hurst, LLP | ☐ D _____ ■ E/F ___3.82___ ☐ G _____ |
| 2.22 | James Dondero | 300 Crescent Ct. Suite 700 Dallas, TX 75201 | DLA Piper LLP (US) | ☐ D _____ ■ E/F ___3.48___ ☐ G _____ |
| 2.23 | NexBank, SSB | 2515 McKinney Ave #1100 Dallas, TX 75201 | Stinson Leonard Street LLP | ☐ D _____ ■ E/F ___3.105___ ☐ G _____ |
| 2.24 | Strand Advisors, Inc. | 1209 Orange St. Wilmington, DE 19801 | Reid Collins & Tsai | ☐ D _____ ■ E/F ___3.96___ ☐ G _____ |

**Fill in this information to identify the case:**

Debtor name   **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF TEXAS

Case number (if known)   **19-34054-SGJ**

☐ Check if this is an
amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ■ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ■ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ■ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ■ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ■ *Schedule H: Codebtors* (Official Form 206H)
- ■ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **December 13, 2019**      X _____

Signature of individual signing on behalf of debtor

Bradley Sharp

Printed name

Chief Restructuring Officer

Position or relationship to debtor

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                                          Best Case Bankruptcy

002179

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
|  | § |  |
| Debtor. | § |  |
|  | § |  |

### GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODS, AND DISCLAIMER REGARDING DEBTOR'S SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENT OF FINANCIAL AFFAIRS

Highland Capital Management, L.P. (the "Debtor") submits its Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "SoFA") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"). The Debtor, with the assistance of its advisors and management, prepared the Schedules and SoFA in accordance with section 521 title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These Global Notes and Statement of Limitations, Methods, and Disclaimer Regarding the Debtor's Schedules and SoFA (collectively, the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of the Schedules and SoFA. These Global Notes should be referred to, and reviewed in connection with any review of the Schedules and SoFA.[2]

The Schedules and SoFA have been prepared by the Debtor with the assistance and under the direction of the Debtor's proposed Chief Restructuring Officer and additional personnel at Development Specialists, Inc. (collectively, the "CRO") and are unaudited and subject to further review and potential adjustment and amendment. In preparing the Schedules and SoFA, the CRO relied on financial data derived from the Debtor's books and records that was available at the time of preparation. The CRO has made reasonable efforts to ensure the accuracy and completeness of such financial information, however, subsequent information or discovery of other relevant facts may result in material changes to the Schedules and SoFA and inadvertent errors, omissions, or inaccuracies may exist. The Debtor reserves all rights to amend or supplement its Schedules and SoFA.

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] These Global Notes are in addition to any specific notes contained in the Debtor's Schedules or SoFA. The fact that the Debtor has prepared a "general note" with respect to any of the Schedules and SoFA and not to others should not be interpreted as a decision by the Debtor to exclude the applicability of such general note to any of the Debtor's remaining Schedules and SoFA, as appropriate.

1

002180

**Reservation of Rights.**  The Debtor reserves all rights to amend the SoFA and Schedules in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."  Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other applicable non-bankruptcy laws.

**Description of the Case and "As Is" Information Date.**  On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief with the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") under Chapter 11 of the Bankruptcy Code.  The Debtor is managing its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On December 4, 2019, the Delaware Bankruptcy Court entered an Order transferring this case to the Bankruptcy Court [Docket No. 1].

Asset information in the Schedules reflects the Debtor's best estimate of asset values as of the Petition Date, unless otherwise noted.  No independent valuation has been obtained.

**Basis of Presentation.**  The Schedules and SoFA do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile to any financial statements otherwise prepared and/or distributed by the Debtor.

Although these Schedules and SoFA may, at times, incorporate information prepared in accordance with GAAP, the Schedules and SoFA neither purport to represent nor reconcile to financial statements prepared and/or distributed by the Debtor in accordance with GAAP or otherwise.  Moreover, given, among other things, the valuation and nature of certain liabilities, to the extent that the Debtor shows more assets than liabilities, this is not a conclusion that the Debtor was solvent at the Petition Date.  Likewise, to the extent that the Debtor shows more liabilities than assets, this is not a conclusion that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

**Estimates.**  To timely close the books and records of the Debtor, the CRO must make certain estimates and assumptions that affect the reported amounts of assets and liabilities and reported revenue and expenses.  The Debtor reserves all rights to amend the reported amounts of assets, liabilities, revenue, and expenses to reflect changes in those estimates and assumptions.

**Confidentiality**.  There may be instances within the Schedules and SoFA where names, addresses, or amounts have been left blank.  Due to the nature of an agreement between the Debtor and the third party, concerns of confidentiality, or concerns for the privacy of an individual, the Debtor may have deemed it appropriate and necessary to avoid listing such names, addresses, and amounts.

**Intercompany Claims.** Any receivables and payables between the Debtor and affiliated or related entities in this case (each an "Intercompany Receivable" or "Intercompany Payable" and, collectively, the "Intercompany Claims") are reported as assets on Schedule B or liabilities on Schedule E and Schedule F. These Intercompany Claims include the following components, among others: 1) loans to affiliates or related entities, 2) accounts payable and payroll disbursements made out of an affiliate's or related entity's bank accounts on behalf of the Debtor, 3) centrally billed expenses, 4) corporate expense allocations, and 5) accounting for trade and other intercompany transactions. These Intercompany Claims may or may not result in allowed or enforceable claims by or against the Debtor, and by listing these claims the Debtor is not indicating a conclusion that the Intercompany Claims are enforceable. Intercompany Claims may also be subject to set off, recoupment, and netting not reflected in the Schedules. In situations where there is not an enforceable claim, the assets and/or liabilities of the Debtor may be greater or lesser than the amounts stated herein. All rights to amend intercompany Claims in the Schedules and SoFA are reserved.

The Debtor has listed the intercompany payables as unsecured claims on Schedule F. The Debtor reserves its rights to later change the characterization, classification, categorization, or designation of such items.

**Insiders.** For purposes of the Schedules and SoFA, the Debtor defines "insider" pursuant to section 101(31) of the Bankruptcy Code. Payments to insiders are set forth on Question 3.c. of the SoFA.

Persons listed as "insiders" have been included for informational purposes only. The Debtor did not take any position with respect to whether such individual could successfully argue that he or she is not an "insider" under applicable law, including without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose. Inclusion of any party in the Schedules and SoFA as an insider does not constitute an admission that such party is an insider or a waiver of such party's right to dispute insider status.

**Excluded Accruals and GAAP Entries.** The Debtor's balance sheet reflects liabilities recognized in accordance with GAAP; however, not all such liabilities would result in a claim against the Debtor. Certain liabilities (including but not limited to certain reserves, deferred charges, and future contractual obligations) have not been included in the Debtor's Schedules. Other immaterial assets and liabilities may also have been excluded.

**Classification and Claim Descriptions**. Any failure to designate a claim on the Schedules as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent" or "unliquidated." The Debtor reserves the right to dispute, or to assert offsets or defenses to, any claim reflected on its Schedules as to amount, liability or classification or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."

Listing a claim (i) in Schedule D as "secured," (ii) in Schedule E as "priority" or (iii) in Schedule F as "unsecured nonpriority," or listing a contract in Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant or a waiver of the Debtor's right to recharacterize or reclassify such claim or contract.

3

002182

Moreover, the Debtor reserves all rights to amend the SoFA and Schedules, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other relevant non-bankruptcy laws.

**Credits and Adjustments.** The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtor's books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtor. The Debtor reserves all of its rights respecting such credits, allowances or other adjustments.

**Setoffs.** The Debtor may incur setoffs from third parties in its business. Setoffs in the ordinary course can result from various routine transactions, including intercompany transactions, pricing discrepancies, warranty claims and other disputes between the Debtor and third parties. Certain of these constitute normal setoffs consistent with the ordinary course of business in the Debtor's industry. In such instances, such ordinary course setoffs are excluded from the Debtor's responses to Question 13 of the SoFA. The Debtor reserves all rights to enforce or challenge, as the case may be, any setoffs that have been or may be asserted.

**Specific Notes.** These general notes are in addition to the specific notes set forth below or in the related Statement and Schedules hereinafter.

## General Disclaimer

The Debtor has prepared the Schedules and the SoFA based on the information reflected in the Debtor's books and records. However, inasmuch as the Debtor's books and records have not been audited or formally closed and evaluated for proper cut-off on the Petition Date, the Debtor cannot warrant the absolute accuracy of these documents. The Debtor has made a diligent effort to complete these documents accurately and completely. To the extent additional information becomes available, the Debtor will amend and supplement the Schedules and SoFA.

## Specific Schedules Disclosures

a.  **Schedule A/B, Part 4 - Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.** Certain ownership interests in subsidiaries have been listed in Schedule A/B, Part 4, at their book value on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors. Fair value of such interests may differ significantly from their net book value. Further, for investments listed at fair value, many of the Debtor's assets are not exchange traded and are fair valued utilizing unobservable

inputs, historical information, and significant and/or subjective estimates. As a result the liquidity and ultimately realized value of such investments may differ materially from the fair value listed on the schedule.

b.   **Schedule A/B, Part 7 - Office Furniture, Fixtures, and Equipment; and Collectibles**.  Dollar amounts are presented net of accumulated depreciation and other adjustments.

c.   **Schedule A/B, Part 11 - All Other Assets**.  Dollar amounts are presented net of impairments and other adjustments. Debtor has reflected "unknown" for value of its interests in various other assets. While the face value of the notes receivable is included, the current value of these as well as the other assets has not been determined and may differ materially.

Additionally, the Debtor may receive refunds, income tax refunds or other sales tax refunds at various times throughout its fiscal year.  As of the Petition Date, however, certain of these amounts are unknown to the Debtor, and accordingly, may not be listed in Schedule A/B.

***Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.***  In the ordinary course of its business, the Debtor may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, or refunds with its customers and suppliers.  Additionally, the Debtor may be party to pending litigation in which the Debtor has asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant.  Because certain of these claims are unknown to the Debtor and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

d.   **Schedule D - Creditors Who Have Claims Secured by Property**.  The Debtor reserves its rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D.  Moreover, although the Debtor has scheduled claims of various creditors as secured claims, the Debtor reserves all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

The Debtor has not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.  Although there are multiple parties that hold a portion of the debt included in the secured

facilities, only the administrative agents have been listed for purposes of Schedule D.

e.     **Schedule E/F - Creditors Who Have Unsecured Claims.**

*Part 1 - Creditors with Priority Unsecured Claims*.  Pursuant to the *Order (I) Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation, Reimbursable Business Expenses, and Employee Benefit Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (11) Granting Related Relief* [Docket No. 39] (the "Wage Order"), the Debtor received authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business. The Debtor believes that any non-insider employee claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority claim, which were due and payable at the time of the Petition Date have been or will be satisfied as permitted pursuant to the Wage Order.  The Debtor filed the *Motion of the Debtor for Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations under Employee Bonus Plans and Granting Related Relief* [Docket No. 177] pursuant to which the Debtor seeks authority to pay and honor certain prepetition bonus programs.  Employee claims related to these programs are shown in the aggregate amounts in Schedule E/F for privacy reasons.  Additional information is available by appropriate request to the Debtor.  The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtor that such claim or any portion thereof is entitled to priority status.

*Part 2 - Creditors with Nonpriority Unsecured Claims*.  The liabilities identified in Schedule E/F, Part 2, are derived from the Debtor's books and records.  The Debtor made a reasonable attempt to set forth its unsecured obligations, although the actual amount of claims against the Debtor may vary from those liabilities represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

Schedule E/F, Part 2 reflects liabilities based on the Debtor's books and records.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtor.  The amounts for these potential claims are listed as "unknown" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.  Additionally, the amounts of certain litigation claims may be estimates based on the allegations asserted by the litigation counterparty, and do not constitute an admission by the Debtor with respect to either liability for, or the amount of, such claims.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases.  Such prepetition amounts, however,

may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts and unexpired leases, if any, that may be or have been rejected.

As of the time of filing of the Schedules and Statements, the Debtor had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtor reserves its rights to amend Schedules D and E/F if and as it receive such invoices.

f.   **Schedule G - Executory Contracts and Unexpired Leases**. While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtor hereby reserves all of its rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth separately on Schedule G. In addition, the Debtor may have entered into various other types of agreements in the ordinary course of its business, such as supplemental agreements, amendments, and letter agreement, which documents may not be set forth in Schedule G.

Certain of the agreements listed on Schedule G may have expired or terminated pursuant to their terms, but are listed on Schedule G in an abundance of caution.

The Debtor reserves all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtor as to the validity of any such contract. The Debtor reserves the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or

7

002186

unexpired lease. The Debtor's rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

8

D. Michael Lynn
State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
Clay M. Taylor
State Bar I.D. No. 24033261
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

**ATTORNEYS FOR JAMES DONDERO**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | **Case No. 19-34054** |
| **L.P.,** | § | |
| | § | |
| Debtor. | § | **Chapter 11** |

## JAMES DONDERO'S WITNESS AND EXHIBIT LIST

James Dondero ("Dondero"), a creditor, indirect equity security holder, and party in interest in the above-captioned bankruptcy case, hereby files this Witness and Exhibit List for the hearing to consider confirmation of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472], currently set to commence during the week of February 1, 2021. In support thereof, Dondero respectfully shows as follows:

**A.     Documents that Dondero may use as exhibits:**

| Dondero Exhibit No. | Description | Offered | Objection | Admitted by Agreement | Admitted |
|---|---|---|---|---|---|
| 1. | Fifth Amended Plan of Reorganization [Docket No. 1472] | | | | |
| 2. | Disclosure Statement for Fifth Amended Plan of Reorganization [Docket No. 1473] | | | | |
| 3. | Initial Plan Supplement [Docket No. 1389] | | | | |
| 4. | Second Plan Supplement [Docket No. 1606] | | | | |
| 5. | Third Plan Supplement [Docket No. 1656] | | | | |
| 6. | Email from Michael Lynn to the Independent Board dated November 14, 2020 | | | | |
| 7. | Email from Michael Lynn to Debtor's counsel and Independent Board dated November 16, 2020 | | | | |
| 8. | Debtor's November 2020 Monthly Operating Report [Docket No. 1710] | | | | |
| 9. | Email from Clay Taylor to Debtor's counsel regarding confirmation and document requests, dated January 20, 2021 | | | | |
| 10. | Email response from John Morris to Clay Taylor regarding confirmation and document requests, dated January 21, 2021 | | | | |
| 11. | Email from Clay Taylor to John Morris regarding confirmation and document requests, dated January 21, 2021 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 12. | Email from Clay Taylor to David Neier regarding subpoena to testify directed to Jean Paul Sevilla, dated January 21, 2021 | | | | |
| 13. | Email from Bryan Assink to David Neier with subpoena to J.P. Sevilla, dated January 21, 2021 | | | | |
| 14. | Email from David Neier to Bryan Assink and Clay Taylor regarding accepting service of subpoena to Sevilla, dated January 21, 2021 | | | | |
| 15. | Dondero's Notice of Service of Discovery on the Debtor [Docket Nos. 1789 and 1789-1] | | | | |
| 16. | Notice of Subpoena to Jean Paul Sevilla [Docket No. 1790 and 1790-1] | | | | |
| 17. | *Fifteenth Monthly Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP as Counsel to the Debtor for the Period from December 1, 2020 through December 31, 2020* [Docket No. 1771] | | | | |
| 18. | Transcript or excerpts from deposition of James Seery to be conducted on January 25, 2021 | | | | |
| | Any document or pleading filed in the above-captioned bankruptcy case | | | | |
| | Any exhibit necessary for impeachment or rebuttal purposes | | | | |
| | Any and all documents identified or offered by any other party | | | | |

Dondero reserves the right to amend or supplement this Exhibit List should he determine that any other document may be helpful to the trier of fact, whether in his case in chief or rebuttal, including with respect to any modifications made to the Debtor's Plan after the filing of this list.

**B.      Witnesses that Dondero may call to testify:**

    1.      James P. Seery, Jr.;

    2.      Jean Paul Sevilla;

    3.      John Dubel;

    4.      Any and all other witnesses identified or called by any other party; and

    5.      Any witness necessary for rebuttal.

Dondero reserves the right to amend or supplement this Witness List should he determine that any other witness may be helpful to the trier of fact, whether in his case in chief or rebuttal, including with respect to any modifications made to the Debtor's Plan after the filing of this list.

Dated: January 22, 2021                    Respectfully submitted,

                                        */s/ Bryan C. Assink*
                                        D. Michael Lynn
                                        State Bar I.D. No. 12736500
                                        John Y. Bonds, III
                                        State Bar I.D. No. 02589100
                                        Clay M. Taylor
                                        State Bar I.D. No. 24033261
                                        Bryan C. Assink
                                        State Bar I.D. No. 24089009
                                        BONDS ELLIS EPPICH SCHAFER JONES LLP
                                        420 Throckmorton Street, Suite 1000
                                        Fort Worth, Texas 76102
                                        (817) 405-6900 telephone
                                        (817) 405-6902 facsimile
                                        Email: michael.lynn@bondsellis.com
                                        Email: john@bondsellis.com
                                        Email: clay.taylor@bondsellis.com
                                        Email: bryan.assink@bondsellis.com

                                        **ATTORNEYS FOR JAMES DONDERO**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on January 22, 2021, a true and correct copies of the foregoing document and all identified exhibits were served via the Court's CM/ECF system on all parties requesting or consenting to such service in this case.

/s/ Bryan C. Assink
Bryan C. Assink

002192

Docket #1472 Date Filed: 11/24/2020

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
           ikharasch@pszjlaw.com
           gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
           ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

1934054201124000000000001

Dondero Ex. 15

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ...............................................1

   A.   Rules of Interpretation, Computation of Time and Governing Law.....................1

   B.   Defined Terms ..................................................................................2

ARTICLE II. ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS.................16

   A.   Administrative Expense Claims........................................................16

   B.   Professional Fee Claims...................................................................17

   C.   Priority Tax Claims.........................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ............................................................18

   A.   Summary.......................................................................................18

   B.   Summary of Classification and Treatment of Classified Claims and Equity Interests ............................................................................18

   C.   Elimination of Vacant Classes ..........................................................18

   D.   Impaired/Voting Classes.................................................................19

   E.   Unimpaired/Non-Voting Classes......................................................19

   F.   Impaired/Non-Voting Classes..........................................................19

   G.   Cramdown....................................................................................19

   H.   Classification and Treatment of Claims and Equity Interests.............................19

   I.   Special Provision Governing Unimpaired Claims.................................24

   J.   Subordinated Claims......................................................................24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN .....................................24

   A.   Summary......................................................................................24

   B.   The Claimant Trust ........................................................................25

   *1.*   *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.*....................................................................................25

   *2.*   *Claimant Trust Oversight Committee* ..............................................26

002194

**Page**

*3.*      *Purpose of the Claimant Trust.* ...................................................................27

*4.*      *Purpose of the Litigation Sub-Trust.* ...........................................................27

*5.*      *Claimant Trust Agreement and Litigation Sub-Trust Agreement.* .....................28

*6.*      *Compensation and Duties of Trustees.* ........................................................29

*7.*      *Cooperation of Debtor and Reorganized Debtor.* ...........................................29

*8.*      *United States Federal Income Tax Treatment of the Claimant Trust.* ...............30

*9.*      *Tax Reporting.* .........................................................................................30

*10.*     *Claimant Trust Assets.* ..............................................................................30

*11.*     *Claimant Trust Expenses.* ...........................................................................31

*12.*     *Trust Distributions to Claimant Trust Beneficiaries.* ......................................31

*13.*     *Cash Investments.* .....................................................................................31

*14.*     *Dissolution of the Claimant Trust and Litigation Sub-Trust.* ...........................31

C.      The Reorganized Debtor ............................................................................32

*1.*      *Corporate Existence* ..................................................................................32

*2.*      *Cancellation of Equity Interests and Release* ...............................................32

*3.*      *Issuance of New Partnership Interests* .........................................................32

*4.*      *Management of the Reorganized Debtor* .......................................................32

*5.*      *Vesting of Assets in the Reorganized Debtor* ................................................33

*6.*      *Purpose of the Reorganized Debtor* .............................................................33

*7.*      *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer
of Reorganized Debtor Assets* ....................................................................33

D.      Company Action .......................................................................................34

E.      Release of Liens, Claims and Equity Interests...............................................34

F.      Cancellation of Notes, Certificates and Instruments.......................................35

G.      Cancellation of Existing Instruments Governing Security Interests...................35

002195

**Page**

| | | |
|---|---|---|
| H. | Control Provisions | 35 |
| I. | Treatment of Vacant Classes | 36 |
| J. | Plan Documents | 36 |
| K. | Highland Capital Management, L.P. Retirement Plan and Trust | 36 |

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................................................................................... 37

| | | |
|---|---|---|
| A. | Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases | 37 |
| B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 38 |
| C. | Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases | 38 |

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................. 39

| | | |
|---|---|---|
| A. | Dates of Distributions | 39 |
| B. | Distribution Agent | 40 |
| C. | Cash Distributions | 40 |
| D. | Disputed Claims Reserve | 40 |
| E. | Distributions from the Disputed Claims Reserve | 40 |
| F. | Rounding of Payments | 41 |
| G. | *De Minimis* Distribution | 41 |
| H. | Distributions on Account of Allowed Claims | 41 |
| I. | General Distribution Procedures | 41 |
| J. | Address for Delivery of Distributions | 41 |
| K. | Undeliverable Distributions and Unclaimed Property | 42 |
| L. | Withholding Taxes | 42 |
| M. | Setoffs | 42 |

002196

**Page**

N.  Surrender of Cancelled Instruments or Securities ............................... 43

O.  Lost, Stolen, Mutilated or Destroyed Securities ................................ 43

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS ........................... 43

A.  Filing of Proofs of Claim ................................................. 43

B.  Disputed Claims ......................................................... 43

C.  Procedures Regarding Disputed Claims or Disputed Equity Interests .............. 44

D.  Allowance of Claims and Equity Interests ................................... 44

1.  *Allowance of Claims* ................................................... 44

2.  *Estimation* ........................................................... 44

3.  *Disallowance of Claims* ................................................ 45

ARTICLE VIII. EFFECTIVENESS OF THIS PLAN .................................. 45

A.  Conditions Precedent to the Effective Date .................................. 45

B.  Waiver of Conditions .................................................... 46

C.  Effect of Non-Occurrence of Conditions to Effectiveness ....................... 47

D.  Dissolution of the Committee .............................................. 47

ARTICLE IX. EXCULPATION, INJUNCTION AND RELATED PROVISIONS ................ 47

A.  General ................................................................ 47

B.  Discharge of Claims ..................................................... 47

C.  Exculpation ............................................................ 48

D.  Releases by the Debtor ................................................... 48

E.  Preservation of Rights of Action ........................................... 50

1.  *Maintenance of Causes of Action* ........................................ 50

2.  *Preservation of All Causes of Action Not Expressly Settled or Released* .......... 50

F.  Injunction .............................................................. 50

002197

**Page**

G.  Term of Injunctions or Stays ................................................................. 51

H.  Continuance of January 9 Order ........................................................... 52

ARTICLE X. BINDING NATURE OF PLAN .................................................. 52

ARTICLE XI. RETENTION OF JURISDICTION ............................................ 52

ARTICLE XII. MISCELLANEOUS PROVISIONS ........................................... 54

A.  Payment of Statutory Fees and Filing of Reports ............................... 54

B.  Modification of Plan ............................................................................ 55

C.  Revocation of Plan ............................................................................... 55

D.  Obligations Not Changed ..................................................................... 55

E.  Entire Agreement ................................................................................. 55

F.  Closing of Chapter 11 Case ................................................................. 55

G.  Successors and Assigns ....................................................................... 56

H.  Reservation of Rights .......................................................................... 56

I.  Further Assurances .............................................................................. 56

J.  Severability .......................................................................................... 57

K.  Service of Documents .......................................................................... 57

L.  Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code ...................................................................... 58

M.  Governing Law ..................................................................................... 58

N.  Tax Reporting and Compliance ........................................................... 58

O.  Exhibits and Schedules ........................................................................ 59

P.  Controlling Document .......................................................................... 59

002198

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

HIGHLAND CAPITAL MANAGEMENT, L.P., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), proposes the following chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor. Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of this Plan. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtor's history, business, results of operations, historical financial information, projections and assets, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that may be Filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Documents. All such Exhibits and Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the other provisions of this Plan, and in accordance with the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

If this Plan cannot be confirmed, for any reason, then subject to the terms set forth herein, this Plan may be revoked.

### ARTICLE I.
### RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

**A.** **Rules of Interpretation, Computation of Time and Governing Law**

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Documents" are references to Articles, Sections, Exhibits and Plan Documents hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns;

002199

(h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1. "*Acis*" means collectively Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

2. "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, and that have not already been paid by the Debtor during the Chapter 11 Case and a Professional Fee Claim.

3. "*Administrative Expense Claims Bar Date*" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, 5:00 p.m. (prevailing Central Time) on such date that is forty-five days after the Effective Date.

4. "*Administrative Expense Claims Objection Deadline*" means, with respect to any Administrative Expense Claim, the later of (a) ninety (90) days after the Effective Date and (b) sixty (60) days after the timely Filing of the applicable request for payment of such Administrative Expense Claim; *provided, however,* that the Administrative Expense Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

5. "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code and also includes any other Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such affiliate.  For the purposes of this definition, the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

6. "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan: (a) any Claim that is evidenced by a Proof of Claim that has been timely Filed by the Bar Date, or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code or a Final Order; (b) a Claim that is listed in the Schedules as not contingent, not

2

002200

unliquidated, and not disputed and for which no Proof of Claim has been timely filed; (c) a Claim Allowed pursuant to the Plan or an order of the Bankruptcy Court that is not stayed pending appeal; or (d) a Claim that is not Disputed (including for which a Proof of Claim has been timely filed in a liquidated and noncontingent amount that has not been objected to by the Claims Objection Deadline or as to which any such objection has been overruled by Final Order); *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed as set forth above.

7. "*Allowed Claim or Equity Interest*" means a Claim or an Equity Interest of the type that has been Allowed.

8. "*Assets*" means all of the rights, titles, and interest of the Debtor, Reorganized Debtor, or Claimant Trust, in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, the Debtor's books and records, and the Causes of Action.

9. "*Available Cash*" means any Cash in excess of the amount needed for the Claimant Trust and Reorganized Debtor to maintain business operations as determined in the sole discretion of the Claimant Trustee.

10. "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510, 544, 545, and 547-553 of the Bankruptcy Code or under similar state or federal statutes and common law, including fraudulent transfer laws

11. "*Ballot*" means the form(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

12. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

13. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Case.

14. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in each case as amended from time to time and as applicable to the Chapter 11 Case.

15. "*Bar Date*" means the applicable deadlines set by the Bankruptcy Court for the filing of Proofs of Claim against the Debtor as set forth in the Bar Date Order, which deadlines may be or have been extended for certain Claimants by order of the Bankruptcy Court.

002201

16. "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof* [D.I. 488].

17. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19. "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes, without limitation,: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) the Avoidance Actions, and (g) the Estate Claims.  The Causes of Action include, without limitation, the Causes of Action belonging to the Debtor's Estate listed on the schedule of Causes of Action to be filed with the Plan Supplement.

20. "*CEO/CRO*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer.

21. "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Delaware Bankruptcy Court and transferred to the Bankruptcy Court on December 4, 2019, and styled *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj-11.

22. "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

23. "*Claims Objection Deadline*" means the date that is 180 days after the Confirmation Date; *provided, however,* the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

24. "*Claimant Trust*" means the trust established for the benefit of the Claimant Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Claimant Trust Agreement.

4

002202

25. "*Claimant Trust Agreement*" means the agreement Filed in the Plan Supplement establishing and delineating the terms and conditions of the Claimant Trust.

26. "*Claimant Trust Assets*" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC. For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

27. "*Claimant Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, including, upon Allowance, Disputed General Unsecured Claims and Disputed Subordinated Claims that become Allowed following the Effective Date, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, post-petition interest from the Petition Date at the Federal Judgment Rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement and all Disputed Claims in Class 8 and Class 9 have been resolved, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

28. "*Claimant Trustee*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer, or such other Person identified in the Plan Supplement who will act as the trustee of the Claimant Trust in accordance with the Plan, the Confirmation Order, and Claimant Trust Agreement or any replacement trustee pursuant to (and in accordance with) the Claimant Trust Agreement. The Claimant Trustee shall be responsible for, among other things, monetizing the Estate's investment assets, resolving Claims (other than those Claims assigned to the Litigation Sub-Trust for resolution), and, as the sole officer of New GP LLC, winding down the Reorganized Debtor's business operations.

29. "*Claimant Trust Expenses*" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustees on account of administration of the Claimant Trust, including any reasonable administrative fees and expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, reasonable escrow expenses, and other expenses.

30. "*Claimant Trust Interests*" means the non-transferable interests in the Claimant Trust that are issued to the Claimant Trust Beneficiaries pursuant to this Plan; *provided*, *however*, Holders of Class A Limited Partnership Interests, Class B Limited Partnership Interests, and Class C Limited Partnership Interests will not be deemed to hold Claimant Trust Interests unless and until the Contingent Claimant Trust Interests distributed to such Holders vest in accordance with the terms of this Plan and the Claimant Trust Agreement.

002203

31. "*Claimant Trust Oversight Committee*" means the committee of five Persons established pursuant to ARTICLE IV of this Plan to oversee the Claimant Trustee's performance of its duties and otherwise serve the functions described in this Plan and the Claimant Trust Agreement.

32. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to section 1122(a) of the Bankruptcy Code.

33. "*Class A Limited Partnership Interest*" means the Class A Limited Partnership Interests as defined in the Limited Partnership Agreement held by The Dugaboy Investment Trust, Mark and Pamela Okada Family Trust – Exempt Trust 2, Mark and Pamela Okada – Exempt Descendants' Trust, and Mark Kiyoshi Okada, and the General Partner Interest.

34. "*Class B Limited Partnership Interest*" means the Class B Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

35. "*Class B/C Limited Partnership Interests*" means, collectively, the Class B Limited Partnership and Class C Limited Partnership Interests.

36. "*Class C Limited Partnership Interest*" means the Class C Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

37. "*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1) on October 29, 2019 [D.I. 65], consisting of (i) the Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, (iii) UBS, and (iv) Acis.

38. "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

39. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

40. "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

41. "*Convenience Claim*" means any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or any General Unsecured Claim that makes the Convenience Class Election. For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims.

42. "*Convenience Claim Pool*" means the $13,150,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein. Any Cash remaining in the Convenience Claim Pool after all

002204

distributions on account of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

43. "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.

44. "*Contingent Claimant Trust Interests*" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full, plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, all accrued and unpaid post-petition interest from the Petition Date at the Federal Judgment Rate and all Disputed Claims in Class 8 and Class 9 have been resolved. As set forth in the Claimant Trust Agreement, the Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.

45. "*Debtor*" means Highland Capital Management, L.P. in its capacity as debtor and debtor in possession in the Chapter 11 Case.

46. "*Delaware Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

47. "*Disclosure Statement*" means that certain *Disclosure Statement for Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

48. "*Disputed*" means with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

49. "*Disputed Claims Reserve*" means the appropriate reserve(s) or account(s) to be established on the Initial Distribution Date and maintained by the Claimant Trustee for distributions on account of Disputed Claims that may subsequently become an Allowed Claim.

50. "*Disputed Claims Reserve Amount*" means, for purposes of determining the Disputed Claims Reserve, the Cash that would have otherwise been distributed to a Holder of a Disputed Claim at the time any distributions of Cash are made to the Holders of Allowed Claims. The amount of the Disputed Claim upon which the Disputed Claims Reserve is calculated shall be: (a) the amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or Reorganized Debtor, as applicable; (c) the amount ordered by the Bankruptcy Court if it enters an order disallowing, in whole or in part, a Disputed Claim; or (d) as otherwise ordered by the Bankruptcy Court, including an order estimating the Disputed Claim.

7

51. "*Distribution Agent*" means the Claimant Trustee, or any party designated by the Claimant Trustee to serve as distribution agent under this Plan.

52. "*Distribution Date*" means the date or dates determined by the Reorganized Debtor or the Claimant Trustee, as applicable, on or after the Initial Distribution Date upon which the Distribution Agent shall make distributions to holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

53. "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Effective Date or such later date determined by the Bankruptcy Court.

54. "*Effective Date*" means the Business Day that this Plan becomes effective as provided in ARTICLE VIII hereof.

55. "*Employees*" means the employees of the Debtor set forth in the Plan Supplement.

56. "*Entity*" means any "entity" as defined in section 101(15) of the Bankruptcy Code and also includes any Person or any other entity.

57. "*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding partnership interests, shares, of stock or limited company interests, the Class A Limited Partnership Interests, the Class B Limited Partnership Interests, and the Class C Limited Partnership Interests.

58. "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

59. "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

60. "*Estate Claims*" has the meaning given to it in <u>Exhibit A</u> to the *Notice of Final Term Sheet* [D.I. 354].

61. "*Exculpated Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the

002206

Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

62. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

63. "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

64. "*Federal Judgment Rate*" means the post-judgment interest rate set forth in 28 U.S.C. § 1961 as of the Effective Date.

65. "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

66. "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

67. "*Frontier Secured Claim*" means the loan from Frontier State Bank to the Debtor in the principal amount of $7,879,688.00 made pursuant to that certain First Amended and Restated Loan Agreement, dated March 29, 2018.

68. "*General Partner Interest*" means the Class A Limited Partnership Interest held by Strand, as the Debtor's general partner.

69. "*General Unsecured Claim*" means any prepetition Claim against the Debtor that is not Secured and is not a/an:  (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; or (e) Convenience Claim.

70. "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

71. "*GUC Election*" means the option provided to each Holder of a Convenience Claim on their Ballot to elect to receive the treatment provided to General Unsecured Claims.

002207

72. "*Holder*" means an Entity holding a Claim against, or Equity Interest in, the Debtor.

73. "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

74. "*Independent Directors*" means John S. Dubel, James P. Seery, Jr., and Russell Nelms, the independent directors of Strand appointed on January 9, 2020, and any additional or replacement directors of Strand appointed after January 9, 2020, but prior to the Effective Date.

75. "*Initial Distribution Date*" means, subject to the "Treatment" sections in ARTICLE III hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

76. "*Insurance Policies*" means all insurance policies maintained by the Debtor as of the Petition Date.

77. "*Jefferies Secured Claim*" means any Claim in favor of Jefferies, LLC, arising under that certain Prime Brokerage Customer Agreement, dated May 24, 2013, between the Debtor and Jefferies, LLC, that is secured by the assets, if any, maintained in the prime brokerage account created by such Prime Brokerage Customer Agreement.

78. "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

79. "*Limited Partnership Agreement*" means that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, as amended.

80. "*Litigation Sub-Trust*" means the sub-trust established within the Claimant Trust or as a wholly –owned subsidiary of the Claimant Trust on the Effective Date in each case in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement and Claimant Trust Agreement. As set forth in the Litigation Sub-Trust Agreement, the Litigation Sub-Trust shall hold the Claimant Trust Assets that are Estate Claims.

81. "*Litigation Sub-Trust Agreement*" means the agreement filed in the Plan Supplement establishing and delineating the terms and conditions of the Litigation Sub-Trust.

82. "*Litigation Trustee*" means the trustee appointed by the Committee and reasonably acceptable to the Debtor who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

10

83. "*Managed Funds*" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan.

84. "*New Frontier Note*" means that promissory note to be provided to the Allowed Holders of Class 2 Claims under this Plan and any other documents or security agreements securing the obligations thereunder.

85. "*New GP LLC*" means a limited liability company incorporated in the State of Delaware pursuant to the New GP LLC Documents to serve as the general partner of the Reorganized Debtor on the Effective Date.

86. "*New GP LLC Documents*" means the charter, operating agreement, and other formational documents of New GP LLC.

87. "*Ordinary Course Professionals Order*" means that certain *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course* [D.I. 176].

88. "*Other Unsecured Claim*" means any Secured Claim other than the Jefferies Secured Claim and the Frontier Secured Claim.

89. "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, individual, corporation, company, general or limited partnership, limited liability company, unincorporated organization firm, trust, estate, business trust, association, joint stock company, joint venture, government, governmental agency, Governmental Unit or any subdivision thereof, the United States Trustee, or any other entity, whether acting in an individual, fiduciary or other capacity.

90. "*Petition Date*" means October 16, 2019.

91. "*Plan*" means this *Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, including the Exhibits and the Plan Documents and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

92. "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Allowed Equity Interests under this Plan.

93. "*Plan Documents*" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

94. "*Plan Supplement*" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the form of

11

002209

Claimant Trust Agreement, (ii) the forms of New GP LLC Documents, (iii) the form of Reorganized Limited Partnership Agreement, (iv) the Sub-Servicer Agreement (if applicable), (v) the identity of the initial members of the Claimant Trust Oversight Committee, (vi) the form of Litigation Sub-Trust Agreement; (vii) the schedule of retained Causes of Action; (viii) the New Frontier Note, (ix) the schedule of Employees; (x) the form of Senior Employee Stipulation,; and (xi) the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to this Plan, which, in each case, will be in form and substance reasonably acceptable to the Debtor and the Committee.

95. "*Priority Non-Tax Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including any Claims for paid time-off entitled to priority under section 507(a)(4) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

96. "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

97. "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code.

98. "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

99. "*Professional Fee Claims Bar Date*" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

100. "*Professional Fee Claims Objection Deadline*" means, with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

101. "*Professional Fee Reserve*" means the reserve established and funded by the Claimant Trustee pursuant this Plan to provide sufficient funds to satisfy in full unpaid Allowed Professional Fee Claims.

102. "*Proof of Claim*" means a written proof of Claim or Equity Interest Filed against the Debtor in the Chapter 11 Case.

103. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

002210

104.    "*Protected Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

105.    "*PTO Claims*" means any Claim for paid time off in favor of any Debtor employee in excess of the amount that would qualify as a Priority Non-Tax Claim under section 507(a)(4) of the Bankruptcy Code.

106.    "*Reduced Employee Claims*" has the meaning set forth in ARTICLE IX.D.

107.    "*Reinstated*" means, with respect to any Claim or Equity Interest, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Equity Interest in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Equity Interest (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

108.    "*Rejection Claim*" means any Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to the Confirmation Order.

109.    "*Related Entity*" means, without duplication, (a) James Dondero, (b) Mark Okada, (c) Grant Scott, (d) Hunter Covitz, (e) any entity or person that was an insider of the

002211

Debtor on the Petition Date under Section 101(31) of the Bankruptcy Code, including any non-statutory insider, (f) any entity that, after the Effective Date, is controlled directly or indirectly by James Dondero, including, without limitation, The Dugaboy Investment Trust, (g) the Hunter Mountain Investment Trust and any of its direct or indirect parents, and (h) the Charitable Donor Advised Fund, L.P., and any of its direct or indirect subsidiaries.

110.    "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present and former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, employees, subsidiaries, divisions, management companies, and other representatives, in each case solely in their capacity as such.

111.    "*Released Parties*" means, collectively, (i) the Independent Directors; (ii) Strand (solely from the date of the appointment of the Independent Directors through the Effective Date); (iii) the CEO/CRO; (iv) the Committee; (v) the members of the Committee (in their official capacities), (vi) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case; and (vii) the Employees.

112.    "*Reorganized Debtor*" means the Debtor, as reorganized pursuant to this Plan on and after the Effective Date.

113.    "*Reorganized Debtor Assets*" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

114.    "*Reorganized Limited Partnership Agreement*" means that certain Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., by and among the Claimant Trust, as limited partner, and New GP LLC, as general partner, Filed with the Plan Supplement.

115.    "*Restructuring*" means the restructuring of the Debtor, the principal terms of which are set forth in this Plan and the Disclosure Statement.

116.    "*Retained Employee Claim*" means any Claim filed by a current employee of the Debtor who will be employed by the Reorganized Debtor upon the Effective Date.

117.    "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court [D.I. 247].

118.    "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the

creditor's interest in the interest of the Debtor's Estate in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

119. "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

120. "*Senior Employees*" means the senior employees of the Debtor Filed in the Plan Supplement.

121. "*Senior Employee Stipulation*" means the agreements filed in the Plan Supplement between each Senior Employee and the Debtor.

122. "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

123. "*Statutory Fees*" means fees payable pursuant to 28 U.S.C. § 1930.

124. "*Strand*" means Strand Advisors, Inc., the Debtor's general partner.

125. "*Sub-Servicer*" means a third-party selected by the Claimant Trustee to service or sub-service the Reorganized Debtor Assets.

126. "*Sub-Servicer Agreement*" means the agreement that may be entered into providing for the servicing of the Reorganized Debtor Assets by the Sub-Servicer.

127. "*Subordinated Claim*" means any Claim that (i) is or may be subordinated to the Convenience Claims and General Unsecured Claims pursuant to 11 U.S.C. § 510 or Final Order of the Bankruptcy Court or (ii) arises from a Class A Limited Partnership Interest or a Class B/C Limited Partnership Interest.

128. "*Subordinated Claimant Trust Interests*" means the Claimant Trust Interests to be distributed to Holders of Allowed Subordinated Claims under the Plan, which such interests shall be subordinated in right and priority to the Claimant Trust Interests distributed to Holders of Allowed General Unsecured Claims as provided in the Claimant Trust Agreement.

129. "*Trust Distribution*" means the transfer of Cash or other property by the Claimant Trustee to the Claimant Trust Beneficiaries.

130. "*Trustees*" means, collectively, the Claimant Trustee and Litigation Trustee.

002213

131.    "*UBS*" means, collectively, UBS Securities LLC and UBS AG London Branch.

132.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

133.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

134.    "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtor to solicit acceptances of the Plan.

135.    "*Voting Record Date*" means November 23, 2020.

## ARTICLE II.
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**A.    <u>Administrative Expense Claims</u>**

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Available Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Reorganized Debtor, as applicable, and such Holder; *provided, however,* that Administrative Expense Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

If an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must File, on or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtor or the Reorganized Debtor, as applicable, and the party asserting such Administrative Expense Claim by the Administrative Expense Claims Objection Deadline.

002214

**B.    Professional Fee Claims**

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline. Each Holder of an Allowed Professional Fee Claim will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

On the Effective Date, the Claimant Trustee shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Claimant Trust and shall be maintained by the Claimant Trustee in accordance with the Plan and Claimant Trust Agreement. The Claimant Trust shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Debtor in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

**C.    Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, or (b) such other less favorable treatment as agreed to in writing by the Debtor and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

002215

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.**     **Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

**B.**     **Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Priority Non-Tax Claim | Unimpaired | Deemed to Accept |
| 5 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 6 | PTO Claims | Unimpaired | Deemed to Accept |
| 7 | Convenience Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 11 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

**C.**     **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of

002216

voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.    Impaired/Voting Classes**

Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

**E.    Unimpaired/Non-Voting Classes**

Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

**F.    Impaired/Non-Voting Classes**

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

**G.    Cramdown**

If any Class of Claims or Equity Interests is deemed to reject this Plan or does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**H.    Classification and Treatment of Claims and Equity Interests**

*1.    Class 1 – Jefferies Secured Claim*

- *Classification*:  Class 1 consists of the Jefferies Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.  Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until full and final payment of such Allowed Class 1 Claim is made as provided herein.

- *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted this Plan

19

pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

2. *Class 2 – Frontier Secured Claim*

- *Classification*: Class 2 consists of the Frontier Secured Claim.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim: (A) Cash in an amount equal to all accrued but unpaid interest on the Frontier Claim through and including the Effective Date and (B) the New Frontier Note. The Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

- *Impairment and Voting*: Class 2 is Impaired, and the Holders of Class 2 Claims are entitled to vote to accept or reject this Plan.

3. *Class 3 – Other Secured Claims*

- *Classification*: Class 3 consists of the Other Secured Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3 Claim is Allowed on the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 3 Claim, at the option of the Debtor, or following the Effective Date, the Reorganized Debtor or Claimant Trustee, as applicable, (i) Cash equal to such Allowed Other Secured Claim, (ii) the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code Section 506(b), or (iii) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*: Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

4. *Class 4 – Priority Non-Tax Claims*

- *Classification*: Class 4 consists of the Priority Non-Tax Claims.

002218

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 4 Claim is Allowed on the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 4 Claim Cash equal to the amount of such Allowed Class 4 Claim.

- *Impairment and Voting*:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

5.    *Class 5 – Retained Employee Claims*

- *Classification*:  Class 5 consists of the Retained Employee Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Allowed Class 5 Claim will be Reinstated.

- *Impairment and Voting*:  Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

6.    *Class 6 – PTO Claims*

- *Classification*:  Class 6 consists of the PTO Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 6 Claim Cash equal to the amount of such Allowed Class 6 Claim.

- *Impairment and Voting*:  Class 6 is Unimpaired, and the Holders of Class 6 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 6 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

002219

7.    *Class 7 – Convenience Claims*

- *Classification*: Class 7 consists of the Convenience Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 7 Claim is Allowed on the Effective Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, each Holder of an Allowed Class 7 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim (1) the treatment provided to Allowed Holders of Class 8 General Unsecured Claims if the Holder of such Class 7 Claim makes the GUC Election or (2) an amount in Cash equal to the lesser of (a) 85% of the Allowed amount of such Holder's Class 7 Claim or (b) such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- *Impairment and Voting*: Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

8.    *Class 8 – General Unsecured Claims*

- *Classification*: Class 8 consists of the General Unsecured Claims.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes a valid Convenience Class Election.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

9.    *Class 9 – Subordinated Claims*

- *Classification*: Class 9 consists of the Subordinated Claims.

22

002220

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 9 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive either (i) the treatment provided to Allowed Class 8 Claims or (ii) if such Allowed Class 9 Claim is subordinated to the Convenience Claims and General Unsecured Claims pursuant to 11 U.S.C. § 510 or Final Order of the Bankruptcy Court, its Pro Rata share of the Subordinated Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10. *Class 10 – Class B/C Limited Partnership Interests*

- *Classification*:  Class 10 consists of the Class B/C Limited Partnership Interests.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

23

002221

11. *Class 11 – Class A Limited Partnership Interests*

- *Classification*:  Class 11 consists of the Class A Limited Partnership Interests.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject this Plan.

## I.    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

## J.    **Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Under section 510 of the Bankruptcy Code, upon written notice, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

## A.    **Summary**

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

002222

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust.  The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner.  The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement.  Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC.  The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan.  The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

Although the Reorganized Debtor will manage the wind down of the Managed Funds, it is currently anticipated that neither the Reorganized Debtor nor the Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities.  The Debtor believes that the continued provision of the services under such contracts will not be cost effective.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement.  Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in this Plan and the Claimant Trust Agreement.

## B.      **The Claimant Trust**[2]

### 1.                    *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.*

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and the Litigation Sub-Trust in accordance with the Plan in each case for the benefit of the Claimant Trust Beneficiaries.  Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its

---

[2] In the event of a conflict between the terms of this summary and the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, the terms of the Claimant Trust Agreement or the Litigation Sub-Trust Agreement, as applicable, shall control.

002223

rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims and the Litigation Trustee shall be the exclusive trustee with respect to the Estate Claims in each case for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trustee shall also be responsible for resolving all Claims and Equity Interests in Class 8 through Class 11, under the supervision of the Claimant Trust Oversight Committee.

On the Effective Date, the Claimant Trustee and Litigation Trustee shall execute the Litigation Sub-Trust Agreement and shall take all steps necessary to establish the Litigation Sub-Trust. Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets (including the proceeds from the Estate Claims, if any) in accordance with the provisions of the Plan and the Claimant Trust Agreement; *provided* that the Claimant Trust Oversight Committee may direct the Claimant Trust to reserve Cash from distributions as necessary to fund the Claimant Trust and Litigation Sub-Trust. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

The Litigation Sub-Trust shall be governed by the Litigation Sub-Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Sub-Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting as may be set forth in the Litigation Sub-Trust Agreement. The Litigation Sub-Trust shall investigate, prosecute, settle, or otherwise resolve the Estate Claims in accordance with the provisions of the Plan and the Litigation Sub-Trust Agreement and shall distribute the proceeds therefrom to the Claimant Trust for distribution. Other rights and duties of the Litigation Trustee shall be as set forth in the Litigation Sub-Trust Agreement.

2.          *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will be

overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as applicable.

The Claimant Trust Oversight Committee will initially consist of five members. Four of the five members will be representatives of the members of the Committee: (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery. The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor. The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement. The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The independent member(s) of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement. Any member of the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

3.        *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in this Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in ARTICLE IV.C.

4.        *Purpose of the Litigation Sub-Trust.*

The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims. Any proceeds therefrom shall be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries pursuant to the terms of the Claimant Trust Agreement.

002225

5.    _Claimant Trust Agreement and Litigation Sub-Trust Agreement._

The Claimant Trust Agreement generally will provide for, among other things:

(i)    the payment of the Claimant Trust Expenses;

(ii)    the payment of other reasonable expenses of the Claimant Trust;

(iii)    the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

(iv)    the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

(v)    the orderly monetization of the Claimant Trust Assets;

(vi)    litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(vii)    the resolution of Claims and Equity Interests in Class 8 through Class 11, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(viii)    the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

(ix)    the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expenses and shall periodically replenish such reserve, as necessary.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests (other than those assigned to the Litigation Sub-Trust), without approval of the Bankruptcy Court. Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; _provided, however,_ that the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee. In all circumstances, the Claimant Trustee shall act in the best interests of the Claimant Trust Beneficiaries and with the same fiduciary duties as a chapter 7 trustee.

002226

The Litigation Sub-Trust Agreement generally will provide for, among other things:

(i)      the payment of other reasonable expenses of the Litigation Sub-Trust;

(ii)      the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; and

(iii)      the investigation and prosecution of Estate Claims, which may include the prosecution, settlement, abandonment, or dismissal of any such Estate Claims, subject to reporting and oversight as set forth in the Litigation Sub-Trust Agreement.

The Trustees, on behalf of the Claimant Trust and Litigation Sub-Trust, as applicable, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

6.      _Compensation and Duties of Trustees._

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as appropriate. The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

7.      _Cooperation of Debtor and Reorganized Debtor._

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets (including Estate Claims), the Claimant Trustee, Litigation Trustee, and each of their professionals may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets. Accordingly, the Debtor and the Reorganized Debtor, as applicable, shall reasonably cooperate with the Claimant Trustee and Litigation Trustee, as applicable, in their prosecution of Causes of Action and in providing the Claimant Trustee and Litigation Trustee with copies of documents and information in the Debtor's possession, custody, or control on the Effective Date that either Trustee indicates relates to the Estate Claims or other Causes of Action.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and Causes of Action, including Estate Claims, until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust and Litigation Sub-Trust.

29

8.    *United States Federal Income Tax Treatment of the Claimant Trust.*

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as: (a) a transfer of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claims Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by the such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests. Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

9.    *Tax Reporting.*

(a) The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.

(b) The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

(c) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

(d) The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

10.    *Claimant Trust Assets.*

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court, and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in this Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the

002228

Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

> 11. *Claimant Trust Expenses.*

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust, the Litigation Sub-Trust, and any professionals retained by such parties and entities from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

> 12. *Trust Distributions to Claimant Trust Beneficiaries.*

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, *provided* that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

> 13. *Cash Investments.*

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; *provided, however,* that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

> 14. *Dissolution of the Claimant Trust and Litigation Sub-Trust.*

The Trustees and the Claimant Trust and Litigation Sub-Trust shall be discharged or dissolved, as the case may be, at such time as: (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Claimant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the

002229

Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets; *provided, however,* that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.

Upon dissolution of the Claimant Trust, and pursuant to the Claimant Trust Agreement, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

## C.    **The Reorganized Debtor**

### 1.    *Corporate Existence*

The Debtor will continue to exist after the Effective Date, with all of the powers of partnerships pursuant to the law of the State of Delaware and as set forth in the Reorganized Limited Partnership Agreement.

### 2.    *Cancellation of Equity Interests and Release*

On the Effective Date, (i) all prepetition Equity Interests, including the Class A Limited Partnership Interests and the Class B/C Limited Partnership Interests, in the Debtor shall be canceled, and (ii) all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

### 3.    *Issuance of New Partnership Interests*

On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor.  Also, on the Effective Date, the Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement and receive partnership interests in the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement.

### 4.    *Management of the Reorganized Debtor*

Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC.  The initial officers and employees of the Reorganized Debtor shall be selected by the Claimant

002230

Trustee.  The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

As set forth in the Reorganized Limited Partnership Agreement, New GP LLC will receive a fee for managing the Reorganized Debtor.  Although New GP LLC will be a limited liability company, it will elect to be treated as a C-Corporation for tax purposes.  Therefore, New GP LLC (and any taxable income attributable to it) will be subject to corporate income taxation on a standalone basis, which may reduce the return to Claimants.

5.       *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in this Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

6.       *Purpose of the Reorganized Debtor*

Except as may be otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  The Reorganized Debtor shall oversee the resolution of Claims in Class 1 through Class 7.

Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

7.       *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets*

Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement.  As set forth in the Reorganized Limited Partnership Agreement, the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor.  Any assets distributed to the Claimant Trust

002231

will be (i) deemed transferred in all respects as forth in ARTICLE IV.B.1, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

**D.      Company Action**

Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in the name of and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in this Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with this Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person. On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

**E.      Release of Liens, Claims and Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the

002232

Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

## F.    Cancellation of Notes, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

## G.    Cancellation of Existing Instruments Governing Security Interests

Upon payment or other satisfaction of an Allowed Class 1 or Allowed Class 2 Claim, or promptly thereafter, the Holder of such Allowed Class 1 or Allowed Class 2 Claim shall deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, any collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Class 1 or Allowed Class 2 Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or *lis pendens*, or similar interests or documents.

## H.    Control Provisions

To the extent that there is any inconsistency between this Plan as it relates to the Claimant Trust, the Claimant Trust Agreement, the Reorganized Debtor, or the Reorganized Limited Partnership Agreement, this Plan shall control.

002233

**I.**    **Treatment of Vacant Classes**

Any Claim or Equity Interest in a Class considered vacant under ARTICLE III.C of this Plan shall receive no Plan Distributions.

**J.**    **Plan Documents**

The documents, if any, to be Filed as part of the Plan Documents, including any documents filed with the Plan Supplement, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in ARTICLE I hereof) and fully enforceable as if stated in full herein.

The Debtor and the Committee are currently working to finalize the forms of certain of the Plan Documents to be filed with the Plan Supplement. To the extent that the Debtor and the Committee cannot agree as to the form and content of such Plan Documents, they intend to submit the issue to non-binding mediation pursuant to the *Order Directing Mediation* entered on August 3, 2020 [D.I. 912].

**K.**    **Highland Capital Management, L.P. Retirement Plan and Trust**

The Highland Capital Management, L.P. Retirement And Trust ("Pension Plan") is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). 29 U.S.C. §§ 1301-1461. The Debtor is the contributing sponsor and, as such, the PBGC asserts that the Debtor is liable along with any members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) with respect to the Pension Plan.

Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the Pension Plan and shall comply with all applicable statutory provisions of ERISA and the Internal Revenue Code (the "IRC"), including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Pension Plan in accordance with its terms and the provisions of ERISA and the IRC. In the event that the Pension Plan terminates after the Plan of Reorganization Effective Date, the PBGC asserts that the Reorganized Debtor and each of its controlled group members will be responsible for the liabilities imposed by Title IV of ERISA.

Notwithstanding any provision of the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1141 thereof) to the contrary, neither the Plan, the Confirmation Order, or the Bankruptcy Code shall be construed as discharging, releasing, exculpating or relieving the Debtor, the Reorganized Debtor, or any person or entity in any capacity, from any liability or responsibility, if any, with respect to the Pension Plan under any law, governmental policy, or regulatory provision. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any person or entity as a result of any of the provisions of the Plan, the Confirmation Order, or the Bankruptcy Code. The Debtor reserves the right to contest any such liability or responsibility.

36

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.** **Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases**

Unless an Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to a Final Order of the Bankruptcy Court entered prior to the Effective Date; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date; (iv) contains a change of control or similar provision that would be triggered by the Chapter 11 Case (unless such provision has been irrevocably waived); or (v) is specifically designated as a contract or lease to be assumed in the Plan Supplement, on the Effective Date, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is listed in the Plan Supplement.

At any time on or prior to the Effective Date, the Debtor may (i) amend the Plan Supplement in order to add or remove a contract or lease from the list of contracts to be assumed or (ii) assign (subject to applicable law) any Executory Contract or Unexpired Lease, as determined by the Debtor in consultation with the Committee, or the Reorganized Debtor, as applicable.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, rejections, and assumptions and assignments. Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are rejected pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

Notwithstanding anything herein to the contrary, the Debtor shall assume or reject that certain real property lease with Crescent TC Investors L.P. ("Landlord") for the Debtor's headquarters located at 200/300 Crescent Ct., Suite #700, Dallas, Texas 75201 (the "Lease") in accordance with the notice to Landlord, procedures and timing required by 11 U.S.C. §365(d)(4), as modified by that certain *Agreed Order Granting Motion to Extend Time to Assume or Reject Unexpired Nonresidential Real Property Lease* [Docket No. 1122].

**B.**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Effective Date shall be deemed rejected, pursuant to the Confirmation Order. Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the Effective Date. Any Rejection Claims that are not timely Filed pursuant to this Plan shall be forever disallowed and barred. If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with ARTICLE III of this Plan.

**C.**     **Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree. The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure amount (if any).

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to this ARTICLE V.C shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment. Any and all Proofs of Claim based upon Executory Contracts

or Unexpired Leases that have been assumed or assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any cure amounts have been fully paid pursuant to this ARTICLE V.C, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.   Dates of Distributions

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtor shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class and in the manner provided herein.  If any payment or act under this Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in this Plan.  Except as otherwise provided in this Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Claims and Equity Interests against the Debtor shall be deemed fixed and adjusted pursuant to this Plan and none of the Debtor, the Reorganized Debtor, or the Claimant Trust will have liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Confirmation Order.  All payments and all distributions made by the Distribution Agent under this Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtor and the Reorganized Debtor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtor and the Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests.  The Debtor, the Reorganized Debtor, the Trustees, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claims against the Debtor or Equity Interests in the Debtor occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under this Plan to such Persons or the date of such distributions.

002237

**B.**     **Distribution Agent**

Except as provided herein, all distributions under this Plan shall be made by the Claimant Trustee, as Distribution Agent, or by such other Entity designated by the Claimant Trustee, as a Distribution Agent on the Effective Date or thereafter.  The Reorganized Debtor will be the Distribution Agent with respect to Claims in Class 1 through Class 7.

The Claimant Trustee, or such other Entity designated by the Claimant Trustee to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

The Distribution Agent shall not have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

**C.**     **Cash Distributions**

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign creditors may be made in such funds and by such means as the Distribution Agent determines are necessary or customary in a particular foreign jurisdiction.

**D.**     **Disputed Claims Reserve**

On or prior to the Initial Distribution Date, the Claimant Trustee shall establish, fund and maintain the Disputed Claims Reserve(s) in the appropriate Disputed Claims Reserve Amounts on account of any Disputed Claims.

**E.**     **Distributions from the Disputed Claims Reserve**

The Disputed Claims Reserve shall at all times hold Cash in an amount no less than the Disputed Claims Reserve Amount.  To the extent a Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, within 30 days of the date on which such Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, the Claimant Trustee shall distribute from the Disputed Claims Reserve to the Holder thereof any prior distributions, in Cash, that would have been made to such Allowed Claim if it had been Allowed as of the Effective Date.  For the avoidance of doubt, each Holder of a Disputed Claim that subsequently becomes an Allowed Claim will also receive its Pro Rata share of the Claimant Trust Interests. If, upon the resolution of all Disputed Claims any Cash remains in the Disputed Claims Reserve, such Cash shall be transferred to the Claimant Trust and be deemed a Claimant Trust Asset.

002238

**F.**     **Rounding of Payments**

Whenever this Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash to be distributed under this Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under this Plan.

**G.**     *De Minimis* **Distribution**

Except as to any Allowed Claim that is Unimpaired under this Plan, none of the Debtor, the Reorganized Debtor, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in ARTICLE VI.J hereof within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim.  *De minimis* distributions for which no such request is timely received shall revert to the Claimant Trust.  Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**H.**     **Distributions on Account of Allowed Claims**

Except as otherwise agreed by the Holder of a particular Claim or as provided in this Plan, all distributions shall be made pursuant to the terms of this Plan and the Confirmation Order.  Except as otherwise provided in this Plan, distributions to any Holder of an Allowed Claim shall, to the extent applicable, be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**I.**     **General Distribution Procedures**

The Distribution Agent shall make all distributions of Cash or other property required under this Plan, unless this Plan specifically provides otherwise.  All Cash and other property held by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, for ultimate distribution under this Plan shall not be subject to any claim by any Person.

**J.**     **Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under this Plan, shall be made (1) at the addresses set forth in any written notices of address change delivered to the Debtor and the Distribution Agent; (2) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2), or (3) at the addresses in the Debtor's books and records.

41

002239

If there is any conflict or discrepancy between the addresses set forth in (1) through (3) in the foregoing sentence, then (i) the address in Section (2) shall control; (ii) if (2) does not apply, the address in (1) shall control, and (iii) if (1) does not apply, the address in (3) shall control.

## K.   Undeliverable Distributions and Unclaimed Property

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor or the Claimant Trust as undeliverable, no further distribution shall be made to such Holder, and Distribution Agent shall not have any obligation to make any further distribution to the Holder, unless and until the Distribution Agent is notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash within six months from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under this Plan and such Cash shall thereafter be deemed an Claimant Trust Asset in all respects and for all purposes.  Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor's Estate, the Reorganized Debtor, the Claimant Trust, or against any Holder of an Allowed Claim to whom distributions are made by the Distribution Agent.

## L.   Withholding Taxes

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Distribution Agent shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  As a condition to receiving any distribution under this Plan, the Distribution Agent may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to this Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Distribution Agent to comply with applicable tax reporting and withholding laws.  If a Holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

## M.   Setoffs

The Distribution Agent may, to the extent permitted under applicable law, set off against any Allowed Claim and any distributions to be made pursuant to this Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with this Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Claimant Trustee of any such claims, rights and causes of action that the Debtor, the Reorganized Debtor, or Claimant Trustee possesses against such Holder.  Any Holder of an Allowed Claim subject to

002240

such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

**N.**      **Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to this Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to ARTICLE IV of this Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Distribution Agent unless waived in writing by the Distribution Agent.

**O.**      **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by this Plan, deliver to the Distribution Agent:  (i) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest.  Upon compliance with ARTICLE VI.O of this Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under this Plan, be deemed to have surrendered such security or note to the Distribution Agent.

<div style="text-align:center">

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

</div>

**A.**      **Filing of Proofs of Claim**

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

**B.**      **Disputed Claims**

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest or any other appropriate motion or adversary proceeding with respect thereto, which shall be litigated to Final Order or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such

<div style="text-align:center">43</div>

Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of this Plan.

**C.**     **Procedures Regarding Disputed Claims or Disputed Equity Interests**

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

**D.**     **Allowance of Claims and Equity Interests**

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

*1.     Allowance of Claims*

After the Effective Date and subject to the other provisions of this Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

*2.     Estimation*

Subject to the other provisions of this Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and in accordance with this Plan and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

002242

3. *Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

## ARTICLE VIII.
## EFFECTIVENESS OF THIS PLAN

### A.   Conditions Precedent to the Effective Date

The Effective Date of this Plan will be conditioned upon the satisfaction or waiver by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee with such consent not to be unreasonably withheld), pursuant to the provisions of ARTICLE VIII.B of this Plan of the following:

- This Plan and the Plan Documents, including the Claimant Trust Agreement and the Reorganized Limited Partnership Agreement, and all schedules, documents, supplements and exhibits to this Plan shall have been Filed in form and substance reasonably acceptable to the Debtor and the Committee.

- The Confirmation Order shall have been entered, not subject to stay pending appeal, and shall be in form and substance reasonably acceptable to the Debtor and the Committee. The Confirmation Order shall provide that, among other things, (i) the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee are authorized to take all actions necessary or appropriate to effectuate and consummate this Plan, including, without limitation, (a) entering into, implementing, effectuating, and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in this Plan, (b) assuming the Executory Contracts and Unexpired Leases set forth in the Plan Supplement, (c) making all distributions and issuances as required under this Plan; and (d) entering

45

002243

into any transactions as set forth in the Plan Documents; (ii) the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent; (iii) the implementation of this Plan in accordance with its terms is authorized; (iv) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under this Plan, shall not be subject to any Stamp or Similar Tax; and (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

- All documents and agreements necessary to implement this Plan, including without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, in each case in form and substance reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement this Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

- The Professional Fee Reserve shall be funded pursuant to this Plan in an amount determined by the Debtor in good faith.

## B. **Waiver of Conditions**

The conditions to effectiveness of this Plan set forth in this ARTICLE VIII (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or effectuate this Plan. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time by the Debtor, the Reorganized

46

Debtor, or the Claimant Trust, as applicable.

**C.      Effect of Non-Occurrence of Conditions to Effectiveness**

Unless waived as set forth in ARTICLE VIII.B, if the Effective Date of this Plan does not occur within twenty calendar days of entry of the Confirmation Order, the Debtor may withdraw this Plan and, if withdrawn, the Plan shall be of no further force or effect.

**D.      Dissolution of the Committee**

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto).  The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan and the Claimant Trust Agreement in connection with such representation.

**ARTICLE IX.**
**EXCULPATION, INJUNCTION AND RELATED PROVISIONS**

**A.      General**

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

**B.      Discharge of Claims**

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose

002245

before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**C.**    **Exculpation**

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation  in connection with the foregoing clauses (i)-(v); *provided*, *however,* the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

**D.**    **Releases by the Debtor**

On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal

misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

Notwithstanding anything herein to the contrary, any release provided pursuant to this ARTICLE IX.D (i) with respect to a Senior Employee, is conditioned in all respects on (a) such Senior Employee executing a Senior Employee Stipulation on or prior to the Effective Date and (b) the reduction of such Senior Employee's Allowed Claim as set forth in the Senior Employee Stipulation (such amount, the "Reduced Employee Claim"), and (ii) with respect to any Employee, including a Senior Employee, shall be deemed null and void and of no force and effect (1) if there is more than one member of the Claimant Trust Oversight Committee who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full Claimant Trust Oversight Committee) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

- sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

- has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets, or

- (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (1) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (2) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing.

*Provided, however,* that the release provided pursuant to this ARTICLE IX.D will vest and the Employee will be indefeasibly released pursuant to this ARTICLE IX.D if such Employee's release has not been deemed null and void and of no force and effect on or prior to the date that is the date of dissolution of the Claimant Trust pursuant to the Claimant Trust Agreement.

By executing the Senior Employee Stipulation embodying this release, each Senior Employee acknowledges and agrees, without limitation, to the terms of this release and the tolling agreement contained in the Senior Employee Stipulation.

The provisions of this release and the execution of a Senior Employee Stipulation will not in any way prevent or limit any Employee from (i) prosecuting its Claims, if any, against the Debtor's Estate, (ii) defending him or herself against any claims or causes of action brought against the Employee by a third party, or (iii) assisting other persons in defending themselves from any Estate Claims brought by the Litigation Trustee (but only with respect to Estate Claims

49

002247

brought by the Litigation Trustee and not collection or other actions brought by the Claimant Trustee).

**E.     Preservation of Rights of Action**

  *1.     Maintenance of Causes of Action*

   Except as otherwise provided in this Plan, after the Effective Date, the Reorganized Debtor or the Claimant Trust will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action included in the Reorganized Debtor Assets or Claimant Trust Assets, as applicable, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

  *2.     Preservation of All Causes of Action Not Expressly Settled or Released*

   Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including, without limitation, the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor or Claimant Trust, as applicable (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such Causes of Action have been expressly released in this Plan or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the right of the Reorganized Debtor or the Claimant Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

**F.     Injunction**

   Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective Related Persons, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

   Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether proof of such Claims or Equity Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest,

002248

along with their respective Related Persons, are permanently enjoined, on and after the Effective Date, with respect to such Claims and Equity Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or against property or interests in property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The injunctions set forth herein shall extend to any successors of the Debtor, the Reorganized Debtor, and the Claimant Trust and their respective property and interests in property.

**Subject in all respects to ARTICLE XII.D, no Entity may commence or pursue a claim or cause of action of any kind against any Protected Party that arose from or is related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice, that such claim or cause of action represents a colorable claim of bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Entity to bring such claim against any such Protected Party;** *provided, however,* **the foregoing will not apply to Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. As set forth in ARTICLE XI, the Bankruptcy Court will have sole jurisdiction to adjudicate any such claim for which approval of the Bankruptcy Court to commence or pursue has been granted.**

## G.    Term of Injunctions or Stays

Unless otherwise provided in this Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

002249

## H.   Continuance of January 9 Order

Unless otherwise provided in this Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, the restrictions set forth in paragraphs 9 and 10 of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course*, entered by the Bankruptcy Court on January 9, 2020 [D.I. 339] shall remain in full force and effect following the Effective Date until the dissolution of each of the Claimant Trust and the Litigation Trust.

## ARTICLE X.
## BINDING NATURE OF PLAN

On the Effective Date, and effective as of the Effective Date, the Plan, including, without limitation, the provisions in ARTICLE IX, will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtor and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to this Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a).

## ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan as legally permissible, including, without limitation, jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date subject to the terms of this Plan and the Confirmation Order, and such payment shall not be subject to the approval of the Bankruptcy Court;

52

002250

- resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor, Reorganized Debtor, or Claimant Trust may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, any dispute regarding whether a contract or lease is or was executory or expired;

- make any determination with respect to a claim or cause of action against a Protected Party as set forth in ARTICLE IX;

- resolve any claim or cause of action against an Exculpated Party or Protected Party arising from or related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, or the transactions in furtherance of the foregoing;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any sale, disposition, assignment or other transfer of the Reorganized Debtor Assets or Claimant Trust Assets, including any break-up compensation or expense reimbursement that may be requested by a purchaser thereof; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any borrowing or the incurrence of indebtedness, whether secured or unsecured by the Reorganized Debtor or Claimant Trust; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- resolve any issues related to any matters adjudicated in the Chapter 11 Case;

- ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action (including Estate Claims) that are pending as of the Effective Date or that may be commenced in the future, including approval of any settlements, compromises, or other resolutions as may be requested by the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee whether under Bankruptcy Rule 9019 or otherwise, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor, the Claimant Trustee, or Litigation Trustee after the Effective Date, provided that the Reorganized Debtor, the Claimant Trustee, and the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

002251

- enter such orders as may be necessary or appropriate to implement, effectuate, or consummate the provisions of this Plan, the Plan Documents, and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Documents, or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the implementation, effectiveness, consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

- issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, effectiveness, consummation, or enforcement of this Plan, except as otherwise provided in this Plan;

- enforce the terms and conditions of this Plan and the Confirmation Order;

- resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification, and other provisions contained herein and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

- enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

- resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

- enter an order concluding or closing the Chapter 11 Case after the Effective Date.

### ARTICLE XII.
### MISCELLANEOUS PROVISIONS

#### A.    Payment of Statutory Fees and Filing of Reports

All outstanding Statutory Fees shall be paid on the Effective Date. All such fees payable, and all such fees that become due and payable, after the Effective Date shall be paid by the Reorganized Debtor when due or as soon thereafter as practicable until the Chapter 11 Case is closed, converted, or dismissed. The Claimant Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Claimant Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. The Reorganized Debtor shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

002252

## B. Modification of Plan

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order with the consent of the Committee, such consent not to be unreasonably withheld; and (b) after the entry of the Confirmation Order, the Debtor may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

## C. Revocation of Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan with the consent of the Committee. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

## D. Obligations Not Changed

Notwithstanding anything in this Plan to the contrary, nothing herein will affect or otherwise limit or release any non-Debtor Entity's (including any Exculpated Party's) duties or obligations, including any contractual and indemnification obligations, to the Debtor, the Reorganized Debtor, or any other Entity whether arising under contract, statute, or otherwise.

## E. Entire Agreement

Except as otherwise described herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

## F. Closing of Chapter 11 Case

The Claimant Trustee shall, after the Effective Date and promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

002253

## G. Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including, without limitation, the Reorganized Debtor and the Claimant Trustee. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

## H. Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Reorganized Debtor, the Claimant Trustee, or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor, the Reorganized Debtor, or the Claimant Trustee with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Documents, nor anything contained in this Plan, will constitute an admission by the Debtor that any such contract or lease is or is not an executory contract or lease or that the Debtor, the Reorganized Debtor, the Claimant Trustee, or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtor, the Reorganized Debtor, or the Claimant Trustee under any executory or non-executory contract.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, under any executory or non-executory contract or lease.

If there is a dispute regarding whether a contract or lease is or was executory at the time of its assumption under this Plan, the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

## I. Further Assurances

The Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order. On or before the Effective Date, the Debtor shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**J.**   <u>Severability</u>

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**K.**   <u>Service of Documents</u>

All notices, requests, and demands to or upon the Debtor, the Reorganized Debtor, or the Claimant Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered addressed as follows:

<u>**If to the Claimant Trust:**</u>

Highland Claimant Trust
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:  James P. Seery, Jr.

<u>**If to the Debtor:**</u>

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:  James P. Seery, Jr.

<u>**with copies to:**</u>

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Attn:   Jeffrey N. Pomerantz, Esq.
         Ira D. Kharasch, Esq.
         Gregory V. Demo, Esq.

002255

**If to the Reorganized Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:   James P. Seery, Jr.
**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attn:   Jeffrey N. Pomerantz, Esq.
         Ira D. Kharasch, Esq.
         Gregory V. Demo, Esq.

## L.   Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan; (ii) the maintenance or creation of security or any Lien as contemplated by this Plan; and (iii) assignments, sales, or transfers executed in connection with any transaction occurring under this Plan.

## M.   Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Texas, without giving effect to the principles of conflicts of law of such jurisdiction; *provided, however,* that corporate governance matters relating to the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trust, as applicable, shall be governed by the laws of the state of organization of the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trustee, as applicable.

## N.   Tax Reporting and Compliance

The Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor is for all taxable periods ending after the Petition Date through, and including, the Effective Date.

002256

## O.    Exhibits and Schedules

All exhibits and schedules to this Plan, if any, including the Exhibits and the Plan Documents, are incorporated and are a part of this Plan as if set forth in full herein.

## P.    Controlling Document

In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.   The provisions of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and of the Confirmation Order, on the other hand, shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and any provision of the Confirmation Order, on the other hand, that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, the Disclosure Statement, and the Plan Documents, as applicable.

*[Remainder of Page Intentionally Blank]*

002257

Dated: November 24, 2020

Respectfully submitted,

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____

James P. Seery, Jr.
Chief Executive Officer and Chief
Restructuring Officer

Prepared by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

and

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com

*Counsel for the Debtor and Debtor-in-Possession*

002258

Docket #1473 Date Filed: 11/24/2020

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## DISCLOSURE STATEMENT FOR THE FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.


1934054201124000000000002
¨1¤}HV4K,     "Y«
1934054201124000000000002
002239
Dondero Ex. 2

**ARTICLE I. EXECUTIVE SUMMARY** ........................................................................ 6

    **A.**   **Summary of the Plan** ......................................................................... 6

    **B.**   **An Overview of the Chapter 11 Process** ........................................ 8

    **C.**   **Purpose and Effect of the Plan** ...................................................... 8

        1.   The Plan of Reorganization ....................................................... 8

        2.   Plan Overview .............................................................................. 9

        3.   Voting on the Plan ..................................................................... 10

        4.   Confirmation of the Plan .......................................................... 11

        5.   Confirming and Effectuating the Plan .................................... 12

        6.   Rules of Interpretation ............................................................. 12

        7.   Distribution of Confirmation Hearing Notice and Solicitation Package to Holders of Claims and Equity Interests .................. 12

        8.   Instructions and Procedures for Voting .................................. 14

        9.   The Confirmation Hearing ....................................................... 15

        10.  The Deadline for Objecting to Confirmation of the Plan ......... 16

        11.  Notice Parties ............................................................................ 16

        12.  Effect of Confirmation of the Plan .......................................... 16

    **D.**   **Effectiveness of the Plan** ................................................................ 17

    **E.**   **RISK FACTORS** ............................................................................ 17

**ARTICLE II. BACKGROUND TO THE CHAPTER 11 CASE AND SUMMARY OF BANKRUPTCY PROCEEDINGS TO DATE** ................. 17

    **A.**   **Description and History of the Debtor's Business** ...................... 17

    **B.**   **The Debtor's Corporate Structure** ............................................. 17

    **C.**   **Business Overview** .......................................................................... 18

    **D.**   **Prepetition Capital Structure** ...................................................... 18

        1.   Jefferies Margin Borrowings (Secured) .................................... 18

        2.   The Frontier Bank Loan (Secured) .......................................... 19

        3.   Other Unsecured Obligations ................................................... 19

002260

| | | |
|---|---|---|
| | 4. | Equity Interests ................................................... 20 |
| E. | SEC Filings .................................................................................... 20 |
| F. | Events Leading Up to the Debtor's Bankruptcy Filings ................ 20 |
| G. | Additional Prepetition Litigation ................................................. 21 |
| H. | The Debtor's Bankruptcy Proceeding ........................................... 24 |
| I. | First Day Relief .............................................................................. 24 |
| J. | Other Procedural and Administrative Motions ............................. 25 |
| K. | United States Trustee ..................................................................... 25 |
| L. | Appointment of Committee ............................................................ 26 |
| M. | Meeting of Creditors ....................................................................... 26 |
| N. | Schedules, Statements of Financial Affairs, and Claims Bar Date ................ 26 |
| O. | Governance Settlement with the Committee .................................. 27 |
| P. | Appointment of James P. Seery, Jr., as Chief Executive Officer and Chief Restructuring Officer ...................................................... 27 |
| Q. | Mediation ........................................................................................ 28 |
| R. | Postpetition Settlements ................................................................. 28 |
| | 1. | Settlement with Acis and the Terry Parties ................. 28 |
| | 2. | Settlement with the Redeemer Committee ................... 29 |
| S. | Certain Outstanding Material Claims ............................................ 30 |
| T. | Treatment of Shared Service and Sub-Advisory Agreements ........ 31 |
| U. | Portfolio Managements with Issuer Entities ................................. 32 |
| V. | Resignation of James Dondero ...................................................... 33 |
| W. | Exclusive Periods for Filing a Plan and Soliciting Votes ............. 33 |
| X. | Negotiations with Constituents ...................................................... 34 |
| Y. | Highland Capital Management, L.P. Retirement Plan and Trust ................ 34 |
| ARTICLE III. | SUMMARY OF THE PLAN ............................................................ 35 |
| A. | Administrative and Priority Tax Claims ........................................ 35 |
| | 1. | Administrative Expense Claims ................................... 35 |
| | 2. | Professional Fee Claims ............................................. 36 |
| | 3. | Priority Tax Claims .................................................... 37 |
| B. | Classification and Treatment of Classified Claims and Equity Interests ........................................................................................... 37 |

- ii -

|   |   |     |                                                                            |    |
|---|---|-----|----------------------------------------------------------------------------|----|
|   | 1. | Summary | .......................................................................... | 37 |
|   | 2. | Elimination of Vacant Classes | .................................................. | 38 |
|   | 3. | Impaired/Voting Classes | ........................................................ | 38 |
|   | 4. | Unimpaired/Non-Voting Classes | ............................................... | 38 |
|   | 5. | Impaired/Non-Voting Classes | ................................................... | 38 |
|   | 6. | Cramdown | ......................................................................... | 39 |
| **C.** | | **Classification and Treatment of Claims and Equity Interests** | ...................... | 39 |
|   | 1. | *Class 1 – Jefferies Secured Claim* | ........................................... | 39 |
|   | 2. | *Class 2 – Frontier Secured Claim* | ........................................... | 39 |
|   | 3. | *Class 3 – Other Secured Claims* | ............................................. | 40 |
|   | 4. | *Class 4 – Priority Non-Tax Claims* | ......................................... | 40 |
|   | 5. | *Class 5 – Retained Employee Claims* | ...................................... | 41 |
|   | 6. | *Class 6 – PTO Claims* | .......................................................... | 41 |
|   | 7. | *Class 7 – Convenience Claims* | .............................................. | 41 |
|   | 8. | *Class 8 – General Unsecured Claims* | ..................................... | 42 |
|   | 9. | *Class 9 – Subordinated Claims* | ............................................. | 43 |
|   | 10. | *Class 10 – Class B/C Limited Partnership Interests* | .................... | 44 |
|   | 11. | *Class 11 – Class A Limited Partnership Interests* | .................... | 44 |
| **D.** | | **Special Provision Governing Unimpaired Claims** | ........................... | 45 |
| **E.** | | **Subordinated Claims** | ........................................................... | 45 |
| **F.** | | **Means for Implementation of the Plan** | .................................... | 45 |
|   | 1. | Summary | .......................................................................... | 45 |
|   | 2. | The Claimant Trust | .............................................................. | 46 |
|   | (a) | *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.* | .............................................. | 46 |
|   | (a) | *Claimant Trust Oversight Committee* | ...................................... | 47 |
|   | (b) | *Purpose of the Claimant Trust.* | ............................................. | 48 |

002262

|  |  |  |
|---|---|---|
| (c) | *Purpose of the Litigation Sub-Trust.* | 48 |
| (d) | *Claimant Trust Agreement and Litigation Sub-Trust Agreement.* | 48 |
| (e) | *Compensation and Duties of Trustees.* | 50 |
| (f) | *Cooperation of Debtor and Reorganized Debtor.* | 50 |
| (g) | *United States Federal Income Tax Treatment of the Claimant Trust.* | 50 |
| (h) | *Tax Reporting.* | 50 |
| (i) | *Claimant Trust Assets.* | 51 |
| (j) | *Claimant Trust Expenses.* | 51 |
| (k) | *Trust Distributions to Claimant Trust Beneficiaries.* | 51 |
| (l) | *Cash Investments.* | 51 |
| (m) | *Dissolution of the Claimant Trust and Litigation Sub-Trust.* | 52 |
| 3. | The Reorganized Debtor | 52 |
| (a) | *Corporate Existence* | 52 |
| (b) | *Cancellation of Equity Interests and Release* | 53 |
| (c) | *Issuance of New Partnership Interests* | 53 |
| (d) | *Management of the Reorganized Debtor* | 53 |
| (e) | *Vesting of Assets in the Reorganized Debtor* | 53 |
| (f) | *Purpose of the Reorganized Debtor* | 54 |
| (g) | *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets* | 54 |
| 4. | Company Action | 54 |
| 5. | Release of Liens, Claims and Equity Interests | 55 |
| 6. | Cancellation of Notes, Certificates and Instruments | 55 |
| 7. | Cancellation of Existing Instruments Governing Security Interests | 56 |

002263

8.     Control Provisions ........................................................................56

9.     Treatment of Vacant Classes ........................................................56

10.    Plan Documents ............................................................................56

11.    Highland Capital Management, L.P. Retirement Plan and Trust .............................................................................................56

A.     **Treatment of Executory Contracts and Unexpired Leases** ............................57

1.     Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases ......................................................57

2.     Claims Based on Rejection of Executory Contracts or Unexpired Leases ..........................................................................58

3.     Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases ...................................................58

B.     **Provisions Governing Distributions** ............................................................59

1.     Dates of Distributions ...................................................................59

2.     Distribution Agent .........................................................................60

3.     Cash Distributions .........................................................................60

4.     Disputed Claims Reserve ..............................................................60

5.     Distributions from the Disputed Claims Reserve .........................61

6.     Rounding of Payments ...................................................................61

7.     *De Minimis* Distribution ...............................................................61

8.     Distributions on Account of Allowed Claims ..............................62

9.     General Distribution Procedures ...................................................62

10.    Address for Delivery of Distributions ..........................................62

11.    Undeliverable Distributions and Unclaimed Property ...................62

12.    Withholding Taxes .........................................................................63

13.    Setoffs ............................................................................................63

14.    Surrender of Cancelled Instruments or Securities ........................63

15.    Lost, Stolen, Mutilated or Destroyed Securities ..........................63

002264

**C. Procedures for Resolving Contingent, Unliquidated and Disputed Claims** ......................................................................................64

    1. Filing of Proofs of Claim .................................................................64

    2. Disputed Claims .............................................................................64

    3. Procedures Regarding Disputed Claims or Disputed Equity Interests ...........................................................................................64

    4. Allowance of Claims and Equity Interests ......................................64

*Allowance of Claims* ......................................................................................64

*Estimation* ....................................................................................................65

*Disallowance of Claims* ...............................................................................65

**D. Effectiveness of the Plan** ......................................................................66

    1. Conditions Precedent to the Effective Date .....................................66

    2. Waiver of Conditions ......................................................................67

    3. Effect of Non-Occurrence of Conditions to Effectiveness .................67

    4. Dissolution of the Committee ..........................................................67

**E. Exculpation, Injunction, and Related Provisions** ..............................68

    1. General ..........................................................................................68

    3. Exculpation ....................................................................................69

    4. Releases by the Debtor ....................................................................70

    5. Preservation of Rights of Action .....................................................71

*Maintenance of Causes of Action* ................................................................71

*Preservation of All Causes of Action Not Expressly Settled or Released* ........72

    6. Injunction ......................................................................................72

    7. Term of Injunctions or Stays ..........................................................73

    8. Continuance of January 9 Order .....................................................73

**F. Article XII.D of the Plan** ...................................................................74

**G. Binding Nature of Plan** ......................................................................74

**H. Statutory Requirements for Confirmation of the Plan** .......................74

    1. Best Interests of Creditors Test .......................................................75

002265

|  | 2. | Liquidation Analysis ........................................................................ | 75 |
|  | 3. | Feasibility ......................................................................................... | 76 |
|  | 4. | Valuation ........................................................................................... | 77 |
|  | 5. | Acceptance by Impaired Classes ....................................................... | 77 |
|  | 6. | Confirmation Without Acceptance by Impaired Classes..................... | 78 |
|  | 7. | No Unfair Discrimination .................................................................. | 78 |
|  | 8. | Fair and Equitable Test ..................................................................... | 78 |

**ARTICLE IV. RISK FACTORS** ...........................................................................................79

A. **Certain Bankruptcy Law and Other Considerations** ......................................79

|  | 1. | Parties in Interest May Object to the Debtor's Classification of Claims and Equity Interests, or Designation as Unimpaired. ................... | 79 |
|  | 2. | The Debtor May Not Be Able to Secure Confirmation of the Plan. ................................................................................................ | 79 |
|  | 3. | The Conditions Precedent to the Effective Date of the Plan May Not Occur. ................................................................................... | 80 |
|  | 4. | Continued Risk Following Effectiveness. ................................................. | 80 |
|  | 5. | The Effective Date May Not Occur. ......................................................... | 80 |
|  | 6. | The Chapter 11 Case May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code ............................................................ | 81 |
|  | 7. | Claims Estimation ............................................................................... | 81 |
|  | 8. | The Financial Information Contained Herein is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit was Performed. ................................................................... | 81 |

B. **Risks Related to Recoveries under the Plan** ......................................................81

|  | 1. | The Reorganized Debtor and/or Claimant Trust May Not Be Able to Achieve the Debtor's Projected Financial Results ..................... | 81 |
|  | 2. | Claim Contingencies Could Affect Creditor Recoveries....................... | 82 |
|  | 3. | If Approved, the Debtor Release Could Release Claims Against Potential Defendants of Estate Causes of Action With Respect to Which the Claimant Trust Would Otherwise Have Recourse ............................................................................................ | 82 |

002266

|       |       |                                                                                                   |        |
|-------|-------|---------------------------------------------------------------------------------------------------|--------|
| **C.** |       | **Investment Risk Disclaimer** .................................................................. | 82     |
|       | 1.    | Investment Risks in General. ................................................. | 82     |
|       | 2.    | General Economic and Market Conditions and Issuer Risk. ................. | 82     |
| **D.** |       | **Disclosure Statement Disclaimer** .......................................... | 83     |
|       | 1.    | The Information Contained Herein is for Disclosure Purposes Only. ....... | 83     |
|       | 2.    | This Disclosure Statement was Not Approved by the SEC. ................. | 83     |
|       | 3.    | This Disclosure Statement Contains Forward-Looking Statements. ......... | 83     |
|       | 4.    | No Legal or Tax Advice is Provided to You by This Disclosure Statement. .. | 83     |
|       | 5.    | No Admissions Are Made by This Disclosure Statement. ................. | 84     |
|       | 6.    | No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections. .... | 84     |
|       | 7.    | Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Equity Interests or Recover Transfers and Assets. .... | 84     |
|       | 8.    | The Information Used Herein was Provided by the Debtor and was Relied Upon by the Debtor's Advisors. ....... | 84     |
|       | 9.    | The Disclosure Statement May Contain Inaccuracies. ................. | 84     |
|       | 10.   | No Representations Made Outside the Disclosure Statement Are Authorized. ...... | 85     |
| **ARTICLE V. ALTERNATIVES TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN** ............................................. | | | 85 |
| **ARTICLE VI. U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN** ......................................................... | | | 85 |
| **A.** |       | **Consequences to the Debtor** .................................................... | 86     |
|       | 1.    | Cancellation of Debt ............................................................. | 86     |
|       | 2.    | Transfer of Assets ................................................................ | 87     |
| **B.** |       | **U.S. Federal Income Tax Treatment of the Claimant Trust** ........... | 87     |
| **C.** |       | **Consequences to Holders of Allowed Claims** ............................ | 88     |
|       | 1.    | Recognized Gain or Loss ..................................................... | 88     |

002267

2. Distribution in Discharge of Accrued Unpaid Interest ...............................89

3. Information Reporting and Withholding ...................................................89

**D. Treatment of the Disputed Claims Reserve**.......................................89

**ARTICLE VII. RECOMMENDATION** ...................................................................90

002268

HIGHLAND CAPITAL MANAGEMENT, L.P., as debtor and debtor-in-possession in the above-captioned cases (the "Debtor"), is sending you this document and the accompanying materials (the "Disclosure Statement") because you are a creditor or interest holder in connection with the *Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management, L.P.*, dated November 24, 2020, as the same may be amended from time to time (the "Plan").[2] The Debtor has filed a voluntary petition under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

This Disclosure Statement has not yet been approved by the Bankruptcy Court as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code. The Debtor intends to seek an order or orders of the Bankruptcy Court (a) approving this Disclosure Statement as containing adequate information and (b) confirming the Plan.

A copy of the Plan is attached hereto as **Exhibit A**.

The Debtor believes that the Plan is fair and equitable, will maximize the value of the Debtor's Estate, and is in the best interests of the Debtor and its constituents. Notably, the Plan provides for the transfer of the majority of the Debtor's Assets to a Claimant Trust. The balance of the Debtor's Assets, including the management of the Managed Funds, will remain with the Reorganized Debtor. The Reorganized Debtor will be managed by New GP LLC – a wholly-owned subsidiary of the Claimant Trust. This structure will allow for continuity in the Managed Funds and an orderly and efficient monetization of the Debtor's Assets.

The Claimant Trust, the Litigation Trust, or the Reorganized Debtor, as applicable, will institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action without any further order of the Bankruptcy Court, and the Claimant Trust and Reorganized Debtor, as applicable, will sell, liquidate, or otherwise monetize all Claimant Trust Assets and Reorganized Debtor Assets and resolve all Claims, except as otherwise provided in the Plan, the Claimant Trust Agreement, or the Reorganized Limited Partnership Agreement.

---

### IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT FOR YOU TO READ

**The Debtor is providing the information in this Disclosure Statement to Holders of Claims and Equity Interests in connection with the Debtor's Plan. Nothing in this Disclosure Statement may be relied upon or used by any Entity for any purpose other than with respect to confirmation of the Plan. The information contained in this Disclosure Statement is included for purposes of soliciting acceptances to, and confirmation of, the Plan and may not be relied on for any other purpose.**

**This Disclosure Statement has not been filed for approval with the Securities and Exchange Commission ("SEC") or any state authority and neither the SEC nor any state authority has passed upon the accuracy or adequacy of this Disclosure Statement or upon**

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan. To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the Plan are inconsistent, the definition included in the Plan shall control and govern.

002269

the merits of the Plan. Any representation to the contrary is a criminal offense. This Disclosure Statement does not constitute an offer to sell or the solicitation of an offer to buy securities in any state or jurisdiction.

This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The Debtor considers all statements regarding anticipated or future matters to be forward-looking statements. Forward-looking statements may include statements about:

- the effects of insolvency proceedings on the Debtor's business and relationships with its creditors;

- business strategy;

- financial condition, revenues, cash flows, and expenses;

- financial strategy, budget, projections, and operating results;

- variation from projected operating and financial data;

- substantial capital requirements;

- availability and terms of capital;

- plans, objectives, and expectations;

- the adequacy of the Debtor's capital resources and liquidity; and

- the Claimant Trust's or the Reorganized Debtor's ability to satisfy future cash obligations.

Statements concerning these and other matters are not guarantees of the Claimant Trust's or Reorganized Debtor's future performance. There are risks, uncertainties, and other important factors that could cause the Claimant Trust's or Reorganized Debtor's actual performance or achievements to be different from those that may be projected. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements. Therefore, any analyses, estimates, or recovery projections may or may not turn out to be accurate.

This Disclosure Statement has been prepared pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016 and is not necessarily in accordance with federal or state securities laws or other similar laws.

- 2 -

002270

No legal or tax advice is provided to you by this Disclosure Statement. The Debtor urges each Holder of a Claim or an Equity Interest to consult with its own advisers with respect to any legal, financial, securities, tax or business advice in reviewing this Disclosure Statement, the Plan and each of the proposed transactions contemplated thereby. Further, the Bankruptcy Court's approval of the adequacy of disclosures contained in this Disclosure Statement does not constitute the Bankruptcy Court's approval of the merits of the Plan or a guarantee by the Bankruptcy Court of the accuracy or completeness of the information contained herein.

Pachulski Stang Ziehl & Jones LLP ("PSZ&J") is general insolvency counsel to the Debtor. Development Specialists, Inc. ("DSI") is the Debtor's financial advisor. PSZ&J, DSI, and the Independent Board (as defined below) have relied upon information provided by the Debtor in connection with preparation of this Disclosure Statement. PSZ&J has not independently verified the information contained herein.

This Disclosure Statement contains, among other things, summaries of the Plan, the management of the Reorganized Debtor, the Claimant Trust, certain statutory provisions, certain events in the Debtor's Chapter 11 Case, and certain documents related to the Plan that are attached hereto and incorporated herein by reference or that may be filed later with the Plan Supplement. Although the Debtor believes that these summaries are fair and accurate, these summaries are qualified in their entirety to the extent that the summaries do not set forth the entire text of such documents or statutory provisions or every detail of such events. In the event of any conflict, inconsistency or discrepancy between a description in this Disclosure Statement and the terms and provisions of the Plan or any other documents incorporated herein by reference, the Plan or such other documents will govern and control for all purposes. Except where otherwise specifically noted, factual information contained in this Disclosure Statement has been provided by the Debtor's management. The Debtor does not represent or warrant that the information contained herein or attached hereto is without any material inaccuracy or omission.

In preparing this Disclosure Statement, the Debtor relied on financial data derived from the Debtor's books and records and on various assumptions regarding the Debtor's business. The Debtor's management has reviewed the financial information provided in this Disclosure Statement. Although the Debtor has used its reasonable business judgment to ensure the accuracy of this financial information, the financial information contained in, or incorporated by reference into, this Disclosure Statement has not been audited (unless otherwise expressly provided herein) and no representations or warranties are made as to the accuracy of the financial information contained herein or assumptions regarding the Debtor's business and its, the Reorganized Debtor's, and the Claimant Trust's future results. The Debtor expressly cautions readers not to place undue reliance on any forward-looking statements contained herein.

This Disclosure Statement does not constitute, and may not be construed as, an admission of fact, liability, stipulation or waiver. Rather, this Disclosure Statement shall constitute a statement made in settlement negotiations related to potential contested matters, potential adversary proceedings and other pending or threatened litigation or actions.

- 3 -

002271

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in the Disclosure Statement. Except as provided under the Plan, the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, may seek to investigate, file and prosecute Claims and Causes of Action and may object to Claims or Equity Interests after the Confirmation Date or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies any such Claims or Equity Interests or objections to Claims or Equity Interests on the terms specified in the Plan.

The Debtor is generally making the statements and providing the financial information contained in this Disclosure Statement as of the date hereof where feasible, unless otherwise specifically noted. Although the Debtor may subsequently update the information in this Disclosure Statement, the Debtor has no affirmative duty to do so. Holders of Claims and Equity Interests reviewing this Disclosure Statement should not infer that, at the time of their review, the facts set forth herein have not changed since the Disclosure Statement was sent. Information contained herein is subject to completion, modification, or amendment. The Debtor reserves the right to file an amended or modified Plan and related Disclosure Statement from time to time.

The Debtor has not authorized any Entity to give any information about or concerning the Plan other than that which is contained in this Disclosure Statement. The Debtor has not authorized any representations concerning the Debtor or the value of its property other than as set forth in this Disclosure Statement.

Holders of Claims or Equity Interests must rely on their own evaluation of the Debtor and their own analyses of the terms of the Plan in considering the Plan. Importantly, each Holder of a Claim should review the Plan in its entirety and consider carefully all of the information in this Disclosure Statement and any exhibits hereto, including the risk factors described in greater detail in ARTICLE IV herein, "Risk Factors."

If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, all Holders of Claims against, and Holders of Equity Interests in, the Debtor will be bound by the terms of the Plan and the transactions contemplated thereby.

The effectiveness of the Plan is subject to certain material conditions precedent described herein and set forth in Article IX of the Plan. There is no assurance that the Plan will be confirmed, or if confirmed, that the conditions required to be satisfied for the Plan to become effective will be satisfied (or waived).

002272

## EXHIBITS

**EXHIBIT A** – Plan of Reorganization

**EXHIBIT B** – Organizational Chart of the Debtor

**EXHIBIT C** – Liquidation Analysis/Financial Projections

> THE DEBTOR HEREBY ADOPTS AND INCORPORATES EACH EXHIBIT
> ATTACHED TO THIS DISCLOSURE STATEMENT BY REFERENCE AS THOUGH
> FULLY SET FORTH HEREIN.

002273

# ARTICLE I.
## EXECUTIVE SUMMARY

**This Disclosure Statement is provided for informational purposes only.**

**In the opinion of the Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for the highest distributions to the Debtor's creditors and interest holders. The Debtor believes that any delay in confirmation of the Plan would result in significant administrative expenses resulting in less value available to the Debtor's constituents. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims and Equity Interests than that which is proposed under the Plan. Accordingly, the Debtor recommends that all Holders of Claims and Equity Interests support confirmation of the Plan.**

This Executive Summary is being provided to Holders of Allowed Claims and Equity Interests as an overview of the material items addressed in the Disclosure Statement and the Plan, which is qualified by reference to the entire Disclosure Statement and by the actual terms of the Plan (including all exhibits attached hereto and to the Plan and the Plan Supplement), and should not be relied upon for a comprehensive discussion of the Disclosure Statement and/or the Plan. Section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance or rejection of the plan of reorganization or liquidation. As such, this Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code. This Disclosure Statement includes, without limitation, information about:

- the Debtor's operating and financial history;

- the significant events that have occurred to date;

- the Confirmation process; and

- the terms and provisions of the Plan, including key aspects of the Claimant Trust and the Reorganized Debtor, certain effects of Confirmation of the Plan, certain risk factors relating to the Plan, and the manner in which distributions will be made under the Plan.

The Debtor believes that any alternative to Confirmation of the Plan would result in significant delays, litigation, and additional costs, and ultimately would diminish the Debtor's value. **Accordingly, the Debtor strongly supports confirmation of the Plan.**

## A.   Summary of the Plan

The Plan represents a significant achievement for the Debtor. As discussed herein, the Plan provides that the Claimant Trust will receive the majority of the Debtor's assets, including Causes of Action. The assets being transferred to the Claimant Trust are referred to, collectively, as the Claimant Trust Assets. The Claimant Trust will – for the benefit of the Claimant Trust

Beneficiaries – monetize the Claimant Trust Assets, pursue the Causes of Action, and work to conclude the various lawsuits and litigation claims pending against the Estate.

The Plan also provides for the reorganization of the Debtor. This will be accomplished by the cancellation of the Debtor's current Equity Interests, which consist of partnership interests held by: The Dugaboy Investment Trust;[3] the Hunter Mountain Investment Trust ("Hunter Mountain"); Mark Okada, personally and through family trusts; and Strand, the Debtor's general partner. On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor. The Reorganized Debtor will be managed by the Claimant Trust, as the managing member of New GP LLC.

The Reorganized Debtor will oversee the monetization of the Reorganized Debtor Assets, which consist of, among other Assets, the management of the Managed Funds. The net proceeds from the Reorganized Debtor Assets will ultimately be distributed to the Claimant Trust and available for distribution to the Claimant Trust Beneficiaries.

The following is an overview of certain other material terms of the Plan:

- Allowed Priority Non-Tax Claims will be paid in full;

- Allowed Retained Employee Claims will be Reinstated;

- Allowed Convenience Claims will receive the lesser of (i) 85% of their Allowed Claim or (ii) such Holder's Pro Rata share of the Convenience Claims Cash Pool (*i.e.*, $13,150,000). Holders of Convenience Claims can elect the treatment provided to General Unsecured Claims by making the GUC Election on their Ballots;

- Allowed General Unsecured Claims and Allowed Subordinated Claims will receive their Pro Rata share of Claimant Trust Interests. The Claimant Trust Interests distributed to Allowed General Unsecured Claims will be senior to those distributed to Allowed Subordinated Claims as set forth in the Claimant Trust Agreement. Holders of General Unsecured Claims that are liquidated as of the Confirmation Date can elect the treatment provided to Convenience Class Election by reducing their Claims to $1,000,000 and making the Convenience Class Election on their Ballots; and

- Allowed Class B/C Limited Partnership Interests and Allowed Class A Limited Partnership Interests will receive their Pro Rata share of the Contingent Claimant Trust Interests.

---

[3] The Dugaboy Investment Trust is a Delaware trust created to manage the assets of James Dondero and his family.

002275

**B.      An Overview of the Chapter 11 Process**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11 of the Bankruptcy Code, a debtor may remain in possession of its assets and business and attempt to reorganize its business for the benefit of such debtor, its creditors, and other parties in interest. A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization by a bankruptcy court makes the plan binding upon the debtor and any creditor of or interest holder in the debtor, whether or not such creditor or interest holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan.

The commencement of a Chapter 11 case creates an estate comprised of all of the legal and equitable interests of a debtor in property as of the date that the bankruptcy petition is filed. Sections 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession," unless the bankruptcy court orders the appointment of a trustee. The filing of a bankruptcy petition also triggers the automatic stay provisions of section 362 of the Bankruptcy Code which provide, among other things, for an automatic stay of all attempts to collect prepetition claims from a debtor or otherwise interfere with its property or business. Except as otherwise ordered by the bankruptcy court, the automatic stay generally remains in full force and effect until the consummation of a plan of reorganization or liquidation, following confirmation of such plan of reorganization.

The Bankruptcy Code provides that upon commencement of a chapter 11 bankruptcy case, the Office of the United States Trustee may appoint a committee of unsecured creditors and may, in its discretion, appoint additional committees of creditors or of equity interest holders if necessary to assure adequate representation. Please see ARTICLE II for a discussion of the U.S. Trustee and the statutory committees.

Upon the commencement of a chapter 11 bankruptcy case, all creditors and equity interest holders generally have standing to be heard on any issue in the chapter 11 proceedings pursuant to section 1109(b) of the Bankruptcy Code.

The formulation and confirmation of a plan is the principal objective of a chapter 11 case. The plan sets forth the means of satisfying the claims against and equity interests in the debtor.

**C.      Purpose and Effect of the Plan**

1.      <u>The Plan of Reorganization</u>

The Debtor is reorganizing pursuant to chapter 11 of the Bankruptcy Code. As a result, the Confirmation of the Plan means that the Debtor's business will continue to operate following confirmation of the Plan through the Claimant Trust and the Reorganized Debtor to monetize assets for distribution to Holders of Allowed Claims. The Claimant Trust will hold the Claimant Trust Assets and manage the efficient monetization of, the Claimant Trust Assets. The Claimant Trust will also manage the Reorganized Debtor through the Claimant Trust's ownership of the Reorganized Debtor's general partner, New GP LLC. The Claimant Trust will also be the sole limited partner in the Reorganized Debtor. The Reorganized Debtor will manage the wind down

- 8 -

of the Managed Funds as well as the monetization of the balance of the Reorganized Debtor Assets. The Claimant Trust will also establish a Litigation Sub-Trust in accordance with the Plan, which will also be for the benefit of the Claimant Trust Beneficiaries. The Litigation Sub-Trust will receive the Estate Claims. The Litigation Trustee shall be the exclusive trustee of the Estate Claims included in the Claimant Trust Assets subject to oversight by the Claimant Trust Oversight Committee

A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or an equity interest in a debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code to the terms and conditions of the confirmed plan, whether or not such Entity voted on the plan or affirmatively voted to reject the plan.

2.      Plan Overview

The Plan provides for the classification and treatment of Claims against and Equity Interests in the Debtor. For classification and treatment of Claims and Equity Interests, the Plan designates Classes of Claims and Classes of Equity Interests. These Classes and Plan treatments take into account the differing nature and priority under the Bankruptcy Code of the various Claims and Equity Interests.

The following chart briefly summarizes the classification and treatment of Claims and Equity Interests under the Plan.[4] Amounts listed below are estimated.

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for eight Classes of Claims against and/or Equity Interests in the Debtor.

**The projected recoveries set forth in the table below are estimates only and therefore are subject to change. For a complete description of the Debtor's classification and treatment of Claims or Equity Interests, reference should be made to the entire Plan and the risk factors described in ARTICLE IV below. For certain classes of Claims, the actual amount of Allowed Claims could be materially different than the estimated amounts shown in the table below.**

---

[4] This chart is only a summary of the classification and treatment of Claims and Equity Interests under the Plan. References should be made to the entire Disclosure Statement and the Plan for a complete description.

002277

| Class | Type of Claim or Interest | Estimated Prepetition Claim Amount [1] | Impaired | Entitled to Vote | Estimated Recovery |
|---|---|---|---|---|---|
| 1 | Jefferies Secured Claim | $0.00 | No | No | 100% |
| 2 | Frontier Secured Claim[2] | $5,209,964 | Yes | Yes | 100% |
| 3 | Other Secured Claims | $551,116 | No | No | 100% |
| 4 | Priority Non-Tax Claim | $16,489 | No | No | 100% |
| 5 | Retained Employee Claim | $0 | No | No | 100% |
| 6 | PTO Claims [3] | $1,181,886 | No | No | 100% |
| 7 | Convenience Claims[4] | $12,064,333 | Yes | Yes | 85.00% |
| 8 | General Unsecured Claims[5] | $180,442,199 | Yes | Yes | 85.31% |
| 9 | Subordinated Claims | Undetermined | Yes | Yes | Undetermined |
| 10 | Class B/C Limited Partnership Interests | N/A | Yes | Yes | Undetermined |
| 11 | Class A Limited Partnership Interests | N/A | Yes | Yes | Undetermined |

[1] Excludes Priority Tax Claims and certain other unclassified amounts totaling approximately $1.1 million owed to Joshua and Jennifer Terry and Acis under a settlement agreement.

[2] Excludes interest accrued postpetition estimated at $318,000, which will be paid on the Effective Date. The Liquidation Analysis/Financial Projections provide for the payment of postpetition interest.

[3] Represents outstanding PTO Claims as of September 30, 2020. PTO Claims are subject to adjustment depending on the amount of actual prepetition PTO Claims outstanding as of the Effective Date. PTO claims are accounted for in the Liquidation Analysis/Financial Projections as an administrative claim and will be paid out in ordinary courses pursuant to applicable state law.

[4] Represents the estimated gross prepetition amount of Convenience Claims with a total payout amount estimated at 85% of $12.06 million, or $10.25 million. This number includes approximately $1.113 million of potential Rejection Claims and assumes that Holders of Allowed General Unsecured Claims that are each less than $2.50 million opt into the Convenience Class.

[5] Assumes no recovery for UBS, the HarbourVest Entities, IFA, Hunter Mountain, and an Allowed Claim of only $3,722,019 for Mr. Daugherty (each as discussed further below). Assumes $1.440 million of potential rejection damage claims. The Liquidation Analysis/Financial Projections assume Highland RCP, LP and Highland RCP Offshore, LP offset their Claim of $4.4 million against amounts owed to the Debtor.

3.    Voting on the Plan

Under the Bankruptcy Code, acceptance of a plan by a Class of Claims or Equity Interests is determined by calculating the number and the amount of Claims voting to accept, based on the actual total Allowed Claims or Equity Interests voting on the Plan. Acceptance by a Class of Claims requires more than one-half of the number of total Allowed Claims in the Class to vote in favor of the Plan and at least two-thirds in dollar amount of the total Allowed Claims in the Class to vote in favor of the Plan. Acceptance by a Class of Equity Interests requires at least two-thirds in amount of the total Allowed Equity Interests in the Class to vote in favor of the Plan.

002278

Under the Bankruptcy Code, only Classes of Claims or Equity Interests that are "Impaired" and that are not deemed as a matter of law to have rejected a plan under Section 1126 of the Bankruptcy Code are entitled to vote to accept or reject the Plan. Any Class that is "Unimpaired" is not entitled to vote to accept or reject a plan and is conclusively presumed to have accepted the Plan. As set forth in Section 1124 of the Bankruptcy Code, a Class is "Impaired" if the legal, equitable, or contractual rights attaching to the claims or equity interests of that Class are modified or altered.

Pursuant to the Plan, Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims and Equity Interests in those Classes are entitled to vote to accept or reject the Plan. Whether a Holder of a Claim or Equity Interest in Class 2 and Class 7 through Class 11 may vote to accept or reject the Plan will also depend on whether the Holder held such Claim or Equity Interest as of November 23, 2020 (the "Voting Record Date"). The Voting Record Date and all of the Debtor's solicitation and voting procedures shall apply to all of the Debtor's Creditors and other parties in interest.

Pursuant to the Plan, Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

Pursuant to the Plan, there are no Classes that will not receive or retain any property and no Classes are deemed to reject the Plan.

4.      Confirmation of the Plan

(a)      Confirmation Generally

"Confirmation" is the technical term for the Bankruptcy Court's approval of a plan of reorganization or liquidation. The timing, standards and factors considered by the Bankruptcy Court in deciding whether to confirm a plan of reorganization are discussed below.

The confirmation of a plan by the Bankruptcy Court binds the debtor, any issuer of securities under a plan, any person acquiring property under a plan, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code. Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan discharges a debtor from any debt that arose before the confirmation of such plan and provides for the treatment of such debt in accordance with the terms of the confirmed plan.

(b)      The Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

The Debtor will provide notice of the Confirmation Hearing to all necessary parties. The Confirmation Hearing may be adjourned from time to time without further notice except for an

- 11 -

002279

announcement of the adjourned date made at the Confirmation Hearing of any adjournment thereof.

     5.    <u>Confirming and Effectuating the Plan</u>

It is a condition to the Effective Date of the Plan that the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtor and the Official Committee of Unsecured Creditors (the "<u>Committee</u>").  Certain other conditions contained in the Plan must be satisfied or waived pursuant to the provisions of the Plan.

     6.    <u>Rules of Interpretation</u>

The following rules for interpretation and construction shall apply to this Disclosure Statement:  (1) capitalized terms used in the Disclosure Statement and not otherwise defined shall have the meaning ascribed to such terms in the Plan; (2) unless otherwise specified, any reference in this Disclosure Statement to a contract, instrument, release, indenture, or other agreement or document shall be a reference to such document in the particular form or substantially on such terms and conditions described; (3) unless otherwise specified, any reference in this Disclosure Statement to an existing document, schedule, or exhibit, whether or not filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references in this Disclosure Statement to Sections are references to Sections of this Disclosure Statement; (6) unless otherwise specified, all references in this Disclosure Statement to exhibits are references to exhibits in this Disclosure Statement; (7) unless otherwise set forth in this Disclosure Statement, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (8) any term used in capitalized form in this Disclosure Statement that is not otherwise defined in this Disclosure Statement or the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

     7.    <u>Distribution of Confirmation Hearing Notice and Solicitation Package to Holders of Claims and Equity Interests</u>

As set forth above, Holders of Claims in Class 1 and Class 3 through Class 6 are not entitled to vote on the Plan.  As a result, such parties will not receive solicitation packages or ballots but, instead, will receive this a notice of non-voting status, a notice of the Confirmation Hearing, and instructions on how to receive a copy of the Plan and Disclosure Statement.

The Debtor, with the approval of the Bankruptcy Court, has engaged Kurtzman Carson Consultants LLC (the "<u>Voting Agent</u>") to serve as the voting agent to process and tabulate Ballots for each Class entitled to vote on the Plan and to generally oversee the voting process. The following materials shall constitute the solicitation package (the "<u>Solicitation Package</u>"):

- This Disclosure Statement, including the Plan and all other Exhibits annexed thereto;

002280

- The Bankruptcy Court order approving this Disclosure Statement (the "<u>Disclosure Statement Order</u>") (excluding exhibits);

- The notice of, among other things, (i) the date, time, and place of the hearing to consider Confirmation of the Plan and related matters and (ii) the deadline for filing objections to Confirmation of the Plan (the "<u>Confirmation Hearing Notice</u>");

- A single Ballot, to be used in voting to accept or to reject the Plan and applicable instructions with respect thereto (the "<u>Voting Instructions</u>");

- A pre-addressed, postage pre-paid return envelope; and

- Such other materials as the Bankruptcy Court may direct or approve.

The Debtor, through the Voting Agent, will distribute the Solicitation Package in accordance with the Disclosure Statement Order. The Solicitation Package is also available at the Debtor's restructuring website at www.kccllc.net/hcmlp.

On November 13, 2020, the Debtor filed the Plan Supplement [D.I. 1389] that included, among other things, the form of Claimant Trust Agreement, the Litigation Sub-Trust Agreement, the Reorganized Limited Partnership Agreement, New GP LLC Documents, the New Frontier Note, the Senior Employee Stipulation, and the identity of the initial members of the Claimant Trust Oversight Committee. The Plan Supplement also includes a schedule of the Causes of Action that will be retained after the Effective Date. The Plan Supplement may be supplemented or amended through and including December 18, 2020. If the Plan Supplement is supplemented, such supplemented documents will be made available on the Debtor's restructuring website at www.kccllc.net/hcmlp.

If you are the Holder of a Claim or Equity Interest and believe that you are entitled to vote on the Plan, but you did not receive a Ballot or your Ballot is damaged or illegible, or if you have any questions concerning voting procedures, you should contact the Voting Agent by writing to Kurtzman Carson Consultants LLC, via email at HighlandInfo@kccllc.com and reference "Highland Capital Management, L.P." in the subject line or by telephone at toll free: (877) 573-3984, or international: (310) 751-1829. If your Claim or Equity Interest is subject to a pending claim objection and you wish to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018 with the Bankruptcy Court for the temporary allowance of your Claim or Equity Interest for voting purposes or you will not be entitled to vote to accept or reject the Plan. Any such motion must be filed so that it is heard in sufficient time prior to the Voting Deadline to allow for your vote to be tabulated.

**THE DEBTOR, THE REORGANIZED DEBTOR, AND THE CLAIMANT TRUSTEE, AS APPLICABLE, RESERVE THE RIGHT THROUGH THE CLAIM OBJECTION PROCESS TO OBJECT TO OR SEEK TO DISALLOW ANY CLAIM OR EQUITY INTEREST FOR DISTRIBUTION PURPOSES.**

002281

8.      Instructions and Procedures for Voting

All votes to accept or reject the Plan must be cast by using the Ballots enclosed with the Solicitation Packages or otherwise provided by the Debtor or the Voting Agent. No votes other than ones using such Ballots will be counted, except to the extent the Bankruptcy Court orders otherwise. The Bankruptcy Court has fixed November 23, 2020, as the Voting Record Date for the determination of the Holders of Claims and Equity Interests who are entitled to (a) receive a copy of this Disclosure Statement and all of the related materials and (b) vote to accept or reject the Plan. The Voting Record Date and all of the Debtor's solicitation and voting procedures shall apply to all of the Debtor's Creditors and other parties in interest.

After carefully reviewing the Plan, this Disclosure Statement, and the detailed instructions accompanying your Ballot, you are asked to indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the accompanying Ballot.

**The deadline to vote on the Plan is January 5, 2021 at 5:00 p.m. (prevailing Central Time) (the "Voting Deadline")**. In order for your vote to be counted, your Ballot must be properly completed in accordance with the Voting Instructions on the Ballot, and received no later than the Voting Deadline at the following address, as applicable:

**If by first class mail, personal delivery, or overnight mail to:**

<div align="center">

**HCMLP Ballot Processing Center**
**c/o KCC**
**222 N. Pacific Coast Highway, Suite 300**
**El Segundo, CA 90245**

</div>

**If by electronic voting:**

**You may submit your Ballot via the Balloting Agent's online portal. Please visit http://www.kccllc.net/hcmlp and click on the "Submit Electronic Ballot" section of the website and follow the instructions to submit your Ballot. IMPORTANT NOTE: You will need the Unique Electronic Ballot ID Number and the Unique Electronic Ballot PIN Number set forth on your customized ballot in order to vote via the Balloting Agent's online portal. Each Electronic Ballot ID Number is to be used solely for voting on those Claims or Interests on your electronic ballot. You must complete and submit an electronic ballot for each Electronic Ballot ID Number you receive, as applicable. Parties who cast a Ballot using the Balloting Agent's online portal should NOT also submit a paper Ballot.**

Only the Holders of Claims and Equity Interests in Class 2 and Class 7 through Class 11 as of the Voting Record Date are entitled to vote to accept or reject the Plan, and they may do so by completing the appropriate Ballots and returning them in the envelope provided to the Voting Agent so as to be actually received by the Voting Agent by the Voting Deadline. Each Holder of a Claim and Equity Interest must vote its entire Claim or Equity Interest, as applicable, within a particular Class either to accept or reject the Plan and may not split such votes. If multiple Ballots are received from the same Holder with respect to the same Claim or Equity Interest prior to the Voting Deadline, the last timely received, properly executed Ballot will be deemed to

<div align="center">- 14 -</div>

reflect that voter's intent and will supersede and revoke any prior Ballot. The Ballots will clearly indicate the appropriate return address. It is important to follow the specific instructions provided on each Ballot.

**ALL BALLOTS ARE ACCOMPANIED BY VOTING INSTRUCTIONS. IT IS IMPORTANT THAT THE HOLDER OF A CLAIM OR EQUITY INTEREST IN THE CLASSES ENTITLED TO VOTE FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED WITH EACH BALLOT.**

If you have any questions about (a) the procedure for voting your Claim or Equity Interest, (b) the Solicitation Package that you have received, or (c) the amount of your Claim or Equity Interest, or if you wish to obtain an additional copy of the Plan, this Disclosure Statement, or any appendices or Exhibits to such documents, please contact the Voting Agent at the address specified above. Copies of the Plan, Disclosure Statement and other documents filed in these Chapter 11 Case may be obtained free of charge on the Voting Agent's website at www.kccllc.net/hcmlp or by calling toll free at: (877) 573-3984, or international at: (310) 751-1829. You may also obtain copies of pleadings filed in the Debtor's case for a fee via PACER at pacer.uscourts.gov. Subject to any rules or procedures that have or may be implemented by the Court as a result of the COVID 19 Pandemic, documents filed in this case may be examined between the hours of 8:00 a.m. and 4:00 p.m., prevailing Central Time, Monday through Friday, at the Office of the Clerk of the Bankruptcy Court, Earle Cabell Federal Building, 1100 Commerce Street, Room 1254, Dallas, Texas 75242-1496.

The Voting Agent will process and tabulate Ballots for the Classes entitled to vote to accept or reject the Plan and will file a voting report (the "Voting Report") by January 11, 2021. The Voting Report will, among other things, describe every Ballot that does not conform to the Voting Instructions or that contains any form of irregularity, including, but not limited to, those Ballots that are late, illegible (in whole or in material part), unidentifiable, lacking signatures, lacking necessary information, or damaged.

**THE DEBTOR URGES HOLDERS OF CLAIMS AND EQUITY INTERESTS WHO ARE ENTITLED TO VOTE TO TIMELY RETURN THEIR BALLOTS AND TO VOTE TO ACCEPT THE PLAN BY THE VOTING DEADLINE.**

9. The Confirmation Hearing

**The Bankruptcy Court has scheduled Confirmation Hearing Dates on January 13, 2021, and January 14, 2021, at 9:30 a.m. prevailing Central time.** The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

10.    The Deadline for Objecting to Confirmation of the Plan

**The Bankruptcy Court has set a deadline of January 5, 2021, at 5:00 p.m. prevailing Central time, for the filing of objections to confirmation of the Plan (the "Confirmation Objection Deadline")**.  Any objection to confirmation of the Plan must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the objecting party and the amount and nature of the Claim of such Entity or the amount of Equity Interests held by such Entity; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Confirmation Objection Deadline by the parties set forth below (the "Notice Parties").

**CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.  INSTRUCTIONS WITH RESPECT TO THE CONFIRMATION HEARING AND DEADLINES WITH RESPECT TO CONFIRMATION WILL BE INCLUDED IN THE NOTICE OF CONFIRMATION HEARING APPROVED BY THE BANKRUPTCY COURT.**

11.    Notice Parties

- Debtor:  Highland Capital Management, L.P., 300 Crescent Court, Suite 700, Dallas, Texas 75201 (Attn:  James P. Seery, Jr.);

- Counsel to the Debtor:  Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067-4003 (Attn:  Jeffrey Pomerantz, Esq.; Ira Kharasch, Esq., and Gregory Demo, Esq.);

- Counsel to the Committee:  Sidley Austin, LLP, One South Dearborn, Chicago, Illinois 60603 (Attn:  Matthew Clemente, Esq., and Alyssa Russell, Esq.); and

- Office of the United States Trustee, 1100 Commerce Street, Room 976, Dallas, Texas 75242 (Attn: Lisa Lambert, Esq.).

12.    Effect of Confirmation of the Plan

The Plan contains certain provisions relating to (a) the compromise and settlement of Claims and Equity Interests; (b) exculpation of certain parties; and (c) the release of claims against certain parties by the Debtor.

**The Plan shall bind all Holders of Claims against and Equity Interests in the Debtor to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder (i) will receive or retain any property or interest in property under the Plan, (ii) has filed a proof of claim in the Chapter 11 Case, or (iii) did not vote to accept or reject the Plan.**

002284

D.      **Effectiveness of the Plan**

It will be a condition to the Effective Date of the Plan that all provisions, terms and conditions of the Plan are approved in the Confirmation Order unless otherwise satisfied or waived pursuant to the provisions of Article IX of the Plan.  Following confirmation, the Plan will go into effect on the Effective Date.

E.      **RISK FACTORS**

**Each Holder of a Claim or an Equity Interest is urged to consider carefully all of the information in this Disclosure Statement, including the risk factors described in ARTICLE IV herein titled, "Risk Factors."**

<div align="center">

**ARTICLE II.**
**BACKGROUND TO THE CHAPTER 11 CASE AND SUMMARY OF BANKRUPTCY PROCEEDINGS TO DATE**

</div>

A.      **Description and History of the Debtor's Business**

Prior to the Petition Date, the Debtor was a multibillion-dollar global alternative investment manager founded in 1993 by James Dondero and Mark Okada.  A pioneer in the leveraged loan market, the firm evolved over twenty-five years, building on its credit expertise and value-based approach to expand into other asset classes.

As of the Petition Date, the Debtor operated a diverse investment platform, serving both institutional and retail investors worldwide.  In addition to high-yield credit, the Debtor's investment capabilities include public equities, real estate, private equity and special situations, structured credit, and sector- and region-specific verticals built around specialized teams. Additionally, the Debtor provided shared services to its affiliated registered investment advisers.

B.      **The Debtor's Corporate Structure**

The Debtor is headquartered in Dallas, Texas.  The Debtor itself is a Delaware limited partnership and one of the principal operating arms of the Debtor's business.  As of the Petition Date, the Debtor employed approximately 76 people, including executive-level management employees, finance and legal staff, investment professionals, and back-office accounting and administrative personnel.

Pursuant to various contractual arrangements, the Debtor, as of the Petition Date, provided money management and advisory services for approximately $2.5 billion of assets under management shared services for approximately $7.5 billion of assets managed by a variety of affiliated and unaffiliated entities, including other affiliated registered investment advisors. None of these affiliates filed for Chapter 11 protection.  As of September 30, 2020, the Debtor provided money management and advisory services for approximately $1.641 billion of assets under management and shared services for approximately $7.136 billion of assets managed by a variety of affiliated and unaffiliated entities, including other affiliated registered investment advisors.  Further, on the Petition Date, the value of the Debtor's Assets was approximately

<div align="center">- 17 -</div>

$566.5 million. As of September 30, 2020, the total value of Debtor's Assets totaled approximately $328.3 million.

The drop in the value of the Debtor's Assets and assets under management was caused, in part, by the COVID-19 global pandemic. Specifically, the decline was the result of, among other things, the drop in value of the Debtor's assets generally, the loss of value in the Prime Accounts discussed below, the professional and other costs associated with the Chapter 11 Case, and the reserve of approximately $59 million against a loan receivable listed as an asset.

| Asset | 10/16/2019 | 9/30/2020 |
|---|---|---|
| Investments (FV)[1] | $232,620,000 | $109,479,000 |
| Investments (Equity) | $161,819,000 | $101,213,000 |
| Cash/Cash Equivalents | $2,529,000 | $5,888,000 |
| Management/Incentive Fees Receivable | $2,579,000 | $3,350,000 |
| Fixed Assets, net | $3,754,000 | $2,823,000 |
| Loan Receivables | $151,901,000 | $93,445,000[2] |
| Other Assets | $11,311,000 | $12,105,000 |
| **Totals** | $566,513,000 | $328,302,000 |

[1] Includes decrease in value of assets, costs of Chapter 11 Cases, and assets sold to satisfy liabilities.

[2] Net of reserve of $59 million.

The Debtor's organizational chart is attached hereto as Exhibit B. The organizational chart is not all inclusive and certain entities have been excluded for the sake of brevity.

## C. Business Overview

The Debtor's primary means of generating revenue has historically been from fees collected for the management and advisory services provided to funds that it manages, plus fees generated for services provided to its affiliates. For additional liquidity, the Debtor, prior to the Petition Date, would sell liquid securities in the ordinary course held through its prime brokerage account at Jefferies, LLC ("Jefferies"), as described in additional detail below. The Debtor would also, from time to time, sell assets at non-Debtor subsidiaries and distribute those proceeds to the Debtor in the ordinary course of business. During calendar year 2018, the Debtor's stand-alone annual revenue totaled approximately $50 million. During calendar year 2019, the Debtor's stand-alone revenue totaled approximately $36.1 million.

## D. Prepetition Capital Structure

### 1. Jefferies Margin Borrowings (Secured)

The Debtor is party to that certain *Prime Brokerage Customer Agreement* with Jefferies dated May 24, 2013 (the "Brokerage Agreement"). Pursuant to the terms of the Brokerage Agreement and related documents, the Debtor maintains a prime brokerage account with

002286

Jefferies (the "Prime Account").  A prime brokerage account is a unique type of brokerage account that allows sophisticated investors to, among other things, borrow both money on margin to purchase securities and common stock to facilitate short positions.  A prime brokerage account also serves as a custodial account and holds client securities in the prime broker's street name.

As of the Petition Date, the Debtor held approximately $57 million of equity in liquid and illiquid securities (the "Securities") in the Prime Account.  Pursuant to the Brokerage Agreement, the Debtor granted a lien in favor of Jefferies in the Securities and all of the proceeds thereof.

However, because of the economic distress caused by the COVID-19 global pandemic, the value of the Securities held in the Prime Account dropped since the Petition Date, and Jefferies has exerted significant pressure on the Debtor to liquidate the Securities to satisfy margin calls.  As of September 30, 2020, the equity value of the Securities in the Prime Account was approximately $23.3 million, and the Debtor owed no amounts to Jefferies.  The Debtor has been actively selling Securities to cover operating expenses and professional fees.

2.      The Frontier Bank Loan (Secured)

The Debtor and Frontier State Bank ("Frontier Bank") are parties to that certain *Loan Agreement* dated as of August 17, 2015 (the "Original Frontier Loan Agreement"), pursuant to which Frontier Bank loaned to the Debtor the aggregate principal amount of $9.5 million.  On March 29, 2018, the Debtor and Frontier Bank entered into that certain First Amended and Restated Loan Agreement (the "Amended Frontier Loan Agreement"), amending and superseding the Original Frontier Loan Agreement.  Pursuant to the Amended Frontier Loan Agreement, Frontier Bank made an additional $1 million loan to the Debtor (together with the borrowings under the Original Frontier Loan Agreement, the "Frontier Loan").  The Frontier Loan matures on August 17, 2021.

Pursuant to that certain Security and Pledge Agreement dated August 17, 2015, between Frontier Bank and the Debtor, as amended by the Amended Frontier Loan Agreement, the Debtor's obligations under the Frontier Loan are secured by 171,724 shares of voting common stock of MGM Holdings, Inc. (collectively, the "Frontier Collateral").

The aggregate principal balance of the Frontier Loan was approximately $5.2 million.  As of September 30, 2020, the value of the Frontier Collateral was approximately $13.1 million, and approximately $318,000 in postpetition interest had accrued.

3.      Other Unsecured Obligations

As discussed below, the Plan provides for four Classes of unsecured claims:  (i) PTO Claims, (ii) the Convenience Claims, (iii) the General Unsecured Claims, and (iv) the Subordinated Claims.

The Debtor has various substantial litigation claims asserted against it, which have been classified as General Unsecured Claims.  In addition, as of the Petition Date, the Debtor had ordinary course trade debt, unaccrued employee bonus obligations and loan repayment, and

- 19 -

contractual commitments to various affiliated and unaffiliated non-Debtor entities for capital calls, contributions, and other potential reimbursement or funding obligations that were potentially in the tens of millions of dollars. The Debtor is still assessing these claims and its liability for such amounts. These Claims have been classified as Convenience Claims and Subordinated Claims.

### 4. Equity Interests

The Debtor is a Delaware limited partnership. As of the Petition Date, the Debtor had three classes of limited partnership interest (Class A, Class B, and Class C). The Class A interests were held by The Dugaboy Investment Trust, Mark Okada, personally and through family trusts, and Strand, the Debtor's general partner. The Class B and C interests were held by Hunter Mountain.

In the aggregate, the Debtor's limited partnership interests were held: (a) 99.5% by Hunter Mountain; (b) 0.1866% by The Dugaboy Investment Trust, (c) 0.0627% by Mark Okada, personally and through family trusts, and (d) 0.25% by Strand.

### E. SEC Filings

The Debtor is an investment adviser registered with the SEC as required by the Investment Advisers Act of 1940. As a registered investment adviser, the Debtor is required to file (at least annually) a Form ADV. The Debtor's current Form ADV is available at https://adviserinfo.sec.gov/.

Following the Effective Date, it is anticipated that the Reorganized Debtor will maintain its registration with the SEC as a registered investment adviser.

### F. Events Leading Up to the Debtor's Bankruptcy Filings

The Chapter 11 Case was precipitated by the rendering of an Arbitration Award (as that term is defined below) against the Debtor on May 9, 2019, by a panel of the American Arbitration Association (the "Panel"), in favor of the Redeemer Committee of the Highland Crusader Fund (the "Redeemer Committee").

The Debtor was formerly the investment manager for the Highland Crusader Funds (the "Crusader Funds") that were formed between 2000 and 2002. In September and October 2008, as the financial markets in the United States began to fail, the Debtor was flooded with redemption requests from Crusader Funds' investors, as the Crusader Funds' assets lost significant value.

On October 15, 2008, the Debtor placed the Crusader Funds in wind-down, thereby compulsorily redeeming the Crusader Funds' limited partnership interests. The Debtor also declared that it would liquidate the Crusader Funds' remaining assets and distribute the proceeds to investors.

However, disputes concerning the distribution of the assets arose among certain investors. After several years of negotiations, a Joint Plan of Distribution of the Crusader Funds

- 20 -

(the "Crusader Plan"), and the Scheme of Arrangement between Highland Crusader Fund and its Scheme Creditors (the "Crusader Scheme"), were adopted in Bermuda and became effective in August 2011. As part of the Crusader Plan and the Crusader Scheme, the Redeemer Committee was elected from among the Crusader Funds' investors to oversee the Debtor's management of the Crusader Funds.

Between October 2011 and January 2013, in accordance with the Crusader Plan and the Crusader Scheme, the Debtor distributed in excess of $1.2 billion to the Crusader Funds' investors. The Debtor distributed a further $315.3 million through June 2016.

However, disputes subsequently arose between the Redeemer Committee and the Debtor. On July 5, 2016, the Redeemer Committee (a) terminated and replaced the Debtor as investment manager of the Crusader Fund, (b) commenced an arbitration against the Debtor (the "Arbitration"), and (c) commenced litigation in Delaware Chancery Court, to, among other things, obtain a status quo order in aid of the arbitration, which order was subsequently entered.

Following an evidentiary hearing, the Panel issued (a) a *Partial Final Award,* dated March 6, 2019 (the "March Award"), (b) a *Disposition of Application for Modification of Award,* dated March 14, 2019 (the "Modification Award"), and (c) a *Final Award,* dated May 9, 2019 (the "Final Award" and together with the March Award and the Modification Award, the "Arbitration Award"). Pursuant to the Arbitration Award, the Redeemer Committee was awarded gross damages against the Debtor in the aggregate amount of $136,808,302; as of the Petition Date, the total value of the Arbitration Award was $190,824,557, inclusive of interest

Prior to the Petition Date, the Redeemer Committee moved in the Chancery Court to confirm the Arbitration Award. For its part, the Debtor moved to vacate parts of the Final Award contending that certain aspects were procedurally improper. The Redeemer Committee's motion to confirm the Arbitration Award and the Debtor's motion to vacate were fully briefed and were scheduled to be heard by the Chancery Court on the day the Debtor filed for bankruptcy

On the Petition Date, the Debtor believed that the aggregate value of its assets exceeded the amount of its liabilities; however, the Debtor filed the Chapter 11 Case because it did not have sufficient liquidity to immediately satisfy the Award or post a supersedeas bond necessary to pursue an appeal.

## G.    Additional Prepetition Litigation

In addition to the litigation with the Redeemer Committee described above, the Debtor, both directly and through certain subsidiaries, affiliates, and related entities, was party to substantial prepetition litigation. Although the Debtor disputes the allegations raised in this litigation and believes it has substantial defenses, this litigation has resulted in substantial Claims against the Debtor's Estate, each of which has been classified as a General Unsecured Claim. To the extent that these litigation Claims cannot be resolved consensually, they will be litigated by the Claimant Trustee or Reorganized Debtor, as applicable. The Debtor's major prepetition litigation is as follows:

002289

- Redeemer Committee: The dispute with the Redeemer Committee is described in ARTICLE II.F above. As discussed in ARTICLE II.R, the Bankruptcy Court entered an order approving a settlement that resolves the Redeemer Committee's claims against the Estate; however, that order is currently subject to appeal.

- Acis Capital Management, L.P., & Acis Capital Management GP, LLC: On January 30, 2018, Joshua Terry filed involuntary bankruptcy petitions against both Acis Capital Management, L.P. ("Acis LP") and its general partner, Acis Capital Management GP, LLC ("Acis GP," and collectively with Acis LP, "Acis") in the Bankruptcy Court for the Northern District of Texas, Dallas Division, the Honorable Judge Jernigan presiding (the same judge presiding over the Chapter 11 Case), Case No. 18-30264-SGJ (the "Acis Case"). Mr. Terry had been an employee of the Debtor and a limited partner of Acis LP. Mr. Terry was terminated in June 2016, and obtained a multi-million dollar arbitration award against Acis. Overruling various objections, the Bankruptcy Court entered the orders for relief for the Acis debtors in April 2018, and a chapter 11 trustee was appointed. The Debtor filed a proof of claim against Acis and an administrative claim. Acis disputes the Debtor's claim, and the Debtor has not received any distributions on its claim to date. On January 31, 2019, Acis's chapter 11 plan was confirmed, and Mr. Terry become the sole owner of reorganized Acis. Several appeals remain pending, including an appeal of the entry of the Acis orders for relief and the Acis confirmation order.

  The Acis trustee commenced a lawsuit against the Debtor, among others, alleging fraudulent conveyance and other causes of action in relation to the Debtor's alleged prepetition effort to control and transfer away Acis's assets to avoid paying Mr. Terry's claim. After the confirmation of the Acis plan, reorganized Acis allegedly supplanted the Acis Trustee as plaintiff and filed an amended complaint against the Debtor and other defendants, which claims comprise Acis's pending proof of claim against the Debtor.

  As discussed in ARTICLE II.R, the Bankruptcy Court entered an order approving a settlement that resolves Acis's claims against the Estate; however, that order is currently subject to appeal.

- UBS Securities LLC and UBS AG London Branch: UBS Securities LLC ("UBS Securities") filed a proof of claim in the amount of $1,039,957,799.40 [Claim No. 190] (the "UBS Securities Claim"), and UBS AG, London Branch ("UBS London," and together with UBS Securities, "UBS") filed a substantively identical proof of claim in the amount of $1,039,957,799.40 [Claim No. 191] (the "UBS London Claim" and together with the UBS Securities Claim, the "UBS Claim"). The UBS Claim was based on the amount of a judgment UBS received on a breach of contract claim against funds related to the Debtor that were unable to honor margin calls in 2008. Although the Debtor had no obligation under UBS's contracts with the funds, UBS alleges the Debtor is liable for the judgment because it (i) breached an alleged duty to ensure that the funds could pay UBS, (ii) caused or permitted $233 million in alleged fraudulent transfers to be made by

Highland Financial Partners, L.P. ("HFP") in March 2009, and (iii) is an alter ego of the funds. The Debtor believes there are meritorious defenses to most, if not all, of the UBS Claim for numerous reasons, including: (i) decisions by the New York Appellate Division that limited UBS's claims to the March 2009 transfers that it alleges were fraudulent; (ii) those decisions should also apply to any alter ego claim (which at this time has not been formally asserted against the Debtor); (iii) UBS settled claims relating to $172 million of the $233 million in alleged fraudulent transfers and the Debtor is covered by the release; and (iv) the March 2009 transfers were in any event part of a wholly legitimate transaction that did not target UBS and for which HFP received fair consideration. Those and several additional defenses are described in the *Debtor's Objection to Proofs of Claim 190 and 191 of UBS Securities LLC and UBS AG, London Branch* [D.I. 928].

On October 19, 2020, both the Debtor and the Redeemer Committee filed motions seeking partial summary judgment of the UBS Claim, which, if granted, will significantly decrease the UBS Claim.[5] UBS responded to these motions on November 6, 2020 [D.I. 1341]. On November 20, 2020, the Bankruptcy Court granted partial summary judgment in favor of the Debtor and the Redeemer Committee. It is anticipated that the Bankruptcy Court will enter a formal order within the next couple of weeks.

- Patrick Daugherty: Patrick Daugherty has Filed a Proof of Claim for "at least $37,483,876.62" [Claim Nos. 67; 77] (the "Daugherty Claim").[6] Mr. Daugherty is a former limited partner and employee of the Debtor. The Daugherty Claim has three components, and Mr. Daugherty asserts claims: (1) for indemnification for any taxes Mr. Daugherty is required to pay as a result of the IRS audit of the Debtor's 2008-2009 tax return; (2) for defamation arising from a 2017 press release posted by the Debtor; and (3) arising from a pending Delaware lawsuit against the Debtor, which seeks to recover a judgment of $2.6 million in respect of Highland Employee Retention Assets ("HERA"), plus interest, from assets Mr. Daugherty claims were fraudulently transferred to the Debtor. The Daugherty Claim also seeks (a) the value of Mr. Daugherty's asserted interest in HERA, which he values at approximately $26 million; and (b) indemnification for fees incurred in the Delaware action and in previous litigation in Texas State Court. The Debtor believes that the Daugherty Claim should be allowed in the amount of

---

[5] See *Debtor's Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS Securities LLC and UBS AG, London Branch* [D.I. 1180]; *Debtor's Opening Brief in Support of Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS Securities LLC and UBS AG, London Branch* [D.I. 1181]; *Redeemer Committee of the Highland Crusader Fund and the Crusaders Funds' Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS AG, London Branch and UBS Securities LLC* [D.I. 1183]; and *Redeemer Committee of the Highland Crusader Fund and the Crusaders Funds' Brief in Support of Motion for Partial Summary Judgment and Joinder in the Debtor's Motion for Partial Summary Judgment on Proof of Claim No. 190 and 191 of UBS AG, London Branch and UBS Securities LLC* [D.I. 1186].

[6] On October 23, 2020, Mr. Daugherty filed *Patrick Hagaman Daugherty's Motion for Leave to Amend Proof of Claim No. 77* [D.I. 1280] pursuant to which Mr. Daugherty has asked leave to amend the Daugherty Claim to assert damages of $40,710,819.42. On November 17, 2020, the Bankruptcy Court approved Mr. Daugherty's request to amend the Daugherty Claim from the bench.

$3,722,019; however, the Debtor believes, for various reasons, that the balance of the Daugherty Claim lacks merit.  The Debtor's defenses to the Daugherty Claim are described in the *Debtor's (i) Objection to Claim No. 77 of Patrick Hagaman Daugherty and (ii) Complaint to Subordinate Claim of Patrick Hagaman Daugherty* [D.I. 1008].

## H.     The Debtor's Bankruptcy Proceeding

On October 16, 2019, the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").  On December 4, 2019, the Delaware Bankruptcy Court entered an order transferring venue of the Chapter 11 Case to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").[7]  The Debtor continues to operate its business and manage its properties as debtor-in-possession under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court.

An immediate effect of commencement of the Chapter 11 Case was the imposition of the automatic stay under the Bankruptcy Code which, with limited exceptions, enjoins the commencement or continuation of all collection efforts, the enforcement of liens against property of the Debtor, and the continuation of litigation against the Debtor during the pendency of the Chapter 11 Case.  The automatic stay will remain in effect, unless modified by the Bankruptcy Court, until the later of the Effective Date and the date indicated in any order providing for the implementation of such stay or injunction.

## I.     First Day Relief

On or about the Petition Date, the Debtor filed certain "first day" motions and applications (the "First Day Motions") with the Delaware Bankruptcy Court seeking certain immediate relief to aid in the efficient administration of this Chapter 11 Case and to facilitate the Debtor's transition to debtor-in-possession status.  A brief description of each of the First Day Motions and the evidence in support thereof is set forth in the *Declaration of Frank Waterhouse in Support of First Day Motions* [D.I. 11] (the "First Day Declaration").  At a hearing on October 19, 2019, the Delaware Bankruptcy Court granted virtually all of the relief initially requested in the First Day Motions [D.I. 39, 40, 42-44].

The Delaware Bankruptcy Court subsequently entered an order authorizing the Debtor to pay critical vendor claims on a final basis [D.I. 168].  Following the transfer of the Chapter 11 Case to the Bankruptcy Court, the Bankruptcy Court entered an order authorizing the Debtor to continue its cash management system on a final basis [D.I. 379]

The First Day Motions, the First Day Declaration, and all orders for relief granted in this case can be viewed free of charge at https://www.kccllc.net/hcmlp.

---

[7] All docket reference numbers refer to the docket maintained by the Bankruptcy Court.

002292

## J.     Other Procedural and Administrative Motions

On and after the Petition Date, the Debtor also filed a number of motions and applications to retain professionals and to streamline the administration of the Chapter 11 Case, including:

- Interim Compensation Motion.   On October 29, 2019, the Debtor filed the *Debtor's Motion Pursuant o Sections 105(a), 330 and 331 of the Bankruptcy Code for Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I. 72] (the "Interim Compensation Motion").   The Interim Compensation Motion sought to establish procedures for the allowance and payment of compensation and reimbursement of expenses for attorneys and other professionals whose retentions are approved by the Bankruptcy Court pursuant to section 327 or 1103 of the Bankruptcy Code and who will be required to file applications for allowance of compensation and reimbursement of expenses pursuant to section 330 and 331 of the Bankruptcy Code.   On November 14, 2019, the Delaware Bankruptcy Court entered an order granting the Interim Compensation Motion [D.I. 141].

- Ordinary Course Professionals.   On October 29, 2019, the Debtor filed the Motion of the Debtor for an Order Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course of Business [D.I. 75] (the "OCP Motion").   The OCP Motion sought authority for the Debtor to retain and compensate certain professionals in the ordinary course of its business.   On November 26, 2019, the Delaware Bankruptcy Court entered an order granting the OCP Motion [D.I. 176].

- Retention Applications.   During the course of the chapter 11 case, the Delaware Bankruptcy Court or Bankruptcy Court, as applicable, have approved a number of applications by the Debtor seeking to retain certain professionals pursuant to sections 327, 328 and/or 363 of the Bankruptcy Code, including Pachulski Stang Ziehl & Jones LLP as legal counsel [D.I. 183], Development Specialists, Inc. as chief restructuring officer and financial advisor [D.I. 342], Kurtzman Carson Consultants LLC as administrative advisor [D.I. 74], Mercer (US) Inc. as compensation consultant [D.I. 381], Hayward & Associates PLLC as local counsel [D.I. 435], Foley Gardere, Foley & Lardner LLP as special Texas counsel [D.I. 513], Deloitte Tax LLP as tax services provider [D.I. 551], Wilmer Cutler Pickering Hale and Dorr LLP as regulatory and compliance counsel [D.I. 669], and Hunton Andrews Kurth LLP as special tax counsel [D.I. 763].

## K.     United States Trustee

While the Chapter 11 Case was pending in the Delaware Bankruptcy Court, the U.S. Trustee for Region 3 appointed Jane Leamy as the attorney for the U.S. Trustee in connection with this Chapter 11 Case (the "Delaware U.S. Trustee").   Following the transfer of the Chapter 11 Case to the Bankruptcy Court, the Delaware U.S. Trustee no longer represented the U.S. Trustee, and the U.S. Trustee for Region 6 appointed Lisa Lambert as the attorney for the U.S. Trustee in connection with this Chapter 11 Case (the "Texas U.S. Trustee," and together with the

Delaware U.S. Trustee, the "U.S. Trustee").  The Debtor has worked cooperatively to address concerns and comments from the U.S. Trustee's office during this Chapter 11 Case.

**L.      Appointment of Committee**

On October 29, 2019, the Delaware U.S. Trustee appointed the Committee in this Chapter 11 Case [D.I. 65].  The members of the Committee are (a) Redeemer Committee of Highland Crusader Fund, (b) Meta-e Discovery, (c) UBS Securities LLC and UBS AG London Branch, and (d) Acis Capital Management, L.P. and Acis Capital Management GP, LLP.  Meta-E Discovery is a vendor to the Debtor.  The other members of the Committee are litigants in prepetition litigation with the Debtor as described in ARTICLE II.G.  The Bankruptcy Court approved the retention of Sidley Austin LLP as counsel to the Committee [D.I. 334], Young Conaway Stargatt & Taylor, LLP as Delaware co-counsel to the Committee [D.I. 337], and FTI Consulting, Inc. as financial advisor to the Committee [D.I. 336].

**M.      Meeting of Creditors**

The meeting of creditors under section 341(a) of the Bankruptcy Code was initially scheduled for November 20, 2019, at 9:30 a.m. (prevailing Eastern Time) at the J. Caleb Boggs Federal Building, 844 N. King Street, Room 3209, Wilmington, Delaware 19801, and was rescheduled to December 3, 2019, at 10:30 a.m. (prevailing Eastern Time).  At the meeting of creditors, the Delaware U.S. Trustee and creditors asked questions of a representative of the Debtor.

Following the transfer of the Chapter 11 Case to the Bankruptcy Court, the Texas U.S. Trustee scheduled an additional meeting of creditors under section 341(a) for January 9, 2020, at 11:00 a.m. (prevailing Central Time) at the Office of the U.S. Trustee, 1100 Commerce Street, Room 976, Dallas, Texas 75242, at the conclusion of that meeting, the Texas U.S. Trustee continued the meeting to January 22, 2020.  The Texas U.S. Trustee and creditors asked questions of a representative of the Debtor at the January 9 and January 22, 2020 meetings.

**N.      Schedules, Statements of Financial Affairs, and Claims Bar Date**

The Debtor filed its Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules") on December 19, 2019 [D.I. 247-248].  A creditor whose Claim is set forth in the Schedules and not identified as contingent, unliquidated or disputed may have elected to file a proof of claim against the Debtor.

The Bankruptcy Court established (i) April 8, 2020 as the deadline for Creditors (other than governmental units) to file proofs of claim against the Debtor; (ii) April 13, 2020, as the deadline for any governmental unit (as such term is defined in section 101(27) of the Bankruptcy Code), (iii) April 23, 2020, and as the deadline for any investors in any fund managed by the Debtor to file proofs of claim against the Debtor; and (iv) May 26, 2020 as the deadline for the Debtor's employees to file proofs of claim against the Debtor pursuant to and accordance with Court's order entered on April 3, 2020 [D.I. 560].[8]  Consequently, the bar date for filing proofs

---

[8] During the course of its Chapter 11 Case, the Debtor entered into stipulations to extend the Bar Date for certain other claimants or potential claimants.

of claims has passed and any claims filed after the applicable bar date will be considered late filed.

**O.      Governance Settlement with the Committee**

On January 9, 2020, the Bankruptcy Court entered the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [D.I. 339] (the "Settlement Order").

Among other things, the Settlement Order approved a term sheet (the "Term Sheet") agreed to by the Debtor and the Committee pursuant to which the Debtor agreed to abide by certain protocols governing the production of documents and certain protocols governing the operation of the Debtor's business (the "Operating Protocols").  Under the Operating Protocols, the Debtor agreed to seek consent from the Committee prior to entering into certain "Transactions" (as defined in the Operating Protocols.  The Operating Protocols were amended on February 21, 2020, with the consent of the Committee [D.I. 466].

Pursuant to the Term Sheet, the Debtor also granted the Committee standing to pursue certain estate claims and causes of action against Mr. Dondero, Mr. Okada, other insiders of the Debtor, and the Related Entities (as defined in the Operating Protocols) (collectively, the "Estate Claims").  To the extent permitted, the Estate Claims and the ability to pursue the Estate Claims are being transferred to either the Claimant Trust or Litigation Sub-Trust pursuant to the Plan.

In connection with the Settlement Order, an independent board of directors was also appointed at Strand, the Debtor's general partner (the "Independent Board").  The members of the Independent Board are John S. Dubel, James P. Seery, Jr., and Russell Nelms.  The Independent Board was tasked with managing the Debtor's operations during the Chapter 11 Case and facilitating a reorganization or orderly liquidation of the Debtor's Estate.

**P.      Appointment of James P. Seery, Jr., as Chief Executive Officer and Chief Restructuring Officer**

Following their appointment in January 2020, the Independent Board determined that it would be more efficient for the Debtor to have a traditional corporate management structure, i.e. a fully engaged chief executive officer supervised by the Independent Board.  The Independent Board ultimately determined that Mr. Seery – a member of the Independent Board – had the requisite experience and expertise to lead the Debtor.  On June 23, 2020, the Debtor filed *Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) for Authorization to Retain James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer and Foreign Representative Nunc Pro Tunc to March 15, 2020* [D.I. 774] (the "Seery Retention Motion") to retain Mr. Seery as chief executive officer, chief restructuring officer, and foreign representative.

The Bankruptcy Court entered an order approving the Seery Retention Motion on July 16, 2020 [D.I. 854].  Mr. Seery was retained as the Debtor's chief executive officer and the duties of Bradley Sharp of DSI as the Debtor's chief restructuring officer and foreign representative were transferred to Mr. Seery.

002295

## Q.     Mediation

On August 3, 2020, the Bankruptcy Court entered the *Order Directing Mediation* [D.I. 912] pursuant to which the Bankruptcy Court ordered the Debtor, the Committee, UBS, Acis, the Redeemer Committee, and Mr. Dondero into mediation and appointed Sylvia Mayer and Allan Gropper as the mediators (the "Mediators").  The mediation began on August 27, 2020, and is still open as of the date of this Disclosure Statement

## R.     Postpetition Settlements

### 1.     Settlement with Acis and the Terry Parties

With the assistance of the Mediators, on September 9, 2020, (i) the Debtor, (ii) Acis LP, (iii) Acis GP, and (iv) Joshua N. Terry, individually and for the benefit of his individual retirement accounts, and Jennifer G. Terry, individually and for the benefit of her individual retirement accounts and as trustee of the Terry Family 401-K Plan (together, the "Terry Parties") executed that certain Settlement Agreement and General Release.  On September 23, 2020, the Debtor filed the *Debtor's Motion for Entry of an Order Approving Settlement with (a) Acis Capital Management, L.P. and Acis Capital Management GP LLC (Claim No. 23), (b) Joshua N. Terry and Jennifer G. Terry (Claim No. 156), and (c) Acis Capital Management, L.P. (Claim No. 159) and Authorizing Actions Consistent Therewith* [D.I. 1087] (the "Acis Settlement Motion").

The Settlement Agreement and General Release contain the following material terms, among others:

- The proof of claim filed by Acis [Claim No. 23] will be Allowed in the amount of $23,000,000 as a General Unsecured Claim.

- On the Effective Date of the Plan (or any other plan of reorganization confirmed by the Bankruptcy Court), the Debtor will pay in cash to:

  o   Mr. and Mrs. Terry in the amount of $425,000 plus 10% simple interest (calculated on the basis of a 360-day year from and including June 30, 2016), in full and complete satisfaction of the proof of claim filed by the Terry Parties [Claim No. 156];

  o   Acis LP in the amount of $97,000, which amount represents the legal fees incurred by Acis LP with respect to the N*WCC, LLC v. Highland CLO Management, LLC, et al.*, Index No. 654195/2018 (N.Y. Sup. Ct. 2018), in full and complete satisfaction of the proof of claim filed by Acis LP [Claim No. 159]; and

  o   Mr. Terry in the amount of $355,000 in full and complete satisfaction of the legal fees assessed against Highland CLO Funding, Ltd., in *Highland CLO Funding v. Joshua Terry*, [No Case Number], pending in the Royal Court of the Island of Guernsey;

002296

The Settlement Agreement also provides that within five days of the Bankruptcy Court's approval of the Settlement Agreement and the General Release, the Debtor will move to withdraw, with prejudice, the proofs of claim that the Debtor filed in the Acis bankruptcy cases and the motion filed by the Debtor in the Acis bankruptcy cases seeking an administrative claim for postpetition services provided to Acis.

On October 5, 2020, James Dondero filed an objection to the Acis Settlement Motion [D.I. 1121] (the "Dondero Objection"). On October 28, 2020, the Bankruptcy Court entered an order approving the Acis Settlement Motion and overruling the Dondero Objection in its entirety [DI.I. 1347]. On November 9, 2020, Mr. Dondero filed a notice of his intent to appeal the order approving the Acis Settlement Motion.

The foregoing is a summary only, and all parties are encouraged to review the Acis Settlement Motion and related documents for additional information on the Settlement Agreement and General Release.

2.    Settlement with the Redeemer Committee

The Debtor, Eames, Ltd., the Redeemer Committee, and the Crusader Funds (collectively, the "Settling Parties") executed a settlement (the "Redeemer Stipulation"). The Redeemer Stipulation was also executed, solely with respect to paragraphs 10 through 15 thereof, by Hockney, Ltd., Strand, Highland CDO Opportunity Master Fund, L.P., Highland Credit Strategies Master Fund, L.P., Highland Credit Opportunities CDO, L.P., House Hanover, LLC, and Alvarez & Marsal CRF Management, LLC (collectively, the "Additional Release Parties"). On September 23, 2020, the Debtor filed *Debtor's Motion for Entry of an Order Approving Settlements with (A) the Redeemer Committee of the Highland Crusader Funds (Claim No. 72), and (B) the Highland Crusader Funds (Claim No. 81), and Authorizing Actions Consistent Therewith* [D.I. 1089] seeking approval of the Redeemer Stipulation (the "Redeemer Settlement Motion").

The Redeemer Stipulation contains the following material terms, among others:

- The proof of claim filed by the Redeemer Committee [Claim No. 72] will be Allowed in the amount of $137,696,610 as a General Unsecured Claim;

- The proof of claim filed by the Crusader Funds [Claim No. 81] will be Allowed in the amount of $50,000 as a General Unsecured Claim;

- The Debtor and Eames, Ltd., each (a) consented to the cancellation of certain interests in the Crusader Funds held by them, and (b) agreed that they will not object to the cancellation of certain interests in the Crusader Funds held by the Charitable Donor Advised Fund;4

- The Debtor and Eames each acknowledged that they will not receive any portion of certain reserved distributions, and the Debtor further acknowledged that it will not receive any payments from the Crusader Funds in respect of any deferred fees, distribution fees, or management fees;

- 29 -

- The Debtor and the Redeemer Committee agreed to a form of amendment to the shareholders' agreement for Cornerstone Healthcare Group and to a process to monetize Cornerstone Healthcare Group;

- Upon the effective date of the Redeemer Stipulation, the Settling Parties and the Additional Release Parties shall exchange releases as set forth in the Redeemer Stipulation; and

- All litigation between the Debtor, Eames, Ltd., and the Additional Highland Release Parties (as defined in the Redeemer Stipulation) on the one hand, and the Redeemer Committee and the Crusader Funds, on the other hand, will cease.

On October 16, 2020, UBS filed an objection to the Redeemer Settlement Motion [D.I. 1190] (the "UBS Objection"). On October 22, 2020, the Bankruptcy Court entered an order approving the Redeemer Settlement Motion and overruling the UBS Objection in its entirety [DI.I. 1273]. On November 6, 2020, UBS filed a notice of its intent to appeal the order approving the Redeemer Settlement Motion.

The foregoing is a summary only, and all parties are encouraged to review the Redeemer Settlement Motion and related documents for additional information on the Redeemer Stipulation.

## S.    Certain Outstanding Material Claims

As discussed above, April 8, 2020, was the general bar date for filing proofs of claim. The Debtor has begun the process of resolving those Claims. Although each Claim represents a potential liability of the Estate, the Debtor believes that, in addition to UBS's Claim, the Claims filed by Integrated Financial Associates, Inc. ("IFA"), the HarbourVest Entities,[9] and Hunter Mountain represent the largest unresolved Claims against the Estate.

- IFA Proof of Claim. IFA filed a proof of claim [Claim No. 93] (the "IFA Claim") seeking damages in the amount of $241,002,696.73 arising from the purported joint control of the Debtor and NexBank, SSB, and the Debtor's management of various lenders to IFA. The Debtor believes that IFA's claim should be disallowed in its entirety. IFA's claim and the Debtor's defenses thereto are described in greater detail in the *Objection to Proof of Claim No. 93 of Integrated Financial Associates, Inc.* [D.I. 868]. On October 4, 2020, the Bankruptcy Court entered the *Order Approving Stipulation Regarding Proof of Claim No. 93 of Integrated Financial Associates, Inc.* [D.I. 1126], which capped the IFA Claim, for all purposes, at $8,000,000.

- HarbourVest Entities Proofs of Claim. The HarbourVest Entities are investors in Highland CLO Funding, Ltd. ("HCLOF") and filed proofs of claim against the

---

[9] "HarbourVest Entities" means HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P.

Debtor's Estate [Claim No. 143, 147, 149, 150, 153, 154] (the "<u>HarbourVest Claims</u>"). The Debtor included an assertion of "no liability" in respect of the HarbourVest Claims in its Debtor's *First Omnibus Objection to Certain (a) Duplicate Claims; (b) Overstated Claims; (c) Late-Filed Claims; (d) Satisfied Claims; (e) No-Liability Claims; and (f) Insufficient Documentation Claims* [D.I. 906]. HarbourVest provided a response in its *HarbourVest Response to Debtor's First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No-Liability Claims; and (F) Insufficient-Documentation Claims* [D.I. 1057]. The HarbourVest Entities' response argued that the Debtor's objection should be overruled, and set forth allegations in support of claims under federal and state law and Guernsey law, including claims for fraud, violations of securities laws, breaches of fiduciary duties, and RICO violations. The Debtor intends to vigorously defend the HarbourVest Claims on various grounds, including, among others, the failure to state a claim upon which relief can be granted, the lack of reasonable reliance, the lack of misrepresentations, the lack of reasonable reliance, the failure to mitigate damages, the parties' agreements bar or otherwise limit the Debtor's liability, and waiver and estoppel. The HarbourVest Entities invested approximately $80 million in HCLOF but seek an allowed claim in excess of $300 million dollars (after giving effect to treble damages for the alleged RICO violations).

- <u>Hunter Mountain Proof of Claim</u>. Hunter Mountain is one of the Debtor's limited partners. Hunter Mountain filed a proof of claim [Claim No. 152] seeking a $60,298,739 indemnification claim against the Debtor because of the Debtor's alleged failures to make priority distributions to Hunter Mountain under the Debtor's Partnership Agreement. The Debtor believes that it has meritorious defenses to Hunter Mountain's claim. Hunter Mountain's claim and the Debtor's defenses to such claim are described in greater detail in the *Debtor's (i) Objection to Claim No. 152 of Hunter Mountain Investment Trust and (ii) Complaint to Subordinate Claim of Hunter Mountain Investment Trust and for Declaratory Relief* [D.I. 995]. The Debtor believes that Hunter Mountain's proof of claim should either be disallowed in its entirety or subordinated in its entirety.

In addition to the foregoing, the UBS Claim (in the amount of $1,039,957,799.40) and the Daugherty Claim (in the amount of $40,710,819.42) remain outstanding. As set forth above, partial summary judgment on the UBS Claim was granted in favor of the Debtor and the Redeemer Committee on November 20, 2020, and a formal order is expected to be entered within the next couple of weeks.

The Daugherty Claim has been allowed for voting purposes only in the amount of $9,134,019 [D.I. 1422]. In a bench ruling on November 20, 2020, the Bankruptcy Court allowed UBS Claims for voting purposes only in the amount of $94,761,076 [D.I. 1646].

**T.  Treatment of Shared Service and Sub-Advisory Agreements**

As discussed in the Plan, the Reorganized Debtor will manage the wind down of the Managed Funds. However, it is not anticipated that either the Reorganized Debtor or the

- 31 -

Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities[10] pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities.

Currently, the Debtor receives approximately $2.2 million per month in revenue from such contracts. However, in order to service those contracts, the Debtor must maintain a full staff and the cost of providing services under such contracts, among other factors, has historically resulted in a net loss to the Debtor. As such, the Debtor does not believe that assuming these contracts would benefit the Estate.

Further, the contracts generally contain anti-assignment provisions which the Debtor believes may be enforceable under 11 U.S.C. § 365(c). These provisions, therefore, would arguably prevent the assignment of such contracts without the consent of the Debtor's contract counterparty. However, even if 11 U.S.C. § 365(c) would not prevent assignment, the contracts are generally terminable at will by either party. As such, assuming and assigning such contracts without the consent of the contract counterparty would be of nominal or no benefit to the Estate. It is doubtful that any assignee would provide consideration to the Debtor for the assignment of such contract as the contract counterparty could simply terminate the contract immediately following assignment. As such, the Debtor does not believe that there is any benefit to the Estate in attempting to assign these contracts.

Notwithstanding the foregoing disclosure, the Debtor is currently assessing whether it is both possible and in the best interests of the Estate to assume and assign such shared services and sub-advisory agreements to a Related Entity.

During the course of this Chapter 11 Case, Mr. Daugherty stated that he would be willing to assume the Debtor's obligations under the shared service and sub-advisory contracts. The Independent Directors reviewed Mr. Daugherty's proposal and for the foregoing reasons, among others, determined that it was not workable and would provide no benefit to the Estate.

**U.    Portfolio Managements with Issuer Entities**

The Debtor is party to certain portfolio management agreements (including any ancillary agreements relating thereto collectively being the "Portfolio Management Agreements" and each a "Portfolio Management Agreement") with ACIS CLO 2017-7 Ltd., Brentwood CLO, Ltd., Gleneagles CLO, Ltd., Greenbriar CLO, Ltd., Highland CLO 2018-1, Ltd., Highland Legacy Limited, Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Pam Capital Funding LP, PamCo Cayman Ltd., Rockwall CDO II Ltd., Rockwall CDO Ltd., Southfork CLO Ltd., Stratford CLO Ltd., Westchester CLO, Ltd., Aberdeen Loan Funding, Ltd., Bristol Bay Funding Ltd. Eastland CLO, Ltd., Grayson CLO, Ltd., Highland Credit Opportunities CDO Ltd., Jasper CLO, Ltd., Liberty Cayman Holdings, Ltd., Liberty CLO, Ltd., Red River CLO, Ltd., Valhalla CLO, Ltd. (each an "Issuer" and collectively the "Issuers") wherein the Debtor agreed to generally provide certain services to each Issuer in the Debtor's capacity as a portfolio manager in exchange for certain fees as described in the applicable Portfolio Management Agreement.

---

[10] For the avoidance of doubt, the Debtor does not consider any of the Issuers (as defined herein) to be a Related Entity.

- 32 -

002300