**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re:** Highland Capital Management, L.P<br>Highland Capital Management Fund Advisors, L.P.<br>et al | § | Case No. 19-34054-SGJ-11 |
| | § | |
| Appellant | § | |
| vs. | § | |
| Highland Capital Management, L.P., | § | |
| | § | 3:21-CV-00538-N |
| | § | |
| Appellee | § | |

**[1943] Order confirming the fifth amended chapter 11 plan,** Entered on 2/22/2021.

**APPELLANT RECORD**
**VOLUME 9**

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ11) |
| Debtor. | |

*I N D E X*

## AMENDED DESIGNATION BY NEXPOINT ADVISORS, L.P. AND HIGHLAND
## CAPITAL MANAGEMENT FUND ADVISORS, L.P.
## OF ITEMS FOR THE RECORD ON APPEAL

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,

L.P. (the "Appellants"), creditors and parties-in-interest in the above styled and numbered

bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"),

and, with respect to their *Notice of Appeal* [docket no. 1957], hereby file their *Amended*

*Designation of Items for the Record on Appeal* (the "Designation") as follows:

| | Item | **Bankruptcy Docket Number** | **Description** |
|---|---|---|---|
| | | | **Pleadings and Items on Docket** |
| *Vol. 1* 000001 | 1 | 1957 | Notice of Appeal |
| 000165 000326 | 2 | 1943 | Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief |
| | 3 | | Docket Sheet of Bankruptcy Case No. 19-34054 |
| *Vol. 2* 000639 | 4 | 1606 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000666 | 5 | 1648 | Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000675 | 6 | 1656 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000820 | 7 | 1670 | Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000870 | 8 | 1719 | Second Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| *Vol. 3* 000880 | 9 | 1749 | Third Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000886 | 10 | 1772 | Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000901 | 11 | 1791 | Notice of Withdrawal of Certain Executory Contracts and Unexpired Leases from List of Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan |
| 000906 | 12 | 1807 | Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management |
| 001031 | 13 | 1808 | Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) |
| *Vol. 4* 001097 | 14 | 1811 | Notice of Filing Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications) |
| *Vol. 5* 001346 | 15 | 1814 | Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |

AMENDED DESIGNATION BY NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P. OF ITEMS FOR THE RECORD ON APPEAL—Page 2

| | 16 | 1847 | Fourth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
|---|---|---|---|
| | 17 | 1873 | Fifth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| | 18 | 1875 | Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland of Highland Capital Management, L.P. (As Modified) |
| | 19 | 1887 | Supplemental Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| | 20 | 1671 | United States Trustee's Limited Objection to Confirmation of Debtors' Fifth Amended Plan of Reorganization |
| | **Evidence and Transcripts** | | |
| | 21 | 1894 | Transcript of February 2, 2021 Confirmation Hearing |
| | 22 | 1905 | Transcript of February 3, 2021 Confirmation Hearing |
| | 23 | 1917 | Transcript of February 8, 2021 Bench Ruling |
| | 24 | 1794 1795 1822 1863 1866 1877 1895 1915 | All exhibits admitted into evidence during February 2 and February 3, 2021 Confirmation Hearing |

*Handwritten annotations (left margin, top to bottom):*
Vol 5
00 1414
00 1421
00 1427
00 1475
00 1482
00 1485
081783
002040
082091
002188
Vol 12 - 002931
Vol 50 - 013295
- 013297
Vol. 51 - 013373
Vol. 54 - 014182
Vol 55 - 014506

*Handwritten note below table:*
✳ 1822 - Vol. 12 - 50 (39 Volumes)

RESPECTFULLY SUBMITTED this 22d day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email:   drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 22d day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Debtor.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.

The Issuers filed proofs of claim [Claim No. 165, 168, and 169] asserting claims against the Debtor for damages arising from, relating to or otherwise concerning (i) such Issuer's Portfolio Management Agreement(s) with the Debtor, including, without limitation, failure to perform or other breach of the Portfolio Management Agreement(s), rejection of the Portfolio Management Agreement(s), any cure amount as a result of assumption of the Portfolio Management Agreement(s), any adequate assurance of future performance as a result of assumption of the Portfolio Management Agreement(s), and any failure to provide and pay for indemnification or other obligations under the Portfolio Management Agreement(s); and (ii) the action or inaction of the Debtor to the detriment of such Issuer (collectively, the "Issuer Claims"). The Debtor believes that it has satisfied its obligations to the Issuers; that the Issuer Claims lack merit; and that the Debtor will have no liability with respect to the Issuer Claims. However, such proofs of claim remain outstanding.

The Issuers have taken the position that the rejection of the Portfolio Management Agreements (including any ancillary documents) would result in material rejection damages and have encouraged the Debtor to assume such agreements. Nonetheless, the Issuers and the Debtor are working in good faith to address any outstanding issues regarding such assumption. The Portfolio Management Agreements may be assumed either pursuant to the Plan or by separate motion filed with the Bankruptcy Court.

The Debtor is still assessing its options with respect to the Portfolio Management Agreements, including whether to assume the Portfolio Management Agreements.

## V. Resignation of James Dondero

On October 9, 2020, Mr. Dondero resigned as an employee and portfolio manager of the Debtor.

## W. Exclusive Periods for Filing a Plan and Soliciting Votes

Under the Bankruptcy Code, a debtor has the exclusive right to file and solicit acceptance of a plan or plans of reorganization for an initial period of 120 days from the date on which the debtor filed for voluntary relief. If a debtor files a plan within this exclusive period, then the debtor has the exclusive right for 180 days from the petition date to solicit acceptances to the plan. During these exclusive periods, no other party in interest may file a competing plan of reorganization; however, a court may extend these periods upon request of a party in interest and "for cause."

The Debtor filed motions to extend the exclusive period, and the Bankruptcy Court entered the following orders granting such applications:

- Order Granting Debtor's Motion for Entry of an Order Pursuant to 11 U.S.C. § 1121(d) and Local Rule 3016-1 Extending the Exclusivity Periods for the Filing and Solicitation of Acceptances of a Chapter 11 Plan [D.I. 460];

- Agreed Order Extending Exclusive Periods by Thirty Days [D.I. 668];

- Order Granting Debtor's Third Motion for Entry of an Order Pursuant to 11 U.S.C. § 1121(d) and Local Rule 3016-1 Further Extending the Exclusivity Periods for the Filing and Solicitation of Acceptances of a Chapter 11 Plan [D.I. 820]; and

- Order Further Extending the Debtor's Exclusive Period for Solicitation of Acceptance of a Chapter 11 Plan [D.I. 1092].

Pursuant to the foregoing orders, the Bankruptcy Court extended the exclusivity period through June 12, 2020, for the filing of a plan, which was subsequently extended through July 13, 2020, and again through August 12, 2020.  The Bankruptcy Court also extended the exclusivity period for the solicitation of votes to accept such plan through August 11, 2020, which was subsequently extended through September 10, 2020, and again through October 13, 2020, and December 4, 2020.

**X.    Negotiations with Constituents**

The Debtor, Mr. Dondero, and certain of the creditors have been negotiating a consensual reorganization plan for the Debtor that contemplates the Debtor continuing its business largely in its current form.  Those negotiations have yet to reach conclusion but are continuing, and the negotiations were part of the previously discussed mediation.  There is no certainty that those negotiations will reach a consensual resolution of the Debtor's bankruptcy case.

**Y.    Highland Capital Management, L.P. Retirement Plan and Trust**

The Highland Capital Management, L.P. Retirement Plan And Trust ("Pension Plan") is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  29 U.S.C. §§ 1301-1461.

The Debtor is the contributing sponsor of the Pension Plan.  As such, the PBGC asserts that Debtor is liable to contribute to the Pension Plan the amounts necessary to satisfy the minimum funding standards in ERISA and the Internal Revenue Code of 1986, as amended ("IRC").  *See* 29 U.S.C. §§ 1082, 1083; 26 U.S.C. §§ 412, 430.  As the sponsor of the Pension Plan, the PBGC asserts Debtor is also liable for insurance premiums owed to PBGC.  *See* 29 U.S.C. §§ 1306, 1307.  The PBGC asserts that any members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) are also jointly and severally liable with the Debtor for such obligations relating to the Pension Plan.

The Pension Benefit Guaranty Corporation ("PBGC"), the federal agency that administers the pension insurance program under Title IV of ERISA, filed contingent proofs of claims against the Debtors for (1) the Pension Plan's potential underfunded benefit liabilities; (2) the potential  unliquidated unpaid minimum funding contributions owed to the Pension Plan; and (3) the potential unliquidated insurance premiums owed to PBGC.  The PBGC acknowledges that, as of the date of this Disclosure Statement, there is nothing currently owed by the Debtor to the PBGC.

The Debtor reserves the right to contest any claims filed by the PBGC for any reason.

Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the Pension Plan and shall comply with all applicable statutory provisions of ERISA and the Internal Revenue Code (the "<u>IRC</u>"), including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Pension Plan in accordance with its terms and the provisions of ERISA and the IRC.  In the event that the Pension Plan terminates after the Plan of Reorganization Effective Date, the PBGC asserts that the Reorganized Debtor and each of its controlled group members will be responsible for the liabilities imposed by Title IV of ERISA.

No provision contained in the Disclosure Statement, the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1141 thereof), shall be construed as discharging, releasing, exculpating, or relieving any person or entity, including the Debtor, the Reorganized Debtor, or any person or entity in any capacity, from any liability or responsibility, if any, with respect to the Pension Plan under any law, government policy, or regulatory provision.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any person or entity as a result of any of the provisions for satisfaction, release, injunction, exculpation, and discharge of claims in the Plan, Confirmation Order, or the Bankruptcy Code.

## ARTICLE III.
## <u>SUMMARY OF THE PLAN</u>

**THIS ARTICLE III IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE MATERIAL TERMS OF THE PLAN AND IS QUALIFIED BY REFERENCE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN AND SHOULD NOT BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE PLAN.  TO THE EXTENT THERE ARE ANY INCONSISTENCIES OR CONFLICTS BETWEEN THIS ARTICLE III AND THE PLAN, THE TERMS AND CONDITIONS SET FORTH IN THE PLAN SHALL CONTROL AND GOVERN.**

**A.      Administrative and Priority Tax Claims**

1.      <u>Administrative Expense Claims</u>

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Available Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Reorganized Debtor, as applicable, and such Holder; *provided, however,* that Administrative Expense Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtor in accordance with such applicable terms and conditions

002303

relating thereto without further notice to or order of the Bankruptcy Court. All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

If an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must File, on or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtor or the Reorganized Debtor, as applicable, and the party asserting such Administrative Expense Claim by the Administrative Expense Claims Objection Deadline.

2.      Professional Fee Claims

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329,330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline. Each Holder of an Allowed Professional Fee Claim will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

On the Effective Date, the Claimant Trustee shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Claimant Trust and shall be maintained by the Claimant Trustee in accordance with the Plan and Claimant Trust Agreement. The Claimant Trust shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Debtor in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

002304

### 3. Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor: (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, or (b) such other less favorable treatment as agreed to in writing by the Debtor and such Holder. Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

### B. Classification and Treatment of Classified Claims and Equity Interests

### 1. Summary

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

002305

**Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Priority Non-Tax Claim | Unimpaired | Deemed to Accept |
| 5 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 6 | PTO Claims | Unimpaired | Deemed to Accept |
| 7 | Convenience Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 11 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

2.   Elimination of Vacant Classes

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

3.   Impaired/Voting Classes

Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

Please refer to "Distribution of Confirmation Hearing Notice and Solicitation Package to Holders of Claims and Equity Interests" and "Instructions and Procedures for Voting" in ARTICLE I.C.7 and ARTICLE I.C.8 for a discussion of how the how votes on the Plan will be solicited and tabulated.

4.   Unimpaired/Non-Voting Classes

Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

5.   Impaired/Non-Voting Classes

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

- 38 -

002306

6.      Cramdown

If any Class of Claims or Equity Interests is deemed to reject the Plan or does not vote to accept the Plan, the Debtor may (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with the terms of the Plan and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**C.      Classification and Treatment of Claims and Equity Interests**

1.      *Class 1 – Jefferies Secured Claim*

- *Classification*:  Class 1 consists of the Jefferies Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor: (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.  Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until full and final payment of such Allowed Class 1 Claim is made as provided herein.

- *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

2.      *Class 2 – Frontier Secured Claim*

- *Classification*:  Class 2 consists of the Frontier Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim:  (A) Cash in an amount equal to all accrued but unpaid interest on the Frontier Claim through and including the Effective Date and (B) the New Frontier Note.  The Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

- *Impairment and Voting*:  Class 2 is Impaired, and the Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

  The New Frontier Note will include the following terms:  (i) an extension of the maturity date to December 31, 2022; (ii) quarterly interest only payments; (iii) a payment on the New Frontier Note equal to fifty percent of the outstanding principal on December 31, 2021, if the New Frontier Note is not paid in full on or prior to such date; (iv) mandatory prepayments from the proceeds of the sale of any collateral securing the New Frontier Note; and (v) the payment of fees and expenses incurred in negotiating the terms of the New Frontier Note.

3. *Class 3 – Other Secured Claims*

   - *Classification*:  Class 3 consists of the Other Secured Claims.

   - *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3 Claim is Allowed on the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 3 Claim, at the option of the Debtor, or following the Effective Date, the Reorganized Debtor or Claimant Trustee, as applicable, (i) Cash equal to such Allowed Other Secured Claim, (ii) the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code Section 506(b), or (iii) such other treatment rendering such Claim Unimpaired.

   - *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

4. *Class 4 – Priority Non-Tax Claims*

   - *Classification*:  Class 4 consists of the Priority Non-Tax Claims.

   - *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 4 Claim is Allowed on the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 4 Claim Cash equal to the amount of such Allowed Class 4 Claim.

002308

- *Impairment and Voting*:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

5.    *Class 5 – Retained Employee Claims*

- *Classification*:  Class 5 consists of the Retained Employee Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Allowed Class 5 Claim will be Reinstated.

- *Impairment and Voting*:  Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

6.    *Class 6 – PTO Claims*

- *Classification*:  Class 6 consists of the PTO Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 6 Claim Cash equal to the amount of such Allowed Class 6 Claim.

- *Impairment and Voting*:  Class 6 is Unimpaired, and the Holders of Class 6 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 6 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

  "*PTO Claims*" means any Claim for paid time off in favor of any Debtor employee in excess of the amount that would qualify as a Priority Non-Tax Claim under section 507(a)(4) of the Bankruptcy Code.

7.    *Class 7 – Convenience Claims*

- *Classification*:  Class 7 consists of the Convenience Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 7 Claim is

002309

Allowed on the Effective Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, each Holder of an Allowed Class 7 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim (1) the treatment provided to Allowed Holders of Class 8 General Unsecured Claims if the Holder of such Class 7 Claim makes the GUC Election or (2) an amount in Cash equal to the lesser of (a) 85% of the Allowed amount of such Holder's Class 7 Claim or (b) such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- *Impairment and Voting*: Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject the Plan.

  *"Convenience Claim"* means any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or any General Unsecured Claim that makes the Convenience Class Election. For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims.

  "*Convenience Claim Pool*" means the $13,150,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein. Any Cash remaining in the Convenience Claim Pool after all distributions on account of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

  By making the GUC Election on their Ballots, each Holder of a Convenience Claim can elect the treatment provided to General Unsecured Claims.

8. <u>*Class 8 – General Unsecured Claims*</u>

- *Classification*: Class 8 consists of the General Unsecured Claims.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes the Convenience Class Election.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and

will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

  "*General Unsecured Claim*" means any prepetition Claim against the Debtor that is not Secured and is not a/an:  (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; or (e) Convenience Claim.

  "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.

9.  *Class 9 – Subordinated Claims*

- *Classification*:  Class 9 consists of the Subordinated Claims.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 9 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive either (i) the treatment provided to Allowed Class 8 Claims or (ii) if such Allowed Class 9 Claim is subordinated to the Convenience Claims and General Unsecured Claims pursuant to 11 U.S.C. § 510 or Final Order of the Bankruptcy Court, its Pro Rata share of the Subordinated Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject the Plan.

  "*Subordinated Claim*" means any Claim that (i) is or may be subordinated to the Convenience Claims and General Unsecured Claims pursuant to 11 U.S.C. § 510 or Final Order of the Bankruptcy Court or (ii) arises from a

002311

Class A Limited Partnership Interest or a Class B/C Limited Partnership Interest.

10. *Class 10 – Class B/C Limited Partnership Interests*

- *Classification*: Class 10 consists of the Class B/C Limited Partnership Interests.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject the Plan.

11. *Class 11 – Class A Limited Partnership Interests*

- *Classification*: Class 11 consists of the Class A Limited Partnership Interests.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

002312

- *Impairment and Voting*: Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject the Plan.

**D.     Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**E.     Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Under section 510 of the Bankruptcy Code, upon written notice, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

**F.     Means for Implementation of the Plan**

1.     <u>Summary</u>

The Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner. The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement. Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC. The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to the Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan. The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

- 45 -

002313

Although the Reorganized Debtor will manage the wind down of the Managed Funds, it is currently anticipated that neither the Reorganized Debtor nor the Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities. The Debtor believes that the continued provision of the services under such contracts will not be cost effective.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement. Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in the Plan and the Claimant Trust Agreement.

2. The Claimant Trust[11]

(a) *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.*

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and the Litigation Sub-Trust in accordance with the Plan in each case for the benefit of the Claimant Trust Beneficiaries. Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims and the Litigation Trustee shall be the exclusive trustee with respect to the Estate Claims in each case for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trustee shall also be responsible for resolving all Claims and Equity Interests in Class 8 through Class 11, under the supervision of the Claimant Trust Oversight Committee.

On the Effective Date, the Claimant Trustee and Litigation Trustee shall execute the Litigation Sub-Trust Agreement and shall take all steps necessary to establish the Litigation Sub-Trust. Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant

---

[11] In the event of a conflict between the terms of this summary and the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, the terms of the Claimant Trust Agreement or the Litigation Sub-Trust Agreement, as applicable, shall control.

002314

Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in Article IV of the Plan, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets (including the proceeds from the Estate Claims, if any) in accordance with the provisions of the Plan and the Claimant Trust Agreement; *provided* that the Claimant Trust Oversight Committee may direct the Claimant Trust to reserve Cash from distributions as necessary to fund the Claimant Trust and Litigation Sub-Trust. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

The Litigation Sub-Trust shall be governed by the Litigation Sub-Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Sub-Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in Article IV of the Plan, subject to any required reporting as may be set forth in the Litigation Sub-Trust Agreement. The Litigation Sub-Trust shall investigate, prosecute, settle, or otherwise resolve the Estate Claims in accordance with the provisions of the Plan and the Litigation Sub-Trust Agreement and shall distribute the proceeds therefrom to the Claimant Trust for distribution. Other rights and duties of the Litigation Trustee shall be as set forth in the Litigation Sub-Trust Agreement.

(a)     *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will be overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as applicable.

The Claimant Trust Oversight Committee will initially consist of five members. Four of the five members will be representatives of the members of the Committee: (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery. The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor. The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement. The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The independent member(s) of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement. Any member of the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

002315

      (b)    *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in the Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in Article IV.C of the Plan.

      (c)    *Purpose of the Litigation Sub-Trust.*

The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims. Any proceeds therefrom shall be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries pursuant to the terms of the Claimant Trust Agreement.

      (d)    *Claimant Trust Agreement and Litigation Sub-Trust Agreement.*

The Claimant Trust Agreement generally will provide for, among other things:

- the payment of the Claimant Trust Expenses;

- the payment of other reasonable expenses of the Claimant Trust;

- the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

- the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

- the orderly monetization of the Claimant Trust Assets;

- litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

- the resolution of Claims and Equity Interests in Class 8 through Class 11, subject to reporting and oversight by the Claimant Trust Oversight Committee;

- 48 -

- • the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

- • the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expenses and shall periodically replenish such reserve, as necessary.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests (other than those assigned to the Litigation Sub-Trust), without approval of the Bankruptcy Court. Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; *provided, however,* that the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee. In all circumstances, the Claimant Trustee shall act in the best interests of the Claimant Trust Beneficiaries and with the same fiduciary duties as a chapter 7 trustee.

The Litigation Sub-Trust Agreement generally will provide for, among other things:

- • the payment of other reasonable expenses of the Litigation Sub-Trust;

- • the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; and

- • the investigation and prosecution of Estate Claims, which may include the prosecution, settlement, abandonment, or dismissal of any such Estate Claims, subject to reporting and oversight as set forth in the Litigation Sub-Trust Agreement.

The Trustees, on behalf of the Claimant Trust and Litigation Sub-Trust, as applicable, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

- 49 -

(e)     *Compensation and Duties of Trustees.*

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as appropriate.  The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

(f)     *Cooperation of Debtor and Reorganized Debtor.*

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets (including Estate Claims), the Claimant Trustee, Litigation Trustee, and each of their professionals may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets. Accordingly, the Debtor and the Reorganized Debtor, as applicable, shall reasonably cooperate with the Claimant Trustee and Litigation Trustee, as applicable, in their prosecution of Causes of Action and in providing the Claimant Trustee and Litigation Trustee with copies of documents and information in the Debtor's possession, custody, or control on the Effective Date that either Trustee indicates relates to the Estate Claims or other Causes of Action.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and Causes of Action, including Estate Claims, until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust and Litigation Sub-Trust.

(g)     *United States Federal Income Tax Treatment of the Claimant Trust.*

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as:  (a) a transfer of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claims Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by the such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests.  Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

(h)     *Tax Reporting.*

The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.

The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

- 50 -

002318

The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

(i)     *Claimant Trust Assets.*

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in the Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court.  Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

(j)     *Claimant Trust Expenses.*

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust, the Litigation Sub-Trust, and any professionals retained by such parties and entities from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

(k)     *Trust Distributions to Claimant Trust Beneficiaries.*

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, *provided* that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

(l)     *Cash Investments.*

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; *provided, however,* that such investments are

002319

investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

(m) <em>Dissolution of the Claimant Trust and Litigation Sub-Trust.</em>

The Trustees and the Claimant Trust and Litigation Sub-Trust shall be discharged or dissolved, as the case may be, at such time as: (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets; <em>provided, however,</em> that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.

Upon dissolution of the Claimant Trust, and pursuant to the Claimant Trust Agreement, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

3. <u>The Reorganized Debtor</u>

(a) <em>Corporate Existence</em>

The Debtor will continue to exist after the Effective Date, with all of the powers of partnerships pursuant to the law of the State of Delaware and as set forth in the Reorganized Limited Partnership Agreement.

002320

    (b)    *Cancellation of Equity Interests and Release*

On the Effective Date, (i) all prepetition Equity Interests, including the Class A Limited Partnership Interests and the Class B/C Limited Partnership Interests, in the Debtor shall be canceled, and (ii) all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

    (c)    *Issuance of New Partnership Interests*

On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor. Also, on the Effective Date, the Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement and receive partnership interests in the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement.

    (d)    *Management of the Reorganized Debtor*

Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC. The initial officers and employees of the Reorganized Debtor shall be selected by the Claimant Trustee. The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

As set forth in the Reorganized Limited Partnership Agreement, New GP LLC will receive a fee for managing the Reorganized Debtor. Although New GP LLC will be a limited liability company, it will elect to be treated as a C-Corporation for tax purposes. Therefore, New GP LLC (and any taxable income attributable to it) will be subject to corporate income taxation on a standalone basis, which may reduce the return to Claimants.

    (e)    *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under the Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

002321

    (f)  *Purpose of the Reorganized Debtor*

  Except as may be otherwise provided in the Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Reorganized Debtor shall oversee the resolution of Claims in Class 1 through Class 7.

  Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court

    (g)  *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets*

  Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement. As set forth in the Reorganized Limited Partnership Agreement, the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor. Any assets distributed to the Claimant Trust will be (i) deemed transferred in all respects as forth in Article IV.B.1 of the Plan, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

  4.  <u>Company Action</u>

  Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in the name of and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

  Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement

002322

of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in the Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with the Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person. On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

5.      Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, Article IV.C.2 of the Plan.

6.      Cancellation of Notes, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the

cancellation thereof, except the rights provided for pursuant to the Plan, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, Article IV.C.2 of the Plan.

7.     <u>Cancellation of Existing Instruments Governing Security Interests</u>

Upon payment or other satisfaction of an Allowed Class 1 or Allowed Class 2 Claim, or promptly thereafter, the Holder of such Allowed Class 1 or Allowed Class 2 Claim shall deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, any collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Class 1 or Allowed Class 2 Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or *lis pendens*, or similar interests or documents.

8.     <u>Control Provisions</u>

To the extent that there is any inconsistency between the Plan as it relates to the Claimant Trust, the Claimant Trust Agreement, the Reorganized Debtor, or the Reorganized Limited Partnership Agreement, the Plan shall control.

9.     <u>Treatment of Vacant Classes</u>

Any Claim or Equity Interest in a Class considered vacant under Article III.C of the Plan shall receive no Plan Distributions.

10.     <u>Plan Documents</u>

The documents, if any, to be Filed as part of the Plan Documents, including any documents filed with the Plan Supplement, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I of the Plan) and fully enforceable as if stated in full herein.

11.     <u>Highland Capital Management, L.P. Retirement Plan and Trust</u>

The Highland Capital Management, L.P. Retirement Plan And Trust ("<u>Pension Plan</u>") is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("<u>ERISA</u>"). 29 U.S.C. §§ 1301-1461. The Debtor is the contributing sponsor and, as such, the PBGC asserts that the Debtor is liable along with any members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) with respect to the Pension Plan.

Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the Pension Plan and shall comply with all applicable statutory provisions of ERISA and the Internal

002324

Revenue Code (the "IRC"), including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Pension Plan in accordance with its terms and the provisions of ERISA and the IRC.  In the event that the Pension Plan terminates after the Plan of Reorganization Effective Date, the PBGC asserts that the Reorganized Debtor and each of its controlled group members will be responsible for the liabilities imposed by Title IV of ERISA.

Notwithstanding any provision of the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1141 thereof) to the contrary, neither the Plan, the Confirmation Order, or the Bankruptcy Code shall be construed as discharging, releasing, exculpating or relieving the Debtor, the Reorganized Debtor, or any person or entity in any capacity, from any liability or responsibility, if any, with respect to the Pension Plan under any law, governmental policy, or regulatory provision.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any person or entity as a result of any of the provisions of the Plan, the Confirmation Order, or the Bankruptcy Code.  The Debtor reserves the right to contest any such liability or responsibility.

## A.     Treatment of Executory Contracts and Unexpired Leases

### 1.     Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases

Unless an Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to a Final Order of the Bankruptcy Court entered prior to the Effective Date; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date; (iv) contains a change of control or similar provision that would be triggered by the Chapter 11 Case (unless such provision has been irrevocably waived); or (v) is specifically designated as a contract or lease to be assumed in the Plan Supplement, on the Effective Date, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is listed in the Plan Supplement.

At any time on or prior to the Effective Date, the Debtor may (i) amend the Plan Supplement in order to add or remove a contract or lease from the list of contracts to be assumed or (ii) assign (subject to applicable law) any Executory Contract or Unexpired Lease, as determined by the Debtor in consultation with the Committee, or the Reorganized Debtor, as applicable.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, rejections, and assumptions and assignments.  Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts

002325

and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are rejected pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

Notwithstanding anything herein to the contrary, the Debtor shall assume or reject that certain real property lease with Crescent TC Investors L.P. ("Landlord") for the Debtor's headquarters located at 200/300 Crescent Ct., Suite #700, Dallas, Texas 75201 (the "Lease") in accordance with the notice to Landlord, procedures and timing required by 11 U.S.C. §365(d)(4), as modified by that certain *Agreed Order Granting Motion to Extend Time to Assume or Reject Unexpired Nonresidential Real Property Lease* [D.I. 1122].

2. <u>Claims Based on Rejection of Executory Contracts or Unexpired Leases</u>

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Effective Date shall be deemed rejected, pursuant to the Confirmation Order. Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the Effective Date. Any Rejection Claims that are not timely Filed pursuant to the Plan shall be forever disallowed and barred. If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

3. <u>Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases</u>

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree. The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with the Plan and setting forth the proposed cure amount (if any).

002326

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to Article V.C of the Plan shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any cure amounts have been fully paid pursuant to Article V.C of the Plan, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

## B. **Provisions Governing Distributions**

### 1. Dates of Distributions

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class and in the manner provided herein. If any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Claims and Equity Interests against the Debtor shall be deemed fixed and adjusted pursuant to the Plan and none of the Debtor, the Reorganized Debtor, or the Claimant Trust will have liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Confirmation Order. All payments and all distributions made by the Distribution Agent under the Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtor and the Reorganized Debtor.

002327

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtor and the Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests.  The Debtor, the Reorganized Debtor, the Trustees, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claims against the Debtor or Equity Interests in the Debtor occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

2.      Distribution Agent

Except as provided herein, all distributions under the Plan shall be made by the Claimant Trustee, as Distribution Agent, or by such other Entity designated by the Claimant Trustee, as a Distribution Agent on the Effective Date or thereafter.  The Reorganized Debtor will be the Distribution Agent with respect to Claims in Class 1 through Class 7.

The Claimant Trustee, or such other Entity designated by the Claimant Trustee to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions of the Plan.

The Distribution Agent shall not have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

3.      Cash Distributions

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign creditors may be made in such funds and by such means as the Distribution Agent determines are necessary or customary in a particular foreign jurisdiction.

4.      Disputed Claims Reserve

On or prior to the Initial Distribution Date, the Claimant Trustee shall establish, fund and maintain the Disputed Claims Reserve(s) in the appropriate Disputed Claims Reserve Amounts on account of any Disputed Claims.

As used above, "*Disputed Claims Reserve*" means the appropriate reserve(s) or account(s) to be established on the Initial Distribution Date and maintained by the Claimant

Trustee for distributions on account of Disputed Claims that may subsequently become an Allowed Claim.

"*Disputed Claims Reserve Amount*" means, for purposes of determining the Disputed Claims Reserve, the Cash that would have otherwise been distributed to a Holder of a Disputed Claim at the time any distributions of Cash are made to the Holders of Allowed Claims. The amount of the Disputed Claim upon which the Disputed Claims Reserve is calculated shall be: (a) the amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or Reorganized Debtor, as applicable; (c) the amount ordered by the Bankruptcy Court if it enters an order disallowing, in whole or in part, a Disputed Claim; or (d) as otherwise ordered by the Bankruptcy Court, including an order estimating the Disputed Claim.

HarbourVest and Mr. Daugherty have objected to the mechanisms for calculating the amount of the Disputed Claims Reserve with respect to the HarbourVest Claim and the Daugherty Claim, respectively, and intend to press their objections at the hearing for confirmation of the Plan.

### 5.     Distributions from the Disputed Claims Reserve

The Disputed Claims Reserve shall at all times hold Cash in an amount no less than the Disputed Claims Reserve Amount. To the extent a Disputed Claim becomes an Allowed Claim pursuant to the terms of the Plan, within 30 days of the date on which such Disputed Claim becomes an Allowed Claim pursuant to the terms of the Plan, the Claimant Trustee shall distribute from the Disputed Claims Reserve to the Holder thereof any prior distributions, in Cash, that would have been made to such Allowed Claim if it had been Allowed as of the Effective Date. For the avoidance of doubt, each Holder of a Disputed Claim that subsequently becomes an Allowed Claim will also receive its Pro Rata share of the Claimant Trust Interests. If, upon the resolution of all Disputed Claims any Cash remains in the Disputed Claims Reserve, such Cash shall be transferred to the Claimant Trust and be deemed a Claimant Trust Asset.

### 6.     Rounding of Payments

Whenever the Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash to be distributed under the Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under the Plan.

### 7.     *De Minimis* Distribution

Except as to any Allowed Claim that is Unimpaired under the Plan, none of the Debtor, the Reorganized Debtor, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in Article VI.I of the Plan within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim. *De minimis* distributions for which no such request is timely received shall

002329

revert to the Claimant Trust.  Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

8.  Distributions on Account of Allowed Claims

Except as otherwise agreed by the Holder of a particular Claim or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order.  Except as otherwise provided in the Plan, distributions to any Holder of an Allowed Claim shall, to the extent applicable, be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

9.  General Distribution Procedures

The Distribution Agent shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise.  All Cash and other property held by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, for ultimate distribution under the Plan shall not be subject to any claim by any Person.

10.  Address for Delivery of Distributions

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the addresses set forth in any written notices of address change delivered to the Debtor and the Distribution Agent; (2) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2), or (3) at the addresses in the Debtor's books and records.

If there is any conflict or discrepancy between the addresses set forth in (1) through (3) in the foregoing sentence, then (i) the address in Section (2) shall control; (ii) if (2) does not apply, the address in (1) shall control, and (iii) if (1) does not apply, the address in (3) shall control.

11.  Undeliverable Distributions and Unclaimed Property

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor or the Claimant Trust as undeliverable, no further distribution shall be made to such Holder, and Distribution Agent shall not have any obligation to make any further distribution to the Holder, unless and until the Distribution Agent is notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash within six months from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under the Plan and such Cash shall thereafter be deemed an Claimant Trust Asset in all respects and for all purposes.  Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor's Estate, the Reorganized Debtor, the Claimant Trust, or against any Holder of an Allowed Claim to whom distributions are made by the Distribution Agent.

002330

12.     Withholding Taxes

In connection with the Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. The Distribution Agent shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. As a condition to receiving any distribution under the Plan, the Distribution Agent may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Distribution Agent to comply with applicable tax reporting and withholding laws. If a Holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.

13.     Setoffs

The Distribution Agent may, to the extent permitted under applicable law, set off against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Claimant Trustee of any such claims, rights and causes of action that the Debtor, the Reorganized Debtor, or Claimant Trustee possesses against such Holder. Any Holder of an Allowed Claim subject to such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

14.     Surrender of Cancelled Instruments or Securities

As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to Article IV of the Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Distribution Agent unless waived in writing by the Distribution Agent.

15.     Lost, Stolen, Mutilated or Destroyed Securities

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to the Distribution Agent: (i) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any

002331

damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest. Upon compliance with Article VI.O of the Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to the Distribution Agent.

## C. Procedures for Resolving Contingent, Unliquidated and Disputed Claims

### 1. Filing of Proofs of Claim

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

### 2. Disputed Claims

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest or any other appropriate motion or adversary proceeding with respect thereto, which shall be litigated to Final Order or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of the Plan.

### 3. Procedures Regarding Disputed Claims or Disputed Equity Interests

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

### 4. Allowance of Claims and Equity Interests

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

*Allowance of Claims*

After the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and

002332

defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

*Estimation*

Subject to the other provisions of the Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and in accordance with the Plan and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

*Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

002333

### D.   Effectiveness of the Plan

1.   <u>Conditions Precedent to the Effective Date</u>

The Effective Date of the Plan will be conditioned upon the satisfaction or waiver by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee with such consent not to be unreasonably withheld), pursuant to the provisions of Article VIII.B of the Plan of the following:

- the Plan and the Plan Documents, including the Claimant Trust Agreement and the Reorganized Limited Partnership Agreement, and all schedules, documents, supplements and exhibits to the Plan shall have been Filed in form and substance reasonably acceptable to the Debtor and the Committee.

- The Confirmation Order shall have been entered, not subject to stay pending appeal, and shall be in form and substance reasonably acceptable to the Debtor and the Committee. The Confirmation Order shall provide that, among other things, (i) the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee are authorized to take all actions necessary or appropriate to effectuate and consummate the Plan, including, without limitation, (a) entering into, implementing, effectuating, and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in the Plan, (b) assuming the Executory Contracts and Unexpired Leases set forth in the Plan Supplement, (c) making all distributions and issuances as required under the Plan; and (d) entering into any transactions as set forth in the Plan Documents; (ii) the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent; (iii) the implementation of the Plan in accordance with its terms is authorized; (iv) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under the Plan, shall not be subject to any Stamp or Similar Tax; and (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under the Plan upon the Effective Date.

- All documents and agreements necessary to implement the Plan, including without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, in each case in form and substance reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

002334

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement the Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

- The Professional Fee Reserve shall be funded pursuant to the Plan in an amount determined by the Debtor in good faith.

2.     <u>Waiver of Conditions</u>

The conditions to effectiveness of the Plan set forth in Article VIII of the Plan (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or effectuate the Plan.  The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable.

3.     <u>Effect of Non-Occurrence of Conditions to Effectiveness</u>

Unless waived as set forth in Article VIII.B of the Plan, if the Effective Date of the Plan does not occur within twenty calendar days of entry of the Confirmation Order, the Debtor may withdraw the Plan and, if withdrawn, the Plan shall be of no further force or effect.

4.     <u>Dissolution of the Committee</u>

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto).  The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan and the Claimant Trust Agreement in connection with such representation.

002335

E.  **Exculpation, Injunction, and Related Provisions**

1.  General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

For purposes of the following provisions:

- "*Exculpated Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

- "*Released Parties*" means, collectively, (i) the Independent Directors; (ii) Strand (solely from the date of the appointment of the Independent Directors through the Effective Date); (iii) the CEO/CRO; (iv) the Committee; (v) the members of the Committee (in their official capacities), (vi) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case; and (vii) the Employees.

- "*Protected Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO

- 68 -

Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

2.   Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

3.   Exculpation

Subject in all respects to Article XII.D of the Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation  in connection with the foregoing clauses (i)-(v); *provided*, *however,* the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of the Plan, including Article IV.C.2 of the Plan, protecting such Exculpated Parties from liability.

002337

4. <u>Releases by the Debtor</u>

On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

Notwithstanding anything herein to the contrary, any release provided pursuant to Article IX.D of the Plan (i) with respect to a Senior Employee, is conditioned in all respects on (a) such Senior Employee executing a Senior Employee Stipulation on or prior to the Effective Date and (b) the reduction of such Senior Employee's Allowed Claim as set forth in the Senior Employee Stipulation (such amount, the "<u>Reduced Employee Claim</u>"), and (ii) with respect to any Employee, including a Senior Employee, shall be deemed null and void and of no force and effect (1) if there is more than one member of the Claimant Trust Oversight Committee who does not represent entities holding a Disputed or Allowed Claim (the "<u>Independent Members</u>"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full Claimant Trust Oversight Committee) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

- sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

- has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets, or

- (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with

002338

respect to (1) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (2) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing.

*Provided, however,* that the release provided pursuant to Article IX.D of the Plan will vest and the Employee will be indefeasibly released pursuant to Article IX.D of the Plan if such Employee's release has not been deemed null and void and of no force and effect on or prior to the date that is the date of dissolution of the Claimant Trust pursuant to the Claimant Trust Agreement.

By executing the Senior Employee Stipulation embodying this release, each Senior Employee acknowledges and agrees, without limitation, to the terms of this release and the tolling agreement contained in the Senior Employee Stipulation.

The provisions of this release and the execution of a Senior Employee Stipulation will not in any way prevent or limit any Employee from (i) prosecuting its Claims, if any, against the Debtor's Estate, (ii) defending him or herself against any claims or causes of action brought against the Employee by a third party, or (iii) assisting other persons in defending themselves from any Estate Claims brought by the Litigation Trustee (but only with respect to Estate Claims brought by the Litigation Trustee and not collection or other actions brought by the Claimant Trustee).

In addition to the obligations set forth in Article IX.D of the Plan, as additional consideration for the foregoing releases, the Senior Employees will waive their rights to certain deferred compensation owed to them by the Debtor. As of the date hereof, the total deferred compensation owed to the Senior Employees was approximately $3.9 million, which will be reduced by approximately $2.2 million to approximately $1.7 million. That reduction is composed of a reduction of (i) approximately $560,000 in the aggregate in order to qualify as Convenience Claims, (ii) approximately $510,000 in the aggregate to reflect the Convenience Claims treatment of 85% (and may be lower depending on the number of Convenience Claims), and (iii) of approximately $1.15 million in the aggregate to reflect an additional reduction of 40%.

As of the date of this Disclosure Statement, the Debtor has not identified any Causes of Action against any Released Parties. However, as set forth above, during the Chapter 11 Case, the Committee was granted sole standing to investigate and pursue the Estate Claims, which may include Causes of Action against certain of the Released Parties. As of the date of this Disclosure Statement, the Committee has not identified any Estate Claims against any Released Parties. The Debtor currently believes that there are no material Estate Claims or other Causes of Action against any Released Party.

5. <u>Preservation of Rights of Action</u>

*Maintenance of Causes of Action*

Except as otherwise provided in the Plan, after the Effective Date, the Reorganized Debtor or the Claimant Trust will retain all rights to commence, pursue, litigate or settle, as

appropriate, any and all Causes of Action included in the Reorganized Debtor Assets or Claimant Trust Assets, as applicable, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

*Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor or Claimant Trust, as applicable (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action have been expressly released in the Plan or any other Final Order (including, without limitation, the Confirmation Order). In addition, the right of the Reorganized Debtor or the Claimant Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

6.  <u>Injunction</u>

Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective Related Persons, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether proof of such Claims or Equity Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective Related Persons, are permanently enjoined, on and after the Effective Date, with respect to such Claims and Equity Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any

002340

judgment, award, decree, or order against the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or against property or interests in property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The injunctions set forth herein shall extend to any successors of the Debtor, the Reorganized Debtor, and the Claimant Trust and their respective property and interests in property.

**Subject in all respects to Article XII. D of the Plan, no Entity may commence or pursue a claim or cause of action of any kind against any Protected Party that arose from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice, that such claim or cause of action represents a colorable claim of bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Entity to bring such claim against any such Protected Party; *provided, however,* the foregoing will not apply to Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. As set forth in Article XI of the Plan, the Bankruptcy Court will have sole jurisdiction to adjudicate any such claim for which approval of the Bankruptcy Court to commence or pursue has been granted.**

7.      Term of Injunctions or Stays

Unless otherwise provided in the Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

8.      Continuance of January 9 Order

Unless otherwise provided in the Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, the restrictions set forth in paragraphs 9 and 10 of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course*, entered by the Bankruptcy Court on

January 9, 2020 [D.I. 339] shall remain in full force and effect following the Effective Date until the dissolution of each of the Claimant Trust and the Litigation Trust.

**F.      Article XII.D of the Plan**

Article XII.D of the Plan provides that, notwithstanding anything in the Plan to the contrary, nothing in the Plan will affect or otherwise limit or release any non-Debtor Entity's (including any Exculpated Party's) duties or obligations, including any contractual and indemnification obligations, to the Debtor, the Reorganized Debtor, or any other Entity whether arising under contract, statute, or otherwise.

**G.      Binding Nature of Plan**

On the Effective Date, and effective as of the Effective Date, the Plan, including, without limitation, the provisions in Article IX of the Plan, will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtor and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to the Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a)

**H.      Statutory Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  The Debtor believes that:  (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtor has complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.  Specifically, the Debtor believes that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code;

- The Debtor has complied and will comply with the applicable provisions of the Bankruptcy Code;

- The Plan has been proposed in good faith and not by any means forbidden by law;

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Debtor's bankruptcy case, or in connection with the Plan and incident to the case, has been or will be disclosed to the Bankruptcy Court, and any such payment:  (i) made before the confirmation of the Plan is reasonable; or (ii) is subject to the

002342

approval of the Bankruptcy Court as reasonable if it is to be fixed after confirmation of the Plan;

- Each Class of Claims or Equity Interests that is entitled to vote on the Plan will have accepted the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code;

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Expense Claims and Priority Claims will be paid in full in Cash on the Effective Date, or as soon thereafter as is reasonably practicable;

- Confirmation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor thereto under the Plan;

- The Debtor has paid or will pay all fees payable under section 1930 of title 28, and the Plan provides for the payment of all such fees on the Effective Date; and

- The Plan provides for the continuation after the Effective Date of payment of all retiree benefits, if applicable.

1.      Best Interests of Creditors Test

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the bankruptcy court find, as a condition to confirmation of a chapter 11 plan, that each holder of a claim or equity interest in each impaired class: (i) has accepted the plan; or (ii) among other things, will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such Person would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the Bankruptcy Court must: (a) estimate the net Cash proceeds (the "Liquidation Proceeds") that a chapter 7 trustee would generate if the Debtor's Chapter 11 Case were converted to a chapter 7 case on the Effective Date and the assets of such Debtor's Estate were liquidated; (b) determine the distribution (the "Liquidation Distribution") that each non-accepting Holder of a Claim or Equity Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and (c) compare each Holder's Liquidation Distribution to the distribution under the Plan that such Holder would receive if the Plan were confirmed and consummated.

2.      Liquidation Analysis

Any liquidation analysis, including the estimation of Liquidation Proceeds and Liquidation Distributions, with respect to the Debtor (the "Liquidation Analysis") is subject to numerous assumptions and there can be no guarantee that the Liquidation Analysis will be accurate. No order or finding has been entered by the Bankruptcy Court estimating or otherwise fixing the amount of Claims and Equity Interests  at the projected amounts of Allowed Claims

and Equity Interests set forth in the Liquidation Analysis. In preparing the Liquidation Analysis, the Debtor has projected an amount of Allowed Claims and Equity Interests that represents its best estimate of the chapter 7 liquidation dividend to Holders of Allowed Claims and Equity Interests. The estimate of the amount of Allowed Claims and Equity Interests set forth in the Liquidation Analysis should not be relied on for any other purpose, including, without limitation, any determination of the value of any Plan Distribution to be made on account of Allowed Claims and Equity Interests under the Plan and Disclosure Statement.

The full Liquidation Analysis is attached hereto as **Exhibit C**.

Furthermore, any chapter 7 trustee appointed in a chapter 7 liquidation would have to confront all of the issues described in this Disclosure Statement, including the prepetition litigation claims. This process would be significantly time-consuming and costly, and reduce any recoveries available to the Debtor's Estate. The Debtor believes that liquidation under chapter 7 would result in (i) smaller distributions being made to creditors than those provided for in the Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee, (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of executory contracts in connection with the cessation of the Debtor's operations, and (iii) the failure to realize greater value from all of the Debtor's assets.

Therefore, the Debtor believes that confirmation of the Plan will provide each Holder of a Claim with a greater recovery than such Holder would receive pursuant to the liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

3. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the bankruptcy court find that confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor, or any successor to the Debtor, unless the plan contemplates such liquidation or reorganization. For purposes of demonstrating that the Plan meets this "feasibility" standard, the Debtor has analyzed the ability of the Claimant Trust and the Reorganized Debtor to meet their obligations under the Plan and to retain sufficient liquidity and capital resources to conduct their business. A copy of the financial projections prepared by the Debtor is attached hereto as **Exhibit C**.

The Debtor believes that the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code. In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the Debtor analyzed their ability to satisfy their financial obligations while maintaining sufficient liquidity and capital resources. The Debtor believes that its available Cash and any additional proceeds from the Debtor's Assets will be sufficient to allow the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, to make all payments required to be made under the Plan. Accordingly, the Debtor believes that the Plan is feasible.

4.     Valuation

In order to provide information and full disclosure to parties in interest regarding the Debtor's assets, the Debtor estimates that its value and the total value of its Assets, as of September 30, 2020, was approximately $328.3 million.

5.     Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accepts the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan:  (i) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default— (a) cures any such default that occurred before or after the commencement of the Chapter 11 Case, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (b) reinstates the maturity of such claim or interest as such maturity existed before such default; (c) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (d) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (e) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan and are not insiders. Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of equity interests as acceptance by holders of at least two-thirds in amount of the allowed interests of such class. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. Section 1126(d) of the Bankruptcy Code, except as otherwise provided in section 1126(e) of the Bankruptcy Code, defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of equity interests in that class actually voting to accept or to reject the plan.

Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims or Equity Interests in any voting class must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to such Class, and without considering whether the Plan "discriminates unfairly" with respect to such Class, as both standards are described herein.

002345

### 6. Confirmation Without Acceptance by Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if less than all impaired classes entitled to vote on the plan have accepted it, *provided* that the plan has been accepted by at least one impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class's rejection or deemed rejection of the Plan, the Plan will be confirmed, at the Debtor's request, in a procedure commonly known as "cram down," so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan.

### 7. No Unfair Discrimination

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

### 8. Fair and Equitable Test

This test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class:

The condition that a plan be "fair and equitable" to a non-accepting Class of Secured Claims includes the requirements that: (a) the Holders of such Secured Claims retain the liens securing such Claims to the extent of the Allowed amount of the Claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the Plan; and (b) each Holder of a Secured Claim in the Class receives deferred Cash payments totaling at least the Allowed amount of such Claim with a present value, as of the Effective Date of the Plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

The condition that a plan be "fair and equitable" with respect to a non-accepting Class of unsecured Claims includes the requirement that either: (a) the plan provides that each Holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the Effective Date of the plan, equal to the allowed amount of such Claim; or (b) the Holder of any Claim or Equity Interest that is junior to the Claims of such Class will not receive or retain under the plan on account of such junior Claim or Equity Interest any property.

The condition that a plan be "fair and equitable" to a non accepting Class of Equity Interests includes the requirements that either: (a) the plan provides that each Holder of an Equity Interest in that Class receives or retains under the plan, on account of that Equity Interest, property of a value, as of the Effective Date of the plan, equal to the greater of (i) the allowed

002346

amount of any fixed liquidation preference to which such Holder is entitled, (ii) any fixed redemption price to which such Holder is entitled, or (iii) the value of such interest; or (b) if the Class does not receive such an amount as required under (a), no Class of Equity Interests junior to the non-accepting Class may receive a distribution under the plan.

To the extent that any class of Claims or Class of Equity Interests rejects the Plan, the Debtor reserves the right to seek (a) confirmation of the Plan under section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan in accordance with Article XIII.C of the Plan.

The Debtor believes that the Plan and the treatment of all Classes of Claims and Equity Interests under the Plan satisfy the foregoing requirements for non-consensual confirmation of the Plan.

**ARTICLE IV.**
**RISK FACTORS**

> **ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.  THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTOR'S BUSINESS OR THE PLAN AND ITS IMPLEMENTATION.**

**A.      Certain Bankruptcy Law and Other Considerations**

      1.      <u>Parties in Interest May Object to the Debtor's Classification of Claims and Equity Interests, or Designation as Unimpaired.</u>

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class.  Nevertheless, there can be no assurance that the Holders of Claims or Equity Interests or the Bankruptcy Court will reach the same conclusion.

There is also a risk that the Holders of Claims or Equity Interests could object to the Debtor's designation of Claims or Equity Interests as Unimpaired, and the Bankruptcy Court could reach the same conclusion.

      2.      <u>The Debtor May Not Be Able to Secure Confirmation of the Plan.</u>

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, findings by the bankruptcy court that:  (i) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (ii) confirmation of such plan is not likely to be followed by a liquidation or a

- 79 -

need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to Holders of Claims within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the Bankruptcy Court will confirm the Plan. The Bankruptcy Court could decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met.

If the Plan is not confirmed by the Bankruptcy Court, there can be no assurance that any alternative plan of reorganization or liquidation would be on terms as favorable to Holders of Claims as the terms of the Plan. In addition, there can be no assurance that the Debtor will be able to successfully develop, prosecute, confirm and consummate an alternative plan that is acceptable to the Bankruptcy Court and the Debtor's creditors.

3.      The Conditions Precedent to the Effective Date of the Plan May Not Occur.

As more fully set forth in Article IX of the Plan, the Effective Date of the Plan is subject to a number of conditions precedent. If such conditions precedent are not waived or not met, the Effective Date will not take place.

4.      Continued Risk Following Effectiveness.

Even if the Effective Date of the Plan occurs, the Debtor, the Reorganized Debtor, and Claimant Trust will continue to face a number of risks, including certain risks that are beyond its control, such as changes in assets, asset values, and increasing expenses. Some of these concerns and effects typically become more acute when a case under the Bankruptcy Code continues for a protracted period without indication of how or when the case may be completed. As a result of these risks and others, there is no guarantee that a chapter 11 plan of liquidation reflecting the Plan will achieve the Debtor's stated goals.

In addition, at the outset of the Chapter 11 Case, the Bankruptcy Code provides the Debtor with the exclusive right to propose the Plan and prohibits creditors and others from proposing a plan. The Debtor will have retained the exclusive right to propose the Plan upon filing its petition. If the Bankruptcy Court terminates that right, however, or the exclusivity period expires, there could be a material adverse effect on the Debtor's ability to achieve confirmation of the Plan in order to achieve the Debtor's stated goals.

5.      The Effective Date May Not Occur.

Although the Debtor believes that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.

6.     <u>The Chapter 11 Case May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code</u>

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtor believes that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in the Plan because of (a) the likelihood that the assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time, rather than selling the assets in an orderly and controlled manner, (b) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (c) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation.

7.     <u>Claims Estimation</u>

There can be no assurance that the estimated Claim amounts set forth herein are correct, and the actual amount of Allowed Claims may differ from the estimates. The estimated amounts are subject to certain risks, uncertainties, and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual amount of Allowed Claims may vary from those estimated herein.

8.     <u>The Financial Information Contained Herein is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit was Performed.</u>

**The financial information contained in this Disclosure Statement has not been audited**. In preparing this Disclosure Statement, the Debtor relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtor has used its reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement and, while the Debtor believes that such financial information fairly reflects its financial condition, the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

**B.**     **Risks Related to Recoveries under the Plan**

1.     <u>The Reorganized Debtor and/or Claimant Trust May Not Be Able to Achieve the Debtor's Projected Financial Results</u>

The Reorganized Debtor or Claimant Trust, as applicable, may not be able to achieve their projected financial results. The Financial Projections represent the best estimate of the Debtor's future financial performance, which is necessarily based on certain assumptions regarding the anticipated future performance of the Reorganized Debtor or Claimant Trust, as well as the United States and world economies in general, and the investment industry in which the Debtor operates. The Debtor's Financial Projections include key assumptions on (i) target asset monetization values, (ii) timing of asset monetization, and (iii) costs to effectuate the Plan. In terms of achieving target asset monetization values, the Debtor faces issues including investment assets with cross-ownership across related entities and challenges associated with

002349

collecting notes due from affiliates. The Debtor's Financial Projections anticipate that all investment assets will be sold by 2022, which may be at risk due to the semi-liquid or illiquid nature of the Debtor's assets, as well as general market conditions, including the sustained impact of COVID-19.  Costs are based on estimates and may increase with delays or any other unforeseen factor.  If the Reorganized Debtor or Claimant Trust do not achieve their projected financial results, the recovery for Claimant Trust Beneficiaries may be negatively affected and the Claimant Trust may lack sufficient liquidity after the Effective Date.

2.      <u>Claim Contingencies Could Affect Creditor Recoveries</u>

The estimated Claims and projected creditor recoveries set forth in this Disclosure Statement are based on various assumptions the actual amount of Allowed Claims may differ from the estimates.  Should one or more of the underlying assumptions ultimately prove incorrect, the actual Allowed amounts of Claims may vary materially from the estimated Claims contained in this Disclosure Statement.  Moreover, the Debtor cannot determine with any certainty at this time, the number or amount of Claims that will ultimately be Allowed.  Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

3.      <u>If Approved, the Debtor Release Could Release Claims Against Potential Defendants of Estate Causes of Action With Respect to Which the Claimant Trust Would Otherwise Have Recourse</u>

The Claimant Trust Assets will include, among other things, Causes of Action, including Estate Claims that will be assigned to the Litigation Sub-Trust.  The Committee's investigation of potential Estate Claims is still ongoing.  Because the Committee has not concluded its investigation as of the date hereof, and such investigation will be transferred to the Litigation Trustee, there is no certainty of whether there are viable Estate Claims against any of the Released Parties.  In the event there are viable Estate Claims against any of the Released Parties, such claims cannot be pursued for the ultimate benefit of Claimant Trust Beneficiaries if the Debtor Release is approved.

**C.      Investment Risk Disclaimer**

1.      <u>Investment Risks in General.</u>

The Reorganized Debtor is and will remain a registered investment adviser under the Investment Advisers Act of 1940, and the Reorganized Debtor will continue advising the Managed Funds.  No guarantee or representation is made that the Reorganized Debtor's or the Managed Funds' investment strategy will be successful, and investment results may vary substantially over time.

2.      <u>General Economic and Market Conditions and Issuer Risk.</u>

Any investment in securities carries certain market risks.  Investments by the Reorganized Debtor, the Managed Funds, or the Claimant Trust may decline in value for any number of reasons over which none of the Managed Funds, the Reorganized Debtor, the Claimant Trust, or the Claimant Trustee may have control, including changes in the overall

- 82 -

market and other general economic and market conditions, such as interest rates, availability of credit, inflation rates, economic uncertainty, changes in laws, currency exchange rates and controls and national, international political circumstances (including wars and security operations), and acts of God (including pandemics like COVID-19).  The value of the Managed Funds or the assets held by the Reorganized Debtor or Claimant Trust may also decline as a result of factors pertaining to particular securities held by the Managed Funds, Reorganized Debtor, or Claimant Trust, as applicable, such as perception or changes in the issuer's management, the market for the issuer's products or services, sources of supply, technological changes within the issuer's industry, the availability of additional capital and labor, general economic conditions, political conditions, acts of God, and other similar conditions.  All of these factors may affect the level and volatility of security prices and the liquidity and the value of the securities held by the Managed Fund, Reorganized Debtor, or Claimant Trust.  Unexpected volatility or illiquidity could impair the Managed Funds', Reorganized Debtor's, or Claimant Trust's profitability or result in it suffering losses.

**D.      Disclosure Statement Disclaimer**

1.      <u>The Information Contained Herein is for Disclosure Purposes Only.</u>

The information contained in this Disclosure Statement is for purposes of disclosure in connection with the Plan and may not be relied upon for any other purposes.

2.      <u>This Disclosure Statement was Not Approved by the SEC.</u>

Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

3.      <u>This Disclosure Statement Contains Forward-Looking Statements.</u>

This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995.  Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology.  The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

4.      <u>No Legal or Tax Advice is Provided to You by This Disclosure Statement.</u>

**This Disclosure Statement is not legal or tax advice to you**.  The contents of this Disclosure Statement should not be construed as legal, business or tax advice, and are not personal to any person or entity.  Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest.  This Disclosure Statement may not be relied upon for any purpose other than as a disclosure of certain information to determine how to vote on the Plan or object to confirmation of the Plan.

- 83 -

002351

5.  No Admissions Are Made by This Disclosure Statement.

The information and statements contained in this Disclosure Statement will neither (i) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtor) nor (ii) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, the Reorganized Debtor, the Claimant Trust, Holders of Allowed Claims or Equity Interests, or any other parties in interest.

6.  No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections.

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement.  The Debtor or the Reorganized Debtor or Claimant Trustee, as applicable, may seek to investigate, file and prosecute litigation rights and claims against any third parties and may object to Claims after the Confirmation Date or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such litigation claims or objections to Claims or Equity Interests.

7.  Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Equity Interests or Recover Transfers and Assets.

The Debtor, the Reorganized Debtor, the Claimant Trustee, or any party in interest, as the case may be, reserve any and all rights to object to that Holder's Allowed Claim regardless of whether any Claims or Causes of Action of the Debtor or its Estate are specifically or generally identified herein.

8.  The Information Used Herein was Provided by the Debtor and was Relied Upon by the Debtor's Advisors.

Counsel to and other advisors retained by the Debtor have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtor have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

9.  The Disclosure Statement May Contain Inaccuracies.

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date.  While the Debtor has used its reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Disclosure Statement.  Further, the information contained in this Disclosure Statement is as of the date of the Disclosure Statement and does not address events that may occur after such date. The Debtor may update this Disclosure Statement but is not required to do so.

002352

10. <u>No Representations Made Outside the Disclosure Statement Are Authorized.</u>

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. You should promptly report unauthorized representations or inducements to the counsel to the Debtor and the U.S. Trustee.

### ARTICLE V.
### ALTERNATIVES TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

If no chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code in which case, a trustee would be elected or appointed to liquidate the Debtor's assets. If the Plan is not confirmed by the Bankruptcy Court, there can be no assurance that any alternative plan of reorganization or liquidation would be on terms as favorable to Holders of Claims as the terms of the Plan. In addition, there can be no assurance that the Debtor will be able to successfully develop, prosecute, confirm and consummate an alternative plan that is acceptable to the Bankruptcy Court and the Debtor's creditors.

### ARTICLE VI.
### U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Implementation of the Plan will have federal, state, local or foreign tax consequences to the Debtor and Holders of Equity Interests as well as Holders of Claims. No tax opinion or ruling has been sought or will be obtained with respect to any tax consequences of the Plan, and the following discussion does not constitute and is not intended to constitute either a tax opinion or tax advice to any person.

The following discussion summarizes certain U.S. federal income tax consequences of the Plan to the Debtor and to Holders of Claims. This discussion assumes that each Holder of Claims is for United States federal income tax purposes:

- An individual who is a citizen or resident of the United States for federal income tax purposes;

- a corporation (or other entity treated as a corporation for United States federal income tax purposes) created or organized in or under the laws of the United States, any state thereof or the District of Columbia;

- any other person that is subject to U.S. federal income taxation on a net income basis.

- an estate the income of which is subject to United States federal income tax without regard to its source; or

- a trust (1) that is subject to the primary supervision of a United States court and the control of one or more United States persons or (2) that has a valid election in effect under applicable treasury regulations to be treated as a United States person.

- 85 -

This discussion also assumes that each Holder holds the Claims as capital assets under Section 1221 of the Internal Revenue Code.

The summary provides general information only and does not purport to address all of the federal income tax consequences that may be applicable to the Debtor or to any particular Holder of Claims in light of such Holder's own individual circumstances. In particular, the summary does not address the federal income tax consequences of the Plan to Holders of Claims that may be subject to special rules, such as non-U.S. persons, insurance companies, financial institutions, regulated investment companies, broker-dealers, persons who acquired Claims as part of a straddle, hedge, conversion transaction or other integrated transaction, or persons who acquired Claims in connection with the performance of services; persons who hold Claims through a partnership or other pass-through entity and tax-exempt organizations. The summary does not address foreign, state, local, estate or gift tax consequences of the Plan, nor does it address the federal income tax consequences to Holders of Equity Interests.

This summary is based on the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), the final, temporary and proposed Treasury regulations promulgated thereunder, judicial decisions and administrative rulings and pronouncements of the Internal Revenue Service ("IRS"), all as in effect on the date hereof and all of which are subject to change (possibly with retroactive effect) by legislation, judicial decision or administrative action. Moreover, due to a lack of definitive authority, substantial uncertainties exist with respect to various tax consequences of the Plan.

**THE TAX CONSEQUENCES TO THE HOLDERS OF CLAIMS OR EQUITY INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE APPLICABLE TAX LAW. THERE CAN BE NO ASSURANCE THAT THE IRS WILL NOT CHALLENGE ANY OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST SHOULD CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FOREIGN, FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN.**

**A.      Consequences to the Debtor**

It is anticipated that the consummation of the Plan will not result in any federal income tax liability to the Debtor. The Debtor is a partnership for federal income tax purposes. Therefore, the income and loss of the Debtor is passed-through to the Holders of its Equity Interests, and the Debtor does not pay federal income tax.

1.      Cancellation of Debt

Generally, the discharge of a debt obligation of a debtor for an amount less than the adjusted issue price (in most cases, the amount the debtor received on incurring the obligation, with certain adjustments) creates cancellation of indebtedness ("COD") income that must be included in the debtor's income. Due to the nature of the Impaired Claims, it is anticipated that

- 86 -

002354

the Debtor will not recognize any material amount of COD income. If any such COD income is recognized, it will be passed-through to the Holders of its Equity Interests, and the Holders of such Equity Interest generally will be required to include such amounts in income, unless a Holder is entitled to exclude such amounts from income under Section 108 of the Internal Revenue Code, based on the Holder's individual circumstances.

     2.     <u>Transfer of Assets</u>

Pursuant to the Plan, the Debtor's assets (including the Claimant Trust Assets and Reorganized Debtor Assets) will be transferred directly or indirectly to the Claimant Trust. For federal income tax purposes, any such assets transferred to the Claimant Trust will be deemed to have been transferred to the Claimant Trust Beneficiaries followed by the transfer by such Holders to the Claimant Trust of such assets in exchange for the respective Holders' beneficial interests in the Claimant Trust. The Claimant Trust thereafter will be treated as a grantor trust for federal income tax purposes. See U.S. Federal Income Tax Treatment of the Claimant Trust, below.

The Debtor's transfer of its assets pursuant to the Plan will constitute a taxable disposition of such assets. As discussed above, the Debtor is a partnership for federal income tax purposes. Any gain or loss recognized as a result of the taxable disposition of such assets will be passed through to the Holders of Equity Interests in the Debtor. The Debtor will not be required to pay any tax as a result of such disposition.

**B.**     **U.S. Federal Income Tax Treatment of the Claimant Trust**

It is intended that the Claimant Trust will be treated as a "grantor trust" for U.S. federal income tax purposes. In general, a grantor trust is not a separate taxable entity. The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an advanced ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. Consistent with the requirements of Revenue Procedure 94-45, the Claimant Trust Agreement requires all relevant parties to treat, for U.S. federal income tax purposes, the transfer of the Debtor's assets to the Claimant Trust as (i) a transfer of such assets to the Claimant Trust Beneficiaries (to the extent of the value of their respective interests in the applicable Claimant Trust Assets) followed by (ii) a transfer of such assets by such beneficiaries to the Claimant Trust (to the extent of the value of their respective interests in the applicable Claimant Trust Assets), with the beneficiaries being treated as the grantors and owners of the Claimant Trust.

The Plan and the Claimant Trust Agreement generally provide that the Claimant Trust Beneficiaries must value the assets of the Claimant Trust consistently with the values determined by the Claimant Trustee for all U.S. federal income tax purposes. As soon as possible after the Effective Date, the Claimant Trustee, based upon his good faith determination after consultation with his counsel and other advisors, shall inform the beneficiaries in writing as to his estimate of the value of the assets transferred to the Claimant Trust and the value of such assets allocable to each Class of beneficiaries.

Consistent with the treatment of the Claimant Trust as a grantor trust, the Claimant Trust Agreement will require each beneficiary to report on its U.S. federal income tax return its allocable share of the Claimant Trust's income, gain, loss or deduction that reflects the

- 87 -

beneficiary's interest in the interim and final distributions to be made by the Claimant Trust. Furthermore, certain of the assets of the Claimant Trust will be interests in the Reorganized Debtor, which will be a partnership for U.S. federal income tax purposes. The income, gain, loss or deduction of the Reorganized Debtor will also flow through the Claimant Trust to the beneficiaries of the Claimant Trust. Therefore, a beneficiary may incur a federal income tax liability with respect to its allocable share of the income of the Claimant Trust (including the income of the Reorganized Debtor) whether or not the Claimant Trust has made any distributions to such beneficiary. The character of items of income, gain, deduction, and credit to any beneficiary and the ability of such beneficiary to benefit from any deduction or losses will depend on the particular situation of such beneficiary. The interests of the beneficiaries may shift from time to time as the result of the allowance or disallowance of claims that have not been allowed at the Effective Date, which could give rise to tax consequences both to the Holders of claims that have, and have not been, allowed at the Effective Date. The Claimant Trustee will file with the IRS tax returns for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and will also send to each beneficiary a separate statement setting forth such beneficiary's share of items of Trust income, gain, loss, deduction, or credit. Each beneficiary will be required to report such items on its U.S. federal income tax return. Holders are urged to consult their tax advisors regarding the appropriate federal income tax treatment of distributions from the Claimant Trust.

The discussion above assumes that the Claimant Trust will be respected as a grantor trust for U.S. federal income tax purposes. If the IRS were to challenge successfully such classification, the U.S. federal income tax consequences to the Claimant Trust and the beneficiaries could differ materially from those discussed herein (including the potential for an entity level tax to be imposed on all income of the Claimant Trust).

## C.    Consequences to Holders of Allowed Claims

### 1.    Recognized Gain or Loss

In general, each Holder of an Allowed Claim will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such Holder in satisfaction of its Claim (other than any Claim for accrued but unpaid interest) and (ii) such holder's adjusted tax basis in such Claim (other than any Claim for accrued but unpaid interest). In general, the "amount realized" by a Holder will equal the sum of any cash and the aggregate fair market value of any property received by such Holder pursuant to the Plan (for example, such Holder's undivided beneficial interest in the assets of the Claimant Trust). A Holder that receives or is deemed to receive for U.S. federal income tax purposes a non-cash asset under the Plan in respect of its Claim should generally have a tax basis in such asset in an amount equal to the fair market value of such asset on the date of its receipt or deemed receipt. See U.S. Federal Income Tax Treatment of the Claimant Trust, above for more information regarding the tax treatment of the Claimant Trust Interests.

Where gain or loss is recognized by a Holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Holder, whether the claim constitutes a capital asset in the hands of the Holder and how long it has been held, whether the claim was acquired at

002356

a market discount, and whether and to what extent the Holder had previously claimed a bad debt deduction.

A Holder who, under the Plan, receives in respect of an Allowed Claim an amount less than the Holder's tax basis in the Allowed Claim may be entitled to a deduction for U.S. federal income tax purposes. The rules governing the character, timing and amount of such a deduction place considerable emphasis on the facts and circumstances of the Holder, the obligor and the instrument with respect to which a deduction is claimed. Holders of Allowed Claims, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

2.      Distribution in Discharge of Accrued Unpaid Interest

Pursuant to the Plan, a distribution received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.  However, there is no assurance that the IRS would respect such allocation for federal income tax purposes.  In general, to the extent that an amount received (whether cash or other property) by a Holder of a claim is received in satisfaction of interest that accrued during its holding period, such amount will be taxable to the Holder as interest income if not previously included in the Holder's gross income.  Conversely, a Holder generally recognizes a deductible loss to the extent that it does not receive payment of interest that has previously been included in its income.  Holders of Claims are urged to consult their tax advisors regarding the allocation of consideration and the deductibility of unpaid interest for tax purposes.

3.      Information Reporting and Withholding

All distributions to Holders of Allowed Claims under the Plan are subject to any applicable withholding tax requirements.  Under federal income tax law, interest, dividends, and other reportable payments, may, under certain circumstances, be subject to "backup withholding" (currently at a rate of up to 24%).  Backup withholding generally applies if the Holder (a) fails to furnish its social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is not subject to backup withholding.  Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax.  Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

**D.      Treatment of the Disputed Claims Reserve**

Pursuant to the Plan, the Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.  Such taxes will be paid out of the Disputed Claims Reserve and therefore may reduce amounts paid to Holders of Allowed Claims from the Claimant Trust. If the Claimant Trustee does not make such an election to treat the Disputed Claims Reserve as a separate taxable entity, the net income, if any, earned in the Disputed Claims Reserve will be taxable to the Holders of Allowed Claims in accordance with

- 89 -

the principles discussed above under the heading "U.S. Federal Income Tax Treatment of the Claimant Trust", possibly in advance of any distributions to the Holders.

**AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OWN TAX ADVISOR REGARDING THE TAX CONSEQUENCES OF THE PLAN.**

## ARTICLE VII.
## RECOMMENDATION

In the opinion of the Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for the highest distribution to the Debtor's creditors and interest holders. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims and Equity Interests than that which is proposed under the Plan. Accordingly, the Debtor recommends that all Holders of Claims and Equity Interests support confirmation of the Plan.

002358

Dated:  November 24, 2020

Respectfully submitted,

HIGHLAND CAPITAL MANAGEMENT, L.P.

James P. Seery, Jr.
Chief Executive Officer and Chief Restructuring
Officer

Prepared by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          gdemo@pszjlaw.com

and

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
          ZAnnable@HaywardFirm.Com:

*Counsel for the Debtor and Debtor-in-Possession*

002359

**EXHIBIT A**

**PLAN OF REORGANIZATION**

002360

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
   ikharasch@pszjlaw.com
   gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
   ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

002361

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME,
GOVERNING LAW AND DEFINED TERMS ............................................. 1

A.    Rules of Interpretation, Computation of Time and Governing Law ..................... 1

B.    Defined Terms ........................................................................................... 2

ARTICLE II. ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ................ 16

A.    Administrative Expense Claims ...................................................................... 16

B.    Professional Fee Claims ................................................................................ 17

C.    Priority Tax Claims ...................................................................................... 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
AND EQUITY INTERESTS ......................................................... 18

A.    Summary ..................................................................................................... 18

B.    Summary of Classification and Treatment of Classified Claims and
Equity Interests ........................................................................................... 18

C.    Elimination of Vacant Classes ....................................................................... 18

D.    Impaired/Voting Classes ............................................................................... 19

E.    Unimpaired/Non-Voting Classes .................................................................... 19

F.    Impaired/Non-Voting Classes ........................................................................ 19

G.    Cramdown ................................................................................................... 19

H.    Classification and Treatment of Claims and Equity Interests ............................. 19

I.    Special Provision Governing Unimpaired Claims .............................................. 24

J.    Subordinated Claims .................................................................................... 24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ...................................... 24

A.    Summary ..................................................................................................... 24

B.    The Claimant Trust ..................................................................................... 25

1.    *Creation and Governance of the Claimant Trust and Litigation Sub-
Trust.* ................................................................................................... 25

2.    *Claimant Trust Oversight Committee* ...................................................... 26

002362

**Page**

| | | |
|---|---|---|
| *3.* | *Purpose of the Claimant Trust.* | 27 |
| *4.* | *Purpose of the Litigation Sub-Trust.* | 27 |
| *5.* | *Claimant Trust Agreement and Litigation Sub-Trust Agreement.* | 28 |
| *6.* | *Compensation and Duties of Trustees.* | 29 |
| *7.* | *Cooperation of Debtor and Reorganized Debtor.* | 29 |
| *8.* | *United States Federal Income Tax Treatment of the Claimant Trust.* | 30 |
| *9.* | *Tax Reporting.* | 30 |
| *10.* | *Claimant Trust Assets.* | 30 |
| *11.* | *Claimant Trust Expenses.* | 31 |
| *12.* | *Trust Distributions to Claimant Trust Beneficiaries.* | 31 |
| *13.* | *Cash Investments.* | 31 |
| *14.* | *Dissolution of the Claimant Trust and Litigation Sub-Trust.* | 31 |
| C. | The Reorganized Debtor | 32 |
| *1.* | *Corporate Existence* | 32 |
| *2.* | *Cancellation of Equity Interests and Release* | 32 |
| *3.* | *Issuance of New Partnership Interests* | 32 |
| *4.* | *Management of the Reorganized Debtor* | 32 |
| *5.* | *Vesting of Assets in the Reorganized Debtor* | 33 |
| *6.* | *Purpose of the Reorganized Debtor* | 33 |
| *7.* | *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets* | 33 |
| D. | Company Action | 34 |
| E. | Release of Liens, Claims and Equity Interests | 34 |
| F. | Cancellation of Notes, Certificates and Instruments | 35 |
| G. | Cancellation of Existing Instruments Governing Security Interests | 35 |

002363

**Page**

H.    Control Provisions ............................................................................. 35

I.    Treatment of Vacant Classes .............................................................. 36

J.    Plan Documents ................................................................................. 36

K.    Highland Capital Management, L.P. Retirement Plan and Trust ....... 36

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ................................................................................................... 37

A.    Assumption, Assignment, or Rejection of Executory Contracts and
Unexpired Leases ............................................................................... 37

B.    Claims Based on Rejection of Executory Contracts or Unexpired
Leases ................................................................................................. 38

C.    Cure of Defaults for Assumed or Assigned Executory Contracts and
Unexpired Leases ............................................................................... 38

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 39

A.    Dates of Distributions ........................................................................ 39

B.    Distribution Agent ............................................................................. 40

C.    Cash Distributions ............................................................................. 40

D.    Disputed Claims Reserve ................................................................... 40

E.    Distributions from the Disputed Claims Reserve ............................... 40

F.    Rounding of Payments ....................................................................... 41

G.    *De Minimis* Distribution ..................................................................... 41

H.    Distributions on Account of Allowed Claims .................................... 41

I.    General Distribution Procedures ........................................................ 41

J.    Address for Delivery of Distributions ................................................ 41

K.    Undeliverable Distributions and Unclaimed Property ....................... 42

L.    Withholding Taxes ............................................................................. 42

M.    Setoffs ............................................................................................... 42

002364

**Page**

N.    Surrender of Cancelled Instruments or Securities ..............................................43

O.    Lost, Stolen, Mutilated or Destroyed Securities ................................................43

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
        UNLIQUIDATED AND DISPUTED CLAIMS..........................................43

A.    Filing of Proofs of Claim .................................................................................43

B.    Disputed Claims ...............................................................................................43

C.    Procedures Regarding Disputed Claims or Disputed Equity Interests ..............44

D.    Allowance of Claims and Equity Interests.........................................................44

1.    *Allowance of Claims* .......................................................................................44

2.    *Estimation* .....................................................................................................44

3.    *Disallowance of Claims* ................................................................................45

ARTICLE VIII. EFFECTIVENESS OF THIS PLAN .........................................................45

A.    Conditions Precedent to the Effective Date ......................................................45

B.    Waiver of Conditions .......................................................................................46

C.    Effect of Non-Occurrence of Conditions to Effectiveness ................................47

D.    Dissolution of the Committee ...........................................................................47

ARTICLE IX. EXCULPATION, INJUNCTION AND RELATED PROVISIONS ................47

A.    General.............................................................................................................47

B.    Discharge of Claims..........................................................................................47

C.    Exculpation ......................................................................................................48

D.    Releases by the Debtor......................................................................................48

E.    Preservation of Rights of Action.......................................................................50

1.    *Maintenance of Causes of Action* ....................................................................50

2.    *Preservation of All Causes of Action Not Expressly Settled or Released*...........50

F.    Injunction ........................................................................................................50

002365

|  |  | Page |
|---|---|---|
| G. | Term of Injunctions or Stays | 51 |
| H. | Continuance of January 9 Order | 52 |

ARTICLE X. BINDING NATURE OF PLAN ......................................................... 52

ARTICLE XI. RETENTION OF JURISDICTION ................................................... 52

ARTICLE XII. MISCELLANEOUS PROVISIONS .................................................. 54

| A. | Payment of Statutory Fees and Filing of Reports | 54 |
| B. | Modification of Plan | 55 |
| C. | Revocation of Plan | 55 |
| D. | Obligations Not Changed | 55 |
| E. | Entire Agreement | 55 |
| F. | Closing of Chapter 11 Case | 55 |
| G. | Successors and Assigns | 56 |
| H. | Reservation of Rights | 56 |
| I. | Further Assurances | 56 |
| J. | Severability | 57 |
| K. | Service of Documents | 57 |
| L. | Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code | 58 |
| M. | Governing Law | 58 |
| N. | Tax Reporting and Compliance | 58 |
| O. | Exhibits and Schedules | 59 |
| P. | Controlling Document | 59 |

002366

---

### DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

---

HIGHLAND CAPITAL MANAGEMENT, L.P., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), proposes the following chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor. Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of this Plan. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtor's history, business, results of operations, historical financial information, projections and assets, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that may be Filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Documents. All such Exhibits and Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the other provisions of this Plan, and in accordance with the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

If this Plan cannot be confirmed, for any reason, then subject to the terms set forth herein, this Plan may be revoked.

### ARTICLE I.
### RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

**A.      Rules of Interpretation, Computation of Time and Governing Law**

For purposes hereof:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Documents" are references to Articles, Sections, Exhibits and Plan Documents hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns;

(h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## B.    **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1. "*Acis*" means collectively Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

2. "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, and that have not already been paid by the Debtor during the Chapter 11 Case and a Professional Fee Claim.

3. "*Administrative Expense Claims Bar Date*" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, 5:00 p.m. (prevailing Central Time) on such date that is forty-five days after the Effective Date.

4. "*Administrative Expense Claims Objection Deadline*" means, with respect to any Administrative Expense Claim, the later of (a) ninety (90) days after the Effective Date and (b) sixty (60) days after the timely Filing of the applicable request for payment of such Administrative Expense Claim; *provided, however,* that the Administrative Expense Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

5. "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code and also includes any other Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such affiliate.  For the purposes of this definition, the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

6. "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan: (a) any Claim that is evidenced by a Proof of Claim that has been timely Filed by the Bar Date, or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code or a Final Order; (b) a Claim that is listed in the Schedules as not contingent, not

2

unliquidated, and not disputed and for which no Proof of Claim has been timely filed; (c) a Claim Allowed pursuant to the Plan or an order of the Bankruptcy Court that is not stayed pending appeal; or (d) a Claim that is not Disputed (including for which a Proof of Claim has been timely filed in a liquidated and noncontingent amount that has not been objected to by the Claims Objection Deadline or as to which any such objection has been overruled by Final Order); *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed as set forth above.

7. "*Allowed Claim or Equity Interest*" means a Claim or an Equity Interest of the type that has been Allowed.

8. "*Assets*" means all of the rights, titles, and interest of the Debtor, Reorganized Debtor, or Claimant Trust, in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, the Debtor's books and records, and the Causes of Action.

9. "*Available Cash*" means any Cash in excess of the amount needed for the Claimant Trust and Reorganized Debtor to maintain business operations as determined in the sole discretion of the Claimant Trustee.

10. "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510, 544, 545, and 547-553 of the Bankruptcy Code or under similar state or federal statutes and common law, including fraudulent transfer laws

11. "*Ballot*" means the form(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

12. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

13. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Case.

14. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in each case as amended from time to time and as applicable to the Chapter 11 Case.

15. "*Bar Date*" means the applicable deadlines set by the Bankruptcy Court for the filing of Proofs of Claim against the Debtor as set forth in the Bar Date Order, which deadlines may be or have been extended for certain Claimants by order of the Bankruptcy Court.

3

002369

16. "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof* [D.I. 488].

17. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19. "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. For the avoidance of doubt, Cause of Action includes, without limitation,: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) the Avoidance Actions, and (g) the Estate Claims. The Causes of Action include, without limitation, the Causes of Action belonging to the Debtor's Estate listed on the schedule of Causes of Action to be filed with the Plan Supplement.

20. "*CEO/CRO*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer.

21. "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Delaware Bankruptcy Court and transferred to the Bankruptcy Court on December 4, 2019, and styled *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj-11.

22. "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

23. "*Claims Objection Deadline*" means the date that is 180 days after the Confirmation Date; *provided, however,* the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

24. "*Claimant Trust*" means the trust established for the benefit of the Claimant Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Claimant Trust Agreement.

4

25. "*Claimant Trust Agreement*" means the agreement Filed in the Plan Supplement establishing and delineating the terms and conditions of the Claimant Trust.

26. "*Claimant Trust Assets*" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC. For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

27. "*Claimant Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, including, upon Allowance, Disputed General Unsecured Claims and Disputed Subordinated Claims that become Allowed following the Effective Date, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, post-petition interest from the Petition Date at the Federal Judgment Rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement and all Disputed Claims in Class 8 and Class 9 have been resolved, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

28. "*Claimant Trustee*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer, or such other Person identified in the Plan Supplement who will act as the trustee of the Claimant Trust in accordance with the Plan, the Confirmation Order, and Claimant Trust Agreement or any replacement trustee pursuant to (and in accordance with) the Claimant Trust Agreement. The Claimant Trustee shall be responsible for, among other things, monetizing the Estate's investment assets, resolving Claims (other than those Claims assigned to the Litigation Sub-Trust for resolution), and, as the sole officer of New GP LLC, winding down the Reorganized Debtor's business operations.

29. "*Claimant Trust Expenses*" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustees on account of administration of the Claimant Trust, including any reasonable administrative fees and expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, reasonable escrow expenses, and other expenses.

30. "*Claimant Trust Interests*" means the non-transferable interests in the Claimant Trust that are issued to the Claimant Trust Beneficiaries pursuant to this Plan; *provided*, *however*, Holders of Class A Limited Partnership Interests, Class B Limited Partnership Interests, and Class C Limited Partnership Interests will not be deemed to hold Claimant Trust Interests unless and until the Contingent Claimant Trust Interests distributed to such Holders vest in accordance with the terms of this Plan and the Claimant Trust Agreement.

5

002371

31. "*Claimant Trust Oversight Committee*" means the committee of five Persons established pursuant to ARTICLE IV of this Plan to oversee the Claimant Trustee's performance of its duties and otherwise serve the functions described in this Plan and the Claimant Trust Agreement.

32. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to section 1122(a) of the Bankruptcy Code.

33. "*Class A Limited Partnership Interest*" means the Class A Limited Partnership Interests as defined in the Limited Partnership Agreement held by The Dugaboy Investment Trust, Mark and Pamela Okada Family Trust – Exempt Trust 2, Mark and Pamela Okada – Exempt Descendants' Trust, and Mark Kiyoshi Okada, and the General Partner Interest.

34. "*Class B Limited Partnership Interest*" means the Class B Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

35. "*Class B/C Limited Partnership Interests*" means, collectively, the Class B Limited Partnership and Class C Limited Partnership Interests.

36. "*Class C Limited Partnership Interest*" means the Class C Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

37. "*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1) on October 29, 2019 [D.I. 65], consisting of (i) the Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, (iii) UBS, and (iv) Acis.

38. "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

39. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

40. "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

41. "*Convenience Claim*" means any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or any General Unsecured Claim that makes the Convenience Class Election. For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims.

42. "*Convenience Claim Pool*" means the $13,150,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein. Any Cash remaining in the Convenience Claim Pool after all

002372

distributions on account of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

43. "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.

44. "*Contingent Claimant Trust Interests*" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full, plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, all accrued and unpaid post-petition interest from the Petition Date at the Federal Judgment Rate and all Disputed Claims in Class 8 and Class 9 have been resolved. As set forth in the Claimant Trust Agreement, the Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.

45. "*Debtor*" means Highland Capital Management, L.P. in its capacity as debtor and debtor in possession in the Chapter 11 Case.

46. "*Delaware Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

47. "*Disclosure Statement*" means that certain *Disclosure Statement for Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

48. "*Disputed*" means with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

49. "*Disputed Claims Reserve*" means the appropriate reserve(s) or account(s) to be established on the Initial Distribution Date and maintained by the Claimant Trustee for distributions on account of Disputed Claims that may subsequently become an Allowed Claim.

50. "*Disputed Claims Reserve Amount*" means, for purposes of determining the Disputed Claims Reserve, the Cash that would have otherwise been distributed to a Holder of a Disputed Claim at the time any distributions of Cash are made to the Holders of Allowed Claims. The amount of the Disputed Claim upon which the Disputed Claims Reserve is calculated shall be: (a) the amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or Reorganized Debtor, as applicable; (c) the amount ordered by the Bankruptcy Court if it enters an order disallowing, in whole or in part, a Disputed Claim; or (d) as otherwise ordered by the Bankruptcy Court, including an order estimating the Disputed Claim.

7

51. "*Distribution Agent*" means the Claimant Trustee, or any party designated by the Claimant Trustee to serve as distribution agent under this Plan.

52. "*Distribution Date*" means the date or dates determined by the Reorganized Debtor or the Claimant Trustee, as applicable, on or after the Initial Distribution Date upon which the Distribution Agent shall make distributions to holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

53. "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Effective Date or such later date determined by the Bankruptcy Court.

54. "*Effective Date*" means the Business Day that this Plan becomes effective as provided in ARTICLE VIII hereof.

55. "*Employees*" means the employees of the Debtor set forth in the Plan Supplement.

56. "*Entity*" means any "entity" as defined in section 101(15) of the Bankruptcy Code and also includes any Person or any other entity.

57. "*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding partnership interests, shares, of stock or limited company interests, the Class A Limited Partnership Interests, the Class B Limited Partnership Interests, and the Class C Limited Partnership Interests.

58. "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

59. "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

60. "*Estate Claims*" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [D.I. 354].

61. "*Exculpated Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the

Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

62. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

63. "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

64. "*Federal Judgment Rate*" means the post-judgment interest rate set forth in 28 U.S.C. § 1961 as of the Effective Date.

65. "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

66. "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

67. "*Frontier Secured Claim*" means the loan from Frontier State Bank to the Debtor in the principal amount of $7,879,688.00 made pursuant to that certain First Amended and Restated Loan Agreement, dated March 29, 2018.

68. "*General Partner Interest*" means the Class A Limited Partnership Interest held by Strand, as the Debtor's general partner.

69. "*General Unsecured Claim*" means any prepetition Claim against the Debtor that is not Secured and is not a/an: (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; or (e) Convenience Claim.

70. "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

71. "*GUC Election*" means the option provided to each Holder of a Convenience Claim on their Ballot to elect to receive the treatment provided to General Unsecured Claims.

72. "*Holder*" means an Entity holding a Claim against, or Equity Interest in, the Debtor.

73. "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

74. "*Independent Directors*" means John S. Dubel, James P. Seery, Jr., and Russell Nelms, the independent directors of Strand appointed on January 9, 2020, and any additional or replacement directors of Strand appointed after January 9, 2020, but prior to the Effective Date.

75. "*Initial Distribution Date*" means, subject to the "Treatment" sections in ARTICLE III hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

76. "*Insurance Policies*" means all insurance policies maintained by the Debtor as of the Petition Date.

77. "*Jefferies Secured Claim*" means any Claim in favor of Jefferies, LLC, arising under that certain Prime Brokerage Customer Agreement, dated May 24, 2013, between the Debtor and Jefferies, LLC, that is secured by the assets, if any, maintained in the prime brokerage account created by such Prime Brokerage Customer Agreement.

78. "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

79. "*Limited Partnership Agreement*" means that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, as amended.

80. "*Litigation Sub-Trust*" means the sub-trust established within the Claimant Trust or as a wholly –owned subsidiary of the Claimant Trust on the Effective Date in each case in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement and Claimant Trust Agreement. As set forth in the Litigation Sub-Trust Agreement, the Litigation Sub-Trust shall hold the Claimant Trust Assets that are Estate Claims.

81. "*Litigation Sub-Trust Agreement*" means the agreement filed in the Plan Supplement establishing and delineating the terms and conditions of the Litigation Sub-Trust.

82. "*Litigation Trustee*" means the trustee appointed by the Committee and reasonably acceptable to the Debtor who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

10

83. "*Managed Funds*" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan.

84. "*New Frontier Note*" means that promissory note to be provided to the Allowed Holders of Class 2 Claims under this Plan and any other documents or security agreements securing the obligations thereunder.

85. "*New GP LLC*" means a limited liability company incorporated in the State of Delaware pursuant to the New GP LLC Documents to serve as the general partner of the Reorganized Debtor on the Effective Date.

86. "*New GP LLC Documents*" means the charter, operating agreement, and other formational documents of New GP LLC.

87. "*Ordinary Course Professionals Order*" means that certain *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course* [D.I. 176].

88. "*Other Unsecured Claim*" means any Secured Claim other than the Jefferies Secured Claim and the Frontier Secured Claim.

89. "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, individual, corporation, company, general or limited partnership, limited liability company, unincorporated organization firm, trust, estate, business trust, association, joint stock company, joint venture, government, governmental agency, Governmental Unit or any subdivision thereof, the United States Trustee, or any other entity, whether acting in an individual, fiduciary or other capacity.

90. "*Petition Date*" means October 16, 2019.

91. "*Plan*" means this *Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, including the Exhibits and the Plan Documents and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

92. "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Allowed Equity Interests under this Plan.

93. "*Plan Documents*" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

94. "*Plan Supplement*" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the form of

11

002377

Claimant Trust Agreement, (ii) the forms of New GP LLC Documents, (iii) the form of Reorganized Limited Partnership Agreement, (iv) the Sub-Servicer Agreement (if applicable), (v) the identity of the initial members of the Claimant Trust Oversight Committee, (vi) the form of Litigation Sub-Trust Agreement; (vii) the schedule of retained Causes of Action; (viii) the New Frontier Note, (ix) the schedule of Employees; (x) the form of Senior Employee Stipulation,; and (xi) the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to this Plan, which, in each case, will be in form and substance reasonably acceptable to the Debtor and the Committee.

95. "*Priority Non-Tax Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including any Claims for paid time-off entitled to priority under section 507(a)(4) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

96. "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

97. "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code.

98. "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

99. "*Professional Fee Claims Bar Date*" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

100. "*Professional Fee Claims Objection Deadline*" means, with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

101. "*Professional Fee Reserve*" means the reserve established and funded by the Claimant Trustee pursuant this Plan to provide sufficient funds to satisfy in full unpaid Allowed Professional Fee Claims.

102. "*Proof of Claim*" means a written proof of Claim or Equity Interest Filed against the Debtor in the Chapter 11 Case.

103. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

002378

104. "*Protected Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

105. "*PTO Claims*" means any Claim for paid time off in favor of any Debtor employee in excess of the amount that would qualify as a Priority Non-Tax Claim under section 507(a)(4) of the Bankruptcy Code.

106. "*Reduced Employee Claims*" has the meaning set forth in ARTICLE IX.D.

107. "*Reinstated*" means, with respect to any Claim or Equity Interest, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Equity Interest in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Equity Interest (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

108. "*Rejection Claim*" means any Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to the Confirmation Order.

109. "*Related Entity*" means, without duplication, (a) James Dondero, (b) Mark Okada, (c) Grant Scott, (d) Hunter Covitz, (e) any entity or person that was an insider of the

13

Debtor on the Petition Date under Section 101(31) of the Bankruptcy Code, including any non-statutory insider, (f) any entity that, after the Effective Date, is controlled directly or indirectly by James Dondero, including, without limitation, The Dugaboy Investment Trust, (g) the Hunter Mountain Investment Trust and any of its direct or indirect parents, and (h) the Charitable Donor Advised Fund, L.P., and any of its direct or indirect subsidiaries.

110. "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present and former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, employees, subsidiaries, divisions, management companies, and other representatives, in each case solely in their capacity as such.

111. "*Released Parties*" means, collectively, (i) the Independent Directors; (ii) Strand (solely from the date of the appointment of the Independent Directors through the Effective Date); (iii) the CEO/CRO; (iv) the Committee; (v) the members of the Committee (in their official capacities), (vi) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case; and (vii) the Employees.

112. "*Reorganized Debtor*" means the Debtor, as reorganized pursuant to this Plan on and after the Effective Date.

113. "*Reorganized Debtor Assets*" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust. For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

114. "*Reorganized Limited Partnership Agreement*" means that certain Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., by and among the Claimant Trust, as limited partner, and New GP LLC, as general partner, Filed with the Plan Supplement.

115. "*Restructuring*" means the restructuring of the Debtor, the principal terms of which are set forth in this Plan and the Disclosure Statement.

116. "*Retained Employee Claim*" means any Claim filed by a current employee of the Debtor who will be employed by the Reorganized Debtor upon the Effective Date.

117. "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court [D.I. 247].

118. "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the

002380

creditor's interest in the interest of the Debtor's Estate in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

119.    "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

120.    "*Senior Employees*" means the senior employees of the Debtor Filed in the Plan Supplement.

121.    "*Senior Employee Stipulation*" means the agreements filed in the Plan Supplement between each Senior Employee and the Debtor.

122.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

123.    "*Statutory Fees*" means fees payable pursuant to 28 U.S.C. § 1930.

124.    "*Strand*" means Strand Advisors, Inc., the Debtor's general partner.

125.    "*Sub-Servicer*" means a third-party selected by the Claimant Trustee to service or sub-service the Reorganized Debtor Assets.

126.    "*Sub-Servicer Agreement*" means the agreement that may be entered into providing for the servicing of the Reorganized Debtor Assets by the Sub-Servicer.

127.    "*Subordinated Claim*" means any Claim that (i) is or may be subordinated to the Convenience Claims and General Unsecured Claims pursuant to 11 U.S.C. § 510 or Final Order of the Bankruptcy Court or (ii) arises from a Class A Limited Partnership Interest or a Class B/C Limited Partnership Interest.

128.    "*Subordinated Claimant Trust Interests*" means the Claimant Trust Interests to be distributed to Holders of Allowed Subordinated Claims under the Plan, which such interests shall be subordinated in right and priority to the Claimant Trust Interests distributed to Holders of Allowed General Unsecured Claims as provided in the Claimant Trust Agreement.

129.    "*Trust Distribution*" means the transfer of Cash or other property by the Claimant Trustee to the Claimant Trust Beneficiaries.

130.    "*Trustees*" means, collectively, the Claimant Trustee and Litigation Trustee.

15

131.    "*UBS*" means, collectively, UBS Securities LLC and UBS AG London Branch.

132.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

133.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

134.    "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtor to solicit acceptances of the Plan.

135.    "*Voting Record Date*" means November 23, 2020.

# ARTICLE II.
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**A.    <u>Administrative Expense Claims</u>**

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Available Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Reorganized Debtor, as applicable, and such Holder; *provided, however,* that Administrative Expense Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

If an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must File, on or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtor or the Reorganized Debtor, as applicable, and the party asserting such Administrative Expense Claim by the Administrative Expense Claims Objection Deadline.

16

002382

## B.    Professional Fee Claims

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline.  Each Holder of an Allowed Professional Fee Claim will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

On the Effective Date, the Claimant Trustee shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Claimant Trust and shall be maintained by the Claimant Trustee in accordance with the Plan and Claimant Trust Agreement.  The Claimant Trust shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Debtor in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date.  Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

## C.    Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, or (b) such other less favorable treatment as agreed to in writing by the Debtor and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

002383

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

### A.  Summary

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

### B.  Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Priority Non-Tax Claim | Unimpaired | Deemed to Accept |
| 5 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 6 | PTO Claims | Unimpaired | Deemed to Accept |
| 7 | Convenience Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 11 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

### C.  Elimination of Vacant Classes

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of

18

002384

voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**D.      Impaired/Voting Classes**

Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

**E.      Unimpaired/Non-Voting Classes**

Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

**F.      Impaired/Non-Voting Classes**

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

**G.      Cramdown**

If any Class of Claims or Equity Interests is deemed to reject this Plan or does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**H.      Classification and Treatment of Claims and Equity Interests**

*1.      Class 1 – Jefferies Secured Claim*

- *Classification*:  Class 1 consists of the Jefferies Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.  Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until full and final payment of such Allowed Class 1 Claim is made as provided herein.

- *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted this Plan

19

002385

pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

2. *Class 2 – Frontier Secured Claim*

- *Classification*:  Class 2 consists of the Frontier Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim:  (A) Cash in an amount equal to all accrued but unpaid interest on the Frontier Claim through and including the Effective Date and (B) the New Frontier Note.  The Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

- *Impairment and Voting*:  Class 2 is Impaired, and the Holders of Class 2 Claims are entitled to vote to accept or reject this Plan.

3. *Class 3 – Other Secured Claims*

- *Classification*:  Class 3 consists of the Other Secured Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3 Claim is Allowed on the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 3 Claim, at the option of the Debtor, or following the Effective Date, the Reorganized Debtor or Claimant Trustee, as applicable, (i) Cash equal to such Allowed Other Secured Claim, (ii) the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code Section 506(b), or (iii) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

4. *Class 4 – Priority Non-Tax Claims*

- *Classification*:  Class 4 consists of the Priority Non-Tax Claims.

20

002386

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 4 Claim is Allowed on the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 4 Claim Cash equal to the amount of such Allowed Class 4 Claim.

- *Impairment and Voting*:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

5. <u>*Class 5 – Retained Employee Claims*</u>

- *Classification*:  Class 5 consists of the Retained Employee Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Allowed Class 5 Claim will be Reinstated.

- *Impairment and Voting*:  Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

6. <u>*Class 6 – PTO Claims*</u>

- *Classification*:  Class 6 consists of the PTO Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 6 Claim Cash equal to the amount of such Allowed Class 6 Claim.

- *Impairment and Voting*:  Class 6 is Unimpaired, and the Holders of Class 6 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 6 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

002387

7. *Class 7 – Convenience Claims*

- *Classification*: Class 7 consists of the Convenience Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 7 Claim is Allowed on the Effective Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, each Holder of an Allowed Class 7 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim (1) the treatment provided to Allowed Holders of Class 8 General Unsecured Claims if the Holder of such Class 7 Claim makes the GUC Election or (2) an amount in Cash equal to the lesser of (a) 85% of the Allowed amount of such Holder's Class 7 Claim or (b) such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- *Impairment and Voting*: Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

8. *Class 8 – General Unsecured Claims*

- *Classification*: Class 8 consists of the General Unsecured Claims.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes a valid Convenience Class Election.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

9. *Class 9 – Subordinated Claims*

- *Classification*: Class 9 consists of the Subordinated Claims.

22

002388

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 9 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive either (i) the treatment provided to Allowed Class 8 Claims or (ii) if such Allowed Class 9 Claim is subordinated to the Convenience Claims and General Unsecured Claims pursuant to 11 U.S.C. § 510 or Final Order of the Bankruptcy Court, its Pro Rata share of the Subordinated Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10. *Class 10 – Class B/C Limited Partnership Interests*

- *Classification*: Class 10 consists of the Class B/C Limited Partnership Interests.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

002389

11.   *Class 11 – Class A Limited Partnership Interests*

- *Classification*:  Class 11 consists of the Class A Limited Partnership Interests.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

    Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject this Plan.

## I.   **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

## J.   **Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Under section 510 of the Bankruptcy Code, upon written notice, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

## A.   **Summary**

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

002390

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner. The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement. Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC. The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan. The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

Although the Reorganized Debtor will manage the wind down of the Managed Funds, it is currently anticipated that neither the Reorganized Debtor nor the Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities. The Debtor believes that the continued provision of the services under such contracts will not be cost effective.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement. Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in this Plan and the Claimant Trust Agreement.

## B. **The Claimant Trust**[2]

### *1.* *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.*

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and the Litigation Sub-Trust in accordance with the Plan in each case for the benefit of the Claimant Trust Beneficiaries. Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its

---

[2] In the event of a conflict between the terms of this summary and the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, the terms of the Claimant Trust Agreement or the Litigation Sub-Trust Agreement, as applicable, shall control.

002391

rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims and the Litigation Trustee shall be the exclusive trustee with respect to the Estate Claims in each case for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trustee shall also be responsible for resolving all Claims and Equity Interests in Class 8 through Class 11, under the supervision of the Claimant Trust Oversight Committee.

On the Effective Date, the Claimant Trustee and Litigation Trustee shall execute the Litigation Sub-Trust Agreement and shall take all steps necessary to establish the Litigation Sub-Trust. Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets (including the proceeds from the Estate Claims, if any) in accordance with the provisions of the Plan and the Claimant Trust Agreement; *provided* that the Claimant Trust Oversight Committee may direct the Claimant Trust to reserve Cash from distributions as necessary to fund the Claimant Trust and Litigation Sub-Trust. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

The Litigation Sub-Trust shall be governed by the Litigation Sub-Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Sub-Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting as may be set forth in the Litigation Sub-Trust Agreement. The Litigation Sub-Trust shall investigate, prosecute, settle, or otherwise resolve the Estate Claims in accordance with the provisions of the Plan and the Litigation Sub-Trust Agreement and shall distribute the proceeds therefrom to the Claimant Trust for distribution. Other rights and duties of the Litigation Trustee shall be as set forth in the Litigation Sub-Trust Agreement.

2.        *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will be

002392

overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as applicable.

The Claimant Trust Oversight Committee will initially consist of five members. Four of the five members will be representatives of the members of the Committee: (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery. The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor. The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement. The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The independent member(s) of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement. Any member of the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

3.        *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in this Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in ARTICLE IV.C.

4.        *Purpose of the Litigation Sub-Trust.*

The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims. Any proceeds therefrom shall be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries pursuant to the terms of the Claimant Trust Agreement.

002393

5. *Claimant Trust Agreement and Litigation Sub-Trust Agreement.*

The Claimant Trust Agreement generally will provide for, among other things:

(i)    the payment of the Claimant Trust Expenses;

(ii)    the payment of other reasonable expenses of the Claimant Trust;

(iii)    the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

(iv)    the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

(v)    the orderly monetization of the Claimant Trust Assets;

(vi)    litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(vii)    the resolution of Claims and Equity Interests in Class 8 through Class 11, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(viii)    the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

(ix)    the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expenses and shall periodically replenish such reserve, as necessary.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests (other than those assigned to the Litigation Sub-Trust), without approval of the Bankruptcy Court. Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; *provided, however,* that the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee. In all circumstances, the Claimant Trustee shall act in the best interests of the Claimant Trust Beneficiaries and with the same fiduciary duties as a chapter 7 trustee.

002394

The Litigation Sub-Trust Agreement generally will provide for, among other things:

(i)      the payment of other reasonable expenses of the Litigation Sub-Trust;

(ii)     the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; and

(iii)    the investigation and prosecution of Estate Claims, which may include the prosecution, settlement, abandonment, or dismissal of any such Estate Claims, subject to reporting and oversight as set forth in the Litigation Sub-Trust Agreement.

The Trustees, on behalf of the Claimant Trust and Litigation Sub-Trust, as applicable, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

6.          _Compensation and Duties of Trustees._

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as appropriate. The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

7.          _Cooperation of Debtor and Reorganized Debtor._

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets (including Estate Claims), the Claimant Trustee, Litigation Trustee, and each of their professionals may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets. Accordingly, the Debtor and the Reorganized Debtor, as applicable, shall reasonably cooperate with the Claimant Trustee and Litigation Trustee, as applicable, in their prosecution of Causes of Action and in providing the Claimant Trustee and Litigation Trustee with copies of documents and information in the Debtor's possession, custody, or control on the Effective Date that either Trustee indicates relates to the Estate Claims or other Causes of Action.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and Causes of Action, including Estate Claims, until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust and Litigation Sub-Trust.

002395

8.        *United States Federal Income Tax Treatment of the Claimant Trust.*

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as: (a) a transfer of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claims Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by the such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests. Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

9.        *Tax Reporting.*

(a) The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.

(b) The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

(c) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

(d) The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

10.        *Claimant Trust Assets.*

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court, and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in this Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the

002396

Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

11.    *Claimant Trust Expenses.*

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust, the Litigation Sub-Trust, and any professionals retained by such parties and entities from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

12.    *Trust Distributions to Claimant Trust Beneficiaries.*

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, *provided* that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

13.    *Cash Investments.*

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; *provided, however,* that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

14.    *Dissolution of the Claimant Trust and Litigation Sub-Trust.*

The Trustees and the Claimant Trust and Litigation Sub-Trust shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Claimant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the

31

002397

Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets; *provided, however,* that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.

Upon dissolution of the Claimant Trust, and pursuant to the Claimant Trust Agreement, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

**C.      The Reorganized Debtor**

   *1.            Corporate Existence*

The Debtor will continue to exist after the Effective Date, with all of the powers of partnerships pursuant to the law of the State of Delaware and as set forth in the Reorganized Limited Partnership Agreement.

   *2.            Cancellation of Equity Interests and Release*

On the Effective Date, (i) all prepetition Equity Interests, including the Class A Limited Partnership Interests and the Class B/C Limited Partnership Interests, in the Debtor shall be canceled, and (ii) all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

   *3.            Issuance of New Partnership Interests*

On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor.  Also, on the Effective Date, the Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement and receive partnership interests in the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement.

   *4.            Management of the Reorganized Debtor*

Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC.  The initial officers and employees of the Reorganized Debtor shall be selected by the Claimant

002398

Trustee. The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

As set forth in the Reorganized Limited Partnership Agreement, New GP LLC will receive a fee for managing the Reorganized Debtor. Although New GP LLC will be a limited liability company, it will elect to be treated as a C-Corporation for tax purposes. Therefore, New GP LLC (and any taxable income attributable to it) will be subject to corporate income taxation on a standalone basis, which may reduce the return to Claimants.

5.      *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in this Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

6.      *Purpose of the Reorganized Debtor*

Except as may be otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Reorganized Debtor shall oversee the resolution of Claims in Class 1 through Class 7.

Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

7.      *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets*

Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement. As set forth in the Reorganized Limited Partnership Agreement, the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor. Any assets distributed to the Claimant Trust

002399

will be (i) deemed transferred in all respects as forth in ARTICLE IV.B.1, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

## D. Company Action

Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in the name of and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in this Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with this Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person. On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

## E. Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the

002400

Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

## F.     Cancellation of Notes, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

## G.     Cancellation of Existing Instruments Governing Security Interests

Upon payment or other satisfaction of an Allowed Class 1 or Allowed Class 2 Claim, or promptly thereafter, the Holder of such Allowed Class 1 or Allowed Class 2 Claim shall deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, any collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Class 1 or Allowed Class 2 Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or *lis pendens*, or similar interests or documents.

## H.     Control Provisions

To the extent that there is any inconsistency between this Plan as it relates to the Claimant Trust, the Claimant Trust Agreement, the Reorganized Debtor, or the Reorganized Limited Partnership Agreement, this Plan shall control.

002401

## I.        Treatment of Vacant Classes

Any Claim or Equity Interest in a Class considered vacant under ARTICLE III.C of this Plan shall receive no Plan Distributions.

## J.        Plan Documents

The documents, if any, to be Filed as part of the Plan Documents, including any documents filed with the Plan Supplement, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in ARTICLE I hereof) and fully enforceable as if stated in full herein.

The Debtor and the Committee are currently working to finalize the forms of certain of the Plan Documents to be filed with the Plan Supplement.  To the extent that the Debtor and the Committee cannot agree as to the form and content of such Plan Documents, they intend to submit the issue to non-binding mediation pursuant to the *Order Directing Mediation* entered on August 3, 2020 [D.I. 912].

## K.        Highland Capital Management, L.P. Retirement Plan and Trust

The Highland Capital Management, L.P. Retirement And Trust ("Pension Plan") is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  29 U.S.C. §§ 1301-1461.  The Debtor is the contributing sponsor and, as such, the PBGC asserts that the Debtor is liable along with any members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) with respect to the Pension Plan.

Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the Pension Plan and shall comply with all applicable statutory provisions of ERISA and the Internal Revenue Code (the "IRC"), including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Pension Plan in accordance with its terms and the provisions of ERISA and the IRC.  In the event that the Pension Plan terminates after the Plan of Reorganization Effective Date, the PBGC asserts that the Reorganized Debtor and each of its controlled group members will be responsible for the liabilities imposed by Title IV of ERISA.

Notwithstanding any provision of the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1141 thereof) to the contrary, neither the Plan, the Confirmation Order, or the Bankruptcy Code shall be construed as discharging, releasing, exculpating or relieving the Debtor, the Reorganized Debtor, or any person or entity in any capacity, from any liability or responsibility, if any, with respect to the Pension Plan under any law, governmental policy, or regulatory provision.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any person or entity as a result of any of the provisions of the Plan, the Confirmation Order, or the Bankruptcy Code.  The Debtor reserves the right to contest any such liability or responsibility.

002402

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     **Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases**

Unless an Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to a Final Order of the Bankruptcy Court entered prior to the Effective Date; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date; (iv) contains a change of control or similar provision that would be triggered by the Chapter 11 Case (unless such provision has been irrevocably waived); or (v) is specifically designated as a contract or lease to be assumed in the Plan Supplement, on the Effective Date, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is listed in the Plan Supplement.

At any time on or prior to the Effective Date, the Debtor may (i) amend the Plan Supplement in order to add or remove a contract or lease from the list of contracts to be assumed or (ii) assign (subject to applicable law) any Executory Contract or Unexpired Lease, as determined by the Debtor in consultation with the Committee, or the Reorganized Debtor, as applicable.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, rejections, and assumptions and assignments. Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are rejected pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

002403

Notwithstanding anything herein to the contrary, the Debtor shall assume or reject that certain real property lease with Crescent TC Investors L.P. ("Landlord") for the Debtor's headquarters located at 200/300 Crescent Ct., Suite #700, Dallas, Texas 75201 (the "Lease") in accordance with the notice to Landlord, procedures and timing required by 11 U.S.C. §365(d)(4), as modified by that certain *Agreed Order Granting Motion to Extend Time to Assume or Reject Unexpired Nonresidential Real Property Lease* [Docket No. 1122].

## B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Effective Date shall be deemed rejected, pursuant to the Confirmation Order. Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the Effective Date. Any Rejection Claims that are not timely Filed pursuant to this Plan shall be forever disallowed and barred. If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with ARTICLE III of this Plan.

## C.     Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree. The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure amount (if any).

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to this ARTICLE V.C shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment. Any and all Proofs of Claim based upon Executory Contracts

002404

or Unexpired Leases that have been assumed or assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any cure amounts have been fully paid pursuant to this ARTICLE V.C, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Dates of Distributions

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtor shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class and in the manner provided herein.  If any payment or act under this Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in this Plan.  Except as otherwise provided in this Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Claims and Equity Interests against the Debtor shall be deemed fixed and adjusted pursuant to this Plan and none of the Debtor, the Reorganized Debtor, or the Claimant Trust will have liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Confirmation Order.  All payments and all distributions made by the Distribution Agent under this Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtor and the Reorganized Debtor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtor and the Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests.  The Debtor, the Reorganized Debtor, the Trustees, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claims against the Debtor or Equity Interests in the Debtor occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under this Plan to such Persons or the date of such distributions.

002405

## B.   Distribution Agent

Except as provided herein, all distributions under this Plan shall be made by the Claimant Trustee, as Distribution Agent, or by such other Entity designated by the Claimant Trustee, as a Distribution Agent on the Effective Date or thereafter.  The Reorganized Debtor will be the Distribution Agent with respect to Claims in Class 1 through Class 7.

The Claimant Trustee, or such other Entity designated by the Claimant Trustee to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

The Distribution Agent shall not have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

## C.   Cash Distributions

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign creditors may be made in such funds and by such means as the Distribution Agent determines are necessary or customary in a particular foreign jurisdiction.

## D.   Disputed Claims Reserve

On or prior to the Initial Distribution Date, the Claimant Trustee shall establish, fund and maintain the Disputed Claims Reserve(s) in the appropriate Disputed Claims Reserve Amounts on account of any Disputed Claims.

## E.   Distributions from the Disputed Claims Reserve

The Disputed Claims Reserve shall at all times hold Cash in an amount no less than the Disputed Claims Reserve Amount.  To the extent a Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, within 30 days of the date on which such Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, the Claimant Trustee shall distribute from the Disputed Claims Reserve to the Holder thereof any prior distributions, in Cash, that would have been made to such Allowed Claim if it had been Allowed as of the Effective Date.  For the avoidance of doubt, each Holder of a Disputed Claim that subsequently becomes an Allowed Claim will also receive its Pro Rata share of the Claimant Trust Interests. If, upon the resolution of all Disputed Claims any Cash remains in the Disputed Claims Reserve, such Cash shall be transferred to the Claimant Trust and be deemed a Claimant Trust Asset.

40

### F.     Rounding of Payments

Whenever this Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash to be distributed under this Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under this Plan.

### G.     *De Minimis* Distribution

Except as to any Allowed Claim that is Unimpaired under this Plan, none of the Debtor, the Reorganized Debtor, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in ARTICLE VI.J hereof within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim.  *De minimis* distributions for which no such request is timely received shall revert to the Claimant Trust.  Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

### H.     Distributions on Account of Allowed Claims

Except as otherwise agreed by the Holder of a particular Claim or as provided in this Plan, all distributions shall be made pursuant to the terms of this Plan and the Confirmation Order.  Except as otherwise provided in this Plan, distributions to any Holder of an Allowed Claim shall, to the extent applicable, be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### I.     General Distribution Procedures

The Distribution Agent shall make all distributions of Cash or other property required under this Plan, unless this Plan specifically provides otherwise.  All Cash and other property held by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, for ultimate distribution under this Plan shall not be subject to any claim by any Person.

### J.     Address for Delivery of Distributions

Distributions to Holders of Allowed Claims, to the extent provided for under this Plan, shall be made (1) at the addresses set forth in any written notices of address change delivered to the Debtor and the Distribution Agent; (2) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2), or (3) at the addresses in the Debtor's books and records.

002407

If there is any conflict or discrepancy between the addresses set forth in (1) through (3) in the foregoing sentence, then (i) the address in Section (2) shall control; (ii) if (2) does not apply, the address in (1) shall control, and (iii) if (1) does not apply, the address in (3) shall control.

## K. Undeliverable Distributions and Unclaimed Property

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor or the Claimant Trust as undeliverable, no further distribution shall be made to such Holder, and Distribution Agent shall not have any obligation to make any further distribution to the Holder, unless and until the Distribution Agent is notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash within six months from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under this Plan and such Cash shall thereafter be deemed an Claimant Trust Asset in all respects and for all purposes. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor's Estate, the Reorganized Debtor, the Claimant Trust, or against any Holder of an Allowed Claim to whom distributions are made by the Distribution Agent.

## L. Withholding Taxes

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. The Distribution Agent shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. As a condition to receiving any distribution under this Plan, the Distribution Agent may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to this Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Distribution Agent to comply with applicable tax reporting and withholding laws. If a Holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

## M. Setoffs

The Distribution Agent may, to the extent permitted under applicable law, set off against any Allowed Claim and any distributions to be made pursuant to this Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with this Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Claimant Trustee of any such claims, rights and causes of action that the Debtor, the Reorganized Debtor, or Claimant Trustee possesses against such Holder. Any Holder of an Allowed Claim subject to

002408

such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

**N.**     **Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to this Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to ARTICLE IV of this Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Distribution Agent unless waived in writing by the Distribution Agent.

**O.**     **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by this Plan, deliver to the Distribution Agent:  (i) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest.  Upon compliance with ARTICLE VI.O of this Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under this Plan, be deemed to have surrendered such security or note to the Distribution Agent.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

**A.**     **Filing of Proofs of Claim**

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

**B.**     **Disputed Claims**

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest or any other appropriate motion or adversary proceeding with respect thereto, which shall be litigated to Final Order or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such

43

Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of this Plan.

### C. Procedures Regarding Disputed Claims or Disputed Equity Interests

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

### D. Allowance of Claims and Equity Interests

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

#### 1. *Allowance of Claims*

After the Effective Date and subject to the other provisions of this Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

#### 2. *Estimation*

Subject to the other provisions of this Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and in accordance with this Plan and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

002410

3. *Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

**ARTICLE VIII.
EFFECTIVENESS OF THIS PLAN**

**A. Conditions Precedent to the Effective Date**

The Effective Date of this Plan will be conditioned upon the satisfaction or waiver by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee with such consent not to be unreasonably withheld), pursuant to the provisions of ARTICLE VIII.B of this Plan of the following:

- This Plan and the Plan Documents, including the Claimant Trust Agreement and the Reorganized Limited Partnership Agreement, and all schedules, documents, supplements and exhibits to this Plan shall have been Filed in form and substance reasonably acceptable to the Debtor and the Committee.

- The Confirmation Order shall have been entered, not subject to stay pending appeal, and shall be in form and substance reasonably acceptable to the Debtor and the Committee. The Confirmation Order shall provide that, among other things, (i) the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee are authorized to take all actions necessary or appropriate to effectuate and consummate this Plan, including, without limitation, (a) entering into, implementing, effectuating, and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in this Plan, (b) assuming the Executory Contracts and Unexpired Leases set forth in the Plan Supplement, (c) making all distributions and issuances as required under this Plan; and (d) entering

002411

into any transactions as set forth in the Plan Documents; (ii) the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent; (iii) the implementation of this Plan in accordance with its terms is authorized; (iv) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under this Plan, shall not be subject to any Stamp or Similar Tax; and (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

- All documents and agreements necessary to implement this Plan, including without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, in each case in form and substance reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement this Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

- The Professional Fee Reserve shall be funded pursuant to this Plan in an amount determined by the Debtor in good faith.

## B.     Waiver of Conditions

The conditions to effectiveness of this Plan set forth in this ARTICLE VIII (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or effectuate this Plan. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time by the Debtor, the Reorganized

46

002412

Debtor, or the Claimant Trust, as applicable.

## C.     Effect of Non-Occurrence of Conditions to Effectiveness

Unless waived as set forth in ARTICLE VIII.B, if the Effective Date of this Plan does not occur within twenty calendar days of entry of the Confirmation Order, the Debtor may withdraw this Plan and, if withdrawn, the Plan shall be of no further force or effect.

## D.     Dissolution of the Committee

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto).  The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan and the Claimant Trust Agreement in connection with such representation.

## ARTICLE IX.
## EXCULPATION, INJUNCTION AND RELATED PROVISIONS

## A.     General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

## B.     Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose

002413

before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

## C.    Exculpation

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation  in connection with the foregoing clauses (i)-(v); *provided, however,* the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

## D.    Releases by the Debtor

On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal

misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

Notwithstanding anything herein to the contrary, any release provided pursuant to this ARTICLE IX.D (i) with respect to a Senior Employee, is conditioned in all respects on (a) such Senior Employee executing a Senior Employee Stipulation on or prior to the Effective Date and (b) the reduction of such Senior Employee's Allowed Claim as set forth in the Senior Employee Stipulation (such amount, the "<u>Reduced Employee Claim</u>"), and (ii) with respect to any Employee, including a Senior Employee, shall be deemed null and void and of no force and effect (1) if there is more than one member of the Claimant Trust Oversight Committee who does not represent entities holding a Disputed or Allowed Claim (the "<u>Independent Members</u>"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full Claimant Trust Oversight Committee) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

- sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

- has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets, or

- (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (1) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (2) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing.

*Provided, however,* that the release provided pursuant to this ARTICLE IX.D will vest and the Employee will be indefeasibly released pursuant to this ARTICLE IX.D if such Employee's release has not been deemed null and void and of no force and effect on or prior to the date that is the date of dissolution of the Claimant Trust pursuant to the Claimant Trust Agreement.

By executing the Senior Employee Stipulation embodying this release, each Senior Employee acknowledges and agrees, without limitation, to the terms of this release and the tolling agreement contained in the Senior Employee Stipulation.

The provisions of this release and the execution of a Senior Employee Stipulation will not in any way prevent or limit any Employee from (i) prosecuting its Claims, if any, against the Debtor's Estate, (ii) defending him or herself against any claims or causes of action brought against the Employee by a third party, or (iii) assisting other persons in defending themselves from any Estate Claims brought by the Litigation Trustee (but only with respect to Estate Claims

49

brought by the Litigation Trustee and not collection or other actions brought by the Claimant Trustee).

## E.  **Preservation of Rights of Action**

### 1.  *Maintenance of Causes of Action*

Except as otherwise provided in this Plan, after the Effective Date, the Reorganized Debtor or the Claimant Trust will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action included in the Reorganized Debtor Assets or Claimant Trust Assets, as applicable, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

### 2.  *Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including, without limitation, the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor or Claimant Trust, as applicable (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such Causes of Action have been expressly released in this Plan or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the right of the Reorganized Debtor or the Claimant Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

## F.  **Injunction**

Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective Related Persons, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether proof of such Claims or Equity Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest,

along with their respective Related Persons, are permanently enjoined, on and after the Effective Date, with respect to such Claims and Equity Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or the property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust, (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust or against property or interests in property of any of the Debtor, the Independent Directors, the Reorganized Debtor, or the Claimant Trust; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The injunctions set forth herein shall extend to any successors of the Debtor, the Reorganized Debtor, and the Claimant Trust and their respective property and interests in property.

**Subject in all respects to ARTICLE XII.D, no Entity may commence or pursue a claim or cause of action of any kind against any Protected Party that arose from or is related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice, that such claim or cause of action represents a colorable claim of bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Entity to bring such claim against any such Protected Party; *provided, however,* the foregoing will not apply to Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. As set forth in ARTICLE XI, the Bankruptcy Court will have sole jurisdiction to adjudicate any such claim for which approval of the Bankruptcy Court to commence or pursue has been granted.**

### G.  Term of Injunctions or Stays

Unless otherwise provided in this Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

51

### H.      Continuance of January 9 Order

Unless otherwise provided in this Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, the restrictions set forth in paragraphs 9 and 10 of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course*, entered by the Bankruptcy Court on January 9, 2020 [D.I. 339] shall remain in full force and effect following the Effective Date until the dissolution of each of the Claimant Trust and the Litigation Trust.

## ARTICLE X.
## BINDING NATURE OF PLAN

On the Effective Date, and effective as of the Effective Date, the Plan, including, without limitation, the provisions in ARTICLE IX, will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtor and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to this Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a).

## ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan as legally permissible, including, without limitation, jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date subject to the terms of this Plan and the Confirmation Order, and such payment shall not be subject to the approval of the Bankruptcy Court;

002418

- resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor, Reorganized Debtor, or Claimant Trust may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, any dispute regarding whether a contract or lease is or was executory or expired;

- make any determination with respect to a claim or cause of action against a Protected Party as set forth in ARTICLE IX;

- resolve any claim or cause of action against an Exculpated Party or Protected Party arising from or related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, or the transactions in furtherance of the foregoing;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any sale, disposition, assignment or other transfer of the Reorganized Debtor Assets or Claimant Trust Assets, including any break-up compensation or expense reimbursement that may be requested by a purchaser thereof; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any borrowing or the incurrence of indebtedness, whether secured or unsecured by the Reorganized Debtor or Claimant Trust; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- resolve any issues related to any matters adjudicated in the Chapter 11 Case;

- ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action (including Estate Claims) that are pending as of the Effective Date or that may be commenced in the future, including approval of any settlements, compromises, or other resolutions as may be requested by the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee whether under Bankruptcy Rule 9019 or otherwise, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor, the Claimant Trustee, or Litigation Trustee after the Effective Date, provided that the Reorganized Debtor, the Claimant Trustee, and the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

53

- enter such orders as may be necessary or appropriate to implement, effectuate, or consummate the provisions of this Plan, the Plan Documents, and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Documents, or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the implementation, effectiveness, consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

- issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, effectiveness, consummation, or enforcement of this Plan, except as otherwise provided in this Plan;

- enforce the terms and conditions of this Plan and the Confirmation Order;

- resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification, and other provisions contained herein and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

- enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

- resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

- enter an order concluding or closing the Chapter 11 Case after the Effective Date.

### ARTICLE XII.
### MISCELLANEOUS PROVISIONS

**A.**     **Payment of Statutory Fees and Filing of Reports**

All outstanding Statutory Fees shall be paid on the Effective Date. All such fees payable, and all such fees that become due and payable, after the Effective Date shall be paid by the Reorganized Debtor when due or as soon thereafter as practicable until the Chapter 11 Case is closed, converted, or dismissed. The Claimant Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Claimant Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. The Reorganized Debtor shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

002420

**B.     Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order with the consent of the Committee, such consent not to be unreasonably withheld; and (b) after the entry of the Confirmation Order, the Debtor may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**C.     Revocation of Plan**

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan with the consent of the Committee. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

**D.     Obligations Not Changed**

Notwithstanding anything in this Plan to the contrary, nothing herein will affect or otherwise limit or release any non-Debtor Entity's (including any Exculpated Party's) duties or obligations, including any contractual and indemnification obligations, to the Debtor, the Reorganized Debtor, or any other Entity whether arising under contract, statute, or otherwise.

**E.     Entire Agreement**

Except as otherwise described herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**F.     Closing of Chapter 11 Case**

The Claimant Trustee shall, after the Effective Date and promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

002421

### G. Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including, without limitation, the Reorganized Debtor and the Claimant Trustee. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

### H. Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Reorganized Debtor, the Claimant Trustee, or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor, the Reorganized Debtor, or the Claimant Trustee with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Documents, nor anything contained in this Plan, will constitute an admission by the Debtor that any such contract or lease is or is not an executory contract or lease or that the Debtor, the Reorganized Debtor, the Claimant Trustee, or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtor, the Reorganized Debtor, or the Claimant Trustee under any executory or non-executory contract.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, under any executory or non-executory contract or lease.

If there is a dispute regarding whether a contract or lease is or was executory at the time of its assumption under this Plan, the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

### I. Further Assurances

The Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order. On or before the Effective Date, the Debtor shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

002422

### J. Severability

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### K. Service of Documents

All notices, requests, and demands to or upon the Debtor, the Reorganized Debtor, or the Claimant Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered addressed as follows:

**If to the Claimant Trust:**

Highland Claimant Trust
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James P. Seery, Jr.

**If to the Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James P. Seery, Jr.

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Attn: Jeffrey N. Pomerantz, Esq.
        Ira D. Kharasch, Esq.
        Gregory V. Demo, Esq.

002423

**If to the Reorganized Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:   James P. Seery, Jr.
**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attn:   Jeffrey N. Pomerantz, Esq.
          Ira D. Kharasch, Esq.
          Gregory V. Demo, Esq.

## L.   Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan; (ii) the maintenance or creation of security or any Lien as contemplated by this Plan; and (iii) assignments, sales, or transfers executed in connection with any transaction occurring under this Plan.

## M.   Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Texas, without giving effect to the principles of conflicts of law of such jurisdiction; *provided, however,* that corporate governance matters relating to the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trust, as applicable, shall be governed by the laws of the state of organization of the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trustee, as applicable.

## N.   Tax Reporting and Compliance

The Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor is for all taxable periods ending after the Petition Date through, and including, the Effective Date.

002424

O.     **Exhibits and Schedules**

All exhibits and schedules to this Plan, if any, including the Exhibits and the Plan Documents, are incorporated and are a part of this Plan as if set forth in full herein.

P.     **Controlling Document**

In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.   The provisions of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and of the Confirmation Order, on the other hand, shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and any provision of the Confirmation Order, on the other hand, that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, the Disclosure Statement, and the Plan Documents, as applicable.

*[Remainder of Page Intentionally Blank]*

002425

Dated:  November 24, 2020

Respectfully submitted,

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By:_____

James P. Seery, Jr.
Chief Executive Officer and Chief
Restructuring Officer

Prepared by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

and

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com

*Counsel for the Debtor and Debtor-in-Possession*

**EXHIBIT B**

**ORGANIZATIONAL CHART OF THE DEBTOR**

002428



**EXHIBIT C**

**LIQUIDATION ANALYSIS/FINANCIAL PROJECTIONS**

**Highland Capital Management, L.P.**
*Disclaimer For Financial Projections*

This document includes financial projections for July 2020 through December 2022 (the "Projections") for Highland Capital Management, L.P. ("Company"). These Projections have been prepared by DSI with input from management at the Company. The historical information utilized in these Projections has not been audited or reviewed for accuracy by DSI.

This Memorandum includes certain statements, estimates and forecasts provided by the Company with respect to the Company's anticipated future performance. These estimates and forecasts contain significant elements of subjective judgment and analysis that may or may not prove to be accurate or correct. There can be no assurance that these statements, estimates and forecasts will be attained and actual outcomes and results may differ materially from what is estimated or forecast herein.

These Projections should not be regarded as a representation of DSI that the projected results will be achieved.

Management may update or supplement these Projections in the future, however, DSI expressly disclaims any obligation to update its report.

These Projections were not prepared with a view toward compliance with published guidelines of the Securities and Exchange Commission or the American Institute of Certified Public Accountants regarding historical financial statements, projections or forecasts.

11/13/2020

002430

11/13/2020

002431

*Highland Capital Management, L.P.*
*Statement of Assumptions*

A. Plan effective date is January 31 ,2021.

B. All investment assets are sold by December 31, 2022.

C. All demand notes are collected in the year 2021.

D. All notes receivable with maturity dates beyond 12/31/2022 are sold in Q4 2022; in the interim interest income and principal payments are collected as they become due.

E. Fixed assets used in daily business operations are sold in February 2021.

F. Accrual for employee bonuses as of January 2021 are reversed and not paid.

G. All Management advisory or shared service contracts are terminated on their terms by the effective date or shortly thereafter

H. Post-effective date, the reorganized Debtor would retain three HCMLP employees as contractors to help monetize the remaining assets.

I. Litigation Trustee budget is $6,500,000.

J. Unrealized gains or losses are not recorded on a monthly basis; all gains or losses are recorded as realized gains or losses upon sale of asset.

K. Plan does not provide for payment of interest to Class 8 holders of general unsecured claims, as set forth in the Plan. If holders of general unsecured claims receive 100% of their allowed claims, they would then be entitled to receive interest at the federal judgement rate, prior to any funds being available for claims or interest of junior priority.

L. Plan assumes zero allowed claims for UBS, IFA, the HarbourVest entities (collectively "HV") and Hunter Mountain Investment Trust ("HM").

M. Claim amounts listed in Plan vs. Liquidation schedule are subject to change; claim amounts in Class 8 assume $0 for UBS, IFA, HM and HV. Assumes RCP claims will offset against HCMLP's interest in fund and will not be paid from Debtor assets

N. With the exception of Class 2 - Frontier, Classes 1-7 will be paid in full within 30 days of effective date.

O. Class 7 payout limited to 85% of each individual creditor claim or in the aggregate $13.15 million. Plan currently projects Class 7 payout of $9.96 million.

P. See below for Class 8 estimated payout schedule; payout is subject to certain assets being monetized by payout date:

   o By September 30, 2021 - $50,000,000

   o By March 31, 2022 – additional $50,000,000

   o By June 30, 2022 – additional $25,000,000

   o All remaining proceeds are assumed to be paid out on or soon after all remaining assets are monetized.

**Highland Capital Management, L.P.**
*Plan Analysis Vs. Liquidation Analysis*
*(US $000's)*

| | Plan Analysis | Liquidation Analysis |
|---|---|---|
| Estimated cash on hand at 1/31/2020 | $ 25,076 | $ 25,076 |
| Estimated proceeds from monetization of assets [1][2] | 190,445 | 149,197 |
| Estimated expenses through final distribution[1][3] | (33,642) | (36,232) |
| Total estimated $ available for distribution | 181,879 | 138,042 |
| Less: Claims paid in full | | |
| Unclassified [4] | (1,078) | (1,078) |
| Administrative claims [5] | (10,574) | (10,574) |
| Class 1 – Jefferies Secured Claim | - | - |
| Class 2 – Frontier Secured Claim [6] | (5,463) | (5,463) |
| Class 3 – Other Secured Claims | (551) | (551) |
| Class 4 – Priority Non-Tax Claims | (16) | (16) |
| Class 5 – Retained Employee Claims | - | - |
| Class 6 – PTO Claims | - | - |
| Class 7 – Convenience Claims [7][8][9] | (10,255) | - |
| Subtotal | (27,937) | (17,682) |
| Estimated amount remaining for distribution to general unsecured claims | 153,942 | 120,359 |
| Class 8 – General Unsecured Claims [8][10] | 176,049 | 192,258 |
| Subtotal | 176,049 | 192,258 |
| % Distribution to general unsecured claims | 87.44% | 62.60% |
| Estimated amount remaining for distribution | - | - |
| Class 9 – Subordinated Claims | no distribution | no distribution |
| Class 10 – Class B/C Limited Partnership Interests | no distribution | no distribution |
| Class 11 – Class A Limited Partnership Interest | no distribution | no distribution |

*Footnotes:*

[1] Assumes chapter 7 Trustee will not be able to achieve some sales proceeds as Claimant Trustee
Assumes Chapter 7 Trustee engages new professionals to help liquidate assets

[2] Sale of investment assets, sale of fixed assets, collection of accounts receivable and interest receivable

[3] Estimated expenses through final distribution exclude non-cash expenses:
Depreciation of $462 thousand in 2021

[4] Unclassified claims include payments for priority tax claims and settlements with previously approved by the Bankruptcy Court

[5] Represents $4.7 million in unpaid professional fees and $4.5 million in timing of payments to vendors

[6] Debtor will pay all unpaid interest estimated at $253 thousand of Frontier on effective date and continue to pay interest quarterly at 5.25% until Frontier's collateral is sold

[7] Claims payout limited to 85% of each individual creditor claim or limited to a total class payout of $13.15 million

[8] Class 7 includes $1.1 million estimate for aggregate contract rejections damage and Class 8 includes $1.4 million for contract rejection damages

[9] Assumes 3 claimants with allowed claims less than $2.5 million opt into Class 7 along with claims of Senior Employees

[10] Class estimates $0 allowed claim for the following creditors: IFA, HV, HM and UBS; assumes RCP claims offset against HCMLP interest in RCP fund

*Notes:*

All claim amounts are estimated as of November 20, 2020 and subject to change

11/13/2020

002433

**Highland Capital Management, L.P.**
*Balance Sheet*
*(US $000's)*

| | Actual Jun-20 | Actual Sep-20 | Forecast --> Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | |
| Cash and Cash Equivalents | $ 14,994 | $ 5,888 | $ 28,342 | $ 4,934 | $ 96,913 | $ 90,428 | $ 106,803 | $ 52,322 | $ 23,641 | $ 21,344 | $ - |
| Other Current Assets | 13,182 | 13,651 | 10,559 | 9,629 | 7,746 | 7,329 | 5,396 | 6,054 | 6,723 | 7,406 | - |
| Investment Assets | 320,912 | 305,961 | 261,333 | 258,042 | 133,026 | 81,793 | 54,159 | 54,159 | 54,159 | 54,159 | - |
| Net Fixed Assets | 3,055 | 2,823 | 2,592 | 1,348 | - | - | - | - | - | - | - |
| **TOTAL ASSETS** | $ 352,142 | $ 328,323 | $ 302,826 | $ 273,952 | $ 237,684 | $ 179,550 | $ 166,358 | $ 112,535 | $ 84,523 | $ 82,910 | $ - |
| **Liabilities** | | | | | | | | | | | |
| Post-petition Liabilities | $ 26,226 | $ 19,138 | $ 19,280 | $ 2,891 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Pre-petition Liabilities | 126,365 | 126,343 | 121,950 | - | - | - | - | - | - | - | - |
| Claims | | | | | | | | | | | |
| Unclassified | - | - | - | - | - | - | - | - | - | - | - |
| Class 1 – Jefferies Secured Claim | - | - | - | - | - | - | - | - | - | - | - |
| Class 2 – Frontier Secured Claim | - | - | - | 5,210 | - | - | - | - | - | - | - |
| Class 3 – Other Secured Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 4 – Priority Non-Tax Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 5 – Retained Employee Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 6 – PTO Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 7 – Convenience Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 8 – General Unsecured Claims | - | - | - | 176,049 | 176,049 | 126,049 | 126,049 | 76,049 | 51,049 | 51,049 | 22,107 |
| Class 9 – Subordinated Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 10 – Class B/C Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Class 11 – Class A Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Claim Payable | 126,365 | 126,343 | 121,950 | 181,259 | 176,049 | 126,049 | 126,049 | 76,049 | 51,049 | 51,049 | 22,107 |
| **TOTAL LIABILITIES** | $ 152,591 | $ 145,481 | $ 141,230 | $ 184,150 | $ 176,049 | $ 126,049 | $ 126,049 | $ 76,049 | $ 51,049 | $ 51,049 | $ 22,107 |
| Partners' Capital | 199,551 | 182,842 | 161,596 | 89,802 | 61,635 | 53,501 | 40,309 | 36,486 | 33,473 | 31,860 | (22,107) |
| **TOTAL LIABILITIES AND PARTNERS' CAPITAL** | $ 352,142 | $ 328,323 | $ 302,826 | $ 273,952 | $ 237,684 | $ 179,550 | $ 166,358 | $ 112,535 | $ 84,523 | $ 82,910 | $ - |

11/13/2020

002434

**Highland Capital Management, L.P.**
*Profit/Loss*
*(US $000's)*

| | Actual Jan 2020 to June 2020 Total | Actual 3 month ended Sept 2020 | Forecast --> 3 month ended Dec 2020 | Total 2020 | 3 month ended Mar 2021 | 3 month ended Jun 2021 | 3 month ended Sept 2021 | 3 month ended Dec 2021 | Total 2021 |
|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | |
| Management Fees | $ 6,572 | $ 1,949 | $ 2,651 | $ 11,173 | $ 779 | $ - | $ - | $ - | $ 779 |
| Shared Service Fees | 7,672 | 3,765 | 3,788 | 15,225 | 1,263 | - | - | - | 1,263 |
| Other Income | 3,126 | 538 | 340 | 4,004 | 113 | - | - | - | 113 |
| Total revenue | $ 17,370 | $ 6,252 | $ 6,779 | $ 30,401 | $ 2,154 | $ - | $ - | $ - | $ 2,154 |
| Operating Expenses [1] | 13,328 | 9,171 | 9,079 | 31,579 | 8,428 | 1,646 | 1,807 | 2,655 | 14,536 |
| Income/(loss) From Operations | $ 4,042 | $ (2,918) | $ (2,301) | $ (1,177) | $ (6,274) | $ (1,646) | $ (1,807) | $ (2,655) | $ (12,382) |
| Professional Fees | 17,522 | 7,707 | 7,741 | 32,971 | 5,450 | 5,058 | 2,048 | 1,605 | 14,161 |
| Other Income/(Expenses) [2] | 2,302 | 1,518 | 1,057 | 4,878 | (59,016) | 573 | 423 | 423 | (57,597) |
| Operating Gain/(Loss) | $ (11,178) | $ (9,107) | $ (8,985) | $ (29,270) | $ (70,741) | $ (6,130) | $ (3,432) | $ (3,837) | $ (84,139) |
| **Realized and Unrealized Gain/(Loss)** | | | | | | | | | |
| Other Realized Gains/(Loss) | - | - | - | - | (763) | 522 | - | - | (241) |
| Net Realized Gain/(Loss) on Sale of Investment | (28,418) | 1,549 | (12,167) | (39,036) | (290) | 19 | (4,702) | (8,006) | (12,979) |
| Net Change in Unrealized Gain/(Loss) of Investments | (29,029) | (7,450) | - | (37,380) | - | (22,578) | - | (1,349) | (23,927) |
| Net Realized Gain /(Loss) from Equity Method Investees | - | - | (94) | (94) | - | - | - | - | - |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | (80,782) | (1,700) | - | (82,482) | - | - | - | - | - |
| Total Realized and Unrealized Gain/(Loss) | $ (139,129) | $ (7,601) | $ (12,262) | $ (158,992) | $ (1,053) | $ (22,037) | $ (4,702) | $ (9,355) | $ (37,141) |
| Net Income | $ (150,307) | $ (16,708) | $ (21,247) | $ (188,262) | $ (71,794) | $ (28,167) | $ (8,134) | $ (13,192) | $ (121,247) |

*Footnotes:*
[1] Operating expenses include an adjustment in January 2021 to account for expenses that have not been accrued or paid prior to effective date.
[2] Other income and expenses of $61.2 million in January 2021 includes:
   [a] $77.2 million was expensed to record for the increase of allowed claims.
   [b] Income of $15.8 million for the accrued, but unpaid payroll liability related to the Debtor's deferred bonus programs amount written-off.

**Highland Capital Management, L.P.**
*Profit/Loss*
*(US $000's)*

| | Forecast --> | | | | | |
| | 3 month ended Mar 2022 | 3 month ended Jun 2022 | 3 month ended Sept 2022 | 3 month ended Dec 2022 | Total 2022 | Plan |
|---|---|---|---|---|---|---|
| **Revenue** | | | | | | |
| Management Fees | $ - | $ - | $ - | $ - | $ - | $ 779 |
| Shared Service Fees | - | - | - | - | - | 1,263 |
| Other Income | - | - | - | - | - | 113 |
| Total revenue | $ - | $ - | $ - | $ - | $ - | $ 2,154 |
| Operating Expenses | 1,443 | 643 | 758 | 1,088 | 3,932 | 18,468 |
| Income/(loss) From Operations | $ (1,443) | $ (643) | $ (758) | $ (1,088) | $ (3,932) | $ (16,314) |
| Professional Fees | 2,788 | 2,788 | 1,288 | 1,288 | 8,153 | 22,313 |
| Other Income/(Expenses) | 408 | 419 | 434 | 184 | 1,444 | (56,154) |
| Operating Gain/(Loss) | $ (3,823) | $ (3,013) | $ (1,613) | $ (2,193) | $ (10,641) | $ (94,780) |
| **Realized and Unrealized Gain/(Loss)** | | | | | | |
| Other Realized Gains/(Loss) | - | - | - | (51,775) | (51,775) | (52,016) |
| Net Realized Gain/(Loss) on Sale of Investment | - | - | - | - | - | (12,979) |
| Net Change in Unrealized Gain/(Loss) of Investments | - | - | - | - | - | - |
| Net Realized Gain /(Loss) from Equity Method Investees | - | - | - | - | - | (23,927) |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | - | - | - | - | - | - |
| Total Realized and Unrealized Gain/(Loss) | $ - | $ - | $ - | $ (51,775) | $ (51,775) | $ (88,922) |
| Net Income | $ (3,823) | $ (3,013) | $ (1,613) | $ (53,967) | $ (62,415) | $ (183,702) |

11/13/2020

002436

**Highland Capital Management, L.P.**
*Cash Flow Indirect*
*(US $000's)*

| | Forecast ---> | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Sep-20 | Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
| Net (Loss) Income | $ (16,708) | $ (21,247) | $ (71,794) | $ (28,167) | $ (8,134) | $ (13,192) | $ (3,823) | $ (3,013) | $ (1,613) | $ (53,?) |
| Cash Flow from Operating Activity | | | | | | | | | | |
| (Increase) / Decrease in Cash | | | | | | | | | | |
| Depreciation and amortization | 231 | 231 | 231 | 231 | - | - | - | - | - | - |
| Other realized (gain) / loss | - | - | 763 | (522) | - | - | - | - | - | 51,? |
| Investment realized (gain) / loss | (1,549) | 12,262 | 290 | 22,559 | 4,702 | 9,355 | - | - | - | - |
| Unrealized (gain) / loss | (9,150) | - | - | - | - | - | - | - | - | - |
| (Increase) Decrease in Current Assets | (470) | 3,092 | 930 | 1,884 | 417 | 1,933 | (658) | (669) | (684) | 2,? |
| Increase (Decrease) in Current Liabilities | (7,110) | (4,251) | (54,172) | (2,891) | - | - | - | - | - | - |
| Net Cash Increase / (Decrease) - Operating Activities | (34,757) | (9,913) | (123,752) | (6,907) | (3,015) | (1,904) | (4,481) | (3,681) | (2,297) | (?) |
| Cash Flow From Investing Activities | | | | | | | | | | |
| Proceeds from Sale of Fixed Assets | - | - | 250 | 1,639 | - | - | - | - | - | 7,780 |
| Proceeds from Investment Assets | 25,650 | 32,366 | 3,002 | 102,457 | 46,531 | 18,278 | - | - | - | - |
| Net Cash Increase / (Decrease) - Investing Activities | 25,650 | 32,366 | 3,252 | 104,096 | 46,531 | 18,278 | - | - | - | 7,780 |
| Cash Flow from Financing Activities | | | | | | | | | | |
| Claims payable | - | - | (73,997) | - | - | - | - | - | - | - |
| Claim reclasses/(paid) | - | - | 181,259 | (5,210) | (50,000) | - | (50,000) | (25,000) | - | (28,?) |
| Maple Avenue Holdings | - | - | (4,975) | - | - | - | - | - | - | - |
| Frontier Note | - | - | (5,195) | - | - | - | - | - | - | - |
| Net Cash Increase / (Decrease) - Financing Activities | - | - | 97,092 | (5,210) | (50,000) | - | (50,000) | (25,000) | - | (28,?) |
| Net Change in Cash | $ (9,107) | $ 22,454 | $ (23,408) | $ 91,979 | $ (6,484) | $ 16,374 | $ (54,481) | $ (28,681) | $ (2,297) | $ (21,?) |
| Beginning Cash | 14,994 | 5,888 | 28,342 | 4,934 | 96,913 | 90,428 | 106,803 | 52,322 | 23,641 | 21,? |
| Ending Cash | $ 5,887 | $ 28,342 | $ 4,934 | $ 96,913 | $ 90,428 | $ 106,803 | $ 52,322 | $ 23,641 | $ 21,344 | $ |

Case 19-34054-sgj11 Doc 1389 Filed 11/13/21 Entered 11/13/2018 09:31 Page 1 of 3
Case 3:21-cv-00538-N Document 26-9 Filed 06/09/21 Page 142 of 215 PageID 5174
Docket #1389 Date Filed: 11/13/2020

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |

### DEBTOR'S NOTICE OF FILING OF SUPPLEMENT TO THE THIRD AMENDED
### <u>PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.</u>

**PLEASE TAKE NOTICE** that Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>"), hereby files the documents included herewith as **<u>Exhibits A-H</u>** (collectively, the "<u>Plan Supplement</u>") supplementing the *Third*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

1934054201113000000000019

Dondero Ex. 3

*Amended Plan of Reorganization of Highland Capital Management, L.P.* dated November 13, 2020 [Docket No. 1383] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").

**PLEASE TAKE FURTHER NOTICE** that the Plan Supplement consists of the following documents as set forth in the Plan:

Exhibit A:    Form of Claimant Trust Agreement

Exhibit B:    Form of New GP LLC Documents

Exhibit C:    Form of Reorganized Limited Partnership Agreement

Exhibit D:    Form of Litigation Sub-Trust Agreement

Exhibit E:    Schedule of Retained Causes of Action

Exhibit F:    Form of New Frontier Note

Exhibit G:    Schedule of Employees

Exhibit H:    Form of Senior Employee Stipulation

**PLEASE TAKE FURTHER NOTICE** that this *Notice of Filing of Supplement to the Third Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Notice of Plan Supplement") is being served on parties-in-interest **without** the Plan Supplement attached. Any party-in-interest wishing to obtain copies of the Plan or the Plan Supplement may do so by (i) contacting the Debtor's Solicitation Agent, KCC at (i) 1-877-573-3984 (toll free) or 1-310-751-1829 (if international) or by email at HighlandInfo@kccllc.com or (ii) viewing such documents by accessing them online at https://kccllc.net/HCMLP.  The documents are also available on the Court's website: www.txnb.uscourts.gov.  Please note that a PACER password and login are needed to access documents on the Court's website.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 13, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
(*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084)
(*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992)
(*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:   jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and*
*Debtor-in-Possession*

002439

# EXHIBIT "A"

002440

*DRAFT*

# CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of _____ , 2020 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "Debtor"), as settlor, and James P. Seery, Jr., as trustee (the "Claimant Trustee"), and [____] as Delaware trustee (the "Delaware Trustee," and together with the Debtor and the Claimant Trustee, the "Parties") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

# RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. •](as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] [which was confirmed by the Bankruptcy Court on _____ , 2020 pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor (the "Confirmation Order")];

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve Disputed Claims as set forth herein and in the Plan; and

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2]     For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

(vi) administrative services relating to the activities of the Claimant Trust and relating to the implementation of the Plan can be performed by the Claimant Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor, the Claimant Trustee, and the Delaware Trustee have executed this Agreement for the benefit of the Claimant Trust Beneficiaries entitled to share in the Claimant Trust Assets and, at the direction of such Claimant Trust Beneficiaries as provided for in the Plan.

TO HAVE AND TO HOLD unto the Claimant Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust Beneficiaries, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Claimant Trust in accordance with Article IX hereof, this Claimant Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Claimant Trust Assets are to be strictly held and applied by the Claimant Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1    Certain Definitions.   Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.   For all purposes of this Agreement, the following terms shall have the following meanings:

(a)    "Acis" means collectively, Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

(b)    "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(c)    "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, with respect to a Member, or to the extent applicable, the Claimant Trustee, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

002442

(d)     "Claimant Trust Agreement" means this Agreement.

(e)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" hereunder and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of this Agreement.

(f)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(g)     "Claimant Trust Assets" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

(h)     "Claimant Trust Beneficiaries" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

(i)     "Claimant Trust Expense Cash Reserve" means $[•] million in Cash to be funded pursuant to the Plan into a bank account of the Claimant Trust on or before the Effective Date for the purpose of paying Claimant Trust Expenses in accordance herewith.

(j)     "Claimant Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust, and the fees and expenses of the Claimant Trustee and professional persons retained by the Claimant Trust or Claimant Trustee in accordance with Article [3.13(b)] of this Agreement.

(k)     "Committee Member" means a Member who is/was also a member of the Creditors' Committee.

(l)     "Conflicted Member" has the meaning set forth in Section 4.6(c) hereof.

(m)     "Contingent Trust Interests" means the contingent interests in the Claimant Trust to be distributed to Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests in accordance with the Plan.

002443

(n)     "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, comprised of Acis, Meta-e Discovery, the Redeemer Committee and UBS.

(o)     "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(p)     "Delaware Trustee" has the meaning set forth in the introduction hereof.

(q)     "Disability" means as a result of the Claimant Trustee's or a Member's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Claimant Trustee or the Member, as applicable, the Claimant Trustee or such Member has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(r)     "Disinterested Members" has the meaning set forth in Section 4.1 hereof.

(s)     "Disputed Claims Reserve" means the reserve account to be opened by the Claimant Trust on or after the Effective Date and funded in an initial amount determined by the Claimant Trustee [(with the consent of a simple majority of the Oversight Board)] to be sufficient to pay Disputed Claims under the Plan.

(t)     ["Employees" means the employees of the Debtor set forth in the Plan Supplement.]

(u)     ["Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations executed by employees of the Debtor prior to the Effective Date.]

(v)     "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(w)     "Equity Trust Interests" has the meaning given to it in Section 5.1(c) hereof.

(x)     "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(y)     "General Unsecured Claim Trust Interests" means interests in the Claimant Trust to be distributed to Holders of Allowed Class 8 General Unsecured Claims in accordance with the Plan.

(z)     "GUC Beneficiaries" means the Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests.

(aa)     "GUC Payment Certification" has the meaning given to it in Section 5.1(c) hereof.

002444

(bb)  "HarbourVest" means, collectively, HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P.

(cc)  "Investment Advisers Act" means the Investment Advisers Act of 1940, as amended.

(dd)  "Investment Company Act" means the Investment Company Act of 1940, as amended.

(ee)  "Litigation Sub-Trust" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(ff)  "Litigation Sub-Trust Agreement" means the litigation trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(gg)  "Litigation Trustee" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(hh)  "*Managed Funds*" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to the Plan; *provided, however,* that the Highland Select Equity Fund, L.P. (and its direct and indirect subsidiaries) will not be considered a Managed Fund for purposes hereof.

(ii)  "Material Claims" means the Claims asserted by UBS, HarbourVest, Patrick Hagaman Daugherty, and Integrated Financial Associates, Inc.  [TBD:  Employee Claims]

(jj)  "Member" means a Person that is member of the Oversight Board.

(kk)  "Oversight Board" means the board comprised of five (5) Members established pursuant to the Plan and Article III of this Agreement to oversee the Claimant Trustee's performance of his duties and otherwise serve the functions set forth in this Agreement and those of the "Claimant Trust Oversight Committee" described in the Plan.  Subject to the terms of this Agreement, the initial Members of the Oversight Board shall be: (i) Eric Felton, as representative of the Redeemer Committee; (ii) Josh Terry, as representative of Acis; (iii) Elizabeth Kozlowski, as representative of UBS; (iv) Paul McVoy, as representative of Meta-e Discovery; and (v) David Pauker.

5

002445

(ll)    "Plan" has the meaning set forth in the Recitals hereof.

(mm)    "Privileges" means all of the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Causes of Action, including, but not limited to, attorney-client privilege as defined in Rule 502(g) of the Federal Rules of Evidence[; provided, however, that "Privileges" shall not include the work-product privilege and the work-product privilege shall remain with the attorney or attorneys who created such work product].

(nn)    "Redeemer Committee" means the Redeemer Committee of the Highland Crusader Fund.

(oo)    "Registrar" has the meaning given to it in Section 5.3(a) hereof.

(pp)    "Reorganized Debtor Assets" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

(qq)    "Securities Act" means the Securities Act of 1933, as amended.

(rr)    "Subordinated Beneficiaries" means the Claimant Trust Beneficiaries who hold Subordinated Claim Trust Interests.

(ss)    "Subordinated Claim Trust Interests" means the subordinated interests in the Claimant Trust to be distributed to Holders of Allowed Class 9 Subordinated Claims in accordance with the Plan.

(tt)    "TIA" means the Trust Indenture Act of 1939, as amended.

(uu)    "Trust Interests" means collectively the General Unsecured Claim Trust Interests, Subordinated Claim Trust Interests, and Equity Trust Interests.

(vv)    "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

(ww)    "Trustees" means collectively the Claimant Trustee and Delaware Trustee.

(xx)    "UBS" means collectively UBS Securities LLC and UBS AG London Branch.

1.2    General Construction.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of

6

this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

      1.3    <u>Incorporation of the Plan</u>.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

**ARTICLE II.**
**ESTABLISHMENT OF THE CLAIMANT TRUST**

      2.1    <u>Creation of Name of Trust</u>.

      (a)    The Claimant Trust is hereby created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Claimant Trust."  The Claimant Trustee shall be empowered to conduct all business and hold all property constituting the Claimant Trust Assets in such name in accordance with the terms and conditions set forth herein.

      (b)    The Trustees shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in their capacity as Trustees, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

      2.2    <u>Objectives</u>.

      (a)    The Claimant Trust is established for the purpose of satisfying Allowed General Unsecured Claims and Allowed Subordinated Claims (and only to the extent provided herein, Allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests) under the Plan, by monetizing the Claimant Trust Assets transferred to it and making distributions to the Claimant Trust Beneficiaries.  The Claimant Trust shall not continue or engage in any trade or business except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets consistent with this Agreement and the Plan and act as sole member and manager of New GP LLC.  The Claimant Trust shall provide a mechanism for (i) the monetization of the Claimant Trust Assets and (ii) the distribution of the proceeds thereof, net of all claims, expenses, charges, liabilities, and obligations of the Claimant Trust, to the Claimant Trust Beneficiaries in accordance with the Plan.  In furtherance of this distribution objective, the Claimant Trust will, from time to time, prosecute and resolve objections to certain Claims and Interests as provided herein and in the Plan.

      (b)    It is intended that the Claimant Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations.  In furtherance of this objective, the Claimant Trustee shall, in his business judgment, make continuing best efforts to (i) dispose of or monetize the Claimant Trust Assets and resolve Claims, (ii) make timely distributions, and (iii) not unduly prolong the duration of the Claimant Trust, in each case in accordance with this Agreement.

7

2.3    <u>Nature and Purposes of the Claimant Trust</u>.

(a)    The Claimant Trust is organized and established as a trust for the purpose of monetizing the Claimant Trust Assets and making distributions to Claimant Trust Beneficiaries in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets, if any, which shall be commenced and pursued by the Reorganized Debtor at the direction of the Claimant Trust as sole member of New GP LLC pursuant to the terms of the Reorganized Limited Partnership Agreement. The Claimant Trust and Claimant Trustee shall have and retain, and, as applicable, assign and transfer to the Litigation Sub-Trust and Litigation Trustee, any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Claim as of the Petition Date. On and after the date hereof, in accordance with and subject to the Plan, the Claimant Trustee shall have the authority to compromise, settle or otherwise resolve, or withdraw any objections to Claims against the Debtor [(except for the Employee Claims, which shall be litigated, comprised, settled, or otherwise resolved exclusively by the Litigation Trustee)] and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, which authority may be shared with or transferred to the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement. For the avoidance of doubt, the Claimant Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Claims other than Estate Claims[, the Employee Claims,] and those Claims constituting Reorganized Debtor Assets.

(b)    The Claimant Trust shall be administered by the Claimant Trustee, in accordance with this Agreement, for the following purposes:

(i)    to manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period;

(ii)    to litigate and settle Claims in Class 8 and Class 9 (other than the Employee Claims, which shall be litigated and/or settled by the Litigation Trustee) and any of the Causes of Action included in the Claimant Trust Assets (including any cross-claims and counter-claims); <u>provided</u>, <u>however,</u> that Estate Claims transferred to the Litigation Sub-Trust shall be litigated and settled by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement;

(iii)    to distribute net proceeds of the Claimant Trust Assets to the Claimant Trust Beneficiaries;

(iv)    to distribute funds from the Disputed Claims Reserve to Holders of Trust Interests or to the Reorganized Debtor for distribution to Holders of Disputed in Claims in

002448

each case in accordance with the Plan from time to time as any such Holder's Disputed Claim becomes an Allowed Claim under the Plan;

(v) to distribute funds to the Litigation Sub-Trust at the direction the Oversight Board;

(vi) to serve as the limited partner of, and to hold the limited partnership interests in, the Reorganized Debtor;

(vii) to serve as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner;

(viii) to oversee the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement, in its capacity as the sole member and manager of New GP LLC pursuant to the terms of the New GP LLC Documents, all with a view toward maximizing value in a reasonable time in a manner consistent with the Reorganized Debtor's fiduciary duties as investment adviser to the Managed Funds; and

(ix) to perform any other functions and take any other actions provided for or permitted by this Agreement and the Plan, and in any other agreement executed by the Claimant Trustee.

2.4 <u>Transfer of Assets and Rights to the Claimant Trust; Litigation Sub-Trust</u>.

(a) On the Effective Date, pursuant to the Plan, the Debtor shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Claimant Trust Assets and related Privileges held by the Debtor to the Claimant Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan and this Agreement. To the extent certain assets comprising the Claimant Trust Assets, because of their nature or because such assets will accrue or become transferable subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Claimant Trust on such date, such assets shall be considered Reorganized Debtor Assets, which may be subsequently transferred to the Claimant Trust by the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement after such date.

(b) On or as soon as practicable after the Effective Date, the Claimant Trust shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims and related Privileges held by the Claimant Trust to the Litigation Sub-Trust Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan, this Agreement, and the Litigation Sub-Trust Agreement. Following the transfer of such Privileges, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(c) On or before the Effective Date, and continuing thereafter, the Debtor or Reorganized Debtor, as applicable, shall provide (i) for the Claimant Trustee's and Litigation Trustee's reasonable access to all records and information in the Debtor's and Reorganized Debtor's possession that relate to the Claimant Trust Assets and Estate Claims, (ii) that all

002449

Privileges related to the Claimant Trust Assets shall transfer to and vest exclusively in the Claimant Trust (except for those Privileges that will be transferred and assigned to the Litigation Sub-Trust in respect of the Estate Claims), and (iii) subject to Section 3.12(c), the Debtor and Reorganized Debtor shall preserve all records and documents (including all electronic records or documents) until such time as the Claimant Trustee, [with the consent of the Oversight Board and, if pertaining to any of the Estate Claims, the Litigation Trustee,] directs the Reorganized Debtor, as sole member of its general partner, that such records are no longer required to be preserved.  For the purposes of transfer of documents, the Claimant Trust or Litigation Sub-Trust, as applicable, is an assignee and successor to the Debtor in respect of the Claimant Trust Assets and Estate Claims, respectively, and shall be treated as such in any review of confidentiality restrictions in requested documents.

(d)    Until the Claimant Trust terminates pursuant to the terms hereof, legal title to the Claimant Trust Assets (other than Estate Claims) and all property contained therein shall be vested at all times in the Claimant Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Claimant Trust Assets to be vested in the Claimant Trustee, in which case title shall be deemed to be vested in the Claimant Trustee, solely in his capacity as Claimant Trustee.  For purposes of such jurisdictions, the term Claimant Trust, as used herein, shall be read to mean the Claimant Trustee.

2.5    <u>Principal Office</u>.  The principal office of the Claimant Trust shall be maintained by the Claimant Trustee at the following address:[_____].

2.6    <u>Acceptance</u>.  The Claimant Trustee accepts the Claimant Trust imposed by this Agreement and agrees to observe and perform that Claimant Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.7    <u>Further Assurances</u>.  The Debtor, Reorganized Debtor, and any successors thereof will, upon reasonable request of the Claimant Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Claimant Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Claimant Trustee the powers, instruments or funds in trust hereunder.

2.8    <u>Incidents of Ownership</u>.  The Claimant Trust Beneficiaries shall be the sole beneficiaries of the Claimant Trust and the Claimant Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

**ARTICLE III.**
**THE TRUSTEES**

3.1    <u>Role</u>.  In furtherance of and consistent with the purpose of the Claimant Trust, the Plan, and this Agreement, the Claimant Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Claimant Trustee with respect to the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries and maintain, manage, and take action on behalf of the Claimant Trust.

002450

3.2    Authority.

(a)    In connection with the administration of the Claimant Trust, in addition to any and all of the powers enumerated elsewhere herein, the Claimant Trustee shall, in an expeditious but orderly manner, monetize the Claimant Trust Assets, make timely distributions and not unduly prolong the duration of the Claimant Trust. The Claimant Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Claimant Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law. The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value in a reasonable time.

(b)    The Claimant Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Claims and Causes of Action that are part of the Claimant Trust Assets, other than the [Employee Claims and] Estate Claims transferred to the Litigation Sub-Trust, if any, as the Claimant Trustee determines is in the best interests of the Claimant Trust. To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

(c)    Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

(i)    solely as required by Section 2.4(c), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii)    open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

(iii)    as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

002451

(iv)  settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

(v)  sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $[3,000,000] (over a thirty-day period);

(vi)  upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

(vii)  exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

(viii)  protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(ix)  obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board solely in their capacities as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise.  The cost of any such insurance shall be a Claimant Trust Expense and paid by the Claimant Trustee from the Claimant Trust Assets;

(x)  without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Claimant Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Claimant Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Claimant Trustee shall be Claimant Trust Expenses and paid by the Claimant Trustee from the Claimant Trust Assets;

(xi)  retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Claimant Trust as may be required by this Agreement, the Plan, the Confirmation Order, and applicable laws and as may be reasonably and appropriate in Claimant Trustee's discretion. Subject to the foregoing, the Claimant Trustee may commit the Claimant Trust to, and shall pay, such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid by the Claimant Trustee from Claimant Trust Assets;

(xii)  prepare and file (A) tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (B) an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns

002452

and pay taxes for the Disputed Claim Reserve as a separate taxable entity, or (C) any periodic or current reports that may be required under applicable law;

(xiii) prepare and send annually to the Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Claimant Trust and its share of the Claimant Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

(xiv) to the extent applicable, assert, enforce, release, or waive any attorney-client communication, attorney work product or other Privilege or defense on behalf of the Claimant Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Claimant Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xv) subject to Section 3.4, invest the proceeds of the Claimant Trust Assets and all income earned by the Claimant Trust, pending any distributions in short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills;

(xvi) request any appropriate tax determination with respect to the Claimant Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xvii) take or refrain from taking any and all actions the Claimant Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Claimant Trust Assets consistent with purposes hereof;

(xviii) take all steps and execute all instruments and documents necessary to effectuate the purpose of the Claimant Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder;

(xix) exercise such other powers and authority as may be vested in or assumed by the Claimant Trustee by any Final Order;

(xx) evaluate and determine strategy with respect to the Claimant Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Claimant Trust Assets on behalf of the Claimant Trust; and

(xxi) with respect to the Claimant Trust Beneficiaries, perform all duties and functions of the Distribution Agent as set forth in the Plan, including distributing Cash from the Disputed Claims Reserve to the Reorganized Debtor such that the Reorganized Debtor can satisfy its duties and functions as Distribution Agent with respect to Claims in Class 1 through Class 7 (the foregoing subparagraphs (i)-(xvii) being collectively, the "Authorized Acts").

(d) The Claimant Trustee and the Oversight Committee will enter into an agreement as soon as practicable after the Effective Date concerning the Claimant Trustee's authority with respect to certain other assets, including certain portfolio company assets (the "Other Assets").

002453

(e)    The Claimant Trustee has the power and authority to act as trustee of the Claimant Trust and perform the Authorized Acts through the date such Claimant Trustee resigns, is removed, or is otherwise unable to serve for any reason.

3.3    <u>Limitation of Authority</u>.

(a)    Notwithstanding anything herein to the contrary, the Claimant Trust and the Claimant Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Claimant Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement, or (iv) cause New GP LLC to cause the Reorganized Debtor to take any action in contravention of the Plan, Plan Documents or the Confirmation Order.

(b)    Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Claimant Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 herein, in order to:

(i)    terminate or extend the term of the Claimant Trust;

(ii)    prosecute, litigate, settle or otherwise resolve any of the Material Claims;

(iii)    except otherwise set forth herein, sell or otherwise monetize any assets that are not Other Assets, including Reorganized Debtor Assets (other than with respect to the Managed Funds), that are valued greater than $[3,000,000] (over a thirty-day period);

(iv)    except for cash distributions made in accordance with the terms of this Agreement, make any cash distributions to Claimant Trust Beneficiaries in accordance with Article IV of the Plan;

(v)    except for any distributions made in accordance with the terms of this Agreement, make any distributions from the Disputed Claims Reserve to Holders of Disputed Claims after such time that such Holder's Claim becomes an Allowed Claim under the Plan;

(vi)    reserve or retain any cash or cash equivalents in an amount reasonably necessary to meet claims and contingent liabilities, (including Disputed Claims), to maintain the value of the Claimant Trust Assets, or to fund ongoing operations and administration of the Litigation Sub-Trust;

(vii)    borrow as may be necessary to fund activities of the Claimant Trust;

(viii)    determine whether the conditions under Section 5.1(c) of this Agreement have been satisfied such that a certification should be filed with the Bankruptcy Court;

002454

(ix)     invest the Claimant Trust Assets, proceeds thereof, or any income earned by the Claimant Trust (for the avoidance of doubt, this shall not apply to investment decisions made by the Reorganized Debtor or its subsidiaries solely with respect to Managed Funds);

(x)     change the compensation of the Claimant Trustee;

(xi)     subject to ARTICLE X, make structural changes to the Claimant Trust or take other actions to minimize any tax on the Claimant Trust Assets; and

(xii)     retain counsel, experts, advisors, or any other professionals. [TBD]

(c)     [Reserved.]

3.4     <u>Investment of Cash</u>.  The right and power of the Claimant Trustee to invest the Claimant Trust Assets, the proceeds thereof, or any income earned by the Claimant Trust, with majority approval of the Oversight Board, shall be limited to the right and power to invest in such Claimant Trust Assets only in Cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; <u>provided</u>, <u>however</u> that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("<u>IRS</u>") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (b) the Claimant Trustee may retain any Claimant Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly monetization or other disposition of such assets, and (c) the Claimant Trustee may expend the assets of the Claimant Trust (i) as reasonably necessary to meet contingent liabilities (including indemnification and similar obligations) and maintain the value of the assets of the Claimant Trust during the pendency of this Claimant Trust, (ii) to pay Claimant Trust Expenses (including, but not limited to, any taxes imposed on the Claimant Trust and reasonable attorneys' fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Claimant Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement).

3.5     <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Claimant Trustee in accordance with the provisions of this Agreement shall be final and binding upon any and all Beneficiaries.

3.6     <u>Term of Service</u>.  The Claimant Trustee shall serve as the Claimant Trustee for the duration of the Claimant Trust, subject to death, resignation or removal.

3.7     <u>Resignation</u>.  The Claimant Trustee may resign as Claimant Trustee of the Claimant Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Claimant Trustee shall continue to serve as Claimant Trustee after delivery of the Claimant Trustee's resignation until the proposed effective date of such resignation, unless the Claimant Trustee and a simple majority of the Oversight Board consent to an earlier effective date, which earlier

002455

effective date shall be no earlier than the date of appointment of a successor Claimant Trustee in accordance with Section 3.9 hereof becomes effective.

3.8 <u>Removal</u>.

(a) The Claimant Trustee may be removed by a simple majority vote of the Oversight Board for Cause for Cause immediately upon notice thereof, or without Cause upon 60 days' prior written notice. Upon the removal of the Claimant Trustee pursuant hereto, the Claimant Trustee will resign, or be deemed to have resigned, from any role or position he or she may have at New GP LLC or the Reorganized Debtor effective upon the expiration of the foregoing 60 day period unless the Claimant Trustee and a simple majority of the Oversight Board agree otherwise.

(b) To the extent there is any dispute regarding the removal of a Claimant Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute. Notwithstanding the foregoing, the Claimant Trustee will continue to serve as the Claimant Trustee after his removal until the earlier of (i) the time when a successor Claimant Trustee will become effective in accordance with Section 3.9 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.9 <u>Appointment of Successor</u>.

(a) <u>Appointment of Successor</u>. In the event of a vacancy by reason of the death or Disability (in the case of a Claimant Trustee that is a natural person), dissolution (in the case of a Claimant Trustee that is not a natural person), or removal of the Claimant Trustee, or prospective vacancy by reason of resignation, a successor Claimant Trustee shall be selected by a simple majority vote of the Oversight Board. If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Claimant Trustee on motion of the Members. If a final decree has been entered closing the Chapter 11 Case, the Claimant Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Claimant Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Claimant Trust. The successor Claimant Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Claimant Trustee.

(b) <u>Vesting or Rights in Successor Claimant Trustee</u>. Every successor Claimant Trustee appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trust, the exiting Claimant Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof. The successor Claimant Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Claimant Trustee, except that the successor Claimant Trustee shall not be liable for the acts or omissions of the retiring Claimant Trustee. In no event shall the retiring Claimant Trustee be liable for the acts or omissions of the successor Claimant Trustee.

002456

(c)  Interim Claimant Trustee.  During any period in which there is a vacancy in the position of Claimant Trustee, the Oversight Board shall appoint one of its Members to serve as the interim Claimant Trustee (the "Interim Trustee") until a successor Claimant Trustee is appointed pursuant to Section 3.9(a).  The Interim Trustee shall be subject to all the terms and conditions applicable to a Claimant Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board merely by such Person's appointment as Interim Trustee.

3.10  Continuance of Claimant Trust.  The death, resignation, or removal of the Claimant Trustee shall not operate to terminate the Claimant Trust created by this Agreement or to revoke any existing agency (other than any agency of the Claimant Trustee as the Claimant Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Claimant Trustee.  In the event of the resignation or removal of the Claimant Trustee, the Claimant Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Claimant Trustee's capacity under this Agreement and the conveyance of the Claimant Trust Assets then held by the exiting Claimant Trustee to the successor Claimant Trustee; (ii) deliver to the successor Claimant Trustee all non-privileged documents, instruments, records, and other writings relating to the Claimant Trust as may be in the possession or under the control of the exiting Claimant Trustee, provided, the exiting Claimant Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Claimant Trustee and the cost of making such copies shall be a Claimant Trust Expense to be paid by the Claimant Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Claimant Trustee's obligations and functions by his successor, provided the fees and expenses of such assistance and cooperation shall be paid to the exiting Claimant Trustee by the Claimant Trust. The exiting Claimant Trustee shall irrevocably appoint the successor Claimant Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Claimant Trustee is obligated to perform under this Section 3.10.

3.11  Claimant Trustee as "Estate Representative".  The Claimant Trustee will be the exclusive trustee of the Claimant Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Claimant Trust Assets, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement; provided that all rights and powers as representative of the Estate pursuant to section 1123(b)(3)(B) shall be transferred to the Litigation Trustee in respect of the Estate Claims[ and the Employee Claims].  The Claimant Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Claimant Trust Assets, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order.  All actions, claims, rights or interest constituting Claimant Trust Assets are preserved and retained and may be enforced, or assignable to the Litigation Sub-Trust, by the Claimant Trustee as an Estate Representative.

002457

3.12 <u>Books and Records</u>.

(a)     The Claimant Trustee shall maintain in respect of the Claimant Trust and the Claimant Trust Beneficiaries books and records reflecting Claimant Trust Assets in its possession and the income of the Claimant Trust and payment of expenses, liabilities, and claims against or assumed by the Claimant Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Claimant Trust and the requirements of Article [VII] herein. Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

(b)     The Claimant Trustee shall provide [quarterly] reporting to the Oversight Board [and Claimant Trust Beneficiaries] of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; <u>provided</u>, <u>however</u>, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

(c)     The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the [unanimous consent] of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; <u>provided</u>, <u>however</u>, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims without the consent of the Litigation Trustee. Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

3.13 <u>Compensation and Reimbursement; Engagement of Professionals</u>.

(a)     <u>Compensation and Expenses</u>.

(i)     <u>Compensation</u>. [As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation, including any severance, as agreed to by the Claimant Trustee and Oversight Board.]

002458

(ii)    <u>Expense Reimbursements</u>.  All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

(b)    <u>Professionals</u>.

(i)    <u>Engagement of Professionals</u>.  The Claimant Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The Claimant Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii)    <u>Fees and Expenses of Professionals</u>.  The Claimant Trustee shall pay the reasonable fees and expenses of any retained professionals as Claimant Trust Expenses.

3.14    <u>Reliance by Claimant Trustee</u>.  Except as otherwise provided herein, the Claimant Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Claimant Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Claimant Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Claimant Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning the Claimant Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15    <u>Commingling of Claimant Trust Assets</u>.  The Claimant Trustee shall not commingle any of the Claimant Trust Assets with his or her own property or the property of any other Person.

3.16    <u>Delaware Trustee</u>.  The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Claimant Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Claimant Trustee; <u>provided</u>, <u>however</u>, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law.  The Parties agree not to instruct the Delaware

002459

Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Claimant Trust.

## ARTICLE IV.
## THE OVERSIGHT BOARD

4.1    <u>Oversight Board Members</u>.  The Oversight Board will be comprised of five (5) Members appointed to serve as the board of managers of the Claimant Trust, at least two (2) of which shall be disinterested Members selected by the Creditors' Committee (such disinterested members, the "<u>Disinterested Members</u>").  The initial Members of the Oversight Board will be representatives of Acis, the Redeemer Committee, Meta-e Discovery, UBS, and David Pauker. David Pauker and Paul McVoy, the representative of Meta-e Discovery, shall serve as the initial Disinterested Board Members; <u>provided</u>, <u>however</u>, that if the Plan is confirmed with the Convenience Class or any other convenience class supported by the Creditors' Committee, Meta-E Discovery and its representative will resign on the Effective Date or as soon as practicable thereafter and be replaced in accordance with Section 4.10 hereof..

4.2    <u>Authority and Responsibilities</u>.

(a)    The Oversight Board shall, as and when requested by either of the Claimant Trustee and Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Claimant Trustee and Litigation Trustee as to the administration and management of the Claimant Trust and the Litigation Sub-Trust, as applicable, in accordance with the Plan, the Confirmation Order, this Agreement, and Litigation Sub-Trust Agreement (as applicable) and shall have the other responsibilities and powers as set forth herein.  As set forth in the Plan, the Confirmation Order, and herein, the Oversight Board shall have the authority and responsibility to oversee, review, and govern the activities of the Claimant Trust, including the Litigation Sub-Trust, and the performance of the Claimant Trustee and Litigation Trustee, and shall have the authority to remove the Claimant Trustee in accordance with Section 3.7 hereof or the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; <u>provided</u>, <u>however</u>, that the Oversight Board may not direct either Claimant Trustee and Litigation Trustee to act inconsistently with their respective duties under this Agreement (including without limitation as set in Section 4.2(e) below), the Litigation Sub-Trust Agreement, the Plan, the Confirmation Order, or applicable law.

(b)    The Oversight Board shall also (i) monitor and oversee the administration of the Claimant Trust and the Claimant Trustee's performance of his or her responsibilities under this Agreement, (ii) as more fully set forth in the Litigation Sub-Trust Agreement, approve funding to the Litigation Sub-Trust, monitor and oversee the administration of the Litigation Sub-Trust and the Litigation Trustee's performance of his responsibilities under the Litigation Sub-Trust Agreement, and (iii) perform such other tasks as are set forth herein, in the Litigation Sub-Trust Agreement, and in the Plan.

002460

(c)     The Claimant Trustee shall consult with and provide information to the Oversight Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Oversight Board to meet its obligations hereunder.

(d)     Notwithstanding any provision of this Agreement to the contrary, the Claimant Trustee shall not be required to (i) obtain the approval of any action  by the Oversight Board to the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is required to be taken by applicable law, the Plan, the Confirmation Order, or this Agreement or (ii) follow the directions of the Oversight Board to take any action the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is prohibited by applicable law the Plan, the Confirmation Order, or this Agreement.

(e)     Notwithstanding provision of this Agreement to the contrary, with respect to the activities of the Reorganized Debtor in its capacity as an investment adviser (and subsidiaries of the Reorganized Debtor that serve as general partner or in an equivalent capacity) to any Managed Funds, the Oversight Board shall not make investment decisions or otherwise participate in the investment decision making process relating to any such Managed Funds, nor shall the Oversight Board or any member thereof serve as a fiduciary to any such Managed Funds.  It is agreed and understood that investment decisions made by the Reorganized Debtor (or its subsidiary entities) with respect to Managed Funds shall be made by the Claimant Trustee in his capacity as an officer of the Reorganized Debtor and New GP LLC and/or such persons who serve as investment personnel of the Reorganized Debtor from time to time, and shall be subject to the fiduciary duties applicable to such entities and persons as investment adviser to such Managed Funds.

4.3     <u>Fiduciary Duties</u>.  The Oversight Board (and each Member in its capacity as such) shall have fiduciary duties to the Claimant Trust Beneficiaries consistent with the fiduciary duties that the members of the Creditors' Committee have to unsecured creditors and shall exercise its responsibilities accordingly; <u>provided</u>, <u>however</u>, that the Oversight Board shall not owe fiduciary obligations to any Holders of Class A Limited Partnership Interests or Class B/C Limited Partnership Interests until such Holders become Claimant Trust Beneficiaries in accordance with Section 5.1(c) hereof; <u>provided</u>, <u>further</u>, that the Oversight Board shall not owe fiduciary obligations to a Holder of an Equity Trust Interest if such Holder is named as a defendant in any of the Causes of Action, including Estate Claims, in their capacities as such, it being the intent that the Oversight Board's fiduciary duties are to maximize the value of the Claimant Trust Assets, including the Causes of Action.  In all circumstances, the Oversight Board shall act in the best interests of the Claimant Trust Beneficiaries and in furtherance of the purpose of the Claimant Trust.  Notwithstanding anything to the contrary contained in this Agreement, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.

4.4     <u>Meetings of the Oversight Board</u>.  Meetings of the Oversight Board are to be held as necessary to ensure the operation of the Claimant Trust but in no event less often than quarterly.  Special meetings of the Oversight Board may be held whenever and wherever called for by the Claimant Trustee or any Member; <u>provided</u>, <u>however</u>, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice

002461

requirement being subject to any waiver by the Members in the minutes, if any, or other transcript, if any, of proceedings of the Oversight Board).  Unless the Oversight Board decides otherwise (which decision shall rest in the reasonable discretion of the Oversight Board), the Claimant Trustee, and each of the Claimant Trustee's designated advisors may, but are not required to, attend meetings of the Oversight Board.

4.5     Unanimous Written Consent.  Any action required or permitted to be taken by the Oversight Board in a meeting may be taken without a meeting if the action is taken by unanimous written consents describing the actions taken, signed by all Members and recorded. If any Member informs the Claimant Trustee (via e-mail or otherwise) that he or she objects to the decision, determination, action, or inaction proposed to be made by unanimous written consent, the Claimant Trustee must use reasonable good faith efforts to schedule a meeting on the issue to be set within 48 hours of the request or as soon thereafter as possible on which all members of the Oversight Board are available in person or by telephone.  Such decision, determination, action, or inaction must then be made pursuant to the meeting protocols set forth herein.

4.6     Manner of Acting.

(a)     A quorum for the transaction of business at any meeting of the Oversight Board shall consist of at least three Members (including no less than one (1) Disinterested Member); provided that if the transaction of business at a meeting would constitute a direct or indirect conflict of interest for the Redeemer Committee, Acis, and/or UBS, at least two Disinterested Members must be present for there to be a quorum.  Except as set forth in Sections 3.3(c), 4.9(a), 5.2, 5.4, 6.1, 9.1, and 10, herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Oversight Board except as otherwise required by law or as provided in this Agreement.  Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding hereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the applicable Trustee and each Member.

(b)     Any Member who is present and entitled to vote at a meeting of the Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Board, unless (i) such Member objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Board before its adjournment.  The right of dissent or abstention is not available to any Member of the Oversight Board who votes in favor of the action taken.

(c)     Prior to a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Oversight Board any conflict of

002462

interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Trust Interests). A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Claimant Trust shall be deemed a "Conflicted Member" who shall not be entitled to vote or take part in any action with respect to such matter or issue. In the event of a Conflicted Member, the vote or action with respect to such matter or issue giving rise to such conflict shall be undertaken only by Members who are not Conflicted Members and, notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Oversight Board.

(d)  Each of Acis, the Redeemer Committee, and UBS shall be deemed "Conflicted Members" with respect to any matter or issue related to or otherwise affecting any of their respective Claim(s) (a "Committee Member Claim Matter"). A unanimous vote of the Disinterested Members shall be required to approve of or otherwise take action with respect to any Committee Member Claim Matter and, notwithstanding anything herein to the contrary, the same shall be the act of the Oversight Board.

4.7  Tenure of the Members of the Oversight Board. The authority of the Members of the Oversight Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Claimant Trust is terminated in accordance with Article X hereof. The Members of the Oversight Board will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 4.7 below, or removal pursuant to Section 4.8 below.

4.8  Resignation. A Member of the Oversight Board may resign by giving not less than [90 days] prior written notice thereof to the Claimant Trustee and other Members. Such resignation shall become effective on the earlier to occur of (i) the day specified in such notice and (ii) the appointment of a successor in accordance with Section 4.9 below.

4.9  Removal. A majority of the Oversight Board may remove any Member for Cause or Disability. If any Committee Member has its Claim disallowed the representative of such entity will immediately be removed as a Member without the requirement for a vote and a successor will be appointed in the manner set forth herein. Notwithstanding the foregoing, upon the termination of the Claimant Trust, any or all of the Members shall be deemed to have resigned.

4.10  Appointment of a Successor Member.

(a)  In the event of a vacancy on the Oversight Board (whether by removal, death, or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously; provided, however, that any vacancy resulting from the removal, resignation, or death of a Disinterested Member may only be filled by a disinterested Person unaffiliated with any Claimant or constituency in the Chapter 11 Case; provided, further, that if an individual serving as the representative of a Committee Member resigns from its role as

002463

representative, such resignation shall not be deemed resignation of the Committee Member itself and such Committee Member shall have the exclusive right to designate its replacement representative for the Oversight Board. The appointment of a successor Member will be further evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

(b)     Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act. A successor Member will not be liable personally for any act or omission of a predecessor Member.

(c)     Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11    <u>Compensation and Reimbursement of Expenses</u>.    [Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; <u>provided</u>, <u>however</u>, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member.][3] Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12    <u>Confidentiality</u>.    Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("<u>Confidential Trust Information</u>"), except as otherwise required by law. For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "<u>Member Affiliates</u>") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no

---

[3]     NTD: Compensation for Disinterested Member(s) to be discussed.

002464

Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.11.

## ARTICLE V.
## TRUST INTERESTS

5.1    Claimant Trust Interests.

(a)    General Unsecured Claim Trust Interests. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "GUC Beneficiaries"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims. The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

(b)    Subordinated Claim Trust Interests. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "Subordinated Beneficiaries"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9. The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests. The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, in accordance with the terms of the Plan and this Agreement.

(c)    Contingent Trust Interests. On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "Equity Holders"). The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan. Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan (the "GUC Payment Certification"). Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "Equity Trust Interests." The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's Allowed Subordinated Claim,

25

in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

5.2     Interests Beneficial Only.   The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets or to require an accounting. No Claimant Trust Beneficiary shall have any governance right or other wright to direct Claimant Trust activities.

5.3     Transferability of Trust Interests.   No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected until (i) such action is unanimously approved by the Oversight Board, (ii) the Claimant Trustee and Oversight Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Claimant Trust to be subject to entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Claimant Trustee and Oversight Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not (a) require the Claimant Trust to comply with the registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act or (b) cause any adverse effect under the Investment Advisers Act, or (y) the Oversight Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Claimant Trust to become a public reporting company and/or make periodic reports under the Exchange Act (provided that it is not required to register under the Investment Company Act or register its securities under the Securities Act) to enable such disposition to be made. In the event that any such disposition is allowed, the Oversight Board and the Claimant Trustee may add such restrictions upon such disposition and other terms of this Agreement as are deemed necessary or appropriate by the Claimant Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

5.4     Registry of Trust Interests.

(a)     Registrar.   The Claimant Trustee shall appoint a registrar, which may be the Claimant Trustee (the "Registrar"), for the purpose of recording ownership of the Trust Interests as provided herein. The Registrar, if other than the Claimant Trustee, shall be an institution or person acceptable to the Oversight Board. For its services hereunder, the Registrar, unless it is the Claimant Trustee, shall be entitled to receive reasonable compensation from the Claimant Trust as a Claimant Trust Expense.

(b)     Trust Register.   The Claimant Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time, a registry of the Claimant Trust Beneficiaries and the Equity Holders (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Claimant Trustee and the Registrar may prescribe.

002466

(c)    <u>Access to Register by Beneficiaries</u>.  The Claimant Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Claimant Trustee, and in accordance with reasonable regulations prescribed by the Claimant Trustee, to inspect and, at the expense of the Claimant Trust Beneficiary make copies of the Trust Register, in each case for a purpose reasonable and related to such Claimant Trust Beneficiary's Trust Interest.

5.5    <u>Exemption from Registration</u>.  The Parties hereto intend that the rights of the Claimant Trust Beneficiaries arising under this Claimant Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Claimant Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Claimant Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Claimant Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Claimant Trustee under this Agreement.

5.6    <u>Absolute Owners</u>.  The Claimant Trustee may deem and treat the Claimant Trust Beneficiary of record as determined pursuant to this Article 5 as the absolute owner of such Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

5.7    <u>Effect of Death, Incapacity, or Bankruptcy</u>.  The death, incapacity, or bankruptcy of any Claimant Trust Beneficiary during the term of the Claimant Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Claimant Trust Beneficiary under this Agreement.

5.8    <u>Change of Address</u>.  Any Claimant Trust Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Claimant Trustee identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Claimant Trustee.  Absent actual receipt of such notice by the Claimant Trustee, the Claimant Trustee shall not recognize any such change of distribution address.

5.9    <u>Standing</u>.  No Claimant Trust Beneficiary shall have standing to direct the Claimant Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Claimant Trust Assets.  No Claimant Trust Beneficiary shall have any direct interest in or to any of the Claimant Trust Assets.

5.10   [Reserved]

002467

## ARTICLE VI.
## DISTRIBUTIONS

6.1    Distributions.

(a)    Notwithstanding anything to the contrary contained herein, the Claimant Trustee shall distribute to holders of Trust Interests at least annually the Cash on hand net of any amounts that (a) are reasonably necessary to maintain the value of the Claimant Trust Assets pending their monetization or other disposition during the term of the Claimant Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust (including, but not limited to, any taxes imposed on or payable by the Claimant Trustee with respect to the Claimant Trust Assets), (c) are necessary to pay or reserve for the anticipated costs and expenses of the Litigation Sub-Trust, (d) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Claimant Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses), (e) are necessary to maintain the Disputed Claims Reserve, and (f) are necessary to pay Allowed Claims in Class 1 through Class 7. Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within [six] months of the Effective Date, and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board.  The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board.

(b)    At the request of the Reorganized Debtor, subject in all respects to the provisions of this Agreement, the Claimant Trustee shall distribute Cash to the Reorganized Debtor, as Distribution Agent with respect to Claims in Class 1 through 7, sufficient to satisfy Allowed Claims in Class 1 through Class 7.

(c)    All proceeds of Claimant Trust Assets shall be distributed in accordance with the Plan and this Agreement.

6.2    Manner of Payment or Distribution.  All distributions made by the Claimant Trustee on behalf of the Claimant Trust to the Claimant Trust Beneficiaries shall be payable by the Claimant Trustee directly to the Claimant Trust Beneficiaries of record [as of the twentieth (20th) day prior] to the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3    Delivery of Distributions.  All distributions under this Agreement to any Claimant Trust Beneficiary shall be made, as applicable, at the address of such Claimant Trust Beneficiary (a) as set forth on the Schedules filed with the Bankruptcy Court or (b) on the books and records of the Debtor or their agents, as applicable, unless the Claimant Trustee has been notified in writing of a change of address pursuant to Section 5.6 hereof.

6.4    Disputed Claims Reserves.  There will be no distributions under this Agreement or the Plan on account of Disputed Claims pending Allowance.  The Claimant Trustee will

002468

maintain a Disputed Claims Reserve as set forth in the Plan and will make distributions from the Disputed Claims Reserve as set forth in the Plan.

6.5    Undeliverable Distributions and Unclaimed Property.    All undeliverable distributions and unclaimed property shall be treated in the manner set forth in the Plan.

6.6    *De Minimis* Distributions.  Distributions with a value of less than $100 will be treated in accordance with the Plan.

6.7    United States Claimant Trustee Fees and Reports.  **After the Effective Date, the Claimant Trust shall pay as a Claimant Trust Expense, all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Claimant Trust's disbursements until the Chapter 11 Case is closed.  After the Effective Date, the Claimant Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Claimant Trust as required by the Office of the United States Trustee Office for as long as the Chapter 11 Case remains open.**

## ARTICLE VII.
## TAX MATTERS

7.1    Tax Treatment and Tax Returns.

(a)    It is intended for the initial transfer of the Claimant Trust Assets to the Claimant Trust to be treated for federal income tax purposes (and foreign, state, local tax purposes where applicable) as if the Debtor transferred the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described below) to the Claimant Trust Beneficiaries and then, immediately thereafter, the Claimant Trust Beneficiaries transferred the Claimant Trust Assets to the Claimant Trust. Consistent with such treatment, (i) it is intended that the Claimant Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Claimant Trust Beneficiaries will be treated as the grantors of the Claimant Trust and owners of their respective share of the Claimant Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), and (iii) the Claimant Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).  The Claimant Trustee also will annually send to each Beneficiary, in accordance with the tax laws, a separate statement setting forth such holder's Beneficiary's interest in the Claimant Trust and share of items of income, gain, loss, deduction or credit as relevant for U.S. federal income tax purposes for such Beneficiaries to use in preparing their U.S. federal income tax returns.

(b)    The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Beneficiaries of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(c)    The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in

002469

which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

7.2 <u>Withholding</u>. The Claimant Trustee may withhold from any amount distributed from the Claimant Trust to any Claimant Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable Beneficiary. As a condition to receiving any distribution from the Claimant Trust, the Claimant Trustee may require that the Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Claimant Trustee to comply with applicable tax reporting and withholding laws. If a Beneficiary fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section 6.5(b) of this Agreement.

**ARTICLE VIII.**
**STANDARD OF CARE AND INDEMNIFICATION**

8.1 <u>Standard of Care</u>. None of the Claimant Trustee, acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Claimant Trust or to any Person (including any Claimant Trust Beneficiary) in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the acts or omissions of any such Claimant Trustee, Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Claimant Trust, the Claimant Trustee, or Oversight Board shall not be personally liable to the Claimant Trust or any other Person in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Claimant Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Claimant Trust or to any Person for the acts or omissions of any employee, agent or professional of the Claimant Trust or Claimant Trustee taken or not taken in good faith reliance on the advice of professionals or, as applicable, with the approval of the Bankruptcy Court, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Claimant Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Claimant Trust.

8.2 <u>Indemnification</u>. The Claimant Trustee (including each former Claimant Trustee), Delaware Trustee, Oversight Board, and all past and present Members (collectively, the "<u>Indemnified Parties</u>") shall be indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or

30

threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence. If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Claimant Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Claimant Trustee and/or Oversight Board, as applicable; provided, however, that the failure of an Indemnified Party to promptly notify the Claimant Trustee and/or Oversight Board of an indemnification obligation will not excuse the Claimant Trust from indemnifying the Indemnified Party unless such delay has caused the Claimant Trust material harm. The Claimant Trust shall advance or otherwise reimburse on demand the Indemnified Party's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith as a Claimant Trust Expense, but the Indemnified Party shall be required to repay promptly to the Claimant Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Claimant Trust with respect to which such expenses were paid. The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties. For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Claimant Trustee, Delaware Trustee, or Member or the estate of any decedent Claimant Trustee or Member. The indemnification provided hereby shall be a Claimant Trust Expense.

8.3 <u>No Personal Liability</u>. Except as otherwise provided herein, neither of the Trustees nor Members of the Oversight Board shall be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any Person in connection with the affairs of the Claimant Trust to the fullest extent provided under Section 3803 of the Delaware Statutory Trust Act, and all Persons asserting claims against the Claimant Trustee, Litigation Trustee, or any Members, or otherwise asserting claims of any nature in connection with the affairs of the Claimant Trust, shall look solely to the Claimant Trust Assets for satisfaction of any such claims.

8.4 <u>Other Protections</u>. To the extent applicable and not otherwise addressed herein, the provisions and protections set forth in Article IX of the Plan will apply to the Claimant Trust, the Claimant Trustee, the Litigation Trustee, and the Members.

**ARTICLE IX.**
**TERMINATION**

9.1 <u>Duration</u>. The Trustees, the Claimant Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as: (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit

002471

of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets[; provided, however, that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years [without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.]

9.2    Distributions in Kind.  Upon dissolution of the Claimant Trust, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

9.3    Continuance of the Claimant Trustee for Winding Up.  After dissolution of the Claimant Trust and for purpose of liquidating and winding up the affairs of the Claimant Trust, the Claimant Trustee shall continue to act as such until the Claimant Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Claimant Trust Assets, the Claimant Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Claimant Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Claimant Trust, until such time as the winding up of the Claimant Trust is completed.  Upon the dissolution of the Claimant Trust and completion of the winding up of the assets, liabilities and affairs of the Claimant Trust pursuant to the Delaware Statutory Trust Act, the Claimant Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Claimant Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date")  Upon the Termination date, the Claimant Trustee shall retain for a period of two (2) years, as a Claimant Trust Expense, the books, records, Claimant Trust Beneficiary lists, and certificated and other documents and files that have been delivered to or created by the Claimant Trustee.  At the Claimant Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

002472

9.4     Termination of Duties.  Except as otherwise specifically provided herein, upon the Termination Date of the Claimant Trust, the Claimant Trustee, the Oversight Board and its Members shall have no further duties or obligations hereunder.

9.5     No Survival.  The rights of Claimant Trust Beneficiaries hereunder shall not survive the Termination Date, provided that such Claimant Trust Beneficiaries are provided with notice of such Termination Date.

### ARTICLE X.
### AMENDMENTS AND WAIVER

The Claimant Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Claimant Trustee and with [the unanimous approval] of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Claimant Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

### ARTICLE XI.
### MISCELLANEOUS

11.1     Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Claimant Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Claimant Trust Beneficiaries.

11.2     Bankruptcy of Claimant Trust Beneficiaries.  The dissolution, termination, bankruptcy, insolvency or other similar incapacity of any Claimant Trust Beneficiary shall not permit any creditor, trustee, or any other Claimant Trust Beneficiary to obtain possession of, or exercise legal or equitable remedies with respect to, the Claimant Trust Assets.

11.3     Claimant Trust Beneficiaries have No Legal Title to Claimant Trust Assets.  No Claimant Trust Beneficiary shall have legal title to any part of the Claimant Trust Assets.

11.4     Agreement for Benefit of Parties Only.  Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Claimant Trustee, Oversight Board, and the Claimant Trust Beneficiaries any legal or equitable right, remedy or claim under or in respect of this Agreement.  The Claimant Trust Assets shall be held for the sole and exclusive benefit of the Claimant Trust Beneficiaries.

11.5     Notices.  All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

002473

(a)    If to the Claimant Trustee:

Claimant Trustee
c/o **[insert contact info for Claimant Trustee]**

With a copy to:

**[insert contact for counsel to the Claimant Trustee].**

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.5 to the entity to be charged with knowledge of such change.

11.6    <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.7    <u>Counterparts</u>. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.8    <u>Binding Effect, etc.</u> All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Claimant Trust, the Claimant Trustee, and the Claimant Trust Beneficiaries, and their respective successors and assigns. Any notice, direction, consent, waiver or other instrument or action by any Claimant Trust Beneficiary shall bind its successors and assigns.

11.9    <u>Headings; References</u>. The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.10    <u>Governing Law</u>. This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.11    <u>Consent to Jurisdiction</u>. Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan.

11.12    <u>Transferee Liabilities</u>. The Claimant Trust shall have no liability for, and the Claimant Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement. In no event shall the Claimant Trustee or the Claimant Trust Beneficiaries have any personal liability for such claims. If any liability shall be asserted against the Claimant Trust or the Claimant Trustee as the transferee of the Claimant Trust Assets on account of any claimed liability of, through or under the Debtor or

002474

Reorganized Debtor, the Claimant Trustee may use such part of the Claimant Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Claimant Trustee as a Claimant Trust Expense.

[Remainder of Page Intentionally Blank]

002475

IN WITNESS HEREOF, the parties hereto have caused this Claimant Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Highland Capital Management, L.P.

By: _____

James P. Seery, Jr.
Chief Executive Officer and
Chief Restructuring Officer

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

002476

# EXHIBIT "B"

002477

# LIMITED LIABILITY COMPANY AGREEMENT
## OF
## [NEW GP] LLC

This Limited Liability Company Agreement (this "***Agreement***") of [NEW GP] LLC (the "***Company***"), a Delaware limited liability company, is effective as of [____], 2020 (the "***Effective Date***") and entered into by [CLAIMANT TRUST], the sole member of the Company as of the date hereof (the "***Member***").

## RECITALS

WHEREAS, the Company was formed on [____], 2020 pursuant to the filing of the certificate of formation of the Company (the "***Certificate***") with the Office of the Secretary of State of the State of Delaware.

WHEREAS, the Member desires to enter into this Agreement to reflect the terms and provisions relating to its ownership and management of the Company.

NOW THEREFORE, in consideration for the promises contained herein, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

As used in this Agreement, capitalized terms used but not otherwise defined in this Agreement shall have the meanings provided to them in Exhibit A.

## ARTICLE II
## GENERAL PROVISIONS

### 2.1    Formation of Limited Liability Company

The Company was formed as a Delaware limited liability company on [____], 2020 by the filing of the Certificate with the Office of the Secretary of State of the State of Delaware under and pursuant to the Act. The Member shall file or cause to be filed all such other certificates, notices, statements, amendments or other instruments required by law for the continued operation of the Company as a limited liability company.

### 2.2    Name of Company

The name of the Company shall be "[NEW GP]LLC". The business of the Company may be conducted under any name chosen by the Member, and the Member may, in its sole discretion consistent with the requirements of the Act, change the name of the Company from time to time.

### 2.3    Principal Place of Business; Registered Agent for Process

(a)       The principal office of the Company shall be at such place as the Member may designate, in its sole discretion, from time to time.

(b)      The registered office of the Company in the State of Delaware shall be at such place as the Member may designate, in its sole discretion, from time to time. The registered agent of the Company in the State of Delaware to accept service of process shall be such Person as the Member may designate, in its sole discretion, from time to time. The Member may establish places of business of the Company within and without the State of Delaware, as and when required by the Company's business, and may appoint agents for the service of process in all jurisdictions in which the Company shall conduct business.

## 2.4    Term of Company

The term of the Company commenced on the date the Certificate was filed in the office of the Secretary of State of the State of Delaware in accordance with the Act and shall continue until terminated pursuant to Section 9.1.

## 2.5    Purposes

The Company is organized for the purpose of carrying on any lawful business, as determined appropriate by the Member. Notwithstanding the preceding sentence, the Company may execute and deliver and perform all contracts and other undertakings and engage in all the activities and transactions that may, in the opinion of the Member, be necessary or advisable to carry out the foregoing purposes, subject to the limitations contained in this Agreement and the Act.

## 2.6    Title to Company Property

All property owned by the Company shall be deemed to be owned by the Company as an entity, and the Member shall not have any direct ownership interest in any such property.

## 2.7    Failure to Observe Formalities

A failure to observe any formalities or requirements of this Agreement, the Certificate or the Act shall not be grounds for imposing personal liability on the Member or the managers for liabilities of the Company.

## 2.8    No Partnership Intended for Nontax Purposes

The Member has formed the Company under the Act, and expressly denies any intent hereby to form a partnership or a corporation under applicable law.

## 2.9    Liability of the Member to Third Parties; No Reliance by Third-Party Creditors

(a)      Except as otherwise provided in the Act, the Member shall not be personally liable for any debt, obligation or liability of the Company, whether arising in contract or otherwise, by reason of being a member of the Company.

(b)      This Agreement is entered into by the Member for the exclusive benefit of the Member and its successors and assigns. This Agreement is expressly not intended for the benefit of any creditor of the Company or any other Person. Except and only to the extent provided by

002479

applicable statute, no such creditor or third party shall have any rights under this Agreement or any agreement between the Company and the Member with respect to any contributions or otherwise.

**2.10    Election to be Taxed as Corporation**

The Company intends to elect to be treated as a corporation for federal income tax purposes.

**ARTICLE III**
**MEMBER**

**3.1    Member**

The Company shall be owned exclusively by the Member pursuant to the terms of this Agreement. In the event the Company has more than one Member, this Agreement shall have no further force and effect.

**3.2    Capital**

The Member may (but shall not be required to) contribute capital to the Company in such amounts and at such times as it may determine in its discretion.

**ARTICLE IV**
**ALLOCATION OF NET INCOME AND NET LOSS**

All items of Net Income or Net Loss shall be allocated exclusively to the Member.

**ARTICLE V**
**DISTRIBUTIONS**

Net Cash Flow and Company assets in kind shall be distributed in such amounts, and at such times as the Member may in its absolute discretion determine. Any such distribution shall be made exclusively to the Member.

**ARTICLE VI**
**MANAGEMENT**

**6.1    Management Vested in the Member**

As provided and subject to the terms herein, the Member shall have the authority to manage the business and affairs of the Company. Any action required to be taken by the Member on behalf of the Company shall be duly taken if approved, in writing or otherwise, by the Member as required by the terms of this Agreement.

**6.2    Authority of the Member**

Except as otherwise provided herein, the Member shall be vested with complete

management and control of the affairs of the Company, except to the extent that the Member delegates authority to one or more Officers or other Persons designated by the Member. Except as otherwise provided herein, the Member shall have the power and authority to do all things necessary or proper to carry out the purposes of the Company. All actions taken by the Member shall be subject to the terms of this Agreement. Any officer or authorized person of the Member, acting in their capacity on behalf of the Member, shall be specifically authorized to execute authorized instruments, documents, agreements, contracts and other undertakings on behalf and in the name of the Company, and parties dealing with the Company shall be entitled to rely on the authority of each parties to execute such documents on behalf of the Company. In addition, the Member may delegate to one or more persons the authority to execute authorized instruments, documents, agreements, contracts and other undertakings on behalf and in the name of the Company.

**6.3    Payment and Reimbursement of Expenses**

The Company shall reimburse the Member for all reasonable expenses incurred by them on behalf of the Company.

## ARTICLE VII
## OFFICERS

**7.1    Authority to Delegate to Officers**

The Member shall have the power and authority to appoint officers of the Company (the "*Officers*"). Officers shall have such authority, perform such duties and hold office for such period as may be prescribed by the Member. The Member may delegate to any Officer the power to appoint any subordinate Officers and to prescribe their respective terms of office, authority and duties. Any two or more offices may be held by the same Person. Unless an Officer dies, resigns or is removed from office, he or she shall hold office until his or her successor is appointed.

**7.2    Resignation or Removal**

Any Officer of the Company may resign from such position by delivering written notice of the resignation to the Member. Any Officer may be removed by the Member, with or without cause, upon receiving written notice from the Member.  Election or appointment of an Officer shall not of itself create any contractual right to continued employment, compensation or other benefit from the Company. Vacancies in any office caused by any reason may be filled by the Member by selecting an individual to act during the unexpired term.

**7.3    Salaries**

The compensation of any Officers, agents or other employees of the Company shall be fixed by the Member, and may be changed from time to time by the Member.

**7.4    Signing Authority**

The Member may authorize any Officer or Officers, or agent or agents, to enter into any

002481

contract or execute and deliver any instrument in the name of and on behalf of the Company. Such authority may be general or confined to specific instances. All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the Company may be signed by such Officer or Officers, or agent or agents, of the Company as is from time to time determined by the Member and in such manner as is from time to time determined by the Member.

## ARTICLE VIII
## INDEMNIFICATION

### 8.1     Limitation on Liability

No Member, manager or Officer, or employee, shareholder, member, partner, delegate or agent thereof, shall be liable, responsible or accountable in damages or otherwise to the Company or the Member for any act or omission by any such Person if such Person acted in good faith, unless such conduct constitutes fraud, gross negligence or willful misconduct.

### 8.2     Indemnification

To the fullest extent not prohibited by law, the Company shall indemnify and hold harmless the Member, each manager and each Officer, and each employee, shareholder, member, partner, delegate or agent thereof, from and against any and all losses, claims, demands, costs, damages, liabilities (joint and several), expenses of any nature (including attorneys' fees and disbursements), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which such Person may be involved or threatened to be involved, as a party or otherwise, by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, regardless of whether such Person continues in such capacity at the time any such liability or expense is paid or incurred, except for fraud, gross negligence, or willful misconduct on the part of such Person. The indemnification provided by this Section 8.2 shall be in addition to any other rights to which those indemnified may be entitled under any agreement, as a matter of law or equity, or otherwise, and shall continue as to a Person who has ceased to serve in their capacity, and shall inure to the benefit of the heirs, successors, assigns and administrators of the Person so indemnified. With respect to the satisfaction of any indemnification of the above-mentioned Persons, only assets of the Company shall be available therefore and the Member shall not have any personal liability therefore. Any indemnification required hereunder to be made by the Company shall be made promptly after the liability, loss, damage, cost or expense is incurred or suffered. The Member may establish reasonable procedures for the submission of claims for indemnification pursuant to this Section 8.2, determination of the entitlement of any Person thereto and review of any such determination.

### 8.3     Advancement of Expenses

The right to indemnification conferred in this Article VIII shall include the right to be paid by the Company the expenses incurred in defending any proceeding in advance of its final disposition. An advancement of expenses shall be made upon delivery to the Company of an

undertaking, by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final and binding decision by a court or arbitrator that such indemnitee is not entitled to be indemnified for such expenses under this Section 8.3.

## ARTICLE IX
## DISSOLUTION AND TERMINATION

**9.2    Events of Dissolution**

(a)    The Company shall be dissolved on a date designated by the Member.

(b)    Subject to the foregoing, the death, retirement, resignation, expulsion, bankruptcy or dissolution of the Member or the occurrence of any other event that terminates the continued membership of the Member shall not cause the Company to be dissolved or its affairs to be wound up, and upon the occurrence of any such event, the limited liability company shall be continued without dissolution.

**9.3    Effectiveness of Dissolution**

Dissolution of the Company shall be effective on the date on which the event occurs giving rise to the dissolution, but the Company shall not terminate until the assets of the Company shall have been distributed as provided herein. Notwithstanding the dissolution of the Company, prior to the termination of the Company, as aforesaid, the business of the Company and the affairs of the Member, as such, shall continue to be governed by this Agreement. Upon dissolution, the Member shall cause the assets of the Company to be liquidated and shall cause the proceeds thereof to be applied and distributed as contemplated by this Agreement.

**9.4    Distributions Upon Liquidation**

Distributions upon liquidation of the Company, after payment to all creditors, shall be made to the Member.

## ARTICLE X
## BOOKS, RECORDS AND BANK ACCOUNTS

**10.1    Books and Records**

(a)    The books and records of the Company shall be maintained at the principal office of the Company.

(b)    The Company shall maintain with its books and records the following: (i) a current list of the full name and last known address of the Member; (ii) a copy of the Certificate, and all certificates of amendment thereto; (iii) copies of the Company's federal, state and local tax returns and reports, if any, for the three most recent fiscal years; (iv) copies of this Agreement and any amendments thereto; and (v) copies of all financial statements for the Company for the three most recent fiscal years.

## 10.2    Bank Accounts

The Member shall be responsible for causing one or more accounts to be maintained in a bank (or banks), as necessary, which accounts shall be used for the payment of expenditures incurred in connection with the business of the Company, and in which shall be deposited any and all cash receipts. All such amounts shall be received, held and disbursed by the Company for the purposes specified in this Agreement. There shall not be deposited in any of such accounts any funds other than funds belonging to the Company, and no other funds shall in any way be commingled with such funds.

## ARTICLE XI
## MISCELLANEOUS

### 11.1    Successors and Assigns

This Agreement, and each and every provision hereof, shall be binding on and shall inure to the benefit of the Member, its respective successors, heirs, successors-in-title and assignees, and each and every successor in interest to any Member, whether such successor acquires such Interest by way of gift, purchase, foreclosure or by any other method, shall hold such Interest subject to all the terms and provisions of this Agreement.

### 11.2    Amendment of Agreement

Except as otherwise provided herein, this Agreement shall be amended only upon the written agreement of the Member.

### 11.3    Captions

Titles or captions of articles or sections contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provisions hereof.

### 11.4    Applicable Law

This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the laws of the State of Delaware (regardless of the choice of law principles of the State of Delaware or of any other jurisdiction).

### 11.5    Severability of Provisions

Each provision of this Agreement shall be considered separable and if for any reason provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

### 11.6    Entire Agreement

This Agreement constitutes the entire agreement of the Member with respect to the

002484

subject matter hereof.

*[signature page follows]*

ActiveUS 181638689v.2

**IN WITNESS WHEREOF**, the Member has executed this Agreement as of the Effective Date.

[**CLAIMANT TRUST**]

By: _____
    Name: [      ]
    Its: [     ]

*[Signature Page to [NEW GP] LLC Operating Agreement]*

## EXHIBIT A

### DEFINITIONS

The capitalized terms used in this Agreement shall have the following meanings:

"*Act*" means the Delaware Limited Liability Company Act, as amended from time to time.

"*Certificate*" means the Certificate of Formation of the Company filed in the Office of the Secretary of State of the State of Delaware, as amended from time to time.

"*Company*" means the limited liability company formed pursuant to the Certificate and this Agreement. "Effective Date" means the date first referenced in the preamble to this Agreement.

"*Interest*" means the entire ownership interest of the Member in the Company at any particular time, including the right of such Member to any and all benefits to which a Member may be entitled as provided in this Agreement, together with the obligations of such Member to comply with all the terms and provisions of this Agreement.

"*Member*" has the meaning provided in the first paragraph of this Agreement.

"*Net Cash Flow*" means, for each fiscal year or other period, the gross cash proceeds received by the Company for such year or period, less cash expenditures of the Company for such year or period, less reserves for future Company expenditures as determined by the Member.

"*Net Income*" and "*Net Loss*" mean, for each fiscal year or other period, an amount equal to the Company's realized and unrealized net income or net loss for the applicable fiscal year or period.

"*Officer*" means a Person designated or appointed as an officer of the Company pursuant to Article VII.

"*Person*" means any individual, corporation, partnership, trust, limited liability company or other entity.

002487

# EXHIBIT "C"

002488

**FIFTH AMENDED AND RESTATED**

**AGREEMENT OF LIMITED PARTNERSHIP**

**OF**

# HIGHLAND CAPITAL MANAGEMENT, L.P.

(A Delaware Limited Partnership)

[                    ], 2020

002489

This FIFTH AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP (this "***Agreement***") of Highland Capital Management, L.P., (the "***Partnership***"), dated as of [＿＿＿＿＿＿], 2020 and entered into by and among the [*New GP Entity*] as general partner of the Partnership (the "***General Partner***") and the limited partner of the Partnership as set forth on Schedule A hereto (the "***Limited Partner***"), amends and restates in its entirety the Fourth Amended and Restated Agreement of Limited Partnership of the Partnership dated as of December 24, 2015 (as amended to date, the "***Prior Agreement***"), by and among Strand Advisors, Inc. (the "***Prior General Partner***") and the former limited partners of the Partnership who were limited partners of the Partnership (the "***Prior Limited Partners***").  The General Partner and Limited Partners are collectively referred to as the "***Partners***."

WHEREAS, the Prior Agreement, as amended pursuant to that certain amendment dated [＿＿＿＿＿＿], 2020, provides for the reconstitution and continuation of the Partnership if new limited partners are admitted to the partnership within 90 days after dissolution thereof and such new limited partners consent to the continuation of the Partnership.

WHEREAS, the Partnership was reorganized pursuant to the Plan of Reorganization of Highland Capital Management, L.P., that was approved by the United States Bankruptcy Court for Northern District of Texas, Dallas Division, on [＿＿＿＿＿＿＿＿] (the "***Plan***").

WHEREAS, pursuant to the Plan the limited partnership interests of the Prior Limited Partners and the Prior General Partner were canceled on [＿＿＿＿＿＿＿] and new limited partnership interests were issued to the Limited Partner and the General Partner under the Prior Agreement.

WHEREAS, the General Partner and the Limited Partner wish to ratify the admission to the Partnership of the General Partner and the Limited Partner and to amend and restate the terms of the Partnership as set forth in this Agreement.

NOW, THEREFORE, in consideration of the agreements and obligations set forth herein, the undersigned hereby agree as follows:

1.    Continuation.

(a)    Subject to the provisions of this Agreement, the Partners hereby continue the Partnership as a limited partnership pursuant to the provisions of the Delaware Revised Uniform Limited Partnership Act (6 *Del.C.* §17-101, *et seq.*), as amended from time to time (the "***Act***"). This Agreement amends, restates, and supersedes the Prior Agreement and all other prior agreements or understandings with respect to the matters covered herein.

(b)    The Limited Partner, being the sole limited partner of the Partnership, hereby (i) consents to the continuation of the Partnership and (ii) ratifies and approves the appointment of the General Partner as general partner of the Partnership.

2.    Organizational Matters.

(a)    *Name; Certificate*.  The name of the Partnership is Highland Capital Management, L.P.  The Partnership was organized as a limited partnership pursuant to the Act and

filed a Certificate of Limited Partnership (the "**Certificate**") with the Secretary of State of the State of Delaware. Any person authorized to act on behalf of the General Partner or the Partnership may, subject to Section 19 below, cause the Partnership to file such other certificates and documents as may be necessary or appropriate to comply with the Act and any other applicable requirements for the operation of a limited partnership in accordance with the laws of the State of Delaware and any other jurisdictions in which the Partnership shall conduct business, and to maintain such filings for so long as the Partnership conducts business therein.

(b) *Offices*. The name of the resident agent for service of process for the Partnership and the address of the registered office of the Partnership in the State of Delaware is Corporation Services Company, 2023 Centre Road, Wilmington Delaware 19805-1297. The General Partner may establish places of business of the Partnership within and without the State of Delaware, as and when required by the Partnership's business and in furtherance of its purposes set forth herein, and may appoint (or cause the appointment of) agents for service of process in all jurisdictions in which the Partnership shall conduct business. The General Partner may from time to time in its sole discretion change the Partnership's places of business, resident agent for service of process, and/or the location of its registered office in Delaware.

3. <u>Purpose; Powers</u>. The Partnership is formed for the purpose of engaging in any lawful act or activity for which limited partnerships may be formed under the Act. Without limiting the foregoing, the general character and purposes of the business of the Partnership are to (a) engage in the business, directly and/or through one or more subsidiaries, of liquidating assets of, and performing investment management and advisory services for, pooled investment vehicles, funds, investment holdings, accounts, and interests therein; and (b) engage in any lawful activities (including, subject to the other provisions of this Agreement, the borrowing of money and the issuance of guarantees of indebtedness of others) directly or indirectly related or incidental thereto and in which a Delaware limited partnership may lawfully engage. The Partnership shall have and exercise all of the powers and rights conferred upon limited partnerships formed pursuant to the Act.

4. <u>Management</u>.

(a) *Authority of the General Partner*. The business and affairs of the Partnership shall be managed exclusively by and under the direction of the General Partner, which shall have the right, power and authority to exercise all of the powers of the Partnership except as otherwise provided by law or this Agreement. Decisions or actions made or approved by the General Partner in accordance with this Agreement shall constitute decisions or actions by the Partnership and shall be binding upon the Partnership and each Limited Partner of the Partnership. The General Partner may not be removed or replaced by the Limited Partners. In the event of the withdrawal, resignation or dissolution of the General Partner, a new General Partner shall be designated in writing by a majority in interest of the Limited Partners, who shall provide written notice to the remaining Limited Partners of such designation.

(b) *Delegation of Powers; Officers*. Notwithstanding anything to the contrary herein, the General Partner may delegate any or all or any portion of its rights, powers, authority, duties and responsibilities with respect to the management of the Partnership to such officers of the Partnership with such titles as the General Partner may determine ("**Officers**"). The General Partner

2

002491

may authorize any such Officers to sign agreements, contracts, instruments, or other documents in the name of and on behalf of the Partnership, and such authority may be general or limited to specific instances. The power and authority of any Officer appointed by the General Partner under this Section 4(b) shall not exceed the power and authority possessed by the General Partner under this Agreement. The Officers shall hold office until their successors are duly appointed or their earlier death, resignation, or removal. Any Officer so appointed may be removed at any time, with or without cause, by the written consent of the General Partner. Any Officer may resign from his or her office upon prior written notice to the Partnership. If any office shall become vacant, a replacement Officer may be appointed by the written consent of the General Partner. Two or more offices may be held by the same person. The initial Officers of the Partnership are set forth on <u>Schedule B</u>.

(c)     *Limited Partners*.  No Limited Partner shall have any right to participate in the management of the Partnership as a Limited Partner. Moreover, no Limited Partner shall have any voting rights except with respect to consent to amendments as set forth in Section 19 below, or as otherwise required by the Act.

(d)     *Transactions with Affiliates*.  The General Partner or any person controlling, controlled by, or under common control with the General Partner (an "***Affiliate***") may engage in transactions with the Partnership from time to time, including without limitation for lending to or borrowing from the Partnership, engaging in the provision of services to the Partnership, or otherwise engaging in business transactions with the Partnership, provided that such transactions are entered into in good faith. Unless otherwise expressly provided in this Agreement or any other agreement contemplated herein, whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Act or any other applicable law, rule, or regulation.

5.     <u>Partners</u>.

(a)     *General*.  The name, address, and percentage interest ownership interest of the General Partner and each Limited Partner in the Partnership (the "***Percentage Interest***") are set forth on <u>Schedule A</u> hereto. Additional Limited Partners may be admitted to the Partnership, and <u>Schedule A</u> may be amended, only with the written consent of the General Partner (provided, that failure to update <u>Schedule A</u> shall not itself be conclusive of whether consent of the General Partner has been obtained). No Limited Partner shall have the right or power to resign, withdraw or retire from the Partnership, except upon (i) the occurrence of any event described in Section 17-801 of the Act (in which case the Limited Partner(s) with respect to which such event has occurred shall, automatically and with no further action necessary by any person, cease to be a Limited Partner, and shall be deemed to have solely the interest of an assignee (within the meaning of Section 17 of the Act) with respect to such Limited Partner's Limited Partnership Interest), or (ii) with the consent of the General Partner. For the avoidance of doubt, no action may be taken to reduce, directly or indirectly, the Percentage Interest of any Partner without the written consent of such Partner.

ActiveUS 181752655

(b)     *Capital Contributions*.  The Partners may, in their sole discretion, make additional capital contribution to the Partnership if requested by the General Partner.  All capital, whenever contributed, shall be subject in all respects to the risks of the business and subordinate in right of payment to the claims of present or future creditors of the Partnership in accordance with this Agreement.

(c)     *Capital Accounts*.  The Partnership shall maintain a capital account for each Partner in accordance with Section 704(b) and 704(c) of the Internal Revenue Code of 1986, as amended (the "***Code***"), and the principles of the Treasury Regulations promulgated thereunder.

(d)     *Tax Representative*.  The General Partner shall serve as the "tax representative" to be the Partnership's designated representative within the meaning of Section 6223 of the Code with sole authority to act on behalf of the Partnership for purposes of subchapter C of Chapter 63 of the Code and any comparable provisions of state or local income tax laws (the "***Tax Representative***").  The Tax Representative is specifically directed and authorized to take whatever steps it deems necessary or desirable to perfect such designation, including, without limitation, filing any forms or documents with the Internal Revenue Service, properly designating a particular individual to act on its behalf of the Tax Representative and taking such other action as may from time to time be required under Treasury Regulations.  The Tax Representative is hereby authorized to and shall perform all duties of a "tax representative" and shall serve as Tax Representative until its resignation or until the designation of its successor, whichever occurs sooner.

6.     Allocation of Income and Losses.

(a)     *Definitions*.  For purposes of this Agreement, "***Income***" and "***Loss***" of the Partnership shall mean the taxable income and loss, respectively, of the Partnership computed with the adjustments set forth in Treasury Regulation under Code Section 704(b) including (A) adjustments pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(g), (B) the inclusion of the amount of any tax-exempt income as an item of income, (C) the inclusion of the amount of any nondeductible, noncapitalizable expense as an item of deduction and (D) the inclusion of the amount of unrealized gain or unrealized loss with respect to an asset of the Partnership as an item of income or gain (as applicable) upon distribution of such asset in kind or as required by Treasury Regulation Section 1.704-1(b)(2)(iv)(f).

(b)     *Allocations Generally*.  The Income and Loss of the Partnership for each fiscal year or other applicable period shall be allocated to and among the Partners in proportion to their respective Percentage Interests.

(c)     *Adjustments*.  Notwithstanding Section 6(b) (but subject to Section 6(c)),

(i)     Items of income or gain for any taxable period shall be allocated to the Partner in the manner and to the extent required by the "qualified income offset" provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(d); and

(ii)     In no event shall any Loss or item of deduction be allocated to a Partner if such allocation would cause or increase a negative balance

ActiveUS 181752655

002493

in such Partner's capital account determined by increasing the Partner's capital account balance by any amount the Partner may be obligated to restore to the Partnership pursuant to Treasury Regulation Section 1.704-1(b)(2)(ii)(c) and by decreasing such capital account balance by the amounts specified in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6)).

(d)     *Nonrecourse Debt*.  If at any time the Partnership incurs any "nonrecourse debt" (*i.e.,* debt that is treated as nonrecourse for purposes of Treasury Regulation Section 1.1001-2), the following provisions will apply notwithstanding anything to the contrary expressed elsewhere in this Agreement:

(i)     "Nonrecourse deductions" (as defined in Treasury Regulation Sections 1.704-2(b) and (c)) shall be allocated to the Partners in proportion to their respective Percentage Interests.

(ii)     All other allocations relating to such nonrecourse debt shall be allocated in accordance with Treasury Regulation Section 1.704-2; and

(iii)     For purposes of Sections 6(b) and 6(c), each Partner's capital account balance shall be increased by the Partner's share of minimum gain and of partner nonrecourse debt minimum gain (as determined pursuant to Treasury Regulation Sections 1.704-2(g) and 1.704-2(i)(5), respectively).

(e)     *Deductions, Credits*.  Except as otherwise provided herein or as required by Code Section 704, for federal income tax purposes, all items of income, gain, loss, deduction or credit shall be allocated to the Partners in the same manner as are Income and Loss.

(f)     *Regulatory Allocations*.  Notwithstanding the provisions of Sections 6(a)-(e) above, allocations of Income and Loss shall be made in the order of priority set forth in Exhibit I to this Agreement.

(g)     *Withholding*.  To the extent that the Partnership is required to withhold and pay over any amounts to any Governmental Authority with respect to Distributions or allocations to any Limited Partner, the amount withheld shall be treated as a Distribution to that Limited Partner pursuant to Sections 4.02, 4.03 or 4.05, as applicable.  In the event of any claimed over-withholding, Limited Partners shall be limited to an action against the applicable jurisdiction and not against the Partnership (unless the Partnership has not yet paid such amounts over to such jurisdiction).  If any amount required to be withheld was not, in fact, actually withheld from one or more Distributions and the Partnership shall have been required to pay such amount to such Governmental Entity, the Partnership may, at its option, (i) require the affected Limited Partner to reimburse the Partnership for such withholding or (ii) reduce any subsequent Distributions to such Limited Partner by the amount of such withholding, in each case plus interest.  Each Limited Partner agrees to furnish the Partnership with such documentation as shall reasonably be requested

ActiveUS 181752655

by the Partnership to assist it in determining the extent of, and in fulfilling, its withholding obligations. Each Limited Partner will indemnify the General Partner and the Partnership against any losses and liabilities (including interest and penalties) related to any withholding obligations with respect to allocations or Distributions made to such Limited Partner by the Partnership.

(h)  *Consistent Tax Reporting*.  Except as otherwise unanimously agreed to in writing by the Limited Partners, for U.S. federal, state and local income tax purposes, the Limited Partners agree, as a condition to their admission to the Partnership, to report all taxable income, loss and items thereof (including the character and timing of such items) in a manner consistent with the manner in which such taxable income, loss or item thereof is reported by the Partnership on its tax returns and the Schedules K-1 (or any successor form) furnished by the Partnership to the Limited Partners.

7.  <u>Distributions</u>.  Distributions shall be made from the undistributed profit and loss account to the Partners at the times and in the aggregate amounts determined by the General Partner in its sole discretion; provided, that distributions shall be made to the Partners in accordance with their Percentage Interests.  Distributions may be in cash or in kind as determined by the General Partner in its sole discretion.  Notwithstanding any provision to the contrary contained in this Agreement, the Partnership shall not make a distribution to the Limited Partners on account of its interest in the Partnership if such distribution would violate Section 17-607 of the Act or other applicable law.

8.  <u>Other Business</u>.  The Partners and their affiliates may engage in or possess an interest in other business ventures (unconnected with the Partnership) of every kind and description, independently or with others.  The Partnership shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

9.  <u>Limited Liability</u>.  The debts, obligations, and liabilities of the Partnership, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Partnership and the General Partner.  No Limited Partner shall have any liability (personal or otherwise) for any such debt, obligation, or liability of the Partnership solely by reason of acting in such capacity.  For the avoidance of doubt, to the extent a Limited Partner is an Officer of the Partnership (regardless of title) and/or has authority to act on behalf of the General Partner of the Partnership, such Limited Partner shall remain a Limited Partner of the Partnership and shall not be subject to any liability (personal or otherwise) for any debt, obligation or liability of the Partnership.

10.  <u>Indemnification</u>.

(a)  *General*.  To the fullest extent permitted by law, subject to Section 10(c) below, the Partnership shall indemnify each Covered Person (as defined below) for any and all losses, claims, demands, costs, damages, liabilities (joint and several), expenses of any nature (including attorneys' fees and disbursements), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which such Covered Person may be involved or threatened to be involved, as a party or otherwise, by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Partnership and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement.  For the avoidance of

ActiveUS 181752655

002495

doubt, the indemnification under this Section 10(a) shall apply even though at the time of such claim, demand, action, suit or proceeding such person is no longer a Covered Person. Any indemnity under this Section 10(a) shall be provided out of and only to the extent of the Partnership's assets, and no Limited Partner shall have personal liability on account thereof.

(b)  *Covered Persons*. "***Covered Person***" means each of the following:

(i)  the General Partner, and each member, partner, director, officer, and agent thereof,

(ii)  each person who is or becomes an Officer of the Partnership on or after the date hereof, and

(iii)  any other current or former officer, director, employee or agent for the Partnership or the General Partner, in each case to the extent determined by the General Partner in its sole discretion.

(c)  *Limitations on Indemnification*. Notwithstanding anything to the contrary herein, no indemnification shall be provided for any Covered Person (i) with respect to any action brought by such Covered Person as a plaintiff against the Partnership or another Covered Person, or (ii) for any loss, damage or claim arising from such Covered Person's fraud, gross negligence or willful misconduct (in each case as determined by a final and binding judgment of a court or arbitrator).

(d)  *Advancement of Expenses*. Expenses reasonably incurred in defending any claim, action, suit or proceeding of the character described in Section 10(a), to the extent available, shall be advanced by the Partnership prior to the final disposition of such claim, action, suit or proceeding upon receipt of a written undertaking by or on behalf of the recipient to repay all such advances if it is ultimately determined by the General Partner that such Covered Person is not entitled to indemnification pursuant to Section 10(c).

(e)  *Third Party Beneficiaries*. Covered Persons shall be deemed to be third-party beneficiaries solely for purposes of this Section 10. All rights of any Covered Person under this Section shall inure to the benefit of such Covered Person's heirs and assigns.

11.  <u>Fiscal Year</u>. The fiscal year of the Partnership shall end on December 31st of each year.

12.  <u>Transfers of Limited Partner Interests</u>. No Limited Partner may transfer, in whole or in part, whether by sale, exchange, lease, license, assignment, distribution, gift, transfer or other disposition or alienation in any way, its interest in the Partnership, without the prior consent of the General Partner, which consent may be given or withheld in the sole discretion of the General Partner and may include such terms and conditions as the General Partner shall deem appropriate in its sole discretion. In addition, it shall be a condition precedent to every transfer of all or any portion of a Limited Partner's interest permitted hereunder, the transferring Limited Partner shall demonstrate to the satisfaction of the General Partner that (i) the proposed transfer will not cause or result in a breach of any violation of law, including U.S. federal or state securities laws, and (ii) that the transfer would not adversely affect the classification of the Partnership as a partnership for U.S.

ActiveUS 181752655

002496

federal tax purposes (including by causing the Partnership to be treated as a "publicly traded partnership" under Section 7704 of the Code), terminate it as a partnership under Code Section 708, or have a substantial adverse effect with respect to U.S. federal income taxes payable by the Partnership.

13. <u>Dissolution</u>. The Partnership shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the consent of the General Partner; (ii) at any time there are no Limited Partners of the Partnership, unless the business of the Partnership is continued in a manner permitted by the Act; or (iii) the entry of a decree of judicial dissolution under Section 17-802 of the Act. Following the foregoing event, the General Partner shall proceed diligently to liquidate the assets of the Partnership in a manner consistent with commercially reasonable business practices. In the event of dissolution, the Partnership shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Partnership in an orderly manner), and the assets of the Partnership shall be applied in the manner, and in the order of priority, set forth in Section 17-804 of the Act. Liquidating distributions to the Partners shall be made in in accordance with their Percentage Interests.

14. <u>Severability of Provisions</u>. Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

15. <u>Counterparts</u>. This Agreement may be executed in several counterparts and as so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all of the parties have not signed the same counterpart.

16. <u>Facsimile Signature Page</u>. This Agreement may be executed and delivered by the parties hereto by an executed signature page transmitted by facsimile, and any failure to deliver the originally executed signature page shall not affect the validity, legality or enforceability of this Agreement.

17. <u>Entire Agreement</u>. This Agreement embodies the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

18. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware (without regard to the conflicts of law principles), all rights and remedies being governed by said laws.

19. <u>Amendments</u>. No amendment of this Agreement shall be valid or binding unless such amendment is made with the written consent of the General Partner. Further, any amendment of this Agreement that reduces the Percentage Interest or economic rights of any Limited Partner in a manner that is disproportionate to other Limited Partners shall require the written consent of the affected Limited Partner. For the avoidance of doubt, amendment includes any merger, combination or other reorganization or any amendment of the Certificate that has the effect of changing or superseding the terms of this Agreement.

ActiveUS 181752655

002497

*[Remainder of Page Intentionally Blank]*

9

002498

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first set forth above.

**GENERAL PARTNER:**

[*NEW GP ENTITY*]


_____

By:
Its:


**LIMITED PARTNER:**

*[CLAIMANT TRUST]*


_____

By:
Its:  Trustee


*[Signature Page to Fifth Amended and  Restated*
*Agreement of Limited Partnership of Highland Capital Management, L.P.]*

ActiveUS 181752655

002499

Schedule A

<u>**SCHEDULE OF PARTNERS**</u>

<mark>**[Date]**</mark>**, 2020**

**General Partner**

| <u>Name</u> | <u>Address</u> | <u>Percentage Interest</u> |
|---|---|---|
| *[New GP Entity]* | *[Insert Address]* | [1.00]% |

**Limited Partners**

| <u>Name</u> | <u>Address</u> | <u>Percentage Interest</u> |
|---|---|---|
| *[Claimant Trust]* | *[Insert Address]* | [99.00]% |

*Schedule A*

**Schedule B**

### SCHEDULE OF OFFICERS

**[Date], 2020**

| Name | Officer Title |
|:---:|:---:|
| [James Seery] | [Chief Executive Officer] |
| *[Name]* | *[Title]* |
| *[Name]* | *[Title]* |

*Schedule B*

**Exhibit I**

#### Regulatory Allocations

(i)        Items of income or gain (computed in accordance with Section 6(a), including the adjustments therein) for any taxable period shall be allocated to the Partners in the manner and to the minimum extent required by the "minimum gain chargeback" provisions of Treasury Regulation Section 1.704-2(f) and Treasury Regulation Section 1.704-2(i)(4).

(ii)        All "nonrecourse deductions" (as defined in Treasury Regulation Section 1.704-2(b)(1)) of the Partnership for any year shall be allocated to the Partners in accordance with their respective Percentage Interests; provided, however, that nonrecourse deductions attributable to "partner nonrecourse debt" (as defined in Treasury Regulation Section 1.704-2(b)(4)) shall be allocated to the Partners in accordance with the provisions of Treasury Regulation Section 1.704-2(i)(1).

(iii)        Items of income or gain (computed in accordance with Section 6(a), including the adjustments therein) for any taxable period shall be allocated to the Partners in the manner and to the extent required by the "qualified income offset" provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(d).

(iv)        In no event shall Loss of the Partnership be allocated to a Partner if such allocation would cause or increase a negative balance in such Partner's Adjusted Capital Account (determined for purposes of this Exhibit I only, by increasing the Partner's Adjusted Capital Account balance by the amount the Partner is obligated to restore to the Partnership pursuant to Treasury Regulation Section 1.704-1(b)(2)(ii)(c) and decreasing it by the amounts specified in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6)).

(v)        For tax purposes, except as otherwise provided herein or as required by Code Section 704, all items of income, gain, loss, deduction or credit shall be allocated to the Partners in the same manner as are Income and Loss; provided, however, that if the Book Value of any property of the Partnership differs from its adjusted basis for tax purposes, then items of income, gain, loss, deduction or credit related to such property for tax purposes shall be allocated among the Partners so as to take account of the variation between the adjusted basis of the property for tax purposes and its Book Value in the manner provided for under Code Section 704(c).

(vi)        For purposes hereof, the following terms have the meanings set forth below:

"***Adjusted Capital Account***" means, for each Partner, such Partner's capital account balance increased by such Partner's share of "minimum gain" and of "partner nonrecourse debt minimum gain" (as determined pursuant to Treasury Regulation Sections 1.704-2(g) and 1.704-2(i)(5), respectively).

"***Book Value***" means, with respect to any asset, the asset's adjusted basis for U.S. federal income tax purposes; provided, however, that (i) the initial Book Value of any asset contributed to the Partnership shall be adjusted to equal its fair market value as determined by the General Partner at the time of its contribution, and (ii) the Book Values of all assets held by the Partnership shall be

*Schedule B*

002502

adjusted to equal their respective fair market values as determined by the General Partner (taking Code Section 7701(g) into account) upon an election by the Partnership to revalue its property in accordance with Regulation Section 1.704-1(b)(2)(iv)(*f*) and upon liquidation of the Partnership. The Book Value of any asset whose Book Value was adjusted pursuant to the preceding sentence shall thereafter be adjusted in accordance with the provisions of Regulation Section 1.704-1(b)(2)(iv)(*g*).

1

002503

# EXHIBIT "D"

002504

*Draft*

## LITIGATION SUB-TRUST AGREEMENT

This Litigation Sub-Trust Agreement, effective as of _____ , 2020 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among James P. Seery, Jr., as trustee of the Highland Claimant Trust (the "Claimant Trustee"), [____] as Delaware Trustee, and Marc S. Kirschner as trustee (the "Litigation Trustee," and together with the Claimant Trustee [and Delaware Trustee], the "Parties") of the Litigation Sub-Trust for the benefit of the Claimant Trust as sole Litigation Sub-Trust Beneficiary.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. •](as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] [which was confirmed by the Bankruptcy Court on _____ , 2020, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order")];

WHEREAS, this Agreement, including all exhibits hereto, is the "Litigation Sub-Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Litigation Sub-Trust Assets are hereby to be transferred by the Claimant Trust to the Litigation Sub-Trust (each as defined herein) created and evidenced by this Agreement so that (i) Estate Claims can be investigated, prosecuted, settled, abandoned, resolved, and otherwise monetized as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; (ii) proceeds of Estate Claims can be remitted to the Claimant Trust as Claimant Trust Assets for distribution to the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) in accordance with the Plan and Claimant Trust Agreement[; (iii) the Litigation Trustee can investigate, litigate, settle, or otherwise resolve any Filed Claims relating to the Estate Claims, including the Debtor Employee Claims;] and (iv) administrative services relating to the activities of the Litigation Sub-Trust can be performed by the Litigation Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

002505

Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Litigation Trustee and the Claimant Trustee have executed this Agreement for the benefit of the Claimant Trust as provided for in the Plan.

TO HAVE AND TO HOLD unto the Litigation Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Litigation Sub-Trust in accordance with Article IX hereof, this Litigation Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Litigation Sub-Trust Assets are to be strictly held and applied by the Litigation Trustee subject to the specific terms set forth below.

# ARTICLE I.
# DEFINITION AND TERMS

1.1    Certain Definitions.  Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)    "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(b)    "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(c)    "Claimant Trust Agreement" means the Claimant Trust Agreement dated [      ], 2020, by and between the Debtor, Claimant Trustee, and Delaware Trustee.

(d)    "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee who may be appointed pursuant to the terms of the Claimant Trust Agreement.

(e)    "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(f)    ["Debtor Employee Claims" means any General Unsecured Claims filed by any Employee or former director, officer, or employee of the Debtor, other than the Claims of

2

002506

the Senior Employees subject to stipulations executed by employees of the Debtor prior to the Effective Date.]

      (g)    "<u>Delaware Statutory Trust Act</u>" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

      (h)    "<u>Delaware Trustee</u>" has the meaning set forth in the Claimant Trust Agreement.

      (i)    "<u>Disability</u>" means as a result of the Litigation Trustee's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Litigation Trustee, the Litigation Trustee has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

      (j)    "<u>Estate Claims</u>" has the meaning given to it in <u>Exhibit A</u> to the *Notice of Final Term Sheet* [Docket No. 354].

      (k)    ["<u>Employee</u>" means the employees of the Debtor set forth in the Plan Supplement.]

      (l)    "<u>Litigation Sub-Trust</u>" means the sub-trust created pursuant to this Agreement, and in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d).

      (m)    "<u>Litigation Sub-Trust Agreement</u>" means this Agreement.

      (n)    "<u>Litigation Sub-Trust Assets</u>" means the Estate Claims and the Litigation Sub-Trust Expense Cash Reserve.

      (o)    "<u>Litigation Sub-Trust Beneficiary</u>" means the Claimant Trust.

      (p)    "<u>Litigation Sub-Trust Expenses</u>" means the costs, expenses, liabilities and obligations incurred by the Litigation Sub-Trust and/or the Litigation Trustee in administering and conducting the affairs of the Litigation Sub-Trust, and otherwise carrying out the terms of the Litigation Sub-Trust and the Plan on behalf of the Litigation Sub-Trust, including without any limitation, any taxes owed by the Litigation Sub-Trust, and the fees and expenses of the Litigation Trustee and professional persons retained by the Litigation Sub-Trust or Litigation Trustee in accordance with Article 3.12(b) of this Agreement.

      (q)    "<u>Litigation Sub-Trust Expense Cash Reserve</u>" means $[•] million in Cash to be funded by the Debtor or Reorganized Debtor, as applicable, pursuant to the Plan into a bank account of the Litigation Sub-Trust (or of the Claimant Trust for the benefit of the Litigation Sub-Trust) on or before the Effective Date for the purpose of paying Litigation Sub-Trust Expenses in accordance herewith.

3

002507

(r) "Litigation Trustee" means Marc S. Kirschner as the initial "Litigation Trustee" hereunder and under the Plan, and any successor Litigation Trustee who may be appointed pursuant to the terms of this Agreement.

(s) "Oversight Board" has the meaning set forth in the Claimant Trust Agreement.

(t) "Plan" has the meaning set forth in the Recitals hereof.

(u) "Privileges" means the rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Debtor Employee Claims, including, without limitation, attorney-client privilege as defined in Rule 502(g) of the Federal Rules of Evidence or any other privilege available under applicable law[; provided, however, that "Privileges" shall not include the work-product privilege and the work-product privilege shall remain with the attorney or attorneys who created such work product.]

(v) "Securities Act" means the Securities Act of 1933, as amended.

(w) "TIA" means the Trust Indenture Act of 1939, as amended.

(x) "Trust Interests" means the trust interest(s) to be distributed to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.

(y) "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

1.2 General Construction. As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply. "Includes" and "including" are not limiting and "or" is not exclusive. References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement. Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars. References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3 Incorporation of the Plan. The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

## ARTICLE II.
## ESTABLISHMENT OF THE LITIGATION SUB-TRUST

2.1 Establishment of Sub-Trust.

002508

(a)    The Parties, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a statutory trust under the Delaware Statutory Trust Act on behalf of the Claimant Trust as the sole Litigation Sub-Trust Beneficiary, which shall be known as the "Highland Litigation Sub-Trust," on the terms set forth herein. The Litigation Trustee may use this name in accordance with the terms and conditions set forth herein as the Litigation Trustee sees fit.

(b)    The Litigation Trustee shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in his capacity as Litigation Trustee, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2    <u>Nature and Purposes of the Litigation Sub-Trust</u>.  The Litigation Sub-Trust is organized and established as a trust for the purpose of monetizing the Estate Claims and making distributions to Litigation Sub-Trust Beneficiary in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d).  The Litigation Sub-Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Estate Claims and distributing the proceeds of such Estate Claims to the Claimant Trust in a timely fashion in accordance with the Plan, the Confirmation Order, and this Agreement.  The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Estate Claim as of the Petition Date.  Except as otherwise provided herein, the Litigation Sub-Trust shall have the sole responsibility for the pursuit and settlement of the Estate Claims], and the sole power and authority to allow or settle and compromise any Claims related to the Estate Claims, including, without limitation, Debtor Employee Claims].  For the avoidance of doubt, the Litigation Sub-Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Estate Claims and Debtor Employee Claims, other than those Claims constituting Reorganized Debtor Assets; <u>provided</u>, <u>however</u>, that the Litigation Trustee may, as part of his investigation mandate, investigate Estate Claims that would constitute Reorganized Debtor Assets and make a recommendation to the Oversight Board and the Reorganized Debtor on how to proceed with respect to any such Causes of Action.

2.3    <u>Transfer of Assets and Rights to the Litigation Sub-Trust</u>.

(a)    On or as soon as practicable after the Effective Date, the Claimant Trust shall automatically an irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims, Debtor Employee Claims, and Privileges. For purposes of the transfer of documents, the Litigation Sub-Trust is an assignee and successor to the Debtor in respect of the Estate Claims and Debtor Employee Claims and shall be treated as such in any review of confidentiality restrictions in requested documents.  For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(b)    Until the Litigation Sub-Trust terminates pursuant to the terms hereof, legal title to the Estate Claims shall be vested at all times in the Litigation Sub-Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of

002509

the Estate Claims to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee. For purposes of such jurisdictions, the term Litigation Sub-Trust, as used herein, shall be read to mean the Litigation Trustee.

(c)     In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Estate Claims after the Effective Date. No Person or entity may rely on the absence of a specific reference in the Plan to any Estate Claim against them as any indication that the Litigation Trustee will not pursue any and all available Estate Claims or objections against them. Unless any Estate Claim against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Estate Claims for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of the Confirmation Order.

2.4     <u>Principal Office</u>. The principal office of the Litigation Sub-Trust shall be maintained by the Litigation Trustee at the following address: Goldin Associates, a Teneo Company, 350 Fifth Avenue, New York, New York 10118.

2.5     <u>Acceptance</u>. The Litigation Trustee accepts the Litigation Sub-Trust imposed by this Agreement and agrees to observe and perform that Litigation Sub-Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.6     <u>Further Assurances</u>. The Claimant Trustee and any successors thereof will, upon reasonable request of the Litigation Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Litigation Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Litigation Trustee the powers, instruments or funds in trust hereunder.

2.7     <u>Incidents of Ownership</u>. The Claimant Trust shall be the sole beneficiary of the Litigation Sub-Trust and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## <u>ARTICLE III.</u>
## <u>THE LITIGATION TRUSTEE</u>

3.1     <u>Role</u>. In furtherance of and consistent with the purpose of the Litigation Sub-Trust, the Plan, and this Agreement, the Litigation Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Litigation Trustee with respect to the Litigation Sub-Trust Assets for the benefit of the Litigation Sub-Trust Beneficiary and maintain, manage, and take action on behalf of the Litigation Sub-Trust.

3.2     <u>Authority</u>.

002510