**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P       § Case No. 19-34054-SGJ-11

Highland Capital Management Fund Advisors, L.P.

et al                                                             §

|                         | Appellant | § |                    |
|-------------------------|-----------|---|--------------------|
| vs.                     |           | § |                    |
| Highland Capital Management, L.P., |  | § |                    |
|                         |           | § | 3:21-CV-00538-N    |
|                         | Appellee  | § |                    |

[1943] **Order confirming the fifth amended chapter 11 plan,** Entered on 2/22/2021.

# APPELLANT RECORD
# VOLUME 10

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

$\mathcal{I} \; \mathcal{N} \mathcal{D} \mathcal{E} \mathcal{X}$

## AMENDED DESIGNATION BY NEXPOINT ADVISORS, L.P. AND HIGHLAND
## CAPITAL MANAGEMENT FUND ADVISORS, L.P.
## OF ITEMS FOR THE RECORD ON APPEAL

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,

L.P. (the "Appellants"), creditors and parties-in-interest in the above styled and numbered

bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"),

and, with respect to their *Notice of Appeal* [docket no. 1957], hereby file their *Amended*

*Designation of Items for the Record on Appeal* (the "Designation") as follows:

| Item | Bankruptcy Docket Number | Description |
|---|---|---|
| | | **Pleadings and Items on Docket** |
| 1 | 1957 | Notice of Appeal |
| 2 | 1943 | Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief |
| 3 | | Docket Sheet of Bankruptcy Case No. 19-34054 |
| 4 | 1606 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 5 | 1648 | Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 6 | 1656 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 7 | 1670 | Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 8 | 1719 | Second Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 9 | 1749 | Third Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 10 | 1772 | Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 11 | 1791 | Notice of Withdrawal of Certain Executory Contracts and Unexpired Leases from List of Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan |
| 12 | 1807 | Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management |
| 13 | 1808 | Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) |
| 14 | 1811 | Notice of Filing Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications) |
| 15 | 1814 | Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |

Handwritten annotations in left margin:
Vol. 1
000001
000165
000326
Vol. 2
000639
000666
000675
000820
000870
Vol. 3
000880
000886
000901
000906
001031
Vol. 4
001097
Vol. 5
001346

| | 16 | 1847 | Fourth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| | 17 | 1873 | Fifth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| | 18 | 1875 | Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland of Highland Capital Management, L.P. (As Modified) |
| | 19 | 1887 | Supplemental Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| | 20 | 1671 | United States Trustee's Limited Objection to Confirmation of Debtors' Fifth Amended Plan of Reorganization |
| | **Evidence and Transcripts** | | |
| | 21 | 1894 | Transcript of February 2, 2021 Confirmation Hearing |
| | 22 | 1905 | Transcript of February 3, 2021 Confirmation Hearing |
| | 23 | 1917 | Transcript of February 8, 2021 Bench Ruling |
| | 24 | 1794 | All exhibits admitted into evidence during February 2 and February 3, 2021 Confirmation Hearing |
| | | 1795 | |
| | | 1822* | |
| | | 1863 | |
| | | 1866 | |
| | | 1877 | |
| | | 1895 | |
| | | 1915 | |

Handwritten annotations:
Vol 5
001414
001421
00142~
00147S
00148Z
001485
081783
002040
082091
002188
Vol 12 - 002931
Vol 50 - 013295
- 013297
Vol. 51 - 013373
Vol 54 - 014182
Vol 55 - 01450~

*1822 - Vol. 12 - 50 (39 Volumes)

RESPECTFULLY SUBMITTED this 22d day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina

Davor Rukavina, Esq.
Texas Bar No. 24030781
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email:  drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this the 22d day of March, 2021, true and correct
copies of this document were electronically served by the Court's ECF system on parties entitled
to notice thereof, including on counsel for the Debtor.

By: /s/ Davor Rukavina

Davor Rukavina, Esq.

(a)     In connection with the administration of the Litigation Sub-Trust, in addition to any and all of the powers enumerated elsewhere herein, the Litigation Trustee shall, in an expeditious but orderly manner, investigate, prosecute, settle, and otherwise resolve the Estate Claims.  The Litigation Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Litigation Sub-Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.

(b)     The Litigation Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Estate Claims.  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Estate Claims prior to the Effective Date, on the Effective Date the Litigation Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "Marc Kirschner, not individually but solely as Litigation Trustee for the Highland Litigation Sub-Trust, et al. v. [Defendant]".

(c)     Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Litigation Trustee shall have the power and authority to:

(i)     hold legal title to any and all rights in or arising from the Litigation Sub-Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Sub-Trust (including any proceeds of the Litigation Sub-Trust Assets);

(ii)     perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Sub-Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iii)     subject to any approval of the Oversight Board that may be required under Section 3.3(b), protect and enforce the rights of the Litigation Sub-Trust with respect to any Litigation Sub-Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(iv)     determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Sub-Trust;

(v)     subject to any approval of the Oversight Board that may be required under Section 3.3(b), investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, all Estate Claims or any other Causes of Action in favor of or against the Litigation Sub-Trust;

(vi)     with respect to any Estate Claim, avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code or applicable state law;

7

002511

(vii)    subject to applicable law, seek the examination of any Entity or Person with respect to the Estate Claims;

(viii)    make all payments relating to the Litigation Sub-Trust Assets;

(ix)    [assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Sub-Trust, the Litigation Sub-Trust Assets, or the Litigation Sub-Trust Beneficiary, if applicable;]

(x)    prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Sub-Trust, and pay taxes properly payable by the Litigation Sub-Trust;

(xi)    if not otherwise covered by insurance coverage obtained by the Claimant Trust, obtain reasonable insurance coverage with respect to any liabilities and obligations of the Litigation Trustee, solely in his capacity as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Litigation Sub-Trust Expense and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Reserve;

(xii)    without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Sub-Trust Expenses and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Cash Reserve;

(xiii)    to the extent applicable, assert, enforce, release, or waive any Privilege or defense on behalf of the Litigation Sub-Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Litigation Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xiv)    take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Sub-Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder; and

(xv)    exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(xv) being collectively, the "Authorized Acts").

8

002512

(d)    The Litigation Trustee has the power and authority to act as trustee of the Litigation Sub-Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(e)    Any determinations by the Liquidation Trustee, under the direction of the Oversight Board, with respect to the amount or timing of settlement or other disposition of any Estate Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Sub-Trust Beneficiary and all other parties of interest following the entry of an order of a court of competent jurisdiction approving such settlement or other disposition to the extent required or obtained.

3.3    Limitation of Authority.

(a)    Notwithstanding anything herein to the contrary, the Litigation Sub-Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Estate Claims as required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement.

(b)    Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Litigation Trustee must receive the consent by vote of a [simple majority] of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 of the Claimant Trust Agreement, in order to:

(i)    terminate or extend the term of the Litigation Sub-Trust;

(ii)    commence litigation with respect to any Estate Claims, including, without limitation, to (x) litigate, resolve, or settle coverage and/or the liability of any insurer under any insurance policy or legal action related thereto, or (y) pursue avoidance, recovery, or similar remedies that may be brought under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes or common law, including fraudulent transfer law;

(iii)    settle, dispose of, or abandon any Estate Claims [(including any counterclaims to the extent such counterclaims are set off against the proceeds of any such Estate Claim)];

(iv)    borrow funds as may be necessary to fund litigation or other costs of the Litigation Sub-Trust;

(v)    reserve or retain any cash or cash equivalents in the Litigation Sub-Trust Cash Reserve in an amount reasonably necessary to meet claims and contingent liabilities;

(vi)    change the compensation of the Litigation Trustee; and

(vii)    retain counsel, experts, advisors, or any other professionals.

(c)    [Reserved]

9

3.4     Binding Nature of Actions.  All actions taken and determinations made by the Litigation Trustee in accordance with the provisions of this Agreement shall be final and binding upon the Litigation Sub-Trust Beneficiary.

3.5     Term of Service.  The Litigation Trustee shall serve as the Litigation Trustee for the duration of the Litigation Sub-Trust, subject to death, resignation or removal.

3.6     Resignation.  The Litigation Trustee may resign as trustee of the Litigation Sub-Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Litigation Trustee shall continue to serve as Litigation Trustee after delivery of the Litigation Trustee's resignation until the proposed effective date of such resignation, unless the Litigation Trustee and a [simple majority] of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Litigation Trustee in accordance with Section 3.8 hereof becomes effective.

3.7     Removal.

        (a)     The Litigation Trustee may be removed by a [simple majority] vote of the Oversight Board for Cause, immediately upon notice thereof, or without Cause, upon [60 days'] prior written notice.

        (b)     To the extent there is any dispute regarding the removal of a Litigation Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when a successor Litigation Trustee will become effective in accordance with Section 3.8 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.8     Appointment of Successor.

        (a)     Appointment of Successor.  In the event of a vacancy by reason of the death, Disability, or removal of the Litigation Trustee, or prospective vacancy by reason of resignation, a successor Litigation Trustee shall be selected by a [simple majority] vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Litigation Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Litigation Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Litigation Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Litigation Sub-Trust, or the Claimant Trust on behalf of the Litigation Sub-Trust. The successor Litigation Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Litigation Trustee.

        (b)     Vesting or Rights in Successor Litigation Trustee.  Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Sub-Trust, the Claimant Trustee, the exiting Litigation Trustee, the Oversight Board, and file

002514

with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof. The successor Litigation Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Litigation Trustee except that the successor Litigation Trustee shall not be liable for the acts or omissions of the retiring Litigation Trustee. In no event shall the retiring Litigation Trustee be liable for the acts or omissions of the successor Litigation Trustee.

(c)     Interim Litigation Trustee. During any period in which there is a vacancy in the position of Litigation Trustee, the Oversight Board shall appoint one of its Members or the Claimant Trustee to serve as the interim Litigation Trustee (the "Interim Trustee") until a successor Litigation Trustee is appointed pursuant to Section 3.8(a). The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board or Claimant Trustee, as applicable, merely by such Person's appointment as Interim Trustee.

3.9     Continuance of Litigation Sub-Trust. The death, resignation, or removal of the Litigation Trustee shall not operate to terminate the Litigation Sub-Trust created by this Agreement or to revoke any existing agency (other than any agency of the Litigation Trustee as the Litigation Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Litigation Trustee. In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Litigation Trustee's capacity under this Agreement and the conveyance of the Estate Claims then held by the exiting Litigation Trustee to the successor Litigation Trustee; (ii) deliver to the successor Litigation Trustee all non-privileged documents, instruments, records, and other writings relating to the Litigation Sub-Trust as may be in the possession or under the control of the exiting Litigation Trustee, provided, the exiting Litigation Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Litigation Trustee and the cost of making such copies shall be a Litigation Sub-Trust Expense to be paid by the Litigation Sub-Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Litigation Trustee's obligations and functions by his successor, provided the fees and expenses of such assistance and cooperation shall be paid to the exiting Litigation Trustee by the Litigation Sub-Trust. The exiting Litigation Trustee shall irrevocably appoint the successor Litigation Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Litigation Trustee is obligated to perform under this Section 3.9.

3.10     Litigation Trustee as "Estate Representative". The Litigation Trustee will be the exclusive trustee of the Litigation Sub-Trust Assets, for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Estate Claims, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement. The Litigation Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Estate Claims, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan

11

or Confirmation Order. All actions, claims, rights or interests constituting or relating to Estate Claims are preserved and retained and may be enforced by the Litigation Trustee as an Estate Representative.

3.11 <u>Books and Records</u>.

(a) The Litigation Trustee shall maintain, in respect of the Litigation Sub-Trust and the Claimant Trust, books and records pertinent to Estate Claims in its possession and the income of the Litigation Sub-Trust and payment of expenses, liabilities, and claims against or assumed by the Litigation Sub-Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Sub-Trust and the requirements of Article VII herein. Except as otherwise provided herein, nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Sub-Trust, or as a condition for managing any payment or distribution out of the Litigation Sub-Trust. Notwithstanding the foregoing, the Litigation Trustee shall to retain such books and records, and for such periods, with respect to any Reorganized Debtor Assets as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

(b) The Litigation Trustee may dispose some or all of the books and records maintained by the Litigation Trustee at the later of (i) such time as the Litigation Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Litigation Sub-Trust, including with respect to the Estate Claims, or (ii) upon the termination and winding up of the Litigation Sub-Trust under Article IX of this Agreement.

3.12 <u>Reports</u>.

(a) <u>Financial and Status Reports</u>. The fiscal year of the Litigation Sub-Trust shall be the calendar year. Within 90 days after the end of each calendar year during the term of the Litigation Sub-Trust, and within 45 days after the end of each calendar quarter during (other than the fourth quarter) the term of the Litigation Sub-Trust and as soon as practicable upon termination of the Litigation Sub-Trust, the Litigation Trustee shall make available upon request to the Oversight Board or Litigation Sub-Trust Beneficiary appearing on its records as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the Litigation Sub-Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Sub-Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Sub-Trust that, in the judgment of the Litigation Trustee, materially affects the Litigation Sub-Trust and of which notice has not previously been given to the Oversight Board or Litigation Sub-Trust Beneficiary, <u>provided</u>, that any such description shall not include any privileged or confidential information of the Litigation Trustee; and (iii) a description of the progress of liquidating the Litigation Sub-Trust Assets and making distributions to the Litigation Sub-Trust Beneficiary and

002516

any other material information relating to the Litigation Sub-Trust Assets and the administration of the Litigation Sub-Trust deemed appropriate to be disclosed by the Litigation Trustee, which description shall include a written report detailing, among other things, the litigation status of the Estate Claims transferred to the Litigation Sub-Trust, any settlements entered into by the Litigation Sub-Trust with respect to the Estate Claims, the proceeds recovered to date from Estate Claims, and the distributions made by the Litigation Sub-Trust.

(b)   <u>Annual Plan and Budget</u>.  If instructed by the Oversight Board, the Litigation Trustee shall prepare and submit to the Oversight Board for approval an annual plan and budget in such detail as reasonably requested.

3.13   <u>Compensation and Reimbursement; Engagement of Professionals</u>.

(a)   <u>Compensation and Expenses</u>.

(i)   <u>Compensation</u>.  As compensation for any services rendered by the Litigation Trustee in connection with this Agreement, the Litigation Trustee shall receive compensation in a manner and amount to be determined by the Oversight Board.

(ii)   <u>Expense Reimbursements</u>.  All reasonable out-of-pocket expenses of the Litigation Trustee in the performance of his or her duties hereunder, shall be reimbursed as Litigation Sub-Trust Expenses paid by the Litigation Sub-Trust.

(b)   <u>Professionals</u>.

(i)   <u>Engagement of Professionals</u>.  The Litigation Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The Litigation Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii)   <u>Fees and Expenses of Professionals</u>.  The Litigation Trustee shall pay the reasonable fees and expenses of any retained professionals as Litigation Sub-Trust Expenses.

3.14   <u>Reliance by Litigation Trustee</u>.  Except as otherwise provided herein, the Litigation Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Litigation Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Litigation Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Litigation Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Litigation Trustee in accordance therewith.  The Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning Estate Claims, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not

13

taken by the Litigation Trustee in accordance therewith. The Litigation Sub-Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15 <u>Commingling of Litigation Sub-Trust Assets</u>. The Litigation Trustee shall not commingle any of the Litigation Sub-Trust Assets with his or her own property or the property of any other Person.

3.16 [<u>Delaware Trustee</u>. The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Litigation Sub-Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Litigation Trustee; <u>provided</u>, <u>however</u>, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Litigation Sub-Trust.]

**ARTICLE IV.**
**THE OVERSIGHT BOARD**

The Oversight Board shall be governed by Article IV of the Claimant Trust Agreement.

**ARTICLE V.**
**TRUST INTERESTS**

5.1 <u>Litigation Sub-Trust Interests</u>. On the date hereof, the Litigation Sub-Trust shall issue Trust Interests to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary. The Litigation Sub-Trust Beneficiary shall be entitled to distributions from the Litigation Sub-Trust Assets in accordance with the terms of the Plan and this Agreement.

5.2 <u>Transferability of Trust Interests</u>. No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected.

5.3 <u>Exemption from Registration</u>. The Parties hereto intend that the rights of the Litigation Sub-Trust Beneficiary arising under this Litigation Sub-Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws. The Oversight Board, acting unanimously, and Litigation Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Litigation Sub-Trust is not subject to

002518

registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act. The Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Sub-Trust Beneficiary any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Litigation Trustee under this Agreement.

## ARTICLE VI.
## DISTRIBUTIONS

6.1     Distributions.  The Litigation Trustee shall distribute Cash proceeds of the Estate Claims to the Claimant Trust within [30 days] of receipt of such Cash proceeds, net of any amounts that (a) are reasonably necessary to maintain the value of the Litigation Sub-Trust Assets pending their monetization or other disposition during the term of the Litigation Sub-Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Litigation Sub-Trust Expenses and any other expenses incurred by the Litigation Sub-Trust (including, but not limited to, any taxes imposed on or payable by the Litigation Trustee with respect to the Litigation Sub-Trust Assets), and (c) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Litigation Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses).

6.2     Manner of Payment or Distribution.  All distributions made by the Litigation Trustee on behalf of the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary shall be payable by the Litigation Trustee directly to the Claimant Trust, as sole Litigation Sub-Trust Beneficiary, on the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3     Delivery of Distributions.  All distributions under this Agreement to the Claimant Trust shall be made pursuant to wire instructions provided by the Claimant Trustee to the Litigation Trustee.

## ARTICLE VII.
## TAX MATTERS

7.1     [Tax Treatment and Tax Returns.

(a)     It is intended for the initial transfer of the Litigation Sub-Trust Assets to the Litigation Sub-Trust to be treated for federal income tax purposes (and foreign, state, local tax purposes where applicable) as if the Debtor transferred the Litigation Sub-Trust Assets to the Litigation Sub-Trust Beneficiary and then, immediately thereafter, the Litigation Sub-Trust Beneficiary transferred the Litigation Sub-Trust Assets to the Litigation Sub-Trust. Consistent with such treatment, (i) it is intended that the Litigation Sub-Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Litigation Sub-Trust Beneficiary will be treated as the grantor of the Litigation Sub-Trust and owner of the Litigation Sub-Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), and (iii) the Litigation Trustee shall file all federal income tax returns (and foreign, state, and local

15

income tax returns where applicable) for the Litigation Sub-Trust Beneficiary as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The Litigation Trustee also will annually send to the Litigation Sub-Trust Beneficiary, in accordance with the tax laws, a separate statement setting forth such holder's interest in the Litigation Sub-Trust and share of items of income, gain, loss, deduction or credit as relevant for U.S. federal income tax purposes for such Litigation Sub-Trust Beneficiary to use in preparing their U.S. federal income tax returns.

(b) The Litigation Trustee shall determine the fair market value of the Litigation Sub-Trust Assets as of the Effective Date and notify the Litigation Sub-Trust Beneficiary of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

7.2 <u>Withholding</u>. The Litigation Trustee may withhold from any amount distributed from the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the Litigation Sub-Trust Beneficiary. As a condition to receiving any distribution from the Litigation Sub-Trust, the Litigation Trustee may require that the Litigation Sub-Trust Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Litigation Trustee to comply with applicable tax reporting and withholding laws.][2]

## ARTICLE VIII.
## STANDARD OF CARE AND INDEMNIFICATION

8.1 <u>Standard of Care</u>. None of the Litigation Trustee, acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan, the Oversight Board, or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Litigation Sub-Trust or to any Person (including the Litigation Sub-Trust Beneficiary and Claimant Trust Beneficiaries) in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the acts or omissions of any such Litigation Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Litigation Sub-Trust, the Litigation Trustee, or Oversight Board shall not be personally liable to the Litigation Sub-Trust or any other Person in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Litigation Trustee, Oversight Board, or any Member shall be personally liable to the Litigation Sub-Trust or to any Person for the acts or omissions of any employee, agent or professional of the Litigation Sub-Trust or Litigation Trustee, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Litigation Trustee, Oversight Board, or Member acted with gross

---

[2] NTD: Subject to review by tax counsel.

002520

negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Litigation Sub-Trust.

8.2     Indemnification.    The Litigation Trustee (including each former Litigation Trustee), Oversight Board, and all past and present Members (collectively, the "Indemnified Parties") shall be indemnified by the Litigation Sub-Trust against and held harmless by the Litigation Sub-Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Litigation Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence.  If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Litigation Sub-Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Litigation Trustee and/or Oversight Board, as applicable; provided, however, that the failure of an Indemnified Party to promptly notify the Litigation Trustee and/or Oversight Board of an indemnification obligation will not excuse the Litigation Sub-Trust from indemnifying the Indemnified Party unless such delay has caused the Litigation Sub-Trust material harm.  The Litigation Sub-Trust shall periodically advance or otherwise reimburse on demand the Indemnified Party's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith as a Litigation Sub-Trust Expense, but the Indemnified Party shall be required to repay promptly to the Litigation Sub-Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Litigation Sub-Trust with respect to which such expenses were paid.  The Litigation Sub-Trust shall indemnify and hold harmless the employees, agents and professionals of the Litigation Sub-Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.  For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Litigation Trustee or Member or the estate of any decedent Litigation Trustee or Member.  The indemnification provided hereby shall be a Litigation Sub-Trust Expense.

8.3     To the extent applicable, the provisions and protections set forth in Article IX of the Plan will apply to the Litigation Sub-Trust, the Litigation Trustee, Oversight Board, and the Members.

**ARTICLE IX.**
**TERMINATION**

9.1     [Duration.  The Litigation Trustee, the Litigation Sub-Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as the Litigation Trustee determines that the Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate, and all Distributions required to be made by the Litigation Trustee

to the Litigation Sub-Trust Beneficiary under the Plan and this Agreement have been made, but in no event shall the Litigation Sub-Trust be dissolved later than [three years] from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension ([not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Litigation Sub-Trust as a liquidating trust for federal income tax purposes]) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Sub-Trust Assets; provided, however, that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Litigation Sub-Trust Assets, by the Bankruptcy Court within six months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years [without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Litigation Sub-Trust as a liquidating trust for federal income tax purposes].

9.2     <u>Continuance of the Litigation Trustee for Winding Up</u>.  After dissolution of the Litigation Sub-Trust and for purpose of liquidating and winding up the affairs of the Litigation Sub-Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Litigation Sub-Trust Assets, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Litigation Sub-Trust, until such time as the winding up of the Litigation Sub-Trust is completed.  Upon the dissolution of the Litigation Sub-Trust and completion of the winding up of the assets, liabilities and affairs of the Litigation Sub-Trust pursuant to the Delaware Statutory Trust Act, the Litigation Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Litigation Sub-Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "<u>Termination Date</u>").  Subject in all respects to 3.11, upon the Termination date, the Litigation Trustee shall retain for a period of two (2) years, as a Litigation Sub-Trust Expense, the books, records, and certificated and other documents and files that have been delivered to or created by the Litigation Trustee.  Subject in all respects to Section 3.11, at the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.3     <u>Termination of Duties</u>.  Except as otherwise specifically provided herein, upon the Termination Date of the Litigation Sub-Trust, the Litigation Trustee, the Oversight Board, and its Members shall have no further duties or obligations hereunder.

## <u>ARTICLE X.</u>
## <u>AMENDMENTS AND WAIVER</u>

The Litigation Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect

002522

except by an instrument in writing signed by the Litigation Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Litigation Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

## ARTICLE XI.
## MISCELLANEOUS

11.1    Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Litigation Sub-Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Litigation Sub-Trust Beneficiary.

11.2    Litigation Sub-Trust Beneficiary has No Legal Title to Litigation Sub-Trust Assets.  The Litigation Sub-Trust Beneficiary shall have no legal title to any part of the Litigation Sub-Trust Assets.

11.3    Agreement for Benefit of Parties Only.  Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Litigation Trustee, Oversight Board, and the Litigation Sub-Trust Beneficiary any legal or equitable right, remedy or claim under or in respect of this Agreement.  The Litigation Sub-Trust Assets shall be held for the sole and exclusive benefit of the Litigation Sub-Trust Beneficiary.

11.4    Notices.  All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

(a)    If to the Litigation Trustee:

Marc S. Kirschner
c/o Goldin Associates LLC, a Teneo Company
350 Fifth Avenue
New York, New York 10118

With a copy to:

**[insert contact for counsel to the Litigation Trustee].**

(b)    If to the Claimant Trustee:

Claimant Trustee
c/o **[insert contact info for Claimant Trustee]**

With a copy to:

**[insert contact for counsel to the Claimant Trustee].**

002523

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.4 to the entity to be charged with knowledge of such change.

11.5    Severability.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.6    Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.7    Binding Effect, etc.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Litigation Sub-Trust, the Litigation Trustee, and the Litigation Sub-Trust Beneficiary, and their respective successors and assigns.  Any notice, direction, consent, waiver or other instrument or action by any Litigation Sub-Trust Beneficiary shall bind its successors and assigns.

11.8    Headings; References.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.9    Governing Law.  This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.10    Consent to Jurisdiction.  Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan.

11.11    Transferee Liabilities.  The Litigation Sub-Trust shall have no liability for, and the Litigation Sub-Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement.  In no event shall the Litigation Trustee or the Litigation Sub-Trust Beneficiary have any personal liability for such claims.  If any liability shall be asserted against the Litigation Sub-Trust or the Litigation Trustee as the transferee of the Litigation Sub-Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Litigation Trustee may use such part of the Litigation Sub-Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Litigation Trustee as a Litigation Sub-Trust Expense.

[Remainder of Page Intentionally Blank]

002524

IN WITNESS HEREOF, the parties hereto have caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

Litigation Trustee

By: _____

Marc S. Kirschner, not individually but solely in his capacity as the Litigation Trustee

21

002525

# EXHIBIT "E"

002526

Schedule of Causes of Action

The Causes of Action shall include, *without limitation*, any cause of action based on the following:

breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, misappropriation of assets, misappropriation of trade secrets, unfair competition, breach of contract, breach of warranty, fraud, constructive fraud, negligence, gross negligence, fraudulent conveyance, fraudulent transfer, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, *quantum meruit*, unjust enrichment, abuse of process, alter ego, business disparagement, indemnity, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel, quasi-contract claims, any counterclaims, equitable subordination, avoidance actions provided for under sections 544 or 547 of the Bankruptcy Code, claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

The Causes of Action shall include, *without limitation*, any cause of action against the following persons and entities:

James Dondero, Mark Okada, Grant Scott, John Honis, any current or former insider of the Debtor, the Dugaboy Investment Trust, Charitable DAF Holdco, Ltd, Hunter Mountain Investment Trust, Nexbank Capital, Inc. Highland Capital Management Services, Inc., NexPoint Advisors GP, LLC, NexPoint Advisors, L.P., Strand Advisors XVI, Inc., Highland Capital Management Fund Advisors, L.P., NexAnnuity Holdings, Inc., the entities listed on the attached **Annex 1** hereto, any current or former employee of the Debtor, and any entity directly or indirectly owned, controlled, or operated for the benefit of the foregoing persons or entities.

The Causes of Action shall include, *without limitation*, any cause of action arising from the following transactions:

The transfer of ownership interests in the Debtor to Hunter Mountain Investment Trust, the creation or transfer of any notes receivable from the Debtor or from any entity related to the Debtor, the creation or transfer of assets to or from any charitable foundation or trust, the formation, performance, or breach of any contract for the Debtor to provide investment management, support services, or any other services, and the distribution of assets or cash from the Debtor to partners of the Debtor.

002527

## Annex 1

11 Estates Lane, LLC

1110 Waters, LLC

140 Albany, LLC

1525 Dragon, LLC

17720 Dickerson, LLC

1905 Wylie LLC

2006 Milam East Partners GP, LLC

2006 Milam East Partners, L.P.

201 Tarrant Partners, LLC

2014 Corpus Weber Road LLC

2325 Stemmons HoldCo, LLC

2325 Stemmons Hotel Partners, LLC

2325 Stemmons TRS, Inc.

300 Lamar, LLC

3409 Rosedale, LLC

3801 Maplewood, LLC

3801 Shenandoah, L.P.

3820 Goar Park LLC

400 Seaman, LLC

401 Ame, L.P.

4201 Locust, L.P.

4312 Belclaire, LLC

5833 Woodland, L.P.

5906 DeLoache, LLC

5950 DeLoache, LLC

7758 Ronnie, LLC

7759 Ronnie, LLC

AA Shotguns, LLC

Aberdeen Loan Funding, Ltd.

Acis CLO 2017-7 Ltd

Acis CLO Management GP, LLC

Acis CLO Management GP, LLC (*fka Acis CLO Opportunity Funds GP, LLC*)

Acis CLO Management Holdings, L.P.

Acis CLO Management Intermediate Holdings I, LLC

Acis CLO Management Intermediate Holdings II, LLC

Acis CLO Management, LLC (*fka Acis CLO Opportunity Funds SLP, LLC*)

Acis CLO Trust

Acis CLO Value Fund II Charitable DAF Ltd.

Acis CMOA Trust

Advisors Equity Group LLC

Alamo Manhattan Hotel I, LLC (Third Party)

Allenby, LLC

Allisonville RE Holdings, LLC

AM Uptown Hotel, LLC

Apex Care, L.P

Asbury Holdings, LLC (*fka HCSLR Camelback Investors (Delaware), LLC*)

Ascendant Advisors

Atlas IDF GP, LLC

Atlas IDF, LP

BB Votorantim Highland Infrastructure, LLC

BDC Toys Holdco, LLC

Beacon Mountain, LLC

Bedell Trust Ireland Limited (Charitable trust account)

Ben Roby (third party)

BH Equities, LLC

BH Heron Pointe, LLC

BH Hollister, LLC

BH Willowdale Manager, LLC

Big Spring Partners, LLC

Blair Investment Partners, LLC

Bloomdale, LLC

Brave Holdings III Inc.

Brentwood CLO, Ltd.

Brentwood Investors Corp.

Brian Mitts

Bristol Bay Funding Ltd.

Bristol Bay Funding, Ltd.

BVP Property, LLC

C-1 Arbors, Inc.

C-1 Cutter's Point, Inc.

C-1 Eaglecrest, Inc.

C-1 Silverbrook, Inc.

Cabi Holdco GP, LLC

Cabi Holdco I, Ltd

Cabi Holdco I, Ltd.

Cabi Holdco, L.P.

California Public Employees' Retirement System

Camelback Residential Investors, LLC

Camelback Residential Investors, LLC
*(fka Sevilla Residential Partners, LLC)*

Camelback Residential Partners, LLC

Capital Real Estate - Latitude, LLC

Castle Bio Manager, LLC

Castle Bio, LLC

CG Works, Inc.

CG Works, Inc.
(fka Common Grace Ventures, Inc.)

Charitable DAF Fund, L.P.

Charitable DAF GP, LLC

Charitable DAF HoldCo, Ltd

Charitable DAF HoldCo, Ltd.

Claymore Holdings, LLC

CLO HoldCo, Ltd

CLO Holdco, Ltd.

Corbusier, Ltd.

Cornerstone Healthcare Group Holding, Inc.

Corpus Weber Road Member LLC

CP Equity Hotel Owner, LLC

CP Equity Land Owner, LLC

CP Equity Owner, LLC

CP Hotel TRS, LLC

CP Land Owner, LLC

CP Tower Owner, LLC

CRE - Lat, LLC

Credit Suisse, Cayman Islands Branch

Crossings 2017 LLC

Crown Global Insurance Company (third party)

Dallas Cityplace MF SPE Owner LLC

Dallas Lease and Finance, L.P.

Dana Scott Breault
James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Dana Sprong (Third Party)

David c. Hopson

De Kooning, Ltd.

deKooning, Ltd.

DFA/BH Autumn Ridge, LLC

Dolomiti, LLC

DrugCrafters, L.P.

Dugaboy Investment Trust

Dugaboy Management, LLC

Dugaboy Project Management GP, LLC

Eagle Equity Advisors, LLC

Eames, Ltd.

Eastland CLO, Ltd.

Eastland Investors Corp.

EDS Legacy Heliport, LLC

EDS Legacy Partners Owner, LLC

EDS Legacy Partners, LLC

Empower Dallas Foundation, Inc.

ENA 41, LLC

Entegra Strat Superholdco, LLC

Entegra-FRO Holdco, LLC

Entegra-FRO Superholdco, LLC

Entegra-HOCF Holdco, LLC

Entegra-NHF Holdco, LLC

Entegra-NHF Superholdco, LLC

Entegra-RCP Holdco, LLC

Estates on Maryland Holdco, LLC

Estates on Maryland Owners SM, Inc.

Estates on Maryland Owners, LLC

Estates on Maryland, LLC

Falcon E&P Four Holdings, LLC

Falcon E&P One, LLC

Falcon E&P Opportunities Fund, L.P.

Falcon E&P Opportunities GP, LLC

Falcon E&P Royalty Holdings, LLC

Falcon E&P Six, LLC

Falcon E&P Two, LLC

Falcon Four Midstream, LLC

Falcon Four Upstream, LLC

Falcon Incentive Partners GP, LLC

Falcon Incentive Partners, LP

Falcon Six Midstream, LLC

Flamingo Vegas Holdco, LLC *(fka Cabi Holdco, LLC)*

Four Rivers Co-Invest GP, LLC

Four Rivers Co-Invest, L.P.

002529

FRBH Abbington SM, Inc.

FRBH Abbington, LLC

FRBH Arbors, LLC

FRBH Beechwood SM, Inc.

FRBH Beechwood, LLC

FRBH C1 Residential, LLC

FRBH Courtney Cove SM, Inc.

FRBH Courtney Cove, LLC

FRBH CP, LLC

FRBH Duck Creek, LLC

FRBH Eaglecrest, LLC

FRBH Edgewater JV, LLC

FRBH Edgewater Owner, LLC

FRBH Edgewater SM, Inc.

FRBH JAX-TPA, LLC

FRBH Nashville Residential, LLC

FRBH Regatta Bay, LLC

FRBH Sabal Park SM, Inc.

FRBH Sabal Park, LLC

FRBH Silverbrook, LLC

FRBH Timberglen, LLC

FRBH Willow Grove SM, Inc.

FRBH Willow Grove, LLC

FRBH Woodbridge SM, Inc.

FRBH Woodbridge, LLC

Freedom C1 Residential, LLC

Freedom Duck Creek, LLC

Freedom Edgewater, LLC

Freedom JAX-TPA Residential, LLC

Freedom La Mirage, LLC

Freedom LHV LLC

Freedom Lubbock LLC

Freedom Miramar Apartments, LLC

Freedom Sandstone, LLC

Freedom Willowdale, LLC

Fundo de Investimento em Direitos Creditorios BB Votorantim Highland Infraestrutura

G&E Apartment REIT The Heights at Olde Towne, LLC

G&E Apartment REIT The Myrtles at Olde Towne, LLC

GAF REIT, LLC

GAF Toys Holdco, LLC

Gardens of Denton II, L.P.

Gardens of Denton III, L.P.

Gleneagles CLO, Ltd.

Goverannce RE, Ltd.

Governance Re, Ltd.

Governance, Ltd.

Grant Scott

Grant Scott, Trustee of The SLHC Trust

Grayson CLO, Ltd.

Grayson Investors Corp.

Greater Kansas City Community Foundation (third party)

Greenbriar CLO, Ltd.

Greg Busseyt

Gunwale LLC

Gunwale, LLC

Hakusan, LLC

Hammark Holdings LLC

Hampton Ridge Partners, LLC

Harbourvest Entities

Harko, LLC

Harry Bookey/Pam Bookey (third party)

Haverhill Acquisition Co., LLC

Haygood, LLC

HB 2015 Family LP (third party)

HCBH 11611 Ferguson, LLC

HCBH Buffalo Pointe II, LLC

HCBH Buffalo Pointe III, LLC

HCBH Buffalo Pointe, LLC

HCBH Hampton Woods SM, Inc.

HCBH Hampton Woods, LLC

HCBH Overlook SM, Inc.

HCBH Overlook, LLC

HCBH Rent Investors, LLC

HCMS Falcon GP, LLC

HCMS Falcon, L.P.

HCO Holdings, LLC

HCOF Preferred Holdings, L.P.

HCOF Preferred Holdings, LP

HCOF Preferred Holdings, Ltd.

HCRE 1775 James Ave, LLC

HCRE Addison TRS, LLC

HCRE Addison, LLC *(fka HWS Addison, LLC)*

HCRE Hotel Partner, LLC *(fka HCRE HWS Partner, LLC)*

HCRE Las Colinas TRS, LLC

HCRE Las Colinas, LLC *(fka HWS Las Colinas, LLC)*

HCRE Plano TRS, LLC

HCRE Plano, LLC *(fka HWS Plano, LLC)*

HCREF-I Holding Corp.

HCREF-II Holding Corp.

HCREF-III Holding Corp.

HCREF-IV Holding Corp.

HCREF-IX Holding Corp.

HCREF-V Holding Corp.

HCREF-VI Holding Corp.

HCREF-VII Holding Corp.

HCREF-VIII Holding Corp.

HCREF-XI Holding Corp.

HCREF-XII Holding Corp.

HCREF-XIII Holding Corp.

HCREF-XIV Holding Corp.

HCREF-XV Holding Corp.

HCSLR Camelback Investors (Cayman), Ltd.

HCSLR Camelback, LLC

HCT Holdco 2 Ltd.

HCT Holdco 2, Ltd.

HE 41, LLC

HE Capital 232 Phase I Property, LLC

HE Capital 232 Phase I, LLC

HE Capital Asante, LLC

HE Capital Fox Trails, LLC

HE Capital KR, LLC

HE Capital, LLC

HE CLO Holdco, LLC

HE Mezz Fox Trails, LLC

HE Mezz KR, LLC

HE Peoria Place Property, LLC

HE Peoria Place, LLC

Heron Pointe Investors, LLC

Hewett's Island CLO I-R, Ltd.

HFP Asset Funding II, Ltd.

HFP Asset Funding III, Ltd.

HFP CDO Construction Corp.

HFP GP, LLC

HFRO Sub, LLC

Hibiscus HoldCo, LLC

Highland - First Foundation Income Fund

Highland 401(k) Plan

Highland 401K Plan

Highland Argentina Regional Opportunity Fund GP, LLC

Highland Argentina Regional Opportunity Fund, L.P.

Highland Argentina Regional Opportunity Fund, Ltd.

Highland Argentina Regional Opportunity Master Fund, L.P.

Highland Brasil, LLC

Highland Capital Brasil Gestora de Recursos *(fka Highland Brasilinvest Gestora de Recursos, LTDA; fka HBI Consultoria Empresarial, LTDA)*

Highland Capital Management (Singapore) Pte Ltd

Highland Capital Management AG

Highland Capital Management AG (Highland Capital Management SA) (Highland Capital Management Ltd)

Highland Capital Management Fund Advisors, L.P.

Highland Capital Management Fund Advisors, L.P. *(fka Pyxis Capital, L.P.)*

Highland Capital Management Korea Limited

Highland Capital Management Latin America, L.P.

Highland Capital Management LP Retirement Plan and Trust

Highland Capital Management Multi-Strategy Insurance Dedicated Fund, L.P.

Highland Capital Management Real Estate Holdings I, LLC

Highland Capital Management Real Estate Holdings II, LLC

Highland Capital Management Services, Inc.

Highland Capital Management, L.P.

Highland Capital Management, L.P. Charitable Fund

Highland Capital Management, L.P. Retirement Plan and Trust

Highland Capital Management, L.P., as trustee of Acis CMOA Trust and nominiee for and on behalf of Highland CLO Assets Holdings Limited

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominiee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, LP

Highland Capital Management, LP Charitable Fund

Highland Capital Multi-Strategy Fund, LP

Highland Capital of New York, Inc.

Highland Capital Special Allocation, LLC

Highland CDO Holding Company

Highland CDO Opportunity Fund GP, L.P.

Highland CDO Opportunity Fund, L.P.

Highland CDO Opportunity Fund, Ltd.

Highland CDO Opportunity GP, LLC

Highland CDO Opportunity Master Fund, L.P.

Highland CDO Trust

Highland CLO 2018-1, Ltd.

Highland CLO Assets Holdings Limited

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd. *(fka Acis Loan Funding, Ltd.)*

Highland CLO Gaming Holdings, LLC

Highland CLO Holdings Ltd.

Highland CLO Holdings, Ltd. (as of 12.19.17)

Highland CLO Management Ltd.

Highland CLO Trust

Highland Credit Opportunities CDO Asset Holdings GP, Ltd.

Highland Credit Opportunities CDO Asset Holdings, L.P.

Highland Credit Opportunities CDO Financing, LLC

Highland Credit Opportunities CDO, Ltd.

Highland Credit Opportunities Holding Corporation

Highland Credit Opportunities Japanese Feeder Sub-Trust

Highland Credit Opportunities Japanese Unit Trust (Third Party)

Highland Credit Strategies Fund, L.P.

Highland Credit Strategies Fund, Ltd.

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Master Fund, L.P.

Highland Dallas Foundation, Inc.

Highland Dynamic Income Fund GP, LLC

Highland Dynamic Income Fund GP, LLC *(fka Highland Capital Loan GP, LLC)*

Highland Dynamic Income Fund, L.P.

Highland Dynamic Income Fund, L.P. *(fka Highland Capital Loan Fund, L.P.)*

Highland Dynamic Income Fund, Ltd.

Highland Dynamic Income Fund, Ltd. *(fka Highland Loan Fund, Ltd.)*

Highland Dynamic Income Master Fund, L.P.

Highland Dynamic Income Master Fund, L.P. *(fka Highland Loan Master Fund, L.P.)*

Highland Employee Retention Assets LLC

Highland Energy Holdings, LLC

Highland Energy MLP Fund *(fka Highland Energy and Materials Fund)*

Highland Equity Focus Fund, L.P.

Highland ERA Management, LLC

Highland eSports Private Equity Fund

Highland Financial Corp.

Highland Financial Partners, L.P.

Highland Fixed Income Fund

Highland Flexible Income UCITS Fund

Highland Floating Rate Fund

Highland Floating Rate Opportunites Fund

Highland Floating Rate Opportunities Fund

Highland Fund Holdings, LLC

Highland Funds I

Highland Funds II

Highland Funds III

Highland GAF Chemical Holdings, LLC

Highland General Partner, LP

Highland Global Allocation Fund

Highland Global Allocation Fund
(fka Highland Global Allocation Fund II)

Highland GP Holdings, LLC

Highland HCF Advisor Ltd.

Highland HCF Advisor, Ltd., as Trustee for
and on behalf of Acis CLO Trust, as nominee
for and on behalf of Highland CLO Funding,
Ltd. (as of 3.29.18)

Highland Healthcare Equity Income and
Growth Fund

Highland iBoxx Senior Loan ETF

Highland Income Fund

Highland Income Fund  (fka Highland
Floating Rate Opportunities Fund)

Highland Kansas City Foundation, Inc.

Highland Latin America Consulting, Ltd.

Highland Latin America GP, LLC

Highland Latin America LP, Ltd.

Highland Latin America Trust

Highland Legacy Limited

Highland LF Chemical Holdings, LLC

Highland Loan Funding V, LLC

Highland Loan Funding V, Ltd.

Highland Long/Short Equity Fund

Highland Long/Short Healthcare Fund

Highland Marcal Holding, Inc.

Highland Merger Arbitrage Fund

Highland Multi Strategy Credit Fund GP, L.P.

Highland Multi Strategy Credit Fund GP, L.P.
(fka Highland Credit Opportunities CDO GP,
L.P.)

Highland Multi Strategy Credit Fund, L.P.

Highland Multi Strategy Credit Fund, L.P. (fka
Highland Credit Opportunities Fund, L.P., fka
Highland Credit Opportunities CDO, L.P.)

Highland Multi Strategy Credit Fund, Ltd.

Highland Multi Strategy Credit Fund, Ltd. (fka
Highland Credit Opportunities Fund, Ltd.)

Highland Multi Strategy Credit GP, LLC

Highland Multi Strategy Credit GP, LLC (fka
Highland Credit Opportunities CDO GP, LLC)

Highland Multi-Strategy Fund GP, LLC

Highland Multi-Strategy Fund GP, LP

Highland Multi-Strategy IDF GP, LLC

Highland Multi-Strategy Master Fund, L.P.

Highland Multi-Strategy Master Fund, LP

Highland Multi-Strategy Onshore Master
SubFund II, LLC

Highland Multi-Strategy Onshore Master
Subfund, LLC

Highland Opportunistic Credit Fund

Highland Park CDO 1, Ltd.

Highland Park CDO I, Ltd.

Highland Premier Growth Equity Fund

Highland Premium Energy & Materials Fund

Highland Prometheus Feeder Fund I, L.P.

Highland Prometheus Feeder Fund I, LP

Highland Prometheus Feeder Fund II, L.P.

Highland Prometheus Feeder Fund II, LP

Highland Prometheus Master Fund, L.P.

Highland Receivables Finance I, LLC

Highland Restoration Capital Partners GP,
LLC

Highland Restoration Capital Partners Master,
L.P.

Highland Restoration Capital Partners
Offshore, L.P.

Highland Restoration Capital Partners, L.P.

Highland Santa Barbara Foundation, Inc.

Highland Select Equity Fund GP, L.P.

Highland Select Equity Fund, L.P.

Highland Select Equity GP, LLC

Highland Select Equity Master Fund, L.P.

Highland Small-Cap Equity Fund

Highland Socially Responsible Equity Fund

Highland Socially Responsible Equity Fund
*(fka Highland Premier Growth Equity Fund)*

Highland Special Opportunities Holding Company

Highland SunBridge GP, LLC

Highland Tax-Exempt Fund

Highland TCI Holding Company, LLC

Highland Total Return Fund

Highland's Roads Land Holding Company, LLC

Hirst, Ltd.

HMCF PB Investors, LLC

HMx2 Investment Trust
(Matt McGraner)

Hockney, Ltd.

HRT North Atlanta, LLC

HRT Timber Creek, LLC

HRTBH North Atlanta, LLC

HRTBH Timber Creek, LLC

Huber Funding LLC

Hunter Mountain Investment Trust

HWS Investors Holdco, LLC

Internal Investors

Intertrust

James D. Dondero
Reese Avry Dondero
Jameson Drue Dondero

James Dondero

James Dondero and Mark Okada

James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Japan Trustee Services Bank, Ltd.

Jasper CLO, Ltd.

Jewelry Ventures I, LLC

JMIJM, LLC

Joanna E. Milne Irrevocable Trust dated Nov 25 1998 (third party)

John Honis

John L. Holt, Jr.

John R. Sears, Jr.

Karisopolis, LLC

Keelhaul LLC

KHM Interests, LLC (third party)

Kuilima Montalban Holdings, LLC

Kuilima Resort Holdco, LLC

KV Cameron Creek Owner, LLC

Lakes at Renaissance Park Apartments Investors, L.P.

Lakeside Lane, LLC

Landmark Battleground Park II, LLC

Lane Britain

Larry K. Anders

LAT Battleground Park, LLC

LAT Briley Parkway, LLC

Lautner, Ltd.

Leawood RE Holdings, LLC

Liberty Cayman Holdings, Ltd.

Liberty CLO Holdco, Ltd.

Liberty CLO, Ltd.

Liberty Sub, Ltd.

Long Short Equity Sub, LLC

Longhorn Credit Funding LLC

Longhorn Credit Funding LLC - A

Longhorn Credit Funding LLC - B

Longhorn Credit Funding LLC (LHB)

Longhorn Credit Funding, LLC

Lurin Real Estate Holdings V, LLC

Maple Avenue Holdings, LLC

MaplesFS Limited

Marc C. Manzo

Mark and Pam Okada Family Trust - Exempt Descendants' Trust

Mark and Pam Okada Family Trust - Exempt Trust #2

Mark and Pamela Okada Family Trust - Exempt Descendants' Trust

Mark and Pamela Okada Family Trust - Exempt Descendants' Trust #2

Mark and Pamela Okada Family Trust - Exempt Trust #2

Mark K. Okada

Mark Okada

002534

Mark Okada and Pam Okada
Mark Okada and Pam Okada, as joint owners
Mark Okada/Pamela Okada
Markham Fine Jewelers, L.P.
Markham Fine Jewelers, LP
Matt McGraner
Meritage Residential Partners, LLC
MGM Studios HoldCo, Ltd.
Michael Rossi
ML CLO XIX Sterling (Cayman), Ltd.
N/A
Nancy Dondero
NCI Apache Trail LLC
NCI Assets Holding Company LLC
NCI Country Club LLC
NCI Fort Worth Land LLC
NCI Front Beach Road LLC
NCI Minerals LLC
NCI Royse City Land LLC
NCI Stewart Creek LLC
NCI Storage, LLC
Neil Labatte
Neutra, Ltd.
New Jersey Tissue Company Holdco, LLC
*(fka Marcal Paper Mills Holding Company, LLC)*

NexAnnuity Holdings, Inc.
NexBank Capital Trust I
NexBank Capital, Inc.
NexBank Land Advisors, Inc.
NexBank Securities Inc.
NexBank Securities, Inc.

NexBank SSB
NexBank Title, Inc.
(dba NexVantage Title Services)
NexBank, SSB
NexPoint Advisors GP, LLC
NexPoint Advisors, L.P.
NexPoint Capital REIT, LLC
NexPoint Capital, Inc.
NexPoint Capital, Inc. *(fka NexPoint Capital, LLC)*

NexPoint CR F/H DST, LLC
NexPoint Credit Strategies Fund
NexPoint Discount Strategies Fund
*(fka NexPoint Discount Yield Fund)*

NexPoint DRIP
NexPoint Energy and Materials Opportunities
Fund *(fka NexPoint Energy Opportunities Fund)*

NexPoint Event-Driven Fund
*(fkaNexPoint Merger Arbitrage Fund)*

NexPoint Flamingo DST
NexPoint Flamingo Investment Co, LLC
NexPoint Flamingo Leaseco, LLC
NexPoint Flamingo Manager, LlC
NexPoint Flamingo Property Manager, LlC
NexPoint Healthcare Opportunities Fund
NexPoint Hospitality Trust
NexPoint Hospitality, Inc.
NexPoint Hospitality, LLC
NexPoint Insurance Distributors, LLC
NexPoint Insurance Solutions GP, LLC
NexPoint Insurance Solutions GP, LLC
*(fka Highland Capital Insurance Solutions GP, LLC)*

NexPoint Insurance Solutions, L.P.
*(fka Highland Capital Insurance Solutions, L.P.)*

NexPoint Latin American Opportunities Fund
NexPoint Legacy 22, LLC
NexPoint Lincoln Porte Equity, LLC
NexPoint Lincoln Porte Manager, LLC
NexPoint Lincoln Porte, LLC
*(fka NREA Lincoln Porte, LLC)*

NexPoint Multifamily Capital Trust, Inc.
NexPoint Multifamily Capital Trust, Inc.
*(fka NexPoint Multifamily Realty Trust, Inc., fka Highland Capital Realty Trust, Inc.)*

NexPoint Multifamily Operating Partnership, L.P.

NexPoint Peoria, LLC
NexPoint Polo Glen DST
NexPoint Polo Glen Holdings, LLC
NexPoint Polo Glen Investment Co, LLC

NexPoint Polo Glen Leaseco, LLC

NexPoint Polo Glen Manager, LLC

NexPoint RE Finance Advisor GP, LLC

NexPoint RE Finance Advisor, L.P.

NexPoint Real Estate Advisors GP, LLC

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors III, L.P.

NexPoint Real Estate Advisors IV, L.P.

NexPoint Real Estate Advisors V, L.P.

NexPoint Real Estate Advisors VI, L.P.

NexPoint Real Estate Advisors VII GP, LLC

NexPoint Real Estate Advisors VII, L.P.

NexPoint Real Estate Advisors VIII, L.P.

NexPoint Real Estate Advisors, L.P.

NexPoint Real Estate Capital, LLC

NexPoint Real Estate Capital, LLC *(fka Highland Real Estate Capital, LLC, fka Highland Multifamily Credit Fund, LLC)*

NexPoint Real Estate Finance OP GP, LLC

NexPoint Real Estate Finance Operating Partnership, L.P.

NexPoint Real Estate Finance, Inc.

NexPoint Real Estate Opportunities, LLC

NexPoint Real Estate Opportunities, LLC *(fka Freedom REIT LLC)*

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Strategies Fund

NexPoint Residential Trust Inc.

NexPoint Residential Trust Operating Partnership GP, LLC

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust, Inc.

NexPoint Securities, Inc. *(fka Highland Capital Funds Distributor, Inc.) (fka Pyxis Distributors, Inc.)*

NexPoint Strategic Income Fund *(fka NexPoint Opportunistic Credit Fund, fka NexPoint Distressed Strategies Fund)*

NexPoint Strategic Opportunities Fund

NexPoint Strategic Opportunities Fund *(fka NexPoint Credit Strategies Fund)*

NexPoint Texas Multifamily Portfolio DST *(fka NREA Southeast Portfolio Two, DST)*

NexPoint WLIF I Borrower, LLC

NexPoint WLIF I, LLC

NexPoint WLIF II Borrower, LLC

NexPoint WLIF II, LLC

NexPoint WLIF III Borrower, LLC

NexPoint WLIF III, LLC

NexPoint WLIF, LLC (Series I)

NexPoint WLIF, LLC (Series II)

NexPoint WLIF, LLC (Series III)

NexStrat LLC

NexVest, LLC

NexWash LLC

NFRO REIT Sub, LLC

NFRO TRS, LLC

NHF CCD, Inc.

NHT 2325 Stemmons, LLC

NHT Beaverton TRS, LLC *(fka NREA Hotel TRS, Inc.)*

NHT Beaverton, LLC

NHT Bend TRS, LLC

NHT Bend, LLC

NHT Destin TRS, LLC

NHT Destin, LLC

NHT DFW Portfolio, LLC

NHT Holdco, LLC

NHT Holdings, LLC

NHT Intermediary, LLC

NHT Nashville TRS, LLC

NHT Nashville, LLC

NHT Olympia TRS, LLC

NHT Olympia, LLC

NHT Operating Partnership GP, LLC

NHT Operating Partnership II, LLC

NHT Operating Partnership, LLC

NHT Salem, LLC

NHT SP Parent, LLC

NHT SP TRS, LLC

NHT SP, LLC

NHT Tigard TRS, LLC

NHT Tigard, LLC

NHT TRS, Inc.

NHT Uptown, LLC

NHT Vancouver TRS, LLC

NHT Vancouver, LLC

NLA Assets LLC

NMRT TRS, Inc.

NREA Adair DST Manager, LLC

NREA Adair Investment Co, LLC

NREA Adair Joint Venture, LLC

NREA Adair Leaseco Manager, LLC

NREA Adair Leaseco, LLC

NREA Adair Property Manager LLC

NREA Adair, DST

NREA Ashley Village Investors, LLC

NREA Cameron Creek Investors, LLC

NREA Cityplace Hue Investors, LLC

NREA Crossing Investors LLC

NREA Crossings Investors, LLC

NREA Crossings Ridgewood Coinvestment, LLC *(fka NREA Crossings Ridgewood Investors, LLC)*

NREA DST Holdings, LLC

NREA El Camino Investors, LLC

NREA Estates Inc.

NREA Estates Investment Co, LLC

NREA Estates Leaseco, LLC

NREA Estates Manager, LLC

NREA Estates Property Manager, LLC

NREA Estates, DST

NREA Gardens DST Manager LLC

NREA Gardens DST Manager, LLC

NREA Gardens Investment Co, LLC

NREA Gardens Leaseco Manager, LLC

NREA Gardens Leaseco, LLC

NREA Gardens Property Manager, LLC

NREA Gardens Springing LLC

NREA Gardens Springing Manager, LLC

NREA Gardens, DST

NREA Hidden Lake Investment Co, LLC

NREA Hue Investors, LLC

NREA Keystone Investors, LLC

NREA Meritage Inc.

NREA Meritage Investment Co, LLC

NREA Meritage Leaseco, LLC

NREA Meritage Manager, LLC

NREA Meritage Property Manager, LLC

NREA Meritage, DST

NREA Oaks Investors, LLC

NREA Retreat Investment Co, LLC

NREA Retreat Leaseco, LLC

NREA Retreat Manager, LLC

NREA Retreat Property Manager, LLC

NREA Retreat, DST

NREA SE MF Holdings LLC

NREA SE MF Holdings, LLC

NREA SE MF Investment Co, LLC

NREA SE MF Investment Co, LLC

NREA SE Multifamily LLC

NREA SE Multifamily, LLC

NREA SE One Property Manager, LLC

NREA SE Three Property Manager, LLC

NREA SE Two  Property Manager, LLC

NREA SE1 Andros Isles Leaseco, LLC

NREA SE1 Andros Isles Manager, LLC

NREA SE1 Andros Isles, DST
(Converted from DK Gateway Andros, LLC)

NREA SE1 Arborwalk Leaseco, LLC

NREA SE1 Arborwalk Manager, LLC

NREA SE1 Arborwalk, DST
(Converted from MAR Arborwalk, LLC)

NREA SE1 Towne Crossing Leaseco, LLC

NREA SE1 Towne Crossing Manager, LLC

NREA SE1 Towne Crossing, DST
(Converted from Apartment REIT Towne Crossing, LP)

NREA SE1 Walker Ranch Leaseco, LLC

NREA SE1 Walker Ranch Manager, LLC

NREA SE1 Walker Ranch, DST
(Converted from SOF Walker Ranch Owner, L.P.)

NREA SE2 Hidden Lake Leaseco, LLC

NREA SE2 Hidden Lake Manager, LLC
NREA SE2 Hidden Lake, DST
NREA SE2 Hidden Lake, DST
(Converted from SOF Hidden Lake SA Owner, L.P.)

NREA SE2 Vista Ridge Leaseco, LLC
NREA SE2 Vista Ridge Manager, LLC
NREA SE2 Vista Ridge, DST
NREA SE2 Vista Ridge, DST
(Converted from MAR Vista Ridge, L.P.)

NREA SE2 West Place Leaseco, LLC
NREA SE2 West Place Manager, LLC
NREA SE2 West Place, DST
(Converted from Landmark at West Place, LLC)

NREA SE3 Arboleda Leaseco, LLC
NREA SE3 Arboleda Manager, LLC
NREA SE3 Arboleda, DST
(Converted from G&E Apartment REIT Arboleda, LLC)

NREA SE3 Fairways Leaseco, LLC
NREA SE3 Fairways Manager, LLC
NREA SE3 Fairways, DST
(Converted from MAR Fairways, LLC)

NREA SE3 Grand Oasis Leaseco, LLC
NREA SE3 Grand Oasis Manager, LLC
NREA SE3 Grand Oasis, DST
(Converted from Landmark at Grand Oasis, LP)

NREA Southeast Portfolio One Manager, LLC
NREA Southeast Portfolio One, DST
NREA Southeast Portfolio One, DST
NREA Southeast Portfolio Three Manager, LLC
NREA Southeast Portfolio Three, DST
NREA Southeast Portfolio Three, DST
NREA Southeast Portfolio Two Manager, LLC
NREA Southeast Portfolio Two, DST
NREA Southeast Portfolio Two, LLC
NREA SOV Investors, LLC
NREA Uptown TRS, LLC
NREA VB I LLC
NREA VB II LLC

NREA VB III LLC
NREA VB IV LLC
NREA VB Pledgor I LLC
NREA VB Pledgor I, LLC
NREA VB Pledgor II LLC
NREA VB Pledgor II, LLC
NREA VB Pledgor III LLC
NREA VB Pledgor III, LLC
NREA VB Pledgor IV LLC
NREA VB Pledgor IV, LLC
NREA VB Pledgor V LLC
NREA VB Pledgor V, LLC
NREA VB Pledgor VI LLC
NREA VB Pledgor VI, LLC
NREA VB Pledgor VII LLC
NREA VB Pledgor VII, LLC
NREA VB SM, Inc.
NREA VB V LLC
NREA VB VI LLC
NREA VB VII LLC
NREA Vista Ridge Investment Co, LLC
NREC AR Investors, LLC
NREC BM Investors, LLC
NREC BP Investors, LLC
NREC Latitude Investors, LLC
NREC REIT Sub, Inc.
NREC TRS, Inc.
NREC WW Investors, LLC
NREF OP I Holdco, LLC
NREF OP I SubHoldco, LLC
NREF OP I, L.P.
NREF OP II Holdco, LLC
NREF OP II SubHoldco, LLC
NREF OP II, L.P.
NREF OP IV REIT Sub TRS, LLC
NREF OP IV REIT Sub, LLC
NREF OP IV, L.P.
NREO NW Hospitality Mezz, LLC
NREO NW Hospitality, LLC
NREO Perilune, LLC
NREO SAFStor Investors, LLC
NREO TRS, Inc.
NRESF REIT Sub, LLC

NXRT Abbington, LLC

NXRT Atera II, LLC

NXRT Atera, LLC

NXRT AZ2, LLC

NXRT Barrington Mill, LLC

NXRT Bayberry, LLC

NXRT Bella Solara, LLC

NXRT Bella Vista, LLC

NXRT Bloom, LLC

NXRT Brandywine GP I, LLC

NXRT Brandywine GP I, LLC

NXRT Brandywine GP II, LLC

NXRT Brandywine GP II, LLC

NXRT Brandywine LP, LLC

NXRT Brandywine LP, LLC

NXRT Brentwood Owner, LLC

NXRT Brentwood, LLC

NXRT Cedar Pointe Tenant, LLC

NXRT Cedar Pointe, LLC

NXRT Cityview, LLC

NXRT Cornerstone, LLC

NXRT Crestmont, LLC

NXRT Crestmont, LLC

NXRT Enclave, LLC

NXRT Glenview, LLC

NXRT H2 TRS, LLC

NXRT Heritage, LLC

NXRT Hollister TRS LLC

NXRT Hollister, LLC

NXRT LAS 3, LLC

NXRT Master Tenant, LLC

NXRT Nashville Residential, LLC

NXRT Nashville Residential, LLC *(fka Freedom Nashville Residential, LLC)*

NXRT North Dallas 3, LLC

NXRT Old Farm, LLC

NXRT Pembroke Owner, LLC

NXRT Pembroke, LLC

NXRT PHX 3, LLC

NXRT Radbourne Lake, LLC

NXRT Rockledge, LLC

NXRT Sabal Palms, LLC

NXRT SM, Inc.

NXRT Steeplechase, LLC

NXRT Stone Creek, LLC

NXRT Summers Landing GP, LLC

NXRT Summers Landing LP, LLC

NXRT Torreyana, LLC

NXRT Vanderbilt, LLC

NXRT West Place, LLC

NXRTBH AZ2, LLC

NXRTBH Barrington Mill Owner, LLC

NXRTBH Barrington Mill SM, Inc.

NXRTBH Barrington Mill, LLC

NXRTBH Bayberry, LLC

NXRTBH Cityview, LLC

NXRTBH Colonnade, LLC

NXRTBH Cornerstone Owner, LLC

NXRTBH Cornerstone SM, Inc.

NXRTBH Cornerstone, LLC

NXRTBH Dana Point SM, Inc.

NXRTBH Dana Point, LLC

NXRTBH Foothill SM, Inc.

NXRTBH Foothill, LLC

NXRTBH Heatherstone SM, Inc.

NXRTBH Heatherstone, LLC

NXRTBH Hollister Tenant, LLC

NXRTBH Hollister, LLC

NXRTBH Madera SM, Inc.

NXRTBH Madera, LLC

NXRTBH McMillan, LLC

NXRTBH North Dallas 3, LLC

NXRTBH Old Farm II, LLC

NXRTBH Old Farm Tenant, LLC

NXRTBH Old Farm, LLC

NXRTBH Radbourne Lake, LLC

NXRTBH Rockledge, LLC

NXRTBH Sabal Palms, LLC

NXRTBH Steeplechase, LLC (dba Southpoint Reserve at Stoney Creek)-VA

NXRTBH Stone Creek, LLC

NXRTBH Vanderbilt, LLC

NXRTBH Versailles SM, Inc.

NXRTBH Versailles, LLC

Oak Holdco, LLC

Oaks CGC, LLC

Okada Family Revocable Trust

Oldenburg, Ltd.

Pam Capital Funding GP Co. Ltd.

Pam Capital Funding, L.P.

PamCo Cayman Ltd.

Park West 1700 Valley View Holdco, LLC

Park West 2021 Valley View Holdco, LLC

Park West Holdco, LLC

Park West Portfolio Holdco, LLC

Participants of Highland 401K Plan

Patrick Willoughby-McCabe

PCMG Trading Partners XXIII, L.P.

PCMG Trading Partners XXIII, LP

PDK Toys Holdco, LLC

Pear Ridge Partners, LLC

Penant Management GP, LLC

Penant Management LP

PensionDanmark Holding A/S

PensionDanmark
Pensionsforsikringsaktieselskab

Peoria Place Development, LLC
(30% cash contributions - profit participation
only)

Perilune Aero Equity Holdings One, LLC

Perilune Aviation LLC

PetroCap Incentive Holdings III. L.P.

PetroCap Incentive Partners II GP, LLC

PetroCap Incentive Partners II, L.P.

PetroCap Incentive Partners III GP, LLC

PetroCap Incentive Partners III, LP

PetroCap Management Company LLC

PetroCap Partners II GP, LLC

PetroCap Partners II, L.P.

PetroCap Partners III GP, LLC

PetroCap Partners III, L.P.

Pharmacy Ventures I, LLC

Pharmacy Ventures II, LLC

Pollack, Ltd.

Powderhorn, LLC

PWM1 Holdings, LLC

PWM1, LLC

Quest IRA, Inc FBO Jennifer G. Terry, IRA
#1467511

Quest, IRA, Inc. FBO Joshua N. Terry, IRA
#1467711

RADCO - Bay Meadows, LLLP

RADCO - Bay Park, LLLP

RADCO NREC Bay Meadows Holdings, LLC

RADCO NREC Bay Park Holdings, LLC

Ramarim, LLC

Rand Advisors Series I Insurance Fund

Rand Advisors Series II Insurance Fund

Rand Advisors, LLC

Rand PE Fund I, L.P.

Rand PE Fund I, L.P. - Series 1

Rand PE Fund Management, LLC

Rand PE Holdco, LLC

Realdania

Red River CLO, Ltd.

Red River Investors Corp.

Riverview Partners SC, LLC

Rockwall CDO II Ltd.

Rockwall CDO II, Ltd.

Rockwall CDO, Ltd.

Rockwall Investors Corp.

Rothko, Ltd.

RTT Bella Solara, LLC

RTT Bloom, LLC

RTT Financial, Inc.

RTT Hollister, LLC

RTT Rockledge, LLC

RTT Torreyana, LLC

SALI Fund Partners, LLC

San Diego County Employees Retirement
Association

Sandstone Pasadena Apartments, LLC

Sandstone Pasadena, LLC

Santa Barbara Foundation (third party)

Saturn Oil & Gas LLC

SBC Master Pension Trust

Scott Matthew Siekielski

SE Battleground Park, LLC

SE Battleground Park, LLC

SE Glenview, LLC

SE Governors Green Holdings, L.L.C.

SE Governors Green Holdings, L.L.C.
*(fka SCG Atlas Governors Green Holdings, L.L.C.)*

SE Governors Green I, LLC

SE Governors Green II, LLC

SE Governors Green II, LLC

SE Governors Green REIT, L.L.C.

SE Governors Green REIT, L.L.C.
*(fka SCG Atlas Governors Green REIT, L.L.C.)*

SE Governors Green, LLC
*(fka SCG Atlas Governors Green, L.L.C.)*

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles LP, LLC

SE Gulfstream Isles LP, LLC

SE Heights at Olde Towne, LLC

SE Heights at Olde Towne, LLC

SE Lakes at Renaissance Park GP I, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park LP, LLC

SE Lakes at Renaissance Park LP, LLC

SE Multifamily Holdings LLC

SE Multifamily Holdings, LLC

SE Multifamily REIT Holdings LLC

SE Myrtles at Olde Towne, LLC

SE Myrtles at Olde Towne, LLC

SE Oak Mill I Holdings, LLC

SE Oak Mill I Holdings, LLC *(fka SCG Atlas Oak Mill I Holdings, L.L.C.)*

SE Oak Mill I Owner, LLC *(fka SCG Atlas Oak Mill I, L.L.C.)*

SE Oak Mill I REIT, LLC

SE Oak Mill I REIT, LLC *(fka SCG Atlas Oak Mill I REIT, L.L.C.)*

SE Oak Mill I, LLC

SE Oak Mill I, LLC

SE Oak Mill II Holdings, LLC

SE Oak Mill II Holdings, LLC *(fka SCG Atlas Oak Mill II Holdings, L.L.C.)*

SE Oak Mill II Owner, LLC *(fka SCG Atlas Oak Mill II, L.L.C.)*

SE Oak Mill II REIT, LLC

SE Oak Mill II REIT, LLC *(fka SCG Atlas Oak Mill II REIT, L.L.C.)*

SE Oak Mill II, LLC

SE Oak Mill II, LLC

SE Quail Landing, LLC

SE River Walk, LLC

SE Riverwalk, LLC

SE SM, Inc.

SE Stoney Ridge Holdings, L.L.C. *(fka SCG Atlas Stoney Ridge Holdings, L.L.C.)*

SE Stoney Ridge Holdings, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge REIT, L.L.C. *(fka SCG Atlas Stoney Ridge REIT, L.L.C.)*

SE Stoney Ridge REIT, LLC

SE Stoney Ridge, LLC *(fka SCG Atlas Stoney Ridge, L.L.C.)*

SE Victoria Park, LLC

SE Victoria Park, LLC

Sentinel Re Holdings, Ltd.

Sentinel Reinsurance Ltd.

SFH1, LLC

SFR WLIF I, LLC
*(fka NexPoint WLIF I, LLC)*

SFR WLIF II, LLC
*(NexPoint WLIF II, LLC)*

SFR WLIF III, LLC
*(NexPoint WLIF III, LLC)*

SFR WLIF Manager, LLC
*(NexPoint WLIF Manager, LLC)*

SFR WLIF, LLC
*(NexPoint WLIF, LLC)*

SFR WLIF, LLC Series I

SFR WLIF, LLC Series II

SFR WLIF, LLC Series III

SH Castle BioSciences, LLC

Small Cap Equity Sub, LLC

Socially Responsible Equity Sub, LLC

SOF Brandywine I Owner, L.P.

SOF Brandywine II Owner, L.P.

SOF-X GS Owner, L.P.

Southfork Cayman Holdings, Ltd.

Southfork CLO, Ltd.

Specialty Financial Products Designated Activity Company *(fka Specialty Financial Products Limited)*

Spiritus Life, Inc.

SRL Sponsor LLC

SRL Whisperwod LLC

SRL Whisperwood Member LLC

SRL Whisperwood Venture LLC

SSB Assets LLC

Starck, Ltd.

Stemmons Hospitality, LLC

Steve Shin

Stonebridge Capital, Inc.

Stonebridge-Highland Healthcare Private Equity Fund

Strand Advisors III, Inc.

Strand Advisors IV, LLC

Strand Advisors IX, LLC

Strand Advisors V, LLC

Strand Advisors XIII, LLC

Strand Advisors XVI, Inc.

Strand Advisors, Inc.

Stratford CLO, Ltd.

Summers Landing Apartment Investors, L.P.

Term Loan B
(10% cash contributions - profit participation only)

The Dallas Foundation

The Dallas Foundation (third party)

The Dondero Insurance Rabbi Trust

The Dugaboy Investment Trust

The Dugaboy Investment Trust U/T/A Dated Nov 15, 2010

The Get Good Non-Exempt Trust No. 1

The Get Good Non-Exempt Trust No. 2

The Get Good Trust

The Mark and Pamela Okada Family Trust - Exempt Descendants' Trust

The Mark and Pamela Okada Family Trust - Exempt Trust #2

The Ohio State Life Insurance Company

The Okada Family Foundation, Inc.

The Okada Insurance Rabbi Trust

The SLHC Trust

The Trustees of Columbia University in the City of New York

The Twentysix Investment Trust
(Third Party Investor)

Thomas A. Neville

Thread 55, LLC

Tihany, Ltd.

Todd Travers

Tranquility Lake Apartments Investors, L.P.

Tuscany Acquisition, LLC

Uptown at Cityplace Condominium Association, Inc.

US Gaming OpCo, LLC

US Gaming SPV, LLC

US Gaming, LLC

Valhalla CLO, Ltd.

VB GP LLC

VB Holding, LLC

VB One, LLC

VB OP Holdings LLC

VBAnnex C GP, LLC

VBAnnex C Ohio, LLC

VBAnnex C, LP

Ventoux Capital, LLC
(Matt Goetz)

VineBrook Annex B, L.P.

VineBrook Annex I, L.P.

VineBrook Homes Merger Sub II LLC

VineBrook Homes Merger Sub LLC

VineBrook Homes OP GP, LLC

VineBrook Homes Operating Partnership, L.P.

VineBrook Homes Trust, Inc.

VineBrook Partners I, L.P.

VineBrook Partners II, L.P.

VineBrook Properties, LLC

Virginia Retirement System

Vizcaya Investment, LLC

Wake LV Holdings II, Ltd.

Wake LV Holdings, Ltd.

Walter Holdco GP, LLC

Walter Holdco I, Ltd.

Walter Holdco, L.P.

Warhol, Ltd.

Warren Chang

Westchester CLO, Ltd.

William L. Britain

Wright Ltd.

Wright, Ltd.

Yellow Metal Merchants, Inc.

002543

# EXHIBIT "F"

002544

**[DRAFT – SUBJECT TO BANKRUPTCY COURT APPROVAL OF DEBTOR'S PLAN]**

### Second Amended and Restated Loan Agreement

This Second Amended and Restated Loan Agreement (the "Agreement" and/or Loan Agreement") dated as of [_____], by and between Frontier State Bank, an Oklahoma banking corporation, 5100 South I-35 Service Road, Oklahoma City, OK 73129 ("Bank"), and the Borrower described below.

### RECITALS

WHEREAS, the Bank provided a loan to the Borrower under that certain loan agreement, dated as of August 17, 2015, between the Borrower and the Bank, which was subsequently amended and restated on March 30, 2018 (the "Original Loan Agreement");

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11;

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");[1]

WHEREAS, on [_____], 2021, the Bankruptcy Court approved the Plan (the "Confirmation Order"); and

WHEREAS, pursuant to the terms of the Plan and the Confirmation Order, the Borrower and the Bank have agreed to further amend and restate the Original Loan Agreement in the form hereof and for the Loan to be binding on the Borrower as reorganized pursuant to the Plan and Confirmation Order.

NOW THEREFORE, in consideration of the Loan or Loans (the "Loan") described below and the mutual covenants and agreements contained herein and in the Plan, and intending to be legally bound hereby, Bank and Borrower agree, and the Original Loan Agreement is hereby amended, restated and superseded in its entirety, as follows:

1. **DEFINITIONS AND REFERENCE TERMS.** In addition to any other terms defined herein, the following terms shall have the meaning set forth with respect thereto:

    A.    **Borrower:** Highland Capital Management, L.P., a Delaware limited partnership.

    B.    **Borrower's Address:** 300 Crescent Court, Suite 700, Dallas, Texas 75201.

    C.    **Current Assets.** Current Assets means the aggregate amount of all of Borrower's assets which would, in accordance with GAAP, properly be defined as current assets.

    D.    **Current Liabilities.** Current Liabilities means the aggregate amount of all current liabilities as determined in accordance with GAAP, but in any event shall include all liabilities except those having a maturity date which is more than one year from the date as of which such computation is being made.

    E.    **Loan.** Any loan described in Section 2 hereof.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

002545

F. **Loan Documents**. Loan Documents means this Loan Agreement and any and all promissory notes executed by Borrower in favor of Bank and all other documents, instruments, security and pledge agreements, certificates and agreements executed and/or delivered by Borrower or third parties in connection with any Loan.

G. **Accounting Terms**. All accounting terms not specifically defined or specified herein shall have the meanings generally attributed to such terms under generally accepted accounting principles ("GAAP"), as in effect from time to time, consistently applied, with respect to the financial statements referenced in Section 3.I. hereof.

## 2. **LOANS AND COLLATERAL**.

A. **Loan**. Bank, on or about March 30, 2018, previously made a loan to Borrower under the Original Loan Agreement in the aggregate principal amount of Seven Million Eight Hundred Seventy-Nine Thousand Six Hundred Eighty-Eight and No/100's Dollars (US $7,879,688.00), evidenced by a promissory note (the "Original Promissory Note") dated as of March 30, 2018, and security and pledge agreement and related documents dated as of August 17, 2015. Under the Original Loan Agreement and Loan Documents, there is currently due and owing from Borrower to Bank as of the date of this Agreement the principal sum of Five Million One Hundred Ninety-Four Thousand Six Hundred Fifty-One and 50/100's Dollars (US $5,194,651.50), plus accrued and unpaid interest through the date of this Agreement (the "Loan"). The obligation to repay the Loan is evidenced by a promissory note dated as of even date herewith (such promissory note, which hereby amends, restates and supersedes the Original Promissory Note in its entirety, together with any and all renewals, extensions or rearrangements thereof being hereafter collectively referred to as the "Note"). The Note shall have an interest rate of 5.25%, per annum with a maturity date of December 31, 2022 (the "Maturity Date"), with repayment terms of accrued interest only payable quarterly commencing on June 30, 2021, and on each subsequent September 30, December 30, March 30, and June 30 until the Maturity Date, whereupon all outstanding principal, interest, charges and expenses shall be paid in full by the Borrower. Borrower, as a condition precedent to the Loan and as set forth in the Plan and Confirmation Order, shall pay to Bank all accrued interest due and payable under the Original Promissory Note on the Effective Date of the Plan.

All costs incurred by the Bank, including all legal opinions and documentation costs, necessary to fully protect the interests of the Bank shall be paid by the Borrower at the time of closing, subject to the limitations set forth in Section 11.

The loan may be prepaid at any time without prepayment penalty.

B. **Collateral.** The collateral pledged to secure the Loan is as reflected in that certain Security and Pledge Agreement dated as of August 17, 2015 between Bank and Borrower (the "Security Agreement"), and shall be and remain as of the date hereof as follows: 171,724 shares of voting common stock of MGM Holdings, Inc. with a par value of $0.01 per share (the "Shares"). Borrower, by executing below, ratifies, confirms and approves the prior grant of the Collateral security position in and to the Shares to Bank as reflected in the Security Agreement described herein, and acknowledges and agrees that such Shares, and all Collateral perfection documents, described in the Security Agreement and in this Agreement remain as Collateral for the Loan, and in full force and effect. Notwithstanding anything herein or in the Security Agreement to the contrary, nothing will prevent the Borrower from selling the Shares so long as the proceeds from such sale are applied pursuant to Section 3.B hereof.

C. **Loan to Value Ratio:** Borrower represents and warrants to the Bank that at the time of execution of this Agreement, the actual value of the Collateral pledged and in which the Bank has a security interest is [$_____]. Borrower agrees that during the term of the Loan or any extended term of the Loan, that the outstanding principal balance of the Loan shall not be more than fifty percent (50%) of the actual value of the Collateral pledged (the "Loan to Value Ratio") as established on the last day of each calendar month that the Loan is in existence using the marks for the Collateral stated by Markit Partners. Failure by Borrower to maintain the required Loan to Value Ratio shall be an Event of Default if left uncured for a period of ten (10) business days following the end of each calendar month.

## 3. **PREPAYMENT**.

A. **Principal Paydown.** If the Loan is not paid in full on or before December 31, 2021, Borrower will pay the Bank an amount equal to fifty percent of the then outstanding principal amount on the Loan by 5:00 p.m. prevailing Dallas time on December 31, 2021.

B. **Sale of Shares.** If Borrower sells all or any portion of the Shares prior to the Maturity Date, the Borrower will use the proceeds of such sale to prepay the Loan. Borrower will make any prepayment pursuant to this Section 3.B

002546

within five business days of the closing of the sale of any Shares. Any such prepayment will be applied first to principal and then to any accrued but unpaid interest. Such prepayment will not advance any payment dates.

        C.    **No Prepayment Penalty.** This Loan may be prepaid in full at any time without a prepayment penalty.

**4.**    **EFFECTIVE DATE.** Each of Borrower and the Bank acknowledge and agree that this Agreement is being executed pursuant to the Plan and the Confirmation Order and that the obligations of each party hereunder are conditioned in all respects on the occurrence of the Effective Date of the Plan. As set forth in the Plan, except as expressly set forth herein, the terms, conditions, and protections set forth in the Security Agreement and the Bank's security interests in the Shares are not affected by the terms of the Plan or the Confirmation Order and are, and remain, in full force and effect.

**5.**    **REPRESENTATIONS AND WARRANTIES**. Borrower hereby represents and warrants to Bank as follows:

        A.    **Good Standing.** Borrower is a Delaware limited partnership and is duly organized, validly existing and in good standing under the laws of the State of Delaware and has the power and authority to own its property and to carry on its business in each jurisdiction in which Borrower does business, including, but not limited to, the State of Oklahoma.

        B.    **Authority and Compliance.** Subject to the Plan and the Confirmation Order, Borrower has full power and authority to execute and deliver the Loan Documents and to incur and perform the obligations provided for therein, all of which have been duly authorized by all proper and necessary action of the appropriate governing body of Borrower. No consent or approval of any public authority or other third party is required as a condition to the validity of any Loan Document, and Borrower is in compliance with all laws and regulatory requirements to which it is subject.

        C.    **Binding Agreement.** This Agreement and the other Loan Documents executed by Borrower constitutes valid and legally binding obligations of Borrower, enforceable in accordance with their terms.

        D.    **Litigation.** There is no proceeding against Borrower pending or, to the knowledge of Borrower, threatened before any court or governmental authority, agency or arbitration authority, in each case, that could reasonably be expected to have a material adverse effect on the Borrower's ability to fulfill its obligations under the Loan Documents, except as disclosed to Bank in writing and acknowledged by Bank prior to the date of this Agreement.

        E.    **No Conflicting Agreements**. Borrower is not a party to any charter, bylaw, stock provision, partnership agreement or other document pertaining to the organization, power or authority of Borrower or any existing agreement, mortgage, indenture or contract that conflicts with or in any way prevents the execution, delivery or carrying out of the terms of this Agreement and the other Loan Documents.

        F.    **Ownership of Assets.** Borrower has good title to its assets, and its assets are free and clear of liens, except those granted to Bank and as disclosed to Bank.

        G.    **Taxes.** All taxes and assessments due and payable by Borrower have been paid or are being contested in good faith by appropriate proceedings and the Borrower has filed all tax returns which it is required to file.

        H.    **Financial Statements**. The financial statements of Borrower heretofore delivered to Bank have been prepared in accordance with GAAP applied on a consistent basis throughout the period involved and fairly present Borrower's financial condition as of the date or dates thereof, and there has been no material adverse change in Borrower's financial condition or operations since the date thereof. All factual information furnished by Borrower to Bank in connection with this Agreement and the other Loan Documents is and will be accurate and complete on the date as of which such information is delivered to Bank and is not and will not be incomplete by the omission of any material fact necessary to make such information not misleading.

        I.    **Place of Business** . Borrower's chief executive offices are located at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

        J.    **Continuation of Representations and Warranties.** All representations and warranties made under this Agreement shall be deemed to be made as of the date of any advance under any Loan.

002547

6.  **AFFIRMATIVE COVENANTS**. Until full payment and performance of all obligations of Borrower under the Loan Documents, Borrower shall, unless Bank consents otherwise in writing (and without limiting any requirement of any other Loan Document):

      A.    **Financial Statements and Other Information**. Maintain a system of accounting satisfactory to Bank and in accordance with GAAP applied on a consistent basis throughout the period involved, permit Bank's officers or authorized representatives to visit and inspect Borrower's books of account and other records at such reasonable times and as reasonably often as Bank may desire, but not more than twice per calendar year and only following reasonable prior written notice to Borrower, and pay the reasonable documented fees and disbursements of any accountants or other agents of Bank selected by Bank for the foregoing purposes. Unless written notice of another location is given to Bank, Borrower's books and records shall be located at Borrower's chief executive office set forth above. All financial statements called for below shall be prepared in form and content reasonably acceptable to Bank and by independent certified public accountants reasonably acceptable to Bank.

In addition, Borrower shall:

      i.    Furnish to Bank certified financial statements of Borrower for each fiscal year of Borrower, within one hundred eighty (180) days after the close of each such fiscal year. Further, Borrower shall provide to Bank Borrower prepared financial statements for each fiscal year within ninety (90) after the close of each such fiscal year.

      ii.    Furnish to Bank promptly such additional information, reports and statements respecting the business operations and financial condition of Borrower, from time to time, as Bank may reasonably request.

      B.    **Compliance**. Comply with all material laws, regulations and governmental requirements including, without limitation, environmental laws applicable to it or to any of its property, business operations and transactions.

      C.    **Adverse Conditions or Events**. Promptly advise Bank in writing of (i) any condition, event or act which comes to its attention that may materially adversely affect Borrower's financial condition or operations or Bank's rights under the Loan Documents, (ii) any litigation filed by or against Borrower that is reasonably likely to have a material adverse effect, and, (iii) any event that has occurred that would constitute an event of default under any Loan Documents.

      D.    **Taxes and Other Obligations**. Pay all of its taxes, assessments and other obligations, including, but not limited to taxes, costs or other expenses arising out of this transaction, as the same become due and payable, except to the extent the same are being contested in good faith by appropriate proceedings in a diligent manner.

      E.    **Maintenance**. Maintain all of its tangible property in good condition and repair and make all necessary replacements thereof, and preserve and maintain all licenses, trademarks, privileges, permits, franchises, certificates and the like necessary for the operation of its business.

7.  **NEGATIVE COVENANTS**. Until full payment and performance of all obligations of Borrower under the Loan Documents, Borrower shall not, without the prior written consent of Bank (and without limiting any requirement of any other Loan Documents):

      A.    **Transfer of Assets or Control.** Sell, lease, assign or otherwise dispose of or transfer the Shares unless such sale complies with the terms of the Agreement.

      B.    **Liens.** Grant, suffer or permit any contractual or noncontractual lien on or security interest in the Shares.

8.  **DEFAULT**. Borrower shall be in default under this Agreement and under each of the other Loan Documents if it shall default in the payment of any amounts due and owing under the Loan or should it fail to timely and properly observe, keep or perform any term, covenant, agreement or condition in any Loan Document or in any other loan agreement, promissory note, security agreement, deed of trust, deed to secure debt, mortgage, pledge, assignment or other contract securing or evidencing payment of any indebtedness of Borrower to Bank. Any default not cured within ten (10) business days thereof shall be considered an "Event of Default".

4

002548

9. **REMEDIES UPON DEFAULT**. If an Event of Default shall occur, Bank shall have all rights, powers and remedies available under each of the Loan Documents as well as all rights and remedies available at law or in equity.

10. **NOTICES**. All notices, requests or demands which any party is required or may desire to give to any other party under any provision of this Agreement must be in writing delivered to the other party at the following address:

Borrower: Highland Capital Management, L.P.
Attention: [_____]
300 Crescent Court, Suite 700
Dallas, Texas 75201

Bank:    Frontier State Bank
Attention: Mr. Steve Elliott
5100 South I-35 Service Road
Oklahoma City, Oklahoma 73129

or to such other address as any party may designate by written notice to the other party. Each such notice, request and demand shall be deemed given or made as follows:

A.    If sent by mail, upon the earlier of the date of receipt or five (5) days after deposit in the U.S. Mail, first class postage prepaid;

B.    If sent by any other means, upon delivery.

11. **COSTS, EXPENSES AND ATTORNEYS' FEES**. On the Effective Date of the Plan, Borrower shall promptly pay to Bank the full amount of all costs and expenses, including reasonable documented attorneys' fees (to include outside counsel fees), incurred by Bank in connection with (a) negotiation and preparation of this Agreement and each of the Loan Documents, and (b) all other reasonable and documented costs and attorneys' fees incurred by Bank for which Borrower is obligated to reimburse Bank in accordance with the Terms of the Loan Documents; provided such attorneys' fees shall be reimbursable only upon submission to Borrower of a detailed invoice from outside counsel.

12. **MISCELLANEOUS**. Borrower and Bank further covenant and agree as follows, without limiting any requirement of any other Loan Document:

A.    **Cumulative Rights and No Waiver**. Each and every right granted to Bank under any Loan Document, or allowed it by law or equity shall be cumulative of each other and may be exercised in addition to any and all other rights of Bank, and no delay in exercising any right shall operate as a waiver thereof, nor shall any single or partial exercise by Bank of any right preclude any other or future exercise thereof or the exercise of any other right. Borrower expressly waives any presentment, demand, protest, or other notice of any kind, including but not limited to notice of intent to accelerate and notice of acceleration. No notice to or demand on Borrower in any case shall, of itself, entitle Borrower to any other or future notice or demand in similar or other circumstances.

B.    **Applicable Law**. This Loan Agreement and the rights and obligations of the parties hereunder shall be deemed to have been made in the State of Oklahoma at Bank's address indicated at the beginning of this Loan Agreement and shall be governed by, and construed in accordance with, the laws of the State of Oklahoma, and is performable in the City and County of Oklahoma at the Bank's address indicated in the Notice above stated.

C.    **Amendment**. No modification, consent, amendment or waiver of any provision of this Loan Agreement, nor consent to any departure by Borrower therefrom, shall be effective unless the same shall be in writing and signed by an officer of Bank, and then shall be effective only in the specified instance and for the purpose for which given. This Loan Agreement is binding upon Borrower, its successors and assigns, and inures to the benefit of Bank, its successors and assigns; however, no assignment or other transfer of Borrower's rights or obligations hereunder shall be made or be effective without Bank's prior written consent, nor shall it relieve Borrower of any obligations hereunder. There is no third party beneficiary of this Loan Agreement.

002549

D.    **Documents.** All documents, certificates and other items required under this Loan Agreement to be executed and/or delivered to Bank shall be in form and content reasonably satisfactory to Bank and its counsel.

E.    **Partial Invalidity.** The unenforceability or invalidity of any provision of this Loan Agreement shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of any Loan Document to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

F.    **Indemnification.** Notwithstanding anything to the contrary contained in Section 12(G), Borrower shall indemnify, defend and hold Bank and its successors and assigns harmless from and against any and all claims, demands, suits, losses, damages, assessments, fines, penalties, costs or other expenses (including reasonable attorneys' fees and court costs) arising from or in any way related to any of the transactions contemplated hereby.

G.    **Survivability.** All covenants, agreements, representations and warranties made herein or in the other Loan Documents shall survive the making of the Loan and shall continue in full force and effect so long as the Loan is outstanding.

13.    ARBITRATION. ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG THE PARTIES HERETO INCLUDING BUT NOT LIMITED TO THOSE ARISING OUT OF OR RELATING TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT OR ANY RELATED INSTRUMENTS, AGREEMENTS OR DOCUMENTS, INCLUDING ANY CLAIM BASED ON OR ARISING FROM AN ALLEGED TORT, SHALL BE DETERMINED BY BINDING ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT (OR IF NOT APPLICABLE, THE APPLICABLE STATE LAW), THE RULES OF PRACTICE AND PROCEDURE FOR THE ARBITRATION OF COMMERCIAL DISPUTES OF AMERICAN ARBITRATION ASSOCIATION OR ANY SUCCESSOR THEREOF AND THE "SPECIAL RULES" SET FORTH BELOW. IN THE EVENT OF ANY INCONSISTENCY, THE SPECIAL RULES SHALL CONTROL. JUDGMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. ANY PARTY TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT MAY BRING AN ACTION, INCLUDING A SUMMARY OR EXPEDITED PROCEEDING, TO COMPEL ARBITRATION OF ANY CONTROVERSY OR CLAIM TO WHICH THIS AGREEMENT APPLIES IN ANY COURT HAVING JURISDICTION OVER SUCH ACTION.

A.    SPECIAL RULES. THE ARBITRATION SHALL BE CONDUCTED IN OKLAHOMA COUNTY, OKLAHOMA AND ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION WHO WILL APPOINT AN ARBITRATOR ALL ARBITRATION HEARINGS WILL BE COMMENCED WITHIN 90 DAYS OF THE DEMAND FOR ARBITRATION; FURTHER, THE ARBITRATOR SHALL ONLY, UPON A SHOWING OF CAUSE, BE PERMITTED TO EXTEND THE COMMENCEMENT OF SUCH HEARING FOR UP TO AN ADDITIONAL 60 DAYS.

B.    RESERVATION OF RIGHTS. NOTHING IN THIS ARBITRATION PROVISION SHALL BE DEEMED TO (I) LIMIT THE APPLICABILITY OF ANY OTHERWISE APPLICABLE STATUTES OF LIMITATION OR REPOSE AND ANY WAIVERS CONTAINED IN THIS INSTRUMENT, AGREEMENT OR DOCUMENT; OR (II) BE A WAIVER BY BANK OF THE PROTECTION AFFORDED TO IT BY 12 U.S.C. SEC. 91 OR ANY SUBSTANTIALLY EQUIVALENT STATE LAW; OR (III) LIMIT THE RIGHT OF BANK HERETO (A) TO EXERCISE SELF HELP REMEDIES SUCH AS (BUT NOT LIMITED TO) SETOFF, OR (B) TO FORECLOSE AGAINST ANY REAL OR PERSONAL PROPERTY COLLATERAL, OR (C) TO OBTAIN FROM A COURT PROVISIONAL OR ANCILLARY REMEDIES SUCH AS (BUT NOT LIMITED TO) INJUNCTIVE RELIEF, WRIT OF POSSESSION OR THE APPOINTMENT OF A RECEIVER. BANK MAY EXERCISE SUCH SELF HELP RIGHTS, FORECLOSE UPON SUCH PROPERTY, OR OBTAIN SUCH PROVISIONAL OR ANCILLARY REMEDIES BEFORE, DURING OR AFTER THE PENDENCY OF ANY ARBITRATION PROCEEDING BROUGHT PURSUANT TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT. NEITHER THIS EXERCISE OF SELF HELP REMEDIES NOR THE INSTITUTION OR MAINTENANCE OF AN ACTION FOR FORECLOSURE OR PROVISIONAL OR ANCILLARY REMEDIES SHALL CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY, INCLUDING THE CLAIMANT IN ANY SUCH ACTION, TO ARBITRATE THE MERITS OF THE CONTROVERSY OR CLAIM OCCASIONING RESORT TO SUCH REMEDIES.

14.    NOTICE OF FINAL AGREEMENT. THIS WRITTEN LOAN AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. BORROWER AGREES THAT ANY TERMS OF THE LOAN DOCUMENTS NOT SPECIFICALLY MODIFIED BY THIS SECOND AMENDED AND RESTATED LOAN AGREEMENT REMAIN IN FULL FORCE AND EFFECT, INCLUDING, BUT NOT LIMITED TO, THAT CERTAIN SECURITY AND PLEDGE AGREEMENT

002550

BETWEEN BANK AND BORROWER DATED AS OF AUGUST 17, 2015, AND BORROWER AND BANK, BY EXECUTING BELOW, HEREBY RATIFY, CONFIRM AND APPROVE ALL TERMS OF ANY AND ALL CURRENT AND PREVIOUS LOAN DOCUMENTS BETWEEN BORROWER AND BANK NOT SPECIFICALLY MODIFIED BY THIS SECOND AMENDED AND RESTATED LOAN AGREEMENT. BORROWER ACKNOWLEDGES BANK'S COMPLIANCE IN EVERY RESPECT OF ALL OF BANK'S PRIOR OBLIGATIONS UNDER THE ORIGINAL LOAN AGREEMENT AND RELATED DOCUMENTS, AND HEREBY RELEASES BANK FROM ANY AND ALL CLAIMS AS OF THE DATE OF EXECUTION OF THIS AGREEMENT. NOTHING CONTAINED IN THIS SECOND AMENDED AND RESTATED LOAN AGREEMENT SHALL BE CONSTRUED OR ASSERTED BY ANY PARTY HERETO AS A NOVATION IN ANY EVENT.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their duly authorized representatives as of the date first above written.

BORROWER:

HIGHLAND CAPITAL MANAGEMENT, L.P.                    BANK: FRONTIER STATE BANK

By:_____                 By:_____
Name:_____                 Name:_____
Title:_____                Title:_____

7

002551

### [DRAFT – SUBJECT TO BANKRUPTCY COURT APPROVAL OF DEBTOR'S PLAN]

**Promissory Note**

| Bank: | Borrower: |
|---|---|
| Frontier State Bank<br>5100 South I-35 Service Road.<br>Oklahoma City, Oklahoma 73129 | Highland Capital Management, L.P.<br>300 Crescent Court, Suite 700<br>Dallas, Texas 75201 |

FOR VALUE RECEIVED, and executed on this ___ day of ____, 2021, the undersigned Borrower unconditionally promises to pay to the order of Frontier State Bank ("Bank"), its successors and assigns, without setoff, at its offices indicated at the beginning of this Promissory Note (the "Note"), or at such other place as may be designated by Bank, the principal amount of Five Million One Hundred Ninety-Four Thousand Six Hundred Fifty-One and 50/100's Dollars (US $5,194,651.50), together with interest computed daily on the outstanding principal balance hereunder, at an annual interest rate, and in accordance with the payment schedule, indicated below.

This Note is being executed pursuant to the terms of that certain Second Amended and Restated Loan Agreement, dated as of even date herewith, by and between Bank and Borrower (the "Loan Agreement"). All capitalized terms used but not defined herein shall have the meanings given to them in the Loan Agreement.

This Note supersedes and replaces any all previous promissory notes executed by Borrower in favor of Bank, including the Original Promissory Note.

1.    **Rate.** The Rate shall be 5.25% per annum. Notwithstanding any provision of this Note, Bank does not intend to charge and Borrower shall not be required to pay any amount of interest or other charges in excess of the maximum permitted by the applicable law of the State of Oklahoma; if any higher rate ceiling is lawful, then that higher rate ceiling shall apply. Any payment in excess of such maximum shall be refunded to Borrower or credited against principal, at the option of Bank.

2.    **Accrual Method.** Unless otherwise indicated, interest at the Rate set forth above will be calculated by the 365/365 day method.

3.    **Payment Schedule.** All payments received hereunder shall be applied first to the payment of any expense or charges, including loan fees and attorney fees payable hereunder or under any other Loan Documents executed in connection with this Note, then to interest due and payable, with the balance applied to principal, or in such other order as Bank shall determine at its option.

Payments shall be made in the amount of accrued interest payable quarterly commencing on June 30, 2021, and on each subsequent September 30, December 30, March 30 and June 30 and until the maturity date of December 31, 2022 (the "Maturity Date"), whereupon all outstanding principal, interest, charges and expenses shall be paid in full by the Borrower.

4.    **PREPAYMENT.**

        A.      **Principal Paydown.** If the Note is not paid in full on or before December 31, 2021, Borrower will pay the Bank an amount equal to fifty percent of the then outstanding principal amount on the Note by 5:00 p.m. prevailing Dallas time on December 31, 2021.

        B.      **Sale of Shares.** If Borrower sells all or any portion of the Shares prior to the Maturity Date, the Borrower will use the proceeds of such sale to prepay the Note. Borrower will make any prepayment pursuant to this Section 4.B within five business days of the closing of the sale of any Shares. Any such prepayment will be applied first to principal and then to any accrued but unpaid interest. Such prepayment will not advance any payment dates.

        C.      **No Prepayment Penalty.** This Note may be prepaid in full at any time without a prepayment penalty.

002552

5. **Waivers, Consents and Covenants.** Borrower, any indorser or guarantor hereof, or any other party hereto (individually an "Obligor" and collectively "Obligors") and each of them jointly and severally: (a) waive presentment, demand, protest, notice of demand, notice of intent to accelerate, notice of acceleration of maturity, notice of protest, notice of nonpayment, notice of dishonor, and any other notice required to be given under the law to any Obligor in connection with the delivery, acceptance, performance, default or enforcement of this Note, any indorsement or guaranty of this Note, or any other documents executed in connection with this Note or any other note or other loan documents now or hereafter executed in connection with any obligation of Borrower to Bank (the "Loan Documents"); (b) consent to all delays, extensions or renewals of this Note or the Loan Documents, or waivers of any term hereof or of the Loan Documents, or release or discharge by Bank of any of Obligors, or release, substitution or exchange of any security for the payment hereof, or the failure to act on the part of Bank, or any indulgence shown by Bank (without notice to or further assent from any of Obligors), and agree that no such action, failure to act or failure to exercise any right or remedy by Bank shall in any way affect or impair the obligations of any Obligors or be construed as a waiver by Bank of, or otherwise affect, any of Bank's rights under this Note, under any indorsement or guaranty of this Note or under any of the Loan Documents; and (c) agree to pay, promptly upon written notice, all customary and reasonable documented costs and expenses of collection or defense of this Note or of any indorsement or guaranty hereof and/or the enforcement or defense of Bank's rights with respect to, or the administration, supervision, preservation, or protection of, or realization upon, any property securing payment hereof, including, without limitation, reasonable attorney's fees, including fees related to any suit, mediation or arbitration proceeding, out of court payment agreement, trial, appeal or bankruptcy proceedings, in such amount as may be determined reasonable by any arbitrator or court, whichever is applicable.

6. **Events of Default.** The following are events of default hereunder if left uncured for a period of ten (10) business days (any such uncured default an "Event of Default"): (a) the failure to pay or perform any obligation, liability or indebtedness of any Obligor to Bank, whether under this Note or any Loan Documents, as and when due (whether upon demand, at maturity or by acceleration); (b) the change in control of the Borrower; (c) the commencement of a proceeding against any Obligor for dissolution or liquidation, the voluntary or involuntary termination or dissolution of any Obligor or the merger or consolidation of any Obligor with or into another entity; (d) the insolvency of, the business failure of, the appointment of a custodian, trustee, liquidator or receiver for or for any of the property of, the assignment for the benefit of creditors by, or the filing of a petition under bankruptcy, insolvency or debtor's relief law or the filing of a petition for any adjustment of indebtedness, composition or extension by or against any Obligor; (e) the determination by Bank that any representation or warranty made to Bank by any Obligor in any Loan Documents is or was, when it was made, untrue or materially misleading; (f) the failure of any Obligor to timely deliver such financial statements, other statements of condition or other information, as Bank may reasonably request from time to time; (g) the entry of a judgment against any Obligor which Bank deems to be of a material nature, in Bank's sole discretion; (h) the seizure or forfeiture of, or the issuance of any writ of possession, garnishment or attachment, or any turnover order for any property of any Obligor; (i) the determination by Bank that a material adverse change has occurred in the financial condition of any Obligor; or (j) the failure of Obligor's business to comply with any law or regulation controlling its operation that could reasonably be expected to have a material adverse effect on the Obligor's ability to fulfill its obligations under the Loan Documents.

7. **Remedies upon Default.** Whenever there is an Event of Default under this Note (a) the entire balance outstanding hereunder and all other obligations of any Obligor to Bank (however acquired or evidenced) shall, at the option of Bank, become immediately due and payable and any obligation of Bank to permit further borrowing under this Note shall immediately cease and terminate, and/or (b) to the extent permitted by law, the Rate of interest on the unpaid principal shall be increased at Bank's discretion up to the maximum rate allowed by law, or if none, 18% per annum (the "Default Rate"). The provisions herein for a Default Rate shall not be deemed to extend the time for any payment hereunder or to constitute a "grace period" giving Obligor a right to cure any default. At Bank's option, any accrued and unpaid interest, fees or charges may, for purposes of computing and accruing interest on a daily basis after the due date of the Note or any installment thereof, be deemed to be a part of the principal balance, and interest shall accrue on a daily compounded basis after such date at the Default Rate provided in this Note until the entire outstanding balance of principal and interest is paid in full. Upon an Event of Default under this Note, Bank is hereby authorized at any time, at its option and without notice or demand, to set off and charge against any deposit accounts of any Obligor (as well as any money, instruments, securities, documents, chattel paper, credits, claims, demands, income and any other property, rights and interests of any Obligor), which at any time shall come into the possession or custody or under the control of Bank or any of its agents, affiliates or correspondents, any and all obligations due hereunder. Additionally, Bank shall have all rights and remedies available under each of the Loan Documents, as well as all rights and remedies available at law or in equity.

8. **Non-Waiver.** The failure at any time of Bank to exercise any of its options or any other rights hereunder shall not constitute a waiver thereof, nor shall it be a bar to the exercise of any of its options or rights at a later date. All rights and remedies of Bank shall be cumulative and may be pursued singly, successively or together, at the option of Bank. The acceptance by Bank of any partial payment shall not constitute a waiver of any default or of any of Bank's rights under this Note. No waiver of any of its rights hereunder, and no modification or amendment of this Note, shall be deemed to be made by Bank unless the same shall be in writing, duly signed on behalf of Bank; each such waiver shall apply only with respect to the specific instance involved, and shall in no way impair the rights of Bank or the obligations of Obligor to Bank in any other respect at any other time.

9. **Effective Date.** This Note is being executed pursuant to the Plan and the Confirmation Order and the obligations of each party hereunder are conditioned in all respects on the occurrence of the Effective Date of the Plan. As set forth in the Plan, except as expressly set forth herein, the

-2-

002553

terms, conditions, and protections set forth in the Security Agreement and the Bank's security interests in the Shares are not affected by the terms of the Plan or the Confirmation Order and are, and remain, in full force and effect.

**10. Applicable Law, Venue and Jurisdiction.** Borrower agrees that this Note shall be deemed to have been made in the State of Oklahoma at Bank's address indicated at the beginning of this Note and shall be governed by, and construed in accordance with, the laws of the State of Oklahoma and is performable in the City and County of Oklahoma indicated at the beginning of this Note. In any litigation in connection with or to enforce this Note or any indorsement or guaranty of this Note or any Loan Documents, Obligor irrevocably consents to and confers personal jurisdiction on the courts of the State of Oklahoma or the United States courts located within the State of Oklahoma. Nothing contained herein shall, however, prevent Bank from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

**11. Partial Invalidity.** The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of this Note or of the Loan Documents to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

**12. Binding Effect.** This Note shall be binding upon and inure to the benefit of Borrower, Obligor and Bank and their respective successors, assigns, heirs and personal representatives, provided, however, that no obligations of Borrower or Obligor hereunder can be assigned without prior written consent of Bank.

**13. Controlling Document.** To the extent that this Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Note, this Note shall control over any other such document, and if this Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.

**14. ARBITRATION.** ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG THE PARTIES HERETO INCLUDING BUT NOT LIMITED TO THOSE ARISING OUT OF OR RELATING TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT OR ANY RELATED INSTRUMENTS, AGREEMENTS OR DOCUMENTS, INCLUDING ANY CLAIM BASED ON OR ARISING FROM AN ALLEGED TORT, SHALL BE DETERMINED BY BINDING ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT (OR IF NOT APPLICABLE, THE APPLICABLE STATE LAW), THE RULES OF PRACTICE AND PROCEDURE FOR THE ARBITRATION OF COMMERCIAL DISPUTES OF AMERICAN ARBITRATION ASSOCIATION OR ANY SUCCESSOR THEREOF AND THE "SPECIAL RULES" SET FORTH BELOW. IN THE EVENT OF ANY INCONSISTENCY, THE SPECIAL RULES SHALL CONTROL. JUDGMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. ANY PARTY TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT MAY BRING AN ACTION, INCLUDING A SUMMARY OR EXPEDITED PROCEEDING, TO COMPEL ARBITRATION OF ANY CONTROVERSY OR CLAIM TO WHICH THIS AGREEMENT APPLIES IN ANY COURT HAVING JURISDICTION OVER SUCH ACTION.

    **A.** SPECIAL RULES. THE ARBITRATION SHALL BE CONDUCTED IN OKLAHOMA COUNTY, OKLAHOMA ADMINISTERED BY AMERICAN ARBITRATION ASSOCIATION WHO WILL APPOINT AN ARBITRATOR; ARBITRATION SHALL BE COMMENCED WITHIN 90 DAYS OF THE DEMAND FOR ARBITRATION; FURTHER, THE ARBITRATOR SHALL ONLY, UPON A SHOWING OF CAUSE, BE PERMITTED TO EXTEND THE COMMENCEMENT OF SUCH HEARING FOR UP TO AN ADDITIONAL 60 DAYS.

    **B.** RESERVATION OF RIGHTS. NOTHING IN THIS ARBITRATION PROVISION SHALL BE DEEMED TO (i) LIMIT THE APPLICABILITY OF ANY OTHERWISE APPLICABLE STATUTES OF LIMITATION OR REPOSE AND ANY WAIVERS CONTAINED IN THIS INSTRUMENT, AGREEMENT OR DOCUMENT; OR (ii) BE A WAIVER BY BANK OF THE PROTECTION AFFORDED TO IT BY 12 U.S.C. SEC. 91 OR ANY SUBSTANTIALLY EQUIVALENT STATE LAW; OR (iii) LIMIT THE RIGHT OF BANK HERETO (A) TO EXERCISE SELF HELP REMEDIES SUCH AS (BUT NOT LIMITED TO) SETOFF, OR (B) TO FORECLOSE AGAINST ANY REAL OR PERSONAL PROPERTY COLLATERAL, OR (C) TO OBTAIN FROM A COURT PROVISIONAL OR ANCILLARY REMEDIES SUCH AS (BUT NOT LIMITED TO) INJUNCTIVE RELIEF, WRIT OF POSSESSION OR THE APPOINTMENT OF A RECEIVER. BANK MAY EXERCISE SUCH SELF HELP RIGHTS, FORECLOSE UPON SUCH PROPERTY, OR OBTAIN SUCH PROVISIONAL OR ANCILLARY REMEDIES BEFORE, DURING OR AFTER THE PENDENCY OF ANY ARBITRATION PROCEEDING BROUGHT PURSUANT TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT. NEITHER THIS EXERCISE OF SELF HELP REMEDIES NOR THE INSTITUTION OR MAINTENANCE OF AN ACTION FOR FORECLOSURE OR PROVISIONAL OR ANCILLARY REMEDIES SHALL CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY, INCLUDING THE CLAIMANT IN ANY SUCH ACTION, TO ARBITRATE THE MERITS OF THE CONTROVERSY OR CLAIM OCCASIONING RESORT TO SUCH REMEDIES.

Borrower represents to Bank that the proceeds of this loan evidenced by this Note are to be used primarily for business, commercial or agricultural purposes. Borrower acknowledges having read and understood, and agrees to be bound by, all terms and conditions of this Note.

-3-

002554

NOTICE OF FINAL AGREEMENT:

THIS WRITTEN NOTE REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Borrower/Obligor:

Highland Capital Management, L.P.

By:_____

Name:_____

Title: _____

002555

# EXHIBIT "G"

002556

## Released Employees

| Name |
| --- |
| Abayarathna, Sahan |
| Bannon, Lucy |
| Baynard, Paul C. |
| Beispiel, Michael |
| Brewer, Brigid |
| Broaddus, Paul |
| Burns, Nathan |
| Carter, Jerome |
| Chisum, Naomi |
| Clark, Stetson |
| Collins, Brian |
| Cotton, Austin |
| Cournoyer, Timothy |
| Covitz, Hunter |
| Diorio, Matthew |
| Eftekhari, Cyrus |
| Eliason, Hayley |
| Ellington, Scott * |
| Flaherty, Brendan |
| Fox, Sean |
| Goldsmith, Sarah B. |
| Gosserand, William |
| Gray, Matthew |
| Groff, Scott |
| Haltom, Steven |
| Hendrix, Kristin |
| Roeber, Blair A. |
| Hoedebeck, Charlie |
| Irving, Mary K. |
| Jain, Bhawika |
| Jeong, Sang K. |
| Jimenez, Sarah |
| Kim, Helen |
| Klos, David |
| Kovelan, Kari J. |
| Leuthner, Andrew |
| Leventon, Isaac * |
| Loiben, Tara J. |
| Luu, Joye |
| Mabry, William |

Mckay, Bradley

Mills Iv, James

Nikolayev, Yegor

Owens, David

Patel, Vishal

Patrick, Mark

Rice, Christopher

Richardson, Kellie

Rios, Heriberto

Rothstein, Jason

Sachdev, Kunal

Schroth, Melissa

Sevilla, Jean-Paul

Short, Lauren

Staltari, Mauro

Stevens, Kellie

Stewart, Phoebe L.

Surgent, Thomas *

Swadley, Rick

Thedford, Lauren E.

Thomas, Kristen

Thottichira, Christina

Throckmorton, Michael

Vitiello, Stephanie

Waterhouse, Frank *

* Senior Employee - Required to execute Senior Employee Stipulation.

# EXHIBIT "H"

Case 19-34054-sgj11 Doc 1789-3 Filed 01/22/21 Entered 01/22/21 16:20:34 Page 224 of
Case 3:21-cv-00538-N Document 26-10 Filed 06/09/21 Page 55 of 215 PageID 5302
Draft –

## SENIOR EMPLOYEE STIPULATION AND TOLLING
## AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of [_____], by and between [**EMPLOYEE NAME**] (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");[1]

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its [_____] and in such role provided services to the Debtor;

WHEREAS, the Senior Employee was compensated for his services in part through certain deferred compensation that was required to be paid to the Senior Employee on [_____] (the "Deferred Compensation");

WHEREAS, the Committee objected to the Senior Employee receiving the Deferred Compensation during the Chapter 11 Case and the Deferred Compensation, although earned, was not paid;

WHEREAS, as of the date hereof, the total Deferred Compensation through and including the date hereof owed to the Senior Employee is $[____];

WHEREAS, the Senior Employee may have other Claims against the Debtor in addition to the Deferred Compensation (the "Other Employee Claims");

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been retained pursuant to the Plan (the "Causes of Action");

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

002560

WHEREAS, the Plan provides for the release of such Causes of Action against the Senior Employee (the "Employee Release");

WHEREAS, the Employee Release is conditioned on the Senior Employee executing this Stipulation on or prior to the Effective Date of the Plan and reducing his Deferred Compensation as set forth herein;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1.  Covenant Not to Sue.  In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the Deferred Compensation otherwise due to the Senior Employee, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties") agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date").  This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the Deferred Compensation set forth in Section 5 hereof or in the Plan.

2.  Non-Compliance; Vesting.

a.  As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC)  that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1)  sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

(2)  has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets,

(3)  has violated the confidentiality provisions of Section 4 below, or

(4)    (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing.

If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee.  Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

b.    Notwithstanding anything herein to the contrary, Employee Release will vest and all Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

3.    Tolling of Statutes of Limitation.  In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitation applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee.  The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

4.    Confidentiality.  In further consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "Confidential Information") relating to the activities or planned activities of the HCMLP Parties strictly confidential.  Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee or its respective representatives.

5.    Deferred Compensation.

a.    The Senior Employee has agreed to forfeit a percentage of his Deferred Compensation in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation.  The Senior Employee hereby agrees that (i) the Deferred Compensation will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his Deferred Compensation as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the Deferred Compensation will be further reduced by 40% (the "Reduced Amount"), and (iv) the Reduced Amount will be forever waived and released.

002562

Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim or prevent the Senior Employee from prosecuting or pursuing any Other Employee Claim.

b.     For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section 2, any such nullification will have no effect on the treatment of the Senior Employee's Deferred Compensation pursuant to this Section 5.

6.     <u>Effective Date</u>.  The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan.  If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

7.     <u>Plan Support</u>.  The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan and vote any Claims in favor of the Plan.

8.     <u>Miscellaneous</u>.

a.     <u>Counterparts</u>.  This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

b.     <u>Binding Effect</u>.  This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

c.     <u>Authority</u>.  Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

d.     <u>Entire Agreement</u>.  This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions.  This Stipulation may only be amended by an agreement in writing signed by the Parties.

e.     <u>No Waiver and Reservation of Rights</u>.  Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies or privileges of any of the Parties.  Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

f.     <u>No Admission of Liability</u>.  The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action.  Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

002563

g. <u>No Waiver If Breach</u>. The Parties agree that no breach of any provision hereof can be waived except in writing. The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

h. <u>Notice</u>. Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

| Senior Employee | HCMLP |
|---|---|
| [_____] | Highland Capital Management, L.P. |
| [_____] | [_____] |
| [_____] | [_____] |
| Email: [_____] | Attention:  James P. Seery, Jr. |
| | Telephone No.: [_____] |
| | E-mail: [_____] |

i. <u>Advice of Counsel</u>. Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

j. <u>Severability</u>.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

k. <u>Governing Law; Venue</u>. The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles. Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

002564

**IT IS HEREBY AGREED.**

                                        **HIGHLAND CAPITAL MANAGEMENT, L.P.**


                                        By:    _____
                                        Name:  _____
                                        Its:   _____


                                        **SENIOR EMPLOYEE**


                                        By:    _____
                                        Name:  _____

002565

Case 19-34054-sgj11 Doc 1606 Filed 12/18/20 Entered 12/18/20 17:56:13 Page 1 of 27
Case 3:21-cv-00538-N Document 26-10 Filed 06/09/21 Page 61 of 215 PageID 5308
Docket #1606 Date Filed 12/18/2020

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. |  |

## DEBTOR'S NOTICE OF FILING OF PLAN SUPPLEMENT TO THE
## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P.

**PLEASE TAKE NOTICE** that Highland Capital Management, L.P., the above-

captioned debtor and debtor-in-possession (the "Debtor"), filed the *Debtor's Notice of Filing of*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



*Supplement to Third Amended Plan of Reorganization of Highland Capital Management, L.P.*, on November 13, 2020 [Docket No. 1389] (the "Initial Supplement"). The Initial Supplement included Exhibits A-H to the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.*, dated November 13, 2020 [Docket No. 1383] (the "Third Amended Plan").

**PLEASE TAKE NOTICE** that on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (the "Plan").

**PLEASE TAKE NOTICE** that Exhibits A-H to the Third Amended Plan are Exhibits A-H to the Plan (as such exhibits may be amended as set forth herein).

**PLEASE TAKE NOTICE** that the Debtor hereby files the documents included herewith as **Exhibits I-K** (collectively, the "Plan Supplement") supplementing the Plan.

> **Exhibit I**:  Schedule of Contracts and Leases to Be Assumed
>
> **Exhibit J**:  Amended Form of Senior Employee Stipulation
>
> **Exhibit K**:  Redline of Form of Senior Employee Stipulation

**PLEASE TAKE FURTHER NOTICE** that the Debtor anticipates filing amended versions of certain of the Exhibits to the Plan, including amendments to the Form of Claimant Trust Agreement (Exhibit A) and the Form of Litigation Sub-Trust Agreement (Exhibit D).

**PLEASE TAKE FURTHER NOTICE** that this *Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Notice of Plan Supplement") is being served on parties-in-interest without the Plan Supplement attached. Any party-in-interest wishing to obtain copies of the Plan or the Plan Supplement may do so by (i) contacting the Debtor's Solicitation Agent, KCC, at (i) 1-877-573-3984 (toll free) or 1-310-751-1829 (if international) or by email at HighlandInfo@kccllc.com, or (ii) viewing such

2

002567

documents by accessing them online at https://kccllc.net/HCMLP.  The documents are also available on the Court's website: www.txnb.uscourts.gov.  Please note that a PACER password and login are needed to access documents on the Court's website.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DOCS_NY:41792.2 36027/002

002568

Dated: December 18, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

4

002569

# EXHIBIT I

## Schedule of Contracts and Leases to Be Assumed

1.   Advisory Services Agreement, dated November 21, 2011, effective June 20, 2011, by and between Carey International, Inc., and Highland Capital Management, L.P.

2.   Amended and Restated Advisory Services Agreement, dated March 4, 2013, by and between Trussway Holdings, Inc., and Highland Capital Management, L.P.

3.   Reference Portfolio Management Agreement, dated March 4, 2004, by and between Highland Capital Management, L.P., and Citibank N.A.

4.   Advisory Services Agreement, dated May 25, 2011, by and between CCS Medical, Inc., and Highland Capital Management, L.P.

5.   Amended and Restated Advisory Services Agreement, dated February 28, 2013, by and between Cornerstone Healthcare Group Holding, Inc., and Highland Capital Management, L.P.

6.   Prime Brokerage Agreement by and between Jefferies LLC and Highland Capital Management, L.P., dated May 24, 2013.

7.   Amended and Restated Shared Services Agreement, dated August 21, 2015, by and between Highland Capital Management, L.P., and Falcon E&P Opportunities GP, LLC.

8.   Amended and Restated Administrative Services Agreement, effective as of August 21, 2015, by and between Highland Capital Management, L.P., and Petrocap Partners II GP, LLC.

9.   Office Lease, between Crescent Investors, L.P., and Highland Capital Management, L.P.

10.  Paylocity Corporation Services Agreement, between Highland Capital Management, L.P., and Paylocity Corporation, dated November 19, 2012.

11.  Electronic Trading Services Agreement, between SunTrust Robinson Humphrey Inc., and Highland Capital Management, L.P., dated February 6, 2019.

12.  Letter Agreement, between FTI Consulting, Inc., and Highland Capital Management, L.P., dated November 19, 2018.

13.  Administrative Services Agreement, dated January 1, 2018, between Highland Capital Management, L.P., and Liberty Life Assurance Company of Boston.

14.  Electronic Communications:  Customer Authorization & Indemnification, between Highland Capital Management, L.P., and The Bank of New York Mellon Corporation, dated August 9, 2016.

15.  Letter Agreement, dated August 9, 2016, Electronic Access Terms and Conditions, by and between The Bank of New York Mellon Trust Company, N.A., and Highland Capital Management, L.P.

16.  Shared Services Agreement by and between Highland HCF Advisor, Ltd., and Highland Capital Management, L.P., dated effective October 27, 2017.

17.  Sub-Advisory Agreement, by and between Highland HCF Advisors, Ltd., and Highland Capital Management, dated effective October 27, 2017.

18. Collateral Management Agreement, dated November 2, 2006, by and between Highland Credit Opportunities CDO Ltd. and Highland Capital Management, L.P.

19. Management Agreement, dated November 15, 2007, between Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Restoration Capital Partners Master L.P., Highland Restoration Capital Partners GP, LLC, and Highland Capital Management, L.P.

20. Investment Management Agreement, between Highland Capital Multi-Strategy Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

21. Investment Management Agreement, between Highland Capital Multi-Strategy Master Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

22. Management Agreement, dated August 22, 2007, between and among Highland Capital Management, L.P., and Walkers Fund Services Limited, as trustee of Highland Credit Opportunities Japanese Unit Trust.

23. Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P., dated November 1, 2013.

24. Investment Management Agreement, dated March 31, 2015, by and among Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., and Highland Capital Management, L.P.

25. Amended and Restated Investment Management Agreement, dated February 27, 2017, by and among Highland Prometheus Master Fund L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland SunBridge GP, LLC, and Highland Capital Management, L.P.

26. Servicing Agreement, dated December 20, 2007, by and among Greenbriar CLO, Ltd., and Highland Capital Management, L.P.

27. Investment Management Agreement, dated November 1, 2007, by and between Longhorn Credit Funding, LLC, and Highland Capital Management, L.P. (as amended)

28. Reference Portfolio Management Agreement, dated August 1, 2016, by and between Highland Capital Management, L.P., and Valhalla CLO, Ltd.

29. Collateral Servicing Agreement, dated December 20, 2006, by and among Highland Park CDO I, Ltd., and Highland Capital Management, L.P.

30. Portfolio Management Agreement, dated March 15, 2005, by and among Southfork CLO Ltd., and Highland Capital Management, L.P.

31. Amended and Restated Portfolio Management Agreement, dated November 30, 2005, by and among Jaspar CLO Ltd., and Highland Capital Management, L.P.

32. Servicing Agreement, dated May 31, 2007, by and among Westchester CLO, Ltd., and Highland Capital Management, L.P.

33. Servicing Agreement, dated May 10, 2006, by and among Rockwall CDO Ltd. and Highland Capital Management, L.P. (as amended)

002572

34. Portfolio Management Agreement, dated December 8, 2005, by and between Liberty CLO, Ltd., and Highland Capital Management, L.P.

35. Servicing Agreement, dated March 27, 2008, by and among Aberdeen Loan Funding, Ltd., and Highland Capital Management, L.P.

36. Servicing Agreement, dated May 9, 2007, by and among Rockwall CDO II Ltd. and Highland Capital Management, L.P.

37. Collateral Management Agreement, by and between, Highland Loan Funding V Ltd. and Highland Capital Management, L.P., dated August 1, 2001.

38. Collateral Management Agreement, dated August 18, 1999, by and between Highland Legacy Limited and Highland Capital Management, L.P.

39. Servicing Agreement, dated November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. (as amended)

40. Servicing Agreement, dated October 25, 2007, by and among Stratford CLO Ltd., and Highland Capital Management, L.P.

41. Servicing Agreement, dated August 3, 2006, by and among Red River CLO Ltd., and Highland Capital Management, L.P. (as amended)

42. Servicing Agreement, dated December 21, 2006, by and among Brentwood CLO, Ltd., and Highland Capital Management, L.P.

43. Servicing Agreement, dated March 13, 2007, by and among Eastland CLO Ltd., and Highland Capital Management, L.P.

44. Portfolio Management, Agreement, dated October 13, 2005, by and among Gleneagles CLO, Ltd., and Highland Capital Management, L.P.

45. AT&T Managed Internet Service, between Highland Capital Management, L.P. and AT&T Corp., dated February 24, 2015.

46. ViaWest, Master Service Agreement, dated October 3, 2011, between Highland Capital Management, L.P. and ViaWest

002573

# EXHIBIT J

002574

**SENIOR EMPLOYEE STIPULATION AND TOLLING
AGREEMENT EXTENDING STATUTES OF LIMITATION**

This stipulation (the "Stipulation") is entered into as of [_____], by and between **[EMPLOYEE NAME]** (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (the "Chapter 11 Case"):

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"):[1]

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its [_____] and in such role provided services to the Debtor;

WHEREAS, the Senior Employee is owed for his services (i) certain amounts that were due to be paid to the Senior Employee for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 ((i) and (ii), collectively, the "Earned Amounts"):

WHEREAS, the Committee objected to the Senior Employee receiving the Earned Amounts during the Chapter 11 Case and the Earned Amounts, although earned, was not paid;

WHEREAS, as of the date hereof, the total Earned Amounts through and including the date hereof owed to the Senior Employee is $ [_____];

WHEREAS, the Senior Employee may have other prepetition and postpetition Claims against the Debtor in addition to the Earned Amounts (the "Other Employee Claims")[2]:

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2] For the avoidance of doubt, the "Other Employee Claims" shall include all prepetition and postpetition Claims of the Senior Employee except for the Earned Amounts.

002575

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been retained pursuant to the Plan (the "Causes of Action"):

WHEREAS, the Plan provides for the release of such Causes of Action against the Senior Employee (the "Employee Release"):

WHEREAS, the Employee Release is conditioned on the Senior Employee executing this Stipulation on or prior to the Effective Date of the Plan and reducing his Earned Amounts as set forth herein;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1.      Covenant Not to Sue. In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the Earned Amounts otherwise due to the Senior Employee, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties") agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date"). This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the Earned Amounts set forth in Section 5 hereof or in the Plan.

2.      Non-Compliance: Vesting.

a.      As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1)      sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

(2)      has taken any action that, impairs or harms the value of the

002576

Claimant Trust Assets or the Reorganized Debtor Assets,

(3)     has violated the confidentiality provisions of Section 4 below, or

(4)     (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee. Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

b.     Notwithstanding anything herein to the contrary, Employee Release will vest and all Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

c.     Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation; provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims. Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

3.     Tolling of Statutes of Limitation. In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitation applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee. The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

4.     Confidentiality. In further consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "Confidential Information") relating to the activities or

002577

planned activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

     5.    <u>Earned Amounts</u>.

     a.    The Senior Employee has agreed to forfeit a percentage of his in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the Earned Amounts will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his Earned Amounts as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the Earned Amounts will be further reduced by 40% (the "<u>Reduced Amount</u>"), and (iv) the Reduced Amount will be forever waived and released. Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting, pursuing, or enforcing any Other Employee Claim.

     b.    For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section 2, any such nullification will have no effect on the treatment of the Senior Employee's Earned Amounts pursuant to this Section 5.

     6.    <u>Effective Date</u>. The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan. If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

     7.    <u>Plan Support</u>. The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan and vote any Claims in favor of the Plan.

     8.    <u>Miscellaneous</u>.

     a.    <u>Counterparts</u>. This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

     b.    <u>Binding Effect</u>. This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

     c.    <u>Authority</u>. Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

     d.    <u>Entire Agreement</u>. This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions. This Stipulation may only be amended by an agreement in writing signed by the Parties.

002578

       e.     <u>No Waiver and Reservation of Rights</u>. Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties. Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

       f.     <u>No Admission of Liability</u>. The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action. Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

       g.     <u>No Waiver If Breach</u>. The Parties agree that no breach of any provision hereof can be waived except in writing. The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

       h.     <u>Notice</u>. Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

**Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

With a copy to:

**Attorneys for Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

**HCMLP**

Highland Capital Management, L.P
[_____]
[_____]
Attention: James P. Seery, Jr.

002579

Telephone No.: [_____]
Email: [_____]

With a copy to:

**Attorneys for HCMLP**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

          i.    <u>Advice of Counsel</u>. Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

          j.    <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

          k.    <u>Governing Law: Venue</u>. The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles. Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

002580

**IT IS HEREBY AGREED.**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____

Name: _____

Its: _____

**SENIOR EMPLOYEE**

By: _____

Name: _____

Its: _____

002581

# EXHIBIT K

002582

## SENIOR EMPLOYEE STIPULATION AND TOLLING
## AGREEMENT EXTENDING STATUTES OF LIMITATION

This stipulation (the "Stipulation") is entered into as of [_____], by and between **[EMPLOYEE NAME]** (the "Senior Employee") and Highland Capital Management, L.P. (the "Debtor"). The Debtor and the Senior Employee are individually referred to as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on October 16, 2019, the Debtor filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on October 29, 2019, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") in the Chapter 11 Case;

WHEREAS, on November 13, 2020, the Debtor filed the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan");[1]

WHEREAS, prior to and during the course of the Chapter 11 Case, the Senior Employee was employed by the Debtor as its [_____] and in such role provided services to the Debtor;

WHEREAS, the Senior Employee ~~was compensated~~is owed for his services ~~in part through (i)~~ certain ~~deferred compensation~~amounts that ~~was required~~were due to be paid to the Senior Employee ~~on [_____] (the "Deferred Compensation");~~ for the partial year of 2018 in installments due on February 28, 2020 and August 31, 2020; and (ii) certain amounts that were due to the Senior Employee in respect of the 2017 Deferred Award that vested after three years on May 31, 2020 (i) and (ii), collectively, the "Earned Amounts"):

WHEREAS, the Committee objected to the Senior Employee receiving the ~~Deferred Compensation~~Earned Amounts during the Chapter 11 Case and the ~~Deferred Compensation~~Earned Amounts, although earned, was not paid;

WHEREAS, as of the date hereof, the total ~~Deferred Compensation~~Earned Amounts through and including the date hereof owed to the Senior Employee is $ [_____];

WHEREAS, the Senior Employee may have other prepetition and postpetition Claims against the Debtor in addition to the ~~Deferred Compensation~~Earned Amounts (the "Other

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Employee Claims");~ 2;

WHEREAS, the Committee has alleged that certain causes of action against the Senior Employee may exist, which causes of action have been retained pursuant to the Plan (the "Causes of Action");~;

WHEREAS, the Plan provides for the release of such Causes of Action against the Senior Employee (the "Employee Release");~;

WHEREAS, the Employee Release is conditioned on the Senior Employee executing this Stipulation on or prior to the Effective Date of the Plan and reducing his ~Deferred Compensation~Earned Amounts as set forth herein;

WHEREAS, the Plan provides for the creation of the Claimant Trust and Litigation Sub-Trust and the appointment of the Claimant Trust Oversight Committee (the "CTOC") to oversee such entities;

NOW, THEREFORE, in consideration of the mutual promises set forth herein, each of the Parties stipulates and agrees as follows:

1.     Covenant Not to Sue.   In consideration of the Senior Employee's agreement to toll the statutes of limitation with respect to any Causes of Action that can be asserted against him and to waive a portion of the ~Deferred Compensation~Earned Amounts otherwise due to the Senior Employee, the Debtor and any of its successors or assigns, including the Claimant Trust or the Litigation Sub-Trust (collectively, the "HCMLP Parties") agree not to initiate or commence any lawsuit, action or proceeding for the purpose of prosecuting any Causes of Action against the Senior Employee from the date of this Stipulation until the earlier of (a) thirty calendar days after the Notice Date and (b) the Dissolution Date (each as defined below) (such date, the "Termination Date").  This Stipulation shall expire upon the Termination Date and shall thereafter be of no further force and effect; *provided, however,* that the termination of this Stipulation shall not affect the treatment of the ~Deferred Compensation~Earned Amounts set forth in Section 5 hereof or in the Plan.

2.     Non-Compliance~;~; Vesting.

a.     As set forth in the Plan, the Senior Employee acknowledges and agrees that the Employee Release will be deemed null and void and of no force and effect (1) if there is more than one member of the CTOC who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full CTOC)  that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

(1)     sues, attempts to sue, or threatens or works with or assists

---

2 For the avoidance of doubt, the "Other Employee Claims" shall include all prepetition and postpetition Claims of the Senior Employee except for the Earned Amounts.

any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

        (2)     has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets,

        (3)     has violated the confidentiality provisions of Section 4 below, or

        (4)     (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (i) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (ii) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing. If such determination under this Section 2a is made, the Claimant Trustee will deliver a notice of non-compliance with the Plan (the "Notice") to the Senior Employee. Such Notice will be effective when deemed delivered pursuant to Section 8.h hereof (the "Notice Date").

        b.     Notwithstanding anything herein to the contrary, Employee Release will vest and all Causes of Action that may or could be brought against the Senior Employee will be indefeasibly released solely to the extent set forth in Article IX.D of the Plan so long as the Notice Date does not occur on or before the date that the Claimant Trust is dissolved (such date, the "Dissolution Date").

        c.     Notwithstanding anything to the contrary in this Stipulation or any other document, Senior Employee expressly reserves the right to take all actions necessary to pursue enforcement and payment of the Other Employee Claims, and such actions shall not violate the terms of this Stipulation; provided, that, for the avoidance of doubt, nothing in this Stipulation shall prejudice the rights of the Debtor, or any of the Debtor's successor in interests under the Plan, to object to or otherwise challenge any Other Employee Claims. Additionally, this Agreement does not affect or impair Senior Employee's rights, if any, to seek indemnification from any party, including, without limitation, the Debtor, any HCMLP Parties, or any other affiliates thereof nor does it affect or impair the right of the Debtor, or any of the Debtor's successor in interests under the Plan, to challenge such request.

        3.     Tolling of Statutes of Limitation. In consideration of the HCMLP Parties' "Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that the statute of limitation applicable to any Cause of Action is hereby tolled as of, and extended from, the date of this Stipulation through and including the Termination Date (the "Tolling Period"). The Tolling Period shall be excluded from any calculation of any statute of limitations period applicable to any Cause of Action that may be brought by the HCMLP Parties against the Senior Employee. The Senior Employee acknowledges that he will be estopped from arguing that this Stipulation is ineffective to extend the time within which the HCMLP Parties must commence an action to pursue any Cause of Action.

        4.     Confidentiality. In further consideration of the HCMLP Parties'

"Covenant Not to Sue" (set forth in Section 1 hereof), the Senior Employee agrees that, in addition to existing obligations to maintain all business sensitive information concerning the HCMLP Parties in strictest confidence, each Senior Employee further agrees to keep all discussions, information and observations including, but not limited to, attorney-client privileged or work product information (collectively "Confidential Information") relating to the activities or planned activities of the HCMLP Parties strictly confidential. Each Senior Employee covenants and represents that it will not discuss such Confidential Information with anyone, other than the Senior Employee's personal attorney, the Claimant Trustee, or its respective representatives.

5. ~~Deferred Compensation.~~ Earned Amounts.

a. The Senior Employee has agreed to forfeit a percentage of his ~~Deferred Compensation~~ in consideration for the Employee Release and acknowledges that such agreement is an integral part of this Stipulation. The Senior Employee hereby agrees that (i) the ~~Deferred Compensation~~Earned Amounts will be treated as an Allowed Class 7 (Convenience Claim) under the Plan and, to the extent required, will reduce his ~~Deferred Compensation~~Earned Amounts as required to qualify for such treatment, (ii) the Senior Employee will receive the treatment provided to other Allowed Class 7 (Convenience Claims), (iii) the ~~Deferred Compensation~~Earned Amounts will be further reduced by 40% (the "Reduced Amount"), and (iv) the Reduced Amount will be forever waived and released. Except as set forth herein, nothing herein will prejudice or otherwise impact any Other Employee Claim, or prevent the Senior Employee from prosecuting ~~or,~~ pursuing, or enforcing any Other Employee Claim.

b. For the avoidance of doubt, although the Employee Release can be nullified as set forth in Section ~~2,~~2, any such nullification will have no effect on the treatment of the Senior Employee's ~~Deferred Compensation~~Earned Amounts pursuant to this Section ~~5.~~5.

6. Effective Date. The Parties acknowledge and agree that this Stipulation and the Parties' obligations hereunder are conditioned in all respects on the approval of the Plan by the Bankruptcy Court and the occurrence of the Effective Date of the Plan. If, for any reason, the Plan is not approved by the Bankruptcy Court or the Effective Date does not occur, this Stipulation will be null and void and of no force and effect.

7. Plan Support. The Senior Employee agrees that he will use commercially reasonable efforts to assist the Debtor in confirmation of the Plan and vote any Claims in favor of the Plan.

8. Miscellaneous.

a. Counterparts. This Stipulation may be signed in counterparts and such signatures may be delivered by facsimile or other electronic means.

b. Binding Effect. This Stipulation shall inure to the benefit of, and be binding upon, any and all successors-in-interests, assigns, and legal representatives, of any Party.

c. Authority. Each Party to this Stipulation and each person executing this document on behalf of any Party to this Stipulation warrants and represents that

002586

he, she, or it has the power and authority to execute, deliver and perform its obligations under this Stipulation.

        d.   <u>Entire Agreement</u>.  This Stipulation sets forth the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written and oral agreements and discussions.  This Stipulation may only be amended by an agreement in writing signed by the Parties.

        e.   <u>No Waiver and Reservation of Rights</u>.  Except as otherwise provided herein, nothing in this Stipulation shall be, or deemed to be, a waiver of any rights, remedies, or privileges of any of the Parties.  Except as otherwise provided herein, this Stipulation is without prejudice to any Party's rights, privileges and remedies under applicable law, whether at law or in equity, and each Party hereby reserves all of such rights, privileges and remedies under applicable law.

        f.   <u>No Admission of Liability</u>.  The Parties acknowledge that there is a bona fide dispute with respect to the Causes of Action.  Nothing in this Agreement will imply an admission of liability, fault or wrongdoing by the Senior Employee and the execution of this Agreement does not constitute an admission of liability, fault, or wrongdoing on the part of the Senior Employee.

        g.   <u>No Waiver If Breach</u>.  The Parties agree that no breach of any provision hereof can be waived except in writing.  The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any provision hereof.

        h.   <u>Notice</u>.  Each notice and other communication hereunder will be in writing and will be sent by email and delivered or mailed by registered mail, receipt requested, and will be deemed to have been given on the date of its delivery, if delivered by email, and on the fifth full business day following the date of the mailing, if mailed to each of the Parties thereto at the following respective addresses or such other address as may be subsequently specified in writing by any Party and delivered to all other Parties pursuant to this Section:

~~Senior Employee~~         ~~HCMLP~~

~~[_____]~~       ~~Highland Capital Management, L.P.~~
       ~~[_____]~~
~~[_____]~~

     ~~[_____]~~
~~[_____]~~      ~~Attention:  James P. Seery, Jr.~~
     ~~Telephone No.: [_____]~~
~~Email: [_____]~~    ~~E-mail: [_____]~~

     i.

**Senior Employee**

002587

[_____]
[_____]
[_____]
[_____]
Email: [_____]

With a copy to:

**Attorneys for Senior Employee**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

**HCMLP**

Highland Capital Management, L.P
[_____]
[_____]
Attention: James P. Seery, Jr.
Telephone No.: [_____]
Email: [_____]

With a copy to:

**Attorneys for HCMLP**

[_____]
[_____]
[_____]
[_____]
Email: [_____]

   j. <u>Advice of Counsel</u>.  Each of the Parties represents that such Party has: (a) been adequately represented by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Stipulation; (b) executed this Stipulation upon the advice of such counsel; (c) read this Stipulation, and understands and assents to all the terms and conditions contained herein without any reservations; and (d) had the opportunity to have this Stipulation and all the terms and conditions contained herein explained by independent counsel, who has answered any and all questions asked of such counsel, or which could have been asked of such counsel, including, but not limited to, with regard to the meaning and effect of any of the provisions of this Agreement.

   k. <u>Severability</u>.  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any

002588

such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

l.     <u>Governing Law: Venue</u>.  The Parties agree that this Agreement will be governed by and will be construed according to the laws of the State of Texas without regard to conflict-of-law principles.  Each of the Parties hereby submits to the jurisdiction of the Bankruptcy Court with respect to any disputes arising from or out of this Agreement.

*[Remainder of Page Blank]*

**IT IS HEREBY AGREED.**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____

Name: _____

Its: _____


**SENIOR EMPLOYEE**

By: _____

Name: _____

Its: _____

002591

Document comparison by Workshare 9.5 on Friday, December 18, 2020 6:30:29 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41454/6 |
| Description | DOCS_NY-#41454-v6-Highland_-_Senior_Employee_Stipulation |
| Document 2 ID | PowerDocs://DOCS_NY/41454/10 |
| Description | DOCS_NY-#41454-v10-Highland_-_Senior_Employee_Stipulation |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 71 |
| Deletions | 44 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 115 |

002592

Docket #1656 Date Filed 01/04/2021

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. | |

## DEBTOR'S NOTICE OF FILING OF PLAN SUPPLEMENT TO THE
## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P.

**PLEASE TAKE NOTICE** that, on November 13, 2020, Highland Capital Management,

L.P., the above-captioned debtor and debtor-in-possession (the "Debtor"), filed the *Debtor's*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



Dondero Ex. 5

*Notice of Filing of Supplement to Third Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1389] (the "Initial Supplement").   The Initial Supplement included Exhibits A-H to the *Third Amended Plan of Reorganization of Highland Capital Management, L.P.*, dated November 13, 2020 [Docket No. 1383] (the "Third Amended Plan").

**PLEASE TAKE NOTICE** that, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (the "Plan").

**PLEASE TAKE NOTICE** that Exhibits A-H to the Third Amended Plan are Exhibits A-H to the Plan (as such exhibits may be amended as set forth herein).

**PLEASE TAKE NOTICE** that, on December 18, 2020, the Debtor filed the *Debtor's Notice of Filing of Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*, [Docket No. 1606] (the "Second Supplement").   The Second Supplement included Exhibits I-K to the Plan.

**PLEASE TAKE NOTICE** that the Debtor hereby files the documents included herewith as **Exhibits L-P** (collectively, the "Plan Supplement") supplementing the Plan.

> **Exhibit L**:    Amended Schedule of Retained Causes of Action
>
> **Exhibit M**:    Amended Form of Claimant Trust Agreement
>
> **Exhibit N**:    Redline of Form of Claimant Trust Agreement
>
> **Exhibit O**:    Amended Form of Litigation Trust Agreement
>
> **Exhibit P**:    Redline of Form of Litigation Trust Agreement

**PLEASE TAKE FURTHER NOTICE** that this *Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Notice of Plan Supplement") is being served on parties-in-interest without the Plan Supplement

attached.  Any party-in-interest wishing to obtain copies of the Plan or the Plan Supplement may do so by contacting the Debtor's Solicitation Agent, KCC, at (i) 1-877-573-3984 (toll free) or 1-310-751-1829 (if international) or by email at HighlandInfo@kccllc.com, or (ii) viewing such documents by accessing them online at https://kccllc.net/HCMLP.  The documents are also available on the Court's website: www.txnb.uscourts.gov.  Please note that a PACER password and login are needed to access documents on the Court's website.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DOCS_NY:41894.1 36027/002

002595

Dated: January 4, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT L

002597

Schedule of Causes of Action

The Causes of Action shall include, *without limitation*, any cause of action based on the following:

breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, misappropriation of assets, misappropriation of trade secrets, unfair competition, breach of contract, breach of warranty, fraud, constructive fraud, negligence, gross negligence, fraudulent conveyance, fraudulent transfer, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, *quantum meruit*, unjust enrichment, abuse of process, alter ego, substantive consolidation, recharacterization, business disparagement, indemnity, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel, quasi-contract claims, any counterclaims, equitable subordination, avoidance actions provided for under sections 544 or 547 of the Bankruptcy Code, claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

The Causes of Action shall include, *without limitation*, any cause of action against the following persons and entities:

James Dondero, Mark Okada, Grant Scott, John Honis, any current or former insider of the Debtor, the Dugaboy Investment Trust, Charitable DAF Holdco, Ltd, Hunter Mountain Investment Trust, Nexbank Capital, Inc. Highland Capital Management Services, Inc., NexPoint Advisors GP, LLC, NexPoint Advisors, L.P., Strand Advisors XVI, Inc., Highland Capital Management Fund Advisors, L.P., NexAnnuity Holdings, Inc., the entities listed on the attached **Annex 1** hereto, any current or former employee of the Debtor, and any entity directly or indirectly owned, controlled, or operated for the benefit of the foregoing persons or entities.

The Causes of Action shall include, *without limitation*, any cause of action arising from the following transactions:

The transfer of ownership interests in the Debtor to Hunter Mountain Investment Trust, the creation or transfer of any notes receivable from the Debtor or from any entity related to the Debtor, the creation or transfer of assets to or from any charitable foundation or trust, the formation, performance, or breach of any contract for the Debtor to provide investment management, support services, or any other services, and the distribution of assets or cash from the Debtor to partners of the Debtor.

## Annex 1

11 Estates Lane, LLC
1110 Waters, LLC
140 Albany, LLC
1525 Dragon, LLC
17720 Dickerson, LLC
1905 Wylie LLC
2006 Milam East Partners GP, LLC
2006 Milam East Partners, L.P.
201 Tarrant Partners, LLC
2014 Corpus Weber Road LLC
2325 Stemmons HoldCo, LLC
2325 Stemmons Hotel Partners, LLC
2325 Stemmons TRS, Inc.
300 Lamar, LLC
3409 Rosedale, LLC
3801 Maplewood, LLC
3801 Shenandoah, L.P.
3820 Goar Park LLC
400 Seaman, LLC
401 Ame, L.P.
4201 Locust, L.P.
4312 Belclaire, LLC
5833 Woodland, L.P.
5906 DeLoache, LLC
5950 DeLoache, LLC
7758 Ronnie, LLC
7759 Ronnie, LLC
AA Shotguns, LLC
Aberdeen Loan Funding, Ltd.
Acis CLO 2017-7 Ltd
Acis CLO Management GP, LLC
Acis CLO Management GP, LLC (fka Acis CLO Opportunity Funds GP, LLC)
Acis CLO Management Holdings, L.P.
Acis CLO Management Intermediate Holdings I, LLC
Acis CLO Management Intermediate Holdings II, LLC
Acis CLO Management, LLC (fka Acis CLO Opportunity Funds SLP, LLC)
Acis CLO Trust

Acis CLO Value Fund II Charitable DAF Ltd.
Acis CMOA Trust
Advisors Equity Group LLC
Alamo Manhattan Hotel I, LLC (Third Party)
Allenby, LLC
Allisonville RE Holdings, LLC
AM Uptown Hotel, LLC
Apex Care, L.P
Asbury Holdings, LLC (fka HCSLR Camelback Investors (Delaware), LLC)
Ascendant Advisors
Atlas IDF GP, LLC
Atlas IDF, LP
BB Votorantim Highland Infrastructure, LLC
BDC Toys Holdco, LLC
Beacon Mountain, LLC
Bedell Trust Ireland Limited (Charitable trust account)
Ben Roby (third party)
BH Equities, LLC
BH Heron Pointe, LLC
BH Hollister, LLC
BH Willowdale Manager, LLC
Big Spring Partners, LLC
Blair Investment Partners, LLC
Bloomdale, LLC
Brave Holdings III Inc.
Brentwood CLO, Ltd.
Brentwood Investors Corp.
Brian Mitts
Bristol Bay Funding Ltd.
Bristol Bay Funding, Ltd.
BVP Property, LLC
C-1 Arbors, Inc.
C-1 Cutter's Point, Inc.
C-1 Eaglecrest, Inc.
C-1 Silverbrook, Inc.
Cabi Holdco GP, LLC
Cabi Holdco I, Ltd
Cabi Holdco I, Ltd.

Cabi Holdco, L.P.

California Public Employees' Retirement System

Camelback Residential Investors, LLC

Camelback Residential Investors, LLC *(fka Sevilla Residential Partners, LLC)*

Camelback Residential Partners, LLC

Capital Real Estate - Latitude, LLC

Castle Bio Manager, LLC

Castle Bio, LLC

CG Works, Inc.

CG Works, Inc. (fka Common Grace Ventures, Inc.)

Charitable DAF Fund, L.P.

Charitable DAF GP, LLC

Charitable DAF HoldCo, Ltd

Charitable DAF HoldCo, Ltd.

Claymore Holdings, LLC

CLO HoldCo, Ltd

CLO Holdco, Ltd.

Corbusier, Ltd.

Cornerstone Healthcare Group Holding, Inc.

Corpus Weber Road Member LLC

CP Equity Hotel Owner, LLC

CP Equity Land Owner, LLC

CP Equity Owner, LLC

CP Hotel TRS, LLC

CP Land Owner, LLC

CP Tower Owner, LLC

CRE - Lat, LLC

Credit Suisse, Cayman Islands Branch

Crossings 2017 LLC

Crown Global Insurance Company (third party)

Dallas Cityplace MF SPE Owner LLC

Dallas Lease and Finance, L.P.

Dana Scott Breault
James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Dana Sprong (Third Party)

David c. Hopson

De Kooning, Ltd.

deKooning, Ltd.

DFA/BH Autumn Ridge, LLC

Dolomiti, LLC

DrugCrafters, L.P.

Dugaboy Investment Trust

Dugaboy Management, LLC

Dugaboy Project Management GP, LLC

Eagle Equity Advisors, LLC

Eames, Ltd.

Eastland CLO, Ltd.

Eastland Investors Corp.

EDS Legacy Heliport, LLC

EDS Legacy Partners Owner, LLC

EDS Legacy Partners, LLC

Empower Dallas Foundation, Inc.

ENA 41, LLC

Entegra Strat Superholdco, LLC

Entegra-FRO Holdco, LLC

Entegra-FRO Superholdco, LLC

Entegra-HOCF Holdco, LLC

Entegra-NHF Holdco, LLC

Entegra-NHF Superholdco, LLC

Entegra-RCP Holdco, LLC

Estates on Maryland Holdco, LLC

Estates on Maryland Owners SM, Inc.

Estates on Maryland Owners, LLC

Estates on Maryland, LLC

Falcon E&P Four Holdings, LLC

Falcon E&P One, LLC

Falcon E&P Opportunities Fund, L.P.

Falcon E&P Opportunities GP, LLC

Falcon E&P Royalty Holdings, LLC

Falcon E&P Six, LLC

Falcon E&P Two, LLC

Falcon Four Midstream, LLC

Falcon Four Upstream, LLC

Falcon Incentive Partners GP, LLC

Falcon Incentive Partners, LP

Falcon Six Midstream, LLC

Flamingo Vegas Holdco, LLC *(fka Cabi Holdco, LLC)*

Four Rivers Co-Invest GP, LLC

Four Rivers Co-Invest, L.P.

002600

FRBH Abbington SM, Inc.

FRBH Abbington, LLC

FRBH Arbors, LLC

FRBH Beechwood SM, Inc.

FRBH Beechwood, LLC

FRBH C1 Residential, LLC

FRBH Courtney Cove SM, Inc.

FRBH Courtney Cove, LLC

FRBH CP, LLC

FRBH Duck Creek, LLC

FRBH Eaglecrest, LLC

FRBH Edgewater JV, LLC

FRBH Edgewater Owner, LLC

FRBH Edgewater SM, Inc.

FRBH JAX-TPA, LLC

FRBH Nashville Residential, LLC

FRBH Regatta Bay, LLC

FRBH Sabal Park SM, Inc.

FRBH Sabal Park, LLC

FRBH Silverbrook, LLC

FRBH Timberglen, LLC

FRBH Willow Grove SM, Inc.

FRBH Willow Grove, LLC

FRBH Woodbridge SM, Inc.

FRBH Woodbridge, LLC

Freedom C1 Residential, LLC

Freedom Duck Creek, LLC

Freedom Edgewater, LLC

Freedom JAX-TPA Residential, LLC

Freedom La Mirage, LLC

Freedom LHV LLC

Freedom Lubbock LLC

Freedom Miramar Apartments, LLC

Freedom Sandstone, LLC

Freedom Willowdale, LLC

Fundo de Investimento em Direitos Creditorios BB Votorantim Highland Infraestrutura

G&E Apartment REIT The Heights at Olde Towne, LLC

G&E Apartment REIT The Myrtles at Olde Towne, LLC

GAF REIT, LLC

GAF Toys Holdco, LLC

Gardens of Denton II, L.P.

Gardens of Denton III, L.P.

Gleneagles CLO, Ltd.

Goverannce RE, Ltd.

Governance Re, Ltd.

Governance, Ltd.

Grant Scott

Grant Scott, Trustee of The SLHC Trust

Grayson CLO, Ltd.

Grayson Investors Corp.

Greater Kansas City Community Foundation (third party)

Greenbriar CLO, Ltd.

Greg Busseyt

Gunwale LLC

Gunwale, LLC

Hakusan, LLC

Hammark Holdings LLC

Hampton Ridge Partners, LLC

Harbourvest Entities

Harko, LLC

Harry Bookey/Pam Bookey (third party)

Haverhill Acquisition Co., LLC

Haygood, LLC

HB 2015 Family LP (third party)

HCBH 11611 Ferguson, LLC

HCBH Buffalo Pointe II, LLC

HCBH Buffalo Pointe III, LLC

HCBH Buffalo Pointe, LLC

HCBH Hampton Woods SM, Inc.

HCBH Hampton Woods, LLC

HCBH Overlook SM, Inc.

HCBH Overlook, LLC

HCBH Rent Investors, LLC

HCMS Falcon GP, LLC

HCMS Falcon, L.P.

HCO Holdings, LLC

HCOF Preferred Holdings, L.P.

HCOF Preferred Holdings, LP

HCOF Preferred Holdings, Ltd.

HCRE 1775 James Ave, LLC

HCRE Addison TRS, LLC

002601

HCRE Addison, LLC *(fka HWS Addison, LLC)*

HCRE Hotel Partner, LLC *(fka HCRE HWS Partner, LLC)*

HCRE Las Colinas TRS, LLC

HCRE Las Colinas, LLC *(fka HWS Las Colinas, LLC)*

HCRE Plano TRS, LLC

HCRE Plano, LLC *(fka HWS Plano, LLC)*

HCREF-I Holding Corp.

HCREF-II Holding Corp.

HCREF-III Holding Corp.

HCREF-IV Holding Corp.

HCREF-IX Holding Corp.

HCREF-V Holding Corp.

HCREF-VI Holding Corp.

HCREF-VII Holding Corp.

HCREF-VIII Holding Corp.

HCREF-XI Holding Corp.

HCREF-XII Holding Corp.

HCREF-XIII Holding Corp.

HCREF-XIV Holding Corp.

HCREF-XV Holding Corp.

HCSLR Camelback Investors (Cayman), Ltd.

HCSLR Camelback, LLC

HCT Holdco 2 Ltd.

HCT Holdco 2, Ltd.

HE 41, LLC

HE Capital 232 Phase I Property, LLC

HE Capital 232 Phase I, LLC

HE Capital Asante, LLC

HE Capital Fox Trails, LLC

HE Capital KR, LLC

HE Capital, LLC

HE CLO Holdco, LLC

HE Mezz Fox Trails, LLC

HE Mezz KR, LLC

HE Peoria Place Property, LLC

HE Peoria Place, LLC

Heron Pointe Investors, LLC

Hewett's Island CLO I-R, Ltd.

HFP Asset Funding II, Ltd.

HFP Asset Funding III, Ltd.

HFP CDO Construction Corp.

HFP GP, LLC

HFRO Sub, LLC

Hibiscus HoldCo, LLC

Highland - First Foundation Income Fund

Highland 401(k) Plan

Highland 401K Plan

Highland Argentina Regional Opportunity Fund GP, LLC

Highland Argentina Regional Opportunity Fund, L.P.

Highland Argentina Regional Opportunity Fund, Ltd.

Highland Argentina Regional Opportunity Master Fund, L.P.

Highland Brasil, LLC

Highland Capital Brasil Gestora de Recursos *(fka Highland Brasilinvest Gestora de Recursos, LTDA; fka HBI Consultoria Empresarial, LTDA)*

Highland Capital Management (Singapore) Pte Ltd

Highland Capital Management AG

Highland Capital Management AG (Highland Capital Management SA) (Highland Capital Management Ltd)

Highland Capital Management Fund Advisors, L.P.

Highland Capital Management Fund Advisors, L.P. *(fka Pyxis Capital, L.P.)*

Highland Capital Management Korea Limited

Highland Capital Management Latin America, L.P.

Highland Capital Management LP Retirement Plan and Trust

Highland Capital Management Multi-Strategy Insurance Dedicated Fund, L.P.

Highland Capital Management Real Estate Holdings I, LLC

Highland Capital Management Real Estate Holdings II, LLC

Highland Capital Management Services, Inc.

Highland Capital Management, L.P.

Highland Capital Management, L.P. Charitable Fund

Highland Capital Management, L.P. Retirement Plan and Trust

Highland Capital Management, L.P., as trustee of Acis CMOA Trust and nominiee for and on behalf of Highland CLO Assets Holdings Limited

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominiee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, LP

Highland Capital Management, LP Charitable Fund

Highland Capital Multi-Strategy Fund, LP

Highland Capital of New York, Inc.

Highland Capital Special Allocation, LLC

Highland CDO Holding Company

Highland CDO Opportunity Fund GP, L.P.

Highland CDO Opportunity Fund, L.P.

Highland CDO Opportunity Fund, Ltd.

Highland CDO Opportunity GP, LLC

Highland CDO Opportunity Master Fund, L.P.

Highland CDO Trust

Highland CLO 2018-1, Ltd.

Highland CLO Assets Holdings Limited

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd. *(fka Acis Loan Funding, Ltd.)*

Highland CLO Gaming Holdings, LLC

Highland CLO Holdings Ltd.

Highland CLO Holdings, Ltd. (as of 12.19.17)

Highland CLO Management Ltd.

Highland CLO Trust

Highland Credit Opportunities CDO Asset Holdings GP, Ltd.

Highland Credit Opportunities CDO Asset Holdings, L.P.

Highland Credit Opportunities CDO Financing, LLC

Highland Credit Opportunities CDO, Ltd.

Highland Credit Opportunities Holding Corporation

Highland Credit Opportunities Japanese Feeder Sub-Trust

Highland Credit Opportunities Japanese Unit Trust (Third Party)

Highland Credit Strategies Fund, L.P.

Highland Credit Strategies Fund, Ltd.

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Master Fund, L.P.

Highland Dallas Foundation, Inc.

Highland Dynamic Income Fund GP, LLC

Highland Dynamic Income Fund GP, LLC *(fka Highland Capital Loan GP, LLC)*

Highland Dynamic Income Fund, L.P.

Highland Dynamic Income Fund, L.P. *(fka Highland Capital Loan Fund, L.P.)*

Highland Dynamic Income Fund, Ltd.

Highland Dynamic Income Fund, Ltd. *(fka Highland Loan Fund, Ltd.)*

Highland Dynamic Income Master Fund, L.P.

Highland Dynamic Income Master Fund, L.P. *(fka Highland Loan Master Fund, L.P.)*

Highland Employee Retention Assets LLC

Highland Energy Holdings, LLC

Highland Energy MLP Fund *(fka Highland Energy and Materials Fund)*

Highland Equity Focus Fund, L.P.

Highland ERA Management, LLC

Highland eSports Private Equity Fund

Highland Financial Corp.

Highland Financial Partners, L.P.

Highland Fixed Income Fund

Highland Flexible Income UCITS Fund

Highland Floating Rate Fund

Highland Floating Rate Opportunites Fund

Highland Floating Rate Opportunities Fund

Highland Fund Holdings, LLC

Highland Funds I

Highland Funds II

Highland Funds III

Highland GAF Chemical Holdings, LLC

Highland General Partner, LP

Highland Global Allocation Fund

Highland Global Allocation Fund
*(fka Highland Global Allocation Fund II)*

Highland GP Holdings, LLC

Highland HCF Advisor Ltd.

Highland HCF Advisor, Ltd., as Trustee for
and on behalf of Acis CLO Trust, as nominee
for and on behalf of Highland CLO Funding,
Ltd. (as of 3.29.18)

Highland Healthcare Equity Income and
Growth Fund

Highland iBoxx Senior Loan ETF

Highland Income Fund

Highland Income Fund *(fka Highland
Floating Rate Opportunities Fund)*

Highland Kansas City Foundation, Inc.

Highland Latin America Consulting, Ltd.

Highland Latin America GP, Ltd.

Highland Latin America LP, Ltd.

Highland Latin America Trust

Highland Legacy Limited

Highland LF Chemical Holdings, LLC

Highland Loan Funding V, LLC

Highland Loan Funding V, Ltd.

Highland Long/Short Equity Fund

Highland Long/Short Healthcare Fund

Highland Marcal Holding, Inc.

Highland Merger Arbitrage Fund

Highland Multi Strategy Credit Fund GP, L.P.

Highland Multi Strategy Credit Fund GP, L.P.
*(fka Highland Credit Opportunities CDO GP,
L.P.)*

Highland Multi Strategy Credit Fund, L.P.

Highland Multi Strategy Credit Fund, L.P. *(fka
Highland Credit Opportunities Fund, L.P., fka
Highland Credit Opportunities CDO, L.P.)*

Highland Multi Strategy Credit Fund, Ltd.

Highland Multi Strategy Credit Fund, Ltd. *(fka
Highland Credit Opportunities Fund, Ltd.)*

Highland Multi Strategy Credit GP, LLC

Highland Multi Strategy Credit GP, LLC *(fka
Highland Credit Opportunities CDO GP, LLC)*

Highland Multi-Strategy Fund GP, LLC

Highland Multi-Strategy Fund GP, LP

Highland Multi-Strategy IDF GP, LLC

Highland Multi-Strategy Master Fund, L.P.

Highland Multi-Strategy Master Fund, LP

Highland Multi-Strategy Onshore Master
SubFund II, LLC

Highland Multi-Strategy Onshore Master
Subfund, LLC

Highland Opportunistic Credit Fund

Highland Park CDO 1, Ltd.

Highland Park CDO I, Ltd.

Highland Premier Growth Equity Fund

Highland Premium Energy & Materials Fund

Highland Prometheus Feeder Fund I, L.P.

Highland Prometheus Feeder Fund I, LP

Highland Prometheus Feeder Fund II, L.P.

Highland Prometheus Feeder Fund II, LP

Highland Prometheus Master Fund, L.P.

Highland Receivables Finance I, LLC

Highland Restoration Capital Partners GP,
LLC

Highland Restoration Capital Partners Master,
L.P.

Highland Restoration Capital Partners
Offshore, L.P.

Highland Restoration Capital Partners, L.P.

Highland Santa Barbara Foundation, Inc.

Highland Select Equity Fund GP, L.P.

Highland Select Equity Fund, L.P.

Highland Select Equity GP, LLC

Highland Select Equity Master Fund, L.P.

Highland Small-Cap Equity Fund

Highland Socially Responsible Equity Fund

Highland Socially Responsible Equity Fund
*(fka Highland Premier Growth Equity Fund)*

Highland Special Opportunities Holding Company

Highland SunBridge GP, LLC

Highland Tax-Exempt Fund

Highland TCI Holding Company, LLC

Highland Total Return Fund

Highland's Roads Land Holding Company, LLC

Hirst, Ltd.

HMCF PB Investors, LLC

HMx2 Investment Trust
(Matt McGraner)

Hockney, Ltd.

HRT North Atlanta, LLC

HRT Timber Creek, LLC

HRTBH North Atlanta, LLC

HRTBH Timber Creek, LLC

Huber Funding LLC

Hunter Mountain Investment Trust

HWS Investors Holdco, LLC

Internal Investors

Intertrust

James D. Dondero
Reese Avry Dondero
Jameson Drue Dondero

James Dondero

James Dondero and Mark Okada

James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Japan Trustee Services Bank, Ltd.

Jasper CLO, Ltd.

Jewelry Ventures I, LLC

JMIJM, LLC

Joanna E. Milne Irrevocable Trust dated Nov 25 1998 (third party)

John Honis

John L. Holt, Jr.

John R. Sears, Jr.

Karisopolis, LLC

Keelhaul LLC

KHM Interests, LLC (third party)

Kuilima Montalban Holdings, LLC

Kuilima Resort Holdco, LLC

KV Cameron Creek Owner, LLC

Lakes at Renaissance Park Apartments Investors, L.P.

Lakeside Lane, LLC

Landmark Battleground Park II, LLC

Lane Britain

Larry K. Anders

LAT Battleground Park, LLC

LAT Briley Parkway, LLC

Lautner, Ltd.

Leawood RE Holdings, LLC

Liberty Cayman Holdings, Ltd.

Liberty CLO Holdco, Ltd.

Liberty CLO, Ltd.

Liberty Sub, Ltd.

Long Short Equity Sub, LLC

Longhorn Credit Funding LLC

Longhorn Credit Funding LLC - A

Longhorn Credit Funding LLC - B

Longhorn Credit Funding LLC (LHB)

Longhorn Credit Funding, LLC

Lurin Real Estate Holdings V, LLC

Maple Avenue Holdings, LLC

MaplesFS Limited

Marc C. Manzo

Mark and Pam Okada Family Trust - Exempt Descendants' Trust

Mark and Pam Okada Family Trust - Exempt Trust #2

Mark and Pamela Okada Family Trust - Exempt Descendants' Trust

Mark and Pamela Okada Family Trust - Exempt Descendants' Trust #2

Mark and Pamela Okada Family Trust - Exempt Trust #2

Mark K. Okada

Mark Okada

002605

Mark Okada and Pam Okada

Mark Okada and Pam Okada, as joint owners

Mark Okada/Pamela Okada

Markham Fine Jewelers, L.P.

Markham Fine Jewelers, LP

Matt McGraner

Meritage Residential Partners, LLC

MGM Studios HoldCo, Ltd.

Michael Rossi

ML CLO XIX Sterling (Cayman), Ltd.

N/A

Nancy Dondero

NCI Apache Trail LLC

NCI Assets Holding Company LLC

NCI Country Club LLC

NCI Fort Worth Land LLC

NCI Front Beach Road LLC

NCI Minerals LLC

NCI Royse City Land LLC

NCI Stewart Creek LLC

NCI Storage, LLC

Neil Labatte

Neutra, Ltd.

New Jersey Tissue Company Holdco, LLC
*(fka Marcal Paper Mills Holding Company, LLC)*

NexAnnuity Holdings, Inc.

NexBank Capital Trust I

NexBank Capital, Inc.

NexBank Land Advisors, Inc.

NexBank Securities Inc.

NexBank Securities, Inc.

NexBank SSB

NexBank Title, Inc.
(dba NexVantage Title Services)

NexBank, SSB

NexPoint Advisors GP, LLC

NexPoint Advisors, L.P.

NexPoint Capital REIT, LLC

NexPoint Capital, Inc.

NexPoint Capital, Inc. *(fka NexPoint Capital, LLC)*

NexPoint CR F/H DST, LLC

NexPoint Credit Strategies Fund

NexPoint Discount Strategies Fund
*(fka NexPoint Discount Yield Fund)*

NexPoint DRIP

NexPoint Energy and Materials Opportunities
Fund *(fka NexPoint Energy Opportunities Fund)*

NexPoint Event-Driven Fund
*(fkaNexPoint Merger Arbitrage Fund)*

NexPoint Flamingo DST

NexPoint Flamingo Investment Co, LLC

NexPoint Flamingo Leaseco, LLC

NexPoint Flamingo Manager, LlC

NexPoint Flamingo Property Manager, LlC

NexPoint Healthcare Opportunities Fund

NexPoint Hospitality Trust

NexPoint Hospitality, Inc.

NexPoint Hospitality, LLC

NexPoint Insurance Distributors, LLC

NexPoint Insurance Solutions GP, LLC

NexPoint Insurance Solutions GP, LLC
*(fka Highland Capital Insurance Solutions GP, LLC)*

NexPoint Insurance Solutions, L.P.
*(fka Highland Capital Insurance Solutions, L.P.)*

NexPoint Latin American Opportunities Fund

NexPoint Legacy 22, LLC

NexPoint Lincoln Porte Equity, LLC

NexPoint Lincoln Porte Manager, LLC

NexPoint Lincoln Porte, LLC
*(fka NREA Lincoln Porte, LLC)*

NexPoint Multifamily Capital Trust, Inc.

NexPoint Multifamily Capital Trust, Inc.
*(fka NexPoint Multifamily Realty Trust, Inc., fka Highland Capital Realty Trust, Inc.)*

NexPoint Multifamily Operating Partnership,
L.P.

NexPoint Peoria, LLC

NexPoint Polo Glen DST

NexPoint Polo Glen Holdings, LLC

NexPoint Polo Glen Investment Co, LLC

NexPoint Polo Glen Leaseco, LLC

NexPoint Polo Glen Manager, LLC

NexPoint RE Finance Advisor GP, LLC

NexPoint RE Finance Advisor, L.P.

NexPoint Real Estate Advisors GP, LLC

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors III, L.P.

NexPoint Real Estate Advisors IV, L.P.

NexPoint Real Estate Advisors V, L.P.

NexPoint Real Estate Advisors VI, L.P.

NexPoint Real Estate Advisors VII GP, LLC

NexPoint Real Estate Advisors VII, L.P.

NexPoint Real Estate Advisors VIII, L.P.

NexPoint Real Estate Advisors, L.P.

NexPoint Real Estate Capital, LLC

NexPoint Real Estate Capital, LLC *(fka Highland Real Estate Capital, LLC, fka Highland Multifamily Credit Fund, LLC)*

NexPoint Real Estate Finance OP GP, LLC

NexPoint Real Estate Finance Operating Partnership, L.P.

NexPoint Real Estate Finance, Inc.

NexPoint Real Estate Opportunities, LLC

NexPoint Real Estate Opportunities, LLC *(fka Freedom REIT LLC)*

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Strategies Fund

NexPoint Residential Trust Inc.

NexPoint Residential Trust Operating Partnership GP, LLC

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust, Inc.

NexPoint Securities, Inc.
*(fka Highland Capital Funds Distributor, Inc.)*
*(fka Pyxis Distributors, Inc.)*

NexPoint Strategic Income Fund
*(fka NexPoint Opportunistic Credit Fund, fka NexPoint Distressed Strategies Fund)*

NexPoint Strategic Opportunities Fund

NexPoint Strategic Opportunities Fund
*(fka NexPoint Credit Strategies Fund)*

NexPoint Texas Multifamily Portfolio DST
*(fka NREA Southeast Portfolio Two, DST)*

NexPoint WLIF I Borrower, LLC

NexPoint WLIF I, LLC

NexPoint WLIF II Borrower, LLC

NexPoint WLIF II, LLC

NexPoint WLIF III Borrower, LLC

NexPoint WLIF III, LLC

NexPoint WLIF, LLC (Series I)

NexPoint WLIF, LLC (Series II)

NexPoint WLIF, LLC (Series III)

NexStrat LLC

NexVest, LLC

NexWash LLC

NFRO REIT Sub, LLC

NFRO TRS, LLC

NHF CCD, Inc.

NHT 2325 Stemmons, LLC

NHT Beaverton TRS, LLC
*(fka NREA Hotel TRS, Inc.)*

NHT Beaverton, LLC

NHT Bend TRS, LLC

NHT Bend, LLC

NHT Destin TRS, LLC

NHT Destin, LLC

NHT DFW Portfolio, LLC

NHT Holdco, LLC

NHT Holdings, LLC

NHT Intermediary, LLC

NHT Nashville TRS, LLC

NHT Nashville, LLC

NHT Olympia TRS, LLC

NHT Olympia, LLC

NHT Operating Partnership GP, LLC

NHT Operating Partnership II, LLC

NHT Operating Partnership, LLC

NHT Salem, LLC

002607

NHT SP Parent, LLC
NHT SP TRS, LLC
NHT SP, LLC
NHT Tigard TRS, LLC
NHT Tigard, LLC
NHT TRS, Inc.
NHT Uptown, LLC
NHT Vancouver TRS, LLC
NHT Vancouver, LLC
NLA Assets LLC
NMRT TRS, Inc.
NREA Adair DST Manager, LLC
NREA Adair Investment Co, LLC
NREA Adair Joint Venture, LLC
NREA Adair Leaseco Manager, LLC
NREA Adair Leaseco, LLC
NREA Adair Property Manager LLC
NREA Adair, DST
NREA Ashley Village Investors, LLC
NREA Cameron Creek Investors, LLC
NREA Cityplace Hue Investors, LLC
NREA Crossing Investors LLC
NREA Crossings Investors, LLC
NREA Crossings Ridgewood Coinvestment, LLC *(fka NREA Crossings Ridgewood Investors, LLC)*
NREA DST Holdings, LLC
NREA El Camino Investors, LLC
NREA Estates Inc.
NREA Estates Investment Co, LLC
NREA Estates Leaseco, LLC
NREA Estates Manager, LLC
NREA Estates Property Manager, LLC
NREA Estates, DST
NREA Gardens DST Manager LLC
NREA Gardens DST Manager, LLC
NREA Gardens Investment Co, LLC
NREA Gardens Leaseco Manager, LLC
NREA Gardens Leaseco, LLC
NREA Gardens Property Manager, LLC
NREA Gardens Springing LLC
NREA Gardens Springing Manager, LLC
NREA Gardens, DST

NREA Hidden Lake Investment Co, LLC
NREA Hue Investors, LLC
NREA Keystone Investors, LLC
NREA Meritage Inc.
NREA Meritage Investment Co, LLC
NREA Meritage Leaseco, LLC
NREA Meritage Manager, LLC
NREA Meritage Property Manager, LLC
NREA Meritage, DST
NREA Oaks Investors, LLC
NREA Retreat Investment Co, LLC
NREA Retreat Leaseco, LLC
NREA Retreat Manager, LLC
NREA Retreat Property Manager, LLC
NREA Retreat, DST
NREA SE MF Holdings LLC
NREA SE MF Holdings, LLC
NREA SE MF Investment Co, LLC
NREA SE MF Investment Co, LLC
NREA SE Multifamily LLC
NREA SE Multifamily, LLC
NREA SE One Property Manager, LLC
NREA SE Three Property Manager, LLC
NREA SE Two  Property Manager, LLC
NREA SE1 Andros Isles Leaseco, LLC
NREA SE1 Andros Isles Manager, LLC
NREA SE1 Andros Isles, DST
(Converted from DK Gateway Andros, LLC)
NREA SE1 Arborwalk Leaseco, LLC
NREA SE1 Arborwalk Manager, LLC
NREA SE1 Arborwalk, DST
(Converted from MAR Arborwalk, LLC)
NREA SE1 Towne Crossing Leaseco, LLC
NREA SE1 Towne Crossing Manager, LLC
NREA SE1 Towne Crossing, DST
(Converted from Apartment REIT Towne Crossing, LP)
NREA SE1 Walker Ranch Leaseco, LLC
NREA SE1 Walker Ranch Manager, LLC
NREA SE1 Walker Ranch, DST
(Converted from SOF Walker Ranch Owner, L.P.)
NREA SE2 Hidden Lake Leaseco, LLC

NREA SE2 Hidden Lake Manager, LLC
NREA SE2 Hidden Lake, DST
NREA SE2 Hidden Lake, DST
(Converted from SOF Hidden Lake SA Owner, L.P.)

NREA SE2 Vista Ridge Leaseco, LLC
NREA SE2 Vista Ridge Manager, LLC
NREA SE2 Vista Ridge, DST
NREA SE2 Vista Ridge, DST
(Converted from MAR Vista Ridge, L.P.)

NREA SE2 West Place Leaseco, LLC
NREA SE2 West Place Manager, LLC
NREA SE2 West Place, DST
(Converted from Landmark at West Place, LLC)

NREA SE3 Arboleda Leaseco, LLC
NREA SE3 Arboleda Manager, LLC
NREA SE3 Arboleda, DST
(Converted from G&E Apartment REIT Arboleda, LLC)

NREA SE3 Fairways Leaseco, LLC
NREA SE3 Fairways Manager, LLC
NREA SE3 Fairways, DST
(Converted from MAR Fairways, LLC)

NREA SE3 Grand Oasis Leaseco, LLC
NREA SE3 Grand Oasis Manager, LLC
NREA SE3 Grand Oasis, DST
(Converted from Landmark at Grand Oasis, LP)

NREA Southeast Portfolio One Manager, LLC
NREA Southeast Portfolio One, DST
NREA Southeast Portfolio One, DST
NREA Southeast Portfolio Three Manager, LLC
NREA Southeast Portfolio Three, DST
NREA Southeast Portfolio Three, DST
NREA Southeast Portfolio Two Manager, LLC
NREA Southeast Portfolio Two, DST
NREA Southeast Portfolio Two, LLC
NREA SOV Investors, LLC
NREA Uptown TRS, LLC
NREA VB I LLC
NREA VB II LLC

NREA VB III LLC
NREA VB IV LLC
NREA VB Pledgor I LLC
NREA VB Pledgor I, LLC
NREA VB Pledgor II LLC
NREA VB Pledgor II, LLC
NREA VB Pledgor III LLC
NREA VB Pledgor III, LLC
NREA VB Pledgor IV LLC
NREA VB Pledgor IV, LLC
NREA VB Pledgor V LLC
NREA VB Pledgor V, LLC
NREA VB Pledgor VI LLC
NREA VB Pledgor VI, LLC
NREA VB Pledgor VII LLC
NREA VB Pledgor VII, LLC
NREA VB SM, Inc.
NREA VB V LLC
NREA VB VI LLC
NREA VB VII LLC
NREA Vista Ridge Investment Co, LLC
NREC AR Investors, LLC
NREC BM Investors, LLC
NREC BP Investors, LLC
NREC Latitude Investors, LLC
NREC REIT Sub, Inc.
NREC TRS, Inc.
NREC WW Investors, LLC
NREF OP I Holdco, LLC
NREF OP I SubHoldco, LLC
NREF OP I, L.P.
NREF OP II Holdco, LLC
NREF OP II SubHoldco, LLC
NREF OP II, L.P.
NREF OP IV REIT Sub TRS, LLC
NREF OP IV REIT Sub, LLC
NREF OP IV, L.P.
NREO NW Hospitality Mezz, LLC
NREO NW Hospitality, LLC
NREO Perilune, LLC
NREO SAFStor Investors, LLC
NREO TRS, Inc.
NRESF REIT Sub, LLC

NXRT Abbington, LLC

NXRT Atera II, LLC

NXRT Atera, LLC

NXRT AZ2, LLC

NXRT Barrington Mill, LLC

NXRT Bayberry, LLC

NXRT Bella Solara, LLC

NXRT Bella Vista, LLC

NXRT Bloom, LLC

NXRT Brandywine GP I, LLC

NXRT Brandywine GP I, LLC

NXRT Brandywine GP II, LLC

NXRT Brandywine GP II, LLC

NXRT Brandywine LP, LLC

NXRT Brandywine LP, LLC

NXRT Brentwood Owner, LLC

NXRT Brentwood, LLC

NXRT Cedar Pointe Tenant, LLC

NXRT Cedar Pointe, LLC

NXRT Cityview, LLC

NXRT Cornerstone, LLC

NXRT Crestmont, LLC

NXRT Crestmont, LLC

NXRT Enclave, LLC

NXRT Glenview, LLC

NXRT H2 TRS, LLC

NXRT Heritage, LLC

NXRT Hollister TRS LLC

NXRT Hollister, LLC

NXRT LAS 3, LLC

NXRT Master Tenant, LLC

NXRT Nashville Residential, LLC

NXRT Nashville Residential, LLC *(fka Freedom Nashville Residential, LLC)*

NXRT North Dallas 3, LLC

NXRT Old Farm, LLC

NXRT Pembroke Owner, LLC

NXRT Pembroke, LLC

NXRT PHX 3, LLC

NXRT Radbourne Lake, LLC

NXRT Rockledge, LLC

NXRT Sabal Palms, LLC

NXRT SM, Inc.

NXRT Steeplechase, LLC

NXRT Stone Creek, LLC

NXRT Summers Landing GP, LLC

NXRT Summers Landing LP, LLC

NXRT Torreyana, LLC

NXRT Vanderbilt, LLC

NXRT West Place, LLC

NXRTBH AZ2, LLC

NXRTBH Barrington Mill Owner, LLC

NXRTBH Barrington Mill SM, Inc.

NXRTBH Barrington Mill, LLC

NXRTBH Bayberry, LLC

NXRTBH Cityview, LLC

NXRTBH Colonnade, LLC

NXRTBH Cornerstone Owner, LLC

NXRTBH Cornerstone SM, Inc.

NXRTBH Cornerstone, LLC

NXRTBH Dana Point SM, Inc.

NXRTBH Dana Point, LLC

NXRTBH Foothill SM, Inc.

NXRTBH Foothill, LLC

NXRTBH Heatherstone SM, Inc.

NXRTBH Heatherstone, LLC

NXRTBH Hollister Tenant, LLC

NXRTBH Hollister, LLC

NXRTBH Madera SM, Inc.

NXRTBH Madera, LLC

NXRTBH McMillan, LLC

NXRTBH North Dallas 3, LLC

NXRTBH Old Farm II, LLC

NXRTBH Old Farm Tenant, LLC

NXRTBH Old Farm, LLC

NXRTBH Radbourne Lake, LLC

NXRTBH Rockledge, LLC

NXRTBH Sabal Palms, LLC

NXRTBH Steeplechase, LLC (dba Southpoint Reserve at Stoney Creek)-VA

NXRTBH Stone Creek, LLC

NXRTBH Vanderbilt, LLC

NXRTBH Versailles SM, Inc.

NXRTBH Versailles, LLC

Oak Holdco, LLC

Oaks CGC, LLC

Okada Family Revocable Trust
Oldenburg, Ltd.
Pam Capital Funding GP Co. Ltd.
Pam Capital Funding, L.P.
PamCo Cayman Ltd.
Park West 1700 Valley View Holdco, LLC
Park West 2021 Valley View Holdco, LLC
Park West Holdco, LLC
Park West Portfolio Holdco, LLC
Participants of Highland 401K Plan
Patrick Willoughby-McCabe
PCMG Trading Partners XXIII, L.P.
PCMG Trading Partners XXIII, LP
PDK Toys Holdco, LLC
Pear Ridge Partners, LLC
Penant Management GP, LLC
Penant Management LP
PensionDanmark Holding A/S
PensionDanmark
Pensionsforsikringsaktieselskab
Peoria Place Development, LLC
(30% cash contributions - profit participation
only)
Perilune Aero Equity Holdings One, LLC
Perilune Aviation LLC
PetroCap Incentive Holdings III. L.P.
PetroCap Incentive Partners II GP, LLC
PetroCap Incentive Partners II, L.P.
PetroCap Incentive Partners III GP, LLC
PetroCap Incentive Partners III, LP
PetroCap Management Company LLC
PetroCap Partners II GP, LLC
PetroCap Partners II, L.P.
PetroCap Partners III GP, LLC
PetroCap Partners III, L.P.
Pharmacy Ventures I, LLC
Pharmacy Ventures II, LLC
Pollack, Ltd.
Powderhorn, LLC
PWM1 Holdings, LLC
PWM1, LLC
Quest IRA, Inc FBO Jennifer G. Terry, IRA
#1467511

Quest, IRA, Inc. FBO Joshua N. Terry, IRA
#1467711
RADCO - Bay Meadows, LLLP
RADCO - Bay Park, LLLP
RADCO NREC Bay Meadows Holdings, LLC
RADCO NREC Bay Park Holdings, LLC
Ramarim, LLC
Rand Advisors Series I Insurance Fund
Rand Advisors Series II Insurance Fund
Rand Advisors, LLC
Rand PE Fund I, L.P.
Rand PE Fund I, L.P. - Series 1
Rand PE Fund Management, LLC
Rand PE Holdco, LLC
Realdania
Red River CLO, Ltd.
Red River Investors Corp.
Riverview Partners SC, LLC
Rockwall CDO II Ltd.
Rockwall CDO II, Ltd.
Rockwall CDO, Ltd.
Rockwall Investors Corp.
Rothko, Ltd.
RTT Bella Solara, LLC
RTT Bloom, LLC
RTT Financial, Inc.
RTT Hollister, LLC
RTT Rockledge, LLC
RTT Torreyana, LLC
SALI Fund Partners, LLC
San Diego County Employees Retirement
Association
Sandstone Pasadena Apartments, LLC
Sandstone Pasadena, LLC
Santa Barbara Foundation (third party)
Saturn Oil & Gas LLC
SBC Master Pension Trust
Scott Matthew Siekielski
SE Battleground Park, LLC
SE Battleground Park, LLC
SE Glenview, LLC
SE Governors Green Holdings, L.L.C.

002611

SE Governors Green Holdings, L.L.C.
*(fka SCG Atlas Governors Green Holdings, L.L.C.)*

SE Governors Green I, LLC

SE Governors Green II, LLC

SE Governors Green II, LLC

SE Governors Green REIT, L.L.C.

SE Governors Green REIT, L.L.C.
*(fka SCG Atlas Governors Green REIT, L.L.C.)*

SE Governors Green, LLC
*(fka SCG Atlas Governors Green, L.L.C.)*

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles LP, LLC

SE Gulfstream Isles LP, LLC

SE Heights at Olde Towne, LLC

SE Heights at Olde Towne, LLC

SE Lakes at Renaissance Park GP I, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park LP, LLC

SE Lakes at Renaissance Park LP, LLC

SE Multifamily Holdings LLC

SE Multifamily Holdings, LLC

SE Multifamily REIT Holdings LLC

SE Myrtles at Olde Towne, LLC

SE Myrtles at Olde Towne, LLC

SE Oak Mill I Holdings, LLC

SE Oak Mill I Holdings, LLC *(fka SCG Atlas Oak Mill I Holdings, L.L.C.)*

SE Oak Mill I Owner, LLC *(fka SCG Atlas Oak Mill I, L.L.C.)*

SE Oak Mill I REIT, LLC

SE Oak Mill I REIT, LLC *(fka SCG Atlas Oak Mill I REIT, L.L.C.)*

SE Oak Mill I, LLC

SE Oak Mill I, LLC

SE Oak Mill II Holdings, LLC

SE Oak Mill II Holdings, LLC *(fka SCG Atlas Oak Mill II Holdings, L.L.C.)*

SE Oak Mill II Owner, LLC *(fka SCG Atlas Oak Mill II, L.L.C.)*

SE Oak Mill II REIT, LLC

SE Oak Mill II REIT, LLC *(fka SCG Atlas Oak Mill II REIT, L.L.C.)*

SE Oak Mill II, LLC

SE Oak Mill II, LLC

SE Quail Landing, LLC

SE River Walk, LLC

SE Riverwalk, LLC

SE SM, Inc.

SE Stoney Ridge Holdings, L.L.C. *(fka SCG Atlas Stoney Ridge Holdings, L.L.C.)*

SE Stoney Ridge Holdings, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge REIT, L.L.C. *(fka SCG Atlas Stoney Ridge REIT, L.L.C.)*

SE Stoney Ridge REIT, LLC

SE Stoney Ridge, LLC *(fka SCG Atlas Stoney Ridge, L.L.C.)*

SE Victoria Park, LLC

SE Victoria Park, LLC

Sentinel Re Holdings, Ltd.

Sentinel Reinsurance Ltd.

SFH1, LLC

SFR WLIF I, LLC
*(fka NexPoint WLIF I, LLC)*

SFR WLIF II, LLC
*(NexPoint WLIF II, LLC)*

SFR WLIF III, LLC
*(NexPoint WLIF III, LLC)*

SFR WLIF Manager, LLC
*(NexPoint WLIF Manager, LLC)*

SFR WLIF, LLC
*(NexPoint WLIF, LLC)*

SFR WLIF, LLC Series I

SFR WLIF, LLC Series II

SFR WLIF, LLC Series III

SH Castle BioSciences, LLC

Small Cap Equity Sub, LLC

Socially Responsible Equity Sub, LLC

SOF Brandywine I Owner, L.P.

SOF Brandywine II Owner, L.P.

SOF-X GS Owner, L.P.

Southfork Cayman Holdings, Ltd.

Southfork CLO, Ltd.

Specialty Financial Products Designated Activity Company *(fka Specialty Financial Products Limited)*

Spiritus Life, Inc.

SRL Sponsor LLC

SRL Whisperwod LLC

SRL Whisperwood Member LLC

SRL Whisperwood Venture LLC

SSB Assets LLC

Starck, Ltd.

Stemmons Hospitality, LLC

Steve Shin

Stonebridge Capital, Inc.

Stonebridge-Highland Healthcare Private Equity Fund

Strand Advisors III, Inc.

Strand Advisors IV, LLC

Strand Advisors IX, LLC

Strand Advisors V, LLC

Strand Advisors XIII, LLC

Strand Advisors XVI, Inc.

Strand Advisors, Inc.

Stratford CLO, Ltd.

Summers Landing Apartment Investors, L.P.

Term Loan B (10% cash contributions - profit participation only)

The Dallas Foundation

The Dallas Foundation (third party)

The Dondero Insurance Rabbi Trust

The Dugaboy Investment Trust

The Dugaboy Investment Trust U/T/A Dated Nov 15, 2010

The Get Good Non-Exempt Trust No. 1

The Get Good Non-Exempt Trust No. 2

The Get Good Trust

The Mark and Pamela Okada Family Trust - Exempt Descendants' Trust

The Mark and Pamela Okada Family Trust - Exempt Trust #2

The Ohio State Life Insurance Company

The Okada Family Foundation, Inc.

The Okada Insurance Rabbi Trust

The SLHC Trust

The Trustees of Columbia University in the City of New York

The Twentysix Investment Trust (Third Party Investor)

Thomas A. Neville

Thread 55, LLC

Tihany, Ltd.

Todd Travers

Tranquility Lake Apartments Investors, L.P.

Tuscany Acquisition, LLC

Uptown at Cityplace Condominium Association, Inc.

US Gaming OpCo, LLC

US Gaming SPV, LLC

US Gaming, LLC

Valhalla CLO, Ltd.

VB GP LLC

VB Holding, LLC

VB One, LLC

VB OP Holdings LLC

VBAnnex C GP, LLC

VBAnnex C Ohio, LLC

VBAnnex C, LP

Ventoux Capital, LLC (Matt Goetz)

VineBrook Annex B, L.P.

VineBrook Annex I, L.P.

VineBrook Homes Merger Sub II LLC

VineBrook Homes Merger Sub LLC

VineBrook Homes OP GP, LLC

VineBrook Homes Operating Partnership, L.P.

VineBrook Homes Trust, Inc.

VineBrook Partners I, L.P.

VineBrook Partners II, L.P.

VineBrook Properties, LLC

Virginia Retirement System

Vizcaya Investment, LLC

002613

Wake LV Holdings II, Ltd.

Wake LV Holdings, Ltd.

Walter Holdco GP, LLC

Walter Holdco I, Ltd.

Walter Holdco, L.P.

Warhol, Ltd.

Warren Chang

Westchester CLO, Ltd.

William L. Britain

Wright Ltd.

Wright, Ltd.

Yellow Metal Merchants, Inc.

# EXHIBIT M

002615

*DRAFT*

# CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of _____ , 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "Debtor"), as settlor, and James P. Seery, Jr., as trustee (the "Claimant Trustee"), and [____] as Delaware trustee (the "Delaware Trustee," and together with the Debtor and the Claimant Trustee, the "Parties") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____ , 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve Disputed Claims as set forth herein and in the Plan; and

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2]    For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

(vi) administrative services relating to the activities of the Claimant Trust and relating to the implementation of the Plan can be performed by the Claimant Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor, the Claimant Trustee, and the Delaware Trustee have executed this Agreement for the benefit of the Claimant Trust Beneficiaries entitled to share in the Claimant Trust Assets and, at the direction of such Claimant Trust Beneficiaries as provided for in the Plan.

TO HAVE AND TO HOLD unto the Claimant Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust Beneficiaries, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Claimant Trust in accordance with Article IX hereof, this Claimant Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Claimant Trust Assets are to be strictly held and applied by the Claimant Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1    Certain Definitions.   Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.   For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Acis" means collectively, Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

(b)     "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(c)     "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, with respect to a Member, or to the extent applicable, the Claimant Trustee, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

2

002617

(d) "<u>Claimant Trust Agreement</u>" means this Agreement.

(e) "<u>Claimant Trustee</u>" means James P. Seery, Jr., as the initial "Claimant Trustee" hereunder and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of this Agreement.

(f) "<u>Claimant Trust</u>" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(g) "<u>Claimant Trust Assets</u>" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

(h) "<u>Claimant Trust Beneficiaries</u>" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

(i) "<u>Claimant Trust Expense Cash Reserve</u>" means $[•] million in Cash to be funded pursuant to the Plan into a bank account of the Claimant Trust on or before the Effective Date for the purpose of paying Claimant Trust Expenses in accordance herewith.

(j) "<u>Claimant Trust Expenses</u>" means the costs, expenses, liabilities and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust, and the fees and expenses of the Claimant Trustee and professional persons retained by the Claimant Trust or Claimant Trustee in accordance with this Agreement.

(k) "<u>Committee Member</u>" means a Member who is/was also a member of the Creditors' Committee.

(l) "<u>Conflicted Member</u>" has the meaning set forth in Section 4.6(c) hereof.

(m) "<u>Contingent Trust Interests</u>" means the contingent interests in the Claimant Trust to be distributed to Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests in accordance with the Plan.

002618

(n) "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, comprised of Acis, Meta-e Discovery, the Redeemer Committee and UBS.

(o) "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(p) "Delaware Trustee" has the meaning set forth in the introduction hereof.

(q) "Disability" means as a result of the Claimant Trustee's or a Member's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Claimant Trustee or the Member, as applicable, the Claimant Trustee or such Member has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(r) "Disinterested Members" has the meaning set forth in Section 4.1 hereof.

(s) "Disputed Claims Reserve" means the reserve account to be opened by the Claimant Trust on or after the Effective Date and funded in an initial amount determined by the Claimant Trustee [(in a manner consistent with the Plan and with the consent of a simple majority of the Oversight Board)] to be sufficient to pay Disputed Claims under the Plan.

(t) "Employees" means the employees of the Debtor set forth in the Plan Supplement.

(u) "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(v) "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(w) "Equity Trust Interests" has the meaning given to it in Section 5.1(c) hereof.

(x) "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(y) "General Unsecured Claim Trust Interests" means interests in the Claimant Trust to be distributed to Holders of Allowed Class 8 General Unsecured Claims (including Disputed General Unsecured Claims that are subsequently Allowed) in accordance with the Plan.

(z) "GUC Beneficiaries" means the Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests.

(aa) "GUC Payment Certification" has the meaning given to it in Section 5.1(c) hereof.

002619

(bb) "HarbourVest" means, collectively, HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P.

(cc) "Investment Advisers Act" means the Investment Advisers Act of 1940, as amended.

(dd) "Investment Company Act" means the Investment Company Act of 1940, as amended.

(ee) "Litigation Sub-Trust" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(ff) "Litigation Sub-Trust Agreement" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(gg) "Litigation Trustee" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(hh) "Managed Funds" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to the Plan; *provided, however,* that the Highland Select Equity Fund, L.P. (and its direct and indirect subsidiaries) will not be considered a Managed Fund for purposes hereof.

(ii) "Material Claims" means the Claims asserted by UBS, Patrick Hagaman Daugherty, Integrated Financial Associates, Inc., and the Employees.

(jj) "Member" means a Person that is member of the Oversight Board.

(kk) "New GP LLC" means the general partner of the Reorganized Debtor.

(ll) "Oversight Board" means the board comprised of five (5) Members established pursuant to the Plan and Article III of this Agreement to oversee the Claimant Trustee's performance of his duties and otherwise serve the functions set forth in this Agreement and those of the "Claimant Trust Oversight Committee" described in the Plan. Subject to the terms of this Agreement, the initial Members of the Oversight Board shall be: (i) Eric Felton, as representative of the Redeemer Committee; (ii) Josh Terry, as representative of Acis; (iii) Elizabeth Kozlowski, as representative of UBS; (iv) Paul McVoy, as representative of Meta-e Discovery; and (v) David Pauker.

002620

(mm)  "Plan" has the meaning set forth in the Recitals hereof.

(nn)  "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(oo)  "PSZJ" means Pachulski Stang Ziehl & Jones LLP.

(pp)  "Redeemer Committee" means the Redeemer Committee of the Highland Crusader Fund.

(qq)  "Registrar" has the meaning given to it in Section 5.3(a) hereof.

(rr)  "Reorganized Debtor Assets" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

(ss)  "Securities Act" means the Securities Act of 1933, as amended.

(tt)  "Subordinated Beneficiaries" means the Claimant Trust Beneficiaries who hold Subordinated Claim Trust Interests.

(uu)  "Subordinated Claim Trust Interests" means the subordinated interests in the Claimant Trust to be distributed to Holders of Allowed Class 9 Subordinated Claims in accordance with the Plan.

(vv)  "TIA" means the Trust Indenture Act of 1939, as amended.

(ww)  "Trust Interests" means collectively the General Unsecured Claim Trust Interests, Subordinated Claim Trust Interests, and Equity Trust Interests.

(xx)  "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

(yy)  "Trustees" means collectively the Claimant Trustee and Delaware Trustee.

(zz)  "UBS" means collectively UBS Securities LLC and UBS AG London Branch.

(aaa)  "WilmerHale" Wilmer Cutler Pickering Hale & Dorr LLP.

6

002621

1.2   <u>General Construction</u>.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3   <u>Incorporation of the Plan</u>.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

## <u>ARTICLE II.</u>
## <u>ESTABLISHMENT OF THE CLAIMANT TRUST</u>

2.1   <u>Creation of Name of Trust</u>.

(a)   The Claimant Trust is hereby created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Claimant Trust."  The Claimant Trustee shall be empowered to conduct all business and hold all property constituting the Claimant Trust Assets in such name in accordance with the terms and conditions set forth herein.

(b)   The Trustees shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in their capacity as Trustees, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

002622

2.2 <u>Objectives</u>.

(a) The Claimant Trust is established for the purpose of satisfying Allowed General Unsecured Claims and Allowed Subordinated Claims (and only to the extent provided herein, Allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests) under the Plan, by monetizing the Claimant Trust Assets transferred to it and making distributions to the Claimant Trust Beneficiaries. The Claimant Trust shall not continue or engage in any trade or business except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets consistent with this Agreement and the Plan and act as sole member and manager of New GP LLC. The Claimant Trust shall provide a mechanism for (i) the monetization of the Claimant Trust Assets and (ii) the distribution of the proceeds thereof, net of all claims, expenses, charges, liabilities, and obligations of the Claimant Trust, to the Claimant Trust Beneficiaries in accordance with the Plan. In furtherance of this distribution objective, the Claimant Trust will, from time to time, prosecute and resolve objections to certain Claims and Interests as provided herein and in the Plan.

(b) It is intended that the Claimant Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. In furtherance of this objective, the Claimant Trustee shall, in his business judgment, make continuing best efforts to (i) dispose of or monetize the Claimant Trust Assets and resolve Claims, (ii) make timely distributions, and (iii) not unduly prolong the duration of the Claimant Trust, in each case in accordance with this Agreement.

2.3 <u>Nature and Purposes of the Claimant Trust</u>.

(a) The Claimant Trust is organized and established as a trust for the purpose of monetizing the Claimant Trust Assets and making distributions to Claimant Trust Beneficiaries in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets, if any, which shall be commenced and pursued by the Reorganized Debtor at the direction of the Claimant Trust as sole member of New GP LLC pursuant to the terms of the Reorganized Limited Partnership Agreement. The Claimant Trust and Claimant Trustee shall have and retain, and, as applicable, assign and transfer to the Litigation Sub-Trust and Litigation Trustee, any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Claim as of the Petition Date. On and after the date hereof, in accordance with and subject to the Plan, the Claimant Trustee shall have the authority to (i) compromise, settle or otherwise resolve, or withdraw any objections to Claims against the Debtor, <u>provided</u>, <u>however</u>, the Claimant Trustee shall only have the authority to compromise or settle any Employee Claim with the unanimous consent of the Oversight Board and in the absence of unanimous consent, any such Employee Claim shall be transferred to the Litigation Sub-Trust and be litigated, comprised, settled, or otherwise resolved exclusively by the Litigation Trustee and (ii) compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, which authority may be shared with or transferred to the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement. For the avoidance of doubt, the Claimant Trust,

002623

pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Claims other than Estate Claims, the Employee Claims, and those Claims constituting Reorganized Debtor Assets.

(b)     The Claimant Trust shall be administered by the Claimant Trustee, in accordance with this Agreement, for the following purposes:

(i)     to manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period;

(ii)     to litigate and settle Claims in Class 8 and Class 9 (other than the Employee Claims, which shall be litigated and/or settled by the Litigation Trustee if the Oversight Board does not unanimously approve of any proposed settlement of such Employee Claim by the Claimant Trustee) and any of the Causes of Action included in the Claimant Trust Assets (including any cross-claims and counter-claims); provided, however, that Estate Claims transferred to the Litigation Sub-Trust shall be litigated and settled by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement;

(iii)     to distribute net proceeds of the Claimant Trust Assets to the Claimant Trust Beneficiaries;

(iv)     to distribute funds from the Disputed Claims Reserve to Holders of Trust Interests or to the Reorganized Debtor for distribution to Holders of Disputed Claims in each case in accordance with the Plan from time to time as any such Holder's Disputed Claim becomes an Allowed Claim under the Plan;

(v)     to distribute funds to the Litigation Sub-Trust at the direction the Oversight Board;

(vi)     to serve as the limited partner of, and to hold the limited partnership interests in, the Reorganized Debtor;

(vii)     to serve as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner;

(viii)     to oversee the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement, in its capacity as the sole member and manager of New GP LLC pursuant to the terms of the New GP LLC Documents, all with a view toward maximizing value in a reasonable time in a manner consistent with the Reorganized Debtor's fiduciary duties as investment adviser to the Managed Funds; and

(ix)     to perform any other functions and take any other actions provided for or permitted by this Agreement and the Plan, and in any other agreement executed by the Claimant Trustee.

002624

2.4     Transfer of Assets and Rights to the Claimant Trust; Litigation Sub-Trust.

(a)     On the Effective Date, pursuant to the Plan, the Debtor shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Claimant Trust Assets and related Privileges held by the Debtor to the Claimant Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan and this Agreement.  To the extent certain assets comprising the Claimant Trust Assets, because of their nature or because such assets will accrue or become transferable subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Claimant Trust on such date, such assets shall be considered Reorganized Debtor Assets, which may be subsequently transferred to the Claimant Trust by the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement after such date.

(b)     On or as soon as practicable after the Effective Date, the Claimant Trust shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims and related Privileges held by the Claimant Trust to the Litigation Sub-Trust Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan, this Agreement, and the Litigation Sub-Trust Agreement.  Following the transfer of such Privileges, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(c)     On or before the Effective Date, and continuing thereafter, the Debtor or Reorganized Debtor, as applicable, shall provide (i) for the Claimant Trustee's and Litigation Trustee's reasonable access to all records and information in the Debtor's and Reorganized Debtor's possession, custody or control, (ii) that all Privileges related to the Claimant Trust Assets shall transfer to and vest exclusively in the Claimant Trust (except for those Privileges that will be transferred and assigned to the Litigation Sub-Trust in respect of the Estate Claims), and (iii) subject to Section 3.12(c), the Debtor and Reorganized Debtor shall preserve all records and documents (including all electronic records or documents), including, but not limited to, the Debtor's file server, email server, email archiving system, master journal, SharePoint, Oracle E-Business Suite, Advent Geneva, Siepe database, Bloomberg chat data, and any backups of the foregoing, until such time as the Claimant Trustee, with the consent of the Oversight Board and, if pertaining to any of the Estate Claims, the Litigation Trustee, directs the Reorganized Debtor, as sole member of its general partner, that such records are no longer required to be preserved. For the purposes of transfer of documents, the Claimant Trust or Litigation Sub-Trust, as applicable, is an assignee and successor to the Debtor in respect of the Claimant Trust Assets and Estate Claims, respectively, and shall be treated as such in any review of confidentiality restrictions in requested documents.

(d)     Until the Claimant Trust terminates pursuant to the terms hereof, legal title to the Claimant Trust Assets (other than Estate Claims) and all property contained therein shall be vested at all times in the Claimant Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Claimant Trust Assets to be vested in the Claimant Trustee, in which case title shall be deemed to be vested in the Claimant Trustee, solely in his capacity as Claimant Trustee.  For purposes of such jurisdictions, the term Claimant Trust, as used herein, shall be read to mean the Claimant Trustee.

10

002625

2.5 <u>Principal Office</u>. The principal office of the Claimant Trust shall be maintained by the Claimant Trustee at the following address:[_____].

2.6 <u>Acceptance</u>. The Claimant Trustee accepts the Claimant Trust imposed by this Agreement and agrees to observe and perform that Claimant Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.7 <u>Further Assurances</u>. The Debtor, Reorganized Debtor, and any successors thereof will, upon reasonable request of the Claimant Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Claimant Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Claimant Trustee the powers, instruments or funds in trust hereunder.

2.8 <u>Incidents of Ownership</u>. The Claimant Trust Beneficiaries shall be the sole beneficiaries of the Claimant Trust and the Claimant Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## <u>ARTICLE III.</u>
## <u>THE TRUSTEES</u>

3.1 <u>Role</u>. In furtherance of and consistent with the purpose of the Claimant Trust, the Plan, and this Agreement, the Claimant Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Claimant Trustee with respect to the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries and maintain, manage, and take action on behalf of the Claimant Trust.

3.2 <u>Authority</u>.

(a) In connection with the administration of the Claimant Trust, in addition to any and all of the powers enumerated elsewhere herein, the Claimant Trustee shall, in an expeditious but orderly manner, monetize the Claimant Trust Assets, make timely distributions and not unduly prolong the duration of the Claimant Trust. The Claimant Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Claimant Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law. The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value in a reasonable time.

(b) The Claimant Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Claims and Causes of Action that are part of the Claimant Trust Assets, other than the Estate Claims transferred to the Litigation Sub-Trust, as the Claimant Trustee determines is in the best interests of the Claimant Trust; <u>provided</u>, <u>however</u>, that if the Claimant Trustee proposes a settlement of an Employee Claim and does not obtain unanimous consent of the Oversight Board of such settlement, such Employee Claim shall be transferred to the Litigation Sub-Trust for the Litigation Trustee to litigate. To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or

002626

otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

(c)     Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

(i)     solely as required by Section 2.4(c), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii)     open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

(iii)     as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

(iv)     settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

(v)     sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $3,000,000 (over a thirty-day period);

(vi)     upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

(vii)     exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

(viii)     protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(ix)     obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board solely in their capacities as such, in the form of fiduciary liability insurance, a directors and

002627

officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Claimant Trust Expense and paid by the Claimant Trustee from the Claimant Trust Assets;

(x) without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Claimant Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Claimant Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Claimant Trustee shall be Claimant Trust Expenses and paid by the Claimant Trustee from the Claimant Trust Assets;

(xi) retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Claimant Trust as may be required by this Agreement, the Plan, the Confirmation Order, and applicable laws and as may be reasonably and appropriate in Claimant Trustee's discretion. Subject to the foregoing, the Claimant Trustee may commit the Claimant Trust to, and shall pay, such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid by the Claimant Trustee from Claimant Trust Assets;

(xii) prepare and file (A) tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (B) an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity, or (C) any periodic or current reports that may be required under applicable law;

(xiii) prepare and send annually to the Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Claimant Trust and its share of the Claimant Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

(xiv) to the extent applicable, assert, enforce, release, or waive any attorney-client communication, attorney work product or other Privilege or defense on behalf of the Claimant Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Claimant Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xv) subject to Section 3.4, invest the proceeds of the Claimant Trust Assets and all income earned by the Claimant Trust, pending any distributions in short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills;

002628

(xvi) request any appropriate tax determination with respect to the Claimant Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

(xvii) take or refrain from taking any and all actions the Claimant Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Claimant Trust Assets consistent with purposes hereof;

(xviii) take all steps and execute all instruments and documents necessary to effectuate the purpose of the Claimant Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder;

(xix) exercise such other powers and authority as may be vested in or assumed by the Claimant Trustee by any Final Order;

(xx) evaluate and determine strategy with respect to the Claimant Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Claimant Trust Assets on behalf of the Claimant Trust; and

(xxi) with respect to the Claimant Trust Beneficiaries, perform all duties and functions of the Distribution Agent as set forth in the Plan, including distributing Cash from the Disputed Claims Reserve, solely on account of Disputed Class 1 through Class 7 Claims that were Disputed as of the Effective Date, but become Allowed, to the Reorganization Debtor such that the Reorganized Debtor can satisfy its duties and functions as Distribution Agent with respect to Claims in Class 1 through Class 7 (the foregoing subparagraphs (i)-(xxi) being collectively, the "Authorized Acts").

(d) The Claimant Trustee and the Oversight Committee will enter into an agreement as soon as practicable after the Effective Date concerning the Claimant Trustee's authority with respect to certain other assets, including certain portfolio company assets (the "Other Assets").

(e) The Claimant Trustee has the power and authority to act as trustee of the Claimant Trust and perform the Authorized Acts through the date such Claimant Trustee resigns, is removed, or is otherwise unable to serve for any reason.

3.3 Limitation of Authority.

(a) Notwithstanding anything herein to the contrary, the Claimant Trust and the Claimant Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Claimant Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement, or (iv) cause New GP LLC to cause the Reorganized Debtor to take any action in contravention of the Plan, Plan Documents or the Confirmation Order.

(b) Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Claimant Trustee must receive the consent by vote of a simple majority

14

002629

of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 herein, in order to:

>   (i)     terminate or extend the term of the Claimant Trust;

>   (ii)    prosecute, litigate, settle or otherwise resolve any of the Material Claims;

>   (iii)   except otherwise set forth herein, sell or otherwise monetize any assets that are not Other Assets, including Reorganized Debtor Assets (other than with respect to the Managed Funds), that are valued greater than $3,000,000 (over a thirty-day period);

>   (iv)    except for cash distributions made in accordance with the terms of this Agreement, make any cash distributions to Claimant Trust Beneficiaries in accordance with Article IV of the Plan;

>   (v)     except for any distributions made in accordance with the terms of this Agreement, make any distributions from the Disputed Claims Reserve to Holders of Disputed Claims after such time that such Holder's Claim becomes an Allowed Claim under the Plan;

>   (vi)    reserve or retain any cash or cash equivalents in an amount reasonably necessary to meet claims and contingent liabilities (including Disputed Claims and any indemnification obligations that may arise under Section 8.2 of this Agreement), to maintain the value of the Claimant Trust Assets, or to fund ongoing operations and administration of the Litigation Sub-Trust;

>   (vii)   borrow as may be necessary to fund activities of the Claimant Trust;

>   (viii)  determine whether the conditions under Section 5.1(c) of this Agreement have been satisfied such that a certification should be filed with the Bankruptcy Court;

>   (ix)    invest the Claimant Trust Assets, proceeds thereof, or any income earned by the Claimant Trust (for the avoidance of doubt, this shall not apply to investment decisions made by the Reorganized Debtor or its subsidiaries solely with respect to Managed Funds);

>   (x)     change the compensation of the Claimant Trustee;

>   (xi)    subject to ARTICLE X, make structural changes to the Claimant Trust or take other actions to minimize any tax on the Claimant Trust Assets; and

>   (xii)   retain counsel, experts, advisors, or any other professionals; provided, however, the Claimant Trustee shall not be required to obtain the consent of the Oversight Board for the retention of (i) PSZJ, WilmerHale, or Development Specialists, Inc. and

002630

(ii) any other professional whose expected fees and expenses are estimated at less than or equal to $200,000.

        (c)     [Reserved.]

    3.4   <u>Investment of Cash</u>.  The right and power of the Claimant Trustee to invest the Claimant Trust Assets, the proceeds thereof, or any income earned by the Claimant Trust, with majority approval of the Oversight Board, shall be limited to the right and power to invest in such Claimant Trust Assets only in Cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; <u>provided</u>, <u>however</u> that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("<u>IRS</u>") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (b) the Claimant Trustee may retain any Claimant Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly monetization or other disposition of such assets, and (c) the Claimant Trustee may expend the assets of the Claimant Trust (i) as reasonably necessary to meet contingent liabilities (including indemnification and similar obligations) and maintain the value of the assets of the Claimant Trust during the pendency of this Claimant Trust, (ii) to pay Claimant Trust Expenses (including, but not limited to, any taxes imposed on the Claimant Trust and reasonable attorneys' fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Claimant Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement).

    3.5   <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Claimant Trustee in accordance with the provisions of this Agreement shall be final and binding upon any and all Beneficiaries.

    3.6   <u>Term of Service</u>.  The Claimant Trustee shall serve as the Claimant Trustee for the duration of the Claimant Trust, subject to death, resignation or removal.

    3.7   <u>Resignation</u>.  The Claimant Trustee may resign as Claimant Trustee of the Claimant Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Claimant Trustee shall continue to serve as Claimant Trustee after delivery of the Claimant Trustee's resignation until the proposed effective date of such resignation, unless the Claimant Trustee and a simple majority of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Claimant Trustee in accordance with Section 3.9 hereof becomes effective.

    3.8   <u>Removal</u>.

        (a)     The Claimant Trustee may be removed by a simple majority vote of the Oversight Board for Cause for Cause immediately upon notice thereof, or without Cause upon 60 days' prior written notice.  Upon the removal of the Claimant Trustee pursuant hereto, the Claimant Trustee will resign, or be deemed to have resigned, from any role or position he or she

002631

may have at New GP LLC or the Reorganized Debtor effective upon the expiration of the foregoing 60 day period unless the Claimant Trustee and a simple majority of the Oversight Board agree otherwise.

(b)     To the extent there is any dispute regarding the removal of a Claimant Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute. Notwithstanding the foregoing, the Claimant Trustee will continue to serve as the Claimant Trustee after his removal until the earlier of (i) the time when a successor Claimant Trustee will become effective in accordance with Section 3.9 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.9     Appointment of Successor.

(a)     Appointment of Successor. In the event of a vacancy by reason of the death or Disability (in the case of a Claimant Trustee that is a natural person), dissolution (in the case of a Claimant Trustee that is not a natural person), or removal of the Claimant Trustee, or prospective vacancy by reason of resignation, a successor Claimant Trustee shall be selected by a simple majority vote of the Oversight Board. If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Claimant Trustee on motion of the Members. If a final decree has been entered closing the Chapter 11 Case, the Claimant Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Claimant Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Claimant Trust. The successor Claimant Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Claimant Trustee.

(b)     Vesting or Rights in Successor Claimant Trustee. Every successor Claimant Trustee appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trust, the exiting Claimant Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof. The successor Claimant Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Claimant Trustee, except that the successor Claimant Trustee shall not be liable for the acts or omissions of the retiring Claimant Trustee. In no event shall the retiring Claimant Trustee be liable for the acts or omissions of the successor Claimant Trustee.

(c)     Interim Claimant Trustee. During any period in which there is a vacancy in the position of Claimant Trustee, the Oversight Board shall appoint one of its Members to serve as the interim Claimant Trustee (the "Interim Trustee") until a successor Claimant Trustee is appointed pursuant to Section 3.9(a). The Interim Trustee shall be subject to all the terms and conditions applicable to a Claimant Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board merely by such Person's appointment as Interim Trustee.

002632

3.10    Continuance of Claimant Trust.    The death, resignation, or removal of the Claimant Trustee shall not operate to terminate the Claimant Trust created by this Agreement or to revoke any existing agency (other than any agency of the Claimant Trustee as the Claimant Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Claimant Trustee.    In the event of the resignation or removal of the Claimant Trustee, the Claimant Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Claimant Trustee's capacity under this Agreement and the conveyance of the Claimant Trust Assets then held by the exiting Claimant Trustee to the successor Claimant Trustee; (ii) deliver to the successor Claimant Trustee all non-privileged documents, instruments, records, and other writings relating to the Claimant Trust as may be in the possession or under the control of the exiting Claimant Trustee, provided, the exiting Claimant Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Claimant Trustee and the cost of making such copies shall be a Claimant Trust Expense to be paid by the Claimant Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Claimant Trustee's obligations and functions by his successor, provided the fees and expenses of such assistance and cooperation shall be paid to the exiting Claimant Trustee by the Claimant Trust. The exiting Claimant Trustee shall irrevocably appoint the successor Claimant Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Claimant Trustee is obligated to perform under this Section 3.10.

3.11    Claimant Trustee as "Estate Representative".    The Claimant Trustee will be the exclusive trustee of the Claimant Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Claimant Trust Assets, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement; provided that all rights and powers as representative of the Estate pursuant to section 1123(b)(3)(B) shall be transferred to the Litigation Trustee in respect of the Estate Claims and the Employee Claims.    The Claimant Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Claimant Trust Assets, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order.    All actions, claims, rights or interest constituting Claimant Trust Assets are preserved and retained and may be enforced, or assignable to the Litigation Sub-Trust, by the Claimant Trustee as an Estate Representative.

3.12    Books and Records.

(a)    The Claimant Trustee shall maintain in respect of the Claimant Trust and the Claimant Trust Beneficiaries books and records reflecting Claimant Trust Assets in its possession and the income of the Claimant Trust and payment of expenses, liabilities, and claims against or assumed by the Claimant Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.    Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Claimant Trust and the requirements of Article VII herein.    Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any

002633

accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

(b)     The Claimant Trustee shall provide quarterly reporting to the Oversight Board and Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

(c)     The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; provided, however, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims or Employee Claims without the consent of the Litigation Trustee. Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

3.13    Compensation and Reimbursement; Engagement of Professionals.

(a)     Compensation and Expenses.

(i)      Compensation.  As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation, including any severance, as agreed to by the Claimant Trustee and the Committee, if agreed upon prior to the Effective Date, or the Oversight Board if agreed upon on or after the Effective Date.

(ii)     Expense Reimbursements.  All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

(b)     Professionals.

(i)      Engagement of Professionals.  The Claimant Trustee shall engage professionals from time to time in conjunction with the services provided hereunder.  The

002634

Claimant Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii) <u>Fees and Expenses of Professionals</u>. The Claimant Trustee shall pay the reasonable fees and expenses of any retained professionals as Claimant Trust Expenses.

3.14 <u>Reliance by Claimant Trustee</u>. Except as otherwise provided herein, the Claimant Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Claimant Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Claimant Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein. The Claimant Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Claimant Trustee in accordance therewith. The Claimant Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning the Claimant Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Claimant Trustee in accordance therewith. The Claimant Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15 <u>Commingling of Claimant Trust Assets</u>. The Claimant Trustee shall not commingle any of the Claimant Trust Assets with his or her own property or the property of any other Person.

3.16 <u>Delaware Trustee</u>. The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Claimant Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Claimant Trustee; <u>provided</u>, <u>however</u>, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Claimant Trust.

002635

## ARTICLE IV.
## THE OVERSIGHT BOARD

4.1 <u>Oversight Board Members</u>. The Oversight Board will be comprised of five (5) Members appointed to serve as the board of managers of the Claimant Trust, at least two (2) of which shall be disinterested Members selected by the Creditors' Committee (such disinterested members, the "<u>Disinterested Members</u>"). The initial Members of the Oversight Board will be representatives of Acis, the Redeemer Committee, Meta-e Discovery, UBS, and David Pauker. David Pauker and Paul McVoy, the representative of Meta-e Discovery, shall serve as the initial Disinterested Board Members; <u>provided</u>, <u>however</u>, that if the Plan is confirmed with the Convenience Class or any other convenience class supported by the Creditors' Committee, Meta-E Discovery and its representative will resign on the Effective Date or as soon as practicable thereafter and be replaced in accordance with Section 4.10 hereof..

4.2 <u>Authority and Responsibilities</u>.

(a) The Oversight Board shall, as and when requested by either of the Claimant Trustee and Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Claimant Trustee and Litigation Trustee as to the administration and management of the Claimant Trust and the Litigation Sub-Trust, as applicable, in accordance with the Plan, the Confirmation Order, this Agreement, and Litigation Sub-Trust Agreement (as applicable) and shall have the other responsibilities and powers as set forth herein. As set forth in the Plan, the Confirmation Order, and herein, the Oversight Board shall have the authority and responsibility to oversee, review, and govern the activities of the Claimant Trust, including the Litigation Sub-Trust, and the performance of the Claimant Trustee and Litigation Trustee, and shall have the authority to remove the Claimant Trustee in accordance with Section 3.7 hereof or the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; <u>provided</u>, <u>however</u>, that the Oversight Board may not direct either Claimant Trustee and Litigation Trustee to act inconsistently with their respective duties under this Agreement (including without limitation as set in Section 4.2(e) below), the Litigation Sub-Trust Agreement, the Plan, the Confirmation Order, or applicable law.

(b) The Oversight Board shall also (i) monitor and oversee the administration of the Claimant Trust and the Claimant Trustee's performance of his or her responsibilities under this Agreement, (ii) as more fully set forth in the Litigation Sub-Trust Agreement, approve funding to the Litigation Sub-Trust, monitor and oversee the administration of the Litigation Sub-Trust and the Litigation Trustee's performance of his responsibilities under the Litigation Sub-Trust Agreement, and (iii) perform such other tasks as are set forth herein, in the Litigation Sub-Trust Agreement, and in the Plan.

(c) The Claimant Trustee shall consult with and provide information to the Oversight Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Oversight Board to meet its obligations hereunder.

(d) Notwithstanding any provision of this Agreement to the contrary, the Claimant Trustee shall not be required to (i) obtain the approval of any action by the Oversight

002636

Board to the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is required to be taken by applicable law, the Plan, the Confirmation Order, or this Agreement or (ii) follow the directions of the Oversight Board to take any action the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is prohibited by applicable law the Plan, the Confirmation Order, or this Agreement.

(e)  Notwithstanding provision of this Agreement to the contrary, with respect to the activities of the Reorganized Debtor in its capacity as an investment adviser (and subsidiaries of the Reorganized Debtor that serve as general partner or in an equivalent capacity) to any Managed Funds, the Oversight Board shall not make investment decisions or otherwise participate in the investment decision making process relating to any such Managed Funds, nor shall the Oversight Board or any member thereof serve as a fiduciary to any such Managed Funds.  It is agreed and understood that investment decisions made by the Reorganized Debtor (or its subsidiary entities) with respect to Managed Funds shall be made by the Claimant Trustee in his capacity as an officer of the Reorganized Debtor and New GP LLC and/or such persons who serve as investment personnel of the Reorganized Debtor from time to time, and shall be subject to the fiduciary duties applicable to such entities and persons as investment adviser to such Managed Funds.

4.3  Fiduciary Duties.  The Oversight Board (and each Member in its capacity as such) shall have fiduciary duties to the Claimant Trust Beneficiaries consistent with the fiduciary duties that the members of the Creditors' Committee have to unsecured creditors and shall exercise its responsibilities accordingly; provided, however, that the Oversight Board shall not owe fiduciary obligations to any Holders of Class A Limited Partnership Interests or Class B/C Limited Partnership Interests until such Holders become Claimant Trust Beneficiaries in accordance with Section 5.1(c) hereof; provided, further, that the Oversight Board shall not owe fiduciary obligations to a Holder of an Equity Trust Interest if such Holder is named as a defendant in any of the Causes of Action, including Estate Claims, in their capacities as such, it being the intent that the Oversight Board's fiduciary duties are to maximize the value of the Claimant Trust Assets, including the Causes of Action.  In all circumstances, the Oversight Board shall act in the best interests of the Claimant Trust Beneficiaries and in furtherance of the purpose of the Claimant Trust.  Notwithstanding anything to the contrary contained in this Agreement, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.

4.4  Meetings of the Oversight Board.  Meetings of the Oversight Board are to be held as necessary to ensure the operation of the Claimant Trust but in no event less often than quarterly.  Special meetings of the Oversight Board may be held whenever and wherever called for by the Claimant Trustee or any Member; provided, however, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice requirement being subject to any waiver by the Members in the minutes, if any, or other transcript, if any, of proceedings of the Oversight Board).  Unless the Oversight Board decides otherwise (which decision shall rest in the reasonable discretion of the Oversight Board), the Claimant Trustee, and each of the Claimant Trustee's designated advisors may, but are not required to, attend meetings of the Oversight Board.

002637

4.5     Unanimous Written Consent.  Any action required or permitted to be taken by the Oversight Board in a meeting may be taken without a meeting if the action is taken by unanimous written consents describing the actions taken, signed by all Members and recorded. If any Member informs the Claimant Trustee (via e-mail or otherwise) that he or she objects to the decision, determination, action, or inaction proposed to be made by unanimous written consent, the Claimant Trustee must use reasonable good faith efforts to schedule a meeting on the issue to be set within 48 hours of the request or as soon thereafter as possible on which all members of the Oversight Board are available in person or by telephone.  Such decision, determination, action, or inaction must then be made pursuant to the meeting protocols set forth herein.

4.6     Manner of Acting.

(a)     A quorum for the transaction of business at any meeting of the Oversight Board shall consist of at least three Members (including no less than one (1) Disinterested Member); provided that if the transaction of business at a meeting would constitute a direct or indirect conflict of interest for the Redeemer Committee, Acis, and/or UBS, at least two Disinterested Members must be present for there to be a quorum.  Except as set forth in Sections 3.3(c), 4.9(a), 5.2, 5.4, 6.1, 9.1, and 10, herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Oversight Board except as otherwise required by law or as provided in this Agreement.  Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition of the place) for the holding hereof.  Any Member participating in a meeting by this means is deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the applicable Trustee and each Member.

(b)     Any Member who is present and entitled to vote at a meeting of the Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Board, unless (i) such Member objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Board before its adjournment.  The right of dissent or abstention is not available to any Member of the Oversight Board who votes in favor of the action taken.

(c)     Prior to a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Oversight Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Trust Interests).  A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Claimant Trust shall be

002638

deemed a "Conflicted Member" who shall not be entitled to vote or take part in any action with respect to such matter or issue. In the event of a Conflicted Member, the vote or action with respect to such matter or issue giving rise to such conflict shall be undertaken only by Members who are not Conflicted Members and, notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Oversight Board.

(d)     Each of Acis, the Redeemer Committee, and UBS shall be deemed "Conflicted Members" with respect to any matter or issue related to or otherwise affecting any of their respective Claim(s) (a "Committee Member Claim Matter"). A unanimous vote of the Disinterested Members shall be required to approve of or otherwise take action with respect to any Committee Member Claim Matter and, notwithstanding anything herein to the contrary, the same shall be the act of the Oversight Board.

4.7     Tenure of the Members of the Oversight Board. The authority of the Members of the Oversight Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Claimant Trust is terminated in accordance with Article X hereof. The Members of the Oversight Board will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 4.7 below, or removal pursuant to Section 4.8 below.

4.8     Resignation. A Member of the Oversight Board may resign by giving not less than 90 days prior written notice thereof to the Claimant Trustee and other Members. Such resignation shall become effective on the earlier to occur of (i) the day specified in such notice and (ii) the appointment of a successor in accordance with Section 4.9 below.

4.9     Removal. A majority of the Oversight Board may remove any Member for Cause or Disability. If any Committee Member has its Claim disallowed in its entirety the representative of such entity will immediately be removed as a Member without the requirement for a vote and a successor will be appointed in the manner set forth herein. Notwithstanding the foregoing, upon the termination of the Claimant Trust, any or all of the Members shall be deemed to have resigned.

4.10     Appointment of a Successor Member.

(a)     In the event of a vacancy on the Oversight Board (whether by removal, death, or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously; provided, however, that any vacancy resulting from the removal, resignation, or death of a Disinterested Member may only be filled by a disinterested Person unaffiliated with any Claimant or constituency in the Chapter 11 Case; provided, further, that if an individual serving as the representative of a Committee Member resigns from its role as representative, such resignation shall not be deemed resignation of the Committee Member itself and such Committee Member shall have the exclusive right to designate its replacement representative for the Oversight Board. The appointment of a successor Member will be further evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of

002639

appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

(b) Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act. A successor Member will not be liable personally for any act or omission of a predecessor Member.

(c) Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11    <u>Compensation and Reimbursement of Expenses</u>.    Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; <u>provided</u>, <u>however</u>, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member. Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12    <u>Confidentiality</u>.    Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("<u>Confidential Trust Information</u>"), except as otherwise required by law. For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "<u>Member Affiliates</u>") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.11.

### ARTICLE V.
### TRUST INTERESTS

5.1    <u>Claimant Trust Interests</u>.

25

(a)    General Unsecured Claim Trust Interests. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "GUC Beneficiaries"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims. The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

(b)    Subordinated Claim Trust Interests. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "Subordinated Beneficiaries"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9. The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests. The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, and all Disputed General Unsecured Claims have been resolved, in accordance with the terms of the Plan and this Agreement.

(c)    Contingent Trust Interests. On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "Equity Holders"). The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan. Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan and all Disputed Claims have been resolved (the "GUC Payment Certification"). Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "Equity Trust Interests." The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

5.2    Interests Beneficial Only. The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant

002641

Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets or to require an accounting. No Claimant Trust Beneficiary shall have any governance right or other wright to direct Claimant Trust activities.

5.3     Transferability of Trust Interests.  No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected until (i) such action is unanimously approved by the Oversight Board, (ii) the Claimant Trustee and Oversight Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Claimant Trust to be subject to entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Claimant Trustee and Oversight Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not (a) require the Claimant Trust to comply with the registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act or (b) cause any adverse effect under the Investment Advisers Act, or (y) the Oversight Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Claimant Trust to become a public reporting company and/or make periodic reports under the Exchange Act (provided that it is not required to register under the Investment Company Act or register its securities under the Securities Act) to enable such disposition to be made.  In the event that any such disposition is allowed, the Oversight Board and the Claimant Trustee may add such restrictions upon such disposition and other terms of this Agreement as are deemed necessary or appropriate by the Claimant Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

5.4     Registry of Trust Interests.

(a)     Registrar.  The Claimant Trustee shall appoint a registrar, which may be the Claimant Trustee (the "Registrar"), for the purpose of recording ownership of the Trust Interests as provided herein.  The Registrar, if other than the Claimant Trustee, shall be an institution or person acceptable to the Oversight Board.  For its services hereunder, the Registrar, unless it is the Claimant Trustee, shall be entitled to receive reasonable compensation from the Claimant Trust as a Claimant Trust Expense.

(b)     Trust Register.  The Claimant Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time, a registry of the Claimant Trust Beneficiaries and the Equity Holders (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Claimant Trustee and the Registrar may prescribe.

(c)     Access to Register by Beneficiaries.  The Claimant Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Claimant Trustee, and in accordance with reasonable regulations prescribed by the Claimant Trustee, to inspect and, at the expense of the Claimant Trust Beneficiary make copies of the Trust Register, in each case for a purpose reasonable and related to such Claimant Trust Beneficiary's Trust Interest.

002642

5.5     Exemption from Registration.  The Parties hereto intend that the rights of the Claimant Trust Beneficiaries arising under this Claimant Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Claimant Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Claimant Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Claimant Trust Beneficiaries any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Claimant Trustee under this Agreement.

5.6     Absolute Owners.  The Claimant Trustee may deem and treat the Claimant Trust Beneficiary of record as determined pursuant to this Article 5 as the absolute owner of such Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

5.7     Effect of Death, Incapacity, or Bankruptcy.  The death, incapacity, or bankruptcy of any Claimant Trust Beneficiary during the term of the Claimant Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Claimant Trust Beneficiary under this Agreement.

5.8     Change of Address.  Any Claimant Trust Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Claimant Trustee identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Claimant Trustee.  Absent actual receipt of such notice by the Claimant Trustee, the Claimant Trustee shall not recognize any such change of distribution address.

5.9     Standing.  No Claimant Trust Beneficiary shall have standing to direct the Claimant Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Claimant Trust Assets.  No Claimant Trust Beneficiary shall have any direct interest in or to any of the Claimant Trust Assets.

5.10     Limitations on Rights of Claimant Trust Beneficiaries.

(a)     The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein).

(b)     In any action taken by a Claimant Trust Beneficiary against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, the prevailing party will be entitled to reimbursement of attorneys' fees and other costs; provided, however, that any fees and costs shall be borne by the Claimant Trust on behalf of any such Trustee or Member, as set forth herein.

002643

(c)     A Claimant Trust Beneficiary who brings any action against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, may be required by order of the Bankruptcy Court to post a bond ensuring that the full costs of a legal defense can be reimbursed.  A request for such bond can be made by the Claimant Trust or by Claimant Trust Beneficiaries constituting in the aggregate at least 50% of the most senior class of Claimant Trust Interests.

(d)     Any action brought by a Claimant Trust Beneficiary must be brought in the United States Bankruptcy Court for the Northern District of Texas.  Claimant Trust Beneficiaries are deemed to have waived any right to a trial by jury

(e)     The rights of Claimant Trust Beneficiaries to bring any action against the Claimant Trust, a current or former Trustee, or current or former Member, in their capacity as such, shall not survive the final distribution by the Claimant Trust.

## ARTICLE VI.
## DISTRIBUTIONS

6.1     Distributions.

(a)     Notwithstanding anything to the contrary contained herein, the Claimant Trustee shall distribute to holders of Trust Interests at least annually the Cash on hand net of any amounts that (a) are reasonably necessary to maintain the value of the Claimant Trust Assets pending their monetization or other disposition during the term of the Claimant Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust (including, but not limited to, any taxes imposed on or payable by the Claimant Trustee with respect to the Claimant Trust Assets), (c) are necessary to pay or reserve for the anticipated costs and expenses of the Litigation Sub-Trust, (d) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Claimant Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses), (e) are necessary to maintain the Disputed Claims Reserve, and (f) are necessary to pay Allowed Claims in Class 1 through Class 7. Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within six months of the Effective Date, and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board.  The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board.

(b)     At the request of the Reorganized Debtor, subject in all respects to the provisions of this Agreement, the Claimant Trustee shall distribute Cash to the Reorganized Debtor, as Distribution Agent with respect to Claims in Class 1 through 7, sufficient to satisfy Allowed Claims in Class 1 through Class 7.

(c)     All proceeds of Claimant Trust Assets shall be distributed in accordance with the Plan and this Agreement.

002644

6.2    Manner of Payment or Distribution.  All distributions made by the Claimant Trustee on behalf of the Claimant Trust to the Claimant Trust Beneficiaries shall be payable by the Claimant Trustee directly to the Claimant Trust Beneficiaries of record as of the twentieth (20th) day prior to the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3    Delivery of Distributions.  All distributions under this Agreement to any Claimant Trust Beneficiary shall be made, as applicable, at the address of such Claimant Trust Beneficiary (a) as set forth on the Schedules filed with the Bankruptcy Court or (b) on the books and records of the Debtor or their agents, as applicable, unless the Claimant Trustee has been notified in writing of a change of address pursuant to Section 5.6 hereof.

6.4    Disputed Claims Reserves.  There will be no distributions under this Agreement or the Plan on account of Disputed Claims pending Allowance.  The Claimant Trustee will maintain a Disputed Claims Reserve as set forth in the Plan and will make distributions from the Disputed Claims Reserve as set forth in the Plan.

6.5    Undeliverable Distributions and Unclaimed Property.  All undeliverable distributions and unclaimed property shall be treated in the manner set forth in the Plan.

6.6    De Minimis Distributions.  Distributions with a value of less than $100 will be treated in accordance with the Plan.

6.7    United States Claimant Trustee Fees and Reports.  **After the Effective Date, the Claimant Trust shall pay as a Claimant Trust Expense, all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Claimant Trust's disbursements until the Chapter 11 Case is closed.  After the Effective Date, the Claimant Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Claimant Trust as required by the Office of the United States Trustee Office for as long as the Chapter 11 Case remains open.**

## ARTICLE VII.
## TAX MATTERS

7.1    Tax Treatment and Tax Returns.

(a)    It is intended for the initial transfer of the Claimant Trust Assets to the Claimant Trust to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) as if the Debtor transferred the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described below) to the Claimant Trust Beneficiaries and then, immediately thereafter, the Claimant Trust Beneficiaries transferred the Claimant Trust Assets to the Claimant Trust.  Consistent with such treatment, (i) it is intended that the Claimant Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Claimant Trust Beneficiaries will be treated as the grantors of the Claimant Trust and owners of their respective share of the Claimant Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where

002645

applicable). The Claimant Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

(b) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Beneficiaries of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(c) The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

7.2 <u>Withholding</u>. The Claimant Trustee may withhold from any amount distributed from the Claimant Trust to any Claimant Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable Beneficiary. As a condition to receiving any distribution from the Claimant Trust, the Claimant Trustee may require that the Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Claimant Trustee to comply with applicable tax reporting and withholding laws. If a Beneficiary fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section 6.5(b) of this Agreement.

<u>**ARTICLE VIII.**</u>
<u>**STANDARD OF CARE AND INDEMNIFICATION**</u>

8.1 <u>Standard of Care</u>. None of the Claimant Trustee, acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any current or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Claimant Trust or to any Person (including any Claimant Trust Beneficiary) in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the acts or omissions of any such Claimant Trustee, Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Claimant Trust, the Claimant Trustee, Delaware Trustee, Oversight Board, or individual Member shall not be personally liable to the Claimant Trust or any other Person in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Claimant Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Claimant Trust or to any Person for the acts or omissions of any employee, agent or professional of the Claimant Trust or Claimant Trustee taken or not taken in good faith reliance on the advice of professionals or, as applicable, with the

002646

approval of the Bankruptcy Court, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Claimant Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Claimant Trust.

      8.2   <u>Indemnification</u>.   The Claimant Trustee (including each former Claimant Trustee), Delaware Trustee, Oversight Board, and all past and present Members (collectively, in their capacities as such, the "<u>Indemnified Parties</u>") shall be indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence.  If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Claimant Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Claimant Trustee and/or Oversight Board, as applicable; <u>provided</u>, <u>however</u>, that the failure of an Indemnified Party to promptly notify the Claimant Trustee and/or Oversight Board of an indemnification obligation will not excuse the Claimant Trust from indemnifying the Indemnified Party unless such delay has caused the Claimant Trust material harm.  The Claimant Trust shall pay, advance or otherwise reimburse on demand of an Indemnified Party the Indemnified Party's reasonable legal and other defense expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith or in connection with enforcing his or her rights under this Section 8.2 as a Claimant Trust Expense, and the Claimant Trust shall not refuse to make any payments to the Indemnified Party on the assertion that the Indemnified Party engaged in willful misconduct or acted in bad faith; <u>provided</u> that the Indemnified Party shall be required to repay promptly to the Claimant Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Claimant Trust with respect to which such expenses were paid; <u>provided</u>, <u>further</u>, that any such repayment obligation shall be unsecured and interest free.  The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties. For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Claimant Trustee, Delaware Trustee, or Member or the estate of any decedent Claimant Trustee or Member, solely in their capacities as such.  The indemnification provided hereby shall be a Claimant Trust Expense and shall not be deemed exclusive of any other rights to which the Indemnified Party may now or in the future be entitled to under the Plan or any applicable insurance policy.  The failure of the Claimant Trust to pay or reimburse an Indemnified Party as required under this Section 8.2 shall constitute irreparable harm to the Indemnified Party and such Indemnified Party shall be entitled to specific performance of the obligations herein.

002647

8.3     No Personal Liability.   Except as otherwise provided herein, neither of the Trustees nor Members of the Oversight Board shall be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any Person in connection with the affairs of the Claimant Trust to the fullest extent provided under Section 3803 of the Delaware Statutory Trust Act, and all Persons asserting claims against the Claimant Trustee, Litigation Trustee, or any Members, or otherwise asserting claims of any nature in connection with the affairs of the Claimant Trust, shall look solely to the Claimant Trust Assets for satisfaction of any such claims.

8.4     Other Protections.   To the extent applicable and not otherwise addressed herein, the provisions and protections set forth in Article IX of the Plan will apply to the Claimant Trust, the Claimant Trustee, the Litigation Trustee, and the Members.

## ARTICLE IX.
## TERMINATION

9.1     Duration.   The Trustees, the Claimant Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets.

9.2     Distributions in Kind.   Upon dissolution of the Claimant Trust, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

9.3     Continuance of the Claimant Trustee for Winding Up.   After dissolution of the Claimant Trust and for purpose of liquidating and winding up the affairs of the Claimant Trust, the Claimant Trustee shall continue to act as such until the Claimant Trustee's duties have been fully performed.   Prior to the final distribution of all remaining Claimant Trust Assets, the Claimant Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Claimant Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Claimant Trust, until such time as the winding up of the Claimant Trust is completed.   Upon the dissolution of the Claimant Trust and completion of the winding up of the assets, liabilities and affairs of the Claimant Trust pursuant

33

002648

to the Delaware Statutory Trust Act, the Claimant Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Claimant Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date").  Upon the Termination date, the Claimant Trustee shall retain for a period of two (2) years, as a Claimant Trust Expense, the books, records, Claimant Trust Beneficiary lists, and certificated and other documents and files that have been delivered to or created by the Claimant Trustee.  At the Claimant Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.4    Termination of Duties.  Except as otherwise specifically provided herein, upon the Termination Date of the Claimant Trust, the Claimant Trustee, the Oversight Board and its Members shall have no further duties or obligations hereunder.

9.5    No Survival.  The rights of Claimant Trust Beneficiaries hereunder shall not survive the Termination Date, provided that such Claimant Trust Beneficiaries are provided with notice of such Termination Date.

## ARTICLE X.
## AMENDMENTS AND WAIVER

The Claimant Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Claimant Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Claimant Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

## ARTICLE XI.
## MISCELLANEOUS

11.1    Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Claimant Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Claimant Trust Beneficiaries.

11.2    Bankruptcy of Claimant Trust Beneficiaries.  The dissolution, termination, bankruptcy, insolvency or other similar incapacity of any Claimant Trust Beneficiary shall not permit any creditor, trustee, or any other Claimant Trust Beneficiary to obtain possession of, or exercise legal or equitable remedies with respect to, the Claimant Trust Assets.

11.3    Claimant Trust Beneficiaries have No Legal Title to Claimant Trust Assets.  No Claimant Trust Beneficiary shall have legal title to any part of the Claimant Trust Assets.

11.4    Agreement for Benefit of Parties Only.  Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Claimant Trustee, Oversight Board, and the Claimant Trust Beneficiaries any legal or equitable right, remedy or claim under or in

002649

respect of this Agreement. The Claimant Trust Assets shall be held for the sole and exclusive benefit of the Claimant Trust Beneficiaries.

11.5  <u>Notices</u>. All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

      (a)     If to the Claimant Trustee:

          Claimant Trustee
          c/o **[insert contact info for Claimant Trustee]**

      With a copy to:

          Pachulski Stang Ziehl & Jones LLP
          10100 Santa Monica Blvd, 13th Floor
          Los Angeles, CA 90067
          Attn:   Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
                 Ira Kharasch (ikharasch@pszjlaw.com)
                 Gregory Demo (gdemo@pszjlaw.com)

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.5 to the entity to be charged with knowledge of such change.

11.6  <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.7  <u>Counterparts</u>. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.8  <u>Binding Effect, etc.</u> All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Claimant Trust, the Claimant Trustee, and the Claimant Trust Beneficiaries, and their respective successors and assigns. Any notice, direction, consent, waiver or other instrument or action by any Claimant Trust Beneficiary shall bind its successors and assigns.

11.9  <u>Headings; References</u>. The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

002650

11.10 <u>Governing Law</u>. This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.11 <u>Consent to Jurisdiction</u>. Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan.

11.12 <u>Transferee Liabilities</u>. The Claimant Trust shall have no liability for, and the Claimant Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement. In no event shall the Claimant Trustee or the Claimant Trust Beneficiaries have any personal liability for such claims. If any liability shall be asserted against the Claimant Trust or the Claimant Trustee as the transferee of the Claimant Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Claimant Trustee may use such part of the Claimant Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Claimant Trustee as a Claimant Trust Expense.

[Remainder of Page Intentionally Blank]

002651

IN WITNESS HEREOF, the parties hereto have caused this Claimant Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Highland Capital Management, L.P.

By: _____

James P. Seery, Jr.
Chief Executive Officer and
Chief Restructuring Officer

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

37

002652

# **EXHIBIT N**

*DRAFT*

## CLAIMANT TRUST AGREEMENT

This Claimant Trust Agreement, effective as of _____ , ~~2020~~2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "<u>Agreement</u>"), by and among Highland Capital Management, L.P. (as debtor and debtor-in-possession, the "<u>Debtor</u>"), as settlor, and James P. Seery, Jr., as trustee (the "<u>Claimant Trustee</u>"), and [____] as Delaware trustee (the "<u>Delaware Trustee</u>," and together with the Debtor and the Claimant Trustee, the "<u>Parties</u>") for the benefit of the Claimant Trust Beneficiaries entitled to the Claimant Trust Assets.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "<u>Bankruptcy Court</u>") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "<u>Chapter 11 Case</u>");

WHEREAS, on November ~~13,~~24, 2020, the Debtor filed the *~~Third~~Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. ▲1472] (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>"),[1] [which was confirmed by the Bankruptcy Court on _____ , ~~2020~~2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "<u>Confirmation Order</u>")];

WHEREAS, this Agreement, including all exhibits hereto, is the "Claimant Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Claimant Trust Assets are to be transferred to the Claimant Trust (each as defined herein) created and evidenced by this Agreement so that (i) the Claimant Trust Assets can be held in a trust for the benefit of the Claimant Trust Beneficiaries entitled thereto in accordance with Treasury Regulation Section 301.7701-4(d) for the objectives and purposes set forth herein and in the Plan; (ii) the Claimant Trust Assets can be monetized; (iii) the Claimant Trust will transfer Estate Claims to the Litigation Sub-Trust to be prosecuted, settled, abandoned, or resolved as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement, for the benefit of the Claimant Trust; (iv) proceeds of the Claimant Trust Assets, including Estate Claims, may be distributed to the Claimant Trust Beneficiaries[2] in accordance with the Plan; (v) the Claimant Trustee can resolve Disputed Claims as set forth herein and in the Plan; and (vi) administrative services relating to the activities of the Claimant Trust and relating to the implementation of the Plan can be performed by the Claimant Trustee.

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2]   For the avoidance of doubt, and as set forth in the Plan, Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests will be Claimant Trust Beneficiaries only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest in accordance with the terms and conditions set forth herein and in the Plan.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor, the Claimant Trustee, and the Delaware Trustee have executed this Agreement for the benefit of the Claimant Trust Beneficiaries entitled to share in the Claimant Trust Assets and, at the direction of such Claimant Trust Beneficiaries as provided for in the Plan.

TO HAVE AND TO HOLD unto the Claimant Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust Beneficiaries, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Claimant Trust in accordance with Article IX hereof, this Claimant Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Claimant Trust Assets are to be strictly held and applied by the Claimant Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     Certain Definitions.  Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Acis" means collectively, Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

(b)     "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(c)     "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, with respect to a Member, or to the extent applicable, the Claimant Trustee, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony (other than a felony that does not involve fraud, theft, embezzlement, or jail time) with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(d)     "Claimant Trust Agreement" means this Agreement.

2

002655

(e)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" hereunder and as defined in the Plan, and any successor Claimant Trustee that may be appointed pursuant to the terms of this Agreement.

(f)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to this Agreement.

(g)     "Claimant Trust Assets" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC.  For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

(h)     "Claimant Trust Beneficiaries" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent applicable, post-petition interest at the federal judgment rate in accordance with the terms and conditions set forth herein, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

(i)     "Claimant Trust Expense Cash Reserve" means $[•] million in Cash to be funded pursuant to the Plan into a bank account of the Claimant Trust on or before the Effective Date for the purpose of paying Claimant Trust Expenses in accordance herewith.

(j)     "Claimant Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust, and the fees and expenses of the Claimant Trustee and professional persons retained by the Claimant Trust or Claimant Trustee in accordance with ~~Article [3.13(b)] of~~ this Agreement.

(k)     "Committee Member" means a Member who is/was also a member of the Creditors' Committee.

(l)     "Conflicted Member" has the meaning set forth in Section 4.6(c) hereof.

(m)     "Contingent Trust Interests" means the contingent interests in the Claimant Trust to be distributed to Holders of Class A Limited Partnership Interests and Class B/C Limited Partnership Interests in accordance with the Plan.

3

002656

(n)   "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, comprised of Acis, Meta-e Discovery, the Redeemer Committee and UBS.

(o)   "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(p)   "Delaware Trustee" has the meaning set forth in the introduction hereof.

(q)   "Disability" means as a result of the Claimant Trustee's or a Member's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Claimant Trustee or the Member, as applicable, the Claimant Trustee or such Member has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(r)   "Disinterested Members" has the meaning set forth in Section 4.1 hereof.

(s)   "Disputed Claims Reserve" means the reserve account to be opened by the Claimant Trust on or after the Effective Date and funded in an initial amount determined by the Claimant Trustee [(in a manner consistent with the Plan and with the consent of a simple majority of the Oversight Board)] to be sufficient to pay Disputed Claims under the Plan.

(t)   ["Employees" means the employees of the Debtor set forth in the Plan Supplement.]

(u)   ["Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by employees any such Senior Employee of the Debtor prior to the Effective Date).]

(v)   "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(w)   "Equity Trust Interests" has the meaning given to it in Section 5.1(c) hereof.

(x)   "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(y)   "General Unsecured Claim Trust Interests" means interests in the Claimant Trust to be distributed to Holders of Allowed Class 8 General Unsecured Claims (including Disputed General Unsecured Claims that are subsequently Allowed) in accordance with the Plan.

(z)   "GUC Beneficiaries" means the Claimant Trust Beneficiaries who hold General Unsecured Claim Trust Interests.

4

(aa)     "GUC Payment Certification" has the meaning given to it in Section 5.1(c) hereof.

(bb)     "HarbourVest" means, collectively, HarbourVest 2017 Global Fund, L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment, L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners, L.P.

(cc)     "Investment Advisers Act" means the Investment Advisers Act of 1940, as amended.

(dd)     "Investment Company Act" means the Investment Company Act of 1940, as amended.

(ee)     "Litigation Sub-Trust" means the sub-trust created pursuant to the Litigation Sub-Trust Agreement, which shall hold the Claimant Trust Assets that are Estate Claims and investigate, litigate, and/or settle the Estate Claims for the benefit of the Claimant Trust.

(ff)     "Litigation Sub-Trust Agreement" means the litigation sub-trust agreement to be entered into by and between the Claimant Trustee and Litigation Trustee establishing and setting forth the terms and conditions of the Litigation Sub-Trust and governing the rights and responsibilities of the Litigation Trustee.

(gg)     "Litigation Trustee" means Marc S. Kirschner, and any successor Litigation Trustee that may be appointed pursuant to the terms of the Litigation Sub-Trust Agreement, who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

(hh)     "Managed Funds" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to the Plan; *provided, however,* that the Highland Select Equity Fund, L.P. (and its direct and indirect subsidiaries) will not be considered a Managed Fund for purposes hereof.

(ii)     "Material Claims" means the Claims asserted by UBS, HarbourVest, Patrick Hagaman Daugherty, and Integrated Financial Associates, Inc., and the Employees. [TBD: Employee Claims]

(jj)     "Member" means a Person that is member of the Oversight Board.

(kk)     "New GP LLC" means the general partner of the Reorganized Debtor.

(ll)     "Oversight Board" means the board comprised of five (5) Members established pursuant to the Plan and Article III of this Agreement to oversee the Claimant Trustee's performance of his duties and otherwise serve the functions set forth in this Agreement and those of the "Claimant Trust Oversight Committee" described in the Plan. Subject to the

5

terms of this Agreement, the initial Members of the Oversight Board shall be: (i) Eric Felton, as representative of the Redeemer Committee; (ii) Josh Terry, as representative of Acis; (iii) Elizabeth Kozlowski, as representative of UBS; (iv) Paul McVoy, as representative of Meta-e Discovery; and (v) David Pauker.

(mm)    ~~(ll)~~ "Plan" has the meaning set forth in the Recitals hereof.

(nn)    ~~(mm)~~ "Privileges" means ~~all of~~ the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the ~~Causes of Action~~Estate Claims or Employee Claims, including, ~~but not limited~~without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence[; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product] so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(oo)    "PSZJ" means Pachulski Stang Ziehl & Jones LLP.

(pp)    ~~(nn)~~ "Redeemer Committee" means the Redeemer Committee of the Highland Crusader Fund.

(qq)    ~~(oo)~~ "Registrar" has the meaning given to it in Section 5.3(a) hereof.

(rr)    ~~(pp)~~ "Reorganized Debtor Assets" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

(ss)    ~~(qq)~~ "Securities Act" means the Securities Act of 1933, as amended.

(tt)    ~~(rr)~~ "Subordinated Beneficiaries" means the Claimant Trust Beneficiaries who hold Subordinated Claim Trust Interests.

(uu)    ~~(ss)~~ "Subordinated Claim Trust Interests" means the subordinated interests in the Claimant Trust to be distributed to Holders of Allowed Class 9 Subordinated Claims in accordance with the Plan.

(vv)    ~~(tt)~~ "TIA" means the Trust Indenture Act of 1939, as amended.

(ww)    ~~(uu)~~ "Trust Interests" means collectively the General Unsecured Claim Trust Interests, Subordinated Claim Trust Interests, and Equity Trust Interests.

(xx)    ~~(vv)~~ "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

6

(yy)   (ww)  "Trustees" means collectively the Claimant Trustee and Delaware Trustee.

(zz)   (xx)  "UBS" means collectively UBS Securities LLC and UBS AG London Branch.

(aaa)   "WilmerHale" Wilmer Cutler Pickering Hale & Dorr LLP.

1.2   General Construction.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3   Incorporation of the Plan.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

## ARTICLE II.
## ESTABLISHMENT OF THE CLAIMANT TRUST

2.1   Creation of Name of Trust.

(a)   The Claimant Trust is hereby created as a statutory trust under the Delaware Statutory Trust Act and shall be called the "Highland Claimant Trust."  The Claimant Trustee shall be empowered to conduct all business and hold all property constituting the Claimant Trust Assets in such name in accordance with the terms and conditions set forth herein.

(b)   The Trustees shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in their capacity as Trustees, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2   Objectives.

(a)   The Claimant Trust is established for the purpose of satisfying Allowed General Unsecured Claims and Allowed Subordinated Claims (and only to the extent provided herein, Allowed Class A Limited Partnership Interests and Class B/C Limited Partnership Interests) under the Plan, by monetizing the Claimant Trust Assets transferred to it and making distributions to the Claimant Trust Beneficiaries.  The Claimant Trust shall not continue or engage in any trade or business except to the extent reasonably necessary to monetize and distribute the Claimant Trust Assets consistent with this Agreement and the Plan and act as sole

7

002660

member and manager of New GP LLC. The Claimant Trust shall provide a mechanism for (i) the monetization of the Claimant Trust Assets and (ii) the distribution of the proceeds thereof, net of all claims, expenses, charges, liabilities, and obligations of the Claimant Trust, to the Claimant Trust Beneficiaries in accordance with the Plan. In furtherance of this distribution objective, the Claimant Trust will, from time to time, prosecute and resolve objections to certain Claims and Interests as provided herein and in the Plan.

(b)  It is intended that the Claimant Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. In furtherance of this objective, the Claimant Trustee shall, in his business judgment, make continuing best efforts to (i) dispose of or monetize the Claimant Trust Assets and resolve Claims, (ii) make timely distributions, and (iii) not unduly prolong the duration of the Claimant Trust, in each case in accordance with this Agreement.

2.3  <u>Nature and Purposes of the Claimant Trust</u>.

(a)  The Claimant Trust is organized and established as a trust for the purpose of monetizing the Claimant Trust Assets and making distributions to Claimant Trust Beneficiaries in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Claimant Trust shall retain all rights to commence and pursue all Causes of Action of the Debtor other than (i) Estate Claims, which shall be assigned to and commenced and pursued by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement, and (ii) Causes of Action constituting Reorganized Debtor Assets, if any, which shall be commenced and pursued by the Reorganized Debtor at the direction of the Claimant Trust as sole member of New GP LLC pursuant to the terms of the Reorganized Limited Partnership Agreement. The Claimant Trust and Claimant Trustee shall have and retain, and, as applicable, assign and transfer to the Litigation Sub-Trust and Litigation Trustee, any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Claim as of the Petition Date. On and after the date hereof, in accordance with and subject to the Plan, the Claimant Trustee shall have the authority to <u>(i)</u> compromise, settle or otherwise resolve, or withdraw any objections to Claims against the Debtor <s>[(except for the Employee Claims, which shall</s><u>, provided, however, the Claimant Trustee shall only have the authority to compromise or settle any Employee Claim with the unanimous consent of the Oversight Board and in the absence of unanimous consent, any such Employee Claim shall be transferred to the Litigation Sub-Trust and</u> be litigated, comprised, settled, or otherwise resolved exclusively by the Litigation Trustee<s>)]</s> and <s>to</s><u>(ii)</u> compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, which authority may be shared with or transferred to the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement. For the avoidance of doubt, the Claimant Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Claims other than Estate Claims<s>[, the Employee Claims,]</s> and those Claims constituting Reorganized Debtor Assets.

(b)  The Claimant Trust shall be administered by the Claimant Trustee, in accordance with this Agreement, for the following purposes:

8

(i)    to manage and monetize the Claimant Trust Assets in an expeditious but orderly manner with a view towards maximizing value within a reasonable time period;

(ii)    to litigate and settle Claims in Class 8 and Class 9 (other than the Employee Claims, which shall be litigated and/or settled by the Litigation Trustee if the Oversight Board does not unanimously approve of any proposed settlement of such Employee Claim by the Claimant Trustee) and any of the Causes of Action included in the Claimant Trust Assets (including any cross-claims and counter-claims); provided, however, that Estate Claims transferred to the Litigation Sub-Trust shall be litigated and settled by the Litigation Trustee pursuant to the terms of the Litigation Sub-Trust Agreement;

(iii)    to distribute net proceeds of the Claimant Trust Assets to the Claimant Trust Beneficiaries;

(iv)    to distribute funds from the Disputed Claims Reserve to Holders of Trust Interests or to the Reorganized Debtor for distribution to Holders of Disputed in Claims in each case in accordance with the Plan from time to time as any such Holder's Disputed Claim becomes an Allowed Claim under the Plan;

(v)    to distribute funds to the Litigation Sub-Trust at the direction the Oversight Board;

(vi)    to serve as the limited partner of, and to hold the limited partnership interests in, the Reorganized Debtor;

(vii)    to serve as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner;

(viii)    to oversee the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement, in its capacity as the sole member and manager of New GP LLC pursuant to the terms of the New GP LLC Documents, all with a view toward maximizing value in a reasonable time in a manner consistent with the Reorganized Debtor's fiduciary duties as investment adviser to the Managed Funds; and

(ix)    to perform any other functions and take any other actions provided for or permitted by this Agreement and the Plan, and in any other agreement executed by the Claimant Trustee.

2.4    Transfer of Assets and Rights to the Claimant Trust; Litigation Sub-Trust.

(a)    On the Effective Date, pursuant to the Plan, the Debtor shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Claimant Trust Assets and related Privileges held by the Debtor to the Claimant Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan and this Agreement.  To the extent certain assets comprising the Claimant Trust Assets, because of their nature or because such assets will accrue or become transferable

9

subsequent to the Effective Date, and cannot be transferred to, vested in, and assumed by the Claimant Trust on such date, such assets shall be considered Reorganized Debtor Assets, which may be subsequently transferred to the Claimant Trust by the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement after such date.

(b)     On or as soon as practicable after the Effective Date, the Claimant Trust shall irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims and related Privileges held by the Claimant Trust to the Litigation Sub-Trust Trust free and clear of all Claims, Interests, Liens, and other encumbrances, and liabilities, except as provided in the Plan, this Agreement, and the Litigation Sub-Trust Agreement.  Following the transfer of such Privileges, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(c)     On or before the Effective Date, and continuing thereafter, the Debtor or Reorganized Debtor, as applicable, shall provide (i) for the Claimant Trustee's and Litigation Trustee's reasonable access to all records and information in the Debtor's and Reorganized Debtor's possession that relate to the Claimant Trust Assets and Estate Claims, custody or control, (ii) that all Privileges related to the Claimant Trust Assets shall transfer to and vest exclusively in the Claimant Trust (except for those Privileges that will be transferred and assigned to the Litigation Sub-Trust in respect of the Estate Claims), and (iii) subject to Section 3.12(c), the Debtor and Reorganized Debtor shall preserve all records and documents (including all electronic records or documents), including, but not limited to, the Debtor's file server, email server, email archiving system, master journal, SharePoint, Oracle E-Business Suite, Advent Geneva, Siepe database, Bloomberg chat data, and any backups of the foregoing, until such time as the Claimant Trustee, [with the consent of the Oversight Board and, if pertaining to any of the Estate Claims, the Litigation Trustee,] directs the Reorganized Debtor, as sole member of its general partner, that such records are no longer required to be preserved.  For the purposes of transfer of documents, the Claimant Trust or Litigation Sub-Trust, as applicable, is an assignee and successor to the Debtor in respect of the Claimant Trust Assets and Estate Claims, respectively, and shall be treated as such in any review of confidentiality restrictions in requested documents.

(d)     Until the Claimant Trust terminates pursuant to the terms hereof, legal title to the Claimant Trust Assets (other than Estate Claims) and all property contained therein shall be vested at all times in the Claimant Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Claimant Trust Assets to be vested in the Claimant Trustee, in which case title shall be deemed to be vested in the Claimant Trustee, solely in his capacity as Claimant Trustee.  For purposes of such jurisdictions, the term Claimant Trust, as used herein, shall be read to mean the Claimant Trustee.

2.5     Principal Office.  The principal office of the Claimant Trust shall be maintained by the Claimant Trustee at the following address:[_____].

2.6     Acceptance.  The Claimant Trustee accepts the Claimant Trust imposed by this Agreement and agrees to observe and perform that Claimant Trust, on and subject to the terms and conditions set forth herein and in the Plan.

002663

2.7    Further Assurances.  The Debtor, Reorganized Debtor, and any successors thereof will, upon reasonable request of the Claimant Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Claimant Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Claimant Trustee the powers, instruments or funds in trust hereunder.

2.8    Incidents of Ownership.  The Claimant Trust Beneficiaries shall be the sole beneficiaries of the Claimant Trust and the Claimant Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## ARTICLE III.
## THE TRUSTEES

3.1    Role.  In furtherance of and consistent with the purpose of the Claimant Trust, the Plan, and this Agreement, the Claimant Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Claimant Trustee with respect to the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries and maintain, manage, and take action on behalf of the Claimant Trust.

3.2    Authority.

(a)    In connection with the administration of the Claimant Trust, in addition to any and all of the powers enumerated elsewhere herein, the Claimant Trustee shall, in an expeditious but orderly manner, monetize the Claimant Trust Assets, make timely distributions and not unduly prolong the duration of the Claimant Trust.  The Claimant Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Claimant Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.  The Claimant Trustee will monetize the Claimant Trust Assets with a view toward maximizing value in a reasonable time.

(b)    The Claimant Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Claims and Causes of Action that are part of the Claimant Trust Assets, other than the [Employee Claims and] Estate Claims transferred to the Litigation Sub-Trust, if any, as the Claimant Trustee determines is in the best interests of the Claimant Trust; provided, however, that if the Claimant Trustee proposes a settlement of an Employee Claim and does not obtain unanimous consent of the Oversight Board of such settlement, such Employee Claim shall be transferred to the Litigation Sub-Trust for the Litigation Trustee to litigate.  To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Claims and Causes of Action prior to the Effective Date, on the Effective Date the Claimant Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following

11

002664

"[Claimant Trustee], not individually but solely as Claimant Trustee for the Claimant Trust, et al. v. [Defendant]".

(c)    Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Claimant Trustee shall have the power and authority to:

(i)    solely as required by Section 2.4(c), hold legal title to any and all rights of the Claimant Trust and Beneficiaries in or arising from the Claimant Trust Assets, including collecting and receiving any and all money and other property belonging to the Claimant Trust and the right to vote or exercise any other right with respect to any claim or interest relating to the Claimant Trust Assets in any case under the Bankruptcy Code and receive any distribution with respect thereto;

(ii)    open accounts for the Claimant Trust and make distributions of Claimant Trust Assets in accordance herewith;

(iii)    as set forth in Section 3.11, exercise and perform the rights, powers, and duties held by the Debtor with respect to the Claimant Trust Assets (other than Estate Claims), including the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting as a representative of the Debtor's Estate with respect to the Claimant Trust Assets, including with respect to the sale, transfer, or other disposition of the Claimant Trust Assets;

(iv)    settle or resolve any Claims in Class 8 and Class 9 other than the Material Claims and any Equity Interests;

(v)    sell or otherwise monetize any publicly-traded asset for which there is a marketplace and any other assets (other than the Other Assets (as defined below)) valued less than or equal to $3,000,000 (over a thirty-day period);

(vi)    upon the direction of the Oversight Board, fund the Litigation Sub-Trust on the Effective Date and as necessary thereafter;

(vii)    exercise and perform the rights, powers, and duties arising from the Claimant Trust's role as sole member of New GP LLC, and the role of New GP LLC, as general partner of the Reorganized Debtor, including the management of the Managed Funds;

(viii)    protect and enforce the rights to the Claimant Trust Assets by any method deemed appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(ix)    obtain reasonable insurance coverage with respect to any liabilities and obligations of the Trustees, Litigation Trustee, and the Members of the Oversight Board solely in their capacities as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise.  The cost of any such insurance shall be a Claimant Trust Expense and paid by the Claimant Trustee from the Claimant Trust Assets;

12

002665

(x)     without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Claimant Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Claimant Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Claimant Trustee shall be Claimant Trust Expenses and paid by the Claimant Trustee from the Claimant Trust Assets;

(xi)     retain and approve compensation arrangements of an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Claimant Trust as may be required by this Agreement, the Plan, the Confirmation Order, and applicable laws and as may be reasonably and appropriate in Claimant Trustee's discretion. Subject to the foregoing, the Claimant Trustee may commit the Claimant Trust to, and shall pay, such independent public accounting firm reasonable compensation for services rendered and reasonable and documented out-of-pocket expenses incurred, and all such compensation and reimbursement shall be paid by the Claimant Trustee from Claimant Trust Assets;

(xii)     prepare and file (A) tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (B) an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity, or (C) any periodic or current reports that may be required under applicable law;

(xiii)     prepare and send annually to the Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Claimant Trust and its share of the Claimant Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

(xiv)     to the extent applicable, assert, enforce, release, or waive any attorney-client communication, attorney work product or other Privilege or defense on behalf of the Claimant Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Claimant Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xv)     subject to Section 3.4, invest the proceeds of the Claimant Trust Assets and all income earned by the Claimant Trust, pending any distributions in short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills;

(xvi)     request any appropriate tax determination with respect to the Claimant Trust, including a determination pursuant to section 505 of the Bankruptcy Code;

002666

(xvii)   take or refrain from taking any and all actions the Claimant Trustee reasonably deems necessary for the continuation, protection, and maximization of the value of the Claimant Trust Assets consistent with purposes hereof;

(xviii)  take all steps and execute all instruments and documents necessary to effectuate the purpose of the Claimant Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder;

(xix)   exercise such other powers and authority as may be vested in or assumed by the Claimant Trustee by any Final Order;

(xx)    evaluate and determine strategy with respect to the Claimant Trust Assets, and hold, pursue, prosecute, adjust, arbitrate, compromise, release, settle or abandon the Claimant Trust Assets on behalf of the Claimant Trust; and

(xxi)   with respect to the Claimant Trust Beneficiaries, perform all duties and functions of the Distribution Agent as set forth in the Plan, including distributing Cash from the Disputed Claims Reserve, solely on account of Disputed Class 1 through Class 7 Claims that were Disputed as of the Effective Date, but become Allowed, to the Reorganization Debtor such that the Reorganized Debtor can satisfy its duties and functions as Distribution Agent with respect to Claims in Class 1 through Class 7 (the foregoing subparagraphs (i)-(xviixxi) being collectively, the "Authorized Acts").

(d)    The Claimant Trustee and the Oversight Committee will enter into an agreement as soon as practicable after the Effective Date concerning the Claimant Trustee's authority with respect to certain other assets, including certain portfolio company assets (the "Other Assets").

(e)    The Claimant Trustee has the power and authority to act as trustee of the Claimant Trust and perform the Authorized Acts through the date such Claimant Trustee resigns, is removed, or is otherwise unable to serve for any reason.

3.3    Limitation of Authority.

(a)    Notwithstanding anything herein to the contrary, the Claimant Trust and the Claimant Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Claimant Trust Assets as are required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement, or (iv) cause New GP LLC to cause the Reorganized Debtor to take any action in contravention of the Plan, Plan Documents or the Confirmation Order.

(b)    Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Claimant Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 herein, in order to:

14

(i)      terminate or extend the term of the Claimant Trust;

(ii)      prosecute, litigate, settle or otherwise resolve any of the Material Claims;

(iii)      except otherwise set forth herein, sell or otherwise monetize any assets that are not Other Assets, including Reorganized Debtor Assets (other than with respect to the Managed Funds), that are valued greater than $[3,000,000] (over a thirty-day period);

(iv)      except for cash distributions made in accordance with the terms of this Agreement, make any cash distributions to Claimant Trust Beneficiaries in accordance with Article IV of the Plan;

(v)      except for any distributions made in accordance with the terms of this Agreement, make any distributions from the Disputed Claims Reserve to Holders of Disputed Claims after such time that such Holder's Claim becomes an Allowed Claim under the Plan;

(vi)      reserve or retain any cash or cash equivalents in an amount reasonably necessary to meet claims and contingent liabilities, (including Disputed Claims and any indemnification obligations that may arise under Section 8.2 of this Agreement), to maintain the value of the Claimant Trust Assets, or to fund ongoing operations and administration of the Litigation Sub-Trust;

(vii)      borrow as may be necessary to fund activities of the Claimant Trust;

(viii)      determine whether the conditions under Section 5.1(c) of this Agreement have been satisfied such that a certification should be filed with the Bankruptcy Court;

(ix)      invest the Claimant Trust Assets, proceeds thereof, or any income earned by the Claimant Trust (for the avoidance of doubt, this shall not apply to investment decisions made by the Reorganized Debtor or its subsidiaries solely with respect to Managed Funds);

(x)      change the compensation of the Claimant Trustee;

(xi)      subject to ARTICLE X, make structural changes to the Claimant Trust or take other actions to minimize any tax on the Claimant Trust Assets; and

(xii)      retain counsel, experts, advisors, or any other professionals [TBD]; provided, however, the Claimant Trustee shall not be required to obtain the consent of the Oversight Board for the retention of (i) PSZJ, WilmerHale, or Development Specialists, Inc. and (ii) any other professional whose expected fees and expenses are estimated at less than or equal to $200,000.

(c)      [Reserved.]

15

002668

3.4    Investment of Cash.  The right and power of the Claimant Trustee to invest the Claimant Trust Assets, the proceeds thereof, or any income earned by the Claimant Trust, with majority approval of the Oversight Board, shall be limited to the right and power to invest in such Claimant Trust Assets only in Cash and U.S. Government securities as defined in section 29(a)(16) of the Investment Company Act; provided, however that (a) the scope of any such permissible investments shall be further limited to include only those investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, (b) the Claimant Trustee may retain any Claimant Trust Assets received that are not Cash only for so long as may be required for the prompt and orderly monetization or other disposition of such assets, and (c) the Claimant Trustee may expend the assets of the Claimant Trust (i) as reasonably necessary to meet contingent liabilities (including indemnification and similar obligations) and maintain the value of the assets of the Claimant Trust during the pendency of this Claimant Trust, (ii) to pay Claimant Trust Expenses (including, but not limited to, any taxes imposed on the Claimant Trust and reasonable attorneys' fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Claimant Trust (or to which the assets are otherwise subject) in accordance with the Plan or this Agreement).

3.5    Binding Nature of Actions.  All actions taken and determinations made by the Claimant Trustee in accordance with the provisions of this Agreement shall be final and binding upon any and all Beneficiaries.

3.6    Term of Service.  The Claimant Trustee shall serve as the Claimant Trustee for the duration of the Claimant Trust, subject to death, resignation or removal.

3.7    Resignation.  The Claimant Trustee may resign as Claimant Trustee of the Claimant Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Claimant Trustee shall continue to serve as Claimant Trustee after delivery of the Claimant Trustee's resignation until the proposed effective date of such resignation, unless the Claimant Trustee and a simple majority of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Claimant Trustee in accordance with Section 3.9 hereof becomes effective.

3.8    Removal.

(a)    The Claimant Trustee may be removed by a simple majority vote of the Oversight Board for Cause for Cause immediately upon notice thereof, or without Cause upon 60 days' prior written notice.  Upon the removal of the Claimant Trustee pursuant hereto, the Claimant Trustee will resign, or be deemed to have resigned, from any role or position he or she may have at New GP LLC or the Reorganized Debtor effective upon the expiration of the foregoing 60 day period unless the Claimant Trustee and a simple majority of the Oversight Board agree otherwise.

16

002669

(b) To the extent there is any dispute regarding the removal of a Claimant Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute. Notwithstanding the foregoing, the Claimant Trustee will continue to serve as the Claimant Trustee after his removal until the earlier of (i) the time when a successor Claimant Trustee will become effective in accordance with Section 3.9 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.9 <u>Appointment of Successor</u>.

(a) <u>Appointment of Successor</u>. In the event of a vacancy by reason of the death or Disability (in the case of a Claimant Trustee that is a natural person), dissolution (in the case of a Claimant Trustee that is not a natural person), or removal of the Claimant Trustee, or prospective vacancy by reason of resignation, a successor Claimant Trustee shall be selected by a simple majority vote of the Oversight Board. If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Claimant Trustee on motion of the Members. If a final decree has been entered closing the Chapter 11 Case, the Claimant Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Claimant Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Claimant Trust. The successor Claimant Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Claimant Trustee.

(b) <u>Vesting or Rights in Successor Claimant Trustee</u>. Every successor Claimant Trustee appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trust, the exiting Claimant Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof. The successor Claimant Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Claimant Trustee, except that the successor Claimant Trustee shall not be liable for the acts or omissions of the retiring Claimant Trustee. In no event shall the retiring Claimant Trustee be liable for the acts or omissions of the successor Claimant Trustee.

(c) <u>Interim Claimant Trustee</u>. During any period in which there is a vacancy in the position of Claimant Trustee, the Oversight Board shall appoint one of its Members to serve as the interim Claimant Trustee (the "<u>Interim Trustee</u>") until a successor Claimant Trustee is appointed pursuant to Section 3.9(a). The Interim Trustee shall be subject to all the terms and conditions applicable to a Claimant Trustee hereunder. Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board merely by such Person's appointment as Interim Trustee.

3.10 <u>Continuance of Claimant Trust</u>. The death, resignation, or removal of the Claimant Trustee shall not operate to terminate the Claimant Trust created by this Agreement or to revoke any existing agency (other than any agency of the Claimant Trustee as the Claimant Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Claimant Trustee. In the event of the resignation or removal of the Claimant Trustee, the

17

Claimant Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Claimant Trustee's capacity under this Agreement and the conveyance of the Claimant Trust Assets then held by the exiting Claimant Trustee to the successor Claimant Trustee; (ii) deliver to the successor Claimant Trustee all non-privileged documents, instruments, records, and other writings relating to the Claimant Trust as may be in the possession or under the control of the exiting Claimant Trustee, provided, the exiting Claimant Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Claimant Trustee and the cost of making such copies shall be a Claimant Trust Expense to be paid by the Claimant Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Claimant Trustee's obligations and functions by his successor, provided the fees and expenses of such assistance and cooperation shall be paid to the exiting Claimant Trustee by the Claimant Trust. The exiting Claimant Trustee shall irrevocably appoint the successor Claimant Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Claimant Trustee is obligated to perform under this Section 3.10.

3.11    Claimant Trustee as "Estate Representative".  The Claimant Trustee will be the exclusive trustee of the Claimant Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Claimant Trust Assets, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement; provided that all rights and powers as representative of the Estate pursuant to section 1123(b)(3)(B) shall be transferred to the Litigation Trustee in respect of the Estate Claims[ and the Employee Claims].  The Claimant Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Claimant Trust Assets, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order.  All actions, claims, rights or interest constituting Claimant Trust Assets are preserved and retained and may be enforced, or assignable to the Litigation Sub-Trust, by the Claimant Trustee as an Estate Representative.

3.12    Books and Records.

(a)     The Claimant Trustee shall maintain in respect of the Claimant Trust and the Claimant Trust Beneficiaries books and records reflecting Claimant Trust Assets in its possession and the income of the Claimant Trust and payment of expenses, liabilities, and claims against or assumed by the Claimant Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Claimant Trust and the requirements of Article [VII] herein. Except as otherwise provided herein, nothing in this Agreement requires the Claimant Trustee to file any accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

18

(b)     The Claimant Trustee shall provide [quarterly] reporting to the Oversight Board [and Claimant Trust Beneficiaries] of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

(c)     The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the [unanimous consent] of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; provided, however, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims or Employee Claims without the consent of the Litigation Trustee. Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

3.13     Compensation and Reimbursement; Engagement of Professionals.

(a)     Compensation and Expenses.

(i)     Compensation. [As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation, including any severance, as agreed to by the Claimant Trustee and the Committee, if agreed upon prior to the Effective Date, or the Oversight Board if agreed upon on or after the Effective Date.]

(ii)     Expense Reimbursements. All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

(b)     Professionals.

(i)     Engagement of Professionals. The Claimant Trustee shall engage professionals from time to time in conjunction with the services provided hereunder. The Claimant Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

19

     (ii) <u>Fees and Expenses of Professionals</u>.  The Claimant Trustee shall pay the reasonable fees and expenses of any retained professionals as Claimant Trust Expenses.

   3.14 <u>Reliance by Claimant Trustee</u>.  Except as otherwise provided herein, the Claimant Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Claimant Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Claimant Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein.  The Claimant Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning the Claimant Trust Assets, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Claimant Trustee in accordance therewith.  The Claimant Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

   3.15 <u>Commingling of Claimant Trust Assets</u>.  The Claimant Trustee shall not commingle any of the Claimant Trust Assets with his or her own property or the property of any other Person.

   3.16 <u>Delaware Trustee</u>.  The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Claimant Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Claimant Trustee; <u>provided</u>, <u>however</u>, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law.  The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Claimant Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law.  Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Claimant Trust.

<b>ARTICLE IV.<br>THE OVERSIGHT BOARD</b>

   4.1 <u>Oversight Board Members</u>.  The Oversight Board will be comprised of five (5) Members appointed to serve as the board of managers of the Claimant Trust, at least two (2) of

which shall be disinterested Members selected by the Creditors' Committee (such disinterested members, the "Disinterested Members"). The initial Members of the Oversight Board will be representatives of Acis, the Redeemer Committee, Meta-e Discovery, UBS, and David Pauker. David Pauker and Paul McVoy, the representative of Meta-e Discovery, shall serve as the initial Disinterested Board Members; provided, however, that if the Plan is confirmed with the Convenience Class or any other convenience class supported by the Creditors' Committee, Meta-E Discovery and its representative will resign on the Effective Date or as soon as practicable thereafter and be replaced in accordance with Section 4.10 hereof..

4.2    Authority and Responsibilities.

(a)    The Oversight Board shall, as and when requested by either of the Claimant Trustee and Litigation Trustee, or when the Members otherwise deem it to be appropriate or as is otherwise required under the Plan, the Confirmation Order, or this Agreement, consult with and advise the Claimant Trustee and Litigation Trustee as to the administration and management of the Claimant Trust and the Litigation Sub-Trust, as applicable, in accordance with the Plan, the Confirmation Order, this Agreement, and Litigation Sub-Trust Agreement (as applicable) and shall have the other responsibilities and powers as set forth herein. As set forth in the Plan, the Confirmation Order, and herein, the Oversight Board shall have the authority and responsibility to oversee, review, and govern the activities of the Claimant Trust, including the Litigation Sub-Trust, and the performance of the Claimant Trustee and Litigation Trustee, and shall have the authority to remove the Claimant Trustee in accordance with Section 3.7 hereof or the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; provided, however, that the Oversight Board may not direct either Claimant Trustee and Litigation Trustee to act inconsistently with their respective duties under this Agreement (including without limitation as set in Section 4.2(e) below), the Litigation Sub-Trust Agreement, the Plan, the Confirmation Order, or applicable law.

(b)    The Oversight Board shall also (i) monitor and oversee the administration of the Claimant Trust and the Claimant Trustee's performance of his or her responsibilities under this Agreement, (ii) as more fully set forth in the Litigation Sub-Trust Agreement, approve funding to the Litigation Sub-Trust, monitor and oversee the administration of the Litigation Sub-Trust and the Litigation Trustee's performance of his responsibilities under the Litigation Sub-Trust Agreement, and (iii) perform such other tasks as are set forth herein, in the Litigation Sub-Trust Agreement, and in the Plan.

(c)    The Claimant Trustee shall consult with and provide information to the Oversight Board in accordance with and pursuant to the terms of the Plan, the Confirmation Order, and this Agreement to enable the Oversight Board to meet its obligations hereunder.

(d)    Notwithstanding any provision of this Agreement to the contrary, the Claimant Trustee shall not be required to (i) obtain the approval of any action by the Oversight Board to the extent that the Claimant Trustee, in good faith, reasonably determines, based on the advice of legal counsel, that such action is required to be taken by applicable law, the Plan, the Confirmation Order, or this Agreement or (ii) follow the directions of the Oversight Board to take any action the extent that the Claimant Trustee, in good faith, reasonably determines, based

21

on the advice of legal counsel, that such action is prohibited by applicable law the Plan, the Confirmation Order, or this Agreement.

(e) Notwithstanding provision of this Agreement to the contrary, with respect to the activities of the Reorganized Debtor in its capacity as an investment adviser (and subsidiaries of the Reorganized Debtor that serve as general partner or in an equivalent capacity) to any Managed Funds, the Oversight Board shall not make investment decisions or otherwise participate in the investment decision making process relating to any such Managed Funds, nor shall the Oversight Board or any member thereof serve as a fiduciary to any such Managed Funds. It is agreed and understood that investment decisions made by the Reorganized Debtor (or its subsidiary entities) with respect to Managed Funds shall be made by the Claimant Trustee in his capacity as an officer of the Reorganized Debtor and New GP LLC and/or such persons who serve as investment personnel of the Reorganized Debtor from time to time, and shall be subject to the fiduciary duties applicable to such entities and persons as investment adviser to such Managed Funds.

4.3     Fiduciary Duties.  The Oversight Board (and each Member in its capacity as such) shall have fiduciary duties to the Claimant Trust Beneficiaries consistent with the fiduciary duties that the members of the Creditors' Committee have to unsecured creditors and shall exercise its responsibilities accordingly; provided, however, that the Oversight Board shall not owe fiduciary obligations to any Holders of Class A Limited Partnership Interests or Class B/C Limited Partnership Interests until such Holders become Claimant Trust Beneficiaries in accordance with Section 5.1(c) hereof; provided, further, that the Oversight Board shall not owe fiduciary obligations to a Holder of an Equity Trust Interest if such Holder is named as a defendant in any of the Causes of Action, including Estate Claims, in their capacities as such, it being the intent that the Oversight Board's fiduciary duties are to maximize the value of the Claimant Trust Assets, including the Causes of Action.  In all circumstances, the Oversight Board shall act in the best interests of the Claimant Trust Beneficiaries and in furtherance of the purpose of the Claimant Trust.  Notwithstanding anything to the contrary contained in this Agreement, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing.

4.4     Meetings of the Oversight Board.  Meetings of the Oversight Board are to be held as necessary to ensure the operation of the Claimant Trust but in no event less often than quarterly.  Special meetings of the Oversight Board may be held whenever and wherever called for by the Claimant Trustee or any Member; provided, however, that notice of any such meeting shall be duly given in writing no less than 48 hours prior to such meeting (such notice requirement being subject to any waiver by the Members in the minutes, if any, or other transcript, if any, of proceedings of the Oversight Board).  Unless the Oversight Board decides otherwise (which decision shall rest in the reasonable discretion of the Oversight Board), the Claimant Trustee, and each of the Claimant Trustee's designated advisors may, but are not required to, attend meetings of the Oversight Board.

4.5     Unanimous Written Consent.  Any action required or permitted to be taken by the Oversight Board in a meeting may be taken without a meeting if the action is taken by unanimous written consents describing the actions taken, signed by all Members and recorded.  If any Member informs the Claimant Trustee (via e-mail or otherwise) that he or she objects to the decision, determination, action, or inaction proposed to be made by unanimous written consent,

22

the Claimant Trustee must use reasonable good faith efforts to schedule a meeting on the issue to be set within 48 hours of the request or as soon thereafter as possible on which all members of the Oversight Board are available in person or by telephone. Such decision, determination, action, or inaction must then be made pursuant to the meeting protocols set forth herein.

        4.6    <u>Manner of Acting</u>.

        (a)    A quorum for the transaction of business at any meeting of the Oversight Board shall consist of at least three Members (including no less than one (1) Disinterested Member); <u>provided</u> that if the transaction of business at a meeting would constitute a direct or indirect conflict of interest for the Redeemer Committee, Acis, and/or UBS, at least two Disinterested Members must be present for there to be a quorum. Except as set forth in Sections 3.3(c), 4.9(a), 5.2, 5.4, 6.1, 9.1, and 10, herein, the majority vote of the Members present at a duly called meeting at which a quorum is present throughout shall be the act of the Oversight Board except as otherwise required by law or as provided in this Agreement. Any or all of the Members may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone, video conference, or similar communications equipment by means of which all Persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding hereof. Any Member participating in a meeting by this means is deemed to be present in person at the meeting. Voting (including on negative notice) may be conducted by electronic mail or individual communications by the applicable Trustee and each Member.

        (b)    Any Member who is present and entitled to vote at a meeting of the Oversight Board when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Board, unless (i) such Member objects at the beginning of the meeting (or promptly upon his/her arrival) to holding or transacting business at the meeting; (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Board before its adjournment. The right of dissent or abstention is not available to any Member of the Oversight Board who votes in favor of the action taken.

        (c)    Prior to a vote on any matter or issue or the taking of any action with respect to any matter or issue, each Member shall report to the Oversight Board any conflict of interest such Member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such Member may have with respect to or in connection with such matter or issue, other than solely as a holder of Trust Interests). A Member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such Member's interests are adverse to the interests of the Claimant Trust shall be deemed a "<u>Conflicted Member</u>" who shall not be entitled to vote or take part in any action with respect to such matter or issue. In the event of a Conflicted Member, the vote or action with respect to such matter or issue giving rise to such conflict shall be undertaken only by Members who are not Conflicted Members and, notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the Members who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Oversight Board.

23

(d)     Each of Acis, the Redeemer Committee, and UBS shall be deemed "Conflicted Members" with respect to any matter or issue related to or otherwise affecting any of their respective Claim(s) (a "Committee Member Claim Matter").  A unanimous vote of the Disinterested Members shall be required to approve of or otherwise take action with respect to any Committee Member Claim Matter and, notwithstanding anything herein to the contrary, the same shall be the act of the Oversight Board.

4.7     Tenure of the Members of the Oversight Board.  The authority of the Members of the Oversight Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Claimant Trust is terminated in accordance with Article X hereof. The Members of the Oversight Board will serve until such Member's successor is duly appointed or until such Member's earlier death or resignation pursuant to Section 4.7 below, or removal pursuant to Section 4.8 below.

4.8     Resignation.  A Member of the Oversight Board may resign by giving not less than [90 days] prior written notice thereof to the Claimant Trustee and other Members.  Such resignation shall become effective on the earlier to occur of (i) the day specified in such notice and (ii) the appointment of a successor in accordance with Section 4.9 below.

4.9     Removal.  A majority of the Oversight Board may remove any Member for Cause or Disability.  If any Committee Member has its Claim disallowed in its entirety the representative of such entity will immediately be removed as a Member without the requirement for a vote and a successor will be appointed in the manner set forth herein.  Notwithstanding the foregoing, upon the termination of the Claimant Trust, any or all of the Members shall be deemed to have resigned.

4.10    Appointment of a Successor Member.

(a)     In the event of a vacancy on the Oversight Board (whether by removal, death, or resignation), a new Member may be appointed to fill such position by the remaining Members acting unanimously; provided, however, that any vacancy resulting from the removal, resignation, or death of a Disinterested Member may only be filled by a disinterested Person unaffiliated with any Claimant or constituency in the Chapter 11 Case; provided, further, that if an individual serving as the representative of a Committee Member resigns from its role as representative, such resignation shall not be deemed resignation of the Committee Member itself and such Committee Member shall have the exclusive right to designate its replacement representative for the Oversight Board.  The appointment of a successor Member will be further evidenced by the Claimant Trustee's filing with the Bankruptcy Court (to the extent a final decree has not been entered) and posting on the Claimant Trustee's website a notice of appointment, at the direction of the Oversight Board, which notice will include the name, address, and telephone number of the successor Member.

(b)     Immediately upon the appointment of any successor Member, the successor Member shall assume all rights, powers, duties, authority, and privileges of a Member hereunder and such rights and privileges will be vested in and undertaken by the successor Member without any further act.  A successor Member will not be liable personally for any act or omission of a predecessor Member.

24

(c)     Every successor Member appointed hereunder shall execute, acknowledge, and deliver to the Claimant Trustee and other Members an instrument accepting the appointment under this Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of a Member hereunder.

4.11   <u>Compensation and Reimbursement of Expenses</u>.   [Unless determined by the Oversight Board, no Member shall be entitled to compensation in connection with his or her service to the Oversight Board; <u>provided</u>, <u>however</u>, that a Disinterested Member shall be compensated in a manner and amount initially set by the other Members and as thereafter amended from time to time by agreement between the Oversight Board and the Disinterested Member.]³ Notwithstanding the foregoing, the Claimant Trustee will reimburse the Members for all reasonable and documented out-of-pocket expenses incurred by the Members in connection with the performance of their duties hereunder (which shall not include fees, costs, and expenses of legal counsel).

4.12   <u>Confidentiality</u>.   Each Member shall, during the period that such Member serves as a Member under this Agreement and following the termination of this Agreement or following such Member's removal or resignation, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Claimant Trust Assets relates or of which such Member has become aware in the Member's capacity as a Member ("<u>Confidential Trust Information</u>"), except as otherwise required by law.   For the avoidance of doubt, a Member's Affiliates, employer, and employer's Affiliates (and collectively with such Persons' directors, officers, partners, principals and employees, "<u>Member Affiliates</u>") shall not be deemed to have received Confidential Trust Information solely due to the fact that a Member has received Confidential Trust Information in his or her capacity as a Member of the Oversight Board and to the extent that (a) a Member does not disclose any Confidential Trust Information to a Member Affiliate, (b) the business activities of such Member Affiliates are conducted without reference to, and without use of, Confidential Trust Information, and (c) no Member Affiliate is otherwise directed to take, or takes on behalf of a Member or Member Affiliate, any actions that are contrary to the terms of this Section 4.11.

## ARTICLE V.
## TRUST INTERESTS

5.1   <u>Claimant Trust Interests</u>.

(a)     <u>General Unsecured Claim Trust Interests</u>. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue General Unsecured Claim Trust Interests to Holders of Allowed Class 8 General Unsecured Claims (the "<u>GUC Beneficiaries</u>").   The Claimant Trustee shall allocate to each Holder of an Allowed Class 8 General Unsecured Claim a General Unsecured Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 8 Claim bears to the total amount of the Allowed Class 8 Claims.   The General Unsecured Claim Trust Interests shall be entitled to distributions from the Claimant Trust Assets in accordance with the terms of the Plan and this Agreement.

---

³   NTD: Compensation for Disinterested Member(s) to be discussed.

(b) <u>Subordinated Claim Trust Interests</u>. On the date hereof, or on the date such Claim becomes Allowed under the Plan, the Claimant Trust shall issue Subordinated Claim Trust Interests to Holders of Class 9 Subordinated Claims (the "<u>Subordinated Beneficiaries</u>"). The Claimant Trustee shall allocate to each Holder of an Allowed Class 9 Subordinated Claim a Subordinated Claim Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 9 Claim bears to the total of amount of the Allowed Class 9. The Subordinated Trust Interests shall be subordinated in right and priority to the General Unsecured Claim Trust Interests. The Subordinated Beneficiaries shall only be entitled to distributions from the Claimant Trust Assets after each GUC Beneficiary has been repaid in full with applicable interest on account of such GUC Beneficiary's Allowed General Unsecured Claim, <u>and all Disputed General Unsecured Claims have been resolved,</u> in accordance with the terms of the Plan and this Agreement.

(c) <u>Contingent Trust Interests</u>. On the date hereof, or on the date such Interest becomes Allowed under the Plan, the Claimant Trust shall issue Contingent Interests to Holders of Allowed Class 10 Class B/C Limited Partnership Interests and Holders of Allowed Class 11 Class A Limited Partnership Interests (collectively, the "<u>Equity Holders</u>"). The Claimant Trustee shall allocate to each Holder of Allowed Class 10 Class B/C Limited Partnership Interests and each Holder of Allowed Class 11 Class A Limited Partnership Interests a Contingent Trust Interest equal to the ratio that the amount of each Holder's Allowed Class 10 or Class 11 Interest bears to the total amount of the Allowed Class 10 or Class 11 Interests, as applicable, under the Plan. Contingent Trust Interests shall not vest, and the Equity Holders shall not have any rights under this Agreement, unless and until the Claimant Trustee files with the Bankruptcy Court a certification that all GUC Beneficiaries have been paid indefeasibly in full, including, to the extent applicable, all accrued and unpaid post-petition interest consistent with the Plan <u>and all Disputed Claims have been resolved</u> (the "<u>GUC Payment Certification</u>"). Equity Holders will only be deemed "Beneficiaries" under this Agreement upon the filing of a GUC Payment Certification with the Bankruptcy Court, at which time the Contingent Trust Interests will vest and be deemed "<u>Equity Trust Interests</u>." The Equity Trust Interests shall be subordinated in right and priority to Subordinated Trust Interests, and distributions on account thereof shall only be made if and when Subordinated Beneficiaries have been repaid in full on account of such Subordinated Beneficiary's Allowed Subordinated Claim, in accordance with the terms of the Plan, the Confirmation Order, and this Agreement. The Equity Trust Interests distributed to Allowed Holders of Class A Limited Partnership Interests shall be subordinated to the Equity Trust Interests distributed to Allowed Holders of Class B/C Limited Partnership Interests.

5.2 <u>Interests Beneficial Only</u>. The ownership of the beneficial interests in the Claimant Trust shall not entitle the Claimant Trust Beneficiaries to any title in or to the Claimant Trust Assets (which title shall be vested in the Claimant Trust) or to any right to call for a partition or division of the Claimant Trust Assets or to require an accounting. No Claimant Trust Beneficiary shall have any governance right or other wright to direct Claimant Trust activities.

5.3 <u>Transferability of Trust Interests</u>. No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected until (i) such action is unanimously approved by the Oversight Board, (ii) the Claimant Trustee and Oversight Board have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary to assure that any such disposition shall not cause the Claimant Trust to be subject to

26

entity-level taxation for U.S. federal income tax purposes, and (iii) either (x) the Claimant Trustee and Oversight Board, acting unanimously, have received such legal advice or other information that they, in their sole and absolute discretion, deem necessary or appropriate to assure that any such disposition shall not (a) require the Claimant Trust to comply with the registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act or (b) cause any adverse effect under the Investment Advisers Act, or (y) the Oversight Board, acting unanimously, has determined, in its sole and absolute discretion, to cause the Claimant Trust to become a public reporting company and/or make periodic reports under the Exchange Act (provided that it is not required to register under the Investment Company Act or register its securities under the Securities Act) to enable such disposition to be made. In the event that any such disposition is allowed, the Oversight Board and the Claimant Trustee may add such restrictions upon such disposition and other terms of this Agreement as are deemed necessary or appropriate by the Claimant Trustee, with the advice of counsel, to permit or facilitate such disposition under applicable securities and other laws.

5.4    Registry of Trust Interests.

(a)    Registrar.  The Claimant Trustee shall appoint a registrar, which may be the Claimant Trustee (the "Registrar"), for the purpose of recording ownership of the Trust Interests as provided herein.  The Registrar, if other than the Claimant Trustee, shall be an institution or person acceptable to the Oversight Board.  For its services hereunder, the Registrar, unless it is the Claimant Trustee, shall be entitled to receive reasonable compensation from the Claimant Trust as a Claimant Trust Expense.

(b)    Trust Register.  The Claimant Trustee shall cause to be kept at the office of the Registrar, or at such other place or places as shall be designated by the Registrar from time to time, a registry of the Claimant Trust Beneficiaries and the Equity Holders (the "Trust Register"), which shall be maintained pursuant to such reasonable regulations as the Claimant Trustee and the Registrar may prescribe.

(c)    Access to Register by Beneficiaries.  The Claimant Trust Beneficiaries and their duly authorized representatives shall have the right, upon reasonable prior written notice to the Claimant Trustee, and in accordance with reasonable regulations prescribed by the Claimant Trustee, to inspect and, at the expense of the Claimant Trust Beneficiary make copies of the Trust Register, in each case for a purpose reasonable and related to such Claimant Trust Beneficiary's Trust Interest.

5.5    Exemption from Registration.  The Parties hereto intend that the rights of the Claimant Trust Beneficiaries arising under this Claimant Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Claimant Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Claimant Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Claimant Trust Beneficiaries any rights similar to the rights of a

27

shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Claimant Trustee under this Agreement.

5.6    Absolute Owners.  The Claimant Trustee may deem and treat the Claimant Trust Beneficiary of record as determined pursuant to this Article 5 as the absolute owner of such Trust Interests for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

5.7    Effect of Death, Incapacity, or Bankruptcy.  The death, incapacity, or bankruptcy of any Claimant Trust Beneficiary during the term of the Claimant Trust shall not (i) entitle the representatives or creditors of the deceased Beneficiary to any additional rights under this Agreement, or (ii) otherwise affect the rights and obligations of any of other Claimant Trust Beneficiary under this Agreement.

5.8    Change of Address.  Any Claimant Trust Beneficiary may, after the Effective Date, select an alternative distribution address by providing notice to the Claimant Trustee identifying such alternative distribution address.  Such notification shall be effective only upon receipt by the Claimant Trustee.  Absent actual receipt of such notice by the Claimant Trustee, the Claimant Trustee shall not recognize any such change of distribution address.

5.9    Standing.  No Claimant Trust Beneficiary shall have standing to direct the Claimant Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Claimant Trust Assets.  No Claimant Trust Beneficiary shall have any direct interest in or to any of the Claimant Trust Assets.

5.10    [Limitations on Rights of Claimant Trust Beneficiaries.

(a)    The Claimant Trust Beneficiaries shall have no rights other than those set forth in this Agreement, the Confirmation Order, or the Plan (including any Plan Supplement documents incorporated therein).

(b)    In any action taken by a Claimant Trust Beneficiary against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, the prevailing party will be entitled to reimbursement of attorneys' fees and other costs; provided, however, that any fees and costs required to shall be borne by the Claimant Trust on behalf of any such Trustee or Member, as set forth herein.

(c)    A Claimant Trust Beneficiary who brings any action against the Claimant Trust, a current or former Trustee, or a current or former Member, in their capacity as such, may be required by order of the Bankruptcy Court to post a bond ensuring that the full costs of a legal defense can be reimbursed.  A request for such bond can be made by the Claimant Trust or by Claimant Trust Beneficiaries constituting in the aggregate at least 50% of the most senior class of Claimant Trust Interests.

(d)    Any action brought by a Claimant Trust Beneficiary must be brought in the United States Bankruptcy Court for the Northern District of Texas.  Claimant Trust Beneficiaries are deemed to have waived any right to a trial by jury

28

(e)    The rights of Claimant Trust Beneficiaries to bring any action against the Claimant Trust, a current or former Trustee, or current or former Member, in their capacity as such, shall not survive the final distribution by the Claimant Trust.]

**ARTICLE VI.**
**DISTRIBUTIONS**

6.1    Distributions.

(a)    Notwithstanding anything to the contrary contained herein, the Claimant Trustee shall distribute to holders of Trust Interests at least annually the Cash on hand net of any amounts that (a) are reasonably necessary to maintain the value of the Claimant Trust Assets pending their monetization or other disposition during the term of the Claimant Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Claimant Trust Expenses and any other expenses incurred by the Claimant Trust (including, but not limited to, any taxes imposed on or payable by the Claimant Trustee with respect to the Claimant Trust Assets), (c) are necessary to pay or reserve for the anticipated costs and expenses of the Litigation Sub-Trust, (d) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Claimant Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses), (e) are necessary to maintain the Disputed Claims Reserve, and (f) are necessary to pay Allowed Claims in Class 1 through Class 7. Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within [six] months of the Effective Date, and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board.  The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board.

(b)    At the request of the Reorganized Debtor, subject in all respects to the provisions of this Agreement, the Claimant Trustee shall distribute Cash to the Reorganized Debtor, as Distribution Agent with respect to Claims in Class 1 through 7, sufficient to satisfy Allowed Claims in Class 1 through Class 7.

(c)    All proceeds of Claimant Trust Assets shall be distributed in accordance with the Plan and this Agreement.

6.2    Manner of Payment or Distribution.  All distributions made by the Claimant Trustee on behalf of the Claimant Trust to the Claimant Trust Beneficiaries shall be payable by the Claimant Trustee directly to the Claimant Trust Beneficiaries of record [as of the twentieth (20th) day prior] to the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3    Delivery of Distributions.  All distributions under this Agreement to any Claimant Trust Beneficiary shall be made, as applicable, at the address of such Claimant Trust Beneficiary (a) as set forth on the Schedules filed with the Bankruptcy Court or (b) on the books and records

29

002682

of the Debtor or their agents, as applicable, unless the Claimant Trustee has been notified in writing of a change of address pursuant to Section 5.6 hereof.

6.4    <u>Disputed Claims Reserves</u>.  There will be no distributions under this Agreement or the Plan on account of Disputed Claims pending Allowance.  The Claimant Trustee will maintain a Disputed Claims Reserve as set forth in the Plan and will make distributions from the Disputed Claims Reserve as set forth in the Plan.

6.5    <u>Undeliverable Distributions and Unclaimed Property</u>.    All undeliverable distributions and unclaimed property shall be treated in the manner set forth in the Plan.

6.6    <u>*De Minimis* Distributions</u>.  Distributions with a value of less than $100 will be treated in accordance with the Plan.

6.7    <u>United States Claimant Trustee Fees and Reports</u>.  **After the Effective Date, the Claimant Trust shall pay as a Claimant Trust Expense, all fees incurred under 28 U.S.C. § 1930(a)(6) by reason of the Claimant Trust's disbursements until the Chapter 11 Case is closed.  After the Effective Date, the Claimant Trust shall prepare and serve on the Office of the United States Trustee such quarterly disbursement reports for the Claimant Trust as required by the Office of the United States Trustee Office for as long as the Chapter 11 Case remains open.**

**ARTICLE VII.
TAX MATTERS**

7.1    <u>Tax Treatment and Tax Returns</u>.

(a)    It is intended for the initial transfer of the Claimant Trust Assets to the Claimant Trust to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) as if the Debtor transferred the Claimant Trust Assets (other than the amounts set aside in the Disputed Claim Reserve, if the Claimant Trustee makes the election described below) to the Claimant Trust Beneficiaries and then, immediately thereafter, the Claimant Trust Beneficiaries transferred the Claimant Trust Assets to the Claimant Trust.  Consistent with such treatment, (i) it is intended that the Claimant Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), (ii) it is intended that the Claimant Trust Beneficiaries will be treated as the grantors of the Claimant Trust and owners of their respective share of the Claimant Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable), and (iii) the.  The Claimant Trustee shall file all federal income tax returns (and foreign, state, and local income tax returns where applicable) for the Claimant Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).  The Claimant Trustee also will annually send to each Beneficiary, in accordance with the tax laws, a separate statement setting forth such holder's Beneficiary's interest in the Claimant Trust and share of items of income, gain, loss, deduction or credit as relevant for U.S. federal income tax purposes for such Beneficiaries to use in preparing their U.S. federal income tax returns.

30

(b)     The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Beneficiaries of such valuation, and such valuation shall be used consistently by all parties for all federal income tax purposes.

(c)     The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claim Reserve as a separate taxable entity.

7.2     <u>Withholding</u>.  The Claimant Trustee may withhold from any amount distributed from the Claimant Trust to any Claimant Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable Beneficiary.  As a condition to receiving any distribution from the Claimant Trust, the Claimant Trustee may require that the Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Claimant Trustee to comply with applicable tax reporting and withholding laws. If a Beneficiary fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution and treated in accordance with Section 6.5(b) of this Agreement.

**ARTICLE VIII.**
**STANDARD OF CARE AND INDEMNIFICATION**

8.1     <u>Standard of Care</u>.  None of the Claimant Trustee, acting in his capacity as the Claimant Trustee or in any other capacity contemplated by this Agreement or the Plan, the Delaware Trustee, acting in its capacity as Delaware Trustee, the Oversight Board, or any current or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Claimant Trust or to any Person (including any Claimant Trust Beneficiary) in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the acts or omissions of any such Claimant Trustee, Delaware Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence.  The employees, agents and professionals retained by the Claimant Trust, the Claimant Trustee, or Delaware Trustee, Oversight Board, or individual Member shall not be personally liable to the Claimant Trust or any other Person in connection with the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence.  None of the Claimant Trustee, Delaware Trustee, Oversight Board, or any Member shall be personally liable to the Claimant Trust or to any Person for the acts or omissions of any employee, agent or professional of the Claimant Trust or Claimant Trustee taken or not taken in good faith reliance on the advice of professionals or, as applicable, with the approval of the Bankruptcy Court, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Claimant Trustee, Delaware Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Claimant Trust.

31

8.2 <u>Indemnification</u>. The Claimant Trustee (including each former Claimant Trustee), Delaware Trustee, Oversight Board, and all past and present Members (collectively, <u>in their capacities as such,</u> the "<u>Indemnified Parties</u>") shall be indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence. If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Claimant Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Claimant Trustee and/or Oversight Board, as applicable; <u>provided</u>, <u>however</u>, that the failure of an Indemnified Party to promptly notify the Claimant Trustee and/or Oversight Board of an indemnification obligation will not excuse the Claimant Trust from indemnifying the Indemnified Party unless such delay has caused the Claimant Trust material harm. The Claimant Trust shall <u>pay,</u> advance or otherwise reimburse on demand <u>of an Indemnified Party</u> the Indemnified Party's reasonable legal and other <u>defense</u> expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith <u>or in connection with enforcing his or her rights under this Section 8.2</u> as a Claimant Trust Expense, ~~but~~<u>and the Claimant Trust shall not refuse to make any payments to the Indemnified Party on the assertion that the Indemnified Party engaged in willful misconduct or acted in bad faith; provided that</u> the Indemnified Party shall be required to repay promptly to the Claimant Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Claimant Trust with respect to which such expenses were paid<u>; provided, further, that any such repayment obligation shall be unsecured and interest free</u>. The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties. For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Claimant Trustee, Delaware Trustee, or Member or the estate of any decedent Claimant Trustee or Member<u>, solely in their capacities as such</u>. The indemnification provided hereby shall be a Claimant Trust Expense~~.~~ <u>and shall not be deemed exclusive of any other rights to which the Indemnified Party may now or in the future be entitled to under the Plan or any applicable insurance policy. The failure of the Claimant Trust to pay or reimburse an Indemnified Party as required under this Section 8.2 shall constitute irreparable harm to the Indemnified Party and such Indemnified Party shall be entitled to specific performance of the obligations herein.</u>

8.3 <u>No Personal Liability</u>. Except as otherwise provided herein, neither of the Trustees nor Members of the Oversight Board shall be subject to any personal liability whatsoever, whether in tort, contract, or otherwise, to any Person in connection with the affairs of the Claimant Trust to the fullest extent provided under Section 3803 of the Delaware Statutory

Trust Act, and all Persons asserting claims against the Claimant Trustee, Litigation Trustee, or any Members, or otherwise asserting claims of any nature in connection with the affairs of the Claimant Trust, shall look solely to the Claimant Trust Assets for satisfaction of any such claims.

8.4     Other Protections.  To the extent applicable and not otherwise addressed herein, the provisions and protections set forth in Article IX of the Plan will apply to the Claimant Trust, the Claimant Trustee, the Litigation Trustee, and the Members.

## ARTICLE IX.
## TERMINATION

9.1     Duration.  The Trustees, the Claimant Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets[; provided, however, that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years [without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.].

9.2     Distributions in Kind.  Upon dissolution of the Claimant Trust, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

9.3     Continuance of the Claimant Trustee for Winding Up.  After dissolution of the Claimant Trust and for purpose of liquidating and winding up the affairs of the Claimant Trust, the Claimant Trustee shall continue to act as such until the Claimant Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Claimant Trust Assets, the Claimant Trustee shall be entitled to reserve from such assets any and all amounts required to

002686

provide for the Claimant Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Claimant Trust, until such time as the winding up of the Claimant Trust is completed. Upon the dissolution of the Claimant Trust and completion of the winding up of the assets, liabilities and affairs of the Claimant Trust pursuant to the Delaware Statutory Trust Act, the Claimant Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Claimant Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date"). Upon the Termination date, the Claimant Trustee shall retain for a period of two (2) years, as a Claimant Trust Expense, the books, records, Claimant Trust Beneficiary lists, and certificated and other documents and files that have been delivered to or created by the Claimant Trustee. At the Claimant Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.4     Termination of Duties.  Except as otherwise specifically provided herein, upon the Termination Date of the Claimant Trust, the Claimant Trustee, the Oversight Board and its Members shall have no further duties or obligations hereunder.

9.5     No Survival.  The rights of Claimant Trust Beneficiaries hereunder shall not survive the Termination Date, provided that such Claimant Trust Beneficiaries are provided with notice of such Termination Date.

## ARTICLE X.
## AMENDMENTS AND WAIVER

The Claimant Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions. This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Claimant Trustee and with [the unanimous approval] of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Claimant Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

## ARTICLE XI.
## MISCELLANEOUS

11.1     Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Claimant Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Claimant Trust Beneficiaries.

11.2     Bankruptcy of Claimant Trust Beneficiaries.  The dissolution, termination, bankruptcy, insolvency or other similar incapacity of any Claimant Trust Beneficiary shall not permit any creditor, trustee, or any other Claimant Trust Beneficiary to obtain possession of, or exercise legal or equitable remedies with respect to, the Claimant Trust Assets.

11.3     Claimant Trust Beneficiaries have No Legal Title to Claimant Trust Assets.  No Claimant Trust Beneficiary shall have legal title to any part of the Claimant Trust Assets.

34

11.4 <u>Agreement for Benefit of Parties Only</u>. Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Claimant Trustee, Oversight Board, and the Claimant Trust Beneficiaries any legal or equitable right, remedy or claim under or in respect of this Agreement. The Claimant Trust Assets shall be held for the sole and exclusive benefit of the Claimant Trust Beneficiaries.

11.5 <u>Notices</u>. All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

      (a)     If to the Claimant Trustee:

          Claimant Trustee
          c/o **[insert contact info for Claimant Trustee]**

      With a copy to:

          ~~**[insert contact for counsel to the Claimant Trustee].**~~

          Pachulski Stang Ziehl & Jones LLP
          10100 Santa Monica Blvd, 13th Floor
          Los Angeles, CA 90067
          Attn: Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
               Ira Kharasch (ikharasch@pszjlaw.com)
               Gregory Demo (gdemo@pszjlaw.com)

Notice mailed shall be effective on the date mailed or sent. Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.5 to the entity to be charged with knowledge of such change.

11.6 <u>Severability</u>. Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.7 <u>Counterparts</u>. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.8 <u>Binding Effect, etc.</u> All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Claimant Trust, the Claimant Trustee, and the Claimant Trust Beneficiaries, and their respective successors and assigns. Any notice, direction, consent, waiver or other instrument or action by any Claimant Trust Beneficiary shall bind its successors and assigns.

35

11.9 <u>Headings; References</u>. The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.10 <u>Governing Law</u>. This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.11 <u>Consent to Jurisdiction</u>. Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan.

11.12 <u>Transferee Liabilities</u>. The Claimant Trust shall have no liability for, and the Claimant Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement. In no event shall the Claimant Trustee or the Claimant Trust Beneficiaries have any personal liability for such claims. If any liability shall be asserted against the Claimant Trust or the Claimant Trustee as the transferee of the Claimant Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Claimant Trustee may use such part of the Claimant Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Claimant Trustee as a Claimant Trust Expense.

[Remainder of Page Intentionally Blank]

36

002689

IN WITNESS HEREOF, the parties hereto have caused this Claimant Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Highland Capital Management, L.P.

By: _____

James P. Seery, Jr.
Chief Executive Officer and
Chief Restructuring Officer

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but
solely in his capacity as the Claimant Trustee

37

002690

Document comparison by Workshare 9.5 on Monday, January 04, 2021 6:47:25 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_NY/41280/5 |
| Description | DOCS_NY-#41280-v5-Highland_-_Claimant_Trust_Agreement |
| Document 2 ID | PowerDocs://DOCS_NY/41280/9 |
| Description | DOCS_NY-#41280-v9-Highland_-_Claimant_Trust_Agreement |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 85 |
| Deletions | 86 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 171 |

# EXHIBIT O

002692

*Draft*

## LITIGATION SUB-TRUST AGREEMENT

This Litigation Sub-Trust Agreement, effective as of _____, 2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among James P. Seery, Jr., as trustee of the Highland Claimant Trust (the "Claimant Trustee"), [____] as Delaware Trustee, and Marc S. Kirschner as trustee (the "Litigation Trustee," and together with the Claimant Trustee [and Delaware Trustee], the "Parties") of the Litigation Sub-Trust for the benefit of the Claimant Trust as sole Litigation Sub-Trust Beneficiary.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November 24, 2020, the Debtor filed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] which was confirmed by the Bankruptcy Court on _____, 2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order");

WHEREAS, this Agreement, including all exhibits hereto, is the "Litigation Sub-Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Litigation Sub-Trust Assets are hereby to be transferred by the Claimant Trust to the Litigation Sub-Trust (each as defined herein) created and evidenced by this Agreement so that (i) Estate Claims can be investigated, prosecuted, settled, abandoned, resolved, and otherwise monetized as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; (ii) proceeds of Estate Claims can be remitted to the Claimant Trust as Claimant Trust Assets for distribution to the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) in accordance with the Plan and Claimant Trust Agreement; (iii) the Litigation Trustee can investigate, litigate, settle, or otherwise resolve any Filed Claims relating to the Estate Claims, including the Employee Claims; and (iv) administrative services relating to the activities of the Litigation Sub-Trust can be performed by the Litigation Trustee.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

002693

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Litigation Trustee and the Claimant Trustee have executed this Agreement for the benefit of the Claimant Trust as provided for in the Plan.

TO HAVE AND TO HOLD unto the Litigation Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Litigation Sub-Trust in accordance with Article IX hereof, this Litigation Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Litigation Sub-Trust Assets are to be strictly held and applied by the Litigation Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     Certain Definitions.   Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.   For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(b)     "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(c)     "Claimant Trust Agreement" means the Claimant Trust Agreement dated [___], 2021, by and between the Debtor, Claimant Trustee, and Delaware Trustee.

(d)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee who may be appointed pursuant to the terms of the Claimant Trust Agreement.

2

002694

(e)  "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(f)  "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(g)  "Delaware Trustee" has the meaning set forth in the Claimant Trust Agreement.

(h)  "Disability" means as a result of the Litigation Trustee's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Litigation Trustee, the Litigation Trustee has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(i)  "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(j)  "Employee" means the employees of the Debtor set forth in the Plan Supplement.

(k)  "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(l)  "Litigation Sub-Trust" means the sub-trust created pursuant to this Agreement, and in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d).

(m)  "Litigation Sub-Trust Agreement" means this Agreement.

(n)  "Litigation Sub-Trust Assets" means the Estate Claims and the Litigation Sub-Trust Expense Cash Reserve.

(o)  "Litigation Sub-Trust Beneficiary" means the Claimant Trust.

(p)  "Litigation Sub-Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Litigation Sub-Trust and/or the Litigation Trustee in administering and conducting the affairs of the Litigation Sub-Trust, and otherwise carrying out the terms of the Litigation Sub-Trust and the Plan on behalf of the Litigation Sub-Trust, including without any limitation, any taxes owed by the Litigation Sub-Trust, and the fees and expenses of the Litigation Trustee and professional persons retained by the Litigation Sub-Trust or Litigation Trustee in accordance with Article 3.12(b) of this Agreement.

(q)  "Litigation Sub-Trust Expense Cash Reserve" means $[•] million in Cash to be funded by the Debtor or Reorganized Debtor, as applicable, pursuant to the Plan into a bank account of the Litigation Sub-Trust (or of the Claimant Trust for the benefit of the

3

Litigation Sub-Trust) on or before the Effective Date for the purpose of paying Litigation Sub-Trust Expenses in accordance herewith.

(r) "Litigation Trustee" means Marc S. Kirschner as the initial "Litigation Trustee" hereunder and under the Plan, and any successor Litigation Trustee who may be appointed pursuant to the terms of this Agreement.

(s) "Oversight Board" has the meaning set forth in the Claimant Trust Agreement.

(t) "Plan" has the meaning set forth in the Recitals hereof.

(u) "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.

(v) "Securities Act" means the Securities Act of 1933, as amended.

(w) "TIA" means the Trust Indenture Act of 1939, as amended.

(x) "Trust Interests" means the trust interest(s) to be distributed to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.

(y) "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

1.2    General Construction.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3    Incorporation of the Plan.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

4

## ARTICLE II.
## ESTABLISHMENT OF THE LITIGATION SUB-TRUST

2.1     Establishment of Sub-Trust.

(a)     The Parties, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a statutory trust under the Delaware Statutory Trust Act on behalf of the Claimant Trust as the sole Litigation Sub-Trust Beneficiary, which shall be known as the "Highland Litigation Sub-Trust," on the terms set forth herein. The Litigation Trustee may use this name in accordance with the terms and conditions set forth herein as the Litigation Trustee sees fit.

(b)     The Litigation Trustee shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in his capacity as Litigation Trustee, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2     Nature and Purposes of the Litigation Sub-Trust.  The Litigation Sub-Trust is organized and established as a trust for the purpose of monetizing the Estate Claims and making distributions to Litigation Sub-Trust Beneficiary in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d).  The Litigation Sub-Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Estate Claims and distributing the proceeds of such Estate Claims to the Claimant Trust in a timely fashion in accordance with the Plan, the Confirmation Order, and this Agreement.  The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Estate Claim as of the Petition Date.  Except as otherwise provided herein, the Litigation Sub-Trust shall have the sole responsibility for the pursuit and settlement of the Estate Claims, and, subject to the terms of the Claimant Trustee Agreement, the sole power and authority to allow or settle and compromise any Claims related to the Estate Claims, including, without limitation, Employee Claims. For the avoidance of doubt, the Litigation Sub-Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement).

2.3     Transfer of Assets and Rights to the Litigation Sub-Trust.

(a)     On or as soon as practicable after the Effective Date, the Claimant Trust shall automatically an irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims, Employee Claims, and Privileges.  For purposes of the transfer of documents, the Litigation Sub-Trust is an assignee and successor to the Debtor in respect of the Estate Claims and Employee Claims and shall be treated as such in any review of confidentiality restrictions in requested documents.  For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

5

002697

(b)     Until the Litigation Sub-Trust terminates pursuant to the terms hereof, legal title to the Estate Claims shall be vested at all times in the Litigation Sub-Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Estate Claims to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee.  For purposes of such jurisdictions, the term Litigation Sub-Trust, as used herein, shall be read to mean the Litigation Trustee.

(c)     In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Estate Claims after the Effective Date.  No Person or entity may rely on the absence of a specific reference in the Plan to any Estate Claim against them as any indication that the Litigation Trustee will not pursue any and all available Estate Claims or objections against them.  Unless any Estate Claim against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Estate Claims for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of the Confirmation Order.

2.4     <u>Principal Office</u>.  The principal office of the Litigation Sub-Trust shall be maintained by the Litigation Trustee at the following address: Goldin Associates, a Teneo Company, 350 Fifth Avenue, New York, New York 10118.

2.5     <u>Acceptance</u>.  The Litigation Trustee accepts the Litigation Sub-Trust imposed by this Agreement and agrees to observe and perform that Litigation Sub-Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.6     <u>Further Assurances</u>.  The Claimant Trustee and any successors thereof will, upon reasonable request of the Litigation Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Litigation Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Litigation Trustee the powers, instruments or funds in trust hereunder.

2.7     <u>Incidents of Ownership</u>.  The Claimant Trust shall be the sole beneficiary of the Litigation Sub-Trust and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

## <u>ARTICLE III.</u>
## <u>THE LITIGATION TRUSTEE</u>

3.1     <u>Role</u>.  In furtherance of and consistent with the purpose of the Litigation Sub-Trust, the Plan, and this Agreement, the Litigation Trustee, subject to the terms and conditions contained herein, in the Plan, and in the Confirmation Order, shall serve as Litigation Trustee with respect to the Litigation Sub-Trust Assets for the benefit of the Litigation Sub-Trust Beneficiary and maintain, manage, and take action on behalf of the Litigation Sub-Trust.

002698

3.2 <u>Authority</u>.

(a) In connection with the administration of the Litigation Sub-Trust, in addition to any and all of the powers enumerated elsewhere herein, the Litigation Trustee shall, in an expeditious but orderly manner, investigate, prosecute, settle, and otherwise resolve the Estate Claims. The Litigation Trustee shall have the power and authority and is authorized to perform any and all acts necessary and desirable to accomplish the purposes of this Agreement and the provisions of the Plan and the Confirmation Order relating to the Litigation Sub-Trust, within the bounds of this Agreement, the Plan, the Confirmation Order, and applicable law.

(b) The Litigation Trustee, subject to the limitations set forth in Section 3.3 of this Agreement shall have the right to prosecute, defend, compromise, adjust, arbitrate, abandon, estimate, or otherwise deal with and settle any and all Estate Claims and Employee Claims (in accordance with the terms of the Claimant Trust Agreement). To the extent that any action has been taken to prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle any such Estate Claims or Employee Claims prior to the Effective Date, on the Effective Date the Litigation Trustee shall be substituted for the Debtor in connection therewith in accordance with Rule 25 of the Federal Rules of Civil Procedure, made applicable by Rule 7025 of the Federal Rules of Bankruptcy Procedure, and the caption with respect to such pending action shall be changed to the following "Marc Kirschner, not individually but solely as Litigation Trustee for the Highland Litigation Sub-Trust, et al. v. [Defendant]".

(c) Subject in all cases to any limitations contained herein, in the Confirmation Order, or in the Plan, the Litigation Trustee shall have the power and authority to:

(i) hold legal title to any and all rights in or arising from the Litigation Sub-Trust Assets, including, but not limited to, the right to collect any and all money and other property belonging to the Litigation Sub-Trust (including any proceeds of the Litigation Sub-Trust Assets);

(ii) perform the duties, exercise the powers, and asserts the rights of a trustee under sections 1123(b)(3)(B) of the Bankruptcy Code with respect to the Litigation Sub-Trust Assets, including the right to assert claims, defenses, offsets, and privileges;

(iii) subject to any approval of the Oversight Board that may be required under Section 3.3(b), protect and enforce the rights of the Litigation Sub-Trust with respect to any Litigation Sub-Trust Assets by any method deemed appropriate, including, without limitation, by judicial proceeds, or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(iv) determine and satisfy any and all liabilities created, incurred, or assumed by the Litigation Sub-Trust;

(v) subject to any approval of the Oversight Board that may be required under Section 3.3(b), investigate, analyze, compromise, adjust, arbitrate, mediate, sue on or defend, prosecute, abandon, dismiss, exercise rights, powers and privileges with respect to or otherwise deal with and settle, in accordance with the terms set forth in this Agreement, all

7

002699

Estate Claims, Employee Claims, or any other Causes of Action in favor of or against the Litigation Sub-Trust;

(vi)     with respect to any Estate Claim, avoid and recover transfers of the Debtor's property as may be permitted by the Bankruptcy Code or applicable state law;

(vii)     subject to applicable law, seek the examination of any Entity or Person with respect to the Estate Claims;

(viii)     make all payments relating to the Litigation Sub-Trust Assets;

(ix)     assess, enforce, release, or waive any privilege or defense on behalf of the Litigation Sub-Trust, the Litigation Sub-Trust Assets, or the Litigation Sub-Trust Beneficiary, if applicable;

(x)     prepare, or have prepared, and file, if necessary, with the appropriate taxing authority any and all tax returns, information returns, and other required documents with respect to the Litigation Sub-Trust, and pay taxes properly payable by the Litigation Sub-Trust;

(xi)     if not otherwise covered by insurance coverage obtained by the Claimant Trust, obtain reasonable insurance coverage with respect to any liabilities and obligations of the Litigation Trustee, solely in his capacity as such, in the form of fiduciary liability insurance, a directors and officers policy, an errors and omissions policy, or otherwise. The cost of any such insurance shall be a Litigation Sub-Trust Expense and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Reserve;

(xii)     without further order of the Bankruptcy Court, but subject to the terms of this Agreement, employ various consultants, third-party service providers, and other professionals, including counsel, tax advisors, consultants, brokers, investment bankers, valuation counselors, and financial advisors, as the Litigation Trustee deems necessary to aid him in fulfilling his obligations under this Agreement; such consultants, third-party service providers, and other professionals shall be retained pursuant to whatever fee arrangement the Litigation Trustee deems appropriate, including contingency fee arrangements and any fees and expenses incurred by such professionals engaged by the Litigation Trustee shall be Litigation Sub-Trust Expenses and paid by the Litigation Trustee from the Litigation Sub-Trust Expense Cash Reserve;

(xiii)     to the extent applicable, assert, enforce, release, or waive any Privilege or defense on behalf of the Litigation Sub-Trust (including as to any Privilege that the Debtor held prior to the Effective Date), including to provide any information to insurance carriers that the Litigation Trustee deems necessary to utilize applicable insurance coverage for any Claim or Claims;

(xiv)     take all steps and execute all instruments and documents necessary to effectuate the purpose of the Litigation Sub-Trust and the activities contemplated herein and in the Confirmation Order and the Plan, and take all actions necessary to comply with the

8

002700

Confirmation Order, the Plan, and this Agreement and the obligations thereunder and hereunder; and

(xv)    exercise such other powers and authority as may be vested in or assumed by the Litigation Trustee by any Final Order (the foregoing subparagraphs (i)-(xv) being collectively, the "Authorized Acts").

(d)    The Litigation Trustee has the power and authority to act as trustee of the Litigation Sub-Trust and perform the Authorized Acts through the date such Litigation Trustee resigns, is removed, or is otherwise unable to serve for any reason.

(e)    Any determinations by the Liquidation Trustee, under the direction of the Oversight Board, with respect to the amount or timing of settlement or other disposition of any Estate Claims settled in accordance with the terms of this Agreement shall be conclusive and binding on the Litigation Sub-Trust Beneficiary and all other parties of interest following the entry of an order of a court of competent jurisdiction approving such settlement or other disposition to the extent required or obtained.

3.3    Limitation of Authority.

(a)    Notwithstanding anything herein to the contrary, the Litigation Sub-Trust and the Litigation Trustee shall not (i) be authorized to engage in any trade or business, (ii) take any actions inconsistent with the management of the Estate Claims as required or contemplated by applicable law, the Confirmation Order, the Plan, and this Agreement, or (iii) take any action in contravention of the Confirmation Order, the Plan, or this Agreement.

(b)    Notwithstanding anything herein to the contrary, and in no way limiting the terms of the Plan, the Litigation Trustee must receive the consent by vote of a simple majority of the Oversight Board pursuant to the notice and quorum requirements set forth in Section 4.5 of the Claimant Trust Agreement, in order to:

(i)    terminate or extend the term of the Litigation Sub-Trust;

(ii)    commence litigation with respect to any Estate Claims and, if applicable under the terms of the Claimant Trust Agreement, the Employee Claims, including, without limitation, to (x) litigate, resolve, or settle coverage and/or the liability of any insurer under any insurance policy or legal action related thereto, or (y) pursue avoidance, recovery, or similar remedies that may be brought under chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes or common law, including fraudulent transfer law;

(iii)    settle, dispose of, or abandon any Estate Claims (including any counterclaims to the extent such counterclaims are set off against the proceeds of any such Estate Claim);

(iv)    borrow funds as may be necessary to fund litigation or other costs of the Litigation Sub-Trust;

9

002701

(v)       reserve or retain any cash or cash equivalents in the Litigation Sub-Trust Cash Reserve in an amount reasonably necessary to meet claims and contingent liabilities;

(vi)       change the compensation of the Litigation Trustee; and

(vii)       retain counsel, experts, advisors, or any other professionals.

(c)       [Reserved]

3.4       <u>Binding Nature of Actions</u>.  All actions taken and determinations made by the Litigation Trustee in accordance with the provisions of this Agreement shall be final and binding upon the Litigation Sub-Trust Beneficiary.

3.5       <u>Term of Service</u>.  The Litigation Trustee shall serve as the Litigation Trustee for the duration of the Litigation Sub-Trust, subject to death, resignation or removal.

3.6       <u>Resignation</u>.  The Litigation Trustee may resign as trustee of the Litigation Sub-Trust by an instrument in writing delivered to the Bankruptcy Court and Oversight Board at least thirty (30) days before the proposed effective date of resignation.  The Litigation Trustee shall continue to serve as Litigation Trustee after delivery of the Litigation Trustee's resignation until the proposed effective date of such resignation, unless the Litigation Trustee and a [simple majority] of the Oversight Board consent to an earlier effective date, which earlier effective date shall be no earlier than the date of appointment of a successor Litigation Trustee in accordance with Section 3.8 hereof becomes effective.

3.7       <u>Removal</u>.

(a)       The Litigation Trustee may be removed by a [simple majority] vote of the Oversight Board for Cause, immediately upon notice thereof, or without Cause, upon [60 days'] prior written notice.

(b)       To the extent there is any dispute regarding the removal of a Litigation Trustee (including any dispute relating to any compensation or expense reimbursement due under this Agreement) the Bankruptcy Court shall retain jurisdiction to consider and adjudicate such dispute.  Notwithstanding the foregoing, the Litigation Trustee will continue to serve as the Litigation Trustee after his removal until the earlier of (i) the time when a successor Litigation Trustee will become effective in accordance with Section 3.8 of this Agreement or (ii) such date as the Bankruptcy Court otherwise orders.

3.8       <u>Appointment of Successor</u>.

(a)       <u>Appointment of Successor</u>.  In the event of a vacancy by reason of the death, Disability, or removal of the Litigation Trustee, or prospective vacancy by reason of resignation, a successor Litigation Trustee shall be selected by a [simple majority] vote of the Oversight Board.  If Members of the Oversight Board are unable to secure a majority vote, the Bankruptcy Court will determine the successor Litigation Trustee on motion of the Members.  If a final decree has been entered closing the Chapter 11 Case, the Litigation Trustee may seek to reopen the Chapter 11 Case for the limited purpose of determining the successor Litigation

10

002702

Trustee, and the costs for such motion and costs related to re-opening the Chapter 11 Case shall be paid by the Litigation Sub-Trust, or the Claimant Trust on behalf of the Litigation Sub-Trust. The successor Litigation Trustee shall be appointed as soon as practicable, but in any event no later than sixty (60) days after the occurrence of the vacancy or, in the case of resignation, on the effective date of the resignation of the then acting Litigation Trustee.

(b)     Vesting or Rights in Successor Litigation Trustee.  Every successor Litigation Trustee appointed hereunder shall execute, acknowledge, and deliver to the Litigation Sub-Trust, the Claimant Trustee, the exiting Litigation Trustee, the Oversight Board, and file with the Bankruptcy Court, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Litigation Trustee, without any further act, deed, or conveyance shall become vested with all the rights, powers, trusts and duties of the exiting Litigation Trustee except that the successor Litigation Trustee shall not be liable for the acts or omissions of the retiring Litigation Trustee.  In no event shall the retiring Litigation Trustee be liable for the acts or omissions of the successor Litigation Trustee.

(c)     Interim Litigation Trustee.  During any period in which there is a vacancy in the position of Litigation Trustee, the Oversight Board shall appoint one of its Members or the Claimant Trustee to serve as the interim Litigation Trustee (the "Interim Trustee") until a successor Litigation Trustee is appointed pursuant to Section 3.8(a).  The Interim Trustee shall be subject to all the terms and conditions applicable to a Litigation Trustee hereunder.  Such Interim Trustee shall not be limited in any manner from exercising any rights or powers as a Member of the Oversight Board or Claimant Trustee, as applicable, merely by such Person's appointment as Interim Trustee.

3.9     Continuance of Litigation Sub-Trust.  The death, resignation, or removal of the Litigation Trustee shall not operate to terminate the Litigation Sub-Trust created by this Agreement or to revoke any existing agency (other than any agency of the Litigation Trustee as the Litigation Trustee) created pursuant to the terms of this Agreement or invalidate any action taken by the Litigation Trustee.  In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly (i) execute and deliver, by the effective date of resignation or removal, such documents, instruments, records, and other writings as may be reasonably requested by his successor to effect termination of the exiting Litigation Trustee's capacity under this Agreement and the conveyance of the Estate Claims then held by the exiting Litigation Trustee to the successor Litigation Trustee; (ii) deliver to the successor Litigation Trustee all non-privileged documents, instruments, records, and other writings relating to the Litigation Sub-Trust as may be in the possession or under the control of the exiting Litigation Trustee, provided, the exiting Litigation Trustee shall have the right to make and retain copies of such documents, instruments, records and other writings delivered to the successor Litigation Trustee and the cost of making such copies shall be a Litigation Sub-Trust Expense to be paid by the Litigation Sub-Trust; and (iii) otherwise assist and cooperate in effecting the assumption of the exiting Litigation Trustee's obligations and functions by his successor, provided the fees and expenses of such assistance and cooperation shall be paid to the exiting Litigation Trustee by the Litigation Sub-Trust.  The exiting Litigation Trustee shall irrevocably appoint the successor Litigation Trustee as his attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such exiting Litigation Trustee is obligated to perform under this Section 3.9.

002703

3.10   Litigation Trustee as "Estate Representative".  The Litigation Trustee will be the exclusive trustee of the Litigation Sub-Trust Assets, for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code (the "Estate Representative") with respect to the Estate Claims, with all rights and powers attendant thereto, in addition to all rights and powers granted in the Plan and in this Agreement.  The Litigation Trustee will be the successor-in-interest to the Debtor with respect to any action pertaining to the Estate Claims, which was or could have been commenced by the Debtor prior to the Effective Date, except as otherwise provided in the Plan or Confirmation Order.  All actions, claims, rights or interests constituting or relating to Estate Claims are preserved and retained and may be enforced by the Litigation Trustee as an Estate Representative.

3.11   Books and Records.

(a)   The Litigation Trustee shall maintain, in respect of the Litigation Sub-Trust and the Claimant Trust, books and records pertinent to Estate Claims in its possession and the income of the Litigation Sub-Trust and payment of expenses, liabilities, and claims against or assumed by the Litigation Sub-Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained as reasonably necessary to facilitate compliance with the tax reporting requirements of the Litigation Sub-Trust and the requirements of Article VII herein. Except as otherwise provided herein, nothing in this Agreement requires the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Sub-Trust, or as a condition for managing any payment or distribution out of the Litigation Sub-Trust.  Notwithstanding the foregoing, the Litigation Trustee shall to retain such books and records, and for such periods, with respect to any Reorganized Debtor Assets as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

(b)   The Litigation Trustee may dispose some or all of the books and records maintained by the Litigation Trustee at the later of (i) such time as the Litigation Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Litigation Sub-Trust, including with respect to the Estate Claims, or (ii) upon the termination and winding up of the Litigation Sub-Trust under Article IX of this Agreement.

3.12   Reports.

(a)   Financial and Status Reports.  The fiscal year of the Litigation Sub-Trust shall be the calendar year.  Within 90 days after the end of each calendar year during the term of the Litigation Sub-Trust, and within 45 days after the end of each calendar quarter during (other than the fourth quarter) the term of the Litigation Sub-Trust and as soon as practicable upon termination of the Litigation Sub-Trust, the Litigation Trustee shall make available upon request to the Oversight Board or Litigation Sub-Trust Beneficiary appearing on its records as of the end of such period or such date of termination, a written report including: (i) unaudited financial statements of the Litigation Sub-Trust for such period, and, if the end of a calendar year, an unaudited report (which may be prepared by an independent certified public accountant

002704

employed by the Litigation Trustee) reflecting the result of such agreed-upon procedures relating to the financial accounting administration of the Litigation Sub-Trust as proposed by the Litigation Trustee; (ii) a summary description of any action taken by the Litigation Sub-Trust that, in the judgment of the Litigation Trustee, materially affects the Litigation Sub-Trust and of which notice has not previously been given to the Oversight Board or Litigation Sub-Trust Beneficiary, provided, that any such description shall not include any privileged or confidential information of the Litigation Trustee; and (iii) a description of the progress of liquidating the Litigation Sub-Trust Assets and making distributions to the Litigation Sub-Trust Beneficiary and any other material information relating to the Litigation Sub-Trust Assets and the administration of the Litigation Sub-Trust deemed appropriate to be disclosed by the Litigation Trustee, which description shall include a written report detailing, among other things, the litigation status of the Estate Claims transferred to the Litigation Sub-Trust, any settlements entered into by the Litigation Sub-Trust with respect to the Estate Claims, the proceeds recovered to date from Estate Claims, and the distributions made by the Litigation Sub-Trust.

(b) Annual Plan and Budget. If instructed by the Oversight Board, the Litigation Trustee shall prepare and submit to the Oversight Board for approval an annual plan and budget in such detail as reasonably requested.

3.13 Compensation and Reimbursement; Engagement of Professionals.

(a) Compensation and Expenses.

(i) Compensation. As compensation for any services rendered by the Litigation Trustee in connection with this Agreement, the Litigation Trustee shall receive initial compensation in a manner and amount as agreed upon by the Committee. Any additional compensation or compensation of a Successor Litigation Trustee shall be determined by the Oversight Board.

(ii) Expense Reimbursements. All reasonable out-of-pocket expenses of the Litigation Trustee in the performance of his or her duties hereunder, shall be reimbursed as Litigation Sub-Trust Expenses paid by the Litigation Sub-Trust.

(b) Professionals.

(i) Engagement of Professionals. The Litigation Trustee shall engage professionals from time to time in conjunction with the services provided hereunder. The Litigation Trustee's engagement of such professionals shall be approved by a majority of the Oversight Board as set forth in Section 3.3(b) hereof.

(ii) Fees and Expenses of Professionals. The Litigation Trustee shall pay the reasonable fees and expenses of any retained professionals as Litigation Sub-Trust Expenses.

3.14 Reliance by Litigation Trustee. Except as otherwise provided herein, the Litigation Trustee may rely, and shall be fully protected in acting or refraining from acting, on any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that the Litigation Trustee has no reason to believe to be other

13

than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles, to have been sent by the proper party or parties, and the Litigation Trustee may conclusively rely as to the truth of the statements and correctness of the opinions or direction expressed therein. The Litigation Trustee may consult with counsel and other professionals, and any advice of such counsel or other professionals shall constitute full and complete authorization and protection in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court, or any other court of competent jurisdiction concerning Estate Claims, this Agreement, the Plan, or any other document executed in connection therewith, and any such instructions given shall be full and complete authorization in respect of any action taken or not taken by the Litigation Trustee in accordance therewith. The Litigation Sub-Trust shall have the right to seek Orders from the Bankruptcy Court as set forth in Article IX of the Plan.

3.15    Commingling of Litigation Sub-Trust Assets. The Litigation Trustee shall not commingle any of the Litigation Sub-Trust Assets with his or her own property or the property of any other Person.

3.16    [Delaware Trustee. The Delaware Trustee shall have the power and authority, and is hereby authorized and empowered, to (i) accept legal process served on the Litigation Sub-Trust in the State of Delaware; and (ii) execute any certificates that are required to be executed under the Statutory Trust Act and file such certificates in the office of the Secretary of State of the State of Delaware, and take such action or refrain from taking such action under this Agreement as may be directed in a writing delivered to the Delaware Trustee by the Litigation Trustee; provided, however, that the Delaware Trustee shall not be required to take or to refrain from taking any such action if the Delaware Trustee shall believe, or shall have been advised by counsel, that such performance is likely to involve the Delaware Trustee in personal liability or to result in personal liability to the Delaware Trustee, or is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes a party or is otherwise contrary to law. The Parties agree not to instruct the Delaware Trustee to take any action or to refrain from taking any action that is contrary to the terms of this Agreement or of any document contemplated hereby to which the Litigation Sub-Trust or the Delaware Trustee is or becomes party or that is otherwise contrary to law. Other than as expressly provided for in this Agreement, the Delaware Trustee shall have no duty or power to take any action for or on behalf of the Litigation Sub-Trust.]

## ARTICLE IV.
## THE OVERSIGHT BOARD

The Oversight Board shall be governed by Article IV of the Claimant Trust Agreement.

## ARTICLE V.
## TRUST INTERESTS

5.1    Litigation Sub-Trust Interests. On the date hereof, the Litigation Sub-Trust shall issue Trust Interests to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary. The Litigation Sub-Trust Beneficiary shall be entitled to distributions from the Litigation Sub-Trust Assets in accordance with the terms of the Plan and this Agreement.

002706

5.2     Transferability of Trust Interests.  No transfer, assignment, pledge, hypothecation, or other disposition of a Trust Interest may be effected.

5.3     Exemption from Registration.  The Parties hereto intend that the rights of the Litigation Sub-Trust Beneficiary arising under this Litigation Sub-Trust shall not be "securities" under applicable laws, but none of the Parties represent or warrant that such rights shall not be securities or shall not be entitled to exemption from registration under the applicable securities laws.  The Oversight Board, acting unanimously, and Litigation Trustee may amend this Agreement in accordance with Article IX hereof to make such changes as are deemed necessary or appropriate with the advice of counsel, to ensure that the Litigation Sub-Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the TIA, or the Investment Company Act.  The Trust Interests shall not have consent or voting rights or otherwise confer on the Litigation Sub-Trust Beneficiary any rights similar to the rights of a shareholder of a corporation in respect of any actions taken or to be taken, or decisions made or to be made, by the Oversight Board and/or the Litigation Trustee under this Agreement.

## ARTICLE VI.
## DISTRIBUTIONS

6.1     Distributions.  The Litigation Trustee shall distribute Cash proceeds of the Estate Claims to the Claimant Trust within 30 days of receipt of such Cash proceeds, net of any amounts that (a) are reasonably necessary to maintain the value of the Litigation Sub-Trust Assets pending their monetization or other disposition during the term of the Litigation Sub-Trust, (b) are necessary to pay or reserve for reasonably incurred or anticipated Litigation Sub-Trust Expenses and any other expenses incurred by the Litigation Sub-Trust (including, but not limited to, any taxes imposed on or payable by the Litigation Trustee with respect to the Litigation Sub-Trust Assets), and (c) are necessary to satisfy or reserve for other liabilities incurred or anticipated by the Litigation Trustee in accordance with the Plan and this Agreement (including, but not limited to, indemnification obligations and similar expenses).

6.2     Manner of Payment or Distribution.  All distributions made by the Litigation Trustee on behalf of the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary shall be payable by the Litigation Trustee directly to the Claimant Trust, as sole Litigation Sub-Trust Beneficiary, on the date scheduled for the distribution, unless such day is not a Business Day, then such date or the distribution shall be the following Business Day, but such distribution shall be deemed to have been completed as of the required date.

6.3     Delivery of Distributions.  All distributions under this Agreement to the Claimant Trust shall be made pursuant to wire instructions provided by the Claimant Trustee to the Litigation Trustee.

## ARTICLE VII.
## TAX MATTERS

7.1     Tax Treatment and Tax Returns.  It is intended that the Litigation Sub-Trust will be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable) the sole beneficiary of which is the Claimant Trust.  Consistent

15

002707

with such treatment, it is intended that the transfer of the Litigation Sub Trust Assets from the Claimant Trust to the Litigation Sub Trust will be treated as a non-event for federal income tax purposes (and foreign, state, and local income tax purposes where applicable). Further, because the Claimant Trust is itself intended to be treated as a grantor trust for federal income tax purposes (and foreign, state, and local income tax purposes where applicable),it is intended that the beneficiaries of the Claimant Trust will be treated as the grantor of the Litigation Sub-Trust and owner of the Litigation Sub-Trust Assets for federal income tax purposes (and foreign, state, and local income tax purposes where applicable). The Litigation Trustee shall cooperate with the Claimant Trustee in connection with the preparation and filing of any federal income tax returns (and foreign, state, and local income tax returns where applicable) or information statements relating to the Litigation Sub Trust Assets.

7.2 <u>Withholding</u>. The Litigation Trustee may withhold from any amount distributed from the Litigation Sub-Trust to the Litigation Sub-Trust Beneficiary such sum or sums as are required to be withheld under the income tax laws of the United States or of any state or political subdivision thereof. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the Litigation Sub-Trust Beneficiary. As a condition to receiving any distribution from the Litigation Sub-Trust, the Litigation Trustee may require that the Litigation Sub-Trust Beneficiary provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Litigation Trustee to comply with applicable tax reporting and withholding laws.

**ARTICLE VIII.**
**STANDARD OF CARE AND INDEMNIFICATION**

8.1 <u>Standard of Care</u>. None of the Litigation Trustee, acting in his capacity as the Litigation Trustee or in any other capacity contemplated by this Agreement or the Plan, the Oversight Board, or any individual Member, solely in their capacity as Members of the Oversight Board, shall be personally liable to the Litigation Sub-Trust or to any Person (including the Litigation Sub-Trust Beneficiary and Claimant Trust Beneficiaries) in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the acts or omissions of any such Litigation Trustee, Oversight Board, or Member constituted fraud, willful misconduct, or gross negligence. The employees, agents and professionals retained by the Litigation Sub-Trust, the Litigation Trustee, or Oversight Board shall not be personally liable to the Litigation Sub-Trust or any other Person in connection with the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that such acts or omissions by such employee, agent, or professional constituted willful fraud, willful misconduct or gross negligence. None of the Litigation Trustee, Oversight Board, or any Member shall be personally liable to the Litigation Sub-Trust or to any Person for the acts or omissions of any employee, agent or professional of the Litigation Sub-Trust or Litigation Trustee, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Litigation Trustee, Oversight Board, or Member acted with gross negligence or willful misconduct in the selection, retention, or supervision of such employee, agent or professional of the Litigation Sub-Trust.

16

8.2      Indemnification.    The Litigation Trustee (including each former Litigation Trustee), Oversight Board, and all past and present Members (collectively, the "Indemnified Parties") shall be indemnified by the Litigation Sub-Trust against and held harmless by the Litigation Sub-Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Litigation Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Litigation Sub-Trust, unless it is ultimately determined by order of the Bankruptcy Court or other court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence.  If the Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement or the affairs of the Litigation Sub-Trust for which an indemnification obligation could arise, the Indemnified Party shall promptly notify the Litigation Trustee and/or Oversight Board, as applicable; provided, however, that the failure of an Indemnified Party to promptly notify the Litigation Trustee and/or Oversight Board of an indemnification obligation will not excuse the Litigation Sub-Trust from indemnifying the Indemnified Party unless such delay has caused the Litigation Sub-Trust material harm.  The Litigation Sub-Trust shall periodically advance or otherwise reimburse on demand the Indemnified Party's reasonable legal and other expenses (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and related expenses) incurred in connection therewith as a Litigation Sub-Trust Expense, but the Indemnified Party shall be required to repay promptly to the Litigation Sub-Trust the amount of any such advanced or reimbursed expenses paid to the Indemnified Party to the extent that it shall be ultimately determined by Final Order that the Indemnified Party engaged in willful fraud, misconduct, or negligence in connection with the affairs of the Litigation Sub-Trust with respect to which such expenses were paid.  The Litigation Sub-Trust shall indemnify and hold harmless the employees, agents and professionals of the Litigation Sub-Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.  For the avoidance of doubt, the provisions of this Section 8.2 shall remain available to any former Litigation Trustee or Member or the estate of any decedent Litigation Trustee or Member.  The indemnification provided hereby shall be a Litigation Sub-Trust Expense.

8.3      To the extent applicable, the provisions and protections set forth in Article IX of the Plan will apply to the Litigation Sub-Trust, the Litigation Trustee, Oversight Board, and the Members.

## ARTICLE IX.
## TERMINATION

9.1      Duration.  The Litigation Trustee, the Litigation Sub-Trust, and the Oversight Board shall be discharged or dissolved, as the case may be, at such time as the Litigation Trustee determines that the Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate, and all Distributions required to be made by the Litigation Trustee to the Litigation Sub-Trust Beneficiary under the Plan and this Agreement have been made, but in no event shall the Litigation Sub-Trust be dissolved later than [three years] from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such

002709

third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Sub-Trust Assets.

9.2    Continuance of the Litigation Trustee for Winding Up.  After dissolution of the Litigation Sub-Trust and for purpose of liquidating and winding up the affairs of the Litigation Sub-Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed.  Prior to the final distribution of all remaining Litigation Sub-Trust Assets, the Litigation Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Litigation Trustee's own costs and expenses, including a reserve to fund any potential indemnification or similar obligations of the Litigation Sub-Trust, until such time as the winding up of the Litigation Sub-Trust is completed.  Upon the dissolution of the Litigation Sub-Trust and completion of the winding up of the assets, liabilities and affairs of the Litigation Sub-Trust pursuant to the Delaware Statutory Trust Act, the Litigation Trustee shall file a certificate of cancellation with the State of Delaware to terminate the Litigation Sub-Trust pursuant to Section 3810 of the Delaware Statutory Trust Act (such date upon which the certificate of cancellation is filed shall be referred to as the "Termination Date").  Subject in all respects to 3.11, upon the Termination date, the Litigation Trustee shall retain for a period of two (2) years, as a Litigation Sub-Trust Expense, the books, records, and certificated and other documents and files that have been delivered to or created by the Litigation Trustee.  Subject in all respects to Section 3.11, at the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after two (2) years from the Termination Date.

9.3    Termination of Duties.  Except as otherwise specifically provided herein, upon the Termination Date of the Litigation Sub-Trust, the Litigation Trustee, the Oversight Board, and its Members shall have no further duties or obligations hereunder.

## ARTICLE X.
## AMENDMENTS AND WAIVER

The Litigation Trustee, with the consent of a simple majority of the Oversight Board, may amend this Agreement to correct or clarify any non-material provisions.  This Agreement may not otherwise be amended, supplemented, otherwise modified, or waived in any respect except by an instrument in writing signed by the Litigation Trustee and with the unanimous approval of the Oversight Board, and the approval of the Bankruptcy Court, after notice and a hearing; provided that the Litigation Trustee must provide the Oversight Board with prior written notice of any non-material amendments, supplements, modifications, or waivers of this Agreement.

## ARTICLE XI.
## MISCELLANEOUS

11.1    Trust Irrevocable.  Except as set forth in this Agreement, establishment of the Litigation Sub-Trust by this Agreement shall be irrevocable and shall not be subject to revocation, cancellation or rescission by the Litigation Sub-Trust Beneficiary.

002710

11.2   _Litigation Sub-Trust Beneficiary has No Legal Title to Litigation Sub-Trust Assets_.   The Litigation Sub-Trust Beneficiary shall have no legal title to any part of the Litigation Sub-Trust Assets.

11.3   _Agreement for Benefit of Parties Only_.   Nothing herein, whether expressed or implied, shall be construed to give any Person other than the Litigation Trustee, Oversight Board, and the Litigation Sub-Trust Beneficiary any legal or equitable right, remedy or claim under or in respect of this Agreement.   The Litigation Sub-Trust Assets shall be held for the sole and exclusive benefit of the Litigation Sub-Trust Beneficiary.

11.4   _Notices_.   All notices, directions, instructions, confirmations, consents and requests required or permitted by the terms hereof shall, unless otherwise specifically provided herein, be in writing and shall be sent by first class mail, facsimile, overnight mail or in the case of mailing to a non-United States address, air mail, postage prepaid, addressed to:

> (a)   If to the Litigation Trustee:
>
>> Marc S. Kirschner
>> c/o Goldin Associates LLC, a Teneo Company
>> 350 Fifth Avenue
>> New York, New York 10118
>
> With a copy to:
>
>> **[insert contact for counsel to the Litigation Trustee].**
>
> (b)   If to the Claimant Trustee:
>
>> Claimant Trustee
>> c/o **[insert contact info for Claimant Trustee]**
>
> With a copy to:
>
>> Pachulski Stang Ziehl & Jones LLP
>> 10100 Santa Monica Blvd, 13th Floor
>> Los Angeles, CA 90067
>> Attn:   Jeffrey Pomerantz (jpomerantz@pszjlaw.com)
>>           Ira Kharasch (ikharasch@pszjlaw.com)
>>           Gregory Demo (gdemo@pszjlaw.com)

Notice mailed shall be effective on the date mailed or sent.   Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 11.4 to the entity to be charged with knowledge of such change.

11.5   _Severability_.   Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition

002711

or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provisions in another jurisdiction.

11.6    Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

11.7    Binding Effect, etc.  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Litigation Sub-Trust, the Litigation Trustee, and the Litigation Sub-Trust Beneficiary, and their respective successors and assigns.  Any notice, direction, consent, waiver or other instrument or action by any Litigation Sub-Trust Beneficiary shall bind its successors and assigns.

11.8    Headings; References.  The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

11.9    Governing Law.  This Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Delaware, including all matters of constructions, validity and performance.

11.10   Consent to Jurisdiction.  Each of the parties hereto consents and submits to the exclusive jurisdiction of the Bankruptcy Court for any action or proceeding instituted for the enforcement and construction of any right, remedy, obligation, or liability arising under or by reason of this Agreement or the Plan.

11.11   Transferee Liabilities.  The Litigation Sub-Trust shall have no liability for, and the Litigation Sub-Trust Assets shall not be subject to, any claim arising by, through or under the Debtor except as expressly set forth in the Plan or in this Agreement.  In no event shall the Litigation Trustee or the Litigation Sub-Trust Beneficiary have any personal liability for such claims.  If any liability shall be asserted against the Litigation Sub-Trust or the Litigation Trustee as the transferee of the Litigation Sub-Trust Assets on account of any claimed liability of, through or under the Debtor or Reorganized Debtor, the Litigation Trustee may use such part of the Litigation Sub-Trust Assets as may be necessary to contest any such claimed liability and to pay, compromise, settle or discharge same on terms reasonably satisfactory to the Litigation Trustee as a Litigation Sub-Trust Expense.


[Remainder of Page Intentionally Blank]

002712

IN WITNESS HEREOF, the parties hereto have caused this Litigation Trust Agreement to be duly executed by their respective officers thereunto duly authorized on the day and year first written above.

Claimant Trustee

By: _____

James P. Seery, Jr., not individually but solely in his capacity as the Claimant Trustee

Litigation Trustee

By: _____

Marc S. Kirschner, not individually but solely in his capacity as the Litigation Trustee

002713

# EXHIBIT P

002714

# LITIGATION SUB-TRUST AGREEMENT

This Litigation Sub-Trust Agreement, effective as of _____ , ~~2020~~2021 (as may be amended, supplemented, or otherwise modified in accordance with the terms hereof, this "Agreement"), by and among James P. Seery, Jr., as trustee of the Highland Claimant Trust (the "Claimant Trustee"), [____] as Delaware Trustee, and Marc S. Kirschner as trustee (the "Litigation Trustee," and together with the Claimant Trustee [and Delaware Trustee], the "Parties") of the Litigation Sub-Trust for the benefit of the Claimant Trust as sole Litigation Sub-Trust Beneficiary.

## RECITALS

WHEREAS, on October 16, 2019, Highland Capital Management, L.P. (the "Debtor") filed with the United States Bankruptcy Court for the District of Delaware, a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which case was subsequently transferred to the Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") and captioned *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (the "Chapter 11 Case");

WHEREAS, on November ~~13,~~24, 2020, the Debtor filed the *~~Third~~Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. •1472] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"),[1] [which was confirmed by the Bankruptcy Court on _____ , ~~2020,~~2021, pursuant to the Findings of Fact and Order Confirming Plan of Reorganization for the Debtor [Docket No. •] (the "Confirmation Order")];

WHEREAS, this Agreement, including all exhibits hereto, is the "Litigation Sub-Trust Agreement" described in the Plan and shall be executed on or before the Effective Date in order to facilitate implementation of the Plan; and

WHEREAS, pursuant to the Plan and Confirmation Order, the Litigation Sub-Trust Assets are hereby to be transferred by the Claimant Trust to the Litigation Sub-Trust (each as defined herein) created and evidenced by this Agreement so that (i) Estate Claims can be investigated, prosecuted, settled, abandoned, resolved, and otherwise monetized as may be determined by the Litigation Trustee in accordance with the terms of the Litigation Sub-Trust Agreement; (ii) proceeds of Estate Claims can be remitted to the Claimant Trust as Claimant Trust Assets for distribution to the Claimant Trust Beneficiaries (as defined in the Claimant Trust Agreement) in accordance with the Plan and Claimant Trust Agreement[; (iii) the Litigation Trustee can investigate, litigate, settle, or otherwise resolve any Filed Claims relating to the Estate Claims, including the ~~Debtor~~ Employee Claims;] and (iv) administrative services relating to the activities of the Litigation Sub-Trust can be performed by the Litigation Trustee.

## DECLARATION OF TRUST

NOW, THEREFORE, in order to declare the terms and conditions hereof, and in consideration of the premises and mutual agreements herein contained, the confirmation of the

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Plan and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Litigation Trustee and the Claimant Trustee have executed this Agreement for the benefit of the Claimant Trust as provided for in the Plan.

TO HAVE AND TO HOLD unto the Litigation Trustee and his successors or assigns in trust, under and subject to the terms and conditions set forth herein and for the benefit of the Claimant Trust, and for the performance of and compliance with the terms hereof and of the Plan; provided, however, that upon termination of the Litigation Sub-Trust in accordance with Article IX hereof, this Litigation Trust Agreement shall cease, terminate, and be of no further force and effect, unless otherwise specifically provided for herein.

IT IS FURTHER COVENANTED AND DECLARED that the Litigation Sub-Trust Assets are to be strictly held and applied by the Litigation Trustee subject to the specific terms set forth below.

## ARTICLE I.
## DEFINITION AND TERMS

1.1     Certain Definitions.  Unless the context shall otherwise require and except as contained in this Section 1.1 or as otherwise defined herein, the capitalized terms used herein shall have the respective meanings assigned thereto in the "Definitions," Section 1.1 of the Plan or if not defined therein, shall have the meanings assigned thereto in the applicable Section of the Plan.  For all purposes of this Agreement, the following terms shall have the following meanings:

(a)     "Bankruptcy Court" has the meaning set forth in the Recitals hereof.

(b)     "Cause" means (i) a Person's willful failure to perform his material duties hereunder (which material duties shall include, without limitation, regular attendance at regularly scheduled meetings of the Oversight Board), which is not remedied within 30 days of notice; (ii) a Person's commission of an act of fraud, theft, or embezzlement during the performance of his or her duties hereunder; (iii) a Person's conviction of a felony with all appeals having been exhausted or appeal periods lapsed; or (iv) a Person's gross negligence, bad faith, willful misconduct, or knowing violation of law in the performance of his or her duties hereunder.

(c)     "Claimant Trust Agreement" means the Claimant Trust Agreement dated [___], 2020,2021, by and between the Debtor, Claimant Trustee, and Delaware Trustee.

(d)     "Claimant Trustee" means James P. Seery, Jr., as the initial "Claimant Trustee" under the Claimant Trust Agreement and as defined in the Plan, and any successor Claimant Trustee who may be appointed pursuant to the terms of the Claimant Trust Agreement.

(e)     "Claimant Trust" means the "Highland Claimant Trust" established in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d) pursuant to the Claimant Trust Agreement.

(f)     ["Debtor Employee Claims" means any General Unsecured Claims filed by any Employee or former director, officer, or employee of the Debtor, other than the Claims of

2

the Senior Employees subject to stipulations executed by employees of the Debtor prior to the Effective Date.]

(f)     (g)  "Delaware Statutory Trust Act" means the Delaware Statutory Trust Act 12 Del C. §3801, et seq. as amended from time to time.

(g)     (h)  "Delaware Trustee" has the meaning set forth in the Claimant Trust Agreement.

(h)     (i) "Disability" means as a result of the Litigation Trustee's incapacity due to physical or mental illness as determined by an accredited physician or psychologist, as applicable, selected by the Litigation Trustee, the Litigation Trustee has been substantially unable to perform his or her duties hereunder for three (3) consecutive months or for an aggregate of 180 days during any period of twelve (12) consecutive months.

(i)     (j) "Estate Claims" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [Docket No. 354].

(j)     (k) ["Employee" means the employees of the Debtor set forth in the Plan Supplement.]

(k)     "Employee Claims" means any General Unsecured Claim held by an Employee other than the Claims of the Senior Employees subject to stipulations (provided such stipulations are executed by any such Senior Employee of the Debtor prior to the Effective Date).

(l)     "Litigation Sub-Trust" means the sub-trust created pursuant to this Agreement, and in accordance with the Delaware Statutory Trust Act and Treasury Regulation Section 301.7701-4(d).

(m)     "Litigation Sub-Trust Agreement" means this Agreement.

(n)     "Litigation Sub-Trust Assets" means the Estate Claims and the Litigation Sub-Trust Expense Cash Reserve.

(o)     "Litigation Sub-Trust Beneficiary" means the Claimant Trust.

(p)     "Litigation Sub-Trust Expenses" means the costs, expenses, liabilities and obligations incurred by the Litigation Sub-Trust and/or the Litigation Trustee in administering and conducting the affairs of the Litigation Sub-Trust, and otherwise carrying out the terms of the Litigation Sub-Trust and the Plan on behalf of the Litigation Sub-Trust, including without limitation, any taxes owed by the Litigation Sub-Trust, and the fees and expenses of the Litigation Trustee and professional persons retained by the Litigation Sub-Trust or Litigation Trustee in accordance with Article 3.12(b) of this Agreement.

(q)     "Litigation Sub-Trust Expense Cash Reserve" means $[•] million in Cash to be funded by the Debtor or Reorganized Debtor, as applicable, pursuant to the Plan into a bank account of the Litigation Sub-Trust (or of the Claimant Trust for the benefit of the Litigation

3

Sub-Trust) on or before the Effective Date for the purpose of paying Litigation Sub-Trust Expenses in accordance herewith.

(r) "Litigation Trustee" means Marc S. Kirschner as the initial "Litigation Trustee" hereunder and under the Plan, and any successor Litigation Trustee who may be appointed pursuant to the terms of this Agreement.

(s) "Oversight Board" has the meaning set forth in the Claimant Trust Agreement.

(t) "Plan" has the meaning set forth in the Recitals hereof.

(u) "Privileges" means the Debtor's rights, title and interests in and to any privilege or immunity attaching to any documents or communications (whether written or oral) associated with any of the Estate Claims or Debtor Employee Claims, including, without limitation, to, attorney-client privilege and work-product privilege as defined in Rule 502(g) of the Federal Rules of Evidence or any other privilege available under applicable law[; provided, however, that "Privileges" shall not include the work-product privilege of any non-Employee attorney or attorneys that has not been previously shared with the Debtor or any of its employees and the work-product privilege shall remain with the non-Employee attorney or attorneys who created such work product so long as it has not been previously shared with the Debtor or any of its employees, or otherwise waived.]

(v) "Securities Act" means the Securities Act of 1933, as amended.

(w) "TIA" means the Trust Indenture Act of 1939, as amended.

(x) "Trust Interests" means the trust interest(s) to be distributed to the Claimant Trust as the sole Litigation Sub-Trust Beneficiary.

(y) "Trust Register" has the meaning given to it in Section 5.3(b) hereof.

1.2    General Construction.  As used in this Agreement, the masculine, feminine and neuter genders, and the plural and singular numbers shall be deemed to include the others in all cases where they would apply.  "Includes" and "including" are not limiting and "or" is not exclusive.  References to "Articles," "Sections" and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein," "hereafter" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Agreement.  Amounts expressed in dollars or following the symbol "$" shall be deemed to be in United States dollars.  References to agreements or instruments shall be deemed to refer to such agreements or instruments as the same may be amended, supplemented, or otherwise modified in accordance with the terms thereof.

1.3    Incorporation of the Plan.  The Plan is hereby incorporated into this Agreement and made a part hereof by this reference.

4

**ARTICLE II.**
**ESTABLISHMENT OF THE LITIGATION SUB-TRUST**

2.1     Establishment of Sub-Trust.

(a)     The Parties, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, hereby establish a statutory trust under the Delaware Statutory Trust Act on behalf of the Claimant Trust as the sole Litigation Sub-Trust Beneficiary, which shall be known as the "Highland Litigation Sub-Trust," on the terms set forth herein. The Litigation Trustee may use this name in accordance with the terms and conditions set forth herein as the Litigation Trustee sees fit.

(b)     The Litigation Trustee shall cause to be executed and filed in the office of the Secretary of State of the State of Delaware the Certificate of Trust and agree to execute, acting solely in his capacity as Litigation Trustee, such certificates as may from time to time be required under the Delaware Statutory Trust Act or any other Delaware law.

2.2     Nature and Purposes of the Litigation Sub-Trust.  The Litigation Sub-Trust is organized and established as a trust for the purpose of monetizing the Estate Claims and making distributions to Litigation Sub-Trust Beneficiary in a manner consistent with "liquidating trust" status under Treasury Regulation Section 301.7701-4(d). The Litigation Sub-Trust shall serve as a mechanism for investigating, prosecuting, settling, resolving, and otherwise monetizing all Estate Claims and distributing the proceeds of such Estate Claims to the Claimant Trust in a timely fashion in accordance with the Plan, the Confirmation Order, and this Agreement. The Litigation Sub-Trust and Litigation Trustee shall have and retain any and all rights, defenses, cross-claims and counter-claims held by the Debtor with respect to any Estate Claim as of the Petition Date. Except as otherwise provided herein, the Litigation Sub-Trust shall have the sole responsibility for the pursuit and settlement of the Estate Claims[, and, subject to the terms of the Claimant Trustee Agreement, the sole power and authority to allow or settle and compromise any Claims related to the Estate Claims, including, without limitation, Debtor Employee Claims]. For the avoidance of doubt, the Litigation Sub-Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state trust law, is appointed as the successor-in-interest to, and representative of, the Debtor and its Estate for the retention, enforcement, settlement, and adjustment of all Estate Claims and Debtor Employee Claims, other than those Claims constituting Reorganized Debtor Assets; provided, however, that the Litigation Trustee may, as part of his investigation mandate, investigate Estate Claims that would constitute Reorganized Debtor Assets and make a recommendation to the Oversight Board and the Reorganized Debtor on how to proceed with respect to any such Causes of ActionEmployee Claims (in accordance with the terms of the Claimant Trust Agreement).

2.3     Transfer of Assets and Rights to the Litigation Sub-Trust.

(a)     On or as soon as practicable after the Effective Date, the Claimant Trust shall automatically an irrevocably transfer, assign, and deliver, and shall be deemed to have transferred, assigned, and delivered, all Estate Claims, Debtor Employee Claims, and Privileges. For purposes of the transfer of documents, the Litigation Sub-Trust is an assignee and successor to the Debtor in respect of the Estate Claims and Debtor Employee Claims and shall be treated as

5

such in any review of confidentiality restrictions in requested documents. For the avoidance of doubt, following the Effective Date, the Litigation Trustee shall have the power to waive the Privileges being so assigned and transferred.

(b)     Until the Litigation Sub-Trust terminates pursuant to the terms hereof, legal title to the Estate Claims shall be vested at all times in the Litigation Sub-Trust as a separate legal entity, except where applicable law in any jurisdiction requires title to any part of the Estate Claims to be vested in the Litigation Trustee, in which case title shall be deemed to be vested in the Litigation Trustee, solely in his capacity as Litigation Trustee. For purposes of such jurisdictions, the term Litigation Sub-Trust, as used herein, shall be read to mean the Litigation Trustee.

(c)     In accordance with section 1123(d) of the Bankruptcy Code, the Litigation Trustee may enforce all rights to commence and pursue, as appropriate, any and all Estate Claims after the Effective Date. No Person or entity may rely on the absence of a specific reference in the Plan to any Estate Claim against them as any indication that the Litigation Trustee will not pursue any and all available Estate Claims or objections against them. Unless any Estate Claim against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, the Litigation Trustee expressly reserves all Estate Claims for later adjudication, and, therefore, no preclusion doctrine including the doctrine of res judicata, collateral, estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Estate Claims upon, after, or as a consequence of the Confirmation Order.

2.4     <u>Principal Office</u>. The principal office of the Litigation Sub-Trust shall be maintained by the Litigation Trustee at the following address: Goldin Associates, a Teneo Company, 350 Fifth Avenue, New York, New York 10118.

2.5     <u>Acceptance</u>. The Litigation Trustee accepts the Litigation Sub-Trust imposed by this Agreement and agrees to observe and perform that Litigation Sub-Trust, on and subject to the terms and conditions set forth herein and in the Plan.

2.6     <u>Further Assurances</u>. The Claimant Trustee and any successors thereof will, upon reasonable request of the Litigation Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Litigation Trustee any portion of the Claimant Trust Assets intended to be conveyed hereby and in the Plan in the form and manner provided for hereby and in the Plan and to vest in the Litigation Trustee the powers, instruments or funds in trust hereunder.

2.7     <u>Incidents of Ownership</u>. The Claimant Trust shall be the sole beneficiary of the Litigation Sub-Trust and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein.

6

002720