**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re:** Highland Capital Management, L.P | § | Case No. 19-34054-SGJ-11 |
| Highland Capital Management Fund Advisors, L.P. | | |
| et al | § | |
| Appellant | § | |
| vs. | § | |
| Highland Capital Management, L.P., | | |
| | § | 3:21-CV-00538-N |
| Appellee | § | |

[1943] **Order confirming the fifth amended chapter 11 plan,** Entered on 2/22/2021.

**APPELLANT RECORD**
**VOLUME 47**

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

*I N D E X*

## AMENDED DESIGNATION BY NEXPOINT ADVISORS, L.P. AND HIGHLAND
## CAPITAL MANAGEMENT FUND ADVISORS, L.P.
## OF ITEMS FOR THE RECORD ON APPEAL

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,

L.P. (the "Appellants"), creditors and parties-in-interest in the above styled and numbered

bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"),

and, with respect to their *Notice of Appeal* [docket no. 1957], hereby file their *Amended*

*Designation of Items for the Record on Appeal* (the "Designation") as follows:

---

| | Item | Bankruptcy Docket Number | Description |
|---|---|---|---|
| | | | **Pleadings and Items on Docket** |
| *Vol. 1*<br>000001 | 1 | 1957 | Notice of Appeal |
| 000165 | 2 | 1943 | Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief |
| 000326 | 3 | | Docket Sheet of Bankruptcy Case No. 19-34054 |
| *Vol. 2*<br>000639 | 4 | 1606 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000666 | 5 | 1648 | Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000675 | 6 | 1656 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000820 | 7 | 1670 | Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000870 | 8 | 1719 | Second Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| *Vol. 3*<br>000880 | 9 | 1749 | Third Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000886 | 10 | 1772 | Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000901 | 11 | 1791 | Notice of Withdrawal of Certain Executory Contracts and Unexpired Leases from List of Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan |
| 000906 | 12 | 1807 | Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management |
| 001031 | 13 | 1808 | Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) |
| *Vol. 4*<br>001097 | 14 | 1811 | Notice of Filing Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications) |
| *Vol. 5*<br>001346 | 15 | 1814 | Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |

| | | | |
|---|---|---|---|
| 16 | 1847 | Fourth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 17 | 1873 | Fifth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 18 | 1875 | Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland of Highland Capital Management, L.P. (As Modified) |
| 19 | 1887 | Supplemental Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 20 | 1671 | United States Trustee's Limited Objection to Confirmation of Debtors' Fifth Amended Plan of Reorganization |
| **Evidence and Transcripts** | | |
| 21 | 1894 | Transcript of February 2, 2021 Confirmation Hearing |
| 22 | 1905 | Transcript of February 3, 2021 Confirmation Hearing |
| 23 | 1917 | Transcript of February 8, 2021 Bench Ruling |
| 24 | 1794 | All exhibits admitted into evidence during February 2 and February 3, 2021 Confirmation Hearing |
| | 1795 | |
| | 1822 | |
| | 1863 | |
| | 1866 | |
| | 1877 | |
| | 1895 | |
| | 1915 | |

*Handwritten annotations in left margin:* Vol 5 — 001414, 001421, 001427, 001475, 001482, 001488, 081783, 002040, 002091, 002188, Vol 12 – 002931, Vol 50 – 013295, 013297, Vol. 51 – 013373, Vol. 54 – 014182, Vol. 55 – 014506

*Handwritten below table:* ✳ 1822 – Vol. 12 – 50 (39 Volumes)

RESPECTFULLY SUBMITTED this 22d day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email:   drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. AND NEXPOINT ADVISORS, L.P.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this the 22d day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Debtor.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.

# EXHIBIT EEEEEE

012506

Case 19-34054-sgj11 Doc 1822-130 Filed 01/22/21   Entered 01/22/21 21:50:07   Page 2 of 2

012507



# Post-Effective Date Organization

- All Other Assets
- Creditors/Equity Holders
- Claimant Trust
- Litigation Sub-Trust
- New GP LLC
- Reorg HCMLP
- Managed Funds

100% — Creditors/Equity Holders to Claimant Trust
100% — Claimant Trust to Litigation Sub-Trust
100% LP Interest — Claimant Trust to Reorg HCMLP
100% — Claimant Trust to New GP LLC
100% GP Interest — New GP LLC to Reorg HCMLP

Case 3:21-cv-00538-N Document 26-47 Filed 06/09/21 Page 8 of 146 PageID 15435

# EXHIBIT FFFFFF

# HIGHLAND CAPITAL MANAGEMENT, L.P.
## DEFERRED INCENTIVE PLAN

**Section 1.**     **Definitions**.  For purposes of the Plan, the following terms are defined as set forth below:

(a)     "Administrator" means the President of the Company; provided, however, that for the period beginning on October 16, 2019 (the date of the Company's bankruptcy proceedings (the "Proceedings") filed with the United States Bankruptcy Court for the District of Delaware and subsequently transferred to the United States Bankruptcy Court for the Northern District of Texas (the "Court") until the later to occur of: (i) the resolution of the Proceedings; or (ii) the full and complete implementation of any plan approved by the Court pursuant to such Proceedings, the term "Administrator" shall mean the Chief Financial Officer of the Company.

(b)     "Affiliate" means a Person, including a joint venture entity, that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the Person specified.  An entity will be deemed an Affiliate of the Company for purposes of this definition only for such periods as the requisite ownership or control relationship is maintained.

(c)     "Award" means any type of award granted under the Plan, which may be granted as (1) a cash award, (2) an award that is denominated or payable in, valued in whole or in part by reference to, or otherwise based on, or related to, Shares, or (3) any combination of the foregoing.  Unless an Award Agreement provides otherwise or the Participant expressly agrees to defer settlement, all Awards will be settled within 5 business days of vesting (or the lapse of restrictions).  Upon settlement of any Award by delivery of the underlying Shares or cash, such underlying Shares or cash will no longer be "Awards" subject to the Plan or any Award Agreement.

(d)     "Award Agreement" means any written agreement, contract or other instrument or document evidencing an Award.

(e)     "Change in Capitalization" means any (1) merger, amalgamation, consolidation, reclassification, recapitalization, spin-off, spin-out, repurchase or other reorganization or corporate transaction or event, (2) special dividend (whether in the form of cash, shares of common stock or other property), share split or reverse share split or other distribution, (3) combination or exchange of Shares, or (4) other change in corporate structure, which, in any such case of (1) through (4), the Administrator determines, in his reasonable discretion in good faith, materially affects Shares such that an adjustment pursuant to Section 4 hereof is appropriate.

(f)     "Code" means the Internal Revenue Code of 1986, as amended from time to time, or any successor thereto.

(g)     "Company" means Highland Capital Management, L.P., a Delaware limited partnership.

(h)     "Disability" means, with respect to any Participant, that such Participant (i) as determined by the Administrator in his reasonable discretion in good faith, is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months, or (ii) is, by reason of any medically determinable physical or mental impairment that can be expected to result in death or can be expected to last for a continuous period of not less than 12 months, receiving in the case of this clause (ii) income replacement benefits for a period of not less than three months under an accident and health plan covering employees of the Company or an Affiliate thereof.

(i)     "Exchange Act" means the Securities Exchange Act of 1934, as amended from time to time.

(j)     "Fair Market Value" as of a particular date means the fair market value as reasonably determined in good faith by the Administrator in his reasonable discretion in good faith; provided, however, that if determining the fair market value of Shares or any other securities that are admitted to trading on a securities exchange, the fair market value of such Shares or other securities on any date will be the closing sale price reported for such shares on such exchange on such date or, if no sale was reported on such date, on the last day preceding such date on which a sale was reported.

(k)     "Participant" means an employee, member, partner or manager of the Company or any Affiliate of the Company who has been selected by the Administrator, pursuant to the Administrator's authority provided for in Section 2 below, to receive grants of Awards, and, upon his or her Disability or death, his or her successors, heirs, executors and administrators, as the case may be.

(l)     "Person" has the meaning given in Section 3(a)(9) of the Exchange Act.

(m)     "Plan" means the Highland Capital Management, L.P. Deferred Incentive Plan.

(n)     "Shares" means shares of common stock of any corporation or other forms of equity interests or other securities of any entity granted as an award under the Plan, as adjusted pursuant to the Plan, and any successor (pursuant to a merger, amalgamation, consolidation or other reorganization) security.

**Section 2.    Administration**.

(a)     The Plan will be administered by the Administrator.  The Plan is intended to comply, and will be administered in a manner that is intended to comply, with Section 409A of the Code and will be construed and interpreted in accordance with such intent.  To the extent that an Award, issuance and/or payment is subject to Section 409A of the Code, it will be awarded and/or issued or paid in a manner that will comply with Section 409A of the Code, including any applicable regulations or guidance issued by the Secretary of the United States Treasury Department and the Internal Revenue Service with respect thereto.

- 2 -

(b)      Pursuant to the terms of the Plan, the Administrator will have the power and authority, without limitation:

(1)      to select Participants;

(2)      to determine whether and to what extent Awards are to be granted hereunder to Participants;

(3)      to determine the type of Award to be granted hereunder;

(4)      to determine the terms and conditions, not inconsistent with the terms of the Plan, of each Award granted hereunder, including, but not limited to, (i) the restrictions, if any, applicable to Awards and the conditions under which restrictions, if any, applicable to such Awards will lapse, (ii) the performance goals and periods applicable to Awards, (iii) the vesting schedule applicable to each Award, (iv) the dollar amount or number of Shares subject to each Award and (v) subject to Section 6 of the Plan and the requirements of Section 409A of the Code (to the extent applicable), any amendments to the terms and conditions of outstanding Awards, including, but not limited to, accelerating the vesting schedule of such Awards;

(5)      to determine the terms and conditions, not inconsistent with the terms of the Plan (including Section 6), which will govern all written instruments evidencing Awards granted hereunder;

(6)      Subject to Section 6, to determine the effect, if any, of employment, severance and other agreements of Participants on the Participant's Awards, including, but not limited to (i) acceleration of vesting and (ii) rights upon termination or other change in employment duties and responsibilities; and

(7)      to determine the duration and purpose of leaves of absence which may be granted to a Participant without constituting termination of the Participant's employment or service for purposes of Awards granted under the Plan.

(c)      No officer or employee of the Company or any Affiliate thereof acting on behalf of the Administrator, will be personally liable for any action, omission, determination, or interpretation taken or made in good faith with respect to the Plan, and each and any officer or employee of the Company and of any Affiliate thereof acting on the behalf of the Administrator, to the maximum extent permitted by law, be fully indemnified and protected by the Company in respect of any such action, omission, determination or interpretation.

**Section 3.**      **Shares Reserved for Issuance Under the Plan**.  Subject to Section 4 hereof, the Company will hold or make reasonable arrangements to acquire the number of Shares granted as Awards or the amount of cash needed to satisfy the Awards upon vesting.

**Section 4.**      **Equitable Adjustments**.  In the event of any Change in Capitalization, an equitable substitution or proportionate adjustment will be made, in each case, as may be determined by the Administrator, in his reasonable discretion in good faith, in (i) the aggregate number of Shares reserved to satisfy Awards granted under the Plan and (ii) the kind and number

DLI-266521681v5

012511

of Shares or cash subject to outstanding Awards granted under the Plan; provided, however, that any fractional Shares resulting from the adjustment will be eliminated by rounding down to the nearest whole Share. Such other equitable substitutions or adjustments will be made as may be determined by the Administrator, in his reasonable discretion in good faith. Without limiting the generality of the foregoing, in connection with a Change in Capitalization, the Administrator may provide, in his reasonable discretion in good faith, for the cancellation of any outstanding Share-based Award or Share-based portion of an Award, as applicable, granted hereunder in exchange for payment in cash or other property having an aggregate Fair Market Value of the Shares covered by such Award. The Administrator's determinations pursuant to this Section 4 will be final, binding and conclusive.

**Section 5.**     **Eligibility**. The Participants under the Plan will be selected from time to time by the Administrator, in his reasonable discretion in good faith, from those individuals who qualify.

**Section 6.**     **Amendment and Termination**. No action hereunder may, without the consent of a Participant, impair or delay the Participant's rights under any outstanding Award.

**Section 7.**     **Unfunded Status of Plan**. The Plan is intended to constitute an "unfunded" plan for incentive compensation. With respect to any payments not yet made to a Participant by the Company, nothing contained herein will give any such Participant any rights that are greater than those of a general creditor of the Company.

**Section 8.**     **Withholding Taxes**. To the extent that the Company is required to withhold federal, state, local or foreign taxes in connection with any payment made or benefit realized by a Participant or other person under this Plan, it will be a condition to the receipt of such payment or the realization of such benefit that the Participant or such other person make arrangements satisfactory to the Company for payment of the balance of such taxes required to be withheld. The Company and a Participant or such other person may also make similar arrangements with respect to the payment of any taxes with respect to which withholding is not required.

**Section 9.**     **Transfer of Awards**. No purported sale, assignment, mortgage, hypothecation, transfer, charge, pledge, encumbrance, gift, transfer in trust (voting or other) or other disposition of, or creation of a security interest in or lien on, any Award or any agreement or commitment to do any of the foregoing (each, a "Transfer") by any holder thereof in violation of the provisions of the Plan or an Award Agreement will be valid; provided, however, that Transfers may be made by will or by the laws of descent and distribution. Any purported Transfer of an Award or any economic benefit or interest therein in violation of the Plan or an Award Agreement will be null and void *ab initio*, and will not create any obligation or liability of the Company, and any person purportedly acquiring any Award or any economic benefit or interest therein transferred in violation of the Plan or an Award Agreement will not be entitled to be recognized as a holder of such Award or any Shares underlying such Award. This Section 9 will not restrict Transfer of Awards following settlement of such Awards.

**Section 10.**     **Continued Employment**. The adoption of the Plan will not confer upon any Participant any right to continued employment or service with the Company or any Affiliate thereof, as the case may be, nor will it interfere in any way with the right of the Company or any Affiliate thereof to terminate the employment or service of any of its Participants at any time.

- 4 -

012512

**Section 11.** **Effective Date.** The Plan was adopted on March 31, 2015 (the "Effective Date").

**Section 12.** **Term of Plan.** No Award may be granted pursuant to the Plan on or after the tenth anniversary of the Effective Date, but Awards theretofore granted may extend beyond that date.

**Section 13.** **Section 409A of the Code.** Payments and benefits under the Plan are intended to comply with Section 409A of the Code to the extent subject thereto, and, accordingly, to the maximum extent permitted, the Plan will be interpreted and be administered to be in compliance therewith. Any payments described in the Plan that are due within the "short-term deferral period" as defined in Section 409A of the Code will not be treated as deferred compensation unless applicable law requires otherwise. Notwithstanding anything to the contrary in the Plan, to the extent required in order to avoid accelerated taxation and/or tax penalties under Section 409A of the Code, amounts that would otherwise be payable and benefits that would otherwise be provided pursuant to the Plan during the six month period immediately following a Participant's termination of employment or service will instead be paid on the first business day after the date that is six months following the Participant's separation from service (or upon the Participant's death, if earlier). In addition, for purposes of the Plan, each amount to be paid or benefit to be provided to a Participant pursuant to the Plan, which constitutes deferred compensation subject to Section 409A of the Code, will be construed as a separate identified payment for purposes of Section 409A of the Code and not one of a series of payments.

**Section 14.** **Compliance with Law and Agreements.** Subject to compliance with Section 409A of the Code, the Company will not be obligated to transfer any Shares or other securities pursuant to the Plan or any Award Agreement if the transfer thereof would, in the reasonable opinion of the Company, result in a violation of law or a breach of a material agreement of the Company or its Affiliates.

**Section 15.** **Governing Law.** The Plan will be governed by and construed in accordance with the laws of the State of Texas, without giving effect to principles of conflicts of law of such state.

DLI-266521681v5

012513

# EXHIBIT GGGGGG

012514

## HIGHLAND CAPITAL MANAGEMENT, L.P.

### Contingent Bonus Award Agreement

**THIS CONTINGENT BONUS AWARD AGREEMENT** (this "*Agreement*"), dated as of _____, 2020, is by and between **HIGHLAND CAPITAL MANAGEMENT, L.P.** (the "*Company*") and _____ (the "*Participant*"). All terms used in this Agreement with initial capital letters and not otherwise defined in this Agreement that are defined in the Highland Capital Management, L.P. Deferred Incentive Plan (the "*Plan*") shall have the meanings assigned to them in the Plan.

**WHEREAS**, the Company adopted the Plan for the purpose of granting certain awards to employees, members, partners and managers of the Company who are selected by the Administrator; and

**WHEREAS**, pursuant to the Plan, and subject to the terms and conditions thereof and the terms and conditions hereinafter set forth, this Agreement evidences and memorializes the Company's grant to the Participant, effective as of May 29, 2020 (the "*Date of Grant*"), of a contingent right to receive the following (the "*Award*"):

**Shares (if applicable):**

XXX.XXX Shares in INSERT APPLICABLE FUND & TICKER (Share price of $XX.XX on the Date of Grant)

XXX.XXX Shares in INSERT APPLICABLE FUND & TICKER (Share price of $XX.XX on the Date of Grant)

XXX.XXX Shares in INSERT APPLICABLE FUND & TICKER (Share price of $XX.XX on the Date of Grant)

XXX.XXX Shares in INSERT APPLICABLE FUND & TICKER (Share price of $XX.XX on the Date of Grant)

**NOW, THEREFORE**, the Company and the Participant agree as follows:

1. <u>Earning of Award</u>. If the Award under this Agreement becomes nonforfeitable and payable ("*Vests*" or similar terms) in accordance with **Section 3** of this Agreement, the Participant will be entitled to settlement of the Vested Award as specified in **Section 4** of this Agreement.

2. <u>Transferability of Award</u>. Subject to Section 9 of the Plan, the rights of the Participant under this Agreement, the Award (prior to settlement) and any interest therein or in Shares underlying such Award (if any) shall not be transferable except as provided in **Section 3.2** below. In addition, if the Award Vests and is settled in Shares, in whole or in part, the Securities and Exchange Commission may view such Shares as restricted. As a result, the Participant may not be able to transfer such Shares under the applicable securities laws unless an exemption from registration is available.

3. <u>Vesting of Award</u>.

3.1 <u>Normal Vesting</u>. Subject to **Sections 3.2** and **3.3** of this Agreement, 100% of the Award will Vest on May 31, 2023 (and become entitled to settlement as specified in **Section 4** of this Agreement) if the Participant remains continuously employed by the Company until such date (the "***Vesting Date***"). For the purposes of this Agreement, the Participant's service does not terminate when the Participant goes on military leave, sick leave, FMLA leave or any other *bona fide* leave of absence, if the leave was approved by the Company in writing and if continued crediting of service is required by applicable law or by the terms of the leave. However, the Participant's service terminates when the approved leave ends, unless the Participant immediately returns to active work.

3.2 <u>Death or Disability</u>. If the Participant's employment terminates before the Vesting Date on account of death or Disability, then the Award will Vest immediately and the Shares and/or cash to which the Participant is or would be otherwise entitled under this Agreement will be issued to the Participant or, in the event of the Participant's death, to the Participant's estate, in accordance with **Section 4**.

3.3 <u>Effect of Reorganization</u>. If the Company or the issuer of any Shares subject to the Award (if any), as applicable, is a party to a merger or other reorganization, the Award will continue in accordance with its terms in the merged or reorganized entity.

3.4 <u>Forfeiture Upon Termination of Employment</u>. If the Participant's employment terminates for any reason other than on account of death or Disability before the Vesting Date, then the Award will be forfeited automatically and without further notice on such date without compensation or any other consideration. The Administrator determines when the Participant's employment terminates for this purpose. Notwithstanding the foregoing, the Award will not be forfeited and the Vesting set forth in this **Section 3** shall continue in the event Employee continues to be employed by an entity that is the Company's affiliate, successor or assign, including, without limitation, Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P. and NexPoint Securities, Inc., and their respective affiliates, successors and assigns.

4. <u>Form and Time of Settlement of Award</u>. Subject to **Section 3.4** of this Agreement, if the Award shall have become Vested in accordance with **Section 3** of this Agreement, settlement of the Award shall be made in the form of (a) one Share of the applicable issuer for each Share that is subject to the Award (if any), plus a lump sum payment equal to the amount of cash subject to the Award (if any), (b) a lump sum cash payment equal to the Fair Market Value of the Shares subject to the Award (if any) at the Vesting Date, plus the amount of cash granted under the Award (if any) (together, the "***Award Value***"), or (c) a combination of Shares and cash the total value of which equals the Award Value, in each case, within 60 days after the Vesting Date, less applicable tax withholding. The form of payment is at the sole option of the Administrator. To the extent that the Award is settled in Shares, no payment will be required for such Shares that the Participant may receive; <u>provided</u>, <u>however</u>, that the Participant will be responsible for the Participant's own Federal, state, local, or foreign tax liability and any other tax consequences that may arise as a result of the transactions contemplated by this Agreement.

012516

5.    <u>No Rights as a Shareholder</u>.  The Participant will have no voting rights with respect to any Shares subject to the Award before the Participant Vests in the Award and the Shares, if any, have been transferred to the Participant; <u>provided</u>, <u>however</u>, that, before the Participant becomes Vested in the Award, the amount of any cash dividends that would otherwise have been paid with respect to any Shares that are the subject of the Award if the Participant owned such Shares will be notionally treated as if paid with respect to those Shares and a cash award in the aggregate nominal amount of all such cash dividends will be included in the Award and will be subject to the same Vesting and payment provisions as the original Shares that are the subject of the Award.

6.    <u>Relationship to the Plan</u>.  This Agreement is subject to the terms of the Plan.  If there is any inconsistency between this Agreement and the Plan, the Plan shall govern.

7.    <u>No Right to Continued Employment</u>.  Neither the Award nor this Agreement gives the Participant the right to be retained by the Company in any capacity.

8.    <u>Governing Law; Submission to Jurisdiction; Expenses; Waiver of Jury Trial</u>.

The parties hereto hereby agree that this Agreement and any suit, action, claim or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby, whether in contract, tort or otherwise (a "***Dispute***"), shall be (a) governed by and construed in accordance with the laws of the State of Texas, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Texas and (b) submitted exclusively in the United States District Court for the Northern District of Texas or, if such court does not have subject matter jurisdiction, in the courts of the State of Texas sitting in Dallas County, and any appellate court thereof (the "***Enforcement Court***"). Each of the parties hereby irrevocably and unconditionally consents and submits to the exclusive jurisdiction of the Enforcement Court in any such Dispute, agrees to bring any Dispute only in the Enforcement Court, and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such Dispute in Enforcement Court or that any such Dispute that is brought in the Enforcement Court has been brought in an inconvenient form.  Service of process, summons, notice or other document may be served on any party hereto anywhere in the world for purposes of any suit, action or other proceeding brought in any such court.  Any party found to have violated this provision by commencing a Dispute other than in the Enforcement Court shall be liable for all legal fees and expenses incurred by the party seeking to enforce this provision.

EACH PARTY HERETO IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY. EACH PARTY HERETO CERTIFIES AND ACKNOWLEDGES THAT (A) NO REPRESENTATIVE OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE OTHER PARTY WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF A LEGAL ACTION, (B) IT HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER,

012517

(C) IT MAKES THIS WAIVER KNOWINGLY AND VOLUNTARILY, AND (D) IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

9. <u>Entire Agreement</u>. This Agreement and the Plan constitute the entire understanding between the Participant and the Company regarding the Award.

10. <u>Amendments</u>. Any amendment to the Plan shall be deemed to be an amendment to this Agreement to the extent that the amendment is applicable hereto; <u>provided</u>, <u>however</u>, that no amendment shall adversely affect the rights of the Participant under this Agreement without the Participant's consent (<u>provided</u>, <u>however</u>, that the Participant's consent shall not be required to an amendment that is deemed necessary by the Company to ensure compliance with Section 409A of the Code). No amendment, modification, waiver or release of or under this Agreement will be effective unless evidenced by an instrument in writing signed by each of the Company and the Participant.

11. <u>Severability</u>. If any provision of this Agreement or the application of any provision hereof to any person or circumstances is held invalid, unenforceable or otherwise illegal, the remainder of this Agreement and the application of such provision to any other person or circumstances shall not be affected, and the provisions so held to be invalid, unenforceable or otherwise illegal shall be reformed to the extent (and only to the extent) necessary to make it enforceable, valid and legal.

12. <u>Binding Effect</u>. Subject to the provisions of the Plan, this Agreement shall inure to the benefit of and be binding upon the Participant and the Company and their respective heirs, legal representatives, successors and assigns.

13. <u>Compliance with Section 409A of the Code</u>. Payments and benefits under the Agreement are intended to comply with Section 409A of the Code to the extent subject thereto, and, accordingly, to the maximum extent permitted, the Agreement will be interpreted and be administered to be in compliance therewith.

14. <u>Electronic Delivery</u>. The Company may, in its sole discretion, deliver any documents related to the Award and the Participant's participation in the Plan, or future awards that may be granted under the Plan, by electronic means or to request the Participant's consent to participate in the Plan by electronic means. The Participant hereby consents to receive such documents by electronic delivery and, if requested, agrees to participate in the Plan through an on-line or electronic system established and maintained by the Company or another third party designated by the Company.

15. <u>Other Acknowledgements</u>. The Participant agrees to comply with the Employer's Compliance Manual and Personal Trading Policy when selling Shares.

*[Signature Page Follows]*

012518

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

**PARTICIPANT**

By: _____

Printed Name: _____

Date: _____

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: _____

Printed Name: _____

Title: _____

012519

# EXHIBIT HHHHHH

012520

ORIGINAL

## 2005 HCMLP BONUS PLAN

1.   <u>Purpose of the Plan</u> .  This bonus plan shall be known as the 2005 HCMLP Bonus Plan. The purpose of the Plan (as defined below) is to attract and retain the highest quality employees for positions of substantial responsibility, and to provide additional incentives to the employees of Highland Capital Management, L.P. (the "Partnership") and its Affiliates so as to promote the success of the Partnership and its Affiliates.  The Plan is intended to be an unfunded bonus pay arrangement providing incentive compensation to such employees, exempt from the provisions of the Employee Retirement Income Security Act of 1974, as amended.

The Plan is intended to be in good faith compliance with Section 409A of the Code, and is to be construed in accordance with Section 409A of the Code and any guidance issued thereunder.  This Plan does not relate to and shall not apply to any bonus plans previously offered by the Partnership or its Affiliates (the "Predecessor Plans").  This Plan is not intended as a "material modification" of any Predecessor Plans as such term is described in any guidance issued under Section 409A of the Code.  The Predecessor Plans in effect December 31, 2004, shall be subject to the applicable laws in effect prior to the enactment of Section 409A of the Code, to the extent Section 409A of the Code is inapplicable to such Predecessor Plans.

2.   <u>Definitions</u>.  As used herein, the following definitions shall apply:

(a)   "Account" shall mean individual recordkeeping accounts which shall be unfunded and maintained for each Participant solely for the purpose of recording Awards made under the Plan.

(b)   "Administrator" shall mean the General Partner, or the person or persons appointed by the General Partner to administer the Plan and Awards granted under the Plan.

(c)   "Affiliate" shall mean any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question. As used in this definition, the term "control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract or otherwise.

(d)   "Award" shall mean a Bonus made available to a Participant in accordance with Sections 8 and 9 below.

(e)   "Award Date" shall mean the effective date of the Participant's Award Letter Agreement.

(f)   "Award Letter Agreement" shall mean a written agreement evidencing the granting of an Award under the Plan.

(g)   "Bonus" shall mean an amount of compensation determined from time to time by the General Partner in its sole and unfettered discretion and that is made available to a Participant in accordance with Sections 8 and 9 below.  A Bonus

shall be accrued and earned by a Participant only to the extent when the Participant becomes entitled to receive a distribution in accordance with Sections 8 and 9 below.

(h)    "Code" shall mean the Internal Revenue Code of 1986, as amended.

(i)    "Disability" shall mean disability as defined by the terms of the Partnership's or its Affiliate's applicable long-term disability plan as in effect at the determination of such Disability but will not include disabilities related to fatigue or stress.  If, at any time, the Partnership or the Affiliate that employs the Participant, does not maintain a long-term disability plan, Disability shall mean a physical or mental condition which, in the judgment of the Partnership or the Affiliate, permanently prevents the Participant from performing the essential functions of his/her position with the Partnership or the Affiliate, with or without reasonable accommodation, or such other position or job that the Partnership or the Affiliate makes available to him/her that is of similar status, similar compensation and similar responsibility and for which the Participant is qualified by reason of his/her education, training and experience.  In making its determination, the Partnership and its Affiliates may, but are not required to, rely on advice of a physician competent in the area to which such Disability relates. The Partnership and its Affiliates may make the determination in their sole discretion, and any decision of the Partnership and its Affiliates will be binding on all parties.

The foregoing notwithstanding, in the event it is determined that the definition of Disability as described above results in a violation of Section 409A of the Code, and as a result an Award would be subject to the taxes described in Section 409A(a)(1) of the Code, with respect to such Award any determination of Disability shall be made in accordance with the requirements of Section 409A of the Code and any guidance issued thereunder and Disability shall mean the Participant is (i) unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months, or (ii) by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months, receiving income replacement benefits for a period of not less than three (3) months under an accident and health plan covering Employees of the Partnership and its Affiliates.

(j)    "Employee" shall mean any employee of the Partnership or its Affiliates.

(k)    "Eligibility" shall mean satisfaction of such requirements and conditions as set forth in the Award Letter Agreement, and shall include the requirement that the Participant have and continue to maintain active full-time employment with the Partnership or its Affiliates on each payment date as specified in Section 8.

(l)    "General Partner" shall mean Strand Advisors, Inc., the General Partner of Highland Capital Management, L.P.

(m) "Participant" shall mean any Employee who receives an Award under the Plan, as evidenced by an Award Letter Agreement entered into between such Employee and the Partnership.

(n) "Partnership" shall mean Highland Capital Management, L.P., a Delaware limited partnership.

(o) "Person" shall mean an individual or a corporation, limited liability company, partnership, trust, estate, unincorporated organization, association, or other entity.

(p) "Plan" shall mean the 2005 HCMLP Bonus Plan, as hereinafter amended from time-to-time.

(q) "Plan Year" shall mean the calendar year. The initial Plan Year commences January 1, 2005 and ends December 31, 2005.

3. <u>Administration of the Plan</u>. The Plan shall be administered by the Administrator.

(a) <u>Powers of the Administrator</u>. The Administrator shall have all powers necessary or appropriate to accomplish its duties under this Plan including, but not limited to, the power and duty to:

(i) maintain complete and accurate records of all Plan transactions and other data in the manner necessary for proper administration of the Plan;

(ii) adopt, amend, or waive rules of procedure and regulations necessary for the proper and efficient administration of the Plan, provided the rules and regulations are not inconsistent with the terms of the Plan as set out herein. All rules and decisions of the Administrator shall be uniformly and consistently applied to all Participants in similar circumstances;

(iii) construe, interpret and enforce the terms of the Plan and any agreement or instrument entered into under the Plan and the rules and regulations it adopts;

(iv) amend the terms of the Plan or any outstanding Award Letter Agreement, to the extent the amendment of any such term is within the discretion of the Administrator as provided in the Section 12 of the Plan or any Award Letter Agreement.

(v) review claims and render decisions on claims for benefits under the Plan;

(vi) furnish the Partnership or the Participants, upon request, with information that the Partnership or the Participants may require for tax or other purposes;

012523

      (vii)     employ agents, attorneys, accountants or other Persons and delegate its authority to any Person, as permitted by law (and any such Person may be employed by or represent the Partnership or its Affiliates), for such purposes as the Administrator considers necessary or desirable in connection with its duties hereunder; and

      (viii)    perform any and all other acts for the proper management and administration of the Plan.

(b)    <u>Decisions Binding</u>.  All determinations and decisions of the Administrator as to any disputed question arising under the Plan, including questions of construction and interpretation, shall be made by the Administrator in its sole and unfettered discretion, and shall not be subject to review by anyone, but shall be final, binding, and conclusive upon all parties.

(c)    <u>Indemnification</u>.  Each Person who is or has shared the title of an Administrator, including one of the Persons appointed by the General Partner to administer the Plan and Awards granted under the Plan and Persons described in Section 3(a)(vii) above, shall be indemnified and held harmless by the Partnership and its Affiliates against and from any loss, cost, liability, or expense that may be imposed upon or reasonably incurred by him or her in connection with or resulting from any claim, action, suit, or proceeding to which he or she may be a party, or in which he or she may be involved by reason of any action taken or failure to act under the Plan, and against and from any and all amounts paid by him or her in settlement thereof, with the Partnership's approval, or paid by him or her in satisfaction of any judgment in any such action, suit, or proceeding against him or her, provided he or she shall give the Partnership and its Affiliates an opportunity, at their own expense, to handle and defend the same before he or she undertakes to handle and defend it on his or her own behalf.

The foregoing right of indemnification shall not be exclusive of any other rights of indemnification to which such Persons may be entitled under the Partnership's limited partnership agreement, as a matter of law, or otherwise, or any power that the Partnership may have to indemnify them or hold them harmless.

4.    <u>Eligibility and Participation</u>.  Participation in the Plan shall be determined on an annual basis by the General Partner, in its sole and unfettered discretion.  The General Partner may, but shall not be obligated to, select Employees who are eligible to participate in this Plan at anytime, and from time to time.  Participants shall be notified of their participation in the Plan in writing and shall be apprised of the terms of the Plan and any Award provided under the Plan.  Except as otherwise provided in an Award Letter Agreement and in Section 9 below, participation in the Plan and eligibility to receive a distribution requires that a Participant have and continue to maintain an active full-time employment relationship with the Partnership or its Affiliates.

5.    <u>Establishment of Awards</u>.  The General Partner shall, in its sole and unfettered discretion, determine the amount of an Award that is granted under Section 4 above.  The amount of Awards may vary on a Plan Year-by-Plan Year and/or a Participant-by-Participant basis.  The determination of the amount of an Award shall be set forth in the corresponding Award Letter Agreement and shall be final and binding on all parties.

012524

6.  <u>No Participation or Award Rights</u>.  No Employee shall at any time have a right to participate in the Plan for any Plan Year, despite having previously participated in the Plan.  All Awards granted under the Plan are of a voluntary nature.  The grant of an Award or the benefit of participating in the Plan shall not create a claim for future Awards, benefits or participation in the Plan, even if Awards or benefits have been granted to a Participant repeatedly over previous Plan Years.

7.  <u>Accounting of Awards</u>.  The amount of a Participant's Award for a Plan Year shall be reflected in the Participant's Account.  The Participant's Account shall be adjusted as amounts are paid to the Participant in accordance with the distribution provisions set forth in Section 8 below.

8.  <u>Distribution of Awards</u>.  Depending upon the terms in the applicable Award Letter Agreement, a Participant's Bonus for a Plan Year shall be accrued and earned by the Participant only as such Award is payable under this Section 8 or under Section 9 below.  Except as provided in Section 9 below, a Participant's Award for a Plan Year shall be payable in cash (or by check) in accordance with the terms in the applicable Award Letter Agreement in one (1), two (2), three (3) or four (4) equal installments on the following dates provided the Participant has an active full-time employment relationship with the Partnership or its Affiliated on such dates:

   (a)  the last business day in February in the Plan Year that follows the Award Date;

   (b)  if the Award Letter Agreement provides that the Award is payable in two (2) or more installments, the last business day in August in the Plan Year that follows the Plan Year of the Award Date;

   (c)  if the Award Letter Agreement provides that the Award is payable in three (3) or more installments, the last business day in February in the Plan Year that follows the Plan Year of the Award Date; and

   (d)  if the Award Letter Agreement provides that the Award is payable in four (4) installments, the last business day in August in the second Plan Year that follows the Plan Year of the Award Date.

   For example, if a Participant remains eligible to receive all payments from an Award granted in the 2005 Plan Year, and the applicable Award Letter Agreement provides for payment in four (4) equal installments, the payments shall be made as follows: the first payment shall be made on the last Friday in February 2006; the second payment shall be made on the last Friday in August 2006; the third payment shall be made on the last Friday in February 2007; and the fourth payment shall be made on the last Friday in August 2007.

9.  <u>Termination of Employment</u>.

   (a)  Except as otherwise provided in this Plan, in the event that a Participant's employment with the Partnership and all Affiliates of the Partnership is terminated for any reason other than for death or Disability, the terminated individual shall cease to be a Participant in the Plan and shall not be eligible to

012525

receive any undistributed amounts previously credited to the terminated individual's Account. Such undistributed amounts previously credited to such terminated individual's Account shall be forfeited and the terminated individual shall have no interest in, or right to receive, any portion of such forfeited amount. Amounts which are forfeited shall not be allocated among the remaining Participants.

(b)     In the event that a Participant's employment with the Partnership and all Affiliates of the Partnership is terminated due to death or Disability: (i) the terminated individual shall cease to be a Participant in the Plan; (ii) all undistributed amounts previously credited to the terminated individual's Account shall be accrued and earned; and (iii) within seventy-five (75) days of the Participant's termination of employment, all undistributed amounts previously credited to the Participant's Account shall be distributed to the Participant or the Participant's estate, as applicable.

10.     <u>Nontransferability</u>.  No right or interest of any Participant in the Plan shall be assignable or transferable, or subject to any lien directly, by operation of law, or otherwise, including but not limited to, execution, levy, garnishment, attachment, pledge, and bankruptcy.

11.     <u>Rights of Participants</u>.  Nothing in the Plan shall be construed as giving any Participant the right to be retained in the employ of the Partnership or its Affiliates or any right to any payment whatsoever.  Except as otherwise provided for herein, the Partnership and its Affiliates expressly reserve the right to dismiss any Participant at any time and for any reason without liability for the effect which such dismissal might have upon him as a Participant in the Plan.

12.     <u>Amendment or Termination of the Plan</u>.  The General Partner, in its sole and unfettered discretion, may amend, suspend or discontinue the Plan or Award Letter Agreement.  No amendment, suspension or discontinuance shall impair the rights of any Participant except to the extent necessary to comply with any provision of federal or applicable state laws, including Section 409A of the Code and any guidance issued thereunder, or except to the extent necessary to prevent detriment to the Partnership and its Affiliates.  The foregoing notwithstanding, in the event it is determined that any provision in this Plan results in a violation of the requirements of Section 409A of the Code and any guidance issued thereunder, the Administrator shall have the power to unilaterally modify or eliminate any such provision.

13.     <u>Partnership Changes</u>.

(a)     <u>Dissolution or Liquidation</u>.  Notwithstanding any provision herein to the contrary, upon the dissolution or liquidation of the Partnership, all undistributed amounts previously credited to a Participant's Account shall be forfeited.

(b)     <u>Successors</u>.  All obligations of the Partnership under the Plan shall be binding upon and inure to the benefit of any successor to the Partnership, whether the existence of such successor is the result of a direct or indirect purchase, merger, consolidation, or otherwise, of all or substantially all of the business and/or assets of the Partnership.

012526

14.     <u>Miscellaneous</u>

(a)     <u>Governing Law and Proper Venue</u>.  The Plan, and all provisions hereunder, shall be governed by and construed in accordance with the laws of the state of Texas without giving effect to principles of conflict of laws.  The proper place of venue to enforce any terms or conditions of this Plan shall be Dallas County, Texas.  Furthermore, any legal proceeding against the Partnership arising out of or in connection with this Plan shall be brought in the district courts of Dallas County, Texas, or the United States District Court for the Northern District of Texas, Dallas Division.

(b)     <u>Withholding Taxes</u>.  The Partnership and its Affiliates, if applicable, shall have the right to deduct from all payments under the Plan any foreign, federal, state, local, or other taxes required by applicable law to be withheld with respect to such payments.

(c)     <u>Gender and Number</u>.  Except where otherwise indicated by the context, any masculine term used herein also shall include the feminine, the plural shall include the singular, and the singular shall include the plural.

(d)     <u>Severability</u>.  In the event that any provision of the Plan shall be declared or adjudicated illegal, invalid or unenforceable for any reason whatsoever, then the illegal, invalid or unenforceable provision shall be deemed excised herefrom, and the remaining parts of the Plan shall continue and remain in full force and effect and the Plan shall be construed and enforced as if such illegal, invalid or unenforceable provision had not been included herein.

(e)     <u>Costs of the Plan</u>.  All costs of implementing and administering the Plan shall be borne by the Partnership.

(f)     <u>No Plan Funding</u>.  The Plan shall at all times be entirely unfunded and no provision shall at any time be made with respect to segregating assets of the Partnership or its Affiliates for payment of any amounts hereunder.  No Participant, beneficiary, or other person shall have any interest in any particular assets of the Partnership or its Affiliates by reason of the right to receive a benefit under the Plan.  Participants and beneficiaries shall have only the rights of a general unsecured creditor of the Participant's employer.

(g)     <u>FMLA and Other Leave</u>.  For United States Employees, this Plan shall be administered to comply with the Family and Medical Leave Act of 1993, as amended ("FMLA").  Any Employee who takes leave that satisfies the requirements of the FMLA shall, for purposes of this Plan, be considered actively working with the Partnership or its Affiliates, as applicable, during such FMLA leave; provided, however, that nothing herein shall be construed to credit such Employee with working full time if such Employee was not otherwise actually working full time prior to such FMLA leave.  The foregoing notwithstanding, the Plan shall be administered to comply with the minimum requirements of any other applicable law relating to leave of absence.

012527

(h) <u>Previous Compensation Arrangements</u>. Except as otherwise provided in the Award Letter Agreement, all compensation arrangements provided to a Participant by the Partnership and its Affiliates prior to the date on which the Employee becomes a Participant shall be null and void once the Employee becomes a Participant.

As evidence of its adoption of the Plan, Highland Capital Management, L.P. has caused this instrument to be signed by its officer of representative duly authorized on this _1ST_ day of ___January___, 2005.

Highland Capital Management, L.P.
By: Its General Partner, Strand
Advisors, Inc.

By: _____

Title: _President_____

012528

# EXHIBIT IIIIII

012529

Case 19-34054-sgj11 Doc 1822-134 Filed 01/22/21   Entered 01/22/21 21:50:07   Page 2 of 2

JS: I will Tell
you how this
is going to
go.

6-15-20

Call w/ Dondero and Ellington

Dondero

"I'm OK with a liquidator"

"any ... is here before — 1 -"

I run bankruptcy Deinote (w/ this my
personal assets)

$3mm
on emergent
(+) Mkt Vody
for
Re-allocation
$15mm
Re-launch

I would rather B w/ th. Mom
Dom than not know what
... thing.

Josh is getting
I would rather burn the Mom
Down than pay Redeemer \$40.50mm
@ par than a discount to \$10.50mm

Not promising
\$16.0mm
No + at
\$120

012530

# EXHIBIT JJJJJJ

| Carrier | Underwriter | Response |
|---|---|---|
| XL | Baldwin | Declination |
| QBE | Parke | Requested a call. |
| Everest | Barry | Requested a call. |
| Argo | O'Connor | Declination |
| AWAC | McCarthy | Pending. |
| Beazley | Rizzo | Declination |
| Axis | Polonsky | |
| C N A | Mendleson | Declination |
| AIG | Corey | Declination |
| Old Pro | Meade | Indicated $2.5M excess $100K Side A Retention / $500K Side B for $100K - Would need a call to firm up |
| Zurich | Link | Pending. |
| Travelers | Taylor | Declination |
| Arch | Landers | Declination |
| Hartford | Battaglia | Declination |

012532

Case 19-34054-sgj11 Doc 1822-136 Filed 01/22/21   Entered 01/22/21 21:50:07   Page 1 of 17

**Empower Results®**

# Strand Advisors, Inc.
## Management Liability Proposal

January 21, 2020

Prepared by Aon Financial Services Group

# Overview of a Directors and Officers Policy

**Key**
- Included in quote
- Not included in quote

AON
Empower Results®

0125 34

---

**Side-A Difference-in-Conditions ("DIC")**
Examples of potential contract response:

- Strand Advisors is unable to indemnify due to financial insolvency
- Underlying Insurers are not able to indemnify due to insolvency
- Strand Advisors and/or the Insurers wrongfully refuse to indemnify

- Broad Side-A Excess Difference-in-Conditions ("DIC") policy pays on behalf of the directors and officers for non-indemnifiable Loss
- The DIC policy will drop-down and act as a primary policy if the underlying D&O program does not pay or is unable to pay on behalf of the directors and officers
- Broader terms and conditions than the traditional Sides A/B/C policy
- The DIC policy will also drop-down and pay the defense costs of the directors and officers covered under the policy if the primary policy cannot or is unwilling to pay

---

**COVERAGE PART A ("Side-A")**

- Directors & Officers liability for Non-Indemnifiable Loss
- Coverage from "dollar one"
- Direct protection for Directors & Officers for Defense Costs and liability
- Coverage extended specifically to John Dubel, James Seery and Hon Russell Nelms

Examples of potential contract response:

- Shareholder derivative action (settlements/judgments)
- Strand Advisors' insolvency
- Duty of loyalty breach

Personal Asset Protection

**COVERAGE PART B ("Side-B")**

- Directors & Officers liability for Indemnifiable Loss
- Coverage for Strand Advisors indemnification of Directors & Officers for their defense costs and legal liability
- Coverage extended specifically to John Dubel, James Seery and Hon Russell Nelms
- Retention applicable to each loss

- "Entity coverage" for Securities Claims
- Entity liability retention applicable to each loss

**Self-Insured Retention: $500K**

Balance Sheet Protection

Side-A Difference in Conditions Coverage

Case 19-34054-sgj11 Doc 1822-136 Filed 01/22/21   Entered 01/22/21 21:50:07   Page 3 of 17

# Proposed D&O Program

## Policy Period: 12 Months

## $15M D&O Side A&B Only

**Zurich American Insurance Company**
$5M excess of $10M
Premium: $40,000*

OLD REPUBLIC

**Axis Insurance Company**
Primary $10M
Premium: $119,897*

AXIS

**Self-Insured Retentions:**
Non-Indemnifiable Loss – Nil | Indemnifiable Loss – $500K

## Total Premium: $159,987*

*Note: Premium amounts do not include surplus lines taxes or fees, as applicable.

**Aon Risk Solutions** | Financial Services Group
Proprietary & Confidential

## Proposal Highlights

- Prior acts exclusion effective 1/9/20.
- Coverage extended specifically to John Dubel, James Seery and Hon Russel Helms for non-indemnifiable and indemnifiable loss.
- Entity coverage (Insuring Agreement C) deleted in its entirety.
- Exclusion added specific to indemnifiable loss for claims bought by or on behalf of James Dondero and Highland Capital Management LP (including any fund, feeder or parallel fund advised or sponsored by Highland Capital Management LP (coverage provided for claims brought by unaffiliated limited partners of any proceeding and without solicitation or participation of James Dondero).  (draft wording on the next slide).

## Marketing Summary

| Carrier | Underwriter | Response |
|---|---|---|
| XL | Baldwin | Declination |
| QBE | Parke | Requested a call. |
| Everest | Barry | Requested a call. |
| Argo | O'Connor | Declination |
| AWAC | McCarthy | Pending. |
| Beazley | Rizzo | Declination |
| Axis | Polonsky | $10M excess $500K for $119,897 - exclusion for claims brought by or against Dundaro and Highland Capital Management LP (only applicable to Side B - Indemnifiable Loss) |
| C N A | Mendleson | Declination |
| AIG | Corey | Declination |
| Old Pro | Meade | Indicated $2.5M excess $100K Side A Retention / $500K Side B for $100K - Would need a call to firm up |
| Zurich | Link | Pending. |
| Travelers | Taylor | Declination |
| Arch | Landers | Declination |
| Hartford | Battaglia | Declination |



AON
Empower Results®

0125 35

3

# Draft Axis Exclusion Wording

### Specific Entity or Individual Exclusion

Draft – subject to legal review.

It is agreed that Managent and Entity Liability Coverage Part is amended the as follows:

The following Exclusion is added:

This Policy does not apply to any Claim brought by or on behalf of or with the solicitation or assistance of:

James Dondero, or

Highland Capital Management, L.P., or

any fund, feeder or parallel fund advised or sponsored by Highland Capital Management, L.P.;

provided however that this exclusion shall not apply to:

a.  any Claim covered under the Insured Individual Liability Coverage Claims Made Liability Coverage;

b.  any Claim brought by or on behalf any feeder or parallel fund advised or sponsored by Highland Capital
Management, L.P thereof if such Claim is brought an unaffiliated limited partner of any of the preceding and
without the solicitation, assistance or participation James Dondero; or



0125236

## Insured's Acknowledgement to Bind

We hereby acknowledge receipt and review of the information presented in the Renewal Proposal ("Proposal") dated **1/21/20.**

We hereby instruct Aon Risk Services to bind the insurance program(s) selected by us and understand that our instruction to bind constitutes an acceptance of the terms and conditions and payments described in this Renewal Proposal.

Date: _____

_____

On behalf of **Strand Advisors, Inc.**

**AON**
Empower Results®

0125237

## Proposal Disclaimer

*This insurance document is furnished to you as a matter of information for your convenience. It only summarizes the listed proposed policy(ies) and is not intended to reflect all the terms and conditions or exclusions of such proposed policy(ies). Moreover, the information contained in this document reflects proposed coverage as of the effective date(s) of the proposed policy(ies) and does not include subsequent changes. This document is not an insurance policy and does not amend, alter or extend the coverage afforded by the listed proposed policy(ies). The insurance afforded by the listed proposed policy(ies) is subject to all the terms, exclusions and conditions of such policy(ies).*

*The services and placements outlined in this proposal will be provided in accordance with the terms of the notices and policies set forth in the Commercial Risk Solutions U.S. Business Terms section.*



**Aon** | Financial Services Group
Proprietary & Confidential

0125238



# Commercial Risk Solutions U.S. Business Terms

As Your broker of record, Commercial Risk Solutions U.S. ("Aon", "We" or "Us" or "Our") commits to the timely and thorough disclosure of placement strategies, marketing options and broking results. The services We provide to You, Our client ("Client" or "You" or "Your") will be subject to these Business Terms which, unless You and We agree in writing otherwise, are applicable to Our services to You.

**Our Services**

We deliver Our services based on the information You give Us or which is given to Us expressly on Your behalf. In preparation for placing or renewing Your insurance coverage, We will consult with You regarding insurance market conditions, the insurers We suggest be approached, Our recommended program options to pursue, and Our marketing strategy on Your behalf. By the conclusion of the marketing process, We will provide You with written information regarding the coverage details, policy terms and conditions provided by the markets.

We will assist You in gathering and preparing the underwriting information and completing insurance applications. We rely on You for the accuracy and completeness of any information You or anyone else provides to Us on Your behalf. We will also rely on You to provide Us promptly with the information needed to deliver the services and to update any information provided where there has been a material change to that information that may affect the scope of delivery of the services, such as the nature of the risk, the insured entities, property values and descriptions of persons to be covered. Applications requiring signature will be signed by You.

We will obtain Your instructions to Us to bind specific programs based on the program proposal We provide. We expect You to carefully review all documents We give You, including binders, policies and endorsements, and to advise Us immediately if You detect any mistakes or believe the contents do not address Your needs or instructions.

Aon will administer Your relationship with insurance companies including, where applicable, issues such as billings in connection with selected programs, data reporting, and compliance with negotiated requirements.

We will provide services unless and until either of Us notifies the other that Aon is no longer acting as Your broker of record. Subject to applicable state law and contractual arrangements with insurers, any commissions to which We Were entitled are fully earned.

**Surplus Lines and Other Government Taxes**

Insurance may not be available in the admitted marketplace for the terms and conditions specified by the Client. In such event, Aon's insurance proposal may include one or more insurers not licensed to transact insurance in the states of exposure and such coverage may be placed as surplus lines coverage pursuant to applicable insurance laws governing the placement of insurance with non-admitted insurers. Persons and entities insured by surplus lines insurers cannot avail themselves of the protection and recovery afforded by the state insurance guaranty funds in the event the surplus lines insurer should become insolvent. The states do not audit the finances or review the solvency of surplus lines insurers.

In some instances, these insurance placements made by Aon or its affiliates on the Client's behalf may require the payment of state surplus lines, excise or other taxes and/or fees in addition to the premium itself. Aon will endeavor to identify any such tax and/or fee in advance, but in all instances the payment of these taxes and/or fees will remain the responsibility of the Client. Aon will invoice the Client for the payment of such taxes and fees where it is Aon's responsibility to do so.

012539
Empower Results®

# Commercial Risk Solutions U.S. Business Terms

*Continued*

**Client Responsibilities**

Aon will deliver the Included Services based upon the information that the Client and its representatives provide. The Client is responsible for the accuracy and completeness of the information and Aon accepts no responsibility arising from the Client's failure to provide such information to Aon. Aon must receive promptly the information to deliver the Included Services as Well as the Client's prompt updates to any information where there has been a material change which may affect the scope or delivery of the Included Services, such as a change in the nature of the risk, insured entities, property values and persons or entities to be covered.

To the extent that any portion of Aon's compensation, by operation of law, agreement or otherwise, becomes adjusted or credited to the Client, it is the Client's responsibility to disclose the actual net cost of the brokerage and insurance costs You have incurred to third party(ies) having an interest in such amounts.

**Claims Notification to Insurers**

Unless Aon has a specific signed agreement with the Client to the contrary, it is the Client's responsibility to take such steps as are necessary to notify directly those insurers whose policies may apply to any circumstances, occurrences, claims, suits, demands and losses in accordance with the terms and conditions of Your policies. Aon assumes no duty or responsibility with respect to such notifications or monitoring the Client's obligation to place insurers on notice unless undertaken in a separate written agreement. The Client may send copies of such notices to members of Aon staff for informational purposes only, but the receipt of such notice by Aon shall not create additional duties or obligations owed by Aon to the Client nor constitute notice to Your insurers.

**Contract and Lease Review; General Advice**

In instances where Aon provides summaries of contractual requirements or provisions, or any suggested additional or alternative wordings to any contract or lease at the Client's request, such language must be reviewed by the Client's legal advisor before You take action based upon Aon's statements. Aon does not and cannot provide legal advice as to whether the Client's insurance program covers legal obligations contained in the Client's contracts or leases. All descriptions of the insurance coverages are subject to the terms, conditions, exclusions and other provisions of the policies or any applicable regulations, rating rules or plans. Furthermore, it is understood that none of the services provided by Aon are of a legal nature and Aon shall not give legal opinions or provide legal advice or representations.

**Confidentiality**

Aon takes client confidentiality seriously. We have established controls to protect Your information. We are willing to enter an agreement as You may require for the protection of Your confidential data. The Client acknowledges and agrees that the work products provided by Aon are not to be distributed, used or relied upon by third parties without the written consent of both Aon and the Client, except as may be required by Your legal, accounting and non-insurance financial advisors who agree to be bound by this confidentiality agreement.



0125340



# Commercial Risk Solutions U.S. Business Terms

*Continued*

**Intermediaries**

Aon encourages its retail brokers to approach markets directly (without an intermediary) wherever possible. However, where Aon believes it is in the Client's best interest, We may recommend the use of intermediaries, including but not limited to co-brokers, sub-brokers, managing general agents/managing general underwriters, wholesale brokers, or reinsurance brokers (collectively, "Intermediary") to assist in the procurement and servicing of the Client's insurance. Aon prefers, wherever possible, to use the services of an Aon-affiliated Intermediary and Aon shall not be responsible for a non-Aon affiliated Intermediary's actual or alleged acts, errors, or omissions or those of its officers, directors or employees. Any and all compensation earned by an Intermediary in connection with the programs shall be in addition to the compensation paid to Aon and shall not be credited against the Fee, if any.

**Collection and Use of Client Information**

Aon gathers data containing information about the Client and Your insurance placements, as Well as information about the insurance companies that provide coverage to the Client or compete for the Client's insurance placements. In addition to the information provided by the Client, Aon may collect information from commercially available sources. Such information may include name, address, email address and demographic data.

This information may be shared among Aon affiliated businesses, as Well as with third-party service providers acting on Our behalf. In addition to being used to provide services to Aon's customers, the information may be used for

business administration, business reporting, statistical analysis, marketing of Aon products or services and providing consulting or other services to insurance companies for which Aon or its affiliates may receive remuneration. Aon takes appropriate measures to protect the privacy and confidentiality of Our customers as Well as to comply with applicable laws and regulations. Aon may use or disclose information about Our customers if We are required to do so by law, Aon policy, pursuant to legal process or in response to a request from law enforcement authorities or other government officials.

Due to the global nature of services provided by Aon, the personal information the Client provides may be transmitted, used, stored and otherwise processed outside of the country where the Client submitted that information.

**Use of Logos**

Unless otherwise instructed by the Client, Aon will use the Client's logo, pictures, and other publicly available information to effectively market the Client's Programs or for use in Aon's business records.

**Jury Waiver**

Each party agrees to waive its right to a trial by jury in any lawsuit or other legal proceeding against the other party and/or its parent(s), affiliates, or subsidiaries, in connection with, arising out of or relating to these Commercial Risk Solutions U.S. Business Terms or any services provided to the Client by Aon or its affiliates. In any such action or legal proceeding, neither party shall name, as a defendant any individual employee, officer or director of the other party or its parent(s), affiliates or subsidiaries.

**Aon** | Financial Services Group
Proprietary & Confidential

012511



# Commercial Risk Solutions U.S. Business Terms

*Continued*

**Premium Remittance**

Premiums paid by the Client to Aon for remittance to insurers and Client premium refunds paid to Aon by insurance companies for remittance to the Client are deposited into fiduciary accounts in accordance with applicable insurance laws until they are due to be paid to the insurance company or the Client. Subject to such laws and the applicable insurance company's consent, where required, Aon will retain the interest or investment income earned while such funds are on deposit in such accounts.

**Insurance Proposals and Summaries**

Aon's insurance documents containing proposals to bind coverage, summaries of coverages, and certificates of insurance placed are furnished to clients as a matter of information for Our clients' convenience. These documents summarize proposed and placed policies and are not intended to reflect all the terms, conditions and exclusions of such policies. Moreover, the information contained in these documents reflects proposed or placed coverage as of the effective dates of the proposed policies or the date of the summaries and does not include subsequent changes. These documents are not themselves insurance policies and do not amend, alter or extend the coverages afforded by the proposed or placed policies. The insurance afforded by the proposed or placed policies is subject to all the terms, conditions and exclusions contained in such policies as they are issued by the insurers.

**Insurer Solvency**

While Aon only engages insurers who meet certain requirements as established by Us from time to time, We make no representation, guarantee or warranty as to the solvency or ability of any insurer to pay any amounts for insurance claims or otherwise.

**Pricing**

Aon does not and cannot guarantee the availability or price of insurance for Your risks and will not be responsible for fluctuation in the premiums charged by insurers. We will rely on You to review and approve calculation or estimation of premium and Aon is not responsible for any loss occasioned as a result of Our calculation or estimation of premium and statutory charges that may apply to Your insurance.

**Mutual Limited Waiver of Liability**

Neither party to these Commercial Risk Solutions U.S. Business Terms shall be liable to the other for any indirect, incidental, special, consequential, exemplary, punitive or reliance damages (including, without limitation, lost or anticipated revenues, lost business opportunities or lost sales or profits, whether or not either party has been advised of the likelihood of such damages) or for any attorney's fees (whether incurred in a dispute or an action against the other, or as alleged damages that any party incurred in any insurance coverage dispute, or otherwise) arising out of services provided by Aon or its affiliates.

0125442

# Commercial Risk Solutions U.S. Business Terms

*Continued*

## Standard Terms and Conditions

Aon assumes no responsibility for the adequacy or effectiveness of programs or coverages that We did not implement or place. Any loss control services, summaries and/or surveys performed by Aon are advisory in nature and are for the sole purpose of assisting the Client in Your development of Your risk control and safety procedures. Such services and/ or surveys are limited in scope and do not constitute a safety inspection nor verify that the Client is in compliance with federal, state and local laws, statutes, ordinances, recommendations, regulations, consensus codes or other standards.

## Insurance Producer's Role and Compensation

The role of the insurance producer such as Aon in any particular transaction involves review with insurance purchasers about the benefits and terms and conditions of insurance contracts and selling insurance. Compensation is paid to the producer based on the insurance contract the producer sells. Depending on the insurer(s) and insurance contract(s) the purchaser selects, as Well as the arrangement between the producer and the purchaser, compensation will be paid by the insurer(s) selling the insurance contract or by another third party. Such compensation may vary depending on a number of factors, including the insurance contract(s) and the insurer(s) the purchaser selects.

Unless applicable state law and regulation or contractual agreement between Aon and insurer's states otherwise, any commission that Aon is entitled to receive for any placements is fully earned at inception of the insurance programs described in Our insurance proposals and Aon is entitled to retain such commissions in the event of a midterm cancellation of coverage or a reduction in coverage resulting in a premium adjustment.

To the extent that any portion of Aon's compensation as reflected on its invoices becomes adjusted or credited to Our client, it is the client's responsibility to disclose the actual net cost to the client of the brokerage and insurance costs incurred to third party(ies) having an interest in such amounts.

In placing, renewing, consulting on or servicing Your insurance coverages, Aon and its affiliates ("Aon") may participate in contingent commission arrangements with insurance companies that provide for additional compensation, if, for example, certain underwriting, profitability, volume or retention goals are achieved. Such goals are typically based on the total amount of certain insurance coverages placed by Aon with the insurance company or the overall performance of the policies placed with that insurance company rather than on an individual policy basis. As a result, Aon may be considered to have an incentive to place Your insurance coverages with a particular insurance company.

You may obtain information about compensation expected to be received by Aon based in whole or in part on the sale of insurance to You, and (if applicable) compensation expected to be received based in whole or in part on any alternative quotes presented to You by Aon by contacting Your Account Executive or emailing: Aon.US.Broking@aon.com



0125143

# Commercial Risk Solutions U.S. Business Terms

*Continued*

**Limitation of Liability**

Aon's liability to the Client, in total, for the duration of Our business relationship for any and all damages, not otherwise waived under these Commercial Risk Solutions U.S. Business Terms, including costs, expenses and attorneys' fees incurred in any underlying action by the Client that may be or are characterized as "compensatory or other damages", whether based on contract, tort (including negligence), or otherwise, in connection with or related to Our services (including a failure to provide a service) or any other service that We provide shall be limited to a total aggregate amount of US $2.5 million ("Liability Limitation"), to the fullest extent permitted by law.

This Liability Limitation shall apply to the Client and extend to the Client's parent(s), affiliates, subsidiaries, and their respective directors, officers, employees and agents (hereinafter, each a "Client Group Member" and together, "Client Group") wherever located that seek to assert claims against Aon, and its parent(s), affiliates, subsidiaries and their respective directors, officers, employees and agents (each an "Aon Group Member" and together, "Aon Group"). Nothing in this Liability Limitation section implies that any Aon Group Member owes or accepts any duty or responsibility to any Client Group Member.

If the Client or any Client Group Member asserts any claims or makes any demands against Commercial Risk Solutions or any Aon Group Member for a total amount in excess of this Liability Limitation, then the Client agrees to indemnify Aon for any and all liabilities, costs, damages and expenses, including attorneys' fees, incurred by Commercial Risk Solutions or any Aon Group Member that exceeds this Liability Limitation.





# General Data Protection Regulation (GDPR)

## 1.   Data Protection

For the purpose of this Section:

a)   "**Agreement Personal Data**" means any personal data (including sensitive or special categories of personal data including but not limited to data revealing medical conditions, criminal convictions or offences) that is processed under or in connection with the Services performed under this Agreement;

b)   "**Business Day**" means a day except Saturdays and Sundays and public holidays in United States;

c)   "**DP Laws**" means any applicable data protection laws relating to the protection of individuals with regards to the processing of personal data including (i) EU Data Protection Directive 95/46/EC ("**DP Directive**") as implemented by EU member states; (ii) the General Data Protection Regulation (EU) 2016/679 ("**GDPR**") from 25 May 2018; (iii) laws implemented by EU member states which contain derogations from, or exemptions or authorisations for the purposes of, the GDPR, or which are otherwise intended to supplement the GDPR, (iv) Directive 2002/58/EC ("**ePrivacy Directive**") as implemented by EU member states (including Switzerland) or in the UK (as may be applicable), (v) any legislation that, replaces or converts into domestic law the GDPR and/or the ePrivacy Directive (as may be updated or replaced) or any other law relating to data protection, and/or (vi) any corresponding or equivalent national laws or regulations including any amendment, update, modification or re-enactment of such laws;

d)   "**EEA**" means the European Economic Area;

e)   "**Personal Data Breach**" means any accidental or unlawful destruction, loss, alteration, unauthorised disclosure of, or access to the Agreement Personal Data;

f)   "**Supervisory Authority**" means any local, national or multinational agency, department, official, parliament, public or statutory person or any government or professional body, regulatory or supervisory authority, board or other body responsible for administering DP Laws; and

g)   the terms "**controller**", "**processor**", "**data subject**", "**personal data**", "**processing**" and "**special categories of personal data**" shall all have the meanings given to those terms in under either the DP Directive, or the GDPR as applicable (and related terms such as "**process**" shall have corresponding meanings).

012545



# General Data Protection Regulation (GDPR)

*Continued*

Each of the parties is and will remain a separate and independent controller in respect of the Agreement Personal Data and shall independently determine the purposes and means of such processing. Each party warrants that it will observe all applicable requirements of DP Laws and these terms in relation to its processing of the Agreement Personal Data.

You acknowledge and understand that Aon gathers personal data from You for (i) the delivery of the Services; (ii) the management of Our relationship with You, including the marketing of products or services to You which may be of interest to You, invoicing, the settlement of disputes and associated business administration, and (iii) the development of Aon Group Members' products and services (for example conducting benchmarking, market research, data analysis), for the purposes of which Aon shall process aggregated, de-identified data, and shall not publish externally or otherwise disclose any information which derives from data originating from You which would identify an underlying data subject or You without Your prior consent. You acknowledge and understand that Aon shall act as a controller of any personal data which is processed pursuant to this Section and shall comply with DP Laws in respect of such processing.

You agree that the Agreement Personal Data provided or made available to Aon by You or on Your behalf can be used by the Aon Group Members (and Our and their service providers) for the purposes of the Services and in accordance with the terms of this Agreement and You confirm that You have (i) provided or shall provide a notice to all relevant data subjects (for example Your employees or insureds) which describes the disclosure of Agreement Personal Data to Aon for the purposes envisaged by the Agreement (further details of which are available on Aon's Website at **http://www.aon.com/about-aon/privacy.jsp**; (ii) obtained or shall obtain all consents from data subjects necessary for Aon to process the Agreement Personal Data for the purposes of performing the Services; (iii) complied and shall comply with the DP Laws and with guidance from all relevant Supervisory Authorities; and (iv) otherwise complied with and shall comply with all the relevant regulations and legislation.

Each of the parties will, on request, provide the other with reasonable assistance, information and cooperation, at its own expense, to ensure the other party's compliance with the respective obligations under DP Laws in relation to the Agreement Personal Data. If a data subject makes a written request to a party to exercise their rights in relation to the Agreement Personal Data that concerns processing in respect of which the other party is the controller, such party shall (i) forward the request to the other party promptly and in any event within five (5) Business Days from the date on which it received the request and (ii) upon the other party's reasonable written request, provide that other party with reasonable co-operation and assistance in relation to that request to enable the other to respond to such request and meet applicable deadlines under DP Laws.

If either party (the "Data Receiving Party") receives any complaint, notice or communication from a Supervisory Authority which relates directly or indirectly to the other party's (i) processing of the Agreement Personal Data; or (ii) a potential failure to comply with DP Laws, the Data Receiving Party shall, to the extent permitted by law, promptly forward the complaint, notice or communication to the other Party and provide the other Party with reasonable cooperation and assistance in relation to the same.

012546



# General Data Protection Regulation (GDPR)

*Continued*

Each party shall implement appropriate technical and organisational security measures in relation to the processing of the Agreement Personal Data by or on behalf of such party in the performance of this Agreement, which shall ensure a level of security appropriate to the risk including, as appropriate, (a) pseudonymisation and encryption; (b) the ability to ensure the ongoing confidentiality, integrity, availability and resilience of processing systems and services; (c) the ability to restore the availability and access to the Agreement Personal Data in a timely manner in the event of a physical or technical incident; and (d) a process for regularly testing, assessing and evaluating the effectiveness of those measures.

If either party becomes aware of a Personal Data Breach involving Agreement Personal Data, it shall notify the other party without undue delay, and each party shall co-operate with the other, to the extent reasonably requested, in relation to any notifications to Supervisory Authorities or to data subjects which either party is required to make under DP Laws.

Due to the global nature of services provided by Aon and the Aon Group Members, Agreement Personal Data may be transmitted, used, stored and otherwise processed outside of the country in which it was submitted. The parties acknowledge that Aon may transfer and otherwise process or have transferred or otherwise processed Agreement Personal Data outside the EEA provided that such transfer is made in compliance with applicable DP Laws.

If We provide any additional services to You that require Us to process Agreement Personal Data as a processor on Your behalf, any additional terms relating to that processing and ensuring its compliance with DP Laws may be set out in a separate agreement.

**Aon** | Financial Services Group
Proprietary & Confidential

01254747

# Compensation for the Value We Deliver

Aon is an insurance broker and, when serving as your retail insurance broker, in addition to or in lieu of compensation you may pay, Aon may earn compensation which relates in whole or in part to your insurance placement.

For policy level commissions, Aon endeavors to receive compensation using standard commission rates by line of business that we seek to achieve with insurers in advance of individual policy placements. We believe this creates a fairer marketplace among insurers and allows our insurers to focus on the client's needs and risk history, not on commission rate negotiation. In turn, because insurers will be evaluated on their capabilities, clients will be able to more easily compare quotes.

Aon's standard commission rates differ by line of business and, when placed in the U.S. market, are up to the following commission rates: Aviation, 17.5%; Casualty, 18.5%; Cyber, 17.5%; Energy, 20%; Entertainment, 20%; Environmental, 18%; Marine 20%; Med Mal/ Healthcare, 17.5%; Professional/ E&O,17.5%; Property, 18%; Product Recall, 20%; Financial Lines, 18%; Healthcare, 20%; Surety, 35%; Terrorism, 25%; Trade Credit, 17.5%; and Workers Compensation, 15%. Where an Aon broker is placing a policy in the London or Bermuda market, Aon endeavors to earn 20% on those lines of business. Where Aon has created a facility with proprietary terms and conditions negotiated, the Aon standard commission rates range from 20% - 22.5%. Some lines of business are not conducive to standardization because they are subject to state filing regulations, state specific rates and/or industry-specific rates. The standard commission rates we achieve do not include program business (e.g.: franchises, sponsored groups) or large deductible programs.

In addition, Aon provides certain administrative and other related placement services to markets. Compensation of up to 7.5% for these services may take the form of a national additional commission (NAC) or a subscription market brokerage (SMB). Collecting these commissions will not change the premium quoted.

Compensation paid to Aon may vary based upon a number of factors, including the insurance contract and the insurer you select, the volume of business and/or profitability of business we place with each insurer. Therefore, Aon may be considered to have an incentive to place insurance coverages with a particular insurance company

If you interested in receiving Aon's standard commission grid and/or a Commission Disclosure Report identifying the individual commission rates on your placements or compensation expected to be received based in whole or in part on any alternative quotes, ask your Account Executive or write us at aon.us.broking@aon.com.



**Aon** | Financial Services Group
Proprietary & Confidential

0125148

# Transparency & Disclosure

## Proprietary & Confidential

This document has been prepared specifically for Strand Advisors, Inc. The analysis and commentary included herein are understood to be the intellectual property of Aon Financial Services Group and are to be used solely for discussion between Strand Advisors, Inc. and Aon.

Further distribution, photocopying or any form of third-party transmission of this document, in part or in whole, is not permitted without the express written permission of Aon Financial Services Group.

The services and placements outlined in this proposal will be provided in accordance with the terms of the notices and policies set forth in Aon's Disclosures and Commitments to Clients letter, (see also http://www.aon.com/about-aon/corporate-governance/guidelines-policies/ars-disclosures-commitments.jsp).

©2020 Aon Financial Services Group



012549

Aon Risk Solutions | Financial Services Group
Proprietary & Confidential

# EXHIBIT LLLLLL

012550

Case 19-34054-sgj11 Doc 1476 Filed 11/24/20 Entered 11/24/20 13:50:02 Page 1 of 57
Case 3:21-cv-00538-N Document 26-47 Filed 06/09/21 Page 51 of 146 PageID 15478

Docket #1476 Date Filed: 11/24/2020



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

The following constitutes the ruling of the court and has the force and effect therein described.

Signed November 24, 2020

_____
**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**ORDER (A) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT; (B) SCHEDULING A HEARING TO CONFIRM THE FIFTH AMENDED PLAN OF REORGANIZATION; (C) ESTABLISHING DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN; (D) APPROVING FORM OF BALLOTS, VOTING DEADLINE AND SOLICITATION PROCEDURES; AND (E) APPROVING FORM AND MANNER OF NOTICE**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor-in-possession

(the "Debtor") seeking entry of an order: (a) approving the adequacy of the *Disclosure*

*Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*,

filed on November 24, 2020 (as amended or modified, the "Disclosure Statement"); (b)

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed thereto in the Motion.



scheduling a hearing to confirm the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as amended or modified, the "Plan"); (c) fixing an objection deadline to the Plan; (d) approving the forms of ballots, the voting deadline and solicitation procedures; and (e) approving the form and manner of notices related thereto; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given; and after due deliberation and it appearing that sufficient cause exists for granting the requested relief and that such relief is in the best interests of the Debtor's estate and creditors; it is hereby **ORDERED THAT**:

1.     The Motion is **GRANTED** as set forth herein.

2.     The Disclosure Statement is hereby **APPROVED** for solicitation as provided for herein.

3.     A hearing to confirm the Plan (the "Confirmation Hearing") will commence on **January 13, 2021, at 9:30 a.m. (prevailing Central Time)**.

4.     The Confirmation Hearing may be continued from time to time by announcing such continuance in open court or otherwise, all without further notice to parties-in-interest.

5.     The deadline to file and serve objections to the confirmation of the Plan (the "Plan Objection Deadline") shall be on **January 5, 2021, at 5:00 p.m. (prevailing Central Time)**.

6.     All objections to the confirmation of the Plan, if any, must:  (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules for the Northern District of Texas (the "Local Rules"); (iii) be filed with the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"); and (iv) be served upon by the following parties: (a) counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA  90067, Attn: Jeffrey N. Pomerantz, Ira D. Kharasch, and Gregory V. Demo, Emails: jpomerantz@pszjlaw.com, ikharasch@pszjlaw.com, and gdemo@pszjlaw.com; (b) counsel for

the Debtor, Hayward & Associates PLLC, 10501 N. Central Expy, Ste. 106, Dallas, Texas 75231, Attn: Melissa S. Hayward and Zachery Z. Annable, Emails: MHayward@HaywardFirm.com and ZAnnable@HaywardFirm.com; (c) counsel to the official committee of unsecured creditors, Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, Attn: Matthew A. Clemente and Alyssa Russell, Emails: mclemente@sidley.com and Alyssa.russell@sidley.com; and (d) counsel for the Office of the United States Trustee, U.S. Department of Justice, Region 6: Northern District of Texas, Office of The United States Trustee, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, TX 75242, Attn: Lisa L. Lambert, Email: Lisa.L.Lambert@usdoj.gov (collectively, the "<u>Notice Parties</u>").

7.      The Debtor shall be allowed to file a brief in support of confirmation of the Plan on or before **January 11, 2021, at 5:00 p.m. (prevailing Central Time)** and a reply to any objections to the Plan on or before **January 11, 2021, at 5:00 p.m. (prevailing Central Time)**.

8.      The Court shall consider only written objections to the Plan that are timely filed by the Plan Objection Deadline and served upon the Notice Parties.

9.      All objections to the Plan must (a) conform to the Bankruptcy Rules, the Local Rules and any orders of the Court in this chapter 11 case, (b) state with particularity the legal and factual grounds for such objection, (c) provide, where applicable, the specific text that the objecting party believes to be appropriate to insert into the Plan, and (d) describe the nature and amount of the objector's claim or interest.

10.     Objections to the Plan not timely filed and served in accordance with the provisions of this Order shall not be heard and shall be overruled.

11.     The Voting Record Date is **November 23, 2020**.

12.     The deadline for casting a Ballot to accept or reject the Plan (the "<u>Voting Deadline</u>") shall be **January 5, 2021, at 5:00 p.m. (prevailing Central Time)**.

13.     All Ballots accepting or rejecting the Plan must be received by Kurtzman Carson Consultants LLC (the "<u>Balloting Agent</u>") by no later than **5:00 p.m. (prevailing Central Time) on the Voting Deadline** at the following address, as specified on each Ballot, whether sent by

012553

first class mail, personal delivery, or overnight courier:

HCMLP Ballot Processing Center
c/o KCC
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245

14.    Additionally, the Balloting Agent is authorized to accept Ballots via electronic, online transmissions solely through a customized online balloting portal on the Debtor's case website maintained by the Balloting Agent. Ballots submitted via online transmission through the customized online balloting portal shall be deemed to contain an original signature. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

15.    The Debtor or the Court may extend the period during which votes will be accepted by the Debtor, in which case the Voting Deadline for such solicitation shall mean the last time and date to which such solicitation is extended.

16.    The forms of Ballots and voting instructions thereto, substantially in the form attached hereto as **Exhibit A**, are hereby approved.

17.    All votes to accept or reject the Plan must be cast by using the appropriate Ballot.

18.    The Solicitation Procedures are hereby approved; *provided, however*, the Debtor reserves the right to modify, amend or supplement the Solicitation Procedures subject to Court approval.

19.    No later than four (4) business days after entry of this Order, (or as soon as reasonably practicable thereafter), the Debtor shall cause the following solicitation materials (the "Solicitation Package") to be distributed to (i) all known holders of claims and interests in Classes 2, 7, 8, 9, 10 and 11 as of the Voting Record Date who are entitled to vote on the Plan, (ii) the U.S. Trustee, and (iii) the Securities and Exchange Commission:

a.    A CD Rom or a flash drive containing the Plan, the Disclosure Statement and a copy of this Disclosure Statement Order (without exhibits);

b.    the appropriate Ballot and voting instructions;

c.    the Confirmation Hearing Notice;

d.    any supplemental solicitation materials filed with the Court; and

012554

      e.      a pre-addressed return envelope.

20.    The Debtor shall cause to be served on members of Classes 1, 3, 4, 5 and 6 only with (i) the Confirmation Hearing Notice, and (ii) the Notice of Non-Voting Status. Service of such documents under the procedures set forth in the Motion and this Order shall constitute adequate transmission of materials required under Bankruptcy Rule 3017(d).

21.    Creditors who have more than one claim within the same Class shall receive only one Solicitation Package and one Ballot for each claim.

22.    Each holder of a claim shall be entitled to vote to accept or reject the Plan in the amount of such claim as is held on the Voting Record Date.

23.    With respect to claims, and solely for purposes of voting on the Plan:

    a.      If an objection has not been filed to a claim, the amount of such claim for voting purposes shall be the non-contingent, liquidated and undisputed claim amount contained on a timely filed proof of claim or, if no timely filed proof of claim was filed, the non-contingent, liquidated and undisputed amount of such claim listed in the Debtor's schedules filed with the Court;

    b.      If a claim for which a proof of claim has been timely filed is wholly contingent, unliquidated or disputed, undetermined or unknown in amount, such claim shall be temporarily allowed in the amount of $1.00 for voting purposes only, and not for purposes of allowance or distribution;

    c.      If a claim is partially liquidated and partially unliquidated, such claim shall be allowed for voting purposes only in the liquidated amount;

    d.      If an objection to a timely filed claim is filed, such claim shall be disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection;

    e.      Proofs of claim filed for $0.00 are not entitled to vote;

    f.      Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased one or more duplicate claims within the same Class shall be provided with only one Solicitation Package and one Ballot for voting a single claim in such Class, regardless of whether the Debtor has objected to such duplicate claims;

    g.      If a claim is the subject of an amended proof of claim, the originally filed proof of claim shall be deemed superseded by the later filed amended proof of claim, regardless of whether or not the Debtor has objected to such claim, and only the amended proof of claim shall be used for the

012555

purpose of determining voting eligibility in accordance with the provisions herein;

h.    For purposes of the numerosity requirement of section 1126(c), separate claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one claim against the Debtor in such Class, and the votes related to such claims shall be treated as a single vote to accept or reject the Plan;

i.    If a claim has been disallowed by agreement of the applicable creditor or order of the Court at any time before the Voting Deadline, such claim shall also be disallowed for voting purposes; and

j.    If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, such claim shall be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution.

24.    Creditors seeking temporary allowance of their claims for voting purposes must serve the Notice Parties and file with the Court a motion seeking temporary allowance for voting purposes. Any such motion, with evidence in support thereof, must be filed no later than such date that will enable a hearing thereon to be held on or prior to the Voting Deadline. It shall be the responsibility of each creditor filing such a motion to schedule a hearing thereon to occur at or prior to the Voting Deadline.

25.    The following general voting procedures and standard assumptions are to be used in tabulating Ballots:

a.    Except to the extent the Debtor otherwise determines, or as permitted by the Court, Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the confirmation of the Plan;

b.    Claims or interests shall not be split for purposes of voting; thus, each creditor and equity security interest holder shall be deemed to have voted the full amount of its claim and interest either to accept or reject the Plan;

c.    Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

d.    Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

e.    Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

f.    Parties holding claims or equity security interests in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

012556

g.    The method of delivery of Ballots to be sent to the Balloting Agent is at the election and risk of each holder of a claim or equity security interest, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Balloting Agent or, if submitted online in accordance with the electronic voting instructions, received by the Balloting Agent through the online portal;

h.    Delivery of the original, executed Ballot to the Balloting Agent on or before the Voting Deadline is required, except where the Ballot is submitted through a customized online balloting portal. The Balloting Agent is authorized to accept Ballots either by (a) regular mail facilitated by a return envelope that the Debtor will provide with each Ballot; (b) overnight courier to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (c) personal delivery. Additionally, the Balloting Agent is authorized to accept Ballots via electronic, online transmissions through a customized online balloting portal on the Debtor's case website maintained by the Balloting Agent. Ballots submitted via online transmission through the customized online balloting portal shall be deemed to contain an original signature;

i.    Ballots submitted by facsimile, email or other means of electronic transmission, other than the online balloting portal, will not be counted;

j.    No Ballot sent to the Debtor or the Debtor's financial or legal advisors shall be accepted or counted;

k.    The Debtor expressly reserves the right to amend at any time and from time to time the terms of the Plan (subject to compliance with section 1127 and the terms of the Plan regarding modification). If the Debtor makes material changes in the terms of the Plan, the Debtor will disseminate additional solicitation materials and will extend the solicitation in each case to the extent directed by the Court;

l.    If multiple Ballots are received from or on behalf of an individual holder of a claim or equity security interest with respect to the same claims or interests prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

m.    If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence satisfactory to the Debtor to so act in such capacity;

n.    The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein or otherwise ordered by the Court, the Debtor may, in its sole discretion, reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

012557

o.   Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor in its sole discretion, which determination shall be final and binding;

p.   If a designation is requested under section 1126(e), any vote to accept or reject the Plan cast with respect to such claim or equity security interest will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

q.   Any holder of a claim or equity security interest who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

r.   Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

s.   Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

t.   No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

u.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

v.   The Ballot does not constitute, and shall not be deemed to be, a proof of claim or proof of interest or an assertion or admission of a claim or equity security interest.

26.   The Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit B**, is hereby approved.

27.   The Debtor shall serve the Confirmation Hearing Notice by no later than **four (4) business days following the entry of this Order (or as soon as reasonably practicable thereafter)**, on (i) the U.S. Trustee, (ii) counsel to the official committee of unsecured creditors (iii) the Securities and Exchange Commission, (iv) all creditors on the list of creditors and equity security holders maintained by the Balloting Agent in this chapter 11 case, and (v) those parties who requested notice pursuant to Bankruptcy Rule 2002.

012558

28.    The Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit C**, is hereby approved.

29.    The Assumption Notice, substantially in the form attached hereto as **Exhibit D**, is hereby approved.

30.    Consistent with section 1126 and Bankruptcy Rule 3017(d), Solicitation Packages shall not be distributed to holders of claims in the Non-Voting Classes (*i.e.*, Classes 1, 3, 4, 5 and 6); *provided, however*, that members of Classes 1, 3, 4, 5 and 6 shall receive the Confirmation Hearing Notice and Notice of Non-Voting Status, which includes instructions on how to obtain copies of the Solicitation Package, if so desired.

31.    To the extent that the Debtor, in its sole discretion, elects to publish the Confirmation Hearing Notice, such publication, substantially in the form of Confirmation Hearing Notice attached hereto as **Exhibit B**, is approved, and the Debtor, to the extent that it elects to publish the Confirmation Hearing Notice, shall publish the Confirmation Hearing Notice in the national edition of the *Wall Street Journal* or similar paper of national circulation on or before **December 6, 2020,** and may pay the costs of such publication.

32.    The Debtor is excused from re-mailing Solicitation Packages, the Confirmation Hearing Notice, or Notice of Non-Voting Status, as the case may be, to those entities whose addresses differ from the addresses in the claims register or the Debtor's records as of the Voting Record Date.

33.    The Debtor is authorized and empowered to take all actions and execute such other documents as may be necessary to implement the relief granted herein.

34.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

### ### END OF ORDER ###

012559

**EXHIBIT A**

**Forms of Ballot for Classes 2, 7, 8, 9, 10 and 11**

012560

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE OR TO MAKE ANY REPRESENTATION OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT**

**BALLOT FOR ACCEPTING OR REJECTING THE *FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.***

**CLASS 2 BALLOT – Frontier Secured Claim**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE BALLOT.**

This Ballot may not be used for any purpose other than for submitting a vote to accept or reject the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended or modified, the "Plan"). All capitalized terms used in this ballot (the "Ballot"), including in the voting instructions attached to this Ballot (the "Voting Instructions"), but not otherwise defined therein shall have the meaning ascribed to them in the Plan.

On _____, 2020, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an Order [Docket No. __] approving the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be modified or amended) (the "Disclosure Statement") as containing adequate information and authorized the above-captioned debtor (the "Debtor") to transmit the Disclosure Statement, Plan and this Ballot to holders of claims and equity security interests entitled to vote on the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on an impaired class if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of claims that actually vote in the class of claims voting on the Plan and more than half of the equity security interests that actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

012561

Bankruptcy Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

### BALLOTS CAST BY FACSIMILE OR E-MAIL WILL <u>NOT</u> BE COUNTED.

**This Ballot must be received by Kurtzman Carson Consultants LLC (the "<u>Balloting Agent</u>") by 5:00 p.m. prevailing Central Time, on or before January 5, 2021 (the "<u>Voting Deadline</u>"), unless the Debtor or the Bankruptcy Court extends the period during which votes will be accepted by the Debtor, in which case the term "Voting Deadline" shall mean the last time and date to which such date is extended. Please review the enclosed voting instructions in connection with casting your ballot or accept or reject the Plan.**

**Item 1. Acceptance or Rejection of the Plan**

The undersigned certifies that as of November 23, 2020 (the "<u>Record Date</u>"), the undersigned was the holder of a Class 2 Frontier Secured Claim in the aggregate outstanding amount of $_____.[2]

### <u>CHECK ONE BOX</u>

I hereby vote the above Claim to ACCEPT the Plan

I hereby vote the above Claim to REJECT the Plan

**NOTE: You must vote <u>all</u> of your Class 2 Claim <u>either</u> to accept or reject the Plan, and may <u>not</u> split such vote.**

**Item 2. Certification**

By signing this Ballot, the undersigned certifies with respect to the claim(s) identified in Item 1, above, that:

(i)  such person or entity is the holder of the aggregate amount of the Class 2 Claim set forth in Item 1 herein or is an authorized signatory, and has full power and authority to vote to accept or reject the Plan;

(ii)  such person or entity has received and reviewed a copy of the Disclosure Statement and the Plan, the Ballot and other solicitation materials and documents related thereto, and acknowledges that the solicitation of votes to accept or reject the Plan is being made solely pursuant to the statements and conditions set forth therein;

---

[2] For voting purposes only. Subject to tabulation rules.

(iii)    such person or entity has cast the same vote on every Ballot completed by such person or Entity with respect to holdings of the Class 2 Claim;

(iv)    no other Ballots with respect to the Class 2 Claim identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 2 Claim, such earlier Ballots are hereby revoked;

(v)    all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy and legal representatives of the undersigned and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

If the holder entitled to vote is a corporation, please sign in corporate name by authorized officer, or if a partnership, please sign in partnership name by authorized person.

NAME OF VOTER: _____

SIGNATURE: _____

BY: _____
(If appropriate)

TITLE: _____
(If appropriate)

ADDRESS: _____

_____

TEL. NO. (    ) _____ - _____        DATE: _____

This Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF THE PLAN, DISCLOSURE STATEMENT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT, KCC, VIA EMAIL AT HIGHLANDINFO@KCCLLC.COM AND REFERENCE "HIGHLAND CAPITAL MANAGEMENT, L.P." IN THE SUBJECT LINE OR BY TELEPHONE AT TOLL FREE: (877) 573-3984, OR INTERNATIONAL: (310) 751-1829.

**IN ORDER FOR YOUR VOTE TO COUNT, PLEASE COMPLETE, SIGN AND DATE THE BALLOT AND RETURN IT SO THAT IT IS RECEIVED BY THE BALLOTING AGENT ON OR BEFORE THE VOTING DEADLINE TO THE ADDRESS PROVIDED BELOW.**

012563

**If by first class mail, personal delivery or overnight mail, to:**

**HCMLP Ballot Processing Center**
**c/o KCC**
**222 N. Pacific Coast Highway, Suite 300**
**El Segundo, CA 90245**

---

Alternatively, you may submit your Ballot via the Balloting Agent's online portal. Please visit http://www.kccllc.net/hmlp and click on the "Submit Electronic Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique Electronic Ballot ID #:_____
Unique Electronic Ballot PIN #: _____

Each Electronic Ballot ID# is to be used solely for voting on those Claims in Item 1 Below of your electronic ballot. Please complete and submit an electronic ballot for each Electronic Ballot ID# you receive, as applicable. Parties who cast a Ballot using the Balloting Agent's online portal should NOT also submit a paper Ballot.

---

012564

## VOTING INSTRUCTIONS

The following general voting procedures and standard assumptions be used in tabulating Ballots:

1. Except to the extent the Debtor otherwise determines, or as permitted by the Court and Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the confirmation of the Plan;

2. Claims or interests shall not be split for purposes of voting; thus, each creditor and equity security interest holder shall be deemed to have voted the full amount of its claim and interest either to accept or reject the Plan;

3. Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

4. Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

5. Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

6. Parties holding claims or equity security interests in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

7. The method of delivery of Ballots to be sent to the Balloting Agent is at the election and risk of each holder of a claim or equity security interest, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Balloting Agent or, if submitted online in accordance with the electronic voting instructions, received by the Balloting Agent through the online portal;

8. Delivery of the original, executed Ballot to the Balloting Agent on or before the Voting Deadline is required, except where the Ballot is submitted through a customized online balloting portal The Balloting Agent is authorized to accept Ballots either by (a) regular mail facilitated by a return envelope that the Debtor will provide with each Ballot; overnight courier to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (c) personal delivery. Additionally, the Balloting Agent is authorized to accept Ballots via electronic, online transmissions through a customized online balloting portal on the Debtor's case website maintained by the Balloting Agent. Ballots submitted via online transmission through the customized online balloting portal shall be deemed to contain an original signature;

9. Ballots submitted by facsimile, email or other means of electronic transmission other than the online balloting portal, will not be counted.

10. No Ballot sent to the Debtor, or the Debtor's financial or legal advisors, shall be accepted or counted;

11. The Debtor expressly reserves the right to amend at any time and from time to time the terms of the Plan (subject to compliance with § 1127 and the terms of the Plan regarding modification). If the Debtor makes material changes in the terms

012565

of the Plan the Debtor will disseminate additional solicitation materials and will extend the solicitation, in each case to the extent directed by the Court;

12. If multiple Ballots are received from or on behalf of an individual holder of a claim or equity security interest with respect to the same claims or interests prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

13. If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence satisfactory to the Debtor to so act in such capacity;

14. The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein or otherwise ordered by the Court, the Debtor may, in its sole discretion, reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

15. Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor, in its sole discretion, which determination shall be final and binding;

16. If a designation is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such claim or equity security interest will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

17. Any holder of a claim or equity security interest who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

18. Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

19. Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

20. No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

21. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

012566

22.    The Ballot does not constitute, and shall not be deemed to be, a proof of claim or proof of interest or an assertion or admission of a claim or equity security interest.

012567

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE OR TO MAKE ANY REPRESENTATION OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT**

**BALLOT FOR ACCEPTING OR REJECTING THE *FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.***

**CLASS 7 BALLOT – Convenience Claims**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE BALLOT.**

This Ballot may not be used for any purpose other than for submitting a vote to accept or reject the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended or modified, the "Plan"). All capitalized terms used in this ballot (the "Ballot"), including in the voting instructions attached to this Ballot (the "Voting Instructions"), but not otherwise defined therein shall have the meaning ascribed to them in the Plan.

On _____, 2020, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an Order [Docket No. ___] approving the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be modified or amended) (the "Disclosure Statement") as containing adequate information and authorized the above-captioned debtor (the "Debtor") to transmit the Disclosure Statement, Plan and this Ballot to holders of claims and equity security interests entitled to vote on the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on an impaired class if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of claims that actually vote in the class of claims voting on the Plan and more than half of the equity security interests that actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

1

012568

Bankruptcy Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

## BALLOTS CAST BY FACSIMILE OR E-MAIL WILL <u>NOT</u> BE COUNTED.

**This Ballot must be received by Kurtzman Carson Consultants LLC (the "Balloting Agent") by 5:00 p.m. prevailing Central Time, on or before January 5, 2021 (the "<u>Voting Deadline</u>"), unless the Debtor or the Bankruptcy Court extends the period during which votes will be accepted by the Debtor, in which case the term "Voting Deadline" shall mean the last time and date to which such date is extended. Please review the enclosed voting instructions in connection with casting your ballot or accept or reject the Plan.**

**Item 1. Acceptance or Rejection of the Plan**

The undersigned certifies that as of November 23, 2020 (the "<u>Record Date</u>"), the undersigned was the holder of a Class 7 Convenience Claim in the aggregate outstanding amount of \$_____.[2]

### CHECK ONE BOX

I hereby vote the above Claim to ACCEPT the Plan

I hereby vote the above Claim to REJECT the Plan

**NOTE: You must vote <u>all</u> of your Class 7 Convenience Claim <u>either</u> to accept or reject the Plan, and may <u>not</u> split such vote.**

**Item 2. GUC Election – Optional and Voluntary Election to Receive the Treatment Provided to Class 8 General Unsecured Claims.**

If you check the box below, your Claim will receive the treatment provided to Class 8 General Unsecured Claims and you will receive (i) your Pro Rata share of the Claimant Trust Interests or (ii) such other less favorable treatment as to which you and the Claimant Trustee shall have agreed upon in writing.

If you check the box below and elect to have your Class 7 Convenience Claim treated as a Class 8 General Unsecured Claim; (i) your vote on this Ballot to accept or reject the Plan will still be tabulated as a vote in Class 7 with respect to the Plan, but your Claim will receive the treatment afforded to Class 8 General Unsecured Claims; and (ii) you will be giving up all distributions to Class 7 Convenience Class Claims in exchange for the treatment provided to Class 8 General Unsecured Claims.

I hereby elect to have my Class 7 Convenience Claim identified in Item 1 treated

---

[2] For voting purposes only. Subject to tabulation rules.

012569

as a Class 8 General Unsecured Claim for all purposes.

## Item 3. Certification

By signing this Ballot, the undersigned certifies with respect to the claim(s) identified in Item 1, above, that:

(i)　　such person or entity is the holder of the aggregate amount of the Class 7 Convenience Claim(s) set forth in Item 1 herein or is an authorized signatory, and has full power and authority to vote to accept or reject the Plan;

(ii)　　such person or entity has received and reviewed a copy of the Disclosure Statement and the Plan, the Ballot and other solicitation materials and documents related thereto, and acknowledges that the solicitation of votes to accept or reject the Plan is being made solely pursuant to the statements and conditions set forth therein;

(iii)　　such person or entity has cast the same vote on every Ballot completed by such person or Entity with respect to holdings of Class 7 Convenience Claims;

(iv)　　no other Ballots with respect to the Class 7 Convenience Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 7 Convenience Claims, such earlier Ballots are hereby revoked;

(v)　　all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy and legal representatives of the undersigned and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

If the holder entitled to vote is a corporation, please sign in corporate name by authorized officer, or if a partnership, please sign in partnership name by authorized person.

NAME OF VOTER: _____

SIGNATURE: _____

BY: _____
(If appropriate)

TITLE: _____
(If appropriate)

ADDRESS: _____

_____

TEL. NO. ( 　　 ) _____ - _____　　　DATE: _____

This Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a

012570

claim or equity interest, or the allowance of a claim or equity interest.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE
VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL
COPIES OF THE PLAN, DISCLOSURE STATEMENT OR OTHER
ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT,
KCC, VIA EMAIL AT HIGHLANDINFO@KCCLLC.COM AND REFERENCE
"HIGHLAND CAPITAL MANAGEMENT, L.P." IN THE SUBJECT LINE OR
BY TELEPHONE AT TOLL FREE: (877) 573-3984, OR INTERNATIONAL:
(310) 751-1829.

**IN ORDER FOR YOUR VOTE TO COUNT, PLEASE COMPLETE, SIGN AND DATE
THE BALLOT AND RETURN IT SO THAT IT IS RECEIVED BY THE BALLOTING
AGENT ON OR BEFORE THE VOTING DEADLINE TO THE ADDRESS PROVIDED
BELOW.**

**If by first class mail, personal delivery or overnight mail, to:**

**HCMLP Ballot Processing Center
c/o KCC
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245**

---

Alternatively, you may submit your Ballot via the Balloting Agent's online portal. Please visit
http://www.kccllc.net/hcmlp and click on the "Submit Electronic Ballot" section of the website
and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your
customized electronic Ballot:

Unique Electronic Ballot ID #:_____

Unique Electronic Ballot PIN #: _____

Each Electronic Ballot ID# is to be used solely for voting on those Claims in Item 1 Below of
your electronic ballot. Please complete and submit an electronic ballot for each Electronic Ballot
ID# you receive, as applicable. Parties who cast a Ballot using the Balloting Agent's online
portal should NOT also submit a paper Ballot.

---

012571

## VOTING INSTRUCTIONS

The following general voting procedures and standard assumptions be used in tabulating Ballots:

1. Except to the extent the Debtor otherwise determines, or as permitted by the Court and Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the confirmation of the Plan;

2. Claims or interests shall not be split for purposes of voting; thus, each creditor and equity security interest holder shall be deemed to have voted the full amount of its claim and interest either to accept or reject the Plan;

3. Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

4. Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

5. Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

6. Parties holding claims or equity security interests in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

7. The method of delivery of Ballots to be sent to the Balloting Agent is at the election and risk of each holder of a claim or equity security interest, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Balloting Agent or, if submitted online in accordance with the electronic voting instructions, received by the Balloting Agent through the online portal;

8. Delivery of the original, executed Ballot to the Balloting Agent on or before the Voting Deadline is required, except where the Ballot is submitted through a customized online balloting portal The Balloting Agent is authorized to accept Ballots either by (a) regular mail facilitated by a return envelope that the Debtor will provide with each Ballot; overnight courier to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (c) personal delivery. Additionally, the Balloting Agent is authorized to accept Ballots via electronic, online transmissions through a customized online balloting portal on the Debtor's case website maintained by the Balloting Agent. Ballots submitted via online transmission through the customized online balloting portal shall be deemed to contain an original signature;

9. Ballots submitted by facsimile, email or other means of electronic transmission other than the online balloting portal, will not be counted.

10. No Ballot sent to the Debtor, or the Debtor's financial or legal advisors, shall be accepted or counted;

11. The Debtor expressly reserves the right to amend at any time and from time to time the terms of the Plan (subject to compliance with § 1127 and the terms of the Plan regarding modification). If the Debtor makes material changes in the terms

012572

of the Plan the Debtor will disseminate additional solicitation materials and will extend the solicitation, in each case to the extent directed by the Court;

12.    If multiple Ballots are received from or on behalf of an individual holder of a claim or equity security interest with respect to the same claims or interests prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

13.    If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence satisfactory to the Debtor to so act in such capacity;

14.    The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein or otherwise ordered by the Court, the Debtor may, in its sole discretion, reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

15.    Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor, in its sole discretion, which determination shall be final and binding;

16.    If a designation is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such claim or equity security interest will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

17.    Any holder of a claim or equity security interest who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

18.    Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

19.    Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

20.    No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

21.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

012573

22.     The Ballot does not constitute, and shall not be deemed to be, a proof of claim or proof of interest or an assertion or admission of a claim or equity security interest.

012574

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
|  | ) |
| Debtor. | ) |
|  | ) |

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE OR TO MAKE ANY REPRESENTATION OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT**

**BALLOT FOR ACCEPTING OR REJECTING THE *FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.***

**CLASS 8 BALLOT – General Unsecured Claims**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE BALLOT.**

This Ballot may not be used for any purpose other than for submitting a vote to accept or reject the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended or modified, the "Plan"). All capitalized terms used in this ballot (the "Ballot"), including in the voting instructions attached to this Ballot (the "Voting Instructions"), but not otherwise defined therein shall have the meaning ascribed to them in the Plan.

On _____, 2020, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an Order [Docket No. ___] approving the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be modified or amended) (the "Disclosure Statement") as containing adequate information and authorized the above-captioned debtor (the "Debtor") to transmit the Disclosure Statement, Plan and this Ballot to holders of claims and equity security interests entitled to vote on the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on an impaired class if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of claims that actually vote in the class of claims voting on the Plan and more than half of the equity security interests that actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

012575

Bankruptcy Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**BALLOTS CAST BY FACSIMILE OR E-MAIL WILL <u>NOT</u> BE COUNTED.**

---

**This Ballot must be received by Kurtzman Carson Consultants LLC (the "<u>Balloting Agent</u>") by 5:00 p.m. prevailing Central Time, on or before January 5, 2021 (the "<u>Voting Deadline</u>"), unless the Debtor or the Bankruptcy Court extends the period during which votes will be accepted by the Debtor, in which case the term "Voting Deadline" shall mean the last time and date to which such date is extended.  Please review the enclosed voting instructions in connection with casting your ballot or accept or reject the Plan.**

---

**Item 1.  Acceptance or Rejection of the Plan**

The undersigned certifies that as of November 23, 2020 (the "<u>Record Date</u>"), the undersigned was the holder of a Class 8 General Unsecured Claim in the aggregate outstanding amount of $_____.[2]

**<u>CHECK ONE BOX</u>**

☐ I hereby vote the above Claim to ACCEPT the Plan

☐ I hereby vote the above Claim to REJECT the Plan

**NOTE:  You must vote <u>all</u> of your Class 8 General Unsecured Claim <u>either</u> to accept or reject the Plan, and may <u>not</u> split such vote.**

**Convenience Class Election – Optional and Voluntary Election to Receive the Treatment Provided Class 7 Convenience Claims.**

If your Claim is liquidated on or before the Confirmation Date, you are eligible to make the Convenience Class Election.  If you are eligible and you check the box below, your Claim will be reduced to $1,000,000 (to the extent your claim is in excess of that amount), and you will receive the treatment provided to Class 7 Convenience Claim, which is the lesser of  (a) 85% of the Allowed amount of your Claim (as reduced) or (b) your pro rata share of the Convenience Claims Cash Pool ($13,150,000).

If you check the box below and elect to have your Class 8 General Unsecured Claim treated as a Class 7 Convenience Claim; (i) your vote on this Ballot to accept or reject the Plan will still be tabulated as a vote in Class 8 with respect to the Plan, but your Claim (as reduced) will receive the treatment afforded to Class 7 Convenience Claims; and (ii) you will be giving up all distributions to Class 8 General Unsecured Claims in exchange for the treatment provided to Class 7 Convenience Claims

---

[2]  For voting purposes only.  Subject to tabulation rules.

2

012576

I hereby elect to reduce my Claim and to receive the treatment provide to a Class 7 Convenience Claim.

## Item 2.  Certification

By signing this Ballot, the undersigned certifies with respect to the claim(s) identified in Item 1, above, that:

(i)     such person or entity is the holder of the aggregate amount of the Class 8 General Unsecured Claim(s) set forth in Item 1 herein or is an authorized signatory, and has full power and authority to vote to accept or reject the Plan;

(ii)    such person or entity has received and reviewed a copy of the Disclosure Statement and the Plan, the Ballot and other solicitation materials and documents related thereto, and acknowledges that the solicitation of votes to accept or reject the Plan is being made solely pursuant to the statements and conditions set forth therein;

(iii)   such person or entity has cast the same vote on every Ballot completed by such person or Entity with respect to holdings of Class 8 General Unsecured Claims;

(iv)    no other Ballots with respect to the Class 8 General Unsecured Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 8 General Unsecured Claims, such earlier Ballots are hereby revoked;

(v)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy and legal representatives of the undersigned and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

If the holder entitled to vote is a corporation, please sign in corporate name by authorized officer, or if a partnership, please sign in partnership name by authorized person.

NAME OF VOTER:  _____

SIGNATURE:  _____

BY: _____
(If appropriate)

TITLE: _____
(If appropriate)

012577

ADDRESS: _____

_____

TEL. NO. (    ) _____ - _____        DATE: _____

This Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF THE PLAN, DISCLOSURE STATEMENT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT, KCC, VIA EMAIL AT HIGHLANDINFO@KCCLLC.COM AND REFERENCE "HIGHLAND CAPITAL MANAGEMENT, L.P." IN THE SUBJECT LINE OR BY TELEPHONE AT TOLL FREE: (877) 573-3984, OR INTERNATIONAL: (310) 751-1829.

**IN ORDER FOR YOUR VOTE TO COUNT, PLEASE COMPLETE, SIGN AND DATE THE BALLOT AND RETURN IT SO THAT IT IS RECEIVED BY THE BALLOTING AGENT ON OR BEFORE THE VOTING DEADLINE TO THE ADDRESS PROVIDED BELOW.**

**If by first class mail, personal delivery or overnight mail, to:**

**HCMLP Ballot Processing Center**
**c/o KCC**
**222 N. Pacific Coast Highway, Suite 300**
**El Segundo, CA 90245**

Alternatively, you may submit your Ballot via the Balloting Agent's online portal. Please visit http://www.kccllc.net/hcmlp and click on the "Submit Electronic Ballot" section of the website and follow the instructions to submit your Ballot.

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:

Unique Electronic Ballot ID #:_____
Unique Electronic Ballot PIN #: _____

Each Electronic Ballot ID# is to be used solely for voting on those Claims in Item 1 Below of your electronic ballot. Please complete and submit an electronic ballot for each Electronic Ballot ID# you receive, as applicable. Parties who cast a Ballot using the Balloting Agent's online portal should NOT also submit a paper Ballot.

012578

## VOTING INSTRUCTIONS

The following general voting procedures and standard assumptions be used in tabulating Ballots:

1.  Except to the extent the Debtor otherwise determines, or as permitted by the Court and Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the confirmation of the Plan;

2.  Claims or interests shall not be split for purposes of voting; thus, each creditor and equity security interest holder shall be deemed to have voted the full amount of its claim and interest either to accept or reject the Plan;

3.  Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

4.  Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

5.  Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

6.  Parties holding claims or equity security interests in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

7.  The method of delivery of Ballots to be sent to the Balloting Agent is at the election and risk of each holder of a claim or equity security interest, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Balloting Agent or, if submitted online in accordance with the electronic voting instructions, received by the Balloting Agent through the online portal;

8.  Delivery of the original, executed Ballot to the Balloting Agent on or before the Voting Deadline is required, except where the Ballot is submitted through a customized online balloting portal The Balloting Agent is authorized to accept Ballots either by (a) regular mail facilitated by a return envelope that the Debtor will provide with each Ballot; overnight courier to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (c) personal delivery. Additionally, the Balloting Agent is authorized to accept Ballots via electronic, online transmissions through a customized online balloting portal on the Debtor's case website maintained by the Balloting Agent. Ballots submitted via online transmission through the customized online balloting portal shall be deemed to contain an original signature;

9.  Ballots submitted by facsimile, email or other means of electronic transmission other than the online balloting portal, will not be counted.

10. No Ballot sent to the Debtor, or the Debtor's financial or legal advisors, shall be accepted or counted;

11. The Debtor expressly reserves the right to amend at any time and from time to time the terms of the Plan (subject to compliance with § 1127 and the terms of the Plan regarding modification). If the Debtor makes material changes in the terms

012579

of the Plan the Debtor will disseminate additional solicitation materials and will extend the solicitation, in each case to the extent directed by the Court;

12. If multiple Ballots are received from or on behalf of an individual holder of a claim or equity security interest with respect to the same claims or interests prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

13. If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence satisfactory to the Debtor to so act in such capacity;

14. The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein or otherwise ordered by the Court, the Debtor may, in its sole discretion, reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

15. Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor, in its sole discretion, which determination shall be final and binding;

16. If a designation is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such claim or equity security interest will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

17. Any holder of a claim or equity security interest who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

18. Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

19. Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

20. No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

21. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

012580

22.     The Ballot does not constitute, and shall not be deemed to be, a proof of claim or proof of interest or an assertion or admission of a claim or equity security interest.

012581

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE OR TO MAKE ANY REPRESENTATION OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT**

**BALLOT FOR ACCEPTING OR REJECTING THE *FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.***

**CLASS 9 BALLOT – Subordinated Claims**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE BALLOT.**

This Ballot may not be used for any purpose other than for submitting a vote to accept or reject the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended or modified, the "Plan"). All capitalized terms used in this ballot (the "Ballot"), including in the voting instructions attached to this Ballot (the "Voting Instructions"), but not otherwise defined therein shall have the meaning ascribed to them in the Plan.

On _____, 2020, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an Order [Docket No. ___] approving the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be modified or amended) (the "Disclosure Statement") as containing adequate information and authorized the above-captioned debtor (the "Debtor") to transmit the Disclosure Statement, Plan and this Ballot to holders of claims and equity security interests entitled to vote on the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on an impaired class if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of claims that actually vote in the class of claims voting on the Plan and more than half of the equity security interests that actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

012582

Bankruptcy Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**BALLOTS CAST BY FACSIMILE OR E-MAIL WILL <u>NOT</u> BE COUNTED.**

---

**This Ballot must be received by Kurtzman Carson Consultants LLC (the "<u>Balloting Agent</u>") by 5:00 p.m. prevailing Central Time, on or before January 5, 2021 (the "<u>Voting Deadline</u>"), unless the Debtor or the Bankruptcy Court extends the period during which votes will be accepted by the Debtor, in which case the term "Voting Deadline" shall mean the last time and date to which such date is extended.  Please review the enclosed voting instructions in connection with casting your ballot or accept or reject the Plan.**

---

**Item 1.  Acceptance or Rejection of the Plan**

The undersigned certifies that as of November 23, 2020 (the "<u>Record Date</u>"), the undersigned was the holder of a Class 9 Subordinated Claim in the aggregate outstanding amount of $_____.[2]

**<u>CHECK ONE BOX</u>**

I hereby vote the above Claim to ACCEPT the Plan

I hereby vote the above Claim to REJECT the Plan

**NOTE:  You must vote <u>all</u> of your Class 9 Subordinated Claim <u>either</u> to accept or reject the Plan, and may <u>not</u> split such vote.**

**Item 2.  Certification**

By signing this Ballot, the undersigned certifies with respect to the claim(s) identified in Item 1, above, that:

(i)      such person or entity is the holder of the aggregate amount of the Class 9 Subordinated Claim(s) set forth in Item 1 herein or is an authorized signatory, and has full power and authority to vote to accept or reject the Plan;

(ii)      such person or entity has received and reviewed a copy of the Disclosure Statement and the Plan, the Ballot and other solicitation materials and documents related thereto, and acknowledges that the solicitation of votes to accept or reject the Plan is being made solely pursuant to the statements and conditions set forth therein;

---

[2] For voting purposes only.  Subject to tabulation rules.

012583

(iii)     such person or entity has cast the same vote on every Ballot completed by such person or Entity with respect to holdings of Class 9 Subordinated Claims;

(iv)     no other Ballots with respect to the Class 9 Subordinated Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 9 Subordinated Claims, such earlier Ballots are hereby revoked;

(v)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy and legal representatives of the undersigned and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

If the holder entitled to vote is a corporation, please sign in corporate name by authorized officer, or if a partnership, please sign in partnership name by authorized person.

NAME OF VOTER:  _____

SIGNATURE:  _____

BY:  _____
<br>_____(If appropriate)

TITLE:  _____
<br>_____(If appropriate)

ADDRESS:  _____

_____

TEL. NO. (     ) _____ - _____     DATE:  _____

This Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF THE PLAN, DISCLOSURE STATEMENT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT, KCC, VIA EMAIL AT HIGHLANDINFO@KCCLLC.COM AND REFERENCE "HIGHLAND CAPITAL MANAGEMENT, L.P." IN THE SUBJECT LINE OR BY TELEPHONE AT TOLL FREE: (877) 573-3984, OR INTERNATIONAL: (310) 751-1829.

**IN ORDER FOR YOUR VOTE TO COUNT, PLEASE COMPLETE, SIGN AND DATE THE BALLOT AND RETURN IT SO THAT IT IS RECEIVED BY THE BALLOTING AGENT ON OR BEFORE THE VOTING DEADLINE TO THE ADDRESS PROVIDED BELOW.**

012584

**If by first class mail, personal delivery or overnight mail, to:**

**HCMLP Ballot Processing Center**
**c/o KCC**
**222 N. Pacific Coast Highway, Suite 300**
**El Segundo, CA 90245**

---

**Alternatively, you may submit your Ballot via the Balloting Agent's online portal.  Please visit http://www.kccllc.net/hcmlp and click on the "Submit Electronic Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique Electronic Ballot ID #:_____**
**Unique Electronic Ballot PIN #: _____**

**Each Electronic Ballot ID# is to be used solely for voting on those Claims in Item 1 Below of your electronic ballot.  Please complete and submit an electronic ballot for each Electronic Ballot ID# you receive, as applicable. Parties who cast a Ballot using the Balloting Agent's online portal should NOT also submit a paper Ballot.**

---

012585

## VOTING INSTRUCTIONS

The following general voting procedures and standard assumptions be used in tabulating Ballots:

1.  Except to the extent the Debtor otherwise determines, or as permitted by the Court and Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the confirmation of the Plan;

2.  Claims or interests shall not be split for purposes of voting; thus, each creditor and equity security interest holder shall be deemed to have voted the full amount of its claim and interest either to accept or reject the Plan;

3.  Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

4.  Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

5.  Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

6.  Parties holding claims or equity security interests in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

7.  The method of delivery of Ballots to be sent to the Balloting Agent is at the election and risk of each holder of a claim or equity security interest, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Balloting Agent or, if submitted online in accordance with the electronic voting instructions, received by the Balloting Agent through the online portal;

8.  Delivery of the original, executed Ballot to the Balloting Agent on or before the Voting Deadline is required, except where the Ballot is submitted through a customized online balloting portal The Balloting Agent is authorized to accept Ballots either by (a) regular mail facilitated by a return envelope that the Debtor will provide with each Ballot; overnight courier to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (c) personal delivery. Additionally, the Balloting Agent is authorized to accept Ballots via electronic, online transmissions through a customized online balloting portal on the Debtor's case website maintained by the Balloting Agent. Ballots submitted via online transmission through the customized online balloting portal shall be deemed to contain an original signature;

9.  Ballots submitted by facsimile, email or other means of electronic transmission other than the online balloting portal, will not be counted.

10. No Ballot sent to the Debtor, or the Debtor's financial or legal advisors, shall be accepted or counted;

11. The Debtor expressly reserves the right to amend at any time and from time to time the terms of the Plan (subject to compliance with § 1127 and the terms of the Plan regarding modification). If the Debtor makes material changes in the terms

012586

of the Plan the Debtor will disseminate additional solicitation materials and will extend the solicitation, in each case to the extent directed by the Court;

12.    If multiple Ballots are received from or on behalf of an individual holder of a claim or equity security interest with respect to the same claims or interests prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

13.    If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence satisfactory to the Debtor to so act in such capacity;

14.    The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein or otherwise ordered by the Court, the Debtor may, in its sole discretion, reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

15.    Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor, in its sole discretion, which determination shall be final and binding;

16.    If a designation is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such claim or equity security interest will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

17.    Any holder of a claim or equity security interest who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

18.    Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

19.    Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

20.    No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

21.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

012587

22.     The Ballot does not constitute, and shall not be deemed to be, a proof of claim or proof of interest or an assertion or admission of a claim or equity security interest.

012588

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE OR TO MAKE ANY REPRESENTATION OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT**

**BALLOT FOR ACCEPTING OR REJECTING THE *FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.***

**CLASS 10 BALLOT – Class B/C Limited Partnership Interests**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS CAREFULLY BEFORE COMPLETING THE BALLOT.**

This Ballot may not be used for any purpose other than for submitting a vote to accept or reject the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended or modified, the "Plan"). All capitalized terms used in this ballot (the "Ballot"), including in the voting instructions attached to this Ballot (the "Voting Instructions"), but not otherwise defined therein shall have the meaning ascribed to them in the Plan.

On _____, 2020, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an Order [Docket No. ___] approving the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be modified or amended)(the "Disclosure Statement") as containing adequate information and authorized the above-captioned debtor (the "Debtor") to transmit the Disclosure Statement, Plan and this Ballot to holders of claims and equity security interests entitled to vote on the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on an impaired class if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of claims that actually vote in the class of claims voting on the Plan and more than half of the equity security interests that actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

1

012589

Bankruptcy Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

### BALLOTS CAST BY FACSIMILE OR E-MAIL WILL <u>NOT</u> BE COUNTED.

---

**This Ballot must be received by Kurtzman Carson Consultants LLC (the "Balloting Agent") by 5:00 p.m. prevailing Central Time, on or before January 5, 2021 (the "Voting Deadline"), unless the Debtor or the Bankruptcy Court extends the period during which votes will be accepted by the Debtor, in which case the term "Voting Deadline" shall mean the last time and date to which such date is extended. Please review the enclosed voting instructions in connection with casting your ballot or accept or reject the Plan.**

---

**Item 1. Acceptance or Rejection of the Plan**

The undersigned certifies that as of November 23, 2020 (the "Record Date"), the undersigned was the holder of a Class 10 Class B/C Limited Partnership Interests in the aggregate outstanding amount of $_____.[2]

### <u>CHECK ONE BOX</u>

I hereby vote the above Interest to ACCEPT the Plan

I hereby vote the above Interest to REJECT the Plan

**NOTE: You must vote <u>all</u> of your Class 10 Class B/C Limited Partnership Interests <u>either</u> to accept or reject the Plan, and may <u>not</u> split such vote.**

**Item 2. Certification**

By signing this Ballot, the undersigned certifies with respect to the Class 10 Class B/C Limited Partnership Interests identified in Item 1, above, that:

(i)      such person or entity is the holder of the aggregate amount of the Class 10 Class B/C Limited Partnership Interests set forth in Item 1 herein or is an authorized signatory, and has full power and authority to vote to accept or reject the Plan;

(ii)     such person or entity has received and reviewed a copy of the Disclosure Statement and the Plan, the Ballot and other solicitation materials and documents related thereto, and acknowledges that the solicitation of votes to accept or reject the Plan is being made solely pursuant to the statements and conditions set forth therein;

---

[2] For voting purposes only. Subject to tabulation rules.

012590

(iii)     such person or entity has cast the same vote on every Ballot completed by such person or Entity with respect to holdings of Class 10 Class B/C Limited Partnership Interests;

(iv)     no other Ballots with respect to the Class 10 Class B/C Limited Partnership Interests identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 10 Class B/C Limited Partnership Interests, such earlier Ballots are hereby revoked;

(v)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy and legal representatives of the undersigned and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

If the holder entitled to vote is a corporation, please sign in corporate name by authorized officer, or if a partnership, please sign in partnership name by authorized person.

NAME OF VOTER: _____

SIGNATURE: _____

BY: _____
                                   (If appropriate)

TITLE: _____
                                   (If appropriate)

ADDRESS: _____

_____

TEL. NO. (     ) _____ - _____          DATE: _____

This Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF THE PLAN, DISCLOSURE STATEMENT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT, KCC, VIA EMAIL AT HIGHLANDINFO@KCCLLC.COM AND REFERENCE "HIGHLAND CAPITAL MANAGEMENT, L.P." IN THE SUBJECT LINE OR BY TELEPHONE AT TOLL FREE: (877) 573-3984, OR INTERNATIONAL: (310) 751-1829.

**IN ORDER FOR YOUR VOTE TO COUNT, PLEASE COMPLETE, SIGN AND DATE THE BALLOT AND RETURN IT SO THAT IT IS RECEIVED BY THE BALLOTING**

012591

**AGENT ON OR BEFORE THE VOTING DEADLINE TO THE ADDRESS PROVIDED BELOW.**

**If by first class mail, personal delivery or overnight mail, to:**

**HCMLP Ballot Processing Center**
**c/o KCC**
**222 N. Pacific Coast Highway, Suite 300**
**El Segundo, CA 90245**

---

**Alternatively, you may submit your Ballot via the Balloting Agent's online portal.  Please visit http://www.kccllc.net/hmlp and click on the "Submit Electronic Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

Unique Electronic Ballot ID #:_____

Unique Electronic Ballot PIN #: _____

**Each Electronic Ballot ID# is to be used solely for voting on those Interests in Item 1 Below of your electronic ballot.  Please complete and submit an electronic ballot for each Electronic Ballot ID# you receive, as applicable. Parties who cast a Ballot using the Balloting Agent's online portal should NOT also submit a paper Ballot.**

---

012592

## VOTING INSTRUCTIONS

The following general voting procedures and standard assumptions be used in tabulating Ballots:

1.  Except to the extent the Debtor otherwise determines, or as permitted by the Court and Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the confirmation of the Plan;

2.  Claims or interests shall not be split for purposes of voting; thus, each creditor and equity security interest holder shall be deemed to have voted the full amount of its claim and interest either to accept or reject the Plan;

3.  Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

4.  Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

5.  Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

6.  Parties holding claims or equity security interests in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

7.  The method of delivery of Ballots to be sent to the Balloting Agent is at the election and risk of each holder of a claim or equity security interest, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Balloting Agent or, if submitted online in accordance with the electronic voting instructions, received by the Balloting Agent through the online portal;

8.  Delivery of the original, executed Ballot to the Balloting Agent on or before the Voting Deadline is required, except where the Ballot is submitted through a customized online balloting portal The Balloting Agent is authorized to accept Ballots either by (a) regular mail facilitated by a return envelope that the Debtor will provide with each Ballot; overnight courier to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (c) personal delivery. Additionally, the Balloting Agent is authorized to accept Ballots via electronic, online transmissions through a customized online balloting portal on the Debtor's case website maintained by the Balloting Agent. Ballots submitted via online transmission through the customized online balloting portal shall be deemed to contain an original signature;

9.  Ballots submitted by facsimile, email or other means of electronic transmission other than the online balloting portal, will not be counted.

10. No Ballot sent to the Debtor, or the Debtor's financial or legal advisors, shall be accepted or counted;

11. The Debtor expressly reserves the right to amend at any time and from time to time the terms of the Plan (subject to compliance with § 1127 and the terms of the Plan regarding modification). If the Debtor makes material changes in the terms

012593

of the Plan the Debtor will disseminate additional solicitation materials and will extend the solicitation, in each case to the extent directed by the Court;

12. If multiple Ballots are received from or on behalf of an individual holder of a claim or equity security interest with respect to the same claims or interests prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

13. If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence satisfactory to the Debtor to so act in such capacity;

14. The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein or otherwise ordered by the Court, the Debtor may, in its sole discretion, reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

15. Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor, in its sole discretion, which determination shall be final and binding;

16. If a designation is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such claim or equity security interest will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

17. Any holder of a claim or equity security interest who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

18. Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

19. Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

20. No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

21. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

012594

22.     The Ballot does not constitute, and shall not be deemed to be, a proof of claim or proof of interest or an assertion or admission of a claim or equity security interest.

012595

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE
OR TO MAKE ANY REPRESENTATION OTHER THAN WHAT IS CONTAINED IN
THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS
AUTHORIZED BY THE BANKRUPTCY COURT**

**BALLOT FOR ACCEPTING OR REJECTING THE *FIFTH AMENDED PLAN OF
REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.***

**CLASS 11 BALLOT – Class A Limited Partnership Interests**

**PLEASE READ AND FOLLOW THE ENCLOSED VOTING INSTRUCTIONS
CAREFULLY BEFORE COMPLETING THE BALLOT.**

This Ballot may not be used for any purpose other than for submitting a vote to accept or reject the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (as may be amended or modified, the "Plan"). All capitalized terms used in this ballot (the "Ballot"), including in the voting instructions attached to this Ballot (the "Voting Instructions"), but not otherwise defined therein shall have the meaning ascribed to them in the Plan.

On _____, 2020, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an Order [Docket No. ___] approving the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (as may be modified or amended)(the "Disclosure Statement") as containing adequate information and authorized the above-captioned debtor (the "Debtor") to transmit the Disclosure Statement, Plan and this Ballot to holders of claims and equity security interests entitled to vote on the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on an impaired class if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of claims that actually vote in the class of claims voting on the Plan and more than half of the equity security interests that actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

012596

Bankruptcy Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**BALLOTS CAST BY FACSIMILE OR E-MAIL WILL <u>NOT</u> BE COUNTED.**

---

**This Ballot must be received by Kurtzman Carson Consultants LLC (the "<u>Balloting Agent</u>") by 5:00 p.m. prevailing Central Time, on or before January 5, 2021 (the "<u>Voting Deadline</u>"), unless the Debtor or the Bankruptcy Court extends the period during which votes will be accepted by the Debtor, in which case the term "Voting Deadline" shall mean the last time and date to which such date is extended. Please review the enclosed voting instructions in connection with casting your ballot or accept or reject the Plan.**

---

**Item 1. Acceptance or Rejection of the Plan**

The undersigned certifies that as of November 23, 2020 (the "<u>Record Date</u>"), the undersigned was the holder of a Class 11 A Limited Partnership Interests in the aggregate outstanding amount of $_____.[2]

**<u>CHECK ONE BOX</u>**

I hereby vote the above Interest to ACCEPT the Plan

I hereby vote the above Interest to REJECT the Plan

**NOTE: You must vote <u>all</u> of your Class 11 Class A Limited Partnership Interests <u>either</u> to accept or reject the Plan, and may <u>not</u> split such vote.**

**Item 2. Certification**

By signing this Ballot, the undersigned certifies with respect to the Class 11 Class A Limited Partnership Interests identified in Item 1, above, that:

(i)     such person or entity is the holder of the aggregate amount of the Class 11 Class A Limited Partnership Interests set forth in Item 1 herein or is an authorized signatory, and has full power and authority to vote to accept or reject the Plan;

(ii)     such person or entity has received and reviewed a copy of the Disclosure Statement and the Plan, the Ballot and other solicitation materials and documents related thereto, and acknowledges that the solicitation of votes to accept or reject the Plan is being made solely pursuant to the statements and conditions set forth therein;

---

[2] For voting purposes only. Subject to tabulation rules.

012597

(iii)     such person or entity has cast the same vote on every Ballot completed by such person or Entity with respect to holdings of Class 11 Class A Limited Partnership Interests;

(iv)     no other Ballots with respect to the Class 11 Class A Limited Partnership Interests identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 11 Class A Limited Partnership Interests such earlier Ballots are hereby revoked;

(v)     all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy and legal representatives of the undersigned and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

If the holder entitled to vote is a corporation, please sign in corporate name by authorized officer, or if a partnership, please sign in partnership name by authorized person.

NAME OF VOTER:  _____

SIGNATURE:  _____

BY:  _____
(If appropriate)

TITLE:  _____
(If appropriate)

ADDRESS:  _____

_____

TEL. NO. (     ) _____ - _____     DATE: _____

This Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE
VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL
COPIES OF THE PLAN, DISCLOSURE STATEMENT OR OTHER
ENCLOSED MATERIALS, PLEASE CONTACT THE BALLOTING AGENT,
KCC, VIA EMAIL AT HIGHLANDINFO@KCCLLC.COM AND REFERENCE
"HIGHLAND CAPITAL MANAGEMENT, L.P." IN THE SUBJECT LINE OR
BY TELEPHONE AT TOLL FREE: (877) 573-3984, OR INTERNATIONAL:
(310) 751-1829.

**IN ORDER FOR YOUR VOTE TO COUNT, PLEASE COMPLETE, SIGN AND DATE
THE BALLOT AND RETURN IT SO THAT IT IS RECEIVED BY THE BALLOTING
AGENT ON OR BEFORE THE VOTING DEADLINE TO THE ADDRESS PROVIDED
BELOW.**

012598

**If by first class mail, personal delivery or overnight mail, to:**

**HCMLP Ballot Processing Center**
**c/o KCC**
**222 N. Pacific Coast Highway, Suite 300**
**El Segundo, CA 90245**

---

**Alternatively, you may submit your Ballot via the Balloting Agent's online
portal. Please visit http://www.kccllc.net/hcmlp and click on the "Submit
Electronic Ballot" section of the website and follow the instructions to submit
your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve
and submit your customized electronic Ballot:**

**Unique Electronic Ballot ID #:_____**
**Unique Electronic Ballot PIN #: _____**

**Each Electronic Ballot ID# is to be used solely for voting on those Interests in
Item 1 Below of your electronic ballot. Please complete and submit an
electronic ballot for each Electronic Ballot ID# you receive, as applicable.
Parties who cast a Ballot using the Balloting Agent's online portal should
NOT also submit a paper Ballot.**

---

012599

## <u>VOTING INSTRUCTIONS</u>

The following general voting procedures and standard assumptions be used in tabulating Ballots:

1.  Except to the extent the Debtor otherwise determines, or as permitted by the Court and Ballots received after the Voting Deadline will not be accepted or counted by the Debtor in connection with the confirmation of the Plan;

2.  Claims or interests shall not be split for purposes of voting; thus, each creditor and equity security interest holder shall be deemed to have voted the full amount of its claim and interest either to accept or reject the Plan;

3.  Any executed Ballot which does not indicate an acceptance or rejection shall not be counted;

4.  Any executed Ballot which indicates both an acceptance and rejection of the Plan shall not be counted;

5.  Votes cast pursuant to a Ballot that is not signed or does not contain an original signature shall not be counted, unless the Court orders otherwise;

6.  Parties holding claims or equity security interests in more than one Class under the Plan may receive more than one Ballot coded for each different Class;

7.  The method of delivery of Ballots to be sent to the Balloting Agent is at the election and risk of each holder of a claim or equity security interest, but, except as otherwise provided in the Disclosure Statement, such delivery will be deemed made only when the original, executed Ballot is actually received by the Balloting Agent or, if submitted online in accordance with the electronic voting instructions, received by the Balloting Agent through the online portal;

8.  Delivery of the original, executed Ballot to the Balloting Agent on or before the Voting Deadline is required, except where the Ballot is submitted through a customized online balloting portal The Balloting Agent is authorized to accept Ballots either by (a) regular mail facilitated by a return envelope that the Debtor will provide with each Ballot; overnight courier to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (c) personal delivery. Additionally, the Balloting Agent is authorized to accept Ballots via electronic, online transmissions through a customized online balloting portal on the Debtor's case website maintained by the Balloting Agent. Ballots submitted via online transmission through the customized online balloting portal shall be deemed to contain an original signature;

9.  Ballots submitted by facsimile, email or other means of electronic transmission other than the online balloting portal, will not be counted.

10. No Ballot sent to the Debtor, or the Debtor's financial or legal advisors, shall be accepted or counted;

11. The Debtor expressly reserves the right to amend at any time and from time to time the terms of the Plan (subject to compliance with § 1127 and the terms of the Plan regarding modification). If the Debtor makes material changes in the terms

012600

of the Plan the Debtor will disseminate additional solicitation materials and will extend the solicitation, in each case to the extent directed by the Court;

12.    If multiple Ballots are received from or on behalf of an individual holder of a claim or equity security interest with respect to the same claims or interests prior to the Voting Deadline, the last properly completed Ballot timely received will be deemed to reflect the voter's intent and to supersede and revoke any prior Ballot;

13.    If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other person acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, if requested by the Debtor, must submit proper evidence satisfactory to the Debtor to so act in such capacity;

14.    The Debtor, in its sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein or otherwise ordered by the Court, the Debtor may, in its sole discretion, reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan;

15.    Unless otherwise ordered by the Court, all questions as to the validity, eligibility (including time of receipt) and revocation or withdrawal of Ballots will be determined by the Debtor, in its sole discretion, which determination shall be final and binding;

16.    If a designation is requested under § 1126(e), any vote to accept or reject the Plan cast with respect to such claim or equity security interest will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Court orders otherwise;

17.    Any holder of a claim or equity security interest who has delivered a valid Ballot voting on the Plan may withdraw such vote solely in accordance with Bankruptcy Rule 3018(a);

18.    Unless waived or as otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Voting Deadline, and unless otherwise ordered by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not been cured or waived by the Voting Deadline) will not be counted;

19.    Neither the Debtor, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots, nor will any of them incur any liability for failure to provide such notification;

20.    No fees or commissions or other remuneration will be payable to any broker, dealer or other person for soliciting Ballots to accept the Plan;

21.    The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan; and

012601

22.     The Ballot does not constitute, and shall not be deemed to be, a proof of claim or proof of interest or an assertion or admission of a claim or equity security interest.

012602

**<u>EXHIBIT B</u>**

**Confirmation Hearing Notice**

012603

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

### NOTICE OF: (I) ENTRY OF ORDER APPROVING DISCLOSURE STATEMENT; (II) HEARING TO CONFIRM PLAN; AND (III ) RELATED IMPORTANT DATES[2]

On [•], 2020, the United States Bankruptcy Court for the Northern District of Texas (the "<u>Bankruptcy Court</u>") entered its *Order (a) Approving the Adequacy of the Disclosure Statement; (b) Scheduling A Hearing to Confirm the Fifth Amended Plan of Reorganization; (c) Establishing Deadline for Filing Objections to Confirmation of Plan; (d) Approving Form of Ballots, Voting Deadline and Solicitation Procedures; and (e) Approving Form and Manner of Notice* (the "<u>Disclosure Statement Order</u>"). The Disclosure Statement Order approved the *Disclosure Statement for the Ffith Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "<u>Disclosure Statement</u>"), as containing adequate information required

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2]  Capitalized terms have the meanings given to them in the Plan.

012604

under section 1125(a) of the Bankruptcy Code, and authorized the Debtor to solicit acceptances of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Plan").

**HEARING TO CONFIRM PLAN**.  A hearing to confirm the Plan (the "Confirmation Hearing") will commence on **January 13, 2021, at 9:30 a.m., prevailing Central Time**, before the Bankruptcy Court. The Confirmation Hearing may be continued from time to time by announcing such continuance in open court or otherwise, without further notice to parties in interest.  The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing.

**PLAN OBJECTION DEADLINE**.  The Bankruptcy Court has established **January 5, 2021, at 5:00 p.m., prevailing Central Time**, as the last date and time for filing and serving objections to the confirmation of the Plan (the "Plan Objection Deadline").  All objections must state with particularity the legal and factual grounds for such objection.

In order to be considered by the Bankruptcy Court, objections, if any, must:  (i) be in writing; (ii) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Northern District of Texas; (iii) be filed with the United States Bankruptcy Court for the Northern District of Texas; and (iv) be served upon by the following parties: (a) counsel for the Debtor, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA  90067, Attn: Jeffrey N. Pomerantz, Ira D. Kharasch, and Gregory V. Demo, Emails: jpomerantz@pszjlaw.com, ikharasch@pszjlaw.com, gdemo@pszjlaw.com; (b) counsel for the Debtor, Hayward & Associates PLLC, 10501 N. Central Expy, Ste. 106, Dallas, Texas 75231, Attn: Melissa S. Hayward and Zachery Z. Annable, Emails: ZAnnable@HaywardFirm.com, MHayward@HaywardFirm.com; (c) counsel to the official committee of unsecured creditors, Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, Attn: Matthew A. Clemente and Alyssa Russell, Emails: mclemente@sidley.com, Alyssa.russell@sidley.com; and (d) counsel for the Office of the United States Trustee, U.S. Department of Justice, Region 6: Northern District of Texas, Office of The United States Trustee, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, TX  75242, Attn: Lisa L. Lambert, Emails: Email: Lisa.L.Lambert@usdoj.gov (collectively, the "Notice Parties").

**VOTING RECORD DATE**.  **November 23, 2020**, is the record date for purposes of determining which parties are entitled to vote on the Plan.

**VOTING DEADLINE**.  **January 5, 2021** (the "Voting Deadline"), is the deadline for casting a ballot ("Ballot") to accept or reject the Plan.  All Ballots accepting or rejecting the Plan must be received by the Notice and Balloting Agent by 5:00 p.m., prevailing Central Time, on the Voting Deadline at the following address, whether by First Class Mail, hand delivery, or overnight courier: HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245.  If you require a Ballot, or if your Ballot is lost, damaged or destroyed, contact the Notice and Balloting Agent to obtain a replacement Ballot.

**RULE 3018 MOTION DEADLINE AND HEARING**.  It shall be the responsibility of each party who files a motion for an order pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of a claim for voting purposes to (a) file such motion with evidence in support thereof by no later than **January 5, 2021**, (b) schedule a hearing on such motion, and (c) schedule the hearing on or prior to the Confirmation Hearing.

012605

Dated: _____, 2020                  **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:      jpomerantz@pszjlaw.com
            ikharasch@pszjlaw.com
            gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

---

**If you require additional information, you may contact the Debtor's Solicitation Agent, KCC, by calling 877-573-3984 (U.S. and Canada) or 310-751-1829 (International), by email at HighlandInfo@kccllc.com, or through the case website: http://www.kccllc.net/HCMLP.**

---

012606

**EXHIBIT C**

**Notice of Non-Voting Status**

012607

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

### NOTICE OF NON-VOTING STATUS WITH RESPECT TO
### UNIMPAIRED CLASSES DEEMED TO ACCEPT THE PLAN [2]

TO:  ALL HOLDERS OF CLAIMS IN CLASS 1 (JEFFERIES SECURED CLAIM), CLASS 3 (OTHER SECURED CLAIMS); CLASS 4 (PRIORITY NON-TAX CLAIMS); CLASS 5 (RETAINED EMPLOYEE CLAIMS); AND CLASS 6 (PTO CLAIMS)

On [•], 2020, the United States Bankruptcy Court for the Northern District of Texas (the "<u>Bankruptcy Court</u>") entered its *Order (A) Approving the Adequacy of the Disclosure Statement; (B) Scheduling a Hearing to Confirm the Fifth Amended Plan of Reorganization; (C) Establishing Deadline for Filing Objections to Confirmation of Plan; (D) Approving Form of*

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2]  Capitalized terms not defined herein shall have the same meaning as ascribed in the Plan.

012608

*Ballots, Voting Deadline and Solicitation Procedures; and (E) Approving Form and Manner of Notice* (the "Disclosure Statement Order"). The Disclosure Statement Order approved the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Disclosure Statement"), as containing adequate information required under section 1125(a) of the Bankruptcy Code, and authorized the Debtor to solicit acceptances of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Plan").

In accordance with the terms of the Plan and the Bankruptcy Code, holders of claims in Classes 1, 3, 4, 5 and 6 are unimpaired under § 1124 of the Bankruptcy Code and, therefore, pursuant to § 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan and are not entitled to vote on the Plan. You have been sent this notice because you have been identified as a holder of a claim in Class 1, 3, 4, 5 or 6. This notice and the Confirmation Hearing Notice are provided to you for informational purposes only.

If you have any questions regarding the status of your claim or wish to obtain additional information, including a copy of the Plan and Disclosure Statement free of charge, you may contact KCC, via email at HighlandInfo@kccllc.com and reference "Highland Capital Management, L.P." in the subject line or by telephone at toll free: (877) 573-3984, or international: (310) 751-1829. You may also obtain copies of pleadings filed in the Debtor's case for a fee via PACER at pacer.uscourts.gov.

Alternatively, you can obtain a copy of these documents by contacting counsel for the Debtor (a) by e-mail, at gdemo@pszjlaw.com, (b) by telephone, by contacting Gregory Demo at (212) 561-7700, or (c) by mail, at Pachulski Stang Ziehl & Jones LLP, Attn: Gregory Demo, 780 Third Avenue, 34th Floor, New York, NY 10017. Please specify whether you would like to receive copies of these documents by (i) **email transmission** (in which case, please include your e-mail address), (ii) on a **CD-ROM or flash drive** delivered by return mail, or (iii) in **paper copies** delivered by return mail.

012609

Dated: _____, 2020

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:      jpomerantz@pszjlaw.com
            ikharasch@pszjlaw.com
            gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

012610

**EXHIBIT D**

**Form of Notice of Assumption of Executory Contracts and Unexpired Leases**

012611

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NOTICE OF (I) EXECUTORY CONTRACTS
AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED BY THE
DEBTOR PURSUANT TO THE FIFTH AMENDED PLAN, (III) CURE AMOUNTS,
IF ANY, AND (III) RELATED PROCEDURES IN CONNECTION THEREWITH**

**PLEASE TAKE NOTICE THAT** on _____, 2020, the United States Bankruptcy
Court for the Northern District of Texas (the "<u>Bankruptcy Court</u>") entered an order [Docket No.
__] (the "<u>Disclosure Statement Order</u>") that, among other things: (a) approved the *Disclosure
Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*
(the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125(a)

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service
address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

012612

of the title 11 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>"); and (b) authorized the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>") to solicit acceptances of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] (the "<u>Plan</u>").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and related voting and objection procedures (the "<u>Confirmation Hearing</u>") will commence on January 13, 2021 at 9:30 a.m. prevailing Central Time, before the Honorable Stacey G. C. Jernigan, in the United States Bankruptcy Court for the Northern District of Texas (Dallas Division), located at Earle Cabell Federal Building, 1100 Commerce Street, 14th Floor, Courtroom No. 1, Dallas, TX 75242-1496.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtor's records reflect that you are a party to a contract that will be assumed by the Debtor or, alternatively, assumed by the Debtor and assigned to and assignee. Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtor is proposing to assume, or alternatively assume and assign, your Executory Contract(s) and Unexpired Lease(s), listed in **Schedule A** attached hereto to which you are a party.[3]

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption/assignment. Accordingly, the Debtor has conducted a thorough review of its books and records and has determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in the table on **Schedule A** attached hereto. Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtor believes that there is no cure amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified on **Schedule A** attached hereto will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtor in Cash on the Effective Date or as soon as reasonably practicable thereafter. In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and approving the assumption. If an objection to the proposed assumption or related cure amount is

---

[2]  Capitalized terms not defined herein shall have the same meaning as ascribed in the Plan.

[3]  Nothing contained in the Plan or the Debtor's schedule of assets and liabilities shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, or assumption and assignment, that the Debtor or the Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement. Further, the Debtor expressly reserves the right to remove any Executory Contract or Unexpired Lease from assumption or assumption and assignment by the Debtor and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan.

012613

sustained by the Court, however, the Debtor may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any assumption and/or assignment of an Executory Contract or Unexpired Lease as contemplated in the Plan Supplement) is January 5, 2021, at 5:00 p.m., prevailing Central Time (the "Confirmation Objection Deadline"). Any objection to the Plan must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Northern District of Texas; (c) state, with particularity, the name and address of the objecting party, the basis and nature of any objection to the Plan, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the **Confirmation Objection Deadline**.

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption and/or assignment of the Executory Contract(s) and Unexpired Lease(s) proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the first omnibus hearing following the Confirmation Hearing (or such other date as fixed by the Court).

> **PLEASE TAKE FURTHER NOTICE THAT ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT FAILS TO OBJECT TIMELY TO EITHER THE PROPOSED ASSUMPTION AND/OR ASSIGNMENT OF SUCH CONTRACT OR LEASE OR THE CURE AMOUNT WILL BE DEEMED TO HAVE ASSENTED TO SUCH ASSUMPTION AND/OR ASSIGNMENT AND CURE AMOUNT.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION AND/OR ASSIGNMENT OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE OF THE DEBTOR OR REORGANIZED DEBTOR ASSUMES OR ASSIGNS SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement Order, Disclosure Statement, the Plan, the Plan Supplement, or related documents, you may: (a) access the Debtor's restructuring website at http://www.kccllc.net/hcmlp; (b) write to HCMLP Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; (c) call toll free: (877) 573-3984 or international: (310) 751-1829 and request to speak with a member of the Solicitation Group; or (d) email HighlandInfo@kccllc.com and reference "Highland" in the subject line. You may also

012614

obtain copies of any pleadings filed in this case for a fee via PACER at: pacer.uscourts.gov.

     Alternatively, you can obtain a copy of these documents by contacting counsel for the Debtor (a) by e-mail, at gdemo@pszjlaw.com, (b) by telephone, by contacting Gregory Demo at (212) 561-7700, or (c) by mail, at Pachulski Stang Ziehl & Jones LLP, Attn: Gregory Demo, 780 Third Avenue, 34th Floor, New York, NY 10017. Please specify whether you would like to receive copies of these documents by (i) **email transmission** (in which case, please include your e-mail address), (ii) on a **CD-ROM or flash drive** delivered by return mail, or (iii) in **paper copies** delivered by return mail.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

---

Dated: _____, 2020

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:    jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

012615

**Schedule A**

**Schedule of Assumed Contracts and Leases and Proposed Cure Cost**

| Debtor | Counterparty | Description of Assumed Contracts or Leases | Cure Cost | Proposed Assignee of Contract or Lease |
|---|---|---|---|---|
|  |  |  |  |  |

1

012617

# EXHIBIT MMMMMM

Case 19-34054-sgj11 Doc 1824-38 Filed 07/16/2021 Entered 07/16/2021 00:00:00 Page 1 of 12 of
Case 3:21-cv-00538-N Document 26-47 Filed 06/09/21 Page 119 of 146 PageID 15546
Docket #0854 Date Filed: 07/16/2020



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed July 16, 2020

**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| | § | **Case No. 19-34054** |
| HIGHLAND CAPITAL MANAGEMENT, | § | **Chapter 11** |
| L.P., | § | |
| | § | **Re: Docket No. 774** |
| Debtor. | § | |

### ORDER APPROVING DEBTOR'S MOTION UNDER
### BANKRUPTCY CODE SECTIONS 105(a) AND 363(b)
### AUTHORIZING RETENTION OF JAMES P. SEERY, JR., AS
### CHIEF EXECUTIVE OFFICER, CHIEF RESTRUCTURING OFFICER, AND
### FOREIGN REPRESENTATIVE NUNC PRO TUNC TO MARCH 15, 2020

Upon the *Debtor's Motion under Bankruptcy Code Sections 105(a) and 363(b) for Authorization to Retain James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer and Foreign Representative Nunc Pro Tunc To March 15, 2020* (the "Motion"),[1] and the

---

[1] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Motion.



Court finding that: (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334; (ii) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); (iv) due and sufficient notice of the Motion has

been given; (v) entry into the Agreement was an exercise of the Debtor's sound business

judgment; and (vi) it appearing that the relief requested in the Motion is necessary and in the best

interests of the Debtor's estate and creditors; and good and sufficient cause appearing therefor, it

is hereby

**ORDERED, ADJUDGED, and DECREED** that:

1.      The Motion is **GRANTED**.

2.      Pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, the Agreement

attached hereto as **Exhibit 1** and all terms and conditions thereof are approved, *nunc pro tunc* to

March 15, 2020.

3.      The Debtor is hereby authorized to enter into and perform under the Agreement.

4.      The Debtor is authorized to indemnify Mr. Seery pursuant to the terms of the

Agreement.  Mr. Seery is also entitled to any indemnification or other similar provisions under

the Debtor's existing or future insurance policies, including any policy tails obtained (or which

may be obtained in the future), by the Debtor.  The Debtor and Strand are authorized to enter into

any agreements necessary to execute or implement the transactions described in this paragraph.

For avoidance of doubt and notwithstanding anything to the contrary in this Order, Mr. Seery

shall be entitled to any state law indemnity protections to which he may be entitled under

applicable law.

5.      No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

6.      Notwithstanding anything in the Motion, the Agreement or the Order to the contrary, the Agreement shall be deemed terminated upon the effective date of a confirmed plan of reorganization unless such plan provides otherwise.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation and/or implementation of this Order.

9.      The Foreign Representative Order is hereby amended to substitute James P. Seery, Jr., as the chief executive officer, in place of Bradley S. Sharp, as the Debtor's Foreign Representative, Bermuda Foreign Representative and Cayman Foreign Representative.  All other provisions of the Foreign Representative Order shall remain in full force and effect.

### ###END OF ORDER###

DOCS_SF:103156.19 36027/002

012621

# EXHIBIT 1

**Engagement Agreement**

012622

June 23, 2020

CONFIDENTIAL

The Board of Directors of Strand Advisors, Inc.
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201


Re:    Highland Capital Management L.P. (the "Company")

Dear Fellow Board Members:

This letter agreement ("Agreement") sets forth the terms and conditions of the engagement of the
undersigned James P. Seery, Jr. ("I", "me" or "my"), as Chief Executive Officer ("CEO") and
Chief Restructuring Officer ("CRO"), effective as of March 15, 2020 (the "Commencement Date
"), by the Company and its affiliates to perform financial advisory services as detailed below.

I appreciate the trust you have placed in me by asking me to assume these roles and thank you
for the opportunity to continue to work with you to restructure the Company.

Roles:

I will serve as the CEO and CRO of the Company during its Chapter 11 bankruptcy case (the "
Bankruptcy Case") currently pending in the United States Bankruptcy Court for the Northern
District of Texas (the "Bankruptcy Court").

In those roles, I will be responsible for overall management of the business of the Company in
Chapter 11 including, directing the reorganization and restructuring of the Company,
monetization of assets, resolution of claims, development and negotiation of a plan of
reorganization or liquidation, and implementation of such a plan.

My direct reports will include the individuals at the Company that currently report to the Board
of Directors of Strand Advisors, Inc. (the "Board") or such other individuals employed by the
Company as I determine should report to directly to me.  In the event that the Board determines
to restructure the reporting lines or functions of the Company, my direct reports will be amended
in accordance with the Board approved restructuring.

At all times, I will remain a full member of the Board entitled to vote on all matters other than
those on which I am conflicted.

I will devote as much time to this engagement as I determine is required to execute my responsibilities as CEO and CRO. I will have no specific on-site requirements in Dallas, but will be on site as much as I determine is necessary to execute my responsibilities as CEO and CRO, consistent with Covid-19 orders applicable to Dallas and New York City.

Limitations on Services

My services under this engagement are limited to those specifically noted in this Agreement and do not include legal, accounting, or tax-related assistance or advisory services. For the avoidance of doubt, I am not providing any legal services in connection with this engagement and will have not any duties as a lawyer to the Company, the Board, or any of the Company's employees. The accuracy and completeness of all information submitted to me by the Company are the sole responsibility of the Company, and I will be entitled to rely on such information without independent investigation or verification.

In my role as CEO and CRO, I will act as an independent professional contractor to the Company and will not be an employee of the Company. I will provide and pay for my own benefits, including medical benefits, by J.P Seery & Co. LLC or otherwise.

Fees and Expenses:

In consideration of my acceptance of this engagement and performance of the services pursuant to this Agreement, the Company shall pay the following:

1. Compensation for Services:
   a. Base Compensation: As compensation for my services as CEO and CRO of the Company, the Company shall pay me $150,000.00 per calendar month ("Base Compensation"). Base Compensation shall be due and payable at the start of each calendar month. Consistent with current Board compensation practice, invoices rendered by me to the Company are due and payable by the Company on receipt. Payment of the Base Compensation will be retroactive to March 15, 2020.
   b. Bonus Compensation/Restructuring Fee:
      i. The Company has agreed to pay me a restructuring fee upon confirmation of either a Case Resolution Plan or a Monetization Vehicle Plan in each case as defined below (the "Restructuring Fee").
      ii. Case Resolution Restructuring Plan
         1. On confirmation of any plan or reorganization or liquidation based on resolution of a material amount of the outstanding claims and their respective treatment, even if such plan includes (x) a debtor/creditor trust or similar monetization and claims resolution vehicle, (y) post-confirmation litigation of certain of the claims, and (z) post-confirmation monetization of debtor assets (a "Case Resolution Plan"):
            a. $1,000,000 on confirmation of the Case Resolution Plan;
            b. $500,000 on the effective date of the Case Resolution Plan; and
            c. $750,000 on completion of cash or property distributions to creditors as contemplated by the Case Resolution Plan.

012624

      iii.  Debtor/Creditor Monetization Vehicle Restructuring Fee:
          1.  On confirmation of any plan or reorganization or liquidation based on a debtor/creditor trust or similar asset monetization and claims resolution vehicle that does not include agreement among the debtor and creditors on a material amount of the outstanding claims and their respective treatment at confirmation (a "Monetization Vehicle Plan"):
              a.  $500,000 on confirmation of the Monetization Vehicle Plan;
              b.  $250,000 on the effective date of the Monetization Vehicle Plan; and
              c.  A contingent restructuring fee to be determined by the board or oversight committee installed to oversee the implementation of any Monetization Vehicle Plan based on the CEO/CRO (or acting as trustee) based upon performance under the plan after all material distributions under the Monetization Vehicle Plan are made.

2. <u>Out-of-Pocket Expenses</u>:  In addition to the Base and Bonus Compensation, I shall be entitled to reimbursement for actual and reasonable out-of-pocket expenses ("Expenses") incurred in connection with the provision of services hereunder.  Expenses will be billed along with Base Compensation and shall be paid by the Company at the same time. Expenses will be generally consistent with expenses incurred to date as a member of the Board.

<u>Bankruptcy Court Approval</u>

Notwithstanding anything herein to the contrary, I understand that this Agreement is contingent, in all respects, on the approval of the Bankruptcy Court.  I also understand that the Company will seek approval of this Agreement in stages and that the Company will first seek approval of my retention as CEO and CRO and the payment of the Base Compensation and will defer seeking Bankruptcy Court approval of the Restructuring Fee until there have been further developments in the Bankruptcy Case.

<u>Conflicts and Other Engagements</u>

I am not aware of any potential conflicts of interest based on my understanding of the various parties involved in this matter to date.

The Company is aware that this engagement is not an exclusive engagement of my time, and that I have and will continue to have other business engagements and investments unrelated to the Company.  Nothing in this Agreement or otherwise precludes me from representing or working with or for any other person or entity in matters not directly related to the services being provided to the Company under this Agreement.  However, I will not take on any engagements directly adverse to the Company during the term of this engagement.

<u>Privilege</u>

I understand that in the course of this engagement, I may become party to or my services may become part of work product of legal counsel to the Company (the Company's in-house and outside counsel are collectively referred to as "Counsel"), and all communications between Counsel and me relating to this engagement shall be protected from disclosure to third parties under the attorney work product doctrine and/or the attorney-client privilege, and, therefore, shall be treated by me as privileged and confidential. I further understand that the Company has the exclusive right to waive the attorney-client privilege, and Counsel has the exclusive right to waive the protections afforded under the attorney work-product doctrine.

Termination of Engagement

This Agreement may be terminated at any time by either the Company or by me upon two weeks advance written notice given to the other party. The termination of this Agreement shall not affect my right to receive, and the Company's obligation to pay, any and all Base Compensation and Expenses incurred (even if not billed) prior to the giving of the termination notice; provided, however, that (i) if this Agreement is terminated by me, the amount of Base Compensation owed shall be calculated based on the actual number of days worked during the applicable month and I will return any Base Compensation received in excess of such amount and (ii) if this Agreement is terminated by the Company, Base Compensation shall be deemed fully earned as of the first day of any month. Bonus Compensation shall be earned by me immediately upon termination of me by the Company; provided, however, I shall not be entitled to Bonus Compensation if (a) the Bankruptcy Case is converted to chapter 7 or dismissed; (b) a chapter 11 trustee is appointed in the Bankruptcy Case; (c) I am terminated by the Company for Cause; or (d) I resign prior to confirmation of a plan or court approval of a sale as described in the Fees and Expense/Compensation for Services section hereof. For purposes of this Agreement, "Cause" means any of the following grounds for termination of my engagement, in each case as reasonably determined by the Board within 60 days of the Board becoming aware of the existence of the event or circumstance: (A) fraud, embezzlement, or any act of moral turpitude or willful misconduct on my part; (B) conviction of or the entry of a plea of nolo contendere by me for any felony; (C) the willful breach by me of any material term of this Agreement; or (D) the willful failure or refusal by me to perform my duties to the Company, which, if capable of being cured, is not cured on or before fifteen (15) days after my receipt of written notice from the Company.

Conditional Requirement to Seek Further Bankruptcy Court Approval of Agreement

The official committee of unsecured creditors in the Bankruptcy Case (the "Committee") may, upon two weeks advance written notice to the Company, require the Company to file a motion with the Bankruptcy Court on normal notice seeking a continuation of this Agreement and if such motion is not filed, this Agreement will terminate at the expiration of such two week period. If the Company files such motion, I will be entitled to my Base Compensation through and including the date on which a final order is entered on such motion by the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Committee may not deliver such notice to the Company until a date which is more than ninety days following the date the Bankruptcy Court enters an order approving this Agreement.

Indemnification

As a material part of the consideration to me under this Agreement, the Company agrees (i) to indemnify and hold harmless me and any of my affiliates (the "Indemnified Party"), to the fullest extent lawful, from and against any and all losses, claims, costs, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, my engagement under this Agreement, or any actions taken or omitted to be taken by me or the Company in connection with this Agreement and (ii) to reimburse the Indemnified Party for all expenses ( including, without limitation, the reasonable fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action, or any fee dispute), arising out of or relating to this Agreement, or such engagement, or actions.  However, the Company shall not be liable under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of the Indemnified Party.

The indemnification and insurance currently covering my role as a director shall be extended to me and fully cover me as provided therein in my roles as CEO and CRO.

Miscellaneous

This Agreement (a) constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements among the parties with respect to the subject matter hereof, and (b) may be modified, amended or supplemented only by written agreement among all the parties hereto.

This Agreement is subject to approval by the Bankruptcy Court.  As part of such approval the Company shall request that any such order approving this Agreement contain a provision extending the protections afforded to me as a Board Member pursuant to Paragraph 10 of the Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course entered by the Bankruptcy Court on January 9, 2020 [Docket No. 339] to my role as CEO and CRO, which Order prohibits the commencement of any action against me without first obtaining Bankruptcy Court approval to initiate such action.

This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York.  The parties hereby submit to the jurisdiction of and venue in the federal and state courts located in New York City and waive any right to trial by jury in connection with any dispute related to this Agreement.

This Agreement shall be binding upon the parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

012627

Failure of any party at any time to require performance of any provision of this Agreement shall not affect the right to require full performance thereof at any time thereafter, and the waiver by any party of a breach of such provisions shall not be taken as or held to be a waiver of any subsequent breach or as nullifying the effectiveness of such provision.

Notices provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or overnight courier or three days after it has been mailed by United States registered mail, return receipt requested, postage prepaid, addressed to the respective address set forth above in this Agreement, or to such other address as either party may have furnished to the other in writing in accordance herewith.

This Agreement and my rights and duties hereunder shall not be assignable or delegable by me.

The Company may withhold from any amounts payable under this Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

This Agreement may be executed (including by electronic execution) in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

James. P. Seery, Jr.

AGREED AND ACCEPTED

HIGHLAND CAPITAL MANAGEMENT L.P.

By: Strand Advisors, Inc., its general partner

_____          _____
John Dubel                                Russell Nelms
Director                                  Director
Strand Advisors, Inc.                     Strand Advisors, Inc.

012628

This Agreement shall be binding upon the parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Failure of any party at any time to require performance of any provision of this Agreement shall not affect the right to require full performance thereof at any time thereafter, and the waiver by any party of a breach of such provisions shall not be taken as or held to be a waiver of any subsequent breach or as nullifying the effectiveness of such provision.

Notices provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or overnight courier or three days after it has been mailed by United States registered mail, return receipt requested, postage prepaid, addressed to the respective address set forth above in this Agreement, or to such other address as either party may have furnished to the other in writing in accordance herewith.

This Agreement and my rights and duties hereunder shall not be assignable or delegable by me.

The Company may withhold from any amounts payable under this Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

This Agreement may be executed (including by electronic execution) in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument.  Delivery of an executed counterpart of this Agreement by electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,


James. P. Seery, Jr.

AGREED AND ACCEPTED

**HIGHLAND CAPITAL MANAGEMENT L.P.**

By: Strand Advisors, Inc., its general partner


_____          _____
John Dubel                                    Russell Nelms
Director                                      Director
Strand Advisors, Inc.                         Strand Advisors, Inc.


012629

This Agreement shall be binding upon the parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Failure of any party at any time to require performance of any provision of this Agreement shall not affect the right to require full performance thereof at any time thereafter, and the waiver by any party of a breach of such provisions shall not be taken as or held to be a waiver of any subsequent breach or as nullifying the effectiveness of such provision.

Notices provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or overnight courier or three days after it has been mailed by United States registered mail, return receipt requested, postage prepaid, addressed to the respective address set forth above in this Agreement, or to such other address as either party may have furnished to the other in writing in accordance herewith.

This Agreement and my rights and duties hereunder shall not be assignable or delegable by me.

The Company may withhold from any amounts payable under this Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

This Agreement may be executed (including by electronic execution) in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

James. P. Seery, Jr.

AGREED AND ACCEPTED

**HIGHLAND CAPITAL MANAGEMENT L.P.**

By: Strand Advisors, Inc., its general partner

_____

John Dubel
Director
Strand Advisors, Inc.

Russell Nelms
Director
Strand Advisors, Inc.

012630

# EXHIBIT NNNNNN

012631

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054 (SGJ) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## CERTIFICATION OF PATRICK M. LEATHEM WITH RESPECT TO THE TABULATION OF VOTES ON THE FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P.

I, Patrick M. Leathem, depose and say under the penalty of perjury:

1.      I am a Senior Consultant in Corporate Restructuring Services, employed by Kurtzman Carson Consultants LLC ("**KCC**"), located at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, California 90245.  I am over the age of 18 and not a party to this action.

2.      On October 18, 2019, the United States Bankruptcy Court for the District of Delaware Court entered the *Order Appointing Kurtzman Carson Consultants as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) and Local Rule 2002-1(f)* (Docket No. 43), prior to a venue transfer to this District.

3.      On November 24, 2020, the Court entered the *Order (A) Approving the Adequacy of the Disclosure Statement; (B) Scheduling a Hearing to Confirm the Fifth Amended Plan of Reorganization; (C) Establishing Deadline for Filing Objections to Confirmation of Plan; (D) Approving Form of Ballots, Voting Deadline and Solicitation Procedures; and (E) Approving Form and Manner of Notice* (Docket No. 1476) (the "**Disclosure Statement Order**")[2]

---

[1]     The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2]     Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Disclosure Statement Order.

1934054210119000000000000003

012032

establishing, among other things, certain solicitation and voting tabulation procedures with respect to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (Docket No. 1472) (as further amended, supplemented, or modified, the "**Plan**"). I supervised the solicitation and tabulation performed by KCC's employees.

4.    KCC has considerable experience in soliciting and tabulating votes to accept or reject proposed chapter 11 plans. Except as otherwise stated, I could and would testify to the following based upon my personal knowledge. I am authorized to submit this Certification on behalf of KCC.

**A.    Service and Transmittal of Solicitation Packages and Related Information**

5.    On December 1, 2020, KCC caused to be served the Confirmation Hearing Notice on the Debtor's creditors listed in the creditor matrix and all other parties required to receive such notice pursuant to the Disclosure Statement Order. On December 1, 2020, KCC caused to be served Solicitation Packages on all holders of Claims in Classes 2, 7, 8, 9, 10 and 11 (collectively the "**Voting Classes**") entitled to vote as of November 23, 2020 (the "**Voting Record Date**"), and a Notice of Non-Voting Status in lieu of a Solicitation Package on all holders of Unimpaired Claims in Classes 1, 3, 4, 5[3] and 6 in accordance with the Disclosure Statement Order. A certificate of service evidencing the foregoing was filed with the Bankruptcy Court on December 23, 2020 as Docket No. 1630.

6.    On or before December 1, 2020, KCC posted links to the electronic versions of the Confirmation Hearing Notice, Disclosure Statement (with the Plan as an Exhibit), and Disclosure Statement Order on the public access website at www.kccllc.net/hcmlp.

---

[3] No parties were classified as Class 5 Retained Employee Claims for purposes of service of the Notice of Non-Voting Status or Solicitation Packages.

DOCS_SF:104819.1 36027/002

012633

7.    On December 3, 2020 the Confirmation Hearing Notice was published in *The New York Times (National Edition)*.  An affidavit evidencing the publication of the Confirmation Hearing Notice was filed with the Court on December 3, 2020 (Docket No. 1505).

**B.    The Tabulation Process**

8.    The Disclosure Statement Order established November 23, 2020 as the Voting Record Date.  Pursuant to the Disclosure Statement Order, holders of Claims in Class 2 (Frontier Secured Claim), Class 7 (Convenience Claims), Class 8 (General Unsecured Claims), Class 9 (Subordinated Claims), Class 10 (Class B/C Limited Partnership Interests) and Class 11 (Class A Limited Partnership Interests) were entitled to vote to accept or reject the Plan. Furthermore, Class 7 Claims were provided the option to elect treatment as Class 8 Claims (the "**GUC Election**"), and liquidated Class 8 Claims were provided the option to elect treatment as Class 7 Claims as provided under the Plan (the "**Convenience Election**") (in each case under limited circumstances, and without affecting classification for tabulation purposes).  No other classes were entitled to vote on the Plan.

9.    Pursuant to the Disclosure Statement Order, KCC relied on the Debtor's Schedules of Assets and Liabilities and the Claims information pertaining to the Debtor's chapter 11 case, as reflected in KCC's systems, to identify the holders of Claims entitled to vote to accept or reject the Plan.  Finally, KCC relied on guidance from the Debtor's advisors to identify holders of Class B/C Limited Partnership Interests in Class 10 and Class A Limited Partnership Interests in Class 11 (collectively, "**Interests**") entitled to vote to accept or reject the Plan, and the amounts of respective interests held as well as the tabulation of certain ballots, as set forth on **Exhibit A** hereto.

DOCS_SF:104819.1 36027/002

012634

10.     Using the information outlined above, KCC created a voting database reflecting the names of holders in the Voting Classes, addresses of such holders, voting amounts and classification of Claims and Interests in the Voting Classes.

11.     Using its KCC CaseView voting database ("**KCC CaseView**"), KCC generated ballots for Holders of Claims and Interests entitled to vote to accept or reject the Plan.  The Disclosure Statement Order established January 5, 2021 at 5:00 p.m. (prevailing Central Time) as the deadline for receiving ballots to accept or reject the Plan (the "**Voting Deadline**"), except to the extent such Voting Deadline was extended by the Debtor in writing in its sole discretion.

12.     In accordance with the Disclosure Statement Order, KCC received and tabulated Ballots as follows: (a) each returned paper Ballot was opened and inspected at KCC's offices; (b) paper Ballots were date-stamped and scanned into KCC CaseView; (c) each Ballot submitted electronically through KCC's electronic voting platform was electronically received and processed; and (d) all Ballots received on or before the Voting Deadline were then entered into KCC CaseView and tabulated.

13.     The final tabulation of votes cast by timely and properly completed Ballots received by KCC is attached hereto as **Exhibit A**.  The detailed ballot reports for Voting Classes 2, 7, 8, 9 and 11[4] are attached to this Certification as **Exhibits A-1**, **A-2**, **A-3**, **A-4**, and **A-5**, along with a summary[5] provided to KCC by the Debtor with respect to the Debtor's position with respect to the tabulation and classification of votes in the Voting Classes pursuant to the Disclosure Statement Order, Plan and applicable law.

---

[4] No Class 10 Ballots were returned.

[5] Please see footnotes on the detailed ballot reports with respect to tabulation of certain ballots in Class 7, Class 8, and Class 9.

012635

C.      **Ballots That Were Not Counted**

14.      Attached as **Exhibit B** to this Certification is a detailed report of any Ballots that were not included in the tabulation above because they did not satisfy the requirements for a valid Ballot as set forth in the Disclosure Statement Order.

## Conclusion

To the best of my knowledge, information and belief, the foregoing information concerning the distribution, submission and tabulation of Ballots in connection with the Plan is true.  The Ballots received by KCC are stored at KCC's office and are available for inspection by or submission to this Court.

Dated: January 19, 2021

 /s/ Patrick M. Leathem
Patrick M. Leathem

DOCS_SF:104819.1 36027/002

012636

# EXHIBIT A

Exhibit A
Ballot Tabulation Summary

| Class | Ballots Not Tabulated | Number Accepting | Number Rejecting | Amount Accepting | Amount Rejecting | Voting Result |
|---|---|---|---|---|---|---|
| Class 2 - Frontier Secured Claim | 0 | 1<br>100.00% | 0<br>0.00% | $5,209,963.62<br>100.00% | $0.00<br>0.00% | Accepted in Number<br>Accepted in Dollar |
| Class 7 - Convenience Claims | 4 | 14<br>100.00% | 0<br>0.00% | $2,765,906.51<br>100.00% | $0.00<br>0.00% | Accepted in Number<br>Accepted in Dollar |
| Class 8 - General Unsecured Claims | 2 | 12<br>27.91% | 31<br>72.09% | $301,826,418.36<br>93.54% | $20,833,059.67<br>6.46% | Rejected in Number<br>Accepted in Dollar |
| Class 9 - Subordinated Claims | 0 | 5<br>100.00% | 0<br>0.00% | $35,000,000.00<br>100.00% | $0.00<br>0.00% | Accepted in Number<br>Accepted in Dollar |

| Class | Ballots Not Tabulated | Number Accepting | Number Rejecting | Amount of Interests Accepting | Amount of Interests Rejecting | Voting Result |
|---|---|---|---|---|---|---|
| Class 10 - Class B/C Limited Partnership Interests | 0 | 0<br>0.00% | 0<br>0.00% | 0.00<br>0.00% | 0.00<br>0.00% | No Votes<br>No Votes |
| Class 11 - Class A Limited Partnership Interests | 0 | 0<br>0.00% | 1<br>100.00% | 0.00<br>0.00% | 37.37% Interests<br>100.00% | Rejected in Number<br>Rejected in Amount |

In re Highland Capital Management, L.P.
Case No. 19-34054 (SGJ)

Page 1 of 1

012638

**Class 2 Ballot Detail**
**Frontier Secured Claim**

| Creditor Name | Ballot No. | Voting Amount | Date Filed | Vote |
|---|---|---|---|---|
| Frontier State Bank | 7 | $5,209,963.62 | 12/21/2020 | Accept |

**Class 7 Ballot Detail**
**Convenience Claims**

| Creditor Name[1] | Ballot No. | Voting Amount | Date Filed | Vote |
|---|---|---|---|---|
| Argo Partners | 3 | $10,000.00 | 12/08/2020 | Accept |
| CBIZ Valuation Group, LLC | 48 | $8,269.26 | 01/05/2021 | Accept |
| Contrarian Funds, LLC | 1 | $268,095.08 | 12/04/2020 | Accept |
| Crescent TC Investors, L.P. | 41 | $27,480.67 | 01/04/2021 | Accept |
| Daniel Sheehan & Associates, PLLC | 6 | $32,433.75 | 12/21/2020 | Accept |
| Department of the Treasury - Internal Revenue Service | 39 | $85,281.32 | 01/04/2021 | Accept |
| Katten Muchin Rosenman LLP | 4 | $16,695.00 | 12/10/2020 | Accept |
| MCS Capital LLC c/o STC, Inc. | 8 | $507,430.34 | 12/21/2020 | Accept |
| Meta-e Discovery, LLC | 9 | $779,969.84 | 12/22/2020 | Accept |
| Parmentier, Andrew | 51 | $136,350.00 | 01/05/2021 | Accept |
| Pivotal Research Group LLC | 11 | $2,500.00 | 12/29/2020 | Accept |
| Ryan P. Newell (Connolly Gallagher LLP) | 12 | $166,062.22 | 12/31/2020 | Accept |
| Siepe Services, LLC | 64 | $80,183.88 | 01/05/2021 | Accept |
| Stinson Leonard Street LLP | 65 | $645,155.15 | 01/14/2021 | Accept |

[1] The Debtor advised the Solicitation Agent that:   (i) under the terms of the Plan, the Disclosure Statement Order, and applicable bankruptcy law, neither Scott Ellington, Frank Waterhouse, or Isaac Leventon have Class 7 Convenience Claims or are entitled to elect to receive the treatment provided to Class 7 Convenience Claims; (ii) consistent with the Debtor's ability to accept late votes under section 25(a) of the Voting Procedures Order, the Debtor has determined to accept the votes cast by Siepe Systems, LLC and Stinson Leonard Street LLP.  Please see Exhibit B - Ballots Excluded from Tabulation.

**Class 8 Ballot Detail**
**General Unsecured Claims**

| Creditor Name[1,2] | Ballot No. | Voting Amount | Date Filed | Vote |
|---|---|---|---|---|
| Acis Capital Management L.P. and Acis Capital Management GP, LLC | 45 | $23,000,000.00 | 01/05/2021 | Accept |
| Charlotte Investor IV, L.P. | 19 | $1.00 | 12/31/2020 | Accept |
| Contrarian Funds, LLC[3] | 20 | $1,318,730.36 | 01/04/2021 | Accept |
| Ellington, Scott | 56 | $7,604,375.00 | 01/05/2021 | Reject |
| Employee 01 | 50 | $1.00 | 01/05/2021 | Reject |
| Employee 02 | 52 | $1.00 | 01/05/2021 | Reject |
| Employee 03 | 2 | $1.00 | 12/07/2020 | Accept |
| Employee 04 | 26 | $1.00 | 01/04/2021 | Reject |
| Employee 06 | 32 | $1.00 | 01/04/2021 | Reject |
| Employee 08 | 28 | $1.00 | 01/04/2021 | Reject |
| Employee 09 | 40 | $1.00 | 01/04/2021 | Reject |
| Employee 11 | 24 | $1.00 | 01/04/2021 | Reject |
| Employee 12 | 29 | $1.00 | 1/4/2021 | Reject |
| Employee 13 | 25 | $1.00 | 01/04/2021 | Reject |
| Employee 14 | 27 | $1.00 | 01/04/2021 | Reject |
| Employee 15 | 30 | $1.00 | 01/04/2021 | Reject |
| Employee 16 | 43 | $1.00 | 01/04/2021 | Reject |
| Employee 17 | 47 | $1.00 | 01/05/2021 | Reject |
| Employee 18 | 34 | $1.00 | 01/04/2021 | Reject |
| Employee 19 | 38 | $1.00 | 01/04/2021 | Reject |
| Employee 20 | 49 | $1.00 | 01/05/2021 | Reject |
| Employee 22 | 44 | $1.00 | 01/05/2021 | Reject |
| Employee 23 | 23 | $1.00 | 01/04/2021 | Reject |
| Employee 25 | 33 | $1.00 | 01/04/2021 | Reject |
| Employee 26 | 31 | $1.00 | 01/04/2021 | Reject |
| Employee 27 | 36 | $1.00 | 01/04/2021 | Reject |
| Employee 28 | 46 | $1.00 | 01/05/2021 | Reject |
| Employee 29 | 21 | $1.00 | 01/04/2021 | Reject |
| Employee 30 | 37 | $1.00 | 01/04/2021 | Reject |
| HarbourVest 2017 Global AIF L.P. | 18 | $4,366,125.00 | 12/31/2020 | Accept |
| HarbourVest 2017 Global Fund L.P. | 17 | $2,183,085.00 | 12/31/2020 | Accept |
| HarbourVest Dover Street IX Investment L.P. | 16 | $31,954,320.00 | 12/31/2020 | Accept |
| HarbourVest Skew Base AIF L.P. | 13 | $648,990.00 | 12/31/2020 | Accept |
| Highland Crusader Offshore Partners, L.P., et al. | 10 | $50,000.00 | 12/28/2020 | Accept |
| Hunter Covitz | 35 | $250,000.00 | 01/04/2021 | Reject |
| HV International VIII Secondary L.P. | 14 | $5,847,480.00 | 12/31/2020 | Accept |

**Class 8 Ballot Detail**
**General Unsecured Claims**

| Creditor Name[1,2] | Ballot No. | Voting Amount | Date Filed | Vote |
|---|---|---|---|---|
| Jean Paul Sevilla | 63 | $400,000.00 | 01/05/2021 | Reject |
| Leventon, Isaac | 58 | $1,342,379.68 | 01/05/2021 | Reject |
| Patrick Hagaman Daugherty | 42 | $9,134,019.00 | 01/04/2021 | Reject |
| Raymond Joseph Dougherty | 62 | $1.00 | 01/05/2021 | Reject |
| Redeemer Commttee Highland Crusader Fund | 5 | $137,696,610.00 | 12/16/2020 | Accept |
| UBS Securities LLC | 22 | $94,761,076.00 | 01/04/2021 | Accept |
| Waterhouse, Frank | 59 | $2,102,260.99 | 01/05/2021 | Reject |

[1] The Debtor advised the Solicitation Agent that: (i) 29 of the 31 of rejecting votes in this class are by either (a) employees who assert contingent claims in the amount of $1 for unvested amounts under the Debtor's deferred compensation program and the Debtor's former annual bonus program which was terminated on January 14, 2021, and (b) Messrs. Leventon, Ellington, and Waterhouse; (ii) solely for purposes of voting on the Plan, and not for any other purposes, the votes of Messrs Sevilla, Covitz, Leventon, Ellington, and Waterhouse are tabulated as set forth above even though the proofs of claim filed by these individuals do not provide a determination to ascertain the voting amount with respect to any annual bonus or deferred compensation claims asserted against the Debtor; (iii) the vote cast by Raymond Joseph Dougherty in Class 9 should be properly tabulated as a Class 8 General Unsecured Claim because there is no order entered by the Bankruptcy Court subordinating this claim pursuant to the Plan.

[2] The Debtor advised the Solicitation Agent that (i) the Court approved a settlement at a hearing conducted on January 14, 2021 with (a) HarbourVest 2017 Global Fund L.P.; (b) HarbourVest 2017 Global AIF L.P.; (c) HarbourVest Dover Street IX Investment L.P.; (d) HV International VIII Secondary L.P., (e) HarbourVest Skew Base AIF L.P.; and  (f) and HarbourVest Partners L.P., (collectively, "HarbourVest") pursuant to which HarbourVest was allowed a general unsecured claim in the amount of $45 million in the aggregate and a subordinated claim in the amount of $35 million in the aggregate; and (ii) HarbourVest has voted its allowed claims in the amounts set forth above with respect to its votes in Class 8 and Class 9 to accept the Plan.  Please see Exhibit A-4 - Class 9 Ballot Detail.

[3] Contrarian Funds, LLC's Ballot No. 20 elected treatment as Class 7 Convenience Claim (the "Convenience Election"), but such election does not alter classification for tabulation purposes under the Plan. For the avoidance of doubt, this Certification does not certify the validity or enforceability of any elections received and reported hereon, but rather this Certification is providing such information for reporting and informational purposes.

012642

**Class 9 Ballot Detail**
**Subordinated Claims**

| Creditor Name[1] | Ballot No. | Voting Amount | Date Filed | Vote |
|---|---|---|---|---|
| HarbourVest 2017 Global AIF L.P. | 18 | $3,395,875.00 | 12/31/2020 | Accept |
| HarbourVest 2017 Global Fund L.P. | 17 | $1,697,955.00 | 12/31/2020 | Accept |
| HarbourVest Dover Street IX Investment L.P. | 16 | $24,853,360.00 | 12/31/2020 | Accept |
| HarbourVest Skew Base AIF L.P. | 13 | $504,770.00 | 12/31/2020 | Accept |
| HV International VIII Secondary L.P. | 14 | $4,548,040.00 | 12/31/2020 | Accept |

[1] The Debtor advised the Solicitation Agent that (i) the Court approved a settlement at a hearing conducted on January 14, 2021 with (a) HarbourVest 2017 Global Fund L.P.; (b) HarbourVest 2017 Global AIF L.P.; (c) HarbourVest Dover Street IX Investment L.P.; (d) HV International VIII Secondary L.P., (e) HarbourVest Skew Base AIF L.P.; and  (f) and HarbourVest Partners L.P., (collectively, "HarbourVest") pursuant to which HarbourVest was allowed a general unsecured claim in the amount of $45 million in the aggregate and a subordinated claim in the amount of $35 million in the aggregate; and (ii) HarbourVest has voted its allowed claims in the amounts set forth above with respect to its votes in Class 8 and Class 9 to accept the Plan.

**Class 11 Ballot Detail**
**Class A Limited Partnership Interests**

| Creditor Name | Ballot No. | Voting Amount | Date Filed | Vote |
|---|---|---|---|---|
| The Dugaboy Investment Trust | 60 | 37.37% Interest | 1/5/2021 | Reject |

# EXHIBIT B

012645

**Ballots Excluded from Tabulation**

| Class | CreditorName | Date Filed | Ballot No. | Voting Amount | Vote | Reason Excluded[1] |
|-------|--------------|------------|------------|---------------|------|--------------------|
| 7 | Frank Waterhouse | 1/5/2021 | 54 | $403,706.00 | Reject | Not Entitled to Vote |
| 8 | HarbourVest Partners L.P. on behalf of funds and accounts under management | 12/31/2020 | 15 | $1.00 | Accept | No voting amount was allocated to this Ballot by HarbourVest under the settlement approved by the Court at a hearing conducted on January 14, 2021. |
| 7 | Isaac D. Leventon | 1/5/2021 | 61 | $300,491.00 | Reject | Not Entitled to Vote |
| 7 | Scott B. Ellington | 1/5/2021 | 53 | $510,000.00 | Reject | Not Entitled to Vote |
| 8 | Surgent, Thomas | 1/5/2021 | 57 | $1.00 | Abstain | No Vote |
| 7 | Thomas Surgent | 1/5/2021 | 55 | $510,000.00 | Abstain | No Vote |

[1] The Debtor advised the Solicitation Agent that: (i) under the terms of the Plan, the Disclosure Statement Order, and applicable bankruptcy law, neither Scott Ellington, Frank Waterhouse, or Isaac Leventon have Class 7 Convenience Claims or are entitled to elect to receive the treatment provided to Class 7 Convenience Claims; (ii) consistent with the Debtor's ability to accept late votes under section 25(a) of the Voting Procedures Order, the Debtor has determined to accept the votes cast by Siepe Systems, LLC and Stinson Leonard Street LLP.