**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re:** Highland Capital Management, L.P | § | Case No. 19-34054-SGJ-11 |
| Highland Capital Management Fund Advisors, L.P. et al | § | |
| Appellant | § | |
| vs. | § | |
| Highland Capital Management, L.P., | § | |
| | § | 3:21-CV-00538-N |
| Appellee | § | |

[1943] **Order confirming the fifth amended chapter 11 plan,** Entered on 2/22/2021.

# APPELLANT RECORD
# VOLUME 54

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

$\mathcal{I} \, \mathcal{N} \mathcal{D} \mathcal{E} \times$

## AMENDED DESIGNATION BY NEXPOINT ADVISORS, L.P. AND HIGHLAND
## CAPITAL MANAGEMENT FUND ADVISORS, L.P.
## OF ITEMS FOR THE RECORD ON APPEAL

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors,

L.P. (the "Appellants"), creditors and parties-in-interest in the above styled and numbered

bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"),

and, with respect to their *Notice of Appeal* [docket no. 1957], hereby file their *Amended*

*Designation of Items for the Record on Appeal* (the "Designation") as follows:

| | Item | Bankruptcy Docket Number | Description |
|---|---|---|---|
| | | | **Pleadings and Items on Docket** |
| *Vol. 1* 000001 | 1 | 1957 | Notice of Appeal |
| 000165 000326 | 2 | 1943 | Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief |
| | 3 | | Docket Sheet of Bankruptcy Case No. 19-34054 |
| *Vol. 2* 000639 | 4 | 1606 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000666 | 5 | 1648 | Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000675 | 6 | 1656 | Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000820 | 7 | 1670 | Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000870 | 8 | 1719 | Second Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| *Vol. 3* 000880 | 9 | 1749 | Third Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 000886 | 10 | 1772 | Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 000901 | 11 | 1791 | Notice of Withdrawal of Certain Executory Contracts and Unexpired Leases from List of Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan |
| 000906 | 12 | 1807 | Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management |
| 001031 | 13 | 1808 | Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) |
| *Vol. 4* 001097 | 14 | 1811 | Notice of Filing Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications) |
| *Vol. 5* 001346 | 15 | 1814 | Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |

*[handwritten left margin: Vol 5 / 001414]*
*[handwritten left margin: 001421]*
*[handwritten left margin: 001427]*
*[handwritten left margin: 001475]*
*[handwritten left margin: 001482]*
*[handwritten left margin: 001488 / 001783 / 002040 / 082091 / 002128 / Vol 12 - 002931 / Vol 50 - 013295 / -013297 / Vol. 51 - 013373 / Vol. 54 - 014182 / Vol 55 - 014506]*

| | | | |
|---|---|---|---|
| 16 | 1847 | Fourth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 17 | 1873 | Fifth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith |
| 18 | 1875 | Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland of Highland Capital Management, L.P. (As Modified) |
| 19 | 1887 | Supplemental Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. |
| 20 | 1671 | United States Trustee's Limited Objection to Confirmation of Debtors' Fifth Amended Plan of Reorganization |
| **Evidence and Transcripts** | | |
| 21 | 1894 | Transcript of February 2, 2021 Confirmation Hearing |
| 22 | 1905 | Transcript of February 3, 2021 Confirmation Hearing |
| 23 | 1917 | Transcript of February 8, 2021 Bench Ruling |
| 24 | 1794 | All exhibits admitted into evidence during February 2 and February 3 Confirmation Hearing |
| | 1795 | |
| | 1822 ✕ | |
| | 1863 | |
| | 1866 | |
| | 1877 | |
| | 1895 | |
| | 1915 | |

*[handwritten below table: ✕ 1822 - Vol. 12 — 50 (39 Volumes)]*

RESPECTFULLY SUBMITTED this 22d day of March, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email:   drukavina@munsch.com

**ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P. AND
NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 22d day of March, 2021, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on counsel for the Debtor.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Debtor. | § § § | |

**DEBTOR'S THIRD AMENDED WITNESS AND EXHIBIT LIST WITH**
**RESPECT TO CONFIRMATION HEARING HELD ON FEBRUARY 3, 2021**

Highland Capital Management, L.P. (the "Debtor") submits the following third amended

witness and exhibit list with respect to the hearing to confirm the *Fifth Amended Plan of*

*Reorganization of Highland Capital Management, L.P.* [Docket No. 1472] which was set for

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021** **PAGE 1 OF 14**
DOCS_NY:42031.4 36027/002

014182

hearing at 9:30 a.m. (Central Time) on February 3, 2021 (the "Hearing") in the above-styled

bankruptcy case (the "Bankruptcy Case").

**A.** **Witnesses:**

1. James P. Seery, Jr.;

2. John S. Dubel;

3. James Dondero;

4. Marc Tauber, a representative of Aon plc;

5. Patrick M. Leathem (by certification filed at Docket No. 1772);

6. Any witness identified by or called by any other party; and

7. Any witness necessary for rebuttal.

**B.** **Exhibits:**

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| A. | Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles [Docket No. 1528] | | |
| B. | Transcript of 12/16/20 Hearing | | |
| C. | Order Denying Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles [dkt 1605] | | |
| D. | Email from James Romey dated September 29, 2020 | | |
| E. | Structural and Steel Products UCC Presentation dated September 29, 2020 | | |
| F. | Aberdeen Loan Funding Offering Memorandum dated as of March 27, 2008 | | |
| G. | Aberdeen Loan Funding Indenture dated as of March 27, 2008 | | |
| H. | Aberdeen Loan Funding Supplemental Indenture No. 1 dated as of March 27, 2008 | | |

**THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021**      **PAGE 2 OF 14**
DOCS_NY:42031.4 36027/002

014183

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| I. | Aberdeen Loan Funding Preference Shares Paying Agency Agreement dated as of March 27, 2008 | | |
| J. | Aberdeen Loan Funding Servicing Agreement dated as of March 27, 2008 | | |
| K. | Brentwood CLO Offering Memorandum dated as of December 18, 2006 | | |
| L. | Brentwood CLO Indenture dated as of December 21, 2006 | | |
| M. | Brentwood CLO Preference Shares Paying Agency Agreement Dated as of December 21, 2006 | | |
| N. | Brentwood CLO Servicing Agreement dated as of December 21, 2006 | | |
| O. | Eastland CLO Offering Memorandum dated as of March 13, 2007 | | |
| P. | Eastland CLO Indenture dated as of March 13, 2007 | | |
| Q. | Eastland CLO Preference Shares Paying Agency Agreement Dated as of March 13 2007 | | |
| R. | Eastland CLO Servicing Agreement dated as of March 13, 2007 | | |
| S. | Gleneagles CLO Offering Memorandum dated as of October 7, 2005 | | |
| T. | Gleneagles CLO Indenture dated as of October 13, 2005 | | |
| U. | Gleneagles CLO Portfolio Management Agreement dated as of October 13, 2005 | | |
| V. | Gleneagles CLO Preference Shares Paying Agency Agreement Dated as of October 13, 2005 | | |
| W. | Grayson CLO Offering Memorandum dated as of November 28, 2006 | | |
| X. | Grayson CLO Indenture dated as of November 30, 2006 | | |

**THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021** **PAGE 3 OF 14**
DOCS_NY:42031.4 36027/002

014184

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| Y. | Grayson CLO Preference Shares Paying Agency Agreement dated as of November 30, 2006 | | |
| Z. | Grayson CLO Servicing Agreement dated as of November 30, 2006 | | |
| AA. | Grayson CLO Amendment No. 1 to Servicing Agreement dated as of October 2, 2007 | | |
| BB. | Greenbriar CLO Offering Memorandum dated as of December 18, 2007 | | |
| CC. | Greenbriar CLO Indenture dated as of December 20, 2007 | | |
| DD. | Greenbriar CLO Preference Shares Paying Agency Agreement Dated as of December 20, 2007 | | |
| EE. | Greenbriar CLO Servicing Agreement dated as of December 20, 2007 | | |
| FF. | Jasper CLO Offering Memorandum dated as of June 27, 2005 | | |
| GG. | Jasper CLO Amended and Restated Portfolio Management Agreement dated as of November 30, 2005 | | |
| HH. | Jasper CLO Indenture dated as of June 29, 2005 | | |
| II. | Jasper CLO Preference Shares Paying Agency Agreement dated as of June 29,2005 | | |
| JJ. | Liberty CLO Offering Memorandum dated as of December 7, 2005 | | |
| KK. | Liberty CLO Indenture dated as of December 8, 2005 | | |
| LL. | Liberty CLO Class E Certificate Paying Agency Agreement dated as of December 8, 2005 | | |
| MM. | Liberty CLO Portfolio Management Agreement dated as of December 8, 2005 | | |
| NN. | Red River CLO Offering Memorandum dated as of July 31, 2006 | | |

*Third Amended Witness and Exhibit List for Hearing Held on February 3, 2021*   **Page 4 of 14**
DOCS_NY:42031.4 36027/002

014185

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| OO. | Red River CLO Indenture dated as of August 3, 2006 | | |
| PP. | Red River CLO Amendment No. 1 to Indenture dated as of October 2, 2007 | | |
| QQ. | Red River CLO Preference Shares Paying Agency Agreement dated as of August 3, 2006 | | |
| RR. | Red River CLO Servicing Agreement dated as of August 3, 2006 | | |
| SS. | Red River CLO Amendment No. 1 to Servicing Agreement dated as of October 2, 2007 | | |
| TT. | Rockwall CLO Offering Circular (Notes) dated May 8, 2006 | | |
| UU. | Rockwall CLO Offering Circular (Preferred Share) dated May 8, 2006 | | |
| VV. | Rockwall CLO Indenture dated as of May 10, 2006 | | |
| WW. | Rockwall CLO Amendment No. 1 to Indenture dated as of October 2, 2007 | | |
| XX. | Rockwall CLO Preference Shares Paying and Agency Agreement dated as of May 10, 2006 | | |
| YY. | Rockwall CLO Servicing Agreement dated as of May 10, 2006 | | |
| ZZ. | Rockwall CLO Amendment No. 1 to Servicing Agreement dated as of October 2, 2007 | | |
| AAA. | Rockwall CLO II Offering Circular (Notes) dated May 8, 2007 | | |
| BBB. | Rockwall CLO II Offering Circular (Preferred Share) dated May 8, 2007 | | |
| CCC. | Rockwall CLO II Indenture dated as of May 9, 2007 | | |
| DDD. | Rockwall CLO II Preference Shares Paying and Agency Agreement dated as of May 9, 2007 | | |

**THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021**      **PAGE 5 OF 14**
DOCS_NY:42031.4 36027/002

014186

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| EEE. | Rockwall CLO II Servicing Agreement dated as of May 9, 2007 | | |
| FFF. | Southfork CLO Offering Memorandum dated as of March 9, 2005 | | |
| GGG. | Southfork CLO Indenture dated as of March 15, 2005 | | |
| HHH. | Southfork CLO Portfolio Management Agreement dated as of March 15, 2005 | | |
| III. | Southfork CLO Preference Shares Paying Agency Agreement dated as of March 15, 2005 | | |
| JJJ. | Stratford CLO Offering Memorandum dated as of October 22, 2007 | | |
| KKK. | Stratford CLO Indenture dated as of October 25, 2007 | | |
| LLL. | Stratford CLO Preference Shares Paying and Agency Agreement dated as of October 25, 2007 | | |
| MMM. | Stratford CLO Servicing Agreement dated as of October 25, 2007 | | |
| NNN. | Valhalla CLO Offering Circular dated as of August 17, 2004 | | |
| OOO. | Valhalla CLO Indenture dated as of August 18, 2004 | | |
| PPP. | Valhalla CLO Supplemental Indenture dated as of July 25, 2016 | | |
| QQQ. | Valhalla CLO Reference Portfolio Management Agreement dated as of August 1, 2016 | | |
| RRR. | Westchester CLO Offering Memorandum dated as of May 30, 2007 | | |
| SSS. | Westchester CLO Indenture dated as of May 31, 2007 | | |
| TTT. | Westchester CLO Preference Shares Paying Agency Agreement dated as of May 31, 2007 | | |

*Third Amended Witness and Exhibit List for Hearing Held on February 3, 2021* **Page 6 of 14**
DOCS_NY:42031.4 36027/002

014187

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| UUU. | Westchester CLO Servicing Agreement dated as of May 31, 2007 | | |
| VVV. | NexPoint Strategic Opportunities Fund, Form N-2 Registration Statement, filed August 27, 2019 | | |
| WWW. | NexPoint Strategic Opportunities Fund, Form DEF-14A Proxy Statement, filed July 10, 2020 | | |
| XXX. | NexPoint Capital, Inc., Form 497 Prospectus Supplement, filed March 14, 2018 | | |
| YYY. | NexPoint Capital, Inc. Form DEF-14A Proxy Statement, filed April 22, 2020 | | |
| ZZZ. | Highland Income Fund, Form 497 Prospectus Supplement, filed July 29, 2019 | | |
| AAAA. | Highland Income Fund, Form DEF-14A Proxy Statement, filed April 22, 2020 | | |
| BBBB. | Written Consent of the General Partner of Highland Capital Management, L.P., Effective September 21, 2020 | | |
| CCCC. | List of Board Memberships | | |
| DDDD. | Response to K&L Gates LLP dated December 22, 2020 [Dondero Deposition Exhibit 12] | | |
| EEEE. | Response to K&L Gates LLP dated December 23, 2020 [Dondero Deposition Exhibit 13] | | |
| FFFF. | Letter from K&L Gates to J. Pomerantz dated December 31, 2020 | | |
| GGGG. | Response to Letter from K&L Gates to J. Pomerantz dated December 31, 2020 | | |
| HHHH. | Highland CLO Funding Articles of Incorporation **[TO BE OFFERED UNDER SEAL]** | | |
| IIII. | Highland CLO Funding Members Agreement **[TO BE OFFERED UNDER SEAL]** | | |
| JJJJ. | Highland CLO Funding Offering Memorandum **[TO BE OFFERED UNDER SEAL]** | | |

**THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021**     **PAGE 7 OF 14**
DOCS_NY:42031.4 36027/002

014188

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| KKKK. | Highland CLO Funding Portfolio Management Agreement **[TO BE OFFERED UNDER SEAL]** | | |
| LLLL. | Highland CLO Funding Subscription and Transfer Agreement **[TO BE OFFERED UNDER SEAL]** | | |
| MMMM. | Liquidation Analysis [Docket No. 1473] | | |
| NNNN. | AVYA Stock Price Data | | |
| OOOO. | SKY Stock Price Data | | |
| PPPP. | HCMLP - Previous Day Trades 01/29/20 **[REDACTED]** | | |
| QQQQ. | HCMLP - Previous Day Trades 02/10/20 **[REDACTED]** | | |
| RRRR. | HCMLP - Previous Day Trades 02/14/20 **[REDACTED]** | | |
| SSSS. | HCMLP - Previous Day Trades 04/15/20 **[REDACTED]** | | |
| TTTT. | HCMLP - Previous Day Trades 04/17/20 **[REDACTED]** | | |
| UUUU. | HCMLP - Previous Day Trades 08/27/20 **[REDACTED]** | | |
| VVVV. | HCMLP - Previous Day Trades 09/02/20 **[REDACTED]** | | |
| WWWW. | HCMLP - Previous Day Trades 10/07/20 **[REDACTED]** | | |
| XXXX. | HCMLP - Previous Day Trades 10/08/20 **[REDACTED]** | | |
| YYYY. | HCMLP - Previous Day Trades 10/09/20 **[REDACTED]** | | |
| ZZZZ. | HCMLP - Previous Day Trades 11/24/20 **[REDACTED]** | | |

*THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021*     **PAGE 8 OF 14**
DOCS_NY:42031.4 36027/002

014189

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| AAAAA. | Jefferies Trade Confirmations 12/18/20 | | |
| BBBBB. | Jefferies Trade Confirmations 12/21/20 | | |
| CCCCC. | Jefferies Trade Confirmations 12/22/20 | | |
| DDDDD. | Jefferies Trade Confirmations 12/30/20 | | |
| EEEEE. | Jefferies Trade Confirmations 12/31/20 | | |
| FFFFF. | Strand Advisors Bylaws | | |
| GGGGG. | Strand Advisors First Amendment to Bylaws | | |
| HHHHH. | Strand Advisors Certificate of Ownership | | |
| IIIII. | Strand Advisors Written Consent | | |
| JJJJJ. | Strand Advisors Stock Certificate No. 1 | | |
| KKKKK. | Strand Advisors Broker/Agent's Letter of Authorization | | |
| LLLLL. | Strand Advisors – James Seery Director Agreement | | |
| MMMMM. | Strand Advisors – John Dubel Director Agreement | | |
| NNNNN. | Strand Advisors – Hon Russell Nelms Director Agreement | | |
| OOOOO. | Final Operating Protocols [Docket No. 354-1] | | |
| PPPPP. | Article: Highland Capital Says Ch. 11 Trustee Worst Possible Option (Law360 January 16, 2020) | | |

**THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021**          **PAGE 9 OF 14**
DOCS_NY:42031.4 36027/002

014190

| Letter | Exhibit | Offered | Admitted |
|---|---|---|---|
| QQQQQ. | Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course [Docket No. 339] | | |
| RRRRR. | Acis Capital Management , L.P. - Court's Ruling on Plan Confirmation (August 30, 2018) | | |
| SSSSS. | Highland – Dondero Related Entities Demonstrative | | |
| TTTTT. | Schedule of receivables for the identified objecting entities (as of 11.30.20) | | |
| UUUUU. | Highland Capital Management Fund Advisors, L.P. Second Amended and Restated Shared Services Agreement | | |
| VVVVV. | Notice of Termination of Highland Capital Management Fund Advisors, L.P. Second Amended and Restated Shared Services Agreement | | |
| WWWWW. | NexPoint Advisors, L.P. Amended and Restated Shared Services Agreement | | |
| XXXXX. | Notice of Termination of NexPoint Advisors, L.P. Amended and Restated Shared Services Agreement | | |
| YYYYY. | NexBank Third Amended and Restated Shared Services Agreement | | |
| ZZZZZ. | Notice of Termination of NexBank Third Amended and Restated Shared Services Agreement | | |
| AAAAAA. | NexPoint Real Estate Advisors, L.P. Amended and Restated Shared Services Agreement | | |
| BBBBBB. | Notice of Termination of NexPoint Real Estate Advisors, L.P. Amended and Restated Shared Services Agreement | | |
| CCCCCC. | Notice of Termination of NexBank Sub-servicing Agreement | | |
| DDDDDD. | Legal Entities List (Q2 2020) **[REDACTED]** | | |
| EEEEE. | Highland - Demonstrative on Post-Effective Date Org Chart | | |
| FFFFFF. | HCMLP Deferred Bonus Plan | | |

**THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021**    **PAGE 10 OF 14**
DOCS_NY:42031.4 36027/002

014191

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| GGGGGG. | HCMLP Template agreement for awards under the plan | | |
| HHHHHH. | HCMLP Annual Bonus Plan | | |
| IIIIII. | Seery Handwritten Note | | |
| JJJJJJ. | Marketing Summary | | |
| KKKKKK. | Strand D&O Proposal | | |
| LLLLLL. | Disclosure Statement Order [Docket No. 1476] | | |
| MMMMMM. | Order Appointing James Seery as CEO [Docket No. 854] | | |
| NNNNNN. | Voting Certification [Docket No. 1772] | | |
| OOOOOO. | Plan Supplement [Docket Nos. 1389, 1606, 1656] | | |
| PPPPPP. | Motion to Appoint Trustee [Docket No. 271] | | |
| QQQQQQ. | Order Denying Motion to Appoint Trustee [Docket No. 428] | | |
| RRRRRR. | Transcript of 01/09/20 Hearing | | |
| SSSSSS. | Transcript of 10/27/20 Hearing | | |
| TTTTTT. | Transcript of 10/28/20 Hearing | | |
| UUUUUU. | Transcript of 12/10/20 Hearing | | |
| VVVVVV. | Isaac D. Leventon Proof of Claim No. 184 | | |

| Letter | Exhibit | Offered | Admitted |
|--------|---------|---------|----------|
| WWWWWW. | Scott B. Ellington Proof of Claim No. 192 | | |
| XXXXXX. | James P Seery Curriculum Vitae [Docket No. 281-2] | | |
| YYYYYY. | John Dubel Curriculum Vitae [Docket No. 281-2] | | |
| ZZZZZZ. | Hon Russell Nelms Resume | | |
| AAAAAAA. | Highland Multi Strategy Credit Fund, Ltd. Statement of Value and Activity (10.01.20 – 10.31.20) **[REDACTED]** | | |
| BBBBBBB. | Highland Income Fund Semi-Annual Report (06.30.20) | | |
| CCCCCCC. | Legal Entities List (12.24.19) **[REDACTED]** | | |
| DDDDDDD. | Plan Projections | | |
| EEEEEE. | Plan Analysis | | |
| FFFFFFF. | Docket, *Joshua and Jennifer Terry v. Highland Capital Management, L.P., James Dondero and Thomas Surgent* (Case No. DC- 16-11396) | | |
| GGGGGGG. | Docket, *NWCC, LLC v. Highland CLO Management, LLC, et al.*, Index No. 654195/2018 (N.Y. Sup. Ct. 2018) | | |
| HHHHHHH. | Docket, *In re Acis Capital Management, L.P.*, Case No. 18-30264-sgj11 (Bankr. N.D. Tex.) | | |
| IIIIIII. | Docket, *In re Acis Capital Management GP, LLC*, Case No. 18-30265-sgj11 (Bankr. N.D. Tex.) | | |
| JJJJJJJ. | Docket*, In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11 (Bankr. N.D. Tex.) | | |
| KKKKKKK. | Docket, *UBS Securities vs. Highland Capital Management, L.P.*, Index No. 0650097/2009 | | |
| LLLLLLL. | Docket, *UBS Securities vs. Highland Capital Management, L.P.*, Index No. 0650752/2010 | | |

**THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021**     **PAGE 12 OF 14**
DOCS_NY:42031.4 36027/002

014193

| Letter | Exhibit | Offered | Admitted |
|---|---|---|---|
| MMMMMMM. | Docket, *Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P.* (Chancery Court, Delaware, C.A. No. 12533-VCG) | | |
| NNNNNNN. | Docket, *Daugherty v. Highland Capital Management, L.P.* (Chancery Court, Delaware, C.A. No. 2017-0488-MTZ) | | |
| OOOOOOO. | Court Admitted Exhibits for January 21, 2020 Hearing | | |
| PPPPPPP. | Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) [Docket No. 1875] | | |
| QQQQQQQ. | Stipulation in Support of Settlement with Committee Regarding Governance and Procedures [Docket No. 338] | | |
| RRRRRRR. | Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management L.P. (With Technical Modifications) [Docket No. 1807] | | |
| SSSSSSS. | Email exchange between Gregory Demo, Amy Anderson, and Joseph Bain re HCM Issuers **[REDACTED]** | | |
| TTTTTTT. | Statement of Financial Affairs, with any amendments, filed in 19-34054 [Docket No. 248] | | |
| UUUUUUU. | Schedules filed in 19-34054, with any amendments [Docket No. 247] | | |
| VVVVVVV. | Any document entered or filed in the Bankruptcy Case, including any exhibits thereto | | |
| WWWWWWW. | Any document entered or filed in the Debtor's chapter 11 bankruptcy case, including any exhibits thereto | | |
| XXXXXXX. | All exhibits necessary for impeachment and/or rebuttal purposes | | |
| YYYYYYY. | All exhibits identified by or offered by any other party at the Hearing | | |

Dated: February 4, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**THIRD AMENDED WITNESS AND EXHIBIT LIST FOR HEARING HELD ON FEBRUARY 3, 2021**    **PAGE 14 OF 14**
DOCS_NY:42031.4 36027/002

014195

# EXHIBIT PPPPPPP

Docket #1875 Date Filed: 02/01/2021

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## DEBTOR'S NOTICE OF FILING OF PLAN SUPPLEMENT TO THE FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT, L.P. (AS MODIFIED)

**PLEASE TAKE NOTICE** that on January 22, 2021, the Debtor filed the *Fifth Amended*

*Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808]

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.


¶1934054210201000000000009

(as subsequently amended and/or modified, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor"), filed the *Disclosure Statement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* on November 24, 2020 [Docket No. 1473] (the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE** that attached as Exhibit C to the Disclosure Statement was the Debtor's Liquidation Analysis/Financial Projections.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** are the Debtor's amended Liquidation Analysis/Financial Projections (the "Amended Liquidation Analysis/Financial Projections"), which supersede the Liquidation Analysis/Financial Projections filed on November 24, 2020, with the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE** that a prior version of the Amended Liquidation Analysis/Financial Projections was provided to parties in interests on January 28, 2021, in advance of the deposition of James P. Seery, Jr., the Debtor's Chief Executive Officer and Chief Restructuring Officer, and that the Amended Liquidation Analysis/Financial Projections differ from such version in two respects:

- The Amended Liquidation Analysis/Financial Projections include the settlement in principle between UBS and the Debtor, which provides for UBS receiving a Class 8 (General Unsecured Claim) of $50,000,000 and a Class 9 (Subordinated Claim) of $25,000,000. The prior Liquidation Analysis/Financial Projections included a Class 8 (General Unsecured Claim) in the amount of $94,761,076 pursuant to the Court's order temporarily allowing the UBS claim in that amount for voting purposes; and

- The Debtor inadvertently understated the aggregate amount of Class 8 (General Unsecured Claims) by $4,392,937, which error is corrected in the Amended Liquidation Analysis/Financial Projections.

**PLEASE TAKE NOTICE** that the Debtor hereby files the documents included herewith

---

[2] All capitalized terms used but not defined herein have the meanings given to them in the Plan.

as **Exhibits DD-FF** (collectively, the "<u>Fifth Plan Supplement</u>") as Exhibits DD-FF to the Plan:

> **Exhibit DD**: Schedule of Retained Causes of Action (supersedes Exhibits E, L, and Q);
>
> **Exhibit EE**: Revisions to Form of Claimant Trust Agreement (amends Exhibit R); and
>
> **Exhibit FF**: Schedule of Contracts and Leases to Be Assumed (supersedes Exhibit H, I, and X).[3]

**PLEASE TAKE NOTICE** that the Debtor hereby gives notice of supplemental amendments (the "<u>Plan Amendments</u>") to the Plan, which are set forth in the redlined excerpts of the Plan attached hereto as **Exhibit B**.

*[Remainder of Page Intentionally Blank]*

---

[3] The Schedule of Contracts and Leases includes an agreement with Bloomberg Finance, L.P. ("<u>Bloomberg</u>"). The Debtor is currently in discussions with Bloomberg regarding the assumption of such agreement.

DOCS_NY:42174.4 36027/002

014199

Dated: February 1, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

014200

# EXHIBIT A

**Highland Capital Management, L.P.**
*Disclaimer For Financial Projections*

This document includes financial projections for July 2020 through December 2022 (the "Projections") for Highland Capital Management, L.P. "Company"). These Projections have been prepared by DSI with input from management at the Company. The historical information utilized in these Projections has not been audited or reviewed for accuracy by DSI.

This document includes certain statements, estimates and forecasts provided by the Company with respect to the Company's anticipated future performance. These estimates and forecasts contain significant elements of subjective judgment and analysis that may or may not prove to be accurate or correct. There can be no assurance that these statements, estimates and forecasts will be attained and actual outcomes and results may differ materially from what is estimated or forecast herein.

These Projections should not be regarded as a representation of DSI that the projected results will be achieved.

Management may update or supplement these Projections in the future, however, DSI expressly disclaims any obligation to update its report.

These Projections were not prepared with a view toward compliance with published guidelines of the Securities and Exchange Commission or the American Institute of Certified Public Accountants regarding historical financial statements, projections or forecasts.

014202

*Highland Capital Management, L.P.*
*Statement of Assumptions*

A. Plan effective date is March 1, 2021

B. All investment assets are sold by December 31, 2022.

C. All demand notes are collected in the year 2021; 3 term notes defaulted and have been demanded based on default provisions; payment estimated in 2021

D. Dugaboy term note with maturity date beyond 12/31/2022 are sold in Q1 2022; in the interim interest income and principal payments are not collected due to prepayment on note

E. Fixed assets currently used in daily operations are sold in June 2021 for $0

F. Highland bonus plan has been terminated in accordance with its terms. Accrual for employee bonuses as of January 2021 are reversed and not paid.

G. All Management advisory or shared service contracts are terminated on their terms by the effective date or shortly thereafter

H. Post-effective date, the reorganized Debtor would retain up to ten HCMLP employees (or hire similar employees) to help monetize the remaining assets.

I. Litigation Trustee budget is $6,500,000.

J. Unrealized gains or losses are not recorded on a monthly basis; all gains or losses are recorded as realized gains or losses upon sale of asset.

K. Plan does not provide for payment of interest to Class 8 holders of general unsecured claims, as set forth in the Plan. If holders of general unsecured claims receive 100% of their allowed claims, they would then be entitled to receive interest at the federal judgement rate, prior to any funds being available for claims or interest of junior priority.

L. Plan assumes zero allowed claims for IFA and Hunter Mountain Investment Trust ("HMI").

M. Claim amounts listed in Plan vs. Liquidation schedule are subject to change; claim amounts in Class 8 assume $0 for IFA and HM, $50.0 million for UBS and $45 million HV. Assumes RCP claims will offset HCMLP's interest in fund and will not be paid from Debtor assets

N. With the exception of Class 2 - Frontier, Classes 1-7 will be paid in full within 30 days of effective date.

O. Class 7 payout limited to 85% of each individual creditor claim or in the aggregate $13.15 million. Plan currently projects Class 7 payout of $10.3 million.

P. See below for Class 8 estimated payout schedule; payout is subject to certain assets being monetized by payout date (no Plan requirement to do so):

    ○ By September 30, 2021 - $50,000,000

    ○ By March 31, 2022 – additional $50,000,000

    ○ By June 30, 2022 – additional $25,000,000

    ○ All remaining proceeds are assumed to be paid out on or soon after all remaining assets are monetized.

Q. Assumptions subject to revision based on business decision and performance of the business

014203

2/1/2021

014204

**Highland Capital Management, L.P.**
*Plan Analysis Vs. Liquidation Analysis*
*(US $000's)*

| | Plan Analysis | Liquidation Analysis |
|---|---|---|
| Estimated cash on hand at 1/31/2020 | $ 24,290 | $ 24,290 |
| Estimated proceeds from monetization of assets [1][2] | 257,941 | 191,946 |
| Estimated expenses through final distribution[1][3] | (59,573) | (41,488) |
| Total estimated $ available for distribution | 222,658 | 174,748 |
| Less: Claims paid in full | | |
| Unclassified [4] | | |
| Administrative claims [5] | (1,080) | (1,080) |
| Class 1 - Jefferies Secured Claim | (10,574) | (10,574) |
| Class 2 - Frontier Secured Claim [6] | (5,781) | (5,781) |
| Class 3 - Other Secured Claims | (62) | (62) |
| Class 4 - Priority Non-Tax Claims | (16) | (16) |
| Class 5 - Retained Employee Claims | - | - |
| Class 6 - PTO Claims [5] | - | - |
| Class 7 – Convenience Claims [7][8] | (10,280) | - |
| Subtotal | (27,793) | (17,514) |
| Estimated amount remaining for distribution to general unsecured claims | 194,865 | 157,235 |
| % Distribution to Class 7 (Class 7 claims included in Class 8 in Liquidation scenario) | 85.00% | 0.00% |
| Class 8 – General Unsecured Claims [8][10] | 273,219 | 286,100 |
| Subtotal | 273,219 | 286,100 |
| % Distribution to general unsecured claims | 71.32% | 54.96% |
| Estimated amount remaining for distribution | - | - |
| Class 9 – Subordinated Claims | no distribution | no distribution |
| Class 10 – Class B/C Limited Partnership Interests | no distribution | no distribution |
| Class 11 – Class A Limited Partnership Interest | no distribution | no distribution |

*Footnotes:*

[1] Assumes chapter 7 Trustee will not be able to achieve same sales proceeds as Claimant Trustee

Assumes Chapter 7 Trustee engages new professionals to help liquidate assets and terminates any management agreements with funds or CLOS

[2] Sale of investment assets, sale of fixed assets, collection of accounts receivable and interest receivable; Plan includes revenue from managing CLOs

[3] Estimated expenses through final distribution exclude non-cash expenses:

Depreciation of $462 thousand in 2021; Bad debt of $124K in 2021

[4] Unclassified claims include payments for priority tax claims and settlements with previously approved by the Bankruptcy Court

[5] Represents $4.7 million in unpaid professional fees, $4.5 million in timing of payments to vendors and $1.2 million to pay PTO

[6] Debtor will pay all unpaid interest estimated at $253 thousand of Frontier on effective date and continue to pay interest quarterly at 5.25% until Frontier's collateral is sold

[7] Claims payout limited to 85% of each individual creditor claim or limited to a total class payout of $13.15 million

[8] Plan: Class 7 includes $1.2 million estimate for aggregate contract rejections damage; Liquidation Class 8 includes $2.0 million for estimated rejection damages

[10] Class estimates $0 allowed claim for the following creditors: IFA and HM; assumes RCP claims offset against HCMLP interest in RCP Fund

UBS claim included at $50.0 million.

*Notes:*

All claim amounts are estimated as of February 1, 2020 and subject to change

Case 19-34054-sgj11 Doc 1885-1 Filed 02/01/21 Entered 02/01/21 16:26:35 Page 50 of 63
49

**Highland Capital Management, L.P.**
*Balance Sheet*
*(US $000's)*

| | Actual Jun-20 | Actual Sep-20 | Forecast --> Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | |
| Cash and Cash Equivalents | $ 14,994 | $ 5,888 | $ 31,047 | $ 10,328 | $ 40,063 | $ 42,833 | $ 135,137 | $ 80,733 | $ 72,238 | $ 69,368 | $ - |
| Other Current Assets | 13,182 | 13,651 | 13,784 | 15,172 | 14,671 | 14,220 | 9,943 | 8,268 | 8,417 | 8,567 | - |
| Investment Assets | 320,912 | 305,961 | 283,812 | 280,946 | 233,234 | 171,174 | 47,503 | 47,503 | 25,888 | 25,888 | - |
| Net Fixed Assets | 3,055 | 2,823 | 2,592 | 1,348 | - | - | - | - | - | - | - |
| **TOTAL ASSETS** | $ 352,142 | $ 328,323 | $ 331,235 | $ 307,793 | $ 287,968 | $ 228,227 | $ 192,583 | $ 136,504 | $ 106,542 | $ 103,823 | $ - |
| **Liabilities** | | | | | | | | | | | |
| Post-petition Liabilities | $ 142,730 | $ 135,597 | $ 131,230 | $ 12,891 | $ 10,249 | $ 10,503 | $ - | $ - | $ - | $ - | $ - |
| Pre-petition Liabilities | 9,861 | 9,884 | 10,000 | - | - | - | - | - | - | - | - |
| Claims | | | | | | | | | | | |
| Unclassified | - | - | - | - | - | - | - | - | - | - | - |
| Class 1 – Jefferies Secured Claim | - | - | - | - | - | - | - | - | - | - | - |
| Class 2 – Frontier Secured Claim | - | - | - | 5,528 | - | - | - | - | - | - | - |
| Class 3 - Other Secured Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 4 – Priority Non-Tax Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 5 – Retained Employee Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 6 – PTO Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 7 – Convenience Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 8 – General Unsecured Claims | - | - | - | 273,219 | 273,219 | 223,219 | 223,219 | 173,219 | 148,219 | 148,219 | 78,354 |
| Class 9 – Subordinated Claims [1] | - | - | - | - | - | - | - | - | - | - | - |
| Class 10 – Class B/C Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Class 11 – Class A Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Claim Payable | 9,861 | 9,884 | 10,000 | 278,747 | 273,219 | 223,219 | 223,219 | 173,219 | 148,219 | 148,219 | 78,354 |
| **TOTAL LIABILITIES** | $ 152,591 | $ 145,481 | $ 141,230 | $ 291,639 | $ 283,468 | $ 233,723 | $ 223,219 | $ 173,219 | $ 148,219 | $ 148,219 | $ 78,354 |
| Partners' Capital | 199,551 | 182,842 | 190,005 | 16,154 | 4,500 | (5,495) | (30,636) | (36,715) | (41,677) | (44,396) | (78,354) |
| **TOTAL LIABILITIES AND PARTNERS' CAPITAL** | $ 352,142 | $ 328,323 | $ 331,235 | $ 307,793 | $ 287,968 | $ 228,227 | $ 192,583 | $ 136,504 | $ 106,543 | $ 103,823 | $ - |

*[1] Class 9 has $60 million of subordinated claims; Debtor anticipates no distributions to Class 9*

2/1/2021

014206

**Highland Capital Management, L.P.**
*Profit/Loss*
*(US $000's)*

| | Actual Jan 2020 to June 2020 Total | Actual 3 month ended Sept 2020 | Forecast --> 3 month ended Dec 2020 | Total 2020 | 3 month ended Mar 2021 | 3 month ended Jun 2021 | 3 month ended Sept 2021 | 3 month ended Dec 2021 | Total 2021 |
|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | |
| Management Fees | $ 6,572 | $ 1,949 | $ 2,804 | $ 11,325 | $ 1,329 | $ 856 | $ 856 | $ 856 | $ 3,897 |
| Shared Service Fees | 7,672 | 3,765 | 3,788 | 15,225 | 1,373 | 45 | 45 | - | 1,463 |
| Other Income | 3,126 | 538 | 340 | 4,004 | 316 | 274 | - | - | 590 |
| **Total revenue** | $ 17,370 | $ 6,252 | $ 6,931 | $ 30,554 | $ 3,018 | $ 1,176 | $ 901 | $ 856 | $ 5,951 |
| Operating Expenses [1] | 13,328 | 9,171 | 9,399 | 31,899 | 12,168 | 4,897 | 3,973 | 3,333 | 24,371 |
| **Income/(loss) From Operations** | $ 4,042 | $ (2,918) | $ (2,468) | $ (1,345) | $ (9,149) | $ (3,722) | $ (3,072) | $ (2,477) | $ (18,420) |
| Professional Fees | 17,522 | 7,707 | 8,351 | 33,581 | 7,478 | 6,583 | 2,268 | 1,810 | 18,139 |
| Other Income/(Expenses) [2] | 2,302 | 1,518 | 1,059 | 4,879 | (156,042) | 326 | (93) | 29 | (155,780) |
| **Operating Gain/(Loss)** | $ (11,178) | $ (9,107) | $ (9,761) | $ (30,046) | $ (172,669) | $ (9,978) | $ (5,433) | $ (4,259) | $ (192,339) |
| **Realized and Unrealized Gain/(Loss)** | | | | | | | | | |
| Other Realized Gains/(Loss) | - | - | - | - | (1,013) | 522 | - | - | (491) |
| Net Realized Gain/(Loss) on Sale of Investment | (28,418) | 1,549 | (8,850) | (35,719) | (168) | (2,198) | (4,563) | (7,581) | (14,510) |
| Net Change in Unrealized Gain/(Loss) of Investments | (29,259) | (7,450) | 4,523 | (32,857) | - | - | - | - | - |
| Net Realized Gain /(Loss) from Equity Method Investees | - | - | (364) | (364) | - | - | - | (13,301) | (13,301) |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | (80,782) | (1,700) | - | (82,482) | - | - | - | - | - |
| **Total Realized and Unrealized Gain/(Loss)** | $ (139,129) | $ (7,601) | $ (4,692) | $ (151,422) | $ (1,182) | $ (1,675) | $ (4,563) | $ (20,882) | $ (28,302) |
| **Net Income** | $ (150,307) | $ (16,708) | $ (14,453) | $ (181,468) | $ (173,851) | $ (11,654) | $ (9,996) | $ (25,141) | $ (220,641) |

*Footnotes:*
[1] Operating expenses include an adjustment in January 2021 to account
   for expenses that have not been accrued or paid prior to effective date.
[2] Other income and expenses of $197.3 million in Q1 2021 includes:
   [a] $209.7 million was expensed to record for the increase of
      allowed claims.
   [b] Income of $11.7 million for the accrued, but unpaid payroll liability related to
      the Debtor's deferred bonus programs amount written-off.

2/1/2021

014207

**Highland Capital Management, L.P.**
*Profit/Loss*
*(US $000's)*

|  | Forecast ---> | | | | | |
|  | 3 month ended Mar 2022 | 3 month ended Jun 2022 | 3 month ended Sept 2022 | 3 month ended Dec 2022 | Total 2022 | Plan |
|---|---|---|---|---|---|---|
| **Revenue** | | | | | | |
| Management Fees | $ 580 | $ 580 | $ 580 | $ 580 | $ 2,318 | $ 6,215 |
| Shared Service Fees | - | - | - | - | - | 1,463 |
| Other Income | - | - | - | - | - | 591 |
| Total revenue | $ 580 | $ 580 | $ 580 | $ 580 | $ 2,318 | $ 8,269 |
| Operating Expenses | 3,635 | 2,679 | 1,739 | 6,425 | 14,478 | 38,849 |
| Income/(loss) From Operations | $ (3,056) | $ (2,099) | $ (1,159) | $ (5,846) | $ (12,160) | $ (30,580) |
| Professional Fees | 2,921 | 2,761 | 1,461 | 2,176 | 9,318 | 27,455 |
| Other Income/(Expenses) | (103) | (101) | (100) | (350) | (654) | (156,434) |
| Operating Gain/(Loss) | $ (6,079) | $ (4,961) | $ (2,719) | $ (8,371) | $ (22,131) | $ (214,470) |
| **Realized and Unrealized Gain/(Loss)** | | | | | | |
| Other Realized Gains/(Loss) | | | | (25,587) | (25,587) | (26,078) |
| Net Realized Gain/(Loss) on Sale of Investment | | | | | | (14,510) |
| Net Change in Unrealized Gain/(Loss) of Investments | | | | | | - |
| Net Realized Gain /(Loss) from Equity Method Investees | | | | | | (13,301) |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | | | | | | - |
| Total Realized and Unrealized Gain/(Loss) | $ - | $ - | $ - | $ (25,587) | $ (25,587) | $ (53,889) |
| Net Income | $ (6,079) | $ (4,961) | $ (2,719) | $ (33,958) | $ (47,718) | $ (268,359) |

**Highland Capital Management, L.P.**
*Cash Flow Indirect*
*(US $000's)*

| | Forecast ---> | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Sep-20 | Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
| Net (Loss) Income | $ (16,708) | $ (14,453) | $ (173,851) | $ (11,654) | $ (9,996) | $ (25,141) | $ (6,079) | $ (4,961) | $ (2,719) | $ (33,363) |
| Cash Flow from Operating Activity | | | | | | | | | | |
| (Increase) / Decrease in Cash | | | | | | | | | | |
| Depreciation and amortization | 231 | 231 | 231 | 231 | - | - | - | - | - | - |
| Other realized (gain)/ loss | - | - | 1,013 | (522) | - | - | - | - | - | 25,997 |
| Investment realized (gain)/ loss | (1,549) | 9,214 | 168 | 2,198 | 4,563 | 20,882 | - | - | - | - |
| Unrealized (gain) / loss | (9,150) | 4,523 | - | - | - | - | - | - | - | - |
| (Increase) Decrease in Current Assets | (470) | (133) | (1,388) | 501 | 450 | 4,277 | 1,675 | (149) | (150) | - |
| Increase (Decrease) in Current Liabilities | (7,110) | (4,251) | (44,172) | (2,643) | 255 | (10,503) | - | - | - | - |
| Net Cash Increase / (Decrease) - Operating Activities | (34,757) | (4,868) | (217,998) | (11,889) | (4,727) | (10,485) | (4,404) | (5,110) | (2,870) | (7,366) |
| Cash Flow From Investing Activities | | | | | | | | | | |
| Proceeds from Sale of Fixed Assets | - | - | - | - | - | - | - | - | - | - |
| Proceeds from Investment Assets | 25,650 | 30,027 | 2,698 | 47,152 | 57,498 | 102,788 | - | 21,616 | - | 7,960 |
| Net Cash Increase / (Decrease) - Investing Activities | 25,650 | 30,027 | 2,698 | 47,152 | 57,498 | 102,788 | - | 21,616 | - | 7,960 |
| Cash Flow from Financing Activities | | | | | | | | | | |
| Claims payable | - | - | (73,997) | (5,528) | (50,000) | - | (50,000) | (25,000) | - | (69,368) |
| Claim reclasses/(paid) | - | - | 278,747 | - | - | - | - | - | - | - |
| Maple Avenue Holdings | - | - | (4,975) | - | - | - | - | - | - | - |
| Frontier Note | - | - | (5,195) | - | - | - | - | - | - | - |
| Net Cash Increase / (Decrease) - Financing Activities | - | - | 194,580 | (5,528) | (50,000) | - | (50,000) | (25,000) | - | (69,368) |
| Net Change in Cash | $ (9,107) | $ 25,159 | $ (20,719) | $ 29,735 | $ 2,770 | $ 92,303 | $ (54,404) | $ (8,495) | $ (2,870) | $ (69,368) |
| Beginning Cash | 14,994 | 5,888 | 31,047 | 10,328 | 40,063 | 42,833 | 135,137 | 80,733 | 72,238 | 69,368 |
| Ending Cash | $ 5,888 | $ 31,047 | $ 10,328 | $ 40,063 | $ 42,833 | $ 135,137 | $ 80,733 | $ 72,238 | $ 69,368 | $ - |

# EXHIBIT B

014209

61. "*Estate Claims*" has the meaning given to it in <u>Exhibit A</u> to the *Notice of Final Term Sheet* [D.I. 354].

62. "*Exculpated Parties*" means, collectively, (i) the Debtor and its successors and assigns, ~~direct and indirect majority owned subsidiaries, and the Managed Funds~~, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

63. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

64. "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

65. "*Federal Judgment Rate*" means the post-judgment interest rate set forth in 28 U.S.C. § 1961 as of the Effective Date.

66. "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

67. "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

~~9~~

126.   "*Strand*" means Strand Advisors, Inc., the Debtor's general partner.

127.   "*Sub-Servicer*" means a third-party selected by the Claimant Trustee to service or sub-service the Reorganized Debtor Assets.

128.   "*Sub-Servicer Agreement*" means the agreement that may be entered into providing for the servicing of the Reorganized Debtor Assets by the Sub-Servicer.

129.   "*Subordinated Claim*" means any Claim that is subordinated to the Convenience Claims and General Unsecured Claims pursuant to ~~11 U.S.C. § 510 or~~an order entered by the Bankruptcy Court (including any other court having jurisdiction over the Chapter 11 Case) after notice and a hearing.

130.   "*Subordinated Claimant Trust Interests*" means the Claimant Trust Interests to be distributed to Holders of Allowed Subordinated Claims under the Plan, which such interests shall be subordinated in right and priority to the Claimant Trust Interests distributed to Holders of Allowed General Unsecured Claims as provided in the Claimant Trust Agreement.

131.   "*Trust Distribution*" means the transfer of Cash or other property by the Claimant Trustee to the Claimant Trust Beneficiaries.

132.   "*Trustees*" means, collectively, the Claimant Trustee and Litigation Trustee.

133.   "*UBS*" means, collectively, UBS Securities LLC and UBS AG London Branch.

134.   "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

135.   "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

136.   "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtor to solicit acceptances of the Plan.

137.   "*Voting Record Date*" means November 23, 2020.

014211

Professional Fee Claim Objection Deadline. Each Holder of an Allowed Professional Fee Claim will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

On the Effective Date, the Claimant Trustee shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Claimant Trust and shall be maintained by the Claimant Trustee in accordance with the Plan and Claimant Trust Agreement. The Claimant Trust shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Debtor in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

## C.    Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor: (a) Cash in an amount of a total value as of the Effective Date of the Plan equal to the amount of such Allowed Priority Tax Claim, (b) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (b) if paid over time, payment of such Allowed Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; or (c) such other less favorable treatment as agreed to in writing by the Debtor and such Holder. Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however,* that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

## A.    Summary

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within

**I.**     **Special Provision Governing Unimpaired Claims**

      Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**J.**     **Subordinated Claims**

      The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. ~~Under section 510 of the Bankruptcy Code, upon~~Upon written notice and hearing, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to seek entry of an order by the Bankruptcy Court to re-classify or to subordinate any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

**A.**     **Summary**

      As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

      On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner. The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement. Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC. The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

      Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan. The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

~~25~~

014213

Notwithstanding anything herein to the contrary, the Debtor shall assume or reject that certain real property lease with Crescent TC Investors L.P. ("Landlord") for the Debtor's headquarters located at 200/300 Crescent Ct., Suite #700, Dallas, Texas 75201 (the "Lease") in accordance with the notice to Landlord, procedures and timing required by 11 U.S.C. §365(d)(4), as modified by that certain *Agreed Order Granting Motion to Extend Time to Assume or Reject Unexpired Nonresidential Real Property Lease* [Docket No. 1122].

**B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Confirmation Date shall be deemed rejected, pursuant to the Confirmation Order.  Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the ~~Effective~~Confirmation Date.  Any Rejection Claims that are not timely Filed pursuant to this Plan shall be forever disallowed and barred.  If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with ARTICLE III of this Plan.

**C.     Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree.  The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure amount (if any).

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to this ARTICLE V.C shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment.  Any and all Proofs of Claim based upon Executory Contracts

~~39~~

forth in the Plan Documents; (ii) the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent; (iii) the implementation of this Plan in accordance with its terms is authorized; (iv) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under this Plan, shall not be subject to any Stamp or Similar Tax; and (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

- All documents and agreements necessary to implement this Plan, including without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, in each case in form and substance reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect.  All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement this Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

- The Debtor shall have obtained applicable directors' and officers' insurance coverage that is acceptable to each of the Debtor, the Committee, the Claimant Trust Oversight Committee, the Claimant Trustee and the Litigation Trustee.

- The Professional Fee Reserve shall be funded pursuant to this Plan in an amount determined by the Debtor in good faith.

**B.**    **Waiver of Conditions**

The conditions to effectiveness of this Plan set forth in this ARTICLE VIII (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee) and any applicable parties in Section VII.A of this Plan, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or

47

47

014215

# EXHIBIT DD

014216

Schedule of Causes of Action

The Causes of Action shall include, *without limitation*, any cause of action based on the following:

breach of fiduciary duties, breach of duty of care, breach of duty of loyalty, usurpation of corporate opportunities, breach of implied covenant of good faith and fair dealing, conversion, misappropriation of assets, misappropriation of trade secrets, unfair competition, breach of contract, breach of warranty, fraud, constructive fraud, negligence, gross negligence, fraudulent conveyance, fraudulent transfer, fraudulent misrepresentation, negligent misrepresentation, fraudulent concealment, fraudulent inducement, tortious interference, *quantum meruit*, unjust enrichment, abuse of process, alter ego, substantive consolidation, recharacterization, business disparagement, indemnity, claims for recovery of distributions or dividends, claims for indemnification, promissory estoppel, quasi-contract claims, any counterclaims, equitable subordination, avoidance actions provided for under sections 544 or 547 of the Bankruptcy Code, claims brought under state law, claims brought under federal law, claims under any common-law theory of tort or law or equity, and any claims similar in nature to the foregoing claims.

The Causes of Action shall include, *without limitation*, any cause of action against the following persons and entities:

James Dondero, Mark Okada, Grant Scott, John Honis, any current or former insider of the Debtor, the Dugaboy Investment Trust, Charitable DAF Holdco, Ltd, Hunter Mountain Investment Trust, Nexbank Capital, Inc. Highland Capital Management Services, Inc., NexPoint Advisors GP, LLC, NexPoint Advisors, L.P., Strand Advisors XVI, Inc., Highland Capital Management Fund Advisors, L.P., NexAnnuity Holdings, Inc., the entities listed on the attached **Annex 1** hereto, any current or former employee of the Debtor, and any entity directly or indirectly owned, controlled, or operated for the benefit of the foregoing persons or entities.

The Causes of Action shall include, *without limitation*, any cause of action arising from the following transactions:

The transfer of ownership interests in the Debtor to Hunter Mountain Investment Trust, the creation or transfer of any notes receivable from the Debtor or from any entity related to the Debtor, the creation or transfer of assets to or from any charitable foundation or trust, the formation, performance, or breach of any contract for the Debtor to provide investment management, support services, or any other services, and the distribution of assets or cash from the Debtor to partners of the Debtor.

### Annex 1

11 Estates Lane, LLC
1110 Waters, LLC
140 Albany, LLC
1525 Dragon, LLC
17720 Dickerson, LLC
1905 Wylie LLC
2006 Milam East Partners GP, LLC
2006 Milam East Partners, L.P.
201 Tarrant Partners, LLC
2014 Corpus Weber Road LLC
2325 Stemmons HoldCo, LLC
2325 Stemmons Hotel Partners, LLC
2325 Stemmons TRS, Inc.
300 Lamar, LLC
3409 Rosedale, LLC
3801 Maplewood, LLC
3801 Shenandoah, L.P.
3820 Goar Park LLC
400 Seaman, LLC
401 Ame, L.P.
4201 Locust, L.P.
4312 Belclaire, LLC
5833 Woodland, L.P.
5906 DeLoache, LLC
5950 DeLoache, LLC
7758 Ronnie, LLC
7759 Ronnie, LLC
AA Shotguns, LLC
Aberdeen Loan Funding, Ltd.
Acis CLO 2017-7 Ltd
Acis CLO Management GP, LLC
Acis CLO Management GP, LLC *(fka Acis CLO Opportunity Funds GP, LLC)*
Acis CLO Management Holdings, L.P.
Acis CLO Management Intermediate Holdings I, LLC
Acis CLO Management Intermediate Holdings II, LLC
Acis CLO Management, LLC *(fka Acis CLO Opportunity Funds SLP, LLC)*
Acis CLO Trust

Acis CLO Value Fund II Charitable DAF Ltd.
Acis CMOA Trust
Advisors Equity Group LLC
Alamo Manhattan Hotel I, LLC (Third Party)
Allenby, LLC
Allisonville RE Holdings, LLC
AM Uptown Hotel, LLC
Apex Care, L.P
Asbury Holdings, LLC *(fka HCSLR Camelback Investors (Delaware), LLC)*
Ascendant Advisors
Atlas IDF GP, LLC
Atlas IDF, LP
BB Votorantim Highland Infrastructure, LLC
BDC Toys Holdco, LLC
Beacon Mountain, LLC
Bedell Trust Ireland Limited (Charitable trust account)
Ben Roby (third party)
BH Equities, LLC
BH Heron Pointe, LLC
BH Hollister, LLC
BH Willowdale Manager, LLC
Big Spring Partners, LLC
Blair Investment Partners, LLC
Bloomdale, LLC
Brave Holdings III Inc.
Brentwood CLO, Ltd.
Brentwood Investors Corp.
Brian Mitts
Bristol Bay Funding Ltd.
Bristol Bay Funding, Ltd.
BVP Property, LLC
C-1 Arbors, Inc.
C-1 Cutter's Point, Inc.
C-1 Eaglecrest, Inc.
C-1 Silverbrook, Inc.
Cabi Holdco GP, LLC
Cabi Holdco I, Ltd
Cabi Holdco I, Ltd.

014218

Cabi Holdco, L.P.

California Public Employees' Retirement System

Camelback Residential Investors, LLC

Camelback Residential Investors, LLC
*(fka Sevilla Residential Partners, LLC)*

Camelback Residential Partners, LLC

Capital Real Estate - Latitude, LLC

Castle Bio Manager, LLC

Castle Bio, LLC

Cayco Admin Ltd.

Cayco Insolvency Ltd.

CG Works, Inc.

CG Works, Inc.
*(fka Common Grace Ventures, Inc.)*

Charitable DAF Fund, L.P.

Charitable DAF GP, LLC

Charitable DAF HoldCo, Ltd

Charitable DAF HoldCo, Ltd.

Claymore Holdings, LLC

CLO HoldCo, Ltd

CLO Holdco, Ltd.

Corbusier, Ltd.

Cornerstone Healthcare Group Holding, Inc.

Corpus Weber Road Member LLC

CP Equity Hotel Owner, LLC

CP Equity Land Owner, LLC

CP Equity Owner, LLC

CP Hotel TRS, LLC

CP Land Owner, LLC

CP Tower Owner, LLC

CRE - Lat, LLC

Credit Suisse, Cayman Islands Branch

Crossings 2017 LLC

Crown Global Insurance Company (third party)

Dallas Cityplace MF SPE Owner LLC

Dallas Lease and Finance, L.P.

Dana Scott Breault
James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Dana Sprong (Third Party)

David c. Hopson

De Kooning, Ltd.

deKooning, Ltd.

DFA/BH Autumn Ridge, LLC

Dolomiti, LLC

DrugCrafters, L.P.

Dugaboy Investment Trust

Dugaboy Management, LLC

Dugaboy Project Management GP, LLC

Eagle Equity Advisors, LLC

Eames, Ltd.

Eastland CLO, Ltd.

Eastland Investors Corp.

EDS Legacy Heliport, LLC

EDS Legacy Partners Owner, LLC

EDS Legacy Partners, LLC

Empower Dallas Foundation, Inc.

ENA 41, LLC

Entegra Strat Superholdco, LLC

Entegra-FRO Holdco, LLC

Entegra-FRO Superholdco, LLC

Entegra-HOCF Holdco, LLC

Entegra-NHF Holdco, LLC

Entegra-NHF Superholdco, LLC

Entegra-RCP Holdco, LLC

Estates on Maryland Holdco, LLC

Estates on Maryland Owners SM, Inc.

Estates on Maryland Owners, LLC

Estates on Maryland, LLC

Falcon E&P Four Holdings, LLC

Falcon E&P One, LLC

Falcon E&P Opportunities Fund, L.P.

Falcon E&P Opportunities GP, LLC

Falcon E&P Royalty Holdings, LLC

Falcon E&P Six, LLC

Falcon E&P Two, LLC

Falcon Four Midstream, LLC

Falcon Four Upstream, LLC

Falcon Incentive Partners GP, LLC

Falcon Incentive Partners, LP

Falcon Six Midstream, LLC

Flamingo Vegas Holdco, LLC *(fka Cabi Holdco, LLC)*

Four Rivers Co-Invest GP, LLC
Four Rivers Co-Invest, L.P.
FRBH Abbington SM, Inc.
FRBH Abbington, LLC
FRBH Arbors, LLC
FRBH Beechwood SM, Inc.
FRBH Beechwood, LLC
FRBH C1 Residential, LLC
FRBH Courtney Cove SM, Inc.
FRBH Courtney Cove, LLC
FRBH CP, LLC
FRBH Duck Creek, LLC
FRBH Eaglecrest, LLC
FRBH Edgewater JV, LLC
FRBH Edgewater Owner, LLC
FRBH Edgewater SM, Inc.
FRBH JAX-TPA, LLC
FRBH Nashville Residential, LLC
FRBH Regatta Bay, LLC
FRBH Sabal Park SM, Inc.
FRBH Sabal Park, LLC
FRBH Silverbrook, LLC
FRBH Timberglen, LLC
FRBH Willow Grove SM, Inc.
FRBH Willow Grove, LLC
FRBH Woodbridge SM, Inc.
FRBH Woodbridge, LLC
Freedom C1 Residential, LLC
Freedom Duck Creek, LLC
Freedom Edgewater, LLC
Freedom JAX-TPA Residential, LLC
Freedom La Mirage, LLC
Freedom LHV LLC
Freedom Lubbock LLC
Freedom Miramar Apartments, LLC
Freedom Sandstone, LLC
Freedom Willowdale, LLC
Fundo de Investimento em Direitos Creditorios BB Votorantim Highland Infraestrutura
G&E Apartment REIT The Heights at Olde Towne, LLC
G&E Apartment REIT The Myrtles at Olde Towne, LLC

GAF REIT, LLC
GAF Toys Holdco, LLC
Gardens of Denton II, L.P.
Gardens of Denton III, L.P.
Gleneagles CLO, Ltd.
Goverannce RE, Ltd.
Governance Re, Ltd.
Governance, Ltd.
Grant Scott
Grant Scott, Trustee of The SLHC Trust
Grayson CLO, Ltd.
Grayson Investors Corp.
Greater Kansas City Community Foundation (third party)
Greenbriar CLO, Ltd.
Greg Busseyt
Gunwale LLC
Gunwale, LLC
Hakusan, LLC
Hammark Holdings LLC
Hampton Ridge Partners, LLC
Harko, LLC
Harry Bookey/Pam Bookey (third party)
Haverhill Acquisition Co., LLC
Haygood, LLC
HB 2015 Family LP (third party)
HCBH 11611 Ferguson, LLC
HCBH Buffalo Pointe II, LLC
HCBH Buffalo Pointe III, LLC
HCBH Buffalo Pointe, LLC
HCBH Hampton Woods SM, Inc.
HCBH Hampton Woods, LLC
HCBH Overlook SM, Inc.
HCBH Overlook, LLC
HCBH Rent Investors, LLC
HCMS Falcon GP, LLC
HCMS Falcon, L.P.
HCO Holdings, LLC
HCOF Preferred Holdings, L.P.
HCOF Preferred Holdings, LP
HCOF Preferred Holdings, Ltd.
HCRE 1775 James Ave, LLC
HCRE Addison TRS, LLC

HCRE Addison, LLC *(fka HWS Addison, LLC)*

HCRE Hotel Partner, LLC *(fka HCRE HWS Partner, LLC)*

HCRE Las Colinas TRS, LLC

HCRE Las Colinas, LLC *(fka HWS Las Colinas, LLC)*

HCRE Plano TRS, LLC

HCRE Plano, LLC *(fka HWS Plano, LLC)*

HCREF-I Holding Corp.

HCREF-II Holding Corp.

HCREF-III Holding Corp.

HCREF-IV Holding Corp.

HCREF-IX Holding Corp.

HCREF-V Holding Corp.

HCREF-VI Holding Corp.

HCREF-VII Holding Corp.

HCREF-VIII Holding Corp.

HCREF-XI Holding Corp.

HCREF-XII Holding Corp.

HCREF-XIII Holding Corp.

HCREF-XIV Holding Corp.

HCREF-XV Holding Corp.

HCSLR Camelback Investors (Cayman), Ltd.

HCSLR Camelback, LLC

HCT Holdco 2 Ltd.

HCT Holdco 2, Ltd.

HE 41, LLC

HE Capital 232 Phase I Property, LLC

HE Capital 232 Phase I, LLC

HE Capital Asante, LLC

HE Capital Fox Trails, LLC

HE Capital KR, LLC

HE Capital, LLC

HE CLO Holdco, LLC

HE Mezz Fox Trails, LLC

HE Mezz KR, LLC

HE Peoria Place Property, LLC

HE Peoria Place, LLC

Heron Pointe Investors, LLC

Hewett's Island CLO I-R, Ltd.

HFP Asset Funding II, Ltd.

HFP Asset Funding III, Ltd.

HFP CDO Construction Corp.

HFP GP, LLC

HFRO Sub, LLC

Hibiscus HoldCo, LLC

Highland - First Foundation Income Fund

Highland 401(k) Plan

Highland 401K Plan

Highland Argentina Regional Opportunity Fund GP, LLC

Highland Argentina Regional Opportunity Fund, L.P.

Highland Argentina Regional Opportunity Fund, Ltd.

Highland Argentina Regional Opportunity Master Fund, L.P.

Highland Brasil, LLC

Highland Capital Brasil Gestora de Recursos *(fka Highland Brasilinvest Gestora de Recursos, LTDA; fka HBI Consultoria Empresarial, LTDA)*

Highland Capital Management (Singapore) Pte Ltd

Highland Capital Management AG

Highland Capital Management AG (Highland Capital Management SA) (Highland Capital Management Ltd)

Highland Capital Management Fund Advisors, L.P.

Highland Capital Management Fund Advisors, L.P. *(fka Pyxis Capital, L.P.)*

Highland Capital Management Korea Limited

Highland Capital Management Latin America, L.P.

Highland Capital Management LP Retirement Plan and Trust

Highland Capital Management Multi-Strategy Insurance Dedicated Fund, L.P.

Highland Capital Management Real Estate Holdings I, LLC

Highland Capital Management Real Estate Holdings II, LLC

Highland Capital Management Services, Inc.

Highland Capital Management, L.P.

Highland Capital Management, L.P. Charitable Fund

Highland Capital Management, L.P. Retirement Plan and Trust

Highland Capital Management, L.P., as trustee of Acis CMOA Trust and nominiee for and on behalf of Highland CLO Assets Holdings Limited

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd.

Highland Capital Management, LP

Highland Capital Management, LP Charitable Fund

Highland Capital Multi-Strategy Fund, LP

Highland Capital of New York, Inc.

Highland Capital Special Allocation, LLC

Highland CDO Holding Company

Highland CDO Opportunity Fund GP, L.P.

Highland CDO Opportunity Fund, L.P.

Highland CDO Opportunity Fund, Ltd.

Highland CDO Opportunity GP, LLC

Highland CDO Opportunity Master Fund, L.P.

Highland CDO Trust

Highland CLO 2018-1, Ltd.

Highland CLO Assets Holdings Limited

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd.

Highland CLO Funding, Ltd. *(fka Acis Loan Funding, Ltd.)*

Highland CLO Gaming Holdings, LLC

Highland CLO Holdings Ltd.

Highland CLO Holdings, Ltd. (as of 12.19.17)

Highland CLO Management Ltd.

Highland CLO Trust

Highland Credit Opportunities CDO Asset Holdings GP, Ltd.

Highland Credit Opportunities CDO Asset Holdings, L.P.

Highland Credit Opportunities CDO Financing, LLC

Highland Credit Opportunities CDO, Ltd.

Highland Credit Opportunities Holding Corporation

Highland Credit Opportunities Japanese Feeder Sub-Trust

Highland Credit Opportunities Japanese Unit Trust (Third Party)

Highland Credit Strategies Fund, L.P.

Highland Credit Strategies Fund, Ltd.

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Holding Corporation

Highland Credit Strategies Master Fund, L.P.

Highland Dallas Foundation, Inc.

Highland Dynamic Income Fund GP, LLC

Highland Dynamic Income Fund GP, LLC *(fka Highland Capital Loan GP, LLC)*

Highland Dynamic Income Fund, L.P.

Highland Dynamic Income Fund, L.P. *(fka Highland Capital Loan Fund, L.P.)*

Highland Dynamic Income Fund, Ltd.

Highland Dynamic Income Fund, Ltd. *(fka Highland Loan Fund, Ltd.)*

Highland Dynamic Income Master Fund, L.P.

Highland Dynamic Income Master Fund, L.P. *(fka Highland Loan Master Fund, L.P.)*

Highland Employee Retention Assets LLC

Highland Energy Holdings, LLC

Highland Energy MLP Fund *(fka Highland Energy and Materials Fund)*

Highland Equity Focus Fund, L.P.

Highland ERA Management, LLC

Highland eSports Private Equity Fund

Highland Financial Corp.

Highland Financial Partners, L.P.

Highland Fixed Income Fund

Highland Flexible Income UCITS Fund

Highland Floating Rate Fund

Highland Floating Rate Opportunites Fund

Highland Floating Rate Opportunities Fund

Highland Fund Holdings, LLC

Highland Funds I

Highland Funds II

Highland Funds III

Highland GAF Chemical Holdings, LLC

Highland General Partner, LP

Highland Global Allocation Fund

Highland Global Allocation Fund
*(fka Highland Global Allocation Fund II)*

Highland GP Holdings, LLC

Highland HCF Advisor Ltd.

Highland HCF Advisor, Ltd., as Trustee for
and on behalf of Acis CLO Trust, as nominee
for and on behalf of Highland CLO Funding,
Ltd. (as of 3.29.18)

Highland Healthcare Equity Income and
Growth Fund

Highland iBoxx Senior Loan ETF

Highland Income Fund

Highland Income Fund  *(fka Highland
Floating Rate Opportunities Fund)*

Highland Kansas City Foundation, Inc.

Highland Latin America Consulting, Ltd.

Highland Latin America GP, Ltd.

Highland Latin America LP, Ltd.

Highland Latin America Trust

Highland Legacy Limited

Highland LF Chemical Holdings, LLC

Highland Loan Funding V, LLC

Highland Loan Funding V, Ltd.

Highland Long/Short Equity Fund

Highland Long/Short Healthcare Fund

Highland Marcal Holding, Inc.

Highland Merger Arbitrage Fund

Highland Multi Strategy Credit Fund GP, L.P.

Highland Multi Strategy Credit Fund GP, L.P.
*(fka Highland Credit Opportunities CDO GP,
L.P.)*

Highland Multi Strategy Credit Fund, L.P.

Highland Multi Strategy Credit Fund, L.P. *(fka
Highland Credit Opportunities Fund, L.P., fka
Highland Credit Opportunities CDO, L.P.)*

Highland Multi Strategy Credit Fund, Ltd.

Highland Multi Strategy Credit Fund, Ltd. *(fka
Highland Credit Opportunities Fund, Ltd.)*

Highland Multi Strategy Credit GP, LLC

Highland Multi Strategy Credit GP, LLC *(fka
Highland Credit Opportunities CDO GP, LLC)*

Highland Multi-Strategy Fund GP, LLC

Highland Multi-Strategy Fund GP, LP

Highland Multi-Strategy IDF GP, LLC

Highland Multi-Strategy Master Fund, L.P.

Highland Multi-Strategy Master Fund, LP

Highland Multi-Strategy Onshore Master
SubFund II, LLC

Highland Multi-Strategy Onshore Master
Subfund, LLC

Highland Opportunistic Credit Fund

Highland Park CDO 1, Ltd.

Highland Park CDO I, Ltd.

Highland Premier Growth Equity Fund

Highland Premium Energy & Materials Fund

Highland Prometheus Feeder Fund I, L.P.

Highland Prometheus Feeder Fund I, LP

Highland Prometheus Feeder Fund II, L.P.

Highland Prometheus Feeder Fund II, LP

Highland Prometheus Master Fund, L.P.

Highland Receivables Finance I, LLC

Highland Restoration Capital Partners GP,
LLC

Highland Restoration Capital Partners Master,
L.P.

Highland Restoration Capital Partners
Offshore, L.P.

Highland Restoration Capital Partners, L.P.

Highland Santa Barbara Foundation, Inc.

Highland Select Equity Fund GP, L.P.

Highland Select Equity Fund, L.P.

Highland Select Equity GP, LLC

Highland Select Equity Master Fund, L.P.

014223

Highland Small-Cap Equity Fund

Highland Socially Responsible Equity Fund

Highland Socially Responsible Equity Fund
*(fka Highland Premier Growth Equity Fund)*

Highland Special Opportunities Holding Company

Highland SunBridge GP, LLC

Highland Tax-Exempt Fund

Highland TCI Holding Company, LLC

Highland Total Return Fund

Highland's Roads Land Holding Company, LLC

Hinduja Bank (Switzerland) Ltd

Hirst, Ltd.

HMCF PB Investors, LLC

HMx2 Investment Trust
(Matt McGraner)

Hockney, Ltd.

HRT North Atlanta, LLC

HRT Timber Creek, LLC

HRTBH North Atlanta, LLC

HRTBH Timber Creek, LLC

Huber Funding LLC

Hunter Mountain Investment Trust

HWS Investors Holdco, LLC

Internal Investors

Intertrust

James D. Dondero
Reese Avry Dondero
Jameson Drue Dondero

James Dondero

James Dondero and Mark Okada

James Dondero
Reese Avry Dondero
Jameson Drue Dondero

Japan Trustee Services Bank, Ltd.

Jasper CLO, Ltd.

Jewelry Ventures I, LLC

JMIJM, LLC

Joanna E. Milne Irrevocable Trust dated Nov 25 1998 (third party)

John Honis

John L. Holt, Jr.

John R. Sears, Jr.

Karisopolis, LLC

Keelhaul LLC

KHM Interests, LLC (third party)

Kuilima Montalban Holdings, LLC

Kuilima Resort Holdco, LLC

KV Cameron Creek Owner, LLC

Lakes at Renaissance Park Apartments Investors, L.P.

Lakeside Lane, LLC

Landmark Battleground Park II, LLC

Lane Britain

Larry K. Anders

LAT Battleground Park, LLC

LAT Briley Parkway, LLC

Lautner, Ltd.

Leawood RE Holdings, LLC

Liberty Cayman Holdings, Ltd.

Liberty CLO Holdco, Ltd.

Liberty CLO, Ltd.

Liberty Sub, Ltd.

Long Short Equity Sub, LLC

Longhorn Credit Funding LLC

Longhorn Credit Funding LLC - A

Longhorn Credit Funding LLC - B

Longhorn Credit Funding LLC (LHB)

Longhorn Credit Funding, LLC

Lurin Real Estate Holdings V, LLC

Maple Avenue Holdings, LLC

MaplesFS Limited

Marc C. Manzo

Mark and Pam Okada Family Trust - Exempt Descendants' Trust

Mark and Pam Okada Family Trust - Exempt Trust #2

Mark and Pamela Okada Family Trust - Exempt Descendants' Trust

Mark and Pamela Okada Family Trust - Exempt Descendants' Trust #2

Mark and Pamela Okada Family Trust - Exempt Trust #2

Mark K. Okada

Mark Okada

Mark Okada and Pam Okada

Mark Okada and Pam Okada, as joint owners

Mark Okada/Pamela Okada

Markham Fine Jewelers, L.P.

Markham Fine Jewelers, LP

Matt McGraner

Meritage Residential Partners, LLC

MGM Studios HoldCo, Ltd.

Michael Rossi

ML CLO XIX Sterling (Cayman), Ltd.

N/A

Nancy Dondero

NCI Apache Trail LLC

NCI Assets Holding Company LLC

NCI Country Club LLC

NCI Fort Worth Land LLC

NCI Front Beach Road LLC

NCI Minerals LLC

NCI Royse City Land LLC

NCI Stewart Creek LLC

NCI Storage, LLC

Neil Labatte

Neutra, Ltd.

New Jersey Tissue Company Holdco, LLC
*(fka Marcal Paper Mills Holding Company, LLC)*

NexAnnuity Holdings, Inc.

NexBank Capital Trust I

NexBank Capital, Inc.

NexBank Land Advisors, Inc.

NexBank Securities Inc.

NexBank Securities, Inc.

NexBank SSB

NexBank Title, Inc.
(dba NexVantage Title Services)

NexBank, SSB

NexPoint Advisors GP, LLC

NexPoint Advisors, L.P.

NexPoint Capital REIT, LLC

NexPoint Capital, Inc.

NexPoint Capital, Inc. *(fka NexPoint Capital, LLC)*

NexPoint CR F/H DST, LLC

NexPoint Credit Strategies Fund

NexPoint Discount Strategies Fund
*(fka NexPoint Discount Yield Fund)*

NexPoint DRIP

NexPoint Energy and Materials Opportunities
Fund *(fka NexPoint Energy Opportunities Fund)*

NexPoint Event-Driven Fund
*(fkaNexPoint Merger Arbitrage Fund)*

NexPoint Flamingo DST

NexPoint Flamingo Investment Co, LLC

NexPoint Flamingo Leaseco, LLC

NexPoint Flamingo Manager, LlC

NexPoint Flamingo Property Manager, LlC

NexPoint Healthcare Opportunities Fund

NexPoint Hospitality Trust

NexPoint Hospitality, Inc.

NexPoint Hospitality, LLC

NexPoint Insurance Distributors, LLC

NexPoint Insurance Solutions GP, LLC

NexPoint Insurance Solutions GP, LLC
*(fka Highland Capital Insurance Solutions GP, LLC)*

NexPoint Insurance Solutions, L.P.
*(fka Highland Capital Insurance Solutions, L.P.)*

NexPoint Latin American Opportunities Fund

NexPoint Legacy 22, LLC

NexPoint Lincoln Porte Equity, LLC

NexPoint Lincoln Porte Manager, LLC

NexPoint Lincoln Porte, LLC
*(fka NREA Lincoln Porte, LLC)*

NexPoint Multifamily Capital Trust, Inc.

NexPoint Multifamily Capital Trust, Inc.
*(fka NexPoint Multifamily Realty Trust, Inc., fka Highland Capital Realty Trust, Inc.)*

NexPoint Multifamily Operating Partnership,
L.P.

NexPoint Peoria, LLC

NexPoint Polo Glen DST

NexPoint Polo Glen Holdings, LLC

NexPoint Polo Glen Investment Co, LLC

NexPoint Polo Glen Leaseco, LLC

NexPoint Polo Glen Manager, LLC

NexPoint RE Finance Advisor GP, LLC

NexPoint RE Finance Advisor, L.P.

NexPoint Real Estate Advisors GP, LLC

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors II, L.P.

NexPoint Real Estate Advisors III, L.P.

NexPoint Real Estate Advisors IV, L.P.

NexPoint Real Estate Advisors V, L.P.

NexPoint Real Estate Advisors VI, L.P.

NexPoint Real Estate Advisors VII GP, LLC

NexPoint Real Estate Advisors VII, L.P.

NexPoint Real Estate Advisors VIII, L.P.

NexPoint Real Estate Advisors, L.P.

NexPoint Real Estate Capital, LLC

NexPoint Real Estate Capital, LLC *(fka Highland Real Estate Capital, LLC, fka Highland Multifamily Credit Fund, LLC)*

NexPoint Real Estate Finance OP GP, LLC

NexPoint Real Estate Finance Operating Partnership, L.P.

NexPoint Real Estate Finance, Inc.

NexPoint Real Estate Opportunities,  LLC

NexPoint Real Estate Opportunities, LLC *(fka Freedom REIT LLC)*

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Partners, LLC (fka HCRE Partners, LLC)

NexPoint Real Estate Strategies Fund

NexPoint Residential Trust Inc.

NexPoint Residential Trust Operating Partnership GP, LLC

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust Operating Partnership, L.P.

NexPoint Residential Trust, Inc.

NexPoint Securities, Inc.
*(fka Highland Capital Funds Distributor, Inc.)*
*(fka Pyxis Distributors, Inc.)*

NexPoint Strategic Income Fund
*(fka NexPoint Opportunistic Credit Fund, fka NexPoint Distressed Strategies Fund)*

NexPoint Strategic Opportunities Fund

NexPoint Strategic Opportunities Fund
*(fka NexPoint Credit Strategies Fund)*

NexPoint Texas Multifamily Portfolio DST
*(fka NREA Southeast Portfolio Two, DST)*

NexPoint WLIF I Borrower, LLC

NexPoint WLIF I, LLC

NexPoint WLIF II Borrower, LLC

NexPoint WLIF II, LLC

NexPoint WLIF III Borrower, LLC

NexPoint WLIF III, LLC

NexPoint WLIF, LLC (Series I)

NexPoint WLIF, LLC (Series II)

NexPoint WLIF, LLC (Series III)

NexStrat LLC

NexVest, LLC

NexWash LLC

NFRO REIT Sub, LLC

NFRO TRS, LLC

NHF CCD, Inc.

NHT 2325 Stemmons, LLC

NHT Beaverton TRS, LLC
*(fka NREA Hotel TRS, Inc.)*

NHT Beaverton, LLC

NHT Bend TRS, LLC

NHT Bend, LLC

NHT Destin TRS, LLC

NHT Destin, LLC

NHT DFW Portfolio, LLC

NHT Holdco, LLC

NHT Holdings, LLC

NHT Intermediary, LLC

NHT Nashville TRS, LLC

NHT Nashville, LLC

NHT Olympia TRS, LLC

NHT Olympia, LLC

NHT Operating Partnership GP, LLC

NHT Operating Partnership II, LLC
NHT Operating Partnership, LLC
NHT Salem, LLC
NHT SP Parent, LLC
NHT SP TRS, LLC
NHT SP, LLC
NHT Tigard TRS, LLC
NHT Tigard, LLC
NHT TRS, Inc.
NHT Uptown, LLC
NHT Vancouver TRS, LLC
NHT Vancouver, LLC
NLA Assets LLC
NMRT TRS, Inc.
NREA Adair DST Manager, LLC
NREA Adair Investment Co, LLC
NREA Adair Joint Venture, LLC
NREA Adair Leaseco Manager, LLC
NREA Adair Leaseco, LLC
NREA Adair Property Manager LLC
NREA Adair, DST
NREA Ashley Village Investors, LLC
NREA Cameron Creek Investors, LLC
NREA Cityplace Hue Investors, LLC
NREA Crossing Investors LLC
NREA Crossings Investors, LLC
NREA Crossings Ridgewood Coinvestment, LLC *(fka NREA Crossings Ridgewood Investors, LLC)*

NREA DST Holdings, LLC
NREA El Camino Investors, LLC
NREA Estates Inc.
NREA Estates Investment Co, LLC
NREA Estates Leaseco, LLC
NREA Estates Manager, LLC
NREA Estates Property Manager, LLC
NREA Estates, DST
NREA Gardens DST Manager LLC
NREA Gardens DST Manager, LLC
NREA Gardens Investment Co, LLC
NREA Gardens Leaseco Manager, LLC
NREA Gardens Leaseco, LLC
NREA Gardens Property Manager, LLC

NREA Gardens Springing LLC
NREA Gardens Springing Manager, LLC
NREA Gardens, DST
NREA Hidden Lake Investment Co, LLC
NREA Hue Investors, LLC
NREA Keystone Investors, LLC
NREA Meritage Inc.
NREA Meritage Investment Co, LLC
NREA Meritage Leaseco, LLC
NREA Meritage Manager, LLC
NREA Meritage Property Manager, LLC
NREA Meritage, DST
NREA Oaks Investors, LLC
NREA Retreat Investment Co, LLC
NREA Retreat Leaseco, LLC
NREA Retreat Manager, LLC
NREA Retreat Property Manager, LLC
NREA Retreat, DST
NREA SE MF Holdings LLC
NREA SE MF Holdings, LLC
NREA SE MF Investment Co, LLC
NREA SE MF Investment Co, LLC
NREA SE Multifamily LLC
NREA SE Multifamily, LLC
NREA SE One Property Manager, LLC
NREA SE Three Property Manager, LLC
NREA SE Two Property Manager, LLC
NREA SE1 Andros Isles Leaseco, LLC
NREA SE1 Andros Isles Manager, LLC
NREA SE1 Andros Isles, DST
(Converted from DK Gateway Andros, LLC)
NREA SE1 Arborwalk Leaseco, LLC
NREA SE1 Arborwalk Manager, LLC
NREA SE1 Arborwalk, DST
(Converted from MAR Arborwalk, LLC)
NREA SE1 Towne Crossing Leaseco, LLC
NREA SE1 Towne Crossing Manager, LLC
NREA SE1 Towne Crossing, DST
(Converted from Apartment REIT Towne Crossing, LP)

NREA SE1 Walker Ranch Leaseco, LLC
NREA SE1 Walker Ranch Manager, LLC

NREA SE1 Walker Ranch, DST
(Converted from SOF Walker Ranch Owner, L.P.)

NREA SE2 Hidden Lake Leaseco, LLC

NREA SE2 Hidden Lake Manager, LLC

NREA SE2 Hidden Lake, DST

NREA SE2 Hidden Lake, DST
(Converted from SOF Hidden Lake SA Owner, L.P.)

NREA SE2 Vista Ridge Leaseco, LLC

NREA SE2 Vista Ridge Manager, LLC

NREA SE2 Vista Ridge, DST

NREA SE2 Vista Ridge, DST
(Converted from MAR Vista Ridge, L.P.)

NREA SE2 West Place Leaseco, LLC

NREA SE2 West Place Manager, LLC

NREA SE2 West Place, DST
(Converted from Landmark at West Place, LLC)

NREA SE3 Arboleda Leaseco, LLC

NREA SE3 Arboleda Manager, LLC

NREA SE3 Arboleda, DST
(Converted from G&E Apartment REIT Arboleda, LLC)

NREA SE3 Fairways Leaseco, LLC

NREA SE3 Fairways Manager, LLC

NREA SE3 Fairways, DST
(Converted from MAR Fairways, LLC)

NREA SE3 Grand Oasis Leaseco, LLC

NREA SE3 Grand Oasis Manager, LLC

NREA SE3 Grand Oasis, DST
(Converted from Landmark at Grand Oasis, LP)

NREA Southeast Portfolio One Manager, LLC

NREA Southeast Portfolio One, DST

NREA Southeast Portfolio One, DST

NREA Southeast Portfolio Three Manager, LLC

NREA Southeast Portfolio Three, DST

NREA Southeast Portfolio Three, DST

NREA Southeast Portfolio Two Manager, LLC

NREA Southeast Portfolio Two, DST

NREA Southeast Portfolio Two, LLC

NREA SOV Investors, LLC

NREA Uptown TRS, LLC

NREA VB I LLC

NREA VB II LLC

NREA VB III LLC

NREA VB IV LLC

NREA VB Pledgor I LLC

NREA VB Pledgor I, LLC

NREA VB Pledgor II LLC

NREA VB Pledgor II, LLC

NREA VB Pledgor III LLC

NREA VB Pledgor III, LLC

NREA VB Pledgor IV LLC

NREA VB Pledgor IV, LLC

NREA VB Pledgor V LLC

NREA VB Pledgor V, LLC

NREA VB Pledgor VI LLC

NREA VB Pledgor VI, LLC

NREA VB Pledgor VII LLC

NREA VB Pledgor VII, LLC

NREA VB SM, Inc.

NREA VB V LLC

NREA VB VI LLC

NREA VB VII LLC

NREA Vista Ridge Investment Co, LLC

NREC AR Investors, LLC

NREC BM Investors, LLC

NREC BP Investors, LLC

NREC Latitude Investors, LLC

NREC REIT Sub, Inc.

NREC TRS, Inc.

NREC WW Investors, LLC

NREF OP I Holdco, LLC

NREF OP I SubHoldco, LLC

NREF OP I, L.P.

NREF OP II Holdco, LLC

NREF OP II SubHoldco, LLC

NREF OP II, L.P.

NREF OP IV REIT Sub TRS, LLC

NREF OP IV REIT Sub, LLC

NREF OP IV, L.P.

NREO NW Hospitality Mezz, LLC

NREO NW Hospitality, LLC

NREO Perilune, LLC

NREO SAFStor Investors, LLC

NREO TRS, Inc.

NRESF REIT Sub, LLC

NXRT Abbington, LLC

NXRT Atera II, LLC

NXRT Atera, LLC

NXRT AZ2, LLC

NXRT Barrington Mill, LLC

NXRT Bayberry, LLC

NXRT Bella Solara, LLC

NXRT Bella Vista, LLC

NXRT Bloom, LLC

NXRT Brandywine GP I, LLC

NXRT Brandywine GP I, LLC

NXRT Brandywine GP II, LLC

NXRT Brandywine GP II, LLC

NXRT Brandywine LP, LLC

NXRT Brandywine LP, LLC

NXRT Brentwood Owner, LLC

NXRT Brentwood, LLC

NXRT Cedar Pointe Tenant, LLC

NXRT Cedar Pointe, LLC

NXRT Cityview, LLC

NXRT Cornerstone, LLC

NXRT Crestmont, LLC

NXRT Crestmont, LLC

NXRT Enclave, LLC

NXRT Glenview, LLC

NXRT H2 TRS, LLC

NXRT Heritage, LLC

NXRT Hollister TRS LLC

NXRT Hollister, LLC

NXRT LAS 3, LLC

NXRT Master Tenant, LLC

NXRT Nashville Residential, LLC

NXRT Nashville Residential, LLC *(fka Freedom Nashville Residential, LLC)*

NXRT North Dallas 3, LLC

NXRT Old Farm, LLC

NXRT Pembroke Owner, LLC

NXRT Pembroke, LLC

NXRT PHX 3, LLC

NXRT Radbourne Lake, LLC

NXRT Rockledge, LLC

NXRT Sabal Palms, LLC

NXRT SM, Inc.

NXRT Steeplechase, LLC

NXRT Stone Creek, LLC

NXRT Summers Landing GP, LLC

NXRT Summers Landing LP, LLC

NXRT Torreyana, LLC

NXRT Vanderbilt, LLC

NXRT West Place, LLC

NXRTBH AZ2, LLC

NXRTBH Barrington Mill Owner, LLC

NXRTBH Barrington Mill SM, Inc.

NXRTBH Barrington Mill, LLC

NXRTBH Bayberry, LLC

NXRTBH Cityview, LLC

NXRTBH Colonnade, LLC

NXRTBH Cornerstone Owner, LLC

NXRTBH Cornerstone SM, Inc.

NXRTBH Cornerstone, LLC

NXRTBH Dana Point SM, Inc.

NXRTBH Dana Point, LLC

NXRTBH Foothill SM, Inc.

NXRTBH Foothill, LLC

NXRTBH Heatherstone SM, Inc.

NXRTBH Heatherstone, LLC

NXRTBH Hollister Tenant, LLC

NXRTBH Hollister, LLC

NXRTBH Madera SM, Inc.

NXRTBH Madera, LLC

NXRTBH McMillan, LLC

NXRTBH North Dallas 3, LLC

NXRTBH Old Farm II, LLC

NXRTBH Old Farm Tenant, LLC

NXRTBH Old Farm, LLC

NXRTBH Radbourne Lake, LLC

NXRTBH Rockledge, LLC

NXRTBH Sabal Palms, LLC

NXRTBH Steeplechase, LLC (dba Southpoint Reserve at Stoney Creek)-VA

NXRTBH Stone Creek, LLC

NXRTBH Vanderbilt, LLC

NXRTBH Versailles SM, Inc.

NXRTBH Versailles, LLC

Oak Holdco, LLC

Oaks CGC, LLC

Okada Family Revocable Trust

Oldenburg, Ltd.

Pam Capital Funding GP Co. Ltd.

Pam Capital Funding, L.P.

PamCo Cayman Ltd.

Park West 1700 Valley View Holdco, LLC

Park West 2021 Valley View Holdco, LLC

Park West Holdco, LLC

Park West Portfolio Holdco, LLC

Participants of Highland 401K Plan

Patrick Willoughby-McCabe

PCMG Trading Partners XXIII, L.P.

PCMG Trading Partners XXIII, LP

PDK Toys Holdco, LLC

Pear Ridge Partners, LLC

Penant Management GP, LLC

Penant Management LP

PensionDanmark Holding A/S

PensionDanmark
Pensionsforsikringsaktieselskab

Peoria Place Development, LLC
(30% cash contributions - profit participation
only)

Perilune Aero Equity Holdings One, LLC

Perilune Aviation LLC

PetroCap Incentive Holdings III. L.P.

PetroCap Incentive Partners II GP, LLC

PetroCap Incentive Partners II, L.P.

PetroCap Incentive Partners III GP, LLC

PetroCap Incentive Partners III, LP

PetroCap Management Company LLC

PetroCap Partners II GP, LLC

PetroCap Partners II, L.P.

PetroCap Partners III GP, LLC

PetroCap Partners III, L.P.

Pharmacy Ventures I, LLC

Pharmacy Ventures II, LLC

Pollack, Ltd.

Powderhorn, LLC

PWM1 Holdings, LLC

PWM1, LLC

RADCO - Bay Meadows, LLLP

RADCO - Bay Park, LLLP

RADCO NREC Bay Meadows Holdings, LLC

RADCO NREC Bay Park Holdings, LLC

Ramarim, LLC

Rand Advisors Series I Insurance Fund

Rand Advisors Series II Insurance Fund

Rand Advisors, LLC

Rand PE Fund I, L.P.

Rand PE Fund I, L.P. - Series 1

Rand PE Fund Management, LLC

Rand PE Holdco, LLC

Realdania

Red River CLO, Ltd.

Red River Investors Corp.

Riverview Partners SC, LLC

Rockwall CDO II Ltd.

Rockwall CDO II, Ltd.

Rockwall CDO, Ltd.

Rockwall Investors Corp.

Rothko, Ltd.

RTT Bella Solara, LLC

RTT Bloom, LLC

RTT Financial, Inc.

RTT Hollister, LLC

RTT Rockledge, LLC

RTT Torreyana, LLC

SALI Fund Partners, LLC

SAS Management

SAS Asset Recovery Ltd.

San Diego County Employees Retirement
Association

Sandstone Pasadena Apartments, LLC

Sandstone Pasadena, LLC

Santa Barbara Foundation (third party)

Saturn Oil & Gas LLC

SBC Master Pension Trust

Scott Matthew Siekielski

SE Battleground Park, LLC

SE Battleground Park, LLC

SE Glenview, LLC

SE Governors Green Holdings, L.L.C.

SE Governors Green Holdings, L.L.C.
*(fka SCG Atlas Governors Green Holdings, L.L.C.)*

SE Governors Green I, LLC

SE Governors Green II, LLC

SE Governors Green II, LLC

SE Governors Green REIT, L.L.C.

SE Governors Green REIT, L.L.C.
*(fka SCG Atlas Governors Green REIT, L.L.C.)*

SE Governors Green, LLC
*(fka SCG Atlas Governors Green, L.L.C.)*

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles GP, LLC

SE Gulfstream Isles LP, LLC

SE Gulfstream Isles LP, LLC

SE Heights at Olde Towne, LLC

SE Heights at Olde Towne, LLC

SE Lakes at Renaissance Park GP I, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park GP II, LLC

SE Lakes at Renaissance Park LP, LLC

SE Lakes at Renaissance Park LP, LLC

SE Multifamily Holdings LLC

SE Multifamily Holdings, LLC

SE Multifamily REIT Holdings LLC

SE Myrtles at Olde Towne, LLC

SE Myrtles at Olde Towne, LLC

SE Oak Mill I Holdings, LLC

SE Oak Mill I Holdings, LLC *(fka SCG Atlas Oak Mill I Holdings, L.L.C.)*

SE Oak Mill I Owner, LLC *(fka SCG Atlas Oak Mill I, L.L.C.)*

SE Oak Mill I REIT, LLC

SE Oak Mill I REIT, LLC *(fka SCG Atlas Oak Mill I REIT, L.L.C.)*

SE Oak Mill I, LLC

SE Oak Mill I, LLC

SE Oak Mill II Holdings, LLC

SE Oak Mill II Holdings, LLC *(fka SCG Atlas Oak Mill II Holdings, L.L.C.)*

SE Oak Mill II Owner, LLC *(fka SCG Atlas Oak Mill II, L.L.C.)*

SE Oak Mill II REIT, LLC

SE Oak Mill II REIT, LLC *(fka SCG Atlas Oak Mill II REIT, L.L.C.)*

SE Oak Mill II, LLC

SE Oak Mill II, LLC

SE Quail Landing, LLC

SE River Walk, LLC

SE Riverwalk, LLC

SE SM, Inc.

SE Stoney Ridge Holdings, L.L.C. *(fka SCG Atlas Stoney Ridge Holdings, L.L.C.)*

SE Stoney Ridge Holdings, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge I, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge II, LLC

SE Stoney Ridge REIT, L.L.C. *(fka SCG Atlas Stoney Ridge REIT, L.L.C.)*

SE Stoney Ridge REIT, LLC

SE Stoney Ridge, LLC *(fka SCG Atlas Stoney Ridge, L.L.C.)*

SE Victoria Park, LLC

SE Victoria Park, LLC

Sentinel Re Holdings, Ltd.

Sentinel Reinsurance Ltd.

Sentinel Reinsurance Limited

SFH1, LLC

SFR WLIF I, LLC
*(fka NexPoint WLIF I, LLC)*

SFR WLIF II, LLC
*(NexPoint WLIF II, LLC)*

SFR WLIF III, LLC
*(NexPoint WLIF III, LLC)*

SFR WLIF Manager, LLC
*(NexPoint WLIF Manager, LLC)*

SFR WLIF, LLC
*(NexPoint WLIF, LLC)*

SFR WLIF, LLC Series I

SFR WLIF, LLC Series II

SFR WLIF, LLC Series III

SH Castle BioSciences, LLC

Small Cap Equity Sub, LLC

Socially Responsible Equity Sub, LLC

SOF Brandywine I Owner, L.P.

SOF Brandywine II Owner, L.P.

SOF-X GS Owner, L.P.

Southfork Cayman Holdings, Ltd.

Southfork CLO, Ltd.

Specialty Financial Products Designated
Activity Company *(fka Specialty Financial
Products Limited)*

Spiritus Life, Inc.

SRL Sponsor LLC

SRL Whisperwod LLC

SRL Whisperwood Member LLC

SRL Whisperwood Venture LLC

SSB Assets LLC

Starck, Ltd.

Stemmons Hospitality, LLC

Steve Shin

Stonebridge Capital, Inc.

Stonebridge-Highland Healthcare Private
Equity Fund

Strand Advisors III, Inc.

Strand Advisors IV, LLC

Strand Advisors IX, LLC

Strand Advisors V, LLC

Strand Advisors XIII, LLC

Strand Advisors XVI, Inc.

Strand Advisors, Inc.

Stratford CLO, Ltd.

Summers Landing Apartment Investors, L.P.

Term Loan B
(10% cash contributions - profit participation
only)

The Dallas Foundation

The Dallas Foundation (third party)

The Dondero Insurance Rabbi Trust

The Dugaboy Investment Trust

The Dugaboy Investment Trust U/T/A Dated
Nov 15, 2010

The Get Good Non-Exempt Trust No. 1

The Get Good Non-Exempt Trust No. 2

The Get Good Trust

The Mark and Pamela Okada Family Trust -
Exempt Descendants' Trust

The Mark and Pamela Okada Family Trust -
Exempt Trust #2

The Ohio State Life Insurance Company

The Okada Family Foundation, Inc.

The Okada Insurance Rabbi Trust

The SLHC Trust

The Trustees of Columbia University in the
City of New York

The Twentysix Investment Trust
(Third Party Investor)

Thomas A. Neville

Thread 55, LLC

Tihany, Ltd.

Todd Travers

Tranquility Lake Apartments Investors, L.P.

Tuscany Acquisition, LLC

Uptown at Cityplace Condominium
Association, Inc.

US Gaming OpCo, LLC

US Gaming SPV, LLC

US Gaming, LLC

Valhalla CLO, Ltd.

VB GP LLC

VB Holding, LLC

VB One, LLC

VB OP Holdings LLC

VBAnnex C GP, LLC

VBAnnex C Ohio, LLC

VBAnnex C, LP

Ventoux Capital, LLC
(Matt Goetz)

VineBrook Annex B, L.P.

VineBrook Annex I, L.P.

VineBrook Homes Merger Sub II LLC

VineBrook Homes Merger Sub LLC

VineBrook Homes OP GP, LLC

VineBrook Homes Operating Partnership, L.P.

VineBrook Homes Trust, Inc.

VineBrook Partners I, L.P.

VineBrook Partners II, L.P.

VineBrook Properties, LLC

Virginia Retirement System

Vizcaya Investment, LLC

Wake LV Holdings II, Ltd.

Wake LV Holdings, Ltd.

Walter Holdco GP, LLC

Walter Holdco I, Ltd.

Walter Holdco, L.P.

Warhol, Ltd.

Warren Chang

Westchester CLO, Ltd.

William L. Britain

Wright Ltd.

Wright, Ltd.

Yellow Metal Merchants, Inc.

# EXHIBIT EE

014234

accounting or seek approval of any court with respect to the administration of the Claimant Trust, or as a condition for managing any payment or distribution out of the Claimant Trust Assets.

(b)     The Claimant Trustee shall provide quarterly reporting to the Oversight Board and Claimant Trust Beneficiaries of (i) the status of the Claimant Trust Assets, (ii) the balance of Cash held by the Claimant Trust (including in each of the Claimant Trust Expense Reserve and Disputed Claim Reserve), (iii) the determination and any re-determination, as applicable, of the total amount allocated to the Disputed Claim Reserve, (iv) the status of Disputed Claims and any resolutions thereof, (v) the status of any litigation, including the pursuit of the Causes of Action, (vi) the Reorganized Debtor's performance, and (vii) operating expenses; provided, however, that the Claimant Trustee may, with respect to any Member of the Oversight Board or Claimant Trust Beneficiary, redact any portion of such reports that relate to such Entity's Claim or Equity Interest, as applicable and any reporting provided to Claimant Trust Beneficiaries may be subject to such Claimant Trust Beneficiary's agreement to maintain confidentiality with respect to any non-public information.

(c)     The Claimant Trustee may dispose some or all of the books and records maintained by the Claimant Trustee at the later of (i) such time as the Claimant Trustee determines, with the unanimous consent of the Oversight Board, that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Claimant Trust, or (ii) upon the termination and winding up of the Claimant Trust under Article IX of this Agreement; provided, however, the Claimant Trustee shall not dispose of any books and records related to the Estate Claims or Employee Claims without the consent of the Litigation Trustee. Notwithstanding the foregoing, the Claimant Trustee shall cause the Reorganized Debtor and its subsidiaries to retain such books and records, and for such periods, as are required to be retained pursuant to Section 204-2 of the Investment Advisers Act or any other applicable laws, rules, or regulations.

3.13    Compensation and Reimbursement; Engagement of Professionals.

(a)     Compensation and Expenses.

(i)     Compensation.  As compensation for any services rendered by the Claimant Trustee in connection with this Agreement, the Claimant Trustee shall receive compensation of $150,000 per month (the "Base Salary").  Within the first forty-five days following the Confirmation Date, the Claimant Trustee, on the one hand, and the Committee, if prior to the Effective Date, or the Oversight Board, if on or after the Effective Date, on the other, will negotiate go-forward compensation for the Claimant Trustee which will include (a) the Base Salary a base salary, (b) a success fee, and (c) severance.

(ii)    Expense Reimbursements.  All reasonable out-of-pocket expenses of the Claimant Trustee in the performance of his or her duties hereunder, shall be reimbursed as Claimant Trust Expenses paid by the Claimant Trust.

19

# EXHIBIT FF

014236

### Schedule of Contracts and Leases to Be Assumed

1.  Advisory Services Agreement, dated November 21, 2011, effective June 20, 2011, by and between Carey International, Inc., and Highland Capital Management, L.P.

2.  Amended and Restated Advisory Services Agreement, dated March 4, 2013, by and between Trussway Holdings, Inc., and Highland Capital Management, L.P.

3.  Reference Portfolio Management Agreement, dated March 4, 2004, by and between Highland Capital Management, L.P., and Citibank N.A.

4.  Advisory Services Agreement, dated May 25, 2011, by and between CCS Medical, Inc., and Highland Capital Management, L.P.

5.  Amended and Restated Advisory Services Agreement, dated February 28, 2013, by and between Cornerstone Healthcare Group Holding, Inc., and Highland Capital Management, L.P.

6.  Prime Brokerage Agreement by and between Jefferies LLC and Highland Capital Management, L.P., dated May 24, 2013.

7.  Amended and Restated Shared Services Agreement, dated August 21, 2015, by and between Highland Capital Management, L.P., and Falcon E&P Opportunities GP, LLC.

8.  Amended and Restated Administrative Services Agreement, effective as of August 21, 2015, by and between Highland Capital Management, L.P., and Petrocap Partners II GP, LLC.

9.  Office Lease, between Crescent Investors, L.P., and Highland Capital Management, L.P.

10. Paylocity Corporation Services Agreement, between Highland Capital Management, L.P., and Paylocity Corporation, dated November 19, 2012.

11. Electronic Trading Services Agreement, between SunTrust Robinson Humphrey Inc., and Highland Capital Management, L.P., dated February 6, 2019.

12. Letter Agreement, between FTI Consulting, Inc., and Highland Capital Management, L.P., dated November 19, 2018.

13. Administrative Services Agreement, dated January 1, 2018, between Highland Capital Management, L.P., and Liberty Life Assurance Company of Boston.

14. Electronic Communications: Customer Authorization & Indemnification, between Highland Capital Management, L.P., and The Bank of New York Mellon Corporation, dated August 9, 2016.

15. Letter Agreement, dated August 9, 2016, Electronic Access Terms and Conditions, by and between The Bank of New York Mellon Trust Company, N.A., and Highland Capital Management, L.P.

16. Shared Services Agreement by and between Highland HCF Advisor, Ltd., and Highland Capital Management, L.P., dated effective October 27, 2017.

17. Sub-Advisory Agreement, by and between Highland HCF Advisors, Ltd., and Highland Capital Management, dated effective October 27, 2017.

18. Collateral Management Agreement, dated November 2, 2006, by and between Highland Credit Opportunities CDO Ltd. and Highland Capital Management, L.P.

19. Management Agreement, dated November 15, 2007, between Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Restoration Capital Partners Master L.P., Highland Restoration Capital Partners GP, LLC, and Highland Capital Management, L.P.

20. Investment Management Agreement, between Highland Capital Multi-Strategy Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

21. Investment Management Agreement, between Highland Capital Multi-Strategy Master Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

22. Management Agreement, dated August 22, 2007, between and among Highland Capital Management, L.P., and Walkers Fund Services Limited, as trustee of Highland Credit Opportunities Japanese Unit Trust.

23. Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P., dated November 1, 2013.

24. Investment Management Agreement, dated March 31, 2015, by and among Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., and Highland Capital Management, L.P.

25. Amended and Restated Investment Management Agreement, dated February 27, 2017, by and among Highland Prometheus Master Fund L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland SunBridge GP, LLC, and Highland Capital Management, L.P.

26. Servicing Agreement, dated December 20, 2007, by and among Greenbriar CLO, Ltd., and Highland Capital Management, L.P.

27. Investment Management Agreement, dated November 1, 2007, by and between Longhorn Credit Funding, LLC, and Highland Capital Management, L.P. (as amended)

28. Reference Portfolio Management Agreement, dated August 1, 2016, by and between Highland Capital Management, L.P., and Valhalla CLO, Ltd.

29. Collateral Servicing Agreement, dated December 20, 2006, by and among Highland Park CDO I, Ltd., and Highland Capital Management, L.P.

30. Portfolio Management Agreement, dated March 15, 2005, by and among Southfork CLO Ltd., and Highland Capital Management, L.P.

31. Amended and Restated Portfolio Management Agreement, dated November 30, 2005, by and among Jaspar CLO Ltd., and Highland Capital Management, L.P.

32. Servicing Agreement, dated May 31, 2007, by and among Westchester CLO, Ltd., and Highland Capital Management, L.P.

014238

33. Servicing Agreement, dated May 10, 2006, by and among Rockwall CDO Ltd. and Highland Capital Management, L.P. (as amended)

34. Portfolio Management Agreement, dated December 8, 2005, by and between Liberty CLO, Ltd., and Highland Capital Management, L.P.

35. Servicing Agreement, dated March 27, 2008, by and among Aberdeen Loan Funding, Ltd., and Highland Capital Management, L.P.

36. Servicing Agreement, dated May 9, 2007, by and among Rockwall CDO II Ltd. and Highland Capital Management, L.P.

37. Collateral Management Agreement, by and between, Highland Loan Funding V Ltd. and Highland Capital Management, L.P., dated August 1, 2001.

38. Collateral Management Agreement, dated August 18, 1999, by and between Highland Legacy Limited and Highland Capital Management, L.P.

39. Servicing Agreement, dated November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. (as amended)

40. Servicing Agreement, dated October 25, 2007, by and among Stratford CLO Ltd., and Highland Capital Management, L.P.

41. Servicing Agreement, dated August 3, 2006, by and among Red River CLO Ltd., and Highland Capital Management, L.P. (as amended)

42. Servicing Agreement, dated December 21, 2006, by and among Brentwood CLO, Ltd., and Highland Capital Management, L.P.

43. Servicing Agreement, dated March 13, 2007, by and among Eastland CLO Ltd., and Highland Capital Management, L.P.

44. Portfolio Management, Agreement, dated October 13, 2005, by and among Gleneagles CLO, Ltd., and Highland Capital Management, L.P.

45. AT&T Managed Internet Service, between Highland Capital Management, L.P. and AT&T Corp., dated February 24, 2015.

46. ViaWest, Master Service Agreement, dated October 3, 2011, between Highland Capital Management, L.P. and ViaWest

47. Stockholders' Agreement, dated April 15, 2005, by and between American Banknote Corporation and Highland Capital Management, L.P.

48. Stockholders' Agreement and Amendment No. 1, dated January 25, 2011, by and between Carey Holdings, Inc. and Highland Capital Management, L.P.

49. Stockholders' Agreement and Amendment, dated March 24, 2010, by and between Cornerstone Healthcare Group Holding, Inc. and Highland Capital Management, L.P.

50. Members' Agreement and Amendment, dated November 15, 2017, by and between Highland CLO Funding, Ltd. and Highland Capital Management, L.P.

51. Stock Purchase and Sale Agreement and Amendment, dated January 16, 2013, by and between Progenics Pharmaceuticals, Inc. and Highland Capital Management, L.P.

014239

52.   Stockholders' Agreement and Amendments, dated October 24, 2008, by and between JHT Holdings, Inc. and Highland Capital Management, L.P.

53.   Amended and Restated Limited Partnership Agreement of Highland Dynamic Income Fund, L.P., dated February 25, 2013, by and between Highland Dynamic Income Fund GP, LLC and Highland Capital Management, L.P.

54.   Highland Multi-Strategy Fund, L.P. Limited Partnership Agreement, dated July 6, 2006, by and between Highland Multi-Strategy Fund GP, L.P. and Highland Capital Management, L.P.

55.   Operating Agreement of HE Capital, LLC (as amended), dated September 27, 2007, by and between ENA Capital, LLC Ellman Management Group, Inc. and Highland Capital Management, L.P.

56.   Limited Liability Company Agreement of Highland Multi-Strategy Onshore Master SubFund II, LLC, dated February 27, 2007, by and between Highland Multi-Strategy Master Fund, L.P. and Highland Capital Management, L.P.

57.   Limited Liability Company Agreement of Highland Multi-Strategy Onshore Master SubFund, LLC, dated July 19, 2006, by and between Highland Multi-Strategy Master Fund, L.P. and Highland Capital Management, L.P.

58.   Highland Capital Management, L.P., Limited Liability Company Agreement of Highland Receivables Finance 1, LLC, by and between Highland Capital Management, L.P. and Highland Capital Management, L.P.

59.   Agreement of Limited Partnership of Highland Restoration Capital Partners, L.P. and Amendments, dated November 6, 2007, by and between Highland Restoration Capital Partners GP, LLC and Highland Capital Management, L.P.

60.   Agreement of Limited Partnership of Highland Select Equity Fund GP, L.P., dated October 2005, by and between Highland Select Equity Fund GP, LLC and Highland Capital Management, L.P.

61.   Agreement of Limited Partnership of Penant Management LP, dated December 12, 2012, by and between Penant Management GP, LLC and Highland Capital Management, L.P.

62.   Agreement of Limited Partnership of Petrocap Incentive Partners III, LP, dated April 12, 2018, by and between Petrocap Incentive Partners III GP, LLC, Petrocap Incentive Holdings III, LP and Highland Capital Management, L.P.

63.   Amended and Restated Agreement of Limited Partnership of Petrocap Partners II, LP, dated October 30, 2014, by and between Petrocap Partners II GP, LLC, Petrocap Incentive Partners II, LP and Highland Capital Management, L.P.

64.   Agreement of Limited Partnership of Highland Credit Opportunities CDO GP, L.P., dated December 29, 2005, by and between Highland Credit Opportunities CDO GP, LLC and Highland Capital Management, L.P.

65.   Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P., dated November 1, 2014, by and between Highland Multi Strategy Credit Fund GP, L.P. and Highland Capital Management, L.P.

66.    DUO Security, 2 factor authentication, by and between DUO Security and Highland Capital Management, L.P.

67.    GoDaddy Domain Registrations, by and between GoDaddy and Highland Capital Management, L.P.

68.    Highland Loan Fund, Ltd. et al, Investment Management Agreement, dated July 31, 2001, by and between Highland Loan Fund, Ltd. et al and Highland Capital Management, L.P.

69.    E Mailflow Monitoring, by and between Mxtoolbox and Highland Capital Management, L.P.

70.    Cloud single sign on for HR related employee login, by and between Onelogin and Highland Capital Management, L.P.

71.    Collateral Management Agreement, dated May 19, 1998, by and between Pam Capital Funding LP, Ranger Asset Mgt LP and Highland Capital Management, L.P.

72.    Collateral Management Agreement, dated August 6, 1997, by and between Pamco Cayman Ltd., Ranger Asset Mgt LP and Highland Capital Management, L.P.

73.    Order Addenda, dated January 28, 2020, by and between CenturyLink Communications, LLC and Highland Capital Management, L.P.

74.    Service Agreement (as amended), dated April 1, 2005, by and between Intex Solutions, Inc. and Highland Capital Management, L.P.

75.    Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Red River CLO Ltd. et al

76.    Interim Collateral Management Agreement, June 15, 2005, between Highland Capital Management, L.P. and Rockwall CDO Ltd

77.    Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Rockwall CDO Ltd

78.    Collateral Servicing Agreement dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.; The Bank of New York Trust Company, National Association

79.    Representations and Warranties Agreement, dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.

80.    Collateral Administration Agreement, dated March 27, 2008, between Highland Capital Management, L.P. and Aberdeen Loan Funding, Ltd.; State Street Bank and Trust Company

81.    Collateral Administration Agreement, dated December 20, 2007, between Highland Capital Management, L.P. and Greenbriar CLO, Ltd.; State Street Bank and Trust Company

82.    Collateral Acquisition Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd

83. Collateral Administration Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd. and Investors Bank and Trust Company

84. Collateral Administration Agreement, dated October 13, 2005, between Highland Capital Management, L.P. and Gleneagles CLO, Ltd.; JPMorgan Chase Bank, National Association

85. Collateral Acquisition Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.

86. Collateral Administration Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.; Investors Bank & Trust Company

87. Collateral Acquisition Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.

88. Collateral Administration Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.; U.S. Bank National Association

89. Master Warehousing and Participation Agreement, dated April 19, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company

90. Master Warehousing and Participation Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

91. Master Warehousing and Participation Agreement (Amendment No. 2), dated May 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

92. Master Warehousing and Participation Agreement (Amendment No. 1), dated April 12, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

93. Master Warehousing and Participation Agreement (Amendment No. 3), dated June 22, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

94. Master Warehousing and Participation Agreement (Amendment No. 4), dated July 17, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

95. Collateral Administration Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; U.S. Bank National Association; IXIS Financial Products Inc.

96. Collateral Administration Agreement, dated April 18, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company; U.S. Bank National Association

97. Master Participation Agreement, dated June 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Grand Central Asset Trust

014242

98. A&R Asset Acquisition Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Smith Barney Inc.; Highland Loan Funding V Ltd.

99. A&R Master Participation Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Brothers Holding Company; Highland Loan Funding V Ltd.

100. Collateral Acquisition Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.

101. Collateral Administration Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.; JPMorgan Chase Bank, National Association

102. Master Warehousing and Participation Agreement, dated March 24, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

103. Master Warehousing and Participation Agreement (Amendment No. 1), dated May 16, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

104. Securities Account Control Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Highland CDO Opportunity Fund, Ltd.; JPMorgan Chase Bank, National Association

105. Collateral Administration Agreement, dated December 8, 2005, between Highland Capital Management, L.P. and Liberty CLO Ltd.

106. Collateral Administration Agreement, dated May 10, 2006, between Highland Capital Management, L.P. and Rockwall CDO Ltd; JPMorgan Chase Bank, National Association

107. Collateral Administration Agreement, dated May 9, 2007, between Highland Capital Management, L.P. and Rockwall CDO II, Ltd.; Investors Bank & Trust Company

108. Collateral Administration Agreement, dated March 15, 2005, between Highland Capital Management, L.P. and Southfork CLO Ltd.; JPMorgan Chase Bank, National Association

109. Collateral Administration Agreement, dated October 25, 2007, between Highland Capital Management, L.P. and Stratford CLO Ltd.; State Street

110. Collateral Administration Agreement, dated August 18, 2004, between Highland Capital Management, L.P. and Valhalla CLO, Ltd.; JPMorgan Chase Bank

111. Extension/Buy-Out Agreement, dated August 18, 2004, between Highland Capital Management, L.P. and Citigroup Financial Products Inc.; Citigroup Global Markets Inc.

112. Collateral Acquisition Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.

113. Collateral Administration Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.; Investors Bank & Trust Company

114. Collateral Administration Agreement, dated December 21, 2006, between Highland Capital Management, L.P. and Brentwood CLO, Ltd.; Investors Bank & Trust Company

014243

115. Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and James Seery

116. Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and John Dubel

117. Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and Russell Nelms

118. Colocation Service Order dated October 14, 2019 between Highland Capital Management and Dawn US Holdings, LLC d/b/a Evoque Date Center Solutions

119. Tradesuite Web Module Services/Agreement between Highland Capital Management and DTCC ITP LLC

120. Bloomberg (Terminal) Agreement No. 306371 between Highland Capital Management and Bloomberg Finance, L.P.[1]

121. Master Service Agreement between Highland Capital Management and Via West

122. Amendment to Bloomberg Order Management System Addendum and Bloomberg Order Management System Schedule of Services Account No. 167969 between Highland Capital Management and Bloomberg Finance, L.P.

123. Fourth Amendment to Software License and Services Agreement between Highland Capital Management and Markit WSO Corporation

124. Master Services Agreement, First Amendment to Master Services Agreement, Second Amendment and Restatement of Master Services Agreement between Highland Capital Management and Siepe Services, LLC

125. Internet Agreement Account No. 831-000-7888-651 between Highland Capital Management and AT&T

126. Landline Fax Agreement Account No. 831-000-2532-176 between Highland Capital Management and AT&T

127. Amazon Web Services Account No. 353534426569 between Highland Capital Management and Amazon Web Service, Inc.

128. Website Hosting Agreement  Account No. 325667 between Highland Capital Management and WP Engine

---

[1] The Debtor is currently in discussions with Bloomberg regarding the assumption of this agreement.

# EXHIBIT RRRRRRR

014245

Case 19-34054-sgj11 Doc 1807 Filed 01/22/21 Entered 01/22/21 23:05:35 Page 1 of 16
Case 3:21-cv-00538-N Document 26-54 Filed 06/09/21 Page 70 of 246 PageID 17208
Docket #1807 Date Filed: 01/22/2021

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054 |
| | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |

**DEBTOR'S OMNIBUS REPLY TO OBJECTIONS
TO CONFIRMATION OF THE FIFTH AMENDED PLAN OF
REORGANIZATION OF HIGHLAND CAPITAL MANAGEMENT L.P. (WITH
TECHNICAL MODIFICATIONS)**

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

1934054210122000000000012

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................. 1

OBJECTIONS....................................................................................... 3

I.       Objections Addressed in the Memorandum.............................. 3

II.      The Plan Impermissibly Allows for Set Off ............................ 4

III.     The Plan Impermissibly Allows Assumption or Rejection After
         Confirmation ........................................................................ 6

IV.      The Attack on the Plan's Release Is Baseless........................... 6

         A.      Debtor Release Provisions ........................................... 6

         B.      Objections and Responses ............................................ 7

V.       The Court Has Already Exculpated the Independent Directors and their
         agents For Negligence Pursuant to the January 9, 2020 Settlement Order
         and, to the Extent Not Covered Therein, the Plan's Exculpation Provisions
         Effectuate Essential Protections for Estate Fiduciaries and their agents,
         and Are Fully Supported by the Bankruptcy Code and Applicable Law. .......... 11

         A.      The Settlement Order Already Exculpates the Independent
                 Directors and Their Agents from Claims of Negligence and Those
                 Protections Should Be Continued Post-Confirmation ........................... 12

         B.      Plan Exculpation Provisions ................................................. 14

         C.      Pacific Lumber.................................................................. 16

         D.      Exculpation of the Exculpated Parties Is Permissible and Not
                 Prohibited by *Pacific Lumber*. ............................................. 19

         E.      Approval of the Exculpation Provisions Is a Legitimate Exercise of
                 the Court's Powers and Follows Directly from the Findings and
                 Conclusions the Court Must Make to Confirm a Plan............................ 24

VI.      The Plan Injunction Is Appropriate and is Narrowly Tailored to Effectuate
         the Plan and related provisions of the bankruptcy code. .................................... 28

         A.      Plan Injunction Provisions ..................................................... 29

         B.      Objections ........................................................................ 32

         C.      An Injunction against Interfering with the Implementation and
                 Consummation of the Plan Is Both Common and Appropriate. .............. 33

         D.      The Injunction Is Not a Disguised Non-Debtor Third-Party
                 Release. ........................................................................... 35

|  | E. | The Injunction Does Not Prevent the Holders of Claims or Equity Interests from Enforcing Rights Arising under the Plan or Confirmation Order.................................................................. 37 |

| VII. | The Gatekeeper Provision Is Necessary and Appropriate, and Supported by Applicable Law. ............................................................................... 38 |

|  | A. | The Gatekeeper Provision.................................................................... 38 |

|  | B. | The Gatekeeper Provision Is Permissible under Sections 105, 1123(b)(6), and 1141(a), (b) and (c) of the Bankruptcy Code................ 39 |

|  | C. | The Gatekeeper Provision Is not an Impermissible Extension of the Post-Confirmation Jurisdiction of the Bankruptcy Court. ...................... 44 |

|  | D. | The Gatekeeper Provision Is Consistent with the Barton Doctrine. ........ 51 |

|  | E. | The Gatekeeper Provision Is a Necessary and Appropriate Shield against the Actions of Dondero and his Related Entities......................... 54 |

| VIII. | the exception to discharge does not apply ........................................................... 55 |

| IX. | The Senior Employee Objection ........................................................................ 57 |

|  | A. | The Senior Employee Objection Should Be Overruled.......................... 57 |

|  | B. | Background Related to Senior Employees ............................................ 58 |

|  | C. | Treatment of Senior Employee Claims Under Plan................................. 62 |

|  | D. | Plan Solicitation ............................................................................... 63 |

|  | E. | The Plan Does Not Violate Section 1123(a)(4) ..................................... 64 |

|  | F. | The Senior Employees Are Not Permitted to Make Convenience Class Election................................................................................... 66 |

|  | G. | Convenience Class Election Is Unavailable Because Senior Employee's GUC Claims Cannot Be Split Under Applicable Bankruptcy Law .............................................................................. 66 |

|  | H. | Convenience Class Election Is Unavailable Because Senior Employee's GUC Claims Cannot Be Split Under Disclosure Statement Order for Voting Purposes ....................................................... 68 |

|  | I. | Even if Convenience Claim Election Were Available, Convenience Claim Election Does Not Impact Voting ..................................................... 69 |

| X. | The HCMFA/NPA Gates Objection .................................................................. 70 |

|  | A. | The HMCFA/NPA Objection, the CLO Holdco Objection, and NREP Joinder Should Be Overruled........................................................ 72 |

|  | B. | The CLO Objectors Cannot Override the CLOs' Consent to Assumption ........................................................................................ 74 |

|  | C. | The CLO Objectors Lack Standing to Object to the Plan........................ 76 |

ii

014248

|  | D. | Even if the CLO Objectors Had Standing and the Management Contracts Were Not Assignable, the Debtor Could Assume Them Because the *Actual Test* Applies in the Fifth Circuit | 82 |
|  | E. | Even if the CLO Objectors Have Standing and the *Hypothetical Test* Applies, the Management Agreements Are Assignable | 86 |
|  | F. | The Inadequate Assurance of Future Performance Objection is Meritless | 90 |
|  | G. | The "Impermissible Partial Assignment" Objection is Meritless | 92 |
| XI. | | State Taxing Authority Objection | 92 |
| XII. | | IRS Objection | 93 |
| CONCLUSION | | | 99 |

DOCS_SF:104855.7 36027/002

014249

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ad Hoc Comm. of Non-Consenting Creditors v. Peabody Energy Corp.*
  *(In re Peabody Energy Corp.),*
  933 F.3d 918 (8th Cir. 2019) ................................................................ 65

*Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm.*
  *(In re Pac. Lumber Co.),*
  584 F.3d 229 (5th Cir. 2009) ................................................................ 64

*Bonneville Power Admin. v. Mirant Corp.*
  *(In re Mirant Corp.),*
  440 F.3d 238 (5th Cir. 2006) ................................................................ 83

*Cajun Elec. Members Comm. v. Mabey*
  *(In re Cajun Elec. Power Coop., Inc.),*
  230 B.R. 693 (Bankr. M.D. La. 1999) ............................................. 84, 85

*Cargill, Inc. v. Nelson (In re LGX, LLC),*
  2005 Bankr. LEXIS 2072 (10th Cir. Oct. 31, 2005) ........................... 75

*Concord Square Apartments v. Ottawa Properties*
  *(In re Concord Square Apartments),*
  174 B.R. 71 (Bankr. S.D. Ohio 1994) .................................................. 67

*CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC,*
  2018 U.S. Dist. LEXIS 90174, at *12 (S.D.N.Y. May 23, 2018) .......... 88

*Figter Ltd. v. Teachers Ins. Annuity Ass'n (In re Figter Ltd.),*
  118 F.3d 635, 640-641 (9th Cir. 1997) ............................................... 67

*Goldstein v. SEC,*
  451 F.3d 873 (D.C. Cir. 2006) ............................................................. 71

*Hertz Corp. v. ANC Rental Corp.*
  *(In re ANC Rental Corp.),*
  278 B.R. 714 (Bankr. D. Del. 2002) ........................................ 74, 75, 80

*Hertz Corp. v. ANC Rental Corp.*
  *(In Re ANC Rental Corp.),*
  280 B.R. 808 (D. Del. 2002) ............................................................... 75

*In re Acequia, Inc.,*
  787 F.2d 1352 (9th Cir. 1986) ............................................................ 65

*In re ANC Rental Corp.,*
  277 B.R. 226 (Bankr. D. Del. 2002) .................................................... 89

*In re Gilbert,*
  104 B.R. 206 (Bankr. W.D. Mo. 1989) ................................................ 67

*In re Hartec Enters., Inc.,*
  117 B.R. 865 (Bankr. W.D. Tex. 1990) ............................................... 85

*In re Irwin Yacht Sales, Inc.*,
  164 B.R. 678 (Bankr. M.D. Fla. 1994) ........................................................ 75

*In re Jacobsen*,
  465 B.R. 102 (Bankr. N.D. Miss. 2011) ...................................................... 84

*In re Jones*,
  2012 Bankr. LEXIS 1076, *7 (Bankr. M.D. Ga. 2012) .............................. 67

*In re Latham Lithographic Corp.*,
  107 F.2d 749 (2d Cir. 1939) ....................................................................... 67

*In re Lil' Things, Inc.*,
  220 B.R. 583 (Bankr. N.D. Tex. 1998) ...................................................... 84

*In re Lindell Drop Forge Co.*,
  111 B.R. 137 (Bankr. W.D. Mich. 1990) .................................................. 66

*In re Riverside Nursing Home*,
  43 B.R. 682 (Bankr. S.D.N.Y. 1984) ........................................................ 75

*In re Virgin Offshore USA, Inc.*,
  No. 13-79, 2013 U.S. Dist. LEXIS 128995, at *15 (E.D. La. Sep. 10, 2013) ........ 84

*In re Visser*,
  232 B.R. 362 (Bankr. N.D. Tex. 1999) ...................................................... 66

*Mabey v. Sw. Elec. Power Co.*
  *(In re Cajun Elec. Power Coop., Inc.)*,
  150 F.3d 503 (5th Cir. 1998) ...................................................................... 65

*Riemer & Braunstein LLP v. DeGiacomo*
  *(A & E 128 North Corp.)*,
  528 B.R. 190, 199 (1st Cir. B.A.P. 2015) ................................................ 66

*Texaco Inc. v. Louisiana Land & Exploration Co.*,
  136 B.R. 658 (Bankr. M.D. La.1992) ................................................. 84, 85

## STATUTES

11 U.S.C. § 365 ................................................................................................. 83, 86

## OTHER AUTHORITIES

*American Century Companies, Inc./JP Morgan & Co. Incorporated*, Staff No-Action Letter
  (12/23/1997) ................................................................................................. 89

Investment Management Staff Issues of Interest,
  http://www.sec.gov/divisions/investment/issues-of-interest.shtml [June 5, 2012] ........ 89

DOCS_SF:104855.7 36027/002

014251

The above-captioned debtor and debtor-in-possession (the "Debtor") files this omnibus reply to the objections (this "Reply") to the Debtor's *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with technical modifications)*[2] (as modified, amended, or supplemented from time to time, the "Plan"). Concurrently herewith, the Debtor has filed its *Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management L.P.* (the "Memorandum"). To the extent the Debtor is unable to consensually resolve the Objections, the Debtor respectfully requests that the Bankruptcy Court overrule any remaining or pending Objections as of the Confirmation Hearing and confirm the Plan.

## INTRODUCTION

1.      The Debtor received twelve objections to confirmation of the Plan, inclusive of joinders (collectively, the "Objections" and each objecting party, an "Objector"). As discussed in greater detail in the Memorandum, seven of the twelve objections were filed by Mr. Dondero either individually or via his related entities (collectively, the "Dondero Entities"). **Exhibit A** lists the Dondero Entities and their relationships to each other.[3] The following are the Objections filed by the Dondero Entities:

- *James Dondero's Objection to Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1661];

- *Objection to Confirmation of the Debtor's Fifth Amended Plan of Reorganization (filed by Get Good Trust, The Dugaboy Investment Trust)* [Docket No. 1667] (the "Dugaboy Objection");

---

[2] Unless otherwise noted, capitalized terms used in this Reply have the meanings ascribed in the Plan.

[3] As set forth in the Memorandum, none of the Dondero Entities, including the NexPoint RE Entities (defined below), has an actual economic interest in the Estate.

014252

- *Senior Employees' Limited Objection to Debtor's Fifth Amended Plan of Reorganization (filed by Scott Ellington, Thomas Surgent, Frank Waterhouse, Isaac Leventon)* [Docket No. 1669] (the "<u>Senior Employee Objection</u>");[4]

- *Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (filed by Highland Capital Management Fund Advisors, L.P., Highland Fixed Income Fund, Highland Funds I and its series, Highland Funds II and its series, Highland Global Allocation Fund, Highland Healthcare Opportunities Fund, Highland Income Fund, Highland Merger Arbitrate Fund, Highland Opportunistic Credit Fund, Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Total Return Fund, Highland/iBoxx Senior Loan ETF, NexPoint Advisors, L.P., NexPoint Capital, Inc., NexPoint Real Estate Strategies Fund, NexPoint Strategic Opportunities Fund)* [Docket No. 1670] (the "<u>NPA/HCMFA Objection</u>");[5]

- *NexPoint Real Estate Partners LLC's Objection to Debtor's Fifth Amended Plan of Reorganization (filed by NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC)* [Docket No. 1673] (the "<u>NREP Objection</u>");

- *CLO Holdco, Ltd.'s Joinder to Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. and Supplemental Objections to Plan Confirmation* [Docket No. 1675] (the "<u>CLOH Objection</u>"); and

- *NexBank's Objection to Debtor's Fifth Amended Plan of Reorganization (filed by NexBank Title, Inc., NexBank Securities, Inc., NexBank Capital, Inc., and NexBank)* [Docket No. 1676] (the "<u>NexBank Objection</u>").

2.      That leaves the following as the only non-Dondero related Objections:

- *Objection of Dallas County, City of Allen, Allen ISD, City of Richardson, and Kaufman County to Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1662] (the "<u>State Taxing Authority Objection</u>");

---

[4] Subsequent to the filing of the Senior Employee Objection, Mr. Waterhouse and Mr. Surgent reached an agreement with the Debtor and will withdraw their objections to the Plan.

[5] The NPA/HCMFA Objection is joined (1) by CLO Holdco, Ltd., through the CLOH Objection, and (2) by the following Dondero-controlled entities: NexPoint Real Estate Finance Inc., NexPoint Real Estate Capital, LLC, NexPoint Residential Trust, Inc., NexPoint Hospitality Trust, NexPoint Real Estate Partners, LLC, NexPoint Multifamily Capital Trust, Inc., VineBrook Homes Trust, Inc., NexPoint Real Estate Advisors, L.P., NexPoint Real Estate Advisors II, L.P., NexPoint Real Estate Advisors III, L.P., NexPoint Real Estate Advisors IV, L.P., NexPoint Real Estate Advisors V, L.P., NexPoint Real Estate Advisors VI, L.P., NexPoint Real Estate Advisors VII, L.P., NexPoint Real Estate Advisors VIII, L.P., and any funds advised by the foregoing (collectively, the "<u>NexPoint RE Entities</u>") [Docket No. 1677] (the "<u>NPRE Joinder</u>").

2

014253

- *Limited Objection of Jack Yang and Brad Borud to Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1666];

- *United States' (IRS) Limited Objection to Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1668] (the "IRS Objection");

- *United States Trustee's Limited Objection to Confirmation of Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1671] (the "UST Objection"); and

- *Patrick Hagaman Daugherty's Objection to Confirmation of Fifth Amended Plan of Reorganization* [Docket No. 1678].

As of the date hereof, the Date is working to resolve certain of the non-Dondero related Objections.

3.  To avoid duplication, this Reply does not address each objection individually. Rather, it is organized by substantive objection where possible because of the cross-over in the issues raised in the Objections. Also, as discussed below, where the Debtor has addressed an Objection in the Memorandum, the response is not repeated here. However, parts of the Senior Employee Objection, the NPA/HCMFA Objection, State Taxing Authority Objection, and the IRS Objection, are addressed individually below. A summary chart addressing each Objection and the Debtor's response thereto is attached as **Exhibit B**.

## OBJECTIONS

### I.    OBJECTIONS ADDRESSED IN THE MEMORANDUM

4.  The Memorandum addresses the Debtor's compliance with the statutory requirements of sections 1123 and 1129 of the Bankruptcy Code. As part of the analysis in the Memorandum, the Debtor addresses the portions of the Objections alleging that the Debtor failed to comply with and/or violated the statutory provisions set forth in sections 1123 and 1129 of the Bankruptcy Code. Specifically, the Debtor addresses the arguments that (i) the Plan provides for

DOCS_SF:104855.7 36027/002

improper subordination; (ii) the Disputed Claims Reserve violates due process; (iii) the Plan does

not satisfy the "best interests test;" (iv) the Plan impermissibly provides no Bankruptcy Court

oversight of post-effective date transactions; (v) the elimination of vacant classes does not allow

for post-Effective Date reclassification of Claims; (vi) the Plan violates the absolute priority rule;

(vii) the Plan does not disclose the insiders or the compensation of insiders retained post-

Effective Date; (viii) the Plan impermissibly allows modifications to the Plan without

Bankruptcy Court approval; and (ix) the Plan is not final because the Plan Supplement is not

final.

## II.    THE PLAN IMPERMISSIBLY ALLOWS FOR SET OFF

5.     The NREP Objection and the NexBank Objection erroneously contend that

Article VI.M of the Fifth Amended Plan provides for "improper set-off of unidentified claims."

NREP Obj. ¶¶ 11-13; NexBank Obj. ¶¶ 10-12.  The challenged language in the NREP Objection

and the NexBank Objection is as follows:

> The Distribution Agent may, to the extent permitted under applicable law, set off
> against any Allowed Claim and any distributions to be made pursuant to this Plan
> on account of such Allowed Claim, the claims, rights and causes of action of any
> nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may
> hold against the Holder of such Allowed Claim….  Any Holder of an Allowed
> Claim subject to such setoff reserves the right to challenge any such setoff in the
> Bankruptcy Court or any other court with jurisdiction with respect to such
> challenge.

Plan, Art. VI.M.

6.     Article VI.M of the Plan accords with Bankruptcy Code section 558 (formerly

section 541(e)), which provides that "[t]he estate shall have the benefit of any defense available

to the debtor as against any entity other than the estate, including statutes of limitation, statutes

of frauds, usury, and other personal defenses." 11 U.S.C. § 558; *see In re Braniff Airways, Inc.*, 42 B.R. 443, 447 (Bankr. N.D. Tex. 1984) (a debtor in possession may exercise setoff rights pursuant to Bankruptcy Code section 558 (then section 541(e)); *In re Circuit City Stores, Inc.*, 2009 Bankr. LEXIS 4011 (Bankr. E.D. Va. Dec. 3, 2009) (same); *In re Women First Healthcare, Inc.*, 345 B.R. 131, 135 (Bankr. D. Del. 2006) (same); *In re PSA, Inc.*, 277 B.R. 51, 53 (Bankr. D. Del. 2002) (same); *Second Pa. Real Estate Corp. v. Papercraft Corp. (In re Papercraft Corp.)*, 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991) (same).

7.      In support of the argument that the provision is improper, the NREP Objection and the NexBank Objection contend that Bankruptcy Code section 553 and cases construing that provision limit parties' right of setoff in bankruptcy only to prepetition claims.  NREP Obj. ¶¶ 11-13; NexBank Obj. ¶¶ 10-12.  However, the issue of the scope of the Distribution Agent's setoff rights and the application of section 553 is not even adjudicated by the Plan.[6]  Rather, on its face, the Plan states that the Distribution Agent may exercise setoff rights only "to the extent permitted by law."  Thus, it does not purport to expand setoff rights of the Distribution Agent beyond what is permitted by the Bankruptcy Code but only preserves whatever setoff rights the estate has – no more and no less.  Moreover, as quoted above, it expressly preserves the right of creditors to challenge any setoff that the Distribution Agent seeks to take.

8.      Accordingly, whether the Distribution Agent may take any specific setoffs is reserved by the Plan for another day.  The NREP Objection and the NexBank Objections on this issue are not well-taken, and both such objections should be overruled.

---

[6] The Debtor reserves its rights with respect to the applicability of section 553 to the Distribution Agent's preserved rights of setoff, if any.

DOCS_SF:104855.7 36027/002

014256

## III. THE PLAN IMPERMISSIBLY ALLOWS ASSUMPTION OR REJECTION AFTER CONFIRMATION

9. The NPA/HCMFA Objection contends that the Plan violates section 365(d)(2) because it allows the Debtor to assume or rejection executory contracts or unexpired leases on or prior to the Effective Date. While the Debtor believes that the original language in the Plan is defensible, the Debtor has elected to amend the Plan to clarify that all executory contracts and leases must be assumed or rejected on or prior to the Confirmation Date.

## IV. THE ATTACK ON THE PLAN'S RELEASE IS BASELESS.

### A. Debtor Release Provisions

10. Article IX of the Plan provides for releases only by the Debtor, its Estate, and the Reorganized Debtor (including their successors, the Claimant Trust and the Litigation Sub-Trust) of any and all Causes of Action, including any derivative claims that might be asserted on behalf of, or in the name of, the Debtor, that the Debtor or the Estate could otherwise assert against the Released Parties[7] (the "Debtor Release"). The Debtor Release is the product of extensive good faith, arm's-length negotiations and complies fully with the Bankruptcy Code and prevailing law. The Debtor Release provides:

> On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged **by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust** from any and all Causes of Action, including any derivative claims, **asserted on behalf of the Debtor,** whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise,

---

[7] The "Released Parties" under the Plan are: (i) the Independent Directors; (ii) Strand (solely from the date of the appointment of the Independent Directors through the Effective Date); (iii) the CEO/CRO; (iv) the Committee; (v) the members of the Committee (in their official capacities); (vi) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case; and (vii) the Employees. Plan, Art. I.B., Def. 111.

014257

*that the Debtor or the Estate would have been legally entitled to assert in their own right* (whether individually or collectively) *or on behalf of* the holder of any Claim against, or Interest in, a Debtor or other Person.

Plan, Art. IX.D (emphasis added.)

11.    The Debtor Release releases, among others, the Independent Directors (each of whom was appointed by the Bankruptcy Court post-petition), Strand (solely from January 9, 2020, the date of the appointment of the Independent Directors, through the Effective Date), the CEO/CRO (who is also an Independent Director and whose role was expanded to include the CEO/CRO role on July 16, 2020), the Committee and its members in their official capacities, the Professionals retained with this Court's approval by the Debtor or by the Committee and, to a more limited extent, the Employees.[8]

12.    The Debtor Release is a release of the Released Parties by the Debtor, the Estate and their successors on account of Causes of Action that belong to the Debtor or the Estate, whether directly or derivatively. *The Debtor Release does not release any Causes of Action of any person other than the Debtor, the Estate and their successors and does not release any claims that could not have been asserted by the Debtor or the Estate prior to the Effective Date.*

### B.    <u>Objections and Responses</u>

13.    Three parties in interest have objected to the Debtor Release.  The Dugaboy Objection objects to the Debtor Release under the mistaken view that the Claimant Trust and Litigation Sub-Trust are (in Dugaboy's view) granting releases of claims that have not yet arisen,

---

[8] The Debtor Release contains restrictions on the releases of the Employees, as may be determined by the Claimant Trust Oversight Committee.  Plan, Art. IX.D.

014258

*i.e.,* causes of action of the Claimant Trust and Litigation Sub-Trust that arise after the Effective Date against the Released Parties. *See Dugaboy Objection* at p. 9. The U.S. Trustee Objection erroneously argues the Debtor Release is an impermissible non-consensual third-party release. *See UST Objection* at pp. 2-3. The Senior Employee Objection objects to the Debtor Release because the Senior Employees believe that the Debtor should not be able to condition a release of the Senior Employees on concessions not required of other Employees obtaining a release. *See Senior Employee Objections* at p. 3.

14. Both Dugaboy and the U.S. Trustee misread the Debtor Release provision. The Claimant Trust and Litigation Sub-Trust are included solely in their capacity as "successors, assigns and representatives" of the Debtor and the Estate, and the Debtor Release applies solely to Causes of Action that ***the Debtor or the Estate*** themselves would have against the Released Parties (whether a direct claim or a derivative claim, but in either case, only Causes of Action owned by the Debtor or the Estate). By its express terms, the Debtor Release does not apply to any future claims or Causes of Action that the Claimant Trust or the Litigation Sub-Trust would have in its own right, based on post-Effective Date acts or omissions, rather than as a successor to or assignee of Causes of Action of the Debtor and the Estate.

15. The U.S. Trustee's contention that the Debtor Release provision includes a third-party release is incorrect. The Debtor Release applies only to claims held by the Debtor and the Estate, on behalf of themselves and each of their successors, assigns and representatives in favor of the Released Parties. Any direct claims and causes of action owned by any other person are not released by the Debtor Release, and nothing in the language of the provision implicates any

DOCS_SF:104855.7 36027/002

non-derivative claims or causes of action that any third party might have against any of the Released Parties.

16.     The Senior Employees' objection to the proposed Debtor Release also is devoid of merit.  As discussed at length, in Section IX, herein, Employees are not entitled, either contractually or legally, to any release.  Nor does a release given to one Employee entitle any other employee to a similar release.  Releases are discretionary and can be provided, in an exercise of discretion, to persons who have provided consideration to the Debtor and the Estate. Unlike the other Released Parties, the Senior Employees have not yet fully provided that consideration.  As the Court is aware, the Committee and the Court have consistently voiced concerns regarding the potential release of the Employees, and specifically, the Senior Employees.  The Plan resolves these concerns by imposing significant restrictions and affirmative requirements for any Employee to obtain the benefit of the Debtor Release and additional requirements for the Senior Employees to do so.  *See* Plan, Art. IX.D.

17.     The Bankruptcy Code explicitly provides for and sanctions the inclusion of debtor releases in plans.  Section 1123(b)(3)(A) of the Bankruptcy Code states clearly that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."  The Debtor Release is an essential *quid pro quo* for the Released Parties' significant contributions to the Debtor's restructuring, which has been highly complex and contentious.  There are multiple precedents in which courts have approved releases by a debtor's estate of its own claims against a far more extensive group of persons than those

DOCS_SF:104855.7 36027/002

014260

included here.[9]  The Committee and its members (who are Released Parties), who have had over a year to investigate potential claims against the Employees, among others, fully support the Debtor Release as to the other identified Released Parties.

18.    It is also important to bear in mind that the Debtor Release applies to claims *of the Debtor or the Estate* against the Released Parties that others might purport to assert derivatively on behalf of the Debtor or the Estate.  To the extent that Released Parties have indemnification rights against the Debtor, the assertion of such derivative claims – no matter how specious – would trigger claims for indemnification that would deplete the assets available for distribution to creditors. Moreover, regardless of such rights of indemnification, the assertion of such purported derivative claims on behalf of the Debtor would subject the Debtor to the costs – both economic, in terms of legal fees, and of the time and distraction of personnel – that would result from becoming embroiled in such derivative litigation – again, no matter how specious the claim.

19.    Both the U.S. Trustee and Dugaboy erroneously cite *Pacific Lumber*[10] for the proposition that releases of third parties – even by the debtor – are always impermissible. *Pacific Lumber*, however, did not involve the release of claims by a debtor.  The issue addressed in *Pacific Lumber* was whether a bankruptcy court could approve injunction and exculpation provisions in a plan that effectively mandated that **holders of claims** release, or be precluded

---

[9] *See, e.g., In re Bigler LP*, 442 B.R. 537, 547 (Bankr. S.D. Tex. 2010) (plan release provisions were acceptable settlement under § 1123(b)(3) because the debtors and the estate were releasing claims that were property of the estate); *In re Heritage Org., LLC*, 375 B.R. 230, 259 (Bankr. N.D. Tex. 2007); *In re Mirant Corp.*, 348 B.R. 725, 737-39 (Bankr. N.D. Tex. 2006); *In re Gen. Homes Corp.*, 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991).

[10] *Bank of New York Trust Co., NA v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)*, 584 F.3d 229, 251-253 (5th Cir. 2009) ("*Pacific Lumber*")

014261

from imposing liability on, **non-debtor third parties**. Nothing in *Pacific Lumber* prevents a debtor or its estate on its own behalf and on behalf of assignees and successors created pursuant to a plan, from releasing its own claims against third parties. Indeed, any such ruling would be directly contrary to the express provisions of section 1123(b)(3)(A).

20.     The Debtor Release is a customary plan provision consistent with the business judgement rule, is fair and equitable and in the best interest of the Estate and its creditors and should be approved. No party that has objected to it has cited any case or statutory basis for preventing a debtor and its successors from releasing the debtor's own claims against third parties, or has demonstrated any basis for believing that any claims of the Debtor or the Estate even exist against the Released Parties.

## V.     THE COURT HAS ALREADY EXCULPATED THE INDEPENDENT DIRECTORS AND THEIR AGENTS FOR NEGLIGENCE PURSUANT TO THE JANUARY 9, 2020 SETTLEMENT ORDER AND, TO THE EXTENT NOT COVERED THEREIN, THE PLAN'S EXCULPATION PROVISIONS EFFECTUATE ESSENTIAL PROTECTIONS FOR ESTATE FIDUCIARIES AND THEIR AGENTS, AND ARE FULLY SUPPORTED BY THE BANKRUPTCY CODE AND APPLICABLE LAW.

21.     Exculpation provisions effectuate the entitlement of court-supervised fiduciaries to qualified immunity for their actions. *See, e.g., In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000); *In re A.P.I., Inc.*, 331 B.R. 828, 868 (Bankr. D. Minn. 2005), *aff'd sub nom., OneBeacon Am. Ins. Co. v. A.P.I., Inc.*, No. CIV. 06-167 (JNE), 2006 U.S. Dist. LEXIS 34297 (D. Minn. May 25, 2006); *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y. 1994). Such provisions also allow the parties to a chapter 11 case "to engage in the give-and-take of the bankruptcy proceeding without fear of subsequent litigation over any

potentially negligent actions in those proceedings" and, on that rationale, have even been
approved when necessary to protect non-fiduciary participants in the chapter 11 process.
*Blixseth v. Credit Suisse*, 961 F.3d 1074, 1084 (9th Cir. 2020).

22.     As discussed in detail below, the Settlement Order[11] previously entered by this
Court has already exculpated the Independent Directors and their agents from potential
negligence claims. Accordingly, as it relates to the Independent Directors and their agents, the
Plan's Exculpation Provisions simply respect the integrity of the Settlement Order. Moreover, it
would be a mistake to construe *Pacific Lumber* as categorically prohibiting exculpation
provisions. In fact, *Pacific Lumber* itself expressly endorsed a plan provision exculpating the
committee and its members. For the reasons set forth below, exculpating the Exculpated Parties
in respect of their post-petition services for the Estate is entirely consistent with *Pacific Lumber*,
other applicable law, and the purposes and policies of chapter 11. Exculpation is particularly
appropriate in this case to stem the tide of frivolous and vexatious litigation against the
Exculpated Parties which Dondero and his Related Entities are seeking so desperately to
continue to pursue.

A.     **The Settlement Order Already Exculpates the Independent Directors and
       Their Agents from Claims of Negligence and Those Protections Should Be
       Continued Post-Confirmation**

23.     The Objectors challenge the Exculpation Provisions on the grounds that they
constitute an impermissible third-party release that is prohibited by *Pacific Lumber*. What the

---

[11] *See*, *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the
Debtor and Procedures for Operations in the Ordinary Course* entered January 9, 2020 [D.I. 339] (the "Settlement
Order") and *Order Approving Debtor's Motion under Bankruptcy Code Sections 105(a) and 363(b) for
Authorization to Retain James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer and Foreign
Representative Nunc Pro Tunc To March 15, 2020* entered July 16, 2020 [D.I. 854].

DOCS_SF:104855.7 36027/002

Objectors ignore, however, is that this Court has ***already*** exculpated the Independent Directors and their agents for negligence pursuant to the terms of the Settlement Order – a final order to which Dondero agreed as a means of avoiding the appointment of a chapter 11 trustee, and which has been in place for over a year and was never appealed by any of the Objectors, all of whom had notice of it.[12]  Accordingly, the Court should reject Objectors challenge to exculpation of the Independent Directors and their agents as a collateral attack on the Settlement Order which is indisputably a final order of this Court.[13]

    24.    Paragraph 10 of the Settlement Order expressly provides:

> ***No entity may commence or pursue a claim or cause of action of any kind*** against any Independent Director, any Independent Director's agents, or any Independent Director's advisors relating in any way to the Independent Director's role as an independent director of Strand without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of <u>wi</u>llful misconduct or gross negligence against Independent Director, any Independent Director's agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

Settlement Order, ¶ 10 (emphasis added).  Thus, as to the Independent Directors and their agents, they have already been exculpated for negligence, and the Plan Exculpation Provisions simply preserve the necessary protections and standard of liability already established by the Court for these court-appointed fiduciaries by final order which continues in effect pursuant to the plan.[14]

---

[12] *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987) (*res judicata* barred a debtor from bringing a claim that was specifically and expressly released by a confirmed reorganization plan because the debtor failed to object to the release at confirmation and was now collaterally attacking the release).

[13] *See Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) ("[e]ven though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment.").

[14] *See* Plan, Art. IX.H (Paragraphs 9 and 10 of the Settlement Order remain in effect post-Confirmation).

014264

25.     Unlike in *Pacific Lumber*, the Independent Directors (which include the CEO/CRO) are not prepetition officers and directors of the Debtor.  The Independent Directors were appointed post-petition by the Court pursuant to the Settlement Order as an urgent measure to address serious concerns raised by the Committee as to extensive breaches of fiduciary duty and lack of disinterestedness by the Debtor's prepetition management.  In recognition of the extraordinarily complex, litigious and volatile situation the Independent Directors were getting into, the Court expressly exculpated the Independent Directors (including the CEO/CRO) and their agents from claims for negligence in connection with their actions in the case.

### B.     Plan Exculpation Provisions

26.     Article IX.C of the Plan addresses the exculpation of certain Exculpated Parties[15] and provides that each Exculpated Party shall be exculpated from any Cause of Action arising out of acts or omissions in connection with this chapter 11 case and certain related transactions, except for any acts or omissions that are determined by Final Order to have constituted bad faith, fraud, willful misconduct, criminal misconduct, or gross negligence (the "Exculpation Provisions").  Although the Exculpation Provisions apply to Strand and certain Employees, the Exculpation Provisions apply solely with respect to actions taken by Strand and such Employees

---

[15] The Plan defines the "Exculpated Parties" as: (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO, and (ix) the Related Persons of each of the parties listed in (iv) through (viii); provided, however, that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

DOCS_SF:104855.7 36027/002

from and after the date of the post-petition appointment of the Independent Directors, through the Effective Date of the Plan, and expressly exclude James Dondero and a number of other specified entities.[16]   The provision provides:

> Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(v); *provided*, *however,* the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

27.    An exculpation provision differs from a release.[17]  An exculpation provision sets a standard of liability that absolves a person from liability for ordinary negligence, but not from liability for more egregious conduct.  In this respect, it is consistent with the duty of care and duty of loyalty standards of the business judgment rule that protects business entities and

---

[16] To the extent there is any conflict between the descriptions of the Exculpation Provisions herein and the Plan, the Plan shall control.

[17] *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (holding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans," does not affect the liability of these parties, but rather states the standard of liability under the Code, and as it exculpated the named parties for actions during the course of the case did not implicate section 524(e).)

DOCS_SF:104855.7 36027/002

014266

individual fiduciaries from liability when their actions are taken within their authority and good faith.[18]

28.    Various objections have been raised to the inclusion of the Exculpation Provisions in the Plan.  Each of the Objectors argues that, except with regard to the Committee and its Professionals, the Exculpation Provisions are impermissible based upon their misunderstanding and overly-broad reading of the opinion of the Fifth Circuit in *Pacific Lumber*.[19]

### C.    Pacific Lumber

29.    Because every argument relied upon by the Objectors as to the permissibility of the Exculpation Provisions is premised on *Pacific Lumber*, it is important to analyze exactly what the Fifth Circuit actually held based on the appeal and the briefing before it.  The portion of the *Pacific Lumber* opinion addressing non-debtor exculpation and releases is less than two pages long and, when appropriately construed, is inapposite to this case, except insofar as it approved the exculpation of the creditors' committee and its members.

30.    In *Pacific Lumber*, a prepetition secured creditor joined with a competitor of one of the debtors to propose a chapter 11 plan (the "MRC/Marathon Plan").  The MRC/Marathon Plan included a provision that exculpated the plan proponents, the reorganized debtors, the unsecured creditors' committee and each of their respective professionals, officers and directors from liability (other than for willful misconduct and gross negligence) relating to proposing, implementing and administering the chapter 11 plan.  The bankruptcy court approved the

---

[18] *See* Bernard S. Sharfman, *Importance of the Business Judgement Rule*, Harvard Law School Forum on Corporate Governance, posted at https://corpgov.law.harvard.edu/2017/01/19/the-importance-of-the-business-judgment-rule/

[19] The Objectors acknowledge the Fifth Circuit expressly held that the exculpation of the unsecured creditors' committee and its members and professionals was appropriate.  Therefore, the Exculpation Provisions as applied to these parties will not be discussed further herein.

014267

discharges, releases, exculpations and injunctions pursuant to sections 105, 524, 1123(a)(5) and 1129.

    31.    The appellants were an indenture trustee and certain bondholders who had voted against the MRC/Marathon Plan and were the unsuccessful proponents of a competing plan which, incidentally, contained non-debtor third-party releases and exculpation provisions identical in scope to those in the MRC/Marathon Plan.[20]  On appeal, the Fifth Circuit either affirmed or dismissed on mootness grounds in respect of every issue raised on appeal, other than the release and exculpation provisions.  While the issues on appeal had been broadly worded,[21] the only issue in respect of the release and exculpation provisions actually briefed by the appellants was the impropriety of the release and exculpation provisions for the benefit of the non-debtor plan proponents and the committee.[22]

    32.    The Fifth Circuit relied ***exclusively*** on section 524(e) of the Bankruptcy Code for its observation that non-consensual releases or exculpations of non-debtors are not allowed, even for actions taken during the case.  *Id.* at 252-3.  Section 524 is entitled "Effect of discharge" and subsection 524(e) provides that a "discharge of a debt of a debtor does not affect the liability of

---

[20] *See First Amended Chapter 11 Plan for Scotia Pacific Company LLC proposed by the Bank of New York Trust Company, N.A., as Indenture Trustee for the Timber Notes (as modified on April 28, 2008)* [*In re: Scotia Development LLC, et al.*, Case No. 07-20027, U.S. Bankruptcy Court for the S.D. Tex., D.I. 2774], Sections 10.1, 10.3 and 10.4.

[21] *See The Indenture Trustee's Statement of Issues on Appeal of the Order Confirming the MRC/Marathon Plan* [*In re: Scotia Development LLC, et al.*, Case No. 07-20027, U.S. Bankruptcy Court for the S.D. Tex., D.I. 3431] at p. 4, Issue No. 18.

[22] *See Brief of Appellants* [*Bank of New York Trust Co., NA v. Official Unsecured Creditors' Committee,* Case No.08-40746, U.S. Court of Appeals for the Fifth Circuit, August 25, 2008], at pp. 55-56 ("The Plan contains an expansive "Exculpation Clause" which purports to release claims of non-consenting creditors against numerous non-debtors, including "officers, directors, professionals, members, agents and employees" of MRC, Marathon and the Committee. . . . ***Having obtained confirmation of the Plan through the erroneous means set forth above, the Plan Proponents propose to use this overbroad release language to exonerate*** themselves.") (emphasis added; record cites omitted)

17

014268

any other entity on . . . such debt." Thus, on its face, section 524(e), only prohibits a plan from discharging obligations of third parties who are liable with the debtor on its debts. The Fifth Circuit focused on co-liability for "pre-petition debts,"[23] yet applied the prohibition to causes of action for "any negligent conduct that occurred during the course of the bankruptcy."[24]

33.     Notably, the briefing on the issue presented to the Fifth Circuit had dealt with the impropriety of the exculpation of the non-debtor plan proponents and the committee, but not with the officers and directors of the Debtor. Thus, to the extent the Fifth Circuit included the debtor's officers and directors in its discussion, that discussion constituted mere *dicta*.

34.     Although the Fifth Circuit ruled that section 524(e) did not support exculpation for certain persons, such as the non-debtor plan proponents in that case, the Court did not treat section 524(e) as an absolute bar to exculpation provisions in a plan that were supportable by other sections of the Bankruptcy Code, by other applicable law or by legitimate policy considerations relating to the chapter 11 process. In approving the exculpation as to the committee and its members, the court cited to the qualified immunity of committees under section 1103(c) of the Bankruptcy Code and to an important policy concern regarding the effect of denying exculpation on the chapter 11 process: "actions 'against committee members in their capacity as such should be discouraged. If members of the committee can be sued by persons unhappy with the committee's performance during the case or unhappy with the outcome of the case, it will be extremely difficult to find members to serve on an official committee.' The

---

[23] *Id.* at 252.

[24] *Id.*

014269

Creditors' Committee and its members are the only disinterested volunteers among the parties sought to be released here." *Id.,* at 252 (cites omitted).

35.     The Debtor is, of course, not asking this court to override the Fifth Circuit's holding in *Pacific Lumber*.  Rather, as discussed below, the facts of this case are such that the rationale applied by the Fifth Circuit to permit exculpation of the committee and its members fully supports the Plan Exculpation Provisions.  The need for exculpation has already been recognized by this Court in the Settlement Order.  Furthermore, as the *Pacific Lumber* ruling was based solely on section 524(e), nothing in that opinion precludes approval of the Exculpation Provisions pursuant to other provisions of the Bankruptcy Code or other applicable law.

### D.     Exculpation of the Exculpated Parties Is Permissible and Not Prohibited by *Pacific Lumber*.

36.     The propriety of the Plan Exculpation Provisions should be considered as they apply to each respective Exculpated Party.

37.     <u>The Debtor</u>.  The Debtor and its successors and assigns are entitled to the relief embodied in the Exculpation Provision.  With exceptions not applicable here, the Debtor, as debtor in possession, has all the rights and powers of a trustee.  11 U.S.C. § 1107(a).  Accordingly, the Debtor's right to qualified immunity is co-extensive with that of a trustee.  Moreover, granting the Debtor such relief falls squarely within the "fresh start" principles underlying the Bankruptcy Code.  *See* 11 U.S.C. §§ 524 and 1141.  The Claimant Trust and Litigation Sub-Trust are successors to and assigns of the Debtor, and thus, to the extent applicable to the scope of the Exculpation Provisions, should be similarly protected.  In the context of this Plan, the Claimant Trust and Litigation Sub-Trust are court-approved fiduciaries

19

whose sole purpose is to operate the Debtor's business for a limited period of time to effectuate an orderly monetization of the Debtor's assets and pay the claims of creditors. Post-Confirmation, the Debtor and its successors are entitled to exculpation.

38. <u>The Independent Directors</u>. Even if the Settlement Order did not plainly provide the Independent Directors with exculpation, in the context of this case, the Independent Directors are akin to committee members and the same rationale the Fifth Circuit used in *Pacific Lumber* to uphold the exculpation of committee members applies to the Independent Directors. The use of independent directors has become commonplace in large complex commercial cases, both on the eve of bankruptcy[25] and post-petition,[26] especially where there are allegations of mismanagement, breaches of fiduciary duty or other conflicts that cast shadows on the relationship between the debtor in possession and its creditors, who question whether existing officers and directors can faithfully perform their fiduciary duties as the face of the debtor in possession.[27] Independent directors tend to be either experienced restructuring professionals

---

[25] Some examples of major bankruptcy cases in which independent directors have been appointed just prior to bankruptcy, usually due to accounting irregularities and other events that resulted in distrust of management by major creditor constituencies, include: *Neiman Marcus Group, Inc.* (S.D. Tex); *WorldCom* (S.D. N.Y.); *Sears* (S.D. N.Y.); *California Pizza Kitchen* (S.D. Tex.); *PG&E Corp.* (N.D. Cal.); *Adelphia Communication Corp.* (S.D. N.Y.); Station Casinos (D. Nev.); and *Cengage Learning Centers* (E.D. N.Y.)

[26] *See* Regina Kelbon and Michael DeBaecke, *Appointment of Independent Directors on the Eve of Bankruptcy: Why the Growing Trend*, paper prepared for the Penn. Bar Institute 19th Annual Bankruptcy Institute, June 27, 2014, at pp. 17-23, available at https://www.blankrome.com/siteFiles/publications//B3795676DF921A7E3BED8A9F15E7FDF3.pdf (discussing use of independent directors both pre- and post-petition and certain cases utilizing same).

[27] *See, e.g., In re Natrol, Inc*., Case No. 14-22446 (Bankr. D. Del.) Motion and Order Appointing Independent Directors [Docket Nos. 248 and 305] (independent directors appointed to settle motion for appointment of trustee by large creditor); *In re 4 West Holdings, Inc.,* Case No. 18-30777 (Bankr. N.D. Tex) Motion and Order Appointing Independent Directors [Docket Nos. 311 and 383] (independent director appointed to review propriety of certain settlements and business and marketing plan); *In re Synergy Pharmaceuticals, Inc*., Case No. 18-14010 (Bankr. S.D.N.Y.) Motion and Stipulation and Order Appointing Independent Directors [Docket Nos. 373 and 553] (independent directors appointed because of pending shareholder derivative actions against prepetition board members); *In re Zohar III, Corp.*, Case No. 18-10512 (Bankr. D. Del.) Order Appointing Independent Director [Docket No. 267] (independent director appointed as part of a mediated settlement over sale of a portfolio of financial services entity debtor]; *In re Interlogic Outsourcing, Inc.*, Case No. 19-31444 (Bankr. N.D. Ind.) Motion

---

(attorneys or financial advisors) or seasoned industry professionals with immaculate corporate records.  Reliance on the use of independent directors has thus become a critical tool in proper corporate governance and restoring creditor confidence in management in modern day corporate restructurings.  Failure to protect independent directors from claims of ordinary negligence will discourage sophisticated restructuring personnel from accepting appointment to such roles and will have a substantial negative effect on the efficacy of the chapter 11 process and the efficient realization of its purposes and goals.

39.      The Independent Directors appointed in this case are persons of such stature, as they include a former bankruptcy judge, former commercial bankruptcy practitioners and a person with expertise in hedge fund operations.  As indicated by the Fifth Circuit in *Pacific Lumber*, if estate fiduciaries who are "disinterested volunteers" can be sued for actions taken during the course of a case pursuant to the Bankruptcy Code and under judicial supervision, qualified people would not serve, and the integrity of the chapter 11 process would be compromised.  This policy concern is particularly acute where, as here, the Independent Directors undertook their duties in the midst of a highly contentious and litigious case.

40.      In this case, the Independent Directors also are analogous to bankruptcy trustees. Section 1107(a) of the Bankruptcy Code provides that a debtor in possession has all of the rights and powers, and substantially all of the duties, of a bankruptcy trustee, and the case law makes it clear that the debtor in possession and its officers and directors serve in the same fiduciary capacity as a trustee.  The Independent Directors were approved by the court to serve as post-

and Order Appointing Independent Directors [Docket Nos. 198 and 394] (independent director appointed for general corporate oversight).

DOCS_SF:104855.7 36027/002

014272

petition fiduciaries in this case in order to resolve insistent and urgent demands for the appointment of a trustee to supplant the prepetition directors and senior officers. In fact, the Court denied the U.S. Trustee's motion seeking appointment of a chapter 11 trustee based primarily on its approval of the Independent Directors to act as court-supervised fiduciaries for the Debtor and the Estate – the functional equivalent of a chapter 11 trustee. It is well established that trustees have qualified immunity for acts taken within the scope of their appointment. *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981). Like trustees, the Independent Directors are estate fiduciaries. *In re Houston Regional Sports Network, L.P.*, 505 B.R. 468, 481-82 (Bankr. S.D. Tex. 2014) (directors of a non-debtor general partner owe fiduciary duties to the estate of a debtor limited partnership and the fiduciary duties to the estate are paramount.)

41. For the same reasons that the Fifth Circuit upheld the exculpation of committee members in *Pacific Lumber*, and pursuant to sections 105, 1106, 1107, 1123, and 1129 of the Bankruptcy Code and the related applicable non-bankruptcy law governing the immunity and exculpation of fiduciaries, none of which were actually addressed in *Pacific Lumber*, the Exculpation Provisions should be approved as to the Independent Directors and CEO/CRO.

42. Professionals. The Debtor's Professionals are entitled to exculpation. *See, In re Ondova Ltd. Co. v. Sherman*, 914 F.3d 990 (5th Cir. 2019) (protecting counsel for trustee from suit when acting pursuant to direction of its client within the scope of its employment); *Harris v. Wittman (In re Harris),* 590 F.3d 730 (9th Cir. 2009)(same). There is no distinction in the Bankruptcy Code between counsel for a trustee and counsel for a debtor in possession – both are

subject to court approval of their retention, both serve as counsel to estate fiduciaries and both

are subject to their actions and compensation being reviewed and approved by the Court.[28]

43.     Additionally, under applicable Texas law, attorneys are immune from civil

liability to non-clients for actions taken in connection with representing a client in litigation. *See*

*Cantey Hanger, LLP v. Byrd, 467 S.W.3d 477, 481* (Tex. 2015); *see also Troice v. Proskauer*

*Rose, L.L.P.,* 816 F.3d 341 (5th Cir. 2016) (dismissing securities fraud litigation brought by third

parties against counsel for certain companies related to Ponzi scheme perpetrator Allen

Stanford).

44.     Strand.  It is appropriate to include Strand in the Exculpation Provisions.  Strand

is the Debtor's general partner, and the Independent Directors are the directors of Strand.  Strand

should be protected to the same extent as the Debtor and the Independent Directors, and for the

same reasons.  *See In re Houston Reg'l Sports Network, L.P.,* (directors of a non-debtor general

partner owe fiduciary duties to the estate of a debtor limited partnership and the fiduciary duties

to the estate are paramount.)  In regard to Strand, the Exculpation Provisions apply solely with

respect to actions taken by Strand from and after the date of the post-petition appointment of the

Independent Directors, through the Effective Date of the Plan.

45.     Employees.  The Employees, as agents of the Independent Directors, are already

covered by the Settlement Order's exculpation provision for acts taken in furtherance of and

---

[28] *See Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.),* 200 F.3d 382  (5th Cir. 2000) (order approving
final fee application of court-appointed professional was *res judicata* in respect of subsequent lawsuit by trustee
alleging malpractice and negligence where potential claims were known to trustee at the time of final fee
hearing.).  *See also*, *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),* 163 F.3d 925 at 931 (5th
Cir.), *cert. denied*, 527 U.S. 1004 (1999) (judgment in bankruptcy court lawsuit brought by reorganized debtor
seeking fee disgorgement against accountant for debtor for failure to disclose relationship with potential litigant was
*res judicata* in respect of subsequent state court lawsuit by debtor for malpractice).

under the direction and supervision of the Independent Directors in administering, managing and operating the Debtors. However, even if the Employees were not already covered by the Settlement Order, it would be appropriate to include the Employees in the Exculpation Provisions. The Exculpation Provisions apply to the Employees solely with respect to actions taken by the Employees from and after the date of the post-petition appointment of the Independent Directors, through the Effective Date of the Plan.

### E. Approval of the Exculpation Provisions Is a Legitimate Exercise of the Court's Powers and Follows Directly from the Findings and Conclusions the Court Must Make to Confirm a Plan

46. The Debtor is seeking approval of the Exculpation Provisions in its Plan pursuant to sections 105, 1106, 1107, 1123, and 1129 of the Bankruptcy Code; the qualified immunity of bankruptcy trustees and their agents, and the correlative qualified immunity of debtors in possession; the related applicable non-bankruptcy law on immunity and exculpation of fiduciaries; and the strong policy reasons offered by the Fifth Circuit as to committee members, which apply to the Independent Directors in the same way as the Fifth Circuit applied them to committee members. The Bankruptcy Code makes it clear that "any appropriate provision not inconsistent with the applicable provisions of this title" may be included in a chapter 11 plan.[29]

47. The Fifth Circuit's *Pacific Lumber* ruling denying exculpation to certain parties was based on section 524(e). Some recent court decisions approving exculpation provisions have held, however, that in dealing with complex and litigious bankruptcy cases, section 524(e)

---

[29] 11 U.S.C. § 1123(b)(6).

DOCS_SF:104855.7 36027/002

014275

is not a bar to setting a standard of liability that limits liability for negligence for acts taken during the course of the case in furtherance of the purpose of chapter 11. For example, in *Blixseth*,[30] the Ninth Circuit (which generally does not permit third-party releases in plans) determined that the exculpation clause at issue did not implicate section 524(e) because it related to post-petition actions that occurred during the bankruptcy process, and did not implicate any potential liability on prepetition debts of the debtor. The Court further explained that, despite prior Ninth Circuit decisions disproving third-party releases relating to such prepetition debts of the debtor, exculpation provisions with third-party releases are permissible because chapter 11 cases are often "highly litigious" where "oxes [sic] are gored" and such releases limited in time and scope "allow the settling parties. . . to engage in the give-and-take of the bankruptcy proceeding without fear of subsequent litigation over any potentially negligent actions in those proceedings." *Id*. at 1084. Finally, the court held, as many of its sister circuits have held, that under sections 105(a) and 1123 "the bankruptcy court here had the authority to approve an exculpation clause intended to trim subsequent litigation over acts taken during the bankruptcy proceedings and so render the Plan viable." *Id*. Significantly, the creditor whose exculpation was at issue in *Blixseth* was not even an estate fiduciary. *Id*. at 1081.

48.     Another court recently dealing with exculpation issues discussed the need for an appropriately-constructed exculpation of estate fiduciaries and exculpation relating to court approved transactions in order to preserve the basic integrity of the chapter 11 process. In *In re Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717 (Bankr. S.D.N.Y 2019), the bankruptcy

---

[30] 961 F.3d 1074 (9th Cir. 2020)

DOCS_SF:104855.7 36027/002

014276

court was presented with a broad exculpation clause in a plan that protected not only court-supervised fiduciaries, but also entities such as the acquirer, the acquirer's professionals, the pre- and post-petition lenders and the indenture trustees. As here, the exculpation provision pertained to acts and omissions taken in connection with and during the bankruptcy case, but excluded acts of fraud, willful misconduct or gross negligence.

49. The court declined to approve the exculpation provision as written, holding that it was overly broad, but nevertheless provided significant guidance on what an appropriate exculpation provision should provide:

> *I think that a proper exculpation provision is a protection not only of court-supervised fiduciaries, but also of court-supervised and court-approved transactions.* If this Court has approved a transaction as being in the best interests of the estate and has authorized the transaction to proceed, then the parties to those transactions should be not be subject to claims that effectively seek to undermine or second-guess this Court's determinations. In the absence of gross negligence or intentional wrongdoing, parties should not be liable for doing things that the Court authorized them to do and that the Court decided were reasonable things to do. *Cf. Airadigm Commc'ns., Inc. v. FCC (In Re Airadigm Communs., Inc.)*, 519 F.3d 640, 655-57 (7th Cir. 2008) (approving a plan provision that exculpated an entity that funded a plan from liability arising out of or in connection with the confirmation of the Plan, except for willful misconduct); *In re Granite Broad. Corp.*, 369 B.R. 120, 139 (Bankr. S.D.N.Y. 2007) (approving exculpation provision that was limited to conduct during the bankruptcy case and noting that the effect of the provision is to require "that any claims in connection with the bankruptcy case be raised in the case and not be saved for future litigation.").

599 B.R. at 720-721 (emphasis added). The Exculpation Provisions in the Plan here are consistent with the policy-based and chapter 11 process-based guidelines provided by Judge Wiles in *Aegean Marine*, in that they apply to court-supervised fiduciaries and transactions entered into under the auspices of the court.

26

014277

50.     Additionally, the bankruptcy court's power to approve an exculpation provision in a chapter 11 plan flows naturally from the fact that it cannot confirm a chapter 11 plan unless it finds that the proponent of the plan has complied with the applicable provisions of the Bankruptcy Code and the plan has been proposed in good faith.[31]  The plan is the culmination of the chapter 11 case.  By confirming a plan and making the "good faith" finding, the court is determining that the plan proponent (usually, the debtor) and its officers and directors have acted appropriately throughout the case, consistent with their fiduciary duties and have been administering, managing and operating the debtor in accordance with the provisions of the Bankruptcy Code and applicable law.[32]  Once the court makes its good faith finding, it is appropriate to set the standard of liability of the fiduciaries (and, as in *Blixseth*, other parties) involved in the formulation of that chapter 11 plan.[33]

51.     An exculpation provision appropriately prevents future collateral attacks against fiduciaries of the debtor's estate.  Here, the Exculpation Provisions are appropriate because they provide protection to those parties who served as post-petition court-approved fiduciaries during the restructuring process – relief that in this litigious case, as all participants are painfully aware, is indispensable.  The Exculpation Provisions are in consideration for services rendered, hard work, and perseverance in the face of threats to professional reputation and bodily harm.  The Exculpation Provisions should be approved, and the objections, asserted for the most part by the

---

[31] *See* 11 U.S.C. § 1129(a)(2) and (3).

[32] *See* 11 U.S.C. § 1129(a).

[33] *See PWS*, 228 F.3d at 246-247 (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . . for actions within the scope of their duties . . . .").

014278

very individual and entities that have created the need for such provisions by turning this case into a war zone, should be overruled.

VI. **THE PLAN INJUNCTION IS APPROPRIATE AND IS NARROWLY TAILORED TO EFFECTUATE THE PLAN AND RELATED PROVISIONS OF THE BANKRUPTCY CODE.**

52.     The Court should approve the injunction provisions (the "Injunction" or "Injunction Provisions"), set forth in Article IX.F of the Plan.  This is because the Injunction Provisions are necessary and appropriate to enable the Debtor and its successors to carry out, and obtain the benefits of, the provisions of the Bankruptcy Code relating to the Plan and the proper implementation and consummation of the Plan.  Approval of the requested Injunction Provisions is well within this Court's powers.

53.     The Objectors have objected to the Injunction Provisions on several grounds.  The Debtor has reviewed the Injunction Provisions and revised them to address certain of the Objectors' concerns as follows:

- The Injunction and Gatekeeper Provisions have been narrowed to apply only to Enjoined Parties.[34]

- The Independent Directors are no longer included in the second paragraph of the Injunction.

- The Reorganized Debtor and the Claimant Trust have been deleted from the second paragraph of the Injunction in order to eliminate any potential confusion that they were included in any capacity other than as successors to the Debtor, which is now clarified in the third paragraph of the Injunction.

---

[34] "*Enjoined Parties*" means (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.  Plan, Art. I.B., Def. 56 (new definition in the Plan (as amended)).

- The Injunction is subject to parties' rights to set off to the extent permitted post-confirmation under sections 553 and 1141 of the Bankruptcy Code.

- The Gatekeeper Provision has been amended to clarify the actions for which parties must first seek the approval of the Bankruptcy Court to pursue.

- The grant of exclusive jurisdiction over the merits previously contained in the Gatekeeper Provision has been removed, and the Gatekeeper Provision has been modified to provide that if the Bankruptcy Court, as gatekeeper, decides an action can be brought, the Bankruptcy Court will adjudicate that action on the merits *only* to the extent the court has jurisdiction to do so.

- Articles IX.G and H of the Plan have been modified to clarify the duration of the automatic stay and other injunctions which are either currently in effect or contained in the Plan.

54. The Injunction Provision, as modified, merely implement and enforce the Plan's discharge, release, and Exculpation Provisions and related provisions of the Bankruptcy Code and enjoin the Enjoined Parties from commencing or maintaining actions to interfere with the implementation or consummation of the Plan. The Injunction Provisions are a necessary part of the Plan because they protect the Plan implementation provisions required to monetize the Debtor's assets and pursue the Causes of Action, all of which has been vociferously and continually opposed and litigated by Dondero and his numerous Related Entities, with such vexatious opposition likely to continue post-confirmation. Several parties – principally Dondero, Dugaboy and his Related Entities – have objected to the Injunction, which is not surprising because Dondero and his Related Entities undoubtedly intend to continue their litigation crusade against the Debtor and its successors after confirmation of the Plan.

A. **Plan Injunction Provisions**

55. Section IX.F of the Plan is entitled "Injunction" and applies post-Effective Date. The Injunction contains three distinct provisions:

DOCS_SF:104855.7 36027/002

014280

56. Paragraph 1, as amended, provides:

**Upon entry of the Confirmation Order, all** ~~holders of Claims and Equity Interests and other parties in interest, along with their respective Related Persons,~~ **Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.**

57. As revised, paragraphs 2 and 3 provide:

**Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all** ~~Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether proof of such Claims or Equity Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan)~~ ~~and other parties in interest, along with their respective Related Persons, are~~ **Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to** ~~such~~ **any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner,** ~~directly or indirectly~~ **any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor** ~~, the Independent Directors, the Reorganized Debtor, or the Claimant Trust~~ **or the property of** ~~any of~~ **the Debtor** ~~, the Independent Directors, the Reorganized Debtor, or the Claimant Trust~~ **, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means** ~~, whether directly or indirectly~~ **, any judgment, award, decree, or order against the Debtor** ~~, the Independent Directors, the Reorganized Debtor, or the Claimant Trust~~ **or the property of** ~~any of~~ **the Debtor** ~~, the Independent Directors, the Reorganized Debtor, or the Claimant Trust~~ **, (iii) creating, perfecting, or otherwise enforcing in any manner,** ~~directly or indirectly,~~ **any security interest, lien or encumbrance of any kind against the Debtor** ~~, the Independent Directors, the Reorganized Debtor, or the Claimant Trust~~ **or the property of** ~~any of~~ **the Debtor** ~~, the Independent Directors, the Reorganized Debtor, or the Claimant Trust~~ **, (iv) asserting any right of setoff, directly or indirectly, against any obligation due** ~~from~~ **to the Debtor** ~~Independent Directors, the Reorganized Debtor, or the Claimant Trust~~ **or against property or interests in property of** ~~any of the Debtor, Independent Directors, the Reorganized Debtor, or the Claimant Trust~~ **the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding**

014281

**paragraph against** any successors of the Debtor, **including, but not limited to,** the Reorganized Debtor, **the Litigation Sub-Trust,** and the Claimant Trust and their respective property and interests in property.

Plan, Art. IX.F.

58. As amended, paragraph 4 of Section IX.F contains a gatekeeper provision (the

"Gatekeeper Provision") which provides:

> **Subject in all respects to ARTICLE XII.D, no** ~~Entity~~ **Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose** **or arises** **from or is related to the Chapter 11 Case, the negotiation of** ~~this~~ **the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such** ~~Entity~~ **Enjoined Party to bring such claim or cause of action against any such Protected Party; *provided, however,* the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such** ~~Entities~~ **Employee from the date of appointment of the Independent Directors through the Effective Date.** ~~As set forth in ARTICLE XI, the~~ **The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate** ~~any such claim for which approval of the Bankruptcy Court to commence or pursue has been granted~~ **the underlying colorable claim or cause of action.**

Plan, Art. IX.F.

59. To the extent an Enjoined Party believes it has any claims against a Protected Party, such Enjoined Party must first seek permission of the Bankruptcy Court to file such action and demonstrate that the claims it seeks to assert are colorable claims. Subject to certain carve outs, Protected Parties are defined collectively as:

014282

> (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); . . . .

Plan, Art. I.B. Def. 105.  If the Bankruptcy Court determines a claim is colorable, the Bankruptcy Court will make a separate determination as to whether it has jurisdiction to adjudicate such claim on its merits in accordance with the terms of the Plan and applicable law.

## B.    Objections

60.    A number of parties, including Dondero and many of his affiliated, controlled or influenced entities, object to the Injunction Provisions (as identified in the chart of objections attached as Exhibit B).  The Objectors all raise similar arguments and allege:

- The Injunction is ambiguous and overly-broad because the meaning of the phrase "implementation and consummation of the plan" is unclear.

- The Injunction operates post-effective date and enjoins post-confirmation claims against non-debtor third parties for post confirmation conduct.

- The Injunction is a disguised non-debtor third party release.

- The Injunction Provisions prevent holders of Claims and Equity Interests from enforcing rights created by the Plan after the Effective Date.

- The Gatekeeper Provision effectuates an impermissible extension of the jurisdiction of the Bankruptcy Court.

61.    As summarized above and discussed more fully below, the Injunction Provisions, as amended, have addressed certain of these arguments.  The remaining objections, however,

DOCS_SF:104855.7 36027/002

014283

lack merit and are based on either a misreading of the actual Injunction Provisions or a misstatement of applicable law. Each objection will be addressed below.

**C.    An Injunction against Interfering with the Implementation and Consummation of the Plan Is Both Common and Appropriate.**

62.    Certain objectors argue that the first paragraph of the Plan Injunction, which enjoins all holders of Claims or Equity Interests and other parties in interest, along with their Related Persons, from taking any action to interfere with the "implementation or consummation of the Plan," is overly-broad and ambiguous because the meaning of the phrase "implementation and consummation of the plan" is somehow unclear. These objections are specious.

63.    An injunction in aid of the effectuation of a confirmed plan is typically included in a plan and confirmation order to prevent actions to impede or frustrate the plan proponent's necessary and appropriate actions after confirmation to effectuate the plan and carry out the court's confirmation order. The Injunction is supported by the express provisions of sections 1123(a)(5), 1123(b)(6), 1141(a), 1141(c), and 1142. The Injunction effectuates the purposes of plan confirmation and chapter 11 and preserves and protects the integrity of the chapter 11 process and the court's orders.

64.    The terms "implementation" and "consummation" are neither vague nor overly-broad; they are both terms found in the text of chapter 11 of the Bankruptcy Code and are well understood – and injunctions against interfering with them are common features of plans confirmed throughout the country, including in this District.[35]    Section 1123(a)(5) expressly

---

[35] *See, e.g., In re Tuesday Morning Corp.* (Case No. 20-31476, Bankr. N.D. Tex.) *Debtor's Second Amended Plan of Reorganization* [D.I. 1913-1] attached to *Order Confirming the Revised Second Amended Joint Plan of Reorganization,* at pp. 90-91/137; *In re CHC Group, Ltd.* (Case No. 16-31854, Bankr. N.D. Tex.) *Debtors' Fourth Amended Joint Amended Chapter 11 Plan of Reorganization Pursuant to Chapter 11 of the United States*

014284

mandates that "a plan _shall_ . . . provide adequate means for the plan's _implementation_" (emphasis added) and contains a non-exclusive list of what means that could include.  In compliance with section 1123(a)(5), this Plan expressly sets out the means for its "implementation."  _See_ Plan, Article IV: Implementation of Plan.  _See also_ 11 U.S.C. § 1142. The Injunction would enjoin any interference with these implementation steps.

65.    The word "consummation" is also found in the Bankruptcy Code and has been discussed by numerous courts.    For example, section 1101(2) defines "substantial consummation" of a plan to be (A) the transfer of the assets to be transferred under the plan; (B) the assumption by the debtor or the successor to the debtor of the management of all of the property dealt with by the plan; and (C) commencement of distribution under the plan.  Of course, the term "consummation," without the qualifier "substantial," is more expansive and would extend, for example, to the completion of distributions under the Plan and the disposition of all of the property dealt with by the Plan.  _See, e.g., United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)_, 301 F.3d 296, 305 (5th Cir. 2002) (distinguishing "substantial consummation" of a plan from final consummation of a plan, which occurs after the effective date when the plan distributions are concluded.)

66.    This portion of the Injunction merely prevents holders of Claims or Equity Interests and other Enjoined Parties from interfering with the actions the Debtor, and its successors, the Reorganized Debtor, the Claimant Trust and the Litigation Sub-Trust must take

---

_Bankruptcy Code_ [D.I. 1671-1, attached to _Findings of Fact and Conclusions of Law, and Order Confirming the Debtors' Fourth Amended Joint Amended Chapter 11 Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code,_ Sec. 10.5.

to effectuate the terms of the Plan after the Plan is confirmed by the Court. There is nothing nefarious or unusual about this provision and it should be approved.

### D. The Injunction Is Not a Disguised Non-Debtor Third-Party Release.

67. The Injunction does not contain a non-debtor third-party release. As set forth in the Plan, as amended, the Debtor has provided clarification to address the concerns of the Objectors who interpreted the prior provision to effectuate a non-debtor third-party release. The amended second and third paragraphs of the Injunction prevent the Enjoined Parties from taking the enumerated actions on or after the Effective Date against the Debtor or its successors, the Reorganized Debtor, the Claimant Trust and the Litigation Sub-Trust, or against the property of the Debtor, or its successors, the Reorganized Debtor, the Claimant Trust and the Litigation Sub-Trust, except as set forth in the Plan or in the Confirmation Order. The Debtor has eliminated the Independent Directors from these provisions of the Injunction. As revised, nothing in this section of the Injunction does anything more than prevent the Enjoined Parties from taking actions that do not comply with or conform to the provisions of the Plan, and limit holders of Claims and Equity Interests with respect to such Claims and Equity Interests to the recoveries provided under the Plan, all as contemplated by sections 1123(b)(6) and 1141 in respect of claims or interests arising either prepetition or post-petition. The ultimate goal of a chapter 11 case is for a debtor to confirm a plan which, after confirmation, effectively channels all claims and interests of creditors and interest holders to the treatment provided for the pre- and post-petition claims and interests under the plan, and limits the liability of the debtor (including the

"reorganized debtor") and any successor that receives property of the debtor dealt with by the plan (such as a plan trust) to the liability imposed by that treatment.

68.     Sections 1123 and 1129 of the Bankruptcy Code require a plan to describe how it will treat the claims of creditors and the interests of equity holders, both those that existed prepetition and those that arise during the course of a case.  The purpose of the Injunction is to protect the Debtor and its successors under the Plan – the Reorganized Debtor, the Claimant Trust and the Litigation Sub-Trust –against litigation to pursue the very same prepetition and post-petition claims and interests that are being treated under the Plan.  As described below, providing the protection of the Injunction to all of such entities is both legal and appropriate.

69.     As to the Debtor, the Injunction is appropriate, because it implements the injunctive relief the Bankruptcy Code affords the Debtor, whether or not it gets a discharge, as a result of plan confirmation.  If the Debtor is entitled to the discharge as contemplated by the Plan, then it is accorded the injunction provided by sections 1141(d) and 524(a).  But even if the Debtor does not receive a discharge then, pursuant to section 362(c)(2)(A), the automatic stay will remain in effect until the case is closed, and the Injunction is in aid of that stay.  Moreover, pursuant to section 1141(c) of the Bankruptcy Code, because *all* of the Debtor's property is "dealt with by the plan," all of that property will be "free and clear of all claims and interests . . . .," both as to property retained by the Debtor, and property transferred to its successors.  Accordingly, the Injunction is an appropriate means of enforcing section 1141(c).

70.     Nothing in the Injunction effectuates a third-party release in contravention of section 524(e) of the Bankruptcy Code.  As to the "Reorganized Debtor," this term simply means

014287

the Debtor on and after the Effective Date. *See* Plan, Art. I.B., Definition 112. The Reorganized

Debtor, therefore, should be entitled to the same injunctive relief as the Debtor. To hold

otherwise would be illogical.

71.     The Claimant Trust and Litigation Sub-Trust are successors to the Debtor – both

in structure and in assets. Neither the Claimant Trust nor the Litigation Sub-Trust come into

existence until the Effective Date, and thus, the only liability they could have to the holders of

Claims and Equity Interests would be the liability to treat such Claims and Equity Interests as set

forth in the Plan. All of the property of the Claimant Trust and Litigation Sub-Trust is property

of the Debtor and the Estate that these Trusts will receive from the Debtor and the Estate

pursuant to the Plan on the Effective Date and is "dealt with" by the Plan. Accordingly, under

section 1141(c), that property will be received and held by the Claimant Trust and the Litigation

Sub-Trust "free and clear of all claims and interests of creditors and equity security holders."

Paragraph 2 of the Injunction is in aid of this provision and, in the words of section 105, is

"necessary or appropriate to carry out the provisions of" the Bankruptcy Code, *i.e.,* section

1141(c).

> **E.      The Injunction Does Not Prevent the Holders of Claims or Equity Interests from Enforcing Rights Arising under the Plan or Confirmation Order.**

72.     The Injunction does not prevent holders of Claims or Equity Interests from

enforcing, after the Effective Date, rights arising under the Plan or the Confirmation Order. The

scope of the Injunction is specifically subject to the Plan, the Confirmation Order and any other

order of the Court. Thus, the right of the holder of a Claim or Equity Interest to receive its plan

distributions, as set out in the Plan, is not impacted – such persons are merely enjoined from

DOCS_SF:104855.7 36027/002

014288

taking the enumerated actions to enforce their Claims or Equity Interests outside of the Plan process and treatment. If, for example, the Claimant Trust made distributions to certain creditors but not others, those who did not receive their distribution, would be free to enforce the provisions of the Plan contract. This is clear from the language of the Injunction, which begins "[e]xcept as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court. . . ." Plan, Art. IX.F.

73.     The Injunction is not a third-party release, does not prevent enforcement of the provisions of the Plan itself, and is neither vague nor overly-broad. The Court should overrule the objections and approve the Injunction in aid of the consummation and administration of the Plan as appropriate and consistent with sections 362, 1123 and 1141 of the Bankruptcy Code.

## VII.   THE GATEKEEPER PROVISION IS NECESSARY AND APPROPRIATE, AND SUPPORTED BY APPLICABLE LAW.

### A.     The Gatekeeper Provision

74.     Paragraph 4 of Section IX.F contains neither a release nor an injunction. Rather, Paragraph 4 contains a provision that requires any Enjoined Party that believes it has any claims against a Protected Party "**that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing**" to first seek leave from the Bankruptcy Court to pursue such alleged claims and present evidence as to why it believes it has a colorable claim against the

014289

Protected Person.  As discussed below, provisions such as this one, which have been referred to as "gatekeeper" or "channeling" provisions, are neither uncommon nor impermissible.

75.     It should come as no surprise that Dondero and his cohorts are the only ones who object to the Gatekeeper Provision.  The last thing they want is for a court that has had the misfortune of familiarizing itself with their antics to pass on the *bona fides* of any new tactics and lawsuits they may conjure up to stymie this case. However, as set forth below, their challenges to this Court's power and jurisdiction to pre-screen if their new lawsuits are colorable represent wishful thinking.

### B.     The Gatekeeper Provision Is Permissible under Sections 105, 1123(b)(6), and 1141(a), (b) and (c) of the Bankruptcy Code.

76.     The Gatekeeper Provision is a legitimate exercise of this Court's powers under sections 105,[36] 1123(b)(6),[37] and 1141(a), (b) and (c).[38]  The Bankruptcy Court serves as the literal guardian at the gate – determining whether a litigant has a colorable claim and may pass

---

[36] Section 105 is entitled "Power of court" and provides: (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[37] Section 1123(b)(6) provides: (b) Subject to subsection (a) of this section, a plan may— (6) include any other appropriate provision not inconsistent with the applicable provisions of this title.

[38] Section 1141 is entitled "Effect of confirmation" and provides, in relevant part:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
>
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
>
> (c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

014290

through the gate to the applicable clerk of court and file a lawsuit. The Debtor recognizes that a Gatekeeper Provision is not found in every chapter 11 plan. However, this case is not a typical case. Indeed, recognizing the need for, and importance of, this role under the facts of this case, the Court previously entered the Settlement Order (agreed to by Dondero) which itself contains a gatekeeper provision protecting the Independent Directors. The purpose of the Gatekeeper Provision in the Plan is to insulate the Protected Persons, many of whom will be either successors to the Debtor or the fiduciaries charged with continuing the administration of the Debtor's property and causes of action post-Effective Date (which essentially involves the wind-down of the business, the monetization of the Debtor's assets and the distribution of the proceeds of same to pay the Claims of legitimate creditors), from non-stop, vexatious litigation in multiple jurisdictions over every conceivable action they take to implement and consummate the Plan.

77.     Based upon the history and record of this case – including increased activity during the past several weeks – this Court is well aware of the reality of that threat and risk in this case. During the course of this case, many of the significant actions taken by the Independent Directors have been challenged, litigated and appealed. Moreover, Dondero has interfered with the Debtor's business operations, resulting in the Court's entry of a Temporary Restraining Order and Preliminary Injunction against him.[39] A hearing on the Debtor's Motion to Hold Dondero in Contempt is scheduled for February 5, 2021. The Independent Directors, CEO/CRO, Employees, Committee and its members, and the Professionals of the Debtor and the

---

[39] *Highland Capital Management, L.P. v. James D. Dondero (In re Highland Capital Management, L.P)*, Adv. No. 20-03190 (Bankr. N.D. Tex), December 10, 2020 *Order Granting Debtor's Motion for Temporary Restraining Order against James D. Dondero* [D.I. 10] and January 11, 2021 *Order Granting Debtor's Motion for Preliminary Injunction against James D. Dondero* [D.I. 59].

Committee have been harassed and threatened by Dondero and his Related Entities. There is no reason to believe these litigious tactics, threats and intimidation will cease post-Confirmation and post-Effective Date; and their unchecked continuance will seriously impair the ability of the Claimant Trust and the Litigation Sub-Trust to implement and effectuate the Plan and carry out the orders of this Court. The Gatekeeper Provision is essential to the confirmation of this Plan and the efficient effectuation and consummation of the Plan post-Effective Date.

78.     The need for the Gatekeeper Provision is illustrated by the fact that the Independent Directors would not have been able to obtain Directors' & Officers' insurance coverage, upon their appointment, in the absence of the Settlement Order. Insurers were unwilling to underwrite coverage without a broad exclusion restricting any type of coverage for the Independent Directors if the Settlement Order did not contain the exculpation and gatekeeper provision found in Paragraph 10 of the Settlement Order. Similarly, the Claimant Trustee, the Litigation Trustee and the Claimant Trust Oversight Board will not be able to obtain coverage for the period of time after the Effective Date without a similar gatekeeper provision. Accordingly, the failure to approve the Gatekeeper Provision as part of the Plan will completely frustrate the Debtor's ability to carry out the Plan and Confirmation Order.

79.     Gatekeeper provisions are not some new creative attempt to circumvent limitations on bankruptcy court jurisdiction or restrictions on non-consensual third-party releases. They are utilized by many courts to provide a single clearing court to determine whether a claim is colorable or appropriate under the applicable facts of the main case. For example, in the *Madoff* cases, the bankruptcy court has served as the gatekeeper for determining

41

014292

whether claims of certain creditors against certain Madoff feeder funds are direct claims (claims which may be brought by the creditor) or derivative claims (claims which either can only be brought by the Madoff post-confirmation liquidating trust or have already been settled by the trust.)[40] In the *General Motors* cases, certain issues arose post-effective date in regard to defects in ignition switches. Questions arose as to whether the causes of action arising from those defects were such that "New GM" had liability for them, notwithstanding that it had purchased the assets of the debtor "Old GM" free and clear. The bankruptcy court serves as a gatekeeper for this litigation, determining whether a lawsuit can go forward against New GM or is more properly dealt with as a claim against Old GM.[41]

80. Gatekeeper or channeling provisions similar to this one, and in some instances, more extensive than the proposed Gatekeeper Provision in this Plan, have been approved by other courts in this district. In *In re Pilgrim's Pride Corp.*, 2010 Bankr. LEXIS 72 (Bankr. N.D. Tex. January 14, 2010), Judge Lynn, after concluding that *Pacific Lumber* precluded the court from granting certain requested releases and exculpations, determined that nothing in *Pacific Lumber* prevented the court from retaining exclusive jurisdiction over some of the suits against third parties which might otherwise have been covered by the third party protections. *Id*. at *16-17. Judge Lynn then expressly held that the bankruptcy court would "channel to itself any claims that may be asserted against Debtors' management (including their boards of directors and Chief Restructuring Officer) and the professionals based upon their conduct in pursuit of

---

[40] *See, e.g., Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 546 B.R. 284 (Bankr. S.D.N.Y. 2016) (discussion of court's gatekeeper function).

[41] *See, e.g., In re Motors Liquidation Co*., 541 B.R. 104 (Bankr. S.D.N.Y. 2015) (discussing court's gatekeeper function); *In re Motors Liquidation Co*., 568 B.R. 217 (Bankr. S.D.N.Y. 2017) (same).

42

014293

their responsibilities during the Chapter 11 Cases." *Id.* at *18, 20-21. In furtherance of this, the confirmation order provided that the court "shall retain **exclusive** jurisdiction over any suit brought on any claim or causes of action related to the Chapter 11 Cases that exists as of the Effective Date against a Committee; any member of a Committee; any Committee's Professionals; Debtors; Reorganized Debtors; or any Protected Person for conduct pertaining to Debtors during the Chapter 11 Cases, and that any entity wishing to bring such suit shall do so in this court;" *Id.* (emphasis added). Thus, in *Pilgrim's Pride*, the court approved a broad retention of exclusive jurisdiction to adjudicate the ultimate merits of certain types of suits against protected parties, rather than merely a gatekeeper provision.

81. Other courts in this district have agreed with Judge Lynn and ordered similarly. *See, e.g., In re CHC Group, Ltd.* (Case No. 16-31854, Bankr. N.D. Tex.) *Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* [D.I. 1671-1, attached to *Findings of Fact and Conclusions of Law, and Order Confirming the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization*], Section 10.8(b) at p. 57 (court retained **exclusive** jurisdiction to hear claims against any "Protected Party," including any claims "in connection with or arising out of . . . the administration of this Plan or the property to be distributed under this Plan, . . . or the transactions in furtherance of the foregoing, . . . .") (emphasis added).

82. In regard to the Independent Directors, the proposed Gatekeeper Provision is a continuation of the provision set forth in Paragraph 10 of the Settlement Order, which, by its terms never expires and is expressly to remain in effect after the Effective Date under the Plan. Moreover, because of the Independent Directors' rights of indemnification against the Debtor,

014294

the Gatekeeper Provision serves the important function of protecting assets that would otherwise be available for distribution to creditors from being depleted by indemnification claims resulting from the assertion of frivolous claims against the Independent Directors.

83.     As to the remaining Protected Parties, the Gatekeeper Provision is a valid exercise of the Court's authority under sections 105 and 1123(b)(6) to prevent the Protected Parties from being embroiled in frivolous litigation designed to derail implementation of the Plan. Importantly, if, in the exercise of its gatekeeper role, the Bankruptcy Court were to determine that a colorable claim exists, then it would allow the prosecution of such claim and the filing of the lawsuit in the court with applicable jurisdiction.[42]

## C.     The Gatekeeper Provision Is not an Impermissible Extension of the Post-Confirmation Jurisdiction of the Bankruptcy Court.

84.     Nor is the Gatekeeper Provision an impermissible extension of the post-confirmation jurisdiction of the bankruptcy court.  As discussed above, the Debtor modified the Gatekeeper Provision to eliminate the provision that granted the Bankruptcy Court exclusive jurisdiction to hear any claim that the Court allows to pass through the gate.  The Gatekeeper Provision requires a putative plaintiff to obtain Bankruptcy Court approval prior to bringing an action and is in aid of the Court's enforcement of the Confirmation Order and the Plan.  It is supported by sections 1141(a), (b) and (c), and thus, by section 105.  As amended, nothing in the Gatekeeper Provision is determinative of the jurisdiction of the Court over any particular claim or cause of action.  The Gatekeeper Provision only requires the court to determine <u>if a claim is</u>

---

[42] *Texas & P. R. Co. v. Gulf, C. & S. F. R. Co.*, 270 U.S. 266, 274 (1926) (Court always has jurisdiction to determine its own jurisdiction).

014295

<u>colorable</u>.  This is a determination commonly made by bankruptcy courts in the analogous context of determining whether a creditors' committee should be granted standing to file litigation on behalf of a recalcitrant debtor.  *See, e.g., Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233 (5th Cir. 1988) (court must determine that claim is colorable before authorizing a committee to sue in the stead of the debtor).  Thus, the Bankruptcy Court has the jurisdiction to determine if a claim is colorable.

85.  Section 1142(b) provides that post-confirmation, the bankruptcy court may direct any parties to "perform any act" necessary for the consummation of the plan).  *See United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 305 (5th Cir. 2002) (holding that bankruptcy court had jurisdiction to determine whether arbitration could be used to liquidate claims post-effective date; while the plan had been substantially consummated, it had not been fully consummated, the dispute related directly to the plan, the outcome would affect the parties' post confirmation rights and responsibilities and the proceeding would impact compliance with, or completion of the plan; specifically referencing section 1142(b)).

86.  Several objectors attempt to rely on *Bank of La. v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir.  2001) to argue that the bankruptcy court cannot exercise a gatekeeper role and adjudicate matters related to the administration of the case and the plan.  In fact the opposite is true.  In *Craig's Stores*, the Fifth Circuit expressly recognized that post-confirmation bankruptcy jurisdiction **continues to exist for "matters pertaining to the implementation or execution of the plan**."  *Id.* at 390 (*citing In re*

014296

*Fairfield Communities, Inc.*, 142 F.3d 1093, 1095 (8th Cir. 1998); *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993) (emphasis added).

87.     *Craig's Stores* did not involve a gatekeeper provision necessary to enable the debtor to implement its plan.[43]  In contrast to *Craig's Stores*, the Plan provision that Dondero and other Objectors are challenging pertains to the Court's jurisdiction over matters specifically in aid of the implementation and effectuation of the Plan – acting as gatekeeper – and does not implicate an improper extension of bankruptcy court jurisdiction.  As previously explained, the Gatekeeper Provision is necessary to obtain insurance coverage for the Claimant Trustee, the Litigation Trustee, and the members of the Claimant Trust Oversight Board – all of whom will play critical roles in the implementation of the Plan.  Moreover, unchecked rampant litigation against the Protected Persons, many of whom have indemnification rights against the Debtor, Reorganized Debtor or Claimant Trust would predictably engulf the Reorganized Debtor and Claimant Trust negatively impacting their ability to effectuate and implement the Plan and wasting valuable resources.  *See, In re Farmland Industries, Inc.,* 567 F.3d 1010, 1020 (8th Cir. 2010) (bankruptcy court had "related to" jurisdiction over a claim by a disgruntled bidder against the post-effective date liquidating trustee because the estate was actually paying legal fees of the non-debtor defendants under the estate's indemnification obligations.); *see also Buffets, Inc. v.*

---

[43] In *Craig's Stores*, the issue was whether the court could hear a post-confirmation action brought by the debtor for damages against a bank that was administering the debtor's post-confirmation private label credit card program under an agreement that had been assumed by the debtor in its chapter 11 plan.  On appeal, the Fifth Circuit held that the bankruptcy court did not have jurisdiction to hear the dispute, reasoning that (1) the debtor's claim principally dealt with post-confirmation relations between the parties, (2) no facts or law derived from the reorganization or the plan were necessary to the claim, and (3) the claim did not bear on the interpretation or execution of the debtor's plan.  *Id.* at 391.

DOCS_SF:104855.7 36027/002

014297

*Leischow*, 732 F.3d 889 (8th Cir. 2013) (related-to jurisdiction existed where bankruptcy estate was obligated to indemnify non-debtor defendants for attorney's fees and other amounts).

88.     In addition, *Craig's* Stores did not involve a liquidating chapter 11 plan, and this case does involve such a plan.  There is persuasive case law, including this Court's decision in *TMXS Real Estate* (discussed below) and circuit-level authority, holding that the scope of the bankruptcy court's post-confirmation jurisdiction in the case of a liquidating chapter 11 plan is broader than that in the case of a chapter 11 plan that is not a liquidating plan.

89.     In *Boston Regional Med. Ctr., Inc. v. Reynolds (In re Boston Regional Med. Ctr., Inc.)*, 410 F.3d 100 (1st Cir. 2005), the debtor, a charitable hospital, brought an adversary proceeding against a testator trust, seeking to compel payment from the trust of an amount allegedly due to the hospital as a residual beneficiary under the trust.  The testator had died prepetition, but before the estate's assets were distributed, and the litigation was filed after confirmation of the debtor's liquidating plan of reorganization because the hospital had been unaware it was a beneficiary under the trust.  The trustee had argued that the bankruptcy court had no residual jurisdiction over the debtor's lawsuit against the trustee because the plan had been confirmed, but the bankruptcy court found it had "related to" jurisdiction.

90.     The First Circuit first analyzed the long line of cases (including *Craig's Stores*) which hold that after a debtor emerges from bankruptcy, it enters the marketplace and is no longer under the aegis of the bankruptcy court.  *Id.* at 106-107.  The court did not end its analysis there, however, but dug deeper into the significant distinctions between a liquidating plan and a true reorganization.   Under a liquidating plan, the debtor is not really re-entering the

marketplace; rather its "sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend." *Id.* at 107. Thus, while a reorganized debtor may have litigation that clearly is outside the scope of its prior bankruptcy proceeding, that is generally not the case with a liquidating debtor. The court determined that 28 U.S.C. § 1334 had to be applied in conjunction with the applicable facts of the case, and jurisdiction was appropriate. *Id.* A "liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court. Any litigation involving such a debtor thus relates much more directly to a proceeding under title 11." *Id.*

91.     This Court has also recognized the jurisdictional distinction between liquidating plans and operational reorganizations. In *TXMS Real Estate Invs., Inc. v. Senior Care Ctrs., LLC (In re Senior Care Ctrs., LLC)*, 2020 Bankr. LEXIS 3205 (Bankr. N.D. Tex. Nov. 12, 2020), this Court held it had jurisdiction to hear a post-confirmation dispute concerning the ability of a liquidating trust, which had been formed pursuant to the plan, to liquidate the stock of the reorganized debtor it received under the plan which involved the issue of whether such action would effectuate a "change in control" that would constitute a default under a lease that had been assumed by the reorganized debtor pursuant to the plan. This Court held that (i) the liquidating trust had been formed for the purpose of liquidating the assets transferred to it pursuant to the plan and distributing the proceeds of those assets to creditors; (ii) the litigation at issue was an attempt to limit the ability of the liquidating trust to effectuate the very purpose for which it had been formed and had to be resolved prior to full consummation of the plan; (iii) resolution of the dispute would require the review of the plan, the confirmation order and possibly other orders of

48

014299

the court; (iv) the litigation would impact compliance with, or completion of the plan; and (v) the litigation directly related to the plan's implementation or execution. *Id.* at *21-23.

92.     Just as in the *TXMS Real Estate* and *Boston Regional* cases, the Claimant Trust, Litigation Sub-Trust and Reorganized Debtor exist solely for the purpose of operating the Debtor's business and properties to monetize its assets and pay creditors.  Any "post-confirmation operations" of the Reorganized Debtor will, therefore, be directed towards that monetization process and, furthermore, properly subject to the Court's purview to ensure consummation of the Plan and creditor distributions pursuant to section 1142 of the Bankruptcy Code.  Any prospective, but baseless, litigation over the acts taken by these entities in effectuating the Plan will have a significantly negative impact on the ability of the Claimant Trust, Litigation Sub-Trust and Reorganized Debtor to effectuate the Plan and will deplete the assets otherwise available for distribution to creditors.  The Gatekeeper Provision simply ensures that any such prospective litigation is colorable before it can be filed.

93.     The Fifth Circuit's decision in *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 266-67 (5th Cir. 2005), is instructive.   In *Stonebridge*, the liquidating trustee under a confirmed chapter 11 plan sued a landlord in connection with the landlord's draw on a letter of credit that had been provided as security in connection with a real property lease the debtor had rejected during its bankruptcy case, where the trustee was assigned the issuing bank's claim against the landlord for alleged misrepresentation.  Although the Fifth Circuit had concerns over jurisdiction of the bank's assigned claim to the trustee, the court went on to opine that "[u]pon closer review, however,

additional effects on the estate are evident: a claim by the Bank against [the landlord] affects the need for the Bank to seek reimbursement from Stonebridge's bankruptcy estate. [The landlord's] draw on the Letter of Credit triggered [the debtor's] contractual responsibility to reimburse the Bank for the draw on the Letter of Credit. . . . If the Bank is successful against [the landlord] on its negligent misrepresentation claims, the need for reimbursement from [the bankruptcy] estate is alleviated." *Id.* at 266-267. Accordingly, the court held that the negligent misrepresentation claims of the bank against the landlord fell within bankruptcy jurisdiction. The court noted other cases that involved litigation between third parties that have been found to have an effect on the administration of the bankruptcy estate, including suits by creditors against guarantors and a suit by creditors of a debtor against defendants that allegedly perpetrated a fraud. *Id.* at 267 (*citing* 3 *Collier on Bankruptcy* ¶ 3.01 (15th ed. rev. 2005)).

94. Based on the reasoning of *Stonebridge*, other courts, including this Court, have held that contingent indemnification rights trigger "related to" subject-matter jurisdiction of state law disputes between two non-debtors in the pre-confirmation context. *See, e.g.*, Principal *Life Ins. Co. v. JP Morgan Chase Bank, N.A. (In re Brook Mays Music Co.)*, 363 B.R. 801 (Bankr. N.D. Tex. 2007) (contingent right of indemnity in pre-confirmation litigation between two non-debtors triggers bankruptcy court's pre-confirmation "related to" jurisdiction (*citing Stonebridge*)). In *In re Farmland Industries, Inc.*, the Eighth Circuit has similarly held that it had <u>post</u>-confirmation subject-matter jurisdiction over state law claims between non-debtors where the liquidating trustee was paying the legal fees incurred to defend individuals (former officers and directors) in the dispute.

DOCS_SF:104855.7 36027/002

95. In sum, in light of the proposed amendments to the Plan and under the circumstances here, Dondero's objection to this Court's jurisdiction to serve as a gatekeeper is not well-taken and should be overruled. The retention of the *de minimis* jurisdiction to perform the gatekeeper function is clearly supported by Fifth Circuit law.

### D. <u>The Gatekeeper Provision Is Consistent with the Barton Doctrine.</u>

96. Support for the Gatekeeper Provision can be found in the Barton Doctrine, which by analogy, should be applied to many of the Protected Parties identified in the Gatekeeper Provision. The Barton Doctrine is based on the U.S. Supreme Court case, *Barton v. Barbour*, 104 U.S. 126, 26 L. Ed. 672 (1881) dealing with receivers. As this Court has recognized, the Barton Doctrine:

> provides that, as a general rule, before a suit may be brought against a trustee, leave of the appointing court (*i.e.*, the bankruptcy court) must be obtained. The *Barton* doctrine is ***not*** an immunity doctrine but – strange as this may sound – has been held to be a ***jurisdictional*** provision (in other words, a court will not have subject matter jurisdiction to adjudicate a suit against a trustee ***unless and until*** the bankruptcy court has granted leave for the lawsuit to be filed).

Baron v. Sherman (In re Ondova Ltd. Co.), 2017 Bankr. LEXIS 325, *29 (Bankr. N.D. Tex. February 1, 2017); report and recommendation adopted, Baron v. Sherman (In re Ondova Co.), 2018 U.S. Dist. LEXIS 13439 (N.D. Tex., Jan. 26, 2018), aff'd., In re Ondova Ltd., 2019 U.S. App. LEXIS 3493 (5th Cir. Tex., Feb. 4, 2019). The Barton Doctrine originated as a protection for federal receivers, but courts have applied the concept to various court-appointed and court-approved fiduciaries and their agents in bankruptcy cases, including trustees,[44] debtors in

---

[44] *Id.*

DOCS_SF:104855.7 36027/002

014302

possession,[45] officers and directors of a debtor,[46] the general partner of the debtor,[47] employees,[48] and attorneys retained by debtors and trustees.[49] The Barton Doctrine has also been applied to non-court appointed agents who are retained by the trustee for purposes relating to the administration of the estate.[50] The Barton Doctrine continues to protect those who are within its scope post-Confirmation and post-Effective Date.[51]

97. The Fifth Circuit has expressly recognized the continuing viability of the Barton Doctrine, notwithstanding the jurisdictional issues raised by *Stern v. Marshall*.[52] Since the Barton Doctrine is jurisdictional only as to the ability of the prospective plaintiff to file the lawsuit, it does not implicate the issue of expansive post-effective date bankruptcy court jurisdiction as to the actual underlying lawsuit. Thus, the gatekeeper court can determine if a

---

[45] *Helmer v. Pogue*, 212 U.S. Dist. LEXIS 151262 (N.D. Ala. Oct. 22, 2012) (applying Barton Doctrine to debtor in possession); *see also*, 11 U.S.C §§ 1107(a) of the Bankruptcy Code, providing that a debtor in possession has all the rights and duties of a trustee and serves in the same fiduciary capacity.

[46] *See Carter v. Rodgers*, 220 F.3d 1249, 1252 and n.4 (11th Cir. 2000) (debtor must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer for acts done in the actor's official capacity, and finding no distinction between a "bankruptcy-court-appointed officer" and officers who are "approved" by the court.); *Hallock v. Key Fed. Sav. Bank (In re Silver Oak Homes)*, 167 B.R. 389 (Bankr. D. Md. 1994) (president of debtor).

[47] *Gordon v. Nick*, 1998 U.S. App. LEXIS 21519 (4th Cir. 1998) (managing partner of debtor).

[48] *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (affirming dismissal of lawsuit under the Barton Doctrine due to the plaintiff's failure to seek leave in the bankruptcy court to file an action against the trustee and other parties assisting the trustee in carrying out his official duties).

[49] *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 321 (6th Cir. 2006) (trustees' counsel).

[50] *See, e.g., Wells Fargo Fin. Leasing, Inc. v. Jones*, 2015 WL 1393257, at *3-*5 (W.D. Ky. Mar. 25, 2015) (holding that because defendant acted as bankruptcy trustee's agent in performing duties at the direction of and in furtherance of the trustee's responsibilities, claims asserted against defendant were essentially clams against trustee, and court lacked jurisdiction over the claims under *Barton* Doctrine); *Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*, 883 F. Supp. 2d 797, 817 (E.D. Mo. 2012) (property management company engaged by receiver).

[51] *Helmer v. Pogue* at *15, *citing Carter*, 220 F.3d at 1252-53. *See also, Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 972-73 (9th Cir. 2005) (Barton Doctrine applies to trustee of a post-confirmation liquidating trust formed pursuant to a plan of liquidation); *Muratore v. Darr*, 375 F.3d 140, 147 (1st Cir. 2004) (doctrine serves additional purposes even after the bankruptcy case has been closed and the assets are no longer in the trustee's hands; suit was for malfeasance of trustee in performing his duties filed after estate was closed.)

[52] *See Villegas v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir. 2015) (holding that a litigant must still seek authority from the bankruptcy court that appointed the trustee before filing suit even if the bankruptcy court might not have jurisdiction over the suit itself.)

014303

proposed lawsuit asserts colorable claims, and, if it does, the gatekeeper court can then turn to the separate issue of whether it has jurisdiction over the merits of the lawsuit.

98.    The Barton Doctrine requires a litigant to obtain approval of the appointing or approving court before commencing a suit against court-appointed or court approved officers and their agents – which arguably encompasses most, if not all, of the Protected Parties.  The Gatekeeper Provision preserves the integrity of the process, and prevents valuable estate resources from being spent on specious litigation, without impairing the rights of legitimate prospective litigants with potentially valid causes of action.  The Gatekeeper Provision is not only a prudent use of the Court's authority under section 105 and is within the spirit of the protections afforded fiduciaries and their agents under the Barton Doctrine – it is also critical to ensuring the success of the Plan.

99.    The Gatekeeper Provision does not effectuate a non-consensual third-party release.  It merely requires potential litigants to first vet their alleged causes of action with a single court – the bankruptcy court – before they can be prosecuted.  If there has ever been a case where a Gatekeeper Provision is appropriate it is this case.  As the Court is well aware, Dondero appears to thrive on litigation.  This Court has remarked on many occasions during this case that prepetition, the Debtor operated under a culture of litigation under the control of Dondero.  It was the years of sharp practices by the Debtor and an avalanche of litigation against it that resulted in the Debtor commencing a chapter 11 case and the ultimate appointment of the Independent Directors.  Faced with impending confirmation and the loss of his company forever, Dondero has turned the tables and the Debtor and the Protected Parties have become his target

DOCS_SF:104855.7 36027/002

for litigation. Left unchecked, there is no doubt that Dondero will continue his litigation crusade after the Effective Date and attempt to thwart implementation of the Plan at every turn by commencing baseless lawsuits. Requiring this Court, which approved the appointment of the Independent Directors and has extensive familiarity with the Debtor and this case to first determine whether alleged claims are colorable is prudent and within this Court's authority. Moreover, centralizing the gatekeeper function in one court puts that court in a unique position to ascertain whether there is a pattern of spurious litigation by certain entities and their related parties.

### E. The Gatekeeper Provision Is a Necessary and Appropriate Shield against the Actions of Dondero and his Related Entities.

100. The Fifth Circuit has recognized that in appropriate circumstances, a federal court can enjoin or issue other appropriate sanctions against vexatious litigants – persons who have a history of filing repetitive and spurious litigation for the purposes of harassment and intimidation. *See* All Writs Act, 28 U.S.C. §1651. In *Caroll v. Abide (In re Carroll)*, 850 F.3d 811 (5th Cir. 2017), the Fifth Circuit held that a bankruptcy court could properly sanction certain debtors as vexatious litigants when the debtors and their various family members continually filed litigation to prevent the bankruptcy trustee from performing his duties. When considering whether to enjoin future filings, the court must consider the circumstances of the case, including four factors:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

DOCS_SF:104855.7 36027/002

014305

*Id.* at 815, *citing Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008) (*quoting Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)).

101.  In some circumstances where courts feel that enjoining all future litigation by a vexatious litigant may be too difficult to articulate or have potential due process implications, courts essentially issue a gatekeeper injunction. *See, e.g., Baum v. Blue Moon Ventures, LLC*, 513 F.3d at 189 (after the bankruptcy court and district court were able to piece together that the Baums interjected themselves in various bankruptcy proceedings by filing vexatious, abusive and harassing litigation, an injunction was entered preventing the Baums from filing litigation without the consent of the district court judge.); *Safir v. United States Lines, Inc.*, 792 F.2d 19, 25 (2d Cir. 1986) (Second Circuit agreed the litigant's conduct warranted a pre-filing injunction, but narrowed the scope such that the litigant had to seek permission from the district court before filing certain types of additional actions.)

102.  Dondero and his Related Entities are the quintessential vexatious litigants, and the Gatekeeper Provision is a legitimate tool for the Bankruptcy Court, properly within the jurisdiction of the Bankruptcy Court, and less burdensome on Dondero and his Related Entities than a full injunction – which the Debtor believes would be justified in seeking in this case.

## VIII.  THE EXCEPTION TO DISCHARGE DOES NOT APPLY

103.  The exception to discharge contained in 11 U.S.C. § 1141(d)(3) does not apply. Section 1141(d)(3) provides that:

> Confirmation of a plan does not discharge a debtor if --
>
> (A) The plan provides for the liquidation of all or substantially all
> of the property estate;

55

014306

(B) The debtor does not engage in business after consummation of the plan; and

(C) The debtor would be denied a discharge under section 727(a) of this title if the case were a case under Chapter 7 of this title.

*See* 11 U.S.C. § 1141(d)(3).

104.     Since the provisions of § 1141(d)(3) are in the conjunctive, if any one of the three prongs of the test is lacking, confirmation of a plan results in the discharge of debt. House Rep. No. 95-595, 95th Cong. 1st Sess. 418-19 (1977), *reprinted in*, 1978 U.S.C.C.A.N. 5963, 6374-75 ("if all or substantially all of the distribution under the plan is of all or substantially all of the property of the estate or the proceeds of it, if the business, if any, of the debtor does not continue, *and* if the debtor would be denied a discharge under section 727 … then the Chapter 11 discharge is not granted.") (emphasis added); *Financial Sec. Assur. v. T-H New Orleans Lt. Pshp. (In re T-H New Orleans Lt. Pshp.)*, 116 F.3d 790, 804 (5th Cir. 1997) ("[T]his section requires that all three requirements be present in order to deny the debtor a discharge."); *In re River Capital Corp.*, 155 B.R. 382, 387 (Bankr. E.D. Va. 1991) (the provisions of § 1141(d)(3) are in the conjunctive).

105.     Here, only subpart C of § 1141(d)(3) clearly applies.[53]  With respect to the subpart A of § 1141(d)(3), here, the Plan clearly provides for a gradual liquidation of all or substantially all the estate's assets.  However, a discharge is nonetheless appropriate because an orderly wind down is anticipated to last for up to two years, and the Reorganized Debtor will continue to manage various funds during that period.  Under similar circumstances, at least one court has suggested that the plan would fall outside the policies of § 1141(d)(3)(A). *In re Enron Corp.*,

---

[53] As a corporate debtor, the Debtor would not receive a discharge under section 727(a) in a Chapter 7.

DOCS_SF:104855.7 36027/002

014307

2004 Bankr. LEXIS 2549, **215-17 (Bankr. S.D.N.Y. July 15, 2004) ("[T]the indeterminate period of retention of the assets after the Effective Date and the clear need for ongoing business operations to maximum value for all creditors in liquidating the assets necessitates the application of the section 1141 discharge to the Reorganized Debtors."). Moreover, even if subpart A of § 1141(d)(3) is met, subpart B of § 1141(d)(3) – engaging in business – is lacking. *T-H New Orleans Lt. Pshp.*, 116 F.3d at 804, n. 15 (holding that the reorganized entity's likelihood of conducting business for two years following plan confirmation satisfies § 1141(d)(3)(B)); *In re River Capital Corp.*, 155 B.R. at 387 (discharge warranted where current management stated its intention to continue to engage in business after consummation of the plan).

## IX.  THE SENIOR EMPLOYEE OBJECTION

### A.  The Senior Employee Objection Should Be Overruled

106.  Scott Ellington, Isaac Leventon, Frank Waterhouse, and Thomas Surgent (collectively, the "Senior Employees")[54] filed the Senior Employee Objection.  Subsequent to its filing, Mr. Waterhouse and Mr. Surgent executed a Senior Employee Stipulation (as discussed below) and will withdraw their support of the Senior Employee Objection.  The only remaining Senior Employees objecting to the Plan are Mr. Ellington and Mr. Leventon.  Mr. Ellington and Mr. Leventon argue, among other previously addressed objections, that the Plan is not confirmable because (1) the Plan violates section 1123(a)(4)'s requirement that claims in the same class be treated the same, and (2) the Debtor has prevented the Senior Employees from

---

[54] Although Mr. Ellington and Mr. Leventon are included in the definition of Senior Employees, they were both terminated for cause and are no longer employees of the Debtor.

making the Convenience Class Election. These objections are meritless, and the Senior Employee Objection should be overruled.

### B. Background Related to Senior Employees

107. The Debtor's employees, including the four Senior Employees, were eligible to receive compensation under two separate bonus plans: an annual bonus plan and deferred compensation plan. Both of these plans required the employee to remain employed as of the applicable vesting date to receive the bonus. On December 4, 2019, the Debtor filed a motion seeking authorization to pay bonuses under these plans, to which the Committee objected to the inclusion of the Senior Employees. At a hearing on the motion, the Debtor agreed to remove the Senior Employees (*see* 1/21/2019 Hearing Tr., Docket No. 393 at 119:21-22), and the motion was granted as presented at the hearing [Docket No. 380]. Accordingly, the rank and file employees were paid on account of their bonuses that vested in 2020, with the exception of the Senior Employees who have vested bonus claims.

108. On May 26, 2020, each of the Senior Employees filed a single proof of claim against the Debtor in an unliquidated amount.[55] *See* Proof of Claim Nos. 192 (claim of Ellington claiming "not less than $7,604,375"); 184 (claim of Leventon claiming "not less than $1,342,379.68"); (collectively, the "Proofs of Claim"). The Proofs of Claim did not provide any calculations or breakdown of amounts to support the minimum claimed.

---

[55] An amended proof of claim was filed by Mr. Ellington on July 16, 2020. Each Senior Employee asserted that a portion thereof, in a liquidated amount pursuant to the statutory cap of section of section 507(a)(4), is entitled to priority under the Bankruptcy Code. In addition, the portion of the claim related to PTO was classified in Class 6 under the Plan.

58

014309

109.    Each Proof of Claim sets forth the following with respect to "compensation"

owed:

> Claimant is owed compensation for his services, including, without limitation, (i)
> all salaries and wages; benefits; (ii) bonuses (including performance bonuses,
> retention bonuses, and similar awards), (iii) vacation and paid time off, and (iv)
> retirement contributions, pensions and deferred compensation. The amount of the
> Claim for such compensation includes both liquidated and unliquidated amounts.

*See* Claim Nos. 192, 182, 184, 183, each at Attachment ¶3.

110.    The official claims register maintained by KCC lists the general unsecured claim

amount for each Senior Employee as "UNLIQUIDATED." The claim of each Senior Employee

not requiring separate classification under the Plan (*i.e.*, the priority and PTO portions), was

classified as a General Unsecured Claim in Class 8 (each, a "GUC Claim").

111.    On October 27, 2020, during a hearing on the Debtor's then-existing disclosure

statement, this Court and the Committee were highly critical of the proposed plan provisions

concerning employee releases and strongly suggested that the plan was unlikely to be confirmed

as drafted. As a result, the Debtor began negotiating with the Committee concerning the terms

on which Senior Employees would be permitted to obtain a release. Ultimately, the Debtor and

the Committee agreed that the Senior Employee would be required to execute a stipulation with

the Debtor providing for the resolution and payment of deferred compensation at reduced rates

and other consideration in exchange for a Plan release. Specifically, the Senior Employee

Stipulation, if approved by this Court and signed by the Senior Employee, would allow the

"Earned Bonus" (as defined in the Senior Employee Stipulation) portion of the Senior

Employees' to be treated as a separate Convenience Claim (subject to reduction as set forth in

the Senior Employee Stipulation).  In exchange for this reduction, and together with the Senior Employee's agreement to (a) cooperate with the Claimant Trustee and Reorganized Debtor, (b) refrain from taking certain actions against those parties, and (c) support and vote in favor of the Plan, the Senior Employee would receive a Plan release and the treatment provided with respect to the "Earned Bonus" in the Plan and Senior Employee Stipulation.

112.    As part of its settlement discussions with the Senior Employees, the Debtor provided the Senior Employees with a chart outlining how the reduction of the "Earned Bonus" would work if the Senior Employees executed the Senior Employee Stipulation.  This chart was the same chart provided to the Committee in connection with the negotiation of the Senior Employee Stipulation.  This chart was never publicly-filed and did not contain "representations" or promises.  It was a chart provided to the Senior Employees to illustrate how a portion of the Senior Employees' total claims would be treated if they signed the Senior Employee Stipulation and to describe the consideration that the Senior Employee would provide in exchange for the release contained in the Plan.  Notably, the Disclosure Statement included the same calculation that was set forth in the chart provided to the Senior Employees.[56]

113.    In no world was the chart – provided in settlement discussions and for substantive purposes – a promise to pay.

---

[56] *See* Disclosure Statement, page 71, which states:

> In addition to the obligations set forth in Article IX.D. of the Plan, as additional consideration for the foregoing releases, the Senior Employees will waive their rights to certain deferred compensation owed to them by the Debtor.  As of the date hereof, the total deferred compensation owed to the Senior Employees was approximately $3.9 million, which will be reduced by approximately $2.2 million to approximately $1.7 million. That reduction is composed of a reduction of (i) approximately $560,000 in the aggregate in order to qualify as Convenience Claims, (ii) approximately $510,000 in the aggregate to reflect the Convenience Claims treatment of 85% (and may be lower depending on the number of Convenience Claims), and (iii) of approximately $1.15 million in the aggregate to reflect an additional reduction of 40%.

014311

114. Despite this, the Senior Employee Objection argues that such chart "shows the recovery to the Senior Employees if they do not sign the Senior Employee Stipulation but make the Convenience Class Election, and it separately shows the reduced recovery" if they sign the Senior Employee Stipulation. The Senior Employees further argue that the chart evidences the Debtor's intent that the Senior Employees could elect Convenience Class treatment of their "Earned Bonus" whether or not they executed the Senior Employee Stipulation. As set forth above, nothing in the chart supports that argument. The chart was simply a illustration of how the Senior Employee Stipulation would work if executed and the consideration that would be given by each Senior Employee for the release.[57]

115. Finally, the Senior Employees' comments were solicited on all but the economic terms of the Senior Employee Stipulation. The Senior Employees were also encouraged to raise any issues they had with the Senior Employee Stipulation to the Committee and/or this Court. The Senior Employees' counsel at Winston & Straw provided comments on the Senior Employee Stipulation, which both the Debtor and the Committee accepted. The Senior Employees themselves, however, refused to comment despite having the opportunity to do so and instead demanded that the Debtor retract the Senior Employee Stipulation because it did not reflect an agreement between the Senior Employees and the Debtor. On information and belief,

---

[57] As part of the Plan negotiations, Mr. Seery engaged in multiple conversations with all or some of the Senior Employees. Some of these conversations were with counsel; some were not. In each case, however, the conversations were part of a broader settlement discussion. During these discussions, the Senior Employees asked questions about how the Senior Employee Stipulation would work but also made blatant threats about how they would react if they were not treated in the manner they deemed appropriate. Mr. Seery made no promises to the Senior Employees during these conversations.

DOCS_SF:104855.7 36027/002

014312

the Senior Employees never approached the Committee to discuss the Senior Employee Stipulation. The only communication with this Court has been the Senior Employee Objection.

116. None of the Senior Employees elected to sign the Senior Employee Stipulation. Subsequent to the filing of the Senior Employee Objection, Mr. Seery discussed with Mr. Waterhouse and Mr. Surgent the possibility of signing the Senior Employee Stipulation, and Mr. Waterhouse and Mr. Surgent elected to sign the Senior Employee Stipulation (with certain revisions). However, as Mr. Ellington and Mr. Leventon are not currently employed by the Debtor, they are no longer eligible to sign the Senior Employee Stipulation.

### C. Treatment of Senior Employee Claims Under Plan

117. The Plan provides the following treatment to the Class 8 GUC Claims of the Senior Employees:

> Treatment: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes a valid Convenience Class Election.

Plan, III.H.8.

118. The Plan provides that a Holder of a General Unsecured Claim may make a "Convenience Class Election" as follows:

> "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim **that is a liquidated Claim as of the Confirmation Date on their Ballot** to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.[58]

---

[58] A "Convenience Claim" is defined as:

DOCS_SF:104855.7 36027/002

014313

Plan, I.B.43 (emphasis added).

119.     As discussed above, the Senior Employees' claims are unliquidated and were disclosed as unliquidated on the official claims register maintained by KCC. As unliquidated and unsecured claims, the Senior Employees' claims are, in each case, Class 8 (General Unsecured Claims), and, as holders of unliquidated GUC Claims, none of the Senior Employees were entitled to make the Convenience Class Election.

120.     Irrespective of their claims, the Senior Employees are not entitled to a release under of the Plan unless they execute a Senior Employee Stipulation.  *See* Article IX.D.

### D.     Plan Solicitation

121.     Although each of the Senior Employee's GUC Claim was classified *in toto* as Class 8 (General Unsecured Claims), the Senior Employees erroneously received both a Class 7 (Convenience Class) and Class 8 (General Unsecured) Ballot.  Except for Mr. Surgent, each of the Senior Employees voted their Class 8 (General Unsecured Claim) ballot to reject the Plan, and each of the Senior Employees voted their erroneously Class 7 (Convenience Class) ballot to reject the Plan.  Mr. Surgent abstained from voting on the Plan.  Because they have now executed the Senior Employee Stipulation, Mr. Waterhouse and Mr. Surgent's votes will be cast to accept the Plan.

---

any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or any General Unsecured Claim that makes the Convenience Class Election.  For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims.

Plan, I.B.41.

014314

### E. The Plan Does Not Violate Section 1123(a)(4)

122. Section 1123(a)(4) requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4).

123. The Senior Employees argue that the Plan does not treat them the same as other Employees in the same class because the Senior Employees are not automatically being granted a release under the Plan, whereas other Employees are being granted a release automatically upon confirmation. However, the Senior Employees conflate treatment of their claims with the decision not to automatically provide them a release. The treatment of claims in either Class 7 or Class 8 solely consists of distributions on account of the allowed amounts of such claims, and there is no difference in treatment among members of either class in terms of the distribution scheme provided. The releases under the plan are not part of the "treatment" of Class 7 or Class 8 claims.

124. Indeed, the releases granted under the Plan are part of an entirely different section of the Plan (Article IX). Debtors are not required to grant releases to anyone nor are they required to grant releases to all employees equally, especially here, where there are allegations of material misconduct against some, but not all, of the employees.[59] Nonetheless, the Debtor, after extensive negotiations with the Committee (which did not want to provide *any* release to the Senior Employees) presented the Senior Employees with a mechanism by which the Senior Employees could obtain a release *if* they agreed to the conditions of the Senior Employee

---

[59] Indeed, the grant of third party releases is heavily scrutinized and could not be granted to all general unsecured creditors across the board as part of the Plan's treatment of general unsecured claims. *See Bank of N.Y. Trust Co. v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

014315

Stipulation.[60]  But just as the Senior Employees were not required to sign the stipulation,[61] the Debtor cannot be forced to provide a release to each Senior Employee just because it has provided releases to other Employees.  Nor would this Court or the Committee have allowed the Debtor to provide releases to the Senior Employees without those Senior Employees providing additional consideration to the Debtor's estate.  As the Court will recall, at the October 28, 2020, the Court specifically told the Debtor that it would be hard-pressed to approve releases to certain of the Debtor's employees if such employees did not provide consideration for the releases.[62] The Senior Employee Stipulation was crafted to address the Court's concerns by conditioning the release of *certain* of the Debtor's employees on the provision of other consideration.

125.    Finally, the Senior Employees devote considerable time arguing that the proposed Senior Employee Stipulation suffers from numerous defects and that the terms are too harsh.  But

---

[60]As Mr. Ellington and Mr. Leventon are no longer employed by the Debtor, they are not eligible to sign the Senior Employee Stipulation.  Accordingly, they are not entitled to a release regardless of the Senior Employee Stipulation.

[61] While voluntary agreement is expressly excepted from section 1123(a)(4) anyway, debtors are permitted to treat one set of claim holders more favorably than another so long as the treatment is not on account of the claim but for distinct, legitimate rights or contributions from the disparately-treated group separate from the claim.  *Ad Hoc Comm. of Non-Consenting Creditors v. Peabody Energy Corp. (In re Peabody Energy Corp.)*, 933 F.3d 918, 925 (8th Cir. 2019).  The Ninth Circuit, for instance, upheld a plan that provided preferential treatment to one of a debtor's shareholders apparently because the preferential treatment was tied to the shareholder's service to the debtor as a director and officer of the debtor, not to the shareholder's ownership interest.  *See In re Acequia, Inc*., 787 F.2d 1352, 1362-63 (9th Cir. 1986) ("[The shareholder's] position as director and officer of the Debtor is separate from her position as an equity security holder."); *see also Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518-19 (5th Cir. 1998) (plan proponent's payments to certain members of power cooperative did not violate § 1123(a)(4) because the payments were "reimbursement for plan and litigation expenses," not payments "made in satisfaction of the [members'] claims against [the debtor]").  Here, too, the release consideration required from the Senior Employees *solely in order for the Senior Employees' to obtain a release* relates to their positions as senior employees rather than their position as general unsecured creditors.

[62] *See* Hearing Transcript, Oct. 28, 2020, at 30:17-22:

> So, and I'll just throw in one last bit of food for thought. . . the Debtor has had a year now, close to a year now, to knock some of these out, you know, maybe reach some compromises with some of the related Highland parties and officers, to maybe participate in the plan with some sort of contribution, and it's just not happening. It's not happening. . . . So, at this point, I would be hard-pressed to protect any nondebtor defendants who aren't ponying up something to the whole plan reorganization process.

those objections are irrelevant to confirmation.  If the Senior Employees believed that the cost of the release was too high, they had no obligation to sign the Senior Employee Stipulation.

### F.      The Senior Employees Are Not Permitted to Make Convenience Class Election

126.      The Senior Employees next argue that the Debtor has improperly prevented the Senior Employees from electing Convenience Class treatment for a portion of their Claims. Under applicable bankruptcy law, the Plan, and the Disclosure Statement Order, the Senior Employees are not entitled to split their claims to create a liquidated claim for which Convenience Class Election would even be possible.[63]  Further, even if the Senior Employees were entitled to elect a Convenience Class Election for a *portion* of their Class 8 Claims for distribution purposes, as discussed below, their Claims are only entitled to be voted in Class 8 for voting and numerosity purposes.

### G.      Convenience Class Election Is Unavailable Because Senior Employee's GUC Claims Cannot Be Split Under Applicable Bankruptcy Law

127.      The Senior Employees argue that the "Earned Bonus" portion of each GUC Claim is "liquidated"[64] and therefore eligible for the Convenience Class Election.[65]  The "Earned

---

[63] The Senior Employees claim the Debtor's statements contradict the plan; however, any purported contradiction stems from the Senior Employees' misstatement of the Debtor's position.  Indeed, even if the Debtor had made contradictory statements, it is irrelevant.  The Plan says what it says and the Debtor cannot unilaterally change the terms of the Plan with respect to a select group of creditors.  While a Class 7 Ballot was mistakenly sent to the Senior Employees, the Senior Employees cannot make the Convenience Class Election under the Plan because they each hold a single, unliquidated Class 8 Claim.

[64] The Plan did not need to define the term "liquidated."  Generally, a debt is liquidated if the amount due and the date on which it was due are fixed or certain, or when they are ascertainable by reference to (1) an agreement or (2) to a simple mathematical formula.  *In re Visser*, 232 B.R. 362, 364-65 (Bankr. N.D. Tex. 1999).  However, even if the Earned Bonus *portion* is liquidated in that the amount is capable of being ascertained, it is not considered liquidated for purposes of voting where the amount owed or formula for calculation are missing from the proof of claim.  *See In re Lindell Drop Forge Co*., 111 B.R. 137, 142-43 (Bankr. W.D. Mich. 1990); *see also Riemer & Braunstein LLP v. DeGiacomo (A & E 128 North Corp.)*, 528 B.R. 190, 199 (1st Cir. B.A.P. 2015) (court looks to proof of claim forms to determine if they sufficiently demonstrate liquidated claims).

[65] None of the Senior Employees' Proofs of Claim contains any liquidated amount with respect to any component of

---

014317

Bonus" portion, even if liquidated, is not a standalone claim entitled to make a Convenience Class Election, nor can the Senior Employees split their GUC Claim after filing a single proof of claim. The Senior Employees do not cite any law to support their contention that claims of a single creditor in a given class, set forth in a single proof of claim, may be split into multiple claims.[66] Indeed, case law holds the opposite. Courts have found that where a claimant files a single proof of claim, even if it covers multiple debts, he is not entitled to split his claims. *In re Jones*, 2012 Bankr. LEXIS 1076, *7 (Bankr. M.D. Ga. 2012) (noting that the creditor could have filed multiple proofs of claim to avoid the issue); *see also In re Latham Lithographic Corp*., 107 F.2d 749 (2d Cir. 1939) (claimant cannot split claim into multiple claims for the purpose of creating multiple creditors who could vote in a trustee election). The Senior Employees each filed a single proof of claim: they cannot split their GUC Claim in order to make the Convenience Class Election under the Plan and applicable bankruptcy law. And the Plan is clear on this; no other Holder of an unliquidated or partially liquidated Class 8 claim attempted to split its claim or make the Convenience Class Election.

---

the GUC Claim, including the "Earned Bonus." The Senior Employees appear to make the stunning assertion that the Debtors' books and records establish whether a claim is liquidated and the amount of such claim, even when the proof of claim lists no such amounts. There is no proof of claim on file listing a liquidated amount, no executed stipulation agreeing on a liquidated amount, and no order of the Court setting a liquidated amount. The Senior Employees' assertion that any portion of their GUC Claims is liquidated is untenable.

[66] The cases the Senior Employees cite only support that separate claims, each covered by a separate proof of claim, **_purchased_** from other creditors, are entitled to be counted as separate claims. *See Figter Ltd. v. Teachers Ins. Annuity Ass'n (In re Figter Ltd.)*, 118 F.3d 635, 640-641 (9th Cir. 1997) (claimant entitled to vote multiple claims where it "purchased a number of separately incurred and separately approved claims (each of which carried one vote) from different creditors"); *Concord Square Apartments v. Ottawa Properties (In re Concord Square Apartments)*, 174 B.R. 71, 74 (Bankr. S.D. Ohio 1994) ("purchaser of claims is entitled to a vote for each separate claim it holds"); *In re Gilbert*, 104 B.R. 206, 211 (Bankr. W.D. Mo. 1989) (purchased claim arose out of a separate transaction, evidencing a separate obligation for which a separate proof of claim was filed). Notably, in each of these cases a separate proof of claim had been filed for each separate claim, evidencing an entirely separate obligation, and owed to a different party. Here in contrast, each single Senior Employee filed a single proof of claim, and the "Earned Bonus" is a mere *component* of an overall compensation claim stemming from obligations under an employment contract.

014318

### H. Convenience Class Election Is Unavailable Because Senior Employee's GUC Claims Cannot Be Split Under Disclosure Statement Order for Voting Purposes

128.    Even if splitting claims contained in a single proof of claim were allowed under

applicable case law (which it is not) and the Senior Employees were entitled to make the

Convenience Claim Election with respect to a portion of their GUC Claim, this Court's

Disclosure Statement Order prohibits the splitting of claims within a given class for voting

purposes:

> Claims or interests shall not be split for purposes of voting; thus, each creditor and equity security interest holder shall be deemed to have voted the full amount of its claim and interest either to accept or reject the Plan;

Disclosure Statement Order ¶ 25.b.

129.    Similarly, paragraph 23 provides:

> For purposes of the numerosity requirement of section 1126(c), separate claims held by a single creditor in a particular Class shall be aggregated as if such creditor held one claim against the Debtor in such Class, and the votes related to such claims shall be treated as a single vote to accept or reject the Plan;

*Id*. ¶ 23.h.

130.    Read together, these provisions clearly establish that there can be no claim

splitting within a class, and no claim splitting between Class 7 and Class 8.  Accordingly, even if

claims classified in a given class set forth in a single proof of claim could be split and the Senior

Employee were entitled to make the Convenience Class Election, the Disclosure Statement Order

precludes the Senior Employees from splitting their claims for voting purposes.

68

014319

I.    **Even if Convenience Claim Election Were Available, Convenience Claim Election Does Not Impact Voting**

131.    Even if the Senior Employees were deemed to hold separate, liquidated claims on account of their "Earned Bonuses" that could be split from the remainder of their GUC Claims, a Convenience Class Election does not morph a Class 8 Claim into a Class 7 Claim *for voting purposes*. Specifically, the Class 8 Ballot, approved by the Disclosure Statement Order, provides:

> If you check the box below and elect to have your Class 8 General Unsecured Claim treated as a Class 7 Convenience Claim; ***(i) your vote on this Ballot to accept or reject the Plan will still be tabulated as a vote in Class 8 with respect to the Plan, but your Claim (as reduced) will receive the treatment afforded to Class 7 Convenience Claims;***

Disclosure Statement Order, Exhibit A at 26 (emphasis added).[67] Accordingly, at most, the Convenience Class Election only impacts the Senior Employees' treatment for distribution purposes. Moreover, even if the Court finds that Mr. Leventon has a liquidated claim that was entitled to be classified in Class 7 and vote in that class, Mr. Ellington's claim, which exceeds $1 million could not vote in Class 7. Mr. Ellington would only be entitled to reduce his Class 8 Claim and elect treatment in Class 7 but his claim would otherwise be included in Class 8 for voting purposes.

132.    For each of the foregoing, independent reasons, each Senior Employee holds a single, unliquidated claim in Class 8. No Senior Employee is entitled to split his GUC Claim under applicable bankruptcy law, and such an action is further prohibited by the Disclosure Statement Order. Even if any GUC Claim could be split and the Convenience Class Election

---

[67] The Plan itself is also clear that the Convenience Class Election only impacts *treatment*, and does not impact *voting*. *See* Plan, I.B.43; III.H.8.

was made, the Convenience Class Election only impacts treatment but does not impact voting. Finally, the Senior Employees' argument that their entitlement to make the Convenience Class Election stems from an erroneously mailed ballot is misplaced. As set forth above, the mailing of the Class 7 Ballot was an administrative error and cannot entitle the Senior Employees to rights that contradict the Plan and the Disclosure Statement Order.

## X.   THE HCMFA/NPA GATES OBJECTION

133.   The Debtor manages fifteen collateralized loan obligations ("CLOs") pursuant to certain agreements, which are referred to sometimes as portfolio management agreements and sometimes as servicer agreements (the "Management Agreements"). Each CLO is a Cayman-domiciled entity that owns a portfolio of loans. They are passive single purpose entities with no ability to self-manage. The CLOs have no employees; however, they do have Cayman-based boards of directors, which have limited duties under Cayman law and which do not actively manage the CLOs. Each CLO contracted with the Debtor as a third-party "Portfolio Manager" to manage the loan portfolio pursuant to the terms of the various Management Agreements. As discussed below, the only parties to the Management Agreements are the Debtor and the respective CLO.

134.   To finance its acquisition of the loans, each CLO issued notes to third party investors. Those notes come in different tranches with different payment priorities. The lowest in priority are called "preference shares," which receive the available residual cash flow after the CLO has made the required payments on the notes. Although called equity, the preference shares are not common equity. The CLOs themselves are purely creatures of contract, and

DOCS_SF:104855.7 36027/002

investor rights are governed by the terms of the indentures governing the CLOs (collectively, the "Indentures"), the preference share paying agency agreements, and in certain cases the Management Agreements.[68] The Indentures define the procedures for buying, managing, and selling the CLOs' assets. *See generally* Indenture § 12.1; Management Agreement § 2. Fiduciary duties under the Investment Advisers Act of 1940 (the "Advisers Act") are owed solely to the CLOs and not their investors.[69] Nothing in the Indentures or the Management Agreements gives any investor in the CLOs the right to block, interfere with, influence, control, or otherwise direct the asset sale process. The Management Agreements set forth the Portfolio Manager's duties and obligations and the requirements for removing the Portfolio Manager if investors are not satisfied.

135. By agreement with CLOs, which are the sole counterparties to the Management Agreements, the Debtor will assume the Management Agreements pursuant to the Plan. The Debtor and the CLOs have agreed, in summary, that in full satisfaction of the Debtor's cure obligations under section 365(b)(1) of the Bankruptcy Code, the CLOs will receive a total of $525,000, comprising $200,000 within five days of the Effective Date and $325,000 in four equal quarterly payments of $81,250, and that the Debtor and the CLOs will exchange mutual releases. The Debtor and the CLOs agreed to seek approval of this compromise by adding

---

[68] The Debtor's role is referred to as either the Servicer or Portfolio Manager. All of the Management Agreements and Indentures are governed by New York law, and the relevant provisions of those agreements are identical in all material respects across the CLOs at issue.

[69] The Debtor's fiduciary duties under the Advisers Act are owed to the CLO, not to its investors. *Goldstein v. SEC*, 451 F.3d 873, 881-82 (D.C. Cir. 2006) (under Section 206 of the Investment Advisers Act of 1940 and other provisions "[t]he adviser owes fiduciary duties only to the fund, not to the fund's investors. . . If the investors are owed fiduciary duty and the entity is also owed a fiduciary duty, then the adviser will inevitably face conflicts of interest."). The Debtor's duties, as Portfolio Manager, to the underlying investors in the CLO, if any, are prescribed by contract.

DOCS_SF:104855.7 36027/002

014322

language to the Confirmation Order. A copy of that language is attached hereto as Exhibit C and will be included in the Confirmation Order.

### A.     The HMCFA/NPA Objection, the CLO Holdco Objection, and NREP Joinder Should Be Overruled

136.    As the Court is well aware, Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NPA" and, together with HCMFA, the "Advisors"), are controlled by Mr. James Dondero. Mr. Dondero is also the portfolio manager of each of the investment funds objecting to the Debtor's assumption of the Management Agreements (the "Funds").[70] The Advisors and three of the Funds have actively interfered in the Debtor's management of the CLOs and sought to exercise management authority over the CLOs. This Court ruled on these issues in connection with the Advisors and Funds' *Motion for Order Imposing Temporary Restrictions on Debtor's Ability, as Portfolio Manager, to Initiate Sales by Non-Debtor CLO Vehicles* [Docket No. 1528] (the "CLO Motion").

137.    Now, the Funds and Advisors have objected to confirmation of the Plan and are joined only in their objection by other Dondero-controlled entities –the NexPoint RE Partners and CLO Holdco, Ltd. ("CLO Holdco" and, together with the Funds and the Advisors, the "CLO Objectors"). Although the NPA/HCMFA Objection makes different arguments than those contained in the CLO Motion, the goal of the NPA/HCMFA Objection is the same. It seeks to use this Court to transfer control of the CLOs away from the Debtor and back to Mr. Dondero.

---

[70] The Funds are Highland Fixed Income Fund, Highland Funds I and its series, Highland Funds II and its series, Highland Global Allocation Fund, Highland Healthcare Opportunities Fund, Highland Income Fund, Highland Merger Arbitrate Fund, Highland Opportunistic Credit Fund, Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Total Return Fund, Highland/iBoxx Senior Loan ETF, NexPoint Capital, Inc., NexPoint Real Estate Strategies Fund, NexPoint Strategic Opportunities Fund.

72

138.     The CLO Objectors contend that the Advisers Act prohibits assignment of the Management Agreements and/or that they are non-assignable personal service contracts.  From this, the CLO Objectors argue that the Management Agreements may not be assumed by the Debtor under Section 365(c) because the "*hypothetical test*" applies in the Fifth Circuit.  They also contend that there is inadequate assurance of future performance because of staff reductions and that the contracts are being modified and thus are being only partially (and so impermissibly) assumed.  The CLO Objectors also speculate that they may be harmed by future investment decisions made by the Debtor because the time-frame contemplated by the Plan for disposition of assets may be shorter than what they believe is optimal to maximize the value of the preference shares.  The objections should be overruled on several grounds:

- The contract counterparties – the CLOs – consent to assumption and will release the Debtor from all claims.

- The CLO Objectors are non-contracting parties with no standing to object on behalf of the CLOs and have pointed to no contractual basis for their assertion of management authority over the CLOs.

- The CLO Objectors cannot create standing by asserting they are creditors of the estate.  Each CLO Objector agreed to the expungement of its claims or has no claims.

- Even if the CLO Objectors were creditors, their standing to object to assumption would be limited to whether it benefits the Estate, and they would *still* lack standing to assert rights belonging to the contracting parties.

- Even if the CLO Objectors had the right to object to assignment, that does not give them the standing to object to the Debtor's assumption of the Management Agreements.

- Even if the Management Agreements were non-assignable, the Debtor could still assume the Management Agreements without consent because the *actual test* applies in the Fifth Circuit.

DOCS_SF:104855.7 36027/002

- Even if the *hypothetical test* applies, "applicable law" does not prevent assignment of the Management Agreements.

- There is no detriment to the Estate in assuming the Management Agreements, and there is no mismatch in investing timelines between the Debtor and the CLOs' investors.

**B.      The CLO Objectors Cannot Override the CLOs' Consent to Assumption**

139.     The Debtor and its counterparties (the CLOs) agreed to the assumption of the Management Agreements.  Any objections were waived.  Hence the CLO Objectors' argument is *not* that there is no consent to assume the Management Agreements; it is that the *correct* party has not consented.  In other words, the CLO Objectors are arguing that the CLO Objectors (and therefore Mr. Dondero) have the authority and prerogative to dictate the actions of the CLOs and whether the CLOs should consent to assumption.  This has to be the CLO Objectors' argument because unless the CLO Objectors have such right, they have no standing as non-contracting parties to object under section 365 to the assumption of the Management Agreements.

140.     Only parties to contracts have standing to object to assumption, even when the objector claims that assumption will result in a breach of that contract or violate the law.  *See Hertz Corp. v. ANC Rental Corp. (In re ANC Rental Corp.*), 278 B.R. 714, 718-19 (Bankr. D. Del. 2002), *aff'd*, 280 B.R. 808 (D. Del. 2002), 57 F. App'x 912 (3d Cir. 2003).  As the district court explained:

> The language of section 365 is clearly intended to protect the rights of those persons or entities who share contractual relationships with the debtors. In other words, in order to invoke the protections provided in section 365, an entity must be a party to a contract with the debtor.
>
> * * *
>
> Although section 365 does confer the right to refuse assignment where excused by applicable law, that right is nevertheless conferred only upon parties to the

74

contracts at issue.  It creates no separate right of enforcement for other creditors of the estate who are not parties to the contract. Therefore, even if the appellants feel that the alleged violation of the law may effect them, they have not demonstrated that they have the legal right to enjoin such a violation.

*Hertz Corp. v. ANC Rental Corp. (In Re ANC Rental Corp.)*, 280 B.R. 808, 817-18 (D. Del.

2002); *see also Cargill, Inc. v. Nelson (In re LGX, LLC)*, 2005 Bankr. LEXIS 2072 (10th Cir.

Oct. 31, 2005) (creditor had standing on whether court should approve settlement between

trustee and another creditor, but no standing under § 365 on whether quitclaim license from

trustee to that creditor violated applicable patent law because it was not party to contract); *In re*

*Riverside Nursing Home*, 43 B.R. 682, 685 (Bankr. S.D.N.Y. 1984) (assignee of rents is not

"party to such contract or lease" so as to confer standing under section 365); *In re Irwin Yacht*

*Sales, Inc*., 164 B.R. 678 (Bankr. M.D. Fla. 1994) (denying standing to co-owner

notwithstanding her economic interest since she was not party to the lease); *see also ANC Rental*,

57 F. App'x at 916 (citations omitted) ("Third-party standing is of special concern in the

bankruptcy context where, as here, one constituency before the court seeks to disturb a plan of

reorganization based on the rights of third parties who apparently favor the plan.  In this context,

the courts have been understandably skeptical of the litigant's motives and have often denied

standing as to any claim that asserts only third-party rights.")

141.    The only parties to the Management Agreements are the Debtor and the respective

CLOs.  Consequently, the CLO Objectors are effectively asking the Court to treat them as the

contracting parties, so that they, rather than the CLOs, may decide whether to oppose

assumption.  But an adjudication of the CLO Objectors' rights vis-à-vis the CLOs is not before

the Court.  Regardless, this assertion of management authority over the CLOs was already

rejected by Court as "almost Rule 11 frivolous."  In the CLO Motion, the movants sought to restrict sales of the CLOs' assets on terms that they believed might be disadvantageous to the holders of preference shares, but they could not substantiate any contractual basis for the exercise of such management authority.[71]

142.    The only acknowledgement of this Court's ruling in the NPA/HCMFA Objection is offered in a footnote, in which the CLO Objectors suggest that the issues are different "in connection with confirmation of a plan containing proposed contract assumptions that simply are not contract assumptions, fairly construed."[72]  In all honesty, the Debtor has no idea what the Objector's statement means, but whatever it means, the underlying issue and rationale are the same here as in the CLO Motion.  As before, the issue is who has the right to make business decisions for the CLOs, and in both the CLO Motion and here, the proffered justification is a nonspecific risk that investment decisions may be made with which the CLO Objectors disagree.

C.      **The CLO Objectors Lack Standing to Object to the Plan**

1.      **The CLO Objectors Rights Under the Management Agreements Are Not Affected by the Plan**

---

[71] 12/16/20 Tr. of Proceedings at 64:1-10.

> This is almost Rule 11 frivolous to me. You know, we're -- we didn't have a Rule 11 motion filed, and, you know, I guess, frankly, I'm glad that a week before the holidays begin we don't have that, but that's how bad I think it was, Mr. Wright [of K&L Gates] and Mr. Norris. This is a very, very frivolous motion.  Again, no statutory basis for it. No contractual basis. You know, you didn't even walk me through the provisions of the contracts. I guess that would have been fruitless. But you haven't even shown something equitable, some lack of reasonable business judgment.

[72] The CLO Objectors state: "The Funds and Advisors are aware that the Court has heard and rejected a form of this argument in a different context. By raising the point here, we mean no disrespect to the Court or the prior ruling. However, we contend that the issue is appropriately joined in connection with confirmation of a plan containing proposed contract assumptions that simply are not contract assumptions, fairly construed. Moreover, at the time of the Motion that was denied, only the Funds and Advisors took a position on the issues; now, other parties, on information and belief, will object or have objected on a similar basis."  Obj. at 5, n. 4.

DOCS_SF:104855.7 36027/002

014327

143.    The CLO Objectors offer four bases for standing in the Objection.  The first is
that "in several of the Servicing Agreements, the CLO Objectors have the right to remove the
Debtor or to control who the servicer under the agreements is.  They have similar rights under
the Indentures with respect to assignment or modification of the Servicing Agreements.  Insofar
as the Fifth Amended Plan purports to limit or to take those rights away from them, and to
change their rights, the CLO Objectors have standing to object to their rights being limited or
eliminated."  Obj. at 27.  Elsewhere they state that the Management Agreements "generally
allow the holders of preference shares to remove the portfolio manager for cause" and may
provide for a certain percentage of holders of Preference Shares to remove a manager without
cause.  Obj. at 11.

144.    As an initial matter, nowhere in the NREP Joinder do any of the NexPoint RE
Partners allege or state that they have any interest in the CLOs.  Without an interest in the CLOs,
the NexPoint RE Partners cannot allege that any of their rights are affected.  Further, nowhere in
the NPA/HCMFA Objection is there any attempt to establish any basis on which the CLO
Objectors are presently entitled to replace the Debtor as the Portfolio Manager or authorized to
decide for the CLOs whether the CLOs should consent to the Debtor's assumption of the
Management Agreements.  This is telling.

145.    As set forth in the Management Agreements, the Debtor can only be removed as
Portfolio Manager *for cause* by a majority of the preference shares that are *not* held by affiliates
of the Debtor.  By the CLO Objectors own admission, they only hold a majority of the
preference shares in eight of the fifteen CLOs at issue.  That means that the CLO Objectors have

DOCS_SF:104855.7 36027/002

*no* right to remove the Portfolio Manager in approximately half of the Management Agreements. However, even with respect to the CLOs in which they hold a majority of the preference shares, the CLO Objectors cannot remove the Debtor unless cause exists – and cause does not exist. Moreover, the CLO Objectors, under the Management Agreements, are prohibited from replacing the Debtor because each of the CLO Objectors should be considered an affiliate of the Debtor for purposes of the Management Agreements and therefore be prohibited from exercising removal rights. Finally, on January 9, 2020, this Court entered an order (the "January Order"), which, in pertinent part, stated that "Mr. Dondero shall not cause any Related Entity to terminate any agreements with the Debtor." [Docket No. 339] It is beyond dispute that each of the CLO Objectors is for all intents and purposes Mr. Dondero, and Mr. Dondero should not be allowed to do by proxy what he was prohibited by this Court from doing directly.

146.    However, whether the CLO Objectors have the right to remove and replace the Debtor as Portfolio Manager is not a question that will be decided by the Plan nor will the CLO Objectors' rights to remove the Debtor – whatever they are – be impacted by the Plan. On January 6, 2021, the Debtor filed that certain *Debtor's Memorandum of Law in Support of Its Motion for a Temporary Restraining Order and Preliminary Injunction Against Certain Entities Owned and/or Controlled by Mr. James Dondero*, Adv. Proc. No. 20-03000-sgj, Docket No. 6] (the "Adversary Complaint"). In the Adversary Complaint, the Debtor seeks a declaratory judgment that the CLO Objectors have no right to replace the Debtor under the Management Agreements for the reasons set forth above, among others. The CLO Objectors should assert their rights, if any, at the hearing on the Adversary Complaint, not through an objection to

DOCS_SF:104855.7 36027/002

014329

assumption. Consequently, the CLO Objectors' rights, if any, under the Management Agreement will be determined by this Court in a separate hearing, and will not be impacted by the Plan.

### 2. The CLO Objectors Lack Standing to Object to Assumption as Creditors or Parties in Interest

147. Two of the CLO Objectors' four claimed bases for standing are that they are creditors, or at least parties in interest, and as such have standing to object to assumption of the Management Agreements "especially because assumption of the Servicing Agreements and future performance thereunder affect the feasibility of the Plan as a whole," and under sections 1129(a)(1)-(3) because assumption of the Management Agreements purportedly violates the law. Obj. at 27. These arguments fail for numerous reasons.

148. First, these arguments for standing are circular. If a party lacks standing to object to assumption of a contract because it has no protected interest in the contract under section 365, it cannot argue that a plan should not be confirmed because of the assumption of such contract. A party cannot use an objection to a plan to create standing under section 365.

149. Second, the CLO Objectors are not creditors. As set forth in the Memorandum, each of the Advisors, the Funds, and CLO Holdco filed claims in this Case; however, each of those parties voluntarily agreed to have their Claims expunged or reduced to $0.00. None of the NexPoint RE Entities filed claims. As such, the CLO Objectors are barred from asserting that they have prepetition claims against the Debtor or its Estate. The CLO Objectors also cannot create claims by asserting that they will have claims arising from the rejection of the shared services agreements with the Debtor. *None* of the shared services agreements are being rejected. Each of the shared services agreements is freely terminable. In November 2020, the Debtor

provided notice that the shared services and other agreements were being terminated. Such agreements will terminate no later than January 31, 2021, which is prior to the anticipated Effective Date of the Plan. Because none of the shared services agreements are being rejected, none of the CLO Objectors will have a rejection damages claim.

150. Third, *even if* any of the CLO Objectors were creditors: "[E]ven creditors do not have standing to raise the rights of a landlord or contract party under section 365. . . While section 1109 allows a creditor to be heard on any issue in a bankruptcy case, it does not change the general principle of standing that a party may assert only its own legal interests and not the interests of another." *In re ANC Rental*, 278 B.R. at 718-19 (citations omitted). As the bankruptcy court held in *ANC Rental*, the CLO Objectors cannot usurp the CLO's standing to object to assumption.

151. Fourth, as set forth below, there is no "applicable law" prohibiting assumption and/or assignment for purposes of Section 365(c) and therefore no argument under section 1129(a). Each of the Management Agreements can be assumed and could be assigned without the consent of any party (although the CLOs have consented to assignment). Therefore, there is no violation of law.

152. Finally, the CLO Objectors cannot boot strap into standing by arguing that the assumption of the Management Agreements will not benefit the estate. First, it is anticipated that the Debtor's chief executive officer and chief restructuring officer will testify as to how assumption benefits the estate. Second, granting the relief requested by the CLO Objectors would be catastrophic to the Debtor's estate. The Debtor's inability to assume the Management

DOCS_SF:104855.7 36027/002

Agreements does not mean that the CLO Objectors will be magically installed as Portfolio Manager. It means that the Management Agreements will be rejected and that *none* of the CLOs will have a Portfolio Manager following the Confirmation Date. Any damage to the CLOs will presumably be part of the claims asserted by the CLOs against the Debtor in connection with that rejection. Those claims are currently incalculable. The Debtor also has exposure to each of the CLOs and any loss in value caused by having no Portfolio Manager would directly impact the Reorganized Debtor's and Claimant Trust's assets. Even assuming the CLO Objectors can appoint themselves Portfolio Manager in the CLOs in which they hold a majority of the preference shares (which is contested and which in no event would happen by the Confirmation Date), that still leaves approximately half of the CLOs without a manager. It is beyond disingenuous for the CLO Objectors to argue that there is no benefit to the estate in assuming the Management Agreements while at the same time arguing that those same agreements should be rejected with the Debtor suffering the consequences.

**3.      The Contractual Right to Object to Assignment of the Management Agreements Does Not Create Standing to Object to Their Assumption**

153.      The fourth and final basis for standing is: "[I]n several of the Servicing Agreements, it is not just the CLO that must approve an assignment, but also the CLO Objectors. The CLO Objectors have similar rights under the Indentures. Insofar as the test under section 365(c)(1) is a hypothetical assignment, and the CLO Objectors have the right to approve or not approve that assignment under applicable law and the agreements, that right should extend to consent under section 365(c)(1)(B) as well, as the CLOs' consent is not possible without a concurring consent by the CLO Objectors." Obj. at 28.

DOCS_SF:104855.7 36027/002

014332

154.     For purposes of standing, the CLO Objectors asserted contractual right to object

to assignment of the Management Agreements is irrelevant, for three reasons.  First, there is no

assignment here.  The Debtor is assuming the Management Agreements with the consent of the

CLOs.  Second, even if it were correct that (a) the CLO Objectors have a contractual right to

object to assignment, and (b) the *hypothetical test* applies, they still have no interest in the

contract that would permit them to enforce section 365's protections for their benefit in

derogation of the rights of the actual contracting parties.  Third, as discussed immediately below,

the *actual test* applies in the Fifth Circuit, and thus the Management Agreements would be

assumable even if they were not assignable.

### D. Even if the CLO Objectors Had Standing and the Management Contracts Were Not Assignable, the Debtor Could Assume Them Because the *Actual Test* Applies in the Fifth Circuit

155.     As the CLO Objectors recognize, there is a split of authority among the circuits

regarding the appropriate test to apply to determine whether:

- a contract that is otherwise non-assignable under applicable non-bankruptcy law  can be assumed by a debtor  under Bankruptcy Code section 365(c)(1); and

- whether the same contract can be terminated if it contains an "ipso facto" clause pursuant to Bankruptcy Code section 365(e)(2)(A).

The Fifth Circuit has ordered lower courts to apply the so-called *actual test* in considering

whether an ipso facto termination clause can be enforced under Bankruptcy Code section

365(e)(2)(A).  For the reasons set forth below, even though the Fifth Circuit has not ruled on the

issue directly, the *actual test* has been applied by every bankruptcy court that has considered the

issue in the Fifth Circuit to assumption of contracts under Bankruptcy Code section 365(c)(1).

DOCS_SF:104855.7 36027/002

Accordingly, the *actual test* should be applied in this Case to conclude that the Management Contracts can be assumed by the Reorganized Debtor without the consent of any party.

156. The Fifth Circuit's decision in *Bonneville Power Administration v. Mirant Corporation* applied the *actual test* to a determination of whether a contract can be terminated as a result of the filing of a bankruptcy case under Bankruptcy Code section 365(e)(2). *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.),* 440 F.3d 238 (5th Cir. 2006). The reasoning in *Mirant* also supports application of the *actual test* to Bankruptcy Code section 365(c)(1). Specifically, in *Mirant,* a non-debtor counterparty sought to terminate its executory contract with the chapter 11 debtor based on an ipso facto clause after the debtor filed for bankruptcy. In support of its argument, the non-debtor counterparty relied on section 365(e)(2)(A) and asserted that, under applicable law, the Anti-Assignment Act, 41 U.S.C. § 15 (which generally prohibits the transfer of contracts to which the United States is a party), it was excused from accepting performance from or rendering performance to the trustee or an assignee. Critically, in reaching its conclusion that the *actual test* applied, the Fifth Circuit relied on cases analyzing section 365(c)(1).

157. While the CLO Objectors would like this Court to believe there is some risk that if faced with the direct question of whether the *actual* test also applies under section 365(c)(1), the Fifth Circuit would reach a different result, that argument strains credibility. Notwithstanding the technical language differences[73] between the two statutes, the same test

---

[73] Subsection (e)(2) provides that the invalidation of ipso facto clauses does not apply to an executory contract where "applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties[.]" 11 U.S.C. § 365(e)(2). This language is very similar—but not identical—to the language employed by subsection (c)(1), which speaks to excusing

must apply to both the assumption of a contract under section 365(c)(1) and the termination of a contract under section 365(e)(2)(A). There is no logical reading of these two subsections that would support application of different tests. The language of section 365(e)(2)(A) is intended to allow the counterparty to a contract that cannot be assumed or assigned to enforce its remedy of termination so that it is not in limbo while the bankruptcy case proceeds. Section 365(c) cannot be read in isolation from the other subsections. It would make no sense for a court to hold that a contract cannot be assumed because the *hypothetical test* applies, but nonetheless cannot be terminated because the *actual test* applies. For this reason, every lower court in the Fifth Circuit that has considered the issue has held that the *actual test* applies to a debtor's assumption of contracts under section 365(c). *See In re Virgin Offshore USA, Inc.*, No. 13-79, 2013 U.S. Dist. LEXIS 128995, at *15 (E.D. La. Sep. 10, 2013):

> Though the *Mirant* court used the actual test in the context of § 365(e), which was not amended in the same way as § 365(c) and thus is not subject to the same circuit split, the Court nonetheless finds this decision to be an indicator of the way that the Fifth Circuit would undertake an analysis under § 365(c). Further, in *In re O'Connor*, the Fifth Circuit appears to have applied an actual test to determine that a partnership interest was strictly personal under Louisiana law, thus not assumable under § 365(c). The court did not expressly adopt the actual test because, regardless of the test applied, the partnership interest would have been unassumable under § 365(c); however, the language used in the opinion indicated a predilection for the actual test.

*See also In re Jacobsen*, 465 B.R. 102, 105-06 (Bankr. N.D. Miss. 2011); *Cajun Elec. Members Comm. v. Mabey (In re Cajun Elec. Power Coop., Inc.)*, 230 B.R. 693, 705 (Bankr. M.D. La. 1999); *In re Lil' Things, Inc.,* 220 B.R. 583, 587 (Bankr. N.D. Tex. 1998); *Texaco Inc. v. Louisiana Land & Exploration Co.,* 136 B.R. 658, 669 (Bankr. M.D. La.1992); *In re Hartec*

---

performance from, or rendering performance to, "an entity other than the debtor or the debtor in possession" as opposed to just "the trustee or [] an assignee." Compare *id*. § 365(c)(1) with § 365(e)(2).

014335

*Enters., Inc.,* 117 B.R. 865, 871 (Bankr. W.D. Tex. 1990), *vacated by settlement*, 130 B.R. 929

(W.D.Tex. 1991).

158.    Moreover, other bankruptcy courts within the Fifth Circuit have expressly

rejected the *hypothetical test*, concluding that:

> If the court were to adopt the [hypothetical test] and focus primarily upon
> assignability, a chapter [sic] 11 filing would have the virtual effect of rejecting
> executory contracts covered by section 365(f). As suggested by the court in
> *Texaco,* this analysis would extend section "365(c) beyond its fair meaning and
> intended purpose, contrary to the ultimate goal of rehabilitation of the debtor's
> enterprise."

*Cajun Elec.,* 230 B.R.at 705 (Bankr. M.D. La. 1999)  (quoting *Texaco,* 136 B.R. at 670).

159.    The CLO Objectors prediction that the Fifth Circuit would apply a different test

under subsection 365(c) than it does under 365(e) is based solely on the use of the word "or"

rather than "and" in subsection 365(c).  However, the language cited by the CLO Objectors in

the statute is the same language that was considered by each of the lower courts in the Fifth

Circuit; each of those courts nonetheless applied the *actual test*.  The CLO Objectors reading is

overly simplistic and imposes a literal reading that, as noted by the *Cajun Electric* Court above,

is "beyond its fair meaning and intended purpose, contrary to the ultimate goal of rehabilitation

of the debtor's enterprise."  *Id.*  Accordingly, the argument that assumption of the Management

Contracts must be evaluated using the *hypothetical test* is unavailing and contrary to this

Circuit's case law.

DOCS_SF:104855.7 36027/002

014336

### E.   Even if the CLO Objectors Have Standing and the *Hypothetical Test* Applies, the Management Agreements Are Assignable

160.    The CLO Objectors, assuming the *hypothetical test* applies, contend the Management Agreements cannot be assigned or assumed under section 365(c)(1) without the consent of the contracting party because they are non-assignable personal services contracts and because Section 205(a)(2) of the Advisers Act proscribes assignment of such contracts without consent.   Under these circumstances, the CLO Objectors argue that "applicable law excuses a party, other than the debtor, to such contract . . . from accepting performance from . . . an entity other than the debtor. . . ."  11 U.S.C. § 365(c)(1)(A).

161.    This Court has previously (and correctly) rejected both of these arguments – at that time made by the Debtor under the control of Mr. Dondero – in *In re Acis Capital Management, L.P., et al*, Case No. 18-30264-sgj, Docket No. 549 (Bankr. N.D. Tex. Aug. 30, 2018) (the "Acis Order").  In the Acis Order, this Court held that: (a) the portfolio management agreements at issue were not personal services contracts; and (b) Section 205(a)(2) of the Advisers Act is not "applicable law" precluding assignment under section 365.  Specifically, this Court ruled as follows:

> The court overrules any objection that there is some applicable law that excuses the counterparties to the PMAs [portfolio management agreements] (i.e., the CLO Issuers) from accepting performance from a party other than the debtor. First, these are not personal services contracts. . . . [I]n order to determine whether the PMAs are personal service contracts, the court must assess the particular circumstances in the case, the nature of the services provided by Acis under the PMAs, and whether such services are nondelegable. Highland contends that because the PMAs "depend on the skill and reputation of the performing party," the PMAs are personal service contracts, and thus unassignable. If this were the standard, the exception would swallow the rule – any prudent party contracting for another's services considers the other party's skill, expertise, and reputation – and any contract for services premised on the skill and reputation of the party providing services would be a personal service contract. It is not whether the party

86

014337

providing services is skilled and reputable – it is whether such services are unique in nature. *See Compass Van & Storage Corp.*, 65 B.R. at 1011. . . . Here. . . [p]ursuant to the Shared Services Agreement and Sub-Advisory Agreement, Acis LP delegated certain of its responsibilities under the PMAs to Highland. Accordingly, the personal qualities of Acis LP were not essential to performance under the PMAs. While the expertise of Acis LP was relevant to its selection as portfolio manager, such expertise is not unique – as demonstrated by the expertise and reputation of Oaktree, Brigade, and others who act as CLO portfolio managers. Also, importantly, the PMAs themselves provide that Acis may delegate the performance of its duties under the PMAs to third parties: "In providing services hereunder, the Portfolio Manager may employ third parties, including its Affiliates, to render advice (including investment advice), to provide services to arrange for trade execution and otherwise provide assistance to the Issuer, and to perform any of the Portfolio Manager's duties under this Agreement; provided that the Portfolio Manager shall not be relieved of any of its duties hereunder regardless of the performance of any services by third parties." 2014-3 PMA § 3(h)(iii). And although section 14 the PMAs requires consent for assignment, section 14 contemplates that an Affiliate assignee "has demonstrated ability, whether as an entity or by its personnel, to professionally and competently perform duties similar to those imposed upon the Portfolio Manager pursuant to this Agreement." *Id.* § 14(a). Further, sections 14 and 32 of the PMAs provide for merger, consolidation, or amalgamation of Acis with another company, where the resulting entity succeeds "to all or substantially all of the collateral management business of the Portfolio Manager." Pursuant to the terms of the PMAs themselves, the duties of Acis were not "so unique that the dut[ies were] thereby rendered nondelegable." . . . As such, unlike personal service contracts, the PMAs do not "synthesize into those consensual agreements . . . distinctive characteristics that commit to a special knowledge, unique skill or talent, singular judgment and taste." . . . Accordingly, because the duties of Acis LP under the PMAs are delegable (and were delegated) and are not unique, the PMAs cannot be personal service contracts that fall within the narrow exception of section 365(c)(1).

Additionally, Section 205(a)(2) of the Investment Advisors Act of 1940 ("IAA") is not a nonbankruptcy law that precludes assumption and assignment of the PMAs. Section 205(a)(2) of the IAA provides that a registered investment adviser (such as Acis) cannot enter into an investment advisory contract unless such contract provides "that no assignment of such contract shall be made by the investment adviser without the consent of the other party to the contract[.]" 15 U.S.C. § 80b-5(a)(2).

Thus, this provision of the IAA merely requires that the PMAs contain an anti-assignment provision – the IAA is not "applicable law" that prohibits assumption or assignment without consent of the counterparties to the PMAs. Indeed, in the Southern District of New York, the court held:

"Section 205(a)(2) of the [IAA] . . . does not . . . prohibit an

014338

> investment adviser's assignment of an investment advisory contract
> without client consent.  The section merely provides that the
> contract must contain the specified provision.  Thus, the
> assignment of a non-investment company advisory contract,
> without obtaining client consent, could constitute a breach of the
> advisory contract, but not a violation of Section 205(a)(2)."

*CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC*, 2018 U.S. Dist. LEXIS 90174, at *12

(S.D.N.Y. May 23, 2018). Assignment of the PMAs without consent of the counterparties simply

constitutes breach of the PMAs, but the IAA is not "applicable law" that excuses the

counterparties to the PMAs from accepting or rendering performance without such consent.

162.    For the exact reasons found by this Court in the Acis Order, the CLO Objectors'

argument that "applicable law" prevents assignment under 11 U.S.C. § 365(c) should be

overruled.  First, the Management Agreements are on all fours with the management agreements

discussed in the Acis Order.  The Management Agreements have the same delegation provisions,

the same assignment provisions, and the same provisions on merger, consolidation, and

amalgamation.[74]  The Court has already ruled on these exact agreements and found that they

preclude a finding that the Management Agreements are personal services contracts.

---

[74] *See, e.g.,* Servicing Agreement, dated as of November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. ("Grayson Agreement"):

> In providing services hereunder the Servicer may employ third parties including its Affiliates to render advice including advice with respect to the servicing of the Collateral and assistance provided however that the Servicer shall not be relieved of any of its duties or liabilities hereunder regardless of the performance of any services by third parties.

(*Id.*, § 2(d))

> In addition any successor Servicer must be an established institution which has demonstrated an ability to professionally and competently perform duties similar to those imposed upon the Servicer hereunder

(*Id.*, § 12(e))

> Any corporation partnership or limited liability company into which the Servicer may be merged or converted or with which it may be consolidated or any corporation partnership or limited liability company resulting from any merger conversion or consolidation to which the Servicer shall be party or any corporation partnership or limited liability company succeeding to all or substantially all of the servicing and collateral management business of the Servicer shall be the successor to the Servicer without any further action by the Servicer the Co-Issuers the Trustee the

DOCS_SF:104855.7 36027/002

014339

163.     Second, as this Court ruled, the Advisers Act does not prohibit assignment without consent.  It simply requires that an advisory agreement contain certain language and that any failure to obtain consent is a breach, not a nullification of the assignment.  If the CLO Objectors had done their diligence, they would have realized that the Acis Order is not unique.  The SEC has expressly stated that:

> Section 205(a)(2) does not prohibit an adviser's assignment of an investment advisory contract without client consent. The section merely provides that the contract must contain the specified provision. Thus, the assignment of a non-investment company advisory contract, without obtaining client consent, could constitute a breach of the advisory contract, but not a violation of Section 205(a)(2).

*American Century Companies, Inc./JP Morgan & Co. Incorporated*, Staff No-Action Letter (12/23/1997); *see also* Investment Management Staff Issues of Interest, http://www.sec.gov/divisions/investment/issues-of-interest.shtml [June 5, 2012] ("In particular, the staff previously has clarified that Section 205(a)(2) does not prohibit an adviser's assignment of an investment advisory contract without client consent.  The section merely provides that the contract must contain the specified provision.").

164.     As such, there is no applicable law prohibiting the assignment – let alone the assumption – of the Management Agreements.  "[F]or section 365(c)(1) to apply, the applicable law must specifically state that the contracting party is excused from accepting performance from a third party under circumstances where it is clear from the statute that the identity of the contracting party is crucial to the contract or public safety is at issue." *In re ANC Rental Corp.*, 277 B.R. 226, 236 (Bankr. D. Del. 2002).

---

Noteholders or any other person or entity

(*Id.*, § 31)

89

014340

### F.    The Inadequate Assurance of Future Performance Objection is Meritless

165.    The CLO Objectors contend that the reorganized Debtor will have inadequate resources to perform its obligations under the Management Agreements, and so has not given adequate assurance of future performance.   The CLO Objectors also allege that there is a mismatch between the Debtor's investment timeline and the timeline expected by the investors in the CLOs.   Both of those arguments fail.   First, assurance of future performance is a protection conferred by section 365 on contracting parties, which the CLO Objectors are not.   They lack standing to invoke it when the actual contracting parties – the CLOs – are satisfied.   Second, even if they had standing, the objection is without merit.   The CLO Objectors argue (i) because the Debtor is terminating all of its employees, it will not be able to manage the CLOs post-Effective Date and (ii) the Debtor cannot hire a Sub-Servicer to manage the CLOs without violating the Management Agreements.   As an initial matter, the Debtor is not retaining a Sub-Servicer to manage the CLOs, and, although the Debtor will terminate a number of employees, it will retain sufficient and appropriate staff to manage the CLOs post-Effective Date.   However, even if the Debtor were terminating all employees, the Management Agreements *expressly* allow the Debtor to retain a Sub-Servicer to manage the CLOs.[75]

166.    Similarly, the CLO Objectors' contention that the Debtor's timeline for monetizing the assets in the CLOs is contrary to the timeline expected by the CLOs' investors also ignores the facts.   As disclosed in the CLOs' offering memoranda, the notes and preference shares issued by the CLOs have come due or will, with two exceptions, come due shortly.

---

[75] *See* Grayson Agreement, § 2(d) ("In providing services hereunder **the Servicer may employ third parties** including its Affiliates **to render advice including advice with respect to the servicing of the Collateral and assistance** provided however that the Servicer shall not be relieved of any of its duties or liabilities hereunder regardless of the performance of any services by third parties.") (emphasis added).

DOCS_SF:104855.7 36027/002

014341

| **CLO** | **Note Maturity** | **Preference Share Redemption** |
|---|---|---|
| Aberdeen | November 2018 | November 2018 |
| Brentwood | February 2022 | February 2022 |
| Eastwood | May 2022 | May 2022 |
| Gleneagles | November 2017 | November 2017 |
| Grayson | November 2021 | November 2021 |
| Greenbriar | November 2021 | November 2021 |
| Highland Legacy Limited | June 2011 | N/A |
| Highland Loan Funding V | August 2014 | August 2014 |
| Highland Park CDO I | November 2051 | November 2051 |
| Jasper | August 2017 | August 2017 |
| Pam Capital | May 2010 | N/A |
| PamCo | August 2009 | N/A |
| Red River | July 2018 | July 2018 |
| Rockwall | August 2021 | N/A |
| Rockwall II | August 2021 | N/A |
| Southfork | February 2017 | February 2017 |
| Stratford | November 2021 | November 2021 |
| Valhalla | April 2038 | April 2038 |
| Westchester | August 2022 | August 2022 |

As such, there is no mismatch between the expectations of the CLOs' investors and the Debtor. With the exception of the CLO Objectors who presumably want the CLOs to stay extant forever, the expectations of the CLOs' investors are set by the offering memoranda, which clearly disclose the expected timeline for the CLOs.

167.    Finally, the disingenuousness of the CLO Objectors' arguments on future performance cannot be overstated.  The CLO Objectors are arguing that the Debtor must *reject* the Management Agreements because – in their estimation – the Reorganized Debtor will not be able to satisfactorily manage the CLOs.  The CLO Objectors' argument is therefore that it is

014342

better for the CLOs to have no manager at all. The CLO Objectors arguments are an abject danger to the Estate and could create potential liability in the millions of dollars.

### G. The "Impermissible Partial Assignment" Objection is Meritless

168. The CLO Objectors contend that their rights are being modified by the Debtor's assumption of the Management Agreements, effectively resulting in an impermissible "partial assumption" of the contracts. Once again, they are not contracting parties with standing to object on this basis. But even if they were, the factual predicate is missing. The Management Agreements are being assumed *in toto*. There is no modification of any contract rights of the CLO Objectors. And, as set forth above, the Debtor filed the Adversary Complaint in which it sought a declaratory judgment on the CLO Objectors' rights to replace the Debtor as Portfolio Manager under the Management Agreements. Regardless of whether the Plan is confirmed, the CLO Objectors will have their rights under the Management Agreements as those rights are determined by this Court in connection with the adjudication of the Adversary Complaint.

## XI. STATE TAXING AUTHORITY OBJECTION

169. Following the filing of the State Taxing Authority Objection, the Debtor reached out to Dallas County, City of Allen, Allen ISD, City of Richardson, and Kaufman County (collectively, the "State Authorities") to see whether the State Taxing Authority Objection could be resolved consensually. Although the Debtor and the State Taxing Authority have not yet reached resolution, the Debtor is optimistic that the State Taxing Authority Objection will be resolved and will continue working with the State Authorities.

## XII.    IRS OBJECTION

170.    The Internal Revenue Service ("<u>IRS</u>") raises three objections to the Plan in the IRS Objection, two of which are not controversial, and the Debtor has amended the plan to address these points.

171.    First, in paragraph 1 of the IRS Objection, the IRS requests that the Debtor provide it with interest on account of its Allowed Claim as required under 11 U.S.C. 1129(a)(9)(C).  The Plan previously provided for payment of the full amount of the Allowed Priority Tax Claims (which would include any applicable interest on account of such Allowed Claim) on the Initial Distribution Date in order to fully satisfy these tax claims and avoid the incurrence of any unnecessary interest.  To clarify this issue and resolve this first objection, the Debtor has amended the Plan to provide for an additional treatment mechanism that provides that Allowed Claims shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code in the event the entirety of the IRS's Allowed Claims (inclusive of any interest pursuant to which such claims are entitled to) are not paid on the Initial Distribution Date, as provided in section II.C of the Plan.

172.    Second, in paragraph 3 of the IRS Objection, the IRS argues that its claims should not be "fixed" unless and until any required tax returns are filed.  The Debtor does not dispute this contention and believes that the proposed language that was provided to the IRS and reprinted below addresses this concern because it provides that the IRS's claims shall survive the bankruptcy as if the cases had not yet been filed, which is standard in chapter 11 confirmation orders.  Further, the Debtor believes that it has filed all applicable returns but, in an effort to resolve the IRS Objection, proposes the language below.

173. In paragraph 2 of the IRS Objection, the IRS asserts that it has no record of the Debtor having filed its Form 720 with respect to its self-insured health plan for the June 30, 2014, June 30, 2016 and June 30, 2018 tax periods. Because of this alleged non-compliance, the IRS proposes certain default provisions detailed in the chart below (the "Default Provisions"). The Debtor asserts that the Default Provisions are not warranted because that Debtor has filed all applicable tax returns. Specifically, with respect to Form 720, on April 22, 2020, the Debtor responded to an IRS inquiry about the forms and provided an explanation about forms which were not required and provided the IRS with Form 720 for the 2015, 2016 and 2017 tax periods. Further the Default Provisions are not warranted because the IRS has adequate collection and enforcement remedies available through applicable law and should not be granted additional remedies through the Plan. Finally, the Default Provisions are vague and contain undefined terms which will result in confusion if enforcement is ever attempted. Certain examples of these problems are discussed below.

174. Default Provision (1) provides certain remedies to the IRS in the event of certain failures to pay taxes or timely file returns by the Debtor, the Reorganized Debtor or any successor in interest. The Debtor asserts that the Default Provisions are unnecessary since the Debtor has provided all applicable returns. Default Provisions (2) and (3) are not needed and are problematic because of their vagueness. The Debtor would agree to Default Provision (1) provided that it is clarified to state that nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, causes of action, rights of setoff or recoupment, rights to appeal tax assessments, or other legal or equitable defenses that

the Debtor or Reorganized Debtor have under non-bankruptcy law in connection with any claim, liability or cause of action of the United States.

175.    Default Provision (2), presumably intended to provide remedies in addition to those provided under Default Provision (1), would allow the IRS to declare the Debtor to be in **"default"** if the certain failures were not cured within fourteen (14) days and then the **"entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor, Reorganized Debtor, an/or any successor in interest."** The term **"entire imposed liability"** is not defined in the proposed Default Provision. The ability of the IRS to unilaterally declare the Debtor to be in default and the imposition of a fourteen (14) day deadline is inappropriate and the IRS should rely on applicable law without imposing additional requirements through the confirmation process. Further, if this provision is intended to cut off the Debtor's right to challenge any obligation that is asserted against it by the IRS, it goes beyond applicable law and would deprive the Debtor of valuable rights to legitimately challenge such asserted amounts, including applicable appeal rights. Further, to the extent that the Debtor may legitimately dispute certain tax obligations, acceleration of payment of other tax obligations is not appropriate and not in accordance with applicable law.

176.    Default Provision (3) requires full payment of the entire imposed liability, together with an unpaid current liabilities within fourteen (14) days of demand and also purports to extend the collection statute expiration date again attempting to augment remedies available to the IRS. Such remedies are not warranted. Again, the IRS has adequate remedies available to it

014346

under applicable law and should not seek to augment them through the bankruptcy plan confirmation process.

177.    Aside from the fact that the pre-determination of the parties' applicable rights and defenses under applicable non-bankruptcy law does not belong in a chapter 11 plan or confirmation order, the IRS's language is problematic for another reason.  By grafting these requirements to a chapter 11 plan and or a court order, the IRS is creating additional remedies that it would otherwise not be entitled to under non-bankruptcy law because it could then use the Confirmation Order to hold the Debtor in contempt, and potentially foreclose any applicable defenses or other substantive rights in a later proceeding that contravene the IRS's Court-ordered default language.

178.    The Debtor has proposed (and the IRS has rejected) the standard "neutrality" language that protects the parties' respective rights and defenses and places them in the "the administrative or judicial tribunals in which such rights or claims would have been resolved or adjudicated if the bankruptcy case had not been commenced" which is where they belong.

179.    The Debtor believes that the Court should not pre-adjudicate either the Debtor's or the IRS's applicable rights and remedies with respect to any unfiled tax returns or claims asserted by the IRS and these issues should be preserved for adjudication in the appropriate forums post-confirmation.  The Debtor believes that its neutrality language initially proposed is consistent with language approved by this Court and in other cases without pre-adjudicating the parties' substantive rights.  While the Debtor does not believe that any of the proposed Default Provisions are warranted because it has complied with applicable filing requirements, the Debtor

would agree to include Default Provision (1) as modified below.  The Debtor believes that the

language proposed to the IRS for insertion to the Confirmation Order[76] preserves each party's

respective rights and defenses and adequately protects the IRS form enforcing any statutory

claims or rights it may possess.

| | |
|---|---|
| **Proposed Resolution of Objection of United States of America**. | **Default Provision - IRS**.  Notwithstanding any other provision or term of this Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its claims, including any administrative claim (the IRS Claim): |
| **Default Provision - IRS**.  Notwithstanding any other provision or term of this Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its claims, including any administrative claim (the IRS Claim): | |
| (1) Notwithstanding any other provision in the Plan, if the Debtor, the Reorganized Debtor, or any successor in interest fails to pay when due any payment required to be made on federal taxes, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan, the Confirmation Order, or the Internal Revenue Code (26 U.S.C.), or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the IRS shall be entitled to give the Debtor, the Reorganized Debtor and/or any successor in interest and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply to the IRS: | (1) Notwithstanding any other provision in the Plan, if the Debtor, the Reorganized Debtor, or any successor in interest fails to pay when due any payment required to be made on federal taxes, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan, the Confirmation Order, or the Internal Revenue Code (26 U.S.C.), or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the IRS shall be entitled to give the Debtor, the Reorganized Debtor and/or any successor in interest and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply to the IRS: |
| (A) The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and collection as provided under the Internal Revenue Code; | (A) The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and collection as provided under the Internal Revenue Code; |
| (B) The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or in the Confirmation Order shall, with regard to the IRS only, lift or terminate without further notice or hearing by the Court, and the entire | (B) The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or in the Confirmation Order shall, with regard to the IRS only, lift or terminate without further notice or hearing by the Court, and the entire imposed liability owed to the IRS, together with any unpaid current liabilities, may |

---

[76] The Debtor discussed its concerns with IRS counsel provided it with certain neutrality language to resolve the IRS objection.  The IRS responded that it could not agree to such language and would stand on its objection and its requested default language

DOCS_SF:104855.7 36027/002

014348

imposed liability owed to the IRS, together with any unpaid current liabilities, may become due and payable immediately; and

(C) The IRS shall have the right to collect from the Debtor, the Reorganized Debtor or any successor in interest any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed; and

(3) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor, the Reorganized Debtor, and/or any successor in interest to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor, the Reorganized Debtor and/or any successor in interest to the Internal Revenue Service;

(4) Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, causes of action, rights of setoff or recoupment, rights to appeal tax assessments, or other legal or equitable defenses that the Debtor or Reorganized Debtor have under non-bankruptcy law in connection with any claim, liability or cause of action of the United States; and

(5) The term "any payment required to be made on federal taxes," as used herein above, is defined as: any payment or deposit required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used herein above, is defined as: any tax return or report required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full.

become due and payable immediately; and

(C) The IRS shall have the right to proceed to collect from the Debtor, the Reorganized Debtor or any successor in interest any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(2) If the IRS declares the Debtor, the Reorganized Debtor, or any successor in interest to be in default of the Debtor's, the Reorganized Debtor's and/or any successor in interest's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, **shall become due and payable immediately upon written demand to the Debtor, Reorganized Debtor, and/or any successor in interest**. Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States or its agency the IRS of the right to declare that the Debtor, Reorganized Debtor, and/or any successor in interest is in default.

(3) **If full payment is not made within fourteen (14) days of such demand**, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. **The IRS shall only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default the IRS shall be entitled to proceed as set out in paragraphs (A), (B), and/or (C) herein above without further notice to the Debtor, the Reorganized Debtor, or any successor in interest, or its counsel. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan**.

(4) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor, the Reorganized Debtor, and/or any successor in interest to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor, the Reorganized Debtor and/or any successor in interest to the Internal Revenue Service.

(5) The term "any payment required to be made on federal taxes," as used herein above, is defined as: any payment or deposit required by the Internal Revenue Code to be made by the Debtor from and

014349

| | |
|---|---|
| | after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used herein above, is defined as: any tax return or report required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full. |

## **CONCLUSION**

For the reasons set forth herein and in the Memorandum, the Debtor respectfully requests that the Bankruptcy Court overrule the Objections for the reasons set forth herein and confirm the Plan as requested by the Debtor.

DOCS_SF:104855.7 36027/002

014350

Dated: January 22, 2021

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717)
(*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084)
(*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992)
(*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:     jpomerantz@pszjlaw.com
            ikharasch@pszjlaw.com
            gdemo@pszjlaw.com

-and-

*/s/ Zachery Z. Annable*
HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

014351

# EXHIBIT A

014352

# Plan Objections from Dondero-Related Entities: Organizational Charts

[1] CLO Holdco, Ltd., is a wholly-owned subsidiary of the Charitable Donor Advised Fund, L.P. (the "DAF"). HCMLP has terminated its shared services agreement with the DAF. The DAF owes HCMLP past due fees and expenses.
[2] Amounts owed as of November 30, 2020.

014353





# EXHIBIT B

014354

## OBJECTION SUMMARY[1]

| Objecting Party | Objection | Response |
|---|---|---|
| U.S. Trustee | The release is overbroad and releases non-debtors in violation of Pacific Lumber | The Debtor Release is not overly broad and only releases claims owned (either directly or derivatively) by the Debtor and the Estate on behalf of the Debtor and its successors, which include the CT and LST only in their capacity as successors. No third party is implicated by the Debtor Release and Pacific Lumber is inapplicable. Section 1123(b)(3) expressly permits a debtor to settle and release its own claims. |
|  | The exculpation is overbroad and releases non-debtors in violation of Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| Internal Revenue Service | Plan does not state that the Debtor will pay IRS priority tax claims on the Effective Date. | The Plan provides that Allowed Priority Claims would be paid on the Initial Distribution Date. In response to this objection, the Plan has been amended to provide for treatment of priority claims in accordance with 1129(a)(9)(C) |
|  | The plan does not provide for statutory interest on the IRS claims under Section 511 | Plan has been amended to provide for treatment of priority claims in accordance with 1129(a)(9)(C) |
|  | The IRS asserts that the Debtor failed to file tax Form 720 returns related to its self-insured health plan for 2014, 2016, and 2017 and requests that the Plan be amended to include certain "Default Provisions" that, among other things, allow the IRS to declare defaults, demand that the "entire imposed liability" become due and payable, and the ability to collect unpaid liabilities upon 14 days' notice of demand for payment | The Debtor has provided all applicable tax forms and the proposed Default Provisions are unwarranted. The Debtor would agree, however, to modified Default Provisions.

The IRS' proposed Default Provisions graft the IRS' potential non-bankruptcy and arguably additional rights and remedies into the Plan, including the IRS' unilateral rights to declare defaults, impose successor liability, and to require payments of "entire imposed liabilities" upon 14 days' notice of demand. The Debtor does not think it is appropriate for the Plan or Confirmation Order to dictate these rights and they should be determined under applicable non bankruptcy law. |

---

[1] The following are summaries only. Parties should read the entirety of the Debtor's Reply.

DOCS_LA:335197.6 36027/002

014355

| Objecting Party | Objection | Response |
|---|---|---|
| Dallas County, City of Allen, Allen ISD, City of Richardson, and Kaufman County | Plan does not appropriately apply for treatment of postpetition and effective date interest on tax claims, Plan does not provide for continued security interest and Plan does not provide that failure to pay tax claims is a default under the plan | The Debtor is currently negotiating language with these taxing authorities to resolve the issues raised in their objection through insertion of language in the Confirmation Order in order to consensually resolve this objection. |
| Jack Yang and Brad Borud (joined by Deadman, Travers, Kaufman [D.I. 1674; 1679]) | Subordinated Claims are defined overly broad as not just claims subordinated under § 510 but also claims arising from Class A/B/C Limited Partnership interests in a way that impermissibly broadens § 510(b) | The Plan has been amended to clarify that it does not provide for categorical subordination of claims relating to partnership interests to address this objection |
| Patrick Daugherty | The Disputed Claims Reserve allows the Debtor to estimate claims for distribution, which provides for impermissible disparate treatment under § 1123(a)(4) | The Plan does not provide for disparate treatment of claims. The Plan provides for a mechanism for the Debtor or Mr. Daugherty (or any creditor) to file a motion to estimate any Disputed Claim for purposes of establishing the amount of the Disputed Claims Reserve pending the allowance or disallowance of his claim. Neither Daugherty or any other creditor is entitled to a reserve for the full amount of a disputed claim. This procedure does not constitute disparate treatment of claims under section 1123(a)(4) |
| Dugaboy Investment Trust and Get Good Investment Trust | Art. III.J allows for subordination under § 510 without the requirement for a hearing, which is impermissible | Section III.J of the Plan has been amended to clarify that subordination will occur after notice and a hearing and any order by the Bankruptcy Court. |
| | The Plan is not complete as it doesn't list final documents governing the claimant trust/litigation trust/reorg debtor, retained causes of action, executory contracts | Dugaboy's reference to documents still under negotiation with the Committee was a vestige from a prior draft. Three Plan Supplements have been filed that contain those documents. An additional Plan Supplement is being filed concurrently herewith. |
| | Plan violates 1129(a)(7) because it doesn't provide the value that would be received in a chapter 7 liquidation because: (i) Reorg Debtor has no affirmative obligation to report to holders of beneficial interests in the Claimant Trust, (ii) Claimant Trustee is only liable for fraud, willful misconduct, or gross negligence and not breach of fiduciary duty; and (iii) a chapter 7 trustee would need to get court authority to sell assets and no such requirement exists for Claimant Trustee | The Liquidation Analysis provides that creditors will receive distributions under the Plan that are not less than the value they would receive under a hypothetical distribution under chapter 7. This objection does not contest the conclusions set forth in the Liquidation Analysis.<br><br>The Plan, consistent with other plans including ones confirmed in this court, properly allows the Claimant Trustee and Reorganized Debtor to sell assets post-confirmation without the need for court approval. The standard of liability is also appropriate and consistent with confirmed chapter 11 plans. Moreover, a chapter 7 trustee would enjoy qualified immunity for its actions. |

014356

| Objecting Party | Objection | Response |
|---|---|---|
| | Exculpation provisions are overbroad as (i) they do not relate to a specific time period (just apply from Petition Date through implementation), especially when read in connection with the exculpation provision in the Claimant Trust Agreement, (ii) cover non-Debtors, and (iii) violates Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents.  The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees.  The CTA includes standard language limiting liability and is not an improper exculpation. |
| | Release provision (i) is overbroad and releases claims not related to the BK; (ii) waives future claims of the Claimant Trust | The Debtor Release is not overly broad and only releases claims owned (either directly or derivatively) by the Debtor and the Estate on behalf of the Debtor and its successors, which include the CT and the LST only as successors to the Debtor, not any claims the CT or LST might subsequently have of their own.  No third party is implicated by the Debtor Release and Pacific Lumber is inapplicable.  Section 1123(b)(3) expressly permits a debtor to settle and release its own claims. |
| | The injunction provisions in Article IX.F are overbroad and arguably violates Pacific Lumber as an improper release and In re Zale and Thru, which prevents a non-debtor injunction if it effectively discharges a no debtor | The Injunction Provisions have been modified to address these concerns.  The Injunction Provision, as modified, merely implements the Plan's discharge, release, and Exculpation Provisions by enjoining the Enjoined Parties from commencing or maintaining any actions to interfere with the implementation or consummation of the Plan.  Implementation and consummation are words used in the Code and have meanings known by practitioners and the Court.  The injunction is only applicable to the Debtor and its successors, the Reorganized Debtor, the Claimant Trust and the Litigation Sub-Trust, or against the property of the Debtor, and its successors, the Reorganized Debtor, the Claimant Trust and the Litigation Sub-Trust – none of whom are non-debtor third parties as the debtor has eliminated the Independent Directors from these provisions. |
| | The release provided to released parties does not meet the standards for a release as there is no meaningful contribution to the BK and is not necessary to protect non-debtor entities that are essentially the debtor | Section 1123(b)(3) expressly permits a debtor to settle and release its own claims.  The consideration provided by the Released Parties will be presented.  The Released Parties are only being released by the Debtor and its successors. |

014357

| Objecting Party | Objection | Response |
|---|---|---|
| | The "channeling injunction" and retention of jurisdiction is improper because it expands the BK court's jurisdiction to actions not arising under, related to, or arising in the BK. This is especially so since there is no post-effective date Reorganized Debtor | The Gatekeeper Provision is a legitimate exercise of the Court's jurisdiction, does not (as modified) implicate the Court's post-effective date jurisdiction as the Court will initially, only be determining if a claim is colorable. Furthermore, as a liquidating plan, the court has – under applicable law – jurisdiction because all acts taken by the trust are related to implementing and effectuating the Plan. Furthermore, the Gatekeeper Provision is supported by the Barton Doctrine (which requires that claims against court-appointed and court-approved fiduciaries be sanctioned by the approving or appointing court) and by the All Writs Act, which permits courts to place limits on the ability of vexatious litigants to continue to file litigation. |
| | The injunction prevents parties from enforcing the rights created by the plan post-effective date | Art. IX.F starts with "Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court. . . ." It does not prevent enforcement of rights created under the Plan |
| | The "channeling injunction" is not a proper channeling injunction under Section 524(j) and even if it were, 524(j) only applies to debtors that are eligible for a discharge under 1141 and HCMLP is not eligible for a discharge because it is a liquidation plan. | The Gatekeeper Provision has nothing to do with Section 524(j). Although the Debtor will be engaging in a long term liquidation given the nature of its assets, during that same time period the Debtor will be engaging in business to maximize such liquidation, including by continuing to manage non-debtor funds |
| James Dondero | The exculpation provision in IX.D is overbroad as it relates to non-debtors under Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| | The "channeling injunction" in Article IX.F includes post-confirmation conduct and non-debtors and is effectively a third party release prohibited under Dropbox. | The Gatekeeper Provision is a legitimate exercise of the Court's jurisdiction, does not (as modified) implicate the Court's post-effective date jurisdiction as the court will initially, only be determining if a claim is colorable. Furthermore, as a liquidating plan, the Court has – under applicable law – jurisdiction because all acts taken by the trust are related to implementing and effectuating the Plan. Furthermore, the Gatekeeper Provision is supported by the Barton Doctrine (which requires that claims against court-appointed |

4

014358

| Objecting Party | Objection | Response |
|---|---|---|
| | | and court-approved fiduciaries be sanctioned by the approving or appointing court) and by the All Writs Act, which permits courts to place limits on the ability of vexatious litigants to continue to file litigation. There is no "release" in the Gatekeeper Provision as it does not prevent claims from being brought – it merely requires that the Bankruptcy Court determine the claim is colorable before it can be brought. |
| | The "channeling injunction" limits jurisdiction to the Bankruptcy Court and ignores other courts with exclusive jurisdiction and specialized jurisdiction | The Gatekeeper Provision has been modified to eliminate the exclusive jurisdiction of the Bankruptcy Court to hear permitted claims on the merits unless it determines it has jurisdiction to do so after determining if a claim is colorable. |
| | The "channeling injunction" is impermissibly vague under FRBP 3016(c) | The Gatekeeper Provision is not vague and, to the extent FRBP 3016(c) is applicable, expressly complies with the rule in that the Gatekeeper Provision describes in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identifies the entities that would be subject to the injunction |
| | The Plan does not provide appropriate mechanisms for oversight of post-confirmation sales and would allow impermissible sales similar to that which occurred during the BK | This is the same objection filed by other Dondero Entities to prevent the post-confirmation monetization of assets. The Plan, consistent with other plans including ones confirmed in this Court, properly allows the Claimant Trustee and Reorganized Debtor to sell assets post-confirmation without the need for court approval. The standard of liability is also appropriate and consistent with confirmed chapter 11 plans. |
| | The jurisdictional provisions are overbroad and would require all claims to be heard in the BK without regard to whether they arise in connection with implementation of the plan or otherwise | The Gatekeeper Provision has been modified to eliminate the exclusive jurisdiction of the Bankruptcy Court to hear permitted claims on the merits unless it determines it has jurisdiction to do so after determining if a claim is colorable. The Bankruptcy Court has jurisdiction to determine if a claim is colorable |
| | The elimination of vacant classes on the effective date would impermissibly limited later re-allocation of claims | The elimination of the only vacant class (Class 5 (Retained Employees)) is for voting tabulation purposes only. This provision permissibly provides for the treatment of any claims that may arise or become Allowed as a Class 5 Claim post-confirmation. |
| | Art. III.J allows for subordination under § 510 without the requirement for a hearing, which is impermissible | Section III.J of the Plan has been amended to clarify that subordination will occur after notice and a hearing and any order by the Bankruptcy Court. |
| NexPoint Real Estate Partners LLC, f/k/a HCRE Partners, LLC | Art. III.J allows for subordination under § 510 without the requirement for a hearing, which is impermissible | Section III.J of the Plan has been amended to clarify that subordination will occur after notice and a hearing and any order by the Bankruptcy Court. |

Case 19-34054-sgj11 Doc 1895-2 Filed 02/24/21  Entered 02/24/21 18:28:35  Page 7 of 24

126

| Objecting Party | Objection | Response |
|---|---|---|
| | Plan allows Distribution Agent to setoff amounts owed to the Debtor against amounts owed to a creditor in violation of s. 553 and impermissibly shifts burden of proving setoff was improper to the creditor | Creditors have the right to challenge set off in an appropriate manner. The Plan has been amended to clarify this language. |
| | The "channeling injunction" improperly insulates non-debtors under s. 524(e). | The Gatekeeper Provisions do not implicate section 524(e). There is no insulation of any non-debtor. The Gatekeeper Provision simply requires the Bankruptcy Court to determine if a claim is colorable before it can be brought. |
| | The exculpation and release provision release claims not related to the BK but also the administration and implementation of the plan | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| | Period of time covered by the release and exculpation provisions impermissibly extends post-effective date. Cf. Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents. The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| NexPoint Advisors, Highland Capital Management Fund Advisors, and related funds<br><br>(joined by CLO Holdco) | Investment Advisers Act is "applicable law" that prohibits assumption/assignment of the Portfolio Management Agreements ("PMAs") under 365(c) | As this Court has ruled in Acis, and as SEC No Action Letters advise, the Investment Advisers Act does not prohibit assignment. The "actual test" applies and thus even if the PMAs were nonassignable, they would still be assumable. |
| (joined by NexPoint RE Entities [D.I. 1677] | PMAs are "personal services contracts" and cannot be assigned under 365(c) | As this Court ruled in Acis, the PMAs are not nonassignable personal services contracts. Further, the counterparties have consented, and under the "actual test" the PMAs would be assumable even if nonassignable. |

6

014360

DOCS_LA:335197.6 36027/002

| Objecting Party | Objection | Response |
|---|---|---|
| | Fifth Circuit applies the hypothetical test under Section 365(c), not the actual test | Fifth Circuit has applied the actual test under §365(e) and lower courts within the Fifth Circuit have applied the actual test to §365(c). |
| | Even if "actual" test applies, the Reorg Debtor is not the Debtor because of slimmed down staff and use of subservicers | The objectors lack standing to object.  As this Court held in Acis, services under the PMAs are delegable and the Debtor is entitled to use a servicer.  However, the Reorganized Debtor will have sufficient employees and resources to manage the CLOs post-Confirmation Date.  This is an adequate assurance issue, and the contract counterparties have consented. |
| | There is no consent to assumption under 365(c) | CLO issuers are the counterparties and they consent.  The objectors have no contract right to object to assumption. |
| | The objectors have standing because they have claims against the estate or will have large rejection claims under shared services agreements. | The Funds, Advisors and CLO Holdco are not creditors and will not be creditors.  They agreed to expungement of their claims or reduction to zero.  There will be no rejection damages because the contracts are freely terminable upon notice and are being terminated, not rejected.  Even if objectors were creditors, that would give them standing only as to whether assumption benefits the estate, not their particular interests. |
| | The objectors have standing because the plan violates 1129 because it provides for assumption of contracts in violation of law. | The objectors have no standing as creditors, they have no standing to object to assumption of contracts to which they are not parties and to which the counterparties have consented, and assumption of the PMAs does not violate any law. |
| | The objectors have standing because the plan seeks to limit their right to remove the manager | The Plan does not limit their removal rights. |
| | Debtor should take direction from the majority of the preference shareholders in the CLOs | The objectors have no contractual right to control the management of the CLOs. |
| | The injunction and release provisions are overbroad because they do not appropriately define their scope and prevent the movants from suing for future malfeasance | The Debtor Release is not overly broad and only releases claims owned (either directly or derivatively) by the Debtor and the Estate on behalf of the Debtor and its successors, which include the CT and LST only in their capacity as successors.  No third party is implicated by the Debtor Release and Pacific Lumber is inapplicable.  Section 1123(b)(3) expressly permits a debtor to settle and release its own claims.  The Injunction, as amended, is clear in scope and application, and only applies to acts to implementation and consummation of the Plan and attempts to collect the claims and interests dealt with by the Plan. |
| | The injunction prevents the objectors and the CLOs from seeking relief against the | The Injunction, as amended, is clear in scope and application, and only applies to acts to implementation and consummation of the Plan |

7

DOCS_LA:335197.6 36027/002

014361

| Objecting Party | Objection | Response |
|---|---|---|
| | debtor/reorg debtor from any present or future actionable wrongs under the servicing agreements and advisers act | and attempts to collect the claims and interests dealt with by the Plan. |
| | Injunction prevents set off or other damages under the servicing agreements and to seek legal redress | The Injunction, as amended, is clear in scope and application, and only applies to acts to implementation and consummation of the Plan and attempts to collect the claims and interests dealt with by the Plan. |
| | "Channeling Injunction" is defective with respect to post-confirmation actions and is overly broad | The Gatekeeper Provision has been modified to eliminate the exclusive jurisdiction of the Bankruptcy Court to hear permitted claims on the merits unless it determines it has jurisdiction to do so after determining if a claim is colorable.  The Bankruptcy Court has jurisdiction to determine if a claim is colorable. |
| | Plan does not disclose who will be operating the reorganized debtor and claimant trust or their comp as required under s 1123(a)(7) or insider compensation under 1129(a)(5) | The Plan Supplement discloses the identity of the Claimant Trustee, Litigation Trustee and Oversight Committee members. The Debtor discloses in the Confirmation Brief the compensation of insiders pursuant 1129(a)(5) under the Plan who will serve post-confirmation in their Confirmation Brief |
| | The Plan is not feasible because the treatment of the CLO management agreements is illegal and violates s. 365 | The Plan does not impact any party's rights under the CLO management agreements, and applicable law does not prohibit the Debtor's assumption of the CLO management agreements. |
| | The plan does not provide assurance of future performance with respect to the assumption of the CLO management agreement as required by 365(b) | The objectors lack standing to object.  As this Court held in Acis, services under the PMAs are delegable and the Debtor is entitled to use a servicer. However, the Reorganized Debtor will have sufficient employees and resources to manage the CLOs post-Confirmation Date.  This is an adequate assurance issue, and the contract counterparties have consented. |
| | Release and injunction provisions are overbroad under Pacific Lumber because they release third parties | Neither the Release nor the Injunction Provisions release non-debtor third parties. |
| | Exculpation provisions are overbroad under Thru | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents.  The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |

| Objecting Party | Objection | Response |
|---|---|---|
| | The plan divests movants from their set off rights | Creditors have the right to challenge set off in an appropriate manner. The Plan has been amended to clarify this language. |
| | The plan provides that contracts can be assumed until the Effective Date in violation of 365(d)(2) | The Plan has been amended to address this objection. |
| | Debtor is not entitled to a discharge under 1141 because it's a liquidating plan | Although the Debtor will be engaging in a long term liquidation given the nature of its assets, during that same time period the Debtor will be engaging in business to maximize such liquidation, including by continuing to manage non-debtor funds |
| | The plan violates the absolute priority rule because equity gets to keep assets while senior creditors may not be paid in full | This assertion is false. Equity Interests will not receive any property on account of the their interests pursuant to the Plan unless and until the claims of creditors are full paid, inclusive of interests, as provided in the Plan. |
| CLO Holdco Ltd. | CLO Holdco has standing to object because of its interests in the CLOs | As set forth above, CLO Holdco has no standing to assert the rights of the contracting parties to the PMAs.  It is also not a creditor, having reduced its claim to zero and having no rejection claim. Even if it was a creditor it would not have standing to object to assumption on the basis of rights held by contracting parties. |
| | Joined NPA/HCMFA objection | NPA/HCMFA objection responses are set forth above. |
| | Plan provides for impermissible "partial assumption" because it cherry picks provisions of the CLO management agreements that are going to be assumed by preventing removal of the CLO manager by the preference shares | For the reasons set forth above, CLO Holdco has no standing to assert objections to assumption held by the contracting parties, who consent to assumption. Further, the Plan does not deprive preference shareholders of removal rights. |
| | Injunction and exculpation prohibits creditors from interfering with implementation or consummation of the plan and would prevent the movants from removing the Debtor as the CLO manager | The Injunction, as amended, is clear in scope and application, and only applies to acts to implementation and consummation of the Plan and attempts to collect the claims and interests dealt with by the Plan. |
| | The plan impermissibly modifies the movants' rights under the CLO management agreements without their consent | The Plan does not modify CLO Holdco's rights under the PMAs |
| | Exculpation and indemnification provisions are third party releases in violation of applicable law under Pacific Lumber | The Plan does not contain an" indemnification provision." The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents.  The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity |

014363

| Objecting Party | Objection | Response |
|---|---|---|
| | | of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees. |
| NexBank Capital, Inc., NexBank Securities, Inc., NexBank Title, Inc., and NexBank | Art. III.J allows for subordination under § 510 without the requirement for a hearing, which is impermissible | The Debtor amended Plan section III.J of the Plan to provide for "notice and a hearing" with respect to any subordination proceeding and corresponding changes to the definition of "Subordinated Claim" and the treatment of any claims that may, potentially, be subordinated after notice and a hearing and any order by the Bankruptcy Court. |
| | Plan allows Distribution Agent to setoff amounts owed to the Debtor against amounts owed to a creditor in violation of s. 553 and impermissibly shifts burden of proving setoff was improper to the creditor | Creditors have the right to challenge set off in an appropriate manner.  The Plan has been amended to clarify this language. |
| | The exculpation and release provision release claims not related to the BK but also the administration and implementation of the plan | |
| | The exculpation and release provisions violate Pacific Lumber | The 1/9/20 Settlement Order has already exculpated the Independent Directors and their agents.  The exculpation provisions as to each Protected Party are permissible under other sections of the Bankruptcy Code not relied on in Pacific Lumber (sections 105, 1106, 1107, 1123, and 1129), other applicable law on the immunity of estate fiduciaries and under the policy reasons set forth in the Pacific Lumber case relating to committees and their members because the Protected Parties in this case are more akin to committee members and trustees.  The Release is only a release of claims owned by the Debtor and its estate and does not implicate Pacific Lumber which had nothing to do with debtor released which are permitted under section 1123(b)(3). |
| Senior Employees | The Plan violates § 1123(a)(4) because it treats the Senior Employees differently than similarly situated employees by requiring the Senior Employees to sign a Senior Employee Stipulation and reduce a portion of their claim to obtain a release. | The treatment of claims in either Class 7 or Class 8 solely consists of distributions on account of the allowed amounts of such claims, and there is no difference in treatment among members of either class in terms of the scheme provided.  The potential Debtor release of its own claims against employees or ex-employees under the Plan does not constitute "treatment" of Class 7 or Class 8 claims. |

014364

| Objecting Party | Objection | Response |
|---|---|---|
| | The Senior Employee Stipulation was not approved by the Senior Employees and contains material problems. | Whether or not the Senior Employees voluntary elect to sign the Senior Employee Stipulation does not constitute a valid basis to object to Plan confirmation. The voluntary decision to execute the Senior Employee Stipulation was at the option of the employee. Moreover, the Debtor has settled this objection with respect to Mr. Surgent and Mr. Waterhouse. |
| | The Debtor has improperly prevented the Senior Employees from making the Convenience Class Election because, as reflected in the chart prepared by the Debtor, the Senior Employees have have liquidated claims which are not in dispute. | Under applicable bankruptcy law, the Plan and the Disclosure Statement Order, the Senior Employees are not entitled to split their claims to create a liquidated claim for which Convenience Class Election would even be possible.

Each Senior Employee filed a single proof of claim and the Senior Employees have not cited any authority supporting the proposition that a claimant may split claims listed in a single proof of claim; to the contrary, courts have stated that claim splitting is impermissible when covered by a single proof of claim. Further, the Plan and Disclosure Statement Order prohibit claim splitting for voting purposes. Finally, as explicitly set forth on the ballots approved by the Disclosure Statement Order, even if a Senior Employee could split his claims in order to elect Convenience Class treatment, the Convenience Class Election only impacts *treatment*, and explicitly does not impact voting. |
| | The Plan provides that a Class 8 Creditor can make the Convenience Class Election for a liquidated claim. Since a portion of each Senior Employee's claim is liquidated, the Senior Employees have a right to make the Convenience Class Election under the Plan.

The Debtor has contradicted the Plan in how in its conversations with the Senior Employees. Each Senior Employee received two ballots (one Class 7 and one Class 8) and this confusion justifies the Senior Employees review of the Plan.

The fact that the Plan splits employee claims into PTO claims and other claims is evidence that the Plan allows Claim splitting. The | As set forth directly above, each Senior Employee would have to split his claim in order to also retain the remainder of his Class 8 claim. This is impermissible under applicable case law and the Plan.

The Debtor's statements have been consistent with the Plan. In any event, the Plan governs. The Senior Employee's receipt of two ballots was an administrative error and cannot override the express terms of the Plan and Disclosure Statement Order.

As to the PTO Claims, those were separately classified *by the Plan*. The Senior Employees seek to split claims *within the same class*. It is splitting claims within the same class that is prohibited by applicable case law and the Plan and Disclosure Statement Order. |

11

014365

| Objecting Party | Objection | Response |
|---|---|---|
| | exhibit is a representation that the Senior Employee claims have the right to a split claim because it discusses a Convenience Class claim. | |
| | The Plan identifies no basis for disparate and unfair treatment of the Senior Employees. | Debtors are not required to grant releases to anyone nor are their required to grant releases to all employees equally, especially here, where there are allegations of material misconduct against some, but not all, of the employees. |
| | The Plan appears to impermissibly grant the Debtor, the Reorganized Debtor, and the Claimant Trustee the unfettered power to "reclassify" any claim as a Subordinated Claim. | Section III.J of the Plan has been amended to provide for "notice and a hearing" with respect to any subordination proceeding and corresponding changes to the definition of "Subordinated Claim" and the treatment of any claims that may, potentially, be subordinated after notice and a hearing and any order by the Bankruptcy Court. |
| | The Plan allows the Debtor to make changes to the Plan without Court approval, including changes to the plan supplement documents. | To the contrary, Article XII of the Plan explicitly requires that modifications to the Plan be in compliance with section 1127. |

12

DOCS_LA:335197.6 36027/002

014366

014367

13

DOCS_LA:335197.6 36027/002

# EXHIBIT C

014368

On the Effective Date, the Debtor will assume the agreements set forth on Appendix [_] hereto (collectively, the "Issuer Executory Contracts") pursuant to section 365 of the Bankruptcy Code and Article V of the Plan. In full and complete satisfaction of its obligation to cure outstanding defaults under section 365(b)(1) of the Bankruptcy Code, the Debtor or, as applicable, any successor manager under the Issuer Executory Contracts (collectively, the "Portfolio Manager") will pay to the Issuers[1] a cumulative amount of $525,000 (the "Cure Amount") as follows:

- $200,000 in cash on the date that is five business days from the Effective Date, with such payment paid directly to Schulte Roth & Zabel LLP ("SRZ") in the amount of $85,714.29, Jones Walker LLP ("JW") in the amount of $72,380.95, and Maples Group ("Maples" and collectively with SRZ and JW, the "Issuers' Counsel") in the amount of $41,904.76 as reimbursement for the attorney's fees and other legal expenses incurred by the Issuers in connection with the Debtor's bankruptcy case; and

- $325,000 in four equal quarterly payments of $81,250.00 (each, a "Payment"), which amounts shall be paid to SRZ in the amount of $34,821.43, JW in the amount of $29,404.76, and Maples in the amount of $17,023.81 as additional reimbursement for the attorney's fees and other legal expenses incurred by the Issuers in connection with the Debtor's bankruptcy case (i) from any management fees actually paid to the Portfolio Manager under the Issuer Executory Contracts (the "Management Fees"), and (ii) on the date(s) Management Fees are required to be paid under the Issuer Executory Contracts (the "Payment Dates"), and such obligation shall be considered an irrevocable direction from the Debtor and this Court to the relevant CLO Trustee to pay, on each Payment Date, the Payment to Issuers' Counsel, allocated in the proportion set forth in such agreement; *provided, however,* that (x) if the Management Fees are insufficient to make any Payment in full on a Payment Date, such shortfall, in addition to any other amounts due hereunder, shall be paid out of the Management Fees owed on the following Payment Date, and (y) nothing herein shall limit either Debtor's liability to pay the amounts set forth herein, nor the recourse of the Issuers or Issuers' Counsel to the Debtor, in the event of any failure to make any Payment.

Effective as of the Effective Date, and to the maximum extent permitted by law, each Issuer on behalf of itself and each of its current and former advisors, trustees, directors, officers, managers, members, partners, employees, beneficiaries, shareholders, agents, participants, subsidiaries, parents, successors, designees, and assigns hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue, (i) the Debtor and (ii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, the Independent Directors, the CEO/CRO, and with respect to the Persons listed in this subsection (ii), such Person's Related Persons (collectively, the

---

[1] The "Issuers" are: Brentwood CLO, Ltd., Gleneagles CLO, Ltd., Greenbriar CLO, Ltd., Highland CLO 2018-1, Ltd., Highland Legacy Limited, Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Pam Capital Funding LP, Rockwall CDO II Ltd., Rockwall CDO Ltd., Southfork CLO Ltd., Stratford CLO Ltd., Westchester CLO, Ltd., Aberdeen Loan Funding, Ltd., Eastland CLO, Ltd., Grayson CLO, Ltd., Highland Credit Opportunities CDO Ltd., Jasper CLO, Ltd., Liberty Cayman Holdings, Ltd., Liberty CLO, Ltd., Red River CLO, Ltd., Valhalla CLO, Ltd.

"Debtor Released Parties"), for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including, without limitation, any claims, defenses, and affirmative defenses, whether known or unknown, including, without limitation, those which were or could have been asserted in, in connection with, or with respect to the Bankruptcy Case (collectively, the "Issuer Released Claims").

Effective as of the Effective Date, and to the maximum extent permitted by law, the Debtor hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue (i) each Issuer and (ii) Wendy Ebanks, (iii) Yun Zheng, (iv) Laura Chisholm, (v) Mora Goddard, (vi) Stacy Bodden, (vii) Suzan Merren (viii) Scott Dakers, (ix) Samit Ghosh, (x) Inderjit Singh, (xi) Ellen Christian, (xii) Andrew Dean, (xiii) Betsy Mortel, (xiv) David Hogan, (xv) Cleveland Stewart, (xvi) Rachael Rankin, (xvii) Otelia Scott, (xviii) Martin Couch, (xx) Ferona Bartley-Davis, (xxi) Charlotte Cloete, (xxii) Christina McLean, (xxiii) Karen Ellerbe, (xxiv) Gennie Kay Bigord, (xxv) Evert Brunekreef, (xxvii) Evan Charles Burtton (collectively, the "Issuer Released Parties"), for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including, without limitation, any claims, defenses, and affirmative defenses, whether known or unknown, which were or could have been asserted in, in connection with, or with respect to the Bankruptcy Case (collectively, the "Debtor Released Claims"); *provided, however,* that notwithstanding anything herein to the contrary, the release contained herein will apply to the Issuer Released Parties set forth in subsection (ii) above only with respect to Debtor Released Claims arising from or relating to the Issuer Executory Contracts.

Notwithstanding anything in this Order to the contrary, the releases set forth in paragraphs [___] hereof will not apply with respect to the duties, rights, or obligations of the Debtor or any Issuer hereunder.

# EXHIBIT SSSSSSS

014371

**From:** Gregory V. Demo
**Sent:** Friday, January 22, 2021 1:45 PM
**To:** 'Anderson, Amy'; Bain, Joseph
**Cc:** Jeff Pomerantz; Ira Kharasch; 'Jay Williams'; 'David J. Karp (david.karp@srz.com)'; Barber, Jeff; Joshua Fried
**Subject:** RE: [EXTERNAL] Re: HCM - Issuers

Amy,

We are good with your changes and will file the attached as an exhibit to our reply.  Thank you all very much.

Also, just to keep you in the loop, we are anticipating that the confirmation hearing will be adjourned a week because of the volume of paper.  We still anticipate filing everything tonight.  We will keep you updated.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Costa Mesa

---

**From:** Anderson, Amy [mailto:aanderson@joneswalker.com]
**Sent:** Friday, January 22, 2021 1:29 PM
**To:** Gregory V. Demo; Bain, Joseph
**Cc:** Jeff Pomerantz; Ira Kharasch; 'Jay Williams'; 'David J. Karp (david.karp@srz.com)'; Barber, Jeff; Joshua Fried
**Subject:** RE: [EXTERNAL] Re: HCM - Issuers

Greg,

I attach here what I expect can be a final agreed version and a redline against what you sent yesterday.  Our clients confirmed ███ should not be included.

Also, there were a few directors left off of the prior list, which I've now included, as mentioned in our call this morning.

Those are the only changes.

Joe and I are happy to get on a call if you would like to discuss any of the revisions.

Thanks,

1

014372

Amy

**Amy K. Anderson** | Partner
Jones Walker LLP
D: 713.437.1866 | M: 940.368.3589
aanderson@joneswalker.com

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Friday, January 22, 2021 9:27 AM
**To:** Anderson, Amy <aanderson@joneswalker.com>; Bain, Joseph <jbain@joneswalker.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Ira Kharasch <ikharasch@pszjlaw.com>; 'Jay Williams'
<jay.williams@srz.com>; 'David J. Karp (david.karp@srz.com)' <david.karp@srz.com>; Barber, Jeff
<jbarber@joneswalker.com>; Joshua Fried <jfried@pszjlaw.com>
**Subject:** RE: [EXTERNAL] Re: HCM - Issuers
**Importance:** High

Amy,

I spoke to my client and we're agreed that the $525,000 cure amount only applies to attorneys' fees incurred by the issuers and does not apply to other fees owed by the CLOs. We also confirmed that ▮▮▮▮ is not currently operational.

I believe that the only open item is whether we include ▮▮▮▮. 

Our filing deadline is 5:00 CT time today. We're available to jump on a phone call if necessary to make sure that this gets done today but are equally happy to do it by email.

Please let me know.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Costa Mesa

---

**From:** Gregory V. Demo
**Sent:** Thursday, January 21, 2021 12:01 PM
**To:** 'Anderson, Amy'; Bain, Joseph
**Cc:** Jeff Pomerantz; Ira Kharasch; Jay Williams; David J. Karp (david.karp@srz.com); Barber, Jeff; Joshua Fried
**Subject:** RE: [EXTERNAL] Re: HCM - Issuers

2

Amy,

I received your voice message. We'd prefer to keep the released parties limited to the enumerated list of directors. I updated that language and have attached a redline against what you sent yesterday.

We still need to reconcile the current outstanding CLO expenses but hope to have that done by this afternoon. We are also working to confirm that █████ is no longer in existence and will wait for you to come back to us on █████.

With the understanding that we need to work through the foregoing issues above before we can finalize everything, I do believe that the insert for the confirmation order is otherwise complete.

We will be back to you shortly. Please give my best to Joe.

Best,
Greg

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Fax: 212.561.7777
GDemo@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Costa Mesa

---

**From:** Anderson, Amy [mailto:aanderson@joneswalker.com]
**Sent:** Wednesday, January 20, 2021 5:54 PM
**To:** Gregory V. Demo; Bain, Joseph
**Cc:** Jeff Pomerantz; Ira Kharasch; Jay Williams; David J. Karp (david.karp@srz.com); Barber, Jeff
**Subject:** RE: [EXTERNAL] Re: HCM - Issuers

Greg,

Following up on our call yesterday afternoon, I attach here a redline and clean version of the proposed rider language. The redline is a comparison to the version circulated to this group on January 16th. Please let me know of any comments and whether it would be helpful to get on a brief call for any questions.

Thanks,

Amy

**Amy K. Anderson** | Partner
Jones Walker LLP
D: 713.437.1866 | M: 940.368.3589
aanderson@joneswalker.com

---

**From:** Gregory V. Demo <GDemo@pszjlaw.com>
**Sent:** Tuesday, January 19, 2021 12:52 PM

3

014374

**To:** Bain, Joseph <jbain@joneswalker.com>
**Cc:** Anderson, Amy <aanderson@joneswalker.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Ira Kharasch <ikharasch@pszjlaw.com>; Jay Williams <jay.williams@srz.com>; David J. Karp (david.karp@srz.com) <david.karp@srz.com>; Barber, Jeff <jbarber@joneswalker.com>
**Subject:** Re: [EXTERNAL] Re: HCM - Issuers

Thanks, Joe. Let me do some work on our side and I'll get back to you ASAP.

Gregory V. Demo
(212) 561-7730

Sent from my iPad

On Jan 19, 2021, at 12:38 PM, Bain, Joseph <jbain@joneswalker.com> wrote:

Greg:

We just spoke to Schulte and understand that certain of the CLOs have hit their administrative expense cap which has caused the lapse in the payment of fees in certain instances that are owed by the CLOs.

I understand that this is an issue that Highland should be aware of and that the information on these fees was included in the regular reporting provided by the trustees to HCM. We, unfortunately, do not have visibility to the amounts but HCM should be able to pull this information off of the trustee websites.

If more color would be helpful, Schulte and JW can jump on a call this afternoon (any time after 4 p.m. ET) to answer any questions you have.

Joe

Joseph E. Bain | Partner
Jones Walker LLP
D: 713.437.1820 | M: 646.457.8169
JBain@joneswalker.com<mailto:JBain@joneswalker.com>

From: Gregory V. Demo <GDemo@pszjlaw.com>
Sent: Monday, January 18, 2021 5:12 PM
To: Bain, Joseph <jbain@joneswalker.com>
Cc: Anderson, Amy <aanderson@joneswalker.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Ira Kharasch <ikharasch@pszjlaw.com>; Jay Williams <jay.williams@srz.com>; David J. Karp (david.karp@srz.com) <david.karp@srz.com>; Barber, Jeff <jbarber@joneswalker.com>
Subject: RE: [EXTERNAL] Re: HCM - Issuers

Thank you

Gregory V. Demo
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Fax: 212.561.7777
GDemo@pszjlaw.com<mailto:GDemo@pszjlaw.com>
www.pszjlaw.com<http://www.pszjlaw.com>

014375

Los Angeles | San Francisco | Wilmington, DE | New York | Costa Mesa


-----Original Message-----
From: Bain, Joseph [mailto:jbain@joneswalker.com]
Sent: Monday, January 18, 2021 6:11 PM
To: Gregory V. Demo
Cc: Anderson, Amy; Jeff Pomerantz; Ira Kharasch; Jay Williams; David J. Karp
(david.karp@srz.com<mailto:david.karp@srz.com>); Barber, Jeff
Subject: Re: [EXTERNAL] Re: HCM - Issuers

Greg: We are tracking this down. To be sure, our understanding is that these fees are owed by the CLOs (under their respective waterfalls).

Joseph E. Bain | Partner
D: 713.437.1820 | M: 646.457.8169
JBain@joneswalker.com<mailto:JBain@joneswalker.com>

Jones Walker LLP
811 Main St, Ste 2900
Houston, TX 77002
joneswalker.com



On Jan 18, 2021, at 7:17 AM, Gregory V. Demo <GDemo@pszjlaw.com<mailto:GDemo@pszjlaw.com>> wrote:

 Amy,

Can you tell us the total amount of the fees that are owed that aren't being covered by the Cure Amount?

Greg

Gregory V. Demo
(212) 561-7730

Sent from my iPad

On Jan 16, 2021, at 6:57 AM, Anderson, Amy
<aanderson@joneswalker.com<mailto:aanderson@joneswalker.com>> wrote:


Greg,

I am following up on our various phone calls over the last week.

As discussed, and pursuant to the agreement discussed in this email, the Issuers do not plan to object to confirmation. The Issuers continue to request that HCM seek the releases discussed in the attached agreed-to rider language. Although the Issuers do not plan to file a statement related to confirmation, the Issuers reserve the right to do so.

014376

Second, under the current, proposed Plan, the Issuers accept the proposal as evidenced in the attached draft rider language. The substance of the rider is agreed to, and I would appreciate HCM's confirmation of that point via responsive email.

As discussed on our call yesterday, the Cure Amount under this agreement is for attorney's fees incurred by the Issuers. The Cure Amount does not include various other fees that may be owed as it relates to CLOs, including amounts owed to governments, third party service providers, or others.

Please note that the Issuers reserve all rights in the event that any material modifications are made to the Plan.

Third and finally, this email confirms the Issuers' agreement to withdraw their claims (nos. 165, 168, and 169) as part of the above-detailed agreement.

Thank you,

Amy

Amy K. Anderson | Partner
D: 713.437.1866 | M: 940.368.3589
aanderson@joneswalker.com<mailto:aanderson@joneswalker.com<mailto:aanderson@joneswalker.com%3cmailto:aanderson@joneswalker.com>>

<http://www.joneswalker.com/professionals/amy-k-anderson.html<http://www.joneswalker.com/professionals/amy-k-anderson.html><http://www.joneswalker.com/professionals/amy-k-anderson.html<http://www.joneswalker.com/professionals/amy-k-anderson.html>>>
<image001.png>
<http://www.joneswalker.com/professionals/amy-k-anderson/vcard.vcf<http://www.joneswalker.com/professionals/amy-k-anderson/vcard.vcf><http://www.joneswalker.com/professionals/amy-k-anderson/vcard.vcf<http://www.joneswalker.com/professionals/amy-k-anderson/vcard.vcf>>>
<image002.png>

<image003.png>

Jones Walker LLP
811 Main St, Ste 2900
Houston, TX 77002
joneswalker.com<http://www.joneswalker.com<http://www.joneswalker.com><http://www.joneswalker.com<http://www.joneswalker.com>>>

<jw draft Highland - Insert to Confirmation Issuers Rider.docx>
<REDLINE jw draft Highland - Insert to Confirmation 2021.01.16.pdf>

6

014377

---

**CONFIDENTIALITY**
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

**NOT INTENDED AS A SUBSTITUTE FOR A WRITING**
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

---

**CONFIDENTIALITY**
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

**NOT INTENDED AS A SUBSTITUTE FOR A WRITING**
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

---

**CONFIDENTIALITY**
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

**NOT INTENDED AS A SUBSTITUTE FOR A WRITING**
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

---

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

014378

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

014379

# EXHIBIT TTTTTTT

Case 19-34054-sgj11 Doc 1895-4 Filed 02/04/21 Entered 02/04/21 13:25:35 Page 2 of 43
Case 19-34054-sgj11 Doc 248 Filed 12/... Docket #0248 Date Filed 12/13/2019
Case 3:21-cv-00538-N Document 26-54 Filed 06/09/21 Page 205 of 246 PageID 17343

**Fill in this information to identify the case:**

Debtor name **Highland Capital Management, L.P.**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF TEXAS

Case number (if known) **19-34054-SGJ**

☐ Check if this is an amended filing

## Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

**Part 1:    Income**

1.   **Gross revenue from business**

☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From **1/01/2019** to **Filing Date** | ☑ Operating a business<br>☑ Other    **Exhibit A** | **$28,431,156.97** |
| **From the beginning of the fiscal year to filing date:**<br>From **1/01/2019** to **Filing Date** | ☐ Operating a business<br>☑ Other    **Exhibit A - Other**<br>**Gain/(Loss)** | **$125,310,540.63** |
| **For prior year:**<br>From **1/01/2018** to **12/31/2018** | ☑ Operating a business<br>☑ Other    **Exhibit A** | **$50,365,069.40** |
| **For prior year:**<br>From **1/01/2018** to **12/31/2018** | ☐ Operating a business<br>☑ Other    **Exhibit A - Other**<br>**Gain/(Loss)** | **$-52,929,268.33** |
| **For year before that:**<br>From **1/01/2017** to **12/31/2017** | ☑ Operating a business<br>☑ Other    **Exhibit A** | **$67,911,079.00** |
| **For year before that:**<br>From **1/01/2017** to **12/31/2017** | ☐ Operating a business<br>☑ Other    **Exhibit A - Other**<br>**Gain/(Loss)** | **$47,701,590.21** |

Case 19-34054-sgj11 Doc 1895-4 Filed 02/04/21 Entered 02/04/21 13:25:35 Page 3 of 43
Case 19-34054-sgj11 Doc 248 Filed 12/13/19 Entered 12/13/19 23:34:15 Page 3 of 43
Case 3:21-cv-00538-N   Document 26-54   Filed 06/09/21   Page 206 of 246   PageID 17344

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |

---

2. **Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None.

| | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
|---|---|---|
| | | |

| **Part 2:** | **List Certain Transfers Made Before Filing for Bankruptcy** |
|---|---|

3. **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|---|
| 3.1. | **Exhibit B** | | **$23,255,006.86** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

---

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| | Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|---|
| 4.1. | **Exhibit C** | | **$36,608,252.91** | |

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|
| | | | |

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| | | | |

| **Part 3:** | **Legal Actions or Assignments** |
|---|---|

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

---

Debtor    **Highland Capital Management, L.P.**      Case number *(if known)* **19-34054-SGJ**

☐ None.

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | **Exhibit D** | | | ☐ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.2. | **Internal dispute resolution department within the IRS** | **IRS Appeal** | **Department of the Treasury<br>4050 Alpha Road<br>Suite 517, MC: 8000NDAL<br>Dallas, TX 75201-7849** | ☐ Pending<br>☑ On appeal<br>☐ Concluded |

**8.**   **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

---

**Part 4:   Certain Gifts and Charitable Contributions**

**9.**   List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000

☐ None

| | Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|---|
| 9.1. | **Exhibit E** | **Debtor does not track recipient of gift or contribution.** | | **$445,725.61** |
| | Recipients relationship to debtor | | | |

---

**Part 5:   Certain Losses**

**10.**   All losses from fire, theft, or other casualty within 1 year before filing this case.

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

---

**Part 6:   Certain Payments or Transfers**

**11.**   **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com       Best Case Bankruptcy

014383

Case 19-34054-sgj11 Doc 1895-4 Filed 02/04/21 Entered 02/04/21 13:25:35 Page 5 of 43
Case 19-34054-sgj11 Doc 248 Filed 12/13/19 Entered 12/13/19 22:34:15 Page 4 of 43
Case 3:21-cv-00538-N   Document 26-54   Filed 06/09/21   Page 208 of 246   PageID 17346

Debtor   **Highland Capital Management, L.P.**                     Case number *(if known)*   **19-34054-SGJ**

| | Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | **Development Specialists, Inc.**<br>**10 South LaSalle**<br>**Suite 3300**<br>**Chicago, IL 60603** | | **10/07/2019** | **$250,000.00** |
| | **Email or website address**<br>**dsiconsulting.com** | | | |
| | **Who made the payment, if not debtor?** | | | |
| 11.2. | **Pachulski Stang Ziehl &**<br>**Jones LLP**<br>**10100 Santa Monica Blvd.**<br>**13th Floor**<br>**Los Angeles, CA 90067** | | **10/02/2019** | **$500,000.00** |
| | **Email or website address**<br>**http://www.pszjlaw.com/** | | | |
| | **Who made the payment, if not debtor?** | | | |
| 11.3. | **Kurtzman Carson**<br>**Consultants LLC**<br>**Dept CH 16639**<br>**Palatine, IL 60055** | | **10/07/2019** | **$50,000.00** |
| | **Email or website address**<br>**https://www.kccllc.com/** | | | |
| | **Who made the payment, if not debtor?** | | | |

12. **Self-settled trusts of which the debtor is a beneficiary**
    List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
    Do not include transfers already listed on this statement.

☑ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

13. **Transfers not already listed on this statement**
    List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☐ None.

**014384**

Debtor   **Highland Capital Management, L.P.**                                 Case number *(if known)*   **19-34054-SGJ**

| | Who received transfer?<br>Address | Description of property transferred or<br>payments received or debts paid in exchange | Date transfer<br>was made | Total amount or<br>value |
|---|---|---|---|---|
| 13.1. | **Highland Select Equity Fund,<br>L.P.**<br>**300 Crescent Ct.**<br>**Dallas, TX 75201** | **Transfer of 888,731 shares of public<br>security in exchange for LP interest.** | **12/26/2018** | **$19,632,067.79** |
| | Relationship to debtor<br>**Fund managed by the debtor.** | | | |
| 13.2. | **Highland Select Equity Fund,<br>L.P.**<br>**300 Crescent Ct.**<br>**Dallas, TX 75201** | **Transfer of 214,000 shares of public<br>security in exchange for LP interest.** | **3/12/2018** | **$6,385,760.00** |
| | Relationship to debtor<br>**Fund managed by the debtor** | | | |
| 13.3. | **Highland Select Equity Fund,<br>L.P.**<br>**300 Crescent Ct.**<br>**Suite 700**<br>**Dallas, TX 75201** | **Transfer of 250,000 shares of public<br>security for LP interest** | **7/23/2019** | **$10,297,500.00** |
| | Relationship to debtor<br>**Fund managed by the debtor** | | | |

| **Part 7:** | Previous Locations |
|---|---|

**14. Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | Dates of occupancy<br>From-To |
|---|---|
| 14.1. | **Parkway Bent Tree**<br>**17130 Dallas Parkway**<br>**Suite 230**<br>**Dallas, TX 75248** | **10/16/2016 – 8/30/2018** |
| 14.2. | **2200 Ross Avenue**<br>**Suite 4700E**<br>**Storage Site**<br>**Dallas, TX 75201** | **10/16/2016 – 12/31/2018** |

| **Part 8:** | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services<br>the debtor provides | If debtor provides meals<br>and housing, number of<br>patients in debtor's care |
|---|---|---|

014385

Debtor    **Highland Capital Management, L.P.**                              Case number *(if known)*  **19-34054-SGJ**

---

| Part 9: | Personally Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
☑ Yes. State the nature of the information collected and retained.

> **Debtor has information including SS#, tax ID, mailing address, email address, and limited KYC for fund investors.**

Does the debtor have a privacy policy about that information?
☐ No
☑ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.
☑ Yes. Does the debtor serve as plan administrator?

> ☐ No Go to Part 10.
> ☑ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| **Highland 401(K) Plan** | EIN:  **75-2716725** |

Has the plan been terminated?
☑ No
☐ Yes

> ☐ No Go to Part 10.
> ☑ Yes. Fill in below:

| Name of plan | Employer identification number of the plan |
|---|---|
| **Highland Capital Management, L.P. Retirement Plan and Trust (Defined Benefit Plan)** | EIN:  **75-2716725** |

Has the plan been terminated?
☑ No
☐ Yes

---

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

**18. Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

**19. Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

**20. Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                      Best Case Bankruptcy

014386

Debtor   **Highland Capital Management, L.P.**   Case number *(if known)*   **19-34054-SGJ**

☐ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|
| **Iron Mountain**<br>**PO BOX 915004**<br>**Dallas, TX 75391** | **Employee has login access to request documents.** | **Firm-wide documents sent off-site to retain documents per the firm's retention policy.** | ☐ No<br>☑ Yes |
| **Natural Disasters Site**<br>**900 Venture Dr.**<br>**Allen, TX 75013** | **Highland Capital Management IT Department** | **Primary Data Center - Storage** | ☐ No<br>☑ Yes |
| **Natural Disasters Site**<br>**3010 Waterview Parkway**<br>**Richardson, TX 75080** | **Highland Capital Management IT Department** | **Natural Disasters Site - Storage** | ☐ No<br>☑ Yes |

---

**Part 11:**   **Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐ None

| Owner's name and address | Location of the property | Describe the property | Value |
|---|---|---|---|
| **James Dondero** | **300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | Artwork | Unknown |

---

**Part 12:**   **Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No.
☐ Yes. Provide details below.

| Case title<br>Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* **19-34054-SGJ** |
|---|---|---|

☑ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case.
Include this information even if already listed in the Schedules.

☐ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| 25.1.    **Exhibit F** | | **EIN:**<br><br>**From-To** |

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Date of service<br>From-To |
|---|---|
| 26a.1.    **Frank Waterhouse**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **10/23/06 - Current** |
| 26a.2.    **David Klos**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **03/30/09 - Current** |
| 26a.3.    **Kristin Hendrix**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **12/16/04 - Current** |
| 26a.4.    **Sean Fox**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **06/25/13 - Current** |
| 26a.5.    **Drew Wilson**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **02/06/12 - 09/14/18** |
| 26a.6.    **Hayley Eliason**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **11/26/18 - Current** |
| 26a.7.    **Blair Roeber**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **09/01/15 - Current** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                                                                                Best Case Bankruptcy

014388

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* | **19-34054-SGJ** |

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26b.1. | **PricewaterhouseCoopers LLP**<br>2121 N Pearl St<br>Dallas, TX 75201 | **2003 - Current** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1. | **Boyd Gosserand**<br>300 Crescent Ct.<br>St 700<br>Dallas, TX 75201 | |
| 26c.2. | **Deloitte - Tax**<br>PO Box 844736<br>Dallas, TX 75284 | |
| 26c.3. | **Centroid -Accounting Software Consultant**<br>6860 Dallas Pkwy Suite 560<br>Dallas, TX 75204 | |
| 26c.4. | **Oracle - Accounting Software**<br>PO Box 203448<br>Dallas, TX 75320 | |
| 26c.5. | **Wolters Kluwer - Tax**<br>PO Box 71882<br>Chicago, IL 60694 | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address | |
|---|---|
| 26d.1. | **AgeeFisherBarrett, LLC**<br>750 Hammond Dr BLDG 17<br>Atlanta, GA 30328 | |
| 26d.2. | **Bowman Law LLC**<br>840 Tom Wheeler Lane<br>Mc Ewen, TN 37101 | |
| 26d.3. | **CBIZ Valuation Group, Inc.**<br>3030 LBJ Freeway, Ste 1650<br>Dallas, TX 75234 | |
| 26d.4. | **Cole Schotz**<br>Court Plaza North<br>25 Main Street, PO Box 800<br>Hackensack, NJ 07602 | |
| 26d.5. | **Colorado FSC**<br>188 Inverness Drive West<br>Ste. 100<br>Centennial, CO 80112 | |

Debtor   **Highland Capital Management, L.P.**     Case number *(if known)* **19-34054-SGJ**

| Name and address |
|---|

| 26d.6. | **Concordeis**<br>**1120 East Long Lake Road**<br>**Ste 207**<br>**Troy, MI 48085** |
|---|---|
| 26d.7. | **Courtland T Group**<br>**PO Box 11929**<br>**Newport Beach, CA 92658** |
| 26d.8. | **Crown Capital Securities**<br>**725 Town & Country Rd**<br>**Ste 530**<br>**Orange, CA 92868** |
| 26d.9. | **Deloitte Tax LLP**<br>**PO Box 844736**<br>**Dallas, TX 75284** |
| 26d.10. | **DFPG Investments, Inc.**<br>**9017 S. Riverside Dr.**<br>**Ste 210**<br>**Sandy, UT 84070** |
| 26d.11. | **Discipline Advisors**<br>**14135 G-100 Midway Rd.**<br>**Dallas, TX 75244** |
| 26d.12. | **Development Specialists, Inc.**<br>**10 S. LaSalle St.**<br>**Chicago, IL 60603** |
| 26d.13. | **Emerson Equity**<br>**155 Bovet Rd. #725**<br>**San Mateo, CA 94402** |
| 26d.14. | **Frontier Bank**<br>**5100 S I-35 Service Rd.**<br>**Oklahoma City, OK 73129** |
| 26d.15. | **Grant Thornton LLP**<br>**33570 Treasury Center**<br>**Chicago, IL 60694** |
| 26d.16. | **Great Southern Bank**<br>**8201 Preston Road**<br>**Suite 305**<br>**Dallas, TX 75225** |
| 26d.17. | **Key Bank**<br>**ATTN: KREC Loan Services**<br>**4910 Tiedman Road**<br>**3rd Floor**<br>**Cleveland, OH 44144** |
| 26d.18. | **KPMG**<br>**3 Chesnut Ridge Rd**<br>**Montvale, NJ 07645** |
| 26d.19. | **Maples & Calder**<br>**Ugland House PO Box 309**<br>**S. Church Street George Town**<br>**Grand Cayman, Cayman Island** |

014390

Debtor **Highland Capital Management, L.P.**      Case number *(if known)* **19-34054-SGJ**

| Name and address |
|---|
| 26d.20.    **Payne and Smith**<br>5952 Royal Lane<br>Suite 158<br>Dallas, TX 75230 |
| 26d.21.    **PWC**<br>PO Box 952282<br>Dallas, TX 75395 |
| 26d.22.    **Squire Patton Boggs**<br>PO Box 643051<br>Cincinnati, OH 45264 |
| 26d.23.    **WC Capital Partners** |
| 26d.24.    **Western International Securities, Inc.**<br>70 S. Lake Ave<br>Ste 700<br>Pasadena, CA 91101 |
| 26d.25.    **Jean Francois Lemay**<br>52 Harold Street<br>Etobicoke M8Z 3R3 |

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28.** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Strand Advisors, Inc. | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | General Partner | 0.2508% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| The Dugaboy Investment Trust | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | Voting Limited Partner | 0.1866% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Mark Okada | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | Voting Limited Partner | 0.0487% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Mark and Pamela Okada Family Trust | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | Voting Limited Partner | 0.0098% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Mark and Pamela Okada Family Trust - #2 | 300 Crescent Ct, Ste 700<br>Dallas, TX 75201 | Voting Limited Partner | 0.0042% |

| Debtor | Highland Capital Management, L.P. | | Case number *(if known)* | 19-34054-SGJ |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Hunter Mountain Investment Trust | 1100 N Market St Wilmington, DE 19890 | Non-voting Limited Partner | 99.50% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| James Dondero | 300 Crescent Ct, Ste 700 Dallas, TX 75201 | Sole Shareholder of General Partner | 100% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| James Dondero | 300 Crescent Ct, Ste 700 Dallas, TX 75201 | President of General Partner | 100% of the General Partner |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Scott Ellington | 300 Crescent Ct, Ste 700 Dallas, TX 75201 | Secretary of General Partner | 0.00% |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Frank Waterhouse | 300 Crescent Ct, Ste 700 Dallas, TX 75201 | Treasurer of General Partner | 0.00% |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| Mark Okada | 300 Crescent Ct, Ste 700 Dallas, TX 75201 | Executive Vice President | Since inception to 9/30/2019 |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| Trey Parker | 300 Crescent Ct, Ste 700 Dallas, TX 75201 | Assistant Secretary | 8/21/2015 - 4/15/2019 |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | Exhibit G | 8,722,414.86 | | |
| | Relationship to debtor | | | |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

014392

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* **19-34054-SGJ** |

---

☑ No
☐ Yes. Identify below.

**Name of the parent corporation** **Employer Identification number of the parent corporation**

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

**Name of the pension fund** **Employer Identification number of the parent corporation**

| **Part 14:** | **Signature and Declaration** |

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___**December 13, 2019**___

_____ Bradley Sharp
Signature of individual signing on behalf of the debtor Printed name

Position or relationship to debtor ___Chief Restructuring Officer___

**Are additional pages to** *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* **(Official Form 207) attached?**
☐ No
☑ Yes

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

014393

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit A - SOFA 1**

| Revenue Account | | Year 2019 [1] | | Year 2018 | | Year 2017 |
|---|---|---|---|---|---|---|
| **Operating Revenue** | | | | | | |
| Management fees | $ | 18,776,701.38 | $ | 35,264,426.88 | $ | 37,098,010.50 |
| Shared services fees | | 6,002,769.24 | | 9,187,200.55 | | 9,445,221.98 |
| Incentive fees | | 150,925.36 | | 18,465.92 | | 10,042,499.76 |
| Interest and Investment Income | | 2,625,221.26 | | 4,857,157.03 | | 4,478,946.34 |
| Miscellaneous Income | | 875,539.73 | | 1,037,819.02 | | 6,846,400.42 |
| **Total Operating Revenue** | $ | **28,431,156.97** | $ | **50,365,069.40** | $ | **67,911,079.00** |
| | | | | | | |
| **Other Gain/(Loss)** | | | | | | |
| Interest income | $ | 5,765,215.32 | $ | 7,503,164.74 | $ | 7,049,038.53 |
| Other income/expense | | 838,191.46 | | 658,514.02 | | 3,723,833.60 |
| Net realized gains on sales of investment transactions | | 3,959,534.93 | | 13,396,884.40 | | 6,494,555.20 |
| Net change in unrealized gains/(losses) of investments | | (6,692,741.56) | | (56,529,224.39) | | 27,322,977.50 |
| Net earnings/(losses) from equity method investees | | 121,440,340.48 | | (17,958,607.10) | | 3,111,185.38 |
| **Total Other Gain/(Loss)** | $ | **125,310,540.63** | $ | **(52,929,268.33)** | $ | **47,701,590.21** |

*[1] Date ranges from 12/31/2018 to end of business 10/15/2019.*

Case 19-34054-sgj11 Doc 1895-4 Filed 02/04/21 Entered 02/04/21 12:25:35 Page 16 of 43
Case 19-34054-sgj11 Doc 2401 Filed 02/09/21 Entered 02/09/21 22:34:25 Page 219 of
Case 3:21-cv-00538-N Document 26-54 Filed 06/09/21 Page 219 of 246 PageID 17357

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - SOFA 3 [1]**

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| Wilmer Cutler Pickering Hale and Dorr LLP | PO Box 7247-8760  Philadelphia PA 19170-8760 | 7/18/2019 | $ 20,275.50 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 7/18/2019 | 1,285.16 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court Level G1, L8#102 Dallas TX 75201 | 7/18/2019 | 990.00 | Professional Services |
| AT&T MOBILITY | PO BOX 6463  CAROL STREAM IL 60197-6463 | 7/19/2019 | 8,789.14 | Professional Services |
| Highland Capital Management Korea Limited | (Seoul Finance Center, Taepyeongro-1-ga) 21F, 136, Sejong-daero, Jung-gu, Seoul, Korea | 7/19/2019 | 630,000.00 | Intercompany Funding |
| American Airlines | 4255 Amon Carter Blvd MD 4106 Fort Worth TX 76155 | 7/22/2019 | 30,000.00 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 7/22/2019 | 28,122.16 | Intercompany Funding |
| Meister Seelig & Fein LLP | 125 Park Avenue 7th Floor New York NY 10017 | 7/22/2019 | 24,228.30 | Professional Services |
| Flagship Cruises & Events | PO Box 120751  San Diego CA 92112 | 7/22/2019 | 16,103.26 | Suppliers/Vendors |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 7/23/2019 | 146,190.02 | Employee Benefits |
| Abrams & Bayliss LLP | 20 Montchanin Road, Suite 200  Wilmington DE 19807 | 7/24/2019 | 53,237.45 | Professional Services |
| Pricewaterhouse Coopers, LLP | 8 Cross St. #17-00 PWC Singapore Building Singapore  048424 | 7/24/2019 | 14,461.66 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 7/25/2019 | 36,084.06 | Professional Services |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 7/25/2019 | 6,754.00 | Professional Services |
| Reid Collins & Tsai LLP | 4301 Westbank Drive Building B Suite 230 Austin TX 78746 | 7/30/2019 | 82,831.45 | Professional Services |
| Paxstone Capital LLP | 483 Green Lanes, London, Greater London, N13 4BS | 7/30/2019 | 46,063.81 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 7/31/2019 | 41,053.47 | Employee Benefits |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 628,000.00 | Intercompany Funding |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 7/31/2019 | 11,000.00 | Professional Services |
| Professional Speaker | Koa Kai, LLC PO Box 232307 Leucadia CA 92023 | 7/31/2019 | 15,000.00 | Suppliers/Vendors |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 8/1/2019 | 500,000.00 | Investing |
| Consultant | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/1/2019 | 39,586.07 | Professional Services |
| Crescent TC Investors LP | 200 Crescent Ct Suite 250 Dallas, TX 75201 | 8/1/2019 | 155,361.38 | Rent Payment |
| Brasilinvest Empreendimentos e Participac?es S/A | Brazil | 8/1/2019 | 10,000.00 | Intercompany Funding |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 8/1/2019 | 68,002.70 | Secured Loan Payment |
| Massand Capital, LLC | 8140 Walnut Hill Lane, Suite 310 Dallas, TX 75231 | 8/1/2019 | 54,979.21 | Professional Services |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 8/2/2019 | 11,959.71 | Investing |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 8/2/2019 | 252,041.98 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 8/2/2019 | 259.05 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/2/2019 | 86,126.71 | Employee Benefits |
| Abrams & Bayliss LLP | 20 Montchanin Road, Suite 200  Wilmington DE 19807 | 8/7/2019 | 17,133.03 | Professional Services |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/7/2019 | 441,000.00 | Intercompany Funding |
| Status Labs.com | 151 South 1st Suite 100 Austin TX 78704 | 8/7/2019 | 9,500.00 | Professional Services |
| PetroCap Partners III, L.P. | 3333 Lee Parkway Suite 750 Dallas TX 75219 | 8/7/2019 | 510,350.41 | Investing |
| HIGHLAND CAPITAL MANAGEMENT, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/8/2019 | 115,843.80 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 8/8/2019 | 3,573.58 | Professional Services |
| Flexential Colorado Corp. | PO Box 732368  Dallas TX 75373-2368 | 8/8/2019 | 12,056.49 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 8/8/2019 | 3,267.49 | Suppliers/Vendors |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/9/2019 | 157,850.27 | Employee Benefits |
| Liberty Life Assurance Company of Boston - Group Benefits | PO Box 2658  Carol Stream IL 60132-2658 | 8/9/2019 | 5,283.26 | Employee Benefits |
| ICBI | London | 8/13/2019 | 12,420.78 | Professional Services |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/13/2019 | 155,000.00 | Intercompany Funding |
| Connolly Gallagher LLP | 1201 North Market Street 20th Floor Wilmington DE 19801 | 8/13/2019 | 18,295.70 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 8/14/2019 | 41,300.58 | Employee Benefits |
| CBIZ Valuation Group, Inc. | 3030 LBJ Freeway, Ste 1650  Dallas TX 75234 | 8/14/2019 | 15,000.00 | Professional Services |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 8/14/2019 | 5,357.00 | Professional Services |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 8/14/2019 | 174,256.34 | Professional Services |
| Intex Solutions, Inc. | Accounts Receivable 110 A St Needham MA 02494-2807 | 8/15/2019 | 35,200.00 | Professional Services |
| AT&T | PO Box 9005  Carol Stream IL 60197-9005 | 8/15/2019 | 927.16 | Professional Services |
| ABM | PO Box 419860  Boston MA 02241-9860 | 8/15/2019 | 5,884.76 | Suppliers/Vendors |
| LinkedIn Corporation | 62228 Collections Center Drive  Chicago IL 60693-0622 | 8/15/2019 | 19,719.93 | Professional Services |
| PetroCap Partners II, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 1,244,586.77 | Investing |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 8/15/2019 | 55,601.49 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 8/15/2019 | 137,396.00 | Professional Services |
| MacroMavens, LLC | 180 W. 20th Street Suite 1700 New York NY 10011 | 8/15/2019 | 18,816.84 | Professional Services |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 8/15/2019 | 13,823.98 | Suppliers/Vendors |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 8/15/2019 | 1,420.63 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 8/16/2019 | 36,135.64 | Intercompany Funding |
| ROWLETT HILL, LLP | 25 Highland Park Village, Suite 100-448  Dallas TX 75205 | 8/16/2019 | 30,187.50 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 8/16/2019 | 634.00 | Suppliers/Vendors |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 8/16/2019 | 6,750.00 | Professional Services |
| BCA Research Inc | 1002 Sherbrooke St. W Suite 1600 Montreal Quebec H3A 3L6 | 8/16/2019 | 19,996.94 | Professional Services |
| Willis of Texas, Inc. | PO Box 731739  Dallas TX 75373-1739 | 8/16/2019 | 5,754.18 | Insurance |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/16/2019 | 89,965.15 | Employee Benefits |
| Thomson West | PO Box 6292  Carol Stream IL 60197-6292 | 8/22/2019 | 21,339.33 | Suppliers/Vendors |
| Duff & Phelps, LLC | DUFF & PHELPS, LLC 12595 Collection Center Drive Chicago IL 60693 | 8/23/2019 | 100,000.00 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 8/23/2019 | 50,934.56 | Intercompany Funding |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 8/23/2019 | 97.96 | Suppliers/Vendors |
| Concur Technologies, Inc. | 62157 Collections Center Drive  Chicago IL 60693 | 8/23/2019 | 4,104.85 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/23/2019 | 91,020.22 | Employee Benefits |
| Thomson West | PO Box 6292  Carol Stream IL 60197-6292 | 8/23/2019 | 3,153.32 | Suppliers/Vendors |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 8/23/2019 | 2,150.47 | Suppliers/Vendors |
| Highland Capital Management New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/26/2019 | 150,000.00 | Intercompany Funding |
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 8/26/2019 | 8,657.28 | Professional Services |

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit B - SOFA 3 [1]

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 8/26/2019 | 9,065.13 | Professional Services |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/27/2019 | 300,000.00 | Intercompany Funding |
| Acis Capital Management | Attn: Rakhee V. Patel, Winstead PC 500 Winstead Building Dallas TX 75201 | 8/27/2019 | 12,249.65 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 8/27/2019 | 2,608.49 | Suppliers/Vendors |
| Greenwood Office Outfitters | 2951 Suffolk Drive Suite 640 Fort Worth TX 76133-1149 | 8/28/2019 | 12,877.82 | Suppliers/Vendors |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 8/29/2019 | 95,443.51 | Employee Benefits |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/29/2019 | 118,192.57 | Employee Benefits |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 75,000.00 | Intercompany Funding |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 55,000.00 | Intercompany Funding |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 8/29/2019 | 697.89 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court Level G1, L8#102 Dallas TX 75201 | 8/29/2019 | 14,857.95 | Professional Services |
| Consultant | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 111,212.19 | Professional Services |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 8/30/2019 | 11,000.00 | Professional Services |
| Brasilinvest Empreendimentos e Participac?es S/A | Brazil | 9/3/2019 | 10,000.00 | Intercompany Funding |
| Crescent TC Investors LP | PO Box 841772  Dallas TX 75284-1772 | 9/3/2019 | 156,958.51 | Rent Payment |
| AT&T | PO Box 9005  Carol Stream IL 60197-9005 | 9/3/2019 | 5,690.12 | Professional Services |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 9/3/2019 | 404,238.30 | Secured Loan Payment |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/3/2019 | 259.77 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/3/2019 | 295.76 | Professional Services |
| Willis of Texas, Inc. | Dallas/Ft. Worth Division PO Box 730310 Dallas TX 75373-0310 | 9/3/2019 | 21,133.38 | Insurance |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 9/4/2019 | 500,000.00 | Investing |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/4/2019 | 500,000.00 | Intercompany Funding |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 9/4/2019 | 6,451.50 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 9/5/2019 | 18,042.03 | Professional Services |
| HIGHLAND CAPITAL MANAGEMENT, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/5/2019 | 113,788.36 | Employee Benefits |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 9/5/2019 | 11,286.83 | Investing |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/5/2019 | 858,220.29 | Employee Benefits |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/5/2019 | 854,278.60 | Employee Benefits |
| Dow Jones & Company, Inc. | WALL ST JRNL OR BARRONS PO Box 4137 New York NY 10261-4137 | 9/5/2019 | 16,621.23 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 9/5/2019 | 3,374.19 | Suppliers/Vendors |
| Intex Solutions, Inc. | Accounts Receivable 110 A St Needham MA 02494-2807 | 9/5/2019 | 35,200.00 | Professional Services |
| Las Vegas Flamingo Holdco, LLC | Collections Account  TEXAS | 9/5/2019 | 46,536.83 | Intercompany Funding |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 9/5/2019 | 15,518.67 | Suppliers/Vendors |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/6/2019 | 3,573.58 | Professional Services |
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 9/9/2019 | 9,138.32 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/9/2019 | 142,884.07 | Employee Benefits |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/11/2019 | 40,000.00 | Intercompany Funding |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/12/2019 | 37,839.05 | Employee Benefits |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/12/2019 | 59,111.49 | Employee Benefits |
| Loews Coronado Bay Resort | 4000 Coronado Bay Road  Coronado CA 92118 | 9/12/2019 | 77,340.18 | Suppliers/Vendors |
| Harbor Yacht Clubs, LLC | 1880 Harbor Island Drive  San Diego CA 92101 | 9/12/2019 | 6,440.00 | Suppliers/Vendors |
| NYSE MARKET, INC | Box #223695  Pittsburgh PA 15251-2695 | 9/13/2019 | 8,857.74 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 9/13/2019 | 35,221.80 | Intercompany Funding |
| Markit North America Inc. | 620 8th Ave 35th floor New York NY 10018 | 9/13/2019 | 91,676.00 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 9/13/2019 | 7,387.23 | Suppliers/Vendors |
| BDO USA, LLP | 700 North Pearl Suite 2000 Dallas TX 75201 | 9/13/2019 | 8,700.00 | Professional Services |
| ABM | PO Box 419860  Boston MA 02241-9860 | 9/13/2019 | 5,884.76 | Suppliers/Vendors |
| Concur Technologies, Inc. | 62157 Collections Center Drive  Chicago IL 60693 | 9/13/2019 | 8,187.05 | Professional Services |
| Willis of Texas, Inc. | PO Box 731739  Dallas TX 75373-1739 | 9/13/2019 | 5,754.18 | Insurance |
| Reorg Research, Inc. | 1140 Broadway Ste 201 New York NY 10001 | 9/13/2019 | 93,123.35 | Professional Services |
| Sage Search Partners | 3811 Turtle Creek Blvd Suite 850 Dallas TX 75219 | 9/13/2019 | 20,000.00 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/16/2019 | 927.16 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 9/16/2019 | 200,000.00 | Professional Services |
| Lynn Pinker Cox & Hurst, L.L.P. | 2100 Ross Ave Suite 2700 Dallas TX 75201 | 9/17/2019 | 185,576.00 | Professional Services |
| Flexential Colorado Corp. | PO Box 732368  Dallas TX 75373-2368 | 9/17/2019 | 12,056.49 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 9/17/2019 | 327.61 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/17/2019 | 15,210.80 | Professional Services |
| AT&T MOBILITY | PO Box 6463  CAROL STREAM IL 60197-6463 | 9/19/2019 | 1,769.17 | Professional Services |
| ROWLETT HILL, LLP | 25 HIGHLAND PARK VILLAGE STE 100-448 DALLAS TX 75205 | 9/19/2019 | 23,718.75 | Professional Services |
| Affiliate Loan | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/19/2019 | 500,000.00 | Affiliate Loan |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 9/19/2019 | 185,063.83 | Professional Services |
| Greyline Partners, LLC | P.O. Box 733976 Dallas TX 75373-3976 | 9/19/2019 | 11,250.00 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/20/2019 | 77,274.56 | Employee Benefits |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/20/2019 | 67,658.40 | Employee Benefits |
| Affiliate Loan | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/23/2019 | 1,000,000.00 | Affiliate Loan |
| Attia Medical, PC | 5820 Oberlin Dr. Suite 205  San Diego CA 92121 | 9/23/2019 | 12,500.00 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 9/23/2019 | 200,000.00 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 9/24/2019 | 3,059.50 | Suppliers/Vendors |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/25/2019 | 300,000.00 | Intercompany Funding |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 9/25/2019 | 8,109.75 | Professional Services |
| Cole Schotz | Court Plaza North 25 Main Street Hackensack NJ 07602-0800 | 9/25/2019 | 100,000.00 | Professional Services |
| Affiliate Loan | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/25/2019 | 900,000.00 | Affiliate Loan |
| S&P Global Market Intelligence | 33356 Collection Center Drive  Chicago IL 60693-0333 | 9/25/2019 | 368,894.61 | Professional Services |

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit B - SOFA 3 [1]

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 9/25/2019 | 1,325.29 | Professional Services |
| Harbor Yacht Clubs, LLC | 1880 Harbor Island Drive  San Diego CA 92101 | 9/25/2019 | 538.75 | Suppliers/Vendors |
| ICE Data Pricing & Reference Data, LLC | PO Box 98616  Chicago IL 60693 | 9/25/2019 | 8,819.61 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/26/2019 | 35,354.55 | Employee Benefits |
| Duff & Phelps, LLC | 2397 Paysphere Circle  Chicago IL 60674 | 9/30/2019 | 100,000.00 | Professional Services |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 200,000.00 | Intercompany Funding |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 9/30/2019 | 98,707.96 | Secured Loan Payment |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 9/30/2019 | 11,000.00 | Professional Services |
| Professional Speaker | Koa Kai, LLC PO Box 232307 Leucadia CA 92023 | 9/30/2019 | 15,000.00 | Suppliers/Vendors |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 105,000.00 | Intercompany Funding |
| Attia Medical, PC | 5820 Oberlin Dr. Suite 205  San Diego CA 92121 | 9/30/2019 | 12,500.00 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 9/30/2019 | 200,000.00 | Professional Services |
| AT&T MOBILITY | PO BOX 6463  CAROL STREAM IL 60197-6463 | 10/1/2019 | - | Professional Services |
| Employee | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/1/2019 | 13,059.43 | Bonus |
| Crescent TC Investors LP | 200 Crescent Ct Suite 250 Dallas TX 75201 | 10/1/2019 | 192,588.09 | Rent Payment |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 10/1/2019 | 128,793.00 | Secured Loan Payment |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 10/2/2019 | 113,095.54 | Professional Services |
| Consultant | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/2/2019 | 28,821.81 | Professional Services |
| Pachulski Stang Ziehl & Jones LLP | 10100 Santa Monica Blvd. 13th Floor Los Angeles CA 90067 | 10/2/2019 | 500,000.00 | Professional Services |
| HIGHLAND CAPITAL MANAGEMENT, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/3/2019 | 114,381.18 | Employee Benefits |
| OKADA INSURANCE RABBI TRUST | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/3/2019 | 14,875.00 | Insurance |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/3/2019 | 309.51 | Professional Services |
| Employee | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 113,104.52 | Employee Reimbursement |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 10/4/2019 | 18,042.03 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 10/4/2019 | 18,042.03 | Professional Services |
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 10/4/2019 | 7,710.33 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 10/4/2019 | 23,277.86 | Suppliers/Vendors |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 10/4/2019 | 23,788.47 | Suppliers/Vendors |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 500,000.00 | Intercompany Funding |
| AT&T | PO Box 9005  Carol Stream IL 60197-9005 | 10/4/2019 | 2,845.06 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/4/2019 | 3,573.58 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/4/2019 | 146.78 | Professional Services |
| Willis of Texas, Inc. | Dallas/Ft. Worth Division PO Box 730310 Dallas TX 75373-0310 | 10/4/2019 | 5,754.18 | Insurance |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 10/4/2019 | 109,241.27 | Employee Benefits |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/4/2019 | 55,667.91 | Professional Services |
| Ipreo Data Inc. | 421 Fayetteville Street Suite 900 Raleigh NC 27601 | 10/4/2019 | 9,500.00 | Professional Services |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 10/4/2019 | 182,790.68 | Professional Services |
| Hedgeye Risk Mgmt, LLC | 1 High Ridge Park 3rd Floor Stamford CT 06905 | 10/4/2019 | 25,265.10 | Professional Services |
| Spin-Off Advisors, LLC | 1327 W. Washington Blvd Ste 4-G Chicago IL 60607 | 10/4/2019 | 15,000.00 | Professional Services |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 10/4/2019 | 14,343.81 | Suppliers/Vendors |
| Flexential Colorado Corp. | PO Box 732368  Dallas TX 75373-2368 | 10/4/2019 | 24,031.79 | Professional Services |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 75,000.00 | Intercompany Funding |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 10/4/2019 | 200,000.00 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 10/7/2019 | 18,042.03 | Professional Services |
| Pricewaterhouse Coopers, LLP | PO BOX 952282  DALLAS TX 75395-2282 | 10/7/2019 | 24,000.00 | Professional Services |
| LAFFER ASSOCIATES | 103 Murphy Court  NASHVILLE TN 37203 | 10/7/2019 | 28,188.37 | Professional Services |
| MARKIT WSO CORPORATION | Three Lincoln Centre 5430 LBJ Frwy; STe 800 DALLAS TX 75240 | 10/7/2019 | 27,213.92 | Professional Services |
| Strategas Securities LLC | 52 Vanderbilt Ave 8th Fl New York NY 10017 | 10/7/2019 | 27,195.87 | Professional Services |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 10/7/2019 | 100,000.00 | Professional Services |
| Intex Solutions, Inc. | Accounts Receivable 110 A St Needham MA 02494-2807 | 10/7/2019 | 35,200.00 | Professional Services |
| BCA Research Inc | 1002 Sherbrooke St. W Suite 1600 Montreal Quebec H3A 3L6 | 10/7/2019 | 18,294.21 | Professional Services |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 10/7/2019 | 5,274.50 | Professional Services |
| Employee | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/7/2019 | 43,910.97 | Employee Reimbursement |
| Verity Group | PO Box 940361  Plano TX 75094-0361 | 10/7/2019 | 8,940.84 | Suppliers/Vendors |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 10/7/2019 | 30,017.35 | Suppliers/Vendors |
| ABM | PO Box 419860  Boston MA 02241-9860 | 10/7/2019 | 5,884.76 | Suppliers/Vendors |
| Greenwood Office Outfitters | 2951 Suffolk Drive Suite 640 Fort Worth TX 76133-1149 | 10/7/2019 | 4,628.62 | Suppliers/Vendors |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/7/2019 | 113,092.79 | Professional Services |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/7/2019 | 112,000.00 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 10/7/2019 | 142,205.00 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 10/7/2019 | 104,905.00 | Professional Services |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 10/7/2019 | 185,000.00 | Professional Services |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 10/7/2019 | 5,556.50 | Suppliers/Vendors |
| ValueScope, Inc. | 1400 Thetford Ct.  Southlake TX 76092 | 10/7/2019 | 25,000.00 | Professional Services |
| Development Specialists, Inc. | 333 South Grand Avenue Suite 4070 Los Angeles CA 90071-1544 | 10/7/2019 | 250,000.00 | Professional Services |
| Bragalone Conroy PC | Chase Tower 2200 Ross Avenue Dallas TX 75201-7924 | 10/7/2019 | 10,000.00 | Professional Services |
| Kurtzman Carson Consultants LLC | Dept CH 16639  Palatine IL 60055-6639 | 10/7/2019 | 50,000.00 | Professional Services |
| Hunton Andrews Kurth, LLP | 1445 Ross Avenue Suite 3700 Dallas TX 75202-2799 | 10/7/2019 | 156,996.86 | Professional Services |
| Liberty Life Assurance Company of Boston - Group Benefits | PO Box 2658  Carol Stream IL 60132-2658 | 10/7/2019 | 15,928.25 | Employee Benefits |
| ICE Data Pricing & Reference Data, LLC | PO Box 98616  Chicago IL 60693 | 10/7/2019 | 5,879.74 | Professional Services |
| Refinitiv US LLC | 3 Times Square  New York NY 10036 | 10/7/2019 | 12,823.98 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 10/8/2019 | 128,557.00 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/10/2019 | 3,573.58 | Professional Services |

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit B - SOFA 3 [1]

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 10/10/2019 | 161,497.04 | Employee Benefits |
| Cole Schotz | Court Plaza North 25 Main Street Hackensack NJ 07602-0800 | 10/10/2019 | 34,894.42 | Professional Services |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/10/2019 | 1,092.79 | Professional Services |
| Snell & Wilmer LLP | One Arizona Center 400 E. Van Buren, Suite 1900 Phoenix AZ 85004-2202 | 10/10/2019 | 19,119.65 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 10/10/2019 | 1,115,000.00 | Professional Services |
| ASW Law Limited | Crawford House 50 Cedar Avenue Hamilton  HM11 | 10/10/2019 | 10,845.00 | Professional Services |
| Carey Olsen | PO Box 10008 Willow House Grand Cayman  KY1-1001 | 10/10/2019 | 48,595.00 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 10/10/2019 | 8,656.51 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court Level G1, L8#102 Dallas TX 75201 | 10/10/2019 | 33,007.19 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 10/11/2019 | 34,454.43 | Employee Benefits |
| Cole Schotz | Court Plaza North 25 Main Street, PO Box 800 Hackensack NJ 07602-0800 | 10/11/2019 | 25,000.00 | Professional Services |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 10/15/2019 | 17,745.66 | Investing |
| CBIZ Valuation Group, Inc. | 3030 LBJ Freeway, Ste 1650  Dallas TX 75234 | 10/15/2019 | 12,400.00 | Professional Services |
| Status Labs.com | 151 South 1st Suite 100 Austin TX 78704 | 10/15/2019 | 18,000.00 | Professional Services |
| Discovery Benefits [2] | 4321 20th Ave. S. Fargo, ND 58103 | Various | 36,473.83 | FSA Transfers |
| Expense Reimbursements [3] | 300 Crescent Court, Suite 700 Dallas, TX 75201 | Various | 557,471.14 | Expense reimbursements |
| **Total** | | | $  23,255,006.86 | |

*[1] Does not include activity in Jefferies Prime Broker account.*
*[2] Discovery benefits are the daily FSA amounts paid for healthcare related charges*
*[3] Expense reimbursements are not tracked in The Debtor's accounting software at detail requested*

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| Acis Capital Management | Attn: Rakhee V. Patel, Winstead PC 500 Winstead Building Dallas TX 75201 | 8/27/2019 | 12,249.65 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/26/2018 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/1/2018 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/3/2018 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/2/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/25/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/3/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/3/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/3/2019 | 10,000.00 |
| Dondero Insurance Rabbi Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/2/2019 | 36,580.00 |
| Dugaboy Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/19/2018 | 9,246.96 |
| Dugaboy Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 6,960.38 |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/13/2019 | 155,000.00 |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 75,000.00 |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/11/2019 | 40,000.00 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 41.76 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 70.73 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/30/2018 | 13.96 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/14/2018 | 50.74 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 26.84 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 56.68 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 58.06 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 183.46 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/28/2019 | 18.89 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 28.88 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 105.11 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 23.70 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 34.79 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 110.76 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/31/2019 | 31.76 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 43.23 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 20.56 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 87.13 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 38.96 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 19.48 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 45.08 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/13/2019 | 66.22 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 10.82 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 115.75 |
| Governance Re Ltd | Wellesley House; 2nd Floor 90 Pitts Bay Road Pembroke HM 08 | 6/14/2019 | 300,000.00 |
| HCRE Partners, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/25/2019 | 900,000.00 |
| Highland Capital Management Fund Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/2/2019 | 2,400,000.00 |
| Highland Capital Management Fund Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/3/2019 | 5,000,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/6/2018 | 1,200,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/17/2019 | 1,100,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/8/2019 | 630,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/19/2019 | 630,000.00 |
| Highland Capital Management Latin America | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/3/2019 | 1,350,000.00 |
| Highland Capital Management Latin America | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 10,000.00 |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| Highland Capital Management Services | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/29/2019 | 400,000.00 |
| Highland Capital Management Services | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/26/2019 | 150,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/26/2018 | 65,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/30/2018 | 5,864.10 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/13/2018 | 3,942.72 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/28/2018 | 3,848.70 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/12/2018 | 3,744.31 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/27/2018 | 4,176.47 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/11/2019 | 3,954.93 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/29/2019 | 4,703.71 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/5/2019 | 50,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/5/2019 | 150,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/26/2019 | 50,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/11/2019 | 55,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/1/2019 | 25,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/26/2019 | 150,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/27/2019 | 100,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 25,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/3/2019 | 15,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 50,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 90,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 55,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 105,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 75,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/5/2018 | 171,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/18/2019 | 3,000,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/2/2019 | 100,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/14/2019 | 255,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/22/2019 | 1,500,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/30/2019 | 350,000.00 |
| Hunter Mountain Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/19/2018 | 4,930,722.50 |
| Hunter Mountain Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 3,711,456.47 |
| James Dondero | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 3,750,000.00 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 8,986.25 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 65,078.25 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/14/2018 | 115,481.36 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 548.19 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 96,786.37 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 38,628.04 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 42,434.77 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/28/2019 | 19,062.59 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 50,771.13 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 21,934.60 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 60,190.72 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 7,164.24 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 89,256.54 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/31/2019 | 38,804.42 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 82,710.42 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 7,604.98 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 47,005.97 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 748.07 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 85,058.51 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 12,713.97 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/13/2019 | 56,762.57 |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 24,497.96 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 32,977.48 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 1,341.26 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 164.01 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/30/2018 | 61.54 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 2,378.81 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 285.54 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/28/2019 | 876.87 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 267.99 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 112.22 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 160.50 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 144.02 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 688.48 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 48.54 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 74.95 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 153.81 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 217.72 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 3,615.11 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 5,644.08 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 12/7/2018 | 6,780.65 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 12/12/2018 | 17,215.19 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 1/4/2019 | 95,798.38 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 1/10/2019 | 2,600.00 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 3/7/2019 | 2,453.66 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 9/16/2019 | 5,218.40 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,600.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,600.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,600.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 8,876.22 |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 8,876.22 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/01 | 1,300.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/04 | 3,450.68 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/04 | 3,450.68 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 68.12 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 2,793.63 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 28,862.62 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 1,174.32 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 740.40 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 10,809.37 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 4,485.01 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 3,584.31 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 6,121.00 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 2,008.15 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 139.27 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 675.80 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/13/2019 | 10,961.53 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 7,312.69 |
| NexPoint Advisors, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/19/2019 | 500,000.00 |
| NexPoint Advisors, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/23/2019 | 1,000,000.00 |
| Okada Insurance Rabbi Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/3/2019 | 14,875.00 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 1,295.64 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 5,149.90 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 102.32 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 364.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 205,787.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 113,104.52 |
| Strand Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/19/2018 | 12,423.44 |
| Strand Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 9,351.38 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 419.21 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/14/2018 | 5,024.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 355.30 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 529.77 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 4,185.33 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 589.52 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/31/2019 | 480.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 1,591.54 |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 125.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 28.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 2,232.89 |
| **Total** | | | **36,608,252.91** |

Refer to SOFA 30 and Exhibit G for other transfers.

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit D - SOFA 7**

| Case Title | Case Number | Nature of Case | Court Name | Court Address | Status of case |
|---|---|---|---|---|---|
| Duff & Phelps, LLC v. Highland Capital Management, L.P. | Index No. 653813/2019 | Claim for breach of contract and unjust enrichment for failure to pay pursuant to a Letter of Engagement and accompanying Terms and Conditions. | Supreme Court of the State of New York, County of New York | 60 Centre St, New York, NY 10007 | Concluded |
| Hamilton Partners, L.P. v. Highland Capital Management, L.P. and Joseph Furlong | Cause No. 6547 | Allegedly improper restructuring of American Home Patient | Court of Chancery of the State of Delaware | 34 The Circle Georgetown, DE 19947 | Concluded |
| In re: Acis Capital Management, L.P. (Case No. 18-30264-SGJ-11), Acis Capital Management GP, LLC (Case No. 18-30265-SGJ-11) as Debtors. Robin Phelan, Chapter 11 Trustee v. Highland Capital Management, L.P., Highland CLO Funding, Ltd. f/k/a Acis Loan Funding, Ltd., CLO Holdco, Ltd., Neutra, Ltd., Acis CLO 2014-3 Ltd., Acis CLO 2014-4 Ltd., Acis CLO 2014-5 Ltd., Acis CLO 2015-6 Ltd., Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2014-6 LLC | Case No. 18-03212-SGJ | Chapter 11 Trustee, on behalf of Debtors, claimed violation of TRO, preliminary injunction, and fraudulent conveyance. | United State Bankruptcy Court for the Northern District of Texas, Dallas Division | George Mahon Federal Building 1205 Texas Ave., Rm 306 Lubbock, TX 79401-4002 | Pending |
| McKool Smith P.C. vs. Highland Capital Management, L.P. | JAMS No.: 1310024517 | Claim for breach of contract pursuant to Crusader Retention Agreement, Terry Retention Agreement, UBS Retention Agreement, and payment plan. | N/A | N/A | Pending |
| NWCC, LLC v. Highland CLO Management, LLC; Highland Capital Management, L.P.; Acis CLO 2014-3 Ltd.; Highland CLO 2014-3R Ltd.; Highland CLO 2014-3R LLC; Highland HCF Advisor, Ltd., as Trustee for Highland CLO Trust; Highland CLO Management Holdings, L.P.; Highland CLO Management GP, LLC; and Highland HCF Advisor, Ltd. | Case No. 654195/2018 | Claim for breach of contract for failure to pay pursuant to Master Repurchase Agreement. | Supreme Court of the State of New York, County of New York | 60 Centre St, New York, NY 10007 | Pending |
| Patrick Daugherty v. Highland Capital Management, L.P., Highland Employee Retention Assets, LLC, Highland ERA Management, LLC, and James Dondero | No. 2017-0488-SG | Claim for collection of judgment against Highland Employee Retention Assets, LLC ("HERA") and allegation of improper transfer of assets from HERA to other Defendants | Court of Chancery of the State of Delaware | 34 The Circle Georgetown, DE 19947 | Pending |
| Redeemer Committee of the Highland Crusader Fund (acting through its members, (1) Grosvenor Capital Management, L.P., (2) FRM Investment Management Limited, (3) Concord Management, LLC, (4) Baylor University, (5) FIX Asset Management, (6) The United States Army Air Force Exchange Services) vs. Highland Capital Management, L.P. | Cause 2019 No. 332 | Motion to enforce Crusader Arbitration Award | Supreme Court of Bermuda | 2nd floor, Government Administration Building 30 Parliament Street Hamilton HM12 Bermuda | Pending |
| Redeemer Committee of the Highland Crusader Fund (acting through its members, (1) Grosvenor Capital Management, L.P., (2) FRM Investment Management Limited, (3) Concord Management, LLC, (4) Baylor University, (5) FIX Asset Management, (6) The United States Army Air Force Exchange Services) vs. Highland Capital Management, L.P. | Cause 153 of 2019 | Motion to enforce Crusader Arbitration Award | Grant Court of the Cayman Islands Financial Services Division | P.O. Box 495 Grand Cayman KY1-1106 Cayman Islands | Pending |
| Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P. | No. 01-16-002-6927 | Injunctive relief and damages sought related to wind down of legacy hedge fund from the 2008 financial crisis. | N/A | N/A | Concluded |
| Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P. | No. 12533-VCG | Injunctive relief and declaratory judgment related to wind down of legacy hedge fund from the 2008 financial crisis. | Court of Chancery of the State of Delaware | 34 The Circle Georgetown, DE 19947 | Pending |
| UBS Securities LLC and UBS AG, London Branch v. Highland Capital Management, L.P., Highland Special Opportunities Holding Company, Highland CDO Opportunity Master Fund, L.P. Highland Financial Partners, L.P., Highland Credit Strategies Fund, Highland Crusader Offshore Partners, L.P., Highland Credit Opportunities CDO, L.P. and Strand Advisors, Inc. | Case No. 650097/2009 | Plaintiff alleges that HCMLP engaged in fraudulent transfers and breached its duty of good faith in fair dealing in managing the obligations of its funds. | Supreme Court of the State of New York, County of New York | 60 Centre St, New York, NY 10007 | Pending |
| Highland Capital Management, L.P. v. Joshua Terry | Case No. DC-16-11396 | Employee Terry was terminated for cause. Highland filed suit for return of Highland's confidential information and other counterclaims. Terry has filed counterclaims for conversion and defamation. | 162nd District Court of Dallas County, Texas | 00 Commerce Street, 7th Floor New Tower, Dallas, TX 75202 | Pending |

014404   1 of 1

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit E - SOFA #9**

| Vendor | | Amount | Expense Type | Date |
|---|---|---|---|---|
| B&H Photo | $ | 7,000.00 | Business Gifts | Feb 22, 2019 |
| Competitive Cyclist | | 5,000.00 | Business Gifts | Feb 22, 2019 |
| REI | | 3,009.95 | Business Gifts | Feb 22, 2019 |
| The Family Place | | 4,500.00 | Business Gifts | Jan 11, 2019 |
| Neiman Marcus | | 10,000.00 | Business Gifts | Jan 29, 2019 |
| Nordstrom | | 9,000.00 | Business Gifts | Jan 29, 2019 |
| Neiman Marcus | | 2,800.00 | Business Gifts | Aug 10, 2018 |
| Barney's New York | | 3,015.00 | Business Gifts | Dec 27, 2017 |
| Etro Store | | 1,710.35 | Business Gifts | Dec 27, 2017 |
| Sutterfly | | 1,627.64 | Business Gifts | Jun 26, 2019 |
| B&H Video | | 5,015.00 | Business Gifts | Oct 25, 2017 |
| Competitive Cyclist | | 5,000.00 | Business Gifts | Oct 25, 2017 |
| Nordstrom | | 5,000.00 | Business Gifts | Oct 25, 2017 |
| REI | | 5,000.00 | Business Gifts | Oct 25, 2017 |
| JD | | 5,000.00 | Business Gifts | Jan 29, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | | 7,508.95 | Business Gifts | Dec 12, 2018 |
| Dallas Childrens Advocacy | | 17,500.00 | Charitable Contributions | Jan 11, 2019 |
| Political Contribution | | 20,000.00 | Charitable Contributions | May 13, 2019 |
| Political Contribution | | 30,000.00 | Charitable Contributions | May 29, 2019 |
| NORTHPARK CENTER | | 1,230.00 | Gift/Awards | Apr 26, 2019 |
| Kroger | | 1,483.30 | Gift/Awards | Apr 26, 2018 |
| Total Wine | | 1,125.76 | Gift/Awards | Feb 13, 2018 |
| Costco | | 2,168.86 | Gift/Awards | Feb 13, 2019 |
| Apple | | 4,000.00 | Gift/Awards | Feb 26, 2018 |
| B&H Photo | | 3,000.00 | Gift/Awards | Feb 26, 2018 |
| Competetive Cyclist | | 5,000.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | | 1,350.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | | 4,650.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | | 1,250.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | | 3,750.00 | Gift/Awards | Mar 13, 2018 |
| Nordstrom | | 7,010.00 | Gift/Awards | Mar 13, 2018 |
| REI | | 4,009.95 | Gift/Awards | Mar 13, 2019 |
| Neiman Marcus | | 2,075.00 | Gift/Awards | Mar 27, 2018 |
| AMAZON.COM*MB5OG1ZC1AMZN.COM/BI 1T5SDTP0V6I MERCHA | | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| AMERICAN AIRLINES XXXXX-XXX-XXX XXXX0103 AA.COM | | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| BABY.COM EGIFT CRD XXX-XXX-1977 9XXX9375PRC GIFT C | | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| WALMART.COM XXX-XXX-6546 AR WMZVYLNO0YU RETAIL | | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| AMAZON.COM*M01N33JX2AMZN.COM/BI 43WY9S9CUK8 MERCHA | | 1,000.00 | Gift/Awards | Dec 12, 2018 |
| AMAZON.COM*MX1474TL1AMZN.COM/BI 594WNOFOQ54 MERCHA | | 1,000.00 | Gift/Awards | Dec 12, 2018 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | | 68,280.95 | Gift/Awards | Dec 12, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 9XXX3699QOK GIFT C | | 1,000.00 | Gift/Awards | Dec 12, 2018 |
| AAA INNOVATIONS AAA NORWOOD NJ XXXXXXX8353 NON-DUR | | 4,558.75 | Gift/Awards | Jan 11, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | | 3,508.95 | Gift/Awards | Jan 11, 2019 |
| HOTELS.COM GIFT CARDXXX-XXX-197 9XXX8780BOK GIFT C | | 1,000.00 | Gift/Awards | Jan 11, 2019 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 9XXX6040GOK GIFT C | | 1,000.00 | Gift/Awards | Jan 11, 2019 |
| AMEX HILTON GIFT CARXXX-XXX-058 XXXX4162 BOL X0285 | | 5,008.95 | Gift/Awards | Feb 13, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 4XXX2954P90 GIFT C | | 1,000.00 | Gift/Awards | Nov 10, 2017 |
| CS_*BABIESRUSGIFTCARXXX-XXX-197 4XXX6083G9J GIFT C | | 1,000.00 | Gift/Awards | Dec 13, 2017 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXXX XXXXXX3 | | 5,014.19 | Gift/Awards | Dec 13, 2017 |
| RITZ CARLTON GIFT CAMIDVALE UT XXXXXXXXX XXX-XXX-8 | | 1,001.00 | Gift/Awards | Dec 13, 2017 |
| AMAZON.COM AMZN.COM/BILL WA 4HQ4J0AKNMQ MERCHANDIS | | 1,000.00 | Gift/Awards | Jan 10, 2018 |
| AMEX GIFT CARDS XXX-XXX-0582 NY OPWBXXX0386BOL XX2 | | 7,008.95 | Gift/Awards | Mar 13, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXXX XXXXXX3 | | 1,014.93 | Gift/Awards | Mar 13, 2018 |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit E - SOFA #9**

| Vendor | Amount | Expense Type | Date |
|---|---|---|---|
| AMEX GIFT CARDS XXX-XXX-0582 NY OPWBXXX3116BOL XX2 | 3,520.80 | Gift/Awards | Apr 11, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXXX3 | 1,014.93 | Gift/Awards | Apr 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 5,010.95 | Gift/Awards | May 10, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 16B3JYYTOHX MERCHANDIS | 1,000.00 | Gift/Awards | Jun 12, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXXX3 | 1,014.93 | Gift/Awards | Jun 12, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXXX3 | 5,014.93 | Gift/Awards | Jun 12, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXXX3 | 1,000.00 | Gift/Awards | Jun 12, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXX5955KHG GIFT C | 1,000.00 | Gift/Awards | Jun 12, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 4C5DKHDW6TK MERCHANDIS | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 5AK74J5T9LC MERCHANDIS | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXX5284CIM GIFT C | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,001.00 | Gift/Awards | Jul 11, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 4XXX6255NHS GIFT C | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 3NRIPESL5H2 MERCHANDIS | 1,000.00 | Gift/Awards | Aug 10, 2018 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,522.85 | Gift/Awards | Aug 10, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXXX8611J4 GIFT C | 1,000.00 | Gift/Awards | Aug 10, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 8XXX5959YIW GIFT C | 1,000.00 | Gift/Awards | Aug 10, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 5,001.00 | Gift/Awards | Aug 10, 2018 |
| AMAZON.COM*MT7OW87B1AMZN.COM/BI 1XJ571A2WYA MERCHA | 1,000.00 | Gift/Awards | Nov 13, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 9XXX5657XMX GIFT C | 1,000.00 | Gift/Awards | Nov 13, 2018 |
| CS *HOTELS.COM GC XXX-XXX-1977 4XXX3604JRQ GIFT CA | 1,000.00 | Gift/Awards | Mar 13, 2019 |
| HILTON GC XXX XXX-XXXXX-XXX-XXX XX0847 GIFTCARDS F | 1,008.95 | Gift/Awards | Mar 13, 2019 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXX1517JRH GIFT C | 1,000.00 | Gift/Awards | Mar 13, 2019 |
| AMAZON.COM*MW2NP75Y2AMZN.COM/BI 1ZRLAH1KV0Q MERCHA | 1,000.00 | Gift/Awards | May 13, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,515.95 | Gift/Awards | May 13, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,520.85 | Gift/Awards | Jun 12, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,515.95 | Gift/Awards | Jul 11, 2019 |
| ANSE CHASTANET - RESSOUFRIERE LC XXXXXXXXX XXX-XX | 5,000.00 | Gift/Awards | Sep 11, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXX XXXXXX3 | 5,014.93 | Gift/Awards | Sep 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,010.95 | Gift/Awards | Sep 11, 2018 |
| RITZ CARLTON GIFT CAMIDVALE UT XXXXXXXXX XXX-XXX-8 | 1,010.95 | Gift/Awards | Sep 11, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 4XXXX6218KG GIFT C | 1,000.00 | Gift/Awards | Sep 11, 2018 |
| AMAZON.COM*MT5FG6LG0AMZN.COM/BI 2CWA16B0JP6 MERCHA | 2,000.00 | Gift/Awards | Oct 11, 2018 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 7,529.80 | Gift/Awards | Oct 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 5,000.00 | Gift/Awards | Oct 4, 2019 |
| Hotels.com | 1,000.00 | Gift/Awards | Jul 11, 2019 |
| Buy Buy Baby | 1,000.00 | Gift/Awards | Aug 13, 2019 |
| William Sonoma | 1,000.00 | Gift/Awards | Aug 13, 2019 |
| Amazon.com | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| AMAZON.COM*MA02T1UW2AMZN.COM/BI 59I475TIIR3 MERCHA | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| CS *BUYBUYBABY EGTFCXXX-XXX-197 4XXX9435NZ1 GIFT C | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 4XXX4055UYZ GIFT CA | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 9XXX0073VU5 GIFT CA | 2,000.00 | Gift/Awards | May 13, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 9XXX9190AU5 GIFT CA | 1,000.00 | Gift/Awards | May 13, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 9XXXX7723U5 GIFT CA | 2,000.00 | Gift/Awards | May 13, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 4XXXX2756TI GIFT CA | 1,000.00 | Gift/Awards | Apr 11, 2019 |
| Beard Supply | 1,623.75 | Gift/Awards | Jan 10, 2018 |
| Patagonia | 2,685.71 | Gift/Awards | Jan 26, 2018 |
| Political Contribution | 25,000.00 | Gift/Charity | Jun 30, 2019 |
| Political Contribution | 25,000.00 | Gift/Charity | Jun 30, 2019 |
| **Total** | $   445,725.61 | | |

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit F - SOFA 2S

| Name | Relationship | Address | EIN | Description of Business | Date of Creation | Date of Termination (if applicable) |
|---|---|---|---|---|---|---|
| Aberdeen Loan Funding, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | N/A | CLO Fund | 12/14/2006 | |
| Brentwood CLO, Ltd. | IMA | MaplesFS - PO Box 1093, Grand Cayman, KY1-1102, Cayman Islands | 98-0524481 | CLO Fund | 5/21/2006 | |
| Bristol Bay Funding Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0418113 | CLO Fund | 11/18/2003 | |
| Eastland CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limited - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0550088 | CLO Fund | 3/31/2006 | |
| Gleneagles CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 2/25/2005 | |
| Grayson CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0522566 | CLO Fund | 2/7/2006 | |
| Greenbriar CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 10/24/2007 | |
| Highland CDO Holding Company | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0527935 | HFP sub | 1/24/2006 | |
| Highland CDO Opportunity Fund, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899941 | Hedge fund | 11/3/2005 | Terminated |
| Highland CDO Opportunity Fund, Ltd. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | N/A | Hedge fund | 5/8/2002 | Terminated |
| Highland CDO Opportunity Master Fund, L.P. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0520689 | Hedge fund | 10/31/2005 | Terminated |
| Highland Credit Opportunities CDO, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0512429 | Hedge fund | 11/1/2005 | |
| Highland Credit Opportunities Japanese Feeder Sub-Trust | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | N/A | Hedge fund | 8/22/2007 | |
| Highland Credit Strategies Fund, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 86-1147211 | Hedge fund | 8/2/2005 | |
| Highland Credit Strategies Fund, Ltd. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0466202 | Hedge fund | 8/8/2005 | |
| Highland Credit Strategies Master Fund, L.P. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0466203 | Hedge fund | 8/19/2005 | |
| Highland Dynamic Income Fund, L.P. (fka Highland Capital Loan Fund, L.P.) | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-2123634 | Hedge fund | 2/25/2013 | |
| Highland Dynamic Income Fund, Ltd. (fka Highland Loan Fund, Ltd.) | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | N/A | Hedge fund | 2/26/2013 | |
| Highland Dynamic Income Master Fund, L.P. (fka Highland Loan Master Fund, L.P.) | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1169838 | Hedge fund | 2/26/2013 | |
| Highland Financial Corp. | IMA - terminated | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-4392555 | HFP sub | 2/28/2006 | |
| Highland Flexible Income UCITS Fund | IMA | 23 St. Stephen's Green, Dblin 2, Ireland | N/A | Separate account | 6/7/2018 | |
| Highland Legacy Limited | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 7/6/1999 | |
| Highland Loan Funding V, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 2/5/2001 | |
| Highland Multi Strategy Credit Fund, L.P. (fka Highland Credit Opportunities Fund, L.P., fka Highland Credit Opportunities CDO, L.P.) | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3874256 | Hedge fund | 12/1/2005 | |
| Highland Multi Strategy Credit Fund, Ltd. (fka Highland Credit Opportunities Fund, Ltd.) | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-0587370 | Hedge fund | 12/29/2005 | |
| Highland Park CDO 1, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0515982 | CLO Fund | 7/12/2006 | |
| Highland Prometheus Feeder Fund I, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1334547 | Hedge fund | 11/7/2016 | |
| Highland Prometheus Feeder Fund II, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1353013 | Hedge fund | 2/17/2017 | |
| Highland Prometheus Master Fund, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1334763 | Hedge fund | 11/7/2016 | |
| Highland Restoration Capital Partners Master, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1458205 | Private equity fund | 11/14/2007 | |
| Highland Restoration Capital Partners Offshore, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-0589962 | Private equity fund | 11/13/2007 | |
| Highland Restoration Capital Partners, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1456033 | Private equity fund | 11/14/2007 | |
| Highland Select Equity Fund, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 75-2970177 | Hedge fund | 12/5/2001 | |
| Highland Select Equity Master Fund, L.P. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0520466 | Hedge fund | 4/12/2007 | |
| Highland Special Opportunities Holding Company | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0532735 | HFP sub | 1/24/2006 | Terminated |
| Jasper CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0595492 | CLO Fund | 3/9/2005 | |
| Liberty CLO, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0595490 | CLO Fund | 6/30/2005 | |
| Longhorn Credit Funding, LLC | IMA | United Corporate Services, Inc., 874 Walker Rd, Ste C, Dover, DE 19904 | N/A | Separate account | 10/15/2007 | |
| ML CLO XIX Sterling (Cayman), Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 4/27/1998 | |
| Pam Capital Funding, L.P. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 20-3010953 | CLO Fund | 5/8/1998 | |
| PamCo Cayman Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 1/18/1997 | |
| PensionDanmark Pensionsforsikringsaktieselskab | IMA | Langelinie Allé 43, DK-2100 Copenhagen Ø | N/A | Separate account | 6/24/1992 | |
| Red River CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limited - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0527219 | CLO Fund | 1/24/2006 | |
| Rockwall CDO II Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 4/12/2006 | |
| Rockwall CDO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0461407 | CLO Fund | 6/7/2005 | |
| SouthFork CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 10/21/2004 | |
| Stratford CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0540945 | CLO Fund | 10/17/2006 | |
| Valhalla CLO, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0595491 | CLO Fund | 6/9/2004 | |
| Westchester CLO, Ltd. | IMA | MaplesFS Limted, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0546784 | CLO Fund | 11/10/2006 | |
| Highland Latin America GP, Ltd. | Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1362190 | GP of the relying advisor to the Argentina fund | 3/6/2017 | |

014407

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit F - SOFA 2S

| Name | Relationship | Address | EIN | Description of Business | Date of Creation | Date of Termination (if applicable) |
|---|---|---|---|---|---|---|
| Highland Capital Management Latin America, L.P. | Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1362202 | Relying advisor to the Argentina fund | 4/13/2017 | |
| Neutra, Ltd. | Highland Capital Management, L.P., as trustee of Acis CMOA Trust and nominee for and on behalf of Highland CLO Assets Holdings Limited | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090422 | | 12/12/2012 | |
| Asbury Holdings, LLC (fka HCSLR Camelback Investors (Delaware), LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Holds HCMLP's Haygood interest | 2/14/2017 | |
| De Kooning, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090348 | Formed to hold Select's interest in Barclays' assignment | 12/12/2012 | |
| HCREF-I Holding Corp. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-1998057 | Holds HCMLP interest in HCREF | 12/13/2012 | |
| HCREF-XI Holding Corp. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-2030348 | Holds HCMLP's interest in HE Mezz KR, LLC | 12/13/2012 | |
| HCREF-XII Holding Corp. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-2032401 | Holds HCMLP's interest in 2006 Milam East Partners LP | 12/13/2012 | |
| HFP GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 16-1746972 | HFP GP | 1/20/2006 | |
| Highland Brasil, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-4691319 | Managing member of BB Votorantim Highland In | 1/28/2014 | |
| Highland Capital Management (Singapore) Pte Ltd | Highland Capital Management, L.P. | Tricor, 80 Robinson Road #02-00, Singapore 068898 | 98-0580590 | HCMLP's wholly owned sub in Singapore | 4/2/2008 | |
| Highland Capital Management Korea Limited | Highland Capital Management, L.P. | (Seoul Finance Center, Taepyeongno-1-ga) 21F, 136, Sejong-daero, Jung-gu, Seoul, Korea | 98-1120007 | Relying advisor to the Korea PEF | 8/2/2012 | |
| Highland Capital Multi-Strategy Fund, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-5237025 | Private fund | 7/6/2006 | |
| Highland Capital Special Allocation, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1175318 | Entity received the incentive allocation from HFP. | 12/21/2006 | |
| Highland CDO Opportunity Fund GP, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899907 | Hedge fund | 10/20/2005 | |
| Highland CDO Opportunity GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899870 | Hedge fund GP | 10/20/2005 | |
| Highland CLO Assets Holdings Limited | Highland Capital Management, L.P. | Maples Corporate Services (BVI) Limited Kingston Chambers, PO Box 173, Road Town Tortola, British Virgin Islands | 98-1417806 | | 12/19/2017 | |
| Highland CLO Management Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1432973 | | 10/27/2017 | |
| Highland Dynamic Income Fund GP, LLC (fka Highland Capital Loan GP, LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 80-0898281 | Hedge fund GP | 2/25/2013 | |
| Highland Employee Retention Assets LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-1596366 | HERA | 6/23/2009 | |
| Highland ERA Management, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | HERA manager | 2/1/2013 | |
| Highland Financial Partners, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 83-0446391 | HFP | 1/20/2006 | Terminated |
| Highland Fund Holdings, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | | 5/24/2016 | |
| Highland General Partner, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 86-1147210 | Hedge fund GP | 7/26/2005 | |
| Highland GP Holdings, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 86-1147208 | Hedge fund GP | 7/26/2005 | |
| Highland HCF Advisor Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1401127 | Advisor to Highland CLO Funding, Ltd. | 10/27/2017 | |
| Highland Latin America LP, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1362186 | Argentina fund structure | 3/6/2017 | |
| Highland Multi Strategy Credit Fund GP, L.P. (fka Highland Credit Opportunities CDO GP, L.P.) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Hedge fund GP | 12/29/2005 | |
| Highland Multi Strategy Credit GP, LLC (fka Highland Credit Opportunities CDO GP, LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Hedge fund GP | 12/29/2005 | |
| Highland Multi-Strategy Fund GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-5236824 | Private fund GP | 7/6/2006 | |
| Highland Multi-Strategy Fund GP, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-5236931 | Private fund GP | 7/6/2006 | |
| Highland Receivables Finance I, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-8123634 | Entity created in 2006 that purchased all of HCMLP's receivables. 100% owned by HCMLP. | 12/28/2006 | |
| Highland Restoration Capital Partners GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1455912 | Private equity fund GP | 11/6/2007 | |
| Highland Select Equity Fund GP, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899917 | Hedge fund GP | 10/20/2005 | |
| Highland Select Equity GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899886 | Hedge fund GP | 10/20/2005 | |
| Highland SunBridge GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Hedge fund GP | 12/15/2015 | |
| Hirst, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090361 | Formed to hold CDO Ltd's interest in Barclays assignment | 12/12/2012 | |
| Hockney, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090388 | Formed to hold Crusader's interest in Barclays assignment | 12/12/2012 | |
| Maple Avenue Holdings, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 81-3600687 | Holds Uchi loan | 8/17/2016 | |
| NexPoint Hospitality Trust | Highland Capital Management, L.P. | 333 Bay Street, Suite 3400, Toronto, Ontario M5H 2S7, Canada | 83-6637675 | Hospitality REIT | 12/12/2018 | |
| NexPoint Insurance Distributors, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-2921534 | Insurance broker | 7/25/2019 | |
| NexPoint Insurance Solutions GP, LLC (fka Highland Capital Insurance Solutions GP, LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-2571487 | Insurance advisor GP | 4/4/2019 | |
| NexPoint Insurance Solutions, L.P. (fka Highland Capital Insurance Solutions, L.P.) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-2584142 | Insurance advisor | 4/4/2019 | |
| NexPoint Multifamily Capital Trust, Inc. | Highland Capital Management, L.P. | The Corporation Trust Company, 2405 York Rd, Ste 201, Lutherville Timonium, MD 21093 | 46-4106316 | NMCT REIT | 11/12/2013 | |
| NexPoint Real Estate Strategies Fund | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 81-1061590 | Retail fund | 3/10/2006 | |
| NexPoint Residential Trust Inc. | Highland Capital Management, L.P. | The Corporation Trust, 2405 York Rd, Ste 201, Lutherville Timonium, MD 21093 | 47-1881359 | NXRT REIT | 9/19/2014 | |
| NexPoint Strategic Opportunities Fund (fka NexPoint Credit Strategies Fund) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 80-0139099 | Retail fund | 3/10/2006 | |
| NHT Holdco, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 83-3011801 | Hospitality REIT structure | 1/2/2019 | |
| Oldenburg, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090453 | Formed to hold CDO LP's interest in Barclays assignment | 12/12/2012 | |
| Penant Management LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-1614710 | Holds HCREF's interest in Barclays assignment | 12/12/2012 | |
| PetroCap Incentive Partners III, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | ? | Petrocap fund | 11/16/2017 | |
| PetroCap Partners II, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-4691213 | Petrocap fund | 10/7/2013 | |
| PetroCap Partners III, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | ? | Petrocap fund | 11/16/2017 | |
| Pollack, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090519 | | 12/12/2012 | |
| SE Multifamily Holdings LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 32-0576655 | RE investment holding | 8/23/2018 | |

2 of 3

014408

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit F - SOFA 2S

| Name | Relationship | Address | EIN | Description of Business | Date of Creation | Date of Termination (if applicable) |
|---|---|---|---|---|---|---|
| The Dondero Insurance Rabbi Trust | Highland Capital Management, L.P. | 300 Crescent Ct, Ste 700, Dallas, TX 75201 | 75-2716725 | Holds Dondero's life insurance policies and the proceeds to be used to fund HCM's obligation to purchase Dondero Interests from the Trust Beneficiaries per Buy-Sell Agreement | 5/27/2004 | |
| The Okada Insurance Rabbi Trust | Highland Capital Management, L.P. | 300 Crescent Ct, Ste 700, Dallas, TX 75201 | 75-2716725 | Holds Okada's life insurance policies and the proceeds to be used to fund HCM's obligation to purchase Okada Interests from the Trust Beneficiaries per Buy-Sell Agreement | 5/27/2004 | |
| US Gaming SPV, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-1769285 | SPV of eSports investment in Korea | 5/14/2019 | |
| Warhol, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090362 | Formed to hold Ops' interest in Barclays assignment | 12/12/2012 | |
| HE Capital 232 Phase I, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1616599 | Underlying property is a 71.73 acre site consisting of 232 finished single family lots in the NW Phoenix development of Asante. | 12/20/2007 | |
| HE Capital Asante, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-0525645 | Underlying project is a 843 acre multi-phase residential  development in NW Phoenix, AZ | 7/5/2007 | |
| HE Capital Fox Trails, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Underlying project is a 889.58 acre vacant parcel in NW Phoenix with PAD approval for 2,320 single family units. | 3/10/2008 | |
| HE Capital KR, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Underlying project is a 1,829.67 acre vacant parcel in SW Phoenix proposed for 4,250 single family lots of which 1,431 have final plat approval (Phase I) and 50.94 acres of commercial land. | 7/5/2007 | |
| HE Capital, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-8711786 | Parent entity for joint venture between Elliman and Highland. | 3/22/2007 | |
| HE CLO Holdco, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 37-1666849 | Blockers that used to hold Elliman interest | 2/3/2011 | |
| HE Mezz Fox Trails, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-2151278 | Underlying project is a 889.58 acre vacant parcel in NW Phoenix with PAD approval for 2,320 single family units. | 3/10/2008 | |
| HE Mezz KR, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-0611280 | Underlying project is a 1,829.67 acre vacant parcel in SW Phoenix proposed for 4,250 single family lots of which 1,431 have final plat approval (Phase I) and 50.94 acres of commercial land. | 7/27/2007 | |
| HE Peoria Place Property, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1600012 | Underlying project is a 127.39 acre vacant parcel in NW Phoenix being improved with interior roadways for ultimate development or sale under the PAD approving 11 acres of office, 23 acres of retail, 50 acres of single family an d43 acres of multi family. | 12/10/2007 | |
| HE Peoria Place, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1599959 | Underlying project is a 127.39 acre vacant parcel in NW Phoenix being improved with interior roadways for ultimate development or sale under the PAD approving 11 acres of office, 23 acres of retail, 50 acres of single family an d43 acres of multi family. | 11/14/2007 | |
| Hibiscus HoldCo, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-1824370 | Blocker to hold Turtle Bay assets | 2/2/2010 | |
| Highland CLO Gaming Holdings, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-3995018 | CLO blocker that used to hold Affility Gaming Inter | 11/18/2010 | |
| Highland TCI Holding Company, LLC | HCMLP-Manager | CT Corporation, 1999 Bryan St, Ste 900, Dallas, TX 75201 | 45-2620554 | CLO blocker to hold TCI/Park West assets | 6/21/2011 | |
| Highland's Roads Land Holding Company, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-4572095 | CLO blocker to hold LLV reorg equity | 3/30/2009 | |
| Kuilima Montalban Holdings, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-1942638 | CLO blocker to hold Turtle Bay equity | 2/19/2010 | |
| Kuilima Resort Holdco, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-4572180 | CLO blocker to hold Turtle Bay equity | 3/18/2009 | |
| Park West Holdco, LLC | HCMLP-Manager | CT Corporation, 1999 Bryan St, Ste 900, Dallas, TX 75201 | 37-1641409 | Holds TCI assets | 4/4/2011 | |
| Park West Portfolio Holdco, LLC | HCMLP-Manager | CT Corporation, 1999 Bryan St, Ste 900, Dallas, TX 75201 | 90-0737248 | Holds TCI assets | 4/14/2011 | |
| PDK Toys Holdco, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 83-3591646 | PDK blocker to hold Toys R'Us loan | 2/14/2019 | |
| Acis CMOA Trust | HCMLP - Trustee | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | N/A | | 3/30/2018 | |
| Highland Latin America Trust | HCMLP - Trustee | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | N/A | | 3/30/2018 | |

014409

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit G - SOFA 30

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Dondero, James | 161.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 01/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 01/31/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 02/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 02/28/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 03/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 03/29/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 04/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 04/30/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 05/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 05/31/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 06/14/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 06/28/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 07/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 07/31/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 08/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 08/30/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 09/13/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 09/30/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 10/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 10/31/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 11/15/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 11/30/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 12/14/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 12/31/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 01/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 01/31/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 02/15/2019 | Regular Base Pay |
| Ellington, Scott | 300,000.00 | 02/28/2019 | Bonus |
| Ellington, Scott | 71.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 02/28/2019 | Regular Base Pay |
| Ellington, Scott | 350,000.00 | 03/15/2019 | Bonus |
| Ellington, Scott | 71.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 03/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 03/29/2019 | Regular Base Pay |

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit G - SOFA 30

| Name | Amounts | Date | Reason |
|------|---------|------|--------|
| Ellington, Scott | 71.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 04/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 04/30/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 05/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 05/31/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 06/14/2019 | Regular Base Pay |
| Ellington, Scott | 350,629.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Ellington, Scott | 71.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 06/28/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 07/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 07/31/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 08/15/2019 | Regular Base Pay |
| Ellington, Scott | 650,000.00 | 08/30/2019 | Bonus |
| Ellington, Scott | 71.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 08/30/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 09/13/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 09/30/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 10/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 10/31/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 11/15/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 11/30/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 12/14/2018 | Regular Base Pay |
| Ellington, Scott | 604.78 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Ellington, Scott | 71.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 12/31/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 01/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 01/31/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 02/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 02/28/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 03/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 03/29/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 04/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 04/30/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 05/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 05/31/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 06/14/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Okada, Mark | 32,552.09 | 06/28/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 07/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 07/31/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 08/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 08/30/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 09/13/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 09/30/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 10/31/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 11/15/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 11/30/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 12/14/2018 | Regular Base Pay |
| Okada, Mark | 272.64 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Okada, Mark | 204.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 12/31/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 01/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 01/31/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 02/15/2019 | Regular Base Pay |
| Parker, Lee | 231,250.00 | 02/28/2019 | Bonus |
| Parker, Lee | 47.50 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 02/28/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 03/15/2019 | Regular Base Pay |
| Parker, Lee | 150,000.00 | 03/29/2019 | Bonus |
| Parker, Lee | 47.50 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 03/29/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 04/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 04/30/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 05/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 05/31/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 06/14/2019 | Regular Base Pay |
| Parker, Lee | 362,935.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Parker, Lee | 47.50 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 06/28/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 07/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 07/31/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 08/15/2019 | Regular Base Pay |
| Parker, Lee | 381,250.00 | 08/30/2019 | Bonus |
| Parker, Lee | 47.50 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 08/30/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 09/13/2019 | Regular Base Pay |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Parker, Lee | 47.50 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 09/30/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 10/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 10/31/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 11/15/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 11/30/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 12/14/2018 | Regular Base Pay |
| Parker, Lee | 483.56 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Parker, Lee | 47.50 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 12/31/2018 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 01/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 01/31/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 02/15/2019 | Regular Base Pay |
| Surgent, Thomas | 300,000.00 | 02/28/2019 | Bonus |
| Surgent, Thomas | 56.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 02/28/2019 | Regular Base Pay |
| Surgent, Thomas | 325,000.00 | 03/15/2019 | Bonus |
| Surgent, Thomas | 56.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 03/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 03/29/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 04/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 04/30/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 05/15/2019 | Regular Base Pay |
| Surgent, Thomas | 100,000.00 | 05/31/2019 | Bonus and/or Deferred Compensation |
| Surgent, Thomas | 56.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 05/31/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 06/14/2019 | Regular Base Pay |
| Surgent, Thomas | 482,115.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Surgent, Thomas | 56.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 06/28/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 07/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 07/31/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 08/15/2019 | Regular Base Pay |
| Surgent, Thomas | 625,000.00 | 08/30/2019 | Bonus |
| Surgent, Thomas | 56.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 08/30/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 09/13/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 09/30/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 10/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 10/31/2018 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 11/15/2018 | Regular Base Pay |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|---------|------|--------|
| Surgent, Thomas | 56.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 11/30/2018 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 12/14/2018 | Regular Base Pay |
| Surgent, Thomas | 2,344.18 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Surgent, Thomas | 56.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 12/31/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 01/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 01/31/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 02/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 206,250.00 | 02/28/2019 | Bonus |
| Waterhouse, Frank | 71.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 02/28/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 03/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 03/29/2019 | Regular Base Pay |
| Waterhouse, Frank | 212,500.00 | 04/15/2019 | Bonus |
| Waterhouse, Frank | 71.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 04/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 04/30/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 05/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 100,000.00 | 05/31/2019 | Bonus and/or Deferred Compensation |
| Waterhouse, Frank | 71.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 05/31/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 06/14/2019 | Regular Base Pay |
| Waterhouse, Frank | 306,801.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Waterhouse, Frank | 71.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 06/28/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 07/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 07/31/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 08/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 418,750.00 | 08/30/2019 | Bonus |
| Waterhouse, Frank | 14,583.33 | 08/30/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 09/13/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 09/30/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 10/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 10/31/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 11/15/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 11/30/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 12/14/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 12/31/2018 | Regular Base Pay |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |

### GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODS, AND DISCLAIMER REGARDING DEBTOR'S SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENT OF FINANCIAL AFFAIRS

Highland Capital Management, L.P. (the "Debtor") submits its Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "SoFA") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"). The Debtor, with the assistance of its advisors and management, prepared the Schedules and SoFA in accordance with section 521 title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These Global Notes and Statement of Limitations, Methods, and Disclaimer Regarding the Debtor's Schedules and SoFA (collectively, the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of the Schedules and SoFA. These Global Notes should be referred to, and reviewed in connection with any review of the Schedules and SoFA.[2]

The Schedules and SoFA have been prepared by the Debtor with the assistance and under the direction of the Debtor's proposed Chief Restructuring Officer and additional personnel at Development Specialists, Inc. (collectively, the "CRO") and are unaudited and subject to further review and potential adjustment and amendment. In preparing the Schedules and SoFA, the CRO relied on financial data derived from the Debtor's books and records that was available at the time of preparation. The CRO has made reasonable efforts to ensure the accuracy and completeness of such financial information, however, subsequent information or discovery of other relevant facts may result in material changes to the Schedules and SoFA and inadvertent errors, omissions, or inaccuracies may exist. The Debtor reserves all rights to amend or supplement its Schedules and SoFA.

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] These Global Notes are in addition to any specific notes contained in the Debtor's Schedules or SoFA. The fact that the Debtor has prepared a "general note" with respect to any of the Schedules and SoFA and not to others should not be interpreted as a decision by the Debtor to exclude the applicability of such general note to any of the Debtor's remaining Schedules and SoFA, as appropriate.

1

014415

**Reservation of Rights.**  The Debtor reserves all rights to amend the SoFA and Schedules in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."  Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other applicable non-bankruptcy laws.

**Description of the Case and "As Is" Information Date.**  On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief with the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") under Chapter 11 of the Bankruptcy Code.  The Debtor is managing its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On December 4, 2019, the Delaware Bankruptcy Court entered an Order transferring this case to the Bankruptcy Court [Docket No. 1].

Asset information in the Schedules reflects the Debtor's best estimate of asset values as of the Petition Date, unless otherwise noted.  No independent valuation has been obtained.

**Basis of Presentation.**  The Schedules and SoFA do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile to any financial statements otherwise prepared and/or distributed by the Debtor.

Although these Schedules and SoFA may, at times, incorporate information prepared in accordance with GAAP, the Schedules and SoFA neither purport to represent nor reconcile to financial statements prepared and/or distributed by the Debtor in accordance with GAAP or otherwise.  Moreover, given, among other things, the valuation and nature of certain liabilities, to the extent that the Debtor shows more assets than liabilities, this is not a conclusion that the Debtor was solvent at the Petition Date.  Likewise, to the extent that the Debtor shows more liabilities than assets, this is not a conclusion that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

**Estimates.**  To timely close the books and records of the Debtor, the CRO must make certain estimates and assumptions that affect the reported amounts of assets and liabilities and reported revenue and expenses.  The Debtor reserves all rights to amend the reported amounts of assets, liabilities, revenue, and expenses to reflect changes in those estimates and assumptions.

**Confidentiality**.  There may be instances within the Schedules and SoFA where names, addresses, or amounts have been left blank.  Due to the nature of an agreement between the Debtor and the third party, concerns of confidentiality, or concerns for the privacy of an individual, the Debtor may have deemed it appropriate and necessary to avoid listing such names, addresses, and amounts.

014416

**Intercompany Claims.** Any receivables and payables between the Debtor and affiliated or related entities in this case (each an "Intercompany Receivable" or "Intercompany Payable" and, collectively, the "Intercompany Claims") are reported as assets on Schedule B or liabilities on Schedule E and Schedule F. These Intercompany Claims include the following components, among others: 1) loans to affiliates or related entities, 2) accounts payable and payroll disbursements made out of an affiliate's or related entity's bank accounts on behalf of the Debtor, 3) centrally billed expenses, 4) corporate expense allocations, and 5) accounting for trade and other intercompany transactions. These Intercompany Claims may or may not result in allowed or enforceable claims by or against the Debtor, and by listing these claims the Debtor is not indicating a conclusion that the Intercompany Claims are enforceable. Intercompany Claims may also be subject to set off, recoupment, and netting not reflected in the Schedules. In situations where there is not an enforceable claim, the assets and/or liabilities of the Debtor may be greater or lesser than the amounts stated herein. All rights to amend intercompany Claims in the Schedules and SoFA are reserved.

The Debtor has listed the intercompany payables as unsecured claims on Schedule F. The Debtor reserves its rights to later change the characterization, classification, categorization, or designation of such items.

**Insiders.** For purposes of the Schedules and SoFA, the Debtor defines "insider" pursuant to section 101(31) of the Bankruptcy Code. Payments to insiders are set forth on Question 3.c. of the SoFA.

Persons listed as "insiders" have been included for informational purposes only. The Debtor did not take any position with respect to whether such individual could successfully argue that he or she is not an "insider" under applicable law, including without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose. Inclusion of any party in the Schedules and SoFA as an insider does not constitute an admission that such party is an insider or a waiver of such party's right to dispute insider status.

**Excluded Accruals and GAAP Entries.** The Debtor's balance sheet reflects liabilities recognized in accordance with GAAP; however, not all such liabilities would result in a claim against the Debtor. Certain liabilities (including but not limited to certain reserves, deferred charges, and future contractual obligations) have not been included in the Debtor's Schedules. Other immaterial assets and liabilities may also have been excluded.

**Classification and Claim Descriptions**. Any failure to designate a claim on the Schedules as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent" or "unliquidated." The Debtor reserves the right to dispute, or to assert offsets or defenses to, any claim reflected on its Schedules as to amount, liability or classification or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."

Listing a claim (i) in Schedule D as "secured," (ii) in Schedule E as "priority" or (iii) in Schedule F as "unsecured nonpriority," or listing a contract in Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant or a waiver of the Debtor's right to recharacterize or reclassify such claim or contract.

3

014417

Moreover, the Debtor reserves all rights to amend the SoFA and Schedules, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other relevant non-bankruptcy laws.

**Credits and Adjustments.** The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtor's books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtor. The Debtor reserves all of its rights respecting such credits, allowances or other adjustments.

**Setoffs.** The Debtor may incur setoffs from third parties in its business. Setoffs in the ordinary course can result from various routine transactions, including intercompany transactions, pricing discrepancies, warranty claims and other disputes between the Debtor and third parties. Certain of these constitute normal setoffs consistent with the ordinary course of business in the Debtor's industry. In such instances, such ordinary course setoffs are excluded from the Debtor's responses to Question 13 of the SoFA. The Debtor reserves all rights to enforce or challenge, as the case may be, any setoffs that have been or may be asserted.

**Specific Notes.** These general notes are in addition to the specific notes set forth below or in the related Statement and Schedules hereinafter.

### General Disclaimer

The Debtor has prepared the Schedules and the SoFA based on the information reflected in the Debtor's books and records. However, inasmuch as the Debtor's books and records have not been audited or formally closed and evaluated for proper cut-off on the Petition Date, the Debtor cannot warrant the absolute accuracy of these documents. The Debtor has made a diligent effort to complete these documents accurately and completely. To the extent additional information becomes available, the Debtor will amend and supplement the Schedules and SoFA.

### <u>Specific Schedules Disclosures</u>

a. **Schedule A/B, Part 4 - Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.** Certain ownership interests in subsidiaries have been listed in Schedule A/B, Part 4, at their book value on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors. Fair value of such interests may differ significantly from their net book value. Further, for investments listed at fair value, many of the Debtor's assets are not exchange traded and are fair valued utilizing unobservable

DOCS_DE:226892.2 36027/002

014418

inputs, historical information, and significant and/or subjective estimates. As a result the liquidity and ultimately realized value of such investments may differ materially from the fair value listed on the schedule.

b.   **Schedule A/B, Part 7 - Office Furniture, Fixtures, and Equipment; and Collectibles**.  Dollar amounts are presented net of accumulated depreciation and other adjustments.

c.   **Schedule A/B, Part 11 - All Other Assets**.  Dollar amounts are presented net of impairments and other adjustments. Debtor has reflected "unknown" for value of its interests in various other assets. While the face value of the notes receivable is included, the current value of these as well as the other assets has not been determined and may differ materially.

Additionally, the Debtor may receive refunds, income tax refunds or other sales tax refunds at various times throughout its fiscal year.  As of the Petition Date, however, certain of these amounts are unknown to the Debtor, and accordingly, may not be listed in Schedule A/B.

*Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.*  In the ordinary course of its business, the Debtor may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, or refunds with its customers and suppliers.  Additionally, the Debtor may be party to pending litigation in which the Debtor has asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant.  Because certain of these claims are unknown to the Debtor and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

d.   **Schedule D - Creditors Who Have Claims Secured by Property**.  The Debtor reserves its rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D.  Moreover, although the Debtor has scheduled claims of various creditors as secured claims, the Debtor reserves all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

The Debtor has not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.  Although there are multiple parties that hold a portion of the debt included in the secured

DOCS_DE:226892.2 36027/002

014419

facilities, only the administrative agents have been listed for purposes of Schedule
D.

e.    **Schedule E/F - Creditors Who Have Unsecured Claims.**

*Part 1 - Creditors with Priority Unsecured Claims*.  Pursuant to the *Order (I)
Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation,
Reimbursable Business Expenses, and Employee Benefit Obligations, and (B)
Maintain and Continue Certain Compensation and Benefit Programs
Postpetition; and (11) Granting Related Relief* [Docket No. 39] (the "Wage
Order"), the Debtor received authority to pay certain prepetition obligations,
including to pay employee wages and other employee benefits, in the ordinary
course of business. The Debtor believes that any non-insider employee claims for
prepetition amounts related to ongoing payroll and benefits, whether allowable as
a priority or nonpriority claim, which were due and payable at the time of the
Petition Date have been or will be satisfied as permitted pursuant to the Wage
Order.  The Debtor filed the *Motion of the Debtor for Entry of an Order
Authorizing the Debtor to Pay and Honor Ordinary Course Obligations under
Employee Bonus Plans and Granting Related Relief* [Docket No. 177] pursuant to
which the Debtor seeks authority to pay and honor certain prepetition bonus
programs.  Employee claims related to these programs are shown in the aggregate
amounts in Schedule E/F for privacy reasons.  Additional information is available
by appropriate request to the Debtor.  The listing of a claim on Schedule E/F, Part
1, does not constitute an admission by the Debtor that such claim or any portion
thereof is entitled to priority status.

*Part 2 - Creditors with Nonpriority Unsecured Claims*.  The liabilities identified
in Schedule E/F, Part 2, are derived from the Debtor's books and records.  The
Debtor made a reasonable attempt to set forth its unsecured obligations, although
the actual amount of claims against the Debtor may vary from those liabilities
represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the
correct amount of any unsecured creditor's allowed claims or the correct amount
of all unsecured claims.

Schedule E/F, Part 2 reflects liabilities based on the Debtor's books and records.

Schedule E/F, Part 2, contains information regarding threatened or pending
litigation involving the Debtor.  The amounts for these potential claims are listed
as "unknown" and are marked as contingent, unliquidated, and disputed in the
Schedules and Statements.  Additionally, the amounts of certain litigation claims
may be estimates based on the allegations asserted by the litigation counterparty,
and do not constitute an admission by the Debtor with respect to either liability
for, or the amount of, such claims.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties
to executory contracts and unexpired leases.  Such prepetition amounts, however,

DOCS_DE:226892.2 36027/002

may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts and unexpired leases, if any, that may be or have been rejected.

As of the time of filing of the Schedules and Statements, the Debtor had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtor reserves its rights to amend Schedules D and E/F if and as it receive such invoices.

f.   **Schedule G - Executory Contracts and Unexpired Leases**. While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtor hereby reserves all of its rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth separately on Schedule G. In addition, the Debtor may have entered into various other types of agreements in the ordinary course of its business, such as supplemental agreements, amendments, and letter agreement, which documents may not be set forth in Schedule G.

Certain of the agreements listed on Schedule G may have expired or terminated pursuant to their terms, but are listed on Schedule G in an abundance of caution.

The Debtor reserves all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtor as to the validity of any such contract. The Debtor reserves the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or

014421

unexpired lease.  The Debtor's rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

DOCS_DE:226892.2 36027/002

014422